# Exhibit A

Public Guidance on Elective Option for Camp Lejeune Justice Act Claims
(September 6, 2023)

# Public Guidance on Elective Option for Camp Lejeune Justice Act Claims

This Guidance Document explains the voluntary framework that has been adopted by the Department of the Navy and the Department of Justice to evaluate and potentially settle claims brought under the Camp Lejeune Justice Act ("CLJA") that are pending administratively or are newly filed (the "Elective Option" or "EO"). The EO allows claimants to resolve certain CLJA claims more quickly and more efficiently than in litigation, which might otherwise require resolution of uncertain legal and factual issues through potentially burdensome discovery, motions practice, and bellwether trials. The EO is available to certain claimants with Qualifying Injuries and who resided or worked at Camp Lejeune for at least 30 days.

As explained in greater detail below, certain claimants who have previously received healthcare or disability benefits related to Camp Lejeune from the Department of Veterans Affairs ("VA") may rely on those benefits to establish eligibility for an EO offer. Accepting an EO offer will not affect the claimant's VA benefits. Additionally, an EO settlement will not be offset due to a VA benefit through a reduction in the settlement amount for benefits paid or a VA lien. The EO process thus allows those who have obtained a disability award, payment or benefit related to Camp Lejeune to retain that award, payment or benefit without the offset that would be statutorily required if the claimant were to proceed to trial and win a judgment.

This Guidance Document is intended to explain the government's approach to reviewing and potentially settling certain claims asserted under the CLJA. This Guidance Document does not have the force and effect of law. Unless expressly stated otherwise, this Guidance Document does not represent the Department of the Navy's or Department of Justice's interpretation of any regulations, statutes, common laws, or constitutional provisions. Nothing included herein can be used against the United States, in any way, in the CLJA court litigation. Neither this Guidance Document nor the mere existence of the EO confers any rights or constitutes an offer of settlement. Both this Guidance Document and the EO may be amended or revoked in the future.

Part One of this Guidance Document provides a general overview of the EO's structure and guiding principles. The general EO process is also illustrated in an attached flowchart. Part Two addresses specific questions likely to arise under the EO.

### I. Overview of the EO

The EO provides a framework for resolving certain CLJA claims quickly, equitably, and transparently. A claimant seeking a recovery under the CLJA must first submit an administrative claim to the Department of the Navy.[1] The Department of the Navy then has six months to review the administrative claim.

The EO allows the Department of the Navy to focus its review on a few key aspects of the claim, such as the type of injury alleged and the amount of time the claimant worked or resided at Camp Lejeune. Narrowing the scope of the Department of the Navy's review will allow it to validate claims and extend settlement offers more quickly. The EO will provide similar settlement

---

[1] CLJA § 804(h).

offers to claimants with similar exposures and injuries for which there is similar scientific evidence of causation.

Claimants who are not eligible for an EO offer may still file a CLJA claim with the Department of the Navy. The Department of the Navy will evaluate those claims and coordinate with the Department of Justice. The Department of Justice and the Department of the Navy may also develop additional frameworks to resolve CLJA claims, particularly as the scientific evidence and litigation develops. Developing and applying these additional frameworks may require greater time and resources than the EO. Alternatively, a claimant may file a lawsuit in federal court, provided that the claim has either been formally denied by the Department of the Navy or six months have passed since the claim was initially filed.

### A. *The Elective Option Grid*

The EO applies a two-by-three "Elective Option Grid." With one exception explained below, the EO includes illnesses or conditions that the Agency for Toxic Substance and Disease Registry ("ATSDR") identified as having evidence at an "equipoise and above" level or higher for a causal link to one or more contaminants detected in the Camp Lejeune water. There are two categories of Qualifying Injuries. Where the ATSDR has identified evidence at the "equipoise and above" level, the group of Qualifying Injuries is referred to as "Tier 2." Where the ATSDR has identified additional evidence of causation and reported that the Qualifying Injuries have "sufficient" evidence of a causal link to one or more contaminants detected in Camp Lejeune water, the group of Qualifying Injuries is referred to as "Tier 1." There are also three categories of Duration of Exposure: (1) exposures between 30 and 364 days; (2) exposures between 1 and 5 years; and (3) exposures longer than 5 years. The Elective Option Grid is depicted here:

**Elective Option Grid:**

|  | **30 to 364 Days** | **1 year to 5 years** | **More than 5 years** |
|---|---|---|---|
| **Tier 1 Qualifying Injury** | $150,000 | $300,000 | $450,000 |
| **Tier 2 Qualifying Injury** | $100,000 | $250,000 | $400,000 |

In addition, claims that show a Qualifying Injury resulting in death will be offered an additional $100,000. Accordingly, the maximum EO offer is $550,000.

