IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE # 7:23-cv-00897-RJ

Camp Lejeune Water Litigation,

Plaintiff,

v.

United States of America,

Defendant.

**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE ORDER DATED JULY 19, 2023 (DE 10)**

While undersigned counsel recognizes the significant burden and questions this Motion raises, it is a critically important issue that will only metastasize as the litigation continues if not fairly and adequately addressed now. In this instance, the Court should grant the requested relief because the undersigned has satisfied the burden of Rule 54 and justice so requires this Court to act.

**LEGAL STANDARD**

This Court has the inherent power to reconsider its interlocutory orders, and reconsideration is granted when one of the following is met: "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *Reale v. Wake Cnty. Hum. Servs.*, No. 5:11-CV-682-D, 2013 WL 2635181, at *5 (E.D.N.C. June 12, 2013) (internal quotation marks omitted).

# ARGUMENT

## I. THE MOTION PRESENTS ISSUES THAT THE COURT HAS NOT ALREADY CONSIDERED NOR RULED UPON

Plaintiffs' Leadership Group's ("PLG") Opposition to Motion for Reconsideration of July 19, 2023 Order fails to acknowledge that the Court gave no legal basis for its Order and on that basis alone must be reconsidered. *See Generally* DE 10. While the PLG raises in its opposition that similar issues were previously raised to the Court by letter, there has been no acknowledgment by the Court or any of its representatives as to the opposition raised by undersigned counsel's letter. In fact, there was no indication at all either prior to or in the Order itself under what authority or Rule the Court entered DE No. 10.

Nevertheless, PLG attempts to support the Court's Order with citation to its own legal argument, which begins and hinges on the following:

> For well over 60 years, since before the advent of MDLs, federal courts have exercised their power under Federal Rule of Civil Procedure 42(a) to appoint lead counsel to resolve common issues in pretrial proceedings in complex litigations involving numerous plaintiffs. *See, e.g.*, *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1014 (5th Cir. 1977) ("*Florida Everglades*"); *MacAlister v. Guterma*, 263 F.2d 65, 68-69 n.2 (2d Cir. 1958).

Memo at 1.

The problem for PLG is that there are two immediately identifiable issues – the cases they cite. The first, *In re Air Crash Disaster* is an MDL case. As the undersigned has pointed out, and this Court has acknowledged, the present matter is not an MDL case. As a result, the Order of July 19, 2023, and its sweeping powers conferred to the appointed PLG cannot find a basis under that legal reasoning or line of cases as MDLs are specifically authorized by 28 U.S.C. § 1407 and the JPML's Orders specifically required centralized for coordinated or consolidated pretrial

2

proceedings. Notably, those Orders do not require the expansive list of powers granted to the PLG in this case.

Equally inapplicable is the second case cited, *MacAlister*, a series of three "stockholders' derivative actions where the stockholder sues, not in his own right, but in that of the corporation and on Behalf of his fellow stockholders." *Id*. At 68. Suits that are brought in a representative capacity such as those under F.R.C.P. 23 and similar state rules explicitly provide for the appointment of class counsel as the undersigned advocates. *See F.R.C.P. 23(c)(1)(B) Defining the Class; Appointing Class Counsel.* Notably, even though it would be appropriate in that construct in *MacAlister* the Court actually refused to appoint "general counsel" and the Second Circuit upheld it. In so doing, the Court made the following comment regarding general counsel:

> By such a procedure, one general counsel is not substituted for the counsel of each party plaintiff's choice. The function of general counsel is merely to supervise and coordinate the conduct of plaintiffs' cases. The separate actions are not merged under the direction of one court appointed master of litigation— each counsel is still free to present his own case, to examine witnesses and to open and close before the jury, if there be one.

*MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958)

Here, given the broad and sweeping authority of the July 19, 2023 Order, that lack of substitution is not the case. It goes even further given the acknowledgement of the PLG that they intend to select which Plaintiffs cases can proceed through a general superseding Complaint.[1]

## II. NEW EVIDENCE INVOLVING THE APPOINTMENT PROCESS HAS COME TO LIGHT SINCE THE MOTION TO RECONSIDER WAS FILED

---

[1] "During the extension, rather than devoting further resources to answering individual complaints and preparing for dozens of individual discovery conferences on a case-by-case basis, the Parties will focus on the global issue of proposing a process for master pleadings that would **supersede** individual CLJA complaints and previously filed answers." DE 11. Emphasis added.

Second, new evidence of how this committee was formed and the ongoing lack of transparency since even the Motion to Reconsider was filed has come to light that requires the attention of the Court as this landmark litigation begins.

