IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

IN RE: )
)
CAMP LEJEUNE WATER LITIGATION ) **ORDER**
)

On July 19, 2023, the court entered an order appointing a "leadership group to fairly, effectively, and efficiently represent the interests of all plaintiffs . . . ." [D.E. 10] 1. The leadership group is experienced and diverse, and the court's order detailed its expectations for the leadership group. See id. at 1–10. On August 16, 2023, a group of attorneys not selected for the leadership group led by Roy T. Willey, IV ("Willey") sought reconsideration of the court's order and argued that the court lacked authority to appoint the leadership group. See [D.E. 13] 4–5. Willey also argued that Federal Rule of Civil Procedure 23 was "a perfect vehicle for consolidation and appointment of leadership" and that he should be in the leadership group under Rule 23 because of his status as counsel in Williams v. United States of America, No. 7:23-CV-22-D (E.D.N.C.), a putative class action under the Camp Lejeune Justice Act. See id. On August 28, 2023, plaintiffs' leadership group responded in opposition. See [D.E. 16]. On September 11, 2023, Willey replied. See [D.E. 21]. As explained below, the court denies Willey's motion for reconsideration.

I.

On August 10, 2022, President Biden signed the Camp Lejeune Justice Act ("CLJA") into law. See Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04. The CLJA created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than

30 days during the period between August 1, 1953, and December 31, 1987. See id. § 804(b). In the CLJA, Congress established the burden of proof for this new federal cause of action against the United States, provided the United States District Court for the Eastern District of North Carolina with "exclusive jurisdiction" and "exclusive venue," and provided for jury trials. See id. §§ 804(c)–(d). Congress also abrogated the discretionary function exception otherwise available to the United States under 28 U.S.C. § 2680(a), prohibited the award of punitive damages, and provided that the CLJA "does not apply to any claim or action arising out of the combatant activities of the Armed Forces." Id. §§ 804(f)–(g) & (i). Congress also required individuals to exhaust administrative remedies under "section 2675 of title 28, United States Code" before filing a CLJA action in court. Id. § 804(h).

The CLJA applies "only to a claim accruing before the date of enactment of this Act" and includes its own statute of limitations. Id. § 804(j)(1). As for the statute of limitations, the CLJA states that a "claim in an action under this section may not be commenced after the later of (A) the date that is two years after the date of enactment of this Act; or (B) the date that is 180 days after the date on which the claim is denied under [28 U.S.C. § 2675]." Id. § 804(j)(2). The CLJA also states that "[a]ny applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under [the CLJA]." Id. § 804(j)(3).

When Congress enacted the CLJA, Congress knew that this court has four United States District Judges who would be responsible for handling all civil actions filed under the CLJA. Moreover, Congress did not dictate any case-management structure in the CLJA. To date, claimants have filed approximately 93,000 administrative claims with the Navy for relief under the CLJA. To date, 1,113 CLJA civil actions are pending in this court. The pending CLJA actions involve at least 49 diseases attributed to the water at Camp LeJeune. All CLJA actions will require the court to

2

examine exposure, general causation, specific causation, and (if reached) appropriate relief.

With respect to each United States District Judge on the court, Chief Judge Myers has 291 CLJA cases. Judge Boyle has 261 CLJA cases. Judge Flanagan has 286 CLJA cases. Judge Dever has 279 CLJA cases. As for total civil and criminal cases for the judges (including CLJA cases), Chief Judge Myers has 880 cases. Judge Boyle has 1,313 cases. Judge Flanagan has 1,004 cases. Judge Dever has 1,009 cases. CLJA cases do not take priority on the docket, and this court must manage the CLJA cases amidst an already heavy criminal and civil caseload.

Given the dire need to manage effectively the extraordinary volume of CLJA cases in this court and the volume of administrative claims that may become CLJA cases in this court, the court entered an order on April 25, 2023, inviting attorneys interested in serving in leadership for plaintiffs with CLJA cases to apply to the court by May 26, 2023. See [D.E. 1]. On May 22, 2023, the court supplemented that order. See [D.E. 4]. Willey was one of many attorneys who applied to serve in leadership for plaintiffs with CLJA cases.

