IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | |
| | ) | **COMMON BENEFIT ORDER NO. 1** |
| This Order Relates To: | ) | |
| ALL CASES | ) | |

Extraordinary commitment of time and resources will be needed to pursue actions arising under the Camp Lejeune Justice Act ("CLJA"), which have been entrusted to this Court's exclusive jurisdiction. Accordingly, in its July 19, 2023 Case Management Order No. 1, the Court appointed Plaintiffs' Lead and Co-Lead Counsel (collectively, "Plaintiffs' Leadership") and established a committee structure to undertake the necessary common benefit work. The Court now enters this Order to provide for the fair and equitable sharing among plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the Common Benefit of all plaintiffs in this complex litigation.

## I.      GOVERNING PRINCIPLES AND THE COMMON BENEFIT DOCTRINE

The governing principles of this Order are derived from the United States Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881) and refined in cases including *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885) and *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939), which predated and were applied independently of modern class actions and multidistrict litigation.  *See also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980).  The development, necessity, and jurisdictional authority for the application of this equitable doctrine to beneficiaries of complex litigation in the federal district courts was comprehensively explored in *In Re Air Crash*

*Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977), which has guided the courts since. *See also* MANUAL FOR COMPLEX LITIGATION, § 14.215 (4th ed., Federal Judicial Center 2004) (noting that "[l]ead and liaison counsel may have been appointed by the court to perform functions necessary for the management of the case but not appropriately charged to their clients"); Newberg and Rubenstein on Class Actions § 15:24 (6th ed. 2022) ("The common benefit fee is a mechanism for sharing the costs of that Common-Benefit work among the plaintiffs' lawyers in all of the individual cases. Specifically, the lawyers not involved in undertaking common benefit work … are effectively taxed a portion of their attorney's fees, with the tax ultimately being distributed to the lawyers who undertook common benefit work."); *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 365 F. Supp. 3d 685, 694-95 (S.D.W. Va. 2019) (citing the same authorities and principles in granting common benefit fees).

"A separate source of authority" for common benefit fees in complex litigation derives from the Court's "inherent 'managerial power over the consolidated litigation.'" *In re Cook Med.*, 365 F. Supp. 3d at 695 (quoting *In re Genetically Modified Rice Litig.*, No. 4:06 MD 1811 CDP, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010)). Once cases are consolidated or coordinated in one court "the court's express and inherent powers enable the judge to exercise extensive supervision and control [over the] litigation." MANUAL FOR COMPLEX LITIGATION, § 10.1 (4th ed. 2004). *See also In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2019 WL 4458579, at *8 (S.D.W. Va. Mar. 12, 2019), *report and recommendation adopted*, MDL No. 2187, 2019 WL 3385174 (S.D.W. Va. July 25, 2019) (granting Common-Benefit fees on these rationales); *see also In re C.R. Bard,* MDL No. 2187 Pre-Trial Order 54.

A "third source for this court's authority" is private agreement, usually in the form of a "Participation Agreement." *In re Cook Med.*, 365 F. Supp. 3d at 695. Counsel can "enter[] into a

participation agreement requiring contributions in exchange for access to common benefit work product," which is enforceable by the court. *In re Bard IVC Filters Prod. Liab. Litig.*, No. 22-15872, 2023 WL 5441793, at *2 (9th Cir. Aug. 24, 2023). Such agreements are enforceable even where there is no other connection between the case and the court, *id.*, and doubly so when there is another connection. As courts have continued to invoke these powers and refine their case management techniques over the decades, it has become "a customary practice in complex litigation for the court to make an early determination as to how time and expenses for the common benefit will be accounted for, if in fact a common benefit order is later granted." *In re Flint Water Cases*, 583 F. Supp. 3d 911, 922 (E.D. Mich. 2022).

Common benefit work product includes all work performed for the benefit of all plaintiffs generally, or of particular categories of plaintiffs, and extends from pre-trial matters and motions, discovery, trial preparation, and trial, through the settlement process—including the negotiation, implementation, and administration of comprehensive settlement programs—and all other work that advances this litigation to conclusion. The Court notes at the outset that evaluating contribution to the common benefit is a qualitative analysis because "not all types of work are created equal." *In re Vioxx*, 802 F. Supp. 2d 740, 772 (E.D. La. 2011) (quoting *Turner v. Murphy Oil USA, Inc*., 582 F. Supp. 2d 797, 810-11 (E.D. La. 2008)). Some work, though less time-consuming, has a greater impact on the litigation. For example, hours spent drafting critical briefs or preparing for and taking depositions of key witnesses, trial work, and settlement negotiation, generally provide greater common benefit than hours reviewing and coding documents. Thus, the Court, when necessary, will review such common benefit fees and expenses with an eye toward qualitative contribution, not merely hours spent.

