IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **CAMP LEJEUNE WATER LITIGATION** ) | **STIPULATED ORDER ESTABLISHING** |
| ) | **PROTOCOL FOR DOCUMENT** |
| ) | **COLLECTION AND PRODUCTION** |
| This Documents Relates to: ) | |
| ALL CASES ) | |
| ) | |

This joint stipulation is entered by and between Plaintiffs, through Lead and Co-Lead Counsel, and Defendant United States of America (hereinafter "Parties"), with terms and scope recited herein.

1. **Definitions.**

For purposes of this Order Establishing Protocol for Document Collection and Production (hereinafter "Order"), the following definitions apply:

   a. The "Action" means the case captioned *In re: Camp Lejeune Water Litigation*, Case No. 7:23-CV-897 (E.D.N.C.), or any individual case filed under the Camp Lejeune Justice Act of 2022 ("CLJA"), Section 804 of the PACT Act, Pub. L. No. 117-168, 136 Stat. 1759 (2022).

   b. "Application" means software that is programmed for one or more specific uses or purposes.

   c. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, paper documents, imaged hard copy documents, and tangible things.

   d. "Electronically Stored Information" or "ESI" shall carry its broadest possible meaning consistent with Fed. R. Civ. P. 34(A). ESI also includes relevant,

1

proportional, evidentiary, metadata. ESI excludes information in paper form or that originated in paper form and was scanned to digital form (hereinafter referred to as "imaged hard copy documents").

e. "File" means a collection of related ESI stored as a unit under a specified name on storage medium.

f. "Imaged Hard Copy Documents" means documents originating in paper form that are scanned to digital form.

g. "Metadata" means the structural information of ESI that contains additional information about the ESI (i.e. file properties), including, for example, date created, author, to/from, and date/time sent.

h. "Native File(s)" or "Native Format" means ESI that is a file or datum created and defined by a computer-based, cloud-based, or artificial intelligence-based application (including, for example, *.docx files for Microsoft Office, *.xlsx files for Microsoft Excel and *.eml and/or*.pst files for Microsoft Outlook and other email programs).

i. "Non-Custodial ESI Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

j. "Producing Party" means a Party that produces documents.

k. "Production Specifications" means the specifications agreed to by the Parties and attached hereto as Appendix A.

l. "Receiving Party" means a Party to whom documents are produced.

m. "Responsive Document" or "Responsive ESI" means any Document or ESI that

2

Case 7:23-cv-00897-RJ   Document 32-1   Filed 10/26/23   Page 2 of 12

the Producing Party has agreed to produce or log, or that the Producing Party has been ordered to produce by the Court.

2. **Purpose**. This Order will govern the discovery, collection, and production of documents, including ESI, in the Action. The Order is intended as a supplement to the Federal Rules of Civil Procedure ("FRCP"), the Local Rules of the Eastern District of North Carolina, and any other applicable orders and rules. This Order shall supersede any instructions in existing or future discovery requests, except as modified by written stipulations of the Parties and approved by the Court. To the extent that instructions in existing or future discovery requests conflict with this Order, the Order shall govern.

The Parties will engage in discovery proceedings in the action, and their counsel have engaged in substantive discussions regarding the discovery of documents and ESI. The Parties mutually seek to reduce the time, expense, and other burdens of discovery of hard copy documents, imaged hard copy documents, and ESI, and to define the scope of their obligations with respect to producing such information and materials. This Order does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary during the action.

3. **Scope**. This Order shall apply to all discovery exchanged in the Action as set forth in the categories below.

   a. **Plaintiff Record Request Compilation**

      i. A Plaintiff's Record Request Compilation shall consist of all Documents gathered in response to a Plaintiff's request as contemplated by Plaintiff Record Request Protocol

   b. **Plaintiff Census Documents**

i. A Plaintiff's Census Documents shall consist of all information—whether narrative or document-based—submitted by a Plaintiff in accordance with Plaintiff Census Protocol.

c. **Other Discovery**

   i. Other Discovery shall consist of any Documents requested or produced that do not fall into either category described in Paragraphs 3(a) or 3(b).

   ii. As to the scope of Other Discovery, the Parties further agree to the following:

   1. **Custodians**. The Parties shall meet and confer to reach agreement on the names of Custodians subject to searches for ESI. In addition, the Parties shall meet and confer to reach agreement on centralized, non-custodial sources of ESI to be searched, such as databases, shared filed servers, and collaboration sites.

   2. **Methods of Collection, Searching, and Review**.

      a. The parties shall disclose and meet and confer as necessary regarding search terms.

      b. The parties shall disclose if they intend to utilize Technology Assisted Review (TAR) (including but not limited to predictive coding technologies) and will meet and confer as necessary regarding proposed protocols and quality control.

      c. DeNISTing. The Parties further agree that as set forth in Paragraph 4(b) of the Production Specifications (Appendix

4

A), each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

    d. Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

d. **Releases.** Plaintiffs agree to complete and return to Government counsel any forms or releases necessary to facilitate disclosure of any of the above categories of information.

