IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No: 7:23-cv-897 |
| | ) | |
| | ) | UNITED STATES' STATEMENT OF |
| This Document Relates To: | ) | INTEREST REGARDING |
| ALL CASES | ) | ATTORNEYS' FEES |

## INTRODUCTION

The United States respectfully provides this Statement of Interest in connection with Plaintiffs' Proposed Common Benefit Order, D.E. 31. The United States "has an interest in seeing that funds it owes to litigants are disbursed properly." *Allen v. United States*, 606 F.2d 432, 434 (4th Cir. 1979). This interest includes the proper allocation of a recovery against the United States between a plaintiff and his or her counsel. *Id.* (rejecting argument that "the government has no standing to contest fee awards based on private contracts between litigants and their lawyers"); *see also Wyatt v. United States*, 783 F.2d 45, 46 (6th Cir. 1986) ("The government has standing to challenge the amount of attorneys' fees to be paid to plaintiffs' attorney.") (citing *Allen*, 606 F.2d 432).

Plaintiffs' Leadership proposes a 3% "Holdback," to be "deducted from the amount charged by the individual plaintiff's attorney, *which shall in turn be governed by the retention agreement between each attorney and his or her clients.*" D.E. 31-1 at 25 (emphasis added). Those retention agreements, and thus the Common Benefit Order as a whole, must be consistent with the congressional limit on attorneys' fees in 28 U.S.C. § 2678. Section 2678 limits attorneys' fees in this litigation to 25% of any settlement or judgment. Thus, any Holdback for compensating attorneys that this Court orders in this litigation must be from the 25% of settlements and judgments reserved for attorneys' fees. Because the Holdback is for attorneys' fees, and because attorneys' fees are subject to § 2678, the Court should set a Holdback that balances the interests

of all plaintiffs' attorneys, along with the United States' interest in ensuring that aggregate attorneys' fees do not exceed 25%.

## BACKGROUND

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotations omitted). Thus, a court must determine both whether Congress has consented to be sued for damages and the scope of that waiver. The scope of the waiver must "be clearly discernable from the statutory text in light of traditional interpretive tools," including the traditional sovereign immunity canon "constru[ing] any ambiguities in the scope of a waiver in favor of the sovereign." *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012).

Congress has long conditioned the scope of the waiver by limiting attorneys' fees, "in part to protect just claimants from extortion or improvident bargains and in part to protect the treasury from frauds and imposition." *Calhoun v. Massie*, 253 U.S. 170, 173 (1920) (Brandeis, J.). Notably, since its enactment in 1946, the Federal Tort Claims Act ("FTCA") has limited attorneys' fees for tort claims against the United States. *See, e.g.*, *United States v. Cohen*, 389 F.2d 689, 691 (5th Cir. 1967) (describing FTCA's legislative history and "congressional concern about attorneys' collecting enormous fees at the expense of their clients"); *Schwartz v. United States*, 381 F.2d 627, 631 (3d Cir. 1967) (describing limitations on attorneys' fees under FTCA and explaining that "one of the main purposes of the Congress from the earliest legislation with respect to [FTCA] claims has been to properly protect plaintiffs and Government funds from exorbitant lawyers charges").[1]

---

[1] Limitations on attorneys' fees are also common features in federal tort compensation programs. For example, the Radiation Exposure Compensation Act ("RECA") and 9/11 Victim

In its current form, 28 U.S.C. § 2678 limits attorneys' fees to 25% "of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title" and to 20% "of any award, compromise, or settlement made pursuant to section 2672 of this title." As with prior limitations on attorneys' fees, "[t]he purpose [of § 2678] . . . was to meet a congressional concern about enormous fees at the expense of plaintiffs." *Duncan v. U.S. Dep't of Army*, 887 F.2d 1078 (4th Cir. 1989) (unpublished); *cf. Joe v. United States*, 772 F.2d 1535, 1536–37 (11th Cir. 1985) (describing 1966 amendment to FTCA to increase maximum attorneys' fees from 20% to 25% to "assure competent representation and reasonable compensation").

