# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
### No. 7:23-CV-897

IN RE:

CAMP LEJEUNE WATER LITIGATION

This Document Relates to:

*Merritt v. United States*, No. 7:23-cv-1367-D

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

BACKGROUND ......................................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 3

LEGAL STANDARD ................................................................................................................ 5

ARGUMENT .............................................................................................................................. 6

I.  Under The Plain Text Of The CLJA, Anyone Who Is Appointed As The Legal Representative Of An Estate By A Court Of Competent Jurisdiction Qualifies As A "Legal Representative" .......................................................................................... 6

II.  The FTCA Does Not Supply The Standard For Qualifying As A "Legal Representative" ......................................................................................................... 11

    A.  The FTCA Does Not Apply To CLJA Claims ........................................... 12

    B.  The CLJA Does Not Incorporate The FTCA .............................................. 15

III.  Even If The FTCA Could "Fill Gaps" In The CLJA, It Does Not Address The Definition Of "Legal Representative" ................................................................... 25

CONCLUSION ......................................................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Appelhans v. United States*,
877 F.2d 309 (4th Cir. 1989) .................................................................................14, 19

*Bell v. Tug Shrike*,
332 F.2d 330 (4th Cir. 1964) ........................................................................................18

*Briggs v. Walker*,
171 U.S. 466 (1898) .......................................................................................................7

*In re Camp Lejeune N. Carolina Water Contamination Litig.*,
263 F. Supp. 3d 1318 (N.D. Ga. 2016) .......................................................................22

*In re Casco Chem. Co.*,
335 F.2d 645 (5th Cir. 1964) ..........................................................................................8

*Chang-Williams v. Dep't of the Navy*,
766 F. Supp. 2d 604 (D. Md. 2011) .............................................................................26

*Chapman v. Oakland Living Ctr., Inc.*,
48 F.4th 222 (4th Cir. 2022) ..........................................................................................5

*Cioca v. Rumsfeld*,
720 F.3d 505 (4th Cir. 2013) ........................................................................................15

*Clendening v. United States*,
143 S.Ct. 11 (2022) ......................................................................................................14

*Clendening v. United States*,
19 F.4th 421 (4th Cir. 2021) ........................................................................... 15, 19, 22

*Clendening v. United States*,
No. 7:19-CV-137-BR, 2020 WL 6700367 (E.D.N.C. Nov. 6, 2020) ......................15

*Dalehite v. United States*,
346 U.S. 15 (1953) .......................................................................................................21

*Dupree v. Younger*,
598 U.S. 729 (2023) .......................................................................................................5

*FDIC v. Meyer*,
510 U.S. 471 (1994) ................................................................................4, 12, 17, 20, 26

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
726 F.3d 62 (2d Cir. 2013) .............................................................................................8

*Feres v. United States*,
    340 U.S. 135 (1950) ................................................................................ 14

*Foster v. Dept' of the Navy*,
    2020 WL 1542092 (E.D.N.C. Mar. 31, 2020) ......................................... 19

*Gill v. Rollins Protective Servs. Co.*,
    773 F.2d 592 (4th Cir. 1985), *amended* 788 F.2d 1042 (4th Cir. 1986) ................................... 5

*Global Mail Ltd. v. U.S. Postal Service*,
    142 F.3d 208 (4th Cir. 1998) ....................................................... 4, 12, 13

*Gonzalez-Jiminez De Ruiz v. United States*,
    378 F.3d 1229 (11th Cir. 2004) ............................................................. 26

*Hansley v. Dep't of Navy*,
    2021 WL 2546716 (E.D.N.C. Jun. 21, 2021) ......................................... 22

*Ingerton v. First Nat. Bank & Tr. Co. of Tulsa*,
    291 F.2d 662 (10th Cir. 1961) ................................................................. 9

*Marcano v. Offshore Venezuela*,
    497 F. Supp. 204 (E.D. La. 1980) ........................................................... 8

*Martineau v. Wier*,
    934 F.3d 385 (4th Cir. 2019) ................................................................. 15

*Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*,
    152 F.3d 283 (4th Cir. 1998) ................................................................... 6

*Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*,
    361 F. Supp. 2d 1244 (E.D. Wash. 2004) ............................................... 8

*The Pan Two*,
    26 F. Supp. 990 (D. Md. 1939) ............................................................... 8

*Patel v. Napolitano*,
    706 F.3d 370 (4th Cir. 2013) ................................................................. 12

*Pennsylvania Dept. of Public Welfare v. Davenport*,
    495 U.S. 552 (1990) ............................................................................... 16

*Pettengill v. United States*,
    867 F. Supp. 380 (E.D. Va. 1994) ........................................................... 5

*Raplee v. United States*,
    842 F.3d 328 (4th Cir. 2016) ................................................................. 18

iii

*Rock–Ola Mfg. Corp. v. Filben Mfg. Co.*,
    168 F.2d 919 (8th Cir. 1948) ........................................................................... 8

*Smith v. United States*,
    508 U.S. 223 (1993) ....................................................................................... 6

*Snyder v. U.S.*,
    504 F. Supp. 2d 136 (S.D. Miss. 2007) ......................................................... 22

*Stevens v. Howard D. Johnson Co.*,
    181 F.2d 390 (4th Cir. 1950) ......................................................................... 5

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560 (2012) ....................................................................................... 6

*Tanzin v. Tanvir*,
    141 S. Ct. 486 (2020) ..................................................................................... 6

*Tate v. Camp Lejeune*,
    2019 WL 7373699 (E.D.N.C. Dec. 30, 2019) .............................................. 22

*Thacker v. Tennessee Valley Auth.*,
    139 S. Ct. 1435 (2019) ................................................................................. 18

*United States v. Davis*,
    139 S. Ct. 2319 (2019) ................................................................................. 25

*United States v. Johnson*,
    481 U.S. 681 (1987) ................................................................................. 4, 14

*United States v. Murphy*,
    35 F.3d 143 (4th Cir. 1994) ......................................................................... 11

*United States v. S.A. Empresa de Viacao Aerea Rio grandense (Varig Airlines)*,
    467 U.S. 797 (1984) ............................................................................... 22, 23

*United States v. Shearer*,
    473 U.S. 52 (1985) ....................................................................................... 14

*Whitman v. Am. Trucking Assn.*,
    531 U.S. 457 (2001) ..................................................................................... 19

*Williams v. United States*,
    242 F.3d 169 (4th Cir. 2001) ....................................................................... 13

*Wilson v. United States*,
    2023 WL 1999854 (E.D.N.C. Feb. 14, 2023) .............................................. 14

## Statutes

10 U.S.C. § 2733(a) .................................................................................................. 20

10 U.S.C. § 2733(d) .................................................................................................. 20

15 U.S.C. § 1127 ........................................................................................................ 7

28 U.S.C. ch. 171 note ............................................................................................. 23

28 U.S.C. § 1346(b) ............................................................................. 2, 12, 13, 16, 23

28 U.S.C. § 1346(b)(1) ........................................... 12, 14, 15, 17, 20, 24, 25

28 U.S.C. § 2402 ...................................................................................................... 16

