IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| ) | UNITED STATES' MOTION TO |
| This Document Relates To: ) | STRIKE JURY TRIAL DEMAND |
| ALL CASES ) | |
| ) | |

Pursuant to Federal Rule of Civil Procedure 39(a)(2), Defendant United States of America moves to strike the jury trial demand in Plaintiffs' Master Complaint [Dkt. 25]. "[A] plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." *Lehman v. Nakshian*, 453 U.S. 156, 168 (1981). The Camp Lejeune Justice Act of 2022 ("CLJA"), Pub. L. No. 117-168, § 804, 136 Stat. 1802, 1802-04 (2022), which simply provides for "appropriate relief" and states that "[n]othing in this subsection shall impair the right of any party to a trial by jury," *id.* § 804(d), fails to affirmatively and unambiguously grant a right to a jury trial against the United States. Accordingly, the CLJA does not permit jury trials against the United States, and the Court should strike the jury trial demand in Plaintiffs' Master Complaint.

## NATURE OF THE CASE

Plaintiffs have filed tort actions against the United States pursuant to the CLJA to seek recovery for harm allegedly caused by exposure to water at Camp Lejeune.

## BACKGROUND

The CLJA provides that certain individuals may bring an action in this Court for "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." CLJA § 804(b). The statute expressly precludes the United States from relying on certain defenses that

1

would otherwise be available in tort claims against the United States, such as the discretionary function exception, 28 U.S.C. § 2680(a), and statutes of limitations and statutes of repose other than the one expressly set out in the CLJA.  *See* CLJA §§ 804(f), (j).  The CLJA also makes this Court the exclusive venue for such claims, with the caveat that "[n]othing in this subsection shall impair the right of any party to a trial by jury." *Id.* § 804(d).

Multiple plaintiffs have filed individual actions against the United States under the CLJA, and pursuant to Case Management Order No. 2 ("CMO 2"), Plaintiffs' Leadership filed a Master Complaint containing "allegations that are suitable for adoption by reference in individual CLJA actions."  CMO 2, Dkt. 23, p. 5.  In the Master Complaint, Plaintiffs demand a trial by jury "[p]ursuant to Fed. R. Civ. P. 38 and CLJA § 804(d)."  *See* Plaintiffs' Master Complaint, Dkt. 25, pp. 1, 44.

## **ARGUMENT**

The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars."  U.S. Const., amend. VII.  Because there was no such right at common law for claims against the sovereign, "[i]t has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government."  *Lehman*, 453 U.S. at 160; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) (recognizing the settled proposition that "the Seventh Amendment does not apply" in "suits against the United States").

Although jury trials may be provided by federal statute, Fed. R. Civ. P. 38(a), Congress has "almost always conditioned" a waiver of the United States' sovereign immunity "upon a plaintiff's relinquishing any claim to a jury trial," and "[t]he appropriate inquiry, therefore, is whether Congress clearly and unequivocally departed from its usual practice," *Lehman*, 453 U.S.

2

at 161-62; *York v. Russo*, 835 F.2d 876 (4th Cir. 1987) ("The Supreme Court has held that there is no right to a trial by jury in suits against the government unless the statute under which suit is brought explicitly provides for a jury trial."). Like the "waiver of [sovereign] immunity itself," the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman*, 453 U.S. at 161 (quotations omitted); *Library of Congress v. Shaw*, 478 U.S. 310, 319–20 (1986) (statutes allowing claims against the United States should be "read narrowly to preserve certain immunities that the United States has enjoyed historically"). Therefore, plaintiffs are not entitled to a jury trial unless "Congress has affirmatively and unambiguously granted that right by statute." *Lehman*, 453 U.S. at 168.

There is no such affirmative and unambiguous waiver here. The CLJA's subsection describing the cause of action provides that individuals may "obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." CLJA, § 804(b). However, the Supreme Court held in *Lehman* that statutory language authorizing "legal or equitable relief" against the United States was insufficient to supply an affirmative and unambiguous jury trial right. *Lehman*, 453 U.S. at 163. The Court declined to place weight on the word "legal" given the background principle that "the Seventh Amendment has no application in actions at law against the Government." *Id.* The use of the phrase "appropriate relief" in the CLJA is an even weaker basis to infer a jury trial right. Nor does it matter that the CLJA makes jurisdiction exclusive in district court. *See* CLJA, § 804(d). The Supreme Court has held that a statute's grant of exclusive jurisdiction to district courts does not include a jury trial right, explaining that there must be "an affirmative statutory grant of the right." *Lehman*, 453 U.S. at 164-65.

