# EXHIBIT A

Department of Justice Technical Assistance on Section 706 of HR 3967

# PACT ACT Section 706 Camp Lejeune
## Department of Justice Technical Assistance and Proposed Alternative
### May 2, 2022

Thank you for the opportunity to share our views on Section 706 of the Honoring Our Promise to Address Comprehensive Toxics Act (PACT Act). The Department of Justice strongly supports expanding Veterans' access to health care and benefits to address the health effects of harmful environmental exposures that occurred during military service. A no-fault compensation program is preferable to litigation because it would allow Veterans to recover more quickly and without the need for expensive litigation. But we are concerned that the current proposal in Section 706 related to Camp LeJeune is inefficient and will be costly for service members and other individuals, as well as the federal government. Rather than create a system for swift and efficient payment of worthy claims, Section 706 will reset decades-old litigation, at great time and expense for all involved. We therefore recommend that Congress consider an alternative solution that would replace individual litigation of these matters with a no-fault compensation scheme of the type that has worked well in similar contexts.

## Background

Section 706 of the PACT Act aims to compensate service members and others who were exposed to contaminants in drinking water at Camp Lejeune, North Carolina, between 1953 and 1987. Service members and others who were stationed at or worked at Camp Lejeune during that time have developed cancer and other diseases that may be related to water contamination. The Agency for Toxic Substances and Disease Registry estimates that as many as <u>one million people</u> were stationed at Camp Lejeune during that timeframe.

For nearly twenty years, the Department has been litigating Federal Tort Claims Act (FTCA) cases seeking compensation for harm alleged to have resulted from exposure to contaminated water at Camp Lejeune. The Department has obtained dismissals of these cases, primarily under three legal defenses provided by the FTCA.

As currently drafted, Section 706 of the PACT Act would facilitate recoveries for Camp Lejeune claimants that are not otherwise possible under the FTCA. Section 706 accomplishes this by allowing causes of action in federal court while prohibiting the assertion of the legal defenses. Section 706 explicitly precludes the Government from raising immunity defenses under the FTCA, which would include the *Feres* doctrine (where the Supreme Court in *Feres v. United States* precluded claims for injuries incident to military service), the discretionary function exception, or any state statute of repose. Section 706 also restarts the statute of limitations for Camp Lejeune suits, lowers the standard of proof on causation, and permits jury trials that would not be available under the FTCA. Finally, Section 706 permits a service member to recover without showing that the federal government acted negligently or otherwise wrongfully, essentially creating a strict-liability theory of recovery.

1

Department of Justice Technical Assistance on Section 706 of HR 3967

While Section 706 seeks to make recovery easier for claimants, it would nonetheless require litigation of individual claims, because each plaintiff would still need to establish causation under the new cause of action, and they would each need to litigate their individual claim for damages.

## Significant Concerns Raised by Section 706

The Department supports providing an appropriate mechanism to compensate service members for harms suffered at Camp Lejeune. But we have significant concerns about how the current bill would accomplish this goal. We believe that the approach proposed in the current Section 706 will be inefficient for all parties, especially those harmed by contamination at Camp Lejeune, create adverse precedent for future mass-tort incidents, and necessitate numerous resources from both the Department and the federal district court.

First, case-by-case district court litigation of potentially hundreds of thousands of claims will be extremely burdensome for the plaintiffs, the government, and the courts. Plaintiffs will likely have to go through many years of discovery before recovering anything. While the bill aims to make recovery more likely by removing certain federal defenses and lowering relevant burdens, the bill still requires those injured to pursue the lengthy path of litigation—requiring individuals to first file administrative claims with the Department of Defense, then file a lawsuit in district court, then prove causation and damages (potentially before a jury), and then withstand a potential appeal. All of these steps will be expensive and time-consuming, given that the bill would allow the filing of old claims from decades ago. Moreover, the cases are likely to be delayed, particularly if (as expected) there is an influx of cases in the single district court—the Eastern District of North Carolina—that will have exclusive jurisdiction under the proposed bill. The litigation-oriented remedy that Section 706 creates is therefore unlikely to meet its goal of offering an easy or quick path to recovery for the thousands of affected service members.

Second, we have serious institutional concerns about the precedent that would be set by creating a separate federal tort action against the government for a particular class of plaintiffs, as a carve-out to the FTCA. Enacting this bill could encourage other plaintiffs who have lost under the FTCA to come to Congress and ask for a similar legislative exception, rather than providing a uniform set of rules under the FTCA for all individuals as exists under current law. The contemplated carve-out from generally applicable FTCA litigation standards is unprecedented. In the past, when Congress wanted to provide remedies for a particular group of claimants who had been unsuccessful in litigation, Congress created a unique remedial program, similar to that proposed below, rather than creating a separate federal tort cause of action.

