IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **UNITED STATES' SUBMISSION FOR** |
| CAMP LEJEUNE WATER LITIGATION | ) | **TRACK 2 DISEASES AND DISCOVERY** |
| | ) | **AND CHANGES TO THE TRACK 1** |
| This Document Relates To: | ) | **DISCOVERY AND TRIAL PLAN** |
| ALL CASES | ) | |
| | ) | |

Counsel for the United States and Plaintiffs met and conferred regarding the diseases for Track 2 discovery and changes to the Track 1 Discovery and Trial Plan. Case Management Order No. 2 ("CMO 2") required the parties to submit "an agreed upon group or competing groups of five additional illnesses for Track 2" within 60 days from the entry of CMO 2. Dkt. 23 at 12. CMO 2 also provided that at the time of the proposal, a party "may also suggest potential revisions to the procedures regarding Track 1." *Id.* The parties disagree on which diseases should be part of Track 2. Additionally, the United States believes that a different case management procedure should be established for Track 2 and that some changes to procedures for Track 1 should be implemented.

**United States' Proposed Diseases for Track 2.**

The United States proposes the following illnesses for Track 2: (1) prostate cancer, (2) breast cancer, (3) lung cancer, (4) pancreatic cancer, and (5) esophageal cancer. Unlike the diseases in Track 1, the Agency for Toxic Substances and Disease Registry did not include these diseases within the categories of "Sufficient" or "Equipoise and Above" in its 2017 Review of Evidence regarding connections reported in the scientific literature between chemicals detected in the Camp Lejeune water and various diseases. These diseases are also prevalent in the general

1

population cohort and are not included in the United States' Camp Lejeune Elective Option settlement program. However, a significant number of Camp Lejeune cases and administrative claims allege that one of these diseases is related to exposure to Camp Lejeune water. Consequently, discovery and litigation on these diseases can greatly assist in the global resolution of the litigation.

**United States' Proposed Procedures for Track 2.**

Track 2 should be bifurcated so that general causation is adjudicated first. At the October 30, 2023, status hearing, Chief Judge Myers expressed interest in bifurcating discovery for non-Track 1 cases on general causation and determining general causation first "so that we can know where we are and if we're moving forward, before we spend a lot of attorney time and a lot of plaintiff time as well as the Government's time on individualized cases." October 30, 2023 transcript at 6-7. Phasing discovery to determine general causation first for cases claiming diseases where no government agency reviewing the scientific literature has found sufficient evidence of a causal link to chemicals detected in the Camp Lejeune water can lead to efficient discovery focused on those cases where recovery is possible. *See* Manual for Complex Litigation (Fourth ed.) ("MCL") 11.422, at 54; Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass Tort MDLs* (2d ed. Sept. 2018) at 5-7 ("*Duke Best Practices*"). *See also* April 5, 2023 Hearing Tr. at 17. The United States submits the following proposed procedure for Track 2 Diseases:

1.  Within 90 days of the date of the Order, Plaintiffs shall disclose an expert opinion or opinions demonstrating that chemicals in the Camp Lejeune water caused the disease as a matter of general causation. The Plaintiffs shall supply a disclosure for their experts meeting the requirements of Fed. R. Civ. P. 26(a)(2)(B).

2

2.      Within 45 days of the Plaintiffs' disclosure, the Defendant shall disclose its expert opinions on the general causation issue.

3.      At the appropriate time the Court and the Parties shall discuss the schedule for submission of dispositive motions or trial on the general causation issue.

4.      If general causation is established, all Plaintiffs with a Track 2 disease must file a Short Form Complaint within 30 days of the Order unless another deadline for Short Form Complaints has been established. There shall be no opt-out option. The parties will each select 3 Plaintiffs for a Track 2 Discovery and Trial Schedule within 60 days of the Order establishing general causation. After the parties' selections, the Court will randomly select 3 additional Plaintiffs for the Track 2 disease for the Track 2 Discovery and Trial Schedule.

**United States' Proposed Changes to CMO 2 and Track 1 Discovery**

Additionally, the United States submits the following proposed changes to Case Management Order No. 2 and Track 1 Discovery:

1.      **Non-Track 1 Plaintiffs who want to participate in the litigation should file a Short Form Complaint by a date certain.** The parties disagreed in their interpretation of the CMO 2. CMO 2 directed that "[a]ny Plaintiff who filed a Complaint in this Court before the filing of the Master Complaint and who wishes to pursue their CLJA action in accordance with this Order (including the Discovery and Trial Plan in section XI of this Order) shall file a Short Form Complaint in the Plaintiff's individual docket [by November 13, 2023]." D.E. 23 at 5. Section XI of CMO 2 included "Procedures for non-Track 1 Illnesses" and "Additional Discovery Tracks." *Id.* at 11-12. Some Plaintiffs interpreted the Order to require only plaintiffs who sought to participate in

