IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | **NOTICE OF FILING OF PROPOSED** |
| CAMP LEJEUNE WATER LITIGATION ) | **CASE MANAGEMENT ORDER NO. 9 –** |
| ) | **TRACK 2 DISEASE PROTOCOL** |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

Plaintiffs' Lead Counsel and Co-Lead Counsel (collectively "Plaintiffs' Leadership") conferred with Defendant regarding the selection of illnesses for Track 2 trials and Track 2 trial procedures. Plaintiffs' Leadership and Defendant were unable to reach agreement, and so Plaintiffs' Leadership respectfully submits to this Honorable Court for consideration a proposed Case Management Order (attached as Exhibit A) setting forth a protocol for Track 2, pursuant to Case Management Order No. 2, entered on September 26, 2023 (D.E. 23).

### I. Proposed Illnesses for Track 2 Trials

Plaintiff's Leadership proposes that Track 2 trials consist of CLJA actions in which the Plaintiffs allege that the water on Camp Lejeune caused: (1) liver cancer, (2) sclerosis / scleroderma, (3) multiple myeloma, (4) kidney disease (i.e, end-stage renal disease, chronic kidney disease, increased kidney weight, or increased urinary protein tubular toxicity), and (5) aplastic anemia. This selection focuses on illnesses for which early trials will promote an efficient, global resolution for common illnesses.

Four of the above illnesses (liver cancer, sclerosis / scleroderma, multiple myeloma and kidney disease)—like the illnesses selected for Track 1 trials—are acknowledged in significant scientific studies *conducted by the government* as establishing a relationship between these

illnesses and exposure to the water on Camp Lejeune sufficient to conclude that a causal relationship is at least as likely as not. The studies establishing this link were executed by the Agency for Toxic Substances and Disease Registry, or ATSDR: the federal agency specifically charged by the government with studying the risk of disease from the contamination of Camp Lejeune. See, e.g., https://www.atsdr.cdc.gov/sites/lejeune/index.html. Defendant itself acknowledges the strength of the connection between the Camp Lejeune water and the above illnesses; it has already offered to settle claims involving all of them, except aplastic anemia, through its "Elective Option" settlement framework. Given the strong evidence of a causal relationship between the toxins on Camp Lejeune and the illnesses proposed above, selecting these illnesses for Track 2 will allow Plaintiffs' Leadership to move through discovery and trials relatively efficiently. And this will, in turn, allow for another wave of resolutions beyond the Bellwether cases for all cases involving those illnesses in relatively short order.

By contrast, Defendant has proposed conditions for Track 2 trials that Defendant believes have weak, or weaker, causal connections to the toxins on Camp Lejeune. The conditions are not part of Defendants' "Elective Option" settlements and, to Plaintiffs' knowledge, Defendant has not made any settlement offers in cases involving these conditions. The fact that the Defendant plans to challenge the science more aggressively means that there will be more time spent on proving science before getting to trial, whereas Plaintiffs' selections are designed to move quickly to trials to assess damages. Because Plaintiffs' Leadership aims to resolve as many cases as quickly as possible, it would serve the best interest of Plaintiffs to first try cases that will be resolved more efficiently, while at the same time preparing cases involving illnesses that Defendant intends to challenge more vigorously in Tracks 3 and beyond.

What's more, Plaintiffs' Leadership has recently learned that the ATSDR has completed another study related to the water on Camp Lejeune, and this study is said to expand the list of illnesses known to be caused by the toxins in the Camp Lejeune water. See https://www.reuters.com/legal/government/first-camp-lejeune-settlements-reached-us-government-pay-850k-2023-11-10/ (The 2023 ATSDR study "increases the known number of cancers linked to contaminated water at the base [and provides] the strongest evidence to date that the contaminated water caused cancer."). A news article reported the existence of this cancer and mortality study just a few weeks ago and pointed out that the study had already been peer-reviewed. While giving no indication of when the study might be published, the report highlighted that the study's authors believe the study should have been made public by now and are "frustrated by the process" the government is going through before releasing it. *Id.*

