# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION
# Civil Action No.: 7:23-CV-897

IN RE:

CAMP LEJEUNE WATER LITIGATION

This Document Relates to:

ALL CASES

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF
# PLAINTIFFS' MOTION TO COMPEL PRODUCTION

# SUMMARY OF THE NATURE OF THE CASE

This motion seeks an order compelling Defendant United States to produce documents critical to this litigation that it improperly withholds based on the deliberative process privilege (DDP). Plaintiffs' Second Request for Production of Documents ("RFP #2") sought documents and supporting data related to any past, current, or future Agency for Toxic Substances and Disease Registry (ATSDR) study or report examining human health impacts associated with exposure to contaminated water at Camp Lejeune. Ex. A, at 7–8, Request No. 1. On November 10, 2023, Plaintiffs learned through the media that the ATSDR completed a Cancer Incidence Study ("CIS") related to Camp Lejeune in April 2023. In its responses to RFP #2, Defendant acknowledged the existence and completion of the study but refused to produce it because, it claims, the DPP protects "the production of any drafts of the ATSDR Cancer Incidence Study and related materials as the study undergoes the agency's standard peer review process." Ex. B, at 3–4. Defendant is mistaken.

The DDP is a narrow privilege that must meet a well-defined test not met here. As explained herein, the DPP is not available to Defendant for two reasons: (1) the ATSDR CIS consists of factual information that is neither predecisional nor deliberative; and (2) even if the study were deliberative, other factors that courts routinely rely on to require disclosure are present here.

The ATSDR CIS is highly relevant to this litigation, it is urgently needed, and it does not fall within the ambit of the DPP. Fundamentally, Defendant's refusal to produce the CIS impedes Plaintiffs' ability to adequately and effectively litigate actions under the Camp Lejeune Justice Act for the benefit of Marines, their families, and civilian workers. The study (1) contains information vital for choosing representative Track II and future-track Plaintiffs; (2) is imperative to the ongoing selection of diseases for future phased litigation tracks; (3) is directly related to general causation issues; and (4) is likely necessary for prospective plaintiffs to evaluate whether to file an administrative claim. What's more, the study is warranted because it will further the just, speedy,

1

and efficient adjudication of cases before this Court. FED. R. CIV. P. 1. Because the meet-and-confer process was unsuccessful,[1] Plaintiffs now move to compel production of the ATSDR CIS.

## FACTS RELEVANT TO THIS MATTER

The ATSDR "is a federal public health agency of the U.S. Department of Health and Human Services [that] protects communities from harmful health effects related to exposure to natural and man-made hazardous substances."[2] For this reason, Congress mandated that the ATSDR study the health impacts from exposure to contaminated water at Camp Lejeune.

In 2016, the ATSDR began its CIS "to determine whether residential or workplace exposures to the drinking water contaminants at Camp Lejeune are associated with increased risks of specific cancers in Marines/Navy personnel and civilian employees."[3] A former National Cancer Institute (NCI) epidemiologist, Dr. Kenneth Cantor, who reportedly has read the study, stated that its disclosure is imperative because its results "increase[] the known number of cancers linked to contaminated drinking water at the base" and "provide the strongest evidence to date that contaminated water caused cancer."[4] And the author of the ATSDR CIS, Dr. Frank Bove, senior epidemiologist at ATSDR and the Centers for Disease Control (CDC), has said that he is "frustrated

---

[1] Plaintiffs have complied with the meet-and-confer requirement of FED. R. CIV. P. 37, and this Court's November 21, 2023 Order. D.E. 55. During a November 27th meet and confer, Defendant stated it would not produce the ATSDR study. Further, on November 21st, the Court informed the parties that the discussion about the study's production satisfied the requirement of seeking permission to file a motion to compel. While this motion is filed more than 7 days later, it could not be filed sooner because the Defendant did not serve its RFP #2 response until November 28th.
[2] *Agency for Toxic Substances and Disease Registry* (last reviewed Nov. 17, 2023), https://www.atsdr.cdc.gov/index.html.
[3] *ATSDR Timeline of Public Health Activities at Camp Lejeune, North Carolina*, ATSDR (last reviewed Jan. 2017), https://www.atsdr.cdc.gov/sites/lejeune/docs/camp_lejeune_timeline.pdf; *see also Cancer Incidence Study*, ATSDR (last reviewed Dec. 11, 2019), https://www.atsdr.cdc.gov/sites/lejeune/cancer-incidence-study.html.
[4] M.B. Pell, *Unpublished Study Finds Elevated Cancer Rates at U.S. Military Base*, REUTERS (Nov. 10, 2023 11:53 AM EST), https://www.reuters.com/world/us/unpublished-study-finds-elevated-cancer-rates-us-military-base-2023-11-10/.

