IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:                                    )
CAMP LEJEUNE WATER LITIGATION             )        Case No: 7:23-cv-897
                                          )
                                          )        UNITED STATES' RESPONSE TO
This Document Relates To:                 )        PLAINTIFFS' MOTION FOR
*Merritt v. United States*, No. 7:23-cv-1367-D  )  PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 2

Legal Standard ................................................................................................................. 2

Discussion ........................................................................................................................ 3

    I.    PLC's Motion Should Be Denied as Premature Because There Has Been No Discovery on Factual Issues Related to Plaintiff's Claim of Representation. .................................... 3

    II.   Even If PLC's Motion Were Ripe, the Motion Should Be Denied Because the Applicable North Carolina Law Is Not Satisfied. ................................................................................ 5

       A.   Rule 17(b)(3) and North Carolina law require an ancillary administrator appointed by a North Carolina court. ........................................................................................................ 6

       B.   Nothing in the CLJA changes the requirement of Rule 17(b). ....................................... 7

       C.   Applying the FTCA to Fill Gaps in the CLJA Leads to the Same Result. .................... 11

Conclusion ...................................................................................................................... 22

CERTIFICATE OF SERVICE ....................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 3
*Briggs v. Walker*,
    171 U.S. 466 (1898) ............................................................................................ 9
*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223 (2011) .......................................................................................... 15
*Cannon v. Cannon*,
    228 N.C. 211, 45 S.E.2d 34 (1947) ................................................................... 7
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986). ........................................................................................... 3
*Clendening v. United States*,
    19 F.4th 421 (4th Cir. 2021) ....................................................................... 13, 16
*Cooke v. U.S. Bureau of Prisons*,
    926 F. Supp. 2d 720 (E.D.N.C. 2013) ............................................................... 5
*Crawford-El v. Britton*,
    523 U.S. 574 (1998) ............................................................................................ 5
*Davis v. Piper Aircraft Corp.*,
    615 F.2d 606 (4th Cir. 1980) ................................................................... 6, 7, 10
*Dellmuth v. Muth*,
    491 U.S. 229 (1989) .......................................................................................... 15
*F.A.A. v. Cooper*,
    566 U.S. 285 (2012) ..................................................................................... 17, 21
*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994) .......................................................................................... 19
*Fancher v. United States*,
    646 F. Supp. 3d 694 (E.D.N.C. 2022) ............................................................. 17
*Fed. Treas. Enter. Sojuzplodimport v. SPI Spirits Ltd.*,
    726 F.3d 62 (2d Cir. 2013) ......................................................................... 10, 11
*Fennell v. Monongahela Power Co.*,
    350 F.2d 867 (4th Cir. 1965) ............................................................................. 6
*Feres v. United States*,
    340 U.S. 135 (1950) ............................................................................... 13, 15, 16
*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*,
    721 F.3d 264 (4th Cir. 2013) ............................................................................. 3
*Holt v. Middlebrook*,
    214 F.2d 187 (4th Cir. 1954) ............................................................................. 7
*In re Camp Lejeune, N.C. Water Contamination Litig.*,
    774 F. App'x 564 (11th Cir. 2019) ................................................................... 13
*Jacobs v. Adams*,
    601 F.2d 176 (5th Cir. 1979) ............................................................................. 8

iii

*Jones v. Bock*,
   549 U.S. 199 (2007) ........................................................................... 6, 9, 11

*La Salle Nat'l Bank v. Pa. R. Co.*,
   8 F.R.D. 316 (N.D. Ill. 1948 ................................................................. 10

*Lane v. Pena*,
   518 U.S. 187 (1996) ........................................................................ 17, 21

*Masood v. Saleemi*,
   309 F. App'x 150 (9th Cir. 2009) ............................................................ 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................... 3

*McCray v. Md. Dep't of Transp., Md. Transit Admin.*,
   741 F.3d 480 (4th Cir. 2014) ................................................................. 3

*Pure Oil Co. v. Suarez*,
   384 U.S. 202 (1966). ............................................................................ 10

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019). ....................................................................... 14

*Reynolds v. Cincinnati, N. O. & T. P. Ry. Co.*,
   7 F.R.D. 165 (E.D. Ky. 1945) ............................................................. 10

*Scott v. Harris*,
   550 U.S. 372 (2007) .............................................................................. 3

*United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*,
   508 U.S. 1 (1993) ................................................................................. 18

*Shular v. United States*,
   140 S. Ct. 779 (2020). ......................................................................... 21

*The Pan Two*,
   26 F. Supp. 990 (D. Md. 1939) ........................................................... 10

*U.S. Dep't of Energy v. Ohio*,
503 U.S. 607 (1992) .............................................................................. 17

*United States ex rel. Eisenstein v. City of New York, New York*,
   556 U.S. 928 (2009) ............................................................................... 6

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
   99 U.S. 419 (2023). ..................................................................... 6, 8, 12

*United States v. Mitchell*,
   445 U.S. 535 (1980) ............................................................................ 19

*United States v. Nordic Vill. Inc.*,
   503 U.S. 30 (1992) .............................................................................. 21

*Williams v. United States*,
   242 F.3d 169 (4th Cir. 2001) .............................................................. 19

**Statutes**

10 U.S.C. § 2733 ........................................................................................ 20

28 U.S.C. § 2672 ............................................................................. 13, 20, 21

28 U.S.C. § 2673 ...................................................................................... 21

iv

28 U.S.C. § 2675 ................................................................................ 20
28 U.S.C. § 2676 ................................................................................ 20
28 U.S.C. § 2677 ................................................................................ 21
28 U.S.C. § 2678 ................................................................................ 21
28 U.S.C. § 2679 ................................................................................ 20
28 U.S.C. § 2680 .................................................................................. 2
31 U.S.C. § 1304 .......................................................................... 20, 21
Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804, 136 Stat. 1759 (2022). .... passim
N.C. Gen. Stat. § 28A-26-3 ................................................................. 7

