IN RE:

CAMP LEJEUNE WATER LITIGATION

This Document Relates To:
ALL CASES

### NON-LEADERSHIP PLAINTIFFS' BRIEF IN OPPOSITION TO LEADERSHP PLAINTIFFS' "MOTION TO ENFORCE CASE MANAGEMENT ORDER NO. 2"

The undersigned counsel files this brief on behalf of the 17 individual plaintiffs who have the potential to be negatively impacted by Plaintiff Leadership Group's (hereafter referred to as "Leadership" or "PLG") Motion to Enforce Case Management Order No. 2 (the "Motion").[1]

### INTRODUCTION

Plaintiffs' Leadership was appointed in part to "fairly, effectively, and efficiently represent the interests of **all Plaintiffs** . . .." CMO-2, p. 1. However, the self-serving "motion to enforce" filed yesterday by Plaintiffs' Leadership (which seeks to void the government's selection of either 16 or 17 individual Plaintiffs represented by the undersigned counsel) does not seek to advance the interests of *all* Plaintiffs in this litigation – it instead seeks to advance the interests of select Plaintiffs who are represented by law firms on the PLG and villainize the undersigned counsel. In

---

[1] This brief is being filed pursuant to the authority granted in this Court's CMO-2, which preserves "the right of *any* plaintiffs counsel to present any non-repetitive positions that uniquely affect an individual plaintiff." *Id.* at 2 (emphasis added). Because this matter uniquely affects the 17 individual plaintiffs named in the Motion and is directly targeting both the undersigned counsel and his clients, the undersigned assumes this filing is permitted. However, to the extent leave of court is required to respond to Leadership's Motion, the undersigned will withdrawal this brief and seek leave to refile, if so instructed by Your Honors.

fact, if granted, Leadership's motion would actually be harmful to some of the very plaintiffs that Leadership purports to represent in this litigation (i.e., plaintiffs represented by the undersigned counsel's law firm) by depriving them of the opportunity to participate in the discovery and bellwether process in this litigation alongside the other individual plaintiffs chosen by the parties.

All 17 of the plaintiffs represented by the undersigned's firm were timely submitted for track one discovery and bellwether consideration. Plaintiff David Downs was never opted out of consideration. The remaining 16 plaintiffs were re-opted in for consideration *before* CMO-2's December 6 selection deadline. In addition, this past Friday, the PLG voluntarily agreed to give the government additional time to make proper picks, and further agreed that at least 5 cases where amended complaints were submitted after the original deadline were proper and eligible. There is no legitimate reason for plaintiffs represented by the undersigned's firm to be treated any differently than plaintiffs represented by Leadership or the steering/executive committees.

For these reasons, and all of the reasons expressed below, the undersigned opposes Leadership's Motion to Enforce and respectfully requests Leadership's Motion be denied.[2]

FACTUAL BACKGROUND

During the track one discovery/bellwether selection process, various members of the Plaintiff's executive/steering committees called to ask the undersigned counsel to opt out 63 of his clients' 64 cases from discovery and bellwether consideration. After the undersigned counsel requested specifics as to why, various representations were made to the undersigned counsel and his co-counsel from members of the Plaintiffs executive/steering committees about which cases

---

[2] Prior to filing this brief, the undersigned repeatedly sought to resolve this interpersonal disagreement with PLG without involving the Court. *See e.g.*, Exhibit 1. However, the undersigned did not receive a response to his efforts. Given the PLG's decision to make this interpersonal conflict among counsel public and refusal to respond to counsel's emails, the undersigned was left with no choice but to present the undersigned's perspective of the matter to Your Honors.

would be best to go forward in the litigation process and which cases should be opted out.[3] In response to the PLG's representations and heeding their advice to "play ball," the undersigned sent an email to the government's lead counsel opting out 56 cases from track one consideration.[4]

