# EXHIBIT 4

Plaintiffs' Discovery Deficiency Letter to Defendant of November 3, 2023



November 3, 2023

**Via Email**
Adam Bain
Senior Trial Counsel, Torts Branch
Environmental Tort Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washinton, D.C. 20044
Adam.Bain@usdoj.gov

**Re:** ***In re* Camp Lejeune Water Litigation**

Dear Adam:

We received Defendant United States of America's ("Defendant") Responses to Plaintiffs' Corrected First Request for Production of Documents (the "Responses") on October 30, 2023. Following a thorough review, Plaintiffs' Leadership ("Plaintiffs") concluded that Defendant's Responses were clearly incomplete and deficient in several respects. By way of example, Defendant asserted non-specific "boilerplate" objections to ***every*** request for production, Defendant repeatedly asserted meritless privilege objections, and in many instances, Defendant stated that it would produce responsive information only at some indefinite time before "the completion of fact discovery."

In light of these deficiencies, we held two lengthy videoconferences intended to address Plaintiffs' concerns with Defendant's Responses November 1 and 2, 2023 (the "meetings"), and reviewed each request and response individually to make sure we all understood each others positions or clarify where needed. In addition to myself, present during the meetings on behalf of Plaintiffs was Kevin Dean, Zina Bash and Jim Roberts. Present on Defendant's behalf, in addition to yourself, was Patrick Ryan and several additional lawyers. The purpose of this letter is to memorialize our said meetings and further describe the deficiencies with Defendant's Responses.

**The Parties' Discussion of the Requests for Production During the Meetings[1]**

[1] Several of Plaintiffs' Requests for Production sought ESI. As discussed during the meetings, the Court has not yet entered the Joint Proposed Protocol for Document Collection and Production, which included a proposed ESI protocol (the "ESI Protocol"). [D.E. 32] Therefore, Plaintiffs do not presently contend that Defendant's Responses failed to produce ESI.

**Request for Production No. 1**: In this request for production, Plaintiffs requested the production of all electronically stored information ("ESI") possessed by the Agency for Toxic Substances and Disease Registry ("ATSDR"), including but not limited to six separate "data sources" specifically identified in Request for Production No. 1. During the meetings, Plaintiffs agreed to limit the scope of Request for Production No. 1 to the production of the entirety of the said six separate "databases." In response, Defendant stated that it had some relevancy objections to producing the entirety of the 6 "databases", but others may be produced in their (subject to a few final authorizations expected by today or early next week) entirety (i.e. "housing data").

As you know, however, on certain other databases, the DOJ's position is that it would produce data within the six "data sources" only where the data is related specifically to Camp Lejeune. For several reasons, this limitation is unacceptable. For example, the ATSDR's studies of Camp Lejeune included a comparison group from Camp Pendleton. As you know, the ATSDR's conclusions relied significantly upon a comparison of the rates of certain diseases or illnesses at Camp Lejeune and Camp Pendleton. Clearly, such data from Camp Pendleton would be relevant to causation issues in this Camp Lejeune Justice Act litigation. Indeed, "[r]elevancy under [Rule 26(b)(1)] has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Cohen v. Norcold, Inc.*, No. 5:20-CV-170, 2022 U.S. Dist. LEXIS 216917, at *8 (E.D.N.C. Dec. 1, 2022).

For these reasons and others, we ask that Defendant produce ***all*** data within the six "databases" specifically identified in Request for Production No. 1.

**Request for Production No. 2**: In this request for production, we requested that Defendant produce the digitized muster rolls spanning the period from 1940 to 1958 which were created during the partnership between the National Archives and Ancestry.com. During the meetings, Defendant indicated that its Response included a URL link at which all of the requested digitized muster rolls could be accessed, except for records generated from 1953 to 1957. Defendant also stated that it is working with Ancestry.com to obtain the missing muster rolls from 1953 to 1957 and that the said missing muster rolls will be produced upon receipt.

