# EXHIBIT 7

Defendant's Discovery Letter to Plaintiffs of
November 8, 2023



**U.S. Department of Justice**

Civil Division, Torts Branch
Environmental Torts

---

*Adam Bain, Senior Trial Counsel*
*Email: Adam.Bain@usdoj.gov*

<u>**VIA EMAIL**</u>                                                   November 8, 2023

Lead Counsel for Plaintiffs
& Co-Lead Counsel for Plaintiffs

      **Re:**    *Camp Lejeune Water Litigation – United States' Production of Documents*

Counsel:

This letter is (1) in response to your November 3, 2023, Letter, and (2) in response to your November 6, 2023, Letter. We will address each Request for Production propounded on September 28, 2023, Corrected Request for Production propounded on October 4, 2023, and issue raised in Plaintiffs' letters in turn below. While we disagree with certain characterizations in your letters about our ongoing discussions regarding discovery, we hope to clear up any confusion by providing additional explanation in this letter. We are happy to further discuss the United States' good faith efforts to produce the enormous amount documents and information requested by Plaintiffs. To be clear, Plaintiffs' Requests seek electronic and hardcopy information and documents, including historical documents, from multiple federal government agencies spanning decades in time.

**Request No. 1**: **Datasets held by ATSDR.** As discussed during our meet and confers on November 1, 2023, and November 2, 2023, and laid out in our November 4, 2023, letter, we understand Plaintiffs to be seeking DMDC datasets in ATSDR's possession in their entirety. The United States has asked ATSDR to produce these datasets as requested. The United States anticipates being able to produce the requested datasets this month on a rolling basis in the coming weeks and subject to the Protective Order for Confidential Information. The United States anticipates producing the requested Dataset No. 4 in ATSDR's possession first and then producing Datasets Nos. 1, 2, 3 and 5 after ATSDR provides the required notice to the federal agencies that "own" and provided the original datasets to ATSDR, including DMDC and USMC. ATSDR is also working to determine whether Dataset No. 6 remains in its possession.

**Request No. 2: Muster rolls from the 1940 to 1958.** The United States reiterates and incorporates by reference its statements set forth in its November 4, 2023, Letter with respect to Request No. 2. Regarding the Plaintiffs' November 3, 2023, Letter, the United States agrees that the Parties' discussed that the United States is continuing to work with NARA to have records generated from 1953-1957 requested and obtained from Ancestry.com and produced to Plaintiffs. Indeed, the United States arranged an informal meeting for NARA to explain to Plaintiffs certain information in its possession and procedures for processing records. That meeting took place today, November 8, 2023. The United States has also produced a link containing responsive records to Plaintiffs' Request No. 2.

**Request No. 3: Muster rolls from the 1950s to 1971.** The United States disagrees with the statements made with respect to Request No. 3 in Plaintiffs' November 3, 2023, and November 6, 2023, Letters, respectively. While there was brief discussion of a "licensing" issue during the Parties' meet and confer meeting on November 2, 2023, the Department of Justice did clarify in this meeting that it was continuing to work with the United States Marine Corps to determine accessibility of the historic legacy system that contains digitized muster rolls. To the extent there is any licensing issue, the United States will provide additional information. Furthermore, the United States did state in the Parties' November 2, 2023, meeting that records responsive to this Request are available in hard copy format, and the United States will permit the Plaintiffs to inspect and copy these documents at a mutually agreeable time.

**Request No. 4: MDL Production.** The United States disagrees with the Plaintiffs' assertion in its November 3, 2023, Letter that the privilege logs that were produced in prior litigation (bates label USPROD_0000000001-0000000017) fail to comply with Fed. R. Civ. P. 25(b)(5)(A) and that the privileges raised therein are meritless. We discuss this in further detail below.

As set forth in the United States' Response to Plaintiffs' Corrected First Request for Productions, and our November 4, 2023 Letter, the United States has produced the following document collections in response to Request No. 4: (1) documents collected by the Marine Corps and containing bate stamp numbers with the prefix CLW, (2) documents collected by the "Drinking Water Fact-Finding Panel for Camp Lejeune" for its report to the Commandant of the United States Marine Corps, (3) documents collected by the Government Accountability Office ("GAO") relating to the Camp Lejeune contamination- the password for such documents is "CampLejeune123", and (4) additional documents collected by client agencies and provided in Laura Jones v. United States, Civ. No. 1:11- cv-00771-JOF pursuant to Requests for Production in that case. These documents bear Bates stamp GAO 00001-06518; ATSDR01 00001 – 06886; USMC01 00001-00009.pdf; USMC02 00001-00093.pdf; USMC03 00001-00069.pdf; USMC04 00001-00034.pdf.

