# EXHIBIT 14

Transcript of Status Conference Hearing
on October 30, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

IN RE:                          )
                                )
  CAMP LEJEUNE WATER LITIGATION )        Docket No.
                                )        7:23-CV-897
                                )
                                )


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MONDAY, OCTOBER 30, 2023
STATUS CONFERENCE HEARING
BEFORE THE HONORABLE:
RICHARD E. MYERS, II, CHIEF DISTRICT JUDGE
TERRENCE W. BOYLE, DISTRICT JUDGE
JAMES C. DEVER, III, DISTRICT JUDGE
ROBERT B. JONES, JR., MAGISTRATE JUDGE
In Greenville, N.C.


APPEARANCES:

On Behalf of the Plaintiffs:

J. Edward Bell, III, Zina Bash, James A. Roberts, III,
W. Michael Dowling, Mona Lisa Wallace, Elizabeth J.
Cabreser, Robin L. Greenwald, Hugh R. Overholt, A.
Charles Ellis

On Behalf of the Defendant:

J. Adam Bain, Bridget Bailey Lipscomb, Nathan Jisu Bu


JENNIFER C. CARROLL, RMR, CRR, CRC
Official Court Reporter
United States District Court
Raleigh, North Carolina
Stenotype with computer-aided transcription

```
 1              (Monday, October 30, 2023, at 11:03 a.m.)
 2                        P R O C E E D I N G S
 3                    JUDGE MYERS:  All right.  Good morning,
 4      everyone.  We're here today in -- for our first of what
 5      I believe will become multiple status conferences in the
 6      case of the Camp Lejeune Water Litigation.  I'll ask
 7      counsel who are here to just make your appearance for
 8      the record so we know who is here, and then we will --
 9      we'll start with the United States.
10                    MR. BAIN:  Your Honor, Adam Bain for the
11      United States.
12                    MS. LIPSCOMB:  Bridget Bailey Lipscomb for
13      the United States.
14                    MR. BU:  Nathan Bu for the United States.
15                    MR. BELL:  Good morning, Your Honor.  Edward
16      Bell for the plaintiffs.
17                    MS. BASH:  Zina Bash for the plaintiffs.
18                    MR. ROBERTS:  Good morning, Your Honor.  Jim
19      Roberts appearing on behalf of the plaintiffs.
20                    MR. DOWLING:  Good morning, Your Honor.
21      Mike Dowling on behalf of the plaintiffs as well.
22                    MS. WALLACE:  Good morning, Your Honor.
23      Mona Lisa Wallace for plaintiffs.
24                    MS. CABRESER:  Good morning, Your Honors.
25      Elizabeth Cabreser for plaintiffs.
```

| | | |
|---|---|---|
| 11:04:46 | 1 | MS. GREENWALD: Good morning, Your Honors. |
| 11:04:47 | 2 | Robin Greenwald for the plaintiffs. |
| 11:04:49 | 3 | MR. OVERHOLT: Good morning, Your Honor. |
| 11:04:50 | 4 | Hugh Overholt, liaison counsel. |
| 11:04:55 | 5 | MR. ELLIS: Good morning. Charles Ellis on |
| 11:04:57 | 6 | behalf of plaintiffs as liaison counsel. |
| 11:05:03 | 7 | JUDGE MYERS: All right. Well, this is -- |
| 11:05:06 | 8 | the status conference is to find out where we are. We |
| 11:05:11 | 9 | have multiple questions that need to approach -- I'm |
| 11:05:19 | 10 | speaking as Chief just for a moment. And I'll hold to |
| 11:05:22 | 11 | my colleagues to fully participate. We are here today |
| 11:05:25 | 12 | with Judge Jones, who is going to become our lead |
| 11:05:28 | 13 | discovery magistrate for the entire litigation, and we |
| 11:05:30 | 14 | thought it was important that he be with us because I |
| 11:05:34 | 15 | suspect that a significant amount of the time that is |
| 11:05:38 | 16 | actually spent -- with members of the bench will be |
| 11:05:40 | 17 | spent between you and Judge Jones trying to figure out |
| 11:05:43 | 18 | how best to proceed in this matter. |
| 11:05:47 | 19 | We're at the point now where we have |
| 11:05:49 | 20 | multiple standing orders that are designed to streamline |
| 11:05:53 | 21 | this litigation, hopefully move us forward. And we have |
| 11:06:01 | 22 | begun the process, it looks like, of making some offers |
| 11:06:04 | 23 | and the process of settling at least the first discovery |
| 11:06:10 | 24 | and participating in the Track One settlements that are |
| 11:06:13 | 25 | appropriate in this matter. |

| 11:06:15 | 1 | With that in mind, I'll start with just |
| 11:06:18 | 2 | asking where we stand in regards to what we believe are |
| 11:06:25 | 3 | the claims, what claims we think are going to be moving |
| 11:06:28 | 4 | from the Navy back to the Court, and how we're doing |
| 11:06:31 | 5 | initially regarding Track One for settlement, Track One |
| 11:06:38 | 6 | for litigation, how much do we think is going to move |
| 11:06:40 | 7 | out of settlement and back into litigation. As I've |
| 11:06:42 | 8 | been looking at the case filings, it looks like we have |
| 11:06:45 | 9 | less -- that's my principal area of concern. I'll ask |
| 11:06:49 | 10 | Judge Dever to sort of set for you -- the stage for you |
| 11:06:53 | 11 | about what he's thinking about and then I'll proceed to |
| 11:06:55 | 12 | Judge Boyle. |
| 11:06:59 | 13 | JUDGE DEVER: Sure. So, I mean, I have |
| 11:06:59 | 14 | questions just about -- I know under Case Management |
| 11:07:01 | 15 | Order No. 2, there was -- I think it's later. It might |
| 11:07:06 | 16 | be in about a week, the status of the discovery pool |
| 11:07:09 | 17 | profile form. So I would like to get an update on that |
| 11:07:11 | 18 | to see where y'all are. I appreciate all of the work |
| 11:07:14 | 19 | that's gone into getting us to this point. But that |
| 11:07:18 | 20 | would be a helpful piece of information. |
| 11:07:22 | 21 | It would appear that, at least on my |
| 11:07:26 | 22 | count -- and I stand ready to be corrected. I think |
| 11:07:29 | 23 | that there have been a total of 47 short-form complaints |
| 11:07:35 | 24 | filed. I know there's still time for those to be filed. |
| 11:07:39 | 25 | And I know lawyers often work to deadlines. And so if |

| | | |
|---|---|---|
| 11:07:42 | 1 | the deadline hasn't arisen yet, the lawyers think, *Well,* |
| 11:07:46 | 2 | *I've still got plenty of time.*  But I think it's |
| 11:07:48 | 3 | important for everybody to realize for us to get a |
| 11:07:54 | 4 | representative sample of jury verdicts, if the only |
| 11:08:00 | 5 | thing that get filed -- if there are only 47 short-form |
| 11:08:04 | 6 | complaints and they're all the best kinesis from the |
| 11:08:05 | 7 | plaintiff's perspective, I would completely understand |
| 11:08:09 | 8 | the Department of Justice saying these are not |
| 11:08:10 | 9 | representative verdicts, at whatever point we get |
| 11:08:13 | 10 | verdicts next year. |
| 11:08:14 | 11 | And so I just say that to y'all that I |
| 11:08:18 | 12 | realize there's still some time, but it's something to |
| 11:08:24 | 13 | consider.  Because I just think that's a litigation |
| 11:08:26 | 14 | reality of us going through this track system, which I |
| 11:08:30 | 15 | think makes perfect sense to do it, assuming that we |
| 11:08:37 | 16 | actually get some representative cases that actually get |
| 11:08:41 | 17 | filed so that each side, as sort of topic of settlement |
| 11:08:46 | 18 | is discussed, can say we think this actually is |
| 11:08:50 | 19 | representative.  Because if it's not, I mean, I think |
| 11:08:54 | 20 | the Department of Justice could, understandably, say |
| 11:08:56 | 21 | we'll try these cases for decades.  And that -- it would |
| 11:09:04 | 22 | certainly be, at some level, understandable, but it |
| 11:09:07 | 23 | would be a shame for people who actually are old, sick |
| 11:09:12 | 24 | Marines.  And so I would just hope that the lawyers |
| 11:09:19 | 25 | realize that.  And I think y'all do.  And again, I know |

| | | |
|---|---|---|
| 11:09:21 | 1 | there's still time. But that was what was kind of |
| 11:09:25 | 2 | striking to me. |
| 11:09:27 | 3 | And with that, I'll yield to Judge Boyle. |
| 11:09:32 | 4 | JUDGE BOYLE: Well, I don't have too much to |
| 11:09:33 | 5 | say. I'm appreciative very much of my colleagues. |
| 11:09:40 | 6 | Certainly Chief Judge Myers and Judge Dever taking the |
| 11:09:45 | 7 | laboring oar in the structure and management of all of |
| 11:09:49 | 8 | these cases. It's a daunting challenge. |
| 11:09:55 | 9 | I'm ready to go ahead and -- of course, |
| 11:09:57 | 10 | remember, that we all have our separate cases. So while |
| 11:10:01 | 11 | we're here together collectively, we have -- including |
| 11:10:09 | 12 | Judge Flanagan, we have 25 percent of the filed cases |
| 11:10:14 | 13 | each, or just about that. And so I'm here ready and |
| 11:10:21 | 14 | willing and able, hopefully, to try cases when the time |
| 11:10:25 | 15 | comes. And that time will come sooner rather than |
| 11:10:32 | 16 | later. I think that from my perspective some insight |
| 11:10:36 | 17 | into what the cases are really worth was a valuable -- |
| 11:10:39 | 18 | will be a valuable tool. And that's where I stand. |
| 11:10:49 | 19 | JUDGE MYERS: Judge Jones is going to be |
| 11:10:50 | 20 | our, as I said, lead magistrate for discovery matters. |
| 11:10:54 | 21 | Some of the things I think that are going to fairly be |
| 11:10:56 | 22 | on the table pretty quickly are: What's being |
| 11:11:00 | 23 | stipulated to? What do we agree? Do we have general |
| 11:11:03 | 24 | causation or specific causations as to which diseases? |
| 11:11:07 | 25 | Are there any diseases the United States is willing to |

11:11:09  1   stipulate as meeting general causation, and we can move

11:11:13  2   to specific causation and sort those out.  The

11:11:17  3   settlement proposal that we all read makes no said

11:11:25  4   promises.  But there are different tracks with different

11:11:28  5   diseases.

11:11:29  6          I'll tell you in my own cases -- and I'll

11:11:31  7   forecast this -- I'm interested in the possibility of

11:11:36  8   bifurcating discovery, doing early discovery on the

11:11:39  9   non-Track One diseases.  To the extent it's necessary on

11:11:41  10  the Track One diseases on causation, Daubert, getting

11:11:45  11  those set so that we can know where we are and if we're

11:11:47  12  moving forward, before we spend a lot of attorney time

11:11:52  13  and a lot of plaintiff time as well as the Government's

11:11:56  14  time on individualized cases.  If we can't get through

11:11:59  15  the science first -- I think going through the science

11:12:01  16  first has been very successful in other litigation of

11:12:04  17  similar type.  So in my own cases, I will be very

11:12:08  18  interested in early Daubert, particularly for those

11:12:11  19  cases where we don't have stipulation as to general

11:12:13  20  causation.

