IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: | ) |
| CAMP LEJEUNE WATER LITIGATION | ) |
| | ) |
| This Pleading Relates to: | ) |
| ALL CASES | ) |

**PLAINTIFFS' LEADERSHIP GROUP'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION IN RESPONSE
TO FIRST SET OF REQUEST FOR PRODUCTION**

For the following reasons, the Plaintiffs' Leadership Group ("PLG") respectfully requests that the Court grant the Motion to Compel Document Production in Response to First Set of Request for Production.

**INTRODUCTION**

At present, there are approximately 1400 actions asserting claims under the Camp Lejeune Justice Act ("CLJA") pending with this Court. [D.E. 60, at p 1] In light of this significant caseload, the Court entered Case Management Order No. 2 on September 26, 2023 ("CMO-2"). [D.E. 23] In CMO-2, the Court established a series of discovery deadlines and made clear that it "expects the Parties to conduct discovery efficiently" and for the first trials to be held in 2024. [D.E. 23, at § XI] The deadline for the completion of fact discovery for Track 1 Discovery Plaintiffs is ninety days from the Track 1 Order, and the PLG intends to move for entry of that order soon. [D.E. 23, at § XI.A.iv.e] That schedule is essential to preventing the CLJA litigation from spanning (in Judge Dever's words) "the life of the entire Roman Empire." [Ex. 13, Tr. of 4/5/23 Hr'g, at p 8:21]

Unfortunately, Defendant's dilatory efforts threaten to upend the Court's schedule. The PLG's First Request for Production of Documents (the "First Request") was served on September

28, 2023. [Ex. 1][1] Despite the passage of nearly two-and-a-half months, Defendant has failed to produce several categories of responsive documents. Defendant has not contested the discoverability of many of the requested documents, yet, in violation of this Court's precedents, Defendant has not identified a reasonable and definite date by which several categories of responsive documents will be produced. In many instances, Defendant stated that it will not produce responsive documents until an unknown point before "the completion of fact discovery."

Defendant's failure to timely produce responsive documents is inexcusable. The PLG knows of 131 files related to Camp Lejeune, for example, which for the most part have not been produced—despite the documents' having already been identified and indexed by the Chief Records Officer of the Agency for Toxic Substances and Disease Registry ("ATSDR"), James D. Baker Jr. The PLG learned of these documents while taking Mr. Baker's deposition on December 5, 2023, when Defendant provided the PLG an index of these 131 files. What's more, Mr. Baker disclosed that two boxes of discoverable documents are sitting in his office unattended. Mr. Baker notified his superiors about the existence of the boxes approximately *one month* before his deposition, yet those records have not been produced. In short, Defendant's response to the First Request is deficient and threatens the schedule set forth in CMO-2. The PLG therefore asks that the Court to grant the present motion to compel.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.     The CLJA and the Water Contamination at Camp Lejeune**

On August 10, 2022, the CLJA was signed into law. *See* Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802-04. The CLJA created a new federal cause of action authorizing individuals (or

---

[1] For purposes of correcting a few non-substantive typographical errors, the PLG served a Corrected First Set of Request for Production on October 4, 2023. [Ex. 2]

their legal representatives) who resided, worked, or otherwise were exposed "for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune" to "obtain appropriate relief for harm." *Id.* § 804(b).

"It is estimated that as many as one million people may have been exposed to this water, including service members, civilian staff, and their respective families and dependents." [D.E. 25, at ¶ 4] The list of illnesses, diseases, and injuries connected to the water at Camp Lejeune is extensive. *Id.* at 6. Defendant conducted numerous studies of the contamination at Camp Lejeune and its effect on those exposed to it, including several studies by the ATSDR. *Id.* ¶¶ 186-92. Defendant's own scientists, including at the ATSDR, have acknowledged the causal connection between multiple health conditions and the contaminated water at Camp Lejeune. *Id.* at 6.

