IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| CAMP LEJEUNE WATER LITIGATION ) | REPLY IN SUPPORT OF UNITED |
| ) | STATES' MOTION TO STRIKE JURY |
| ) | TRIAL DEMAND |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

For almost 80 years since the Federal Tort Claims Act's enactment in 1946, civil tort litigation against the United States has proceeded to trial "by the court without a jury." 28 U.S.C. § 2402. The absence of a jury trial right in CLJA actions is thus entirely consistent with the nature of the cause of action and the history of tort litigation against the United States. Indeed, it is long settled law that "[a] plaintiff in an action against the United States has a right to trial by jury *only where Congress has affirmatively and unambiguously granted that right by statute*." *Lehman v. Nakshian*, 453 U.S. 156, 168 (1981) (emphasis added). The CLJA contains no such affirmative and unambiguous grant, and thus provides no jury trial right.

The PLC nevertheless spends much of its 20-page brief invoking "necessary implication[s]" and "inference[s]," Dkt. 66 at 4-6, of the CLJA's jurisdiction and venue provision, which caveats that "[n]othing in this subsection shall impair the right of any party to a trial by jury." CLJA, § 804(d). The PLC's need to resort to implications and inferences confirms that the CLJA's express language neither affirmatively nor unambiguously grants a right to jury trials against the United States—a grant through implication or inference is, by definition, neither affirmative nor unambiguous. Indeed, if the PLC's position was correct that Congress intended to allow for jury trials in tort actions against the United States, it is remarkable that the CLJA's express language does not affirmatively or unambiguously say so.

The CLJA does not permit jury trials against the United States, and the Court should strike the jury trial demand in Plaintiffs' Master Complaint, pursuant to Federal Rule 39(a)(2).

## I. The CLJA's Language Does Not Affirmatively or Unambiguously Grant a Right to Jury Trials in CLJA Actions.

The PLC does not dispute that, under binding Supreme Court precedent, the dispositive question is "whether 'Congress clearly and unequivocally' granted the right to jury trials to CLJA plaintiffs." Dkt. 66 at 15 (quoting *Lehman*, 453 U.S. at 162); *id.* at 7 ("[A] statute will not

1

Case 7:23-cv-00897-RJ   Document 84   Filed 12/18/23   Page 2 of 12

be read to permit jury trials unless 'Congress clearly and unequivocally departed from its usual practice in this area.'" (quoting *Lehman*, 453 U.S. at 161-62)). The CLJA contains no language affirmatively granting that right, let alone language that unambiguously does so, to justify departing from decades of ordinary practice in tort litigation against the United States. *Lehman*, 453 U.S. at 168.

Rather than including the necessary language to create a jury trial right, the CLJA's jurisdiction and venue provision simply states that "[n]othing in this subsection shall impair the right of any party to a trial by jury." CLJA, § 804(d). That language is phrased in the negative and does not constitute a positive grant of rights at all. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166-67 (2004) (reasoning that the phrase "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution" did not establish a cause of action for contribution). The PLC offers no plausible explanation for why Congress would have chosen this syntax if it had meant to create an unprecedented jury trial right in tort suits against the United States.

Instead, the PLC spends most of its 20-page brief seeking to divorce the references to "the right" or "the right of any party to a trial by jury" from the preceding clause that states "[n]othing in this subsection shall impair." Dkt. 66 at *passim*. These efforts to downplay or "delete [that] inconvenient language" to reach the PLC's own "preferred meaning" only underscore that the PLC lacks any meaningful explanation for Congress's decision to omit any rights-conferring language from Section 804(d). *Borden v. United States*, 141 S. Ct. 1817, 1829 (2021) (plurality op.). For many of the same reasons, the PLC's analogies to constitutional provisions that purportedly "employ the same syntax" fail. Dkt. 66 at 10. None of those provisions contains anything akin to Section 804(d)'s "nothing in this subsection shall impair"

2

language, making clear that the provision does not itself affirmatively grant new rights. Moreover, the Bill of Rights preserved several rights that were *already in existence* at common law. Indeed, the PLC's reliance on the Seventh Amendment illustrates the point: that provision states that "the right of any trial by jury shall be preserved" where available "[i]n Suits at common law." By contrast, there is no such pre-existing jury trial right in suits against the United States. *Lehman*, 453 U.S. at 160; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) (recognizing the settled proposition that "the Seventh Amendment does not apply" in "suits against the United States").

