IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| IN RE: | ) | |
|---|---|---|
| CAMP LEJEUNE WATER LITIGATION | ) | Case No: 7:23-cv-897 |
| | ) | |
| | ) | UNITED STATES' OPPOSITION TO |
| This Document Relates To: | ) | PLAINTIFFS' MOTION TO COMPEL |
| ALL CASES | ) | & CROSS-MOTION FOR PROTECTIVE |
| | ) | ORDER |

# INTRODUCTION

The Court should deny Plaintiffs' efforts to (1) compel production of all documents responsive to the First Requests for Production of Documents ("First RFPs") by December 29, 2023; (2) require responses to all future discovery requests within 15 days of service of the request; and (3) require the United States to provide specific dates by which documents will be produced in response to all discovery requests.

Even though this action centers solely around causation, Plaintiffs' Requests for Production ("Requests") seek documents and Electronically Stored Information ("ESI") related to overbroad topics covering decades of irrelevant materials from numerous government agencies. Such Requests run afoul of the Court's guidance to exclude discovery "on information that's not relevant to resolving a claim under the statue." D.E. 81-14, at 20:16-24. Nevertheless, the United States has been working diligently with various agencies and litigation support staff to produce documents that are responsive to these Requests, even though they are overly broad, unduly burdensome, irrelevant to Plaintiffs' claims, and not proportional to the needs of this case.

Contrary to Plaintiffs' representations, and as reflected on the table attached as Exhibit 1, which specifically delineates what has been produced for each request, the United States has produced over 500,000 records to Plaintiffs, including documents that Plaintiffs incorrectly claim have not been produced. The United States is continuing to expeditiously produce records responsive to Plaintiffs' overly broad Requests, and stating that the United States will complete its discovery obligations by the end of fact discovery – within 90 days of the Track 1 Order – is entirely reasonable considering the breadth of the Requests, which seek production of ESI for which the Parties have not completed negotiations on custodians and search terms.[1]

---

[1] The Court need only look to the Motion to ascertain the unreasonableness and burdensome nature of the Requests. For example, the Motion requests that the United States "be compelled to produce ***all documents***

1

For these reasons, the Court should deny Plaintiffs' Motion and permit the United States to continue with its efforts to produce responsive documents. In addition, and because of Plaintiffs' insistence on propounding overly broad, highly burdensome requests, the United States is cross-moving for a Protective Order. Plaintiffs should be required to remove all Requests that (1) are not narrowly tailored to focus on causation issues only, and (2) properly separate ESI discovery Requests from non-ESI discovery Requests.

## BACKGROUND

Plaintiffs began serving their Requests in late September 2023. These Requests have been overly broad, covering the 1940s to the present, and involve issues far afield from anything related to causation. For example, Request Number 16 seeks "unredacted copies of all documents and ESI . . . in the possession, custody, or control of the Department of the Navy related to third party vendors or consultants that performed or were contracted to perform work related to water contamination issues at Camp Lejeune, including drafts." D.E. 81-2, at 13. Although the United States has attempted to meet and confer with Plaintiffs in an effort to narrow this and other Requests, the Plaintiffs have largely refused.[2]

Overall, the Requests require coordination with multiple federal agencies, including the United States Marine Corps. ("USMC"), the Department of the Navy ("DON"), the Agency for

---

responsive to the First Request by December 29, 2023 . . ." D.E. 81, at 3 (emphasis added). "Documents" are defined in the Requests to include ESI, described as "Electronic Data of any kind or description" including "all text files (including word processing documents), . . . spreadsheets, electronic mail files and information concerning electronic mails . . ." among other things. *Id.* The burden on the United States to comply with Plaintiffs' overbroad ESI requests is detailed in the Josh Woods Declaration, Exhibit 2.

[2] Plaintiffs suggest that the United States may have waived certain objections included in the Responses and Objections to the Requests. Plaintiffs' argument is unavailing. The case Plaintiffs cite, *Daniels v. Hyster-Yale Grp., Inc.,* 2020 U.S. Dist. LEXIS 83421 (E.D.N.C. May 11, 2020), is not instructive. In *Daniels*, the responding party apparently copied and pasted responses to over 70 Interrogatories and Requests for Production. *Id.* at *13. This is not the case here, where the United States has provided individualized responses where appropriate to the Requests. Plaintiffs are correct, however, that most of the Responses include objections on similar grounds, as most of the Requests are, in fact, overbroad, vague, seek irrelevant documents, and their production has created an undue burden for the United States.

