IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No. 7:23-cv-897 |
| | ) | |
| | ) | UNITED STATES' MOTION TO |
| This Document Relates To: | ) | AMEND CASE MANAGEMENT |
| ALL CASES | ) | ORDER NO. 2 |

Pursuant to Federal Rule of Civil Procedure 16, Local Rule 7.1, and Case Management Order No. 2 (Dkt. 23), the United States moves the Court for an order amending Case Management Order No. 2 to (1) require every plaintiff to file a Short Form Complaint; (2) remove the opt-out provision for plaintiffs in Track 2 and beyond; (3) extend Track 1 fact discovery by 90 days; and (4) require plaintiffs in Track 1 and all future tracks to notify defendant promptly if they choose to conduct (or have already conducted) a medical or other expert examination of a discovery plaintiff.

In support of this Motion, the United States submits and relies upon its accompanying Memorandum in Support, the Declaration of Nathan Bu, and exhibits attached hereto.

Dated: December 26, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Senior Trial Counsel

1

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
SARA J. MIRSKY
NATHAN BU
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
1100 L Street NW
Washington, DC 20005
E-mail: daniel.c.eagles@usdoj.gov
Phone: (202) 305-0253
Fax: (202) 616-4473

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: )<br>CAMP LEJEUNE WATER LITIGATION )<br>)<br>)<br>)<br>)<br>This Document Relates To: )<br>ALL CASES ) | Case No. 7:23-cv-897<br><br>UNITED STATES'<br>MEMORANDUM IN SUPPORT<br>OF MOTION TO AMEND<br>CASE MANAGEMENT ORDER<br>NO. 2 |

Prompt resolution of all Camp Lejeune Justice Act ("CLJA") claims—not just those selected for the early discovery tracks—requires investing a modest amount of time on the front end to obtain a representative sample of cases and ensure that those cases are adequately litigated.

The existing case management procedures have allowed plaintiffs' counsel multiple opportunities to opt their clients out of discovery and trial, even after they have "opted in" to litigation by deeming their administrative claims denied and filing suit. Plaintiffs' counsel are making full strategic use of these opt-outs, precluding the possibility that the discovery pool will be as representative as it could be of the overall pool of CLJA cases. Good cause therefore exists for the Court to amend CMO 2 to require every plaintiff to file a Short Form Complaint and to remove the provision allowing them to opt out of discovery and trial. *See* Fed. R. Civ. P. 16.

Good cause also exists for the Court to amend CMO 2 to ensure that the parties have enough time to complete discovery. *Id.* On the fact discovery front, the United States has previously submitted a declaration from the Office of Litigation Support, Civil Division, Department of Justice, attesting that based on the available resources, the United States cannot collect, process, review, and produce the quantity of documents that plaintiffs have already requested and that the United States has agreed to produce within the discovery timeframe

1

contemplated by CMO 2. Moreover, given the difficulty in procuring identifying information for individual plaintiffs—which was recently resolved by a Court order compelling plaintiffs to produce the information—the United States has been unable to retrieve plaintiff records needed for discovery. A 90-day extension is needed.

With respect to expert discovery, the United States is willing to forgo expert examinations (for example, by medical experts and life care planners) of individual plaintiffs in the discovery pool if plaintiffs are also willing to forgo expert examinations of those plaintiffs. The United States proposes a system by which plaintiffs will simply provide notice to the defense if they plan to conduct an expert examination of a plaintiff (or if they have already done so). Without such a system, the United States will be forced to seek various expert examinations of plaintiffs even where plaintiffs themselves may end up not conducting such examinations. Alternatively, the United States will have to wait until plaintiffs' expert disclosure deadline and attempt to conduct any necessary defense expert examinations within the 30 days before defense expert disclosures are due (which is likely infeasible without an extension of the expert deadline).

The United States respectfully moves the Court for an order amending CMO 2 to implement these changes that will expedite the overall resolution of the CLJA litigation.

