# Exhibit F

June 1, 2023 Hearing Transcript, *Feindt v. United States*,
No. 1:22-cv-00397-LEK-KJM (D. Haw.)

```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF HAWAII

                                      )
PATRICK FEINDT, JR., Individually     )  Case No. 22-CV000397LEK-KJM
and as next of Fried to his minor     )
children P.G.F. and P.R.F., ET        )  June 1, 2023
AL.,                                  )  9:35 a.m.
                                      )
               Plaintiff,             )
                                      )
          vs.                         )  U.S. District Court
                                      )  300 Ala Moana Boulevard
THE UNITED STATES OF AMERICA,         )  Honolulu, HI 96850
                                      )
               Defendant.             )
                                      )
_____)
```

TRANSCRIPT OF DISCOVERY CONFERENCE
BEFORE THE HONORABLE KENNETH J. MANSFIELD
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

| | |
|---|---|
| For the Feindt Plaintiffs: | Kristina Baehr, Esq.<br>Just Well Law, PLLC<br>2606 W. 8th Street, Unit 2<br>Austin, TX  78702 |
| For the Feindt Plaintiffs: | Lyle S. Hosoda, Esq.<br>Hosoda Law Group<br>Three Waterfront Plaza, Suite 499<br>500 Ala Moana Boulevard<br>Honolulu, HI  96813 |
| For the Williams Plaintiffs: | Paul V. Smith, Esq.<br>Schutter Dias Smith & Wong<br>810 Richards Street, Suite 810<br>Honolulu, HI  96813 |
| For the Defendant: | Eric A. Rey, Esq.<br>Department of Justice<br>Civil Division<br>175 N Street NE<br>11.123CON<br>Washington, D.C.  20002 |

<u>APPEAREANCES:</u> (Continued)

```
For Defendant:              Sydney Spector, Esq.
                            U.S. Attorney's Office
                            300 Ala Moana Boulevard, #6100
                            Honolulu, HI  96850

Transcription Service:      Jessica B. Cahill, CER/CET-708
                            Maukele Transcribers, LLC
                            467 Maukele Place
                            Wailuku, Maui, HI  96793
                            Telephone: (808)244-0776
```

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1   JUNE 1, 2023                                          9:35 A.M.
 2              THE CLERK:  All rise.  The United States District Court
 3   for the District of Hawai'i with the Honorable Kenneth J.
 4   Mansfield, United States Magistrate Judge presiding, is now in
 5   session.  The gallery may be seated.
 6              Civil Number 22-00397LEK-KJM, Patrick Feindt, Jr., et
 7   al., v. United States of America.  This hearing has been called
 8   on a discovery hearing.
 9              Counsel, please make your appearances for the record,
10   starting with the Plaintiff.
11              MR. HOSODA:  Good morning, Your Honor.  Lyle Hosoda and
12   Kristina Baehr appearing on behalf of the Plaintiffs.  As you can
13   see, many of our clients are here.
14              THE COURT:  Okay.  Good morning and welcome to
15   everybody here.
16              MR. REY:  Good morning, Your Honor.  Eric Rey on behalf
17   of the United States.
18              MS. SPECTER:
19            Speaker A: Good morning, Your Honor.  Sydney Spector on
20   behalf of the United States.
21              THE COURT:  Good morning.  Mr. Smith, are you just
22   observing?
23              MR. SMITH:  Good morning, Your Honor.  Paul Smith on
24   behalf of the Williams case.
25              THE COURT:  Okay.  Good morning.  You folks can be
```

seated.  I have reviewed the letter briefs multiple times.  Thank you for bringing this to my attention.  I want to see if I can help.  First question.  Has there been any progress or is it -- are things as they were when you gave me the letter briefs about a week ago?

MS. BAEHR:  They are.  We were waiting to address them with the Court.

THE COURT:  Okay.  Is that fair.

MR. REY:  That's fair.  The only change is we now have Plaintiffs' proposal on search terms for 25 custodians with respect to emails, but otherwise the positions are the same.

THE COURT:  Okay. Okay.  Let me give you my thinking, and then you can respond.  Like I said, I read them carefully.  I do feel like we've created, through our scheduling order, a disproportionate discovery process.

