# EXHIBIT 1

# (Proposed Stipulations)

| From: | Zina Bash <zina.bash@kellerpostman.com> |
|---|---|
| Sent: | Saturday, December 23, 2023 8:56 AM |
| To: | Matthew D. Quinn; Kevin Dean |
| Subject: | Fwd: CLJA -- Stipulations and E-Discovery Order |
| Attachments: | CLJA -- draft first set of stipulations_DOJ_highlighted_DOJ.docx |

**From:** Bain, Adam (CIV) <Adam.Bain@usdoj.gov>
**Sent:** Tuesday, October 24, 2023 2:20:19 PM
**To:** Zina Bash <zina.bash@kellerpostman.com>; Ed Bell <jeb@edbelllaw.com>; Eric Flynn <eflynn@belllegalgroup.com>
**Cc:** Lipscomb, Bridget (CIV) <Bridget.Lipscomb@usdoj.gov>; Anwar, Haroon (CIV) <Haroon.Anwar@usdoj.gov>; Platt, Elizabeth K. (CIV) <Elizabeth.K.Platt@usdoj.gov>
**Subject:** CLJA -- Stipulations and E-Discovery Order

Hi Ed and Zina,

I'm attaching a copy of the stipulations proposed for tomorrow's call. We can agree to the ones which you've proposed that are highlighted in green on the attached.

Thank you for the edits to the production specifications. Please also provide us any additional feedback to our proposed edits to the e-discovery order as soon as possible. Since the e-discovery order is due on October 26, I propose that we discuss this first on our call.

Best,

Adam



Adam Bain
Environmental Torts Litigation
U.S. Department of Justice
Washington, DC
202-616-4209 (Voice)
202-598-0930 (Mobile)
adam.bain@usdoj.gov

*This email and any attachments may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify the sender immediately and delete or destroy the original transmission and any copies (electronic or paper).*

1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
No. 7:23-cv-897

IN RE: )
)
CAMP LEJEUNE WATER LITIGATION )

**[PROPOSED] FIRST SET OF STIPULATIONS**

The parties, through respective undersigned counsel, pursuant to Case Management Order Number 2 (D.E. 23), p. 7, hereby stipulate and agree to the following facts:

UNITED STATES' PROPOSED STIPULATIONS:

1. "The National Research Council was organized by the National Academy of Sciences in 1916 to associate the broad community of science and technology with the Academy's purposes of furthering knowledge and advising the federal government. Functioning in accordance with general policies determined by the Academy, the Council has become the principal operating agency of both the National Academy of Sciences and the National Academy of Engineering in providing services to the government, the public, and the scientific and engineering communities."[1]

2. The National Research Council convened the Committee on Contaminated Drinking Water at Camp Lejeune (NRC Committee), which prepared a 2009 Report on "Contaminated Water Supplies at Camp Lejeune Assessing Potential Health Effects." "The members of the committee were selected for their expertise in epidemiology, toxicology, exposure analysis, environmental health, groundwater modeling, biostatistics, and risk assessment."[2]

3. The NRC committee stated "The committee undertook four kinds of reviews to determine what kinds of diseases or disorders (adverse health effects) have been found to result from exposure to TCE and PCE: (1) review of epidemiologic studies of solvents and their effects, including studies in occupational and industrial settings and community studies; (2) review of epidemiologic studies of other communities with solvent-contaminated water supplies; (3) review of toxicologic studies conducted in animals and humans to test for health effects of TCE and PCE; and (4) review of studies conducted specifically on the Camp Lejeune population."[3]

4. The NRC committee stated: "In evaluating the epidemiologic literature, the committee adopted a categorization scheme developed by the Institute of Medicine (IOM) for determining

---
[1] Contaminated Water Supplies at Camp Lejeune: Assessing Potential Health Effects (2009) at iii. https://nap.nationalacademies.org/catalog/12618/contaminated-water-supplies-at-camp-lejeune-assessing-potential-health-effects
[2] *Id.* at ix.
[3] *Id.* at 6.

whether data indicate a statistical association between chemicals and various health outcomes. IOM's approach was developed to evaluate exposure of veterans of the Vietnam War and the Gulf War and [was] used by the Department of Veterans Affairs to make decisions about compensation. The five categories in the scheme are limited/suggestive evidence of no association, inadequate/ insufficient evidence to determine whether an association exists, limited/suggestive evidence of an association, sufficient evidence of an association, and sufficient evidence of a causal relationship. Among the five categories, only two were judged to be applicable to the literature on TCE and PCE: *limited/suggestive evidence of an association* and *inadequate/insufficient evidence to determine whether an association exists*. In the category of limited/suggestive, the evidence suggests an association between exposure to a chemical and a specific health outcome in human studies, but the body of evidence is limited by the inability to rule out chance and bias, so there is incomplete support of any association and insufficient basis for inferring a *causal* association. In the category of inadequate/insufficient, the available evidence is of insufficient quantity, quality, or consistency to support a conclusion about the existence of an association."[4]

5. The NRC committed concluded: "Overall, the committee did not find sufficient evidence to justify causal inference for any of the health effects it reviewed. The committee concluded that there was limited/suggestive evidence of an association between chronic exposure to TCE or PCE and cancers of the breast, bladder, kidneys, esophagus, and lungs. The epidemiologic literature was also judged to provide limited/suggestive evidence of an association between TCE or PCE and hepatic steatosis and acute tubular necrosis related to chronic exposure at high concentrations but not to chronic exposure at low concentrations."[5]

