UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:23-CV-897

IN RE: CAMP LEJEUNE WATER
LITIGATION

This document relates to all cases.

**PLAINTIFFS' LEADERSHIP GROUP'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND CASE MANAGEMENT ORDER NO. 2**

# INTRODUCTION

Camp Lejeune veterans and their families have been waiting decades for justice. The government's Motion to Amend Case Management Order No. 2 ("CMO 2") [D.E. 95] would only keep them waiting longer. The Court's CMO 2 abides by the spirit of the Camp Lejeune Justice Act ("CLJA") by creating a streamlined procedure to select discovery pool plaintiffs and bellwether trials and to efficiently resolve CLJA actions. Now, the government asks the Court to throw that procedure out the window by requiring all plaintiffs to file Short Form Complaints ("SFCs"), rendering them eligible for discovery pool selection, and to extend the government's first discovery deadline—which the [Proposed] Track 1 Order has been submitted to establish[1]—by 90 days.

These are bad ideas. First, the Court had good reasons for creating the system it did, which led to a representative discovery pool and has so far resulted in the kind of streamlined discovery pool process successfully utilized in other large cases with thousands of plaintiffs. Moreover, the government's request does nothing to address its core concern: that the current discovery pool is not representative of the pool of administrative claimants. In fact, the evidence shows that the discovery pool is representative of cases filed with the Court, and the government has presented no evidence to the contrary, even though the government alone possesses information about the administrative claims that have been filed with the Navy. The Plaintiffs' Leadership Group ("PLG") does not have such information about administrative claims. The PLG supports any effort to make this information accessible to the Court and the parties, but requiring all plaintiffs to file Short Form Complaints will require the dedication of unnecessary resources without solving the government's claimed "problem."

---

[1] On January 12, 2024, the parties submitted a Joint Notice of Filing Proposed Track 1 Order. [D.E. 108].

Second, the government requested that the Court remove the opt-out provision from future Tracks. Absent changed circumstances, the PLG does not anticipate relying on the opt-out provision for any future Tracks. However, it would not be proper to completely eliminate the opt-out provision. Indeed, there are many circumstances in which, in all fairness, a plaintiff should be able to opt out of discovery pool consideration. For example, a plaintiff may become severely incapacitated or near the point of death, and it would therefore be unfair and potentially impossible for that plaintiff to participate in discovery. Therefore, the PLG does not intend to use the opt-out provision absent changed circumstances, but that opt-out provision should not be eliminated.

Third, the government's request to extend the deadline for fact discovery is baseless and has essentially been mooted. The primary basis for the government's request for an extension of the fact discovery deadline is that the PLG supposedly requested "vast quantities of Electronically Stored Information ("ESI") from individuals at various government agencies." [D.E. 95, at 6]. Indeed, the government, in its memorandum, estimated that the production of the ESI requested by the PLG would take 102 working days to complete. [D.E. 96, at 8]. However, the PLG withdrew all requests for ESI, thereby eliminating the principal basis for the government's request for an extension of the fact discovery deadline and presumably freeing up 102 working days in the government's schedule. [D.E. 102, at 3]. Yet the government did not withdraw its Motion to Amend CMO 2. Therefore, granting the government's request for an extension would serve no purpose, but it would delay resolution of CLJA cases and make it impossible to meet the Court's preferred trial schedule, a trial schedule that the PLG embraces.

Finally, the PLG does not oppose the government's request to be notified in the rare event that any individual plaintiff undergoes a medical examination by an expert witness.

