IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| CAMP LEJEUNE WATER LITIGATION ) | Case No. 7:23-cv-897 |
| ) | |
| ) | UNITED STATES' RESPONSE |
| **This Document Relates To:** ) | TO PLAINTIFF LEADERSHIP |
| 7:23-CV-00569-BO; 7:23-CV-00096-BO; ) | GROUP'S RULE 16 |
| 7:23-CV-00742-BO; 7:23-CV-00277-BO; ) | STATEMENT |
| 7:23-CV-01044-BO; 7:23-CV-01553-BO; ) | |
| 7:23-CV-01529-BO; 7:23-CV-00280-BO; ) | |
| 7:23-CV-00043-BO; 7:23-CV-01458-BO; ) | |
| 7:23-CV-01173-BO; 7:23-CV-01368-BO; ) | |
| 7:23-CV-00023-BO; 7:23-CV-01586-BO; ) | |
| 4:23-CV-00062-BO; 7:23-CV-01482-BO; ) | |
| 7:23-CV-00885-BO; 7:23-CV-01534-BO; ) | |
| 7:23-CV-01058-BO; 7:23-CV-00899-BO; ) | |
| 7:23-CV-00242-BO; 7:23-CV-01528-BO; ) | |
| 7:23-CV-00957-BO; 7:23-CV-00063-BO; ) | |
| 7:23-CV-00905-BO; 7:23-CV-01551-BO; ) | |
| 7:23-CV-00894-BO; 7:23-CV-01031-BO; ) | |
| 7:23-CV-00535-BO; 7:23-CV-00452-BO; ) | |
| 7:23-CV-01310-BO ) | |

Plaintiff Leadership Group's "Rule 16 Statement," Dkt. 117, filed yesterday afternoon in the above-captioned cases pending before the Honorable Judge Boyle, is procedurally improper, incorrect on its substance, and would not expedite resolution.

**I.     PLG should have met and conferred with the United States and should have filed a motion to amend CMO 2.**

What purports to be a "Rule 16 Statement" is, in substance, a set of requests to unilaterally amend Case Management Order No. 2, which was entered by all four District Judges of this Court, and to treat the Track 1 cases proceeding before Judge Boyle differently from those proceeding before the other three District Judges. For this subset of cases, PLG asks to (a) establish an expedited briefing schedule on their motion for partial summary judgment that seeks to eliminate the requirement that Plaintiffs prove specific causation; (b) decide that multi-

1

plaintiff trials are appropriate; (c) set the above-captioned cases for multi-plaintiff trials starting within 60 days of the close of fact discovery, apparently dispensing with expert discovery entirely; and (d) issue a "directive" making a dispositive factual finding in favor of Plaintiffs on the fundamental element of causation. The United States firmly disagrees with the substance of PLG's proposals, as discussed below.

In terms of procedure, Case Management Order No. 2 (CMO 2) is clear: to the extent that either PLG or Defendant wishes to "recommend adjustments to this Case Management Order"—which PLG's "Rule 16 Statement" requests unquestionably do—the parties "will meet and confer." Dkt. 23. The meet and confer requirement encourages the parties to "work collaboratively," D.E. 23 at 1, narrows the issues presented to the Court, and streamlines the administration of all CLJA cases. PLG did not meet and confer with the United States before filing its requests to adjust the procedures in CMO 2. Although the parties have previously discussed in general terms the question of multi-plaintiff trials and the implications of the 2017 ATSDR Report, the parties have not discussed the other proposals raised in PLG's Statement, and the United States does not believe that the meet and confer requirement was satisfied here. In addition, had PLG met and conferred, the United States would have told PLG that a request to amend CMO 2 should be presented to the entire Court in a motion to amend. That is the obvious import of the Court's directive in CMO 2 to meet and confer about amendments to CMO 2. The United States filed a Motion to Amend Case Management Order No. 2 (Dkt. 95); PLG should do the same, so that the parties and the full Court may benefit from a full and fair presentation of PLG's proposals and the United States' responses. The Court should not allow Plaintiffs to make an end run around CMO 2's requirements by presenting their CMO amendment proposals as a

"Rule 16 Statement" two days before a hearing about settlement prospects before only Judge Boyle.

## II. PLG's proposals are substantively misguided.

The United States will respond in full to the substance of PLG's proposals at the appropriate time—on specific causation, in the United States' response to PLG's motion for partial summary judgment (D.E. 110), and on PLG's other proposals, if and when those proposals are properly presented to the entire Court in a motion to amend CMO 2. In the interim, the United States offers the Court the following preview of its positions:

Specific causation: The Camp Lejeune Justice Act does not depart from the foundational and universal requirement that plaintiffs must show not only that the alleged toxic exposure is capable of causing the type of alleged injury (general causation), but also that each plaintiff's particular injury was actually caused by the alleged exposure (specific causation). The United States will fully brief this issue in its forthcoming response to PLG's motion for partial summary judgment. For now, PLG has shown no good reason to depart from the normal briefing schedule for this motion. PLG could have filed a motion on specific causation many months ago, and PLG did not ask for expedited briefing before filing its motion. PLG's request for expedited briefing *after* filing its motion is a not-so-subtle request to abridge the time for the United States to respond.

