IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| CAMP LEJEUNE WATER LITIGATION ) | Case No. 7:23-cv-897 |
| ) | |
| ) | UNITED STATES' REPLY |
| ) | IN SUPPORT OF MOTION TO |
| This Document Relates To: ) | AMEND CASE MANAGEMENT |
| ALL CASES ) | ORDER NO. 2 |

The United States' proposed amendments to Case Management Order No. 2 ("CMO 2") will speed the resolution of Camp Lejeune Justice Act ("CLJA") claims for *all* CLJA claimants, not just the first group of bellwether plaintiffs, by helping to ensure that future tracks of discovery plaintiffs are drawn from a more representative pool and that CLJA cases are adequately litigated after sufficient fact and expert discovery.

To that end, the Court should order all plaintiffs to file Short Form Complaints and remove the opt-out procedure for future discovery tracks. The Court should also extend the time for Track 1 fact discovery by 45 days. Plaintiffs' withdrawal of their custodial ESI requests alleviates only in part the need for a longer 90-day extension that the United States requested in its opening brief; plaintiffs have subsequently made substantial additional requests for non-custodial ESI data, and the United States still has not received all of the necessary releases from plaintiffs to obtain relevant plaintiff records. The Court should further clarify that plaintiffs' agreement to provide notice of plaintiff examinations by Federal Rule of Civil Procedure 26(a)(2)(B) retained experts will extend to all types of expert examinations of plaintiffs.

I. The Existing CMO 2 Procedures Have Not Yielded A Representative Discovery Pool.

As stated in our Opening Brief, the pool of discovery plaintiffs and bellwether plaintiffs should be representative of the entire universe of CLJA plaintiffs in this Court—not only in

terms of the criteria that Plaintiffs' Leadership Group ("PLG") mentions, such as when plaintiffs were at Camp Lejeune or where they resided on base (D.E. 114 at 7), but also in terms of the ***strength of their claims***. Indeed, in its most recent Order, the Court recognized "that proceeding with a Discovery Pool and early trials that are representative of the universe of CLJA claimants remains paramount to eventual global resolution of this litigation." D.E. 116 at 4-5.

PLG's Response asserts, without any substantiation, that the discovery pool is representative in certain ways. *Id.* Even if this were true, PLG does not deny the crucial point that the CMO 2 procedures have contributed to a discovery pool that is slanted heavily in favor of PLG's "strongest cases." D.E. 95 at 3.[1] It should of course come as no surprise that experienced plaintiffs' counsel, given the opportunity, would seek to put their best cases first. *See* April 5, 2023 Hrg. Tr. (Judge Dever: "I've been around enough to know everybody is going to want their best case to be their bellwether on each side."). But litigating only PLG's strongest cases will not advance a global resolution of the litigation.

Rather than rebutting the United States' point that PLG has used the Short Form Complaint and opt-out procedures to put forward plaintiffs' strongest cases, PLG claims that the United States "has failed to present evidence that the current discovery pool is unrepresentative." D.E. 114 at 8. Not true. The United States *has* provided an important and undisputed piece of evidence of unrepresentativeness: plaintiffs who filed SFCs and did not opt out had a substantially longer average duration of exposure, roughly 41 months, than plaintiffs who filed SFCs but opted out (or did not file SFCs by the Track 1 selection deadline), roughly 26 months. D.E. 95 at 6. PLG asserts that this statistic has "minimal value" but does not dispute its accuracy.

---

[1] Instead, PLG says, in essence, that even if weaker cases ended up being removed from the discovery pool, that was not done for strategic reasons but for "many reasons" such as plaintiffs' age and ill health. *Id.* at 5.

