IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

IN RE:                                          )
                                                )
CAMP LEJEUNE WATER LITIGATION                   )          **ORDER**
                                                )
THIS DOCUMENT RELATES TO:                       )
ALL CASES                                       )

On November 20, 2023, the United States of America ("United States" or "defendant")

moved to strike the jury trial demand in plaintiffs' master complaint [D.E. 51] and filed a

memorandum in support [D.E. 51-1]. On December 4, 2023, plaintiffs responded in opposition

[D.E. 66]. On December 18, 2023, the United States replied [D.E. 84]. As explained below, the

Camp Lejeune Justice Act of 2022 ("CLJA") does not unequivocally, affirmatively, and

unambiguously provide plaintiffs the right to a jury trial in actions seeking relief under subsection

804(b) of the CLJA. Moreover, in the CLJA, Congress did not clearly and unequivocally depart

from its usual practice of not permitting a jury trial against the United States. Thus, the court

grants defendant's motion to strike the jury trial demand in plaintiffs' master complaint.

I.

In August 2022, Congress enacted and President Biden signed the CLJA. See Pub. L. No.

117-168, § 804, 136 Stat. 1759, 1802–04. On August 10, 2022, the CLJA became effective. The

CLJA contains ten subsections. Subsection (a) provides the name of the Act. See id. § 804(a).

Subsection 804(b) states that "[a]n individual, including a veteran (as defined in section 101 of

title 38, United States Code), or the legal representative of such an individual, who resided,

worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during

the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." Id. § 804(b).

Subsection 804(c) states that "[t]he burden of proof shall be on the party filing the action to show one or more relationships between the water at Camp Lejeune and the harm." Id. § 804(c)(1). "To meet the burden of proof described in paragraph (1), a party shall produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is (A) sufficient to conclude that a causal relationship exists; or (B) sufficient to conclude that a causal relationship is at least as likely as not." Id. § 804(c)(2).

Subsection 804(d) is entitled "Exclusive Jurisdiction And Venue." Id. § 804(d). The first sentence in subsection 804(d) states: "The United States District Court for the Eastern District of North Carolina shall have exclusive jurisdiction over any action filed under subsection (b), and shall be the exclusive venue for such an action." Id. The second sentence in subsection 804(d) states that "[n]othing in this subsection shall impair the right of any party to a trial by jury." Id.

Subsection 804(e) is entitled "Exclusive Remedy." Id. § 804(e). Subsection (e)(1) provides that "[a]n individual, or legal representative of an individual, who brings an action under this section for a harm described in subsection (b), including a latent disease, may not thereafter bring a tort action against the United States for such harm pursuant to any other law." Id. § 804(e)(1). Subsection (e)(2) provides that:

> Any award made to an individual, or legal representative of an individual, under this section shall be offset by the amount of any disability award, payment, or benefit provided to the individual, or legal representative–
> (A) under–

Case 7:23-cv-00897-RJ   Document 133   Filed 02/06/24   Page 2 of 34

(i) any program under the laws administered by the Secretary of Veterans Affairs;

(ii) the Medicare program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.); or

(iii) the Medicaid program under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.); and

(B) in connection with health care or a disability relating to exposure to the water at Camp Lejeune.

Id. § 804(e)(2).

Subsection 804(f) is entitled "Immunity Limitation." Id. § 804(f). It states: "The United States may not assert any claim to immunity in an action under this section that would otherwise be available under section 2680(a) of title 28, United States Code." Id. § 804(f).[1]

---

[1] 28 U.S.C. § 2680(a) provides: "The provision of this chapter and section 1346(b) of this title shall not apply to – "

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

In turn, 28 U.S.C. § 1346(b) provides:

> (1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

> (2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of

**3**

Subsection 804(g) states: "Punitive damages may not be awarded in any action under this section." Id. § 804(g).

Subsection 804(h) states: "An individual may not bring an action under this section before complying with section 2675 of title 28, United States Code." Id. § 804(h). This provision requires a CLJA claimant to exhaust administrative remedies under 28 U.S.C. § 2675 before filing an action in the Eastern District of North Carolina seeking relief under subsection 804(b) of the CLJA. See Brewer v. United States, No. 7:22-CV-150, 2023 WL 1999853, at *4 (E.D.N.C. Feb. 14, 2023) (unpublished); Pugh v. United States, No. 7:22-CV-124, 2023 WL 1081262, at *6 (E.D.N.C. Jan. 27, 2023) (unpublished); Girard v. United States, No. 2:22-CV-22, 2023 WL 115815, at *5 (E.D.N.C. Jan. 5, 2023) (unpublished).[2]

_____

> physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

28 U.S.C. § 1346(b).

[2] 28 U.S.C. § 2675 provides:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

Subsection 804(i) states: "This section does not apply to any claim or action arising out of the combatant activities of the Armed Forces." CLJA § 804(i).

Subsection 804(j)(1) states: "This section shall apply only to a claim accruing before the date of enactment of this Act." Id. § 804(j)(1). Subsection 804(j)(2) is entitled "Statute Of Limitations." Id. § 804(j)(2). It states: "A claim in an action under this section may not be commenced after the later of (A) the date that is two years after the date of enactment of this Act; or (B) the date that is 180 days after the date on which the claim is denied under section 2675 of title 28, United States Code." Id. Subsection 804(j)(3) is entitled "Inapplicability Of Other Limitations" and states: "Any applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under this section." Id. § 804(j)(3).

Before Congress enacted the CLJA, claimants who were service members or family members filed approximately 4,000 claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, and 17 federal lawsuits. See In re Camp Lejeune N.C. Water Cont. Litig., 263 F. Supp. 3d 1318, 1325 (N.D. Ga. 2016). In these claims and federal lawsuits, the claimants and plaintiffs alleged that they were exposed to toxic substances in the water supply while living at Camp Lejeune. See id. They also alleged that they suffered illness or death as a result of actions of the United States and sought relief pursuant to the FTCA. See id. The Judicial Panel on Multidistrict Litigation granted MDL status to the 17 federal lawsuits and transferred them to the United States District Court for the Northern District of Georgia. See id.; 28 U.S.C. § 1407. On December 5, 2016, that court dismissed plaintiffs' claims and held that: (1) North Carolina's ten-

---

(c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

28 U.S.C. § 2675.

year statute of repose applied to plaintiffs' claims; (2) under North Carolina law, the ten-year limitations period began to run on the date the allegedly contaminated wells were taken out of use; (3) the <u>Feres</u> doctrine[3] barred the claims of service members where the injuries arose out of their military service; (4) the discretionary function exception to liability under the FTCA in 28 U.S.C. § 2680(a) applied; and (5) the United States' sovereign immunity barred plaintiffs' Due Process Clause and Equal Protection Clause claims. <u>See</u> <u>In re Camp Lejeune N.C. Water Cont. Litig.</u>, 263 F. Supp. 3d at 1336–60. On May 22, 2019, the United States Court of Appeals for the Eleventh Circuit affirmed. <u>See</u> <u>In re Camp Lejeune, N.C. Water Cont. Litig.</u>, 774 F. App'x 564, 566–68 (11th Cir. 2019) (per curiam) (unpublished). On June 1, 2020, the Supreme Court denied certiorari. <u>See</u> <u>Douse v. United States</u>, 140 S. Ct. 2824 (2020).

