IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: | ) |
| CAMP LEJEUNE WATER LITIGATION | ) |
| | ) |
| This Pleading Relates to: | ) |
| ALL CASES | ) |

### PLAINTIFFS' LEADERSHIP GROUP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF CERTAIN DIGITIZED MUSTER ROLLS

The Plaintiffs' Leadership Group ("PLG") respectfully requests that the Court grant the Motion to Compel Production of Certain Muster Rolls.

### INTRODUCTION

The PLG recognized early on that, in a case with the scale and magnitude as this, it would be necessary to streamline certain processes. A central process to the case involves establishing each individual plaintiff's time and location on base. How this is accomplished is determined by the period of time the Marine was at Camp Lejeune. Starting in July 1975, the Defense Manpower Data Center ("DMDC") began digitally recording the information necessary to determine if and where a Marine was stationed at Camp Lejeune from 1975 to 1987. Plaintiffs have this dataset and use it on a daily basis as it dramatically streamlines the process.

Unfortunately, such a process does not benefit those Marines whose time on base was prior to July 1975. Currently the only method to determine when and where a Marine was prior to July 1975 is by reviewing the plaintiffs' individual military record. These records vary in size from less than a dozen pages to hundreds of pages in length while the quality ranges from readable to unreadable. The file review can range from minutes to hours. In an attempt to identify if there was

an alternate method available, the PLG became aware of what the Navy and United States Marine Corps ("USMC") refer to as "muster rolls."

Muster Rolls are quarterly or monthly reports of personnel attached to a particular unit or station and have been used by the USMC since 1798. Muster rolls typically contain the surname, given name, and middle initial of each individual, and may also contain an individual's rank, service number, and enlistment date. Muster rolls are especially important to Camp Lejeune Justice Act ("CLJA") litigation, because they represent the only collective data source available for those Marines who were stationed at Camp Lejeune from 1953 to 1975. Having access to digitized muster rolls would allow the plaintiffs to perform both individual and batch searches of those Marines who were at Camp Lejeune prior to July 1975 and would allow duplication of what is now being done with the post-1975 ATSDR Cohort data.

Conveniently, the USMC and the Veteran's Administration ("VA") recently partnered on a muster roll digitization project specifically related to Camp Lejeune. The digitization project took place from 2013 to 2015 and involved the digitization of almost 61 million pages of muster rolls generated from 1940 to 2005 and specific to Camp Lejeune (the "Project"). The critical importance of these digital files to the CLJA litigation is self-evident.

The PLG's First Set of Requests for Production, RFP No. 3, specifically referenced the Project and requested production of all digitized muster rolls generated during that Project. To date, the government has failed to produce these digitized muster rolls. On January 30, 2024, the parties participated in an inspection of a Network Attached Storage ("NAS") in Quantico, Virginia, but unfortunately, that inspection revealed that the NAS probably did not contain the pertinent digitized muster rolls. The PLG requests that the Court enter an order compelling production of the digital muster rolls generated by the Project. To the extent that the Project generated a database

2

Case 7:23-cv-00897-RJ   Document 141   Filed 02/20/24   Page 2 of 10

of information that made the muster rolls searchable, the PLG asks the Court to compel production of the database too.

## FACTUAL AND PROCEDURAL BACKGROUND

I. **The USMC and VA's Digitization of Camp Lejeune Muster Rolls in 2013-2015.**

According to the U.S. National Archives and Records Administration ("NARA"), "Marine Corps Muster Rolls . . . are quarterly or monthly reports of personnel attached to a particular unit or station."[1] NARA indicates that muster rolls typically include the following information:

> Muster rolls typically contain the surname, given name, and middle initial of each individual, and may also contain an individual's rank, service number, and enlistment date. Marine Corps Muster Rolls contain lists of both officers and enlisted personnel, with officers listed first, and include notes on personnel movement and changes.

