# EXHIBIT 3



January 8, 2024

**Via Email**

Adam Bain
Adam.Bain@usdoj.gov
Sara J. Mirsky
Sara.J.Mirsky@usdoj.gov
Patrick J. Ryan
Patrick.J.Ryan@usdoj.gov
Joseph Turner
Joseph.B.Turner@usdoj.gov
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washinton, D.C. 20044

   **Re:**  *In re* **Camp Lejeune Water Litigation**

Dear Counsel:

   I am writing to confirm our discussion held at noon on January 5, 2024 concerning the status of Defendant United States of America's document production. Additionally, I am writing to propose a compromise to resolve the Plaintiffs' Leadership Group's (the "PLG") Motion to Compel (D.E. 81) and Defendant's Cross-Motion for Protective Order (D.E. 93).

   During the subject meet and confer, the PLG was represented by myself, Kevin Dean and Matt Quinn. Present for the government were Sara Mirsky, Patrick Ryan and Joseph Turner. We discussed each individual request for production within the PLG's First, Second, Third, Fourth and Fifth Sets of Request for Production. Based on this meet and confer, the PLG's understanding of the status of Defendant's document production appears below.

   **Corrected First Set of Request for Production**

   **Request No. 1: Datasets Held by ATSDR.** This request sought production of six (6) identified databases. Subject to the issues addressed in the next paragraph, all responsive databases have been produced.[1]

---

   [1] At the beginning of the meet and confer, the parties agreed that our discussion was without prejudice to request additional documents as being responsive to an individual request in the event that the PLG learns that responsive documents have not been produced.

Following our meet and confer, two issues were identified concerning the government's production of datasets. The first issue involves the CONFIDENTIAL - 1975thru1987_DMDC_Marines database. Based on the PLG's review, it appears that this dataset has been filtered to only include those Marines who spent time at Mainside. There are no entries for those Marines who were stationed at Camp Geiger, Camp Johnson or Courthouse Bay. The PLG would like the entire dataset so there is a complete record of each service member's time at Camp Lejeune. The second issue involves the CONFIDENTIAL - Survey_dataset, which is the data from the 2011 ATSDR survey. Our understanding is that this dataset is the basis for the April 2018 Morbidity Study of Former Marines, Employees, and Dependents Potentially Exposed to Contaminated Drinking Water at U.S. Marine Corps Base Camp Lejeune. After working with the data since it was made available, our consultants and experts have not been able to duplicate the numeric data listed in many of the tables in the 2018 report, thereby leading us to conclude that there have been at least one and possibly more filters applied to the data in our possession. The issues with these two datasets are one of the driving forces in requesting the entire ATSDR project files, as discussed more fully below.

**Request Nos. 2 & 3: Muster Rolls.** Request No. 2 sought the digitized muster rolls from 1940 to 1958. Defendant previously produced documents responsive to Request No. 2. However, the parties previously discussed that some muster rolls may not have been provided by Ancestry.com and therefore may not have been produced to the PLG. *See, e.g.*, PLG's letter of November 3, 2023; *see also* Defendant's letter of November 8, 2023. You agreed to make inquiries for purposes of ensuring that any gaps in the production responsive to Request No. 2 have been addressed.

Request No. 3 requested digitized muster rolls between 1950 and 1971. The PLG's understanding is that the Marine Corps, through its technology consultants, is attempting to access and produce these muster rolls from a "NAS" (*i.e.*, a Network Attached Storage System). You indicated that the government will give an update early next week concerning these efforts. Further, the government is willing to set up a meeting to discuss these issues between the parties' respective technology experts.

During the meet and confer, the PLG indicated its understanding that, as part of the above-referenced digitization projects, certain data would have been created (the "Muster Roll Data"). The Muster Roll Data will likely only consist of the following fields: name, rank, muster date, service number, MOS and unit/station. The Muster Roll Data would be stored in tabular format. The tabular format would be similar to a spreadsheet, with the data organized in a table with rows and columns. Both the Ancestry.com and VA/DOD project should have the Muster Roll data in this format. If the Muster Roll Data is produced, and the data covers all muster rolls, and that data proves accurate, the PLG may not need any image versions of the muster rolls themselves. You agreed to investigate whether the Muster Roll Data exists.

