IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **ORDER** |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| Merritt v. United States, No. 7:23-CV-1367-D ) | |

On November 9, 2023, Deborah Merritt ("Merritt" or "plaintiff") moved for partial summary judgment [D.E. 41] and filed a memorandum in support [D.E. 42], a statement of material facts [D.E. 43], and an appendix [D.E. 44]. Merritt asks the court to hold that she qualifies as a "legal representative" who may bring an action under subsection 804(b) of the Camp Lejeune Justice Act of 2022 ("CLJA"). On December 7, 2023, the United States of America ("United States" or "defendant") responded in opposition [D.E. 71] and filed a statement of material facts [D.E. 72] and an affidavit in opposition [D.E. 73]. On December 21, 2023, Merritt replied [D.E. 94]. As explained below, the court grants Merritt's motion for partial summary judgment and holds that Merritt qualifies as a legal representative who may bring an action under the CLJA and that Merritt need not qualify as an ancillary administrator in North Carolina or open an estate in North Carolina to pursue relief under subsection 804(b) of the CLJA.

I.

In August 2022, Congress enacted and President Biden signed the CLJA. See Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04. On August 10, 2022, the CLJA became effective. Subsection 804(b) states that "[a]n individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or

was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." Id. § 804(b).

Merritt is the adult daughter of Colonel Richard Marsden ("Colonel Marsden"). See PSMF [D.E. 43] ¶ 1; DSMF [D.E. 72] ¶ 1. From July 6, 1964, to July 12, 1966, Colonel Marsden was stationed at Camp Lejeune. See [D.E. 44-3] 3. On March 24, 2023, Colonel Marsden, a Missouri resident, filed an administrative claim with the Navy under the CLJA. See PSMF ¶ 2; DSMF ¶ 2; CLJA § 804(h). On June 22, 2023, Colonel Marsden died. See PSMF ¶ 3; DSMF ¶ 3. Colonel Marsden's adult daughter and his spouse survived him. See DSMF ¶ 5. Missouri probated Colonel Marsden's will, and on July 28, 2023, the 21st Judicial Circuit Court in St. Louis County, Missouri, issued letters testamentary to Merritt. See PSMF ¶ 4; DSMF ¶ 4. In the letters testamentary, the Missouri court appointed Merritt as personal representative to administer Colonel Marsden's estate. See [D.E. 44-5]. On October 3, 2023, Merritt filed an action as the "legal representative" of Colonel Marsden seeking "appropriate relief" under subsection 804(b) of the CLJA. See [D.E. 1].[1]

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary

---

[1] This citation is to Merritt's individual case, case number 7:23-CV-1367-D.

2

judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248-49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for the factfinder to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

"An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District

3

Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." CLJA § 804(b) (emphasis added). The CLJA does not define a "legal representative." Thus, the court begins with the text and reviews the plain meaning of "legal representative." See, e.g., Southwest Airlines Co. v. Saxon, 596 U.S. 450, 457–58 (2022); Facebook, Inc. v. Duguid, 592 U.S. 395, 402–04 (2021); Tanzin v. Tanvir, 592 U.S. 43, 48–49 (2020); Nat'l Coal. For Students With Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 289 (4th Cir. 1998). In doing so, the court examines dictionaries used when Congress enacted the CLJA. See, e.g., Allen, 152 F.3d at 289.

A "legal representative" is (1) a legal heir; (2) an executor, administrator, or other legal representative; or (3) someone who manages the legal affairs of another because of death. See Representative, Black's Law Dictionary (11th ed. 2019) (defining "legal representative" to include "lawful representative" or "personal representative"). This definition of "legal representative" comports with the definition adopted in non-CLJA cases. See, e.g., Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 80 (2d Cir. 2013) (analyzing the term "legal representative" in the Lanham Act); Gustafson v. zumBrunnen, 546 F.3d 398, 402 (7th Cir. 2008) (analyzing the term "legal representative" in 28 U.S.C. § 1332(c)(2) in a diversity action applying Wisconsin law); In re Casco Chem. Co., 335 F.2d 645, 651 (5th Cir. 1964) (analyzing the term "legal representative" in Federal Rule of Civil Procedure 60(b) in a bankruptcy appeal); Rock-Ola Mfg. Corp. v. Filben Mfg. Co., 168 F.2d 919, 922 (8th Cir. 1948) (analyzing the term "legal representative" in an action alleging a breach of a patent license contract); cf. Pan Two, 26 F. Supp. 990, 993 (D. Md. 1939) (holding that the term "personal representative" in the Jones Act includes "the lawfully and properly appointed executor or administrator of the decedent"). A "legal representative" is not necessarily restricted to the personal representative of one who is deceased,

4

but includes all "persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law." Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 597 (1886).

