IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No: 7:23-cv-897 |
| | ) | |
| | ) | UNITED STATES' OPPOSITION TO |
| This Document Relates To: | ) | PLAINTIFFS' LEADERSHIP GROUP'S |
| ALL CASES | ) | MOTION TO COMPEL PRODUCTION OF |
| | ) | THE ATSDR'S WATER MODELING |
| | ) | PROJECT FILE IN NATIVE FORMAT |

I.      INTRODUCTION

The Court should deny Plaintiff Leadership Group's ("PLG") motion to compel because the requested information is being produced in compliance with a Stipulated Order and there is no appropriate basis to modify or disregard the Order. The United States is committed to producing information pursuant to the negotiated, agreed-to, and jointly submitted Stipulated Order Establishing Protocol for Document Collection and Production ("Protocol") [D.E. 52]. The United States is producing over 1.3 terabytes of data[1] in response to PLG's request for the Agency of Toxic Substances and Disease Registry's ("ATSDR") water modeling project files ("Project Files"), in addition to the publicly available scientific and technical inputs that are incorporated in ATSDR's water modeling reports (which have also been produced in this litigation).

While the United States acknowledges certain types of data within the Project Files may not be amenable to certain Protocol specifications, such data will be produced natively pursuant to the Protocol. Moreover, PLG has not shown that a "mirrored" hard drive would result in a production that replicates the functionality of ATSDR's files. If necessary, **certain subfolders** of data can quickly be produced "as is" if PLG identifies issues with specific files. Requiring the United States to produce **all** of the Project Files on a "mirrored" hard drive would lead to potential problems later in the litigation that can readily be avoided by adhering to the Protocol now.

Furthermore, PLG has not demonstrated good cause to modify or set aside the Protocol. PLG argues that because it prefers the Project Files on a "mirrored" hard drive, the Protocol should not apply. This argument is inconsistent with this Court's findings on the importance of enforcing ESI protocols. *See, e.g., Eshelman v. Puma Biotech., Inc.*, 2017 WL 2992095, at *3 (E.D.N.C. July

---

[1] This volume is nearly the equivalent of the contents of an **entire academic research library**. *See* Robert Sheldon, *"How many bytes for...,"* TECHTARGET, https://www.techtarget.com/searchstorage/definition/How-many-bytes-for (last visited Mar. 1, 2024).

13, 2017) (Jones, J.) ("[An ESI protocol is] the product of serious discussion and contemplation by two counseled parties and . . . reflects the interests of the parties . . . . Therefore, the court finds no reason to override the parties' agreement." (citations omitted)).

## II. BACKGROUND

The United States disagrees with PLG's characterizations of the history of the Parties' interactions regarding the applicable Requests for Production and the discussions over the Project Files. The Memorandum of Law in Support of the MTC ("Memo") [D.E. 143] is replete with mischaracterizations, over-generalizations, and hypothetical issues. Rather than engaging in a point-for-point rebuttal of PLG's statements, the United States highlights the following facts.

### A. The Structure, Size, and Content of the ATSDR Project Files.

ATSDR undertook the water modeling project to obtain "information about the volatile organic compounds (VOCs) in Camp Lejeune's groundwater and drinking water."[2] The study was limited to investigating the presence of VOCs.

As to the Project Files, PLG incorrectly characterizes the file contents. The United States has informed PLG that (i) the data within the files represent "project working files," (ii) the primary data underlying the ATSDR's study was publicly released with the report's publication, and (iii) this data has already been reproduced to PLG in this litigation.[3] PLG nonetheless argues that it is entitled to the entire Project Files on a "mirrored" hard drive because "the [Project Files do] not function unless produced in native format while also retaining the original folder/subfolder structure." (Memo at 5.). This generalization erroneously suggests that the Project Files solely consist of complex, interlinking GIS files. In fact—and as the United States has represented to

---

[2] ATSDR, *Water Modeling FAQs*, https://www.atsdr.cdc.gov/sites/lejeune/faq_water.html (last visited Feb. 25, 2024).
[3] As discussed at the January 23, 2024, status conference, the United States has produced "actual data that was relied on in performing the water modeling" via "discs with the reports." [D.E. 122, 22:23-23:25].

both PLG and the Court[4]—GIS files make up a small portion of the overall Project Files. (Joshua Wood Decl., Ex. 9, at ¶¶19-20). Rather than relying entirely on GIS files to function, the Project Files contain other kinds of modeling files and methodologies that incorporate specific types of input data and coding. *Id.*[5] PLG makes no mention of these other kinds of data and technical files that make up a large part of the Project Files. Indeed, much of this data has already been produced.

