IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | **UNITED STATES' PROPOSED** |
| ) | **DISCOVERY PLAN FOR TRACK 2** |
| This Document Relates To: ) | **ILLNESSES** |
| ALL CASES ) | |
| ) | |

Case Management Order No. 9 ("CMO 9") requires the parties "to submit, either jointly or separately, a proposed discovery plan for the Track 2 illnesses within 10 days" from the February 26, 2024, entry of CMO 9. Counsel for the United States and Plaintiffs met and conferred regarding proposals for a discovery plan for the Track 2 illnesses. D.E. 144. The parties disagreed on what discovery plan to propose and agreed to submit separate proposals.

**The United States Proposes a Discovery Plan for Track 2 Illnesses that Sequences Discovery to Prioritize Resolution of Common Issues and Avoid Unnecessary, Resource-Intense Discovery on Individual Plaintiffs.**

The Camp Lejeune Justice Act (CLJA) is a novel statute with many issues in dispute, including the appropriate evidence to establish causation. The procedures for Track 2 discovery should take this and lessons learned during Track 1 discovery into account in prioritizing issues to efficiently manage the cases and provide the parties with information to assess the strengths and weaknesses of the different types of claims included in the track. *See, e.g.*, Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass Tort MDLs* (2d ed. Sept. 2018), at 23 ("[B]ellwether trials are most beneficial if they: (a) produce decisions on key issues applicable to other cases in the proceeding (including on Daubert issues, cross-cutting summary-judgment arguments, and the admissibility of key evidence); and (b) help the parties assess the strengths and weaknesses of various types of claims[.]").

***Selection of Track 2 Discovery Pool Plaintiffs Should Begin After Track 1 Bellwether Trial Selection to Promote Efficient Use of Court and Expert Resources.***

The Court has stated that it intends to apply its holdings in Track 1 cases to subsequent tracks. D.E. 23 at 12, § XI.d. Because the CLJA is a new statute, it is likely that many issues central to Track 2 will be resolved through motions practice in Track 1. Therefore, selection of Track 2 Discovery Pool Plaintiffs should begin after these motions are decided; this will allow the Parties to assess which types of cases within Track 1 will best advance the goal of global resolution.

The Court should await the selection of Track 1 Bellwether Trial cases before beginning selection of Track 2 Discovery Pool Plaintiffs. This will allow the parties to efficiently use their experts for both tracks. The experts who opine on general causation are likely to specialize in epidemiology and toxicology, rather than on specific illnesses, thus the general causation experts on Track 1 illnesses could be the same witnesses who offer general causation opinions on Track 2 illnesses. *See generally Nix v. Chemours Co. FC*, No. 7:17-CV-189-D, 2023 WL 6471690, at *8 (E.D.N.C. Oct. 4, 2023) (quoting *Rhyne v. U.S. Steel Corp.*, 474 F. Supp. 3d 733, 743 (W.D.N.C. 2020) ("[i]t is well recognized that epidemiology usually provides the best evidence of general causation in toxic tort actions."). Having studied the chemicals at issue for Track 1, the general causation experts for Track 1 will be able to provide opinions regarding whether there can be a causal relationship between the chemicals and any Track 2 illness. Phasing Track 2 discovery so that general causation experts' work in Track 1 cases is largely completed will promote efficiency by enabling the Parties to use the same general causation experts in Track 2.

***Plaintiffs Eligible for Selection as a Track 2 Discovery Pool Plaintiff Should Only Include Plaintiffs Who Allege that Exposure to Camp Lejeune Water Caused Them to Develop A Track 2 Illness and Conditions Secondary to that Illness; It Should Not Include Plaintiffs Who Allege the Water Independently Caused Additional Illnesses.***

Allowing selection of Track 2 cases that involve non-Track 2 illnesses alleged to have been independently caused by exposure to water at Camp Lejeune would be inefficient. Because these

non-Track 2 illnesses will require expert testimony beyond Track 2 illnesses, those cases will be more complicated, more expensive to litigate, and take longer for the parties and for the Court to resolve. For settlement purposes, those cases are also less likely to yield useful information about the valuation of plaintiffs' claims involving Track 2 diseases because the harms from the Track 2 disease will be intermingled with harms from other diseases. Plaintiffs who are alleging multiple diseases independently caused by exposure to water at Camp Lejeune should therefore be ineligible for selection as a Track 2 Discovery Pool Plaintiff.

