IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: | ) |
| CAMP LEJEUNE WATER LITIGATION | ) |
| THIS PLEADING RELATES TO: | ) |
| ALL CASES | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY FOR APPEAL THE ORDER GRANTING THE UNITED STATES' MOTION TO STRIKE THE DEMAND FOR A JURY TRIAL**

As the Plaintiffs' Leadership Group (PLG) explained in its opening memorandum, the question whether the Camp Lejeune Justice Act (CLJA) authorizes jury trials for plaintiffs bringing claims under the statute meets the criteria for certifying an interlocutory appeal under 28 U.S.C. § 1292(b). That question "[1] involves a controlling question of law [2] as to which there is a substantial ground for difference of opinion," and "[3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

In response, the government does not dispute that the first and third criteria support an interlocutory appeal. *See* United States' Response to Plaintiffs' Motion to Certify for Appeal, ECF 153, at 1-2 (Mar. 4, 2024) ("Opp."). Indeed, the government "agrees that interlocutory appeal may be appropriate for difficult legal issues whose resolution would affect the tens of thousands of pending CLJA claims." Opp. 4. But the government claims implausibly that there exists no "substantial ground for difference of opinion" on the novel and critically important question of CLJA plaintiffs' right to trial by jury, even though the government itself had construed the same language to create a right to trial by jury while the CLJA was under consideration by Congress. *See* Order Granting Motion to Strike Jury Trial Demand, ECF 133, at 32 (Feb. 6, 2024) ("Order").

1

That is not defensible. As far as the PLG has determined, the Court's Order is the first time in U.S. history that a federal court has held that a statute creating a cause of action against the government and expressly referring to the right to a jury trial is insufficient to authorize jury trials. The Court's 34-page opinion and its extensive analysis of text and precedent demonstrate that the legal question is far from open and shut. Most notably, the Court accepted that its interpretation of the statute left Section 804(d)'s second sentence with almost no work to do. Order 21. Reasonable jurists could conclude that the Court's explanation for that sentence—that Congress intended to preserve the jury-trial right for time-barred third-party complaints or fraud claims against CLJA plaintiffs, Order 18-20—is too attenuated, especially since neither of those types of claims are created or governed by the CLJA. The Court's Order also acknowledged that *Galloway v. United States*, 319 U.S. 372 (1943), and *Pence v. United States*, 316 U.S. 332, 334 (1942), recognized a right to a jury trial even when Congress's intent was not clear in the text of the statute, Order 25; that the Department of Justice itself had originally construed the language of Section 804(d) to authorize jury trials, Order 32; and that congressional co-sponsors of the CLJA made clear after its enactment that they intended to authorize jury trials, Order 33. Taken together, those considerations could lead a reasonable jurist to reach a different conclusion from the Court.

Critically, the government does not dispute that "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case" and that the question here has overriding importance for all CLJA cases. 16 Fed. Prac. & Proc. § 3930; *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019), *on reh'g en banc*, 958 F.3d 274 (4th Cir. 2020), *cert. granted, judgment vacated sub nom. Trump v. District of Columbia*, 141 S. Ct. 1262 (2021) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)) ("'[D]istrict courts should not hesitate to certify an interlocutory appeal'

2

under § 1292(b) when a decision 'involves a new legal question or is of special consequence.'").[1] Nor does the government dispute that, given Section 1292(b)'s basic purpose to "provide more efficient disposition of" litigation, the two other factors counsel strongly in favor of certifying the jury-trial question for immediate appeal rather than wasting tremendous judicial and party resources in trials that the Court may eventually be required to redo with juries. *North Carolina ex rel. Howes v. W.R. Peele, Sr. Tr.*, 889 F. Supp. 849, 851-52 (E.D.N.C. 1995) (citing *Ford Motor Credit Co. v. S.E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981)).

In arguing that the novel jury-trial issue does not entail a "substantial ground for difference of opinion," the government essentially makes four related points—all of which are either mistaken or irrelevant.

