IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | O R D E R |
| ) | |
| This Documents Relates to: ) | |
| ALL CASES ) | |

This matter is before the court on Plaintiffs' motion to compel production of a Water Modeling Project File created by the Agency for Toxic Substances and Disease Registry ("ATSDR") in native format (collectively, "Modeling Files"). [DE-142]. Defendant opposes the motion. [DE-151]. The motion is ripe and referred to the undersigned for disposition. For the reasons stated below, Plaintiffs' motion is granted in part.

I.  Background

This litigation concerns the more than fifteen hundred individual lawsuits filed under the Camp Lejeune Justice Act ("CLJA") in this district. *See* Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802-04. With the CLJA, Congress created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than 30 days during the period between August 1, 1953, and December 31, 1987. *See id.* § 804(b). To better manage this litigation, the court appointed a Plaintiffs' Leadership Group ("Plaintiffs"), *see* [DE-10], and entered case management orders streamlining pretrial procedures in all CLJA cases. *See, e.g.,* [DE-23]. Relevant here, the court entered the parties' stipulated ESI protocol as Case Management

Order No. 8 ("ESI Protocol"). [DE-52]. The court also established a discovery dispute protocol. [DE-55].

Plaintiffs previously moved to compel production of the Modeling Files and other responsive documents to Plaintiffs' First Requests for Production of Documents. *See* [DE-81]. However, Plaintiffs asked the court to hold that motion in abeyance while the parties "worked . . . to resolve those matters." [DE-107] at 2:12–17. The parties were unable to reach agreement on the Modeling Files, and the court allowed Plaintiffs to file the instant motion. *See* [DE-134].

The parties do not dispute that the Modeling Files are discoverable. *See* [DE-143] at 1; [DE-151] at 1.[1] Instead, the parties disagree as to whether Defendant must produce a "mirror image" of the Modeling Files in native format. [DE-143] at 8. Plaintiffs allege the Modeling Files are "organized in . . . folders, subfolders and files" with "cross-references or 'links' to other portions of the [Modeling Files]"; if Defendant were to produce the Modeling Files "pursuant to the ESI Protocol . . . the [Modeling Files will be] largely unusable." [DE-143] at 7. Plaintiffs state that producing the Modeling Files as ESI will "'flatten' the folder structure[,]" "renam[e] all files with bates numbers," and break the cross-referencing "links." *Id*. at 7–8.

Plaintiffs identified two tranches of Modeling Files as particularly vulnerable to ESI processing: Geographic Information System ("GIS") files and water modeling files (together, "Exotic Modeling Files").[2] [DE-143] at 8. "The [GIS] portion of the project draws upon a database of pathways connecting various parts of the overall project file" to properly display "map layers created and relied upon by the ATSDR." *Id*. According to Plaintiffs, "[i]f the project file is broken apart, these links will not function, and the GIS will not display the map layers . . . ." *Id*. Plaintiffs

---

[1] Indeed, Defendant asserts it has already produced "four of the eight [Modeling Files] parent-level folders to Plaintiffs" under the ESI Protocol. [DE-151-9] at ¶ 26.
[2] Any additional categories of exotic Modeling Files with "cross-references or 'links'" vulnerable to standard ESI processing are considered Exotic Modeling Files for purposes of this order. [DE-143] at 7.

2

asserted at the March 5, 2024 status conference that producing water modeling files pursuant to the ESI Protocol will result in similar problems.

Defendant disputes that all the Modeling Files become "unusable" when produced under the ESI Protocol. [DE-143] at ¶ 6; [DE-151-9] at ¶ 19. Defendant contends that the Modeling Files contain "a substantial amount of more standard ESI," such as PDFs and Word files. [DE-151-9] at ¶ 19. According to Defendants, these files retain their usefulness after processing under the ESI Protocol. However, Defendant "acknowledges" that some "exotic" Modeling Files "may not be amenable to certain Protocol specifications," and commits to "produce [such data] natively pursuant to the Protocol." [DE-151] 1.

II. Standard of Review

The general rule regarding the scope of discovery is found in Fed. R. Civ. P. 26(b)(l):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Prasad v. Nallapati*, 597 F. Supp. 3d 842, 846 (E.D.N.C. 2022) (first quoting *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. l:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); then citing *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978))). Nevertheless, "[t]he

parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Walls v. Ford Motor Co.*, No. 1:20CV98, 2021 WL 1723154, at *4 (M.D.N.C. Apr. 30, 2021) (citations omitted).

"Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Simply because "requested information is discoverable under Rule 26 does not mean that discovery must be had." *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). District courts must limit "'the frequency or extent of discovery otherwise allowed' if . . . '(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" *Page v. Bragg Communities, LLC*, No. 5:20-CV-336-D, 2023 WL 5418716, at *2 (E.D.N.C. Aug. 22, 2023) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

"A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requests . . . ." *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2015 WL 1643258, at *4 (E.D.N.C. Apr. 13, 2015) (applying Fed. R. Civ. P. 34(b)(2)(E)(i) to ESI). The Federal Rules of Civil Procedure allow parties to "specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). If a party does not so specify, the producing party may produce the requested documents in a form "in which it is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii).

4

Case 7:23-cv-00897-RJ    Document 159    Filed 03/12/24    Page 4 of 9

III. Discussion

    A.    The ESI Protocol is an order of the court and complements Rule 34

The parties dispute whether the Exotic Modeling Files were considered during ESI Protocol negotiations. *See* [DE-143] at 11; [DE-151] at 4. The parties also disagree about the application of Rule 34(b) to the Modeling Files. *See* [DE-143] at 9–10; [DE-151] at n.10. The court takes seriously the "discussion and contemplation" reflected in the ESI Protocol. *See Eshelman v. Puma Biotech., Inc.*, 2017 WL 2992095, at *3 (E.D.N.C. July 13, 2017). And the court may amend the terms of the ESI Protocol. *See* [DE-52] at 9.

This court has previously applied the "organiz[ational]" requirements of Rule 34(b)(2)(E)(i) to ESI. *See, e.g.*, *Spilker*, 2015 WL 1643258 at *4. The ESI Protocol complements but does not supersede the requirements of Rule 34(b)(2)(E)(i). *See City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 581–82 (C.D. Cal. 2011) (holding ESI agreement did not supersede Rule 34 obligations). The parties must produce all documents "as they are kept in the usual course of business" or "organize and label them to correspond to the categories in the requests" separate and apart from their obligations under the ESI Protocol. Restated, documents processed according to the ESI Protocol that, for whatever reason, result in a "[dis]organize[d]" production run afoul of Rule 34.

The "reasonably usable" provision in subsection (ii) only applies "if the [requesting] party does not specify the form in which [ESI] is to be produced." *Mondragon v. Scott Farms, Inc.*, 329 F.R.D. 533, n.3 (E.D.N.C. 2019), objections overruled, No. 5:17-CV-00356-FL, 2019 WL 489117 (E.D.N.C. Feb. 7, 2019) (citing Fed. R. Civ. P 34(b)(2)(E)(ii)). Defendant argues subsection (ii) does not apply because the parties negotiated an ESI Protocol. [DE-151] at 9 (citing *In re Actos Antitrust Litig.*, 340 F.R.D. 549 (S.D.N.Y. Mar. 30, 2022)). Even so, where "the responding party

5

ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." Fed. R. Civ. P. 34, Adv. Comm. Notes, 2006 Amend. Plaintiffs' Request No. 8 in its First Set of Requests for Production reads:

> Please produce unredacted **copies of all documents and ESI**, as defined herein, relied upon by or in the possession, custody or control of the ATSDR related to any publication, report, or study concerning water contamination issues at Camp Lejeune, including drafts. . . .

[DE-143] at 4 (citing [DE-81-3] at 9) (emphasis added). Plaintiffs did "specify the form in which [copies of all documents and ESI] [are] to be produced"; the ESI Protocol Appendix ("Production Specifications") at ¶ 2(a) reads "[a]ll documents shall be produced in black and white TIFF format . . . ."

However, the Production Specifications recognize exceptions to the TIFF default. For example, ¶ 15 "Production of Native Files (When Applicable Pursuant to These Specifications)" reads:

> Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

[DE-52-1] at ¶ 15. "GIS data" is singled out for production in "native format." *Id*. And the header qualifier "[w]hen [a]pplicable [p]ursuant to [t]hese [s]pecifications" suggests the possibility of certain natively produced documents incompatible with ¶ 15 procedures. Additionally, ¶ 17 ("Other Production Formats") of the Production Specifications requires the parties to "meet and confer [on] the specific technical production specifications required" if "other ESI or document production formats are [ever] required but are not included in these specifications." [DE-51-1] at

6

¶ 17.

Thus, Plaintiffs have already "specif[ied] the form in which [the Modeling Files] [are] to be produced," the question is which Production Specification[ ] a particular Modeling File falls under. Fed. R. Civ. P. 34(b)(2)(E)(ii). The court reads Rule 34 in conjunction with the ESI Protocol to determine the answer.

### B. Plaintiffs are entitled to Exotic Modeling Files in native format

Plaintiffs are entitled to native, "organize[d]" Exotic Modeling Files produced under Production Specifications ¶¶ 15 or 17, whichever preserves their "searchab[ility]" and functionality. Fed. R. Civ. P. 34(b)(2)(E)(i); *see* Fed. R. Civ. P. 34, Adv. Comm. Notes, 2006 Amend. Plaintiffs should have access to the Exotic Modeling Files as an ATSDR scientist would, including the ability to view and use "map layers," "cross-references," or "links". [DE-143] at 8. If document processing pursuant to ¶ 15 would destroy the interdependency of the Exotic Modeling Files, the parties must meet and confer under ¶ 17 to establish native file production procedures compliant with this order.[3]

The parties are not far apart on this issue. The parties do not dispute that certain Exotic Modeling Files will not function properly if produced as ordinary ESI. [DE-143] at 1; [DE-151] at 1. Indeed, the Production Specifications specifically contemplate this problem: "GIS data shall be produced in its native format and be accompanied by a viewer **such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood**." [DE-52-1] at ¶ 15 (emphasis added). Defendant expressly "acknowledges certain types of data within the Project files may not be amenable to certain [ESI] Protocol

---

[3] The court recognizes Defendant's concern with "creat[ing] a method of tracking the [Modeling Files] *before* they are produced[,]" so documents are easily verifiable when, for example, attached to motions or used in depositions. [DE-151] at n.8 (emphasis original). Still, the court will not alter its ruling because of hypothetical evidentiary objections. Defendant may object to Plaintiffs' use of Exotic Modeling Files; the court will rule on them at that time.

7

specifications[,]" and agrees to "produce [such data] natively." [DE-151] at 2.

This reading is consistent with the text of the ESI Protocol Production Specifications and the complementary requirements of Rule 34 to produce "organize[d]" ESI with preserved "searchab[ility]" and functionality. *See Rambus Inc. v. Hynix Semiconductor Inc.*, No. C 05-00334 RMW, 2007 WL 9653194, at *5 (N.D. Cal. Sept. 25, 2007) (granting motion to compel production of complex schematics natively where original format in which defendant had produced them made it more difficult and burdensome for plaintiff to use the information).

C.  Non-Exotic Modeling Files are standard ESI

Defendant contends that many of the Modeling Files are "amenable to standard processing, such as Word and PDF documents." [DE-151-9] at ¶¶ 19, 22 (example Modeling File folder "contain[s] a substantial amount of [ ] standard ESI, including 34,478 .pdf files, 5,053 Word files, 19 PowerPoint files, and 7,900 Excel files[]"). These "Non-Exotic Modeling Files" are not "cross-reference[d] or 'link[ed]' to other portions of the project file." [DE-143] at 7. Restated, Exotic Modeling Files interdepend; Non-Exotic Modeling Files do not. Non-Exotic Modeling Files must be produced according to the Production Specifications. *See* [DE-52-1] at ¶¶ 1–14, 16. The Production Specifications provide instructions for standard ESI: "[a]ll ESI, **except as outlined below in [paragraphs] 5–15**, shall be rendered to TIFF image format . . . ." *Id*. at ¶ 2 (emphasis added). PowerPoint and Excel files "shall be produced in [native format]." *Id*. at ¶ 10. Plaintiffs have not persuaded the court to look any further. Non-Exotic Modeling Files must be produced according to ¶ 2 or any other relevant subparagraph of the Production Specifications. Defendant represents that it has and continues to do so and will be done "by March 27, [2024]." *See* [DE-151-9] at ¶ 26; [DE-151] at 5.

IV. Conclusion

For the foregoing reasons, Plaintiffs' motion to compel, [DE-142], is granted in part as follows:

A. Defendant shall produce all Exotic Modeling Files natively in accordance with the relevant Production Specifications within 30 days of this order. *See* [DE-52-1] at ¶¶ 15, 17.

B. Plaintiffs' request that Defendant produce a "mirror image" of the Modeling Files is DENIED.

So ordered, the 12th day of March 2024.

Robert B. Jones, Jr.
United States Magistrate Judge