IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **JOINT STATUS REPORT** |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report pursuant to the Court's Minute Entry of March 5, 2024. [D.E. 154]. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) are set forth below:

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to March, 12 2024, 1,633 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. Seventeen cases have been dismissed; thirteen of those were voluntary dismissals and the four others were pro se cases. The cases are divided as follows: Judge Dever – 401 cases; Judge Myers – 425 cases; Judge Boyle – 392 cases; and Judge Flanagan – 415 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 174,891 administrative claims on file with the Department of Navy ("Navy"). The Navy opened the CLJA claims intake portal to the public on March 1, 2024 and will begin actively messaging this to the claimant population during the week of March 11,

2024, after a round of initial additions and enhancements to the portal. The Navy has loaded approximately half of the existing CLJA claims inventory into the claims management system and is currently making those claims available to law firms and pro se claimants to review and validate as Navy personnel complete initial data quality checks on those claims. The remaining half of the existing inventory of CLJA claims inventory will be loaded into the system over the coming weeks. The Navy continues to utilize two pathways for assessing CLJA claims. Under one pathway, the Navy receives fully developed claims from law firms for manual review. To date, the Navy has received approximately 411 fully substantiated CLJA claims for review under this pathway. Under the other pathway, the Navy accesses information developed through benefits determinations by the Veterans Administration to substantiate and settle CLJA claims. Between the two pathways, the Navy has extended approximately 56 CLJA claim settlement offers so far under the Elective Option program. To date, 24 of the CLJA claim settlement offers extended by the Navy have been accepted.

### (3) An update on stipulations entered into between the Parties since the last status conference

In an effort to facilitate the efficient production of documents, the PLG is providing the government, on behalf of every Track 1 Discovery Pool Plaintiff, with a Health Insurance Portability and Accountability Act (HIPAA) compliant authorization form for the release of patient information from private third-party medical providers pursuant to 45 CFR § 164.508 (the "HIPAA form"). The Parties expect that a similar arrangement will be consummated for future discovery tracks. The government is using the HIPAA form to obtain private third-party medical records for discovery pool plaintiffs (the "Medical Records"). In addition, for every plaintiff deposed by the government, the PLG is providing the government with a completed Social Security Administration SSA-7050-F4 form requesting and authorizing the release of social

security earning information ("Social Security Records"). The Parties have engaged in negotiations concerning the terms of a stipulation which would require the government to provide the PLG with all Medical Records and Social Security Records generated as a result of the above-described authorization forms. The Parties have not achieved an agreement on this stipulation yet.

**(4) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter, and the PLG is committed to taking all actions necessary to meet the deadlines set forth in the Court's various scheduling orders. There are several discovery disagreements that the Parties are actively discussing in an effort to avoid motions practice. While the PLG is hopeful that these issues can be resolved informally, these various disagreements are identified below.

<u>ATSDR Health Effects Project File</u>

During prior Status Conferences, the Parties have discussed the PLG's Motion to Compel Document Production in Response to Corrected First Set of Request for Production [D.E. 81] and the government's Cross-Motion for Protective Order. [D.E. 93]. In an effort to resolve this discovery dispute, the Parties engaged in multiple meet-and-confer videoconferences and exchanged several letters. The Parties' discussions resulted in material, constructive progress. However, there were three issues upon which the Parties could not reach agreement: (a) the ATSDR's water modeling project file, (b) certain digitized muster rolls, and (c) the ATSDR's health effects project file. The final issue, involving the ATSDR's health effects project file, has not been briefed with the Court yet.

3

As to the health effects project file, the ATSDR studied the impacts to human health of the chemicals identified in the groundwater at Camp Lejeune. As a result, the ATSDR created a health effects project file. Some data that makes up the health effects project file may be subject to contractual or statutory confidentiality protections. During a meet and confer on March 6, 2024, the PLG indicated that it will provide the government with written inquiries concerning this health effects project file along with a request that the inquires be forward to the ATSDR for response. The PLG hopes that the ATSDR will respond to these inquiries, and further, the PLG believes that such responses may assist the Parties with finding a solution to the production of the health effects project file. Unfortunately, however, the government has not committed to sharing responses by the ATSDR to these inquiries.

