IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| CAMP LEJEUNE WATER LITIGATION ) | Case No. 7:23-cv-897 | |
| ) | | |
| ) | UNITED STATES' MOTION TO | |
| ) | AMEND TRACK 1 ORDER TO | |
| This Document Relates To: ) | PRIORITIZE TRIALS OF TRACK 1 | |
| ALL CASES ) | SINGLE DISEASE PLAINTIFFS | |

Pursuant to Federal Rule of Civil Procedure 16, Local Rule 7.1, and Case Management Order No. 2 (D.E. 23), the United States respectfully moves the Court to amend the Court's Track 1 Order, D.E. 130, to establish that:

(1) the first Track 1 trials will be comprised of Track 1 plaintiffs who are alleging only a Track 1 disease, along with other injuries or conditions resulting from that Track 1 disease or its treatment ("Single Disease Plaintiffs");

(2) trials for Track 1 plaintiffs who allege non-Track 1 injuries or conditions caused directly by Camp Lejeune water exposure ("Multiple Disease Plaintiffs") will take place after trials for Track 1 Single Disease Plaintiffs;

(3) Plaintiffs' Leadership Group shall submit a designation of Track 1 plaintiffs as Single Disease Plaintiffs or Multiple Disease Plaintiffs no later than the close of fact discovery;

(4) expert discovery for Track 1 Multiple Disease Plaintiffs will be extended until the completion of the first Track 1 Single Disease Plaintiffs' trials to allow sufficient time for the parties' experts to address the considerably more complex medical and scientific issues in those cases that might not apply in other Track 1 cases.

In support of this Motion, the United States submits and relies upon its accompanying Memorandum in Support and exhibits attached hereto.

A Proposed Order is attached.

Dated: April 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
1100 L Street NW
Washington, DC 20005
E-mail: daniel.c.eagles@usdoj.gov
Phone: (202) 305-0253
Fax: (202) 616-4473

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No. 7:23-cv-897 |
| | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| | ) | UNITED STATES' MOTION TO |
| | ) | AMEND TRACK 1 ORDER TO |
| This Document Relates To: | ) | PRIORITIZE TRIALS OF TRACK 1 |
| ALL CASES | ) | SINGLE DISEASE PLAINTIFFS |

The United States has learned that some Track 1 plaintiffs may allege not only a Track 1 disease (including conditions resulting from the Track 1 disease and its treatment), but also various other diseases that they claim were independently and directly caused by Camp Lejeune water exposure ("Multiple Disease Plaintiffs").

The goal for managing the Camp Lejeune Justice Act ("CLJA") cases is to conduct informative trials that will "help to promote early resolution for *common* illnesses." D.E. 23 at 8-9 (emphasis added). The Court's disease track approach designated five diseases common among CLJA plaintiffs for discovery and trial in Track 1 to determine whether scientific evidence supports a causal relationship between those particular diseases and the Camp Lejeune water contaminants, and whether the contaminants in fact caused the Track 1 plaintiffs' illnesses.

Trying the Multiple Disease Plaintiffs' cases as part of the first Track 1 trials under the existing schedule would undermine the Court's disease track approach to case management. Multiple Disease Plaintiffs' claims will be significantly more difficult, costly, and time-consuming to litigate because they will introduce a multitude of additional diseases that will require additional expert analysis and testimony on both general and specific causation.

1

Moreover, litigating these non-Track 1 issues is less likely to provide information representative of other Track 1 cases, and thus is less likely to advance global resolution.

To that end, the Court should prioritize trials of the Track 1 plaintiffs who allege only a Track 1 disease, including conditions resulting from the Track 1 disease or its treatment ("Single Disease Plaintiffs"). The claims of the Track 1 Single Disease Plaintiffs will be comparatively much easier to resolve. They will also be more informative for global resolution because they focus on the causal connection between the five common diseases and the Camp Lejeune water contaminants, rather than claims that other, non-Track 1 diseases are related to the Camp Lejeune water contaminants. The Track 1 Multiple Disease Plaintiffs can remain in Track 1, but their cases should be tried after the Track 1 Single Disease Plaintiffs' cases are tried, allowing for a sufficient period of expert discovery on the additional claims that non-Track 1 diseases are related to the Camp Lejeune water contaminants.

