# EXHIBIT 2

| | |
|---|---|
| **From:** | jeb@belllegalgroup.com |
| **To:** | Ryan, Patrick J. (CIV) |
| **Cc:** | Zina Bash; Matthew D. Quinn; Kevin Dean; Morgan Derrick; Mike Dowling; James A. Roberts; Dawn Bell |
| **Subject:** | Meet & Confer - December 22 |
| **Date:** | Friday, December 22, 2023 2:32:54 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |
| | image007.png |
| | image008.png |
| | image009.png |

Good evening, Patrick

I am writing to confirm our discussion held today at 11:00 am.

You will recall that Plaintiffs have today served the DOJ with notices of deposition for two Rule 30(b)(6) depositions, including proposed topics for those depositions. My understanding is that the DOJ has started discussions with the relevant agencies concerning the appropriate persons to designate for each respective examination topic. We look forward to receiving the identities of the designees and deposition locations promptly.

Further, you will recall that Plaintiffs have requested the depositions of three fact witnesses. We will serve notices of deposition, including dates, shortly. One of those fact witnesses is a lawyer with the VA or OGC, namely Derek Scadden. In broad terms, we intend to depose Mr. Scadden on the location, identify and storage of VA documents relevant to Camp Lejeune. We will not probe into attorney-client communications.

We again discussed exhibit 4 to the recent Rule 30(b)(6) deposition of the ATSDR. As discussed, the referenced exhibit 4 is a list of 131 files indexed and possessed by the ADSDR and relevant to Camp Lejeune. We have asked that the DOJ promptly produce this index in native form, as well as the identified and collected files referenced therein, and you indicated that you would make inquiries about the status of this issue.

We also discussed the status of the Navy's digitization of muster rolls. Apparently, the DOJ provided such a status update in a letter sent last night. In short, our understanding is that the Navy is continuing to work on this issue but otherwise does not have material updates to share. We therefore requested a meet and confer among the parties' respective technical experts to discuss status and strategy for promptly producing the digitized muster rolls. Please let me know if the DOJ is willing to participate in such a meet and confer. Moreover, we asked that the DOJ provide the name of its vendor representative digitizing these muster rolls. We also advised that failing a prompt delivery of this information, or an agreed reasonable production date, we would be serving a Rule 30(b)(6) deposition notice next week to obtain this information formally.

Further, we discussed in-person inspections of several documents' collections.  We would like a date prior to January 7, 2024, to inspect the boxes referenced by the DOJ in Footnote 10, page 8 of its Cross-Motion for Protective Order filed on December 21, 2023. We accept your offer to inspect

NAVFAC documents on January 2 through January 4, 2024, in Norfolk, VA. Please coordinate with Kevin Dean concerning the logistics of those inspections. Finally, there are the "61 million pages" related to muster rolls. We wish to hold off expending unnecessary resources to review those hard copies until the government can make available the digitized records you have disclosed do exist. In the near future, we will follow up with deposition requests designed to understand more the actual status of that digitization project.

Shortly before our meet and confer, you provided an email containing a list of several additional plaintiffs that the DOJ would like to depose. We will begin collecting dates and locations for these depositions. Further, the DOJ has requested to take the deposition of a treating physician. You did not have any objection to Plaintiffs' Leadership contacting this treating physician in an effort to obtain potential deposition dates.

We expressed concern about the DOJ's selection of a pro se plaintiff for the Track 1 Discovery Pool. As discussed, the DOJ's selection of a pro se plaintiff creates a number of challenging practical, legal and ethical issues. For example, we are concerned about giving advice to this unrepresented plaintiff, yet Plaintiffs' Leadership obviously has a substantial role in the litigation of this pro se plaintiff's case. These dilemmas are challenging, and in our view, it was unnecessary for the DOJ to create these issues. We ask that the DOJ please provide a statement explaining the basis and reasoning for its selection of this pro se plaintiff. If this matter is not resolved informally with the DOJ, we will need to raise the issue with Magistrate Judge Jones.

You will recall that Plaintiffs' Leadership held in abeyance Request Nos. 18-20 of the Corrected First Request for Production. However, I recently sent an email indicating that those requests are now ripe and asking for an immediate production, including of the requested Track 1 Plaintiffs' discovery (Request No. 19). To date, we have not received that response. During our meet and confer, we asked that you make inquiries concerning the status of the DOJ's response.

We also discussed the location of depositions, and we reiterated our objection to plaintiffs' depositions taking place unnecessarily at the DOJ's offices, especially when they are far from plaintiffs' homes. You stated that DOJ intends to leave the negotiation of deposition locations to the individual DOJ attorneys who will be taking the depositions. We expressed that we will be proposing locations such as law firm offices, court-reporter offices or other neutral locations that are convenient to plaintiffs' homes, in part by taking the recommendations from our joint PLG-DOJ court reporter. And we stated that we expect the DOJ to be reasonable and agree to these locations, given that the plaintiffs in this litigation are very often elderly, weak, and/or ill. We understood you to acknowledge this process of our proposing locations convenient to plaintiffs, and you suggested that you expect DOJ to act reasonably. That said, since we spoke, we have received several emails from DOJ attorneys stating that they intend to notice depositions at US Attorneys' offices that are sometimes 2.5 hours away from plaintiffs' residences. Would you please confirm that you are open to plaintiffs' proposing a location in the first instance, at which point the DOJ attorneys can reach out if they have reason to object?

You indicated that the DOJ would schedule all court reporters for the depositions that it notices.

Finally, we agreed that the parties should work out a protocol for marking and identifying deposition exhibits. We will prepare a protocol for the DOJ's consideration.

Please let me know if any of this is inaccurate.

Thank you,

Ed Bell



**Ed Bell**
*Founding Partner*
*President | Charleston School of Law*
**219 Ridge Street**
**Georgetown, SC 29440**
*o:* **843.546.2408**
*f:* **843.546.9604**
jeb@belllegalgroup.com
www.belllegalgroup.com
www.charlestonlaw.edu

  