Qualifying Injuries are divided into two "Tiers," as listed below:

**Qualifying Injuries**

| Disease | Qualifying Injury |
|---|---|
| Kidney Cancer | Tier 1 |
| Liver Cancer | Tier 1 |
| Non-Hodgkin Lymphoma | Tier 1 |
| Leukemias | Tier 1 |
| Bladder Cancer | Tier 1 |
| Multiple Myeloma | Tier 2 |
| Parkinson's Disease | Tier 2 |
| Kidney Disease / End Stage Renal Disease | Tier 2 |
| Systemic Sclerosis / Systemic Scleroderma[2] | Tier 2 |

"Cardiac Birth Defects" are not included in the EO, even though the ATSDR determined there was sufficient evidence of causation for this category of illnesses. Cardiac birth defects include a wide range of illnesses that are difficult to evaluate similarly without fact-intensive investigation.

The CLJA is limited to individuals who had a Duration of Exposure of "not less than 30 days."[3] The Duration of Exposure is based only on residential and occupational exposures for claimants who lived or worked at Camp Lejeune. The EO includes an exception for *in utero* claims that are based on the mother's residential or occupational exposures for at least 30 days during the 9-month period before the claimant's birth. The EO defines Camp Lejeune as including both Marine Corps Base Camp Lejeune and Marine Corps Air Station New River.

Claimants with similar exposures and injuries for which there is similar scientific evidence of causation will receive similar settlement offers. Additionally, claimants with diseases that the ATSDR has determined are more strongly associated with exposure to contaminants in Camp Lejeune water or who were exposed to Camp Lejeune water for a longer period of time will receive greater settlement offers than others whose diseases do not fall in the highest categories or whose exposures were not as long.

Importantly, except for claims involving death, these groupings do not make judgments about the relative severity of different injuries, the claimant's income-level or medical expenses, or other proxies for need or severity. Rather, groupings primarily reflect the strength of *causation* (for this program only, as categorized by the ATSDR) as a legal element, without consideration of

---

[2] "Localized" sclerosis or scleroderma are not included in the EO.
[3] CLJA § 804(b).

individualized factors that could affect causation.[4] The additional offer amount recognizes the different nature of claims involving death.

### B. Additional Requirements

In addition to showing a Qualifying Injury and the Duration of Exposure, an administrative claim must meet three additional basic requirements.

#### 1. Presentment Requirement

An administrative claim must be properly presented to the Department of the Navy to qualify for the EO. Pursuant to § 804(h) of the CLJA, submission of an administrative claim is required.

#### 2. Onset Requirement

The injury must have been first diagnosed or treated before August 10, 2022. The CLJA applies "only to a claim accruing before the date of enactment of this Act," i.e., before August 10, 2022.[5]

#### 3. Latency Requirement

The earliest date of diagnosis or treatment must be **not less than two (2) years** after the claimant's first exposure and **not greater than thirty-five (35) years** after the claimant's last exposure. A single 2-year minimum latency and 35-year maximum latency for *all* injury types allows easier and quicker review of claims. A single Latency Requirement also reduces burdens on claimants. If proceeding outside the EO, claimants may be required to present expert testimony regarding latency as part of their proof of causation. The EO offers certain claimants an opportunity for settlement without the costs of meeting this burden. Claimants who are unable to satisfy the EO's Latency Requirement may still offer proof of causation outside the EO.

### C. Evidentiary Standards

To show a Qualifying Injury, there must be medical documentation showing the claimant was diagnosed with or treated for that illness or condition before August 10, 2022. Appropriate medical documentation may include medical records, treatment notes, test results, billing records, death certificates, or a letter from a medical doctor. Medical documentation must be signed or certified by a medical doctor. Medical documentation must be originals, or certified copies of the originals, unless it is impossible to obtain an original or certified copy of the original. If it is impossible for a claimant to provide an original or certified copy of an original, the claimant must

---

[4] Determinations of causation in litigation under the Camp Lejeune Justice Act will involve considerations of both the general and specific causation. This will include not only the strength of the evidence of whether a chemical is capable of causing a particular disease, but also whether the evidence is sufficient to show that the individual's disease is as likely as not caused by the chemical given all of an individual's particular circumstances.