For example, in the Motion filed August 16, 2023, the undersigned informed the Court that it was discovered that the Plaintiffs' Steering and Executive Committees ("PSC" & "PEC") had been formed by the PLG without any process for the formation of the same having been announced and that "Counsel did not receive a copy of the committee slate selections, the selections were not filed on the public docket, and clients injured in this litigation have not been made aware of who has been selected to act on their behalf." DE 13 at 9. Two days later on August 18, 2023, the PLG filed on the docket the list of names selected to these committees without any process at all – applications or otherwise. DE 14. It is unclear exactly when these groups were formed but the Status Update indicates they were formed at least by July 27, 2023, when the PLG "presented them to the Court…by letter" barely a week after this Court appointed the Leads. DE 14 at 1.

To be sure, the Motion for Reconsideration focused exclusively on procedure and not personalities. However, in its Memo in Opposition the PLG elected to make the procedure-based argument about actual appointments in the litigation ("Willey apparently believes that because he filed the first class action, he would be appointed class counsel." Parenthetical omitted. Memo at 11). Willey believes no such thing, but in any event, with respect to the actual personal appointments in this case it was the filing of the actual names of the PSC/PEC that started the reporting about at least the perception of some of the conflicts in the appointment process (*See also*: https://www.law360.com/articles/1713226/quinn-emanuel-motley-rice-firms-tapped-in-lejeune-suits *noting* "Former federal prosecutor John Bash, a Quinn Emanuel appellate partner

4

— who's married to co-lead counsel Zina Bash of Keller Postman LLC, a former counsel to suspended Texas Attorney General Ken Paxton — is one of 13 attorneys named to the plaintiffs' executive committee…"). It was unknown to counsel at the time for the filing of the Motion for Reconsideration that the lack of transparency in the appointment process had actually resulted in the undesirable effects of a process that lacks transparency. Namely, nepotism, in that at least one Court appointed co-lead counsel, Zina Bash, appointed their spouse John Bash to the PSC / ESC when according to his law firm biography Mr. Bash has no prior mass tort experience. It was also discovered that H. Scott Overholt was appointed to the PSC / ESC , the son of liaison counsel, Hugh Overholt. These are appointments, given the closeness of the relationships, that if not unprecedented should be.[2]

Without waiving the argument regarding appointment in this case as directed being inappropriate, and in response to PLG's reliance on the *Manual* in its Opposition, the undersigned directs the Court's attention to Section 10.222 of the *Manual* where it outlines powers and responsibilities of appointed leadership in any case, which states:

> To avoid controversy over the interpretation of the terms of the court's appointment order, designated counsel should seek consensus among the attorneys (and any unrepresented parties) when making decisions that may have a critical impact on the litigation.
>
> Counsel in leadership positions should keep the other attorneys in the group advised of the progress of the litigation and consult them about decisions significantly affecting their clients.
>
> Section 10.222 Powers and Responsibilities.

Here, the PLG announced no process by which PSC/PEC appointments would be made, took no applications, and otherwise failed in their obligations as noted above. There can be no more

---

[2] To the extent this is "discovery of new evidence" the same is so raised.

critical impact on any litigation than who leads it, and failing to advise – much less consult – other attorneys until it was raised in the undersigned's Motion for Reconsideration is a separate and compelling ground for reconsideration of the Court's leadership Order.

The introduction of the new evidence brought to light under these appointments certainly reaches the level of "new evidence" as required by the F.R.C.P. For this reason alone, undersigned counsels' motion is proper and should be granted.

### III. UNDERSIGNED COUNSEL IDENTIFIES CLEAR ERROR AND MANIFEST INJUSTICE IN THE LEADERSHIP ORDER, SUBSEQUENT APPOINTMENTS, AND CONDUCT OF THE LITIGATION SINCE

#### A. Consolidation and Common Benefit is Improper under Rule 42

Assuming that the Court adopts PLG's legal reasoning and uses Rule 42 to justify its Leadership Order, the Order will still require amendment due to clear error and manifest injustice because the PLG fails to identify an adequate source of authority in Rule 42 for the broad and sweeping powers this Court bestowed upon the PLG.

Rule 42(a)(2) provides that if "actions before the court involve a common question of law or fact, the court may ... consolidate the actions." The meaning of the term "consolidate" in this context is ambiguous. But the term has a legal lineage stretching back at least to the first federal consolidation statute, enacted by Congress in 1813. Act of July 22, 1813, § 3, 3 Stat. 21 (later codified as Rev. Stat. § 921 and 28 U.S.C. § 734 (1934 ed.)). Under the consolidation statute—which was in force for 125 years, until its replacement by Rule 42(a)—consolidation was understood *not as completely merging the constituent cases into one, but as enabling more efficient case management while preserving the distinct identities of the cases and rights of the separate parties in them. See*, *e.g., Rich v. Lambert,* 12 How. 347, 13 L.Ed. 1017; *Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706; *Stone*