On June 20, 2023, the court invited anyone who objected to the court's leadership process to notify the court. See [D.E. 6]. The court also announced that it would conduct finalist interviews for leadership based on the submissions received, unless someone demonstrated good cause for not proceeding with the process for considering, interviewing, and selecting leadership. See id. at 1.

On July 11, 2023, Willey objected to the process and argued that the court should use the "class action mechanism" under Rule 23 to appoint interim class counsel to manage the CLJA cases and stated, incorrectly, that he had filed "the first, and only, class action under the act." [D.E. 9] 2.[1]

---

[1] On August 14, 2022, the Bell Legal Group, LLC filed a putative class action. See Stringfellow v. United States of America, No. 7:22-CV-145-M (E.D.N.C.). On February 14, 2023, Chief Judge Myers dismissed that action for failure to exhaust administrative remedies. See id., [D.E. 25]. On February 11, 2023, Willey filed a putative class action. See Williams v. United States

3

Willey argued that because the CLJA cases are not multidistrict litigation ("MDL") under 28 U.S.C. § 1407, then "forcing consolidation on Plaintiffs' counsel is improper and against the spirit of the law." Id. at 1.

On July 13, 2023, the court interviewed ten candidates. Willey was not interviewed. On July 19, 2023, the court selected one Lead Counsel, six Co-Lead Counsel, and two Liaison Counsel. See [D.E. 10] 1. The appointments were for a one-year term. See id. at 9. The court's order described the responsibilities of Lead Counsel, Co-Lead Counsel, and Liaison Counsel. See id. at 2–5. Willey was not selected. The court also authorized Lead and Co-Lead Counsel to select Plaintiffs' Executive Committee members and Plaintiffs' Steering Committee members and described the role of the Plaintiffs' Executive Committee and the Plaintiffs' Steering Committee. See id. at 5–8. The court instructed Lead and Co-Lead Counsel to notify the court by July 31, 2023, about the members of the Executive Committee and Steering Committee. See id. at 5, 7. On July 27, 2023, Lead Counsel and Co-Lead Counsel notified the court who was on the Executive Committee and Steering Committee. Willey was not selected to serve on either Committee.

On August 15, 2023, Willey wrote to Lead and Co-Lead Counsel seeking appointment to a subcommittee with a preference for "Bellwether, Resolution, or Discovery." [D.E. 16-2] 3. Willey's letter also stated, "we are concerned that if we are not named to a committee role and have no say in the direction of the case as it pertains to our clients, we will be forced to appeal [the court's order of July19, 2023,] so as to protect our clients' interest in these cases and the processes used to move them toward resolution." Id.

---

of America, No. 7:23-CV-22-D (E.D.N.C.). On February 12, 2023, the Bell Legal Group, LLC filed another putative class action. See Gillam v. United States of America, No. 7:23-CV-98-D (E.D.N.C.). The Gillam and Williams cases are pending before Judge Dever.

4

On August 16, 2023, Willey moved for reconsideration. See [D.E. 13]. On August 28, 2023, plaintiffs' leadership group responded in opposition. See [D.E. 16]. On September 11, 2023, Willey replied. See [D.E. 21].

II.

The court has the inherent power to reconsider an interlocutory order. See, e.g., Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). In order to avoid endless relitigation of issues, however, reconsideration is granted in "narrow circumstances: (1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." Reale v. Wake Cnty. Hum. Servs., No. 5:11-CV-682, 2013 WL 2635181, at *5 (E.D.N.C. June 12, 2013) (unpublished) (quotation omitted).

The court already considered and rejected Willey's core argument that the court should use Federal Rule of Civil Procedure 23(g)(3) to appoint interim class counsel to manage the CLJA cases. A "motion for reconsideration is not properly brought to revive questions already decided on arguments previously briefed or to present a more compelling argument." Jimenez-Orozco v. Baker Roofing Co., No. 5:05-CV-34, 2006 WL 8438693, at *7 (E.D.N.C. Mar. 28, 2006) (unpublished); see Bald Head Island Ltd., LLC v. Ironshore Specialty Ins. Co., No. 7:21-CV-177, 2022 WL 17637455, at *3 (E.D.N.C. Dec. 13, 2022) (unpublished); Buckner v. United Parcel Serv., Inc., No. 5:09-CV-411, 2011 WL 1134219, at *1 (E.D.N.C. Mar. 24, 2011) (unpublished); McLaurin v. E. Jordan Iron Works, Inc., 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009). Thus, the court denies the motion.