## II.     APPLICABILITY

This Order applies to all parties who come before the Court either in cases now pending, or in cases later filed, as part of the proceeding known as *In re Camp Lejeune Water Litigation*. This Order further applies to the following, collectively "Participating Counsel": (1) all attorneys appointed to various positions in Case Management Order No. 1, and all members of the Plaintiffs' Executive Committee, Steering Committee, and subcommittees; (2) all attorneys with a fee interest in any cases now pending or later filed as part of the proceeding known as *In re Camp Lejeune Water Litigation*; and (3) all attorneys who consent to the Participation Agreement. An attorney consents to the Participation Agreement either by (a) signing the agreement or (b) after the entry of this Order, accepting or using the common benefit work product of this litigation, including the use of or access to a database or settlement facility developed with Common Benefit work or funds.

Participating Counsel are entitled to receive common benefit work product. Participating Counsel are prohibited from sharing any such work product with counsel who are not Participating Counsel. In return, Participating Counsel agree to the payment of the operative common benefit "holdback" as further defined in this Order, as set by the Court, on all Covered Claims. A "Covered Claim" is any claim or action pursuant to the Camp Lejeune Justice Act in which Participating Counsel hold a fee interest; provided, however, that Covered Claims shall not include (subject to further Orders of this Court as efforts toward comprehensive resolution continue) any cases that are settled with the Department of the Navy pursuant to the terms of the Public Guidance on Elective Option for Camp Lejeune Justice Act Claims as existing on September 15, 2023, *see* D.E. 20-1.  All Participating Counsel are bound by the terms, conditions, and obligations of this Order, and any other and future common benefit-related Orders of this Court.

## III.     REGULAR REVIEW OF COMMON BENEFIT TIME AND EXPENSES BY THE ADMINISTRATIVE AND COMMON BENEFIT COMMITTEE

The Court is aware of the disputes that can arise when claims are made for common benefit fees and costs at the conclusion of a case such as this. The Court adopts the following procedures to eliminate or, at the very least, minimize such disputes. Specifically, the Chair of the Administrative and Common Benefit Committee or his designee(s) (the "Chair"), in consultation with the Administrative and Common Benefit Committee, will have the primary responsibility for management, oversight, and substantive review of matters related to and claimed to be common benefit, subject to the oversight and approval of Plaintiffs' Leadership.

The purpose of the Chair's substantive review is to have time and expenses accepted or rejected as items potentially eligible for common benefit compensation and reimbursement as this matter progresses, and not wait until nearly the end of the litigation for a substantive review by a fee committee appointed by the Court. It is the Court's intent to avoid, as much as possible, any disputes over the classification of time and expenses as common benefit.

### A.     Procedures for submission and review of time and expenses:

i.    By the 20th day of each month, counsel who seek to look to any common benefit fund for remuneration shall submit their claimed common benefit time and expenses incurred during the prior month in the manner set forth in this Order and in accordance with any additional procedures implemented by the Administrative and Common Benefit Committee.

ii.   The Chair, in consultation with the Administrative and Common Benefit Committee, shall have the discretion to choose an independent, third-party vendor to perform an initial compliance review of common benefit time and expense submissions.

iii.    At the direction and under the oversight of the Chair, a review of such time and expenses shall be conducted, on a monthly basis, to determine whether the time and expenses adhere to the requirements in this Order, whether they are eligible for common benefit consideration, and whether they are otherwise reasonable and necessary for the fair and efficient adjudication of this matter.

iv.    Should the Chair discover any matter requiring further clarification, attention, or information in order to determine whether it adheres to the above requirements, the Chair shall confer with the counsel who submitted the report, for the purpose of obtaining the necessary information to make the above determination.  Any issues that require the deliberation and decision of the entire Administrative and Common Benefit Committee or of Plaintiffs' Leadership, shall be brought to their attention by the Chair.

v.     If any counsel, including an Eligible Participating Counsel (as defined in section IV.A. below), disagrees with a decision allowing or disallowing his or her common benefit time or expense, such counsel may submit the matter to Plaintiffs' Leadership for consideration and a final decision regarding the matter.  A majority vote of Plaintiffs' Leadership shall constitute the final decision on any such submitted matters.

vi.    If no disagreement with a disallowance of any common benefit time or expenses is submitted by counsel to the Chair within 30 days after such disallowance, it shall be final, and no Eligible Participating Counsel or non-

Participating Counsel shall have the right to modify or seek modifications of such decision at a later time.

vii. The Administrative and Common Benefit Committee shall report on a monthly basis to Plaintiffs' Leadership on common benefit time and expense submissions; and shall report such information, through Liaison Counsel, to the Court *in camera*, on a regular basis, or at any time upon the Court's request, with such level of detail as it may request.

viii. This process of submission and substantive review is subject to modification by the Court.

ix. The Court retains the sole authority to issue final rulings on all decisions regarding common benefit attorneys' fees and expenses. As to any common benefit time or expense approved under the terms of this Order, only the Court is authorized, at the appropriate time, to determine whether such time and expenses have been appropriately expended for the common benefit, and whether and in what amount to compensate or reimburse them.