4. **Production Format (ESI)**. The Parties agree to make all reasonable efforts to ensure that discovery is provided in the following formats:

    a. **Plaintiff Record Request Compilation:**

        i. Imaged Hard Copy Documents. These documents may be produced according to Paragraph 2(b) and Paragraph 9 of the Production Specifications (Appendix A). The Parties agree that no further unitization, manual coding, or deduplication of these documents beyond that applied during the initial digitization process, whenever accomplished, of these documents is required before production. The Parties accordingly agree that Paragraph 4(a) of the Production Specifications does not apply to this category of documents.

5

Case 7:23-cv-00897-RJ   Document 32-1   Filed 10/26/23   Page 5 of 12

ii. Native Files. Should Native Files be part of any Plaintiff Record Request Compilation, such documents may be produced according to Paragraph 2 and Paragraph 3 of the Production Specifications (Appendix A).

iii. Disputes. Should a dispute arise about the Production of any Plaintiff's Record Request Compilation, the Parties agree to meet and confer prior to presenting the issue to the Court for resolution.

b. **Plaintiff Census Documents:**

i. Census Responses. The Parties presume that Plaintiffs will maintain a copy of their individual Census Responses and, absent good cause, re-production of such Responses will not be required. Upon a showing of good cause, any Plaintiff's Census Response Documents shall be produced as a report from the Census Database contemplated by the Parties and described in Plaintiff Census Protocol. The Parties agree that all such reports will be treated as Imaged Hard Copy Documents for production purposes as set forth in Paragraph 4(a)(i) herein.

ii. Uploaded Census Materials. The Parties presume that Plaintiffs will maintain a copy of any supporting documents uploaded as part of the Census Document collection process and, absent good cause, re-production of such Responses in the uploaded form will not be required. Upon a showing of good cause, any Plaintiff's supporting documents shall be produced in their originally uploaded form. The Parties agree that all such uploaded materials will be treated as Imaged Hard Copy Documents for production purposes as set forth in Paragraph 4(a)(i) herein.

iii. Disputes. Should a dispute arise about the Production of any Plaintiff's Census Data, the Parties agree to meet and confer prior to presenting the issue to the Court for resolution.

c. **Other Discovery:**

i. General Form of Production. All Other Discovery, including ESI, shall be produced as set forth in the Production Specifications (Appendix A).

ii. Mobile device data. The responding party shall identify, collect, and produce any and all Responsive ESI from mobile devices, messaging platforms, workspace collaboration tools and other technologies. These technologies include, but are not limited to, smart phones, cell phones, tablets, PDAs, Blackberry, smart phone information, tablet information, voicemail messaging information, instant messaging, chat messaging, text messaging, Slack, conference call information, video/audio conferencing, workspace collaboration tools (e.g., GoTo Meeting, WebEx, MS Teams, Zoom), and related/similar technologies. In selecting an appropriate collection method and form of production for mobile device data, the responding party will consider, at a minimum, applicable agency policies and procedures, cost, volume of responsive data, and usability of the produced data. The Parties will meet and confer about the format for production of such data.

iii. Social Media and Other Application Data. Parties will meet and confer regarding export formats prior to collection or production of any responsive ESI from social media (e.g., Facebook, Twitter, LinkedIn,

Instagram, Google+, etc.) or other Application to ensure that such ESI is collected in a way that preserves associated metadata, has a clear chain of custody, is searchable, and provides as much information as possible regarding the source, history, and context of each individual communication. This provision should not be construed as a concession by any of the Parties that all social media is relevant and discoverable.

5. **Non-Party Production**. Unless otherwise agreed among the Parties, the party that issues a non-party subpoena (the "Subpoenaing Party") shall put forth its best efforts, unless agreed otherwise, for: (1) taking reasonable steps to negotiate that the non-party's productions are processed in accordance with the specifications in this Order; (2) engaging, as necessary, a vendor to process the non-party production in accordance with the specifications in this Order, including, without limitation, affixing unique prefixes and Bates Numbers to the non-party production and undertaking reasonable efforts to comply with the provisions of Paragraph 4(c) and the Production Specifications (Appendix A); and (3) distributing non-party productions within twenty-one (21) days of receiving the production (or as soon as practicable) to all Parties' counsel.

6. **Privilege and Confidentiality Logs.** The parties agree that alternatives to document-by-document privilege and confidentiality logs presumptively meet the requirements of Rule 26(b)(5)(A). The parties are to confer on the nature and scope of alternative privilege and confidentiality logs for the case, including the specific categories of information that may be excluded from any logging requirements and the alternatives to document-by-document logs that shall be exchanged. The parties may meet and confer to implement any of the following alternative logging formats: (i) "categorical" logs; (ii) "metadata only" logs; (iii)

provisions to permit parties to omit logging redactions when the basis of the redaction is identified in the document; (iv) production of the most inclusive and/or unique versions of e-mail strings which require redactions; and/or (v) logging an e-mail string as an individual document (without separately logging each included communication).