Despite these longstanding limits on attorneys' fees, the United States believes that some plaintiffs' firms are demanding contingent fees "in excess of 40% or 50%" of any recovery—potentially more than double what § 2678 allows. *See*, *e.g.*, Ex. A, Kaustuv Basu, *Camp Lejeune Legal Fees Under Fire as Veterans' Claims Spike*, Bloomberg Law (Dec. 29, 2022), *available at* https://perma.cc/6PW3-ZQU5. The Common Benefit Order contemplates reserving 3% of any settlement or judgment—a "Holdback"—to compensate plaintiffs' attorneys performing common benefit work. D.E. 31-1 at 25. The Common Benefit Order further contemplates the Holdback applying to an amount "governed by the retention agreement between each attorney and his or her clients." *Id.* The Court should clarify that any Holdback for common benefit fees must be from

---

Compensation Fund ("9/11 VCF") both limit attorneys' fees to no more than 10%. RECA, § 9(b)(2), 42 U.S.C. § 2210 note, Pub. L. No. 101-426 (Oct. 15, 1990); 9/11 VCF, § 406(e), 49 U.S.C. § 40101 note. Certain RECA claims are subject to a lesser 2% cap on attorneys' fees. RECA, § 9(b)(1). Attorneys' fees for veterans' benefits claims are not capped per se, but "[f]ees which do not exceed 20 percent of any past-due benefits awarded . . . shall be presumed to be reasonable," and "[f]ees which exceed 33 1/3 percent of any past due benefit awarded shall be presumed to be unreasonable." 38 C.F.R. § 14.636(f).

that percentage that Congress allows to go toward attorneys' fees, irrespective of retention agreements that seek recoveries greater than what § 2678 allows.

Section 2678's application may also affect the appropriateness of the 3% holdback rate. For example, if the Court orders a holdback rate of 3% (as proposed), then no more than 22% of a settlement or judgment in this litigation may be collected by the individual plaintiff's attorney, in addition to what is reimbursed through the common benefit fund. This Holdback affects the fees that individual attorneys may recover under § 2678, creating a three-way balancing act between Plaintiffs, individual attorneys, and common benefit attorneys. A greater holdback rate may further limit recoveries by individual attorneys, whereas a lesser holdback rate may limit recoveries for common benefit work. Thus, the Court should take § 2678 into account in balancing the interests of attorneys performing common benefit work with the interests of an individual plaintiff's retained counsel.

At this time, the United States' only asserts an interest in applying § 2678 to all CLJA claims and actions. The United States takes no position on whether and to what extent the Holdback should apply to settlement of administrative claims by "Participating Counsel," except that § 2678 limits attorneys' fees in such cases to 20%. The United States takes no position on how best to balance the expected contributions of attorneys performing common benefit work with the efforts of attorneys not in that group, the appropriate withholding rate for the Holdback Fund, the procedures for requesting reimbursement for common benefit time or expenses, or what work may be compensable under the common benefit doctrine. Further, although the Holdback plus any fees paid from *a settlement or judgment* in this litigation cannot exceed 25%, 28 U.S.C. § 2678 does not limit the amount an attorney may recover *from the Holdback Fund* itself. Thus, so long as the relevant fee cap of 20% or 25% is followed with respect to each individual settlement or

judgment, an attorney who performs common benefit work may recover fees under the Common Benefit Order regardless of how those fees relate to the award in any individual case, without running afoul of § 2678. And, the United States agrees that the Holdback should not apply to "offsets," because such offsets will be applied *before* § 2678's cap on attorneys' fees.

## DISCUSSION

For almost 80 years, tort claims against the United States have proceeded exclusively under the Federal Tort Claims Act ("FTCA"). FTCA actions have always been subject to a limitation on attorneys' fees as a percentage of the ultimate recovery. Today, that limitation is codified at 28 U.S.C. § 2678, which provides that attorneys may not charge or receive more than 20% of "any award, compromise, or settlement made" in the administrative process or more than 25% of "any judgment rendered" or "any settlement made" in litigation. Those limits help to ensure that funds disbursed from the public fisc are being used to compensate the affected individuals on whose behalf their attorneys are acting. *See Duncan*, 887 F.2d 1078 (unpublished).