28 U.S.C. § 2671-2680 ............................................................................................... 2

28 U.S.C. § 2672 ........................................................................................ 19, 20, 23

28 U.S.C. § 2674 ...................................................................................................... 16

28 U.S.C. § 2675 ...................................................................................................... 19

28 U.S.C. § 2676 ...................................................................................................... 23

28 U.S.C. § 2678 ...................................................................................................... 25

28 U.S.C. § 2679(b)(1) ............................................................................................. 23

28 U.S.C. § 2680 .................................................................................................. 18, 23

28 U.S.C. § 2680(a) ..................................................................... 16, 21, 22, 23

28 U.S.C. § 2680(d) .................................................................................................. 18

28 U.S.C. § 2680(j) .................................................................................................. 16

28 U.S.C. § 2680(*l*) .................................................................................................. 18

38 U.S.C. § 101(2) .................................................................................................... 21

Camp Lejeune Justice Act of 2022 (CLJA), Pub. L. No. 117-168, § 804, 136 Stat. 1802 (2022) .................................................................................................... 2

CLJA § 804(b) .............................................................. 1, 3, 4, 6, 16, 17, 21

CLJA § 804(c) .......................................................................................................... 16

CLJA § 804(c)(2)(B) .................................................................................................. 9

CLJA § 804(d) ...........................................................................................................9, 16

CLJA § 804(e)(1)..........................................................................................................2, 6

CLJA § 804(e)(2)....................................................................................................2, 6, 18

CLJA § 804(f) ..........................................................................................4, 19, 21, 22, 23

CLJA § 804(g) .........................................................................................................16, 18

CLJA § 804(h) .........................................................................................................16, 24

CLJA § 804(i) ................................................................................................................16

CLJA § 804(j) ................................................................................................................16

Military Claims Act, 10 U.S.C. § 2733 ........................................................................20

## **Other Authorities**

Fed. R. Civ. P. 1 ..............................................................................................................9

Fed. R. Civ. P. 25(a)(1) ..................................................................................................8

Fed. R. Civ. P. 56(a) .......................................................................................................5

Fed. R. Civ. P. 56(d) .......................................................................................................5

Fed. R. Civ. P. 60(b) ...................................................................................................8, 9

H.R. 2192, 117th Cong. § 2(h) (2021) ........................................................................25

*Legal Representative*, MERRIAM-WEBSTER ....................................................................7

*Legal Representative*, OXFORD ENGLISH DICTIONARY.....................................................7

*Representative*, BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................7

*Representative*, BLACK'S LAW DICTIONARY 1416 (9th ed. 2009) ....................................8

On behalf of Plaintiff Deborah Merritt, the Plaintiffs' Leadership Group ("PLG") respectfully submits Plaintiff's memorandum of law in support of Plaintiff's motion for partial summary judgment. The PLG requests that the Court enter an order holding that Ms. Merritt, who has been appointed as a representative of an estate of a qualifying deceased individual by a Missouri state court, qualifies as a "legal representative" who may bring an action under the Camp Lejeune Justice Act ("CLJA").

## **BACKGROUND**

Congress enacted the CLJA to address what has been described by scientists as the worst public drinking water contamination crisis in our nation's history. Between at least 1953 and 1987, Camp Lejeune supplied contaminated water to those living and serving on the base. It is estimated that as many as one million people may have been exposed to the water, including servicemembers, their families and dependents, and civilian staff. During this decades-long period, contaminants in finished water—such as the water coming out of taps in houses, buildings, elementary schools, and hospital wards—reached levels at least 280 times higher than what the Environmental Protection Agency ("EPA") considers safe. Those exposed to this water developed a wide range of deadly diseases, including leukemia, non-Hodgkin's lymphoma, bladder cancer, kidney cancer, esophageal cancer, breast cancer, and Parkinson's Disease—among others. Many of those exposed to Camp Lejeune's deadly water have succumbed to their diseases.

Congress enacted the CLJA to provide redress and simple justice to these individuals and their families. To achieve that goal, Congress sought to ensure that the families of deceased victims could obtain compensation as well. To that end, the CLJA provides that "the legal representative" of a qualifying individual "may bring an action" in this Court "to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." Camp Lejeune Justice Act of 2022, § 804(b), Pub. L. No. 117-168, § 804, 136 Stat. 1802, 1802-04 (2022);

*see also id.* § 804(e)(1) and (2).  Congress did not limit that right of action to legal representatives appointed or approved by North Carolina courts or otherwise require courts to consult North Carolina law in determining who qualifies as a "legal representative."

The government, however, has informed the PLG that it takes the position that a person who has been appointed the representative or executor of a qualifying individual's estate by a court of competent jurisdiction outside of North Carolina does not qualify as a "legal representative" unless that person has also opened an ancillary estate in North Carolina state court.  The government's position rests on the view that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, which waived the United States' immunity for state-law torts, supplies the rule for who qualifies as a "legal representative" for purposes of the CLJA's federal cause of action.  At the status conference before this Court on October 30, 2023, the government stated:

> We believe the Federal Tort Claims Act applies to fill any gaps in the Camp Lejeune Justice Act.  That law references the substantive law of this State where the act or omission occurred. So that would be North Carolina law. . . . And so North Carolina law should apply to who is an appropriate representative in a wrongful death case.

Decl. of John F. Bash ("Bash Decl."), Ex. A, Tr. Oct. 30, 2023 Status Conference ("10/30 Hr'g. Tr."), at 37.  The government has elaborated on the basis for its position in a separate statement of interest seeking to apply the FTCA's caps on attorneys' fees to CLJA actions.  D.E. 34.[1]

Plaintiff Deborah Merritt is the daughter of retired United States Marine Corps Colonel Richard Marsden.  Bash Decl., Ex. B, Marsden Military Records.  Colonel Marsden, then a resident of Missouri, filed an administrative claim with the Navy on March 24, 2023, but he died of bladder cancer on June 22, 2023.  Bash Decl., Ex. C, Marsden Death Certificate.  His will named Ms. Merritt as personal representative.  The will was probated in Missouri state court, and Ms. Merritt

---

[1]  All docket citations refer to case number 7:23-cv-00897.

was issued letters testamentary on July 28, 2023, appointing her "personal representative, who may administer the estate." Bash Decl., Ex. D, Merritt Letters Testamentary. She now seeks to pursue a CLJA action on behalf of her father as his "legal representative."

It is important that the dispute over the meaning of "legal representative" be resolved soon because many other legal representatives are also seeking relief under the CLJA. Accordingly, the PLG now moves for partial summary judgment that a legal representative of a decedent's estate appointed by a court of competent jurisdiction qualifies as a "legal representative" under the CLJA.