Likewise, the language in the CLJA's jurisdiction and venue provision stating that "[n]othing in this subsection shall impair the right of any party to a trial by jury," CLJA, § 804(d), does not provide a right to a jury trial against the United States. Rather than affirmatively authorizing jury trials, this statutory text by its terms indicates only that restricting jurisdiction and venue was not intended to also restrict any preexisting right to a jury trial that might exist. But subsection (d) does not address the existence of such a right, much less clearly grant such a right, and thus does not rise to the level of "affirmatively and unambiguously" providing for jury trials in CLJA cases against the United States. *Lehman*, 453 U.S. at 168.[1]

Indeed, the language of Section 804(d) is phrased in the negative and does not constitute a positive grant of rights at all. Thus, even apart from the longstanding principle that jury rights against the United States must be unequivocal, on its face the statute's language does not purport to create a jury right, and instead merely confirms that the statute does not operate to eliminate any right to a jury trial that might otherwise exist. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166-67 (2004) (reasoning that the phrase "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution" did not establish a cause of action for contribution). The text of Section 804(d) certainly does not constitute the sort of

---

[1] Given the lack of clarity about which preexisting jury trial right might be referenced by Section 804(d), it is not immediately evident what function this provision is meant to have, if any. It is plausible that Congress included a sentence about jury trials in Section 804(d) "in a more general excess of caution" to alleviate concerns that restricting venue to this Court might restrict other rights. *Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*, 583 U.S. 416, 138 S. Ct. 1061, 1074 (2018). It is plausible that Congress included a sentence about jury trials as it might relate to a third-party complaint or cross claim. *See* Fed. R. Civ. P. 13(g), 14. But speculation about Congress's motives in enacting the provision is irrelevant because the Supreme Court has been clear that "the text of a law controls over purported legislative intentions." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496-97 (2022). Thus, "the uncertainty surrounding Congress's reasons for drafting that clause does not matter." *Cyan*, 138 S. Ct. at 1075. Any uncertainty in Section 804(d) cannot supply the sort of affirmative and unambiguous right to a jury trial that would be necessary under Supreme Court precedent to establish such a right, particularly given that the United States is aware of no explanation for why Congress would have phrased the provision in this negative fashion had it intended to create an affirmative right to a jury trial in CLJA cases.

"affirmative" and "unambiguous" language that would be necessary to create a right to a jury trial against the United States.

Notably absent in the CLJA is the explicit language found in other statutory provisions that unequivocally grant a jury trial right in an action against the United States. For example, 28 U.S.C. § 2402 states that "any action against the United States [for certain tax refund claims] shall, at the request of either party to such action, be tried by the court with a jury." Similarly, the Presidential and Executive Office Accountability Act includes a provision specifying that, in certain actions by federal employees against their executive agency employers, "any party may demand a jury trial where a jury trial would be available in an action against a private defendant under the relevant law." 28 U.S.C. § 3901(b). Further underscoring the contrast with these other statutes, the CLJA was not preceded by significant legislative consideration of, or attention to, the consequences of allowing jury trials in this specific context. *See Lehman*, 453 U.S. at 161 n.8 (noting that Congress granted jury trials in tax refund cases "[o]nly after much debate, and after the conferees became convinced that there would be no danger of excessive verdicts as a result of jury trials in that unique context"); United States' Statement of Interest Regarding Attorneys' Fees, Dkt. 34, pp. 10-11 (discussing the CLJA's legislative history).

The absence of a jury trial right in CLJA actions is also consistent with the nature of the cause of action and the history of tort litigation against the United States. For almost 80 years since the Federal Tort Claims Act's enactment in 1946, tort claims against the United States have proceeded without a jury. In enacting the CLJA in 2022, Congress relied on the FTCA's waiver of sovereign immunity in 28 U.S.C. § 1346(b) and adopted most of the conditions of that waiver, while expressly abrogating a few of them in the CLJA. *See* United States' Statement of Interest Regarding Attorneys' Fees, Dkt. 34, pp. 5-14. One condition of that waiver in Section 1346 is

the prohibition of jury trials against the United States. *See* 28 U.S.C. § 2402 ("Any action against the United States under section 1346 shall be tried by the court without a jury [except for certain tax refund cases]."). Because a CLJA claim is an "action against the United States under section 1346," it "*shall* be tried by the court *without a jury*." *Id.* (emphases added); *Lehman*, 453 U.S. at 161 ("[I]n tort actions against the United States, Congress has similarly provided that trials shall be to the court without a jury.").