Third, we worry that Section 706, as currently drafted, would result in differing recoveries to similarly situated plaintiffs. Especially if damages awards are to be decided by a jury, as the statute contemplates, it is likely that litigation will produce a broad range of remedial outcomes even among plaintiffs who have suffered similar harms. The potential unfairness of those outcomes may undermine the statute's goal of providing redress for those affected by contamination at Camp Lejeune.

Department of Justice Technical Assistance on Section 706 of HR 3967

Finally, the bill would lead to an influx of federal-court litigation that would be extremely resource-intensive for both the Department, DoD, and the federal district court in the Eastern District of North Carolina.  For its part, the Department's Civil Division estimates that 75 additional attorneys and 15 paralegals would be required to handle the thousands of expected claims.  That would more than quadruple the size of the Division's Environmental Torts Section—the office which now handles the Camp Lejeune litigation as well as all the other toxic tort cases brought against the United States.  The expected resource drain on the Eastern District of North Carolina stemming from the influx of litigation, as noted above, might further impede the Act's goal of ensuring Veterans and others have a swift path to recovery.

## Proposed Alternative

For these reasons, the Department feels strongly that it would better serve all the parties to establish a non-adversarial compensation program for those injured at Camp Lejeune, rather than creating a new cause of action.  The Department has substantial experience with administering compensation programs, including the program established through the Radiation Exposure Compensation Act (RECA).  The RECA program, for example, was enacted as a non-adversarial alternative to litigation for individuals who contracted illnesses following exposure to radiation as a result of the United States' atmospheric nuclear testing program and uranium ore processing operations during the Cold War.  Under this program, the Department has approved over 39,000 claims, awarding over $2.5 billion.  Similarly, the September 11th Victim Compensation Fund is another non-adversarial compensation program, which has awarded over $9.8 billion to over 44,000 individuals suffering as a result of the September 11th attacks.

If the goal of the PACT Act is to allow Veterans and others to recover more quickly and without the need for expensive court proceedings, a non-adversarial program of this sort would be preferable to litigation.  And creating a no-fault compensation program avoids creating the precedent of a separate federal tort cause of action for future cases where compensation is unavailable under the FTCA.  We think that such an alternative would provide the most straightforward path to fulfilling our country's commitment to Veterans and their families.

The proposed revised Section 706 of the PACT Act, appended to this memorandum, would create an administrative compensation scheme similar to the program established by RECA.  It would provide appropriate relief for harm that was caused by exposure to the water at Camp Lejeune, and it would require the Attorney General to establish procedures for individuals to submit claims for payments under the Act.  It would further require that the Attorney General consult with the Secretary of Health and Human Services on establishing guidelines for determining the documentation necessary to establish a basis for eligibility for compensation for an injury or condition based on exposure to water at Camp Lejeune.  It would also establish a trust fund for payment of meritorious claims.

Importantly, the proposed revised Section 706 would contain provisions to ensure that the process moves quickly to compensate Veterans.  It would require the Attorney General to complete the determination on each claim within 12 months of the filing of the claim, make a final determination within 90 days after receiving a request for review of a denial, and pay the

claim no later than six weeks after approval. Revised Section 706 allows judicial review within 180 days of denial in the United States District Court for the Eastern District of North Carolina, where the court will review the denial on the administrative record and set aside denials that are arbitrary, capricious, an abuse of discretion, or not in accordance with law. We understand that such litigation is extremely rare in RECA cases, however, and that out of the tens of thousands of administrative adjudications, only 16 administrative decisions were appealed to district court.

Thus, under a compensation program like RECA, many Veterans would receive compensation within roughly a year of filing a claim; we think that the current proposal, by contrast, would lead to significantly longer recovery times. And because the program would prioritize speedy recovery, it would not require the significant resources that would be required to fund protracted litigation under the current proposal.

In addition, the proposed revised Section 706 would ensure consistency in resolving service members' claims. Because all claims would be resolved under the same procedures established by the Attorney General, there is no risk—as there is under the current proposal—that different district court or magistrate judges would take markedly different approaches to the relevant issues. Moreover, the proposed revised Section 706 contains a provision limiting attorney's fees, ensuring that the bulk of recovery in each case will go to the Veterans themselves and not to their lawyers.

## Conclusion

In conclusion, the Department strongly supports providing Veterans exposed to contaminants in drinking water at Camp Lejeune necessary benefits and services for any harms they may have suffered as a result of exposure. The administrative compensation program proposed in the Department's revised Section 706 would provide the most effective and efficient way to compensate Veterans, and the Department therefore recommends that legislators consider this alternative to the current proposal.