3

Track 1 Discovery to file Short Form Complaints within 45 days of the CMO 2, even though several other plaintiffs who only alleged non-Track 1 illnesses filed Short Form Complaints. The United States interpreted CMO to require "any Plaintiff"—including those asserting "non-Track 1 Illnesses"—who previously filed a Complaint and who wanted to pursue a CLJA action in court to file a Short Form Complaint by the date established in CMO 2. Regardless of which interpretation is correct, the Court should establish a date certain for any Plaintiff who wishes to pursue a CLJA action in Court to file a Short Form Complaint so that the universe of prospective discovery pool plaintiffs is known to the parties and the Court.

2. **Plaintiffs should not be permitted to "opt-out" of the discovery pool and additional Track 1 Plaintiffs should be added. To allow some representativeness, the Court should randomly select 7 additional plaintiffs for each disease after the United States and Plaintiffs have each selected 7 plaintiffs.** The administrative claims process makes this litigation different from other mass tort litigation. The current pool of potential Track 1 Discovery Plaintiffs are not representative of all claimants because they represent only the small fraction of claimants who deemed their administrative claims denied and elected to litigate in federal court. CLJA § 804(h); 28 U.S.C. § 2675. The Navy has not formally denied any of these administrative claims before a Plaintiff deemed their claim denied and filed a complaint. Allowing this smaller subset of plaintiffs to "opt-out" of the Discovery Pool by either failing to file a Short Form Complaint or affirmatively "opting-out" after "opting-in" to the litigation by filing suit has made it very unlikely that the Pool will be comprised of a representative group of plaintiffs that can facilitate global

4

resolution.  *See* MCL § 22.315, at 360; *Duke Best Practices*, at 20, 26. *See also* April 5, 2023 Hearing Tr. at 20.

Some element of randomness in selection of Discovery Plaintiffs is likely to assist the Court in selecting representative plaintiffs that can facilitate global resolution. Accordingly, the United States proposes for each disease in Track 1, the Court should randomly add 7 plaintiffs for discovery after the Plaintiffs and the United States have each selected 7 plaintiffs.  A determination of whether and in what circumstances multiple-plaintiff trials might be appropriate should only be made after the parties have engaged in discovery, and the selection of plaintiffs for trial should focus on which trials can provide useful information for global resolution.  Multiple-plaintiff trials may or may not be appropriate for that purpose.  See MCL § 11.631, at 121-22; Duke Best Practices, at 25

3.  **The Court should extend the period for Track 1 discovery by two months.**

Cases involving complex scientific questions require a discovery schedule with adequate time for fact discovery and to prepare expert disclosures that are appropriate under Fed. R. Civ. P. 26 (a)(2)(B).  MCL §23.33, at 499.  Judge Hellerstein initially ordered "full pre-trial discovery" for only 30 cases—six cases from five sequential "fields."  Additionally, Judge Hellerstein allowed 270 days for discovery in the six cases in the first field.  By comparison, CMO 2 sets a far more aggressive schedule of 210 days for discovery for 100 cases in Track 1.  A 60 day extension of fact discovery would better align CMO 2 with the Hellerstein approach.  *See In re World Trade Ctr. Disaster Site Litig.*, 598 F. Supp. 2d 498, 503-04 (S.D.N.Y. 2009).  The United States needs adequate time to collect individual plaintiff service and medical records to

efficiently conduct plaintiff depositions and to determine which other fact witnesses need to be deposed. The United States has begun collecting records for those plaintiffs for whom it has necessary identifying information, including the date of birth and social security number. However, the United States does not have necessary identifying information for the vast majority of individual Track 1 Plaintiffs despite several requests for this information to the Plaintiffs' Leadership Group. Additionally, the Discovery Pool Profile Form for Track 1 Plaintiffs, which included information regarding where records may exist, will not be produced until after the discovery period opens. Therefore, a two-month extension of the time for plaintiff discovery will still allow trials to be scheduled in 2024.

Given the foregoing issues that remain in dispute, the United States believes that a hearing on these issues may be beneficial.

DATED this 27th day of November, 2023.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

*/s/ Adam Bain*
ADAM BAIN
Senior Trial Counsel, Torts Branch
Environmental Torts Litigation Section

6

U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail:  adam.bain@usdoj.gov
Telephone: (202) 616-4209
Fax: (202) 616-4473

LACRESHA A. JOHNSON
HAROON ANWAR
NATHAN J. BU
DANIEL C. EAGLES
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for the Defendants*
*United States of America*

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2023, a copy of the foregoing was filed via the Court's ECF system and served on counsel of record through the ECF system and can be accessed through that system.

_/s/ Adam Bain_____
ADAM  BAIN