Plaintiffs' Leadership has requested that Defendant give Plaintiffs access to this study under any special protections the government might request, but Defendant has rejected the request. Because this study will shed light on other illnesses caused by the toxins in the Camp Lejeune water, it does not make sense to select the illnesses Defendant proposes now for the next round of trials when there is this looming uncertainty about the findings of the 2023 study. What appears to be the case is that the 2023 study finds an increase in the diseases among Camp Lejeune Marines from those found in 2017, with one peer reviewer of the article referring to its findings as "groundbreaking". *Id*. To do as Defendant proposed would require Plaintiffs to engage potentially unnecessary experts and expend potentially redundant costs to study illnesses that have likely already have been studied by the government. Such a waste of Party and judicial resources would be particularly pernicious in this litigation, where efficiency is paramount.

3

Case 7:23-cv-00897-RJ    Document 58    Filed 11/27/23    Page 3 of 8

For the same reasons that the Court approved the proposed illnesses for Track 1 trials, the Court should adopt Plaintiffs' proposed illnesses for Track 2 trials. The selection of these illnesses will allow the Parties to resolve a significant number of cases most efficiently and cost-effectively.

**II.     Proposed Procedures for Track 2 Trials**

Plaintiffs' Leadership proposes procedures substantially similar to those found in Case Management Order No. 2 for Track 1 diseases.

**III.    Plaintiffs' Leadership's Responses to Defendant's Submission**

Defendant's proposed protocol and changes to the Track 1 process in Case Management Order No. 2 amount to a reset of every material part of this litigation—one that would burden every Plaintiff in this litigation and bring the wheels of judicial efficiency to a halt. Plaintiffs' Leadership opposes Defendant's requests.

**A. Bifurcated General Causation**

Defendant asks this Court to bifurcate Track 2 diseases in a way that only general causation is adjudicated, untethered to particular plaintiffs. But details regarding plaintiffs matter. That is why in the normal course of multi-district litigations, defendants make *Daubert* challenges on both general and specific causation at the same time, followed by summary judgment motions. For example, for some diseases age at diagnosis, smoking history and family history are of vital significance in establishing general causation. Simply put, it would be improper, and unfair to plaintiffs, to have to "disclose an expert opinion or opinions demonstrating that chemicals in the Camp Lejeune water causes the disease as a matter of general causation", see United States' Submission for Track 2 Discovery and Changes to the Track 1 Discovery and Trial Plan at 2, without also considering specific causation issues related to discovery plaintiffs and would not serve to advance the efficient administration of this case.

### B. Setting a Date Certain for *All* Litigants to File a Short Form Complaint

Defendant asserts that Case Management Order No. 2 was ambiguous with respect to who needed to file a short form complaint and by what date. To clarify this perceived ambiguity, Defendant requests that the Court set a date certain by which *all* individuals wishing to pursue litigation in accordance with Case Management Order No. 2 must file their short form complaint. In further conversations with counsel for the Defendant, it appears that Defendant is asserting that anyone who may possibly have a claim under the Camp Lejeune Justice Act must file a short form complaint by a date certain or be forever barred from litigating their case under the organizational structure created by Case Management Order No. 2.

Plaintiffs' Leadership respectfully disagrees with Defendant's interpretation of Case Management Order No. 2 and is concerned about the impact adopting Defendant's proposal would have on the Court and the orderly management of this litigation. First, Plaintiffs' Leadership contends that Case Management Order No. 2 was unambiguous in its terms: if a person wanted to be considered for purposes of a bellwether trial process that person needed to file a short form complaint within thirty days from the filing of the Master Complaint. Case Management Order No. 2 Section XI(A)(i). Further, if a plaintiff had filed a complaint prior to the entry of the Master Complaint and did not want to be included in the bellwether trial process, said plaintiff could take no further action and their case would be stayed. Case Management Order No. 2 Section VI. The process was clearly set forth in Case Management Order No. 2 and Plaintiffs' Leadership sees no need to amend it at this point.