by the process" and that the report should have been released by now. *Id*. Because the study's results are germane to the litigation and highly relevant to Plaintiffs' advocacy in this case, the study must be revealed promptly.[5] For Defendant to have access to a highly relevant cancer study while preventing Plaintiffs from accessing the data disturbs the level playing field expected for litigants. Based on what is publicly understood about the study, Plaintiffs are entitled to the CIS.

## ARGUMENT

For Defendant to "invoke the [deliberative process] privilege successfully, it must show that, in 'the context in which the materials are used,' the documents are both predecisional and deliberative." *U.S. v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *3 (E.D.N.C. June 25, 2015) (quoting *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993)) (finding United States "has not met its burden of proving [DPP]," but denying motion to compel on other grounds). A document is "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). A document is "deliberative" if it "reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative *policies or outcomes*." *Id.* (emphasis added) (quoting *City of Va. Beach*, 995 F.2d at 1253). A mere "bald assertion" of the privilege in response to a request for production, "without more, is not sufficient to demonstrate the applicability of the privilege." *Id.* (noting the United States thereafter failed to address the privilege in responding to the motion to compel). Importantly, the DPP is "limited in scope" and "narrowly construe[d]." *F.D.I.C. v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998). And its purpose is "to encourage frank discussion

---

[5] Although Defendant's response to RFP #2 states "[d]ocuments being withheld for privilege will be identified on a privilege log" and it "will make a formal privilege assertion related to the [DPP] in conjunction with any other privilege assertions made pursuant to the stipulated ESI protocol," it gives no time frame for providing that information. Ex. B, at 3–4. That is unacceptable.

3

of *ideas and policies*, thereby ensuring the quality of governmental decision making.". *Id.* (quoting *Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y. 1983) (emphasis added). Here, that objective is not implicated, as the CIS is meant to put forth objective, scientific results, which are not the subject of discretionary decision-making.

Even if the privilege were applicable on its own terms, courts do not automatically withhold information when the privilege is invoked. Instead, they use a balancing test to "weigh[] the benefit of preserving the integrity of internal governmental deliberations against the need for free and open discovery." *Id.* Specifically, a four-factor balancing test is applied to determine "[w]hen a party to a separate lawsuit seeks agency materials," to determine "the validity of the privilege." *Stone v. Trump,* 453 F. Supp. 3d 758, 765 (D. Md. 2020) (citing *Cipollone v. Liggett Grp. Inc.*, 812 F.2d 1400 (Table) (4th Cir. 1987)). This test "depends . . . upon a balancing of the public interest in nondisclosure with the need for the information as evidence." *Id.* (quoting *Cipollone*, 812 F.2d 1400 (Table)). The relevant factors to balance are: "(1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) 'the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" *Id.* (quoting *Cipollone*, 812 F.2d 1400 (Table)); *see also U.S. v. Booz Allen Hamilton Inc.*, No. CCB-22-1603, 2022 WL 3921019 (D. Md. Aug. 31, 2022) (applying the *Cipollone* factors and granting, denying, and reversing in part on motion to compel); *Harrison v. Shanahan*, No. 1:18-cv-641 (LMB/IDD), 2019 WL 2216474 (E.D. Va. May 22, 2010) (noting that documents with "relevant statistics about servicemembers with HIV and other chronic conditions" does not justify categorical withholding, and ordering production after applying the *Cipollone* factors); *Clinch Coalition v. U.S. Forest Serv.*, No. 2:21CV00003, 2023 WL 6122144 (W.D. Va. Sept. 19, 2023) (stating that the "[DPP] is a long-