**Rules**

Fed. R. Civ. P. 56 .................................................................. 1, 3, 5, 22
Federal Rule of Civil Procedure 17 ............................................... passim
Federal Rule of Civil Procedure 60 ................................................. 7

**Other Authorities**

4 James Wm. Moore, et al., Moore's Federal Practice § 17.20[5] (3d ed. 2008) ........................... 8

v

## INTRODUCTION

The United States shares the interest of Plaintiffs' Leadership Counsel ("PLC") in advancing this litigation in an efficient manner. The United States also recognizes the desire to determine who may assert a claim as the legal representative of individuals who, like Colonel Richard Marsden, have passed away before obtaining relief under the Camp Lejeune Justice Act ("CLJA"). But this determination must be consistent with the Federal Rules of Civil Procedure. Two Rules preclude the relief that PLC seeks at this time.

First, under Rule 56(d), a court may "defer considering the motion or deny it" when the nonmovant "cannot present facts essential to justify its opposition." PLC's motion asks the United States to concede relevant allegations without the benefit of discovery. PLC's motion should be denied as premature on that basis alone. Second, under Federal Rule of Civil Procedure 17(b)(3), a representative's capacity to sue is determined "by the law of the state where the court is located." Rule 17(b)(3) plainly applies in civil litigation, independent of the relationship between the CLJA and the Federal Tort Claims Act ("FTCA"). Nothing in the CLJA abrogates the uniform application of this Rule. And although Rule 17(b)(3) applies in both FTCA and non-FTCA litigation, the FTCA provides additional reasons for applying North Carolina law here.

Whether applicable through Rule 17(b)(3) or the FTCA, North Carolina law requires a foreign representative—i.e., one appointed by a non-North Carolina court—to first qualify as an ancillary administrator. But PLC offers no evidence that ancillary administration is satisfied here. And although PLC disputes the wisdom of enforcing North Carolina's ancillary administrator requirement, that policy dispute does not justify a departure from the Federal Rules of Civil Procedure. Uniform application of North Carolina's ancillary administrator requirement is consistent with the CLJA's exclusive venue provision, may help avoid unnecessary choice of law

or estate disputes involving multiple representatives, and (as PLC acknowledges) is a process that is available to CLJA plaintiffs. PLC's motion should be DENIED.

## BACKGROUND

On August 10, 2022, the CLJA was enacted as § 804 of the Honoring Our Promise to Address Comprehensive Toxics Act of 2022, Pub. L. No. 117-168, 136 Stat. 1759 (2022). The CLJA was codified with the FTCA at Title 28, Chapter 171 in the Statutory Notes. The CLJA generally states that "[a]n individual, including a veteran . . . or the legal representative of such an individual" may "bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." CLJA § 804(b). The CLJA also specifically removed those legal barriers which had previously barred tort claims related to Camp Lejeune water. *See* CLJA § 804(f) (precluding "any claim to immunity . . . otherwise available under section 2680(a) [for discretionary functions]"); § 804(j)(3) (precluding "[a]ny applicable statute of repose or statute of limitations, other than under [§ 804(j)(2)]"); § 804(b) (specifying that "a veteran" may pursue a claim).

Deborah Merritt ("Plaintiff") alleges that her father, Colonel Richard Marsden, was an individual who was harmed by exposure to water at Camp Lejeune. After Colonel Marsden passed away, a Missouri state court issued letters testamentary to Plaintiff. Plaintiff asserts she is a "legal representative" with capacity to bring a CLJA claim on behalf of her father. Plaintiff offers no evidence that a North Carolina state court has qualified her as an ancillary administrator, as required under North Carolina law. Colonel Marsden is also survived by his spouse.

## LEGAL STANDARD

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248-49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## DISCUSSION

### I. PLC's Motion Should Be Denied as Premature Because There Has Been No Discovery on Factual Issues Related to Plaintiff's Claim of Representation.

The Court should deny this motion without prejudice to allow time for discovery of the facts related to a similarly situated motion. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A Rule 56(d) motion is "'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc)).

PLC's motion treats Plaintiff's appointment by a Missouri court as undisputed. But the only factual material supporting PLC's motion is a declaration provided by an attorney on

Plaintiffs' Executive Committee, which attaches a hearing transcript, a DD-214 documenting Colonel Marsden's retirement, a death certificate, and letters testamentary from the Missouri court. *See* D.E. 44. None of these materials were produced to counsel at the Department of Justice before the motion was filed. Plaintiff herself has provided no evidence in this case, such as verified interrogatory responses, deposition testimony, or even a sworn declaration.

The United States' review of available information thus far shows that material factual disputes may exist. Most importantly, it is unclear whether Plaintiff or Colonel Marsden's surviving spouse is the appropriate representative. Although Plaintiff provides letters testamentary from a Missouri court, *see* D.E. 44-5, Colonel Marsden's death certificate notes that he is also survived by his spouse, *see* D.E. 44-4. There has been no discovery regarding the will appointing Plaintiff as Colonel Marsden's representative. It is also unclear whether or to what extent the surviving spouse may have waived her rights to assert a claim on behalf of Colonel Marsden's estate. Additional discovery into these topics, including an opportunity to depose Plaintiff and the surviving spouse, is needed before the United States can be expected to admit Plaintiff's appointment under Missouri law.[1]