After the track one selections were announced, it became apparent that the representations made to the undersigned were not true—many of the cases selected by leadership were similar to the cases leadership asked the undersigned counsel to opt out. The undersigned also became aware that **90% (45 of the 50)** track one plaintiff-picks were represented by firms on the leadership, steering and executive committees, as depicted below:

|  | Plaintiffs represented by Leadership, Executive, or Steering Committee Firms | Plaintiffs **not** represented by Leadership, Executive, or Steering Committee Firms |
|---|---|---|
| Bladder Cancer | 9 | 1 |
| Kidney Cancer | 10 | 0 |
| Leukemia | 9 | 1 |
| NHL | 9 | 1 |
| Parkinson's Disease | 8 | 2 |

---

[3] Due to the potentially privileged and confidential nature of these discussions, the undersigned will not publicly identify the substance of these discussions. However, Leadership has unwittingly jeopardized opening the door to these otherwise privileged conversations by attaching the undersigned's private emails to allied counsel as an exhibit in a public filing (emails which are directly related to these privileged and confidential discussions between the undersigned and Leadership). "Communication among the various allied counsel and their respective clients should not be treated as waiving work-product protection or the attorney–client privilege . . .." (Manual for Complex Litigation, Fourth, p. 26). Although the undersigned believes that providing additional context would be necessary to fully respond to the PLG's Motion and defend the very public, harmful attack on undersigned's reputation, the undersigned will nevertheless take the high road and do what is truly best for "all Plaintiffs" in this litigation by keeping the substance of these discussions with Leadership private, and instead only including the bare minimum necessary to defend the attack on counsel's character and represent the undersigned's clients best interests.

[4] Plaintiff David Downs was never opted out of the discovery pool, and therefore, should be excluded from Leadership's motion.

This includes the representation of a single law firm (Bell Legal Group) as lead or co-counsel on **80% of the track one plaintiff-picks**. Coincidentally, the head lawyer of that firm (Ed Bell) is the same individual who filed this motion seeking to strike the undersigned's cases from track one consideration – presumably to replace them with his own. **In fact, 12 of the 13 other substituted cases (which are not being disputed by Leadership) are represented by law firms on Leadership and steering/executive committees**.[5] To be clear, the undersigned does not dispute Leadership or the bellwether committee's authority to pick their own cases to the extent they are truly the most "representative" of the group. The undersigned does not believe, however, that the PLG should be allowed to pick *the government's* cases, as they are attempting to do here.

Not only did the track one discovery/bellwether process appear unfair, but there was zero communication to the undersigned as to *why* these cases were picked as representatives of Plaintiffs in this litigation. "Counsel in leadership positions should . . . consult [other attorneys] about decisions significantly affecting their clients." (Manual for Complex Litigation, Fourth, p. 26). Clearly this decision "significantly affected" the undersigned's clients, and yet there was zero explanation provided by Leadership as to why none of the plaintiffs represented by the undersigned's firm were selected to participate. Nor was there any substantive explanation offered as to why the committee never even bothered to interview four of the undersigned's clients, despite Mr. Elliott Abrams' assurance that all candidates would be interviewed and considered by the committee. *See* Exhibit 2. The truth is that Leadership has been the one failing to "collaborate" in this process – not the undersigned counsel.

---

[5] "[B]ecause appointment of designated counsel will alter the usual dynamics of client representation in important ways, attorneys will have legitimate concerns that their clients' interests be adequately represented." (Manual for Complex Litigation, Fourth, p. 26).

Following the undersigned's realization of how unfair and biased the process truly was, and the fact that Leadership selected cases similar to the cases the undersigned counsel was pressured to opt out, the undersigned acted swiftly to rescind the "opting out" of 56 individual plaintiffs represented by the undersigned's firm.[6] The recension email was sent on December 5 at 9:05 p.m. ET, approximately 3 hours *prior to* CMO-2's December 6 deadline to select cases, leaving little time for either party to select from these cases.

Then, on Friday, December 8, *after the initial track one selection deadline*, the government realized that 29 plaintiffs needed to be substituted for different plaintiffs. This was because those plaintiffs did not file a short form complaint prior to the November 6 deadline.[7] Unbeknownst to the undersigned counsel, *Leadership then voluntarily permitted the government additional time to swap these 29 plaintiffs out with new plaintiffs from the track one pool.*

In turn, the government properly filled these spots with new plaintiffs on Monday December 11 by filing an amended list of track one discovery/bellwether selections. The only problem was that these plaintiffs were represented by the undersigned's law firm as opposed to Leadership, thus leading to Leadership's present Motion.