**Request for Production No. 3**: In this request for production, we requested the digitized muster rolls spanning from the 1950s to 1971 which were created by the United States Marine Corps pursuant to a contract from 2013 to December 2015. During the meetings, Defendant stated that the license to these digitized muster rolls has expired and therefore the digital records are presently unavailable. However, Defendant indicated that Plaintiffs could inspect the physical muster rolls.

Defendant's position is unacceptable. As you know, these muster rolls comprise approximately 61 million pages, and therefore, production of the digital files is significantly more practical and cost-effective. We ask that Defendant promptly work through this licensing issue so that the digital files can be produced, and identify the vendor and their contact information, for which the license issue exists. If Defendant cannot resolve these licensing issues and promptly produce the digital files, we ask that

Defendant provide us with sufficient information about the third-party custodian of the files and the license agreement so that Plaintiffs can seek a court order compelling production of the files from the third party.

**Request for Production No. 4:** In this request for production, Plaintiffs sought all documents and data previously produced by Defendant in the matter styled as *In re Camp Lejeune, North Carolina Water Contamination Litigation*, MDL No. 2218 (the "preceding MDL"). After receipt of Plaintiffs' above-referenced discovery deficiency letter, Defendant produced four categories of documents in response Request for Production No. 4.[1] Subsequently, on November 1, 2023, Defendant produced the privilege logs which it previously produced with these same documents during the above-referenced preceding MDL.

During the meeting, Defendant confirmed that it has produced all documents responsive to Request for Production No. 4, with exception to those documents specifically identified on the said privilege logs which were generated during the preceding MDL. As discussed in more detail below, we are concerned that Defendant's privilege logs failed to comply with the Fed. R. Civ. P. 26(b)(5)(A), and we are furthermore concerned that Defendant's assertions of privilege are meritless.

**Request for Production No. 5:** In this request for production, we requested all deposition transcripts from all prior civil actions involving allegations of injury due to exposure to contaminated water at Camp Lejeune. After receipt of Plaintiffs' above-referenced discovery deficiency letter, Defendant produced depositions transcripts from certain fact witnesses and Rule 30(b)(6) witnesses.[2] However, during the meetings, Defendant confirmed that it withheld the deposition transcripts from individual plaintiffs.

Defendant's unilateral refusal to produce the depositions of individual plaintiffs in prior Camp Lejeune litigation clearly fails to meet the requirements of the Federal Rules of Civil Procedure. These individuals would be fact witnesses who possess, or might possess, relevant information or evidence. *See Mainstreet Collection Inc. v. Kirkland's Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). To the extent that Defendant withheld these depositions on the basis of privacy concerns, we note that the Court entered a Stipulated Protective Order on October 30, 2023. [D.E. 36] Accordingly, there is no basis for Defendant's refusal to produce these individual plaintiff deposition transcripts.

During the meeting, you agreed to discuss these issues internally and follow up with Defendant's position. We ask that you promptly produce these transcripts.

---

[1] The bates numbers for these four categories of documents are GAO 00001-06518; ATSDR 01 06886-00001; USMC01 0000-1-00009; USMC02 00001-00093; USMC03 00001-00069; and USMC04 00001-00034.

[2] The bates numbers for these transcripts are CLDEP0000000001-000001942.

**Request for Production No. 6:** In this request for production, we sought all written or recorded witness statements in the possession of Defendant from all prior civil actions involving allegations of injury due to exposure to contaminated water at Camp Lejeune. After receipt of Plaintiffs' above-referenced discovery deficiency letter, Defendant produced the expert reports and declarations previously produced by Defendant in prior Camp Lejeune litigation.[3]

During the meetings, Plaintiffs asked for Defendant to confirm that it has produced all written or recorded witness statements. In response, Defendant was clear that its production included only the expert reports and declarations produced in prior Camp Lejeune civil actions. Defendant stated that it was "not aware" that other statements exist, but it is clear that Defendant cannot actually confirm that such additional statements do not exist. Such statements could include typewritten reports, handwritten reports, video statements, audio statements, or other statements which are not expert reports or declarations.