**Request No. 5: Deposition Transcripts.** As set forth in our November 4, 2023, Letter, the United States has withdrawn its relevance objection for deposition transcripts of all Plaintiffs. Accordingly, the United States has produced deposition transcripts of plaintiffs from all prior civil actions involving allegations of injury due to exposure to trichloroethylene ("TCE"), tetrachloroethylene ("PCE"), and/or benzene, at Camp Lejeune. These documents bear Bates stamp USPROD 0000000018-0000000719.

**Request No. 6: Written/Recorded Statements.** As set forth in our November 4, 2023, Letter, the United States has produced expert reports and declarations produced by the United States from all prior civil actions involving allegations of injury due to exposure to TCE, PCE, and/or benzene, at Camp Lejeune. These documents bear Bates stamp CLDEP000001943-000002630. You stated at the November 2, 2023, meeting that you were not seeking statements taken as part of investigations independent of the litigation.

**Request No. 7: CLW Database.** The United States will be producing documents responsive to this Request under separate cover today, November 8, 2023, the date of this Letter.

**Request No. 8:** As discussed during our meet and confers on November 1, 2023, and November 2, 2023, and laid out in our November 4, 2023, Letter, the United States agreed to discuss with ATSDR about the production of any existing hardcopy documents to the extent not already produced. The United States has raised this issue and continues to discuss with ATSDR. The United States will provide an update to Plaintiffs once it has more information about the existence and timing for production of any additional hardcopy documents.

To the extent this request is seeking electronically stored information (ESI), such as emails, memorandums, and other documents related to the requested datasets, this information is subject to the jointly proposed ESI protocol pending before the Court. The parties agreed to discuss the collection of ESI from ATSDR at a future meet and confer.

**Request No. 9: Housing records.** The United States reiterates and incorporates by reference its statements set forth in its November 4, 2023, Letter with respect to Request No. 9. Regarding the Plaintiffs' November 3, 2023, Letter, the United States agrees that the Parties' discussed that the United States is will produce the records contained within the Camp Lejeune Family Housing Card Database for the following locations: Berkley Manor, Courthouse Bay, Hospital Point, Knox Trailer Park, Midway Park, NRAS, Paradise Point, Rifle Range, Tarawa Terrace, and Watkins Village. It is anticipated these records will be produced this week.

Additionally, the United States has clarified and corrected all production issues identified by Kevin Dean in its November 4, 2023, Letter. Finally, to the extent any documents are withheld from production based on privilege, the United States will identify such documents on a privilege log.

**Request No. 10: Underground Storage Tank (UST) program records.** The United States reiterates and incorporates by reference its statements as set forth in its November 4, 2023, Letter with respect to Request No. 10. Regarding the timeline for production for this Request raised in Plaintiffs' November 6, 2023, Letter, we further address this issue in detail below.

Additionally, the United States disagrees with Plaintiffs' assertion that the ESI Protocol does not govern this Request. Notwithstanding Plaintiffs' request for all responsive documents and data, such documents remain as ESI and subject to the ESI Protocol pending before the Court. Nevertheless, the United States is consulting with the Marine Corps to determine whether these documents can be readily produced independently of the ESI protocol.

**Request No. 11: Veteran Affairs (VA) records, files, guidelines, and decisions.** The United States will continue to work with the VA to obtain records responsive to Request No. 11, as clarified in Plaintiffs' November 3, 2023, Letter.

**Request No. 12: Freedom of Information Act requests.** As set forth in Plaintiffs' November 3, 2023, Letter, the Plaintiffs agreed to withdraw this Request.

**Request No. 13: National Research Council (NRC) publications, reports or studies.** At this time, and without further information, the United States disagrees with Plaintiffs' blanket assertion that the "NRC possesses responsive documents pursuant to a contract with Defendant." In accordance with the Parties' discussion in its meet and confer meetings, the United States will investigate the extent of any contract between the NRC and the Department of the Navy for matters

related to contaminated water at Camp Lejeune and the United States' ability pursuant to those contracts to obtain NRC information. The United States will also investigate what information within the government's possession regarding the NRC work and produce that information. The United States has consulted with the NAS/NRC counsel, who reaffirmed the independence of the NRC and that the funding agencies are only entitled to the final report and not underlying documents produced as part of the NRC work.

**Request No. 14: Government Accountability Office (GAO) reports or studies:** In accordance with the Parties' discussions in their meet and confer meetings, and Plaintiffs' clarification of this Request in their November 3, 2023, Letter, the United States will continue to work with GAO to investigate responsive records that have not already been produced.

**Request No. 15: Environmental Protection Agency (EPA) publications, reports, or studies:** In accordance with the Parties' discussions in their meet and confer meetings, and Plaintiffs' clarification of this Request in their November 3, 2023, Letter, the United States will continue to work with EPA to investigate responsive records that have not already been produced.