11:12:16  21         I think at this point it might be best for

11:12:18  22  us to hear from you as to where you stand, what you

11:12:23  23  think we need to know.  In part, we wanted to do this

11:12:29  24  early to be sure that everybody knows that Judge Jones

11:12:32  25  has the full imprimatur of the Court.  And it's unusual

| | | |
|---|---|---|
| 11:12:35 | 1 | that there are four different judges with a quarter of |
| 11:12:38 | 2 | the cases in litigation of this kind.  This is crafted |
| 11:12:43 | 3 | from whole -- the whole thing is new for everyone. |
| 11:12:46 | 4 | Ordinarily, these all end up before a single judge and |
| 11:12:49 | 5 | you have a single district judge managing it.  But Judge |
| 11:12:52 | 6 | Jones will speak with a uniformed voice for us on the |
| 11:12:56 | 7 | issues related to discovery, and we are intending to |
| 11:12:57 | 8 | fully empower him publicly as the magistrate judge.  Of |
| 11:13:03 | 9 | course, there are issues that will be appealable -- I |
| 11:13:07 | 10 | understand that -- from the way things are being |
| 11:13:09 | 11 | managed.  But he has our imprimatur, and we want it to |
| 11:13:09 | 12 | be clear. |
| 11:13:12 | 13 | So with that in mind, I think we will -- we |
| 11:13:14 | 14 | will start with the plaintiffs and let us -- you let us |
| 11:13:18 | 15 | know how things are going and what you think we need to |
| 11:13:21 | 16 | know at this stage. |
| 11:13:22 | 17 | MR. BELL:  Good morning, Your Honor.  We |
| 11:13:25 | 18 | totally agree with what you're saying.  The streamlining |
| 11:13:30 | 19 | of these cases is important, but maybe you'll hear some |
| 11:13:34 | 20 | things this morning that might give you some doubt that |
| 11:13:36 | 21 | that's equally thought on both sides.  We're concerned |
| 11:13:40 | 22 | about that. |
| 11:13:42 | 23 | So, Your Honor, Judge Dever, we anticipate |
| 11:13:45 | 24 | by Friday that most of the cases that are filed on |
| 11:13:49 | 25 | short-form complaints, there will be an additional |

| | | |
|---|---|---|
| 11:13:52 | 1 | number filed that will give the Court plenty to choose |
| 11:13:55 | 2 | from.  So I don't want to say, "Don't worry about it," |
| 11:13:59 | 3 | but I do -- I do know that we've had three different |
| 11:14:03 | 4 | committees working, Judge, and they're working on |
| 11:14:05 | 5 | weekends and working at night.  Obviously, there is a |
| 11:14:10 | 6 | case here or there that might have some problems that |
| 11:14:13 | 7 | were unanticipated that will be not in the pool and they |
| 11:14:16 | 8 | will file their short form after the deadline.  But |
| 11:14:19 | 9 | generally we expect to have plenty.  In fact, we would |
| 11:14:22 | 10 | like to ask the Court at another time when you're ready |
| 11:14:24 | 11 | to hear, we have some additional ideas of how we might |
| 11:14:29 | 12 | can streamline it further up to now, seeing what we |
| 11:14:33 | 13 | have, things like that. |
| 11:14:34 | 14 | So -- and just following your order, we have |
| 11:14:38 | 15 | had a number of stipulations.  These are not necessarily |
| 11:14:43 | 16 | trial stipulations; mostly, process stipulations.  As |
| 11:14:47 | 17 | you can imagine, sometimes your trial stipulations |
| 11:14:49 | 18 | are -- they may be premature at this stage.  But to be |
| 11:14:53 | 19 | honest with you, Judge, we had three stipulations that |
| 11:14:57 | 20 | kind of surprised us that we couldn't get done.  One, of |
| 11:15:01 | 21 | course, we asked the Government to stipulate to the |
| 11:15:05 | 22 | ATSDR 2017 health study.  This was the study upon which |
| 11:15:10 | 23 | the statute was based.  It's the largest epidemiological |
| 11:15:15 | 24 | study in U.S. history.  They declined to do so. |
| 11:15:19 | 25 | We asked the Government to give us whether |

| | | |
|---|---|---|
| 11:15:22 | 1 | they would stipulate to general causation for the Track |
| 11:15:26 | 2 | One diseases. Response was, "We're checking with our |
| 11:15:30 | 3 | experts. We'll let you know." |
| 11:15:35 | 4 | And then we have a pretty important issue, |
| 11:15:38 | 5 | Your Honor, having to do with what we're calling a |
| 11:15:42 | 6 | base-wide model versus a site-specific model of |
| 11:15:48 | 7 | exposure. Now, the ATSDR model was used as a base-wide |
| 11:15:54 | 8 | model. If you're at the base for 30 days and you got |
| 11:15:58 | 9 | one of the target diseases, then you've met the statute. |
| 11:16:03 | 10 | The Government wants to take and cherry pick where you |
| 11:16:07 | 11 | lived. So if someone lived at Tarawa Terrace and their |
| 11:16:12 | 12 | exposure was less than someone who lived at Hadnot |
| 11:16:16 | 13 | Point, they want to take that and run with that and not |
| 11:16:18 | 14 | have a base-wide model. But, of course, everybody on |
| 11:16:20 | 15 | the base has a lifecycle that they go through. |
| 11:16:26 | 16 | Someone mentioned the other day, well, why |
| 11:16:28 | 17 | didn't they give these folks water bottles. They didn't |
| 11:16:31 | 18 | have water bottles back then. And like a lot of us went |
| 11:16:34 | 19 | to go play baseball, we drank out of a hose. If you |
| 11:16:37 | 20 | played football in high school, you drank out of a hose. |
| 11:16:39 | 21 | You drank out of something else. The Marines in |
| 11:16:42 | 22 | training, they got -- they drank out of the water |
| 11:16:46 | 23 | containers. Back then, the -- all the bases had to be |
| 11:16:51 | 24 | built based on local building codes. North Carolina |
| 11:16:54 | 25 | codes back then required every building to have water |

| | |
|---|---|
| 11:16:57 | 1 |
| 11:16:59 | 2 |
| 11:17:02 | 3 |
| 11:17:05 | 4 |
| 11:17:09 | 5 |
| 11:17:12 | 6 |
| 11:17:15 | 7 |
| 11:17:17 | 8 |
| 11:17:21 | 9 |
| 11:17:24 | 10 |
| 11:17:28 | 11 |
| 11:17:33 | 12 |
| 11:17:36 | 13 |
| 11:17:40 | 14 |
| 11:17:44 | 15 |
| 11:17:47 | 16 |
| 11:17:50 | 17 |
| 11:17:53 | 18 |
| 11:17:57 | 19 |
| 11:18:00 | 20 |
| 11:18:03 | 21 |
| 11:18:06 | 22 |
| 11:18:09 | 23 |
| 11:18:14 | 24 |
| 11:18:18 | 25 |

fountains.  So where you worked, where you lived, where you played, where you ate dinner, where you went shopping, everybody went to the water fountain and drank.  And so to say that someone lived at Tarawa Terrace had less of an exposure on certain chemicals than otherwise is not what the ATSDR did.

And you can imagine if we had to do a separate, independent epidemiological study for each plaintiff, Your Honor, we would be in triple Roman times, not just one Roman time.

So Congress passed the statute that said if you were there 30 days, not if you were there 30 days at this location or this location.  If you were there 30 days and they recognize this problem.  How is Mrs. Jones who had three kids that goes to three different schools, how are you going to say their exposure was less when they were in schools in another location that had a higher exposure?  Which it's a good model, and it works.

And 30 days with these dangerous chemicals is a fairly short time.  But once we, hopefully, can show you how dangerous they are, that kind of exposure really creates bedlam.  But if you were there six months -- I know the last study we looked at, the average stay was around 1100 days.  Only 1 percent of the cases we know of even met that five-year requirement

11:18:21   1    the Government put out on the EO.

11:18:25   2              So we would like the Court to initially

11:18:28   3    address for us this issue of whether we're looking at a

11:18:32   4    base-wide model or a site-specific model because that

11:18:38   5    affects how we hire experts, who we get to do these

11:18:41   6    things.  Because of the Government's position, we've

11:18:44   7    been talking to modelers to come up with a lifecycle

11:18:47   8    model and to show the Court what does someone do on an

11:18:52   9    average day at Camp Lejeune.  Well, we've got to do that

11:18:54  10    over 33 years.  It's a hugely expensive proposition.

11:18:59  11    We're talking about maybe a million dollars to put this

11:19:02  12    model together, and we think that's not needed.  We

11:19:05  13    think the statute doesn't say we're supposed to do that.

11:19:07  14    And Congress knew that.  We need some help on that.

11:19:13  15              The ATSDR, Your Honor, we would love the

11:19:17  16    Court to have a conversation with us and maybe talk

11:19:21  17    about whether that is a legitimate model.  I mean, ATSDR

11:19:28  18    has this unique causation, as you're aware, it's called

11:19:32  19    in there equipoise.  Equipoise is a medical term; it's

11:19:36  20    not a legal term.  But in the ATSDR, all five of the

11:19:40  21    Track One diseases are equipoise and above.  It's the

11:19:44  22    highest level of proof.  But, yet, the Government,

11:19:47  23    "Well, we aren't sure.  We can let our scientists tell

11:19:51  24    us what to do."  That's not what the law says.

11:19:54  25              So I think those are the kinds of things,

| | |
|---|---|
| 11:19:56 | 1 |
| 11:19:58 | 2 |
| 11:20:02 | 3 |
| 11:20:04 | 4 |
| 11:20:08 | 5 |
| 11:20:11 | 6 |
| 11:20:14 | 7 |
| 11:20:16 | 8 |
| 11:20:20 | 9 |
| 11:20:22 | 10 |
| 11:20:28 | 11 |
| 11:20:30 | 12 |
| 11:20:34 | 13 |
| 11:20:38 | 14 |
| 11:20:42 | 15 |
| 11:20:47 | 16 |
| 11:20:51 | 17 |
| 11:20:55 | 18 |
| 11:20:58 | 19 |
| 11:21:02 | 20 |
| 11:21:06 | 21 |
| 11:21:09 | 22 |
| 11:21:13 | 23 |
| 11:21:17 | 24 |
| 11:21:23 | 25 |

Your Honor, that we are hearing now. And then, of course, with the recent filing on Friday, it's crazy.

But those are the things that we've got to get past. Because if we don't get past those, we're going to be here two years from now before we can try the first case. And so it's that important. So we would ask the Court to let us know when it's convenient for us to present what we need to present preliminarily. We would like to do that. We're ready to do it at your convenience and ask the Court for some guidance.

Your Honor, the next thing the Court asked was for how are we doing in discovery. We've sent out now three discovery requests. The first request, Your Honor -- Judge Boyle, you might get a little interest in this. You remember in what we call Camp Lejeune One, the earlier cases, and then there was an MDL established way back? Well, the Government at the MDL hearing told the MDL panel that they wanted the cases in Atlanta because that's where all of the documents were. We argued to keep it here in North Carolina. Well, the MDL court bought that argument and sent it down to Atlanta. And that's where ATSDR is located. But now we've asked for all of those databases. We know of six databases that ATSDR has used or put together, and we want access to those. We want unfettered access to those. Because

| | | |
|---|---|---|
| 11:21:27 | 1 | they have all of the science, all of the data. And then |
| 11:21:29 | 2 | we have things we could add to it to actually make the |
| 11:21:33 | 3 | epidemiological study better. But we have to get that |
| 11:21:37 | 4 | access. |
| 11:21:38 | 5 | So we sent out a 30(b)(6) notice. We're |
| 11:21:44 | 6 | hopefully going to get a date some time soon. We're |
| 11:21:47 | 7 | working on that. At least we're waiting to get one. |
| 11:21:50 | 8 | And then that then began to present a |
| 11:21:54 | 9 | problem that we didn't anticipate with the CMO. And the |
| 11:21:59 | 10 | CMO, the Court ordered only one witness for the |
| 11:22:03 | 11 | Government -- in other words, a governmental witness can |
| 11:22:05 | 12 | only be deposed one time. But, Judge, I know the exact |
| 11:22:10 | 13 | person that can give us information on those six |
| 11:22:12 | 14 | databases. Could notice them today. I don't need them |
| 11:22:17 | 15 | telling me which expert or which witness they're going |
| 11:22:20 | 16 | to present and prepare. I know someone who works them |
| 11:22:23 | 17 | every day, and we could do that, but then that would use |
| 11:22:26 | 18 | up our one time to take his deposition. I think to |
| 11:22:29 | 19 | streamline that and give us the opportunity to maybe |
| 11:22:33 | 20 | rethink that. Obviously, we're not going to abuse it. |
| 11:22:38 | 21 | If we did, then the Government would surely tell us. |
| 11:22:42 | 22 | But this guy is there. He's the primary |
| 11:22:45 | 23 | mover at the ATSDR right now -- or the three people. |
| 11:22:49 | 24 | Two of them are retired. He's ready to do this, and I |
| 11:22:53 | 25 | think we can get this done in ten days instead of 30 |

| | |
|---|---|
| 11:22:55 | 1 |
| 11:22:58 | 2 |
| 11:22:59 | 3 |
| 11:23:03 | 4 |
| 11:23:06 | 5 |
| 11:23:09 | 6 |
| 11:23:12 | 7 |
| 11:23:15 | 8 |
| 11:23:19 | 9 |
| 11:23:20 | 10 |

1  days.  So those are the kind of things we need some help

2  on.

3           We have sent out now two requests for

4  production.  One is actually due today.  That has to do

5  with all of the databases we're asking about.  We don't

6  know what the Government's response is going to be.  I'm

7  not really confident that we're going to get a good

8  response.  We might, and I hope we will.  But we'll see.

9  Supposed to get it today.  So we would like to address

10  that if it comes up in a quick response.

11           Your Honor, we've put together an incredible

12  team that says if we get all of the information we need

13  that is -- that is publicly available, then about 80 to

14  90 percent of our clients we can prove are on the base

15  at a certain time and what they did and where they

16  lived.  We could do that ourselves.  Even with someone

17  who's dead who can't give us testimony, we can find out

18  what unit they were in, where they stayed, how long they

19  stayed.  We can prove that up, and it's easy.  But we

20  have to get access to the database.

21           We're getting ready to choose our

22  bellwethers.  They have access.  They can use those

23  right now to help them choose bellwethers.  We don't

24  have access, so we're at a great disadvantage.  So we

25  would ask some help from the Court on that, if needed.