Despite these admissions, for years Defendant has prevented victims from obtaining justice. Before the enactment of the CLJA, Defendant asserted numerous defenses to claims brought under the Federal Tort Claims Act, which ultimately denied compensation to those whom Defendant's own scientists acknowledge were injured by Camp Lejeune's poisoned water.

## II.     The Need to Efficiently Litigate CLJA Cases

The CLJA was designed to finally clear roadblocks to recovery for Camp Lejeune victims, but the volume of CLJA claims requires efficient action to prevent further delay. As of November 27, 2023, about 132,000 administrative claims had been filed seeking relief under the CLJA and over 1400 CLJA civil actions are pending in this Court. [D.E. 60, at p 1]

Given the scope and importance of this litigation, this Court has repeatedly emphasized the need to expeditiously litigate CLJA cases. For example, in CMO-2, the Court expressed its expectation that "the Parties [will] conduct discovery efficiently," and the Court established a series of discovery deadlines, including a deadline for fact discovery of Track 1 Discovery Pool

Plaintiffs of ninety days after the Track 1 Order. [D.E. 23, at § XI] During the Status Conference on October 30, 2023, the Court characterized its standing orders as "designed to streamline this litigation, hopefully move us forward." [Ex. 14, Tr. of 10/30/23 Hr'g, at p 3:19-3:21]. This schedule is necessary to advance the Court's full docket of CLJA cases.

### III. Defendant's Slow and Deficient Response to the First Request

On September 26, 2023, the Court stated that "Plaintiffs' Leadership is permitted to engage in general discovery upon entry of this Order." [D.E. 23, at § XI] Within two days, the PLG served the First Request. [Exs. 1 & 2] The First Request sought basic information about muster rolls, housing documents, ATSDR documents, and other requests that should have been predictable to Defendant since the CLJA was enacted 13 months prior. The First Request called for Defendant to produce responsive documents within 30 days. [Ex. 2, at p 1 n.1].

Defendant's Response to Plaintiffs' First Request (the "Response") consisted of boilerplate objections to *every* request for production.[2] *See* [Ex. 3, pp 3-19] With the exception of a few URL links to publicly available documents, Defendant failed to produce any responsive documents within the 30-day period set by the First Request. Further, Defendant's Response failed to state a definite time by which responsive documents would be produced. Instead, Defendant repeatedly projected that responsive documents would be produced at some indeterminate time before "the completion of fact discovery." *E.g.*, [Ex. 3, at p 5]

Despite the PLG's best efforts, Defendant's production of responsive documents has been agonizingly slow, and Defendant has not produced several categories of responsive documents.[3]

---

[2] Thus, Defendant's objections might be waived. *See, e.g.*, *Daniels v. Hyster-Yale Grp., Inc.*, No. 5:19-CV-531, 2020 U.S. Dist. LEXIS 83421, at *13-14 (E.D.N.C. May 11, 2020).

[3] Attached hereto as Exhibit 10 is a spreadsheet which summarizes the status of Defendant's response to each individual request within the First Request.

4

In general terms, and without limitation, Defendant has failed to produce the following basic documents and information[4] sought in the PLG's First Request: (a) Request No. 1 – hardcopy documents possessed by ATSDR and responsive datasets with bates-labeling, (b) Request No. 2 – certain digital muster rolls from 1940 to 1958, (c) Request No. 3 – certain digitized muster rolls from the 1950s to 1971, (d) Request No. 5 – certain deposition transcripts that Defendant inadvertently did not produce previously, (e) Request No. 8 – documents possessed by ATSDR related to water contamination at Camp Lejeune, (f) Request No. 10 – Underground Storage Tank Program records for Camp Lejeune, (g) Request No. 11 – Department of Veterans Affairs ("VA") documents on the standards for awarding benefits for persons injured by water at Camp Lejeune, (h) Request No. 14 – certain Government Accountability Office ("GAO") documents on contamination at Camp Lejeune, (i) Request No. 15 – Environmental Protection Agency ("EPA") publications or studies on Camp Lejeune, and (j) Request No. 16 – Department of the Navy records of third-party consultants working on contamination issues at Camp Lejeune. *See generally* [Ex. 9, at pp 2-6 & Ex. 10] Defendant does not contest the discoverability of the above-described documents. To the contrary, Defendant simply has not produced the requested documents.