The PLC does not advance its argument by pointing to the first sentence in Section 804(d), which provides that this Court "shall have exclusive jurisdiction" and "shall be the exclusive venue" for CLJA actions. CLJA, § 804(d). Contrary to the PLC's assertions, Dkt. 66 at 2, 10, specifying where cases should be filed has no bearing on whether a judge or a jury is the relevant factfinder. It makes no difference that this sentence appears under the same subsection as the sentence providing that "[n]othing in this subsection shall impair the right of any party to a trial by jury." To the contrary, subsection (d) is titled "Exclusive Jurisdiction and Venue," confirming that Congress's focus was on channeling cases through this Court. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("The title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation omitted). And although Congress allowed potentially hundreds of thousands of tort claims to be brought before this Court, there is no indication that Congress intended this Court to empanel juries for hundreds of thousands of tort claims.

The lack of affirmative, unambiguous language in the CLJA is even more glaring because Congress had ready models in other statutes that provide a jury trial right in certain actions

3

against the United States. *See* Dkt. 51-1 at 5. In fact, the Representative who wrote and introduced the CLJA in Congress co-sponsored another bill in 2014 that unambiguously provided a right to a jury trial against sovereign entities. *See* Ex. A, H.R. 5375, 113th Cong., 2d Sess., Sec. 4 ("A person who commences an action under this section shall be entitled to a trial by jury.").

In short, the PLC's arguments depend entirely on inferences and implications, making clear that the CLJA does not affirmatively and unambiguously grant a right to jury trials against the United States. *See, e.g.*, *In re Young*, 869 F.2d 158, 159 (2d Cir. 1989) ("Through the 'sue and be sued' clause in the Postal Reorganization Act congress effectively waived sovereign immunity for the postal service, but the waiver does not change the fact that the party being sued is still the federal government . . . the statute contains no language 'affirmatively and unambiguously' granting a jury trial in suits against the postal service… .").

The PLC nevertheless contends that "because no other statute authorizes trial by jury for CLJA actions, that sentence of Section 804(d) would have no function whatsoever." Dkt. 66 at 3, 11. The sentence does exactly what it says it does: it leaves any right to a jury unchanged and leaves courts to determine whether a case should be tried to a judge or to a jury based on preexisting legal doctrines. The PLC's admission that "no other statute authorizes trial by jury for CLJA actions" makes clear that there is no right to a jury trial in the circumstances of this case; because the CLJA expressly leaves that state of affairs unchanged, that is the end of the matter. In addition, as pointed out in the government's motion, to the extent that a jury right might attach to some claim—such as a third-party complaint or cross claim—"nothing in [the CLJA] shall impair [that] right," CLJA, § 804(d). Dkt. 51-1 at 4 n. 1.

In any event, speculation about Congress's motives in enacting the provision is irrelevant

4

because the Supreme Court has been clear that "the text of a law controls over purported legislative intentions." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496-97 (2022). Thus, suggestions of "uncertainty surrounding Congress's reasons for drafting that clause does not matter." *Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*, 583 U.S. 416, 138 S. Ct. 1061, 1074 (2018). Furthermore, "[t]he canon against surplusage is not an absolute rule," *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013), and that canon has little purchase where, as here, Congress was legislating against the backdrop of the "common rule, with which [courts] presume congressional familiarity," *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992), that jury trials are available only when the statute affirmatively and unambiguously grants that right.

## II. There Is No Implied Right to Jury Trials in CLJA Actions.

Faced with the CLJA's plain language, the PLC argues that it is enough if the CLJA permits jury trials against the United States by "necessary implication" or by "inference." Dkt. 66 at 4-6. That argument cannot be reconciled with *Lehman*, which makes clear that there is no right to a jury trial against the United States unless Congress affirmatively and unambiguously granted that right by statute. The PLC seeks to derive a different conclusion from the Supreme Court's decision, almost 40 years earlier and before the enactment of the FTCA, in *Galloway v. United States*, 319 U.S. 372 (1943). But *Galloway* did not hold that a jury trial in a case against the United States could be implied.