Toxic Substances and Disease Registry ("ATSDR"), the Environmental Protection Agency ("EPA"), the National Archives and Records Administration ("NARA"), and the Department of Veterans' Affairs ("VA"). As Plaintiffs have generally refused to narrow the scope of their Requests, these agencies have little guidance when asked to produce "copies of all documents and ESI" related to extremely broad categories of subject matters.[3] *See, e.g.,* D.E. 81-3, at 12.

However, in an effort to comply with its discovery obligations, the United States has provided Plaintiffs with hundreds of thousands of documents to date, including documents considered "outstanding" by Plaintiffs, beginning October 31, 2023. Exhibit 1 details the United States' effort, to date, to produce responsive records for Plaintiffs' broad, and irrelevant, Requests. To the extent production has not already occurred, the United States has committed to begin production or offer inspection of responsive documents to each of the pending Requests in Plaintiffs' First RFPs by the end of December 2023.

In addition to producing responsive hard copy documents, the United States has been proactive in its efforts to produce reasonably obtainable ESI in advance of an agreement on ESI custodians and search terms, or agreement on the production of non-custodial ESI. For example, Request Number 3 in the First RFPs 1 seeks "61 million pages of USMC Camp Lejeune Muster Rolls representing over five million unique Service Members who were stationed at Camp Lejeune from the 1950s to 1971 . . ." D.E. 81-3, at 11. The United States has offered Plaintiffs the opportunity to inspect the hard copy versions of these documents multiple times, but Plaintiffs have yet to take up the offer. D.E. 81-6, at 3. Rather than wait until the completion of the ESI meet and confers, however, the United States has been working with the USMC to make digitized

---

[3] The First RFPs alone seek production of more than 60 million pages of documents. D.E. 81-3, at 12.

3

Case 7:23-cv-00897-RJ   Document 92   Filed 12/21/23   Page 4 of 13

versions of these Muster Rolls available to Plaintiffs. D.E. 81-9, at 3.[4] The United States has continued to produce responsive documents on a rolling basis to Plaintiffs.[5]

## ARGUMENT

The Court should deny Plaintiffs' Motion and grant the United States' Cross-Motion for a Protective Order. Each RFP in the first set of Requests is overbroad and not proportional to the needs of the case, and a substantial number seek information not relevant to any Party's claims or defenses in this litigation. Plaintiffs' demands that the United States produce these documents on an expedited timeline is unreasonable and would cause an additional undue burden.[6]

Per Case Management Order No. 2 ("CMO-2)," this Court "expects the Parties to conduct discovery efficiently." D.E. 23, at 8. Simultaneously, this Court "recognize[d] the significant burden created by the number of CLJA actions already filed [and] the anticipated additional filing[s]." *Id.* The Court has also recognized that "elements of this [litigation] are straightforward . . . we're not going to waste time in discovery on things that will never be admitted into evidence . . . [T]here's no need to waste [time] in discovery . . . on information that's not relevant to resolving a claim under the statue." D.E. 81-14, at 20:17-24. Despite these directives, Plaintiffs' First RFPs

---

[4] The United States has also offered Plaintiffs the opportunity to inspect hard copy records at LANTDIV (in Norfolk, VA), concerning Request Number 17. D.E. 81-9, at 6. The United States provided specific dates for this inspection in its December 12, 2023, letter to Plaintiffs. To date, Plaintiffs have not responded. D.E. 81-17, at 4. Additionally, the United States has offered inspection dates for the Camp Lejeune UST records. *Id.* As of December 21, 2023, Plaintiffs have not provided dates for conducting the inspections or even confirmed that they wish to do so. The United States is also offering Plaintiffs the opportunity to inspect the boxes referenced in the ATSDR 30(b)(6) deposition, discussed further, *infra*, p.8.

[5] Plaintiffs simultaneously complain that the United States is not doing enough to produce responsive documents, while also complaining that the United States has consulted with various agencies "at least *eight* times." D.E. 82, at 9 (emphasis in original). This contradiction only proves the United States' point: given the overbreadth and vague terms in the Requests, the United States has needed to, and continues to, consult with the agencies many times to retrieve responsive documents.