## I.  The Court Should Amend CMO 2 To Make Every Plaintiff Eligible for Discovery Pool Selection in Track 2 and Beyond.

Ultimate resolution of the CLJA litigation will depend on resolution of several key issues, including: (1) which categories of alleged injuries could be linked to contaminants in the water at Camp Lejeune (i.e., general causation); (2) whether specific plaintiffs alleging injuries where general causation is established have also shown that their particular injuries were as likely as not caused by exposure to contaminated water at Camp Lejeune (i.e., specific causation); and (3)

where general and specific causation are established, the appropriate measure of damages for individual cases.

Answers to these crucial questions can only inform global settlement discussions where the subset of cases litigated are actually representative of the entire universe of CLJA claims. Ensuring bellwether representativeness is an indispensable step to efficient resolution of mass tort litigation. *See, e.g.*, Manual for Complex Litigation § 22.315 (4th ed.) ("If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases."); Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass Tort MDLs* (2d ed. Sept. 2018), at 23 ("[B]ellwether trials are most beneficial if they: (a) produce decisions on key issues applicable to other cases in the proceeding (including on *Daubert* issues, cross-cutting summary-judgment arguments, and the admissibility of key evidence); and (b) help the parties assess the strengths and weaknesses of various types of claims[.]"). From the outset, the United States has consistently advocated the importance of having representative bellwether cases. *See, e.g.*, Dkt. 5-2, 17-3, 56, 83.

Unfortunately, the procedures established in CMO 2 have resulted in an unrepresentative pool of plaintiffs in Track 1. Plaintiffs' counsel have used the procedures to pick their strongest cases and ensure that their weaker cases are not subjected to the scrutiny of litigation.

As an initial matter, only a small fraction of CLJA claimants have deemed their administrative claims denied and have elected to litigate in federal court. *See* CLJA § 804(h); 28 U.S.C. § 1275. To be sure, choosing whether or not to deem one's claim denied (if the agency has not issued a written denial), and choosing whether to file suit, are inherent features of the administrative claims process, outside the purview of the Court. *Id.* Plaintiffs' counsel have taken

3

Case 7:23-cv-00897-RJ   Document 95   Filed 12/26/23   Page 5 of 17

full advantage of those features to control the pool of cases that the Court may be able to hear. As of May 6, 2023, more than 45,000 CLJA claims had been filed with the Department of the Navy. Bu Decl. ¶ 2. All 45,000 of these claims were eligible for suit in federal court by November 6, 2023—the date that plaintiffs assert was the deadline to file a Short Form Complaint to be eligible for Track 1. *See* Mem. in Support of Plaintiffs' Leadership Group ("PLG") Mot. to Enforce CMO 2, Dkt. 79, at 2 (Dec. 12, 2023). By the end of the day on November 6, 2023, plaintiffs had filed no more than 1,419 CLJA cases in this Court. *See* Joint Status Report, Dkt. 45 (Nov. 14, 2023). And only 288 of those cases included a Short Form Complaint. *See* Bu Decl., Ex. A; Mem. in Support of PLG's Mot. to Enforce CMO 2, Dkt. No. 79, at 3 (Dec. 12, 2023).

Even beyond the narrowing of the pool allowed by the administrative claims process, plaintiffs' counsel have leveraged procedures in CMO 2 to shield their weaker cases from the scrutiny of litigation. First, CMO 2 directed that "[a]ny Plaintiff who filed a Complaint in this Court before the filing of the Master Complaint and who wishes to pursue their CLJA action in accordance with this Order (including the Discovery and Trial Plan in section XI of this Order) shall file a Short Form Complaint in the Plaintiff's individual docket within 45 days of this Order." Dkt. 23 at 5. Plaintiffs have used this provision to file Short Form Complaints for just a small subset of the filed cases.[1] For the rest of the filed cases, plaintiffs have refused to file Short Form Complaints, essentially indefinitely staying their cases and opting out of discovery. (The United States has argued against this procedure in previous filings. *See* United States'

---

[1] PLG has further taken the position that plaintiffs who submitted Short Form Complaints after November 6, 2023 are ineligible for Track 1 Discovery selection. Nearly half of these opt-out cases are associated with PLG. *See* United States' Opp. to PLG's Mot. to Enforce, Dkt. 83, at 4.