The Government is limited in the discovery it can take in this case right now.  It can only take full discovery of the Bellwether families and then limited discovery, I think, just the fact sheets for everybody else.  Conversely, the Plaintiffs' discovery of the Government is unrestricted.

And by the discussions of the discovery request in the letters, I haven't seen the discovery requests.  I don't really want to.  It sounds like Plaintiffs are taking full advantage of that, and they want everything from everyone.  And I don't think that is feasible on this time frame.  And my fear is that if we

1  just stay the course and don't do something, this case will
2  become about discovery instead of the merits.
3      I think we've all seen that happen on large cases.
4  I've seen it particularly where there's a disproportionate
5  discovery burden. One side has a handful of custodians, the
6  other side has a large number of custodians. The parties are
7  here constantly fighting over discovery. It starts like this,
8  then it turns into motions to compel. We already have a motion
9  for protective order. Then there are emotions for sanctions and
10 all sorts of things, and everybody forgets about the merits,
11 which is why I think everybody's here is because we want to get
12 to the merits.
13     So that's my perspective. I think the Plaintiffs need
14 to make a decision on which avenue they want to go down. I am
15 persuaded by the options the Government gives in its conclusions
16 that if you want your trial date, March 2024, which you told us
17 you were ready for, you told me, you told all your clients, you
18 told the reporters, you said, we're ready for trial, okay. It
19 doesn't seem like you are, based on the discovery you're telling
20 me you have to have, and you have to have immediately.
21     So I think if you want that, we have to drastically,
22 drastically pare down what you get before that trial.
23 Alternatively, if you want full and complete discovery, which I
24 think you're probably entitled to, something's got to give. And
25 I think the suggestion of just a six month continuance is what

1  makes sense.  I'm not going to make that decision for you, and
2  I'm not going to ask you to make that decision this morning.  But
3  that's my perspective.  I think just staying the course isn't
4  productive.
5           I'm taking the Government at its word that it's working
6  diligently.  It's putting the resources it can, but it needs more
7  time.  I think there's probably a little bit of blame on both
8  sides for how this process has gotten to where it is.  That's
9  usually the case.  I don't really want to get into that, but I do
10 think there's a decision to be made here on which avenue you want
11 to go down.  Do you want speed for these Bellwether trials, in
12 which case I think something has to give?  Or do you want to, you
13 know, look under every rock that's out there and get every email
14 that's out there?  And if you want that, I think we have to set
15 up a different schedule.
16          So those are my thoughts.  I'll certainly hear from
17 each of you.
18          MS. BAEHR:  Understood, Your Honor.  And from that
19 perspective, assuming that that's where you are, then I think
20 what would be helpful here is to delineate what those limits are,
21 because I have called vendors in the last couple of days, and I
22 said, how long does it take to produce a million documents?
23 Let's say it's a million.  And they say to go to the custodians
24 to get the relevant documents and to review them, it takes four
25 weeks.  It just doesn't take -- you just need resources.

1   And so I'm not asking for a million documents, but I
2   think there is some amount of discovery that can be done to get
3   responsive documents in the next four weeks and then in the next
4   six weeks. And I think the custodians that we have proposed, we
5   have proposed just, I think, 30 custodians for non-email
6   documents and then 25 for email documents, I think that is a
7   reasonable limit. Now, do I think that they could do more? Yes.
8   But I think 25 and 30 is a reasonable limit that can be done by
9   August 16th.
10            MR. REY: Your Honor, may I respond?
11            THE COURT: Yes. Thanks.
12            MR. REY: So in our discovery dispute letter, we laid
13   out some of the logistics that we face on processing and loading.
14   That's based on our contractor. I did want to -- you know, when
15   we get a request for documents, for example, I have to think
16   about, okay, what is feasible for us to actually review. And I
17   think it's useful to put some numbers around it to show just the
18   reality that we're living under.
19            So, for example, we took just very rudimetric (sic)
20   search terms on one custodian's email, very basic. You know, Red
21   Hill, petroleum, jet fuel, and we get about 14,000 emails. And
22   this person wasn't really sort of a central figure, so I have to
23   think, okay, this may be representative of what we're going to
24   get. So for over 25 custodians, that's 350,000 emails.