6. The committee considered "convergence of the epidemiologic and toxicologic evidence" in order "to identify health outcomes of greatest interest and plausibility as potential consequences of exposure to TCE and PCE in the water supply." The NRC stated: "This approach supplemented IOM's categorization approach by explicitly considering how toxicological adds to the weight of evidence in characterizing health risks posed by TCE and PCE. The complementary strengths and weaknesses of the two bodies of literature provide important information on outcomes that are most deserving of attention. Review of epidemiologic studies of cancer outcomes provides limited/suggestive evidence of an association between chronic exposure to TCE or PCE and cancers of the breast, bladder, kidneys, esophagus, and lungs. Among those outcomes, positive concordance with the toxicologic evidence was strongest for kidney cancer observed in workers exposed to TCE, sometimes at doses where acute neurotoxicity was observed."[6]

7. The NRC committee assessment indicated that there was insufficient epidemiological and toxicological evidence of general causation between TCE, PCE and any diseases.

---

[4] *Id.* at 17.
[5] *Id.* at 18.
[6] *Id.* at 19.

PLAINTIFFS' PROPOSED STIPULATIONS:

1. "In 1980, Congress created the Agency for Toxic Substances and Disease Registry (ATSDR) to implement the health-related sections of laws that protect the public from hazardous wastes and environmental spills of hazardous substances."

2. "The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), commonly known as the 'Superfund' Act, provided the Congressional mandate to remove or clean up abandoned and inactive hazardous waste sites and to provide federal assistance in toxic emergencies."

3. "As the lead Agency within the Public Health Service for implementing the health-related provisions of CERCLA, ATSDR is charged under the Superfund Act to assess the presence and nature of health hazards at specific Superfund sites, to help prevent or reduce further exposure and the illnesses that result from such exposures, and to expand the knowledge base about health effects from exposure to hazardous substances."

4. "In 1984, amendments to the Resource Conservation and Recovery Act of 1976 (RCRA) external icon which provides for the management of legitimate hazardous waste storage or destruction facilities, authorized ATSDR to conduct public health assessments at these sites, when requested by the Environmental Protection Agency (EPA), states, or individuals. ATSDR was also authorized to assist EPA in determining which substances should be regulated and the levels at which substances may pose a threat to human health."[10]

5. "With the passage of the Superfund Amendments and Reauthorization Act of 1986 (SARA), ATSDR received additional responsibilities in environmental public health. This act broadened ATSDR's responsibilities in the areas of public health assessments, establishment and maintenance of toxicologic databases, information dissemination, and medical education."[11]

6. As of September 27, 2023, the ATSDR website stated in part: "Listed below are the health effects where there is sufficient evidence for causation in people exposed occupationally or environmentally to the chemicals detected in the drinking water at Camp Lejeune. Evidence is considered sufficient for causation if there is 1) sufficient evidence from human studies in which chance and biases (including confounding) can be ruled out with reasonable confidence or 2) less than sufficient evidence from human studies but sufficient evidence in animal studies and strong evidence that the chemical acts through a relevant mechanism in humans."[12]

> **Commented [PEK(1)]:** For consistency, this date should match the date listed in the citation. As is, the citation says the website was last accessed October 10 but the stipulation is as of September 27.

---

[7] ATSDR Background and Congressional Mandates, *available at* https://www.atsdr.cdc.gov/about/congress.html (last accessed October 10, 2023).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Health effects linked with trichloroethylene (TCE), tetrachloroethylene (PCE), benzene, and vinyl chloride exposure, available at* https://www.atsdr.cdc.gov/sites/lejeune/tce_pce.html (last accessed October 10, 2023).

7. The ATSDR has listed certain diseases as ones where there is sufficient evidence for causation in people exposed occupationally or environmentally to the chemicals detected in the drinking water at Camp Lejeune, which diseases include: (1) bladder cancer, (2) kidney cancer, (3) leukemia, (4) Parkinson's disease, and (5) non-Hodgkin's lymphoma.[13]

8. The ATSDR assessed 16 diseases as described in its document entitled ATSDR Assessment of the Evidence for the Drinking Water Contaminants at Camp Lejeune and Specific Cancers and Other Diseases, dated January 13, 2017 (the "2017 ATSDR Assessment").[14]

9. The 2017 ATSDR Assessment is admissible under the Federal Rules of Evidence.

10. In or about April 2018, the ATSDR published a study entitled, ATSDR, Morbidity Study of Former Marines, Employees, and Dependents Potentially Exposed to Contaminated Drinking Water at U.S. Marine Corps Base Camp Lejeune, April 2018 (the "2018 ATSDR Study").[15]

11. The 2018 ATSDR Study is admissible under the Federal Rules of Evidence.

12. The ATSDR studies and assessments establish general causation for the *Track 1* conditions of bladder cancer, kidney cancer, leukemia, Parkinson's disease, and non-Hodgkin's lymphoma under the causation standards as set forth by the Camp Lejeune Justice Act (CLJA).

13. The Defendant does not contest general causation for the *Track 1* conditions of bladder cancer, kidney cancer, leukemia, Parkinson's disease, and non-Hodgkin's lymphoma under the causation standards as set forth by the CLJA.

Dated: _____, 2023.

STIPULATED TO BY:

For Plaintiffs:  _____

For Defendant:  _____

---

[13] *Id.*
[14] *Available at* https://www.atsdr.cdc.gov/sites/lejeune/docs/ATSDR_summary_of_the_evidence_for_causality_TCE_PCE_508.pdf (last accessed October 10, 2023).
[15] *Available at* https://www.atsdr.cdc.gov/sites/lejeune/docs/health_survey_report-508.pdf (last accessed October 10, 2023).