2

Case 7:23-cv-00897-RJ   Document 114   Filed 01/16/24   Page 3 of 14

# ARGUMENT

I.  **The Court Should Not Require Every Plaintiff to File a Short Form Complaint, and the Court Should Not Mandate that Every Plaintiff Is Eligible for the Discovery Pool.**

The government contends that every plaintiff should be eligible for the discovery pool. In support of this argument, the government asks that the Court direct all plaintiffs to file a SFC. Both arguments are ill-conceived and should be rejected. The government's suggestion that every plaintiff be eligible for the discovery pool would upend the streamlined discovery pool and bellwether processes, successfully carried out for Track 1 (explained below), envisioned by the Court, and successfully utilized in other large-scale litigation. Moreover, the government has made no showing that the current discovery pool is unrepresentative. In fact, the PLG explains below the ways in which the discovery pool is highly representative. What is more, to the extent the government is considering claims in the administrative process for its spurious argument that the discovery pool plaintiffs are not representative, it made no such factual showing even though such information is solely in its possession. Therefore, requiring SFCs from every plaintiff does not in any way solve the issue about which the government appears to be complaining. And, as described below, there is nothing to "fix". The Court should reject the government's request that every plaintiff file a SFC and be eligible for the discovery pool.

    A.  **Requiring All Plaintiffs to File SFCs Is Outside the Province of the PLG and This Court's Jurisdiction, as Defendant Acknowledges.**

In arguing that the PLG has "carefully filtered the cases they wish to litigate," [D.E. 95, at 5], the government takes issue with the fact that the PLG has not filed a higher percentage of the over 45,000 administrative claims that were eligible for filing in this district by the Track 1 deadline. [D.E. 95, at 3-4 ("As an initial matter, only a small fraction of CLJA claimants have deemed their administrative claims denied and have elected to litigate in federal court.")]. Curiously, the government's complaint about the supposedly low percentage of administrative

claims being filed with this Court was simultaneously paired with the government's acknowledgement that a claimant's decision not to file a civil action is a matter "outside the purview of the Court." [D.E. 95, at 3]. What is more, decisions about whether and/or when to file a civil action are decisions to be made between the individual plaintiff and his or her counsel. The government's memorandum fails to recognize that the law firms comprising the PLG do not represent every administrative claimant (currently estimated to be over 150,000 claims). Obviously the PLG does not control the percentage of claimants filing CLJA actions.

### B. Requiring SFCs for Every Plaintiff Would Upend the Streamlined Bellwether Process Envisioned by the Court and Utilized Successfully in Similar Large-Scale Cases.

Requiring SFCs for every CLJA plaintiff would materially undermine the Court's streamlined bellwether process. The Court already considered various options for creation of the discovery pool and selected a system that will result in a pool of 100 cases per Track, meaning 300 cases through the first three Tracks. SFCs are utilized in this process to identify discovery plaintiffs, ensure a streamlined process, and create a manageable pool. The Court adopted this approach after careful deliberation. In fact, the PLG and the government *jointly* submitted a proposed case management order that provided existing plaintiffs with the option, but not the obligation, to file a SFC. [D.E. 17-1, at 5]. The government now seeks to recant its own prior case management proposal.

Contrary to the government's unsupported suggestion, it is not accurate that the PLG has "carefully filtered the cases they wish to litigate" by selectively filing SFCs to "shield weak cases from the scrutiny of litigation." [D.E. 95, at 4]. There are many reasons a plaintiff or their counsel may choose not to litigate as a bellwether contender. Among those reasons are the age and health of many plaintiffs and the distance they would have to travel for trial — elderly and sick patients should not be needlessly subjected to extensive discovery or taxing trials. Indeed, personalized

issues do not interfere with the representativeness of the discovery pool; it would not make sense, for example, for plaintiffs with substantial individualized issues of proof to be put in the discovery pool and potentially undergo a bellwether trial. That is why the PLG has put forth cases that will test the law, medicine, and science on a more general basis. The entire purpose of the SFC process is to limit the number of bellwether-eligible plaintiffs who would not be representative of the larger pool.[2]

    **C.    Requiring SFCs from Every Plaintiff Is Unnecessary Because the Government Has Not Shown the Current Pool Is Unrepresentative.**