Multi-plaintiff trials: PLG has already proposed multi-plaintiff trials to the full Court in its Case Management Order proposal. D.E. 17-1, at 8, 11 (Aug. 28, 2023). The United States opposed PLG's request because "a determination of whether and in what circumstances multiple-plaintiff trials might be appropriate should only be made after the parties have engaged in discovery, and the selection of plaintiffs for trial should focus on which trials can provide useful information for global resolution." D.E. 17-3 (Aug. 28, 2023). The full Court sided with the

3

United States and expressly declined to adopt these aspects of PLG's proposal. *See* D.E. 23, CMO 2. Given that discovery has only begun within the last several weeks, and the Track 1 plaintiff pool has not even been finalized, PLG has shown no basis why the full Court's prior determination was erroneous. Any renewed request for multi-plaintiff trials should be presented to the full Court in a motion to amend CMO 2 following a meet and confer.

<u>"Directive" on causation</u>: PLG's request that the Court—without the benefit of discovery, briefing, argument, or trial—simply issue a "directive" making a factual finding for plaintiffs on the central element of causation is without precedent, lacks any basis in law, and would be fundamentally unfair.

<u>Trials within 60 days of the close of fact discovery</u>: PLG did not suggest this timeline to the Court in its proposed Case Management Order last fall, which (unrealistically) would have set trial for 60 days after the close of ***expert*** discovery. *See* D.E. 17-1. The full Court declined to adopt that aspect of PLG's proposed Case Management Order. PLG's new proposal in its Rule 16 Statement would commence trials 60 days after the close of fact discovery. This proposal conflicts with CMO 2, which contemplates 90 days for expert discovery after the close of fact discovery. D.E. 23 at 10. PLG's new proposed timeline would not accommodate even rudimentary expert discovery on the Track 1 plaintiffs, not to mention motions practice. Even if the Court were to issue PLG's "directive" on causation and deny the United States the opportunity to conduct expert discovery relating to causation, the parties would still have to conduct expert discovery on damages.

## III. PLG's proposals would not expedite resolution.

Beyond the procedural and substantive problems with PLG's proposals in its Rule 16 Statement, PLG's proposals are not likely to expedite settlements given other unresolved issues that are impeding resolution, including, among other things, (1) whether cases will be tried by

jury, *see* D.E. 51, (2) whether a North Carolina ancillary administrator must be appointed on behalf of an estate, *see* Dkt. 41, and (3) whether the FTCA's caps on attorneys' fees govern CLJA cases, *see* D.E. 34. For example, resolving the jury trial issue will undoubtedly affect trial procedures, and could impact whether plaintiffs are willing to accept settlements. Additionally, the United States cannot settle cases with administrators appointed outside of North Carolina as long as the administrator issue is pending. Finally, the United States is also concerned that the issue of attorneys' fees may be impeding resolution. While many plaintiffs have accepted the United States' Elective Option ("EO") settlement offers, Plaintiffs' Lead Counsel has stated to the Court that his clients will not accept EO settlements given the government's position on attorneys' fees. D.E. 44-2 at 39:9-21 ("I'm not going to do it."). At least one plaintiff was not even informed of the existence of a pending EO offer at the time of his deposition, ten days after the offer was made.[1]

Resolving these global issues—along with the causation issue that PLG recently raised, after allowing time for fully developed legal arguments—will do more to help in the ultimate resolution of the CLJA cases than expediting a subset of cases to trial in a summary and legally erroneous fashion.

Dated: January 23, 2024               Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney General
                                      Civil Division

---

[1] Another plaintiff who was recently deposed stated that he declined his EO offer because he expected that, after attorneys' fees and taxes, he "would have ended up with really nothing"; he believed his contingent fee agreement with Plaintiffs' Lead Counsel was for 40%. Transcripts of these recent depositions are not yet available but the United States can provide them to the Court upon request as soon as they are finalized.

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
1100 L Street NW
Washington, DC 20005
E-mail: daniel.c.eagles@usdoj.gov
Phone: (202) 305-0253
Fax: (202) 616-4473

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

6

Case 7:23-cv-00897-RJ    Document 119    Filed 01/23/24    Page 6 of 7

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2024, a copy of the foregoing Response to Plaintiff Leadership Group's Rule 16 Statement was served on all counsel of record via the Court's electronic filing system.

                                                            */s/ Daniel C. Eagles*
                                                            DANIEL C. EAGLES