D.E. 114 at 7. Regardless, PLG's "no evidence" argument misses the point—PLG faults the United States for not providing more factual evidence about the CLJA plaintiffs who declined to file Short Form Complaints, when the crux of the United States' argument is that all plaintiffs who filed a CLJA action *should have been required to file* Short Form Complaints, so that the United States and the Court would have more information about them.[2]

There is additional important evidence of unrepresentativeness: PLG's own description of their claimed representativeness of the discovery pool. PLG lists "attributes" that they believe are represented in the pool of plaintiffs who filed SFCs.[3] D.E. 114 at 7. PLG appears to conflate heterogeneity with representativeness. For example, PLG asserts they reviewed the population of litigants for "[d]ifferent treatment outcomes (i.e. individuals successfully treated and in remission, individuals who had difficult treatments but are in remission, and individuals who died)." *Id.* But there is no indication that the discovery pool has the same proportion of plaintiffs "successfully treated" versus those "who had difficult treatments" as the entire claimant population. Including a single "successfully treated" case would not make the population representative.

Nor are PLG's criteria complete. Conspicuously omitted are many criteria bearing on the strength or weakness of each plaintiff's claims, including, for example:

---

[2] The Court has recognized the government's argument about the disparity of exposure between those who opted in to Track 1 from those that opted out, but stated it had no control of plaintiffs who self-selected for litigation by deeming their administrative claims denied and filing suit. D.E. 116 at 4-5. However, the disparity exists among the population of plaintiffs in litigation itself, without regard to those who elected to remain in the administrative process. The discovery pool should be representative of those who chose to file suit in this Court. The United States' point about disparity in exposure shows it is not.

[3] Plaintiffs' list of attributes appears to be directed at the plaintiffs who filed SFCs but not necessarily at the narrower subset of plaintiffs who filed SFCs before the deadline and declined to opt out.

3

- Family histories of claimed disease

- Significant comorbidities

- Risk factors beyond the "lifestyle decisions" of "smoking" and "work in hazardous jobs"

- Types of occupation in the military

- Other service-related exposures to toxic substances, such as Agent Orange

- Amounts of water consumed at Camp Lejeune based on time spent on base

- Specific places of residence at Camp Lejeune

- Specific places of work or training at Camp Lejeune

- Ages at time of residency or work at Camp Lejeune

- Primary sources of Camp Lejeune drinking water

- Criteria relating to plaintiffs' economic or non-economic damages

That is no accident. PLG dismisses these sorts of considerations as "individualized issues of proof" that do not "test the law, medicine, and science on a more general basis." D.E. 114 at 6. In PLG's view, if a plaintiff has "substantial individualized issues of proof," the plaintiff "would not be representative" and therefore should not be part of the discovery pool. *Id.*

In fact, in any mass tort, most plaintiffs will have various forms of "individualized issues of proof." To get information that might inform a global settlement it is both appropriate and necessary to make sure that a representative proportion of such plaintiffs participate in discovery and the scrutiny of litigation. The purpose of the bellwether process is to test all relevant issues, including the types of individualized issues of specific causation and damages that these cases present. PLG's stated decision to sweep aside "individualized issues" itself demonstrates that PLG has used the existing case management procedures to skew the discovery pool in favor of plaintiffs' strongest cases.

## II. Every Plaintiff Should File A Short Form Complaint.

To mitigate these concerns, every plaintiff should file a Short Form Complaint. Plaintiffs who have filed complaints have already opted out of the administrative process and opted in to litigation.[4] Plaintiffs who have chosen to pursue litigation do not need additional opt-ins or opt-outs. But CMO 2 gives them two: the choice to file a Short Form Complaint before the Short Form Complaint deadline, and the choice to opt out of Track 1 discovery. Neither procedure should apply to subsequent discovery tracks.