When Congress enacted the CLJA, the Congressional Budget Office estimated the costs of settlement payouts and legal expenses to be $6.1 billion. <u>See</u> Congressional Budget Office, <u>Estimated Budgetary Effects of Rules Committee Print 117-33 for H.R. 3967, Honoring our PACT Act of 2021</u> (Feb. 18, 2022). After a national legal advertising campaign that some commentators have estimated cost over $100 million, claimants have filed approximately 164,000 administrative claims with the Department of the Navy. <u>See</u> [D.E. 128] 1; CLJA § 804(h). Moreover, plaintiffs have filed 1,492 civil actions in the United States District Court for the Eastern District of North Carolina seeking relief under subsection 804(b) of the CLJA. <u>See</u> [D.E. 128] 1; CLJA § 804(b). Claimants' demands in the administrative process under subsection 804(h) of the CLJA exceed $3.3 trillion. <u>See</u> [D.E. 34] 15; CLJA § 804(h).

---

[3] <u>See</u> <u>Feres v. United States</u>, 340 U.S. 135, 146 (1950); <u>cf.</u> <u>United States v. Brown</u>, 348 U.S. 110, 112–13 (1954).

## II.

Whether to strike plaintiffs' jury trial demand requires the court to examine the ordinary meaning of the CLJA's statutory text, to interpret specific provisions of the CLJA within their broader statutory context, and to apply certain canons of construction, which are presumptions about how courts ordinarily read statutes. See, e.g., Jones v. Hendrix, 599 U.S. 465, 472–80, 490–92 (2023); Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin, 599 U.S. 382, 387–88 (2023); MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288, 298–303 (2023); Sackett v. EPA, 598 U.S. 651, 679–83 (2023); Fin. Oversight Mgmt. Bd. for P.R. v. Centro De Periodismo Investigativo, Inc., 598 U.S. 339, 346–50 (2023); Ciminelli v. United States, 598 U.S. 306, 314–16 (2023); Santos-Zacaria v. Garland, 598 U.S. 411, 416–20 (2023); Wilkins v. United States, 598 U.S. 152, 157–59 (2023); West Virginia v. EPA, 142 S. Ct. 2587, 2607–09 (2022); Boechler, P.C. v. Comm'r of Internal Rev., 596 U.S. 199, 203–08 (2022); PennEast Pipeline Co. v. New Jersey, 141 S. Ct. 2244, 2262–63 (2021); Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959, 1981 (2020); Opati v. Republic of Sudan, 140 S. Ct. 1601, 1607–10 (2020).

The sovereign immunity clear statement canon provides that if a defendant enjoys sovereign immunity (as the United States does), "abrogation requires an unequivocal declaration from Congress." Fin. Oversight & Mgmt. Bd. for P.R., 598 U.S. at 347 (quotation omitted); see Dellmuth v. Muth, 491 U.S. 223, 232 (1989) ("We hold that the statutory language of the [Education of the Handicapped Act] does not evince an unmistakably clear intention to abrogate the States' constitutionally secured immunity from suit."). The Supreme Court has described the "standard for finding a congressional abrogation [as] stringent" and "has found that standard met in only two situations." Fin. Oversight & Mgmt. Bd. for P.R., 598 U.S. at 346–47. First, "when

a statute says in so many words that it is stripping immunity from a sovereign entity," by, for example, stating in the statute "that States 'shall not be immune' under any 'doctrine of sovereign immunity, from suit in Federal court' for patent or copyright infringement." Id. at 347 (quoting 35 U.S.C. § 296(a); 17 U.S.C. § 511(a)). Second, "when a statute creates a cause of action and authorizes suit against a government on that claim." Id.

Subsection 804(b) of the CLJA fits squarely within the Supreme Court's second example. Thus, the United States does not have sovereign immunity for actions under subsection 804(b) of the CLJA. See id.; Lac Du Flambeau Band of Lake Superior Chippewa Indians, 599 U.S. at 387–88.

A corollary to the sovereign immunity clear statement canon is that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276 (1957); see United States v. Mitchell, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit. A waiver of sovereign immunity cannot be implied but must be unequivocally expressed.") (cleaned up); United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). One such limitation includes whether a plaintiff has the right to a jury trial in a civil action against the United States. See, e.g., Lehman v. Nakshian, 453 U.S. 156, 160–69 (1981).

In Lehman, the Supreme Court held that the 1974 amendments to the Age Discrimination in Employment Act of 1967 ("ADEA") did not create a right to a jury trial against the United States in ADEA actions. See id. at 162–69. The statutory text at issue in Lehman was "new" sections 15(a)–(c) in the ADEA. See id. at 157–58. Section 15(a) prohibited "the Federal

Government from discrimination based on age in most of its civilian employment decisions concerning persons over 40 years of age." Id. at 157. Section 15(b) provided that "enforcement of § 15(a) in most agencies, including military departments, is the responsibility of the Equal Employment Opportunity Commission." Id. at 157–58. Section 15(c) provided: "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act." Id. at 158 (quotation omitted).

A 62-year-old civilian employee of the United States Department of the Navy filed a civil action under section 15(c) of the ADEA in the United States District Court for the District of Columbia and requested a jury trial. See id. The United States moved to strike the jury demand. See id. Both the district court and the United States Court of Appeals for the District of Columbia Circuit declined to strike the plaintiff's jury demand and interpreted section 15(c) to grant the plaintiff the right to a jury trial. See id. at 158–60.

The Supreme Court granted certiorari and reversed. See id. at 160–69. In analyzing whether section 15(c) granted the plaintiff the right to a jury trial, the Supreme Court began by noting that "[i]t has long been settled that the Seventh Amendment right to a trial by jury does not apply in actions against the Federal Government." Id. at 160. After all, "under the common law in 1791," no person "asserting claims against the sovereign" had the right to a jury trial. Id. (quotation omitted).

In Lehman, the Supreme Court acknowledged the sovereign immunity clear statement canon and its corollary that "the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." Id. (quotation omitted). "Thus, if Congress waives the Government's immunity from suit, as it has in the ADEA, . . . the plaintiff has a right to a trial by jury only where that right is one of the terms of the Government's consent to be sued." Id. at

161 (cleaned up). "Like a waiver of immunity itself, which must be <u>unequivocally expressed</u>, this Court has long decided that limitations and conditions upon which the Government consents to be sued must be <u>strictly observed</u> and exceptions thereto are not to be implied." <u>Id.</u> (cleaned up) (emphasis added).

As the Supreme Court explained in <u>Lehman</u>, "[w]hen Congress has waived the sovereign immunity of the United States, it has almost always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial." <u>Id.</u> "Jury trials, for example, have not been made available in the Court of Claims for the broad range of cases within its jurisdiction under 28 U.S.C. § 1491 . . . ." <u>Id.</u> "And there is no jury trial right in this same range of cases when the federal district courts have concurrent jurisdiction. <u>See</u> 28 U.S.C. §§ 1346(a)(2) and 2402." <u>Id.</u> "Finally, in tort actions against the United States, <u>see</u> 28 U.S.C. § 1346(b), Congress has similarly provided that trials shall be to the court without a jury. 28 U.S.C. § 2402." <u>Id.</u>

After recounting these governing principles, the <u>Lehman</u> Court analyzed the ADEA to determine whether section 15(c) granted the plaintiff the right to a jury trial. <u>Id.</u> at 161–65. First, the Supreme Court observed that section 7(c) of the ADEA authorized "civil actions against private employers and state and local governments, and . . . expressly provide[d] for jury trials." <u>Id.</u> at 162 (citing 29 U.S.C. § 626(c) (1976 ed., Supp. III)). In contrast, section 15(c) of the ADEA merely stated that any person aggrieved "may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes" of the ADEA. <u>Id.</u> Thus, in the ADEA itself, Congress "demonstrated that it knew how to provide a statutory right to a jury trial . . . elsewhere in the very legislation cited." <u>Id.</u> (cleaned up). "But in § 15 it failed <u>explicitly</u> to do so." <u>Id.</u> (emphasis added).