Accordingly, the presence of a Marine's name on a muster rolls will help tie that servicemember to a specific unit located at Camp Lejeune at a specific time. Attached hereto are several examples of USMC muster rolls from Camp Lejeune. [Ex. 1].

NARA possesses several categories of muster rolls. For example, "1798-1958 Marine Corps Muster Rolls . . . have now been digitized and are available online through a partnership with Ancestry.com."[2] Those muster rolls are publicly available and highly usable and can even be searchable by a Marine's name.

As a general rule, "[t]he 1959 to 1980 Marine Corps Muster Rolls are still only available on microfilm."[3] There is an impractical procedure mandated by NARA for accessing these muster

---

[1] *NARA*, Marine Corps Muster Rolls (last visited on Feb. 16, 2024), https://www.archives.gov/research/military/marine-corps/muster-rolls.
[2] *Id.*
[3] *Id.*

3

rolls. Furthermore, since these muster rolls are on microfilm, they are not searchable or practical for use in this CLJA litigation.

However, there is a substantial body of digitized muster rolls that are unique to Camp Lejeune. Attached as Exhibit 2 is a "VA/DoD Joint Executive Committee Annual Report" from Fiscal Year 2014 (the "2014 Joint Report"). According to the 2014 Joint Report,

> The DHWG facilitated the coordination of the VA and the USMC to determine the availability of personnel and housing records of Marines and family members who **lived at Camp Lejeune from 1957 to 1987**. Verification of residence needs to be done, one at a time, on a case-by-case basis. . . . In March 2014, VHA and the Veterans Benefits Administration (VBA) signed a Memorandum of Understanding (MOU) on retrieval of Veteran records from the National Personnel Records Center (NPRC) in St. Louis. VBA staff work at the NPRC to pull thousands of records for disability claims annually, for Veterans of all eras. The MOU enabled VHA to request VBA staff to retrieve records of Veterans who lived at Camp Lejeune. The Marine Corps has kept attendance lists of names through 1971 called **muster rolls**, totaling over **five million names**. **In late 2013, the USMC started to computerize the muster rolls of Service members who were stationed at Camp Lejeune during the 1950s to 1971.** There are about 59 million pages of records to be computerized. This work should take about 18 months, at which time the USMC **will share the database** with VA.

[Ex. 2, at pp. 9-10 (emphasis added)].

Further details about the Project were shared in a "VA/DoD Joint Executive Committee Annual Joint Report" from Fiscal Year 2015 (the "2015 Joint Report"). [Ex. 3]. According to the VA and Department of Defense's 2015 Joint Report,

> The USMC worked with VA and identified DoD databases that could provide **historical residence data at Camp Lejeune**. The USMC kept attendance lists of names, called **muster rolls**, and has started **digitizing the muster rolls for the period of 1940 to 2005**. Almost 61 million pages of records will be digitized in December 2015 **and will enable the USMC to perform searches for individual Veterans for VA**.

[Ex. 3, at p 13 (emphasis added)].

4

According to the above-quoted Joint Reports, the Project involved the (a) digitization of muster rolls (b) specifically related to Camp Lejeune (c) covering the period of 1940 to 2005 (d) spanning 61 million pages of records (e) that are searchable for individual service members.

## II. The PLG's Efforts to Obtain the Digitized Muster Rolls Generated by the Project.

The PLG's First Request for Production of Documents (the "First Request") was served on September 28, 2023. [D.E. 81-2].[4] Request No. 3 specifically identified the Project and requested the digitized muster rolls resulting therefrom:

> 3. Please produce the ESI, as defined herein, and data created as a result of the digitizing of the 61 million pages of USMC Camp Lejeune Muster Rolls representing over 5 million unique Service Members who were stationed at Camp Lejeune from the 1950s to 1971 which was performed by the USMC via contract beginning in 2013 and completed by December 2015 based on the 2013, 2014, and 2015 VA/DoD Executive Committee Annual Reports.