While not discussed during the meet and confer, the PLG requests some clarification concerning the current scanning project being performed by the USMC. Specifically, we request a statement of what the end product will look like, including whether it will include data output to tabular format. Additionally, the PLG needs a definitive and final timeline for production and/or

the ability to informally question the contractor working on this project to fully understand current status.

**Request No. 4: MDL Production.** The present request sought all documents produced in prior MDL litigation involving Camp Lejeune. With exception of documents withheld on the basis of privilege, Defendant indicated that all responsive documents have been produced. Defendant previously indicated that it was evaluating its assertion of certain privileges and may produce further responsive documents. The government stated that it would follow up with a status update about the potential reassessment of certain privilege objections.

**Request No. 5: Deposition Transcripts.** Request No. 5 requested the deposition transcripts from prior civil actions involving allegations of injury due to exposure to contaminated water at Camp Lejeune. Defendant is making efforts to obtain exhibits 1 and 2 from the deposition of Ingrid Perez-Jacir. Otherwise, Defendant indicated that all responsive documents have been produced.

**Request No. 6: Written/Recorded Statements.** This request sought written and recorded statements concerning contamination at Camp Lejeune. Defendant has produced certain declarations and expert reports, but Defendant has objected to the production of additional statements on the grounds that it would be burdensome to investigate and obtain the same. During the meet and confer, Defendant stated that it was not aware of any written or recorded statements that have not been produced.

**Request No. 7: CLW Database.** The present request sought production of the CLW database. Other than documents withheld on the basis of privilege, Defendant stated that all responsive documents have been produced. The government also stated that all documents withheld on the basis of privilege appear on its previously produced privilege logs.

**Request No. 8: Documents/ESI Possessed by ATSDR.** Request No. 8 requested unredacted copies of all documents related to any ATSDR publication, report, or study concerning water contamination issues at Camp Lejeune. On January 6 and 8, 2023, the parties will participate in an in-person inspection of certain boxes of documents described during the recent Rule 30(b)(6) deposition of the ATSDR. Further, the government is working to collect the files referenced on Exhibit 4 to the said ATSDR deposition. All parties agreed that the PLG's request for the files on Exhibit 4 does not constitute a request for Electronically Stored Information ("ESI") because the request is for specific documents or electronic files. The government also stated that, if requested, it would attempt to prioritize the production of specific files reflected on Exhibit 4.

As discussed below, the PLG proposes a compromise to resolve the parties' disputes concerning the government's document productions. That compromise involves the production of the ATSDR's "water modeling" and "health effects" complete project files. Among other things, this compromise would close any outstanding issues concerning the government's response to Request No. 8.

**Request No. 9: Housing Records.** This request sought production of certain housing records. Defendant indicated that all responsive documents have been produced.

**Request No. 10: Underground Storage Tank ("UST") Program Records.** Request No. 10 requested production of the UST program records. Defendant has made certain hardcopy files available for inspection. Moreover, the government indicated that it is working to produce additional responsive documents. The PLG requested that the government provide a target date for the production of these outstanding documents, and the government stated that it would follow up with a status update.

**Request No. 11: Veteran Affairs ("VA") Records, Files, Guidelines, and Decisions.** This request sought production of certain guidelines, standards and related documents for the award of VA benefits as a result of the contaminated water at Camp Lejeune. Defendant has produced documents responsive to this request, and the government indicated that it is presently evaluating whether additional responsive documents exist. The PLG requested that the government provide a target date for the production of any outstanding documents, and the government stated that it would follow up with a status update. The PLG indicated that, during the Rule 30(b)(6) deposition of the VA, certain hardcopy documents may have been disclosed. The government agreed to investigate.

**Request No. 12: Freedom of Information Act Requests.** This request has been withdrawn.

**Request No. 13: National Research Council ("NRC") Publications, Reports or Studies.** This request sought production of NRC publications, reports or studies concerning Camp Lejeune. Defendant has not produced responsive documents because the NRC has taken the erroneous position that it is a private entity, unaffiliated with the government, and therefore not required to make a document production. However, during our meet and confer, the PLG indicated that the government's prior letters stated that it was evaluating whether certain agencies may possess responsive documents. *See* Defendant's letter of November 27, 2023. The government agreed to investigate and follow up.