Merritt is the only person who claims to be Colonel Marsden's "legal representative" under the CLJA. Moreover, in light of the Missouri court's appointment of Merritt as Colonel Marsden's personal representative and the plain meaning of "legal representative," the court holds that Merritt is Colonel Marsden's "legal representative" under the CLJA.

In opposition to this conclusion, the United States argues that a genuine issue of material fact exists concerning whether Merritt or Colonel Marsden's surviving spouse is the appropriate "legal representative" under the CLJA. See [D.E. 71] 9. The United States speculates that Colonel Marsden's surviving spouse may be a more appropriate "legal representative" under the CLJA or the surviving spouse may not have waived her rights to be Colonel Marsden's "legal representative" under the CLJA. See id.

Article III requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." Carney v. Adams, 592 U.S. 53, 58 (2020); see Flast v. Cohen, 392 U.S. 83, 96–97 (1968). Federal Rule of Civil Procedure 56 does not permit a party opposing summary judgment to "create a genuine issue of material fact through mere speculation." Beale, 769 F.2d at 214; Fed. R. Civ. P. 56(c), (e). That another person may exist who may seek to serve as Colonel Marsden's "legal representative" under the CLJA or that unknown issues could arise in this case concerning Merritt are not "facts," much less materially disputed facts under Rule

5

56. See PSMF ¶¶ 1–2, 4; DSMF ¶¶ 1–2, 4.[2] Accordingly, the court rejects the United States' argument. Merritt is Colonel Marsden's "legal representative" under the CLJA.

B.

The United States argues that Merritt must qualify as an ancillary administrator in North Carolina and open an estate in North Carolina in order to have the capacity to file an action in the United State District Court for the Eastern District of North Carolina seeking relief under subsection 804(b) of the CLJA. See [D.E. 71] 6–7, 11–12. At its core, the United States relies on the generally accepted principle that appointment of an executor or administrator in one state has no extraterritorial effect, and that generally a non-resident executor or administrator can only sue in another state if that other state permits it. See id. at 11–12. Merritt disagrees with the United States' argument. See [D.E. 42] 13–18; [D.E. 94] 4–7.

The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. Federal Rule of Civil Procedure 81 does not create an exception for civil actions under subsection 804(b) of the CLJA. See Fed. R. Civ. P. 81.

As used in Federal Rule of Civil Procedure 17(a), "the real party in interest principle is a means to identify the person who possesses the right sought to be enforced." 6A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1542, at 469 (3d ed. 2010) (hereinafter "Wright & Miller"). Therefore, Rule 17(a) "directs attention to whether plaintiff has a significant interest in

---

[2] If the court ever has a case where two different people claim to be a decedent's "legal representative" under the CLJA, then the court will resolve the dispute. See, e.g., Futch v. Midland Enters., Inc., 471 F.2d 1195, 1195–96 (5th Cir. 1973) (resolving a dispute over who the proper "personal representative" was under the Jones Act and the Death on the High Seas Act); In re Cosmopolitan Shipping Co., 453 F. Supp. 265, 266–68 (S.D.N.Y. 1978) (same).

6

the particular action plaintiff has instituted." Id. In contrast, capacity to sue under Federal Rules of Civil Procedure 17(b) or 17(c) involves "a party's personal right to litigate in a federal court." Id.; see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA, 10 F.4th 87, 97 (2d Cir. 2021). Federal Rules of Civil Procedure 17(b) or 17(c) determine capacity to sue and generally are not "limited to" or "dependent on the character of the specific claim involved in the litigation." Wright & Miller, § 1542, at 469. "Thus it is possible to be the real party in interest [under Rule 17(a)] and yet lack capacity to sue [under Rule 17(b)]." Id.