### B. The Parties' Early Discovery Negotiations and Submission of the Protocol.

The United States provided PLG with a draft ESI protocol on August 14, 2023. (Ex. 1). The Parties negotiated through e-mail and meet and confers over the subsequent months. (*See, e.g.,* Exs. 2-3). During this time, Bill Williams, PLG's e-discovery consultant, was working for PLG. (Memo, Ex. 1 at ¶2). On September 28, 2023, PLG served its First Set of Requests for Production ("First RFPs"), which encompasses PLG's request for the Project Files.[6] On October 26, 2023, the Parties jointly submitted the Protocol to the Court. [D.E. 32]. The Court entered the Protocol as Case Management Order No. 8 on November 21, 2023. [D.E. 52].

PLG made an informal request for the Project Files on January 8, 2024. (Memo, Ex. 3, at 7). This request was in response to the United States' objection to the overly broad Requests for Production, and specifically, to satisfy "Request No. 8 within the Corrected First Set of Request for Production and Request Nos. 1-7 within the Second Set of Requests for Production." *Id.* Notably, PLG's request did not specify a particular form of production, but ***did*** contemplate that

---

[4] D.E. 122 at 24:1-24:3 (The Project Files are "not data that's necessarily organized into discrete, clean little categories.").

[5] *See, e.g.,* ATSDR, *Analyses and Historical Reconstruction of Groundwater Flow, Contaminant Fate and Transport, and Distribution of Drinking Water Within the Service Areas of the Hadnot Point and Holcomb Boulevard Water Treatment Plants and Vicinities, U.S. Marine Corps Base Camp Lejeune, North Carolina, Chapter. A: Summary and Findings*, (March 2013), https://www.atsdr.cdc.gov/sites/lejeune/docs/chapter_A_hadnotpoint.pdf, at A1-A2 (listing "[m]ethods and approaches to complete the historical reconstruction process;" GIS is ***not*** a listed method or approach).

[6] *See* Ex. 4, at 11, Request No. 8 ("Please produce unredacted copies of all documents and ESI, as defined herein, relied upon by or in the possession, custody or control of the ATSDR related to any publication, report, or study concerning water contamination issues at Camp Lejeune, including drafts.")

the United States would review the materials for privilege. *Id.*

The United States made several proposals for production of the Project Files in a Protocol-compliant manner. For example, on January 26, 2024, the United States proposed:

> ATSDR [will] use the folder trees in the "project files" to ***identify folders that house data-related files and produce those immediately in a native format***. ***This would involve identifying near-parent folders that contain, or likely contain, data files (such as SAP or GIS files)***. . . . The United States would then have the remaining "non-data" files processed, reviewed, and produced on a rolling basis in compliance with the ESI Protocol. If any additional data files are uncovered during this process, they will be produced natively as well.

(Memo, Ex. 6, at 1) (emphasis added). This proposal would have allowed PLG to obtain the folders containing GIS files "as is," while permitting the United States to make Protocol-compliant production of "non-data" files. PLG refused to consider this proposal and instead called for the Project Files to be "turned over complete with no removals." (Memo, Ex. 7).[7]

### C. The United States' Rolling Production of the Project Files and the Parties' Negotiations as to the Form of Production.

Given PLG's refusal to engage in meaningful negotiations on production of the files and failure to specify a form of production, on February 9, 2024, the United States began to produce the Project Files in accordance with the Protocol.[8] (Ex. 5). To date, the United States has produced four of the eight parent-level folders and expects to complete production of the Project Files by March 27. (Ex. 9, at ¶26; Exs. 5-8). The United States is also working to identify folders that may

---

[7] PLG has not identified any issues related to GIS files that have already been produced. Further, PLG has represented that they have been able to access ATSDR's health study project file datasets produced according to the Protocol. During the final meet and confer on February 14, 2024, the United States requested that PLG provide specific examples of their concerns with production of the Project Files pursuant to the Protocol. PLG refused. Exhibit 2 to the Memo is the first detailed representation of any potential issues with GIS files in the Project Files, and even then, it is merely a hypothetical example and not based on prior Protocol-compliant productions.