***Each Party Should Select Four Cases Per Track 2 Illness as Track 2 Discovery Pool Plaintiffs.***

The Parties should each select four cases as Track 2 Discovery Pool Plaintiffs because this number of cases will be sufficient to identify key issues which will facilitate global resolution. The United States previously suggested random case selections by the Court, D.E. 17-1 at 13, D.E. 17-3 at 1, D.E. 56 at 1, and remains convinced that some randomness would likely assist selection of representative plaintiffs, *see Manual for Complex Litigation (Fourth)* § 22.315, at 360 (2004); Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass Tort MDLs (2d ed. Sept. 2018) at 20, 26. But the practical challenges of conducting simultaneous general fact discovery in 100 Track 1 cases have underscored the importance of limiting the number of party-selected plaintiffs chosen for discovery. There are diminishing returns on additional Track 2 cases for global resolution because the number of novel issues in any one case decreases as other cases are resolved. Because both the United States' attorneys and plaintiffs' attorneys performing common benefit work must spend the same time and money preparing the one-hundredth Track 2 case as the fortieth Track 2 case, the marginal benefit of each additional Track 2 case decreases. It is important that the number of cases selected for Track 2 discovery be sufficient, but not greater than necessary, to allow the parties to assess the strengths and

weaknesses of issues relevant to Track 2 illnesses. *See id.* at 23. Each party should therefore be limited to four Track 2 Discovery Pool Plaintiff selections per illness.

***Discovery and Motions on General Causation Should Proceed Before Full Discovery on Individual Cases.***

Phasing Track 2 discovery to start after Track 1 discovery and general causation motion practice should lead to efficient and effective discovery focused on those cases where recovery is possible. As the Manual for Complex Litigation, explains, "[f]or effective discovery control, initial discovery should focus on matters—witnesses, documents, information—that appear pivotal. . . . Initial discovery may also be targeted at information that might . . . provide the foundation for a dispositive motion[.]" *Manual for Complex Litigation (Fourth)* § 11.422 at 54 (2004). *See also* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass Tort MDLs* at 5-7 (2d ed. Sept 2018); October 30, 2023, Hearing Tr. at 6-7 (Myers, J) (recognizing potential efficiency of determining general causation "before we spend a lot of attorney time and a lot of plaintiff time as well as the Government's time on individualized cases"). Determining general causation for the Track 2 illnesses is precisely the sort of "pivotal" issue that could "provide the foundation for a dispositive motion[,]" and eliminate the need for time-consuming and expensive discovery on individual cases. *Manual for Complex Litigation (Fourth)* § 11.422 at 54 (2004).

Plaintiffs previously opposed bifurcating general and specific causation. D.E. 58 at 4. They asserted that it "would not serve to advance the efficient administration of this case" because "details regarding plaintiffs matter" as in the case of "age at diagnosis, smoking history and family history" for some diseases. *Id*. But the exact opposite is true: if general causation cannot be established, or can only be established for plaintiffs at certain threshold exposure levels, then adjudicating general causation first can preclude categories of cases and allow subsequent

discovery to focus on identifying those individual plaintiffs who can establish the circumstances needed for general causation. This prevents needlessly wasting resources on broad specific causation discovery for individual plaintiffs who cannot establish general causation.

***During Adjudication of General Causation, All Track 2 Discovery Pool Plaintiffs Should Complete the Discovery Pool Plaintiff Form and Provide Information Needed to Identify and Collect Records.***

While the parties are conducting expert discovery on general causation, limited discovery can take place on all Track 2 Discovery Pool Plaintiffs so that the information needed to identify and produce their records will not be delayed for Plaintiffs who are able to establish general causation. This information should include the Discovery Pool Profile Form, PII, and releases, consistent with the usual requirements of Federal Rule of Civil Procedure 26(a)(1). *See* DE-91 at 3 (Magistrate Jones's Order granting DE-77, Defendant's Motion to Compel Production of Track 1 Plaintiffs' PII) ("Plaintiff's PII is best understood as falling under the [Fed. R. Civ. P.] 26(a)(2) initial disclosures umbrella, rather than information responsive to a specific discovery request.").