*First*, the government argues that the second Section 1292(b) factor is not met where the parties do not disagree about the general principle of statutory construction that applies—here, the requirement under *Lehman v. Nakshian*, 453 U.S. 156, 160-69 (1981), that the intent to require jury trials be "unequivocally expressed." Opp. 3-4 (citing *Wyeth v. Sandoz, Inc.*, 703 F. Supp. 2d 508, 527 (E.D.N.C. 2010)). That is not correct. Novel questions of statutory interpretation are almost always subject to well-settled canons of construction or presumptions, such as the requirements to honor the plain language, avoid rendering statutory language superfluous, and construe waivers of sovereign immunity narrowly. But that does not mean that the purely legal question of how to construe statutory language can never be the proper subject of a Section 1292(b) certification.

---

[1] The government's discussion of *In re Trump*, 928 F.3d at 369, is misguided. Opp. 2. The PLG cited that case for the proposition that if the statutory criteria for certification are met, the court "shall"—*i.e.*, must—certify an order for appeal, as the text of Section 1292(b) commands. The PLG did not suggest that the Court lacks discretion when assessing the statutory criteria themselves.

3

Thus, courts have certified novel questions of statutory interpretation even where the applicable principles of construction are settled. *See, e.g.*, *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 553 (S.D.N.Y. 2013) (holding that interpretation of provision of copyright laws presented "a substantial ground for difference of opinion" in light of both legislative history and canon against surplusage); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, 2013 WL 663301, at *4 (D.N.J. Feb. 21, 2013) (finding "[s]ubstantial ground for a difference of opinion" arising from "novel and complex issues of statutory interpretation" involving "traditional canons of statutory construction," such as the plain-meaning canon, the canon against surplusage, and the presumption of consistent usage); *Hunter v. Debmar-Mercury LLC*, 2024 WL 64768, at *3-4 (S.D.N.Y. Jan. 5, 2024) (finding a "substantial ground for difference of opinion" based on the "ordinary meaning" of the key phrase in the statute according to Black's Law Dictionary, the statute's legislative purpose, and the "broader legislative history"). And nothing in this Court's analysis in *Wyeth* suggested such certification was improper. The government's position would mean that no decision denying a jury-trial right against the United States could be subject to interlocutory appeal so long as the district court invoked the language of *Lehman*, regardless of whether reasonable jurists could disagree about the proper construction of the statute at issue.

Moreover, the government pretends as if this Court just mechanically applied *Lehman*, but that is far from accurate. In reality, the Court looked to a wealth of precedent and employed numerous tools of statutory interpretation in resolving the question of first impression presented here. Order 7 ("Whether to strike plaintiffs' jury trial demand requires the court to examine the ordinary meaning of the CLJA's statutory text, to interpret specific provisions of the CLJA within their broader statutory context, and to apply certain canons of construction, which are presumptions about how courts ordinarily read statutes."). Indeed, the Supreme Court in *Lehman*

4

itself engaged in a comparative analysis between two different sections of the statute at issue rather than woodenly applying the "unequivocally expressed" standard. *Lehman*, 453 U.S. at 162. And this Court appeared to recognize that under *Galloway* and *Pence*, a statute can be construed to authorize jury trials against the government even if its text does *not* unequivocally express that intent; the Court merely distinguished those precedents on the ground that the CLJA did not involve a similar sequence of statutory amendments and legislative history. *See* Order 25. The government's simplistic summary of this Court's decision thus bears scant resemblance to what the Court actually said over the course of its 34 pages of analysis.

*Second*, and relatedly, the government says that certification is "not necessary whenever a court applies settled law to a new situation." Opp. 4. No one disputes that. But the issue here is not the application of a legal standard to a particular set of facts. Rather, it is a fundamental question about what sort of trials a new statute authorizes—an issue that will drastically influence the character and prosecution of the thousands of pending CLJA cases. The question is close because the statute expressly refers to the right to trial by jury, and the Court's opinion acknowledges that its interpretation gives that provision almost no role to play. Order 21.