Depositions

The Parties are presently engaged in depositions related to Track 1. Several issues have arisen during these depositions, and the Parties are engaged in discussions to resolve these issues.

The government has requested dates for the depositions of numerous treating providers for the Track 1 Plaintiffs. In several instances, the government has requested the depositions of multiple treating providers for each Track 1 Plaintiff. In at least one prominent example, the government requested the depositions four separate treating providers for a single Track 1 Plaintiff. The volume of these depositions is unnecessary. In general, Case Management Order No. 2 provides that "[a]ny medical records from an individual Plaintiff's private health care providers are self-authenticating and admissible." [D.E. 23, at p 8]. Since the government has access to these medical records, there should be little need to take the depositions of such a vast number of treating providers. This is an especially important issue because of the numerous complexities involved with arranging depositions for treating providers. During a meet and confer on March 5, 2024, the

4

PLG indicated that many of these treating physician depositions may be unnecessary, and the Parties tentatively agreed to a procedure whereby the PLG will raise concerns about treating physician depositions and the government will consider these concerns and, where appropriate, withdraw the request for the treating physician deposition.

The government has requested the depositions of several third-party witnesses, such as the spouses of Track 1 Discovery Pool Plaintiffs. The government has issued several subpoenas that potentially request communications subject to the spousal privilege, would require extensive searches for electronically stored information, or may otherwise be objectionable. The Parties held a meet and confer on March 5, 2024 to discuss these issues, and the PLG hopes that this dispute can be resolved without intervention by the Court.

The Government's Failure to Produce Plaintiffs' Own Documents

The PLG has learned that, in preparing for Track 1 Discovery Pool Plaintiff depositions, the government is relying upon the VA medical records of individual plaintiffs, yet these medical records have not been produced by the government to the PLG. Indeed, the government possesses several categories of records which should be freely produced to Track 1 Plaintiffs, including (a) VA medical records, (b) Social Security records, and (c) military records. The PLG has addressed the unfairness of this situation during several meet and confers with the government. The PLG's position is that these documents have been requested in discovery, these are the plaintiffs' own records, and that it is neither fair nor consistent with the discovery rules for the government to craft deposition examinations of individual plaintiffs using the plaintiffs' own records that have already been requested but not produced in discovery.

In response to the PLG's stated concerns, the government sent an email stating that, where plaintiffs have signed certain consent forms, the government will produce these documents on the

5

Wednesday during the week before an individual plaintiff's deposition. The PLG requested that this commitment be included in a formal stipulation. Surprisingly, the government initially refused, although the government has now indicated an openness to a formal stipulation on this issue, and the Parties will work toward formal agreement.

Further, the PLG believes that it should not be necessary for individual plaintiffs to execute consent forms to receive their own documents that have been requested by the plaintiff's own lawyers. While some plaintiffs can easily execute a consent form, many plaintiffs are elderly and struggle with the procedures required by the government for execution of a consent form. This issue has significant practical implications. For example, during a recent Track 1 Plaintiff deposition, a government lawyer possessed the plaintiff's VA documents but refused to provide the same at the deposition because the plaintiff's consent form was not properly executed. When the PLG's lawyer handed the government's lawyer a properly executed consent form, the government's lawyer nonetheless refused to produce the VA documents during the deposition.

Hence, in due course, the PLG intends to seek relief from the Court to ensure that plaintiffs' own files, which are possessed by the government and have been formally requested in discovery, are produced without need for further unnecessary authorizations.

Privilege Logs

On January 8, 2024, the PLG inspected certain physical documents possessed by the ATSDR in Chamblee, Georgia (the "ATSDR Inspection"). During the ATSDR Inspection, the government withheld documents on the basis of privilege. To date, the government has not provided a privilege log as required by Fed. R. Civ. P. 26.

During meet and confer videoconferences held on March 1 and 6, 2024, the PLG raised this privilege log issue with the government. On March 6, 2024, the government took the position

that the PLG waived its request for a privilege log related to the ATSDR Inspection due to a proposal set forth in the PLG's letter of January 8, 2024. However, the PLG's letter of January 8 explicitly reserved all objections to privilege log issues: "For clarity, this arrangement would not obviate the government's production of documents responsive to the First, Third, Fourth and Fifth Sets of Request for Production, and other ongoing supplementations already agreed too. For instance, the production of muster rolls would still be expected, and **the PLG would still contend that the government's privilege logs are deficient.**" (The PLG's Letter of 1/8/24, at p 7 (emphasis added)).

Document Repository

During a videoconference on March 11, 2024, the PLG indicated that it believes that a central repository should be created at which discovery pool plaintiffs' original documents should be stored. This repository would be used to store unique original items such as photographs, year books, etc. The PLG anticipates proposing an Order for the Court's consideration.

Pretrial Conference on Discovery

On March 7, 2024, the PLG filed a Notice of Filing of the PLG's Proposed Track 2 Scheduling Order (the "Notice"). [D.E. 155]. In that Notice, the PLG requested a Fed. R. Civ. P. 16 pretrial conference for purposes of discussing procedures that would significantly reduce the scope and expense of discovery and trials and thereby speed up this litigation and promote a global resolution.

The PLG has dedicated substantial time and resources to the discovery process, including both paper discovery and depositions. The PLG believes that discovery is progressing at a reasonable pace and that the Parties will be able to meet all deadlines set forth in Case Management Order No. 2.

**United States' Position:**

The United States continues to provide rolling productions of documents in response to Plaintiffs' discovery requests. Just this week, the United States will be producing more than 1 million pages of documents to Plaintiffs. The United States is continuing to produce any agency records the Department of Justice possesses relating to individual Plaintiffs by Wednesday of the week prior to any individual Plaintiff's deposition, so long as the Plaintiffs have provided the United States with properly executed releases.

Muster Rolls:

As noted in the Court's March 8, 2024 Order denying Plaintiffs motion to compel production of the digitized muster rolls and database at issue in that motion, the United States remains "committed to producing the existing digitized muster rolls and related database in its possession by the end of March 2024." ECF No. 157 at 1.

ATSDR Water Modeling Project Files:

The United States continues to produce water modeling project files pursuant to the ESI Protocol on a rolling basis. The United States is still on track to complete production of these files by March 27, 2024 and will comply with the Court's Order of March 12, 2024 [D.E. 159].

ATSDR Health Effects Studies Project Files:

The Parties continue to work toward agreement regarding the production of the ATSDR's health effects studies project files. Some of the health effects studies project files are subject to stringent statutory and contractual prohibitions against production of certain data within the project files. The Parties are working on reaching an agreement regarding these files. The United States is

simultaneously working to process and produce non-implicated health effects project files pursuant to the ESI Protocol on a rolling basis.

Production of Plaintiff Documents

The United States has committed to making reasonable efforts to producing documents of individual plaintiffs within its possession by the Wednesday before the week of the individual Plaintiff's deposition, assuming the United States has the proper releases from the individual Plaintiff. The United States is prioritizing production of these documents pursuant to the document production protocol, along with all of the other agency records that the United States is producing to PLG in response to PLG's expansive discovery requests. The United States has represented to PLG that it would be willing put language to this effect in a stipulation, and has provided a revised stipulation to PLG. The parties also agreed documents can be produced in native format, to be cured in a later production compliant with ESI procedures, in the event of unforeseen technical issues.

The United States is further committed to producing documents to PLG pursuant to an appropriately executed Department of Veteran Affairs' (VA) release. Title 38, Section 7332 of the United States Code covers the confidentiality of VA health records relating to drug abuse, alcoholism or alcohol abuse, human immunodeficiency virus (HIV), or sickle cell anemia. On December 8, 2023, the PLG agreed to provide the United States with VA 10-5345 medical releases signed by the patient, or if the patient is deceased, the representative of the patient's estate. This signature can be an electronic "/s/patient name" so long as it is accompanied by an affidavit verifying the veracity of the signature on the VA 10-5345 form. In late January of 2024, the United States identified for PLG the handful of VA 10-5345 medical releases that were improperly executed with attorney signatures. In fact, in the example PLG apparently cites, the United States

gave PLG notice of the defective release on two occasions in advance of the deposition. When plaintiff's attorney finally presented a proper release on the morning of the deposition, he expected the Department attorney to stop the deposition and immediately arrange for a production. The Department attorney proceeded with the deposition pursuant to the deposition notice and protocol. The United States cannot agree to PLG's request to amend the process that the VA requires for releasing medical records in accordance with 38 U.S.C. § 7332. PLG should be able to easily remedy the few releases that were improperly executed by providing the "/s/ patient name" in the patient signature box in place of the "/s/ attorney name" in that box.

Depositions

As of March 12, 2024, the United States has requested dates for 99 depositions of Track 1 Discovery Plaintiffs, scheduled 95 of those depositions, and taken 66 of those depositions. The United States has also requested dates for 51 fact witness and treating physician depositions, has scheduled 24 of those depositions, and taken 2 of those depositions. We have assigned detailees to take many of these fact witness depositions.

Plaintiffs have raised a general objection to the scope of third-party subpoenas the United States has serving for third-party witness depositions. Plaintiffs express their position that certain topics are appropriate for questioning, but not appropriate from a subpoena standpoint. Plaintiffs agreed to circulate proposed language limiting the scope of third-party subpoenas for the United States to consider. While seeking this resolution, the United States agreed it will not argue that a failure to object within deadlines of the Federal Rules of Civil Procedure by Plaintiffs is a waiver of the objections to third-party subpoenas served thus far.

The parties also discussed the United States' requests for depositions of plaintiff's treating physicians. Plaintiffs raised concerned about the number of treating physician depositions being

10

Case 7:23-cv-00897-RJ    Document 160    Filed 03/12/24    Page 10 of 16

requested and sought a limit of such requests. The parties agreed that, if the United States seeks to depose a treating physician that plaintiffs believe that the physician does not to be deposed, Plaintiffs will notify the United States, explain why, and seek agreement. Plaintiffs also stated a willingness to stipulating that a treating physician will not be called at trial if Plaintiffs request a physician need not be deposed. With respect to the example PLG provided in which the United States initially requested four treating physician depositions, the United States subsequently withdrew two of those requests. The United States expressed its position that it is within the United States' discretion within the limits of the Federal Rules, local rules, and applicable case management orders, to take the depositions deemed appropriate for this litigation. The United States has a need to prepare these cases fully with the assumption that any one of the Track 1 cases could be selected for a bellwether trial. No defendant would limit itself to relying on plaintiff medical records without witness testimony in defending a toxic tort personal injury case.

Plaintiffs expressed concern about the United States' deposition questions regarding the Elective Option and any fees and suggested that they are barred by the attorney-client privilege. The United States will reserve its right to seek appropriate relief from the Court over whether the information is privileged if the plaintiff is instructed not to answer.

Privilege Log

PLG had asked the United States to provide a privilege log for documents that the government withheld on the basis of privilege during an inspection at ATSDR offices. The United States understood that PLG agreed that this ATSDR production had been superseded by an agreement of the parties. On January 8, 2024, the same day of the inspection, PLG proposed to the United States by letter that the United States produce the ATSDR's "water modeling" and "health effects" complete project files, logging any documents removed from those files for

11

privilege. PLG represented that "If the government commits to making such a production within a reasonable period of time, the PLG will agree that the said production satisfies Request No. 8 within the Corrected First Set of Request for Production and Request Nos. 1-7 within the Second Set of Request for Production." The United States has committed to producing the water modeling project files and the health effects project files in their entirety, save for any privileged documents that are identified prior to production. The United States will be providing privilege logs for any such documents. The reference to the alleged "deficient privilege logs" from PLG's January 8, 2024, letter refers to those produced as part of the FTCA litigation, which the parties have discussed with the Court previously, not any new privilege log to which PLG claims it is entitled to as a result of the January 8, 2024 inspection at ATSDR's offices. Accordingly, the United States is complying with PLG's proposal, and further production of documents from ATDSR, or any related privilege logs, is therefore unnecessary.

Pretrial Conferences

The United States welcomes further conferences with the Court at the appropriate time to discuss motions practice and trial procedure. One issue that the United States believes should be addressed soon is how to handle Track 1 trials for plaintiffs alleging multiple injuries. The United States has expressed concern to PLG about trying cases of plaintiffs with multiple injuries, particularly those alleging that other (non-track 1) injuries were independently caused by the alleged contaminated water at issue. Plaintiffs agreed to collect and circulate data showing how many plaintiffs are in this category and the parties agreed to discuss this issue further. The United States does not believe that any individual cases should be expedited to trial, but that cases should progress through the procedures established by the Court's orders for fact and expert discovery.

**(5) Update on individual and global settlement efforts:**

As of March 12, 2024, the Torts Branch has determined that fifty (50) cases in litigation meet the Elective Option ("EO") criteria through documentary verification. The case breakdown by injury includes: 14 Bladder Cancer, 12 Kidney Cancer, 10 non-Hodgkin's Lymphoma, 5 Kidney Disease, 4 Parkinson's Disease, 3 Leukemia and 2 Multiple Myeloma. Eighteen (18) offers have been accepted by plaintiffs on 5 cases of Bladder Cancer ($150,000; $150,000; $300,000; $300,00; $450,000), 3 cases of Kidney Disease (End Stage Renal Disease) ($250,000; $100,000; $100,000), 5 cases of Kidney Cancer ($300,000; $300,000; $300,00; $300,000; $150,000), 2 cases of non-Hodgkin's Lymphoma ($150,000; $150,000), 1 case of Multiple Myeloma ($250,000), and 2 cases of Parkinson's Disease ($400,000; $100,000). Nine (9) offers were rejected by plaintiffs, including 4 cases of Bladder Cancer, 2 cases of Kidney Cancer, 1 case of Multiple Myeloma, 1 case of Kidney Disease, and 1 case of Parkinson's Disease. Ten (10) offers have expired, including 3 cases of Kidney Cancer, 3 cases of non-Hodgkin's Lymphoma, 3 cases of Bladder Cancer and 1 case of Leukemia. The other thirteen (13) settlement offers are pending.

Further, the DOJ has approved offers for fifty-nine (59) claimants in reliance on information provided by the Navy. Twenty-four (24) settlement offers have been accepted. Two (2) offers have been rejected. Nineteen (25) offers have expired, and the other eight (8) offers are pending.

Payments have been sent for eight accepted settlements offers made by the Navy and seven accepted settlement offers from DOJ, totaling $3,600,000. Five cases of Bladder Cancer resulted in two payments of $300,000 and three payments of $150,000. Four cases of Leukemia resulted in three payments of $300,000 and one payment of $150,000. Two cases of non-Hodgkin's Lymphoma resulted in a $300,000 payment and a $150,000 payment. Two cases of Parkinson's

Disease resulted in a $400,000 and a $250,000 payment. One case of Kidney Cancer resulted in a $300,000 payment. One case of Kidney Disease resulted in a $100,000 payment.

The Parties have had several preliminary discussions regarding the possibility of a global resolution of claims that remain in the administrative and legal processes. The Parties continue to negotiate a resolution questionnaire and resolution roadmap. On January 16, 2024, the parties jointly recommended Tom Perrelli of Jenner & Block to serve as Special Settlement Master. The parties are awaiting further direction from the Court regarding appointment of a Special Settlement Master.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the Parties have filed the following motions that are ripe for decision: (a) the PLG's Motion for Partial Summary Judgment on the Issue of Specific Causation [D.E. 110], and (b) the PLG's Motion to Certify for Appeal the Order Granting Defendant's Motion to Strike the Demand for a Jury Trial [D.E. 137].

*[Signatures follow on next page]*

DATED this 12th day of March 2024.

Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*