I. **Background**

The successive discovery tracks set forth in CMO 2 have a clear purpose: to allow the parties to concentrate their expert discovery efforts and trial preparation on litigating common causation issues on a subset of particular diseases, rather than litigating causation issues relating to a wide variety of diseases simultaneously. The Court's case management orders correctly recognize that resolution of the overall litigation would benefit from focusing on a subset of cases involving just five diseases for Track 1. *See* CMO 2, D.E. 23 ("Staging discovery and trials by 'tracks' of illnesses is the most efficient way to advance the CLJA litigation and support a global resolution of CLJA claims. . . . The staging approach also recognizes that this Court has four United States District Judges and a heavy docket of CLJA and non-CLJA actions.").

As Track 1 discovery has progressed, the parties have learned that discovery for some plaintiffs cannot simply focus on the Track 1 illnesses. A meaningful number of Track 1

plaintiffs allege that in addition to one of the Track 1 diseases, they also suffer from one or more non-Track 1 ailments that they claim were independently caused by exposure to water at Camp Lejeune. Consequently, the parties now face the daunting prospect of conducting fact and expert discovery and preparing for trials on causation related to dozens of diseases that are not Track 1 diseases for Track 1 plaintiffs.

Because fact discovery is ongoing, the United States does not yet know exactly how many Track 1 plaintiffs are Multiple Disease Plaintiffs. The United States has raised this issue with Plaintiffs' Leadership Group ("PLG") on multiple occasions, dating back to at least February 26, 2024. To date, PLG has not informed the United States how many Track 1 plaintiffs are Multiple Disease Plaintiffs.

What is clear is that many plaintiffs now allege multiple diseases or conditions beyond the Track 1 disease allegations. For example, of the 20 Parkinson's disease plaintiffs in Track 1, nine submitted Discovery Pool Profile Forms ("DPPF") alleging additional injuries, including skin cancers, multiple myeloma, non-cancer kidney disease, neurobehavioral effects, depression, hypertension, dental caries, and prostate cancer. As another example, of the 20 non-Hodgkin lymphoma ("NHL") plaintiffs in Track 1, 13 of them allege multiple injuries on their DPPFs. In total, those 13 NHL plaintiffs allege 27 additional injuries other than NHL itself.

Because plaintiffs have not yet submitted expert reports on causation, the United States does not know how many of these plaintiffs alleging additional diseases will claim that the additional diseases were caused independently by Camp Lejeune water exposure (as opposed to resulting from the Track 1 disease or its treatment). But it appears likely that some, perhaps many, Track 1 plaintiffs may do so. *See, e.g.*, Ex. A, Hunt Dep. Tr. at 199:19-200:6 ("You're claiming in this lawsuit that these eight conditions or diseases were caused by the water at Camp

3

Lejeune? A. I think they are."); Ex. B, Doup Dep. Tr. at 14:6-25 (alleging prostate cancer resulting from exposure to "contaminated water while stationed at Camp Lejeune"); Ex. C, Cagiano Dep. Tr. at 133:16-137:16 (coronary artery disease, gastroesophageal reflux disease, and hypertension); Ex. D, McTiernan Dep. Tr. at 200:12-202:16 (atrial fibrillation, hyperthyroidism, non-toxic nodular goiter, hepatic cysts, diverticulosis, dental issues).

By contrast, some of the Track 1 plaintiffs allege only a single Track 1 disease caused by exposure to Camp Lejeune water (*e.g.*, kidney cancer), or they allege a single Track 1 disease caused by exposure to the Camp Lejeune water plus additional conditions resulting from the Track 1 disease (*e.g.*, bladder cancer that metastasized) or its treatment (*e.g.*, side effects from treatment for NHL). The United States refers to these Track 1 plaintiffs as "Single Disease Plaintiffs" because the core causation question in their cases—whether exposure to water at Camp Lejeune caused plaintiff's injury—involves only the Track 1 disease.

## II. Argument

Setting cases involving Multiple Disease Plaintiffs for the first trials will undermine the Court's goal of staging discovery and trials by tracks of illnesses to efficiently advance the CLJA litigation and support a global resolution of CLJA claims. "If individual trials . . . are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." Federal Judicial Center, Manual for Complex Litigation § 22.315 (4th ed.) ("MCL 4th"). Compared to the Multiple Disease Plaintiffs, the Single Disease Plaintiffs are likelier to present common issues and yield information representative of other Track 1 cases. Trials related to Multiple Disease Plaintiffs, whose cases will involve many issues relating to non-Track 1 diseases intermingled with issues concerning the Track 1 diseases, are less likely to "enable the parties and the court to determine the nature and strength of the claims,

whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis." *Id.*

Including Multiple Disease Plaintiffs in early trials will also make those trials longer, more complicated, and more expensive, straining the resources of the Court, which has "four United States District Judges and a heavy docket of CLJA and non-CLJA actions." D.E. 23. For every additional disease claimed to be directly related to exposure to Camp Lejeune water, a large amount of additional expert testimony from toxicologists, epidemiologists, and doctors will be necessary, particularly on the issues of general causation and specific causation.

Even trying a few Multiple Disease Plaintiffs in the first trials for the Track 1 pool would create substantial burdens by adding a significant number of additional diseases that the Court would have to address during the Track 1 trials. The causation-related workload could easily quadruple from the five Track 1 diseases if Multiple Disease Plaintiffs scheduled for trial were to claim that 15 additional diseases were caused directly by Camp Lejeune water.

Under the current schedule, the United States must await the PLG's disclosure of expert reports for the Track 1 plaintiffs in June 2024 to learn which plaintiffs allege multiple diseases independently caused by Camp Lejeune water exposure. And, under the current schedule, the United States only has 30 days to respond to a potentially vast array of additional diseases alleged by the Multiple Disease Plaintiffs. To address additional diseases beyond the designated Track 1 diseases during such a short time frame is unworkable. Causation experts' work is time-intensive, and more time will be needed to prepare expert reports for the Multiple Disease Plaintiffs. A request for an extension of the expert discovery schedule is inevitable unless expert discovery and trials are focused on those Plaintiffs alleging a single Track 1 disease.

In guiding mass tort litigation involving a wide range of diseases, other courts have recognized the need to keep the parties narrowly focused on a manageable subset of diseases. Recently, in the firefighting foam MDL in the District of South Carolina—a litigation involving "more than 20,000 cases, the great bulk of which raise individual personal injury claims"—Judge Gergel identified a subset of four diseases for initial bellwether discovery, similar to this Court's approach in CMO 2. *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.* (*AFFF*), 2:18-mn-02873-RMG, ECF No. 3080 (May 5, 2023); ECF No. 4149 (Dec. 5, 2023). The court then limited expert reports and expert discovery to a narrower "trial pool." ECF No. 3080 at 2. The court also created separate procedures for addressing diseases not addressed in the original subset of four diseases. *See* ECF No. 4149. The court did so in recognition of the complexity of litigating "multiple diseases trying to be analyzed at the same time, some of which are quite different from each other." Ex. E, *AFFF*, Tr. of Telephonic Status Conf. (Oct. 31, 2023) at 16:9-12. The court added that "it may be that we will do different bellwethers on different diseases." *Id.* at 16:15-17. A similar principle has held true in other mass litigations: because not all claims can be resolved at once, the most common ones must be prioritized. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2018 WL 4613941, at *2 (E.D. La. Sept. 26, 2018) ("Because of the large number of cases and the varied theories of recovery, it was necessary to prioritize the handling of this litigation. The Court first focused on the 50,000 heart attack and stroke claims.").

Including Multiple Disease Plaintiffs in the first trials also has ramifications for PLG's proposal to hold consolidated bench trials for plaintiffs who are alleging the same disease. In suitable circumstances and with appropriate procedures in place, the United States is willing to discuss bench trials for more than one plaintiff at the same time. *See* MCL 4th § 22.93 ("If the trial is to be of consolidated groups of claimants with comparable exposures *or injuries*, the

6

composition of those groups should be defined during discovery and pretrial motions stages.") (emphasis added). But any benefits of consolidating trials for single Track 1 disease plaintiffs would be negated where plaintiffs who are also alleging non-Track 1 diseases are tried simultaneously.

For all of these reasons, trying the Track 1 Multiple Disease Plaintiff cases first will undermine the Court's discovery track system focusing on particular diseases. The United States therefore moves to amend the Track 1 Discovery Order (D.E. 130) to prioritize trials of the Single Disease Plaintiffs as follows and as set forth in the attached Proposed Order.

<u>First</u>, the composition of the Track 1 discovery pool will remain unchanged, and the parties will move forward with completing fact discovery for all Track 1 plaintiffs on the existing schedule.

<u>Second</u>, PLG shall designate in a filing on the master docket no later than the close of fact discovery which Track 1 plaintiffs are Single Disease Plaintiffs, *i.e.*, Track 1 plaintiffs who are alleging only a Track 1 disease plus other injuries or conditions caused by that Track 1 disease or treatment for the Track 1 disease, and which are Multiple Disease Plaintiffs, *i.e.*, Track 1 plaintiffs who also allege non-Track 1 injuries caused directly by Camp Lejeune water exposure.

<u>Third</u>, expert discovery with respect to Track 1 Single Disease Plaintiffs will be completed on the existing schedule.

<u>Fourth</u>, the first trials in Track 1 will be drawn from the Single Disease Plaintiffs. Trials for Track 1 Multiple Disease Plaintiffs will take place after trials for Track 1 Single Disease Plaintiffs.

**Fifth**, for Track 1 Multiple Disease Plaintiffs, expert discovery will be continued until after the Track 1 Single Disease Plaintiff trials to allow adequate time to address the multitude of additional, independent, non-Track 1 diseases.

## III. Conclusion

The United States has discussed these issues with PLG since February 26, 2024, and shared a proposal closely tracking the above proposal with PLG at that time. However, PLG has not yet provided a firm statement of its position on the United States' proposal, the number of Multiple Disease Plaintiffs that exist in Track 1, or how to deal with the additional challenges presented by Multiple Disease Plaintiffs.

The United States respectfully urges the Court to adopt its proposal to prioritize trials of the Single Disease Plaintiffs in Track 1. In the end, some form of prioritization of the Track 1 cases will be necessary, as the parties and the Court cannot try all 96 remaining[1] Track 1 cases at the same time. Trying the comparatively simpler Track 1 Single Disease Plaintiff cases first will serve the interest of the parties, Court, and public in advancing the fastest resolution for the largest number of claimants.

Dated: April 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

---

[1] To date, four Track 1 plaintiffs have accepted settlement offers through the United States' Elective Option settlement program after their selection for the Track 1 discovery pool.

8

ADAM BAIN
Special Litigation Counsel

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
1100 L Street NW
Washington, DC 20005
E-mail: daniel.c.eagles@usdoj.gov
Phone: (202) 305-0253
Fax: (202) 616-4473

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, a copy of the foregoing Motion to Amend Track 1 Order to Prioritize Trials of Single Disease Track 1 Plaintiffs and Memorandum in Support was served on all counsel of record via the Court's electronic filing system.

*/s/ Daniel C. Eagles*
DANIEL C. EAGLES