[5] CLJA, § 804(j)(1).

provide a written statement under oath with the uncertified copy setting forth the reason why it is impossible to provide an original or a certified copy of an original.

To show Duration of Exposure, there must be housing or employment documentation showing that the claimant (or the claimant's mother while the claimant was *in utero*) resided or worked at Camp Lejeune for at least 30 days between August 1, 1953 and December 31, 1987. Appropriate housing or employment documentation may include military service records, tax returns, drivers' licenses, pay stubs, employment contracts, or similar documentation. Claimants who alleged they were exposed to Camp Lejeune water while living on base with a service member may rely on that service member's housing or employment documentation, if the claimant can show a relationship with the service member, such as a marriage certificate or birth certificate. For purposes of the EO, secondary evidence, such as a sworn affidavit, statement, or declaration, *is not* sufficient to show a claimant resided or worked at Camp Lejeune because such evidence is less reliable.

Claimants who have previously received healthcare or disability benefits related to Camp Lejeune from the VA may rely on those benefits to establish a Qualifying Injury, a Duration of Exposure of between 30 and 364 days, or both.

To show that a Qualifying Injury resulted in death, there must be medical documentation showing that the illness or condition caused or contributed to causing the decedent's death. Appropriate medical documentation may include a "long form" death certificate that includes a medical report detailing the cause of death, or a signed letter from the decedent's treating physician.

### D. Process for Reviewing Administrative Claims for the EO

#### 1. Step 1: Determine "Perfection"

An administrative claim must be properly presented to the Department of the Navy in order to satisfy the "Presentment Requirement" for review   Claimants should use the form provided on the CLJA website for filing a claim. Upon review of a claim, Department of the Navy personnel will contact claimants if additional information is required to "perfect" their claim. There is no need to refile administrative claims that have already been filed and are currently pending with Navy.

#### 2. Step 2: Screen Perfected Claims for a Qualifying Injury

The Department of the Navy shall screen perfected claims to ensure that they allege a Qualifying Injury. Claims that allege multiple injuries may proceed to Step 3 so long as at least one of those injuries is a Qualifying Injury.

#### 3. Step 3a: Department of the Navy-initiated Investigation

The Department of the Navy shall investigate perfected administrative claims asserting a Qualifying Injury to determine (1) whether the claimant was diagnosed or treated with a Qualifying Injury (Qualifying Injury); (2) when the diagnosis was made or treatment performed (Date of Diagnosis); (3) when the claimant began residing or working at Camp Lejeune (Date of First

Exposure); (4) when the claimant stopped residing or working at Camp Lejeune (Date of Last Exposure); (5) the duration of any absences (Days Absent); and (6) whether the Qualifying Injury resulted in or contributed to death (Death).

After determining (1) the Qualifying Injury and (2) the Date of Diagnosis, the Department of the Navy can determine the appropriate Qualifying Injury Tier and whether the claimant satisfies the EO's Onset Requirement. After determining (3) the Date of First Exposure, (4) the Date of Last Exposure, and subtracting any (5) Days Absent, the Department of the Navy can determine the appropriate Duration of Exposure. By referencing the (2) Date of Diagnosis in conjunction with (3) Date of First Exposure and (4) Date of Last Exposure, the Department of the Navy can also determine whether the claimant has satisfied the 2–35-year Latency Requirement. Finally, the Department of the Navy should determine whether the EO offer should be increased because the Qualifying Injury resulted in or contributed to (6) Death.

The Department of the Navy shall first internally investigate perfected claims *before* requesting substantiation from claimants. In addition to documents that the Department of the Navy already has in its possession, the Department of the Navy may request documentation supporting proof of harm and proof of exposure from other government agencies. If eligibility for the EO can be established from government records, then further substantiation is unnecessary and an EO offer can be recommended.

### 4. Step 3b: Claimant Substantiation

If further documentation is necessary to show eligibility for the EO, then the Department of the Navy may request substantiation from the claimant. A substantiation request may ask the claimant to provide additional supporting documentation, such as medical records or birth certificates. A substantiation request may also provide the claimant with the documents the Department of the Navy reviewed as part of its EO investigation (step 3a), if proper releases and authorizations are provided.

The Department of the Navy may deny a claim if the claimant fails to provide sufficient supporting documentation.

The Department of the Navy may repeat its internal investigations (step 3a) and substantiation requests (step 3b) as appropriate.

### 5. Step 4: Department of the Navy Finalization and Request for Payment from the Judgment Fund

The Navy will propose eligible EO offers to the Department of Justice. If the Department of Justice confirms that the claimant meets the requirements for the EO and approves the Navy's EO determination, then the Navy will notify claimants (through their attorneys, if represented) of the EO offer.

A claimant shall have **60 days** to accept or decline an offer under the EO. If a claimant takes no action after 60 days, then the Navy may choose to deny the claim. If a claimant declines an offer under the EO and files a lawsuit, the claimant cannot request a subsequent offer under the EO.

If the claimant accepts the settlement offer under the EO, the claimant shall within 14 days execute any documents necessary to release any and all claims against the United States under the CLJA and the FTCA related to exposure to contaminated water at Camp Lejeune and for payment of the settlement from the Judgment Fund. The release will also require an affirmation, under penalty of perjury, of the information supporting the EO determination. This release will not affect a claimant's rights to any disability award, payment, or benefit awarded by the VA. The Department of the Navy will process the documents for payment with the U.S. Treasury for payment of the settlement within 60 days.

### II. Common Concerns and Questions

#### A. *What Are the Benefits of Accepting an EO Settlement Over Filing a Lawsuit?*

Claimants who accept an EO settlement offer are guaranteed payment. Recovery outside the EO—whether through an administrative claim that is not eligible for the EO, or through filing a lawsuit in Federal court—is not guaranteed because such recovery requires proof that the contaminated water was at least as likely as not the cause of the plaintiff's illness. This process must account for the level of exposure and all potential alternative risk factors for the illness. In addition, recovery obtained through other administrative processes, trial, or settlement are subject to offsets to reflect any disability award, payment or benefit related to water exposure at Camp Lejeune.[6]

Claimants who accept an EO settlement can expect to receive payment within 60 days or less, provided they accurately complete all necessary payment documentation in a timely manner. In court, litigation may require multiple months of discovery, motions practice, and potentially trial.

The EO also reduces the number of factual issues a claimant must establish. For example, the EO utilizes a base-wide approach to exposures. So long as the claimant resided or worked at Camp Lejeune during the statutory time period (even if the claimant did not reside or work at areas served by the contaminated water systems—Tawara Terrace, Hadnot Point, or Holcomb Boulevard), the claimant will receive payment, provided the claimant meets the other EO requirements. In court, plaintiffs may need to provide evidence of exposure to contaminated water from one of the contaminated systems to recover. Finally, as mentioned above and in contrast to CLJA damages awards obtained through litigation, EO offers will not be offset by disability awards, payments, or benefits received through the Department of Veterans Affairs.

#### B. *What If I Decline an EO Settlement?*

Claimants who decline an EO settlement offer may keep their administrative claim with the Department of the Navy. The Department of the Navy and the Department of Justice are continuing to develop additional frameworks for resolving CLJA matters.. These additional frameworks may require greater time and resources than the EO, after which recovery is not guaranteed and offsets may be applied. Alternatively, a claimant may file a lawsuit in federal

---

[6] CLJA, § 804(e)(2).

court, provided that the claim has either been formally denied by the Department of the Navy or six months have passed since the claim was initially filed.

### C. Does the EO Apply to Claims Already in Litigation?

No, but the Department of Justice will investigate and offer to resolve claims currently in litigation consistent with the EO ("DOJ-EO"). If a claimant filed a civil litigation complaint in the United States District Court for the Eastern District of North Carolina, then the Department of the Navy lacks authority to investigate and potentially resolve that claim under the EO. A claimant may not dismiss his or her lawsuit in order to return to the administrative claim process.

To avoid prejudicing claims already in litigation, the Department of Justice will screen and investigate already-filed lawsuits using a similar process as the Department of the Navy. Claims for which a district court complaint was filed between August 10, 2022 and 30 days after the announcement of the EO are referred to as "Group A" claims. As with the EO, DOJ-EO settlement offers extended to Group A claims shall expire after 60 days. Upon acceptance of a DOJ-EO settlement offer, a Group A claimant shall fully complete DOJ's "Stipulation for Compromise and Settlement Release of Claims Pursuant to 28 U.S.C. § 2677" and related documentation, U.S. Treasury Judgment Fund forms necessary for payment, and a certification stating that the district court complaint will be dismissed with prejudice within 14 days of receipt of the DOJ-EO settlement payment. As with the EO, Group A claimants who timely accept a DOJ-EO settlement offer shall not have their VA benefits offset because of their settlement.

Any other claimant ("Group B") who files a complaint more than 30 days after the announcement of the EO will be considered to have "opted-out" of the EO and DOJ-EO.

### D. Why Do Only These Nine Diseases Qualify under the EO?

Compensating specific qualifying diseases is consistent with other government programs. The EO relieves the claimants of the burden of submitting expert testimony regarding causation and relieves the United States of the cost of evaluating that expert testimony.

Some claimants with Qualifying Injuries may be unable to prove causation in tort litigation. On the other hand, some claimants with injuries that are not Qualifying Injuries may be able to prove causation in tort litigation. In both instances, however, claimants would bear the burden of proving general and specific causation through expert testimony. On balance, the ATSDR *Assessment of the Evidence* provides a principled basis for settling cases in the administrative claim phase.

As noted above, "Cardiac Birth Defects" are not included in the EO, even though the ATSDR determined there was sufficient evidence of causation for this category of illnesses. Cardiac birth defects include a wide range of illnesses that are difficult to evaluate similarly without fact-intensive investigation.

The VA treats certain additional illnesses as "presumptively service-connected" to service at Camp Lejeune. These additional diseases are not included in the EO because, according to ATSDR, there is less scientific evidence of causation and because additional, fact-intensive investigation would likely be required in litigation.

### E. Why Are Qualifying Injuries All Treated Similarly If Some Injuries Are More Severe than Others?

The EO does not attempt to compare the severities of different illnesses. This is the case for at least three reasons. First, assessing the severity of an illness is a fact-intensive and time-intensive inquiry that might require examining a claimant's medical records, deposing the claimant or the claimant's family-members, and eliciting expert opinion testimony regarding the effects of an illness. Second, assigning different values to different types of illnesses based on their severity may be inappropriate at the administrative claim phase because of the inherent complexity of such an assessment and the equities it would implicate. Third, the Qualifying Injuries are nearly all cancers or other terminal or chronic illnesses.

### F. What If I Have More than One Qualifying Injury?

A claimant may recover under the EO for only a single Qualifying Injury. The EO considers settlement on a "per-claimant" basis rather than a "per-injury" basis. If a claimant has more than one Qualifying Injury, the claimant will be compensated for one such injury, at the level that will provide the greatest compensation for the claimant. Thus, if a claimant has both a Tier 1 and Tier 2 Qualifying Injury, the claimant will receive compensation for the Tier 1 Qualifying Injury.

### G. Will Accepting an EO Offer Affect My VA Benefits?

No, accepting an EO offer for a CLJA claim will not affect the claimant's VA benefits. VA will not assert a lien or offset over EO payments. Awards or settlements made outside of the EO may be offset by the value of VA benefits.

### H. What Percentage of My EO Payment May Be Collected as Attorneys' Fees?

Claimants should consult their attorneys.

### I. How Do I File My Administrative Claim with the Navy?

An administrative claim should be filed with the Department of the Navy. The administrative claim should not be filed with the Department of Justice, the Department of Veterans Affairs, or the United States Marine Corps.

Further information on how to file an administrative claim with the Department of the Navy can be found at: www.navy.mil/clja. Claimants who have already filed a claim with Navy do not need to refile their claim in order to take advantage of the EO.

The United States cannot advise claimants on whether they should retain an attorney to assist in filing a claim.

*J. How Can I Check the Status of My Administrative Claim?*

At this time, the Department of the Navy and the Department of Justice are unable to provide updates on the status of individual claims. Claimants who are represented by an attorney may discuss the status of their claims with their attorney.

CLJA Elective Option ("EO")
Claimant files administrative claim with Navy
Navy reviews under EO
Navy determines claim is eligible for EO
DOJ approves EO determination
Navy extends settlement offer
Claimant **accepts**
Claim settled; Judgment Fund issues payment
Claimant **declines**
Claimant abandons claim
Claim remains with Navy for non-EO consideration
Claimant files lawsuit in federal court*
Navy determines claim **is not** eligible for EO
*Lawsuit cannot be filed until administrative claim is formally denied, or six months have passed since the claim was filed.