6

*v. United States,* 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127. (Emphasis added). Just five years before Rule 42(a) became law, the Court reiterated that, under the consolidation statute, consolidation did not result in the merger of constituent cases. *Johnson v. Manhattan R. Co.,* 289 U.S. 479, 496–497, 53 S.Ct. 721, 77 L.Ed. 1331. *See also In re U.S. Financial Securities Litig.*, 609 F.2d 411, 428 n. 58 (9th Cir.1979) (discretionary consolidation under Rule 42 cannot alter right to jury trial)

On July 19, after interviewing[3] counsel and without a hearing, this Court selected one Lead Counsel and six Co-Lead Counsels. DE 10. The Court enumerated a list of responsibilities for the attorneys or their delegees, which in summary provides: "Lead Counsel and six Co-Lead Counsel will make all decisions – strategic, procedural and substantive – on behalf of all plaintiffs." DE 10 at 2. Yet, the Order contradictorily provides that "[e]ach plaintiff's counsel shall continue to be responsible for each individual plaintiff's case." DE 10 at 10. It does not make practical sense that individual counsel can be responsible each of their Plaintiff's individual cases while having no ability to make or impact any decision ("strategic, procedural and substantive") on behalf of those Plaintiffs. Plainly, the Court's Leadership Order provides all of the benefits of leadership to the PLG with none of the burden.

Moreover, the now filed Proposed Case Management Order No. 2, filed after the Motion for Reconsideration, calls for a master consolidated complaint "that would *supersede* individual CLJA complaints and previously filed answers" (DE 11 at 2-3) and dispense with individual cases proceeding forward explicitly stating that "[a]l cases on individual dockets asserting any CLJA claim shall be stayed…" (DE 17-1 at 3). This shows the extent to which the PLG seeks to

---

[3] Undersigned counsel has attempted to contact the Clerk of Court to request records of these interviews, and were informed that the Court would not provide them. Based upon conversation with other counsel it is unclear who, if anyone at all, was interviewed other than those selected.

7

control individual plaintiffs' cases, and the same is not permitted by the law as it "would tend to merge the various actions in disregard of the caveat expressed in *Johnson v. Manhattan Ry. Co.*, 1933, 289 U.S. 479, 496-497, 53 S.Ct. 721, 77 L.Ed. 1331," as noted by the Court in *MacAlister*, 263 F.2d 65, upon which the PLG relied at the outset of its Opposition.

### B. Consolidation and Interim Leadership Appointments Under Rule 23 is Appropriate

A court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Although Rule 23(g)(3) does not provide a standard for appointment of interim counsel, the court may consider the factors contained in Federal Rule of Civil Procedure 23(g)(1). Under that section, the court considers: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Those criteria are all met in this case.

To the first point, it cannot be denied that this litigation contains attorneys well suited to interim lead counsel, some of which were appointed to the PLG, and others of which were never given an interview nor had the opportunity to be heard in a hearing. Plaintiffs' counsel in this action both included and excluded, conducted in depth reviews of the science and history of these claims, as well as evaluating countless claims of retired servicemen and women and their families that were impacted by this case, as well as attending all in-person hearings.

8

The second and third points are also easily satisfied here given the wealth of experience many in Plaintiffs' counsel have obtained in their careers. Many attorneys and firms in this action have been at the forefront of complex litigations, including class action cases, for which these firms have litigated as interim or lead counsel in numerous class action cases representing hundreds of thousands of claimants in the last couple of years alone.

Rule 23 would allow the court to not only to appoint interim lead counsel, it would prevent the manifest injustice that is currently occurring in the named PSC and PEC as laid out above. At the very least the appointment process should include a public hearing where the above issues, and others that may not be currently known, can be addressed[4]. The requirements of Rule 23 ensure that qualified and capable counsel and Plaintiffs are selected to represent the class at the time of class certification, further giving validity to any judgment issued by the court on these cases. For this reason, undersigned counsel requests this court reconsider it's Leadership order and instead view the case within the scope of Rule 23, which as outlined by our briefings, make clear it is the proper vehicle for these claims.

<i>/s/Roy T. Willey, IV</i><br>
Roy T. Willey, IV (<i>Pro Hac Vice</i>)<br>
Blake G. Abbott<br>
<b>Poulin | Willey | Anastopoulo, LLC</b><br>
32 Ann Street<br>
Charleston, SC 29403<br>
843-834-4712<br>
roy@poulinwilley.com<br>
blake.abbott@poulinwilley.com

---

[4] At least one national investigative reporter has raised the issue of the need for potential recusal to the undersigned, and to the undersigned's knowledge and the knowledge of any unnamed PLG members, this issue has not been raised nor addressed by the Court. As of the time of this filing this has just been brought to the undersigned's attention and is currently being investigated as it is a serious matter that is worthy of full vetting before it is submitted in a public filing.