Alternatively, Willey has not identified any new evidence, intervening change or development in controlling law, or clear error or manifest injustice concerning this court's leadership

order that warrants reconsideration. As for Willey's argument that no law or statute permitted this court to enter the order appointing a leadership group, Willey is wrong.

Federal courts possess certain "inherent powers," not conferred by statute or rule, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R., 370 U.S. 626, 630–31 (1962); see Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017); Dietz v. Bouldin, 579 U.S. 40, 45 (2016); Landis v. N. Am. Co., 299 U.S. 248, 254–56 (1936); United States v. Colon, 64 F.4th 589, 596 n.7 (4th Cir. 2023); Attkisson v. Holder, 925 F.3d 606, 625–26 (4th Cir. 2019); Six v. Generations Fed. Credit Union, 891 F.3d 508, 519 (4th Cir. 2018); United States v. Oliver, 878 F.3d 120, 124 (4th Cir. 2017). In exercising such inherent powers, the court must reasonably respond to "the problems and needs confronting the court's fair administration of justice." Dietz, 579 U.S. at 45. A court also must exercise its inherent powers consistently with its powers contained in a rule or statute. See id.

The Federal Rules of Civil Procedure are rules created pursuant to the Rules Enabling Act, 28 U.S.C. §§ 2071–77. Section 2072(a) states: "The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in United States district courts (including proceedings before magistrate judges thereof) and courts of appeals." 28 U.S.C. § 2072(a). The Federal Rules of Civil Procedure are law. See id.

The court entered its leadership order pursuant to its inherent powers to manage its own affairs and achieve the orderly and expeditious disposition of cases and Federal Rules of Civil Procedure 1, 16(c)(2)(L), and 42(a)(3). Rule 1 states that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 16(c)(2)(L) authorizes the court to "adopt[] special procedures for managing potentially difficult or

6

protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). As the Committee Note states, Rule 16(c)(2) authorizes courts to use "special pretrial procedures to expedite the adjudication of potentially difficult or protracted cases.... No particular techniques have been described; the Committee felt that experience and flexibility are the keys to efficient management of complex cases." Advisory Committee's 1983 Notes to Fed. R. Civ. P. 16(c). Federal Rule of Civil Procedure 42(a)(3) states that "[i]f actions before the court involve a common question of law or fact," the court "may . . . issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(3).

The CLJA actions pending in this district are potentially difficult or protracted actions that involve complex issues, multiple parties, difficult legal questions, and unusual proof problems. The court has 1,113 CLJA actions pending today and faces the possibility of attempting to resolve anywhere from 100,000 to 1,000,000 civil actions under the CLJA. To date, pending CLJA actions involve 49 diseases. With respect to all the diseases, the court will have to examine exposure, general causation, and specific causation. See Fed. R. Evid. 702. If a plaintiff's CLJA case can survive that examination, the court will have to hold jury trials in the cases and determine appropriate relief.

Federal courts can use their inherent powers, Rule 1, Rule 16(c)(2)(L), and Rule 42(a)(3) to appoint leadership counsel in cases that are not MDLs or putative class actions. See, e.g., Link, 370 U.S. at 630–31; Payne v. Tri-State Careflight, LLC, 327 F.R.D. 433, 451 n.9 (D.N.M. 2018); Malden Transp., Inc. v. Uber Techs., Inc., 323 F.R.D. 118, 120 (D. Mass. 2017); KBC Asset Mgmt. NV ex rel. Chemed Corp. v. McNamara, 78 F. Supp 3d 599, 607–09 (D. Del. 2015); Resnik v. Woertz, 774 F. Supp. 2d 614, 624–27 (D. Del. 2011). The Wright & Miller treatise recognizes a court's power to appoint "lead counsel " in "complex litigation" in order to "reduce legal costs, minimize

7

scheduling conflicts, and ameliorate communication problems." Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 2385 (2d ed. 1994 & Supp. 2005). The interests of appointing leadership in CLJA cases is even stronger than in an MDL given that all CLJA cases are exclusively within the United States District Court for the Eastern District of North Carolina.

The Manual for Complex Litigation advises courts that in complex cases "the court will need to institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation." Manual for Complex Litigation § 10:22 (4th ed. 2004). As the Manual explains, typically lead counsel "act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met." Id. § 10.221.

The court's leadership order advances these objectives in the CLJA cases. The leadership order states that counsel to individual plaintiffs, whether or not in the leadership group, "shall continue to be responsible for each individual plaintiff's case." [D.E. 10] 10. The leadership order also preserves "the right of any plaintiffs counsel to present any non-repetitive positions that uniquely affect an individual plaintiff." Id. at 2. It also withholds from the Plaintiffs' Executive Committee the power to determine positions on matters "solely related to an individual plaintiff." Id. at 6. Thus, the court rejects as baseless Willey's argument that the court "has effectively made individual counsel unable to provide any direction or input to their clients' cases." [D.E. 13] 9.

As for Willey's argument that this court should use the Williams putative class action and Federal Rule of Civil Procedure 23(g)(3) to appoint interim class counsel to serve as leadership

8

counsel, the court rejects the argument. At the outset, the court rejects Willey's implicit argument that the court has only a binary choice: (1) use Rule 23(g)(3) to appoint interim class counsel to manage the CLJA cases or (2) have each individual plaintiff pursue his or her own CLJA case individually against the United States. Nothing in the CLJA, this court's inherent powers, or the Federal Rules of Civil Procedure limits this court to that binary choice.

As for Willey's specific arguments about Rule 23(g)(3), those arguments do not mandate his proposed approach. Although Willey filed a putative class action, Rule 23(g)(3) does not require a court to appoint counsel for the first-filed class action to serve as interim class counsel. See, e.g., Michelle v. Arctic Zero, Inc., No. 12cv2063-GPC (NLS), 2013 WL 791145, at *2 (S.D. Cal. Mar. 1, 2013) (unpublished) (collecting cases). Rather, a court retains discretion in deciding whether to appoint interim class counsel. Moreover, when considering whether to appoint interim class counsel under Rule 23(g)(3), the court should consider: (1) the work counsel has completed in identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

If a court has decided to appoint interim class counsel under Rule 23(g)(3) and multiple attorneys apply to serve as interim class counsel, the court should select the class counsel "best able to represent the interests of the class" considering all the Rule 23(g)(1)(A) factors and Rule 23(g)(1)(B). Advisory Committee's 2003 Notes to Fed. R. Civ. P. 23(g)(1)(B); see, e.g., In re Vanguard Chester Funds Litig., 625 F. Supp. 3d 362, 365–66 (E.D. Pa. 2022). "The fact that a given attorney filed the instant action, for example, might not weigh heavily in the decision if that lawyer

9

had not done significant work identifying or investigating claims." Advisory Committee's 2003 Amendment Notes to Fed. R. Civ. P. 23(g)(1)(B); see In re Vanguard Chester Funds Litig., 625 F. Supp. 3d at 366. Likewise, if another plaintiff and his lawyer file a putative class action later than the first plaintiff but perform more substantive post-filing investigation and research of claims, then the later-filing lawyer may be better suited to represent the class. See Outten v. Wilmington Trust Corp., 281 F.R.D. 193, 199 (D. Del. 2012). Alternatively, if a later-to-file lawyer has performed a substantial investigation and has more potential class representatives or more experience, then that lawyer also may be a better representative of the class. See Calhoun v. Invention Submission Corp., No. 2:19-CV-1396, 2020 WL 5016942, at *3–4 (W.D. Pa. Aug. 25, 2020) (unpublished); Cadena v. Am. Honda Motor Co., No. CV 18-4007-MWF, 2020 WL 3107798, at *4 (C.D. Cal. June 9, 2020) (unpublished); Lowery v. Spotify USA Inc., No. CV-15-9929-BRO, 2016 WL 6818756, at *3–4 (C.D. Cal. May 23, 2016) (unpublished).

The court need not reach these issues under Rule 23(g). Merely because Willey filed a putative class action does not strip this court of its inherent powers or its authority to use Rules 1, 16, and 42 to manage the deluge of CLJA cases in this district. Rule 23's application in the CLJA cases raises complex issues that the court need not resolve at this time to manage these cases. Cf. Ortiz v. Fibreboard Corp., 527 U.S. 815, 830–65 (1999); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612–29 (1997). Willey is obviously disappointed that the court did not choose to manage the CLJA cases in the manner he proposed. Willey appears equally disappointed that the court did not select him as Lead Counsel or Co-Lead Counsel. The court, however, fairly considered Willey's material and the material of all applicants. After a careful and thoughtful process, the court selected the leadership group best able to fairly, effectively, and efficiently represent the interests of plaintiffs with CLJA cases in this district. Willey's motion for reconsideration is denied.

10

III.

In sum, the motion for reconsideration [D.E. 13] is DENIED.

SO ORDERED. This 15 day of September, 2023.

_____
RICHARD E. MYERS II
Chief United States District Judge

_____
TERRENCE W. BOYLE
United States District Judge

_____
LOUISE W. FLANAGAN
United States District Judge

_____
JAMES C. DEVER III
United States District Judge

11

JUDGE DEVER, Concurring:

I concur fully in the court's order. I write separately as the United States District Judge assigned to both the Williams putative class action and the Gillam putative class action. I do not reach the propriety of either putative class action at this time. Nonetheless, I note that if I were to consider appointing interim class counsel under Rule 23(g)(3), two factors that I would consider are (1) the work counsel has completed in identifying or investigating potential claims in the action, and (2) counsel's knowledge of the applicable law. See Fed. R. Civ. P. 23(g)(1)(A).

As for counsel's knowledge of the applicable law, in the Williams putative class action, attorneys from Poulin, Willey, Anastopoulo, LLC presented five questions of law and fact applicable to the proposed class:

> (i) Whether [d]efendant was responsible for the conduct alleged herein which was uniformly directed at all servicemen and women stationed at Camp Lejeune during the relevant period;
>
> (ii) Whether [d]efendant's misconduct set forth in this [c]omplaint demonstrates that [d]efendant has engaged in unlawful and dangerous chemical contamination practices with respect to the water sources at Camp Lejeune;
>
> (iii) Whether [d]efendant made false and/or misleading statements and omissions to the [c]lass and the public concerning the contents of the water at Camp Lejeune during the [r]elevant [t]ime [p]eriod; [and]
>
> (iv) Whether [d]efendant's false and misleading statements and omissions concerning the water sources at Camp Lejeune were likely to deceive the public[.]
>
> (v) Whether [p]laintiff and the [c]lass are entitled to money damages under the same causes of action as the other [c]lass [m]embers[.]

[D.E. 1] 18–19.

The first four proposed questions are irrelevant to a plaintiff successfully recovering under the CLJA. As the CLJA makes clear, a plaintiff need only show "one or more relationships between the water at Camp Lejeune and the harm." CLJA § 804(c)(1). "To meet the burden of proof

described in paragraph (1), a party shall produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is—

    (A) sufficient to conclude that a causal relationship exists; or

    (B) sufficient to conclude that a casual relationship is at least as likely as not."

Id. § 804(c)(2). Punitive damages are not recoverable under the CLJA. See id. § 804(g).

If I were considering whether to appoint Poulin, Willey, Anastopoulo, LLC under Rule 23(g)(3) at this juncture, I would have serious concerns about counsel's knowledge of the applicable law in light of the first four purported common issues counsel identified in the Williams complaint. I need not reach the issue at this time, however, in light of this court's unanimous decision to use its inherent powers and Federal Rules of Civil Procedure 1, 16, and 42 to enter the existing leadership order.