## IV.  COMMON BENEFIT WORK

### A.  ELIGIBLE PARTICIPATING COUNSEL

"Eligible Participating Counsel" are the counsel on Plaintiffs' Steering Committee, Plaintiffs' Executive Committee, Plaintiffs' Leadership and Plaintiffs' Liaison Counsel (along with members of their respective firms and staff) who perform common benefit work and incur common benefit expenses that have been authorized by Plaintiffs' Leadership and timely reported pursuant to the provisions of this Order.

**B.     AUTHORIZATION FOR COMPENSABLE COMMON BENEFIT WORK**

Authorized common benefit work is limited to common benefit work undertaken at the direction, or with the permission, of Plaintiffs' Leadership pursuant to Case Management Order No. 1. Unless it is specifically and explicitly authorized in writing, no time spent on developing or processing individual issues in any case for an individual plaintiff or claimant will be considered or should be submitted as common benefit work, nor will time spent on any unauthorized work be compensable. Plaintiffs' Leadership may design internal procedures to streamline and expedite their authorization process, so long as they regularly monitor and review assignments in their meetings to promote efficiency and minimize duplication of effort.

The following guidelines regarding the submission and compensability of common benefit time and expenses are adopted for the management of timekeeping, cost reimbursement, and related common benefit issues. These guidelines will be presumptively applied by the Court in considering and approving the award of common benefit attorneys' fees and expenses.

The failure to secure authority from Plaintiffs' Leadership to perform common benefit work and incur common benefit expenses, to maintain and timely provide records, or to provide a sufficient description of the activity will be grounds for denying compensation for those attorneys' fees or expenses in whole or in part.

**C.     TYPES OF COMMON BENEFIT WORK**

Examples of authorized[1] and unauthorized common benefit work include, but are not limited to:

    i.      **Depositions.** Time and expenses from Eligible Participating Counsel who are designated as authorized questioners, authorized to prepare or assist in

---

[1] See Authorized Coding Tasks, attached hereto as Exhibit A.

preparation for, or otherwise authorized to attend the deposition by Lead Counsel may be considered common benefit work.

ii.    **Periodic Conference Calls and Zoom Conferences.** These virtual meetings may be held so that individual attorneys are kept up to date on the status of the litigation, and simply attending them is not common benefit work. All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their clients, and that is a reason to listen in on those calls. The attorneys designated by Plaintiffs' Leadership to run or participate in those calls to provide information or reports, or to conduct the business of their committees, are working for the common benefit by keeping other lawyers informed and educated about the case, and their time may be considered common benefit work.

iii.   **Periodic Status Conferences.** The Court sets and conducts status conferences to manage the litigation so that it continues to move forward efficiently, and to adjudicate legal, procedural, and scheduling matters as these arise. Individual attorneys are free to attend any status conference held in open court in order to keep up to date on the status of the litigation, but simply attending and listening to such conferences, or reviewing the transcripts, is not common benefit work. All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their clients. Plaintiffs' Leadership or their designees, as well as any other attorney whose attendance at a status conference is specifically requested by the Court, may submit their time for evaluation as common benefit time.

iv. **PEC and PSC Meetings or Calls.** For purposes of Plaintiffs' Executive Committee (PEC) and Plaintiffs' Steering Committee (PSC) phone calls, Zoom conferences, or other meetings, a presumption exists that only one participant per firm will qualify for common benefit time, unless a committee contains more than one attorney otherwise authorized by Plaintiffs' Leadership.

v. **PEC and PSC Subcommittee Meetings or Calls.** For purposes of PEC and PSC Subcommittee phone calls, Zoom conferences, or other meetings, a presumption exists that only one participant per firm will qualify for common benefit time, unless a committee contains more than one attorney otherwise authorized by Plaintiffs' Leadership.

vi. **Identification and Work-Up of Experts.** Participating Counsel are expected to identify experts at the direction, or with the permission, of Plaintiffs' Leadership, after the date of Case Management Order No. 1. If a Participating Counsel incurs time or expense relating to an expert without permission or approval, such time and expense would not be eligible as common benefit.

vii. **Attendance at Seminars.** Mere attendance at a seminar does not qualify as common benefit work unless the individual is attending at the direction, or with the permission, of Plaintiffs' Leadership for the common benefit and the attendance is authorized in advance.

viii. **Document and ESI Review and Analysis.** Only review and analysis of documents, including electronically stored information ("ESI"), that is

undertaken by a designated attorney at the direction, or with the permission, of Plaintiffs' Leadership will be considered common benefit work. The review done by a designated attorney's office may be performed by appropriately trained individuals selected by the attorney. The review of documents beyond the scope of the assignment is not considered common benefit work. Plaintiffs' Leadership will receive periodic reports from the vendor(s) retained to manage the document review database of computer billing time for document review. Such vendor should have the capability to track actual time spent by each reviewer. Plaintiffs' Leadership will periodically review time submissions related to document review, and document review that is duplicative of what has already been assigned may not be compensated.

ix. **Contract Attorneys.** Work by attorneys who are hired as contract attorneys will not be eligible for common benefit consideration without the prior express written authorization of Plaintiffs' Leadership.

x. **Review of Pleadings, Briefs, and Orders.** All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their clients, and review of pleadings and orders is part of that obligation. Orders and important pleadings and other key public information are posted, for the benefit of claimants, counsel, and the public, on the website maintained by Plaintiffs' Leadership at: https://camplejeunecourtinfo.com. Time spent by counsel reviewing or summarizing pleadings, briefs, or Orders in furtherance of authorized

assignments from Plaintiffs' Leadership will be considered for common benefit. All other counsel reviewing those documents are doing so for their own benefit and the benefit of their own clients, and this review time is not considered common benefit. Nothing in this paragraph should be construed to prevent Plaintiffs' Leadership, Liaison Counsel, the PEC, or PSC from submitting common benefit time for reviewing Orders and pleadings that are germane to all members of the leadership and are necessary for review to fulfill their committee or Court-appointed obligations.

xi.  **Emails.** All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their clients, and review of group or mass emails is part of that obligation. Time spent reviewing emails and providing non-substantive responses generally is not compensable, unless germane to a specific task being performed by the receiving or sending attorney that is related directly to that email. For example, review by a recipient of an email sent to dozens of attorneys to keep them informed on a matter on which they are not specifically working would not be compensable. If time submissions are heavy on email review with little related substantive work, that time may be heavily discounted or not compensated at all.

xii. **Review of Discovery Responses.** All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their clients, and that is a reason to review discovery responses served in this litigation. The time of attorneys designated by Plaintiff' Leadership to

review and summarize those discovery responses will be considered for common benefit. All other counsel reviewing those discovery responses are doing so for their own benefit and the benefit of their own clients, and the review is not considered common benefit.

xiii. **Trial and Discovery Pool.** While the work-up of individual cases is not considered common benefit, in the event that a case is selected as part of an approved early preference or early track trial pool, the work performed on the case, including pre-trial motions and trial, as part of the approved trial process may be considered for common benefit, to the extent it complies with other provisions of this Order. Work performed on an individual case prior to that case's selection as part of an approved trial pool will not be common benefit work.

xiv. **Leadership and Committee Work**. The work of each of the Committees described in and established by Case Management Order No. 1 is common benefit work to the extent that it otherwise complies with the requirements of this Order and all other Case Management Orders entered by the Court.

xv. **Paralegal Work.** Work performed by paralegals will be subject to all the same procedures and requirements set forth in this Order as that performed by attorneys.

xvi. **Client Recruitment.** Time spent traveling to, hosting, or participating in meetings, calls, etc. for the purpose of marketing, client recruitment, or client acquisition is not eligible common benefit time.

## V. COST CONTRIBUTIONS AND SUBMISSION OF TIME AND EXPENSE RECORDS

### A. CONTRIBUTIONS TO THE COMMON BENEFIT EXPENSE FUND

Appointments of counsel to Plaintiffs' Leadership, to Liaison Counsel, to PEC, and PSC positions, and counsels' service on the Committees and subcommittees established or authorized by Case Management Order No. 1 all come with serious responsibilities to the Court, to the plaintiffs, and to fair and efficient case management. One of these responsibilities is financial: the above-described counsel are creating time and cost savings and economies of scale, and reducing duplication of time, effort, and expense, for all plaintiffs, by advancing the costs of litigation on matters affecting or benefitting plaintiffs as a whole. The Chair and Co-Chairs of the Administrative and Common Benefit Committee shall establish and propose to Plaintiffs' Leadership for approval a system for cost contributions, sometimes called front-end assessments, to be paid in determined amounts on a determined schedule by the above-described counsel. These payments shall be deposited into an interest-bearing Common Benefit Expense Fund ("Expense Fund"), which the Chair shall establish at a responsible financial institution situated in this District. The Chair shall monitor payments and approve common benefit Shared Expenses (as defined below) and disbursements in accord with this Order. The Chair along with Liaison Counsel shall report *in camera* to the Court with respect to assessments deposited into and expenses paid from the Expense Fund, at the Court's request.

The Court recognizes that Plaintiffs' Leadership may also find it necessary to make such front-end assessments on Eligible Participating Counsel to fund common benefit activity in this litigation and authorizes it to do so.

Once the Chair provides notice of an assessment, the assessed counsel will have thirty (30) days to deposit their respective assessments into the Expense Fund. Any common benefit work

performed by the assessed counsel's firm while the assessed counsel is in arrears may not be eligible for submission or consideration. Failure by any assessed counsel to deposit assessments on a timely basis will also be a consideration during the Court's leadership reappointment process.

**B.      COMMON BENEFIT TIME AND EXPENSE SUBMISSION GUIDELINES**

All counsel who seek to recover Court-awarded common benefit attorneys' fees and expenses in connection with this litigation shall keep a daily, contemporaneous record of their time and expenses, noting with specificity the amount of time in tenth of an hour (0.10) increments, location (if relevant), and particular activity, along with a brief note indicating authorization for the activity in question.

Each firm submitting common benefit time and expense reports must include such reports for each lawyer and staff member engaged in common benefit work for this litigation. Report periods close on the last day of each month, and records for time worked and/or expenses incurred during that period must be submitted by the 20th day of the following month. For example, all time and expense entries for common benefit work performed in November would be due no later than December 20th.

The first reporting period will cover time spent or expenses actually incurred from July 19, 2023 through the end of the month in which this order is entered and such report will be due within 30 days thereafter. The Court understands that Common Benefit work may have been done prior to July 2023 and, thus, time spent or expenses incurred prior to July 19, 2023 may be considered by the Court as recoverable on a case-by-case basis at a later time.

Absent good cause, failure to submit time and expense reports in a timely manner may preclude further common benefit work and/or exclude the delinquent months' time from consideration.

Common benefit time and expense reports must be submitted according to procedures established by the Administrative and Common Benefit Committee. No other form of submission for time and expenses will be accepted. All time and expense reports must be accompanied by a certification that the time and/or expenses are true, accurate, authorized by Plaintiffs' Leadership, and otherwise compliant with this Court's Orders. Submission of excessive, unreasonable, or unnecessary common benefit time and expense entries, as well as the failure to secure authority to perform common benefit work and incur expenses, to maintain and timely provide time and expense records, or to provide a sufficient description of the activity will be grounds for denying the recovery of attorneys' fees or reimbursement of expenses.

C.    TIME

  i. All time must be authorized by Plaintiffs' Leadership.

  ii. Counsel shall keep contemporaneous daily records of their time spent in connection with authorized common benefit work on this litigation, using the approved forms to be circulated by the Administrative and Common Benefit Committee, clearly indicating with specificity the hours, location, particular activity, the source of authorization for the activity and indicating their position in the firm (Partner, Associate or Paralegal).

  iii. Time entries that are not sufficiently detailed will not be considered for common benefit payment.

  iv. All time submitted for each firm shall be maintained in a one-tenth (0.10) hour increments.

  v. By submitting time, each submitter is attesting to the accuracy of the submissions.

## D.    EXPENSES

In order to be considered for reimbursement, common benefit expenses must meet the requirements of this section. Specifically, said expenses must be (a) for the common benefit, (b) appropriately authorized by Plaintiffs' Leadership, (c) timely submitted, and (d) appropriately documented or verified. Expenses will be deemed as either "Shared" or "Held."

      i.    Shared Expenses are costs incurred for the Common Benefit as a whole. No client-related costs can be considered as Shared Expenses. All costs that meet these requirements and fall under the following categories shall be considered Shared Expenses and qualify to be submitted to and paid directly from the Fund. All Shared Expenses must be approved by Plaintiffs' Leadership prior to payment. Shared Expenses include, but are not limited to:

1.    Costs for the electronic storage, retrieval, and searches of ESI;

2.    Deposition and court reporter costs;

3.    Document Depository: creation, operation, staffing, equipment, and administration;

4.    Expert witness and consultant fees and expenses;

5.    Printing, copying, coding, and scanning (out-of-house or extraordinary firm cost);

6.    Plaintiffs' Leadership/PEC/PSC group administration matters, such as meetings, food, and conference calls;

7.    Services by outside third-party vendors, consultants, attorneys, and/or accountants;

8.    Common witness expenses, including travel for the witness;

9.      Translation costs;

10.     Bank or financial institution charges;

11.     Third-party investigative services; and

12.     Other Shared Expenses that arise, but are not enumerated above, and are deemed Shared Expenses by Plaintiffs' Leadership.

ii.     Held Expenses are those that do not fall into the above Shared Expenses categories and are not payable out of the Fund, but are incurred for the common benefit in connection with work authorized by Plaintiffs' Leadership. No specific client-related costs can be considered as Held Expenses. Held Expense records shall be submitted on a monthly basis and are subject to Court approval and award in connection with its common benefit awards determinations. All costs that meet these requirements and fall under the following categories shall be considered Held Expenses and qualify for consideration for future reimbursement:

1.      Telefax, conference call, and Zoom or other virtual meeting charges;

2.      Postage, shipping, courier, and certified mail;

3.      Printing and photocopying (in-house);

4.      Computerized research, such as with Lexis/Westlaw;

5.      Approved Attorney travel (subject to the travel expense guidelines set forth below) for depositions, expert and consulting witness meetings, Plaintiffs' Leadership meetings, court matters, and other Common Benefit work including:

a.      Airfare;

b.      Reasonable ground transportation (car rental, cabs, etc.);

c.      Hotel;

d.      Reasonable meals and entertainment; and

e.      Other reasonable expenses, such as parking.

**E.      EXPENSE LIMITATIONS**

i.      Airfare: Only the available coach airfare at the time of booking, or fares consistent with the Administrative Office of the U.S. Courts' published Judicial Staff Travel Regulations, for a reasonable itinerary will be reimbursed. If alternative air travel is utilized, only the value of a comparable coach airfare at the time of booking for a reasonable itinerary will be reimbursed.

ii.      Hotel: Hotel room charges will be reimbursed up to the greater of (a) $300 per night excluding taxes, or (b) the available room rate of the Hyatt, Hilton, or Marriott hotels in that city.

iii.      Meals: Meal expenses must be reasonable.

iv.      Cash Expenses: Miscellaneous cash expenses for which receipts generally are not available (gratuities, luggage handling, pay telephone, etc.) will be reimbursed up to $50.00 per trip if the expenses are properly itemized.

v.      Automobiles for Hire: Automobile for Hire fares or charges will be reimbursable, if reasonable.

vi.      Mileage: Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the attorney's firm. The maximum allowable rate will be the maximum rate allowed by the IRS (the 2023 rate is 65.5 cents per mile).

F.    **NON-TRAVEL LIMITATIONS**

      i.    **Shipping, Courier, and Delivery Charges**: All claimed expenses must be documented with bills showing the sender of the package, recipient, and destination of the package.

      ii.   **Postage Charges**: A contemporaneous postage log or other supporting documentation must be maintained and submitted. Postage charges are to be reported at actual cost.

      iii.  **In-House Photocopy**: A contemporaneous photocopy log or other supporting documentation must be maintained and submitted. The maximum copy charge is 15 cents per page.

      iv.   **Computerized Research**: Expenses for computerized legal research, such as with Lexis/Westlaw, should be in the exact amount charged to the firm for these research services.

G.    **GENERAL PROVISIONS**

The submissions detailing expenses shall be certified by a partner in each firm attesting to the accuracy of the submissions. (See Exhibit A). Attorneys shall keep receipts for all expenses. Credit card receipts (not the monthly statements) are an appropriate form of verification so long as accompanied by a declaration from counsel that work was performed and paid for the common benefit. Hotel costs must be proven with full hotel invoice. The description of unclaimed expenses on the invoice may be redacted.

VI.   **VOLUNTARY PARTICIPATION AGREEMENT**

Attached hereto as Exhibit B and incorporated herein is a voluntary "Attorney Participation Agreement" between Plaintiffs' Leadership and other plaintiffs' attorneys. The Attorney Participation Agreement is a private and cooperative agreement between plaintiffs' attorneys only.

No access to or use of common benefit work product is authorized for attorneys who do not consent to the Attorney Participation Agreement. Any attorneys who access or use common benefit work product, including the use of or access to a database or settlement facility developed with common benefit work or funds, will be deemed to have consented to the Attorney Participation Agreement. The Court will have final authority regarding the award of fees, the allocation of those fees, and awards for cost reimbursements in this matter. Participating Counsel will be bound by the Court's determination on common benefit attorney fee and expense awards. All counsel who consent to the Attorney Participation Agreement knowingly and expressly waive any right to appeal those decisions and expressly waive the right to assert the lack of enforceability of this Order or to otherwise challenge it.

## VII. ESTABLISHMENT OF THE COMMON BENEFIT HOLDBACK FUND AND DUTIES OF ADMINISTRATOR THEREOF

The Court hereby authorizes the establishment of the Camp Lejeune Common Benefit Holdback Fund ("Holdback Fund") pursuant to the limitations set forth in this Order.

### A. APPOINTMENT OF THE HOLDBACK ADMINISTRATOR

The Court will appoint an Administrator of the Camp Lejeune Water Holdback Fund ("Holdback Administrator") and, at the appropriate time, direct the Holdback Administrator to establish an insured, interest-bearing account to receive and disburse the portion of funds that are held back under the common benefit assessment as provided in this Order. The Court directs the Chair of the Administrative and Common Benefit Committee to submit a recommendation for an individual to serve as Holdback Administrator within 10 days from the date of this Order. The Holdback Administrator shall designate an escrow agent (the "Escrow Agent").

The Holdback Administrator shall consider, in designating the Escrow Agent and in procuring other professional services, the charges that the Escrow Agent or provider of

professional services will impose for its actions and the ability of the Escrow Agent or provider of professional services to undertake the tasks called for with efficiency and responsiveness.

The Escrow Agent shall not acquire or hold for longer than 90 days any debt securities, certificates, or investments unless such instruments are a U.S. Treasury Bill, U.S. Treasury Money Market, U.S. Government Money Market, or similar type of account guaranteed by the United States or an agency thereof, including an FDIC-Insured Account. The U.S. Treasury Money Market or U.S. Government Money Market must be registered under the Investment Company Act of 1940, as amended, and have the highest rating obtained from either Moody's or S&P. In determining investments to be held by the Escrow Agent, primary regard shall be given by the Escrow Agent to safety of principal.

In connection with their services, the Holdback Administrator and the Escrow Agent shall be entitled to be paid reasonable fees and to be reimbursed for reasonable expenses, when and as approved by this Court, based upon statements that they shall periodically submit to the Court, with copies to Plaintiffs' Leadership. If funds for reimbursement are not then available in the Fund, they shall be paid by Plaintiffs' Leadership, which shall be reimbursed out of the Holdback Fund when and if it ever is funded.

All funds deposited into the Holdback Fund shall be held subject to the direction of the Court. No party or attorney has any individual right to any of the Holdback Fund, except to the extent of amounts directed to be disbursed to such person by Order of the Court. The Holdback Fund shall not constitute the separate property of any party or attorney nor be subject to garnishment or attachment for the debts of any party or attorney, except when and as directed to be disbursed as provided by Order of the Court to a specific person.

In connection with his duties, the Holdback Administrator shall:

i. Have all such power and authority over the Holdback Fund as necessary or convenient to exercise the authority granted herein;

ii. Keep and report periodically to this Court an accounting of the funds received, maintained, and disbursed relating to the Holdback Fund;

iii. Make decisions and take action with respect to treatment of the Holdback Fund for purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes, including creating reports, maintaining, and reporting relating to the Holdback Fund and its income, if any, derived therefrom;

iv. Out of the assets of the Holdback Fund, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

v. Procure, upon consultation with the Administrative and Common Benefit Committee, professional accounting, legal, and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and

vi. Adopt and implement reasonable procedures consistent with this Order.

## B.    REQUIREMENTS OF THE ESCROW AGENT

The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; (3) maintains an office or agent in this District; and (4) has a total risk-based capital in excess of five billion dollars ($5,000,000,000.00) and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian, or trustee with respect to funds it holds.

## VIII. COMMON BENEFIT ASSESSMENT/HOLDBACK

Given the ongoing and substantial commitment of time and resources by Plaintiffs' Leadership, Liaison Counsel, PEC, PSC, and Eligible Participating Counsel in this litigation, it is the intention of this Order to create a fund and process to reimburse these counsel for the time and expense of prosecuting these cases for the benefit of all plaintiffs, and to compensate and reimburse them for approved common benefit time and expenses, in the exercise of its judicial discretion and authority over counsel practicing before the Court, informed by the record-keeping and reporting process set forth in this Order. The Court recognizes that these counsel will be advancing substantial funds to finance the expenses of the litigation, briefing and presenting common legal and factual issues, hiring expert witnesses, conducting discovery, selecting, preparing for, and conducting bellwether and/or common question trials, and pursuing resolution for the benefit of all plaintiffs and claimants in this matter. The Court observes that this common benefit work relieves a substantial part of the burden that would otherwise fall upon individual lawyers, will create significant economies and efficiencies for the litigants and the Court, and that a reasonable holdback from successfully resolved Covered Claims is appropriate to fund such an account.

Courts have imposed a range of percentage assessments on plaintiffs' recoveries in settlements and judgments in complex litigation, usually paid from the lawyers' portion of these recoveries. Authoritative commentators who have studied and surveyed these awards in historical and recent cases report a range of common benefit assessments from less than 2% to more than 10%, including a few as high as 12.5% and above. Newberg and Rubenstein on Class Actions, "Common Benefit Fees", §§ 15:113-118 (6th ed. 2022). Assessments are set in some cases at the beginning of the litigation, and later amended as the litigation progresses; in other cases, the courts wait for the litigation to develop before setting an appropriate assessment. Either way, assessments

are always subject to amendment, to avoid both windfalls to, and the shortchanging of, the common benefit counsel. *Id.*

Therefore, recognizing there is no "right" number to apply at the outset, but that litigants benefit from some predictability, this Order establishes an initial common benefit assessment, or "Holdback," of 3% on any resolution of "Covered Claims" reached after the date of this Order. This percentage is subject to adjustment by the Court, on due notice, if the evolving circumstances of the litigation so require.

The Holdback shall be deducted by the Defendant and paid to the Escrow Agent in the amount of three percent (3%) of the Gross Monetary Recovery, explained below. The Holdback shall not be deducted, by anyone, from the portion of any recovery that any individual plaintiff is entitled to under the plaintiff's retention agreement; rather, the Holdback will be deducted from the amount charged by the individual plaintiff's attorney, which shall in turn be governed by the retention agreement between each attorney and his or her clients. In the Court's view, this will maximize the recovery to the plaintiff and fairly recognize the work and risk that both common benefit and individual plaintiffs' attorney provided.

The Holdback will be calculated on the "Gross Monetary Recovery" on all Covered Claims. A "Gross Monetary Recovery" occurs when a claimant or plaintiff accepts monetary consideration to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recovers a judgment for monetary damages or other monetary relief, such as a judgment for, or consideration for the release of, compensatory damages under the CLJA.

### A. GROSS MONETARY RECOVERY HOLDBACK

This Court's Holdback shall be reserved for Court-awarded common benefit attorneys' fees and expenses and applies to any "Gross Monetary Recovery" on all "Covered Claims" paid by, or on behalf of, the United States of America ("Defendant"). Defendant is, therefore, directed

to withhold this amount from any and all amounts paid to any claimant or plaintiff and their counsel and to pay the Holdback directly into the Holdback Fund.

This Court's Holdback applies to all sums to be paid in settlement of the claim or action, including the present value of any fixed and certain payments to be made in the future. It does not apply to court costs that are to be paid by Defendant or "offsets", including payments made directly by Defendant on a formal intervention asserted directly against Defendant by third parties, such as physicians, hospitals, and other health care providers on Court-recognized, valid subrogation claims related to treatment of the claimant or plaintiff.

Dismissal of any Covered Claim shall be accompanied by a certification by the plaintiff's and Defendant's counsel that the Holdback has been withheld and deposited into the Holdback Fund.

## B. POTENTIAL FEE AND EXPENSE ALLOCATION

At the appropriate time, and in the manner to be prescribed by the Court, Plaintiffs' Leadership, in consultation with the Administrative and Common Benefit Committee, will be responsible for making, by duly noticed motion, any petition for the award of common benefit fees or expenses, as well as making a recommendation to the Court as to the allocation of such fees and expenses if awarded. Only counsel who comply with the requirements and procedures of this Order with respect to applicable authorization, record-keeping, and reporting of their common benefit time and expenses shall be entitled to be included in any such application. In apportioning any common benefit award, appropriate consideration will be given to the experience, talent, and contribution made by counsel, and to the time and effort expended by counsel as well as to the type, necessity, quality, and value of the legal services rendered. The Administrative and Common Benefit Committee can petition the Court for appointment of a Special Master for purposes of preparing a qualitative analysis in making a recommendation to the Court.

This Order establishes the requirements, procedures, and guidelines for the submission and compensability of common benefit time and expenses. Counsel will only be eligible to receive common benefit attorneys' fees and cost reimbursements if the time expended, costs incurred, and activity in question were: (a) for the common benefit, as opposed to work the attorney performed for his or her own clients, (b) appropriately authorized, and (c) timely and properly submitted.

Compliance with this Order is required for common benefit time and costs to be eligible for compensation but does not create a presumption, even if initially approved by the Chair of the Administrative and Common Benefit Committee or Plaintiffs' Leadership, that such time and expenses will be compensated or reimbursed. The final determination of any common benefit fee award and reimbursement of expenses will be made by the Court.

### C.      RETURN OF EXCESS OR UNAWARDED ASSESSMENTS FROM HOLDBACK FUND

If the Holdback Fund exceeds the amount needed to make payments as provided in this Order, the Court will order the Chair of the Administrative and Common Benefit Committee to refund any such surplusage to those who were subject to the Holdback, in proportion to the amount that was withheld.

IT IS SO ORDERED, this _____ day of _____, 2023.


_____
RICHARD E. MYERS II
Chief United States District Judge

_____
TERRENCE W. BOYLE
United States District Judge


_____
LOUISE W. FLANAGAN
United States District Judge

_____
JAMES C. DEVER III
United States District Judge