7. **Clawback of Privileged Information**. The Parties' agreement regarding procedures for clawing back privileged information are set forth in the 502(d) Order, which was entered by the Court on October 23, 2023, as ECF No. 30. Nothing in this Order shall be construed as modifying the terms of that 502(d) Order.

8. **Confidentiality**. Discovery in this Action will involve significant amounts of proprietary, confidential and sensitive information. The protections afforded this information and the processes for invoking such protection are set forth in the Protective Order, which was filed on October 11, 2023, as ECF No. 26. Nothing in this Order shall be construed as modifying, reducing, or expanding the confidentiality provisions of the Protective Order.

9. **Miscellaneous.**

    a. Additional Parties: Any party named, served, and appearing in this Action shall be bound by the terms of this Order, effective once the Order has been served upon such party, unless the Court orders otherwise on good cause shown. Any party who causes another party to be added to this Action after the entry of this Order shall serve that new party with a copy of this Order and any subsequent amendments to it at the time it serves its pleading and summons.

    b. Costs. This Order does not address the costs of discovery or apportionment those costs in any way. Nothing in this Order shall affect applicable law regarding a producing party's ability to argue that a particular production is unduly

burdensome, their ability to shift costs of discovery in whole or in part to the requesting party, or otherwise affect any party's right to petition the Court for an order apportioning some or all of the costs of discovery.

c. Further Amendment. Except as otherwise provided in this Order, its terms may be amended only by written stipulation of the Parties approved by the Court, or by order of the Court, on noticed motion.

d. Other Objections. This Order does not address, limit, or determine relevance, discoverability, or admissibility of any documents, nor do the Parties waive any objections to the production, discoverability, or confidentiality of documents subject to this Order.

**IT IS SO STIPULATED, through Counsel of Record.**

Respectfully submitted,

IT IS SO ORDERED, this \_\_\_\_\_ day of _____, 2023.

_____ _____
RICHARD E. MYERS II                         TERRENCE W. BOYLE
Chief United States District Judge          United States District Judge

_____ _____
LOUISE W. FLANAGAN                          JAMES C. DEVER III
United States District Judge                United States District Judge

STIPULATED TO BY:

*/s/ Adam Bain*
ADAM BAIN
IN Bar No. 11134-49
Senior Trial Counsel, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209
Fax: (202) 616-4473


Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

*Counsel for Defendant*

*[Plaintiffs' Leadership Counsel's Signatures on Following Page]*

| | |
|---|---|
| /s/ J. Edward Bell, III | /s/ Zina Bash |
| J. Edward Bell, III (admitted *pro hac vice*)<br>Bell Legal Group, LLC<br>219 Ridge St.<br>Georgetown, SC 29440<br>Telephone: (843) 546-2408<br>jeb@belllegalgroup.com<br><br>*Lead Counsel for Plaintiffs* | Zina Bash (admitted *pro hac vice*)<br>Keller Postman LLC<br>111 Congress Avenue, Suite 500<br>Austin, TX 78701<br>Telephone: 956-345-9462<br>zina.bash@kellerpostman.com<br><br>*Co-Lead Counsel for Plaintiffs and Government Liaison Counsel* |
| /s/ Elizabeth J. Cabraser | /s/ W. Michael Dowling |
| Elizabeth J. Cabraser (admitted *pro hac vice*)<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br>ecabraser@lchb.com<br><br>*Co-Lead Counsel for Plaintiffs* | W. Michael Dowling (NC Bar No. 42790)<br>The Dowling Firm PLLC<br>Post Office Box 27843<br>Raleigh, North Carolina 27611<br>Telephone: (919) 529-3351<br>mike@dowlingfirm.com<br><br>*Co-Lead Counsel for Plaintiffs* |
| /s/ Robin L. Greenwald | /s/ James A. Roberts, III |
| Robin L. Greenwald (admitted *pro hac vice*)<br>Weitz & Luxenberg, P.C.<br>700 Broadway<br>New York, NY 10003<br>Telephone: 212-558-5802<br>rgreenwald@weitzlux.com<br><br>*Co-Lead Counsel for Plaintiffs* | James A. Roberts, III (N.C. Bar No.: 10495)<br>Lewis & Roberts, PLLC<br>3700 Glenwood Avenue, Suite 410<br>P. O. Box 17529<br>Raleigh, NC 27619-7529<br>Telephone: (919) 981-0191<br>jar@lewis-roberts.com<br><br>*Co-Lead Counsel for Plaintiffs* |
| /s/ Mona Lisa Wallace | |
| Mona Lisa Wallace (N.C. Bar No.: 009021)<br>Wallace & Graham, P.A.<br>525 North Main Street<br>Salisbury, North Carolina 28144<br>Tel: 704-633-5244<br>mwallace@wallacegraham.com<br><br>*Co-Lead Counsel for Plaintiffs* | |