In enacting the Camp Lejeune Justice Act ("CLJA"), Congress did not completely upend this calibrated approach that has governed tort litigation against the United States for decades. Rather, Congress primarily sought to abrogate certain threshold defenses that would otherwise be available under the FTCA and that had previously barred tort claims relating to Camp Lejeune water. Because no provision of the CLJA addresses attorneys' fees, or otherwise displaces the fee cap provision in the FTCA, the fee limits apply in CLJA actions.

**I. The Text, Structure, and Legislative History of the CLJA Demonstrate that CLJA Actions Are Subject to the Fee Limitations in 28 U.S.C. § 2678.**

   A. *Except where it has been specifically displaced by the CLJA, the FTCA applies in CLJA actions.*

In 1946, Congress enacted the FTCA, which "'waived the sovereign immunity of the United States for certain torts committed by federal employees' acting within the scope of their

employment." *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 475–76 (1994)). Relying on this waiver, Congress enacted the CLJA in 2022 to permit individuals to bring specified tort claims against the United States. In so doing, Congress intended to adopt the conditions of the FTCA's waiver, including the fee caps provided in § 2678, that were not abrogated by the CLJA. *See Lehman*, 453 U.S. at 161 ("[T]his Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.") (internal quotations and citations omitted). The adoption of these conditions is apparent from the CLJA's text, structure, and legislative history.

1. <u>The CLJA's text looks to the FTCA to fill gaps.</u>

The CLJA specifically references and incorporates the FTCA's administrative exhaustion requirement, 28 U.S.C. § 2675, as a prerequisite to suit against the United States. *See* CLJA § 804(h). This Court has recognized as much. *See Pugh v. United States*, No. 22-cv-124, 2023 WL 1081262 (E.D.N.C. Jan. 27, 2023) (Boyle, J.); *Girard v. United States*, No. 22-cv-022, 2023 WL 115815 (E.D.N.C. Jan. 5, 2023) (Flanagan, J.); *Wilson v. United States*, No. 22-cv-316 (E.D.N.C. Jan. 3, 2023) (Myers, J.); *Fancher v. United States*, 646 F. Supp. 3d 694 (E.D.N.C. 2022) (Dever, J.). Congress cannot be reasonably understood to have expressly required administrative *disposition* and *exhaustion* under § 2675, without also authorizing administrative *settlement* under § 2672. Otherwise, if § 2672 did not apply, the Department of the Navy would lack any statutory authority to *resolve* claims presented under § 2675 in any manner besides denying them. Thus, administrative claims presented to the agency are settled under § 2672,[2] and

---

[2] Other protections found in § 2672 are not addressed by the CLJA, indicating that Congress intended § 2672 to apply. For example, § 2672 provides for the release of claims against the

are therefore subject to the 20% fee cap under the express terms of § 2678. *See* 28 U.S.C. § 2678 (prohibiting fees "in excess of 20 per centum of any award, compromise, or settlement made pursuant to section 2672").

Litigation settlements and judgments are similarly subject to the fee cap in § 2678. As noted, Congress intended that claimants would submit claims to the Navy for consideration before filing actions under the CLJA in federal court, and settlement of those administrative claims is covered by §§ 2672 and 2678 for the reasons explained above. It would be passing strange to conclude that § 2678's limitations apply only during the administrative phase but not once the claims reach litigation. That conclusion is reinforced by the fact that the language in § 2675—the administrative exhaustion requirements expressly referenced in the CLJA—closely mirrors the language in § 1346(b)(1)—the waiver of the United States' immunity to civil actions in federal district court for tort claims. The 25% fee cap in § 2678 applies to cases that are tried to judgment under § 1346(b)(1) or settled under § 2677. *See* 28 U.S.C. § 2678 (prohibiting "fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title").

The targeted nature of the CLJA's provisions further indicates that Congress intended to override some but not all of the FTCA's provisions. Notably, the CLJA expressly eliminates legal defenses that prevented Plaintiffs from moving forward in prior FTCA litigation. **First**, the CLJA prohibits the assertion of the North Carolina's ten-year statute of repose, which bars injury claims more than ten years after the act or omission giving rise to the action and which otherwise would

---

United States "and against the employee of the government whose act or omission gave rise to the claim," directs that settlements greater than $2,500 shall be paid "in a manner similar to judgments and compromises in like causes and appropriations," and requires "prior written approval of the Attorney General or his designee" before an agency effects settlements greater than $25,000.

apply under the FTCA. CLJA § 804(j)(3). ***Second***, the CLJA specifically prohibits the assertion of the FTCA's discretionary function exception in 28 U.S.C. § 2680(a), which bars tort claims challenging discretionary, policy-based conduct, CLJA § 804(f). ***Third***, the CLJA prohibits the assertion of the *Feres* doctrine, *Feres v. United States*, 340 U.S. 135 (1950), which bars FTCA claims incident to military service, because the CLJA expressly allows "[a] individual, including a veteran" to bring suit. CLJA § 804(b). These three statutory provisions correlate directly to the three threshold grounds on which courts had previously rejected similar FTCA claims. *See, e.g.*, *Clendening v. United States*, 19 F.4th 421 (4th Cir. 2021) (*Feres* doctrine and discretionary function exception); *In re Camp Lejeune, N.C. Water Contamination Litig.*, 774 F. App'x 564, 566 (11th Cir. 2019) (North Carolina statute of repose).

At the same time, the CLJA shows that other FTCA provisions will continue to apply. The CLJA states that "[t]he United States may not assert any claim to immunity in an action under this section that *would otherwise be available* under section 2680(a) of title 28, United States Code." CLJA § 804(f) (emphasis added). It would have been odd for Congress to say that the FTCA's discretionary function exception "would otherwise be available" in CLJA actions if the CLJA's provisions were exclusive and the FTCA had no application whatsoever. By using this phrasing, the CLJA acknowledges that FTCA provisions apply to the extent they are not specifically foreclosed. In addition, it would have been unnecessary for the CLJA to override the FTCA's discretionary function exception if the FTCA's provisions did not apply to CLJA cases as a general matter.

  2. <u>The CLJA is unlike other statutes that operate independently of the FTCA.</u>

If Congress intended CLJA actions to fall outside § 1346(b)(1)'s waiver, "it knew how to say so." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018). Congress has been explicit that certain categories of tort claims are to be considered separately from the waiver of sovereign

Page **8** of **17**

Case 7:23-cv-00897-RJ   Document 34   Filed 10/27/23   Page 8 of 17

immunity in § 1346(b).  For example, in 28 U.S.C. § 2680(d), Congress provided that § 1346(b) "shall not apply" to "any claim for which a remedy is provided by Chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States."  And in 28 U.S.C. § 2680(l), Congress provided that § 1346(b) "shall not apply" to claims asserted against the Tennessee Valley Authority, a sue-and-be-sued agency, *see* 16 U.S.C. § 831c(b).  Congress did not, however, use similar exclusionary language in the CLJA.  Congress's desire that FTCA provisions generally govern CLJA claims is reinforced by the CLJA's codification in Chapter 171 of the United States Code—the very Chapter that § 1346(b)(1) specifically references.  *See* 28 U.S.C. Chapter 171, Tort Claims Procedure (Statutory Notes).

It is particularly unlikely that Congress intended to divorce the CLJA's limited provisions from the more comprehensive FTCA regime that Congress has retained since 1946.  The CLJA leaves many critical topics unaddressed that the FTCA expounds upon in detail, including adjustment or compromise for administrative claims (§ 2672) or for cases in litigation (§ 2677).  And the CLJA lacks specificity when compared to other statutes that clearly provide for monetary damages against the United States.  *See, e.g.*, 28 U.S.C. § 1491(a)(1) (allowing recovery of "liquidated or unliquidated damages" in certain cases "against the United States"); *id.* § 1498(a) (allowing recovery of "reasonable and entire compensation" in patent-infringement "action[s] against the United States"); 11 U.S.C. § 106(a)(3) ("The court may issue against a governmental unit . . . an order or judgment awarding a money recovery . . . ."); 5 U.S.C. § 552a(g)(4) (providing that "the United States shall be liable" for "actual damages" for certain Privacy Act violations).  These contrasts underscore that the CLJA did not need to effect a waiver of sovereign immunity itself, or set out the complete set of restrictions on the cause of action, because the CLJA

incorporates the requisite provisions from the FTCA to the extent that they are not specifically displaced.

        3. <u>Congress has described the CLJA as a type of FTCA claim.</u>

Throughout the drafting process, the CLJA was understood as creating a type of FTCA claim. For example, multiple Representatives who helped introduce the CLJA bill in the House expressly described the CLJA as allowing plaintiffs "to file under the Federal Tort Claims Act." The Representatives that introduced the CLJA explained that:

> The *Camp Lejeune Justice Act* allows a member of the U.S. Armed Forces, and/or their family members, that were injured or died as a result of the contaminated water at Camp Lejeune to file *under the Federal Tort Claims Act* for fair compensation. This type of claim would already be permitted anywhere else in the United States, but because of a unique provision in North Carolina law, this legislation is necessary for those harmed at Camp Lejeune finally to seek justice.

*See, e.g.*, Ex. B, Press Release: Cartwright, Murphy, Price Introduce Camp Lejeune Justice Act (March 26, 2021), *available at* https://perma.cc/HT68-4VZB); Ex. C, Press Release: Rep. Cartwright Announces House Passage of Camp Lejeune Justice Act, included in the Honoring Our PACT Act (Mar. 4, 2022), *available at* https://perma.cc/5YCC-C2U2 (same).[3]

Likewise, when the CLJA was introduced in the Senate, the Senators who introduced the legislation explained that the bill was only intended to remove certain legal defenses that were available under the FTCA in prior litigation:

> The legislation proposes to correct unfair legal barriers unique to Marine families stationed at Camp Lejeune due to an anomaly in the application of North Carolina law in the federal court system by establishing a new federal cause of action for individuals exposed to

---

[3] Representative Cartwright takes credit for writing the legislation. *See* 168 Cong. Rec. H1193 (daily ed. Mar. 1, 2022) (statement of Rep. Cartwright) ("I could not be prouder that the Honoring our PACT Act includes my bill, the Camp Lejeune Justice Act, and let me tell you why I wrote this bill.").

> [Camp Lejeune contaminated water]. This enables individuals affected by toxic exposure at Camp Lejeune to bring suit before the district court for the Eastern District of North Carolina to present evidence for injuries caused by exposure to [Camp Lejeune contaminated water].

*See* Ex. D, Press Release: Tillis, Blumenthal, Burr, and Peters Introduce the Camp Lejeune Justice Act to Ensure Legal Rights for Water Contamination Victims (Nov. 4, 2021), *available at* https://perma.cc/LHF6-QX8G. Other public statements from members of Congress are to the same effect.[4]

That several members of Congress have proposed amendments to the CLJA to establish attorney fee caps that differ from § 2678 does not change the analysis. *Compare* Protect Camp Lejeune Victims Ensnared by Trial-lawyers' Scams Act, S. 5130, 117th Cong. (2022) (proposing

---

[4] *See, e.g.*, 168 Cong. Rec. H1192 (daily ed. Mar. 1, 2022) (statement of Rep. Price) (stating that "[t]he Camp Lejeune Justice Act will correct an anomaly in North Carolina law by providing a legal pathway for affected veterans and their families to pursue fair compensation"); 168 Cong. Rec. H1190 (daily ed. Mar. 1, 2022) (statement of Rep. Ross) ("For years, North Carolina law prevented these individuals from seeking relief in court. The Camp Lejeune Justice Act rights this wrong, bringing long overdue justice to affected veterans."); 168 Cong. Rec. E215 (daily ed. Mar. 3, 2022) (statement of Rep. Eshoo) ("[T]hey've been denied compensation because of an anomaly in North Carolina state law. I've consistently advocated for remedying this injustice, and I'm pleased that the Honoring Our PACT Act does so by establishing a federal cause of action related to contaminated water at Camp Lejeune."); Ex. E, Press Release: Senate Passes Bipartisan Bill to Help Veterans Exposed to Toxic Substances, Including Ross-Supported Camp Lejeune Justice Act (Jun. 16, 2022), *available at* https://perma.cc/L768-SPVG (press release from Rep. Deborah Ross) ("The legislation includes the *Camp Lejeune Justice Act*, bipartisan legislation supported by Congresswoman Deborah Ross (NC-02) that gives affected veterans the opportunity to seek compensation for exposure to contaminated water at Camp Lejeune Marine Corps Base in North Carolina…North Carolina law has prevented them from seeking relief in court. The *Honoring Our PACT Act* corrects this injustice."); Ex. F, Press Release: Camp Lejeune Justice Act Headed to President's Desk (Aug. 3, 2022), *available at* https://perma.cc/QDZ9-Z6DV (press release from Rep. Murphy) ("Our bipartisan bill, the *Camp Lejeune Justice Act* eliminates burdensome red tape to ensure that those exposed to toxic chemicals, including servicemembers, Marine dependents, civil servants, and contractors, can receive their day in court.").

2% and 10% fee caps), *with* Protect Access to Justice for Veterans Act, H.R. 1204, 117th Cong. (2022) (proposing 20% and 33.3% fee caps).  The question before the Court is whether § 2678's fee caps apply in the absence of a contrary indication in the CLJA as enacted.[5]  Congress is of course free to modify the caps if it determines that different caps are appropriate for this particular litigation.  But the relevant point here is that, although Congress abrogated other features of the FTCA for CLJA actions, Congress *has not* abrogated § 2678's fee caps.

    *B. No other provision of the CLJA renders the fee caps in § 2678 inapplicable.*

That the CLJA describes an "action . . . to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune," CLJA § 804(b), and specifies burden of proof and standards for causation, CLJA § 804(c), does not affect the CLJA's adoption of the FTCA's waiver of sovereign immunity in § 1346(b)(1).  *See Meyer*, 510 U.S. at 484 (characterizing a waiver of sovereign immunity as "analytically distinct" from the existence of a cause of action); *Fancher*, 646 F. Supp. 3d at 703 ("The FTCA does not itself provide for a substantive cause of action.") (quoting *Unus v. Kane,* 565 F.3d 103, 107 (4th Cir. 1992)).  Rather than create a remedy entirely separate from the FTCA, Congress identified a certain subset of tort claims—namely, those involving "harm that was caused by exposure to the water at Camp Lejeune"—that should be adjudicated differently than other FTCA claims in certain ways.  As described above, the CLJA

---

[5] An early version of the CLJA stated that attorneys' fees be "in accordance with section 2678 of title 28, United States Code."  Camp Lejeune Justice Act of 2021, H.R. 2192, 117th Cong. § 2(h) (2021).  It is unclear whether Congress chose to omit this provision from future bills because it was surplusage or for some other reason, such as ongoing debate about setting a different fee cap.  In any event, Congress chose *not* to expressly abrogate § 2675 in the same way that it abrogated § 2680(a) or statutes of repose applicable under state law.

was enacted as a direct response to the litigation of these claims under the FTCA, and the CLJA expressly depends on the FTCA.[6] *See* CLJA § 804(f).

The CLJA's venue and remedial provisions similarly do not undermine the relevance of the FTCA or otherwise displace its fee cap provision. Congress's decision to have all CLJA actions litigated in the U.S. District Court for the Eastern District of North Carolina, CLJA § 804(d), does not change the nature of the underlying action. *Cf. Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 787 n.4 (1991) (explaining that a given court's jurisdiction to hear a claim and the waiver of sovereign immunity for that claim "are wholly distinct"). Nor does the bar on bringing future "tort action[s] against the United States for such harm pursuant to any other law," CLJA § 804(e)(1), speak to the attorneys' fees issue or affect the interaction of the CLJA and the FTCA. Although a CLJA action precludes *future* tort actions for the same harm, the initial CLJA action is not excepted from the FTCA. *See* Part I.A.2., *supra* (describing other causes of action expressly excepted from the FTCA); 28 U.S.C. § 2680 (describing "exceptions" to the FTCA). The CLJA, as a whole, operates in conjunction with the FTCA, including provisions like the fee caps in § 2678 that have not been overridden.

Although the CLJA replicates the FTCA's bar on punitive damages, that provision is not mere surplusage. *See* CLJA, § 804(g); 28 U.S.C. § 2674. The CLJA permits claims for "appropriate relief for harm," but does not clearly define that term. CLJA, § 804(b). Thus, the

---

[6] The CLJA also indicates that it "shall apply only to a claim accruing before the date of enactment of this Act." CLJA § 804(j)(1). As Plaintiffs' Lead Counsel acknowledged in litigating the administrative exhaustion issue, this subsection supports that the CLJA did not create a new freestanding claim but rather a new way to vindicate preexisting claims. *See, e.g.*, *Benson v. United States*, No. 7:22-cv-00140-BO-KS, Dkt. 19 at p. 3 ("[T]he CLJA applies 'only to a claim accruing before the date of the enactment of the [Honoring our PACT] Act,' and thus does not create any new claims—only a new statutory cause of action to vindicate preexisting claims. CLJA § 804(j)(1).").

CLJA's bar on punitive damages forecloses any argument that "appropriate relief" abrogated § 2674 or that punitive damages might be "appropriate."

In short, the CLJA provides a cause of action that is asserted against the United States under § 1346(b)'s waiver. Congress "legislate[s] with knowledge of former related statutes and will expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction." *United States v. Mitchell*, 39 F.3d 465, 472 (4th Cir. 1994) (internal quotations and citations omitted). Here, the CLJA was enacted against the backdrop of the FTCA. Congress "expressly designate[d] the provisions whose application it wishe[d] to suspend," *Mitchell*, 39 F.3d at 472, such as the FTCA's discretionary function exception. *See* CLJA § 804(f) (abrogating 28 U.S.C. § 2680(a)). But Congress did not suspend § 2678. Except where abrogated, the FTCA's carefully formulated substance and procedures, including its caps on attorneys' fees, are applicable.

Applied here, § 2678's protections for *Plaintiffs* also potentially affects the allocation of fees between common benefit and individual *attorneys*. If, for example, the Court approves the requested Holdback of 3%, then an individual plaintiff's retained counsel may be limited to recovering 22% of a settlement or judgment as a contingent fee—rather than the greater contingent fees the individual attorney might otherwise seek through a retention agreement if § 2678's protections did not apply. If the Court approves a greater Holdback, then the individual attorney's recovery may be further limited. If the Court approves a lesser Holdback, then there may be fewer incentives for common benefit work. Again, the United States takes no position on what an appropriate Holdback would be. The United States seeks only to advise the Court of § 2678's potential effect on the proposed Common Benefit Order, including the Holdback.

## CONCLUSION

The Department of Justice estimates that the total amount demanded for the approximately 117,000 administrative claims currently filed with the Department of Navy is nearly **$3.3 trillion**. Settlements and judgments for CLJA claims and actions will be paid through the Judgment Fund. Even if the Judgment Fund pays only 1% of that amount—$33 billion—a 40% recovery for plaintiffs' attorneys would total $13.2 billion (and a 3% Holdback would total nearly $1 billion). Section 2678 ensures that a greater portion of that money makes its way to the individual plaintiffs, in the same manner that Congress has directed for other tort claims against the United States. The Court's Common Benefit Order should balance the contributions of both common benefit work and non-common benefit work in light of the ultimate 25% fee cap on recoveries.

Respectfully submitted on October 27, 2023.

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

ADAM BAIN
Senior Trial Counsel, Torts Branch
Environmental Torts Litigation Section

HAROON ANWAR
Trial Attorney
Environmental Torts Litigation Section

/s/ Nathan Bu
NATHAN BU
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
U.S. Department of Justice
P. O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: nathan.j.bu@usdoj.gov
Telephone: (202) 705-5938
Fax: (202) 616-4989

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, a copy of the foregoing document was filed via the Court's ECF system and served on counsel of record through the ECF system.

*/s/ Nathan Bu*
NATHAN BU