## SUMMARY OF ARGUMENT

An individual who has been appointed the legal representative of the estate of a decedent by a court of competent jurisdiction qualifies as a "legal representative" within the meaning of the CLJA. Nothing in the either the CLJA or the FTCA supports the government's position that the FTCA—and therefore state law—fills "gaps" in the CLJA, and at any rate there is no gap to fill here. Accordingly, a representative appointed by a court outside of North Carolina is not required to open an ancillary estate in North Carolina state court in order to proceed on a CLJA action.

I. Section 804(b) of the CLJA authorizes a "legal representative" to bring suit on behalf of a qualifying individual. The plain meaning of that term, according to dictionaries and precedent of the Supreme Court and the Fourth Circuit, is a person appointed to represent a decedent's estate. That resolves the dispute here because there is no indication that Congress intended to depart from the plain meaning in the CLJA. Nothing in the text of the statute even arguably points to North Carolina law as supplying the definition of "legal representative" or as establishing requirements that a legal representative must meet before she may file a CLJA action. Indeed, although Congress was acutely aware that all of the underlying conduct occurred in North Carolina and made a North Carolina federal court the exclusive forum for adjudicating CLJA claims, it

conspicuously did not choose to adopt North Carolina law for that issue. That choice must be respected.

II. Even if the CLJA did leave a "gap" to fill with respect to the meaning of "legal representative," it would not be proper to resolve the ambiguity by applying provisions of the FTCA. The FTCA does not apply to federal causes of action such as those brought under the CLJA. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 211-215 (4th Cir. 1998). Nor does it apply to injuries suffered by servicemembers incident to their service. *United States v. Johnson*, 481 U.S. 681, 682 (1987). It therefore does not apply by its own force to an action under the CLJA.

Nothing in the CLJA indicates that the FTCA was intended to serve as a general "gap filler." No provision of the statute incorporates the FTCA generally by reference. Instead, the CLJA adopts specific provisions of the FTCA, either by express reference or through parallel requirements. That is a powerful indication that Congress did not intend for the FTCA to generally apply to the CLJA. The government argues that the CLJA was intended *only* to eliminate three defenses that had thwarted FTCA actions arising out of Camp Lejeune's toxic water, but that is demonstrably false: The CLJA departs from the FTCA in numerous respects, including by replacing the FTCA's standard for liability (based on state substantive law) with unique federal standards that require no showing of fault and an equipoise level of causation, and by providing for exclusive venue in this Court, a jury-trial right, and specified offsets from damages. And while the government repeatedly maintains that CLJA actions rely on the FTCA's waiver of sovereign immunity, that is also incorrect. The CLJA contains its own waiver of sovereign immunity in Section 804(b). And, at any rate, the FTCA's waiver applies only to liability based on state substantive law, not federal causes of action like CLJA actions. Finally, the government's reliance

on the word "otherwise" in Section 804(f) overlooks that Congress had strong reason for concern that the FTCA's discretionary-function exception, which is cross-referenced in that section, would have been construed to apply to CLJA actions regardless of the applicability of the FTCA generally.

III. Even if Congress had intended the FTCA to serve as a "gap filler" for the CLJA, the FTCA says nothing about the definition of "legal representative" and so sheds no light on that question. The reason that courts applying the FTCA have looked to state law in defining who may sue on behalf of an estate is that the FTCA waives immunity for state-law torts, and state-law wrongful-death actions typically define who may obtain recovery on behalf of an estate. But the CLJA contains its own federal cause of action, so North Carolina law is not relevant to the question of who qualifies as a legal-representative plaintiff.

## LEGAL STANDARD

"A motion for partial summary judgment utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985), *amended* 788 F.2d 1042 (4th Cir. 1986), and Fed. R. Civ. P. 56(d)). Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" on the relevant issue. *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 228 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). A district court may resolve "purely legal issues—that is, issues that can be resolved without reference to any disputed facts"—through a summary-judgment order. *Dupree v. Younger*, 598 U.S. 729, 735 (2023); *cf. Gill*, 773 F.2d at 595 (permitting summary judgment when "inquiry into the facts" is not needed to "clarify the application of the law" (quoting *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950))).

**ARGUMENT**

The CLJA is not ambiguous: A "legal representative"—that is, a representative of an estate appointed by a court of competent jurisdiction—may bring suit on behalf of a qualifying individual. The statute contains no hint that plaintiffs must open ancillary estates in North Carolina state court before vindicating their federal right or that North Carolina law or procedure otherwise supplies the meaning of "legal representative." That requirement has been wholly contrived by the government and would impose pointless new burdens on CLJA plaintiffs who have waited years for justice. This Court should reject it.

I.     **Under The Plain Text Of The CLJA, Anyone Who Is Appointed As The Legal Representative Of An Estate By A Court Of Competent Jurisdiction Qualifies As A "Legal Representative"**

The statutory question here is not a difficult one. Dictionaries, Supreme Court precedent, and federal judicial decisions construing the term "legal representative" in other federal statutes all provide that "legal representative" means a person appointed by a court to represent a decedent's estate. There is thus no "gap" to fill: The only judicial task is to apply the statutory text as written.

1. The CLJA permits an "individual" or "the legal representative" of an individual who "resided, worked, or was otherwise exposed" to Camp Lejeune water for a qualifying period of time to "bring an action" in this Court "to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." CLJA § 804(b); *see also id.* § 804(e)(1) and (2). The statute does not define, qualify, or limit the term "legal representative." Because the term lacks "a statutory definition, . . . [t]he phrase's plain meaning at the time of enactment" governs. *Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012); *Smith v. United States*, 508 U.S. 223, 228 (1993).

6

Courts "customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998). Here, dictionaries establish the plain meaning of the phrase "legal representative": one appointed by a court to represent a decedent's estate. *Black's Law Dictionary* defines legal representative as "[a] legal heir," "[a]n executor [or] administrator," or "[s]omeone who manages the legal affairs of another because of incapacity or death, such as the executor of an estate." *Representative*, BLACK'S LAW DICTIONARY (11th ed. 2019). The *Merriam-Webster* dictionary similarly defines that term as a "personal representative," which is "an executor or administrator who may bring or be subject to an action or proceeding for or against a deceased person and his or her estate." *Legal Representative*, MERRIAM-WEBSTER.[2] And the *Oxford English Dictionary* defines "legal representative" as "[a]n heir or executor of the personal estate of a deceased person." *Legal representative*, OXFORD ENGLISH DICTIONARY.[3]

Given that uniform understanding of the term "legal representative," it is no surprise that federal courts have long adhered to the same definition. As the Supreme Court explained in *Briggs v. Walker*, 171 U.S. 466 (1898), "[t]he primary and ordinary meaning of the words . . . 'legal representatives' . . . when there is nothing in the context to control their meaning, is 'executors or administrators,' they being the representatives constituted by the proper court." *Id.* at 471 (citations omitted).

Lower courts have regularly relied on this plain meaning to interpret the term in federal statutes. For example, the Lanham Act provides that a trademark holder's "legal representatives" may bring suit on behalf of a trademark registrant or applicant. 15 U.S.C. § 1127. In construing

---

[2]  https://www.merriam-webster.com/legal/legal%20representative.

[3]  https://www.oed.com/search/dictionary/?scope=Entries&q=legal+representative.

"legal representative," the Second Circuit explained that although "[i]n its broadest usage, the phrase 'legal representative' may refer simply to '[o]ne who stands for or acts on behalf of another,'" usually its meaning is "more precise" and "may refer, for example, to an 'executor or administrator' designated to act on behalf of a party who is incapable of acting on his own behalf, or a trustee named to act on behalf of a party who, by law or agreement, is unauthorized to represent his own interests." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 80 (2d Cir. 2013) (quoting BLACK'S LAW DICTIONARY 1416 (9th ed. 2009) (defining "representative")) (citing *Rock–Ola Mfg. Corp. v. Filben Mfg. Co.*, 168 F.2d 919, 922 (8th Cir. 1948); *In re Casco Chem. Co.*, 335 F.2d 645, 651 (5th Cir. 1964)).

Other federal courts have construed the same term in federal statutes to refer to an executor or administrator of a decedent's estate. *See, e.g.*, *Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1255 (E.D. Wash. 2004) (explaining that "the ordinary meaning of" legal representative is "one who appears on behalf of a party *who is otherwise unable or incapable of doing so*, for example by a guardian of a minor or an administrator of an estate"); *Marcano v. Offshore Venezuela*, 497 F. Supp. 204, 207 (E.D. La. 1980) ("[T]he procedure for becoming a proper party [i.e., 'personal representative'] under Fed. R. Civ. P. 25(a)(1) 'requires some designation by a court that the individual seeking to prosecute the wrongful death action is an administrator of the decedent's estate.'"); *The Pan Two*, 26 F. Supp. 990, 993 (D. Md. 1939) ("In giving the right of action to the personal representative without further description, Congress [in the Jones Act] evidently intended to confer the right upon the lawfully and properly appointed executor or administrator of the decedent … .").

Similarly, Federal Rule of Civil Procedure 60(b) authorizes a court to "relieve a party or its legal representative from a final judgment" if certain conditions are met. In interpreting that

rule, the Tenth Circuit has explained that "the term 'legal representative' is 'sufficiently broad to include any person who stands in the place and stead of one deceased in respect to property, whether transferred to him by operation of law, or otherwise.'" *Ingerton v. First Nat. Bank & Tr. Co. of Tulsa*, 291 F.2d 662, 664 (10th Cir. 1961). And in applying that definition, the court concluded that because a "judgment-debtor died intestate in Texas seized of property there[,] after entry of [a] deficiency judgment," and because under Texas law "the property vested immediately in his heirs at law," the movant, who was a "son and heir at law," was a "legal representative" who could seek relief under Rule 60(b). *Id.*

The PLG has found no cases in which "legal representative" means anything materially different. And in none of the foregoing authorities did the court hold that the forum state's law supplies the meaning of "legal representative," much less that a legal representative appointed by a court outside of the forum state must register an ancillary estate in local state courts before the representative can proceed on a federal cause of action.

2. No provision of the CLJA indicates that North Carolina law controls the definition of legal representative. That is significant in part because Congress required that CLJA actions all be brought in North Carolina federal court. CLJA § 804(d). Given that Congress was focused on this forum in enacting the CLJA, but did not say a word about the application of North Carolina law to that question, it would be incongruous and inconsistent with congressional intent to construe the statute to conform to North Carolina estate law.

It would also be contrary to the basic purposes of the CLJA and to both the letter and spirit of Federal Rule of Civil Procedure 1. Congress recognized that Camp Lejeune victims have waited years for justice and that time is of the essence in awarding relief. Given that urgency, Congress created a streamlined cause of action in which plaintiffs need not establish negligence or fault by

the government and are required only to "produce evidence . . . sufficient to conclude that a causal relationship is at least as likely as not." CLJA § 804(c)(2)(B). It is also common knowledge that Camp Lejeune victims and their legal representatives reside across the country, in all 50 states, as well as abroad. Requiring representative plaintiffs to obtain North Carolina estate counsel and initiate an entirely separate proceeding in North Carolina state court to open an ancillary estate would therefore undermine the CLJA's efficient statutory scheme. And for no discernible purpose: As in any other case arising under a federal statute that authorizes legal representatives to sue, this Court is fully capable of assessing whether a plaintiff has been appointed the legal representative of a qualifying decedent's estate by a court of competent jurisdiction. While opening an estate in North Carolina is an option for representatives appointed by non-North Carolina courts, there is simply no reason to force every non-North Carolina legal representative—who may have already spent considerable time and resources opening the original estate—to jump through the additional hoop of opening an ancillary estate in North Carolina.[4]

3. As representative actions unfold, other questions are likely to arise—for example, what type of relief can be awarded to compensate for the death of a Camp Lejeune victim and how any monetary award must be divided among a decedent's heirs. Those questions need not be resolved at this stage in order to hold that a "legal representative" means any person appointed to represent a decedent's estate by a court of competent jurisdiction. Some of those questions may also be resolved by the plain text of the CLJA, while others may require the Court to develop federal

---

[4] The PLG may in the future propose a streamlined procedure in which this Court could directly appoint legal representatives for CLJA purposes for those plaintiffs who have not yet opened an estate in state court. At this time, however, the PLG seeks a ruling only that representative plaintiffs' choices to open estates in state courts (including North Carolina courts) will be honored, consistent with the plain text of the CLJA.

common law (perhaps informed by state law), as the Court noted at the October 30 hearing. *See* 10/30 Hr'g Tr. 36. For present purposes, however, it is sufficient to conclude that in order to bring suit as a "legal representative" under the CLJA, a plaintiff need only establish that he or she was appointed the representative of a decedent's estate by a court of competent jurisdiction—a fact that can be established simply by furnishing the relevant court order, as Ms. Merritt has done here.

To be sure, nothing in the CLJA *bars* a plaintiff from opening an ancillary estate in North Carolina. North Carolina courts are courts of competent jurisdiction as well, and to the extent that some plaintiffs have opened ancillary estates (or original estates) in North Carolina, they may file suit under the CLJA as legal representatives. But a plaintiff who has been appointed a legal representative of an estate by a non-North Carolina court is fully empowered to pursue a CLJA action without first initiating a North Carolina state-court proceeding.

## II. The FTCA Does Not Supply The Standard For Qualifying As A "Legal Representative"

The government does not appear to have any basis to argue that the text of the CLJA directly requires the opening of an ancillary estate under North Carolina law. Instead, the government has asserted that "the Federal Tort Claims Act applies to fill any gaps" in the CLJA, and the FTCA requires the application of state law to determine the government's substantive liability. 10/30 Hr'g Tr. 37; *see* D.E 34, at 6-8. That argument fails at the threshold because, for the reasons explained above, there is no "gap" to fill here and so "the sole function of the courts is to enforce [the statute] according to its terms." *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994); *see Patel v. Napolitano*, 706 F.3d 370, 375 (4th Cir. 2013) (using principles of statutory interpretation to determine if any gap exists).

But even if there were some ambiguity in the CLJA about the meaning of "legal representative," the FTCA would not supply a proper basis on which to resolve it. Under

controlling Supreme Court precedent, the FTCA is doubly inapplicable: It does not apply to federal causes of action like the CLJA at all, and it does not apply to the government's liability to military personnel for injuries incident to service. And nothing in the CLJA itself incorporates the FTCA as a gap-filler.

### A. The FTCA Does Not Apply To CLJA Claims

The government appears to contend that the FTCA by its terms applies to CLJA claims. *See* D.E. 34, at 5-6. That position, however, is foreclosed both by the plain text of the FTCA and by Supreme Court and Fourth Circuit precedent construing that text. And it is inconsistent with the government's prior litigating position, before the CLJA was enacted, that FTCA claims were barred by the *Feres* doctrine—a position that courts adopted in rendering judgment against Camp Lejeune plaintiffs.

The FTCA's cause of action is set forth at 28 U.S.C. § 1346(b)(1) and provides:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*.

28 U.S.C. § 1346(b)(1) (emphasis added). Critically, the Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *Meyer*, 510 U.S. at 478.

For that reason, the Supreme Court has held that where "federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right," the federal claim "is not cognizable under § 1346." *Id.* In *Meyer*, for example, the Court held that a federal constitutional tort was not cognizable under Section 1346(b)(1). *Id.* at 479. Similarly, in *Global Mail*, 142 F.3d 208, the Fourth Circuit rejected the application of FTCA procedures to

Lanham Act claims, explaining that because the Lanham Act "creates in essence a federal statutory tort" and "the FTCA does not provide a cause of action for federal torts, federal agencies typically cannot be sued under the FTCA for Lanham Act violations." *Id.* at 211–15. And in *Williams v. United States*, 242 F.3d 169 (4th Cir. 2001), the Fourth Circuit held that claims under the federal Emergency Medical Treatment and Active Labor Act that impose a duty of care for hospitals that differs from state tort law do not fall under the FTCA. *Id.* at 173.

The upshot of those rulings is that plaintiffs pursuing federal causes of action against the United States are "not limited by the FTCA's restrictions." *Global Mail*, 142 F.3d at 212. Simply put, where federal law, not state law, provides the substantive rule, none of the FTCA provisions apply. *See id.* at 215 (holding that FTCA procedures are followed only "for those claims cognizable under the FTCA").

That principle defeats the government's argument here: The CLJA is a federal cause of action, with its own unique standards and requirements, and it is not subject to the FTCA because it does not impose liability on the government "in accordance with the law of the place where the act or omission occurred," *i.e.*, North Carolina law. 28 U.S.C. § 1346(b). As this Court recognized, Congress "created a new federal cause of action" in passing the CLJA. D.E. 22, at 1. The statute provides a "new basis on which Plaintiffs may sue for recovery" that differs fundamentally from FTCA tort claims: namely, while the FTCA requires proof of traditional tort elements, like duty and breach, the CLJA requires only that a plaintiff show "a relationship between exposure to the water at Camp Lejeune and the stated harm" sufficient under the Act. *Wilson v. United States*, 2023 WL 1999854, at *2-3 (E.D.N.C. Feb. 14, 2023). The CLJA further "establishes new forms of harm that may serve as a claim, renders new classes of evidence admissible by statute, and removes punitive damages" to create a "clearly different" claim. *Id*. at

\*3.  As the Supreme Court has thus summarized, the CLJA "provides an alternative remedy to the FTCA." *Clendening v. United States*, 143 S.Ct. 11 at n.2 (2022) (Mem.).[5]

Apart from the basic problem that the FTCA does not apply to federal torts, there is another reason that it cannot apply to CLJA claims.  "In a line of cases beginning with *Feres v. United States*, [340 U.S. 135 (1950)], the Supreme Court has consistently held that the [FTCA] bars military personnel from suing the sovereign for alleged torts that occur 'during the course of an activity incident to service.'"  *Appelhans v. United States*, 877 F.2d 309, 310 (4th Cir. 1989) (quoting *Johnson*, 481 U.S. at 682); *see, e.g.*, *United States v. Shearer*, 473 U.S. 52, 58 (1985).  CLJA claims brought by servicemembers and veterans typically allege injuries during the course of activity incident to service.  They therefore could not be brought under the FTCA.

In fact, the government has itself been arguing for years that under the *Feres* doctrine, the FTCA does not authorize recovery for injuries arising out of Camp Lejeune.  Just three years ago, the government told the Fourth Circuit that under the *Feres* doctrine, the "FTCA remedy"—*i.e.*, Section 1346(b)(1)—is not "available for injuries sustained while on duty on a military base."  Br. of the United States, *Clendening v. United States*, 2020 WL 6700367, at \*9 (E.D.N.C. Nov. 6, 2020).  The government was successful in persuading the Fourth Circuit to bar those claims on precisely that basis.  *See, e.g.*, *Clendening v. United States*, 19 F.4th 421, 428 (4th Cir. 2021) ("The exposure cited as the cause of Clendening's death occurred in the course of his day-to-day, active-duty service while on base at Camp Lejeune.  Clendening's injuries thus 'stem[med] from the

---

[5]  Moreover, the FTCA on its face applies only to cases of "negligent or wrongful act or omission." 28 U.S.C. § 1346(b)(1).  But the CLJA does not have negligence or fault as a proof element.  For that reason alone, the Court should reject the government's position that the FTCA applies to CLJA claims.

relationship between [Clendening] and [his] service in the military.'") (quoting *Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir. 2013)).

The government cannot have it both ways: It cannot simultaneously maintain that Section 1346(b)(1) does not apply to claims arising out of Camp Lejeune while also arguing that this Court must apply Section 1346(b)(1) to construe or limit CLJA claims arising out of the same factual circumstances. Doctrines of estoppel prevent such gamesmanship with statutory meaning. *See Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019) (explaining that the doctrine of judicial estoppel bars a party from taking a position that is clearly inconsistent with an earlier one).

### B. The CLJA Does Not Incorporate The FTCA

For the foregoing reasons, the FTCA by its terms does not apply to CLJA claims. The government also contends, however, that the CLJA itself incorporates the FTCA "to fill gaps" in the CLJA, despite the fact that the statutory language says nothing whatsoever to that effect. D.E. 34, at 6. The government's strained interpretation is incorrect.

1. No provision of the CLJA expressly deems the FTCA a "gap filler." That alone should suffice to reject the government's position. Given that the CLJA was enacted to supersede judicial holdings that FTCA claims were unavailable for injuries arising out of Camp Lejeune's toxic water, Congress knew that one possible fix would have been to maintain the basic FTCA standards while eliminating the grounds on which courts had previously dismissed those claims (*e.g.*, North Carolina's statute of repose, the *Feres* doctrine). But Congress opted for a fundamentally different approach. Rather than impose "the law of the place where the act or omission occurred" (*i.e.*, North Carolina law) as the rule governing substantive liability, as the FTCA does, 28 U.S.C. § 1346(b)(1), Congress instead created a cause of action governed by federal standards. That considered choice must be respected.

Moreover, Congress *did* choose to borrow discrete elements of the FTCA—a choice logically inconsistent with the government's view that the statute somehow implicitly incorporates the FTCA wholesale as a "gap filler." For example, Section 804(h) requires plaintiffs to comply with the FTCA's administrative-exhaustion requirement, 28 U.S.C. § 2680(a). In addition, the CLJA's bar on punitive damages parallels the FTCA (without expressly incorporating it). *Compare* CLJA § 804(g) *with* 28 U.S.C. § 2674. And the CLJA provides an exception for combatant activities that is substantially similar to an exception from the FTCA. *Compare* CLJA § 804(i) *with* 28 U.S.C. § 2680(j). Those provisions would be unnecessary if the FTCA served as a general "gap filler" for matters not expressly addressed by the CLJA, violating the principle that courts should not "interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990).[6]

At the same time, Congress enacted a number of provisions that are flatly inconsistent with the FTCA, without expressing any indication that they were exceptions to otherwise applicable requirements (for example, through a "notwithstanding" clause). Those include standards for liability defined by federal, not state, law, CLJA § 804(b) and (c); an exclusive-venue provision and a jury-trial right, *compare* CLJA § 804(d) *with* 28 U.S.C. §§ 1346(b), 2402; and a CLJA-specific statute of limitations, *see* CLJA § 804(j).

That statutory structure is irreconcilable with the government's claim that the FTCA serves as a "gap filler" for the CLJA. Congress selected *a la carte* which provisions of the FTCA to

---

[6] The government contends that the CLJA's bar on punitive damages is not superfluous under its view because that bar clarifies that the CLJA's authorization of "appropriate relief," an undefined term, does not include punitive damages. D.E. 34, at 13-14. But the government's basic theory is that the FTCA's specific provisions serve to define and limit undefined terms in the CLJA—*e.g.*., "legal representative." If that theory were correct, there would have been no reason to enact a redundant prohibition on punitive damages.

incorporate into the CLJA and which matters would be governed by new federal standards.  Simply put, nothing in the text of the CLJA gives the slightest hint that Congress intended FTCA requirements to apply to CLJA actions.

2.  The government argues that in enacting the CLJA, Congress "rel[ied] on [the FTCA's] waiver" of sovereign immunity—and therefore incorporated all of the FTCA's limitations on that waiver.  D.E. 34, at 6.  But the premise is not correct.  By its plain terms, the FTCA's waiver applies only to liability "in accordance with the law of the place where the act or omission occurred"—*i.e.*, liability under state law.  28 U.S.C. § 1346(b)(1); *see Meyer*, 510 U.S. at 478. That is why the Supreme Court has held that the FTCA's waiver does not apply to federal causes of action.  *Id.* at 479.  And the CLJA contains its own waiver of sovereign immunity, authorizing "appropriate relief" against the United States if the CLJA's unique legal standards are met, without stating that any of the requirements of the FTCA must also be satisfied.  CLJA § 804(b).

Lacking any textual or precedential basis to argue that the FTCA's waiver governs the CLJA, the government flips the burden, claiming that "[i]f Congress intended CLJA actions to fall outside § 1346(b)(1)'s waiver" of sovereign immunity, "it knew how to say so."  D.E. 34, at 8 (internal quotation marks omitted).  That argument makes no sense.  As explained, the FTCA's waiver does not apply to federal causes of action, and Congress expressly waived sovereign immunity in the CLJA itself by authorizing suits against the United States for appropriate relief. CLJA § 804(b); *see Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016) (explaining that "the FTCA merely waives sovereign immunity to make the United States amenable to a state tort suit").  So there was no need for Congress to state that the CLJA falls outside of the FTCA's waiver of sovereign immunity.

The government cites provisions of Section 2680 of the FTCA that specify that certain disputes fall outside of the FTCA's waiver. D.E. 34, at 9 (citing 28 U.S.C. § 2680(d) and (*l*)). But in those categories of disputes (involving admiralty claims and claims against the Tennessee Valley Authority), the exemption is necessary because the FTCA's waiver of immunity for state-law tort liability would otherwise apply. *See Bell v. Tug Shrike*, 332 F.2d 330, 332 (4th Cir. 1964) ("The Supreme Court … appl[ies] in admiralty cases either maritime principles or state law, depending upon the nature of the case and the problems involved."); *Thacker v. Tennessee Valley Auth.*, 139 S. Ct. 1435, 1438-39 (2019) (explaining that the TVA is subject to state tort liability for its commercial activities, putting it in "the same position as a private corporation supplying electricity"). The same is true of every other exemption in Section 2680. But it is not true of the purely federal cause of action in the CLJA.

The government also claims that the CLJA "lacks specificity" with respect to its waiver of immunity because it does not expressly refer to "damages," "money," or "compensation," like some other statutory waivers do. D.E. 34, at 9. That is not a serious argument. The CLJA compensates injuries from poisoning suffered in the past and requires "appropriate relief"; it provides that "[a]ny award . . . be offset by the amount of any disability award, payment or benefit" made under certain federal programs, § 804(e)(2); and it expressly exempts "[p]unitive damages," § 804(g). There can therefore be no doubt that the CLJA authorizes monetary relief against the United States—without any need to resort to the FTCA's separate waiver of sovereign immunity.

3. Another consideration shows that the CLJA does not implicitly incorporate the FTCA. As explained above, the *Feres* doctrine holds that the FTCA does not authorize suits by military personnel for alleged torts incident to service. *Appelhans*, 877 F.2d at 310. But if the CLJA were construed to implicitly incorporate the FTCA—including by imposing state-law standards for the

question of who may bring suit, as the government asks this Court to hold—that would mean that Congress had *sub silentio* jettisoned *Feres*. *See Clendening*, 19 F.4th at 428 (explaining that the facts of Camp Lejeune are not "meaningfully different from *Feres* itself"; both cases involve "unsafe living conditions on base"); *Foster v. Dep't of the Navy*, 2020 WL 1542092, at *3 (E.D.N.C. Mar. 31, 2020) (noting that the facts of Camp Lejeune litigation are "indistinguishable from *Feres* itself"). Congress, however, does not hide aircraft carriers in swimming pools, and one would expect Congress to speak clearly if it intended to defer to state law in determining compensation for service-related injuries. *See Whitman v. Am. Trucking Assn.*, 531 U.S. 457, 468 (2001).

4. In its statement of interest arguing that the FTCA's fee caps should apply to CLJA claims, the government argues that certain provisions of the CLJA show that Congress intended the FTCA to fill supposed "gaps" in the CLJA. D.E. 34, at 6-8. Each of its arguments is misplaced.

*First*, the government notes that "[t]he CLJA specifically references and incorporates the FTCA's administrative exhaustion requirement" in Section 804(f). D.E. 34, at 6. But for the reasons explained above, that cuts exactly the other way: The fact that Congress chose to incorporate one specific provision by reference indicates that it did not implicitly incorporate other, unmentioned provisions.

The government thinks that the express incorporation of Section 2675's exhaustion requirement means that Congress must have implicitly incorporated another provision of the FTCA governing administrative settlement, 28 U.S.C. § 2672, because otherwise the Navy would lack authority to settle CLJA administrative claims. D.E. 34, at 6. And from that premise, the government leaps to the conclusion that the CLJA must also incorporate all other FTCA provisions to fill "gaps" in the statute.

But again, the government's premise is wrong. Section 2672 does not authorize the Navy to settle *federal* claims. Rather, like the FTCA cause of action, 28 U.S.C. § 1346(b)(1), that section applies only to liabilities arising out of "the law of the place where the act or omission occurred," *i.e.*, state law. 28 U.S.C. § 2672; *see Meyer*, 510 U.S. at 477. The Navy's authority to settle CLJA claims either derives from another source of authority, *see, e.g.*, Military Claims Act, 10 U.S.C. § 2733(a), (d) (allowing settlement for injury or death caused by a member of armed forces "acting within the scope of his employment, or otherwise incident to noncombat activities"), or is implicit in the CLJA itself.

*Second*, the government observes that the CLJA bars three defenses that the government had successfully invoked in the FTCA cases arising out of Camp Lejeune: the *Feres* doctrine, the discretionary-function exception, and North Carolina's statute of repose. D.E. 34, at 7-8. The government argues that the "targeted nature" of the provisions "expressly eliminat[ing] [these] legal defenses" shows that "Congress intended to override some but not all of the FTCA's provisions." *Id.* at 7.

That argument is flawed in multiple respects. While Congress intended to ensure that the government could not throw up the same roadblocks to relief that it used to thwart recovery under the FTCA, that does not remotely suggest that Congress otherwise adopted the FTCA's standards. As explained above, that conclusion is demonstrably incorrect: In addition to foreclosing those three defenses, Congress also replaced North Carolina standards of liability with a unique federal standard that requires no showing of fault and proof of only equipoise-level causation, and it made a host of other departures from the FTCA, including with respect to venue, jury trials, and benefit offsets.

Moreover, the government's assertion that the CLJA "expressly" overrides the three defenses is overstated. For two of the defenses—*Feres* and the statute of repose—the override is implicit, not express. The CLJA is not subject to the *Feres* defense for the simple reason that it is a federal, not state, cause of action. *See* p. 19, *supra*.[7] And the CLJA does not exempt claims from North Carolina's statute of repose in a "targeted" or express fashion. Rather, it merely establishes a CLJA-specific statute of limitations and states that no other statute of limitations would apply. Neither aspect of the CLJA supports the view that Congress enacted only "targeted" exemptions from the FTCA. Rather, Congress simply adopted a different statutory framework that differs from the FTCA in many respects.

Although Section 804(f) of the CLJA does expressly exempt CLJA actions from the FTCA's discretionary-function exception, 28 U.S.C. § 2680(a), Congress had a strong basis for concern that courts would impose that exception as an independent *construction* of the CLJA, not because the FTCA itself otherwise applies to CLJA claims. As the Supreme Court has explained, Congress added the discretionary-function exception to the FTCA as a "clarifying amendment" in order to "avoid[] 'any possibility that the [FTCA] may be construed to authorize damage suits against the Government growing out of a legally authorized activity.'" *Dalehite v. United States*, 346 U.S. 15, 26-27 (1953). Congress "believed that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by *judicial construction*." *United States v. S.A. Empresa de Viacao Aerea Rio grandense*

---

[7] The government characterizes the CLJA's statement that a "veteran" can be a plaintiff (§ 804(b)) as eliminating the *Feres* defense. While that statement underscores that *Feres* does not apply to the CLJA, it alone would not fully override *Feres*: The statutory term "veteran" does not include servicemembers who were dishonorably discharged, yet those categories of plaintiffs are clearly permitted to sue under the CLJA. 38 U.S.C. § 101(2) (incorporated by reference in CLJA § 804(b)).

*(Varig Airlines)*, 467 U.S. 797, 810 (1984) (emphasis added). By making clear that CLJA claims are not subject to the discretionary-function exception, Congress averted a "judicial construction" of the CLJA that would require an inquiry into whether the government's actions leading to the disaster at Camp Lejeune represented an exercise of its lawful discretion.[8] That choice does not suggest that Congress intended other FTCA provisions to apply to CLJA claims.

*Third*, and relatedly, the government argues that the word "otherwise" in section 804(f) (the CLJA section incorporating the FTCA's discretionary-function exception) shows that Congress intended courts to consult the FTCA to supply the rule for matters unaddressed in the CLJA. D.E. 34, at 8. Section 804(f) provides: "The United States may not assert any claim to immunity in an action under this section that would *otherwise* be available under section 2680(a) of title 28, Unites States Code" (emphasis added). The government argues that the word "otherwise" implies that "other FTCA provisions will continue to apply" to the CLJA. D.E. 34, at 8. But the government overlooks that Congress had two compelling reasons to believe that, absent Section 804(f), courts might hold that the discretionary-function exception applies to CLJA claims, even though FTCA provisions generally do not.

The first is the reason just mentioned: When Congress enacted Section 2680(a), it merely *clarified* what "would have been exempted from the waiver of sovereign immunity by judicial construction" in any event. *Varig Airlines*, 467 U.S. at 810. The same "judicial construction" could have been imposed on the CLJA.

---

[8]     Before the enactment of the CLJA, courts routinely held that the discretionary-function exception barred recovery for Camp Lejeune injuries. *See, e.g.*, *Clendening*, 19 F.4th at 436 (affirming dismissal of claims arising from Camp Lejeune injuries under the discretionary function exception); *Tate v. Camp Lejeune*, 2019 WL 7373699, at *2 (E.D.N.C. Dec. 30, 2019) (same); *Hansley v. Dep't of Navy*, 2021 WL 2546716, at *2 (E.D.N.C. Jun. 21, 2021) (same); *Snyder v. U.S.*, 504 F. Supp. 2d 136, 141 (S.D. Miss. 2007) (same); *In re Camp Lejeune N. Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1362-65 (N.D. Ga. 2016) (same).

The second reason reflects a key difference between Section 2680 and other provisions of the FTCA. Section 2680 applies to the entirety of chapter 171 of title 28, not only to the provisions governing FTCA actions. The introductory sentence of Section 2680 states: "The *provisions of this chapter* and section 1346(b) of this title shall not apply to" the listed categories of actions, including the exercise of a discretionary function. 28 U.S.C. § 2680 (emphasis added). Other provisions of the FTCA, in contrast, are limited to FTCA actions or administrative claims. *See, e.g.*, 28 U.S.C. § 2676 (imposing judgment bar for "an action *under section 1346(b) of this title*" (emphasis added)); *id.* § 2679(b)(1) (providing that "[t]he remedy against the United States *provided by sections 1346(b) and 2672 of this title*" is exclusive (emphasis added)).

The CLJA, like the FTCA, is codified in chapter 171. *See* 28 U.S.C. ch. 171 note. Accordingly, under its plain text, Section 2680(a) would have applied to CLJA claims absent the Section 804(f) exemption. To be sure, Congress did not itself direct that the CLJA be housed in chapter 171. But given the CLJA's provenance as a replacement for an FTCA action that had proved insufficient to remedy the Camp Lejeune injustice, Congress had reason to anticipate that the Office of Legislative Counsel would place the CLJA in chapter 171, subjecting it to Section 2680(a). So it was prudent to expressly exempt it from that provision.[9]

---

[9] In a footnote, the government attempts to show inconsistency in the PLG's position, citing Lead Counsel's argument—before the appointment of the PLG—that previously exhausted FTCA administrative claims did not need to be exhausted a second time because the administrative claims preexisted the CLJA. D.E. 34, at 13 n.6. The government fails to mention, however, that (i) Lead Counsel made clear that the CLJA establishes "a new statutory cause of action" entirely distinct from the FTCA action, which is the relevant question for what legal requirements govern CLJA actions, D.E. 19, at 7, No. 7:22-cv-00145-M-KS (Oct. 25, 2022); and (ii) Lead Counsel defined "claim" as merely "a recitation of the relevant *facts* giving rise to an injury and a request for monetary compensation," independent of any particular statute, *id.* at 9. And at any rate, this Court, at the government's urging, *rejected* Lead Counsel's argument, holding that "the administrative claims that the Navy denied before August 10, 2022, the administrative claims under section 804(h) of the Camp Lejeune Justice Act, and the Camp Lejeune Justice Act causes

5. The government also cites legislative history to support its argument. D.E. 34, at 10-12. But it mischaracterizes the bulk of the cited material, claiming that it shows that the CLJA was "*only* intended to remove certain legal defenses that were available under the FTCA in prior litigation." D.E. 34, at 10-11 & n.4 (emphasis added). The word "only" is the government's invention; the cited statements do not convey that removing those defenses was the *exclusive* purpose of the CLJA. And as noted, that understanding of the CLJA would be false: The CLJA also eliminates state law as the substantive basis for liability; absolves plaintiffs of any requirement to prove fault; requires a lesser showing of causation than ordinary tort laws; establishes exclusive venue in this Court; authorizes jury trials; and expressly provides for certain categories of offsets.

The government also cites two press releases signed by three Representatives that described the CLJA as authorizing claims "under the Federal Tort Claims Act." D.E. 34, at 10. Such a brief, informal statement in a document designed for public consumption and signed by only three Members of Congress could not reasonably compel an interpretation of the CLJA contrary to its plain text. CLJA claims are clearly not brought under the FTCA, because the basic substantive standard of Section 1346(b)(1) does not apply to federal claims.

Far more relevant is what the government later admits in its statement of interest: that an earlier version of the CLJA bill would have incorporated the FTCA's attorneys' fee provision by reference but that clause was removed in the legislative process and that Members of Congress have recently proposed legislation to reintroduce the provision. D.E. 34, at 11-13 & n.6 (citing H.R. 2192, 117th Cong. § 2(h) (2021)). Those are compelling indicia that Congress did not understand or intend the FTCA to fill supposed "gaps" in the CLJA.

---

of action in complaints filed in this court are *distinct*[.]" D.E. 19 at 14, No. 7:22-cv-00125-D-RJ, at 13 (Dec. 20, 2022) (emphasis added).

6. Finally, if this Court believed that it was a close question whether the FTCA "fills gaps" in the CLJA, the rule of lenity would require the Court to reject the government's position. Under that venerable canon of construction, "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). Here, an attorney's violation of the FTCA's fee provision is punishable through a criminal penalty of up to one year of imprisonment. 28 U.S.C. § 2678. Accordingly, were the Court to deem it ambiguous whether the FTCA "fills gaps" in the CLJA such that the fee provision would apply to agreements between CLJA plaintiffs and their attorneys, it should hold that it does not. The government's textually dubious position squarely implicates the fair-notice concern that animates the rule of lenity.

### III. Even If The FTCA Could "Fill Gaps" In The CLJA, It Does Not Address The Definition Of "Legal Representative"

Even if, contrary to the foregoing arguments, the FTCA could "fill gaps" in the CLJA, and even if there was a gap to fill here, the FTCA does not say a word about the definition of "legal representative," much less require representative plaintiffs to follow state estate-law principles in pursuing their claims. The FTCA does not use the words "legal representative" or any synonymous term, and it does not include any provision addressing representative claims. Whatever ambiguity exists on that issue in the CLJA, therefore, the FTCA cannot resolve it.

Importantly, the reason that courts have applied state estate law to wrongful-death claims brought under the FTCA is that the FTCA's standard for *substantive liability* relies exclusively on state law. *See* 28 U.S.C. § 1346(b)(1); *Meyer*, 510 U.S. at 478. Accordingly, if North Carolina substantive law imposes requirements on plaintiffs bringing North Carolina wrongful-death actions—*e.g.*, requiring out-of-state legal representatives to open ancillary estates in North Carolina—then the United States can be liable under the FTCA only if those requirements are met.

*See Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004); *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 628-30 (D. Md. 2011).

But the CLJA is fundamentally different.  It does not incorporate state-law liability standards, instead setting forth an independent federal cause of action.  There is no logical basis to conclude that the FTCA's incorporation of state-law standards of liability should resolve asserted ambiguities in the express requirements of that federal action.  It's apples and oranges.  And it is particularly implausible to believe that Congress—which was of course well-aware that all of these claims would be brought in North Carolina and all of the injuries had occurred in North Carolina—intended North Carolina law to supply the definition of "legal representative" or otherwise limit that term but declined to say so in the statutory text.

## CONCLUSION

This Court should grant partial summary judgment that Ms. Merritt qualifies as a proper "legal representative" within the meaning of the CLJA because she has been appointed a legal representative of her father's estate by a court of competent jurisdiction.

Dated: November 9, 2023                                        Respectfully submitted,

/s/ *John. F. Bash*
John F. Bash (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan LLP
300 W. 6th St., Suite 2010
Austin, TX 78701
Phone (737) 667-6100
Fax (737) 667-6110
johnbash@quinnemanuel.com
*Member, Plaintiffs' Executive Committee*
*Co-Chair, Law and Briefing Subcommittee*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted to Master
Docket *pro hac vice*)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
Fax (415) 956-1008
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
Fax: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC

/s/ *J. Edward Bell*
J. Edward Bell, III (admitted to Master Docket
*pro hac vice*)
Bell Legal Group, LLC
219 Ridge Street
Georgetown, SC 29440
Phone (843) 546-2408
Fax (843) 546-9604
jeb@belllegalgroup.com
*Lead Counsel*

/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue
Suite 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel and Government Liaison*

/s/ Robin Greenwald
Robin L. Greenwald (admitted to Master
Docket *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.

3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel*

525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
Fax: 704-633-9434
*Co-Lead Counsel*