Given the plain language of Section 804(d) and the applicable legal principles, there is no need to resort to legislative history. Indeed, "[l]egislative history generally will be irrelevant" in determining whether sovereign immunity has been waived because such a waiver must be "unmistakably clear in the language of the statute." *Dellmuth*, 491 U.S. at 240 (citation omitted). In any event, such history underscores that there was no clear waiver. Prior to the enactment of the CLJA, the Members of the House of Representatives that wrote and introduced the CLJA into Congress stated that the CLJA permits claims against the United States "under the Federal Tort Claims Act," which does not permit a jury trial. *See* United States' Statement of Interest Regarding Attorneys' Fees, Dkt. 34 at 10 (discussing CLJA legislative history in explaining why gaps are filled by the FTCA). The United States is not aware of any statements by members or committees specifically regarding jury trials prior to enactment of the CLJA.[2]

On November 1, 2023, the Members who had prior to the bill's enactment stated that the CLJA permits claims "under the Federal Tort Claims Act" entered a statement in the

---

[2] Prior to the enactment of the CLJA, the Department of Justice shared "Technical Assistance" on the pending bill. *See* Ex. A, U.S. Dep't Justice, *Technical Assistance on Section 706 of HR 3967* (May 2, 2022). The Technical Assistance advocated for an alternative "no-fault compensation scheme" and identified several concerns with permitting litigation in federal court, including that the CLJA "permits jury trials that would not be available under the FTCA." The Technical Assistance elsewhere said that cases would be tried "potentially before a jury." The Technical Assistance imprecisely and incorrectly made these assumptions about the CLJA based on a preliminary assessment. Indeed, these assumptions were at odds with those pre-enactment statements from Members that the CLJA permits claims against the United States "under the Federal Tort Claims Act." Dkt. 34 at 10. In any event, absent unambiguous text, "recourse to legislative history will be futile." *Dellmuth*, 491 U.S. at 240.

Congressional Record that "it has always been our intent for the [CLJA] to stand separate and apart from the Federal Tort Claims Act in all respects," including by providing a right to a jury trial against the United States.  169 Cong. Rec. E1036 (daily ed. Nov. 1, 2023).  However, even if it were appropriate to consider legislative history to infer the waiver of sovereign immunity – which it is not – it would be inappropriate to consider *post-enactment* legislative history, which "is not a legitimate tool of statutory interpretation" because it "by definition 'could have had no effect on the congressional vote... .'"  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (citation omitted).

Particularly given the well-established rule that jury trials are available only when a statute "affirmatively and unambiguously grant[s] that right," *Lehman*, 453 U.S. at 168, the CLJA does not sufficiently evince an intent by Congress to allow for jury trials in tort actions against the United States for the first time.  The statute contains no express indication that Congress sought to deviate from ordinary practice, let alone that Congress did so "clearly and unequivocally."  *Id.* at 162.  Under controlling Supreme Court precedent, there is no right to a jury trial against the United States under the CLJA.  Accordingly, the Court should strike the jury trial demand in Plaintiffs' Master Complaint.  *See* Fed. R. Civ. P. 39(a)(2) ("When a jury trial has been demanded under Rule 38…[t]he trial on all issues so demanded must be by jury unless…the court, on motion or its own, finds that on some or all of the issues there is no federal right to a jury trial.").

## **CONCLUSION**

The Court should strike the jury trial demand in Plaintiffs' Master Complaint, pursuant to Federal Rule of Civil Procedure 39(a)(2).

Dated: November 20, 2023      Respectfully Submitted

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director
Environmental Torts Litigation Section

ADAM BAIN
Senior Trial Counsel
Environmental Torts Litigation Section

NATHAN BU
Trial Attorney
Environmental Torts Litigation Section

*/s/ Haroon Anwar*
HAROON ANWAR
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
Civil Division, Torts Branch
U.S. Department of Justice
P. O. Box 340
Washington, D.C. 20044
E-mail: haroon.anwar@usdoj.gov
Telephone: (202) 598-3946

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

*/s/ Haroon Anwar*
HAROON ANWAR