Department of Justice Technical Assistance on Section 706 of HR 3967

## APPENDIX: PROPOSED REVISED SECTION 706 FOR DISCUSSION

**SEC. 706. CAMP LEJEUNE, NORTH CAROLINA CONTAMINATED WATER EXPOSURE COMPENSATION.**

(a) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States, or the legal representative of such an individual, may file a claim for payment with the Attorney General to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

(b) DETERMINATION AND PAYMENT OF CLAIMS.—

>(1) ESTABLISHMENT OF FILING PROCEDURES.—The Attorney General shall establish procedures for submission of claims for payments under this Act. The burden of proof shall be on the party submitting the claim to show a causal connection between the water at Camp Lejeune and the harm.

>(2) DETERMINATION OF CLAIMS.—

>>(A) IN GENERAL.—The Attorney General shall, in accordance with this section, determine whether each claim filed under this Act meets the requirements of this Act. All reasonable doubt with regard to whether a claim meets the requirements of this Act shall be resolved in favor of the claimant.

>>(B) CONSULTATION.—The Attorney General shall, in consultation with the Secretary of Health and Human Services, establish guidelines for determining what documentation is necessary to establish a basis for eligibility for compensation for an injury or condition based on exposure to water at Camp Lejeune.

>>(C) PAYMENT OF CLAIMS.—The Attorney General shall establish guidelines for determining amounts of compensation for injuries or conditions, including reasonable compensation for medical expenses, lost wages, and pain and suffering.

>>>(i) IN GENERAL.—The Attorney General shall pay, from amounts available in the Camp Lejeune Fund, claims filed under this Act that the Attorney General determines meet the requirements of this Act. **[NOTE: A different section would need to establish a Fund.]**

>>>(ii) HEALTH AND DISABILITY BENEFITS RELATING TO WATER EXPOSURE.—Any award made under this section shall be offset by the amount of any disability award, payment, or benefit provided to the claimant—

5

(I) under—

(A) any program under the laws administered by the Secretary of Veterans Affairs; [**NOTE: We will propose revised language to account for the circumstances where an award under this program is made prior to any award under a VA disability benefits program or other applicable benefits**]

(B) the Medicare program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.); or

(C) the Medicaid program under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.); and

(II) in connection with health care or a disability relating to exposure to the water at Camp Lejeune.

(iii) RIGHT OF SUBROGATION.— Upon payment of a claim under this section, the United States Government is subrogated for the amount of the payment to a right or claim that the individual to whom the payment was made may have against any person on account of injuries referred to in subsection (a).

(D) ACTION ON CLAIMS.—

(i) IN GENERAL.—The Attorney General shall complete the determination on each claim filed in accordance with the procedures established under subsection (b)(1) not later than 12 months after the claim is filed. For purposes of determining when the 12-month period ends, a claim under this Act shall be deemed filed as of the date of its receipt by the Attorney General. In the event of the denial of a claim, the claimant shall be permitted a reasonable period in which to seek administrative review of the denial by the Attorney General. The Attorney General shall make a final determination with respect to any administrative review within 90 days after the receipt of the claimant's request for such review. In the event the Attorney General fails to render a determination within 12 months after the date of the receipt of such request, the claim shall be deemed awarded as a matter of law and paid.

(ii) ADDITIONAL INFORMATION.— The Attorney General may request from any claimant under this Act any reasonable additional information or documentation necessary to complete the determination on the claim in accordance with the procedures established under subsection (b)(1).

>> (iii) PAYMENT WITHIN 6 WEEKS.— The Attorney General shall ensure that an approved claim is paid not later than 6 weeks after the date on which such claim is approved.
>
> (E) PAYMENT IN FULL SETTLEMENT OF CLAIMS AGAINST THE UNITED STATES.— Except as otherwise authorized by law, the acceptance of payment by an individual under this section shall be in full satisfaction of all claims of or on behalf of that individual against the United States that arise out of exposure to water contamination at Camp Lejeune under subsection (a).
>
> (F) JUDICIAL REVIEW.—An individual whose claim for compensation under this Act is denied may seek judicial review within 180 days of denial solely in a district court of the United States. The court shall have jurisdiction to review the denial on the administrative record and shall hold unlawful and set aside the denial if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

(c) ATTORNEY FEES.—

> (1) GENERAL RULE.—Notwithstanding any contract, the representative of an individual may not receive, for services rendered in connection with the claim of an individual under this Act, more than that percentage specified in subsection (2) of a payment made under this Act on such claim.
>
> (2) APPLICABLE PERCENTAGE LIMITATIONS.—The percentage referred to in subsection (1) is—
>
>> (i) 2 percent for the filing of an initial claim; and
>>
>> (ii) 10 percent with respect to—
>>
>>> (I) any claim with respect to which a representative has made a contract for services before the date of the enactment of the Camp Lejeune Contaminated Water Exposure Compensation Act; or
>>>
>>> (II) a resubmission of a denied claim.
>
> (3) PENALTY.—Any such representative who violates this section shall be fined not more than $5,000.

(d) EXCEPTION FOR COMBATANT ACTIVITIES.—This section does not apply to any claim for harm arising out of the combatant activities of the Armed Forces.