Additionally, Defendant's proposal invites calamity. By limiting the necessity to file a short form complaint only to those individuals wishing to pursue a bellwether process for the five Track 1 diseases, the structure above afforded all parties a manageable way to organize and focus

their efforts. The organizational structure, however, would be undone by Defendant's proposal to have *all* individuals seeking redress under the CLJA forced into court. This would result in a flood of tens of thousands of cases into Court for diseases that are not part of Track 1 or any other track. Abandoning the careful and methodical process established in Case Management Order No. 2 would work a significant hardship on plaintiffs and would not serve the efficient administration of this case.

### C. Representativeness of the Pool

Defendant contends that the pool of Discovery Plaintiffs for Track 1 is not sufficiently "representative" of all claimants. Plaintiffs' Leadership is perplexed by Defendant's contention. First, the Defendant has not undertaken discovery on the plaintiffs and thus, it is unclear where Defendant's concerns arise from. Second, the population of litigants that were reviewed by the Bellwether and Plaintiff Criteria Committee and filed short form complaints have the following attributes:

- Exposure covers all or almost all years, from 1953-1987.
- Lifestyle decisions (i.e. smokers, work in hazardous jobs).
- Different treatment protocols.
- Different treatment outcomes (i.e. individuals successfully treated and in remission, individuals who had difficult treatments but are in remission, and individuals who died).
- Were on Camp Lejeune for as few as three months.
- Were at all or almost all of the different areas of Camp Lejeune.
- Civilians and servicemembers, including individuals exposed as children and in utero.
- Housed on and off Camp Lejeune.
- A wide range in ages.
- Males and females.
- Different ethnicities.
- Hailing from across the USA.

Plaintiffs' Leadership has been mindful of the Court's observations that a representative cross section of plaintiffs be presented to the Court and Plaintiffs' Leadership respectfully submits that

the litigants it has presented as the pool of Discovery Plaintiffs for Track 1 presents such a representative pool.

There are additional short form complaints filed that were not reviewed by the Bellwether and Plaintiff Criteria Committee and they may yield additional attributes for the selection process.

Defendant's concerns about representativeness are unavailing considering the breadth of litigants with short form complaints currently available in the Discovery Pool.

Furthermore, Plaintiffs' Leadership believes that multi-plaintiff trials provide an efficient means of achieving a representative sample of each illness. Such proceedings will allow the Court, Defendant and Plaintiffs' Leadership to realize time and monetary savings by, among other things, minimizing the number of experts needed and logistics costs. Accordingly, Plaintiffs' Leadership respectfully requests the Court to consider the use of such proceedings, and if appropriate, convene counsel for Defendant and Plaintiffs' Leadership to discuss same.

**D. Extension of Discovery by Two Months is Unnecessary and Counterproductive**

Defendant's request for a two-month extension to complete Track 1 discovery is unavailing. The delay in the discovery process emanates from Defendants' labyrinthine bureaucracy which Defendant at times uses as a cudgel to delay Plaintiffs' Leadership from obtaining necessary records and witnesses and ultimately, to delay this proceeding. The solution to Defendant's administrative quagmire is not more delay of the proceedings but is instead found in orders of this Court allowing Defendant's counsel to exhort Defendant's various departments to act with haste.

WHEREFORE, the Plaintiffs' Leadership respectfully submits this Notice of Filing.
DATED this 27th day of November 2023.                Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs
and Government Liaison*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*

/s/ A. Charles Ellis
A. Charles Ellis (N.C. Bar No.: 010865)
Ward and Smith P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone: (252) 215-4000
ace@wardandsmith.com
*Liaison Counsel for Plaintiffs*

/s/ Hugh R. Overholt
Hugh R. Overholt (NC Bar No. 016301)
Ward and Smith P.A.
Post Office Box 867
New Bern, NC 28563-0867
Telephone: (252) 672-5400
hro@wardandsmith.com
*Liaison Counsel for Plaintiffs*