4

recognized common law privilege" and applying the *Cipollone* factors in ordering disclosure of disputed documents); *Abe v. Va. Dep't of Envir. Quality*, No. 3:20-cv-270, 2020 WL 9455203 (E.D. Va. Sept. 24, 2020) (applying *Cipollone* factors to grant disclosure, the court noted noting that "plaintiffs can overcome the [DPP] by demonstrating 'sufficient need' for the documents" and "Courts weighs four factors when balancing the government's [DDP] and the plaintiff's need for disclosure" ).[6] As explained in Section II, application of these factors strongly favors production.

I. **The Deliberative Process Privilege Is Inapplicable to the ATSDR CIS.**

　　A. **The ATSDR CIS Is Not Predecisional.**

A document is "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Bertie Ambulance Serv., Inc.*, 2015 WL 3932167, at *3 (quoting *Renegotiation Bd.*, 421 U.S. at 184). The Supreme Court recently held – in the context of the Freedom of Information Act (FOIA) – that "[d]ocuments are 'predecisional' if they were generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).[7] Here, the ATSDR CIS ***is unrelated to a decision***. According to the ATSDR, "the purpose of the study is to determine whether residential or workplace exposures to the drinking water contaminants at Camp Lejeune are associated with increased risks of specific cancers in Marines/Navy personnel and civilian employees."[8] This study is a targeted

---

[6] Although Plaintiffs recognize that *Cipollone* is unpublished and, under Local Rule 7.2(d), unpublished appellate decisions will not bind the Court, Plaintiffs submit that the test is applicable based on post-*Cipollone* caselaw that applies the test. *See, e.g., Stone*, 453 F. Supp. 3d at 765 (noting that "[i]n Cipollone, the Fourth Circuit adopted the balancing test of *FTC v. Warner*"); *Nat'l Ass'n Advancement Colored People v. Bureau of Census*, 401 F. Supp. 3d 608 (citing *Cipollone* factors).

[7] S*ierra Club* is distinguishable. At issue in *Sierra Club* was whether draft biological opinions reflect a "preliminary view" or a "final decision." 141 S. Ct. at 786. Here, Plaintiffs argue that the ATSDR CIS is ***not a decision***. Second, *Sierra Club* concerns FOIA Exemption 5, while Defendant here asserts the common law DPP.

[8] *Cancer Incidence Study*, *supra* note 3.

statistical analysis of compiled data, not a decision to be deliberated. And importantly, "raw statistics do not rise to the level of predecisional documents protected by the [DPP]." *Md. Restorative Justice Initiative v. Hogan*, No. 16-01021-ELH, 2018 WL 5295825, at *5 (D. Md. Oct. 25, 2018) (finding the privilege applied to certain documents, but not "Statistics prepared by the Office of Legal Counsel for the Governor," and *even if* those statistics were "utilized in deliberations . . . [they] must be produced"). Here, the ATSDR CIS – an objective scientific study comprised of cancer incident data – is not predecisional, and the DPP is thus inapplicable.

### B. The ATSDR CIS Is Not Deliberative.

Relatedly, because the ATSDR CIS is not predecisional, it cannot be deliberative. As the Supreme Court noted in *Sierra Club*, "[t]here is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional." 141 S. Ct. at 786. But even if the CIS were predecisional, it still would not be deliberative. Documents are "'deliberative' if they were prepared to help the agency formulate its position." *Id.* But the CIS is not taking a position; it is an objective scientific review of cancer incidences related to contaminated water at Camp Lejeune. There are no choices or judgments to be made when compiling and reviewing data.

The Fourth Circuit has noted that "[o]ne of the rudimentary black letter rules is that while the [DPP] covers 'opinions' it does not cover 'facts.'" *Cipollone*, 812 F.2d 1400 (Table). Even "informational dialogue" – *i.e.*, "between the scientists who collaborated on" a report – "is not covered by the privilege at all." *Id.* "[T]he factual information provided to the decisionmakers along with how those facts came to exist and how they were applied . . . remain outside the scope of the privilege." *Stone*, 453 F Supp. 3d at 765.

*Allocco Recycling, Ltd. v. Doherty* is instructive here. 220 F.R.D. 407 (S.D.N.Y. 2004). In *Allocco*, where a government consultant's role was "merely to obtain, record, and analyze factual material from various waste carters and other sources," the court found the DPP inapplicable "to

6

such factual material":

> It is of no consequence that documents may "assist," "lead to," or "form the basis for" some governmental policy. In other words, the mere fact that an agency's deliberations regarding a policy involve consideration of particular documents does not render those documents protected by the [DPP]. Rather, protection is provided only for those documents that actually "reflect[] advisory opinions, recommendations and deliberations."

*Id.* at 412–13 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001)). Importantly, the DPP does not protect a consultant's report commissioned by the government "outlining the historical record of when the various construction activities took place, detailing the methodology for its report, and including a causation section attributing responsibility for specific delays," which was "written as an objective and retrospective recitation of historical facts . . . To the extent that any portion of the report expresses an 'opinion,' it is simply an opinion regarding what occurred in the past rather than an advisory opinion regarding future agency action." *Id.* at 413–14 (quoting *Hennessy v. U.S. AID*, 121 F.3d 698 (Table) (4th Cir. 1997)). Similarly, here, a collection, analysis, and opinion on cancer incidences that resulted from past exposure to Camp Lejeune's contaminated water is not the type of "deliberative" document intended to be covered by the privilege.

Finally, for Defendant to argue that the CIS is deliberative and the result of decision-making undermines its validity and authority. If the ATSDR's goal is to "determine whether residential or workplace exposures to the drinking water at Camp Lejeune are associated with increased risks of specific cancers,"[9] any argument that the CIS is discretionary and susceptible to subjective changes would call into question its validity and accuracy. The CIS is not deliberative.

### C. The Intention Behind the Privilege Is Inapplicable to the ATSDR CIS.

The intention behind the DPP is threefold. First, the DPP "serves to assure that subordinates

---

[9] *Cancer Incidence Study*, *supra* note 3.

within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Stone*, 453 F. Supp. 3d at 764–65 (quoting *Coastal States Gas Corp. v. Dep't Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Second, the DPP "protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted." *Id.* at 765. Third, the DPP "protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.* Critically, "[a]ll three of these purposes look not to protection of the document but, rather, of the deliberative process itself." *Id.* Indeed, "the privilege covers opinions, it does not cover facts." *Id.* Facts relied on to reach an opinion are not protected – only the opinion itself. *Id.*

Given the nature and purpose of a cancer incidence study, there should be no concern that any ATSDR subordinates will be placed in a vulnerable position by its disclosure. Nor are agency policies at risk of premature disclosure. Moreover, the public would not be confused or misled, but rather *informed*, if the study were produced. Tens of thousands of Marines, their families, and civilians who worked and lived at Camp Lejeune have sought compensation for the injuries they sustained while at the base; they and their attorneys have the right to comprehensive, up to date information about disease incidences. Prompt disclosure is necessary for veterans to evaluate existing and/or potential claims. Because none of the policies behind the DPP are implicated here, the Court should order Defendant to produce the study.

## II. Even If the Privilege Applies, Application of the Balancing Test Favors Disclosure.

### A. Factor 1 – The ATSDR CIS Is Highly Relevant.

Under factor one, documents are considered relevant, even if deliberative, if they "tend to prove a claim or a defense at the heart of [the] litigation." *Stone*, 453 F. Supp. 3d at 767. The CIS is not only integral to Plaintiffs' causation arguments under the CLJA, but the information in the

8

study is also necessary for ongoing litigation decisions by Plaintiffs' counsel. The CIS is uniquely tailored to incidences of cancer related to Camp Lejeune water contamination – the gravamen of this litigation. Thus, the ATSDR CIS is highly relevant.

### B. Factor 2 – Alternative Means of Acquiring the Information Is Unavailable Here.

Factor two considers, *inter alia*, whether "the government controls all of the documents and the witnesses related to" the document at issue. *Id.* at 767–68. Here, the ATSDR has **exclusive** control over the CIS; it is also in control of the data underpinning the study. Thus, **even if** Plaintiffs wanted to recreate the ATSDR's work, they have no means to do so. Finally, the ATSDR is under the control of the United States, the Defendant here. Therefore, this information imbalance, and the inability of plaintiffs to acquire the information elsewhere, meets the second factor.

### C. Factor 3 – The Government Is a Party to the Litigation.

Where "the government controls the information, has already acquired all of the information and is a party to the litigation," the Government is considered to "play[] a necessary and important role in the litigation and the third requirement of the *Cipollone* test [is] met." *Id.* at 768. The government is in exclusive control of the CIS; the study, according to the news report, has been peer reviewed. It is either complete or "near" complete, and a decision by the United States to undergo another review cannot shield the study's production. The third factor is also met.

### D. Factor 4 – There is No Chilling Effect and the Public Interest Favors Disclosure.

Factor four is a balancing test. The DPP "exists for a purpose – to protect the opinions expressed in the process of deliberations and to encourage full and frank discussion of issues by government officials," but it "is overcome when the public interests favors disclosure." *Id.* And where disclosure is compelled, the "available relief of protective orders" remains. *Id.* Because there is ongoing litigation, the public's interest in disclosure is great. Not only would the study provide necessary information to current Plaintiffs, it would also provide information to potential

claimants as to the viability of a possible claim. For example, if the CIS identifies additional causal relationships between the contamination and cancers, veterans should have that information now. This is not speculation: the former NCI epidemiologist who read the CIS said the CIS "increases the number of cancers linked to contaminated drinking water at the base."[10]

Moreover, the CIS is also relevant to Plaintiffs' counsel as they determine what diseases to choose for litigation tracks. Given that Defendant has access the study – as it remains in its exclusive control – Plaintiffs are at an unfair disadvantage and prejudiced in developing a litigation strategy. Plaintiffs also deserve access to the most current and comprehensive relevant data to ensure a level playing field with Defendant. Plaintiffs are prejudiced if Defendant can continue to make litigation decisions with the benefit of the CIS while Plaintiffs are left in the dark.

Finally, there would be no chilling effect on agency deliberations if the CIS were disclosed. As explained above, the CIS is not even deliberative in nature. Regardless, the CIS is intended to be a professional, objective review of scientific evidence, seeking to determine exposures to the contaminated water are associated with increased cancer risks. It would defy logic for Defendant to argue that the study's results would somehow change if the results were disclosed. *See Nat'l Ass'n Advancement Colored People*, 401 F. Supp. 3d at 612 (noting that "[c]ourts have typically required disclosure of purely factual material, presumably because the prospect of disclosure is less likely to make an advisor omit or fudge raw facts, while it is quite likely to have such an effect on materials reflecting deliberative or policy-making processes" (quoting *Quarles v. Dep't Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)). Results of scientific studies are not dictated by public pressure but are rather dictated by concrete and objective factual findings. As such, this fourth factor counsels in favor of disclosure.

---

[10] Pell, *supra* note 4.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to order Defendant United States to produce the ATSDR CIS and its underlying data.

Dated: December 4, 2023

Respectfully Submitted,

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

*/s/ Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs and Government Liaison*

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

| | |
|---|---|
| */s/ Hugh R. Overholt* | */s/ A. Charles Ellis* |
| Hugh R. Overholt (NC Bar No. 016301) | A. Charles Ellis (N.C. Bar No.: 010865) |
| Ward and Smith P.A. | Ward and Smith P.A. |
| Post Office Box 867 | Post Office Box 8088 |
| New Bern, NC 28563-0867 | Greenville, NC 27835-8088 |
| Telephone: (252) 672-5400 | Telephone: (252) 215-4000 |
| hro@wardandsmith.com | ace@wardandsmith.com |
| *Liaison Counsel for Plaintiffs* | *Liaison Counsel for Plaintiffs* |