Because discovery is needed to determine what factual issues remain in dispute, the Court should deny PLC's motion without prejudice and defer consideration until fact discovery for Track One is complete. Plaintiff is not a Track One Discovery Plaintiff because both Parties declined to select this case as part of the Track One Discovery Pool. Thus, absent PLC's motion, Plaintiff's case would not be subject to discovery and would be in addition to the discovery already required

---

[1] Although the United States does not believe they are material to PLC's motion, PLC asserts other facts that may be disputed after discovery. For example, PLC asserts that "Colonel Marsden died of bladder cancer." D.E. 43 at ¶ 3. Expert opinion may be required to resolve Colonel Marsden's cause of death and no expert discovery has been conducted.

under Case Management Order 2. Because "many other legal representatives are also seeking relief under the CLJA," D.E. 42 at 10, it is likely that a case selected as one of the 100 cases in the Track One Discovery Pool will involve a foreign estate representative who has not opened an ancillary estate in North Carolina state court. Discovery in this other case would likely provide the same factual basis for PLC's motion and opportunity to investigate that factual basis, without also requiring duplicative discovery efforts. PLC should be permitted to submit a similar motion at the end of fact discovery related to that other case, after the United States has had sufficient opportunity to determine whether a factual dispute remains. *See Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 725 (E.D.N.C. 2013) ("Rule 56(d) permits a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify 'facts essential to justify the party's opposition.'" (quoting *Crawford-El v. Britton*, 523 U.S. 574, 599 n. 20 (1998))) (Dever, J.).

## II. Even If PLC's Motion Were Ripe, the Motion Should Be Denied Because the Applicable North Carolina Law Is Not Satisfied.

Although the Court should not decide this motion until after appropriate discovery, if the Court *does* decide the motion, it should do so by looking to the Federal Rules of Civil Procedure. PLC is correct that the "question here is not a difficult one." D.E. 42 at 13. The CLJA requires venue in the United States District Court for the Eastern District of North Carolina. CLJA § 804(d). Federal Rule of Civil Procedure 17(b)(3) explains that a representative's capacity to sue is determined "by the law of the state where the court is located." Thus, a representative's capacity to sue under the CLJA is determined by North Carolina law. The Federal Rules of Civil Procedure, including Rule 17(b)(3), apply in *all* civil cases in federal court. Whatever the relationship between the CLJA and the FTCA, the Federal Rules of Civil Procedure govern.

*A. Rule 17(b)(3) and North Carolina law require an ancillary administrator appointed by a North Carolina court.*

Rule 17(b)(3) controls here, and there is no basis to depart from the Federal Rules. As the Supreme Court explained last term, "[t]he Federal Rules are the default rules in civil litigation . . . Of course, Congress may override that command when it wishes. But we do not lightly infer that Congress has done so; and silence on the subject is seldom enough." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023) (holding that Rule 41 limits the United States' ability to voluntarily dismiss a False Claims Act case in which it intervened). Nor should courts "depart from the usual practice under the federal Rules on the basis of perceived policy concerns." *Jones v. Bock*, 549 U.S. 199, 200 (2007); *United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 936-37 (2009) ("But regardless of the purpose of [Federal Rule of Appellate Procedure] 4(a)(1)(B) and the convenience that additional time may provide to the Government, this Court cannot ignore the Rule's text, which hinges the applicability of the 60-day period on the requirement that the United States be a 'party' to the action.").

In particular, the Fourth Circuit has repeatedly applied Rule 17(b) to require an ancillary administrator where the forum state's law requires the same—including when the forum state is North Carolina, as here. *See, e.g.*, *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 609-10 (4th Cir. 1980) (applying North Carolina law); *Fennell v. Monongahela Power Co.*, 350 F.2d 867, 868 (4th Cir. 1965) (applying Rule 17(b) and West Virginia statute barring foreign estate administration); *see also Holt v. Middlebrook*, 214 F.2d 187, 190 (4th Cir. 1954) (applying Virginia statute barring foreign representation in wrongful death claims). Specifically, under North Carolina law, "[a] foreign executor or administrator lacks capacity . . . to prosecute or defend an action in his representative capacity without first having qualified in North Carolina as ancillary administrator."

*Davis*, 615 F.2d at 610 (citing *Cannon v. Cannon*, 228 N.C. 211, 45 S.E.2d 34 (1947)); *see also* N.C. Gen. Stat. § 28A-26-3 (describing ancillary administration).

Here, PLC seems to acknowledge that the Federal Rules are generally applicable to CLJA claims. *See* D.E. 42 at 15-16 (discussing Rule 60(b)). Yet, despite Rule 17(b)'s clear reference to a representative's capacity to sue, and despite Fourth Circuit law applying Rule 17(b) to define a representative's capacity to sue, PLC relies only on Rule 60(b), which relates to relief from judgment. Rule 60(b) is inapposite because PLC does not seek relief from judgment. Rather, PLC seeks a determination regarding Plaintiff's capacity to "bring an action under the Camp Lejeune Justice Act," D.E. 42 at 8, making Rule 17(b)(3) the applicable Rule. Accordingly, the Court should apply Rule 17(b)(3) and North Carolina law.

Moreover, PLC does not appear to dispute that an ancillary estate is required as a matter of North Carolina law. And PLC offers no evidence that Plaintiff has qualified in North Carolina as ancillary administrator or is otherwise incapable of being so qualified. To the contrary, PLC acknowledges that "opening an estate in North Carolina is an option for representatives appointed by non-North Carolina courts." D.E. 42 at 17. But under Rule 17(b)(3) and North Carolina law, there is no "option." Ancillary administration is a *requirement* that must be uniformly enforced.

*B.  Nothing in the CLJA changes the requirement of Rule 17(b)(3).*

Rather than comply with North Carolina law, which PLC acknowledges is feasible, PLC asks this Court to craft an exception to the Federal Rules to allow more "streamlined" adjudication. D.E. 42 at 16, 17 & n. 4. The CLJA does not permit such an exception to the Federal Rules. Although PLC is correct that "this Court is fully capable of assessing whether a plaintiff" has capacity to represent an estate, D.E. 42 at 17, PLC is mistaken that the CLJA permits some new rule for making that assessment. Nor is there any reason for this Court to craft an entirely new process to "directly appoint legal representatives for CLJA purposes." *Id.* at 17, n. 4. Rule 17(b)(3)

provides a straightforward, uniform, and workable solution—North Carolina courts appoint ancillary administrators, and this Court determines whether such an appointment has been made, consistent with Rule 17(b)(3) and North Carolina law. Applying Rule 17 would be far more efficient than having the Court take on the responsibility of appointing legal representatives.

Without addressing Rule 17's limitations, PLC asserts that the CLJA itself empowers Plaintiff to act as the "legal representative" for Colonel Marsden's estate. Just as "nothing in the [False Claims Act] suggests that Congress meant to except *qui tam* actions from the usual voluntary dismissal rule," *Polansky*, 599 U.S. at 436, nothing in the CLJA suggests that Congress meant to except CLJA representatives from the usual capacity rule. Certainly, there is no express conflict between Rule 17(b)(3), which defines a representative's capacity to sue by looking to the forum state's law, and the CLJA, which PLC concedes "does not define, qualify, or limit the term 'legal representative.'" D.E. 42 at 13.[2]

The only relevant provision of the CLJA is subsection (d), which requires venue in this Court. Combined with Rule 17(b)(3)'s requirement that legal representation should be determined by the law of the forum state, that provision ensures that all issues regarding legal representation for CLJA claims will be resolved pursuant to the established procedures under North Carolina law,

---

[2] There is also no conflict here between Rule 17(b)(3)'s directive that a representative's capacity to sue is determined by "the law of the state where the court is located" and § 1346(b)(1)'s directive that liability is determined by "the law of the state where the act or omission occurred" because North Carolina law applies under both analyses. In any event, "capacity does not affect the choice of what substantive law to apply to a case." *Masood v. Saleemi*, 309 F. App'x 150, 152 (9th Cir. 2009) (citing 4 James Wm. Moore, et al., Moore's Federal Practice § 17.20[5] (3d ed. 2008)); *Jacobs v. Adams*, 601 F.2d 176, 179 (5th Cir. 1979) (concluding Florida law applied "to determine the executors' Capacity to sue" under Rule 17(b), but New York law applied "to determine the scope of the New York executors' Power or Right to bring a particular suit").

which, as noted, PLC concedes are available in this case.  *See* D.E. 42 at 17.  Nothing in the CLJA suggests that it displaces Rule 17.

Rather than look to Rule 17(b)(3)'s clear instruction, PLC points to dictionary definitions. But the definitions offered simply beg the question of who is empowered to represent a claimant. PLC asserts that a legal representative is "someone who manages the legal affairs of another," but this definition does not resolve who has the legal capacity to "manage the legal affairs of another" or under what circumstances.  *See* D.E. 42 at 14.  PLC offers another definition that includes "an executor or administrator who may bring or be subject to an action or proceeding for or against a deceased person and his or her estate."  *Id.*  This definition also does not resolve who legally "may bring . . . an action" or under what circumstances.  And, citing a case that predates the Federal Rules of Civil Procedure, PLC suggests "legal representative" should mean "the representatives constituted by the proper court."  *Id.* (citing *Briggs v. Walker*, 171 U.S. 466 (1898)).  But even assuming this decision was not abrogated by Rule 17, it does not resolve what is a "proper court."

The caselaw that PLC cites does not support its conclusion.  To the contrary, the analysis in those cases favors a *narrower* definition of "legal representative" that looks to Rule 17 and the forum state's law.  For example, PLC relies on cases interpreting the Jones Act to help define who may bring a CLJA claim.  *See* D.E. 42 at 15 (citing *The Pan Two*, 26 F. Supp. 990, 993 (D. Md. 1939)).  First, the district court in *The Pan Two* did not address Rule 17(b).  Other district courts addressing both Rule 17(b) and federal statutes similar to the Jones Act have continued to define "personal representative" based on the forum state's law.  *See, e.g.*, *La Salle Nat'l Bank v. Pa. R. Co.*, 8 F.R.D. 316, 317 (N.D. Ill. 1948) ("[T]he capacity to sue [under Rule 17(b)], of the personal representative who is enforcing the right of action under the Federal Employees' Liability Act, is to be determined by state law."); *Reynolds v. Cincinnati, N. O. & T. P. Ry. Co.*, 7 F.R.D. 165, 166

(E.D. Ky. 1945) ("Testing this [Federal Employees' Liability Act] case by the rule [17(b)] . . . the plaintiff is acting in a representative capacity and her right to sue must be determined by the law of the State of Kentucky."). To the extent the Jones Act and Federal Employees' Liability Act are appropriate analogues to the CLJA, this Court should follow those cases applying Rule 17(b). Second, the district court in *The Pan Two* recognized that, even when a representative gains their right pursuant to a federal statute, such rights are still "subject of course to applicable Acts of Congress as to the proper venue." *The Pan Two*, 26 F. Supp. at 993. The Jones Act allows a plaintiff to bring suit in any district where the defendant employer "resides"—which includes any district where the employer "transact[s] a substantial amount of business." *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204-05 (1966). Here, Congress has restricted venue to the Eastern District of North Carolina. Rule 17(b)(3) defines a representative's capacity to sue by looking to the forum state's law. Accordingly, Plaintiff cannot bring a CLJA claim unless she can show that she has qualified in North Carolina as an ancillary administrator. *See Davis*, 615 F.2d at 610.

Nor does the Lanham Act justify departing from Rule 17(b)(3) here, as PLC implies. *See* D.E. 42 at 15 (citing *Fed. Treas. Enter. Sojuzplodimport v. SPI Spirits Ltd.*, 726 F.3d 62, 80 (2d Cir. 2013) ("FTE")). In *FTE*, the Second Circuit specifically rejected a broad definition that would permit "separate suits against the same defendant for the same infringing act—a result that seems inconsistent with Congress's stated intention to limit standing to the single 'registrant' of the trademark." *FTE*, 726 F.3d at 80. Here, the Court should similarly reject PLC's expansive definition that would include estate representatives empowered by any court under any state's law. Similar to the Lanham Act, the CLJA's reference to "an individual" is a strong indication that Congress intended to avoid the chaos that would come from permitting duplicate claims by multiple representatives. CLJA, § 804(b). Requiring each plaintiff to follow North Carolina law,

as required by Rule 17, may reduce confusion regarding who may represent an estate for purposes of this litigation.

PLC's argument ultimately amounts to a policy plea to avoid "the additional hoop of opening an ancillary estate in North Carolina." D.E. 42 at 10. But appeals to "perceived policy concerns" are not a valid basis for departing from the Federal Rules. *Jones v. Bock*, 549 U.S. 199, 200 (2007). And the benefit of applying *any* state's law, as PLC requests, is questionable. Applying Rule 17(b)(3) and North Carolina law to all plaintiffs reduces uncertainty regarding who may represent an estate and promotes uniformity in how estates are represented and administered. Moreover, as PLC points out, Congress was certainly aware that potential claimants "reside across the country." D.E. 42 at 17. Nonetheless, Congress plainly required all of these claimants to try their cases in the Eastern District of North Carolina. CLJA, § 804(d). It is entirely consistent for Congress to also require all of these claimants to seek ancillary administration in North Carolina, as required by the Federal Rules of Civil Procedure.

In short, Plaintiff seeks to represent the estate of Colonel Marsden. As a representative, her capacity to sue is determined by Rule 17(b)(3), which looks to the law of the forum state—North Carolina. There is no basis for departing from Rule 17(b)(3) in this litigation.

### C. *Applying the FTCA to Fill Gaps in the CLJA Leads to the Same Result.*

"The Federal Rules are the default rules in civil litigation," *Polansky*, 599 U.S. at 436, and those Rules apply in FTCA and non-FTCA cases alike. Thus, for purposes of this motion, the Court need not decide whether the CLJA incorporates substantive North Carolina law through the FTCA.

The United States recognizes the need to resolve the extent to which the FTCA applies to CLJA actions, but disagrees that this motion is the appropriate vehicle. As Lead Counsel indicated at the October 30, 2023 Status Conference, the issue of whether the FTCA applies may impede

settlement. Bash Decl., Ex. A at 40-41 ("But, yet, while we might would [sic] have wanted to accept the offer, then [the United States] require[s] the lawyers to say that this is under the Tort Claims Act, is something we think – we brought that up to the Government explaining to them that we thought it was improper."). And as Chief Judge Myers suggested at the same hearing, whether settlement offers are "pursuant to the Federal Tort Claims Act" might be one way to bring this issue before the Court. *Id.* at 40. Here, PLC brings a different motion that does not require the Court to resolve whether the CLJA incorporates substantive North Carolina law through the FTCA.[3]

To the extent the issue is presented in PLC's motion, the United States maintains that "Congress intended to adopt the conditions of the FTCA's waiver . . . that were not abrogated by the CLJA." D.E. 34 at 6 (United States' Statement of Interest); *see also* D.E. 51 (United States' Motion to Strike). The CLJA's text, structure, and legislative history demonstrate that the CLJA looks to the FTCA to fill in gaps not addressed by the CLJA's own text. For example, the CLJA leaves many critical topics unaddressed that the FTCA expounds upon in detail, including adjustment or compromise for administrative claims (§ 2672) or for cases in litigation (§ 2677), as well as caps on attorneys' fees (§ 2678). And although Congress abrogated some specific aspects of state law incorporated by the FTCA, including statutes of repose, it declined to address numerous other aspects of state tort law, including how to measure compensatory damages or who may represent the estate of a deceased individual. Thus, the CLJA should be read in light of § 1346(b)'s limited waiver as to "the law of the place where the act or omission occurred." Here,

---

[3] PLC also seems to abandon the related question initially raised at the October 30, 2023 Status Conference: whether "this case is a case in federal common law." *Id.* at 20; *id.* at 21 (Lead Counsel explaining that, as part of the federal common law analysis, "the Court could adopt the aspects of the North Carolina [law]"); *but see id.* at 37 (United States' counsel explaining "there's no need to create some federal common law").

the law of the place is North Carolina law and so the CLJA's undefined reference to "legal representative" should be read in light of North Carolina law. Even if the CLJA overrides Rule 17(b)(3), North Carolina law continues to apply as to estate representation through the FTCA.

1. <u>Congress abrogated specific features of the FTCA in a targeted fashion.</u>

As PLC asserts: "Congress knew that one possible fix would have been to maintain the basic FTCA standards while eliminating the grounds on which courts had previously dismissed those claims." D.E. 42 at 22; *see also id.* at 27. And this is precisely what Congress did. Courts previously dismissed Camp Lejeune water claims under North Carolina's statute of repose. *See In re Camp Lejeune, N.C. Water Contamination Litig.*, 774 F. App'x 564, 566 ((11th Cir. 2019), So Congress expressly preempted state statutes of repose and set a different statute of limitations. *See* CLJA § 804(j)(3). Courts previously dismissed Camp Lejeune water claims based on the discretionary function exception. *In re Camp Lejeune, N.C. Water Contamination Litig.*, 774 F. App'x 564. So Congress expressly precluded "any claim to immunity . . . that would otherwise be available under section 2680(a) of title 28 [the FTCA's discretionary function exception]." *See* CLJA § 804(f). And courts also previously dismissed Camp Lejeune water claims under the *Feres* doctrine. *Clendening*, 19 F.4th 421; *cf. Feres v. United States*, 340 U.S. 135 (1950) So Congress expressly provided a remedy for veterans without limiting liability on the bases supporting the *Feres* doctrine. *See* CLJA § 804(b). In short, Congress enacted the CLJA to specifically eliminate each of the grounds on which courts had previously dismissed Camp Lejeune water claims.

The CLJA's text, structure, and legislative history contemplate retaining provisions of the FTCA (including the substantive "law of the place") except where abrogated. PLC characterizes this assertion as "overstated," D.E. 42 at 28, but offers little to rebut this straightforward interpretation. First, as to statutes of repose, the CLJA expressly identifies other "*applicable statute[s] of repose*" and expressly precludes their application. CLJA § 804(j)(3) (emphasis

added).  No such statute of repose is found in the CLJA itself, nor the FTCA.  Statutes of repose are "applicable" to CLJA claims through § 1346(b)(1)'s "law of the place" condition and state law. Ignoring the CLJA's express reference to statutes of *repose*, PLC asserts that the CLJA "merely establishes a CLJA specific statute of limitations and state that no other statute of limitations would apply."  D.E. 42 at 28.  This reading inappropriately "renders superfluous" the express preclusion of any applicable statutes of repose, separate and apart from statutes of limitations.  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019).

The CLJA's legislative history also shows that Congress addressed North Carolina's statute of repose in a targeted fashion, rather than precluding North Carolina law wholesale. Representatives who drafted and introduced the CLJA bill not only characterized the CLJA as permitting claims "under the *Federal Tort Claims Act*," but also as addressing "a unique provision in North Carolina law."  D.E. 34-2 at 2 (Press Release: Cartwright, Murphy, Price Introduce Camp Lejeune Justice Act (March 26, 2021); *see also* D.E. 34-3 at 2 (Press Release: Rep. Cartwright Announces House Passage of Camp Lejeune Justice Act, included in the Honoring Our PACT Act (Mar. 4, 2022)) (new legislation "is necessary" "because of a unique provision in North Carolina law").  Counsel at the Department of Justice are unaware of pre-enactment statements indicating that Congress intended to abrogate other features of North Carolina law, including North Carolina estates law.[4]

---

[4] As described in its Motion to Strike, the United States is aware of *post-enactment* statements by some Members of Congress indicating that the CLJA was intended to stand separate from the FTCA.  *See* D.E. 51-1 at 6-7.  These statements do not support a waiver for two reasons.  First, a *post-enactment* statement "is not a legitimate tool of statutory interpretation" because it "by definition could have had no effect on the congressional vote."  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (internal quotation and citation omitted).  Second, even if a post-enactment statement was a "legitimate tool" in an ordinary case, the clear statement rule means that

Second, as to the discretionary function exception, PLC concedes that "under its plain text, Section 2680(a) would have applied to CLJA claims absent the Section 804(f) exemption." D.E. at 23. PLC nonetheless asserts that Congress included Section 804(f) to preclude a discretionary function exception as a matter of "judicial construction." *Id.* at 22. But Section 804(f) precludes a claim to immunity "that would otherwise be available under section 2680(a) of title 28, United States Code." Thus, rather than address any "judicial construction," Congress specifically targeted the FTCA's codification of the exception, which PLC acknowledges had previously "barred recovery for Camp Lejeune injuries." D.E. 42 at 29, n. 8. The CLJA specifically refers to "section 2680(a) of title 28" because the FTCA (and its exceptions) remain "otherwise [] available" in a CLJA action.

Third, as to the *Feres* doctrine, the most straightforward reading of the inclusion of "a veteran" is a statutory abrogation of the *Feres* doctrine, which had previously barred Camp Lejeune water claims asserted by servicemembers. Although the doctrine previously excluded certain servicemembers' claims from the FTCA's conditional waiver, Congress can—and did— bring those same claims back within that conditional waiver. For that reason, the United States acknowledges that those servicemembers' claims are no longer barred by the *Feres* doctrine.

PLC's estoppel argument fails to account for this clear Congressional response. *Before the CLJA's enactment*, the United States successfully moved to dismiss Camp Lejeune water claims under the *Feres* doctrine. *See* D.E. at 21 (citing *Clendening v. United States*, 19 F.4th 421, 428 (4th Cir. 2021). Congress then enacted the CLJA, expressly permitting claims by "veteran[s]." CLJA § 804(b). PLC also asserts that the FTCA cannot fill gaps here because the *Feres* doctrine

---

"recourse to legislative history will be futile" to support a conclusion that sovereign immunity was waived. *Dellmuth v. Muth*, 491 U.S. 229, 240 (1989).

bars FTCA claims brought by servicemembers for alleged torts incident to service. *See* D.E. 42 at 21, 25, 28. PLC misses the point—Congress abrogated this particular feature of the FTCA, in the same way that it abrogated state statutes of repose or the discretionary function exception.[5] .

    2. <u>Congress reasserted specific features of the FTCA for specific reasons.</u>

    Just as Congress abrogated specific features of the FTCA that would otherwise apply, it elsewhere confirmed that its abrogation was narrow. The CLJA includes some provisions that mirror the FTCA, but only where the CLJA elsewhere indicated those provisions were abrogated.

    For example, as discussed above, the CLJA allows "a veteran" to recover. CLJA, § 804(b). Although Congress likely included this provision to abrogate the *Feres* doctrine, it might also be read as abrogating the FTCA's combatant activities exception. *See* 28 U.S.C. § 2680(j). For that reason, Congress reasserted a combatant activities exception in the CLJA, § 804(i). The CLJA allows recovery of "appropriate relief." CLJA, § 804(b). This authorization might be read as allowing punitive damages, which not recoverable under the FTCA. *See* 28 U.S.C. § 2674. For that reason, Congress reasserted a bar on punitive damages in the CLJA, § 804(g). *See also* D.E. 34 at 13-14. And in allowing claims that were previously asserted under the FTCA, the CLJA might be read as authorizing suits without administrative exhaustion. But as the United States previously argued, and this Court agreed, § 804(h) was necessary to prevent claimants who presented pre-CLJA administrative claims from immediately proceeding to court. *See, e.g.*, *Fancher v. United States*, 646 F. Supp. 3d 694 (E.D.N.C. 2022) (Dever, J.).

---

[5] In a footnote, PLC implies that *Feres* doctrine was not entirely abrogated because "[t]he statutory term 'veteran' does not include servicemembers who were dishonorably discharged." D.E. 42 at 28 n. 7. The nature of Colonel Marsden's discharge is not material to PLC's motion, so this Court does not need to decide whether a servicemember who was dishonorably discharged may bring a CLJA claim.

Thus, PLC is incorrect that the express inclusion of certain FTCA provisions "would be unnecessary if the FTCA served as a general 'gap filler.'" D.E. 42 at 23. Each of the specific FTCA provisions reasserted in the CLJA was included because it might have otherwise been abrogated. Congress took care to ensure that the FTCA's conditional waiver was not abrogated by mere implication. *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) ("Waivers of immunity must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires.").

3. <u>Congress did not abrogate other provisions implicitly.</u>

Although the CLJA expressly abrogates certain features of the FTCA and adopts others, it remains silent as to many key elements that are, and will be, essential to managing these cases. Where the CLJA's text does not address an issue--like estate representation—Congress intended for courts to rely on the FTCA's text and its express incorporation of state law, rather than require courts to craft new substantive rules to impose liability. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied.") (internal quotations and citations omitted); *F.A.A. v. Cooper*, 566 U.S. 285, 291 (2012) (waiver must be "clearly discernable from the statutory text").

For the same reasons that applying North Carolina law through Rule 17(b)(3) is consistent with the CLJA's reference to a "legal representative," applying North Carolina law through the FTCA is also consistent. As PLC acknowledges, the CLJA does not define that term, D.E. 42 at 13, and the North Carolina law process is available to plaintiffs, *id.* at 17. The Court should apply North Carolina law to the issues here.

Although the CLJA provides its own "unique standards and requirements" as PLC asserts, D.E. 42 at 20, it only does so for a few specific elements that do not preclude application of North

Carolina law as to estate representation. The CLJA modifies the causation standard and displaces state statutes of limitations and repose. CLJA, §§ 804(c)(2), (j)(2).[6] This preemption of particular aspects of North Carolina law does not render the rest of its law—including its law regarding estate representation—inapplicable to CLJA claims. *See United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 8 (1993) (finding that the McCarran Amendment, which waived the United States' "right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of sovereignty," submits the United States to state substantive law but not state fee-shifting law). Where the CLJA is silent, there is no basis to infer that sovereign immunity was waived. Thus, any gaps in the law must be filled by the FTCA's conditional waiver, and its reference to the "law of the place."

The CLJA is unlike other federal causes of action that fall outside the FTCA's waiver. The CLJA is plainly distinguishable from the *Bivens* action discussed in *F.D.I.C.* v. *Meyer*, 510 U.S. 471 (1994). Courts understandably exercise greater restraint in applying a *judicially*-created cause of action—like a *Bivens* action—because waivers of sovereign immunity require "clear *congressional* consent." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (emphasis added). But Congress is free to create a federal cause of action that acts within the FTCA's waiver, as it did with the CLJA.

---

[6] PLC asserts that the CLJA "does not have negligence or fault as a proof element," but the CLJA does not expressly address this ubiquitous tort element. D.E. 42 at 21 & n. 5. In any event, this Court does not need to decide whether the CLJA includes a negligence element, as the United States will not demand proof of negligence or fault for claimants who prove a harm with the required causal connection between exposure to perchloroethylene ("PCE"), trichloroethylene ("TCE"), trans1,2-dichloroethylene ("1,2-tDCE"), vinyl chloride ("VC"), or benzene in Camp Lejeune water. D.E. 50 at ¶ 10.

The CLJA is also distinguishable from the Lanham Act and Emergency Medical Treatment and Labor Act ("EMTALA"). Unlike the CLJA, those statutes are primarily focused on ongoing conduct by private parties, rather than remedying a past harm by the United States. *See* D.E. 42 at 19-20. In *Global Mail v. U.S. Postal Service*, the Fourth Circuit observed that "Congress intended to omit the federal government from its subjection to the Lanham Act." 142 F.3d 208, 216 (4th Cir. 1998); *see also id.* ("[T]he fact that Congress amended the Act in 1992 to include states within its purview, but not the federal government, only indicates it did not intend to include a waiver of sovereign immunity for Lanham Act violations for the whole of the federal government."). Thus, the Fourth Circuit appropriately concluded that the Postal Service's liability under the Lanham Act could only be premised on an independent waiver of that agency's immunity as a sue-and-be-sued agency. Here, CLJA claims are asserted against the United States itself—not against the Department of the Navy as a sue-and-be-sued agency. Similarly, EMTALA does not contemplate federal liability or any waiver of immunity, but instead required hospitals that accept Medicare funds to provide certain care. *See Williams v. United States*, 242 F.3d 169 (4th Cir. 2001). Thus, the Fourth Circuit correctly excluded EMTALA from the FTCA's conditional waiver. Here, the CLJA contemplates federal liability, and does so through the FTCA.

For similar reasons, PLC fails to distinguish other federal causes of action expressly excepted from the FTCA, like the Suits in Admiralty Act ("SIAA") or suits against the Tennessee Valley Authority. PLC asserts that the CLJA is a "purely federal cause of action," unlike other federal torts where "state-law tort liability would otherwise apply." D.E. 42 at 25. But PLC assumes its conclusion that state law is wholly inapplicable. On its face, there is no indication in the CLJA that it is any more "federal" than the SIAA, for example.

Whereas the FTCA provides clear, statutory solutions to the CLJA's gaps, PLC's alternatives would be unworkable. For example, PLC suggests that Congress did not adopt the FTCA's administrative settlement provision, 28 U.S.C. § 2672, when it adopted the FTCA's administrative exhaustion provision, 28 U.S.C. § 2675. D.E. 42 at 19-20. PLC proposes that the Navy might rely on the Military Claims Act rather than the FTCA. But if this were the case, then the first $100,000 of CLJA settlements would be paid by the Department of the Navy from its own appropriations—not by the Department of Treasury through the Judgment Fund. 31 U.S.C. § 1304; 10 U.S.C. § 2733(d). Additionally, the Military Claims Act, like the FTCA, expressly references "the law of the place where the act or omission complained of occurred." 10 U.S.C. § 2733(b)(4).

PLC also posits that "other provisions of the FTCA . . . limited to FTCA actions or administrative claims" might not apply here, including the judgment bar and Westfall Act. *See* D.E. 42 at 30 (citing 28 U.S.C. §§ 2676 and 2679(b)(1)). But the FTCA's judgment bar is necessary to prevent CLJA claimants from simultaneously or subsequently asserting claims "against *the employee* of the government." 28 U.S.C. § 2676 (emphasis added). Although subsection 804(e)(1) bars a future "tort action against the United States," that provision is silent as to actions against employees. Similarly, the Westfall Act is necessary to allow the United States to substitute itself as the defendant when a tort claim is asserted "against any employee of the Government." 28 U.S.C. § 2679(c). PLC offers no reason why Congress would abandon these and other FTCA features, including its limitation on attorneys' fees, 28 U.S.C. § 2678. *See also* 28 U.S.C. § 2673 (requiring agencies to "report annually to Congress all claims paid by it under section 2672 of [title 28]").

PLC also invokes the rule of lenity in contesting the FTCA's caps. *See* D.E. 42 at 32. But that rule "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *Shular v. United States*, 140 S. Ct. 779, 787 (2020). And one of those "traditional canons" includes the "sovereign immunity canon," which requires "the interpretation most favorable to the Government" when a statute is ambiguous. *Cooper*, 566 U.S. at 291. Thus, to the extent there is ambiguity, § 2678 should apply and the rule of lenity is inapplicable.

4.  Any ambiguity in the CLJA favors the FTCA's application.

The CLJA's text, structure, and legislative history all indicate that the FTCA's conditions apply except where abrogated. But to the extent there remains any ambiguity, this Court should look to the FTCA's text rather than imply a new rule from the CLJA. *See Lane*, 518 U.S. at 192 ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied.") (internal quotations and citations omitted). This canon ensures that the scope of a waiver is not "enlarged beyond what the language requires." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (internal quotations and citations omitted).

When Congress waived immunity for CLJA claims, it did not leave unresolved fundamental questions like who may settle claims (including the Navy, through 28 U.S.C. § 2672, or the Attorney General, through 28 U.S.C. § 2677), who pays those settlements (the Judgment Fund, through 31 U.S.C § 1304), or what amount of those settlements may be collected by attorneys (no more than 20% or 25% under § 2678). It similarly did not leave unresolved other questions of substantive tort law, including what types of damages an estate may recover, how that recovery should be divided, and—most importantly here—who may represent that estate. Rather than waive immunity and wait for a federal court to craft new substantive rules (and thus determine

the scope of the waiver), Congress retained the FTCA's "law of the place" requirement and the determinacy provided by extant North Carolina law.

## CONCLUSION

PLC's interest in avoiding the extra work of ancillary administration is, in some ways, understandable. And PLC's interest in resolving whether ancillary administration is required is also understandable. But the Federal Rules are clear. Under Rule 56(d), summary judgment is inappropriate where there has been no opportunity for discovery of the relevant facts. And under Rule 17(b)(3), a representative's capacity to sue is determined by the law of the forum state. Any policy interest in "streamlining" resolution does not justify such a radical departure from the Federal Rules. Nor do such policy interests support enlarging the waiver of sovereign immunity beyond what the text of CLJA and FTCA provide, including the FTCA's "law of the place" requirement. PLC's attempts to create new, atextual legal rules should be denied.

Respectfully submitted on December 7, 2023.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

ADAM BAIN
Senior Trial Counsel, Torts Branch
Environmental Torts Litigation Section

HAROON ANWAR
Trial Attorney

Environmental Torts Litigation Section


*/s/Nathan Bu*
NATHAN BU
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
U.S. Department of Justice
P. O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: nathan.j.bu@usdoj.gov
Telephone: (202) 705-5938
Fax: (202) 616-4989

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2023, a copy of the foregoing document was filed

via the Court's ECF system and served on counsel of record through the ECF system.

_/s/ Nathan Bu_
NATHAN BU