## ARGUMENT & CITATION OF AUTHORITY

### I. The Government's Selection of Non-Leadership Plaintiffs Was Proper.

In their Motion, Plaintiffs Leadership argues that 16 of the undersigned's 17 plaintiffs were not eligible for bellwether selection because they were "opted out" of track one consideration.

---

[6] CMO-2 expressly provides that counsel to individual plaintiffs, whether or not in the leadership group, "shall continue to be responsible for each individual plaintiff's case." [D.E. 10] 10.

[7] Unlike the government's prior selections, all of the undersigned's 17 plaintiffs filed short form complaints prior to the November 6 deadline in accordance with the CMO thus making them eligible for selection.

While it may be true that these cases were indeed temporarily opted out under false pretenses, as previously indicated above, the plaintiffs were also undeniably *opted back in* for track one discovery/bellwether consideration prior to the December 6 selection deadline. There is no rule or order precluding the undersigned from opting these cases back in for consideration prior to that deadline. Therefore, these cases were fair game for both sides to pick.

Leadership points out the fact that "there is no process for rescinding such an opt out" in CMO 2. While that may be true, the lack of a defined process for taking legitimate, necessary action on behalf of one's clients is not grounds to sanction or delegitimize such conduct. Nothing in the order precludes counsel from opting cases back in based on changed circumstances, particularly the circumstances described herein. Indeed, the undersigned's actions are no different than the PLG opting to file amended short form complaints after that same deadline, which the PLG deemed to be entirely proper and complaint with CMO-2.

In sum, nothing in CMO-2 or any other order by this Court prevents a plaintiff from opting back in for discovery or bellwether consideration prior to the track one selection deadline. By forcing these 56 individual plaintiffs to remain indefinitely "opted out" of discovery and bellwether consideration, the Court would be stripping the undersigned of his authority and obligation to zealously represent his individual clients. More importantly, it would deprive 16 injured individuals of the chance of participating in the litigation process, for no reason other than the fact that they are not represented by a law firm on the PLG or one of the committees.

II. **Leadership's Attack on the Undersigned's Character and Reputation Is Unnecessary and Unfounded.**

Rather than limit their motion to a dispute over the timing of counsel's "opt in" email, Leadership then takes the additional, unnecessary step of visibly attacking one of its own allied

- 6 -
Case 7:23-cv-00897-RJ   Document 80   Filed 12/13/23   Page 6 of 13

counsels – the sole owner of a small plaintiffs' law firm in Alabama.[8] "Even where the stakes are high, counsel should avoid unnecessary contentiousness and limit the controversy to material issues genuinely in dispute." (Manual for Complex Litigation, Fourth, p. 23).

In their Motion, Leadership refers to the undersigned counsel as "discourteous" and "uncivil" and refers to his actions as "destabilizing." By stooping this low, Leadership's behavior does absolutely nothing to further the interests of "all Plaintiffs" in this litigation as they were appointed by this Court to do, and their conduct seems entirely inappropriate for counsel tasked with such an important role in this historic litigation. Even though Leadership's argument has no purpose in this matter other than to harm the reputation of the undersigned and the undersigned's law firm, given the public nature of the attack and sheer size of this litigation, the undersigned feels it is necessary to respond to Leadership's baseless allegations.

In support of their argument that the undersigned is "discourteous" and "uncivil," Leadership cites two examples: (1) a private email sent by the undersigned to another plaintiffs' attorney (Elliot Abrams) expressing disappointment in the discovery/bellwether selection process; and (2) a private email sent to the government's lead counsel (Adam Bains) truthfully answering a question posed by Mr. Bains regarding the timing of the undersigned's "opt-in" email.

1. <u>Plaintiff Counsel's Private Email to Allied Counsel Elliot Abrams.</u>

First, regarding the private email to allied counsel Mr. Abrams, the undersigned strongly regrets the use of profanity when telling Mr. Abrams "don't fucking call me any more asking for favors" – a regret the undersigned has apologized for at least 3 times now.[9] That said, there is

---

[8] Although the undersigned lives in Alabama, the undersigned has North Carolina roots, and this litigation is of utmost importance to the undersigned and the over 500 Marines and their families that he helps represent in this litigation.

nothing "discourteous" or "uncivil" about the legitimate concerns being expressed by the undersigned in this email. When put in the proper context, I am confident this Court would find the undersigned's frustration was well-founded.[10]

As stated in the email attached as Exhibit E to Leadership's motion, the undersigned was upset about feeling misled and misinformed by Mr. Abrams. Specifically, the undersigned felt that Mr. Abrams and other members associated with Leadership had misrepresented to the undersigned during the discovery/bellwether selection process which cases should or should not be opted in for track one consideration. The email notes the undersigned was told by Mr. Abrams to "play ball" with Leadership which the undersigned felt would give the undersigned's clients the best chance to partake in the discovery/bellwether process.

This behavior, coupled with the disproportionate representation in Leadership vs. non-Leadership represented plaintiffs in plaintiff-picked cases (as previously described above), is what led to the undersigned's email to Mr. Abrams.

In short, although the profane language used in undersigned's email to Mr. Abrams was admittedly inappropriate, the underlying concerns expressed in that email were legitimate and intended purely as advocation for the undersigned's clients who the undersigned felt were treated unfairly and snubbed by the committee.

2. <u>Undersigned Counsel's Email to Adam Bains.</u>

The second piece of evidence cited by Leadership in support of the reputational attack against the undersigned is an email sent by the undersigned to Adam Bain. In that email, the

---

[9] Copies of the undersigned's multiple apologetic emails are collectively attached as <u>Exhibit 3</u>. In addition, the undersigned texted Mr. Abrams apologizing for the profane language.

[10] "Perceptions of the limits of legitimate advocacy differ." (Manual for Complex Litigation, Fourth, p. 15).

- 8 -
Case 7:23-cv-00897-RJ   Document 80   Filed 12/13/23   Page 8 of 13

undersigned was responding to an email from Mr. Bain, in which Mr. Bain asked in relevant part: "May we ask why we did not receive your decision to rescind your clients' opt-out until shortly after the Track 1 selections had been filed on the docket?" In response to Mr. Bain's question, the undersigned explained the truthful basis as to why the opt-out notice was rescinded, which was the undersigned's belief that the number of track one picks had recently been increased, the recent motion by the government seeking to strike the right to a jury trial, and the undeniable fact that an "overwhelming number of the cases picked by the Plaintiffs (45 out of 50) were represented by law firms from the Plaintiffs' executive and leadership committees."

Leadership apparently takes issue with the third reason offered to Mr. Bain – i.e., that 45 of the 50 plaintiff-pick cases were represented by law firms on the Plaintiffs committees. In their motion, Leadership describes this as a "public attack on the PLG's strategic decision-making process to the Plaintiffs' adversary." Leadership further claims this one private email somehow threatens to "destabilize" this entire nation-wide litigation.

First of all, there is nothing "strategic" about Leadership's bias in selecting their own clients over clients represented by non-Leadership firms. A principal goal of the bellwether process is to select plaintiffs "who can truly be representative of the whole mass of plaintiffs in the MDL." *In re FEMA Trailer Formaldahyde Prod. Liab. Litig.,* 628 F.3d 157 (5th Cir. 2010). The only thing that matters is that whichever plaintiffs are ultimately selected are the most "representative," as all 17 of the undersigned's plaintiffs are. It does not make a difference what law firm represents the plaintiffs — or if they're even represented by a law firm at all. And any so-called "strategy" that suggests otherwise runs contrary to this principal goal of the bellwether process.

Second, to the extent this was some sort of "strategic" plan by Leadership, the undersigned was never informed of this so-called "strategy." In fact, the undersigned was told just the opposite

- 9 -
Case 7:23-cv-00897-RJ   Document 80   Filed 12/13/23   Page 9 of 13

– namely that his firm's clients would receive fair and equal consideration for bellwether selection as those represented by firms on Leadership and the committee. Also, the undersigned figured out the obvious bias in the selection on his own by reviewing publicly filed documents (short form complaints of selected cases). In other words, to portray the undersigned as some sort of secret-teller is simply untrue. Finally, to the extent exposing this apparent bias somehow "destabilizes" this litigation, perhaps such an adjustment is necessary to ensure that the interests of *all plaintiffs* are being fairly considered and advanced in this litigation and not just the PLG's.

### III. Counsel's Ongoing Efforts to Work Cooperatively with Leadership.

The undersigned recognizes the "need to communicate constructively and civilly with one another and attempt to resolve disputes informally as often as possible." This is precisely why the undersigned has reached out to the Leadership and Mr. Bell on numerous occasions to resolve this situation – both before and after the 17 cases were picked. *See e.g.*, Exhibits 1 and 3.

Yet, despite these efforts, the undersigned has been met with silence by both Leadership and Mr. Bell. The only person who has responded to the undersigned's sincere efforts has been Mr. Abrams, who accepted the undersigned's apology for the use of profanity.

Even now, after Leadership has chosen to publicly attack the undersigned's character and reputation with false accusations and insults, the undersigned remains willing and ready to work with Leadership toward the common goal of getting justice for the many Marines and their families who were harmed or killed by the toxic water at Camp Lejeune.

### IV. This Court Should Not Impose Sanctions as Sanctions Are Not Warranted.

Immediately after the government's filing of its revised track one selections, the undersigned counsel informed the 17 plaintiffs of the news to which they responded with encouragement, optimism, and renewed faith in the discovery/bellwether process. These plaintiffs

- 10 -
Case 7:23-cv-00897-RJ   Document 80   Filed 12/13/23   Page 10 of 13

are now in the process of receiving and submitting the Plaintiffs Discovery Pool Profile Forms and Medical Authorizations. The undersigned counsel also began making other preparations such as expedited record requests, associating trial counsel, and the beginning stages of case-specific expert selection.

Although captioned as a "Motion to Enforce CMO 2," Leadership's Motion is effectively a motion to sanction the undersigned counsel and the undersigned counsel's clients. If granted by this Court, the PLG's Motion would serve no purpose other than to unfairly punish plaintiffs represented by the undersigned's law firm for the undersigned's use of profanity and candor in private emails. The undersigned maintains that such plaintiffs were properly selected by the government to participate in the track one discovery/bellwether process and are equally as deserving as those represented by the leaders of this litigation.

Sanctions are a "last resort" and, if imposed, "the court should explain on the record or in an order the basis and purpose of its action." (Manual for Complex Litigation, Fourth, p. 15). Also, "[t]here is normally no need to explain a denial of sanctions." (Manual for Complex Litigation, Fourth, p. 22) (citing Fed. R. Civ. P. 11 committee note).

Finally, although there is no legitimate reason to sanction the undersigned or the undersigned's clients, to the extent the Court is inclined to agree with Leadership's position and sanction the undersigned by striking the government's legitimate picks, the undersigned respectfully requests an in-person hearing on this matter.[11]

This 13th day of December, 2023.

---

[11] "The assessment of sanctions should be preceded by notice and an opportunity to be heard." (Manual for Complex Litigation, Fourth, p. 21).

Respectfully submitted,

/s/ *James Z. Foster*
James Z. Foster
North Carolina Bar No. 60197
**FOSTER LAW LLC**
1201 W. Peachtree St. NW, Ste 2300
Atlanta, GA 30309
Telephone: (404) 800-0050
Fax: (404) 493-2322
james@foster-law.com

*Counsel for Non-Leadership Plaintiffs*

**CERTIFICATE OF SERVICE**

I, James Z. Foster, hereby certify that the foregoing document was electronically filed on the Court's CM/ECF system on this date, and that all counsel of record will be served with notice of the said filing via the CM/ECF system.

This 13th day of December, 2023.

/s/ *James Z. Foster*
James Z. Foster
North Carolina Bar No. 60197