We ask that Defendant conduct a diligent search for responsive written or recorded statements, produce the statements revealed by Defendant's search, and confirm that all statements in Defendant's possession, custody or control have been produced.

**Request for Production No. 7:** In this request, Plaintiffs requested all documents and ESI contained in the Camp Lejeune Water document database known as the "CLW" database. During the meetings, Defendant promised that the contents of the CLW database, with exception of those documents/files appearing on the above-referenced privilege logs, would be produced "next week" (*i.e.*, the week of November 5, 2023). The deficiencies with the privilege logs are discussed below. We look forward to receiving the CLW documents promised by Defendant next week.

**Request for Production No. 8:** In this request, we sought unredacted copies of all documents and ESI relied upon by or in the possession, custody, or control of the ATSDR related to any publication, report or study concerning water contamination issues at Camp Lejeune. During the meetings, Defendant stated that all responsive documents and information are electronic and that no hardcopies exist. Defendant further stated that the ESI Protocol applies to this request for production, and therefore, Defendant stated that it will not produce any responsive documents until the ESI Protocol is approved by the Court.

Defendant is incorrect that the ESI Protocol governs Request for Production No. 8. As discussed, the ESI Protocol involves a process of identifying data custodians, negotiating search terms, and conducting searches for relevant data. This process is irrelevant where, as here, Plaintiffs seek ***all*** responsive documents and data as opposed to merely the data captured by unique search terms. Therefore, we ask that Defendant immediately produce the responsive documents and ESI.

---

[3] The bates numbers for these expert reports and declarations are CLDEP000001943-000002630.

**Request for Production No. 9:** In this request, we requested that Defendant produce unredacted copies of all documents and ESI in the possession, custody, or control of the Naval Archives of the Department of the Navy concerning all Camp Lejeune related housing records or other servicemember records for servicemembers at Camp Lejeune from August 1, 1953 to December 31, 1987. During the meetings, Defendant stated that it is working with a "vendor" to convert these files into a text-searchable format, and that the responsive files will be produced next week (*i.e.*, the week of November 5, 2023). Kevin also identified an issue to you as it concerns ATSDR documents in a file that were not responsive to the request which you acknowledge and stated would be addressed and corrected if needed.

Defendant also stated that it reserves the right to withhold certain documents on the basis of privilege. We are deeply skeptical that any privilege could apply to these documents, but if Defendant withholds any documents, we ask that Defendant supply a detailed privilege log which complies with Fed. R. Civ. P. 26(b)(5)(A). *See, e.g.*, *Johnson v. Ford Motor Co.*, 309 F.R.D. 226 (S.D.W.Va. 2015) (setting forth the requirements of a privilege log).

**Request for Production No. 10:** In this request, we sought unredacted copies of all documents and ESI in the possession, custody, or control of the Department of the Navy related to the Navy's underground storage tank ("UST") program records, including the contents of the UST electronic portal relating to Camp Lejeune. During the meetings, Defendant stated that the responsive information is in electronic format, and therefore, Defendant stated that it cannot produce the responsive information until the ESI Protocol is approved by the Court.

Defendant is incorrect that the ESI Protocol governs Request for Production No. 10. As discussed above (*see* Request for Production No. 8), the ESI Protocol does not apply where, as here, Plaintiffs seek ***all*** responsive documents and data as opposed to merely the data captured by unique search terms. Therefore, we ask that Defendant immediately produce the responsive documents and ESI.

**Request for Production No. 11:** During the meeting, Plaintiffs agreed that Request for Production No. 11, as phrased, was arguably overbroad. Therefore, Plaintiffs agreed to limit the scope of this request as follows: we ask that Defendant produce all documents and ESI which set forth the guidelines, criteria, standards, or processes applied by the United States Department of Veterans Affair ("VA") when awarding disability benefits claims related to Camp Lejeune and arising during the period of August 1, 1953 to December 31, 1987. To be clear, we are not requesting that Defendant's response include information or decisions about specific VA benefits claimants. Please promptly produce all materials responsive to this revised request.

**Request for Production No. 12:** Plaintiffs withdrew Request for Production No. 12 without prejudice to propound the same request at a later time.

**Request for Production No. 13:** In this request, we requested that Defendant produce all unredacted copies of all documents and ESI in the possession, custody, or control

control of the National Research Council ("NRC") with regard to any publications, reports, or studies concerning water contamination at Camp Lejeune, including drafts. During the meetings, Plaintiffs clarified that this request is intended to obtain publications, reports, studies, and other such materials related generally to water contamination at Camp Lejeune and that Plaintiffs are not seeking any documents which are specifically related to any certain person.

In response, Defendant stated during the meetings that the NRC is not a governmental entity, and therefore, responsive documents are not within the possession of Defendant. This position is legally untenable because, while NRC may not be a governmental entity, the documents were generated by NRC pursuant to a contract with Defendant, and Defendant thus likely has a legal right to the materials. As you know, the Federal Rules of Civil Procedure require production of the materials "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "To determine whether documents belonging to a non-party are in the possession, custody, or control of a party, this court has utilized a legal-right-to-control test." *inVentiv Health Consulting, Inc. v. French*, No. 5:18-CV-295, 2020 U.S. Dist. LEXIS 24352, at *10 (E.D.N.C. Feb. 12, 2020). "Courts examine the degree of authority the responding party possesses over the non-party." *Id.*

Since the NRC possesses the responsive documents pursuant to a contract with Defendant, we believe it likely that Defendant has a legal right to obtain the documents from the NRC. Therefore, we ask that Defendant promptly request all responsive documents from the NRC and produce the same. If Defendant cannot obtain the responsive documents from the NRC, please let us know, and we will issue a subpoena and/or seek intervention from the court.

**Request for Production No. 14:** In this request, we sought unredacted copies of all documents and ESI in the possession, custody, or control of the Government Accountability Office ("GAO") with regard to any report or study concerning water contamination at Camp Lejeune. During the meetings, Plaintiffs clarified that this request is intended to obtain publications, reports, studies and other such materials related generally to water contamination at Camp Lejeune and that Plaintiffs are not seeking any documents which are specifically related to any certain person. Please promptly produce the requested documents.

**Request for Production No. 15:** In this request, we requested that Defendant produce unredacted copies of all documents and ESI in the possession, custody, or control of the Environmental Production Agency ("EPA") related to any publications, reports, or studies concerning water contamination at Camp Lejeune, including drafts. During the meetings, Plaintiffs clarified that this request is intended to obtain publications, reports, studies, and other such materials related generally to water contamination at Camp Lejeune and that Plaintiffs are not seeking any documents which are specifically related to any certain person. Please promptly produce the requested documents.

**Request for Production No. 16:** In this request, Plaintiffs sought all documents and ESI in the possession, custody, or control of the Department of the Navy related to third-party vendors or consultants that performed or were contracted to perform work related to water contamination issues at Camp Lejeune, including drafts. After receipt of Plaintiffs' above-referenced discovery deficiency letter, Defendant produced certain expert reports and declarations which are responsive to Request for Production No. 16.[4]

However, Plaintiffs expressed concern that Defendant's relevant production mostly involved the reports of Defendant's retained testifying expert witnesses, and Plaintiffs emphasized that this request, as written, captures ***any*** vendor or consultant contracted to perform work related to water contamination at Camp Lejeune – irrespective of whether the consultant was subsequently designated by Defendant as a testifying expert witness. Therefore, Plaintiffs asked that Defendant conduct a diligent search for responsive materials and supplement accordingly. Defendant agreed to make inquiries concerning whether any responsive documents have not been produced.

**Request for Production No. 17:** In this request, we requested unredacted copies of all documents and ESI in the possession, custody, or control of LANTDIV (*i.e.*, the Atlantic Division Naval Facilities Engineering Command) relating to any work, investigation, research, discussion correspondence, memos, or documents of any form regarding water contamination issues at Camp Lejeune. During the meetings, Defendant stated that the majority of the responsive documents are housed in a garage which is available for an in-person inspection. However, Defendant indicated that one box of responsive documents is being scanned and will be produced electronically.

**Request for Production Nos. 18, 19 & 20:** During the meetings, Plaintiffs and Defendant agreed that these requests are not yet ripe for discussion. Therefore, the parties agreed to address these requests at a later time.

**Privilege Logs**

On November 1, 2023, Defendant produced the privilege logs which it previously produced during the above-referenced preceding MDL. During the meetings, Plaintiffs expressed concern that these privilege logs fail to adhere to the Federal Rules of Civil Procedure. As you know, parties withholding information on the basis of a privilege must meet certain requirements, including the following:

> Procedurally, when a party withholds information from discovery on the basis of attorney-client privilege or the work-product protection, the party is required to: (1) "expressly make the claim;" and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will

[4] The bates numbers for these expert reports and declarations are CLDEP000001943-000002630.

> enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. A party's conclusory assertion that a document is privileged is inadequate to meet the burden imposed by Rule 26(b)(5)(A).

*Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 232 (S.D.W.Va. 2015) (citations omitted).

Defendant's privilege logs fall far short of these rules. In fact, Defendant's privilege logs fail to identify with specificity the basis for any privilege. Furthermore, Defendant's privilege logs cite relevancy and other non-privilege objections as a basis for withholding certain documents.

We ask that Defendant supplement its document production within twenty days with revised privilege logs which comply with Fed. R. Civ. P. 26(b)(5)(A).

**Meritless Privilege Objections**

In the Responses, Defendant asserted several meritless privilege objections, and Defendant withheld numerous documents on the basis for these privilege objections.

For example, Defendant withheld documents on the basis of the Privacy Act. *See* Request for Production Nos. 1, 11 & 20. As you know, a Stipulated Protective Order was entered by the Court on October 30, 2023. [D.E. 36] Accordingly, there is no basis to withhold documents on the basis of any privacy.

Further, Defendant withheld documents on the basis of the "deliberative process privilege." *See* Request for Production Nos. 1, 6, 7, 8, & 12. For a number of reasons, the deliberative process privilege is inapplicable. "The deliberative process privilege is narrowly construed," and "the initial burden of establishing the applicability of the privilege is on the government." *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D.Wa. 2000). This privilege protects only "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Heyer v. U.S. Bureau of Prisons*, No. 5:11-CT-3118, 2014 U.S. Dist. LEXIS 127908, at *6 (E.D.N.C. Sept. 12, 2014). It is difficult to image that the water contamination at Camp Lejeune could be within the scope of the development of "governmental decisions and policies." *Id.* Moreover, Defendant has failed to "provide precise and certain reasons for preserving the confidentiality of designated material, and therefore, Defendant failed to "comply with formal procedures necessary to invoke the" deliberative process privilege. *Greenpeace*, 198 F.R.D. at 543. During the meetings, Defendant indicated that it was actively evaluating whether it would continue to assert the deliberative process privilege.

Defendant's assertions of privilege lack merit. We ask that Defendant supplement its document production within twenty days to produce all documents withhold on the basis of the Privacy Act, the deliberative process privilege, the Speech and Debate Clause of the U.S. Constitution, and other meritless assertions of privilege.

## Boilerplate Objections

Defendant's Responses consisted of rote, boilerplate objections to literally ***every*** request for production. Defendant completely failed to provide any specific factual or legal basis for any of its laundry list of standard objections. Without specificity, neither Plaintiffs nor the Court can evaluate the merits of Defendant's objections. In fact, under applicable case law, Defendant's rote, boilerplate objections may be waived. *See, e.g.*, *Daniels v. Hyster-Yale Grp., Inc.*, No. 5:19-CV-531, 2020 U.S. Dist. LEXIS 83421, at *13-14 (E.D.N.C. May 11, 2020) ("This repeated use of a boilerplate objection with no explanation about why [defendant] believed an interrogatory or request to be objectionable violates the Federal Rules' specificity requirement and leads to a waiver of the objections.").

Within twenty days, we ask that Defendant supplement its Responses to add the specific grounds for each objection.

## ESI AGREED PRODUCTION DEFICIENCIES

**At the end of the call, it was brought to your attention as it concerns a noted issue with the Defendant's production as it concerns compliance with our agreed upon ESI protocols that have been submitted to the Court for approval and entering of that agreed Order. I believe Kevin also email you those bullet-pointed issues, but are as follows:**

- Documents were produced in a manner that does not comply with Paragraph 2, specifically they did not contain the Opticon Image Cross Reference file.
- Production did not contain a Concordance Load File (see section d. of Paragraph 2).
- Majority of documents were not produced with extracted text files and were not OCR'd.
    - Documents that were produced with extracted text were not produced in a manner that can be ingested into an eDiscovery platform and are therefore erroneous to this production. (See section under paragraph 2 titled **Directory and folder structure.**) The production did not meet the directory and folder structure requirements.
- Paragraph 3 indicates the required metadata be produced. Since no Concordance load file was received, no metadata fields were produced.
- Paragraph 8 addresses encrypted files. The Government produced an encrypted file named "GAO 00001-06518.zip" which was not produced in an extracted, usable format.
- Paragraph 21 requires a text file be produced containing a summary of the data included in productions. This file was not produced.

**You indicated your team would look into and resolve, correct or re-produce and update us on these issues next week.**

**Timeline for Production**

Given the immense scope of this litigation, the Court has repeatedly emphasized the need to efficiently and expeditiously litigate Camp Lejeune Justice Act cases. For example, in Case Management Order No. 2, the Court expressed its expectation that "the Parties [] conduct discovery efficiently," and the Court established a series of appropriately aggressive discovery deadlines. [D.E. 23, at § XI] This aggressive schedule is necessary to effectively progress the Court's full docket of Camp Lejeune cases.

We were therefore deeply disappointed that Defendant's Responses were so incomplete and deficient. Further, we remain concerned that Defendant's Responses repeatedly promise document production only at some indefinite time before "the completion of fact discovery." This is unacceptable. It is not possible for Plaintiffs to conduct discovery if documents are not produced under a reasonable schedule, and certainly well before the deadline for fact discovery.

Therefore, we ask that Defendant supplement its Responses within twenty days to identify projected timeframes for the production of all categories of documents. During the meetings, you agreed to produce documents on a rolling basis, and we ask that Defendant's rolling document production be completed no later than December 29, 2023.

**Conclusion**

Adam, I am hopeful that we can work through these discovery issues in an effort to avoid seeking relief from the Court. Please accept this letter as our continued good faith attempt to work out our discovery differences without Court intervention pursuant to Local Rule 7.1(c)(2) of the Local Civil Rules of Practice and Procedure. Please make the supplementations requested in this letter within twenty days.

Regards,

BELL LEGAL GROUP

Ed Bell

J. Edward Bell, III

cc: Plaintiffs' Co-Lead Counsel

BELL LEGAL GROUP | 219 NORTH RIDGE STREET | GEORGETOWN, SC | 29440
office: 843.546.2408 | fax: 843.546.9604 | WWW.BELLLEGALGROUP.COM