**Request No. 16: Department of the Navy (DON) third party vendors.** The United States reiterates and incorporates by reference its statements set forth in its November 4, 2023, Letter with respect to Request No. 16. The United States reiterates that documents responsive to this Request are already publicly available as part of the DON's environmental restoration program, which the United States included in its Response to Plaintiffs' Corrected First Request for Production.

In accordance with the Parties' discussions in their meet and confer meetings, and Plaintiffs' clarification of this Request in their November 3, 2023, Letter, the United States will investigate whether there is additional information responsive to this request that is not publicly available and continue to work with the DON to obtain records in response to Request No. 16.

**Request No. 17: LANTDIV's (Atlantic Division Naval Facilities Engineering Command) Camp Lejeune documents.** In accordance with the Parties' discussions in their meet and confer meetings, and Plaintiffs' characterization of this Request in their November 3, 2023, Letter, the United States will permit the Plaintiffs to inspect and copy documents responsive to this Request at Naval Facilities Engineering Systems Command, Atlantic, Norfolk, VA, at a mutually agreeable time. The United States is also in the process of scanning one box of responsive documents and will produce such documents as they are received and reviewed for privilege. Documents being withheld for privilege will be identified on a privilege log.

**Request No. 18 – 20.** The Plaintiffs agreed to hold these Requests in abeyance at the present time given the timeline set forth in the Court's Case Management Order No. 2.

## Privilege Logs

Regarding the two privilege logs that were produced in prior litigation, bearing Bates stamp USPROD_0000000001-0000000017, the United States reiterates that it will contact individual federal agencies to determine whether the agency continues to assert the deliberative process privilege. The United States anticipates that some or all of those objections can be withdrawn,

and material produced. The United States will also withdraw relevancy objections asserted on the ATSDR privilege logs and produce that material.

Moreover, arguments over these privilege logs disregard the Case Management Order ("CMO") and Protective Order ("PO"), which explicitly state that these terms do not apply to prior requests and/or productions.[1] Both the CMO and PO provided a limited scope only to "this action" as defined in the current orders, further stating that the PO "applies only to disclosures, uses, and handling of confidential information occurring after the entry of this Protective Order."[2]

Furthermore, the Parties have agreed to meet and confer on alternative privilege logging. The CMO states that "parties agree that alternatives to document by document privilege and confidential logs presumptively meet the requirements of Rule 26(b)(5)."[3]

The Plaintiffs referenced Fourth Circuit law regarding the contents of a privilege log. The United States has reviewed the district court case that Plaintiffs cited and the ESI protocol and believe the Parties should engage in further discussions regarding privilege logs in connection with document and ESI production.

## Privilege Objections

Regarding the Privacy Act objections, the United States anticipates that some or all these specific objections will be withdrawn, and the corresponding material produced to Plaintiffs.

Plaintiffs further discuss deliberative process objections in Request for Production Nos. 1, 6, 7, 8 & 12. Specifically, Plaintiffs argue that "[i]t is difficult to image that the water contamination at Camp Lejeune could be within the scope of the development of 'governmental decisions and policies.'" The United States disagrees with this blanket assertion.

To qualify as protected from disclosure, [documents] must not only be deliberative, but also 'predecisional.'" *Heyer v. U.S. Bureau of Prisons*, No. 11-3118D, 2014 U.S. Dist. LEXIS 127908, 2014 WL 4545946, at *7 (E.D.N.C Sept 12, 2014) (quoting *Worsham v. U.S. Dep't of the Treasury*, No. ELH-12-2635, 2013 U.S. Dist. LEXIS 132644, 2013 WL 5274358, at *12 (D. Md. 17 Sept. 2013)). "Drafts, proposals, recommendations, and opinions regarding the policy in question can all fall under the deliberative umbrella." *Id.* (citing *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 371 (4th Cir. 2009)). "To qualify as predecisional, the document must have been prepared to assist In the arrival at a final decision. *Id.* (citing *Worsham*, 2013 U.S. Dist. LEXIS 132644, 2013 WL 5274538, at *12). Furthermore, documents are considered predecisional where they are created "[a]ntecedent to the adoption of an agency policy." *Id.* at *8 (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513, 395 U.S. App. D.C. 138 (D.C. Cir. 2011)). Given the breadth of your requests, there are likely documents requested that qualify for deliberative process privilege protection. However, we anticipate that the United States' assertion of this privilege, if made at all, will be limited based on agency considerations with respect to particular material subject to you have requested.

---

[1] *See* CMO page 3; Paragraphs 2(a) and 2(i) of the PO
[2] *Id.*
[3] *See* CMO page 8.

Plaintiffs' Requests for Production, specifically Requests Nos. 8, 13, 14, 16, and 17, call for the production of documents and ESI "including drafts." The United States has requested that the corresponding agencies initiate their processes and/or procedures to re-evaluate the necessity of the deliberative process objections with respect to drafts. The United States anticipates that some or all these specific objections will be withdrawn, and the corresponding material produced to Plaintiffs.

## **"Boilerplate" Objections**

The United States rejects the characterization by Plaintiffs that its responses are "rote" and "boilerplate," including the suggestion that "the Defendant has completely failed to provide any specific factual or legal basis for any of its laundry list of standard objections." All of the United States' Responses include not only the asserted objection(s), but detailed information concerning the basis for said objection(s). In addition, the United States has notified Plaintiffs that a number of these objections are currently being reassessed, likely resulting in the production of the requested documents.

Moreover, "[w]hen a party requests production of documents, [h]e must show good cause, which includes the elements of necessity and relevance." *Stanback v. Stanback*, 287 N.C. 448, 460, 215 S.E. 2d 30, 38-39 (1975). "[A] mere statement that an examination is material and necessary is not sufficient to support a production order." *Id.* at 461, 215 S.E. 2d at 39. "The purpose of this rule is to 'prevent litigants from engaging in mere fishing expeditions to discover evidence or using the rule for harassment purposes.'" *Williams v. State Farm Mut. Auto. Ins. Co.*, 67 N.C. App. 271, 273, 312 S.E. 2d 905, 907 (1984) (quoting *Stanback*, 287 N.C. 461, 215 S.E. 2d at 39).

Plaintiffs repeatedly requested "All ESI," "copies of all documents and ESI," and similar phrasings in their first set of Requests for Production. Plaintiffs have failed to state why these blanket requests for all documents and ESI are necessary and/or relevant to this litigation.

Plaintiffs' Leadership Group has met with the United States on two separate occasions, specific to these Responses, since the United States' responses to Plaintiffs' first set of Requests for Production were served on October 30th. These discussions have led to Plaintiffs' reassessment, and even withdrawal, of multiple Requests for Production. Plaintiffs' characterization of the United States' objections as "rote" or "boilerplate" ignores the efforts being taken to produce documents responsive to these requests, efforts that Plaintiffs are aware of and have agreed to.

## **Production and ESI Protocol**

Regarding the ESI Production issues raised in Plaintiffs' November 3, 2023 Letter, the United States stresses that the production of documents made on October 31, 2023, and November 6, 2023, respectively, were produced without a formal ESI Protocol entered by the Court and were made in the manner that such documents were maintained and stored by the United States. In an effort to produce documents to Plaintiffs as promptly as possible, the United States produced documents as they were kept in the normal course of business.

Even though the ESI Protocol Order has not been entered yet, the United States is reviewing the extent of which the produced documents contain the requested ESI. In this regard, the United States believes the Parties should engage in further discussions regarding this production.

## Timeline for Production

The United States rejects Plaintiffs' assertion that Defendant's Response to Plaintiffs' Corrected First Request for Productions were "incomplete and deficient." As the United States stated numerous times in its Responses, and in its meet and confer meetings with Plaintiffs, the United States will be producing responsive documents obtained from numerous federal agencies on a rolling basis, producing such documents as they are collected, processed, and reviewed for privilege. This production is typical for cases involving the breadth and scope of the documents sought in this Litigation. The United States will continue to produce documents in good faith as quickly as reasonably possible. The Federal Rules of Civil Procedure specifically allow the responding party to produce documents within a "reasonable time." Given the breadth of your requests and our experience with much narrower requests involving ESI in other mass tort litigations, producing the material you request on a rolling basis with the goal of completion of the production by the conclusion of fact discovery is reasonable, and we will not agree to any other artificial deadline.

## 30(b)(6) Notices

Regarding the 30(b)(6) Notices, the United States rejects the characterization by Plaintiffs that the United States agreed to provide dates before Thanksgiving for the USMC 30(b)(6) deposition. As set forth in our November 4, 2023, Letter, the United States anticipates that the USMC 30(b)(6) deposition taking place in November or December. As discussed, ATSDR and VA are working to identify a witness and dates for such a deposition and are making reasonable efforts to facilitate these depositions taking place before Thanksgiving as requested and to the extent schedules allow.

Should you have any questions or further comments regarding the foregoing, please do not hesitate to contact the undersigned.

Best Regards,

*/s/ Patrick J. Ryan*
ADAM BAIN
Senior Trial Counsel

PATRICK J. RYAN
JOSEPH B. TURNER
HAROON ANWAR
CINDY M. HURT
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch

Enclosures: As Stated
cc: Counsel of Record in *Camp Lejeune Water Litigation*

7