11:24:15  1          We know, Your Honor -- and the second

11:24:17  2      request for production is now -- the first one had to do

11:24:20  3      with databases mostly.  The second one is focusing on

11:24:24  4      health studies.  We know there is a health study that's

11:24:28  5      sitting there right now.  It's completed and there's a

11:24:32  6      big disagreement between the Government and the ATSDR

11:24:35  7      whether to release it.  It's a follow-up cancer study,

11:24:38  8      and it could directly affect three fourths of our

11:24:42  9      clients.  They haven't released it.  They won't release

11:24:44  10     it.  I don't know when it's going to be released.  It

11:24:47  11     may get released tomorrow after I've now brought it up.

11:24:49  12          But we do know, though, there was a study

11:24:51  13     during the Trump Administration that ATSDR wanted to put

11:24:55  14     out and the Administration blocked that study from being

11:24:57  15     published.  So we've asked for studies that have been

11:25:00  16     published, studies that haven't been published, and we

11:25:04  17     also understand now that when a study is done with

11:25:09  18     ATSDR, then it's -- after it's peer-reviewed, it's then

11:25:12  19     vetted.  And apparently some folks who might be involved

11:25:15  20     in litigation are trying to change some -- they don't

11:25:19  21     want the language changed.

11:25:21  22          But we want all of that background

11:25:22  23     information.  We want to know what the drafts looked

11:25:25  24     like.  What was the -- what was the sequence.  What was

11:25:27  25     the lifecycle of that study and how did it get to the

| | | |
|---|---|---|
| 11:25:31 | 1 | current report. We want to know what the original |
| 11:25:34 | 2 | scientists' opinions were. So that's the second request |
| 11:25:37 | 3 | for production we've got. |
| 11:25:39 | 4 | There's a study being done. We think it's |
| 11:25:42 | 5 | completed, called a vapor study. It's another one of |
| 11:25:45 | 6 | the things we've requested. During the workup of the |
| 11:25:51 | 7 | Camp Lejeune Justice Act, this was not something that |
| 11:25:53 | 8 | came to our attention, that was not necessarily spoke of |
| 11:25:58 | 9 | or even though ATSDR didn't speak about it very much. |
| 11:26:01 | 10 | So there is a vapor study being done. It may very well |
| 11:26:05 | 11 | affect some people, might not affect everybody. But it |
| 11:26:09 | 12 | is important and goes to the exposure. |
| 11:26:13 | 13 | So that's kind of where we are right now, |
| 11:26:15 | 14 | Your Honor, with discovery. I think it's gotten started |
| 11:26:19 | 15 | well. We're trying to target our discovery. We haven't |
| 11:26:22 | 16 | asked for a lot of things. But we were talking last |
| 11:26:27 | 17 | night, Judge, and, you know, it would be nice if the |
| 11:26:34 | 18 | Court would consider telling the Government to produce |
| 11:26:38 | 19 | everything they got, instead of all of this back and |
| 11:26:42 | 20 | forth which is going to take months and it's going to |
| 11:26:44 | 21 | take Judge Jones a lot of work. Why not just put -- |
| 11:26:48 | 22 | give it -- all of it to us now without any kind of |
| 11:26:53 | 23 | guidelines? Some of it may be relevant, some of it |
| 11:26:56 | 24 | might not be. But most of it will probably be helpful. |
| 11:27:00 | 25 | So that might be something worth considering, we think. |

11:27:03   1    It's something worth doing.

11:27:05   2            So, Judge, the next thing on your list was

11:27:07   3    resolution.  Our resolution committee.  So our

11:27:20   4    resolution committee is working hard on doing exactly,

11:27:24   5    Judge Dever, what you have mentioned.  So maybe, if you

11:27:28   6    don't mind, I'll try to give you a little example of

11:27:31   7    what we're doing.

11:27:32   8            We think, just like most of you do, that

11:27:36   9    learning a little bit about value of different kinds of

11:27:40  10    case -- different kinds of -- what's the term I'm

11:27:45  11    looking for?  Well, for example, kidney cancer.  It's in

11:27:49  12    the Track One diseases.  It's probably one of the most

11:27:54  13    curable cancers that we have, if you catch it early.  So

11:27:59  14    if someone has kidney cancer, got treated -- and with

11:28:03  15    kidney cancer, you get treated with excise the tumor

11:28:06  16    without any radiation, without any kind of chemotherapy,

11:28:09  17    and for the most -- most times, it's curable and move

11:28:13  18    on.

11:28:13  19            Well, that, we think, is the minimum kidney

11:28:15  20    cancer case.  We want to know what that's worth.  We

11:28:19  21    also have people who have advanced stages and had -- had

11:28:23  22    all kinds of posttreatment problems.  It might have

11:28:27  23    metastasized, they've died.  So we're trying to take the

11:28:30  24    cycle of each disease and come up with some stages that

11:28:36  25    we can get the jury to give us value for those stages.

| | | |
|---|---|---|
| 11:28:40 | 1 | So if, for example, we had ten kidney cancer |
| 11:28:45 | 2 | cases, we're trying to get some that are the minimum and |
| 11:28:48 | 3 | some that are the worst so the jury can give us what are |
| 11:28:51 | 4 | the values between those. And if we have the same jury |
| 11:28:56 | 5 | do that, then we end up having a better idea of what it |
| 11:29:01 | 6 | looks like. Then if we have four judges doing the same |
| 11:29:04 | 7 | thing with four different groups, it would really have a |
| 11:29:08 | 8 | great spread of what things look like. Different |
| 11:29:11 | 9 | courts, different jury panels, I think it looks good. |
| 11:29:15 | 10 | And I think that then gives us this idea, what are the |
| 11:29:18 | 11 | values of these cases? |
| 11:29:19 | 12 | One of the diseases, Parkinson's, |
| 11:29:22 | 13 | unfortunately is not curable. But now we know of these |
| 11:29:25 | 14 | lifesaving brain surgeries that are being performed now |
| 11:29:30 | 15 | in some of the leading hospitals that can -- it's |
| 11:29:33 | 16 | amazing what is happening. But those are million, |
| 11:29:37 | 17 | $2 million surgeries. So we need to -- once you get |
| 11:29:40 | 18 | Parkinson's, the lifecycle of that is different for |
| 11:29:43 | 19 | everybody. Some people it's slower than others, some |
| 11:29:46 | 20 | people it is bad. So we're trying to put all of that |
| 11:29:51 | 21 | together. And our argument one day we hope we'll have a |
| 11:29:56 | 22 | chance to make is that's why we believe multiple |
| 11:29:59 | 23 | plaintiff cases are out to give us a better value of the |
| 11:30:03 | 24 | whole spectrum of these diseases. |
| 11:30:08 | 25 | So we would like to one day, at your |

| | | |
|---|---|---|
| 11:30:11 | 1 | convenience, talk to you about how these trials would be |
| 11:30:13 | 2 | heard -- or held.  I know that each court, each judge |
| 11:30:16 | 3 | might have a different way of doing theirs, and we |
| 11:30:19 | 4 | respect that.  We just need some guidance on that. |
| 11:30:24 | 5 | The Track Two and Track Three cases, we |
| 11:30:27 | 6 | would like to start working on how we're going to choose |
| 11:30:30 | 7 | those diseases so we can go ahead and get our experts up |
| 11:30:34 | 8 | front and get them loaded for them, get that started so |
| 11:30:37 | 9 | we're not behind when we're ready to go on those.  We |
| 11:30:41 | 10 | need just to get some guidance from the Court on how you |
| 11:30:44 | 11 | would like those to be selected. |
| 11:30:49 | 12 | We do have some questions, Your Honor, that |
| 11:30:52 | 13 | we also need guidance on.  One of the first things we |
| 11:30:55 | 14 | have is we need some help on the probate issues.  We |
| 11:31:02 | 15 | believe this case is a case in federal common law and we |
| 11:31:07 | 16 | can't just say we're going to take North Carolina and do |
| 11:31:11 | 17 | it.  There are a number of cases in the country that |
| 11:31:14 | 18 | have -- that the courts have fashioned an alternative |
| 11:31:19 | 19 | remedy.  The case out of the -- one of the cases that |
| 11:31:24 | 20 | involved asbestos with government ships, they had an |
| 11:31:30 | 21 | appointed probated administrator for all of the cases |
| 11:31:35 | 22 | that were filed and didn't require people to file their |
| 11:31:37 | 23 | probate before trial.  Those who are got settlements |
| 11:31:41 | 24 | obviously have to go through some process, obviously, to |
| 11:31:43 | 25 | distribute that.  But initially, the cost of these |

| 11:31:47 | 1 | probate filings is expensive.  Down in Florida, for |
| 11:31:51 | 2 | example, it might be $7,000 just to open up an estate. |
| 11:31:55 | 3 | We're trying to figure out a way not to have our clients |
| 11:31:59 | 4 | have to pay that.  And so we have some -- we have some |
| 11:32:00 | 5 | proposals we would like to present to the Court.  If |
| 11:32:03 | 6 | it's okay with you, we'll put those together and file |
| 11:32:06 | 7 | them with the Court and ask for guidance on that. |
| 11:32:11 | 8 | The wrongful death statutes -- excuse me, |
| 11:32:14 | 9 | the wrongful death part of the statute, again, the Court |
| 11:32:20 | 10 | could adopt the aspects of the North Carolina.  But in |
| 11:32:26 | 11 | the federal common law, we should at least go through |
| 11:32:31 | 12 | that required process so that when the Court decides |
| 11:32:34 | 13 | what are the appropriate wrongful death parameters, that |
| 11:32:39 | 14 | we have met the federal common law requirements.  We |
| 11:32:42 | 15 | would be glad to -- if the Court would desire, be glad |
| 11:32:45 | 16 | to give a memorandum and ask the Court to consider it. |
| 11:32:50 | 17 | We would like to also, Your Honor, start |
| 11:32:53 | 18 | working on our jury charges so that we can have some |
| 11:32:57 | 19 | idea upfront what they'll look like so we know what we |
| 11:33:01 | 20 | need to prove.  And your help on that would be -- Judge, |
| 11:33:05 | 21 | we're ready to present to you our proposed jury charges |
| 11:33:09 | 22 | at your convenience. |
| 11:33:11 | 23 | I think that covers what I wanted to talk |
| 11:33:13 | 24 | about, Your Honor.  I have a couple of other things that |
| 11:33:15 | 25 | I may get into later depending on where we go.  Thank |

11:33:19  1    you.

11:33:19  2                     JUDGE MYERS:  Thank you, counsel.

11:33:24  3                     Mr. Bain, we'll hear from you first -- or

11:33:27  4    next.

11:33:28  5                     MR. BAIN:  Thank you, Your Honors.

11:33:30  6                     So going through the items that were on the

11:33:32  7    agenda:  As of Friday, there are 1309 cases before the

11:33:38  8    Court.  A little over 300 with each judge.  With respect

11:33:44  9    to the status of the administrative claims with the

11:33:47  10   Department of the Navy, there are currently 117,000

11:33:50  11   administrative claims on file with the Department of the

11:33:52  12   Navy.  The Navy is standing up a database which will

11:33:58  13   significantly expedite efforts and allow it to intake

11:34:02  14   batches of claims, organize claims, and analyze claims

11:34:05  15   for the purposes of evaluation for settlement.  So that

11:34:07  16   should be online fairly soon.

11:34:10  17                    The Navy has been coordinating with the

11:34:13  18   Veterans Administration to gain access to obtain the

11:34:17  19   Veterans Administration information which is needed to

11:34:19  20   evaluate the claims of the claimants.

11:34:23  21                    The Navy has been coordinating with the

11:34:27  22   plaintiff's leadership counsel to coordinate procedures

11:34:29  23   for obtaining information that the plaintiff's

11:34:33  24   leadership counsel might have in order to evaluate the

11:34:35  25   claims for settlement offers.

| | | |
|---|---|---|
| 11:34:39 | 1 | With respect to the stipulations between the |
| 11:34:41 | 2 | parties, each side has proposed stipulations regarding |
| 11:34:46 | 3 | scientific studies that were done. Mr. Bell is correct |
| 11:34:51 | 4 | that the plaintiff proposed several stipulations related |
| 11:34:54 | 5 | to the ATSDR's work. The Government agreed to six of |
| 11:34:58 | 6 | those stipulations. The Government proposed |
| 11:35:01 | 7 | stipulations related to the work of the National |
| 11:35:04 | 8 | Research Council from the National Academies of |
| 11:35:06 | 9 | Sciences, which also studied the Camp Lejeune water |
| 11:35:09 | 10 | situation. As of yet, the plaintiffs have not provided |
| 11:35:12 | 11 | us with a response on those stipulations. |
| 11:35:16 | 12 | Based on the allegations in the plaintiff's |
| 11:35:20 | 13 | master complaint, the United States anticipates that it |
| 11:35:22 | 14 | will be able to stipulate to many factual matters that |
| 11:35:25 | 15 | are outlined in that complaint. We have retained |
| 11:35:29 | 16 | experts who are evaluating the scientific issues to |
| 11:35:33 | 17 | determine whether further stipulations are warranted |
| 11:35:35 | 18 | with respect to general causation. So we are looking at |
| 11:35:41 | 19 | that. We're asking them their opinions on that. And if |
| 11:35:44 | 20 | they do give us those opinions, we could make |
| 11:35:46 | 21 | stipulations on general causation. |
| 11:35:50 | 22 | I do want to address the base-wide versus |
| 11:35:54 | 23 | site-specific model that Mr. Bell alluded to. The |
| 11:35:59 | 24 | Government adopted a base-wide model for purposes of the |
| 11:36:03 | 25 | elective option for settlement purposes because those |

| | | |
|---|---|---|
| 11:36:06 | 1 | were an early offer of settlement.  However, if |
| 11:36:11 | 2 | plaintiffs choose to go the litigation route, the |
| 11:36:14 | 3 | statute clearly says that they must prove that the |
| 11:36:17 | 4 | exposure was as likely as not a cause of their injury. |
| 11:36:21 | 5 | That involves an evaluation of exposure. |
| 11:36:24 | 6 | I think Judge Dever's recent opinion in the |
| 11:36:29 | 7 | PFAS litigation made it clear that exposure is a |
| 11:36:30 | 8 | critical element of proving causation in a toxic court |
| 11:36:35 | 9 | case.  In Camp Lejeune, only two of several water |
| 11:36:38 | 10 | systems were contaminated.  The one at Tarawa Terrace |
| 11:36:42 | 11 | and the one at Hadnot Point.  The other systems were not |
| 11:36:45 | 12 | contaminated.  So depending on where you were on base is |
| 11:36:48 | 13 | critical to what type of exposure you might have had. |
| 11:36:51 | 14 | If you're familiar with Camp Lejeune, it's divided by a |
| 11:36:54 | 15 | river.  There's some people who work and train and live |
| 11:36:58 | 16 | on one side of the river.  Some people are exclusively |
| 11:37:01 | 17 | on the other side of the river.  One side of the river |
| 11:37:03 | 18 | did not have contaminated water, yet those people are |
| 11:37:06 | 19 | eligible to file claims under the Camp Lejeune Justice |
| 11:37:11 | 20 | Act.  So that's an important point, I believe. |
| 11:37:15 | 21 | With respect to the discovery that's been |
| 11:37:18 | 22 | conducted so far, the plaintiffs did serve 20 very broad |
| 11:37:23 | 23 | requests for discovery from the Government.  As Mr. Bell |
| 11:37:26 | 24 | alluded to, they're asking for the entire ATSDR |
| 11:37:30 | 25 | databases which has personal information of everyone |

| | | |
|---|---|---|
| 11:37:34 | 1 | that the ATSDR studied, including thousands of people |
| 11:37:37 | 2 | who are not parties to this litigation and likely |
| 11:37:40 | 3 | thousands of people who did not file administrative |
| 11:37:42 | 4 | claims.  The personal identifiable information of those |
| 11:37:46 | 5 | people are subject to certain protections.  It can't |
| 11:37:49 | 6 | just be turned over.  So that's something that we have |
| 11:37:52 | 7 | to look at and have to be very careful about the |
| 11:37:55 | 8 | Government turning over other people's personally |
| 11:37:57 | 9 | identifiable information who are not even parties to the |
| 11:38:00 | 10 | litigation. |
| 11:38:03 | 11 | We will -- |
| 11:38:05 | 12 | JUDGE DEVER:  Why doesn't the protective |
| 11:38:06 | 13 | order cover that?  I mean, I understand that concern. |
| 11:38:09 | 14 | But why doesn't the protective order address that issue? |
| 11:38:14 | 15 | I mean, everybody that's on the plaintiff's side is an |
| 11:38:18 | 16 | officer of the court, and we have a protective order. |
| 11:38:20 | 17 | And this type of information gets released in all kinds |
| 11:38:26 | 18 | of cases.  I'm trying to understand what's different |
| 11:38:29 | 19 | about it. |
| 11:38:30 | 20 | MR. BAIN:  Well, we're discussing that with |
| 11:38:32 | 21 | the ATSDR, and they have certain protections in place. |
| 11:38:36 | 22 | They make certain agreements when they get this |
| 11:38:39 | 23 | information from the agencies from which they receive |
| 11:38:41 | 24 | it.  So we are talking with our lawyers.  We've given |
| 11:38:43 | 25 | them the protective order.  And so we're in continuing |

| | | |
|---|---|---|
| 11:38:46 | 1 | discussions with that. But I just wanted to point out |
| 11:38:48 | 2 | that these requests are very, very broad and include a |
| 11:38:52 | 3 | lot of information that is of other people that is not |
| 11:38:56 | 4 | really relevant to the plaintiff's case. |
| 11:39:00 | 5 | JUDGE MYERS: You anticipate potential |
| 11:39:02 | 6 | future litigation on the -- from the stakeholders who |
| 11:39:06 | 7 | have the privacy interests? That is, are there -- we |
| 11:39:09 | 8 | always treat the United States as monolithic. It's not. |
| 11:39:13 | 9 | But in some cases, it's good to treat it as a single |
| 11:39:16 | 10 | party because it's in the coordination position. You |
| 11:39:20 | 11 | anticipate stakeholder litigation that says protective |
| 11:39:23 | 12 | order is insufficient? |
| 11:39:25 | 13 | MR. BAIN: I would hope not. But we need to |
| 11:39:28 | 14 | make sure that we go through all of our processes and |
| 11:39:30 | 15 | check with all of the agencies that have a stake in this |
| 11:39:32 | 16 | information. The agencies that provided to the ATSDR, |
| 11:39:36 | 17 | the ATSDR itself, it includes both defense information |
| 11:39:40 | 18 | and also some information they obtain from different |
| 11:39:43 | 19 | states through different agreements they had with them. |
| 11:39:45 | 20 | So we just need to make sure that we -- we go through |
| 11:39:50 | 21 | all the processes with those lawyers to make sure what |
| 11:39:53 | 22 | we're doing is appropriate. And we have provided the |
| 11:39:56 | 23 | protective order to them. |
| 11:40:02 | 24 | We've been in contact with the Government |
| 11:40:04 | 25 | agencies, including the Navy, the Marine Corps, the |

| | | |
|---|---|---|
| 11:40:07 | 1 | Veterans Administration, the National Archives, ATSDR, |
| 11:40:11 | 2 | the EPA, and the GAO regarding these broad requests that |
| 11:40:15 | 3 | the plaintiffs have made.  We are responding later |
| 11:40:16 | 4 | today.  But there's a lot of information requested from |
| 11:40:20 | 5 | a lot of different agencies, so we are trying to contact |
| 11:40:24 | 6 | all of them and make sure that we're turning over what's |
| 11:40:27 | 7 | appropriate and making appropriate objections where |
| 11:40:30 | 8 | necessary. |
| 11:40:32 | 9 | We've entered an e-discovery order with |
| 11:40:35 | 10 | plaintiff's leadership counsel, and we intend to start |
| 11:40:37 | 11 | negotiating regarding electronic information, from what |
| 11:40:41 | 12 | custodians we need to collect it from, what shared |
| 11:40:44 | 13 | systems we need to collect it from, what search terms we |
| 11:40:47 | 14 | need to run across that information so that we can get |
| 11:40:50 | 15 | it produced in a timely manner.  So we've begun that |
| 11:40:53 | 16 | process.  We've negotiated an order and will begin those |
| 11:40:56 | 17 | discussions soon. |
| 11:40:58 | 18 | The plaintiffs have requested several |
| 11:41:00 | 19 | 30(b)(6) witness examinations.  We've contacted the |
| 11:41:04 | 20 | agencies regarding those and hope to be able to identify |
| 11:41:07 | 21 | witnesses next month for those depositions. |
| 11:41:14 | 22 | With respect to settlement efforts, as you |
| 11:41:18 | 23 | know, in September the Department announced the Elective |
| 11:41:21 | 24 | Option to settlement program.  That process is just |
| 11:41:24 | 25 | beginning.  The Department of Justice and the Department |

| | | |
|---|---|---|
| 11:41:28 | 1 | of the Navy have been working with the plaintiff's |
| 11:41:30 | 2 | leadership committee to get the information that we need |
| 11:41:33 | 3 | to determine eligibility for settlement offers under the |
| 11:41:36 | 4 | program. To date -- and I emphasize we're just |
| 11:41:41 | 5 | starting -- 23 settlement offers have been made. Most |
| 11:41:44 | 6 | of the offers are still pending. The claimants have 60 |
| 11:41:49 | 7 | days to accept or reject the offer. Three have been |
| 11:41:53 | 8 | accepted and two have already been paid. |
| 11:41:56 | 9 | JUDGE BOYLE: How much were they? How much |
| 11:41:58 | 10 | were the three that have been accepted and paid? |
| 11:42:01 | 11 | MR. BAIN: Just a minute, Your Honor. I |
| 11:42:06 | 12 | think we have that. |
| 11:42:09 | 13 | JUDGE BOYLE: You don't have it? |
| 11:42:10 | 14 | MR. BAIN: I don't have it right -- |
| 11:42:11 | 15 | JUDGE BOYLE: You didn't think that would be |
| 11:42:13 | 16 | important today? |
| 11:42:14 | 17 | MR. BAIN: Well, I thought you would be |
| 11:42:15 | 18 | interested in the numbers that were actually settled. |
| 11:42:17 | 19 | But they're in the hundreds of thousands of dollars. |
| 11:42:20 | 20 | JUDGE BOYLE: Like 900,000? 800,000? |
| 11:42:23 | 21 | 500,000? 400,000? |
| 11:42:25 | 22 | MR. BAIN: Your Honor, there's a specific |
| 11:42:27 | 23 | grid of criteria. |
| 11:42:28 | 24 | JUDGE BOYLE: Yeah, I understand. I'm just |
| 11:42:30 | 25 | being facetious. |

| | | |
|---|---|---|
| 11:42:32 | 1 | So how much? |
| 11:42:34 | 2 | MR. BAIN: We can get that information to |
| 11:42:35 | 3 | you. I might have it with me. |
| 11:42:36 | 4 | JUDGE BOYLE: Don't worry about it. |
| 11:42:38 | 5 | MR. BAIN: I might have it with me. |
| 11:42:40 | 6 | JUDGE BOYLE: Don't worry about it. |
| 11:42:43 | 7 | MR. BAIN: I'm sorry, Your Honor. If I look |
| 11:42:45 | 8 | through my materials, I might be able to -- |
| 11:42:45 | 9 | JUDGE BOYLE: The whole point of this |
| 11:42:46 | 10 | hearing is to make progress. |
| 11:42:47 | 11 | MR. BAIN: Yes. |
| 11:42:48 | 12 | JUDGE BOYLE: Yeah. Settling cases out of |
| 11:42:50 | 13 | court is considered progress. We would like to know |
| 11:42:52 | 14 | about that. |
| 11:42:54 | 15 | MR. BAIN: Yes, Your Honor. |
| 11:42:56 | 16 | JUDGE BOYLE: Go ahead. |
| 11:42:57 | 17 | MR. BAIN: So, yeah, we're working toward |
| 11:42:59 | 18 | that, trying to make as many as we can that satisfy the |
| 11:43:02 | 19 | criteria in the program that we put together. |
| 11:43:06 | 20 | JUDGE BOYLE: So far you've had three and |
| 11:43:08 | 21 | you said there are 120,000 claims. |
| 11:43:09 | 22 | MR. BAIN: Uh-huh. We're just getting |
| 11:43:11 | 23 | started, though, Your Honor. And we need to get -- one |
| 11:43:13 | 24 | thing is we need to get the information from the |
| 11:43:16 | 25 | plaintiffs to be able to determine whether the |

| | | |
|---|---|---|
| 11:43:18 | 1 | plaintiffs meet the criteria under the program. |
| 11:43:22 | 2 | So, for example, we need to know what the |
| 11:43:27 | 3 | disease they had is, how long they were at Camp Lejeune, |
| 11:43:30 | 4 | when they got the disease. |
| 11:43:32 | 5 | JUDGE BOYLE: So you think the plaintiffs |
| 11:43:33 | 6 | haven't been forthcoming? |
| 11:43:35 | 7 | MR. BAIN: We've been working with them and |
| 11:43:37 | 8 | they've been forthcoming recently. We asked them for |
| 11:43:39 | 9 | getting the date of birth information, Social Security |
| 11:43:43 | 10 | number that we need to take to the Government agencies |
| 11:43:46 | 11 | to get the medical records and the service records that |
| 11:43:49 | 12 | we need. We've been talking with plaintiff's leadership |
| 11:43:52 | 13 | counsel about getting other information and then putting |
| 11:43:57 | 14 | packages together for us so we can determine eligibility |
| 11:44:00 | 15 | for EO offers. |
| 11:44:02 | 16 | So we have been working with them. They |
| 11:44:03 | 17 | recently provided us with information for approximately |
| 11:44:07 | 18 | 400 individuals who are plaintiffs in litigation. So |
| 11:44:10 | 19 | those are people who have cases before this Court. So |
| 11:44:13 | 20 | we would be getting the information for those |
| 11:44:15 | 21 | individuals to see whether they qualify for an offer |
| 11:44:18 | 22 | under the program. |
| 11:44:20 | 23 | On the other hand -- or also, at the same |
| 11:44:23 | 24 | time, the Navy has been reaching out to plaintiff's |
| 11:44:26 | 25 | counsel to discuss with them coordinating getting |

| | |
|---|---|
| 11:44:29 | 1 | packages of information sent to the Navy for people who |

packages of information sent to the Navy for people who
may qualify for offers under the program.  So we're
making progress, and we think a lot more offers will be
made in the coming months.

JUDGE DEVER:  As the Navy is building out
this database -- I mean, have you been -- has the Navy
been in touch with -- I mean, I know the plaintiffs have
been, I gather from an earlier hearing, trying to create
a database that in terms of information that each side
thinks is relevant to value a case.

I mean, I hope that y'all are talking to
each other and that if you're -- won't make a lot of
sense if the Navy builds a database that doesn't have
information that the plaintiffs thinks are material to
evaluating a value.  So, I mean, I would just hope that
y'all are talking to one another.  And if the plaintiffs
think that there's some glaring deficiency in the
database that the Navy is building, that -- in terms of
just the database.  I mean, nothing -- nothing requires
the Navy to make an offer anyway.  But it seems like a
waste of time if the Navy builds out a big database
without getting information from the plaintiffs as to
what the plaintiff thinks is -- are material factors
that ought to be in any database to try and categorize
cases.

| | |
|---|---|
| 11:45:52 | 1 |
| 11:45:55 | 2 |
| 11:46:02 | 3 |
| 11:46:06 | 4 |
| 11:46:11 | 5 |
| 11:46:14 | 6 |
| 11:46:18 | 7 |
| 11:46:21 | 8 |
| 11:46:26 | 9 |
| 11:46:30 | 10 |
| 11:46:36 | 11 |
| 11:46:38 | 12 |
| 11:46:41 | 13 |
| 11:46:44 | 14 |
| 11:46:44 | 15 |
| 11:46:46 | 16 |
| 11:46:50 | 17 |
| 11:46:52 | 18 |
| 11:46:56 | 19 |
| 11:46:59 | 20 |
| 11:47:02 | 21 |
| 11:47:05 | 22 |
| 11:47:07 | 23 |
| 11:47:11 | 24 |
| 11:47:14 | 25 |

So I just offer that to you as a -- as a matter of this process. Because as I talked about at the very first hearing -- I mean, by design, a design of the statute is that the cases are -- the vast majority are to be resolved administratively. So I hope that there is a real robust dialogue between the plaintiffs and the Department of Justice as the DOJ is building out a database. Because if the -- if the Navy or the DON, the Navy database doesn't have things that plaintiffs think are material, then -- then we're going to waste a lot of time. Because eventually that's going to need to be done. So I'm just -- if you could please let the Navy know that that strikes me as being really important.

MR. BAIN: I will do, Your Honor. And we've had several calls with plaintiff's counsel and Navy counsel and Department of Justice counsel talking about the information needed to make settlement offers under this program. And so that the Navy's database, which is receiving information, should be able to do all of the evaluation necessary under the administrative program. At the same time we've been talking with plaintiffs about setting up a database that eventually, hopefully will globally resolve the entire litigation. So we're in talks with them now and we've been following the

| | | |
|---|---|---|
| 11:47:17 | 1 | model by -- used by Judge Hellerstein in the first |
| 11:47:20 | 2 | responder litigation.  We're in talks with them now |
| 11:47:24 | 3 | about a census of questions that will be necessary to |
| 11:47:27 | 4 | populate a global resolution database.  We've been |
| 11:47:30 | 5 | exchanging the questionnaire with the plaintiffs.  We |
| 11:47:35 | 6 | got feedback from them.  We had some additional |
| 11:47:39 | 7 | responses to their feedback.  And so we're continuing to |
| 11:47:42 | 8 | try to finalize a database of the information that will |
| 11:47:47 | 9 | be needed for a global resolution, including both |
| 11:47:50 | 10 | litigation and any outstanding claims.  At some point we |
| 11:47:54 | 11 | may need a neutral to assist us with finalizing that |
| 11:47:58 | 12 | census if we have any disputes that we can't resolve |
| 11:48:01 | 13 | ourselves. |
| 11:48:02 | 14 | JUDGE DEVER:  Well, I know one of the topics |
| 11:48:04 | 15 | that we have on here is whether to appoint a settlement |
| 11:48:07 | 16 | master.  So I'm sure we'll talk about it at some point |
| 11:48:11 | 17 | today. |
| 11:48:12 | 18 | JUDGE BOYLE:  I wanted to ask:  Have you |
| 11:48:13 | 19 | ever answered the question as to whose budget this |
| 11:48:17 | 20 | settlement comes out of?  Does it come out of the |
| 11:48:19 | 21 | general Treasury, or out of Marine and Navy budget? |
| 11:48:22 | 22 | MR. BAIN:  It comes out the U.S. Treasury, |
| 11:48:24 | 23 | the judgment fund.  The fund that pays all government |
| 11:48:28 | 24 | settlements or cases in litigation. |
| 11:48:29 | 25 | JUDGE BOYLE:  So it's not competing with |

| | | |
|---|---|---|
| 11:48:30 | 1 | military apportionment? |
| 11:48:34 | 2 | MR. BAIN:  No, it's not coming out of the |
| 11:48:36 | 3 | military appropriations. |
| 11:48:38 | 4 | JUDGE BOYLE:  Okay. |
| 11:48:39 | 5 | MR. BAIN:  And, Your Honor, I will have that |
| 11:48:40 | 6 | specific information regarding settlements at future |
| 11:48:43 | 7 | conferences, you can be assured, if I don't have it here |
| 11:48:46 | 8 | today. |
| 11:48:53 | 9 | So one of the things that we need to do in |
| 11:48:57 | 10 | order to move forward on the global settlement front is |
| 11:48:59 | 11 | to agree on a database vendor.  So a vendor that can be |
| 11:49:03 | 12 | a third party that the Government and the plaintiffs can |
| 11:49:07 | 13 | both contribute to and will house the data that will be |
| 11:49:10 | 14 | used to ultimately reach a global resolution.  Before |
| 11:49:14 | 15 | the statute even passed, we consulted with the civil |
| 11:49:19 | 16 | division's chief information officer about the |
| 11:49:21 | 17 | Hellerstein model that was used to figure out if we |
| 11:49:24 | 18 | could do that type of a system and what requirements |
| 11:49:26 | 19 | there might be for it.  The Government requires security |
| 11:49:31 | 20 | for any system it uses that has personal information in |
| 11:49:33 | 21 | it.  It's called FedRAMP Moderate, and it's a |
| 11:49:38 | 22 | requirement that is set by law that certain security |
| 11:49:41 | 23 | systems must be in place.  We informed plaintiff's |
| 11:49:47 | 24 | counsel of this many, many months ago, even before |
| 11:49:49 | 25 | plaintiff's leadership committee was selected, that this |

| | | |
|---|---|---|
| 11:49:53 | 1 | is a requirement needed for a database vendor.  We are |
| 11:49:57 | 2 | waiting for the plaintiffs to propose vendors to us that |
| 11:50:00 | 3 | meet this requirement.  And we're still waiting for |
| 11:50:03 | 4 | that.  And we know that there's a deadline in the Case |
| 11:50:07 | 5 | Management Order for agreeing to a database vendor.  And |
| 11:50:11 | 6 | we're continuing our discussions with the plaintiff's |
| 11:50:15 | 7 | leadership committee regarding that. |
| 11:50:21 | 8 | And then with respect to the settlement |
| 11:50:23 | 9 | master, we raised this issue with the plaintiff's |
| 11:50:28 | 10 | leadership last week because we knew it would likely |
| 11:50:31 | 11 | come up at this conference.  And we agree the special |
| 11:50:34 | 12 | master are neutral, would be useful in resolving issues |
| 11:50:38 | 13 | that are necessary for the progress of the litigation. |
| 11:50:41 | 14 | As I mentioned, I think the most immediate concerns are |
| 11:50:45 | 15 | this global database and vendor that need to be |
| 11:50:48 | 16 | selected.  We have consulted with the U.S. Attorney's |
| 11:50:51 | 17 | Office about potential settlement masters and have some |
| 11:50:56 | 18 | names that we can discuss with the plaintiff's counsel |
| 11:50:59 | 19 | when appropriate. |
| 11:51:01 | 20 | I will say -- |
| 11:51:03 | 21 | JUDGE DEVER:  Go ahead and have those |
| 11:51:04 | 22 | discussions.  It's appropriate.  Go ahead and have them. |
| 11:51:06 | 23 | You don't have to have them right now, but... |
| 11:51:08 | 24 | MR. BAIN:  Okay. |
| 11:51:10 | 25 | The one thing I do need to point out is that |

| | | |
|---|---|---|
| 11:51:15 | 1 | U.S. can agree to a settlement administrator that makes |
| 11:51:19 | 2 | offers on behalf of the United States.  So there's |
| 11:51:21 | 3 | certain authority that the Attorney General has that |
| 11:51:23 | 4 | cannot be delegated to a third party. |
| 11:51:27 | 5 | JUDGE DEVER:  I mean, of course.  If this is |
| 11:51:28 | 6 | just a separate track facilitator that helps there to be |
| 11:51:34 | 7 | a dialogue to -- to move cases. |
| 11:51:39 | 8 | MR. BAIN:  Right. |
| 11:51:40 | 9 | JUDGE DEVER:  Administratively. |
| 11:51:42 | 10 | Administrative cases.  And then even cases that are |
| 11:51:44 | 11 | here.  But it's -- that's the whole point of a |
| 11:51:46 | 12 | settlement master under Rule 53.  So I would encourage |
| 11:51:51 | 13 | y'all to -- you know, after the hearing to talk about |
| 11:51:54 | 14 | that because it's -- I think it's important. |
| 11:51:59 | 15 | MR. BAIN:  Yes.  And we've used special |
| 11:52:01 | 16 | masters before in a Rule 53.  In multidistrict |
| 11:52:05 | 17 | litigations, they're very helpful.  So we would totally |
| 11:52:09 | 18 | support that. |
| 11:52:10 | 19 | And to address one of the things that |
| 11:52:17 | 20 | Mr. Bell raised with respect to the probate matter, we |
| 11:52:20 | 21 | also agree that this should be something that should be |
| 11:52:22 | 22 | resolved fairly quickly.  But our position is that North |
| 11:52:27 | 23 | Carolina law should apply to that. |
| 11:52:29 | 24 | JUDGE DEVER:  Well, you agree, though, it's |
| 11:52:30 | 25 | a matter of federal common law. |

| | | |
|---|---|---|
| 11:52:32 | 1 | MR. BAIN: No. |
| 11:52:33 | 2 | THE DEFENDANT: You don't. Why? |
| 11:52:34 | 3 | MR. BAIN: We believe the Federal Tort |
| 11:52:37 | 4 | Claims Act applies to fill any gaps in the Camp Lejeune |
| 11:52:40 | 5 | Justice Act. That law references the substantive law of |
| 11:52:45 | 6 | this State where the act or omission occurred. So that |
| 11:52:49 | 7 | would be North Carolina law. So there's no need to |
| 11:52:52 | 8 | create some federal common law. The Federal Tort Claims |
| 11:52:57 | 9 | Act, which supplies the waiver for the Camp Lejeune |
| 11:52:59 | 10 | Justice Act, references state substantive law. And so |
| 11:53:05 | 11 | North Carolina law should apply to who is an appropriate |
| 11:53:09 | 12 | representative in a wrongful death case. And once we |
| 11:53:12 | 13 | get that resolved, that will facilitate settlements in |
| 11:53:15 | 14 | other matters for cases where it's a wrongful death |
| 11:53:19 | 15 | situation or survivorship action. |
| 11:53:25 | 16 | Let me just check with cocounsel. I think |
| 11:53:27 | 17 | those were the primary things I wanted to address first. |
| 11:53:32 | 18 | Oh. Your Honors did issue the three of the |
| 11:53:36 | 19 | four orders that we submitted. The one order which also |
| 11:53:41 | 20 | is necessary before we can produce a lot of information |
| 11:53:43 | 21 | is an order on confidentiality. And so I just wanted to |
| 11:53:47 | 22 | raise that in case the Court has any questions about |
| 11:53:49 | 23 | that. |
| 11:53:50 | 24 | With respect to our responses to the |
| 11:53:53 | 25 | plaintiff's request for production which are due today, |

| | | |
|---|---|---|
| 11:53:56 | 1 | we have a number of materials that we're ready to |
| 11:53:58 | 2 | produce, along with our written responses, but until we |
| 11:54:02 | 3 | have that protective order in place, we can't produce |
| 11:54:04 | 4 | all of that material. |
| 11:54:08 | 5 | JUDGE DEVER: Give us the docket entry |
| 11:54:10 | 6 | number of that -- that draft. Do you have it? |
| 11:54:23 | 7 | MR. BAIN: It was submitted on the same date |
| 11:54:24 | 8 | as the other three, which I believe was the... |
| 11:54:32 | 9 | I have -- |
| 11:54:32 | 10 | JUDGE DEVER: Oh. So that's the 32-1? Is |
| 11:54:37 | 11 | that right? |
| 11:54:37 | 12 | MR. BAIN: I believe so. |
| 11:54:40 | 13 | JUDGE DEVER: I mean, it's docket entry 32. |
| 11:54:49 | 14 | MR. BAIN: It was filed with docket 26. |
| 11:54:54 | 15 | JUDGE DEVER: 26. |
| 11:54:55 | 16 | MR. BAIN: Yeah. |
| 11:55:33 | 17 | Judge Boyle, I do have that information now |
| 11:55:36 | 18 | if you would like that. |
| 11:55:52 | 19 | The three claimants who have accepted |
| 11:55:54 | 20 | settlement offers, one was for $250,000, one was for |
| 11:55:59 | 21 | $300,000, and one was for $300,000. |
| 11:56:03 | 22 | JUDGE BOYLE: Thank you. |
| 11:56:09 | 23 | JUDGE DEVER: Mr. Bell. |
| 11:56:10 | 24 | MR. BELL: Your Honor, normally, I don't get |
| 11:56:13 | 25 | too aggrieved at things, but if you'll allow me. Almost |

| | |
|---|---|
| 11:56:21 | 1 |
| 11:56:24 | 2 |
| 11:56:26 | 3 |
| 11:56:31 | 4 |
| 11:56:34 | 5 |
| 11:56:38 | 6 |
| 11:56:43 | 7 |
| 11:56:46 | 8 |

12 years we've litigated Camp Lejeune, and the
Government couldn't wait to tell me every time they
could that the Federal Tort Claims Act doesn't apply,
you can't win in this act; under North Carolina, you'll
get kicked out.  If there was any way we thought about
drafting this bill, it included the Federal Tort Claims
Act we have instituted.  This is a standalone bill where
federal common law applies.

What makes it interesting, Judge -- and I
think it's something that, to me, is ethically
controlling -- is when you have an Elective Option, that
they're making offers which they have admitted is
drastically reduced offers -- they've admitted that.
That doesn't bother me so much.  We can handle that.
But in order to accept the offer, the lawyer has to sign
an agreement that this is being made under the Federal
Tort Claims Act.  Which I think is wrong.  I think
that's illegal.  I think it's improper, and I'm not
going to do it.  Because this is what we fought this
case all about.  This is why Congress said we're not
going to do it.

If you fill in the gaps like they talk
about, what they're doing is just bringing into play
what they've for 12 years told these courts was not in
play.  And I would be surprised if -- if Congress knew

| | | |
|---|---|---|
| 11:57:48 | 1 | at the time they were drafting this bill that this would |
| 11:57:51 | 2 | bring it back under what the Government had already said |
| 11:57:55 | 3 | didn't apply.  So I just bring that up to Your Honor. |
| 11:57:59 | 4 | However that decision -- we would appreciate |
| 11:58:02 | 5 | an order on that.  Or at least if we need to brief it, |
| 11:58:05 | 6 | we'll be glad to. |
| 11:58:06 | 7 | JUDGE MYERS:  Well, it seems to me that we |
| 11:58:08 | 8 | need a case or controversy that says we need a |
| 11:58:11 | 9 | declaratory judgment.  We have a settlement offer |
| 11:58:13 | 10 | between these two parties.  That settlement offer says |
| 11:58:16 | 11 | that it's pursuant to the Federal Tort Claims Act.  We |
| 11:58:18 | 12 | disagree, we believe it should fall under federal common |
| 11:58:20 | 13 | law, and then brief it.  Bring one that's before one of |
| 11:58:23 | 14 | us. |
| 11:58:23 | 15 | MR. BELL:  Judge, we actually had one that |
| 11:58:26 | 16 | we were going to do.  Our husband and wife both have |
| 11:58:31 | 17 | identical cancers.  They're not related.  Both were |
| 11:58:34 | 18 | exposed almost identically.  One of them has since died. |
| 11:58:38 | 19 | They were there over the five years, which was part of |
| 11:58:40 | 20 | the option.  But they didn't -- they didn't meet the |
| 11:58:45 | 21 | latency requirement which was artificially done.  And |
| 11:58:48 | 22 | about 75 percent of the clients out there do not meet |
| 11:58:52 | 23 | that.  But, yet, while we might would have wanted to |
| 11:58:57 | 24 | accept the offer, then they require the lawyers to say |
| 11:59:00 | 25 | this is under the Tort Claims Act, is something we |

| | | |
|---|---|---|
| 11:59:03 | 1 | think -- we brought that up to the Government explaining |
| 11:59:07 | 2 | to them that we thought it was improper.  They say |
| 11:59:10 | 3 | they're looking into that, and we haven't heard back |
| 11:59:12 | 4 | from them. |
| 11:59:13 | 5 | JUDGE DEVER:  Well, I mean, I think on the |
| 11:59:14 | 6 | larger point of the Chief is that we're happy to rule on |
| 11:59:18 | 7 | things.  That's what we do for a living.  And -- but it |
| 11:59:21 | 8 | has to be in the context of we just can't, sort of, |
| 11:59:24 | 9 | write a letter back to y'all and say this is our view of |
| 11:59:26 | 10 | things.  It has to be in the context of an actual |
| 11:59:30 | 11 | dispute between somebody. |
| 11:59:31 | 12 | But in terms of these -- to the extent |
| 11:59:33 | 13 | they're important preliminary issues, you know, I think |
| 11:59:38 | 14 | we would be ready to rule on those things, but it just |
| 11:59:44 | 15 | needs to be filed.  And we put in the Case Management |
| 11:59:48 | 16 | Order very deliberately citing the Third Circuit case |
| 11:59:52 | 17 | that as a general matter, we anticipate following the |
| 11:59:56 | 18 | orders in our other cases, so that we're not reinventing |
| 11:59:58 | 19 | the wheel every short-form complaint. |
| 12:00:02 | 20 | And so again, in terms of that issue, for us |
| 12:00:10 | 21 | to resolve it, it just -- it needs to be in the context |
| 12:00:13 | 22 | of some kind of a dispute.  And if we get it, we'll act |
| 12:00:19 | 23 | on it. |
| 12:00:20 | 24 | MR. BELL:  I understand, Your Honor. |
| 12:00:21 | 25 | JUDGE DEVER:  And then we would anticipate, |

| | | |
|---|---|---|
| 12:00:23 | 1 | just so that y'all know, absent something unusual, we |
| 12:00:26 | 2 | have the language in Case Management Order 2, we follow |
| 12:00:29 | 3 | it. |
| 12:00:30 | 4 | And I would just say on the issue of the -- |
| 12:00:33 | 5 | the one deposition, and, I mean, we have a good cause |
| 12:00:36 | 6 | out, and that doesn't mean impossible or anything like |
| 12:00:39 | 7 | that. And to the extent that there's some 30(b)(6) |
| 12:00:44 | 8 | deposition that could be taken early, I know my own view |
| 12:00:48 | 9 | would be, well, I mean, if you needed to take a |
| 12:00:50 | 10 | deposition of that person that works for the Government |
| 12:00:52 | 11 | or used to work for the Government again, it will be |
| 12:00:55 | 12 | like, okay. I mean, I would let it. |
| 12:01:00 | 13 | And to the protective order point, Mr. Bain, |
| 12:01:04 | 14 | I mean, we will -- to the extent there's some |
| 12:01:07 | 15 | confidentiality order we need to get entered, we'll get |
| 12:01:10 | 16 | it entered. But I'm just at a loss to understand how |
| 12:01:16 | 17 | much extensive negotiation or coordination there has to |
| 12:01:19 | 18 | be with other people to the extent that their |
| 12:01:24 | 19 | information was submitted as part of some study. If |
| 12:01:27 | 20 | it's being produced to officers of the court pursuant to |
| 12:01:31 | 21 | a confidentiality order, that would prohibit that being |
| 12:01:38 | 22 | produced. And, obviously, the benefit of it is it |
| 12:01:44 | 23 | allows the plaintiffs to get the information that they |
| 12:01:47 | 24 | think they need. It's not, you know, sort of arguing |
| 12:01:50 | 25 | about relevance or it has people that are being studied |

| | | |
|---|---|---|
| 12:01:53 | 1 | for something else.  It's like, well, I mean, there's a |
| 12:01:56 | 2 | lot of irrelevant stuff that gets produced in discovery |
| 12:01:58 | 3 | that never sees the light of day in an actual trial. |
| 12:02:01 | 4 | But I just -- I'm just not aware of anything that would |
| 12:02:09 | 5 | inhibit or should prevent y'all from producing this |
| 12:02:14 | 6 | information about the studies subject to the |
| 12:02:19 | 7 | confidentiality order, and then there can be later |
| 12:02:22 | 8 | fights about legal issues.  But not producing the |
| 12:02:26 | 9 | information, we're just wasting time.  And time is the |
| 12:02:32 | 10 | gift necessary for all other gifts. |
| 12:02:42 | 11 | MS. BASH:  Your Honor, may I say a little |
| 12:02:43 | 12 | bit, just a few comments on things that have come up? |
| 12:02:46 | 13 | One is on -- well, first of all on this FTCA issue, we |
| 12:02:51 | 14 | have spoken a lot with DOJ, and they have brought it up |
| 12:02:55 | 15 | in several contexts, that the FTCA fills the gaps.  And |
| 12:02:57 | 16 | the latest was this filing on Friday.  So we will |
| 12:02:59 | 17 | respond to that, understanding that it's not a case or |
| 12:03:01 | 18 | controversy, but we've also been waiting for a place to |
| 12:03:04 | 19 | tee it up, and we will do it in one of these estate |
| 12:03:07 | 20 | cases.  Because, again, that just -- the issue is very |
| 12:03:10 | 21 | broad.  It affects all of the clients.  It will, I |
| 12:03:13 | 22 | think, determine how the litigation goes.  And so we're |
| 12:03:15 | 23 | trying to get that in front of you early, and we will. |
| 12:03:18 | 24 | On resolution:  So we were not involved at |
| 12:03:22 | 25 | all in the EO.  It was a secret to us.  We found out it |

| | | |
|---|---|---|
| 12:03:26 | 1 | was coming and asked if we could give some feedback |
| 12:03:29 | 2 | because we do think that, you know, with a few tweaks, |
| 12:03:32 | 3 | it could have applied much more broadly than it is going |
| 12:03:35 | 4 | to apply, including with respect to latency. |
| 12:03:38 | 5 | Nevertheless, we are helping DOJ. They asked us to give |
| 12:03:42 | 6 | them some information for clients who are before the |
| 12:03:44 | 7 | Court. And so we're giving them dates of birth, Social |
| 12:03:47 | 8 | Security numbers so that they can see if people, you |
| 12:03:50 | 9 | know, are compliant with what they want. We've had |
| 12:03:54 | 10 | mixed reactions, you know, as you could expect. |
| 12:03:57 | 11 | Judge Dever, as you said in the first |
| 12:03:59 | 12 | hearing, some people just want to get off the train now |
| 12:04:01 | 13 | and they're, you know, deeply discounted offers. I |
| 12:04:04 | 14 | think DOJ has said as much. But they're ripe for some |
| 12:04:08 | 15 | people, and so we want to get as many of those in |
| 12:04:11 | 16 | people's hands. |
| 12:04:11 | 17 | The tricky thing is this divide between the |
| 12:04:14 | 18 | Navy and DOJ. The Navy seems to just be moving much |
| 12:04:18 | 19 | more slowly. The bulk of the cases are there. And so |
| 12:04:22 | 20 | we actually -- my firm tried to get a bunch of people |
| 12:04:26 | 21 | here in court after that was announced to see if we |
| 12:04:29 | 22 | could move them more quickly for DOJ. But that is also |
| 12:04:33 | 23 | a little bit of the reason there's the delay in your |
| 12:04:35 | 24 | seeing the short-form complaints. Once they come over |
| 12:04:38 | 25 | here, they're no longer entitled to receive that offer. |

```
12:04:40   1    And so, you know, every time before we file a short-form
12:04:43   2    complaint, we need to call the client and say, you know,
12:04:46   3    you're getting off -- you're no longer eligible to
12:04:48   4    receive that.  And so this isn't a delay where we're
12:04:52   5    trying, you know, to pick our best plaintiffs or
12:04:54   6    anything like that.  We're very much, as Ed said,
12:04:57   7    cognizant of wanting to resolve these quickly.  We think
12:05:01   8    the only way to resolve these quickly is to get a range,
12:05:03   9    you know, in the trials so that when we're at the
12:05:06  10    resolution stage with DOJ --
12:05:08  11              JUDGE BOYLE:  Do you think there's any room
12:05:09  12    for summary judgment in this process?
12:05:12  13              MS. BASH:  Absolutely.
12:05:13  14              JUDGE BOYLE:  That gets done quickly.
12:05:16  15              MS. BASH:  Yes.  Yes.  We have -- we're in
12:05:17  16    the process of writing a couple of motions for summary
12:05:20  17    judgment -- partial summary judgment.
12:05:21  18              JUDGE BOYLE:  I mean, the schedule for
12:05:23  19    trials is remote; summary judgment is immediate.
12:05:29  20              MS. BASH:  Yes.  No, absolutely.  We plan to
12:05:31  21    start there.
12:05:34  22              JUDGE BOYLE:  And if it doesn't play out,
12:05:36  23    people in Richmond will tell us, and it will come back
12:05:39  24    and no harm, no foul.
12:05:41  25              MS. BASH:  Yes.  No, absolutely.  We have --
```

| | | |
|---|---|---|
| 12:05:43 | 1 | we have a great briefing committee and we have a couple |
| 12:05:46 | 2 | of drafts just waiting -- waiting to be filed.  And we |
| 12:05:50 | 3 | will file them soon.  Again -- |
| 12:05:52 | 4 | JUDGE BOYLE:  And it's finite.  You file it, |
| 12:05:54 | 5 | they have to respond or else it's admitted. |
| 12:05:56 | 6 | MS. BASH:  Right.  Yes.  They're coming. |
| 12:06:01 | 7 | But so I just wanted to say on resolution |
| 12:06:04 | 8 | specifically:  We are working toward a database.  We've |
| 12:06:08 | 9 | chosen a vendor for the plaintiffs in court.  Unlike in |
| 12:06:11 | 10 | Hellerstein where the entire universe was before the |
| 12:06:16 | 11 | court; here, they're not.  Most of them are sitting |
| 12:06:19 | 12 | before the Navy.  And we don't want to flood the Court |
| 12:06:21 | 13 | unnecessarily just for the purposes of doing something |
| 12:06:23 | 14 | like that.  And so I do think it will be a little bit |
| 12:06:26 | 15 | more bifurcated with, you know, they have a database and |
| 12:06:29 | 16 | we have -- we have, you know, our information of |
| 12:06:30 | 17 | clients.  But we very much do want to work with them, |
| 12:06:32 | 18 | and we'll continue to do that. |
| 12:06:34 | 19 | And the FedRAMP issue is a tricky one.  He |
| 12:06:38 | 20 | just said -- you know, Mr. Bain just said that they need |
| 12:06:40 | 21 | it for purposes of putting personal information in |
| 12:06:43 | 22 | there.  But our point is if we have the information |
| 12:06:46 | 23 | ourselves -- right -- if you've produced it in |
| 12:06:48 | 24 | discovery, we can put it wherever we want.  We don't |
| 12:06:50 | 25 | necessarily have to comply with some of those things. |

```
12:06:52   1   The vendors that the Government uses and having worked
12:06:54   2   in Government for a very long time, sometimes the
12:06:56   3   vendors that are acceptable to the Government are kind
12:07:00   4   of the older, dinosaur, slower vendors.  And so we're
12:07:04   5   trying to work with somebody that will move quickly.
12:07:08   6   Get all of the information there --
12:07:08   7             JUDGE DEVER:  Perfect is the enemy of
12:07:10   8   better.  Just don't -- I mean, again -- I mean, I
12:07:12   9   realize that y'all are really doing your best for your
12:07:16   10  clients.  But perfect is the enemy of better.  And it's
12:07:20   11  better for y'all to talk and agree on a vendor and --
12:07:24   12            MS. BASH:  No.  Absolutely.  So that's -- so
12:07:27   13  that's part of it, though.  Right?  So some of the newer
12:07:30   14  vendors who do this repeatedly who are not FedRAMP
12:07:33   15  certified will be much faster, because they have the
12:07:36   16  system built.  And give them the information and it's
12:07:38   17  there.  And so it's actually in this case, I do think
12:07:40   18  that those match up.
12:07:42   19            JUDGE DEVER:  And I have no idea.  I mean,
12:07:43   20  there's -- we live in a world of acronyms and, you know,
12:07:47   21  maybe it would incentivize one of these new folks to get
12:07:52   22  the FedRAMP certification.  It doesn't matter to me, but
12:07:56   23  it would seem to me that if it matters to the DOJ, y'all
12:07:59   24  need to work to figuring that out.  I think it's also
12:08:02   25  one of the benefits of having a settlement master that
```

```
12:08:06   1    would have -- in my vision of what that person would do,
12:08:10   2    that person would have insight not just into the 1300 or
12:08:15   3    so cases that our court has, but in the 117,000 to try
12:08:19   4    and help facilitate resolution.  Whether that involves
12:08:24   5    one or two people, you know, we would be open to your
12:08:27   6    suggestions on that.  But I would ask y'all to add that
12:08:30   7    to your list of things to talk about because having
12:08:33   8    somebody facilitating a dialogue on the topic of global
12:08:39   9    resolution is in everybody's interest.
12:08:41  10           MS. BASH:  So absolutely.  And it is a
12:08:45  11    priority.  It is not yet the bottleneck, because what
12:08:47  12    we're doing is -- I'm again analogizing to the
12:08:50  13    Hellerstein model, is negotiating the data fields.  And
12:08:52  14    that is moving forward, I think, very well.  We're
12:08:55  15    supposed to get a new draft from the DOJ soon.  And
12:08:59  16    because unlike in Hellerstein, we don't have everybody
12:09:01  17    before us.  You know, the 117,000 people, we can't order
12:09:05  18    them.  You know, we're not -- we don't rule over them.
12:09:09  19    And so we want to have that data set complete to go to
12:09:13  20    them one time and say, "Fill all of this out."  And the
12:09:18  21    carrot is -- unlike, you know, a court order, the carrot
12:09:21  22    is this is what DOJ had said they will settle the cases
12:09:25  23    on, this is what we think we need, and then we hopefully
12:09:27  24    can spit out a number either earlier or after the trials
12:09:30  25    get going.  But that's what we're actively negotiating.
```

| | | |
|---|---|---|
| 12:09:36 | 1 | JUDGE DEVER:  I mean, that's good to hear. |
| 12:09:37 | 2 | Because that's -- I mean, if the DOJ says we're not |
| 12:09:38 | 3 | going to settle unless we have this information, well -- |
| 12:09:42 | 4 | MS. BASH:  There's your carrot.  That's |
| 12:09:43 | 5 | right. |
| 12:09:44 | 6 | JUDGE DEVER:  -- the plaintiffs need to know |
| 12:09:45 | 7 | that.  And then the plaintiffs can say, "Well, then I'm |
| 12:09:46 | 8 | going to have my trial 20 years from now," and they can |
| 12:09:48 | 9 | live with that.  But it's really important for, like you |
| 12:09:53 | 10 | say, that process for if DOJ tells you if we don't have |
| 12:09:58 | 11 | this data -- and even if it's some issue that you see |
| 12:10:00 | 12 | being litigated later on an exposure issue about where |
| 12:10:04 | 13 | you were on the base or something, to the extent that |
| 12:10:07 | 14 | DOJ is -- and you have the information, just because you |
| 12:10:11 | 15 | agree to it in some administrative database doesn't mean |
| 12:10:14 | 16 | that we've ruled on it.  It just means it's a potential |
| 12:10:17 | 17 | way to facilitate some resolution for the people that |
| 12:10:22 | 18 | have claims back to, potentially, 1953. |
| 12:10:26 | 19 | MS. BASH:  Right. |
| 12:10:27 | 20 | JUDGE DEVER:  So I'm glad that y'all are |
| 12:10:28 | 21 | talking, and I would encourage that to continue.  And |
| 12:10:32 | 22 | again, you don't have to, sort of, fight the fights of, |
| 12:10:35 | 23 | you know, if we let this be in a database, then that |
| 12:10:38 | 24 | means we're agreeing to the relevance of this or that in |
| 12:10:41 | 25 | court.  It's like, no, it doesn't.  It means you're |

| | | |
|---|---|---|
| 12:10:46 | 1 | agreeing to information in the database. |
| 12:10:48 | 2 | MS. BASH: Yeah. No. And I completely |
| 12:10:50 | 3 | agree. The hesitation with is going -- it's an older |
| 12:10:54 | 4 | population. It's an ill population. Pinging them many |
| 12:10:57 | 5 | times for incremental data will reduce responses, we |
| 12:11:01 | 6 | know from experience. And so we do -- we would like to |
| 12:11:04 | 7 | complete -- it will never be perfect. But as much as we |
| 12:11:08 | 8 | can, I think we're very close. And then as soon as we |
| 12:11:11 | 9 | get agreement on that, we can go out to people one time, |
| 12:11:13 | 10 | collect as much as we can, and then go from there. |
| 12:11:16 | 11 | But in the meantime, for purposes of giving |
| 12:11:18 | 12 | them a sense, we have aggregate data. You know, this -- |
| 12:11:21 | 13 | the people here at the table represent a very large |
| 12:11:23 | 14 | number of clients and we're able to give -- you know, |
| 12:11:25 | 15 | figure out the average latency for a kidney cancer and |
| 12:11:28 | 16 | so that -- so relevant data points. |
| 12:11:31 | 17 | And then the last thing I wanted to address, |
| 12:11:32 | 18 | you asked about the discovery pool profile form. So |
| 12:11:35 | 19 | we're -- that's due, I think, next week to the Court. |
| 12:11:37 | 20 | And we're negotiating it with DOJ. We owe them a draft. |
| 12:11:41 | 21 | We just spoke last week and agree that they were going |
| 12:11:44 | 22 | to serve, kind of, in the place of interrogatories to |
| 12:11:46 | 23 | streamline that process. And so we want to add a few |
| 12:11:48 | 24 | more things to our proposal before sending it over. And |
| 12:11:52 | 25 | we'll do that, I hope, tomorrow. You know, tomorrow or |

| | | |
|---|---|---|
| 12:11:55 | 1 | the next day.  So... |
| 12:11:57 | 2 | JUDGE DEVER:  And then, Mr. Bell, I know |
| 12:11:58 | 3 | y'all had submitted -- and whoever on your team can |
| 12:12:01 | 4 | answer this.  I know you have the draft common benefit |
| 12:12:05 | 5 | order that you had submitted.  And, obviously, DOJ filed |
| 12:12:07 | 6 | the response it filed Friday.  Do you think we need to |
| 12:12:14 | 7 | resolve that -- the FTCA issue that they -- that the |
| 12:12:19 | 8 | Department raised in order to enter that? |
| 12:12:22 | 9 | MR. BELL:  No, Your Honor.  Please refer to |
| 12:12:26 | 10 | page 25 and 26.  It clearly states how that holdback is |
| 12:12:30 | 11 | to be applied to the gross settlement.  It has nothing |
| 12:12:34 | 12 | to do with fees.  I do take issue with some of the |
| 12:12:37 | 13 | things in that filing.  We'll -- |
| 12:12:41 | 14 | JUDGE DEVER:  Right.  But in terms of just |
| 12:12:42 | 15 | -- and I want to ask the same thing to Mr. Bain.  I |
| 12:12:44 | 16 | mean, I know -- I read the filing.  But is there |
| 12:12:46 | 17 | anything in the draft that you think would prevent us |
| 12:12:50 | 18 | from entering that, Mr. Bain?  I mean, it's not with |
| 12:12:54 | 19 | prejudice to your position on the FTCA issue that you |
| 12:12:59 | 20 | raised, right? |
| 12:13:00 | 21 | MR. BAIN:  No, Your Honor.  I think that, |
| 12:13:02 | 22 | you know, we just wanted to point out that in |
| 12:13:04 | 23 | determining the holdback rate, need to balance those |
| 12:13:07 | 24 | interests and know that the FTCA cap applies.  Our |
| 12:13:12 | 25 | position, just in response briefly to what Mr. Bell |

| 12:13:16 | 1 | said, is that the CLJA refers to the FTCA administrative |
| 12:13:20 | 2 | process which provides the authority to settle |
| 12:13:22 | 3 | administrative claims, which in turn provides the fee |
| 12:13:26 | 4 | cap.  So that's why that argument, we believe, is |
| 12:13:31 | 5 | supported by the CLJA itself.  So -- |
| 12:13:34 | 6 | JUDGE DEVER:  Right.  And that's a legal |
| 12:13:35 | 7 | issue.  We'll have to resolve it.  It's a little ripe, |
| 12:13:39 | 8 | but it's not ripe yet. |
| 12:13:41 | 9 | MR. BELL:  Your Honor is on the gross |
| 12:13:43 | 10 | settlement, not on -- not on the amount of the fee.  So |
| 12:13:48 | 11 | in our opinion, it has nothing to do with what's |
| 12:13:52 | 12 | presently before the Court by the Government. |
| 12:13:55 | 13 | MR. BAIN:  Your Honor, if I can just make |
| 12:13:57 | 14 | one other point.  I think I need to clear one thing that |
| 12:14:00 | 15 | was said in the record.  I think a couple of times it's |
| 12:14:02 | 16 | been said that the Government admits the EO offers are |
| 12:14:06 | 17 | discounted or deeply discounted.  I would just point out |
| 12:14:08 | 18 | that that program is a base-wide approach.  It waives |
| 12:14:13 | 19 | all offsets -- Medicare, Medicaid, and VA offsets.  So |
| 12:14:19 | 20 | in our view, it's not a discount -- it's a very fair |
| 12:14:22 | 21 | program. |
| 12:14:37 | 22 | JUDGE MYERS:  Judge Jones, we're going to |
| 12:14:39 | 23 | turn it over to you to say anything you would like to |
| 12:14:41 | 24 | say as the person who will now become a significant |
| 12:14:45 | 25 | feature in the lives of everyone present. |

| | | |
|---|---|---|
| 12:14:48 | 1 | JUDGE JONES:  Thank you. |
| 12:14:50 | 2 | I really had two -- two questions, and they |
| 12:14:56 | 3 | were answered, sort of, at the outset.  The first |
| 12:14:59 | 4 | question was the status of discovery.  And I think |
| 12:15:04 | 5 | that's been -- that's been answered.  And my second |
| 12:15:08 | 6 | question was, really, as the one that's handling -- |
| 12:15:15 | 7 | well, probably will be handling -- who will probably be |
| 12:15:18 | 8 | handling discovery speaks, I want to get kind of an idea |
| 12:15:21 | 9 | of the nature of those disputes in cases such as this. |
| 12:15:26 | 10 | And I guess I've kind of gleaned a sense of that from |
| 12:15:31 | 11 | our discussions about the database and health studies. |
| 12:15:37 | 12 | And maybe those will be disputes to bring to the Court |
| 12:15:42 | 13 | in the future. |
| 12:15:44 | 14 | But that discussion sort of prompted a third |
| 12:15:47 | 15 | question.  This may be a fundamental question, sort of |
| 12:15:53 | 16 | new to this litigation.  Mr. Bain has described 12 years |
| 12:15:58 | 17 | of litigation in these -- with these claims.  How much |
| 12:16:01 | 18 | of this information has been traded between the parties |
| 12:16:05 | 19 | such that y'all really don't need to fight about it? |
| 12:16:08 | 20 | The Government's got it or the plaintiffs have it, and |
| 12:16:11 | 21 | maybe you've -- maybe you've covered that in what you're |
| 12:16:15 | 22 | talking about the stipulations. |
| 12:16:15 | 23 | MR. BELL:  No, Your Honor.  We got some |
| 12:16:17 | 24 | information at the beginning.  In the first cases, there |
| 12:16:20 | 25 | were actually just four depositions taken.  And this was |

| | | |
|---|---|---|
| 12:16:23 | 1 | a preliminary allowance by the Court for the purpose of |
| 12:16:28 | 2 | looking into the motions to dismiss.  We do have some |
| 12:16:32 | 3 | data but we don't have a lot. |
| 12:16:34 | 4 | I'll give you an example, Judge.  For many, |
| 12:16:38 | 5 | many years the Government told the public and told |
| 12:16:41 | 6 | everybody that the contamination came from an offsite |
| 12:16:46 | 7 | dry-cleaning service.  It was only after we -- in fact, |
| 12:16:50 | 8 | in filing those original claims, we allege that.  But |
| 12:16:55 | 9 | later learned that, in fact, a lot of the pollution |
| 12:16:58 | 10 | contamination comes from their own internal leaking |
| 12:17:02 | 11 | wells -- and not wells, but tanks.  So we got some |
| 12:17:07 | 12 | information. |
| 12:17:08 | 13 | I'm under the impression or understand that |
| 12:17:10 | 14 | there's -- I call it "the leaking tank database," but |
| 12:17:13 | 15 | they call it something else.  But we haven't gotten |
| 12:17:16 | 16 | that, we don't think.  So there's some things out there |
| 12:17:18 | 17 | that we think might matter if we're going to have to go |
| 12:17:21 | 18 | through this arduous process of this epidemiological |
| 12:17:26 | 19 | workup that we don't think is necessary.  A lot of this |
| 12:17:29 | 20 | might not be necessary at all. |
| 12:17:31 | 21 | And of course Judge Dever mentioned we're |
| 12:17:33 | 22 | not looking at fault, but we think that there's a lot |
| 12:17:40 | 23 | out there that we don't have.  Especially studies.  We |
| 12:17:43 | 24 | are aware that there were private contractors hired. |
| 12:17:46 | 25 | I'm not aware of whether we have all of those or have |

12:17:49  1    any of them yet.  So there are some things we're looking

12:17:51  2    for.

12:17:54  3                    JUDGE JONES:  Mr. Bain.

12:17:54  4                    MR. BAIN:  So, Your Honor, yes, we have

12:17:56  5    turned over a lot of information as a result of the

12:17:58  6    prior litigation, and we're offering and going to turn

12:18:01  7    over all of that information again just to make sure

12:18:03  8    that they have it.  There's a lot of public information.

12:18:08  9    The EPA has published a website which has their whole

12:18:13  10   site file.  The Navy has their environmental information

12:18:18  11   online.  The ATSDR reports are, of course, online.  This

12:18:23  12   site has been extensively studied by the Marine Corps

12:18:27  13   itself, by the general accountability office -- or

12:18:30  14   Government Accountability Office, by the EPA.  So a lot

12:18:33  15   of that information has already been gathered.

12:18:35  16                   With respect to other databases that the

12:18:37  17   plaintiffs claim that they don't have, we will try to

12:18:40  18   make those available to the plaintiffs.  But as far as

12:18:44  19   the ongoing ATSDR studies, that's one thing that may not

12:18:49  20   have been covered by the past litigation because that's

12:18:50  21   more recent work.  But the studies themselves are

12:18:52  22   available, and I think then the issue is what about all

12:18:55  23   of the work that's been done by ATSDR and how much of

12:18:58  24   that can be made available to the plaintiffs.  So we'll

12:19:02  25   be looking into that.

| | | |
|---|---|---|
| 12:19:03 | 1 | JUDGE JONES: The next question I had is |
| 12:19:05 | 2 | housekeeping. We have a conference scheduled the first |
| 12:19:08 | 3 | and third Tuesday of every month. The first Tuesday of |
| 12:19:15 | 4 | November is not that far away. I don't know if it's |
| 12:19:19 | 5 | worthwhile to forego that meeting and meet on the third |
| 12:19:25 | 6 | Tuesday of November. Do the parties have any opinion |
| 12:19:32 | 7 | about that? |
| 12:19:33 | 8 | MR. BAIN: Your Honor, if I may suggest -- |
| 12:19:36 | 9 | of course, it's totally at the Court's discretion. |
| 12:19:38 | 10 | Maybe the second Tuesday because the third Tuesday is in |
| 12:19:40 | 11 | Thanksgiving week. But -- |
| 12:19:43 | 12 | JUDGE JONES: Well, I wanted to set a day |
| 12:19:46 | 13 | that we could make a permanent day so that the Tuesday |
| 12:19:50 | 14 | in November doesn't conflict with -- or the day we |
| 12:19:54 | 15 | picked in November doesn't fall in Christmas week or |
| 12:20:00 | 16 | July the 4th week. And Tuesdays -- if you didn't know |
| 12:20:05 | 17 | this, Tuesdays during the calendar are the best day to |
| 12:20:09 | 18 | meet because there's -- it avoids Thanksgiving and other |
| 12:20:14 | 19 | holidays. So Tuesdays seem to be the best time to meet. |
| 12:20:19 | 20 | MR. BELL: Judge, maybe it would be best if |
| 12:20:22 | 21 | we did have the nearer Tuesday. We'll know today |
| 12:20:27 | 22 | whether we need to talk with you about that important |
| 12:20:30 | 23 | discovery. |
| 12:20:30 | 24 | JUDGE JONES: Okay. |
| 12:20:31 | 25 | MR. BELL: Maybe by then we'll have had some |

| | | |
|---|---|---|
| 12:20:33 | 1 | answer to our request for our 30(b)(6). So maybe a |
| 12:20:36 | 2 | conversation will -- |
| 12:20:36 | 3 | JUDGE JONES: Well, let's keep it on the |
| 12:20:38 | 4 | calendar. And if the parties come to some agreement, |
| 12:20:41 | 5 | the -- maybe three days before the Tuesday that there's |
| 12:20:44 | 6 | no need to meet -- we don't need to meet just to meet. |
| 12:20:47 | 7 | I want our meets to be productive. So we'll put -- keep |
| 12:20:51 | 8 | it on the calendar. And if there's a consensus that we |
| 12:20:53 | 9 | don't need to meet, then maybe we can not do that. |
| 12:20:57 | 10 | MR. BELL: The order requires a status |
| 12:20:58 | 11 | conference -- status report for next Tuesday by |
| 12:21:01 | 12 | tomorrow. Can we, at least for the first one, forego |
| 12:21:04 | 13 | that one? |
| 12:21:05 | 14 | JUDGE JONES: The status report? |
| 12:21:06 | 15 | MR. BELL: Yes, sir. |
| 12:21:07 | 16 | JUDGE JONES: Yes, sir. |
| 12:21:08 | 17 | MR. BELL: Thank you. |
| 12:21:12 | 18 | JUDGE MYERS: Anything further that needs to |
| 12:21:13 | 19 | be brought before the Court during the status conference |
| 12:21:15 | 20 | by any other participant on either side? |
| 12:21:22 | 21 | (No response.) |
| 12:21:24 | 22 | JUDGE MYERS: All right. Seeing none, |
| 12:21:26 | 23 | seeing none, thank you everybody. We are now going to |
| 12:21:29 | 24 | turn this over to Judge Jones for the purposes of these |
| 12:21:33 | 25 | meetings. As I noted earlier, and as Judge Dever |

```
12:21:39   1    reified, we're not -- I wish we were -- this was a
12:21:42   2    one-judge operation sometimes and that these were not
12:21:45   3    all individual cases.  It would simplify things for
12:21:49   4    you-all to only be dealing with only one of us.  I
12:21:52   5    understand that.  But the nature of this litigation is
12:21:54   6    such that having particularized facts with a live issue
12:22:01   7    that we can then rule on will give you your best
12:22:04   8    opportunity to get answers.  They're not going to be a
12:22:05   9    forecast of what one judge might think, but then be an
12:22:10  10    order of the court that the others of us are going to
12:22:12  11    look at and give great deference to.  They will not be
12:22:16  12    controlling but they will receive great deference
12:22:19  13    amongst the judges of this court.  We have discussed
12:22:21  14    that.  It's in the standing orders that are now before
12:22:23  15    you.
12:22:24  16               So unlike the ordinary litigation where you
12:22:27  17    have a single judge and that judge can tell you where
12:22:29  18    they're leaning, this isn't that, unfortunately.  So the
12:22:34  19    answers to some of these questions, I think, might be
12:22:36  20    slightly different amongst the four of us.  Judge
12:22:40  21    Flanagan is not here to nod vigorously.  But they might
12:22:44  22    be slightly different amongst the four of us.  We will
12:22:49  23    do our best, though, to rule expeditiously and try not
12:22:53  24    to become your bottleneck.  We want to keep you moving.
12:22:56  25    But to make this litigation work given its unique
```

| | | |
|---|---|---|
| 12:23:00 | 1 | nature, I think we need to have things that are before |
| 12:23:04 | 2 | the Court, briefed and ruled upon in ways that are going |
| 12:23:07 | 3 | to be helpful to you. We commit to doing that. |
| 12:23:10 | 4 | JUDGE DEVER: And I would add that I |
| 12:23:12 | 5 | would -- you should anticipate that we're -- we're not |
| 12:23:16 | 6 | going to have multiple 702 hearings per disease. I |
| 12:23:20 | 7 | mean, one judge is going to get a disease or -- and rule |
| 12:23:27 | 8 | on that. You're not going to get four Daubert rulings |
| 12:23:30 | 9 | from four judges. That ultimately when we get to that |
| 12:23:34 | 10 | stage, that we have talked about that. And that just |
| 12:23:37 | 11 | seems to me to make the most sense. And -- but I echo |
| 12:23:42 | 12 | everything else -- everything that the Chief said about |
| 12:23:44 | 13 | the process. I mean, we're ready to -- to move on these |
| 12:23:51 | 14 | things and grateful to Judge Jones for agreeing to have |
| 12:23:56 | 15 | those meetings. And part of it, why we had them all on |
| 12:24:01 | 16 | a certain date, is that to the extent any district judge |
| 12:24:05 | 17 | wants to attend, they just might attend. |
| 12:24:11 | 18 | JUDGE MYERS: All right. Thank you, |
| 12:24:13 | 19 | everybody. |
| 12:25:04 | 20 | (The proceedings concluded at 12:25 p.m.) |
| | 21 | *       *       * |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1                    UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF NORTH CAROLINA

3

4

5                  CERTIFICATE OF OFFICIAL REPORTER

6

7              I, Jennifer C. Carroll, RMR, CRR, CRC,

8    Federal Official Court Reporter, in and for the United

9    States District Court for the Eastern District of North

10   Carolina, do hereby certify that pursuant to Section

11   753, Title 28, United States Code, that the foregoing is

12   a true and correct transcript of the stenographically

13   reported proceedings held in the above-entitled matter

14   and that the transcript page format is in conformance

15   with the regulations of the Judicial Conference of the

16   United States.

17

18

19   Dated this 1st day of November, 2023.

20

21

22                          /s/ Jennifer C. Carroll
                            Jennifer C. Carroll, RMR, CRR, CRC
23                          U.S. Official Court Reporter

24

25