The PLG has repeatedly expressed concerns about Defendant's delayed production of documents. On November 3, 2023, the PLG asked that all responsive documents be produced "no later than December 29, 2023." [Ex. 4, at p 10] In response, Defendant declined this offer and instead asserted that "producing the material you requested on a rolling basis *with the goal of completion of the production by the conclusion of fact discovery* is reasonable, and we will not agree to any other artificial deadline." [Ex. 7, at p 7 (emphasis added)] On multiple subsequent

---

[4] On December 12, 2023, Defendant promised to produce some (but not all) of these documents in December 2023. [Ex. 16 (no timeline for production of Request Nos. 8, 14 & 16)]

occasions, the PLG requested that Defendant complete document production on a more reasonable and definite timeframe. *E.g.*, [Ex. 9] Finally, on December 12, 2023, Defendant promised to produce several categories of documents pursuant to specific deadlines. [Ex. 16] However, Defendant still refuses to provide definite deadlines for the production of several categories of important outstanding documents, including documents possessed by the ATSDR (Request No. 8), the GAO (Request No. 14), and the Department of Navy (Request No. 16). [Ex. 16, at pp 3-4]

## ARGUMENT

**I.      In Violation of Fed. R. Civ. P. 34, Defendant's Response Failed to Set Forth Reasonable and Definite Dates for the Production of Documents.**

In most instances, Defendant does not contest the discoverability of the documents sought by the First Request. Instead, Defendant's Response promised to produce requested documents—but only at some unspecified future time before "the completion of fact discovery." For instance, Request No. 16 sought the Navy's documents related to vendors that performed work related to contamination at Camp Lejeune. [Ex. 2] In the Response, Defendant asserted boilerplate objections, provided a URL to publicly available documents, and promised to produce additional documents on a rolling basis "by the completion of fact discovery." [Ex. 3, at pp 16-17] Defendant failed to identify a date by which the promised documents would be produced, and Defendant *still* has not produced documents responsive to Request No. 16. Defendant's most recent letter on discovery also failed to identify a date for production of documents responsive to Request No. 16.

Defendant's vague responses fail to comply with Fed. R. Civ. P. 34 and the decisions of this Court. Under Rule 34, document production "must be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). This Court has recognized that "'there are only three appropriate responses to a request for production of documents': 1) an objection; 2) 'an answer agreeing to the requested

scope, time, place and manner of production'; or 3) 'a response offering a good faith, reasonable alternative [to the proponent's requested time, place or manner of] production, which is definite in scope, time, place or manner.'" *NOA, LLC v. Khoury*, No. 5:14-CV-114, 2018 U.S. Dist. LEXIS 112108, at *17 (E.D.N.C. Aug. 23, 2016) (*quoting Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997). As this Court has explained, "a response to a request for production of documents which merely promises to produce the requested documents at *some unidentified time in the future, without offering a specific time*, place and manner, is not a complete answer as required by Rule 34(b). *Id.* at *17-18 (*citing Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.r.D. 226, 240-41 (M.D.N.C. 2010) (emphasis added). By failing to specify a definite time for production, Defendant's response was improper as a matter of law.

## II. Defendant's Slow Document Production Is Both Unjustifiable and Prejudicial.

Defendant has not offered legitimate reasons why the requested documents cannot be produced within a reasonable and definite period of time. In fact, a recent deposition illustrates the inexcusability of Defendant's slow document production efforts.

On December 5, 2023, the PLG took the deposition of Mr. Baker, the Chief Records Officer of the ATSDR. [Ex. 11, at p 11:8][5] During the deposition, Mr. Baker provided the PLG with an index of 131 files possessed by the ATSDR concerning Camp Lejeune. [Ex. 11, at pp 29:3-29:13 & 107:11; *see also* Ex. 15] These documents were requested in the PLG's First Request.[6] Despite having been conveniently indexed, many of the 131 files have not been produced in discovery.

---

[5] Exhibits 11, 12 & 15 to the present motion to compel have been designated as confidential pursuant to the Protective Order in this matter. The PLG does not believe that these exhibits actually contain confidential information, however, the PLG will not file these exhibits publicly. Instead, these exhibits will be provided to the Court for *in camera* review.

[6] For instance, Request No. 8 sought any "publication, report or study concerning water contamination issues at Camp Lejeune" possessed by the ATSDR. [Ex. 2, at p 9]

7

Mr. Baker testified that he conducted a simple keyword search for "Camp Lejeune" at a computer terminal at the Federal Records Center. [Ex. 11, pp 31:5-33:20] Based on this simple search, Mr. Baker located seven folders of documents possessed by the ATSDR and related to Camp Lejeune. *Id.* at 38:3-38:6. Mr. Baker placed the seven folders into two boxes and transferred the records to his office. *Id.* at 34:10-34:11, 46:1-46:12. At the time of his deposition, the two boxes of discoverable documents sat unattended in Mr. Baker's office. *Id.* at 45:4-45:11.

Mr. Baker notified his superiors that he possessed these discoverable documents approximately *one month* before his December 5, 2023 deposition. *Id.* at 35:15-35:21 & 47:19-47:22. Mr. Baker testified as follows:

> Q     Nobody has recently come and inspected those documents and reviewed them?
> A     Oh, no.
> Q     **Did you tell—when did you first tell somebody they were in your office?**
> A     **The leadership the day that I got them and said, Hey, we got the records.**
> . . . .
> Q     And you told someone that those boxes—two boxes of the seven folders have been sitting in your office for six weeks, you told somebody above you that made the request, right?
> A     Yes.
> [Objection of Defendant's counsel]
> Q     **And nobody has ever come to you and asked you for those seven boxes (sic) and you were sort of waiting for somebody to do so. Is that fair?**
> [Objection of Defendant's counsel]
> Q     Fair?
> A     **They've been in my office waiting on y'all, yes.**

*Id.* at 47:16-47:22 & 70:6-70:21 (emphasis added).

In addition, Mr. Baker testified that his superiors did not request that he locate *all* ASTDR documents related to Camp Lejeune; instead, he was directed to search for specific Camp Lejeune subjects. *Id.* at 39:8-39:21. Mr. Baker's testimony demonstrates that Defendant's document production efforts have been half-hearted.

The two boxes of discoverable documents in Mr. Baker's office are emblematic of Defendant's lax approach to discovery. For instance, during the deposition of a Fed. R. Civ. P. 30(b)(6) designee of the VA on December 6, 2023, the PLG learned that the designee possessed discoverable documents on her work laptop. [Ex. 12, at pp 80:18-81:19] That designee also testified that she has not been asked by the Department of Justice, the Office of General Counsel, or others to provide information related to Camp Lejeune. [Ex. 12, at pp 104:2-104:11] Further, on December 12, 2023, Defendant provided an index of Underground Storage Tank files from Camp Lejeune that, despite being in electronic format, have not been produced. [Ex. 16, at 3]

To excuse its delays, Defendant has repeatedly pointed to the size of the federal government, the numerosity of its agencies, restrictions by agency counsel, procedural hurdles, and the apparent need to hold a series of conference calls before a document is produced. For instance, in a single letter, Defendant indicated that its productions were pending consultation with various agencies at least *eight* times. *E.g.*, [Ex. 7, at p 1 ("continuing to work with NARA")].

None of these excuses merit any weight—Defendant cannot shield itself from legal obligations by pointing to its own self-imposed hurdles and procedural preferences about how and when it would like to comply with those obligations. Like any other party, Defendant must comply with discovery obligations in a timely manner, including meeting deadlines and responding promptly to requests. If either the Department of Justice or other agencies are not sufficiently prioritizing these cases, the Court should order them to do so. Few litigation matters could be more important than ensuring that injured veterans and others receive the compensation that they are owed under federal law for Defendant's own failure to keep them safe.

Defendant's delay is not only legally improper but also unfair. For example, in selecting Plaintiffs for the Track 1 Discovery Pool, Defendant had access to important documents that it

failed to produce to the PLG, including muster rolls and housing records, which bear directly on the suitability of Plaintiffs for the Track 1 Discovery Pool. Defendant's inefficiencies gave it a unique and unfair advantage, which this Court should put an end to.

### III. This Court Should Require that Defendant Produce All Responsive Documents by December 29, 2023.

Defendant's disregard of the discovery rules warrants intervention by the Court. Such intervention is especially important given the fast-approaching discovery deadlines set forth in CMO-2. [D.E. 23, at § XI] This Court has broad authority to establish production deadlines under Rule 34 and this Court's precedents. *See* Fed. R. Civ. P. 34(b)(2)(A) (providing that responses to requests for production must be served "within 30 days," although "[a] shorter or longer time may be stipulated to under Rule 29 or be ordered by the court."); *see, e.g.*, *Dimension Data N. Am., Inc. v. Net Star-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) ("The rules pertaining to each category of discovery also allow for alterations in timing based upon court order.").

The PLG respectfully requests that the Court impose a deadline of December 29, 2023 for Defendant to produce all documents owed to the PLG under the First Request. Further, the PLG respectfully requests that, in the future, Defendant object to discovery requests within 15 days, and that Defendant provide specific dates by which responsive documents will be produced.

### CONCLUSION

The PLG respectfully requests that the Court order Defendant to (a) produce all documents responsive to the First Request by December 29, 2023, including the index of ATSDR documents related to Camp Lejeune and identified during Mr. Baker's deposition, (b) state objections, if any, to all future discovery requests within 15 days of service of the request, and (c) provide specific dates by which documents will be produced in response to all future discovery requests.

DATED this 14th day of December, 2023.

| | |
|---|---|
| */s/ J. Edward Bell, III* | */s/ Zina Bash* |
| J. Edward Bell, III (admitted *pro hac vice*) | Zina Bash (admitted *pro hac vice*) |
| Bell Legal Group, LLC | Keller Postman LLC |
| 219 Ridge St. | 111 Congress Avenue, Suite 500 |
| Georgetown, SC 29440 | Austin, TX 78701 |
| Telephone: (843) 546-2408 | Telephone: 956-345-9462 |
| jeb@belllegalgroup.com | zina.bash@kellerpostman.com |
| | |
| *Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs and Government Liaison Counsel* |
| | |
| */s/ Elizabeth J. Cabraser* | */s/ W. Michael Dowling* |
| Elizabeth J. Cabraser (admitted *pro hac vice*) | W. Michael Dowling (NC Bar No. 42790) |
| Lieff Cabraser Heimann & Bernstein, LLP | The Dowling Firm PLLC |
| 275 Battery Street, 29th Floor | Post Office Box 27843 |
| San Francisco, CA 94111 | Raleigh, North Carolina 27611 |
| Telephone: (415) 956-1000 | Telephone: (919) 529-3351 |
| ecabraser@lchb.com | mike@dowlingfirm.com |
| | |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |
| | |
| */s/ Robin L. Greenwald* | */s/ James A. Roberts, III* |
| Robin L. Greenwald (admitted *pro hac vice*) | James A. Roberts, III |
| Weitz & Luxenberg, P.C. | Lewis & Roberts, PLLC |
| 700 Broadway | 3700 Glenwood Ave., Ste. 410 |
| New York, NY 10003 | Raleigh, NC 27612 |
| Telephone: 212-558-5802 | Telephone: (919) 981-0191 |
| rgreenwald@weitzlux.com | jar@lewis-roberts.com |
| | |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, J. Edward Bell, III, hereby certify that the foregoing document was electronically filed on the Court's CM/ECF system on this date, and that all counsel of record will be served with notice of the said filing via the CM/ECF system.

This the 14th day of December, 2023.

*/s/ J. Edward Bell, III*_____
J. Edward Bell, III