In *Galloway*, the Court in dictum entertained the possibility of a jury trial right being available to reach its holding that a directed verdict did not compromise any such right.[1] 319

---

[1] Notably, *Galloway* involved "a war risk insurance policy" with specifically identified payment amounts. *See* Dkt. 66-5. An insurance claim is fundamentally different than a tort claim, which may trigger concerns about outsized verdicts. *Lehman*, 453 U.S. at 161 n.8 ("It is not difficult to appreciate Congress' reluctance to provide for jury trials against the United States … juries might tend to be overly generous because of the virtually unlimited ability of the Government to pay the verdict.") (internal quotation marks and citation omitted). Thus, the insurance context in *Galloway* is similar to others where jury trials against the United States are permitted—like tax refund claims— and is dissimilar from than those that require bench trials—like tort claims. *Compare* 28 U.S.C. § 1346(a), *with id.*

5

U.S. at 388 ("What has been said disposes of the case as the parties have made it. For that reason perhaps nothing more need be said."). The Court explained that the Seventh Amendment did not provide the right to a jury trial because the suit was "one to enforce a monetary claim against the United States" and "persons asserting claims against the sovereign" lacked such a right at common law. *Id*. But the Court recognized that Congress could grant such a right. Thus, "[w]hatever force the [Seventh] Amendment has therefore is derived because Congress in the legislation cited has made it applicable." *Id*. at 389.

The Court in *Galloway* discussed the potential statutory basis for a jury trial right in a footnote. In that footnote, the Court noted that the statute providing the cause of action had been amended to remove a cross-reference to the Tucker Act that precluded jury trials against the United States and that the legislative history, as reflected in a House of Representatives Committee Report indicated that the intention of this amendment was "to 'give the claimant the right to a jury trial.'" *Id*. at 389 n. 18 (citation omitted). The Court had no need to decide whether this omission was sufficient to show that the statute granted that right because the issue before the Court was whether entry of a directed verdict compromised any potential right to a jury trial. The PLC thus errs in relying on this footnote in *Galloway* to argue for an implied right to jury trials in CLJA actions. Dkt. 66 at 6.

In *Lehman*, the Supreme Court squarely addressed—and rejected—whether the right to a jury trial against the United States can be implied. In *Lehman*, the Supreme Court held that Section 15 of the Age Discrimination in Employment Act (ADEA) did not confer a right to a jury trial, even though similar provisions for relief against private employers and state and local governments expressly provided for jury trials. 453 U.S. at 163-64. Citing *Galloway*, the Court

---

§ 1346(b).

reiterated that "it has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman*, 453 U.S. at 160. The Court also explained that the legislative history "would not affect the proper resolution of this case, because [a] plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." *Id*. at 168.

The PLC drastically overreads a reference to *Galloway* in the *Lehman* decision. The Court noted that elsewhere in the ADEA, Congress had expressly provided for jury trials, and stated that "Congress accordingly demonstrated that it knew how to provide a statutory right to a jury trial when it wished to do so elsewhere in the very 'legislation cited.'" *Lehman*, 453 U.S. at 160, 162 (quoting *Galloway*, 319 U.S. at 389). There is no basis for the PLC's apparent view that the *Lehman* Court's quotation of *Galloway*'s dictum elevated that dictum to a holding that a jury trial right against the United States can be inferred without any express statutory language providing for it. The PLC's argument directly contradicts the holding of *Lehman* itself.

The PLC also misunderstands the Supreme Court's discussion in *Lehman* of *Lorillard v. Pons*, 434 U.S. 575 (1978). The Court's primary basis for distinguishing *Lorillard* was that it involved "litigation between private parties," such that the Seventh Amendment would provide a right to a jury if "legal relief" was available. *Lehman*, 453 U.S. at 163. "But the Seventh Amendment has no application in actions at law against the Government, as Congress and [the Supreme] Court have always recognized." *Id.* The PLC latches on to a second distinction between *Lehman* and *Lorillard*, Dkt. 66 at 8 (comparing ADEA provisions at issue), but it is the first that is fatal to their argument here.

In *Lehman*, the Supreme Court further noted that Congress has "almost always conditioned" a waiver of the United States' sovereign immunity "upon a plaintiff's relinquishing

7

any claim to a jury trial," and "[t]he appropriate inquiry, therefore, is whether Congress clearly and unequivocally departed from its usual practice." *Lehman*, 453 U.S at 161-62. The PLC does not dispute that this is the correct standard. *See* Dkt. 66 at 7, 15. That standard is grounded in the notion that the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman*, 453 U.S. at 161 (quotations omitted). *Lehman* thus makes clear that the PLC cannot claim by implication a right to a jury trial in CLJA actions against the United States.

### III. The CLJA's Legislative History Does Not Demonstrate that Congress Affirmatively and Unambiguously Granted a Right to a Jury Trial Against the United States.

Consistent with the Supreme Court's holding in *Lehman*, "[l]egislative history generally will be irrelevant" to support a conclusion that sovereign immunity was waived because such a waiver must be "unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 229, 240 (1989) (citation omitted). However, even if the Court were to consider the CLJA's legislative history, it underscores that the CLJA does not contain the explicit language found in other statutory provisions that affirmatively and unambiguously grant a jury trial right in an action against the United States.

As an initial matter, Congress overrode several FTCA provisions in the CLJA but not the background principle that FTCA actions are tried to a court. Indeed, the Members who drafted and introduced the CLJA bill characterized the CLJA as permitting claims "under the Federal Tort Claims Act." *See* Dkt. 34 at 10-11 (discussing CLJA legislative history). Such claims have always been "tried to the court without a jury." *See* 28 U.S.C. § 2402 ("Any action against the United States under section 1346 shall be tried by the court without a jury [except for certain tax refund cases]."); *see also Lehman*, 453 U.S. at 161 ("[I]n tort actions against the United States, Congress has similarly provided that trials shall be to the court without a jury.").

As the United States has acknowledged, the Department of Justice issued "Technical Assistance" when the CLJA was a pending bill. *See* Dkt. 51-2, U.S. Dep't Justice, *Technical Assistance on Section 706 of HR 3967* (May 2, 2022). The Technical Assistance advocated, as a policy matter, for an alternative "no-fault compensation scheme." In doing so, the Technical Assistance raised several equitable and administrative concerns with permitting litigation in federal court, including the concern that the proposed legislation would "permit[] jury trials that would not be available under the FTCA." Dkt. 51-2, 1; see *id.* at 2 (warning that allowing such cases to be tried in court "potentially before a jury" would be "expensive and time-consuming" and may "produce a broad range of remedial outcomes even among plaintiffs who have suffered similar harms."). In proposing "a non-adversarial compensation program" in lieu of adversarial civil tort litigation, the Technical Assistance incorrectly interpreted the draft legislation based on a preliminary assessment without addressing binding Supreme Court precedent like *Lehman*.

Indeed, these assumptions were at odds with the pre-enactment statements from Members that the CLJA permits claims against the United States "under the Federal Tort Claims Act." Dkt. 34 at 10. Moreover, counsel at the Department of Justice are unaware of pre-enactment statements from Members of Congress stating that the CLJA provides a right to a jury trial against the United States. Underscoring the contrast with other statutes that allow jury trials against the United States, the CLJA was not preceded by significant legislative consideration of, or attention to, the consequences of allowing jury trials in this specific context. *See Lehman*, 453 U.S. at 161 n.8 (noting that Congress granted jury trials in tax refund cases "[o]nly after much debate, and after the conferees became convinced that there would be no danger of excessive verdicts as a result of jury trials in that unique context"); Dkt. 34 at 10-11. Regardless, absent unambiguous text, "recourse to legislative history will be futile." *Dellmuth*, 491 U.S. at 240.

9

The PLC points to a post-enactment statement made by the same Members who previously described the CLJA as permitting claims "under the Federal Tort Claims Act." Dkt. 66 at 2, 16, 19. On November 1, 2023, those Members entered a statement in the Congressional Record that "it has always been our intent for the [CLJA] to stand separate and apart from the Federal Tort Claims Act in all respects," including by providing a right to a jury trial against the United States. 169 Cong. Rec. E1036 (daily ed. Nov. 1, 2023). Trying to reconcile these statements is unnecessary, however, because the Supreme Court has made clear that post-enactment statements are "not a legitimate tool of statutory interpretation":

> Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation. Real (pre-enactment) legislative history is persuasive to some because it is thought to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact. But post-enactment legislative history by definition "could have had no effect on the congressional vote."

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (citation omitted).

Notably, the absence of a jury trial right in CLJA actions is consistent with the nature of the cause of action and the history of tort litigation against the United States. For almost 80 years since the Federal Tort Claims Act's enactment in 1946, tort claims against the United States have proceeded without a jury. The PLC contends that it is "implausible that Congress, in enacting a major new cause of action subjecting the U.S. Treasury to substantial liability, decided to express no preference on whether jury trials would be available." Dkt. 66 at 12. It is far more implausible that Congress "departed from its usual practice" without affirmatively, unambiguously, and unequivocally saying so. *Lehman*, 453 U.S at 161-62.

Dated:  December 18, 2023           Respectfully Submitted

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director
Environmental Torts Litigation Section

ADAM BAIN
Senior Trial Counsel
Environmental Torts Litigation Section

NATHAN BU
Trial Attorney
Environmental Torts Litigation Section

 */s/ Haroon Anwar*
HAROON ANWAR
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
Civil Division, Torts Branch
U.S. Department of Justice
P. O. Box 340
Washington, D.C. 20044
E-mail: haroon.anwar@usdoj.gov
Telephone: (202) 598-3946

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

*/s/ Haroon Anwar*
HAROON ANWAR