[6] Without any basis, the Motion seeks to limit the United States' time to respond to discovery requests to 15 days, a modification to Federal Rule of Civil Procedure 34. Such an extreme request and change to the Rules should be denied. *See Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 564 (W.D.N.C. May 15, 2002). ("traditional canons of interpretation regarding the interaction between the various Federal Rules of Civil Procedure . . . require that the rules be construed in a manner that is internally consistent").

are overly broad, seek documents that are irrelevant to the claims at issue in this action, and are incredibly burdensome on the United States as it tries to move this litigation forward expeditiously to the merits of Plaintiffs' claims. Given the breadth of discovery sought, and the need to negotiate ESI custodians and search terms, the United States is well within its rights to assert that it will continue to produce documents on a rolling basis until the end of fact discovery, an appropriately specified "reasonable time" under Fed. R. Civ. P. 34(b)(2)(B).[7]

1. **Many of the First RFPs Are Not Relevant to any Claims or Defenses.**

This Court has emphasized that "[o]nce somebody gets over general and specific causation, they can present their experts if the Government contests it, the person can talk about their injury; but as [the Court] read[s] the elements of this statute and this claim, *none of it has anything to do with what the Navy knew or didn't know*." D.E. 81-14, at 20:7-11 (emphasis added). The United States acknowledged this in its Answer to Plaintiffs' Master Complaint by confirming that it is "not demand[ing] proof of negligence or fault for claimants who prove a harm with the causal connection between exposure to perchloroethylene ("PCE"), trichloroethylene ("TCE"), trans-1,2-dichloroethylene ("1,2-tDCE"), vinyl chloride ("VC"), or benzene in Camp Lejeune water." D.E. 50, at 3. Thus, evidence or proof of negligence or fault is irrelevant.

Despite this, Plaintiffs are requesting broad categories of documents, including ESI, aimed specifically at evidence of negligence or fault. Similar to Request Number 16, which seeks practically every document the Navy has ever created with respect to Camp Lejeune, Request Number 10 seeks "unredacted copies of all documents and ESI, . . . in the possession, custody, or

---

[7] Significantly, Plaintiffs just served responses to the United States' First Request for Production which mostly state that material will be produced on a "rolling basis" and provide no specified time at all when production will be complete. Exhibit 3, at 1. This makes their argument regarding deficiencies in the government's response ring hollow. Plaintiffs have also represented to the Court that there is "a legion of case law providing that, as a general rule, motions to compel should be denied where the deadline for response has not expired . . . ." D.E. 88, at 7. No fact discovery deadline has passed here.

5

control of the DON related to the Navy's underground storage tank ("UST") program records and contents of the UST electronic portal relating to Camp Lejeune." D.E. 81-3, at 12. Records concerning USTs will not speak to general or specific causation, as these records relate to the assessment and clean-up of contamination from leaking USTs. Requests such as these ignore the actual issues involved in this case and the Court's guidance in managing this case efficiently. The request seek information that simply is not relevant to Plaintiffs' claims.[8]

### 2. Plaintiffs' Requests Are Not Proportional to the Needs of this Case, Are Impermissibly Broad in Scope and Timing, and Create an Undue Burden.

Even if the documents sought in the Requests were relevant, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004). "On its own initiative or in response to a motion for protective order under rule 26(c), a district court may limit [discovery] . . ." *Id.* In addition, to determine whether document requests are appropriately tailored, courts may consider the "proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). "Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs it's likely benefit.'" *Battle v. N.C. Dep't of Pub. Safety – Prisons*, 2019 U.S. Dist. LEXIS 95724, at *68 (W.D.N.C. June 6, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

Plaintiffs' Requests include language calling for "all documents and ESI," accompanied by an extraordinarily large range of items; for example, Request Number 17, seeks document and ESI "relating to any work, investigation, research, discussion, or correspondence, memos or documents or data of any form" from the Atlantic Division Naval Facilities Engineering

---

[8] Furthermore, as has been noted since the United States' responses to this Request on October 30, 2023, the Navy has put substantial information related to this topic online. The United States pointed Plaintiffs to these public resources, which "include historic documents, analytical data, maps, reports, contracts, and other documents." Plaintiffs have failed to identify why it requires additional information above and beyond what is publicly available.

Command. *Id.*, D.E. 81-3, at 13-14. Such requests "unfairly place[] the onus of non-production on the recipient of the request and not where it belongs – upon the person who drafted such a sloppy request." *James Madison Proj. v. C.I.A.*, 2009 U.S. Dist. LEXIS 78671, at *10 (E.D. Va. Aug. 31, 2009) (quotation omitted). As this Court has found:

> As a practical matter, the United States cannot search every email inbox of every employee. Rule 34 requires that requests for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). That requirement is particularly important in electronic discovery, where parties must search through vast amounts of data.

*Health & Beauty Techs., Inc. v. Merz Pharma GmbH KGaA*, 2018 U.S. Dist. LEXIS 206289, at *22 (E.D.N.C. Dec. 5, 2018) (Jones, J.), *aff'd*, No. 2019 U.S. Dist. ELXIS 6989 (E.D.N.C. Jan. 15, 2019). Moreover, the Requests cover a period spanning almost eight decades, beginning in the 1940s and continuing to the present. D.E. 81-3, at 10. The United States understands its responsibility to consider proportionality regarding discovery and get to the merits of these cases. Plaintiffs, however, have made no effort to tailor their Requests to comport to the issues actually involved in this case. This Court has found that disproportionate requests like those in the First RFPs should not be permitted. *See, e.g., Page v. Bragg Communities, LLC*, 2023 U.S. Dist. LEXIS 147513, at *10 (E.D.N.C. Aug. 22, 2023) (denying motion to compel for disproportionate discovery). Furthermore, while all discovery creates some burden, the Requests seek such a broad scope of information, production on an expedited schedule constitutes an undue burden. *See* Fed. R. Civ. P. 26(c)(1); *Jiangmen Kinwai Furniture Decoration v. IHFC Props.*, 2015 U.S. Dist. LEXIS 115267, at *23-24 (M.D.N.C. Aug. 31, 2015) (quashing subpoenas as overly broad and unduly burdensome, and identifying the short amount of time to comply with the broad requests as particularly burdensome).

3. **The United States Has Produced Hundreds of Thousands of Responsive Documents and Will Continue to Do So in a Reasonable Time.**

7

The United States has produced hundreds of thousands of documents and directed Plaintiffs to troves of publicly available sources responsive to the Requests. *See* Exhibit 1.[9] Plaintiffs falsely assert that "[the United States] failed to produce any responsive documents within the 30-day period by the First Request." D.E. 82, at 4. The United States began producing documents on October 31, 2023, and has continued the production on a rolling basis. *See* Exhibit 1. Indeed, the United States has already committed to producing a large percentage of hard copy documents responsive to the First RFPs by the end of December 2023. D.E. 81-17. The United States has also committed to continuing the production of, or making available for inspection, responsive documents to each of the pending Requests in Plaintiffs' First RFPs by the end of December 2023.

Plaintiffs rely on deposition testimony of ATSDR Chief Records Officer James Baker, D.E. 82, at 7. However, Mr. Baker's deposition testimony demonstrates the United States' efforts to identify and produce documents in response to the Requests. In preparation for the Rule 30(b)(6) deposition, Mr. Baker and his team created an index of the location of documents related to Camp Lejeune – the topic of the Rule 30(b)(6) deposition. The United States has produced some of the material included in the index and is working to produce the non-privileged, hardcopy material.[10] During the deposition of Mr. Baker, the United States offered numerous times to meet and confer

---

[9] Plaintiffs have informed the Court that they are in possession of nearly all the documents they need from publicly available documents, prior Camp Lejeune litigation, and documents produced in this litigation. *See, e.g.,* D.E. 38, at 16:11-19 ("[I]f we get all of the information we need that is . . . publicly available, then about 80 to 90 percent of our clients we can prove are on the base at a certain time and what they did and where they lived. We could do that ourselves . . . ."); D.E. 76, at 33:24-34:1 ("[W]e have 95 percent of [the documents the United States had produced at that point from] those from the prior litigation. We've already had those documents.").

[10] Mr. Baker traveled to the Federal Records Center to retrieve two boxes of records related to Camp Lejeune, which are now located in his office. D.E. 81-12, at 31:5-18. As Chief Records Officer, Mr. Baker's job responsibilities include retrieving and holding records. *Id.* at 41:4-12. The United States is in the process of conducting a privilege review and is making the non-privileged, hardcopy boxes referenced in Mr. Baker's testimony available for Plaintiffs' inspection.

regarding production of the materials included on the index, D.E.81-12, at 71:3-12; 98:7-10; 99:7-10, but Plaintiffs have not followed up. Instead of narrowing their requests to issues relevant to the litigation or engaging in meaningful discovery conferences, Plaintiffs seek to unreasonably burden the government with overbroad and irrelevant requests and unnecessary motions practice.

### 4. The Requests do not Comply with the ESI Order.

Section Three of the ESI Order specifically concerns the scope of electronically stored documents, separating documents into three distinct categories: (1) Plaintiff Record Request Compilations, (2) Plaintiff Census Documents, and (3) Other Discovery. Section (ii)(1) states "Custodians: The Parties shall meet and confer to reach agreement on the names of Custodians subject to searches for ESI. In addition, the Parties shall meet and confer to reach agreement on centralized, non-custodial sources of ESI to be searched, such as databases, shared filed servers, and collaboration sites." D.E. 52 at § 3(c)(ii)(1). Thus, the Order specifically requires the Parties to negotiate an ESI protocol for discovery.

As of December 21, 2023, the Parties are continuing discussions concerning agency-specific custodians and search terms. Discussions regarding ESI production only began in December 2023, despite repeated attempts by the United States to engage in these discussions with Plaintiffs before that time. Notwithstanding, Plaintiffs still have not provided the United States with a complete list of custodians and search terms, specific to ESI.[11]

Consequently, the United States is working with incomplete and evolving information, further delaying its ability to conduct discovery efficiently.[12] Despite continually emphasizing the need for information "as soon as possible," Plaintiffs refuse to reasonably narrow their Requests

---

[11] Lists of custodians and search terms have been received the night before a scheduled conference, the morning of a conference, and even during a conference.

[12] Exhibit 2 includes a comprehensive overview of the time, work, and cost required to collect, process, and review ESI from custodians suggested by the United States and Plaintiffs.

or provide precise information regarding ESI. In addition, the Plaintiffs have completely failed to engage with the United States on centralized, non-custodial sources of ESI.[13]

## CROSS-MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(b)(2)(C), 26(c), and Local Rule 26.1(d), the United Sates hereby moves the Court for a Protective Order to bar (1) the discovery of overly broad and irrelevant documents, and (2) the discovery of ESI sources until the Parties have negotiated an ESI protocol under the ESI Order. As discussed above, Plaintiffs are seeking documents that are wholly irrelevant to the narrow causation issues in this litigation. The burden on the United States to produce responsive documents with marginal, if any relevance, far outweighs any evidentiary benefit Plaintiffs may receive. *See, e.g., United States v. Duke Energy Corp.*, 214 F.R.D. 392, at 393 (M.D.N.C. 2003) (The Court granted a protective order because "the likely relevance and benefit of any of the discovery requested is far outweighed by the burden. As [the United States] points out, the expense of requiring a cabinet agency to search all its files for particular documents is enormous."). Plaintiffs should be required to narrow the scope of the Requests to be proportional to the merits and needs of the case. Additionally, the United States should also be protected from producing ESI until the required conferences have taken place pursuant to the ESI Order.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied and the United States' Cross-Motion for Protective Order should be granted.

---

[13] Plaintiffs' Motion cites to the recent Veterans Affairs Fed. R. Civ. P. 30(b)(6) deposition testimony regarding documents on her work laptop (D.E. 82, at 9) but fails to acknowledge that these documents unquestionably represent ESI subject to a negotiated ESI protocol pursuant to the ESI Order. Similarly, most items on the Mr. Baker's index are ESI and are subject to a negotiated ESI protocol.

Dated: December 21, 2023

Respectfully Submitted,

    BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General
    Civil Division

    J. PATRICK GLYNN
    Director, Torts Branch

    BRIDGET BAILEY LIPSCOMB
    Assistant Director

    ADAM BAIN
    Senior Trial Counsel

    SARA MIRSKY
    PATRICK RYAN
    Trial Attorneys

    */s/ Joseph B. Turner*
    JOSEPH B. TURNER
    DC Bar No. 1766124
    Trial Attorney, Torts Branch
    Environmental Tort Litigation Section
    United States Department of Justice
    P.O. Box 340, Ben Franklin Station
    Washington, D.C. 20044
    E-mail: Joseph.B.Turner@usdoj.gov
    Telephone: (202) 436-6895

    Attorney inquiries to DOJ regarding CLJA:
    (202) 353-4426

11

Case 7:23-cv-00897-RJ   Document 92   Filed 12/21/23   Page 12 of 13

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2023, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

                                            */s/ Joseph B. Turner*
                                            JOSEPH B. TURNER