4

Submission for Track 2 Diseases and Discovery and Changes to the Track 1 Discovery and Trial Plan, Dkt. 56, at 3-4 (Nov. 27, 2023).)

Second, CMO 2 explicitly allows plaintiffs who *have* filed a Short Form Complaint to affirmatively "opt out" of discovery and trial. Dkt. 23 at 9. The apparent rationale for this provision was to allow plaintiff counsel who are not affiliated with PLG to avoid discovery and trial under PLG's direction if they did not agree with PLG's strategic decision-making.

But this provision finds no support in the Federal Rules of Civil Procedure: discovery and trial are not optional at plaintiffs' unilateral discretion. The practical effect of this procedure essentially allows a plaintiff to maintain a tort lawsuit against the federal government while precluding the United States from gathering crucial information about the case. Instead the PLG's use of the procedure must be seen for what it is: a tactic to shield weak cases from the scrutiny of litigation, which defeats any attempt for representativeness.

At bottom, if the goal is to litigate cases that might lead to a global resolution, there is no basis to allow plaintiffs to opt out of participating in litigation after they have already opted in by filing suit. The numbers show that plaintiffs' counsel have carefully filtered the cases they wish to litigate from those that they want to shield from litigation.

- 1,419 CLJA cases were filed by November 14, 2023, Dkt. 45, but only 288 plaintiffs filed a Short Form Complaint by November 6, 2023. Bu Decl., Ex. A.

- Of the 288 plaintiffs who had filed a Short Form Complaint by November 6, 2023, 7 affirmatively opted out, and another 44 opted out but then opted back in on the date that Track 1 plaintiff selections were due. Bu Decl., Ex. A.

- Another 130 plaintiffs elected to file a Short Form Complaint between November 7, 2023, and November 13, 2023 (thereby excluding their cases from consideration for Track 1 according to PLG's reading of CMO 2). Of those 130 plaintiffs, another 11 opted out of discovery but later opted back in. Bu Decl., Ex. B.

Plaintiffs' selective screening of cases affects the informational value of the bellwether pool. As discussed in an earlier filing, the small amount of information available to date about

plaintiffs' claims already demonstrates that PLG is only putting forward its stronger cases. Of the 187 plaintiffs alleging Track 1 diseases who filed Short Form Complaints and did not opt out before November 6, 2023, the average alleged duration of exposure to water at Camp Lejeune was nearly 41 months. But for those plaintiffs with Track 1 diseases who expressly opted out of discovery, or who filed a Short Form Complaint between November 7 and November 13 (thereby excluding them from Track 1 consideration, according to PLG's interpretation of the CMO), the average alleged duration of exposure was less than 26 months—over a year less exposure than plaintiffs who were eligible for Track 1 discovery selection according to PLG. *See* Dkt. 83 at 6 & Ex. A and B to Dkt. 83.

In the interest of expediency, the United States is not requesting that the Court have the parties start over on Track 1. However, to create a more representative pool of discovery plaintiffs for Track 2 and beyond, and to ensure that the parties derive as much information as possible for settlement purposes, the Court should require every plaintiff to file a Short Form Complaint, and the Court should strike the opt-out provision from CMO 2 for plaintiffs in Track 2 and beyond. Every plaintiff should be eligible for discovery pool selection.

## II. The Court Should Amend CMO 2 To Allow 90 Additional Days To Complete Track 1 Discovery.

The United States is eager to move forward with fact discovery and to move on to the later phases of this litigation—expert discovery, *Daubert* and dispositive motion briefing, and trials. However, plaintiffs' broad fact discovery demands, including demands for a vast quantity of Electronically Stored Information ("ESI") from individuals at various government agencies, and recalcitrance in providing identifying information for obtaining individual plaintiff records, mean that fact discovery simply cannot be completed within the timeframe contemplated by CMO 2—namely, 90 days after the issuance of the Track 1 Order. *See* CMO 2, Dkt. 23, at 10.

6

Taking into account resource constraints and the government's substantial commitments across all facets of the CLJA litigation, an extension of at least 90 additional days will be required to respond to plaintiffs' discovery requests, even if ESI collection and production is limited to the 13 custodians across four agencies for which the United States has already agreed to produce ESI-related documents. As detailed below and in the Declaration of Joshua Wood, Dkt. 92-2 (appended to the United States' Opposition to Plaintiffs' Motion to Compel), a considerably longer extension may become necessary if the number of custodians increases, if the parties are unable to reach agreement on ways to conduct this review efficiently, or if the scope of plaintiffs' requests expands further.

To date, PLG has served 5 sets of general Requests for Production of Documents ("RFPs"), totaling 38 individual requests (not counting subparts).[2] As detailed in a separate filing, plaintiffs' requests are markedly overbroad, and many of them seek legally irrelevant evidence relating to alleged negligence or fault. *See* United States' Opp. to Pls.' Mot. to Compel, Dkt. 92, at 2-8 (Dec. 21, 2023); *see also* Pls.' Reply in Support of Mot. for Partial Summ. J., Dkt. 94, at 8 (plaintiffs asserting that CLJA "dispens[es] with any fault requirement" and "does not require proof of negligence"). Negotiations between the parties continue on plaintiffs' various discovery requests, subject, of course, to the Court's ruling on plaintiffs' motion to compel (Dkt. 81), and the United States' cross-motion for a protective order (Dkt. 93).

---

[2] On Friday, December 22, 2023, PLG served an additional set of Interrogatories and Requests for Production "Concerning Track 1 Discovery Pool Plaintiffs." Exs. C, D. In these documents, PLG "requests a separate response from Defendant concerning each of the Track 1 Discovery Pool Plaintiffs." Exs. C, D at 1. The United States will formally respond to the Interrogatories and Requests for Production separately. But under PLG's theory, PLG have just served the United States with an additional 600 Requests for Production and 600 Interrogatories for both hard-copy documents and ESI.

Nonetheless, the United States has worked hard to begin responding to plaintiffs' discovery requests where possible. As of the date of this motion, the United States has produced more than 500,000 records in response to plaintiffs' requests for production. Dkt. 92 at 2. The United States has also committed to producing a large percentage of hard copy documents responsive to PLG's First RFPs by the end of December 2023. Further, the United States will continue to produce, or make available for inspection and copying, responsive documents to the RFPs by the end of fact discovery. *Id.* at 8.

Many aspects of the scope of discovery remain unresolved. Most prominently, the parties have not yet reached agreement on the number or identity of document custodians for ESI searches. The United States has agreed to collect and produce documents from 13 custodians—3 at the Marine Corps, 3 at the Navy, 3 at EPA, and 4 at ATSDR. *See* Wood Decl., Dkt. 92-2.

The Chief of the Office of Litigation Support (OLS) for the Civil Division of the Department of Justice, Joshua Wood, has generated for the Court's and parties' benefit a thorough set of estimates for the time required to complete discovery. *See* Wood Decl., Dkt. 92-2. Even assuming custodial ESI data is collected, processed, reviewed, and produced from only the 13 custodians for whom the United States has already agreed to produce documents, complete production will take a minimum of 102 working days (roughly 5 months—already well beyond the time allotted to fact discovery under CMO 2). *Id.* at 13. Additional custodians would increase the minimum 102-working-day estimate.

The 102-working-day estimate further assumes, optimistically, that (1) the parties can agree on collection search terms to be applied at the agency level at the time of document collection; (2) the parties can agree on pre-review search terms to further narrow the scope of documents to be reviewed and produced; and (3) the parties can agree to use Technology

Assisted Review (TAR), a form of artificial intelligence, to expedite the work of the attorney reviewers. *Id.* Crucially, the parties have not reached agreement on any of these points.

Altering any of these assumptions—for example, by increasing the number of document custodians, or requiring attorneys to conduct their review without the benefit of TAR—could astronomically increase the time required to complete document production. *Id.* at 13. Likewise, additional document requests from PLG would have the potential to further extend the time needed to complete document production.[3]

The ongoing mass tort litigation related to leakage from the U.S. military's Red Hill Underground Fuel Storage Facility in Hawaii offers an instructive example. *Feindt v. United States*, No. 1:22-cv-00397 (D. Haw.). In that litigation, three months from the close of fact discovery, plaintiffs sought discovery of ESI data from as many as 50 custodians. Following letter briefing and a hearing in which the United States explained the time required to complete the requested amount of discovery, plaintiffs agreed to limit their ESI searches to five custodians, covering only two years of ESI data.[4] Here, operating within a similar time frame for fact discovery (roughly three months), PLG is demanding, and the United States has already agreed to include, at least two and a half times as many custodians for a period potentially spanning

---

[3] Furthermore, this estimate does not include the time necessary to collect, process, review, and produce non-custodial ESI, which is subject to a separate set of meet and confer conferences, per the jointly submitted ESI Protocol (Dkt. 52).

[4] *See* Ex. E (May 23, 2023 U.S. Ltr. Br., *Feindt v. United States*, No. 1:22-cv-00397-LEK-KJM (D. Haw.)) (detailing burden in meeting expansive ESI discovery requests within short discovery period); Ex. F, at 7:12-8:25, 13:6-14:14, 16:25-17:25) (June 1, 2023 Hrg. Tr., *Feindt v. United States*, No. 1:22-cv-00397-LEK-KJM (D. Haw.)) (oral argument regarding same, court's "agree[ment] with the Government's proposals" to either keep trial date and limit discovery or move trial date for more expansive discovery); Ex. G (June 9, 2023 Plaintiffs' Ltr. Br., *Feindt v. United States*, No. 1:22-cv-00397-LEK-KJM (D. Haw.)) (plaintiffs agreeing to limit ESI searches to five custodians, covering two years of ESI data).

decades rather than the two years at issue in *Feindt*. Just as in *Feindt*, PLG's discovery demands, even those to which the United States has already agreed, are not achievable within 90 days.

Beyond the United States' work to respond to PLG's discovery demands, the United States is also trying to obtain the documents that it needs to assess the individual cases. The United States has the burden of obtaining plaintiff records from the Veterans Administration and National Archives and Records Administration, as well as subpoenaing records from third-party medical providers. To date, plaintiffs have largely thwarted these efforts by refusing to provide plaintiff identifying information for the majority of their clients. The Court's Order of December 21, Dkt. 91, granting in part the United States' motion to compel on this issue, will allow the United States to begin catching up on plaintiff record collection, but the United States is months behind on plaintiff discovery because of PLG's intransigence.

For all of these reasons, the Court should amend CMO 2 to allow 90 additional days (180 days in total) for the completion of fact discovery after the issuance of the Track 1 Order. A short 90-day extension to the current 90-day fact discovery period will allow the parties to conduct the needed discovery for Track 1 plaintiffs while still allowing the Court to schedule some cases for trial before the end of 2024.

### III. The Court Should Amend CMO 2 To Require Plaintiffs in Track 1 and All Future Tracks To Notify Defendant if They Choose To Conduct a Medical or Other Expert Examination of a Discovery Plaintiff.

Even if the Court grants an additional 90 days for Track 1 discovery, the parties will face a substantial challenge in completing discovery for all 100 Track 1 plaintiffs. Consistent with standard practice in tort litigation, the United States intends to take the deposition of every Track 1 plaintiff and their key healthcare providers. Where appropriate, the United States may also depose other witnesses with knowledge relating to plaintiffs' claims, such as family members,

10

Case 7:23-cv-00897-RJ    Document 95    Filed 12/26/23    Page 12 of 17

caregivers, or employers. These hundreds of depositions within a short timeframe will demand a significant portion of the parties' effort and attention.

As part of plaintiff-specific discovery, the parties will also have to decide whether to conduct medical or other expert examinations for each of the Track 1 plaintiffs. These could include examinations by oncologists or other physicians with disease-specific expertise; by psychologists or psychiatrists where there are claims of significant emotional distress; or by life care planners, vocational or occupational rehabilitation experts where there are claims of other life impacts. Based on experience in similar cases, the United States presumes that independent expert examinations in one or more of these categories may be necessary for many of the Track 1 plaintiffs. Conducting independent expert examinations may be exceptionally time- and cost-intensive, considering the large number of Track 1 plaintiffs.

In the interest of efficiency, however, the United States is willing to forgo expert examinations of a given plaintiff if that plaintiff will also forgo such examinations for purposes of expert testimony. Mutually forgoing medical and other expert examinations of plaintiffs—not necessarily in every case, but only in the cases where plaintiffs themselves think those examinations are unnecessary—would expedite discovery and minimize burdens on the plaintiffs themselves and counsel for all parties.

Under CMO 2 as it currently stands, the only way the United States can find out if plaintiffs are willing to forgo expert examinations of a given plaintiff is to wait for the expert disclosure deadline. But the United States would never be able to conduct expert examinations for 100 Track 1 plaintiffs (or even a fraction of that number) within the 30-day period between plaintiffs' expert disclosure deadline and the United States' expert disclosure deadline.

To that end, the United States proposed a stipulation so that the United States could obtain advance notice if plaintiffs' counsel will be submitting expert reports where their expert has met with or evaluated the plaintiff in person. The proposed stipulation provided that plaintiffs would provide advance notice of at least fifteen days to the United States before a Fed. R. Civ. P. 26(a)(2)(B) retained expert conducts a medical or other expert examination of a plaintiff. In addition, plaintiffs would notify the United States of any such examinations that had already taken place. The United States, in turn, would coordinate with PLG on the scheduling of any medical or other expert examination of a plaintiff by a Fed. R. Civ. P. 26(a)(2)(B) expert retained by the defense. Such notice would allow the United States to begin its process of plaintiff examinations by defense-retained experts while fact discovery is underway, without having to make blanket requests to examine all 100 Track 1 plaintiffs without regard to whether plaintiffs themselves will disclose expert testimony based on examinations of those plaintiffs. Unfortunately, PLG rejected the United States' proposal.

The United States continues to believe that requiring notice of medical or other expert examinations, as well as notice of the type of examination (e.g., physical, psychiatric, life care planning, occupational, etc.), will serve the interests of plaintiffs, the United States, and the Court by avoiding unnecessary examinations of plaintiffs. The rationale for this approach mirrors the rationale for having staggered expert disclosure deadlines. It is in everyone's interest for the parties' expert reports to address the same issues. The parties should not squander time and resources on expert examinations addressing issues that are not in dispute because plaintiffs have opted not to disclose testimony on those issues.

12

Case 7:23-cv-00897-RJ   Document 95   Filed 12/26/23   Page 14 of 17

The United States therefore asks the Court to amend CMO 2 to require prompt notice of all future expert examinations of plaintiffs (and of any examinations that have already taken place).

\* \* \*

The United States respectfully urges the Court to amend Case Management Order No. 2 to (1) require every plaintiff to file a Short Form Complaint; (2) remove the opt-out provision for plaintiffs in Track 2 and beyond; (3) extend Track 1 fact discovery by 90 days; and (4) require plaintiffs in Track 1 and all future tracks to notify defendant promptly if they choose to conduct (or have conducted) a medical or other expert examination of a discovery plaintiff. The United States has met and conferred with PLG about these issues on numerous occasions and understands that PLG opposes the United States' requests.

Dated: December 26, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Senior Trial Counsel

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
SARA J. MIRSKY
NATHAN BU
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section

1100 L Street NW
Washington, DC 20005
E-mail: daniel.c.eagles@usdoj.gov
Phone: (202) 305-0253
Fax: (202) 616-4473

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

# CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2023, a copy of the foregoing Motion to Amend Case Management Order No. 2 and Memorandum in Support was served on all counsel of record via the Court's electronic filing system.

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