25            If you assume somebody is going to review those at 20

1  documents an hour, which is three documents -- I mean, a document
2  every three minutes, which is incredibly fast.
3        THE COURT:  That's ambitious.  I've done it.  That's
4  ambitious.
5        MR. REY:  And the actual numbers we get from our
6  reviewers are closer to ten.  So I'm not skewing these.  It's
7  actually -- that's incredibly fast.  You're looking at 17,500
8  attorney hours.  You assume they do nothing but review documents
9  8 hours a day, five days a week, you know, that's 440 weeks.  So
10 even if I throw ten attorneys that are doing nothing but this, 20
11 attorneys are doing nothing but this, we're looking at 44 to 22
12 weeks just on those emails alone.
13        And in addition, on the, you know, non-email portions
14 of this, we're looking at extensive records as well.  There's ten
15 categories, and I'm not arguing that those aren't relevant
16 categories for discovery.  It's just the reality we're dealing
17 with.  You have someone's share drive; they have thousands of
18 documents in there alone.
19        So this is just the reality we're living under, and
20 it's not possible just to take them in, kick them back out.
21 There isn't an easy button.  You know, some of these folks are --
22 there's five admirals, there's, you know, medical providers.  We
23 have to actually look at these documents.  We can't just rely on
24 switch terms and inadvertently let something out the door that's
25 somebody else's medical information, for example.

1    THE COURT: I understand. And if you do that, we'll
2    just be back here fighting over that. So that's what I want
3    to --
4    MS. BAEHR: Your Honor, can I just respond to the
5    burden and the documents?
6    THE COURT: Yeah.
7    MS. BAEHR: So the numbers that we just went through
8    assumed that every single email would be reviewed. That's the
9    math that just went through. And that's actually not how the
10   Government does its document production. It's not how anyone in
11   eDiscovery age does it. You put it all into a database, and then
12   you roll search terms on it for privilege, right, and for
13   whatever else to cull it out, and then you can produce it on a
14   rolling basis.
15   And so the Government, for example --
16   THE COURT: But you're not talking about rolling,
17   you're talking about hard deadlines in the coming weeks that
18   don't appear feasible.
19   MS. BAEHR: So in this Government case, just this week,
20   the Government said that it could produce a million documents in
21   six weeks. So same Defendant, a million documents, six weeks.
22   It's not -- it doesn't take that much time because it requires
23   these search terms, right? And the ones that don't hit the
24   privilege screens can be produced. And that's what I mean by
25   producing that. You can start those over a rolling basis.

1          So what I would propose, Your Honor, is we've
2   identified the custodians in order of priority.  We have
3   depositions scheduled.  Can we at least go to the custodians with
4   depositions scheduled and collect their relevant documents?  We
5   haven't done that yet, and I don't understand why not, because we
6   first designated these deponents in February.  It's been months,
7   and there has been no effort to collect the custodial documents
8   from anyone who has them.
9          THE COURT:  And are you prepared if these depositions
10  go forward?  That's your one shot.  I'm not granting multiple
11  depositions.  I don't do that in any case.  It's not going to
12  happen here.  You're going to get one shot at each person.
13         MS. BAEHR:  That's right.  And we will take one shot at
14  each person.  So what we would like, Your Honor, is to ask the
15  Government to produce the custodial documents two days before the
16  deposition.  And I don't mean email.  I think email is its own
17  category, and I agree with that.
18         THE COURT:  So you're going to take depositions without
19  seeing their emails?
20         MS. BAEHR:  Yes, we are.
21         THE COURT:  And you're going to live with that?
22         MS. BAEHR:  We're going to live with that.
23         THE COURT:  Okay.
24         MS. BAEHR:  But the noncustodial documents are
25  documents that are on their servers that should have been

1  produced long ago.  It has been 475 days since we filed our
2  administrative claims.  And under Zubulake, which is the seminal
3  case on the eDiscovery, they have their obligation to identify
4  the custodians and start to collect those documents.  And so we
5  think that those can now be produced within a reasonable period
6  of time.
7         THE COURT:  I don't think they had an obligation to
8  collect back then.  They had an obligation to preserve.
9         MS. BAEHR:  That's right.  They had an obligation to
10 identify the key players and preserve those records.
11        THE COURT:  And then pulling, and reviewing, and
12 producing is a whole nother ball game.
13        MS. BAEHR:  That's right.  But the Government in this
14 other case, and I can give you the reference.
15        THE COURT:  I'm really not interested in the other
16 case.  I don't know anything about it.  I have my arms around
17 this case, and you're really -- you're going down the road that I
18 think is a mistake, where you want to make this case about
19 discovery and not about the merits.
20        You're already telling me you're going to give up
21 discovery rights, and you may question that later.  Those are
22 serious decisions.  And I understand time is of the essence, but
23 I don't understand that when you tell me the case is not
24 complicated, we're ready for trial.  Then why do you need all
25 this?

1           MS. BAEHR:  Can I give you an example of why we need
2    it?
3           THE COURT:  I know why you need it.  I don't know why
4    you're choosing the words you choose, depending on the motion.
5    That's what concerns me.
6           MS. BAEHR:  Understood.  I think there are -- we could
7    try the case with what we have now, and yet there are three
8    months left in discovery.  And so the question becomes, what is
9    reasonable in the next three months to have before we go forward,
10   and we try the case.
11          So that's what I meant, Your Honor, that we have these
12   three months.  We have prioritized the discovery that is
13   necessary for experts, and it's not everything because in any
14   case there could be, you know, unlimited discovery.  And in this
15   case there's decades of discovery.
16          THE COURT:  Which you've asked for, right?  That's why
17   we're here.
18          MS. BAEHR:  No.  We have limited it to just May and
19   November of 2021.  So we have not -- we were very narrow in our
20   request, Your Honor.
21          THE COURT:  But certainly not the way that the
22   Government describes the requests.
23          MS. BAEHR:  We'd love to show them to you.  We have
24   been very narrow in them.  We have -- so we made a choice when we
25   filed this case.  We didn't make it about a systemic failure or

1  about years of problems.  We made it about May and November of
2  2021.  And so we're willing to be very targeted with our
3  discovery request.  And the only reason we have so many is
4  because they're so targeted.
5          THE COURT:  Okay.  Mr. Rey.
6          MR. REY:  May I respond, Your Honor?  So as to the
7  scope of what's in the request, I mean, we have -- until three
8  weeks ago, Plaintiffs' position was -- at first there was no
9  engagement on custodians.  And it was, we're not going to give
10 you custodians.  You need to give us every document from
11 everybody who may fall under the RFPs.  And the RFPs are
12 incredibly expansive.  We don't have to get into it.  But I
13 disagree with the characterization.  They asked, for example, for
14 everything having to do with maintenance at the facility for 20
15 years.  They ask for all internal communications related to RFPs
16 1 through 58.  So it is huge in scope.
17         I also want to respond on the idea that sort of let's
18 put emails aside and let's just deal with non-emails.  That's
19 still a massive amount of information.  You have thousands of
20 records; you have ten different categories we have to pull from
21 people.  So even that proposal that we could somehow do that with
22 depositions that are scheduled to begin, you know, next week or
23 so just isn't feasible.
24         We have put through -- proposed even with that -- you
25 know, the limitations we propose, I would say is still very

```
 1  aggressive in terms of what we would actually be able to do.
 2  Schedule, you know, cases of comparable scope are much longer.
 3  We're not asking for years, but we're saying realistically, this
 4  is what it's going to take, and we can't just push everything out
 5  the door without prejudicing the United States and, you know,
 6  several of its privileges, for example.  So it's just not
 7  feasible, Your Honor.
 8          THE COURT:  And can you meet the schedule in your first
 9  proposed alternative solution, which is limiting no more RFPs,
10  relevant email and non-emails from five custodians, limited rule
11  30(b)(6) topics, and no redepositions?
12          MR. REY:  Yes, Your Honor.  We stand behind that with
13  the one caveat being sort of the reasonableness of the search
14  terms that we're able to agree.
15          THE COURT:  Sure.
16          MR. REY:  Yes.
17          THE COURT:  That's --
18          MS. BAEHR:  Can --
19          THE COURT:  Yes, you can respond --
20          MS. BAEHR:  -- I respond to just those --
21          THE COURT:  -- but I think that is -- I think, that's
22  one of your options.
23          MS. BAEHR:  So just about that, and I'm not agreed on
24  narrowing search terms, but just in terms of the number of
25  custodians, five is too few.  I think -- I mean, we proposed 25,
```

1  but we could come to a compromise of 15 or something.  But you
2  can do five in one day.  And I know we disagree about that, but
3  I've done it.  I've taken the five document request -- you know,
4  phone calls, and I've produced those documents in one day.  So,
5  you know, I would propose a compromise of 15 custodians for both
6  non-email and email, and that we get the show on the road.
7           The 30(b)(6) deposition topics, we have only identified
8  four, Your Honor, and the ones that have been identified are the
9  composition and quantification of the releases, the
10 characteristics and operation of the water system, the responsive
11 actions taken by the Government following the releases, and then
12 the health response.
13          What the law allows and what we have done is delineated
14 underneath those additional details of what we will ask at those
15 depositions.  There's no reason in the law to limit them.  We
16 don't need more than four.  We're fine with the four, but we
17 don't need to delineate -- limit the topics underneath because it
18 merely provides an outline, as is allowed by the rules, of
19 exactly what will be asked at those depositions.
20          And so for the 30(b)(6) depositions, we would ask that
21 they be taken by the end of the month.  We requested them with
22 plenty of time, and we need them by the end of the month to meet
23 our expert deadline.
24          MR. REY:  Your Honor, and this is one of the ripple
25 effects of trying to push through discovery on the schedule.  A

1  lot of what's covered in here, they characterize it as
2  (indiscernible) request.  These are staple pages of all the
3  topics.  Topics include what is the water consumption rate within
4  the water system that serves 90,000 people by street address?  A
5  lot of this is covered by documents that they've requested that
6  we're in the process of producing or already have produced.
7        So by front loading this and trying to push through
8  document discovery, we're now heaving everything on top of this
9  30(b)(6) just in order to meet their deadline.  So this is one of
10 the ripple effects that we're encountering here.
11       MS. BAEHR:  The document requests that we're referring
12 to had been made long ago.  We served our document request in
13 January.  There was plenty of time between then and these
14 depositions.  So when we list a topic there, we're talking about
15 the documents that we're going to show that witness.  I believe
16 that we'll have them in time for that deposition.  That's a
17 different situation than the custodians who haven't had any
18 documents produced.  This is -- these are topics that we need to
19 address with witnesses, and we have the corresponding documents
20 for most of them.
21       MR. REY:  These were not requested back in January.
22 There's been three different RFPs, including one as recently as
23 last month, and that's what's covered by these.  So I just can't
24 accept her characterization of the discovery record.
25       THE COURT:  So I land where I started, which is I think

you have a choice to make. I don't want you to make it this morning. I want you to consult with your team. You can use the room and talk to your clients if you'd like. That's fine. We can give you guys that privacy and decide which way you want to go.

I agree with the Government's proposals. It's sort of the proposed solution A, if you want to keep the current schedule or propose solution B, which is we move the trial date and unexpired deadlines by six months. And I know you don't want either of those things, but I fear -- I'm seeing it. This is what happens if we don't do one of those two things, is you'll be in here constantly about discovery. And I do want to get you to the merits fairly -- as quickly as possible, but fairly. Both sides are entitled to that.

So I'll leave it to the Plaintiffs to choose. And you can let me know by letter. You know, of course, a copy to the government in a week. You know, let me know by next Thursday, close a business. And that's how I will manage the discovery, right now. I don't see any other way to do it.

MS. BAEHR: Is there a compromise that's in the middle?

THE COURT: I encourage you two to discuss it. I'm taking the Government at its word that this is the best it can do, and it's being aggressive. But if you want to negotiate further, that's fine with me. I would love an agreed upon resolution.

1    You can tell where I'm headed.  I think if you want
2 something a little bit more aggressive and Mr. Rey thinks they
3 can pull it off, that's fine.  Anything further?
4         MR. REY:  No, Your Honor.  Thank you.
5         MS. BAEHR:  No, Your Honor.  Thank you.
6         THE COURT:  All right.  Thank you very much.  We'll be
7 in recess.  Thank you all for coming.
8         THE CLERK:  All rise.  Court stands adjourned.
9      (Proceedings concluded at 9:55 a.m.)

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: June 10, 2023

_____
Jessica B. Cahill, CER/CET-708