The PLG agrees that the discovery pool plaintiffs should be representative of the universe of CLJA claims. As the Court has explained, the discovery pool should be "representative of the claimant pool." [D.E. 91, at 5 (describing the type of bellwether plaintiffs the Court seeks)]. As a preliminary matter, the discovery pool is, as described below, representative. To the extent the government is basing representativeness on claims in the administrative process, it does not say that in its memorandum and, in any event, the government is the one and only party that has access to data on the administrative claimant pool. Despite exclusively possessing this information, the government makes no showing that the plaintiffs who filed SFCs are not representative of this

---

[2] Indeed, the process in CMO 2 is consistent with best practices utilized in other large-scale litigation, in which bellwether procedures are designed in a streamlined manner. *See, e.g.*, Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2343, 2437 (2008) (explaining that "the transferee court [must] select a manageable pool of cases, which reflects the various categories [in the litigation] and contains cases that are both amenable to trial . . . and close to being trial-ready." And stating "[i]f the pool is too large, then an inordinate amount of time will be spent analyzing which cases should fill the pool, conducting case-specific discovery once the pool is filled, and selecting the actual cases to be tried once case-specific discovery has been completed."). *See also, In re: 3M Combat Arms Earplug Products Liability Litigation*, No. 3:19-md-2885 (N.D. Fla. Jan. 21, 2020) at 2 (A case involving more than 200,000, the largest number in any mass action at the time, with only 25 plaintiffs selected for case-specific discovery). A large pool results in inefficient resolution. The government's proposal to drastically expand the number of eligible plaintiffs would undermine the streamlined nature of CMO 2

larger administrative claimant pool, just as it fails to make a showing of unrepresentativeness for the cases that are filed in Court.

Even looking at the universe of claimants who filed their cases in this district, and comparing the plaintiffs who filed SFCs to those who opted out, the only issue the government can point to is that plaintiffs who filed SFCs and did not opt out allegedly had a longer average exposure than plaintiffs who filed SFCs but opted out (or did not file SFCs). [D.E. 95, at 6]. Notwithstanding the minimal value of this statistic,[3] comparing the discovery pool to the opt-out pool does not support this accusation.

As explained in a previous filing, the population of litigants who were reviewed by the Bellwether and Plaintiff Criteria Committee and filed SFCs have the following attributes:

- Exposure covers all or almost all years, from 1953-1987.
- Lifestyle decisions (i.e. smokers, work in hazardous jobs).
- Different treatment protocols.
- Different treatment outcomes (i.e. individuals successfully treated and in remission, individuals who had difficult treatments but are in remission, and individuals who died).
- Were at all or almost all of the different areas of Camp Lejeune.
- Civilians and servicemembers, including individuals exposed as children and in utero.
- Were on Camp Lejeune for as few as 1.5 months.
- A wide range in ages.
- Males and females.
- Different ethnicities.
- Hailing from across the USA.
- Housed on and off Camp Lejeune

---

[3] In fact, this statistic is nearly meaningless. A basic average reveals very little about the underlying data: it is easily skewed by a few high or low outliers. The government did not provide averages calculated without including, for example, the top and bottom 10%, or provide other statistics like the median. That said, a brief glance at the government's data reveals robust representation in the discovery pool. The discovery pool contains 188 plaintiffs, whose exposures range from 1.5 to 293 months. *See* [D.E. 83-2]. The opt-out pool ranges from 1 to 180 months. *See id.* This wide variation could also indicate high or low outliers that skew the averages presented by the government.

*See* Notice of Filing of Proposed Case Management Order No. 9 – Track 2 Disease Protocol, Dkt. 58, at 6-7 (Nov. 27, 2023). The PLG has thoughtfully heeded the Court's direction to ensure the bellwether pool is representative and believes the evidence supports that the Court's procedures in CMO 2 have resulted in a representative discovery pool. And, in any event, requiring all plaintiffs to file SFCs does *nothing* to resolve the government's complaints about the selection process.

In sum, despite solely possessing information on the universe of administrative claims, the government has failed to present evidence that the current discovery pool is unrepresentative. Thus, there is no reason to amend CMO 2 and require that all plaintiffs file SFCs.

## II. The Opt-Out Provision Should Not Be Removed from CMO 2.

The government has requested that the Court amend CMO 2 by removing the opt-out provision. The PLG does not presently anticipate using the opt-out provision for further Tracks. However, the opt-out provision serves an important purpose and should not be removed at this time.

Indeed, there are many circumstances in which fairness will dictate that a plaintiff should be able to exercise the opt-out provision. For example, a plaintiff might be *in extremis* and have only months to live. It is only fair and just to allow that plaintiff to opt out of the discovery pool selection process. Similarly, a plaintiff might be elderly, wheelchair bound, and/or undergoing treatment and traveling to North Carolina for trial is near impossible without grave hardship. These scenarios, and other extreme situations, warrant the opt out.

While the PLG does not anticipate opting out filed SFCs going forward because it will take these issues into account before filing a CLJA action, the opt out process likely is still needed for non-PLG litigants as well as PLG clients whose circumstances change after their case is filed.

**III.     The Court Should Not Extend the Deadline for Track 1 Fact Discovery By 90 Days.**

The Court should not extend the Track 1 deadline for fact discovery by 90 days. In CMO 2, the Court intentionally established an efficient discovery process as a means of expeditiously adjudicating a high volume of anticipated CLJA actions. The government's request for an extension would undermine these laudable goals. Moreover, the government's request for an extension of the fact discovery deadline has essentially been mooted. For instance, the principal basis for the government's request is the supposedly broad scope of the PLG's requests for ESI—however, the PLG has now withdrawn its requests for ESI. Therefore, the Court should deny the government's request for an extension of the deadline for fact discovery.

**A.     The Need to Efficiently Litigate CLJA Cases.**

The CLJA was designed to finally clear the roadblocks to recovery for service members and other persons injured or killed by the poisoned water at Camp Lejeune. "It is estimated that as many as one million people may have been exposed to this water, including service members, civilian staff, and their respective families and dependents." [D.E. 25, at ¶ 4]. As of December 29, 2023, about 152,377 administrative claims have been filed seeking relief under the CLJA, and over 1400 CLJA civil actions are pending in this Court. [D.E. 102, at 1]. Therefore, the volume of CLJA claims requires efficient action to prevent further delay to those seeking justice for their own injuries or the death of their loved ones. Time is of the essence.

Given the scope and importance of this litigation, this Court has repeatedly emphasized the need to expeditiously litigate CLJA cases. For example, in CMO 2, the Court expressed its expectation that "the Parties [will] conduct discovery efficiently," and the Court established a series of discovery deadlines, including a deadline for fact discovery of Track 1 Discovery Pool Plaintiffs of ninety days after the Track 1 Order. [D.E. 23, at § XI]. During the Status Conference

on October 30, 2023, the Court characterized its standing orders as "designed to streamline this litigation, hopefully move us forward." [D.E. 38, at 3:19-3:21]. This schedule is necessary to advance the Court's full docket of CLJA cases.

The government's request to extend the deadline for fact discovery is not only without justification but also undermines the Court's carefully designed system. Indeed, the Court has already considered and rejected a similar proposal from the government. On August 28, 2023, the parties submitted proposed case management orders to the Court. [D.E. 17]. The government's submission requested that fact discovery last for 120 days. [D.E. 17-1, at 14]. The Court rejected the government's proposal in CMO 2: the Court directed that the "parties will compete fact discovery within 90 days of the Track 1 Order." [D.E. 23, at 10]. But now, with no changed circumstances, the government is requesting even more time than this Court previously rejected—it is asking for fact discovery to last 180 days—or six months—following the Track 1 Order. Consistent with CMO 2, the Court should deny the government's audacious request.

### B. The Government Has Not Established Any Basis for Extending the Deadline for Fact Discovery.

There is no reason to extend the deadline for fact discovery. Indeed, the government's arguments in support of its extension request have been addressed and mooted.

The primary basis for the government's request for an extension of the fact discovery deadline is that the PLG supposedly requested "vast quantities of [ESI] from individuals at various government agencies." [D.E. 95, at 6]. In furtherance of this argument, the government submitted a declaration from Joshua Wood ("Mr. Wood"), the Chief of the Office of Litigation Support for the Civil Division of the Department of Justice. [D.E. 92-2]. Mr. Wood estimated that the ESI production would take 102 working days. [D.E. 92-2, at 13]. The government's extension request

was overwhelmingly premised upon this argument that ESI production would take more than 100 working days.

But that "justification" is no longer valid. The PLG has withdrawn all requests for ESI. [D.E. 102, at 3]. As a result, the principal basis for the government's request for an extension of the fact discovery deadline has been eliminated.

Further, the government's memorandum complained that the "PLG has served 5 sets of general Requests for Production of Documents ('RFPs'), totaling 38 individual requests (not counting subparts)," which resulted in the PLG's motion to compel and the government's cross-motion for protective order. [D.E. 95, at 7]. However, as reported to the Court during the Status Conference of January 9, 2024, the parties are close to an agreement to resolve nearly all disputes over these discovery requests, and therefore, the parties jointly requested that the Court hold the pending motion to compel and cross-motion for protective order in abeyance. [D.E. 105].

The government also suggested that it has received "identifying information for obtaining individual plaintiff records" in a delayed manner. [D.E. 95, at 6]. Yet, the PLG has produced this data exactly as required by the Court. For instance, as the Court directed, social security numbers and dates of birth for discovery pool plaintiffs were provided to the government on January 10, 2024. [D.E. 91]. As the Court further directed, Medical Records Authorizations and other identifying information will be provided to the government on January 19, 2024 as part of the Discovery Pool Profile Form process. [D.E. 39 & 62].

The government has no grounds for extending the fact discovery deadline. Given the importance of expeditiously litigating these CLJA cases, the Court should deny the government's request for a 90-day extension of the deadline for fact discovery.

## IV. The PLG Does Not Oppose Defendant's Request for Notification of Expert Medical Examinations.

The PLG does not expect that expert medical examinations of discovery pool plaintiffs will be necessary. If such an examination is necessary in any individual case, the PLG agrees to provide the government with advance notice.

## CONCLUSION

The PLG does not oppose the government's request to provide advance notice of expert medical examinations of any individual plaintiffs. For the foregoing reasons, the Court should deny the government's requests that every plaintiff be eligible for the discovery pool, that every plaintiff must file a SFC, that the opt-out provision be eliminated, and that Track 1 fact discovery be extended by 90 days.

*[Signatures follow on next page]*

This the 16th day of January, 2024.

/s/ *J. Edward Bell, III*
Elizabeth Cabraser (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com

*Counsel for Plaintiffs*

/s/ *Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Telephone: (415) 956-1000
ecabraser@lchb.com

*Co-Lead Counsel*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5802
rgreenwald@weitzlux.com

*Co-Lead Counsel*

/s/ *Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144
Telephone: (704) 633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel*

/s/ *Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Suite 500
Austin, TX 78701
Telephone: (956) 345-9462
zina.bash@kellerpostman.com

*Co-Lead Counsel and Government Liaison*

/s/ *W. Michael Dowling*
W. Michael Dowling (N.C. Bar No.: 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, NC 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com

*Co-Lead Counsel*

/s/ *James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619
Telephone: (919) 981-0191
jar@lewis-roberts.com

*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, J. Edward Bell, III, hereby certify that the foregoing document was electronically filed on the Court's CM/ECF system on this date, and that all counsel of record will be served with notice of the said filing via the CM/ECF system.

This the 16th day of January, 2024.

/s/ J. Edward Bell, III
J. Edward Bell, III