The purpose of the Short Form Complaint process is to collect information about all plaintiffs in a streamlined, efficient manner. Requiring plaintiffs to file a Short Form Complaint is the bare minimum to expect of plaintiffs who have chosen to bring suit in federal court. PLG is flatly wrong in asserting that "[t]he entire purpose of the SFC process is to limit the number of bellwether-eligible plaintiffs who would not be representative of the larger pool." D.E. 114 at 6. PLG lacks legal support for this position or precedent in case management procedures in other mass tort litigation. In fact, PLG has failed to point to any example of a large-scale litigation where Short Form Complaints were used but plaintiffs were not required to file them. Indeed, the very authority PLG cites contradicts its position. *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla. Oct. 16, 2019), D.E. 763 ("All Plaintiffs with a case pending in this MDL . . . must file a Short Form Complaint within 20 days[.] Any Plaintiff whose case becomes part of this MDL after the date of this Order . . . must file a Short Form Complaint within 20 days[.]"). This is standard practice in mass tort litigation and should be followed here.

---

[4] PLG is not correct to claim that the United States takes issue with this procedure, *see* D.E. 114 at 1; the United States accepts that every claimant's choice whether to file suit or wait in the administrative process is intrinsic to the Camp Lejeune Justice Act.

### III. The Opt-Out Provision Should Be Removed From Future Tracks.

The Court should also remove the opt-out provision from CMO 2 for any future discovery tracks. PLG says that it "does not presently anticipate using the opt-out provision for further Tracks" and offers just two justifications for keeping it: first, the possibility of "circumstances in which fairness will dictate that a plaintiff should be able to" opt out of discovery and trial, such as serious health problems; second, the possibility that the opt-out is still needed for "non-PLG litigants." D.E. 114 at 7.

Neither of these justifications warrant retaining the opt-out provision. The Court and the parties are well equipped to manage the needs of plaintiffs who are in ill health. The United States has considerable experience accommodating ill plaintiffs at deposition, and, if necessary, at trial. To the extent a plaintiff becomes so unwell that he is unable to participate in his own case, that plaintiff's counsel may seek relief from the Court.

PLG's other rationale—offering opt-outs to "non-PLG litigants," D.E. 114 at 7, presumably in case those plaintiffs' attorneys and PLG do not wish to work together—finds no support in the Federal Rules of Civil Procedure. *See* D.E. 95, Mot. at 5. Nor does it fit with the Court's July 19, 2023 Order appointing plaintiff leadership to "fairly, effectively, and efficiently represent the interests of *all plaintiffs* before this Court." D.E. 10 (emphasis added). If a non-PLG litigant confronts unusual circumstances that somehow necessitate withdrawal from the discovery pool, that litigant is free to explain those circumstances to the Court and seek relief. But there is no need for a blanket provision allowing unilateral opt-outs from the ordinary requirement that a litigant must participate in his own case.

### IV. A 45-Day Extension Remains Necessary To Complete Track 1 Fact Discovery.

PLG asserts that it has "withdrawn its requests for ESI" so "the government's request for an extension of the fact discovery deadline has essentially been mooted." D.E. 114 at 8. This is

not entirely accurate. PLG did withdraw its overbroad custodial ESI requests, which the United States hopes will alleviate the need for a full 90-day extension. But PLG has now requested additional non-custodial ESI from ATSDR. Separately, the United States continues to face an uphill battle in discovery regarding individual plaintiffs due to PLG's delays in providing releases. The United States is also continuing to work with agencies to collect and produce a large volume of documents in response to Plaintiffs' other Requests for Production. As a result, an extension of fact discovery by at least 45 days remains necessary.

ATSDR "Project Files": As of January 8, 2024, PLG has asked for a substantial additional amount of non-custodial ESI not contemplated in the United States' original Motion—the entirety of ATSDR's water modeling and health effects "project files" relating to Camp Lejeune. This is a new and significant discovery request to which the United States is entitled to respond according to the jointly submitted ESI protocol, *see* D.E. 52, CMO 8, and the Federal Rules of Civil Procedure. While the United States believes the production of these files can be done expeditiously, the "project files" consist of at least 3.2 terabytes of data.[5] And contrary to PLG's assertions, a mere "copy and paste" of these files is unworkable within litigation and runs afoul of the ESI Protocol. In addition, the United States has informed PLG that ATSDR must conduct a review of certain health effects project files for statutorily protected data and data subject to confidentiality agreements before they can be produced. The parties are working to determine whether a workaround concerning this protected data is possible, and efforts on that front are continuing.

---

[5] One terabyte contains one thousand gigabytes or one million megabytes. The file size of this 10-page brief in PDF format is less than half of one megabyte.

Releases: The Court ordered that releases for records from NARA and the VA be provided to the United States by January 19, 2024. As of January 30, 2024, the United States has received 83 NARA releases for Track 1 plaintiffs. PLG has also submitted 85 VA-related releases for Track 1 plaintiffs to date, 23 of which may need to be re-signed pursuant to VA requirements. PLG's initial delay in producing identifying information, such as social security numbers and dates of birth (which were finally produced after the Court granted the United States' motion to compel), and further delay in producing releases has resulted in the need for additional time to retrieve crucial records and to conduct discovery of the Track 1 plaintiffs and their medical providers within the 90-day fact discovery window.[6] The DPPF did not include a general medical release for private medical records, so the United States has been collecting this type of release from plaintiffs at their depositions. As a result, the United States cannot begin collecting a plaintiff's private medical records and deposing private medical providers until after deposing that plaintiff. Based on experience in other mass torts, the United States expects that the process of obtaining private medical records and deposing private medical providers will be especially time-intensive.

For deceased plaintiffs, the United States must also obtain from PLG proof of personal representation by the individual signing the release, so that medical records may be collected from private providers. The United States requested all documents relating to any Plaintiff's representation in its first set of requests for production served on December 11, 2023. PLG did not produce any responsive documents until January 10, 2024, when PLG produced, for many

---

[6] PLG's delay tactics at times have been extreme, including a refusal to sign the releases included with the DPPF at a deposition on January 12, 2024. Though the plaintiff who needed to sign the releases was present, a PLG attorney present at the deposition refused to provide them because the deposition was a week before the court-imposed deadline for the DPPF.

Track 1 Plaintiffs, many thousands of documents as individual images with a load file. PLG did not specify which documents were responsive to individual production requests, so the United States must review tens of thousands of pages to see if PLG produced proof of personal representation by the individuals signing releases.

For these reasons, the United States requests an additional 45 days to wrap up currently outstanding discovery issues. The United States reserves the right to seek additional time closer to the end of fact discovery if circumstances change, although the United States is hopeful, based on the current state of discovery, that an additional 45 days will suffice.

## V. Plaintiffs Should Provide Notice Of All Types Of Expert Examinations Of Discovery Pool Plaintiffs.

PLG stated in its Response that it "agrees to provide the government with advance notice" of any "expert medical examinations of discovery pool plaintiffs." D.E. 114 at 12. The United States appreciates PLG's cooperation. The United States has asked PLG to confirm that its agreement to provide advance notice of "medical" examinations extends to all types of expert examinations of plaintiffs by testifying experts (but not consulting experts or the plaintiff's current treating healthcare providers), including examinations conducted by life care planners and occupational rehabilitation experts. The parties have not been able to reach an agreed stipulation addressing this question. The United States therefore requests that the Court direct PLG to provide advance notice when any Fed. R. Civ. P. 26(a)(2)(B) retained expert conducts a medical or other expert examination of a discovery pool plaintiff, as well as notice of any such examinations that have already taken place.

Dated: January 30, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
SARA J. MIRSKY
NATHAN BU
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
1100 L Street NW
Washington, DC 20005
E-mail: daniel.c.eagles@usdoj.gov
Phone: (202) 305-0253
Fax: (202) 616-4473

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

10
Case 7:23-cv-00897-RJ   Document 129   Filed 01/30/24   Page 10 of 11

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2024, a copy of the foregoing Reply in Support of Motion to Amend Case Management Order No. 2 was served on all counsel of record via the Court's electronic filing system.

                                              */s/ Daniel C. Eagles*
                                              DANIEL C. EAGLES