The Lehman Court declined to "infer[] statutory intent" to create the right to a jury trial against the United States "from the language in § 15(c) providing for the award of 'legal or equitable relief.'" Id. at 163. The Lehman Court stated that neither logic nor the legislative history supported this inference. Id. at 164. Likewise, Federal Rule of Civil Procedure 38(a) did not support such an inference given that Rule 38(a) "requires an affirmative statutory grant of the right where, as in this case, the Seventh Amendment does not apply." Id. at 165; see Fed. R. Civ. P. 38(a).

The Lehman Court held that "it is unnecessary to go beyond the language of the statute itself to conclude that Congress did not intend to confer a right to trial by jury on ADEA plaintiffs proceeding against the Federal Government." Lehman, 453 U.S. at 165. Nonetheless, the Lehman Court examined the legislative history and concluded that Congress did not intend to grant the right to a jury trial in section 15(c). See id. at 165–68.

The Lehman Court closed by stating that "even if the legislative history were ambiguous, that would not affect the proper resolution of this case, because the plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." Id. at 168 (emphasis added). "Congress has most obviously not done so here." Id. Thus, the "conclusion is inescapable that Congress did not depart from its normal practice of not providing a right to a trial by jury when it waived the sovereign immunity of the United States" in actions against the United States in the ADEA. Id. at 168–69.

Here, in order to resolve the parties' dispute about whether to strike plaintiffs' jury trial demand, this court must determine whether Congress "unequivocally expressed" and "affirmatively and unambiguously" granted the right to a trial by jury in the CLJA and "clearly

and unequivocally" departed from its usual practice of not permitting a jury trial against the United States. Id. at 161–62, 168.

## III.

Congress must have unequivocally, affirmatively, and unambiguously provided the right to a trial by jury in the CLJA in order for plaintiffs to have the right to a jury trial. The parties dispute whether Congress unequivocally, affirmatively, and unambiguously granted the right to a trial by jury against the United States in the CLJA. Compare [D.E. 51-1] 2–7, and [D.E. 84] 2–6, with [D.E. 66] 1–4, 17–20. The parties also dispute whether Congress in the CLJA clearly and unequivocally departed from its usual practice of permitting only bench trials in civil actions against the United States.

The parties' dispute begins with the second sentence of subsection 804(d), which states "[n]othing in this subsection shall impair the right of any party to a trial by jury." CLJA § 804(d). The dispute then extends to the first sentence of subsection 804(d), which states "[t]he United States District Court for the Eastern District of North Carolina shall have exclusive jurisdiction over any action filed under subsection (b), and shall be the exclusive venue for such an action." Id. The dispute then extends to the remaining text of the CLJA, canons of construction, the history of trials in civil actions seeking money damages from the United States as the defendant, and the CLJA's legislative history. Compare [D.E. 51-1], and [D.E. 84], with [D.E. 66].

## A.

The court begins with the text of subsection 804(d). See, e.g., Southwest Airlines Co. v. Saxon, 596 U.S. 450, 457 (2022); Facebook, Inc. v. Duguid, 592 U.S. 395, 402–03 (2021). It provides: "The United States District Court for the Eastern District of North Carolina shall have exclusive jurisdiction over any action filed under subsection (b), and shall be the exclusive venue

for such an action. Nothing in this subsection shall impair the right of any party to a trial by jury." CLJA § 804(d). The United States argues that the second sentence in subsection 804(d) does not "unequivocally express" and "affirmatively and unambiguously" grant a right to a trial by jury for actions under subsection 804(b). See [D.E. 51-1] 3–4; Lehman, 453 U.S. at 160, 168. In support, the United States cites Lehman and contrasts the language in the second sentence of subsection 804(d) with two statutes where Congress unequivocally, affirmatively, and unambiguously granted a jury trial in a civil action against the United States. See [D.E. 51-1] 4–5. First, 28 U.S.C. § 2402 states that "any action against the United States [for certain tax refund claims] . . . shall, at the request of either party to such action, be tried by the court with a jury." 28 U.S.C. § 2402. Second, 28 U.S.C. § 3901(b) states that in certain actions by federal employees against their executive agency employers, "any party may demand a jury trial where a jury trial would be available in an action against a private defendant under the relevant law." 28 U.S.C. § 3901(b).

The United States notes the unequivocal, affirmative, and unambiguous grant of the right to a trial by jury in 28 U.S.C. § 2402 and § 3901(b) and contrasts that unequivocal, affirmative, and unambiguous statutory language with the negative statutory language in the second sentence of subsection 804(d). See [D.E. 51-1] 4–5; [D.E. 84] 3; CLJA § 804(d) ("Nothing in this subsection shall impair the right of any party to a trial by jury."). The United States argues that when Congress enacted the CLJA, Congress knew that courts presumed that Congress legislates in light of the Supreme Court's canons of construction. See, e.g., U.S. Dep't of Energy v. Ohio, 503 U.S. 607, 615 (1992); McNary v. Haitian Refugee Ctr., 498 U.S. 479, 496 (1991). The United States then quotes the second sentence of subsection 804(d) and argues that Congress failed to unequivocally, affirmatively, and unambiguously grant plaintiffs the right to a trial by jury in subsection 804(d) for actions under subsection 804(b). See [D.E. 84] 3, 6.

As support for its textual analysis of subsection 804(d), the United States cites not only Lehman but also Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004). In Cooper Industries, the Supreme Court analyzed section 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Id. at 165–68. Section 113(f)(1) of CERCLA is codified at 42 U.S.C. § 9613(f)(1) and provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1). The Supreme Court described the first sentence of section 113(f)(1) as "establish[ing] the right of contribution" under CERCLA. Cooper Indus., Inc., 543 U.S. at 165–66. The Supreme Court held that the "natural meaning of this sentence is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action" under CERCLA. Id. at 166 (quoting 42 U.S.C. § 9613(f)(1)). The Supreme Court rejected Aviall's argument to read the word "may" in the first sentence of section 113(f)(1) permissively, such that "during or following a civil action is one, but not the exclusive, instance in which a person may seek contribution." Id. (quotation omitted).

As for the last sentence in section 113(f)(1), the Supreme Court observed that it states: "[n]othing in this subsection shall diminish the right of any person to bring an action . . . under section 9606 of this title or section 9607 of this title." Id. at 166 (quoting 42 U.S.C. § 9613(f)(1)). The Supreme Court held that "[t]he sole function of the [last] sentence is to clarify that § 133(f)(1) does nothing to 'diminish' any cause(s) of action for contribution that may exist independently of

§ 113(f)(1)." Id. (quoting 42 U.S.C. § 9613(f)(1)). "In other words, the [last] sentence rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP." Id. at 166–67. The last "sentence, however, does not itself establish a cause of action." Id. at 167 (emphasis added). Nor "does it expand § 113(f)(1) to authorize contribution actions not brought 'during or following' a § 106 or § 107(a) civil action." Id. "[N]or does it specify what causes of action for contribution, if any, exist outside § 113(f)(1)," such as contribution actions under state law. Id. (emphasis added).

This court construes subsection 804(d) of the CLJA in the same manner that the Supreme Court construed the first and last sentence of section 113(f)(1) of CERCLA in Cooper Industries. The first sentence of subsection 804(d) establishes that the "United States District Court for the Eastern District of North Carolina" has the "exclusive jurisdiction over any action filed under subsection (b), and [has] the exclusive venue for such an action." CLJA § 804(d). The second sentence, in turn, clarifies that the exclusive jurisdiction and exclusive venue provision in the first sentence of the subsection does "[n]othing . . . [to] impair the right of any party to a trial by jury." Id. As in Cooper Industries, the second sentence of subsection 804(d) "does not itself establish" the right to a trial by jury against the United States for actions under subsection 804(b). Cooper Indus., Inc., 543 U.S. at 167 (emphasis added). Likewise, as in Cooper Industries, "nor does [subsection 804(d)] specify" whether the right to a trial by jury might "exist outside" subsection 804(d). Id.

For the right to a trial by jury to exist against the United States outside the second sentence of subsection 804(d), the court would have to locate an unequivocal, affirmative, and unambiguous right to a trial by jury in the text of some other part of the CLJA. See, e.g., Lehman, 453 U.S. at 160–69. The court, however, already has quoted the CLJA's entire text. No part of the CLJA's

text contains an unequivocal, affirmative, and unambiguous right to a trial by jury against the United States.

As further support of this textual analysis, the court notes that the title of subsection 804(d) is "Exclusive Jurisdiction And Venue." CLJA § 804(d). A subsection's title can provide textual evidence concerning the subsection's meaning. See, e.g., Yates v. United States, 574 U.S. 528, 539–40 (2015) (permitting a court to look to a subsection's title to interpret a statute); Almandarez-Torres v. United States, 523 U.S. 224, 234 (1998) (same). Subsection 804(d)'s title provides additional evidence that (1) Congress intended the first sentence of subsection 804(d) to establish exclusive jurisdiction and exclusive venue for all actions under subsection 804(b) in the Eastern District of North Carolina; and (2) Congress intended the second sentence to clarify that establishing exclusive jurisdiction and venue in the Eastern District of North Carolina did "[n]othing" to "impair the right of any party to a trial by jury" that may exist outside of subsection 804(d). CLJA § 804(d); see Yates, 574 U.S. at 539–40; Almandarez-Torres, 523 U.S. at 234. Consistent with the title of subsection 804(d), each sentence in subsection 804(d) concerns the "[e]xclusive [j]urisdiction [a]nd [v]enue" established in subsection 804(d). See CLJA § 804(d). Construing the second sentence of subsection 804(d) to constitute an unequivocal, affirmative, and unambiguous right to a trial by jury in an action seeking relief under subsection 804(b) conflicts with the title of subsection 804(d).

The United States argues that Congress sensibly included the second sentence of subsection 804(d) "in a more general excess of caution" to alleviate concerns that establishing exclusive jurisdiction and exclusive venue in the United States District Court for the Eastern District of North Carolina might restrict a party's otherwise-existing right to a jury trial. [D.E. 51-1] 4 n.1 (quoting Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund, 583 U.S. 416, 435 (2018)). The United States also

argues that Congress sensibly included the second sentence in subsection 804(d) "as it might relate to a third-party complaint or cross claim." Id.

Plaintiffs respond that Congress placed the second sentence in subsection 804(d) in order to accord "with its basic purpose"—to provide a jury trial to plaintiffs asserting claims in actions under subsection 804(b). [D.E. 66] 10. According to plaintiffs, the first sentence of subsection 804(d)—"The United States District Court for the Eastern District of North Carolina shall have exclusive jurisdiction over any action filed under subsection (b), and shall be the exclusive venue for such an action."—concerns which court will resolve all legal questions under the CLJA (subject to appellate review). See [D.E. 66] 10. According to plaintiffs, the second sentence, in turn, clarifies that granting exclusive jurisdiction and venue to the United States District Court for the Eastern District of North Carolina does not authorize the court to resolve factual issues in actions under subsection 804(b). See id. Instead, according to plaintiffs, a jury must resolve all factual issues in actions under subsection 804(b). See id. Moreover, according to plaintiffs, if this court were to construe the second sentence of subsection 804(d) of the CLJA not to grant plaintiffs the right to a jury trial in actions under subsection 804(b), then that statutory construction "would render [the] entire" second sentence of subsection 804(d) superfluous. Id. at 11. And if the court were to adopt such an interpretation of subsection 804(d), plaintiffs argue that the court would violate the canon of construction providing that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quotation omitted); Hibbs v. Winn, 542 U.S. 88, 101 (2004).

Plaintiffs also respond to defendant's contention about a possible third-party complaint. See [D.E. 66] 12–13. Plaintiffs argue that the applicable statute of limitations or statute of repose

would bar any such third-party complaint; therefore, such a theoretical third-party complaint is not a plausible interpretation of subsection 804(d). See id. According to plaintiffs, a court cannot plausibly interpret the second sentence of subsection 804(d) to mean anything other than that each plaintiff has an unequivocal, affirmative, and unambiguous right to a jury trial in actions under subsection 804(b). See id.

The court rejects plaintiffs' arguments. Congress sensibly included the sentence "[n]othing in this subsection shall impair the right of any party to a trial by jury" to clarify that the "[e]xclusive [j]urisdiction [a]nd [v]enue" provision in the first sentence does "[n]othing" to "impair the right of any party to a trial by jury" that may exist outside subsection 804(d), including if a party were to file a third-party complaint in an action under subsection 804(b). CLJA § 804(d); see Cooper Indus., Inc., 543 U.S. at 164, 166–67. Moreover, although the United States has yet to file a third-party complaint, it could learn information during discovery that creates potential third-party liability for putting certain chemicals in the water at Camp Lejeune or potential third-party liability for producing certain chemicals that entered the water at Camp Lejeune. The United States could file a third-party complaint in an action under subsection 804(b) in the Eastern District of North Carolina to recover money from such a potentially responsible third party, and the second sentence of subsection 804(d) clarifies that the "[e]xclusive [j]urisdiction [a]nd [v]enue" provision in the first sentence of subsection 804(d) does "[n]othing" to "impair the right of any party to a trial by jury," including for such a third-party complaint. CLJA § 804(d); see, e.g., Cooper Indus., Inc., 543 U.S. at 164, 166–67.

In reaching this conclusion, the court rejects plaintiffs' argument that a statute of limitations or statute of repose would bar any potential third-party complaint. Asserting a statute of limitations or a statute of repose is an affirmative defense. See Fed. R. Civ. P. 8(c)(1). If a third

party failed to assert such a defense, the third party would forfeit the defense. See, e.g., Hamer v. Neighborhood Hous. Servs., 583 U.S. 17, 20 n.1 (2017) ("Forfeiture is the failure to make the timely assertion of a right.") (cleaned up); John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008) (affirmative defenses such as a statute of limitations or a statute of repose must be asserted or are subject to forfeiture); Day v. McDonough, 547 U.S. 198, 214 (2006) (same). Moreover, even if the United States has yet to file a third-party complaint in a CLJA action under subsection 804(b) due to an existing statute of limitations or statute of repose, Congress could alter an applicable statute of limitations or statute of repose in order to permit the United States to seek costs from a potentially responsible third party.[4]

The second sentence of subsection 804(d) also clarifies that if the United States were to assert a counterclaim for fraud under the common law or the False Claims Act against a CLJA plaintiff in an action under subsection 804(b), then the "[e]xclusive [j]urisdiction [a]nd [v]enue" provision in the first sentence of subsection 804(d) does "[n]othing" to "impair the right of any party to a trial by jury" on such a counterclaim. Although the court hopes that none of the 164,000 administrative claims that claimants have filed under subsection 804(h) of the CLJA are fraudulent or contain any false claims or false statements, recent history suggests that the United States some day may need to assert a common law fraud counterclaim or a False Claims Act counterclaim against a plaintiff who files an action in the Eastern District of North Carolina seeking relief under

---

[4] Some state legislatures have enacted laws extending statutes of limitations in order to give sexual assault, sexual abuse, and sexual harassment victims more time to file civil actions. See Ronald V. Miller, Statute of Limitations on Sexual Abuse Cases, Lawsuit Information Center (Sept. 25, 2023), https://www.lawsuit-information-center.com/statute-of-limitations-on-sexual-abuse-cases .html; see, e.g., A.R.S. § 13-107(1) (legislation enacted in 2019 in Arizona eliminating the statute of limitations for violent sexual assault); D.C. Code § 12-301(11) (legislation enacted in 2019 in the District of Columbia significantly extending the statute of limitations to permit any victim to file an action to recover for sexual abuse); 12 V.S.A. § 522 (legislation enacted in 2020 in Vermont eliminating the statute of limitations on childhood sexual or physical abuse claims).

subsection 804(b) of the CLJA. See Emily R. Siegel & Kaustuv Basu, Bogus Claims Threaten to Taint Camp Lejeune Toxic Water Payouts, Bloomberg Law News (Oct. 30, 2023); see also In re Deepwater Horizon, 643 F. App'x 377, 380–81 (5th Cir. 2016) (per curiam) (unpublished) (discussing the investigation of fishermen who misrepresented how the oil spill affected their business and improperly sought to recover money from the Deepwater Horizon settlement fund); United States Attorney's Office, Northern District of Alabama, Appeals Court Upholds BP Oil Spill Compensation Fund Fraud Convictions (Jan. 19, 2018), https://www.justice.gov/usao-ndal/pr/appeals-court-upholds-bp-oil-spill-compensation-fund-fraud-convictions (discussing the criminal prosecution of three family members who schemed to steal $2 million from the Deepwater Horizon Oil settlement fund); Ed Crooks, More than 100 jailed for fake BP oil spill claims, Financial Times (Jan. 15, 2017), https://www.ft.com/content/6428c082-db1c-11e6-9d7c-be108f1 c1dce (discussing over 100 people who were convicted and jailed for making fraudulent oil spill claims against BP arising from the Deepwater Horizon settlement fund). The second sentence of subsection 804(d) ensures that "[n]othing" in the "[e]xclusive [j]urisdiction [a]nd [v]enue" provision of the first sentence of subsection 804(d) shall "impair the right of any party to a trial by jury" on such a counterclaim.

Subsection 804(h)'s reference to 28 U.S.C. § 2675 adds another textual clue to support the conclusion that the second sentence of subsection 804(d) clarifies that the "[e]xclusive [j]urisdiction [a]nd [v]enue" provision in subsection 804(d) does "[n]othing" to "impair the right of any party to a trial by jury" that may exist outside subsection 804(d), including for a third-party complaint or a counterclaim. See CLJA § 804(h) ("An individual may not bring an action under this section before complying with section 2675 of title 28, United States Code."). Tellingly, 28 U.S.C. § 2675(a) explicitly states that "[t]he provisions of this subsection [requiring administrative

exhaustion] shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim,"[5] and subsection 804(h) incorporates 28 U.S.C. § 2675(a). See CLJA § 804(h). Thus, the CLJA textually contemplates third-party complaints and counterclaims.

The second sentence of subsection 804(d) clarifies that the "[e]xclusive [j]urisdiction [a]nd [v]enue" provision in the first sentence of subsection 804(d) does "[n]othing . . . [to] impair the right of any party to a trial by jury" that may exist outside of subsection 804(d), including for a third-party complaint or a counterclaim. This work "may not be very heavy work for the [second sentence of subsection 804(d)] to perform, but a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." Polselli v. I.R.S., 143 S. Ct. 1231, 1239 (2023) (quoting Guiterrez v. Ada, 528 U.S. 250, 258 (2000)); see Nielsen v. Preap, 139 S. Ct. 954, 969 (2019) (a clause that "still has work to do" is not superfluous). Thus, the court rejects plaintiffs' argument that its construction of subsection 804(d) renders the second sentence of subsection 804(d) superfluous.

## B.

Plaintiffs concede that in order for them to obtain a jury trial in their CLJA actions under subsection 804(b), Congress must have "unequivocally expressed" in the CLJA's "statutory text" their right to a jury trial. See [D.E. 66] 3–4, 7. In support of their argument, plaintiffs cite the text of the second sentence in subsection 804(d) and then attempt to distinguish Lehman, where the Court held that Congress had not "unequivocally expressed" in the statutory text the right to a trial by jury against the United States when it amended the ADEA in 1974. See [D.E. 66] 6–8. Plaintiffs also cite Galloway v. United States, 319 U.S. 372 (1943), and argue that the Supreme

---

[5] 28 U.S.C. § 2675(a).

Court found the right to a trial by jury against the United States "based solely on an inference from a statute's amendment history, without any express textual reference to jury trials at all." [D.E. 66] 4; see id. at 5–6. Plaintiffs then argue that, unlike the statute found sufficient in Galloway, the plain text of the second sentence in subsection 804(d) unequivocally expresses their right to a trial by jury. See id.

The court already described Lehman at length. The court recognizes the difference between the text of section 15(c) of the ADEA found insufficient to unequivocally, affirmatively, and unambiguously provide plaintiffs the right to a trial by jury against the United States and the text of the CLJA. Nonetheless, as discussed, the Supreme Court's analysis in Lehman provides a large part of the analytic framework that helps to resolve the parties' dispute.

As for Galloway, Galloway cannot bear the weight that plaintiffs place on it. In Galloway, the Supreme Court affirmed the Ninth Circuit's judgment affirming the district court's decision to grant a directed verdict to the United States pursuant to Federal Rule of Civil Procedure 50. See Galloway, 319 U.S. at 373–74. The dispute arose under an insurance policy issued pursuant to the War Risk Insurance Act, as amended. See id. at 372 n.1. Galloway filed an action in district court seeking benefits "for total and permanent disability by reason of insanity he claims existed [since] May 31, 1919." Id. at 372. The disability allegedly arose due to Galloway's military service during World War I. See id. at 373–82. At the close of all the evidence, the district court granted the government's motion for a directed verdict. See id. at 373. The Ninth Circuit affirmed. See id.

The Supreme Court in Galloway began by exhaustively discussing the evidence. See id. at 373–82. It then held that the district court properly directed a verdict under Rule 50 in favor of the government because, even viewing the evidence in the light most favorable to Galloway, no

reasonable jury could find that he was totally and permanently disabled as of May 31, 1919.  See id. at 382–88.  Thus, he was not entitled to insurance benefits under the policy.  See id.

The Supreme Court in Galloway could have ended its analysis at that point.  It did not.  Instead, it stated, "[w]hat has been said disposes of the case as the parties have made it."  Id. at 388.  "For that reason perhaps nothing more need be said."  Id.  Failing to heed its own observation, the Supreme Court then said, "[b]ut objection has been advanced that, in some manner not wholly clear, the directed verdict practice offends the Seventh Amendment."  Id.  The Supreme Court then explored whether the directed verdict practice in federal court under Rule 50 offended the Seventh Amendment and held that it did not.  See id. at 388–96.

As part of its ensuing discussion, the Supreme Court in Galloway stated that the Seventh Amendment did not provide a right to a jury trial to "enforce a monetary claim against the United States" and "persons asserting claims against the sovereign" lacked the right to a jury trial at common law in 1791.  Id. at 388.  The Supreme Court then stated, "[w]hatever force the [Seventh] Amendment has therefore is derived because Congress in the legislation cited has made it applicable."  Id. at 388–89 (footnote omitted).  The Supreme Court then added footnote 18 to explain "the legislation cited" as the statutory source of Galloway's right to a jury trial.  See id. at 389 n.18.  In footnote 18, the Supreme Court observed that when Congress first enacted legislation to permit "suits on War Risk Insurance policies," Congress "did not explicitly make them triable by jury."  Id.  The Supreme Court then stated that Congress amended the act in 1925 to permit such suits "with the intention to 'give the claimant the right to a jury trial.'"  Id. (quoting H.R. Rep. No. 1518, 68th Cong., 2d Sess., 2).  In support of this conclusion, the Supreme Court cited Pence v. United States, 316 U.S. 332, 334 (1942), for the proposition that Congress amended the War

Risk Insurance Act in 1925 to permit claimants seeking relief as policy beneficiaries to have the right to a jury trial. See Galloway, 319 U.S. at 389 n.18.

In Pence, the Supreme Court relied on four federal circuit court decisions[6] and a House Report[7] to conclude that Congress granted the right to a jury trial in 1925 in actions against the United States to recover insurance benefits under War Risk Insurance policies when it amended the World War Veterans' Act to remove a statutory provision expressly incorporating Section 2 of the Tucker Act, which provided for trials in United States District Courts without a jury. See Pence, 316 U.S. at 334 n.1; see also Hacker, 16 F.2d at 703–04 (tracing the Act's statutory evolution, including Congress's initial silence on the right to a jury trial in the Act in 1914, Congress's continued silence on the right to a jury trial in the Act in a 1917 amendment, Congress's express incorporation in the Act of a trial without a jury requirement in a 1924 amendment, and Congress's 1925 removal from the Act of Congress's express 1924 incorporation of a trial without a jury requirement). After the 1925 amendment, the War Risk Insurance Act, as amended, was silent on whether claimants had the right to a jury trial against the United States, but the Pence Court relied on the statutory evolution and the 1925 House Report to conclude that claimants had the right to a trial by jury against the United States in actions to recover insurance benefits under War Risk Insurance policies. Pence, 316 U.S. at 334 n.1; see Galloway, 319 U.S. at 389 n.18. The Galloway Court relied on Pence as binding precedent to conclude that "the legislation cited"

---

[6] United States v. Green, 107 F.2d 19, 21 (9th Cir. 1939); United States v. Salmon, 42 F.2d 353, 354 (5th Cir. 1930); Hacker v. United States, 16 F.2d 702, 703–04 (5th Cir. 1927); Whitney v. United States, 8 F.2d 476, 476–78 (9th Cir. 1925).

[7] H.R. Rep. No. 1518, 68th Cong., 2d Sess., p.2 ("Section 4 of the bill amends section 19 of the World War veterans' act relating to suits on contracts of insurance. In effect[,] the amendment will give the claimant the right to a jury trial, thus differing from the ordinary judicial procedure in suits on claims against the United States where the United States district courts have concurrent jurisdiction with the Court of Claims.").

included the right to a jury trial. Galloway, 319 U.S. at 389 & n.18.

Plaintiffs cite Galloway and argue that if the statute at issue in Pence and Galloway suffices to create the right to a jury trial, then subsection 804(d) suffices to create the right to a jury trial in the CLJA. See [D.E. 66] 5–6. The court disagrees. First, the Galloway Court provided no statutory interpretation itself concerning the War Risk Insurance Act, as amended. See Galloway, 319 U.S. at 389 & n.18. Rather, the Galloway Court relied on Pence as binding precedent to conclude that the War Risk Insurance Act, as amended, included the right to a jury trial against the United States. See id.

Second, to the extent plaintiffs rely on the statutory interpretation in Pence, the statutory evolution of the War Risk Insurance Act, as amended, distinguishes that statute from the CLJA. Unlike the War Risk Insurance Act, as amended, Congress never enacted the CLJA without any right to a jury trial, then amended the CLJA and remained silent on the topic, then amended the CLJA to add an express statutory provision providing for trials in the district courts without a jury, and then amended the CLJA for a third time to remove the express statutory provision providing for trials without a jury and left the CLJA silent on whether claimants had the right to a trial by jury on claims under subsection 804(b) of the CLJA. Instead, Congress simply enacted the CLJA, including subsection 804(d), with the knowledge that courts presume Congress legislates in light of the Supreme Court's canons of construction. See, e.g., U.S. Dep't of Energy, 503 U.S. at 615; McNary, 498 U.S. at 496. Thus, Galloway is distinguishable.

As explained, under Lehman, Cooper Industries, and the governing canons of construction, the CLJA (including subsection 804(d)) does not unequivocally, affirmatively, and unambiguously provide plaintiffs the right to a jury trial in actions under subsection 804(b) of the CLJA.

Case 7:23-cv-00897-RJ   Document 133   Filed 02/06/24   Page 25 of 34

Accordingly, the court declines plaintiffs' invitation to use the result in Galloway to supplant the CLJA's text and applicable canons of construction.[8]

To the extent that plaintiffs argue that the Lehman Court's quotation of Galloway about actions to recover benefits under insurance policies issued pursuant to the War Risk Insurance Act, as amended, means that a court can infer the right to a jury trial against the United States without unequivocal, affirmative, and unambiguous statutory text, Lehman defeats the argument.  See Lehman, 453 U.S. at 160–69.  Notably, courts have applied Lehman (and not Galloway) to numerous federal statutes and held that the statutes did not grant plaintiffs the right to a jury trial against the United States.  See, e.g., In re Dombrowski, No. 21-1292, 2021 WL 5562286, at *1 (6th Cir. Sept. 24, 2021) (unpublished) (claim under 28 U.S.C. § 2410(a)(1)); Greene v. Sec. of HHS, 841 Fed. App'x 195, 204 (Fed. Cir. 2020) (per curiam) (unpublished) (claim under 42 U.S.C. § 30aa-12); Brott v. United States, 858 F.3d 425, 436–37 (6th Cir. 2017) (claim under 28 U.S.C. §§ 174, 2402); Gunter v. Farmers Ins. Co., 736 F.3d 768, 773 (8th Cir. 2013) (breach of contract claim under insurance policy issued under the National Flood Insurance Program); Grissom v. Liberty Mut. Fire Ins. Co., 678 F.3d 397, 401–02 (5th Cir. 2012) (same); Thomas Inv. Partners, Ltd. v. United States, 444 F. App'x 190, 193 (9th Cir. 2011) (unpublished) (claim under 26 U.S.C. § 6226); Wilson v. Big Sandy Health Care, Inc., 576 F.3d 329, 333 (6th Cir. 2009) (claim under 42 U.S.C. § 233); Parker v. Astrue, 298 F. App'x 701, 702–03 (10th Cir. 2008) (unpublished) (claim under 42 U.S.C. § 405(g)); Wesleyan Corp. v. U.S. Postal Serv., 178 F. App'x 342, 343 n.3 (5th Cir. 2006) (per curiam) (unpublished) (breach of contract claim against U.S. Postal Service);

---

[8] Although Galloway and Pence remain binding precedent in construing the War Risk Insurance Act, as amended, the Galloway Court's and Pence Court's statutory interpretation harkens back to an "ancien regime" of statutory interpretation that the Supreme Court no longer uses.  Alexander v. Sandoval, 532 U.S. 275, 287 (2001).

Holmes v. Potter, 384 F.3d 356, 362 (7th Cir. 2004) (same); Davis v. Henderson, 238 F.3d 420, 2000 WL 1828476, at *2 (6th Cir. 2000) (unpublished table decision) (FMLA claim against Postmaster General); Bowden v. United States, 176 F.3d 552, 555–56 (D.C. Cir. 1999) (breach of contract claim against United States); Crawford v. Runyon, 79 F.3d 743, 744 (8th Cir. 1996) (claim under 29 U.S.C. § 794 against Postmaster General); KLK, Inc. v. U.S. Dep't of the Interior, 35 F.3d 454, 456–57 (9th Cir. 1994) (claim under 16 U.S.C. §1910); Info. Res., Inc. v. United States, 996 F.2d 780, 783 (5th Cir. 1993) (claim under 26 U.S.C. §§ 7432–33); In re Young, 869 F.3d 158, 159 (2d. Cir. 1989) (per curiam) (claim under 39 U.S.C. § 401(1)); Washington Int'l Ins. Co. v. United States, 863 F.2d 877, 878–79 (Fed. Cir. 1988) (claim under 28 U.S.C. § 1876); York v. Russo, 835 F.2d 876, 1987 WL 24475, at *1 (4th Cir. 1987) (unpublished table decision) (ADEA claim against Defense Logistics Agency).

Plaintiffs concede that the second sentence of subsection 804(d) is phrased in the negative. Plaintiffs argue, however, that the negative structure parallels certain provisions of the Bill of Rights including the Second Amendment,[9] the Fourth Amendment,[10] and the Seventh

---

[9] The Second Amendment states:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const., amend. II.

[10] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

Amendment[11] and argue that the court should construe subsection 804(d) to affirmatively grant them the right to a jury trial. See [D.E. 66] 10.

The text of the Second, Fourth, and Seventh Amendments is materially different than the text of subsection 804(d). Moreover, the Second, Fourth, and Seventh Amendments are not subject to the corollary of the sovereign immunity clear statement canon and the other canons that apply in this case. As Lehman, Cooper Industries, and this court's textual analysis demonstrate, subsection 804(d) does not unequivocally, affirmatively, and unambiguously provide plaintiffs the right to a trial by jury in actions under subsection 804(b).[12]

## C.

The parties dispute how the history of tort litigation against the United States since the 1946 enactment of the FTCA should inform this court's analysis. The United States argues that the history of such tort litigation against the United States conflicts with reading the second sentence in subsection 804(d) of the CLJA to create the right to a jury trial for potentially hundreds of thousands of actions under subsection 804(b) of the CLJA in the Eastern District of North Carolina. See [D.E. 51-1] 5–6. According to the United States, Congress largely relied on the framework in 28 U.S.C. § 1346(b) in drafting the CLJA. See id. Part of that framework recognized

---

[11] The Seventh Amendment states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const., amend. VII.

[12] Plaintiffs also cite dicta in Judge Dever's opinion in Cline v. United States, No. 7:22-CV-141, 2022 WL 17823926, at *2 (E.D.N.C. Dec. 20, 2022) (unpublished), in support of their argument. See [D.E. 66] 19. Judge Dever disclaims that dicta. Cf. Henslee v. Union Planters Nat'l Bank & Tr. Co., 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting) ("Wisdom too often never comes, and so one ought not to reject it merely because it comes late.").

that when Congress created "a narrow exception to permit jury trials in tax refund cases . . . under 28 U.S.C. § 1346(a)(1)," Congress did so "[o]nly after much debate, and after the conferees became convinced that there would be no danger of excessive verdicts as a result of jury trials in that unique context—because recoveries would be limited to the amount of taxes illegally or erroneously collected—was the bill passed." Lehman, 453 U.S. at 161 n.8 (citation omitted).

Plaintiffs respond that Congress enacted the CLJA aware that the general presumption was that a plaintiff would not get a jury trial against the United States in an action under the FTCA and expressly acted to reverse that presumption by adding the second sentence of subsection 804(d) of the CLJA. See [D.E. 66] 13–16; cf. 28 U.S.C. § 2402 ("Subject to chapter 179 of this title, any action against the United States under section 1346 shall be tried by the court without a jury, except that any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury."). Plaintiffs also argue that the United States improperly asks the court to apply a "magic words" test to the CLJA and that the United States' argument ignores that Congress adopted some FTCA provisions in the CLJA but expressly failed to incorporate the express bar on jury trials in 28 U.S.C. § 2402. See [D.E. 66] 14–16 (discussing Amy Coney Barrett, Substantive Canons and Faithful Agency, 90 B.U. L. Rev. 109, 166–67 (2010)).

The parties' arguments about the history of tort litigation against the United States since the 1946 enactment of the FTCA miss the larger point. Congress could have made this dispute easy to resolve. Congress could have added a variant of the first sentence of 28 U.S.C. § 2402 and unequivocally, affirmatively, and unambiguously stated in a subsection of the CLJA entitled "Bench Trials In Actions Against The United States" a sentence: "Any action against the United State under subsection 804(b) shall be tried by the court without a jury." Likewise, Congress could

Case 7:23-cv-00897-RJ   Document 133   Filed 02/06/24   Page 29 of 34

have added a variant of the last clause of 28 U.S.C. § 2402 and unequivocally, affirmatively, and unambiguously stated in a subsection of the CLJA entitled "Jury Trials In Actions Against The United States" a sentence: "Any action against the United States under subsection 804(b) shall, at the request of either party to such action, be tried by the court with a jury."

Congress did not provide this court with such clarity in the CLJA. As discussed, however, Congress enacted the CLJA with the understanding that courts presume that Congress legislates in light of the Supreme Court's canons of construction. See, e.g., U.S. Dep't of Energy, 503 U.S. at 615; McNary, 498 U.S. at 496. Those canons of construction include the sovereign immunity clear statement canon and its corollary that "the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman, 453 U.S. at 160 (quotation omitted). And the text of the CLJA and those canons of construction provide the answer to the question of whether the CLJA unequivocally, affirmatively, and unambiguously provides plaintiffs the right to a trial by jury in actions under subsection 804(b) of the CLJA. The answer to that question is that the CLJA does not.

As for plaintiffs' argument that the United States improperly seeks to impose a "magic words" test, the court rejects the argument. In the article by then-Professor Barrett that plaintiffs cite, Professor Barrett extensively discussed "The Sovereign Immunity Clear Statement Rules" and observed that Justice Story, federal courts, and American treatise writers identified this "principle of statutory interpretation" from the founding. Amy Coney Barrett, Substantive Canons and Faithful Agency, 90 B.U. L. Rev. at 145, 148. Professor Barrett also discussed the unbroken Supreme Court precedent holding that it "would only interpret a statute to waive federal sovereign immunity where the express language or necessary implication of the statute evidenced Congress's intent to accomplish that result." Id. at 149–50. Professor Barrett closed by observing that given

the age of the rule, "it would be inaccurate to characterize the sovereign immunity clear statement rule as having been fashioned from whole cloth in the twentieth century." Id. at 150. It is "better understood as a conscious application of a time-honored rule of sovereign exemption to a new kind of incursion on sovereignty." Id. Thus, far from applying a "magic words" test in this case, the United States and this court properly rely on an unbroken sovereign immunity clear statement canon and its corollary that have applied since the founding.

## D.

The parties dispute how legislative history should inform the court's analysis. The United States argues that "[g]iven the plain language of [subsection] 804(d) and the applicable legal principles, there is no need to resort to legislative history." [D.E. 51-1] 6. The United States also observes that "'legislative history generally will be irrelevant' in determining whether sovereign immunity has been waived because such a waiver must be 'unmistakably clear in the language of the statute.'" Id. (quoting Dellmuth, 491 U.S. at 230 (citation omitted)); see Lehman, 453 U.S. at 165. Thus, the United States argues that plaintiffs cannot use legislative history to help show whether the CLJA's text unequivocally, affirmatively, and unambiguously grants plaintiffs the right to a jury trial. See [D.E. 51-1] 6.

Alternatively, the United States argues that the CLJA's legislative history does not reflect an unequivocal, affirmative, and unambiguous right to a jury trial. See id. In support, the United States notes that one of the members of the House of Representatives who wrote and introduced the CLJA stated that the CLJA permits claims against the United States "under the Federal Tort Claims Act," which does not permit a jury trial. Id.; see [D.E. 34] 10; 28 U.S.C. § 2402. The United States also notes that Representative Cartwright (a co-sponsor of the CLJA in the House) co-sponsored a separate piece of legislation on July 31, 2014, entitled the "Service Members

Access to Justice Act of 2014." See [D.E. 84] 5; [D.E. 84-1]. In that proposed legislation (unlike in the CLJA), Representative Cartwright unequivocally, affirmatively, and unambiguously provided the right to a trial by jury against sovereign States. See [D.E. 84-1] 9 ("A person who commences an action under this section shall be entitled to a trial by jury."); id. at 3–4 (creating cause of action against a State and waiving a State's sovereign immunity).

In discussing the CLJA's legislative history, the United States acknowledges that the United States Department of Justice submitted "Technical Assistance" to the Senate Committee on Veterans Affairs before Congress enacted the CLJA. See [D.E. 51-1] 6 n.2. In that Technical Assistance, the Department of Justice advocated for an alternative "no-fault compensation scheme" instead of the CLJA and identified several concerns about litigating CLJA action in federal court. [D.E. 51-2] 2–5; see [D.E. 84] 10. Those concerns included a statement in one section of the Technical Assistance commenting on the CLJA and initially stating:

> While the bill aims to make recovery more likely by removing certain federal defenses and lowering relevant burdens, the bill still requires those injured . . . to first file administrative claims with the Department of Defense, then file a lawsuit in district court, then prove causation and damages (potentially before a jury), and then withstand a potential appeal.

[D.E. 51-2] 3 (emphasis added). Later, the Technical Assistance stated:

> [W]e worry that Section 706, as currently drafted, would result in differing recoveries to similarly situated plaintiffs. Especially if damages awards are to be decided by a jury, as the statute contemplates, it is likely that litigation will produce a broad range of remedial outcomes even among plaintiffs who have suffered similar harms.

Id. (emphasis added). The Technical Assistance then discussed the resource drain that the CLJA would have on plaintiffs, the Department of Justice, and the Eastern District of North Carolina. See id. at 4. The Technical Assistance then advocated for a non-adversarial compensation program for those injured at Camp Lejeune. See id. at 4–5.

Plaintiffs cite the Technical Assistance and argue that the legislative history "confirm[s]" that Congress intended the second sentence of subsection 804(d) to create the right to a jury trial for actions filed under subsection 804(b) of the CLJA. [D.E. 66] 17–18. Plaintiffs also note that on November 1, 2023, which is over one year after the CLJA became effective, Congressman Cartwright and Congressman Murphy (both House co-sponsors of the CLJA) entered a statement in the Congressional Record that "'it has always been our intent for the [CLJA] to stand separate and apart from the [FTCA] in all respects,' including by providing a right to a jury trial against the United States." [D.E. 51-1] 7 (quoting 169 Cong. Rec. E1036 (daily ed. Nov. 1, 2023)); see [D.E. 66] 16, 19–20.

The United States responds that its "preliminary" and "imprecise[]" assumptions in the Technical Assistance conflicted with "pre-enactment statements from [House] Members that the CLJA permits claims against the United States" under the FTCA. [D.E. 51-1] 6 n.2 (citing [D.E. 34] 10); cf. 28 U.S.C. § 2402. The United States also argues that "absent unambiguous text, 'recourse to legislative history is futile.'" Id. (quoting Dellmuth, 491 U.S. at 240). Finally, the United States argues that the court should not consider Congressman Cartwright and Congressman Murphy's "post-enactment legislative history," because "by definition, [it] 'could have had no effect on the congressional vote.'" [D.E. 51-1] 7 (emphasis omitted) (quoting Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011)).

The court has considered the parties' arguments about legislative history. As in Lehman, the court need not "go beyond the language of the statute itself to conclude that Congress did not intend to confer a right to trial by jury on [CLJA] plaintiffs proceeding against the Federal Government." Lehman, 453 U.S. at 165. Alternatively, even if the court considers the legislative history, the court finds it ambiguous. Moreover, the court declines to rely on the CLJA's

ambiguous legislative history to determine whether the CLJA's text unequivocally, affirmatively, and unambiguously provides plaintiffs the right to a jury trial in actions seeking relief under subsection 804(b). Cf. Conroy v. Aniskoff, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) (observing that the reliance on legislative history resembles a person who enters "a crowded cocktail party" and looks for friends). Likewise, the post-enactment legislative statements of Congressman Cartwright and Congressman Murphy are "not a legitimate tool of statutory interpretation," and the court declines to rely on them. United States v. Woods, 571 U.S. 31, 48 (2013) (quotation omitted); see Bruesewitz, 562 U.S. at 242.

IV.

In sum, the court GRANTS defendant's motion to strike the jury trial demand in plaintiffs' master complaint [D.E. 51].

SO ORDERED. This _1_ day of February, 2024.


RICHARD E. MYERS II
Chief United States District Judge


TERRENCE W. BOYLE
United States District Judge


LOUISE W. FLANAGAN
United States District Judge


JAMES C. DEVER III
United States District Judge