[D.E. 81-3, at p 6].[5]

In response to this specific request for the digitized muster rolls generated from the Project, the government indicated that it was encountering technological problems with accessing the records. For example, in a letter of January 12, 2024, the government stated that "the United States Marine Corps is continuing its efforts to access the previously digitized muster rolls," and "[t]he United States is receiving weekly updates relating to these efforts and will continue to share the updates with Plaintiffs as the work proceeds." [Ex. 4, at p 2]. In the same letter, the government indicated that the muster roll images requested by Request No. 3 and related to the Project were

---

[4] For purposes of correcting a few non-substantive typographical errors, the PLG served a Corrected First Set of Request for Production on October 4, 2023. [D.E. 81-3].

[5] The PLG withdrew the above-quoted request for electronically stored information—*i.e.*, electronic data that must be searched for and identified. At present, the PLG only requests the specific digital muster rolls generated during the Project.

located on a NAS in Quantico. In an email of January 23, 2024, the government acknowledged that "Request 3 relates to muster rolls from the 1950s-71, which are in the possession of the Marine Corps," and further stated that "the USMC has agreed to meet with Plaintiffs in Quantico on January 30 to review the legacy system in person." [Ex. 5].

Therefore, the parties met in Quantico on January 30, 2024 to inspect the NAS on which the digital muster rolls generated by the Project were allegedly stored. The meeting was not fruitful. A lawyer present at the meeting for the PLG, Kevin R. Dean ("Mr. Dean"), memorialized the events of the meeting in emails to the government of February 1 and February 3, 2024. [Exs. 6 & 7] In short, the NAS in Quantico seemingly did not actually possess the muster rolls digitized pursuant to the Project. Mr. Dean reported as follows:

> The inspection in Quantico incontestably revealed that the referenced NAS does not contain the digitized muster rolls sought by Request No. 3. In fact, the Marine personnel present during the inspection and involved in the retrieval operation were flummoxed by our belief that the NAS might store the requested digitized muster rolls. A simple conversation between the Department of Justice and the Marines involved with the NAS would have immediately disclosed that the NAS was irrelevant to the PLG's discovery requests. It is difficult to understand why this issue was not revealed months ago.

[Ex. 6].

Following the inspection in Quantico, the PLG has repeated asked the government to state the location of the digitized muster rolls generated during the Project. For instance, in an email of February 3, 2024, Mr. Dean stated as follows:

> Finally, and most importantly, your below email did not answer the principal question in my February 1, 2024 email, namely the following: **What is the location of the digitized muster rolls sought by Request No. [3]? Please do not force us to file a motion to compel this information known to exist.**

6

[Ex. 7 (emphasis in original)].

The government may finally take the position that the NAS contained the digitized muster rolls created by the Project. In fact, the government recently promised to provide the PLG with a copy of the contents of the NAS. At present, the PLG has not received that copy.

## ARGUMENT

**I.  The Court Should Compel Production of the Digitized Muster Rolls Generated During the Project.**

The PLG requested the digitized muster rolls generated during the Project on September 28, 2023—*i.e.*, 146 days ago. [D.E. 81-3, at p 6]. The digitized muster rolls generated during the Project are clearly relevant and discoverable. Indeed, the government has already promised to produce whatever digital muster rolls are on the NAS. The Court should compel that this production be made immediately.

**II.  The Court Should Require the Government to Produce any Database Generated during the Project.**

The 2015 Joint Report stated that the Project "will enable the USMC to perform searches for individual Veterans for VA." [Ex. 3, at p 13]. Such searches would most likely be run through a database of the key contents of the digitized muster rolls. Indeed, the 2014 Joint Report described how the Project will involve creation of a "database." [Ex. 2, at p 10].

The receipt of 61 million pages of digital muster rolls is of little use if the files are not searchable by name. Therefore, to the extent it exists, the PLG respectfully requests that the Court compel the government to produce any database or other data necessary to render the muster rolls searchable by name. There are numerous cases throughout the country recognizing that, where the functionality of native files is important, the files may be produced in native format. *See Laub v. Horbaczewski*, 331 F.R.D. 516, 527 (C.D. Cal. 2019) ("the drafters of Rule 34(b)(2)(E) expected

7

that parties producing electronically stored information would provide it in a form that permitted 'text searching technologies, like filtering, grouping, and ordering' so that the requesting parties could organize it themselves"); *Freeman v. Deebs-Elkenaney*, No. 22-CV-2435, 2023 U.S. Dist. LEXIS 48942, at *1 (S.D.N.Y. Mar. 22, 2023) ("'if ESI is kept in an electronically-searchable form, it should not be produced in a form that removes or significantly degrades this feature.'" (*quoting Zhulinska v. Niyazov L. Grp., P.C.*, No. 21-CV-1348, 2021 U.S. Dist. LEXIS 219213, at *6 (E.D.N.Y. Nov. 12, 2021)).

## **CONCLUSION**

For the foregoing reasons, the PLG requests that the Court grant the present motion.

*[Remainder of Page Intentionally Left Blank]*

DATED this 20th day of February, 2024.

| | |
|---|---|
| */s/ J. Edward Bell, III*<br>J. Edward Bell, III (admitted *pro hac vice*)<br>Bell Legal Group, LLC<br>219 Ridge St.<br>Georgetown, SC 29440<br>Telephone: (843) 546-2408<br>jeb@belllegalgroup.com<br><br>*Lead Counsel for Plaintiffs* | */s/ Zina Bash*<br>Zina Bash (admitted *pro hac vice*)<br>Keller Postman LLC<br>111 Congress Avenue, Suite 500<br>Austin, TX 78701<br>Telephone: 956-345-9462<br>zina.bash@kellerpostman.com<br><br>*Co-Lead Counsel for Plaintiffs and Government Liaison Counsel* |
| */s/ Elizabeth J. Cabraser*<br>Elizabeth J. Cabraser (admitted *pro hac vice*)<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br>ecabraser@lchb.com<br><br>*Co-Lead Counsel for Plaintiffs* | */s/ W. Michael Dowling*<br>W. Michael Dowling (NC Bar No. 42790)<br>The Dowling Firm PLLC<br>Post Office Box 27843<br>Raleigh, North Carolina 27611<br>Telephone: (919) 529-3351<br>mike@dowlingfirm.com<br><br>*Co-Lead Counsel for Plaintiffs* |
| */s/ Robin L. Greenwald*<br>Robin L. Greenwald (admitted *pro hac vice*)<br>Weitz & Luxenberg, P.C.<br>700 Broadway<br>New York, NY 10003<br>Telephone: 212-558-5802<br>rgreenwald@weitzlux.com<br><br>*Co-Lead Counsel for Plaintiffs* | */s/ James A. Roberts, III*<br>James A. Roberts, III<br>Lewis & Roberts, PLLC<br>3700 Glenwood Ave., Ste. 410<br>Raleigh, NC 27612<br>Telephone: (919) 981-0191<br>jar@lewis-roberts.com<br><br>*Co-Lead Counsel for Plaintiffs* |
| */s/ Mona Lisa Wallace*<br>Mona Lisa Wallace (N.C. Bar No.: 009021)<br>Wallace & Graham, P.A.<br>525 North Main Street<br>Salisbury, North Carolina 28144<br>Tel: 704-633-5244<br>mwallace@wallacegraham.com<br><br>*Co-Lead Counsel for Plaintiffs* | |

## CERTIFICATE OF SERVICE

I, J. Edward Bell, III, hereby certify that the foregoing document was electronically filed on the Court's CM/ECF system on this date, and that all counsel of record will be served with notice of the said filing via the CM/ECF system.

This the 20th day of February, 2024.

> /s/ J. Edward Bell, III
> J. Edward Bell, III