**Request No. 14: Government Accountability Office ("GAO") Reports or Studies.** Request No. 14 requested production of certain reports or studies by the GAO concerning the contaminated water at Camp Lejeune. Defendant produced some responsive documents. However, the GAO has taken the erroneous position that it is a private entity, unaffiliated with the government, and therefore not required to make a document production. Therefore, responsive documents possessed specifically by the GAO have not been produced. Defendant's initial response to Request No. 14 indicated that it was asserting certain privileges, including the Speech and Debate Clause of the U.S. Constitution. Notwithstanding those assertions of privilege, the government indicated that the GAO's above-referenced referenced position is the basis for the lack of document production.

**Request No. 15: Environmental Protection Agency ("EPA") Publications, Reports, or Studies.** This request sought production of certain EPA publications, reports or studies of the

contamination at Camp Lejeune. Defendant has produced documents responsive to this request. However, the government stated that it possesses additional responsive documents that are presently being reviewed for privilege. The PLG requested that the government provide a target date for the production of any outstanding documents, and the government stated that it would follow up with a status update. Finally, Defendant indicated that it has withheld from production certain documents, but that the government is presently evaluating those privilege objections and therefore may produce further responsive documents.

**Request No. 16: Department of the Navy ("DON") Third-Party Vendors.** Request No. 16 requested DON documents concerning the investigation of water quality at Camp Lejeune by third-party vendors or consultants. Previously, Defendant indicated that certain documents were publicly available. However, during our meet and confer, the government stated that there are additional responsive documents that have not been produced. The PLG requested that the government provide a target date for the production of any outstanding documents, and the government stated that it would follow up with a status update.

**Request No. 17: LANTDIV's (Atlantic Division Naval Facilities Engineering Command) Camp Lejeune Documents.** This request sought production of certain documents concerning Camp Lejeune possessed by LANTDIV. The parties recently conducted an in-person inspection of responsive hardcopy documents. Defendant stated that there may be additional responsive documents that have not been produced. The PLG requested that the government provide a target date for the production of any outstanding documents, and the government stated that it would follow up with a status update.

**Request No. 18: Documents Supporting the Government's Denial of Allegations in the Master Complaint.** Request No. 18 requested that the government produce documents supporting its denial of the allegations in the PLG's Master Complaint. Defendant has not produced any documents responsive to this specific request, although some documents produced in response to other requests may overlap with Request No. 18. During the parties' meet and confer, the government confirmed that it will produce responsive documents that it will rely on and use in the present litigation.

**Request No. 19: Records Concerning Track 1 Plaintiffs**. This request sought the government's documents concerning the Track 1 Plaintiffs, including military records, VA records, and medical records. Defendant stated that the production of these documents will begin promptly once the PLG provides the pertinent HIPAA forms, social security numbers and VA releases.

**Request No. 20: Logbooks, Databases or Base Passes Concerning Entry of Civilians.** Request No. 20 requested the production of logbooks, base passes, or other documents tracking the entry of civilians into Camp Lejeune. Defendant has objected that the present request as overly broad and declined to produce any documents whatsoever. The PLG agreed to evaluate the government's position and potentially offer to reduce the scope of the present request. We will follow up promptly.

## Second Set of Request for Production

**Request Nos. 1-7: Studies.** Request Nos. 1-5 sought production of studies—and related documents and correspondence—performed or commissioned by the government, states, or third parties concerning the impacts to human health of the chemicals in the water at Camp Lejeune. Request No. 6 sought production of studies and peer-reviewed literature concerning the Track 1 diseases that the government may use to contest causation, and finally, Request No. 7 sought production of documents concerning any studies that Defendant may use to contest causation for the Track 1 diseases. Defendant has not produced any documents responsive to these specific requests, although some documents produced in response to other requests may overlap with Request Nos. 1-7.

As discussed herein, the PLG proposes a compromise to resolve the parties' disputes concerning the government's document production. That compromise involves the production of the ATSDR's "water modeling" and "health effects" complete project files. Among other things, this compromise would close any outstanding issues concerning the government's response to Request Nos. 1-7.

### Third Set of Request for Production

**Request No. 1: Document Retention Policies.** This request sought production of document retention policies for several enumerated governmental agencies. Defendant stated that it has produced all responsive documents in its possession, custody or control.

**Request No. 2: Hold Notices.** Request No. 2 requested certain document hold notices. Defendant objected that such hold notices are not discoverable and declined to produce any documents.

### Fourth Set of Request for Production

**Request Nos. 1-4: The "Yale" Case Documents.** These requests sought production of the "subject matter expert program" documents produced by the government in the "Yale" case. Next week, the government will receive a hard drive of documents that, hopefully, will contain the same records produced in the Yale case. Assuming the hard drive contains the same documents, the government will provide the same to the PLG promptly. The government has declined to re-assess redactions made in the Yale document production, however, the government's understanding is that the redactions were limited to personally identifiable information. In any event, the government agreed to evaluate specific redactions brought to its attention by the PLG.

### Fifth Set of Request for Production

**Request Nos. 1 & 2: Hydration Guidelines and Documents.** These requests sought production of certain historical hydration guidelines and related documents. Defendant has produced some responsive documents, and Defendant is presently investigating the existence of additional responsive documents. The PLG requested that the government provide a target date for

the production of any outstanding documents, and the government stated that it would follow up with a status update.

**Request Nos. 3 & 4: Utilities Chief MOS and Water Support Technicians.** Request Nos. 3 & 4 sought production of documents sufficient to identify Utilities Chief MOS and Water Support Technicians from 1953 to 1987. Defendant has produced responsive documents for the period of 1971 to 1987, and Defendant is investigating the existence of additional responsive documents. The PLG requested that the government provide a target date for the production of any outstanding documents, and the government stated that it would follow up with a status update.

**Request No. 5: Vapor Intrusion Studies.** This request sought production of vapor intrusion studies by CH2M Hill and related documents. This request contained subparts (a) through (d), and Defendant previously produced documents responsive to each subpart with exception of subpart (d). Defendant is investigating the existence of additional responsive documents, particularly responsive to subpart (d). The PLG requested that the government provide a target date for the production of any outstanding documents, and the government stated that it would follow up with a status update.

### Proposal to Resolve Certain Discovery Disputes

Numerous outstanding responsive documents involve the ATSDR, including Request No. 8 within the Corrected First Set of Request for Production and Request Nos. 1-7 within the Second Set of Request for Production. As a means of satisfying these requests, the PLG asked the government to simply produce the ATSDR's "water modeling" and "health effects" complete project files.

With that context, the PLG proposes the following compromise. We propose that the government produce the ATSDR's "water modeling" and "health effects" complete project files, and if anything is removed for privilege, we further ask that a detailed privilege log be provided promptly. If the government commits to making such a production within a reasonable period of time, the PLG will agree that the said production satisfies Request No. 8 within the Corrected First Set of Request for Production and Request Nos. 1-7 within the Second Set of Request for Production. Additionally, the PLG would agree to withdraw its Motion to Compel (D.E. 81), provided that the government withdraws its Cross-Motion for Protective Order (D.E. 93).

For clarity, this arrangement would not obviate the government's production of documents responsive to the First, Third, Fourth and Fifth Sets of Request for Production, and other ongoing supplementations already agreed too. For instance, the production of muster rolls would still be expected, and the PLG would still contend that the government's privilege logs are deficient. Also, this compromise would be without prejudice to seek further relief from the Court in the event that additional issues arise concerning the government's document production, or future discovery as new disease tracks are litigated.

### Conclusion

Please let me know if this letter's characterization of the pertinent meet and confer is inaccurate. Additionally, please let me know if the above-stated compromise is agreeable. As you know, the next status conference is scheduled for January 9, 2024. Therefore, we request a response to this proposed compromise before the status conference.

I am hopeful that we can work through these discovery issues in an effort to avoid seeking further relief from the Court.

With kindest regards, I am

Your very truly,

J. Edward Bell, III

cc:     Plaintiffs' Co-Lead Counsel