"In determining who is the real party in interest when the court is exercising federal-question jurisdiction," a court must distinguish "between those federal statutes creating a substantive right of action and statutes that merely provide a federal remedy for what traditionally have been state causes of action." Wright & Miller, § 1544, at 488. Where a federal statute creates a "substantive right of action," then "federal law clearly governs" the Rule 17(a) inquiry. Id.; see In re Davis, 194 F.3d 570, 578 (5th Cir. 1999); Va. Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir. 1973) (Rule 17(a) requires the person who brings the action to possess the right to enforce the claim and to have a significant interest in the litigation. "Whether a plaintiff is entitled to enforce the asserted right is determined according to the substantive law.").

Subsection 804(b) of the CLJA creates Merritt's substantive right of action. See CLJA § 804(b). Thus, federal law governs the real party in interest inquiry under Rule 17(a). Moreover, under Rules 17(a)(1)(B) and 17(a)(1)(G), and in light of the Missouri court's appointment of Merritt as Colonel Marsden's personal representative to administer his estate and her status as Colonel Marsden's "legal representative" under subsection 804(b) of the CLJA, Merritt is the real party in interest under Rule 17(a) and possesses the right to file an action seeking relief under subsection 804(b) of the CLJA.

7

As for whether Merritt has the capacity to sue, the court analyzes Federal Rule of Civil Procedure 17(b)(3). See Fed. R. Civ. P. 17(b)(3). "Capacity [to sue under Rule 17(b)] has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest or is the real party in interest." Wright & Miller, § 1559, at 604. "Generally, capacity is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate and typically is determined without regard to the particular claim or defense being asserted." Id. Rule 17(b)(3) instructs the court to determine capacity to sue by examining "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3); see Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 129 (3d Cir. 2002); Johnson v. Helicopter & Airplane Servs. Corp., 404 F. Supp. 726, 729 (D. Md. 1975); La Salle Nat'l Bank v. Pa. R.R., 8 F.R.D. 316, 317 (N.D. Ill. 1948); Waltz v. Chesapeake & Ohio Ry., 65 F. Supp. 913, 914 (N.D. Ill. 1946). This court is located in North Carolina. Thus, the court examines North Carolina state law.

When the Federal Rules of Civil Procedure "refer to state law, the term 'law' includes the state's statutes and the state's judicial decisions." Fed. R. Civ. P. 81(d)(1). Accordingly, the court examines North Carolina law to determine whether Merritt has the capacity to sue. See Fed. R. Civ. P. 17(b)(3).

In examining North Carolina law, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of

8

the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

No North Carolina statute addresses whether a non-resident "legal representative" under the CLJA has the capacity to sue in the Eastern District of North Carolina seeking "appropriate relief" under subsection 804(b) or whether such a non-resident "legal representative" must first qualify as an ancillary administrator and open an estate in North Carolina to pursue such relief under subsection 804(b). Likewise, no decision of the Supreme Court of North Carolina or the North Carolina Court of Appeals addresses these issues. Accordingly, this court looks to the practice of other states.

The parties have not cited, and this court has not located, any state statutes, state Supreme Court decisions, or decisions of state Courts of Appeals addressing these issues. This court, however, has located a line of cases that helps to inform whether a non-resident "legal representative" under the CLJA must first qualify as an ancillary administrator and open an estate in North Carolina to pursue such relief under subsection 804(b). The line of cases involves the Federal Employers' Liability Act ("FELA"), codified at 45 U.S.C. §§ 51–60. The FELA governs the right of railroad employees injured or killed in the course of their employment through an

9

employer's negligence to sue the employer for damages. See 45 U.S.C. § 51. "[I]n the case of the death of such employee," the FELA makes the employer liable to the decedent-employees's "personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." Id. The FELA grants "concurrent" jurisdiction to district courts of the United States and "the courts of the several States." Id. § 56.

North Carolina courts have resolved numerous FELA actions. The Supreme Court of North Carolina, however, has never analyzed or resolved whether a non-resident "personal representative" under the FELA must first qualify as an ancillary administrator and open an estate in North Carolina to have the capacity to sue and pursue such relief under the FELA in the state or federal courts in North Carolina. The North Carolina Court of Appeals has not either.

Decisions from other state Supreme Courts go both ways on whether a non-resident "personal representative" under the FELA must first qualify as an ancillary administrator and open an estate in the state where the personal administrator files the FELA action to have the capacity to pursue a FELA action in that state or federal court. Compare Gulf, M. & N.R. Co. v. Wood, 146 So. 298, 300–01 (Miss. 1933) (Tennessee administratrix was decedent's "personal representative" under the FELA, and Mississippi law did not require the "personal representative" to have ancillary letters under Mississippi law or to open a Mississippi estate to seek relief under the FELA in state court in Mississippi), and Shaw v. Chicago & A.R. Co., 314 Mo. 123, 129–30, 282 S.W. 416, 418 (1926) (Illinois administratrix was decedent's "personal representative" under the FELA, and Missouri law did not require the "personal representative" to have ancillary letters under Missouri law or to open a Missouri estate to seek relief under the FELA in state court in Missouri), and Wells v. Davis, 303 Mo. 388, 401–04, 261 S.W. 58, 61–62 (1924) (same), with Brown v. Bos. & M.R. Co., 283 Mass.

10

192, 193–96, 186 N.E. 59, 60–61 (1933) (New Hampshire administratrix could not serve as decedent's "personal representative" under the FELA and pursue a FELA action in Massachusetts state court because Massachusetts law prohibited a non-resident administrator appointed in a foreign state to serve as the estate's "personal representative" in any other state).[3]

As for federal courts, some have held that a non-resident "personal representative" under the FELA need not first qualify as an ancillary administrator and open an estate in the state where the personal administrator files the FELA action to have the capacity to sue in federal court. For example, the United States Court of Appeals for the Sixth Circuit construed Tennessee law to permit a Kentucky administratrix to serve as a "personal representative" under the FELA and pursue a FELA action in federal court in Tennessee without obtaining ancillary letters under Tennessee law or opening an estate in Tennessee. See Anderson v. Louisville & N.R. Co., 210 F. 689, 691–93 (6th Cir. 1914); see also Waltz, 65 F. Supp. at 914–15 (construing Illinois law to permit an Indiana administratrix to serve as a "personal representative" under the FELA and pursue a FELA action in federal court in Illinois without obtaining ancillary letters under Illinois law or opening an estate in Illinois).

In Wood, the Supreme Court of Mississippi explained its rationale for concluding that Mississippi law did not require a Tennessee administratrix who was the decedent's "personal representative" under the FELA to have ancillary letters under Mississippi law or to open an estate in Mississippi to seek relief under the FELA in Mississippi state court. See Wood, 146 So. at 300. First, the Supremacy Clause of the United States Constitution makes the FELA the law in every

---

[3] Whether the Massachusetts Supreme Judicial Court would adhere to the holding in Brown is questionable in light of developments in Massachusetts law. See Bohl v. Leibowitz, 1 F. Supp. 2d 67, 69–70 (D. Mass. 1998). Nonetheless, for purposes of resolving this motion, the court assumes without deciding that Brown remains binding in Massachusetts.

11

state. See id. ("The federal statute controls in every substantive particular, and this includes, of course, the party in whom the cause of action is vested, and who alone is authorized to sue."); U.S. Const. art. VI, cl. 2; see also Mondou v. N.Y., New Haven & Hartford R.R., 223 U.S. 1, 57 (1912) ("When Congress, in the exertion of the power confided to it by the Constitution, adopted [the FELA], it spoke for all the people and all the states, and thereby established a policy for all."). Second, the FELA restricts "these suits to the personal representative to provide that a responsible person, officially designated as such by the local authorities, who are to be presumed to be well informed concerning the decedent's statutory beneficiaries, should be recognized as the plaintiff." Wood, 146 So. at 300. Thus, "when the plaintiff has shown . . . that he has been actually and legally designated as the statutory trustee [under the FELA] by a lawful appointment as the personal [representative] in the state, and in and by the court of that state, having competent jurisdiction to make the appointment, then the person so appointed may sue in this state under the [FELA], and . . . ancillary letters or a compliance with section 1723, Code 1930, is not necessary in such a case." Id. at 300–01. The Supreme Court of Missouri adopted the same rationale in Wells and Shaw. See Shaw, 314 Mo. at 129–30, 282 S.W. at 418; Wells, 303 Mo. at 401–04, 261 S.W. at 61–62. These conclusions make sense because the "personal representative" in such a FELA action does not appear for the benefit of the decedent's estate. Rather, the "personal representative" appears as a statutory trustee under the FELA. See, e.g., Lindgren v. United States, 281 U.S. 38, 41 (1930); Chicago, B. & Q. R. Co. v. Wells-Dickey Tr. Co., 275 U.S. 161, 162–63 (1927).

This court predicts that the Supreme Court of North Carolina would follow Wood, Wells, and Shaw and hold that North Carolina law does not require a non-resident "legal representative" under the CLJA to first qualify as an ancillary administrator in North Carolina and open an estate in North Carolina to pursue relief under subsection 804(b) of the CLJA. Rather, the Supreme Court

12

of North Carolina would recognize the effect of the Supremacy Clause and acknowledge that the CLJA is the law in North Carolina. The Supreme Court of North Carolina also would recognize that a non-resident "legal representative" under the CLJA is not relying on the extraterritorial effect of letters testamentary or letters of appointment from another state to pursue an action under the CLJA in the exclusive jurisdiction and exclusive venue of the United States District Court for the Eastern District of North Carolina. Rather, the non-resident "legal representative" is relying on the legal authority under the Supremacy Clause and the CLJA that Congress and this court have granted to that "legal representative" and is suing as a statutory trustee under the CLJA. As in Wood, in determining who qualifies as a "legal representative" for a decedent under the CLJA, this court accepts as very probative evidence that a state court of competent jurisdiction outside of North Carolina has appointed a person to serve as the administrator for the decedent. A non-resident "legal representative" under the CLJA need not qualify as an ancillary administrator or open an estate in North Carolina to pursue relief under subsection 804(b) of the CLJA.

In opposition, the United States argues that, under North Carolina law, a non-resident personal administrator lacks capacity to prosecute an action under the CLJA in her representative capacity without first qualifying in North Carolina as an ancillary administrator and opening an estate in North Carolina state court. See [D.E. 71] 6–7, 11–12. In support, the United States cites North Carolina General Statute § 28A-26-3, Davis v. Piper Aircraft Corp., 615 F.2d 606, 609–10 (4th Cir. 1980), Fennell v. Monongahela Power Co., 350 F.2d 867, 868–69 (4th Cir. 1965) (per curiam), and Cannon v. Cannon, 228 N.C. 211, 211–12, 45 S.E.2d 34, 34–35 (1947).

The court rejects the United States' argument. As for section § 28A-26-3, it is part of Chapter 28A of the North Carolina General Statutes. Chapter 28A governs the administration of decedents' estates. See N.C. Gen. Stat. §§ 28A-1-1 to 28A-29-5. Article 26 of Chapter 28A

13

addresses foreign personal representatives and ancillary administration. See id. §§ 28A-26-1 to 28A-26-9.

Section 28A-26-1 describes domiciliary and ancillary probate and administration. See id. § 28A-26-1. Section 28A-26-2 addresses payment of debt and delivery of property to a domiciliary personal representative of a non-resident decedent without ancillary administration in North Carolina. See id. § 28A-26-2. Sections 28A-26-1 and 28A-26-2 are not relevant to Merritt's capacity to sue in the Eastern District of North Carolina and seek relief under subsection 804(b) of the CLJA.

Section 28A-26-3(a) states, in part, that "[a]ny domiciliary personal representative of a nonresident decedent upon the filing of a certified or exemplified copy of letters of appointment with the clerk of superior court who has venue under G.S. 28A-3-1 may be granted ancillary letters in this State notwithstanding that the domiciliary personal representative is a nonresident of this State." Id. § 28A-26-3(a) (emphasis added).[4] Section 28A-26-3 does not require a non-resident personal

---

[4] N.C. Gen. Stat § 28A-3-1 provides:

The venue for the probate of a will and for all proceedings relating to the administration of the estate of a decedent shall be:

(1) In the county in this State where the decedent was domiciled at the time of the decedent's death; or

(2) If the decedent had no domicile in this State at the time of death, then in any county wherein the decedent left any property or assets or into which any property or assets belonging to this estate may have come. If there be more than one such county, that county in which proceedings are first commenced shall have priority of venue; or

(3) If the decedent was a nonresident motorist who died in the State, then in any county in the State.

N.C. Gen. Stat. § 28A-3-1.

14

representative of a non-resident decedent to open an estate in North Carolina state court in order to file an action in the Eastern District of North Carolina seeking relief under subsection 804(b) of the CLJA. See id. § 28A-26-3. Rather, section 28A-26-3 permits such a non-resident personal representative to seek such ancillary letters in North Carolina. See id.

Section 28A-26-4 addresses bond requirements for those who receive ancillary letters of administration in North Carolina. See id. § 28A-26-4. Section 28A-26-4 does not address Merritt's capacity to sue in this case.

Section 28A-26-5 states that "[t]he domiciliary personal representative of the nonresident decedent after qualifying as ancillary personal representative in this State is authorized to administer the North Carolina estate of the nonresident decedent in accordance with the provisions of this Chapter." Id. § 28A-26-5. Section 28A-26-5 does not address the antecedent question of how a non-resident personal representative of a non-resident decedent qualifies as a "legal representative" to pursue a CLJA action in the Eastern District of North Carolina.

Section 28A-26-6(a) addresses the authority of a domiciliary personal representative of a non-resident decedent to "invoke the jurisdiction of the courts of this State after qualifying as ancillary personal representative in this State." Id. § 28A-26-6(a) (emphasis added). The Eastern District of North Carolina is the exclusive jurisdiction and venue for CLJA actions. See CLJA § 804(d). Thus, section 28A-26-6(a) does not address Merritt's capacity to sue in this case.

Section 28A-26-6(b) recognizes that a domiciliary personal representative of a non-resident decedent submits to the jurisdiction of the courts of this State:

(1) As provided in G.S. 1-75.4, or
(2) By receiving payment of money or taking delivery of personal property under G.S. 28A-26-2; or
(3) By acceptance of ancillary letters of administration in this State under G.S. 28A-26-3; or

15

> (4) By doing any act as personal representative in this State which if done as an individual would have given the State jurisdiction over the personal representative as an individual.

N.C. Gen. Stat. § 28A-26-6(b). Even without opening an estate in North Carolina state court, Merritt submits to the personal jurisdiction of the North Carolina state courts and the personal jurisdiction of this court by virtue of her status as a "legal representative" under the CLJA.

Section 28A-26-7 provides that "[a] court of this State having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in G.S. 28A-26-6 may exercise personal jurisdiction over a defendant by service of process in accordance with the provisions of G.S. 1A-1, Rule 4(j)." Id. § 28A-26-7. Even without opening an estate in North Carolina, a North Carolina state court and this court can exercise personal jurisdiction over Merritt as a "legal representative" under the CLJA by service of process under the Federal Rules of Civil Procedure and the North Carolina Rules of Civil Procedure. See Fed. R. Civ. P. 5; N.C. Gen. Stat. § 1A-1, Rule 5.

Section 28A-26-8 addresses the duties of a personal representative in an ancillary administration. See N.C. Gen. Stat. § 28A-26-8. Section 28A-26-8 does not address Merritt's capacity to sue in this case.

Section 28A-26-9 addresses remission of surplus assets by an ancillary personal representative to a domiciliary personal representative. See id. § 28A-26-9. Section 28A-26-9 does not address Merritt's capacity to sue in this case.

The court has reviewed Chapter 28A of the North Carolina General Statutes. The court rejects the United States' reliance on North Carolina General Statute 28A-26-3 to defeat Merritt's capacity to sue.

In Davis, the Fourth Circuit analyzed North Carolina's wrongful death statute in a diversity action. See Davis, 615 F.2d at 609–14. The Fourth Circuit applied North Carolina law and observed

that an action for wrongful death in North Carolina is "purely statutory." Id. at 610. Under North Carolina's wrongful death statute, only the "personal representative or collector of the decedent" can bring such an action. Id. (quoting N.C. Gen. Stat. § 28A-18-2). Moreover, under North Carolina's wrongful death statute, the "personal representative" must bring such an action in his "representative capacity." Id. (citing N.C. Gen. Stat. § 28A-18-3); see Graves v. Welborn, 260 N.C. 688, 690–91, 133 S.E.2d 761, 762–63 (1963). Furthermore, in order for a foreign executor or administrator to bring a wrongful death action under North Carolina law, North Carolina law requires the foreign executor or administrator first to have "qualified in North Carolina as [an] ancillary administrator." Davis, 615 F.2d at 610.

This case does not involve North Carolina's wrongful death statute. Thus, Davis does not help the United States.

As for Fennell, the Fourth Circuit analyzed West Virginia's wrongful death statute. See Fennell, 350 F.2d at 868–69. West Virginia's wrongful death statute does not apply in this case. As for Cannon, the Supreme Court of North Carolina analyzed North Carolina General Statute § 28-176, but the General Assembly repealed that statute in 1975. See Cannon, 228 N.C. at 211–12, 45 S.E.2d at 34–35. Thus, Cannon does not help the United States.

The authority that the United States cites does not support the conclusion that Merritt must first qualify as an ancillary administrator and open an estate in North Carolina in order to have the capacity to sue in this case. Having reached this conclusion based on its prediction of how the Supreme Court of North Carolina would address the issues in dispute, the court declines to address Merritt's argument that the court should rely on Briggs v. Pennsylvania Railroad, 153 F.2d 841, 842–43 (2d Cir. 1946), and hold that the reference to state law in Rule 17(b)(3) does not apply in federal-question cases. See [D.E. 94] 6. Because this court predicts that the Supreme Court of North

17

Carolina would interpret North Carolina law in a manner that acknowledges Merritt's capacity to sue, there is no conflict between state law and federal law. Moreover, as Wright and Miller note in discussing Briggs, construing Rule 17(b) not to require the "application of state capacity law to representatives in federal-question cases" ignores "that Rule 17(b)(3)(A) contains an express proviso to that effect for partnerships and unincorporated associations <u>but does not include representatives</u>." Wright & Miller, § 1565, at 649 (emphasis added).

Colonel Marsden was stationed at Camp Lejeune for over 30 days between July 6, 1964, and July 12, 1966. See [D.E. 44-3] 3. After the CLJA became law, Colonel Marsden filed an administrative claim with the Navy and exhausted his administrative remedies. See PSMF ¶ 2; DSMF ¶ 2; CLJA § 804(h). Colonel Marsden named Merritt as his executor in his will. After Colonel Marsden died, a Missouri court issued letters testamentary to Merritt and appointed her as Colonel Marsden's personal representative. See PSMF ¶ 4; DSMF ¶ 4; [D.E. 44-5]. She is his "legal representative" under subsection 804(b) of the CLJA and is the real party in interest under Rule 17(a). See, e.g., CLJA § 804(b); Fed. R. Civ. P. 17(a), (b)(3); Personal Representative, Black's Law Dictionary (11th ed. 2019) ("Someone who manages the legal affairs of another because of incapacity or death, such as the executor of an estate. Technically, an executor is a personal representative named in a will, while an administrator is a personal representative not named in a will.").

The United States has failed to produce "specific facts showing that there is a genuine issue for trial" concerning whether Merritt qualifies as a "legal representative" who may bring an action under the CLJA and has the capacity to sue under Rule 17(b)(3). Matsushita, 475 U.S. at 587 (quotation omitted); see Beale, 769 F.2d at 214. Merritt does qualify as Colonel Marsden's "legal representative" under subsection 804(b) of the CLJA, and she need not qualify as an ancillary

18

administrator or open an estate in North Carolina state court in order to have the capacity to sue. Accordingly, the court grants Merritt's motion for partial summary judgment.

III.

In sum, the court GRANTS plaintiff's motion for partial summary judgment [D.E. 41]. Plaintiff qualifies as Colonel Marsden's "legal representative" under subsection 804(b) of the CLJA and may bring an action seeking relief under the CLJA. Plaintiff NEED NOT qualify as an ancillary administrator in North Carolina or open an estate in North Carolina state court in order to have the capacity to sue. Chief Judge Myers, Judge Boyle, and Judge Flanagan concur in this order.

SO ORDERED. This 27 day of February, 2024.

JAMES C. DEVER III
United States District Judge