[8] The United States acknowledges PLG has made various proposals for ad hoc bates stamping or tracking of the Project Files. None of these proposals would account for the most important part of bates stamping: to create a method of tracking the documents ***before*** they are produced. In any event, bates stamping documents is only one reason why making Protocol-complaint productions is crucial in this case.

4

benefit from a subsequent "as is" production pursuant to the Protocol. (*Id.* at ¶28.) The United States welcomes PLG's input into which folders should be prioritized for such productions.

III. LAW AND ARGUMENT

A. PLG has not Demonstrated Good Cause to Modify the Protocol.

The production of the Project Files should be made in accordance with the Protocol. Federal Rule of Civil Procedure 29 authorizes the entry of discovery stipulations as a court order. *See* Fed. R. Civ. P. 29(b). ESI protocols, especially when entered as an order, establish agreed-upon discovery procedures to "avoid downstream misunderstandings or disputes." Sedona Conference Principle 3, comment 3.c.[9] The Parties spent months negotiating the Protocol for that purpose. *See, e.g.,* Exs. 1-3. The United States did not "foist on plaintiffs a protocol about which plaintiffs had no input." *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 337 F.R.D. 610, 617 (D.N.J. 2020). Rather, the Parties negotiated the parameters within which discovery is to be conducted and jointly submitted the Protocol. In a case of this magnitude, compliance with the Protocol is critical to ensure that discovery, and the litigation, proceeds in an orderly fashion.

Stipulated discovery orders can only be modified upon a showing of good cause. *See* Protocol [D.E. 52] at ¶¶ 2, 9(c); *see also Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, 2017 WL 11535871 (E.D. La. Apr. 6, 2017). A good cause determination considers the nature of the discovery order, "the foreseeability, at the time of issuance of the order, of the modification requested," and "the parties' reliance on the order." *Id*. at *2 (quotations and markings omitted). The fact that the Parties stipulated to the Protocol weighs against finding good cause for modification. *See., e.g., In re: Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 2021

---

[9] "The Sedona Conference has created a framework for the best electronic discovery practices that attempts to account for both this evolving case law and new technologies. The Conference itself and its publications have been described as 'the leading authorities on electronic document retrieval and production.'" *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 239 n.25 (S.D. Cal. 2015) (internal citations omitted).

WL 7083238, at *4 (D. Md. Jan. 22, 2021). Likewise, a party's awareness of the kinds of discovery at issue when a protocol is negotiated counsels against finding good cause to modify the order. *In re Loc. TV Advert. Antitrust Litig.*, 2023 WL 5659926, at *6 (N.D. Ill. Aug. 31, 2023) (ordering modification of ESI protocol because "Plaintiffs could not have been aware of such highly relevant and discoverable information when they agreed to ESI search terms and document custodians").

Here, PLG was aware of the Project Files while negotiating the Protocol because PLG had served discovery requests encompassing the Project Files **before** the Protocol was entered. *See* Ex. 4. PLG has thus not demonstrated "changed circumstances or new situations" that amount to good cause for modification of the Protocol. *Parkcrest*, 2017 WL 11535871, at *3. Furthermore, PLG's e-discovery consultant, Mr. Williams, was working for PLG during the negotiations. (Memo, Ex. 1, at ¶2). PLG could have requested the Protocol provide for native production of "exotic" files if deemed necessary. *Accord Valsartan,* 337 F.R.D. at 618 ("Given the stakes in the case, the volume of ESI likely to be requested, and the fact Teva was consulting with TAR specialists in the fall, it was objectively reasonable for Teva to foresee in the fall, and certainly before the [ESI protocol] was entered, that it reasonably might use TAR in the future."). No such request was made.

Under the good cause standard, the Protocol cannot be disregarded because a party wishes to reconsider their earlier agreements. *See, e.g., Eshelman*, 2017 WL 2992095, at *3 ("The court assumes the agreement was the product of serious discussion and contemplation by two counseled parties and that it reflects the interests of the parties . . . . Therefore, the court finds no reason to override the parties' agreement."). Indeed, courts routinely require parties to abide by their negotiated discovery agreements: "Litigants should figure out what they are able to do before they enter into an agreement to do something. Litigants should live up to their agreements, especially when they are embodied in court orders, as the ESI Protocol is here." *In re StubHub Refund Litig.*,

2023 WL 3092972, at *2 (N.D. Cal. Apr. 25, 2023). Modifications should be granted only where an "agreement has become impossible to comply with" and only upon "a good showing that despite its best efforts," the terms cannot be followed. *Id.* PLG has not met this burden.

PLG has not made a showing of "good cause" to modify or disregard the Protocol. Despite having Mr. Williams as a consultant at the time it made its initial request for the Project Files, PLG did not originally request the files "as is" or indicate any problem anticipated in "reassembling" the Project Files once produced. Moreover, the United States has **never refused to produce GIS or other technical data natively**. (*See, e.g.,* Memo, Exs. 6, 9). Nor could it, because the Protocol provides a clear mechanism for producing non-standard ESI, such as GIS data, natively. *See* Protocol [D.E. 52] at ¶15(b). Against this backdrop, the United States has proceeded with production of the entirety of the Project Files in compliance with the Protocol.

Despite the United States' ongoing productions, PLG continues to make its request for the Project Files "as is," even though PLG acknowledges this runs afoul of the Protocol. Indeed, although the United States' proposals and productions comply with the Protocol and will provide PLG with the data to work with the Project Files (to the extent PLG has not already received such data), PLG vaguely states that "[t]o the extent necessary, the PLG moves the Court to amend the Protocol to the extent needed to permit production of the native project file." (Memo at 10). Rather than defining the contours of a proposed amendment, however, PLG seeks an impermissible, open-ended runaround of the Protocol without establishing good cause for any such modification.

Further, as detailed above, PLG has not identified the most responsive data or prioritized the production of specific subfolders. As such, the United States has proceeded in an efficient manner by processing the data and loading it to a review platform that facilitates identification of non-standard ESI. This process will result in production of all data in compliance with the Protocol.

7

Further, this method will allow production of non-standard data natively upon either PLG's ***specific*** request or subsequent identification by the United States. (Ex. 9 at ¶28.) These internal production determinations are not to be lightly set aside or interfered with. *See, e.g.*, *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 644 (S.D.N.Y. 2019) (subject to meet and confer obligations, "a producing party arguably could choose to adopt the ESI protocol it deems best aimed at locating relevant documents, consistent with its obligation under Rule 26. . . .").

### B. Absent this Showing of Good Cause, the United States Should Not be Compelled to Produce the Entirety of the Project Files in Native Format.

An order compelling production is unwarranted where the producing party has not refused to produce the information at issue. *See, e.g., Boykin Anchor Co. v. Wong*, 2011 WL 5599283, at *6 (E.D.N.C. Nov. 17, 2011) (denying motion to compel as to "documents produced or those Defendants have agreed to produce"). Therefore, the United States should be permitted to continue producing the Project Files in compliance with the Protocol, rather than as a Protocol non-compliant "mirror image" hard drive. *Accord Nader & Sons, LLC v. Namvar*, 2021 WL 4894273, at *4 (C.D. Cal. Apr. 22, 2021) (ordering the parties "to file a Joint Status Report on whether the [produced] PDF/TIFF file provides a complete response to Plaintiffs' Requests and what further relief would be necessary to provide Plaintiffs with complete responses to their Requests").

Not only is a "mirror image" native production of the Project Files contrary to the Protocol, it is also a significant deviation from well-established e-discovery practices.[10] *DR Distribs., LLC*

---

[10] The form of production provisions in Rule 34, upon which PLG relies, do not apply where the parties have agreed to an ESI protocol like the one here. *In re Actos Antitrust Litig.*, 340 F.R.D. 549 (S.D.N.Y. Mar. 30, 2022) ("Rule 34(b)(2)(E)(ii) only comes into play if the form of production is not otherwise stipulated or ordered by the court."). PLG's legal citations in support of producing the Project Files "as is" are likewise unavailing. In *Freeman v. Deebs-Elkenaney*, 2023 WL 4409861 (S.D.N.Y. Mar. 22, 2023), the court **denied** a motion to compel native files because the as-produced load files provided sufficient information and organization. *Id.* at *2-3. *Haywood v. Wexford Health Sources, Inc.*, 2021 WL 2254968 (N.D. Ill. June 3, 2021), and *Corker v. Costco Wholesale*, 2020 WL 1987060 (W.D. Wash. Apr. 27, 2020), involved the production of Excel spreadsheets as static PDFs. Converting Excel spreadsheets to PDFs rendered the data useless in those cases. The simple Excel spreadsheets at issue in those cases do not compare to the complexity of the technical portions of the Project Files here (which include native versions of Excel

8

Case 7:23-cv-00897-RJ    Document 151    Filed 03/01/24    Page 9 of 13

*v. 21 Century Smoking, Inc*, 616 F. Supp. 3d 769, 776 n.4 (N.D. Ill. 2022) (noting that resolution of a discovery dispute via an order to produce information natively was "unusual" and explaining that "[a]lthough some ESI should be produced in native format, the Court does not require all native production all the time, for obvious reasons"). Generally speaking, "[l]oad files should be obtained and provided in prearranged or standardized formats to ensure transfer of accurate and usable images and data." Sedona Conference Glossary, eDiscovery & Digital Information Management, 332 (5th ed. 2020). This is because, *inter alia*, "(1) TIFF documents can be Bates numbered and (2) redacted, and (3) it is harder, albeit not impossible, to alter data presented in TIFF inadvertently or deliberately." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 244 (S.D. Cal. 2015) (citing The Sedona Conference Principles).

The tracking and organizational tools in a load-ready production become even more important in a situation where a large volume of data stored in differing formats is implicated. The Parties must be able to easily reference documents and data in a consistent way for the duration of this litigation, which is likely to span many years and involve hundreds of lawyers, experts, and their staffs. Processing the data and assigning Bates numbers to TIFF images and native files facilitates organization and communication regardless of the duration of litigation or the familiarity of the receiving lawyer or expert with the original data production. Likewise, the Project Files are being produced subject to the Protective Order [D.E. 36] in this case because the files are likely to contain confidential information, such as sensitive well locations. The inability to mark **any** portion of these productions as confidential significantly undermines the aims of the Protective Order and increases the chances for future unauthorized disclosures in contravention of that Order.[11]

---

spreadsheets). In *Laub v. Horbaczewski*, 331 F.R.D. 516 (C.D. Cal. 2019), there was no stipulated ESI protocol in place. Further, the party in *Laub* demonstrated the lack of usability of the files in question. PLG has made no such demonstration here.

[11] PLG's request for a native production amounts to an impermissible "quick peek," a disfavored practice that courts

Finally, PLG has not demonstrated that a "mirrored" production of voluminous, complex data will provide them with the "functionality" they claim. The Project Files span years of scientific work that was completed years ago. Moreover, the Project Files were ***working*** files; the ***operative*** data and inputs are separately available as part of ATSDR's reports and have been available to PLG for years and were reproduced as part of the litigation. [D.E. 122, 22:23-23:25]. In these circumstances, it is far from clear that PLG's speculative functionality will come to bear even if a mirrored copy of the data is provided. The United States' proposal to comply with the Protocol and Protective Order is a reasonable path forward. It satisfies the United States' discovery obligations, especially given that the United States has already produced a significant amount of water modeling data and PLG has made no objection to its format. *See, e.g., D.R. Distribs.*, 616 F. Supp.3d at 776 n.4 ("The Court is mindful that discovery need not be perfect, only reasonable.").

As demonstrated, numerous reasons counsel in favor of processing and producing the Project Files according to the Protocol. Doing so will not cause undue delay, and PLG can request native production of subsets of technical data. Forcing an immediate "mirrored" production of the Project Files, however, will likely open the door to logistical and authenticity problems that could persist in the litigation for years. This is exactly what the Protocol seeks to prevent.

## IV. CONCLUSION

For all these reasons, PLG's Motion to Compel should be denied.

---

almost uniformly decline to order over a party's objection. *See Winfield v. City of New York*, 2018 WL 2148435, at *4 (S.D.N.Y. May 10, 2018) (citation omitted) ("Rule 502(d) does not authorize a court to require parties to engage in 'quick peek' and 'make available' productions and should not be used directly or indirectly to do so."). A quick peek procedure is also contrary to the 502(d) Order the parties negotiated and the Court entered. *See* D.E. 30 at ¶ 2. The United States is conducting a brief privilege review prior to the production of the Project Files. This is not causing delay of production, and the United States will conduct a more thorough privilege review following the productions' completion. Processing and producing the documents according to the Protocol will allow for the Parties to easily identify documents to be clawed back in accordance with the 502(d) Order based on searching and filtering abilities.

10

Dated: March 1, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

LEAH WOLFE
Senior Litigation Counsel, E-Discovery

ELIZABETH PLATT
Trial Attorney


  /s/ Sara J. Mirsky
SARA J. MIRSKY
NY Bar No. 5147590
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: sara.j.mirsky@usdoj.gov
Telephone: (202) 616-8362

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

# CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

                                        */s/ Sara J. Mirsky*
                                        SARA J. MIRSKY