***The Fact Discovery Period for Track 2 Discovery Pool Plaintiffs Should Be 135 Days.***

Plaintiffs in Track 1 have repeatedly failed to identify all of their illnesses and treating providers in their Discovery Pool Profile Forms. Some of these failures can be explained by misunderstandings and memory failures. However, experience in Track 1 Plaintiff discovery has demonstrated that the process of identifying all of the relevant records and scheduling depositions of relevant treating providers can easily stretch to several months after the individual Plaintiff's deposition. Indeed, the United States is often unable to discover the identity of a key treating physician until a plaintiff's deposition. Once these additional treating providers are identified, the United States must request their records, and obtaining those records frequently takes over a month. The process for requesting a treating physician deposition also takes substantial time. For

this reason, even with a reduced number of Track 2 Discovery Pool Plaintiffs, a realistic minimum time for conducting relevant discovery is 135 days, which is less than four-and-a-half months.

**Details of the United States' Proposed Procedures for Track 2 Discovery**

The United States proposed the following detailed procedures for Track 2 discovery:

1. Opt-Outs

    a. Pursuant to the Court's Order [DE-156], all Plaintiffs who have a pending CLJA claim must file a Short Form Complaint by March 25, 2024.

    b. Any Plaintiffs who subsequently file a CLJA complaint must file a Short Form Complaint within 30 days of the filing of their Complaint.

    c. All Short Form Complaints must be populated, generated, and downloaded from the Rubris Crosslink platform prior to filing.

        i. If counsel has filed a short-form complaint that was not initially generated in Rubris, counsel must contact Crosslink support to ensure the short-form complaint is entered into Crosslink. Counsel may obtain access to the Rubris platform by emailing CrosslinkSupport@Rubris.com with the email subject "Camp Lejeune ECF and Form Management Crosslink Access." The email should list the name, law firm, and email address of each individual requiring access to the Crosslink platform, along with the name of the attorney or law firm representative who will serve as the administrator for the law firm's account.

d. Any Track 2 Plaintiff who elects to opt out of Track 2 Discovery must do so by April 15, 2024.

2. Selection of Track 2 Discovery Pool Plaintiffs

   a. Within 60 days of an order completing selection of Track 1 bellwether cases for trial, the Parties will each select 4 cases alleging a Track 2 illness as Track 2 Discovery Pool Plaintiffs and file their selections with the Court.

      i. Eligibility for selection as a Track 2 Discovery Pool Plaintiff is limited to cases alleging that exposure to water at Camp Lejeune directly caused only a Track 2 illness, meaning cases alleging that exposure to water at Camp Lejeune independently caused development of multiple illnesses are ineligible for selection as Track 2 Discovery Pool Plaintiffs. Cases alleging that a Track 2 illness, or its treatment, caused development of a non-Track 2 illness remain eligible for selection as a Track 2 Discovery Pool Plaintiff.

   b. Within 45 days of selection of Track 2 Discovery Pool Plaintiffs, each Track 2 Discovery Pool Plaintiff will provide to Defendant:

      i. Plaintiff's birth date and social security number;

      ii. If bringing a claim on behalf of a deceased Plaintiff, the deceased Plaintiff's death certificate;

      iii. If bringing a claim on behalf of a deceased Plaintiff, proof of legal representation of the deceased Plaintiff;

      iv. If the Plaintiff was the dependent of a member of the United States Armed Services during the time of alleged exposure to Camp Lejeune water, provide that Armed Services member's name, birth date, and social security number;

      v. Complete the Discovery Pool Profile Form including:

         1. VA 10-5345 (signed by Plaintiff, not attorney), Exhibit A;

         2. NARA SF-180, Exhibit B; and

      vi. Produce the following signed releases:

         1. General Medical Release, Exhibit C;

         2. SSA-750, Exhibit D.

3. Bifurcation of General Causation

   a. Within 90 days of an order completing selection of Track 1 bellwether cases for trial, Plaintiffs will disclose an expert opinion or opinions demonstrating that a Track 2 illness could be caused by exposure to the water Camp Lejeune as a matter of general causation. Plaintiffs will supply a disclosure for their experts meeting the requirements of Fed. R. Civ. P. 26(a)(2)(B).

   b. Within 45 days of the Plaintiffs' disclosures on general causation, the Defendant will disclose its expert opinions on general causation also meeting the requirements of Fed. R. Civ. P. 26(a)(2)(B).

   c. At an appropriate time, the Court and the Parties will discuss the schedule for submission of dispositive motions or on the general causation issue.

4. General Discovery for Track 2 Discovery Plaintiffs

a. General fact discovery in every Track 2 Discovery Pool Plaintiff's action may begin after orders on dispositive motions and *Daubert* motions have been issued for each Track 2 illness.

   i. Absent a showing of good cause or agreement of the Parties, Defendant will be allowed to take no more than three fact depositions (in addition to treating physicians) for any individual CLJA action. Absent a showing of good cause or agreement of the Parties, Plaintiffs will be unable to depose a current or former government employee more than one time.

   ii. The parties will complete general fact discovery within 135 days.

b. Remaining Expert Discovery

   i. Within 30 days of completion of fact discovery, Plaintiffs will disclose additional expert witnesses. *See* Fed. R. Civ. P. 26(a)(2)(B) & (C). Within 30 days of Plaintiffs' disclosure of their additional expert witnesses, Defendant will disclose its additional expert witnesses. *See id.* Within 15 days of Defendant's disclosure of their additional expert witnesses, Plaintiffs will disclose their rebuttal expert witnesses. *See id.* Within 45 days of Defendant's disclosure of its expert witnesses, expert discovery will close.

   ii. The Parties may take the deposition of any individual disclosed as an expert witness.

   iii. Absent agreement of the Parties or a subsequent Order of this Court, depositions will be conducted pursuant to the Federal Rules

of Civil Procedure and Case Management Order 3 (Stipulated Rule 30 Deposition Protocol), DE-28. The deposition of a witness may be used for any purpose appropriate under the Federal Rules of Civil Procedure and Federal Rules of Evidence for any Discovery Plaintiff's action.

5. Motion Practice Specific to Track 2 Plaintiffs

    a. At the appropriate time, the Court and the Parties will discuss the pretrial schedule for submission of dispositive on motions other than on general causation and for any other pretrial motions or other matters regarding Track 2 Discovery Pool Plaintiffs.

6. Track 2 Trials

    a. At the appropriate time, the Court and the Parties will discuss the selection of certain Track 2 Discovery Pool Plaintiff or Plaintiffs for Bellwether trial or trials.

7. Track 2 Alternative Dispute Resolution ("ADR")

    a. At the appropriate time, the Court and the Parties will discuss procedures for Track 2 ADR.

8. Procedures for non-Track 1 or Track 2 Illnesses

    a. To litigate efficiently the numerous CLJA actions that do not involve Track 1 or Track 2 illnesses, the Parties should be prepared to advance additional trial tracks promptly after the completion of General Fact Discovery for Track 2 Discovery Pool Plaintiffs.

    b. Additional Discovery Tracks

> i. At the appropriate time, the Court and the Parties will discuss the establishment of additional discovery tracks for Plaintiffs not covered by Track 1, Track 2, or Track 3.

9. Effect of Earlier Rulings

   a. Each United States District Court Judge on this Court intends to apply the holdings in Track 2 cases and ensuing Track cases to other parties who litigate their CLJA actions after Track 2 unless the Party shows cause why the Court's holdings should not apply.

Respectfully submitted March 7, 2024.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

ADAM BAIN
Special Litigation Counsel, Torts Branch
Environmental Torts Litigation Section

*/s/ Allison M.O'Leary*
ALLISON M. O'LEARY
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
U.S. Department of Justice
P. O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: allison.o'leary@usdoj.gov
Telephone: (202) 616-4231
Fax: (202) 616-4989

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2024, a copy of the foregoing document was filed via the Court's ECF system and served on counsel of record through the ECF system.

/s/Allison M. O'Leary
ALLISON M. O'LEARY
U.S. Department of Justice