*Third*, the government argues that the question here is not difficult because the Court supposedly concluded that "each of [the relevant] canons and methods [of statutory interpretation] points to the same conclusion." Opp. 3-4. But that is not a fair characterization of the Court's analysis. The Court did not find that the canon against surplusage *supported* its conclusion. Rather, the Court merely held that the canon did not decisively *refute* that conclusion because Congress could have intended to preserve a jury-trial right for certain theoretical non-CLJA claims. *See* Order 21. Reasonable jurists could readily disagree with that reasoning—and therefore about the proper resolution of the jury-trial question.

5

*Finally*, the government distinguishes the Supreme Court's recent decision in *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, No. 22-846, 2024 WL 478567 (U.S. Feb. 8, 2024), on the ground that it did not address a jury-trial question. Opp. 4-5. But the PLG cited *Kirtz* for the proposition that the fact that Congress spoke more clearly in other statutes is not relevant to the scope of the government's waiver of immunity, contrary to the government's arguments in this case. *Id.* at *6. The government does not address that aspect of *Kirtz*.[2]

## CONCLUSION

For the foregoing reasons, the PLG respectfully requests on behalf of plaintiffs Susan McBrine and David L. Petrie that the Court certify its decision to strike the jury-trial demand for immediate review under 28 U.S.C. § 1292(b).

March 11, 2024                                                     Respectfully submitted,

/s/ *John. F. Bash*                                                /s/ *J. Edward Bell, III*
John F. Bash (admitted *pro hac vice*)          J. Edward Bell, III (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan LLP       Bell Legal Group, LLC
300 W. 6th St., Suite 2010                               219 Ridge Street
Austin, TX 78701                                             Georgetown, SC 29440
Telephone: (737) 667-6100                            Telephone: (843) 546-2408
johnbash@quinnemanuel.com                      jeb@belllegalgroup.com

*Member, Plaintiffs' Executive Committee*       *Lead Counsel*
*Co-Chair, Law and Briefing Subcommittee*

/s/ *Elizabeth Cabraser*                                 /s/ *Zina Bash*
Elizabeth Cabraser (admitted *pro hac vice*)   Zina Bash (admitted *pro hac vice*)
Lieff Cabraser Heimann & Bernstein, LLP      Keller Postman LLC
275 Battery Street, Suite 2900                       111 Congress Avenue, Suite 500
San Francisco, CA 94111                              Austin, TX 78701

---

[2] The government claims in a footnote that advisory juries are not appropriate for cases against the government. Opp. 5 n.3. But it cites only a Federal Tort Claims Act case—a context in which it is indisputable that plaintiffs have no right to a jury trial. 28 U.S.C. § 2402. The purpose of employing advisory juries in an initial set of CLJA cases would be to avoid having to redo those trials should the Fourth Circuit reverse this Court's ruling on the jury-trial question. Nothing in the government's cited authority indicates that such an eminently practical measure would be inappropriate.

Telephone: (415) 956-1000
ecabraser@lchb.com

*Co-Lead Counsel*

/s/ *W. Michael Dowling*
W. Michael Dowling (N.C. Bar No.: 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, NC 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com

*Co-Lead Counsel*

/s/ *James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619
Telephone: (919) 981-0191
jar@lewis-roberts.com

*Co-Lead Counsel*

*/s/ Hugh R. Overholt*
Hugh R. Overholt (NC Bar No. 016301)
Ward and Smith P.A.
Post Office Box 867
New Bern, NC  28563-0867
Telephone:  (252) 672-5400
hro@wardandsmith.com
*Liaison Counsel for Plaintiffs*

*/s/ A. Charles Ellis*
A. Charles Ellis (N.C. Bar No.:  010865)
Ward and Smith P.A.
Post Office Box 8088
Greenville, NC  27835-8088
Telephone:  (252) 215-4000
ace@wardandsmith.com
*Liaison Counsel for Plaintiffs*

Telephone: (956) 345-9462
zina.bash@kellerpostman.com

*Co-Lead Counsel and Government Liaison*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5802
rgreenwald@weitzlux.com

*Co-Lead Counsel*

/s/ *Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144
Telephone: (704) 633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel*