IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

IN RE:                                          )
                                                )
CAMP LEJEUNE                                    )
WATER LITIGATION                                )
                                                )
This Document Relates to:                       )
ALL CASES                                       )
                                                )


# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFFS JAMES KEY, II, CAROL BASSANO, EDDIE MAE MILLER, AND RACHAEL ARMSTRONG ON CLJA LEGAL REPRESENTATIVE  PROCEDURE

# TABLE OF CONTENTS

**PAGE**

BACKGROUND ................................................................................................ 1

LEGAL STANDARD ...................................................................................... 8

ARGUMENT .................................................................................................... 9

I.  All moving plaintiffs properly exhausted their administrative remedies under the CLJA. ................................................................................. 9

II.  Plaintiffs Bassano and Armstrong qualify as legal representatives through their appointment by the Onslow County Clerk of Superior Court .............................................................................................. 14

III.  Plaintiff Eddie Mae Miller qualifies as her husband's legal representative because she has the state-law right to assert a wrongful death action on his behalf. .................................................................. 19

IV.  The Government's Litigating Positions Have Made These "Legal Representative" Issues More Pressing ................................................ 22

CONCLUSION ................................................................................................ 27

# TABLE OF CASES AND AUTHORITIES

**PAGE**

**Cases**

*Ahmed v. United States*,
30 F.3d 514 (4th Cir. 1994) ....................................................................12

*Brewer v. United States*,
No. 7:22-cv-00150, 2023 WL 1999853 (E.D.N.C. Feb. 14, 2023) ..............................9, 10, 23

*Burcl v. North Carolina Baptist Hosp., Inc.*,
306 N.C. 214, 293 S.E.2d 85 (1982)........................................................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................9

*Crain v. United States*,
No. 3-02-CV-1022, 2003 WL 23194355 (N.D. Tex. Sept. 11, 2003) ...................25

*Dupree v. Younger*,
598 U.S. 729 (2023)..............................................................................9

*Dawson ex rel. Estate of Dawson v. United States*,
333 F. Supp. 2d 488 (D.S.C. 2004).......................................................24, 25

*Fancher v. United States*,
646 F. Supp. 3d 694 (E.D.N.C. 2022) ....................................................22, 23

*Ford v. United States*,
640 F. Supp. 2d 1065 (E.D. Ark. 2009)....................................................25

*Gagliardi v. Lakeland Surgical Clinic, PLLC*,
2020 WL 5775154 (S.D. Miss. Sept. 28, 2020).........................................20

*Gill v. Rollins Protective Servs. Co.*,
773 F.2d 592 (4th Cir. 1985), *amended* 788 F.2d 1042 (4th Cir. 1986)................8, 9

*Gulf, M. & N.R. Co. v. Wood*,
146 So. 298 (Miss. 1933).......................................................................20

*In re Camp Lejeune North Carolina Water Contamination*,
263 F. Supp. 3d 1318 (N.D. Ga. 2016)......................................................1

*In re Edmundson*,
273 N.C. 92, 159 S.E.2d 509 (1986)..........................................................16

*In re Scarborough*,
261 N.C. 565, 135 S.E.2d 529 (1964)........................................................17

Case 7:23-cv-00897-RJ   Document 185   Filed 05/01/24   Page 3 of 33

# TABLE OF CASES AND AUTHORITIES

**PAGE**

*Janeau v. Pitman Mfg. Co., Inc.*,
No. C-C-90-194-V, 1991 WL 538679 (W.D.N.C. Oct. 25, 1991) .........................................16

*Knapp v. United States*,
844 F.2d 376 (6th Cir. 1988) ............................................................................25

*Mader v. United States*,
654 F.3d 794 (8th Cir. 2011) (en banc) ...........................................................12

*McDavid v. United States*,
292 F. Supp. 2d 871 (S.D.W. Va. 2003) ...........................................................24

*Merritt v. United States*,
No. 7:23-CV-897, No. 7:23-CV-1367-D, 2024 WL 816218 (E.D.N.C. Feb.
27, 2024) ....................................................................................... *passim*

*O'Connell v. United States*,
No. 7:22-CV-138, 2023 WL 4417299 (E.D.N.C. June 8, 2023) ...........................................10

*Pannell v. Guess*,
671 So.2d 1310 (Miss. 1996) ............................................................................19

*Pettengill v. United States*,
867 F. Supp. 380 (E.D. Va. 1994) .......................................................................8

*Stevens v. Howard D. Johnson Co.*,
181 F.2d 390 (4th Cir. 1950) .............................................................................9

*Van Emburgh ex rel. Estate of Van Emburgh v. United States*,
95 F.4th 795 (4th Cir. 2024)............................................................ *passim*

*Warfaa v. Ali*,
1 F.4th 289 (4th Cir. 2021) ..............................................................................26

*Washington v. Dep't of the Navy*,
446 F. Supp. 3d 20 (E.D.N.C. 2020) .............................................................24, 25

*Wozniak v. United States*,
701 F. Supp. 259 (D. Mass. 1988) ....................................................................24

**Statutes**

28 U.S.C. § 2401(b) ..........................................................................................23

28 U.S.C. § 2672..............................................................................................12

# TABLE OF CASES AND AUTHORITIES

**PAGE**

28 U.S.C. § 2675 ..................................................................................................... *passim*

28 U.S.C. § 2675(a) ....................................................................................................10, 11

Camp Lejeune Justice Act (CLJA) ............................................................................. *passim*

Federal Employers' Liability Act (FELA)....................................................................20, 21

Federal Tort Claims Act (FTCA) ............................................................................... *passim*

Mississippi Code Ann. § 11-7-13 .........................................................................19, 20, 21

N.C. Gen. Stat. § 28A-3-1............................................................................................16

N.C. Gen. Stat. § 28A-3-1(2) ......................................................................................16

N.C. Gen. Stat. § 28A-4-1(b) ......................................................................................18

N.C. Gen. Stat. § 28A-26-3(a) ....................................................................................16

N.C. Gen. Stat. § 28A-26-3(b).....................................................................................18

**Court Rules**

Fed. R. App. P. 40(a)(1)..............................................................................................10

Fed. R. Civ. P. 1 ..........................................................................................................1

Fed. R. Civ. P. 17(b)(3)...............................................................................................2

Fed. R. Civ. P. 56(a) ...................................................................................................9

Fed. R. Civ. P. 56(d) ...................................................................................................9

**Regulations**

28 C.F.R. §§ 14.1-14.11..............................................................................................12

28 C.F.R. § 14.2 ....................................................................................................12, 13

28 C.F.R. § 14.2 ..........................................................................................................12

28 C.F.R. § 14.2(a).......................................................................................................12

On behalf of Plaintiffs James Key, II, Patricia Key (the "Key Siblings"), Carol Bassano, Eddie Mae Miller, and Rachael Armstrong (collectively "Plaintiffs"), the Plaintiffs" Leadership Group ("PLG") submits this memorandum of law in support of Plaintiffs" motion for partial summary judgment to resolve recurring disputes regarding the requirements, procedure, and timing of identifying legal representatives pursuing CLJA claims for decedents exposed to the toxic water at Camp Lejeune. The requested determinations would provide much-needed guidance to thousands of Camp Lejeune representative plaintiffs and conserve time, effort, and resources in furtherance of the statutory purpose of the CLJA and of the objectives of Federal Rule of Civil Procedure 1.

## BACKGROUND

In 2022, Congress enacted the CLJA to provide compensation to the numerous long-suffering victims of Camp Lejeune's toxic water—victims whose exposure occurred 37 to 71 years ago. Although the government finally took the contaminated wells at Camp Lejeune out of use in 1987, the government for years failed to notify victims about their toxic exposure. *In re Camp Lejeune North Carolina Water Contamination*, 263 F. Supp. 3d 1318, 1339 (N.D. Ga. 2016). As a result, no plaintiff filed a claim for damages until 1999. *Id.* The government then succeeded in avoiding any liability on timeliness grounds. *Id.*

That changed when Congress passed the CLJA in 2022, 35 years after the last contaminated well was taken out of use. By that time, many of the victims had died of diseases caused by the contaminated water years earlier, leaving their family members to assert claims on their behalf. The CLJA provides a long-awaited remedy to legal representatives of those victims, but it does not provide detail on the process and standards for qualifying as legal representative, leaving it to this Court to provide guidance to the parties. The need for this guidance is palpable now, and steadily increases, as aged and ill veterans continue to die, and the

number of their survivors who need clear guidance and simple, economical procedures continues to grow.

In *Merritt v. United States*, No. 7:23-CV-897, No. 7:23-CV-1367-D, 2024 WL 816218 (E.D.N.C. Feb. 27, 2024), this Court determined that a family member of a non-North Carolina decedent qualifies as a CLJA legal representative by opening an estate in the decedent's domicile without also having to open a North Carolina ancillary estate. The Court further held that the plaintiff had capacity to sue under North Carolina law, as required by Federal Rule of Civil Procedure 17(b)(3). The Court's holding in *Merritt* avoids estate duplication, which can be difficult, expensive, burdensome, and time-consuming for many claimants.

The rationale and spirit of this Court's *Merritt* decision should be applied and extended to solve additional complexities and complications with seeking legal representative status under the CLJA. To give the Court a more thorough understanding of the difficulties for non-North Carolina decedents, the PLG submits the declaration of estate attorney Emmie L. Schulte. *See* Decl. of Emmie L. Schulte.[1] Given the sheer number of CLJA representative claimants, these problems are significant. More than a million people were exposed to the contaminated water at Camp Lejeune. As reported in the April 19, 2024 Joint

---

[1] Law firms representing families who wish to pursue CLJA claims on behalf of a deceased relative have retained Ms. Schulte for probate consulting and analysis services. Schulte Decl. ¶ 4. Ms. Schulte uses her expertise in probate laws across the United States to provide advice about a family member's capacity to be appointed as CLJA legal representative and the options to do so in the state where the decedent was domiciled. *Id.* ¶¶ 2-4. Ms. Schulte's declaration describes in detail the significant obstacles some of her clients have faced in seeking appointment, in some instances having to spend $10,000 to $15,000 in legal fees simply to open an estate. *Id.* ¶5(b), (d), (h), ¶ 7(b). Claimants may have to wait months for an appointment order even after the appointment is granted. *Id.* ¶ 7(a). Nor can they control how long it takes a court in the domiciliary state to appoint an ad litem or set a hearing date to appoint a representative. *Id.* As Ms. Schulte observed, obtaining qualifications and letters may take from four months to over a year depending on court and estate circumstances. *Id.*

Status Report, 190,561 CLJA administrative claims have been filed with the Department of the Navy and plaintiffs have filed 1,740 CLJA complaints in this Court. D.E. 175 ¶¶ 1-2. These numbers increase daily. Many thousands of claims have been filed on behalf of a deceased family member and many more such representative claims will be filed. Absent clear guidance from this Court, lingering questions about legal-representative status could impose enormous costs and risks on the parties, and burdens on the legal system.

Unfortunately, the government has taken legal positions that exacerbate those problems, and it has refused to disclose its position on other questions. For example, as relevant here, the CLJA requires claimants to file an administrative claim with the Navy before filing an action. CLJA, § 804(h). The government takes the position that representative claims are not sufficiently presented to the Navy unless accompanied by written evidence of the applicant's authority to act as the decedent's legal representative. *See* Decl. of Whitney W. Williams ¶ 8, Ex. A. That sounds simple, but in fact causes a number of recurring complications. And for reasons explained below, it violates recent, unambiguous Fourth Circuit precedent.

The government has also refused to disclose its position on whether claimants may use a procedure that Onslow County courts have employed to appoint legal representatives, or whether a spouse of a decedent may sue without appointment when authorized to bring a wrongful-death action by a state statute. And the government has taken the dubious position that representative plaintiffs must file claims with the Navy by August 10, 2024—meaning that any representative plaintiff who has failed to anticipate how this Court will rule on these many complex issues could effectively forfeit his or her claim. The injustice of such a forfeiture could be magnified many thousands of times.

Accordingly, the PLG respectfully files this motion on behalf of four representative plaintiffs who have encountered various challenges in seeking to

bring their representative CLJA claims.

**Plaintiffs James Key, II (Administrative Claim Filed Before Appointment).** Siblings James Key, II and Patricia Key ("Key Siblings") find themselves in a situation that is common among CLJA claimants: An administrative claim was filed on behalf of their deceased mother, Patricia Key, before any family member had qualified as her legal representative. The Key Siblings' parents lived at Camp Lejeune from 1961 through 1963. Key Decl. ¶ 6. Tragically, both parents died from diseases caused by their exposure to Camp Lejeune contaminated water—Patricia from non-Hodgkin's lymphoma and an autoimmune disorder, and James Sr. from Parkinson's disease. *Id.* ¶ 8. Patricia passed away in 2022. Because of James Sr.'s poor medical and emotional condition at that time, he was not appointed as the executor of Patricia's estate until May 2023, nine months after Patricia's administrative CLJA claim was filed on August 10, 2022. *Id.* ¶¶ 10-11. James Sr. then died in January 2024—22 months after his wife. *Id.* ¶ 12. The Key Siblings were thereafter appointed on April 18, 2024, as co-executors of their mother's estate (*id.* ¶ 13) and James Key, II filed a CLJA action on behalf of his mother on April 30, 2024.

**Plaintiff Carol Bassano (Onslow County Estate Procedure).** Thomas Bassano, Carol Bassano's husband, served at Camp Lejeune from May 15, 1958, through January 30, 1959, and again from May 8, 1959, through February 14, 1961. *See* Aff. of Carol Bassano ¶ 3. He died on May 26, 2017 in Ocean County, New Jersey from non-Hodgkin's lymphoma, and he also had a history of prostate and colon cancer. *Id.* ¶ 4. After Mr. Bassano died, Ms. Bassano qualified as the executor for his estate in Ocean County. *See* Yost Decl. ¶ 5. Mr. Bassano's will was probated and his estate was subsequently closed. *Id.*

After the passage of the CLJA, Ms. Bassano retained North Carolina attorney Paula Yost to help her obtain appointment as Mr. Bassano's legal

representative to pursue a CLJA claim. *Id.* Instead of attempting to reopen Mr. Bassano's New Jersey estate, Ms. Yost used the simpler and more efficient procedure that the Onslow County Clerk's Office has established for CLJA representative plaintiffs who have previously opened estates for their decedents ("Onslow County Estate Procedure").

Under the Onslow County Estate Procedure, Ms. Yost first obtained a document from the Surrogate and Clerk of the Superior Court of Ocean County, New Jersey certifying that the letters testamentary issued to Ms. Bassano after Mr. Bassano's death and the documents admitting Mr. Bassano's will to probate are true and correct. Yost Decl. ¶ 6, Ex. A. Ms. Yost then prepared application documents for Ms. Bassano to open an ancillary estate in Onslow County, including the standard AOC Ancillary Application for Probate and Letters Testamentary (AOC E-201). Yost Decl. ¶ 7, Ex. B.

Ms. Yost submitted the certified document and Ms. Bassano's application documents to the Onslow County Clerk. Yost Decl. ¶ 8. On January 26, 2023, the Clerk issued letters testamentary to Ms. Bassano as ancillary executor of her husband's estate for purposes of pursuing a CLJA action. *Id.* ¶ 8, Ex. C. Ms. Bassano filed an administrative claim with the Department of the Navy on behalf of her husband on May 25, 2023 (Bassano Aff. ¶ 7), and a CLJA action on April 12, 2024.

**Plaintiff Rachael Armstrong (Onslow County No Estate Procedure).**
Rachael Armstrong's husband, Everette Armstrong, served at Camp Lejeune for nine months in 1965 and 1966, one month in 1967, and three months in 1969. *See* Decl. of Rachael Armstrong ¶ 3. In 2018, Mr. Armstrong died from kidney cancer while domiciled in New York. *Id.* ¶ 4. Because there was no need to do so, Ms. Armstrong never opened an estate for Mr. Armstrong in New York or any other state. *Id.* ¶ 5. Years later, Ms. Armstrong retained Ms. Yost to assist her in

qualifying as her husband's legal representative under the CLJA. Yost Decl. ¶ 11. Instead of attempting to open an estate for Mr. Armstrong in New York some four years after his death,[2] Ms. Yost used the simpler and more efficient option offered by the Onslow County Clerk of Court where no estate was ever opened for the CLJA decedent ("Onslow County No Estate Procedure").

Under the Onslow County No Estate Procedure, Ms. Yost prepared and filed with the Clerk an Affidavit of No Prior Estate, in which she attested that she had done an appropriate inquiry and determined that no estate was opened following Mr. Armstrong's death or had ever been opened for Mr. Armstrong. Yost Decl. ¶ 12, Ex. D. Ms. Yost also prepared and filed with the Onslow County Clerk application documents for Ms. Armstrong, including the standard AOC Application for Letters of Administration (AOC E-202) since Mr. Armstrong died intestate. *Id*. ¶ 13, Ex. E. On October 7, the same date that the Onslow County Clerk received Ms. Armstrong's application and Ms. Yost's affidavit, the Clerk issued letters of administration to Ms. Armstrong for the purpose of pursuing a CLJA action. *Id*. ¶ 14, Ex. F. Ms. Armstrong filed a CLJA administrative claim on behalf of Mr. Armstrong on November 14, 2022 (*id*. ¶ 6), and a CLJA action on April 12, 2024.

**Plaintiff Eddie Mae Miller (No Appointment Required by State Statute).** Eddie Mae Miller is the widow of James Earl Miller, who was stationed at Camp Lejeune from November 1974 to June 1975 and January to March 1976. *See* Aff. of Eddie Mae Miller ¶ 3. On March 3, 2015, Mr. Miller died at the age of 67 from Parkinson's disease, among other medical problems. *Id*. ¶ 4. The Millers lived in Mississippi when James died. *Id*. Because James was exposed to contaminated

---

[2] *See* Schulte Decl. ¶ 7(a) (noting that Ms. Schulte is monitoring cases pending in New York, Illinois, and Texas in which they are "at the mercy of [the] court to appoint an ad litem if needed, set a hearing date for appointment of a representative, and/or issue letters of authority once a representative has qualified to serve").

water at Camp Lejeune in 1975 and 1976, Ms. Miller filed a CLJA administrative claim with the Department of the Navy on October 5, 2022 (*id.* ¶ 7), and a CLJA action on April 12, 2024.

Ms. Miller is 73 years old and lives on a fixed income in Mississippi. *Id.* ¶ 5. While Mr. Miller was proud to serve his country in the Army and Marine Corps, it was not a financially lucrative career. *Id.* Ms. Miller simply cannot allocate her limited funds towards the legal costs needed to open a domiciliary estate in Mississippi. *Id.* ¶¶ 5-6. And while the Onslow County Procedures are, in general, less expensive, they still involve opening some type of estate, with accompanying costs. Accordingly, Ms. Miller seeks a determination that she qualifies as her husband's legal representative under the CLJA because she qualifies under a Mississippi statute to bring a wrongful death action as his surviving spouse.

All claimants need clarity about the least burdensome method to properly present their pre-suit claims to the Navy. Each of the moving Plaintiffs' circumstances is and will be replicated by numerous others not presently before this Court but equally in need of guidance. To that end, this motion raises the following issues of presentment, legal representative status, and time limitations:

*First*, as to presentment, the Fourth Circuit recently held that a claimant does *not* have to show evidence of representative authority to present his administrative claim and exhaust his administrative remedies under the Federal Tort Claims Act (FTCA). *See Van Emburgh ex rel. Estate of Van Emburgh v. United States*, 95 F.4th 795 (4th Cir. Mar. 12, 2024). The government inexplicably disputes that *Van Emburgh* defeats its contrary position under the CLJA, even though the Fourth Circuit interpreted the same language at issue here.[3] Accordingly, the PLG

---

[3] As required by this Court's Case Management Order (D.E. 23), the PLG conferred with the government about this motion. With respect to the effect of the *Van Emburgh* decision, the government simply responded that the decision spoke for itself.

requests that this Court grant partial summary judgment under *Van Emburgh*, and, hold that all of the plaintiffs here properly presented their claims and exhausted their administrative remedies even though they used methods to open estates that differ slightly from what the plaintiff did in *Merritt* (Armstrong and Bassano), were not appointed as the legal representative prior to filing an administrative claim (the Key Siblings), or never opened an estate in light of state statutory rights (Miller).

*Second*, claimants who seek to move their claim to federal court need guidance as to what "legal representative" means and what actions, if any, they must take to acquire that status to pursue the claims that the Navy denied as cases in this Court. Plaintiffs Armstrong, Bassano, and Miller assert that they are proper legal representatives for their deceased husbands by virtue of the Onslow County Estate Procedure, the Onslow County No Estate Procedure, and the Mississippi statute, respectively. The PLG requests that this Court grant partial summary judgment that they are proper legal representatives under the CLJA.

*Third*, the government contends that, under CLJA § 804(j)(2), all administrative claims must be filed by August 10, 2024. *See* Tr. Mar. 19, 2024 Status Conference at 22-23. Should this Court reject the PLG's position on any of the foregoing issues, the PLG seeks a ruling that representative plaintiffs who failed to perfect their claims may do so after August 10, 2024, either because Section 804(j)(2) does not impose a cutoff date on administrative claims or, in the alternative, because post-cutoff amendments to perfect legal-representative status would be permissible under the doctrines of relation back and equitable tolling.

## LEGAL STANDARD

A motion for partial summary judgment "utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. United States,* 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective*

*Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985), *amended,* 788 F.2d 1042 (4th Cir. 1986), and Fed. R. Civ. P. 56(d)). Summary judgment should be granted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A district court may use summary judgment to resolve "purely legal issues—that is, issues that can be resolved without reference to any disputed facts." *Dupree v. Younger*, 598 U.S. 729, 735 (2023); *cf. Gill*, 773 F.2d at 595 (summary judgment allowed when "inquiry into the facts" is not needed to "clarify the application of the law" (quoting *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950))).

## ARGUMENT

### I. All moving plaintiffs properly exhausted their administrative remedies under the CLJA.

This Court should hold that, under the construction of 28 U.S.C. § 2675 that the Fourth Circuit adopted in *Van Emburgh ex rel. Estate of Van Emburgh v. United States*, 95 F.4th 795 (4th Cir. Mar. 12, 2024), a plaintiff need not qualify as a legal representative at the time that she files an administrative claim in order to satisfy the CLJA's administrative-exhaustion requirement, that the Plaintiffs properly presented their claims and exhausted their administrative remedies, and that they are proper legal representatives under the CLJA..

Although as a general matter the provisions of the FTCA do not apply to CLJA claims, Section 804(h) of the CLJA expressly incorporates the FTCA's administrative-presentment provision, 28 U.S.C. § 2675.[4] Accordingly, a plaintiff

---

[4] As this Court has noted, to establish an FTCA claim, the plaintiff must satisfy the elements of a tort claim cognizable under the law of the state in which the action accrued. *Brewer v. United States*, No. 7:22-cv-00150, 2023 WL 1999853, at *3 (E.D.N.C. Feb. 14, 2023). In contrast, for a claim under the CLJA, the plaintiff "need show only that a relationship between exposure to the water at Camp Lejeune and the stated harm is 'sufficient to conclude that a causal relationship exists' or

may not bring a CLJA action before presenting a claim to the Department of the Navy and before the claim is denied, either expressly or constructively through the lapse of six months.[5]

The Fourth Circuit's recent decision in *Van Emburgh* held that Section 2675 does not require a representative claimant to furnish the administrative agency with evidence of the claimant's legal authority to present a claim on behalf of a decedent and that the failure to do so therefore does not bar a claimant from filing suit upon the exhaustion of the administrative claim.[6]  Under that controlling decision, all of the plaintiffs here properly presented their pre-suit claims to the Navy and exhausted their administrative remedies, whether or not they had qualified as their decedent's legal representative at the time they filed their claim.

In *Van Emburgh*, seven plaintiffs (the decedent's estate, her spouse, and her five children) submitted FTCA administrative claims to the Navy, alleging that a Navy medical center had provided the decedent with negligent care.  The decedent's

---

'sufficient to conclude that a causal relationship is at least as likely as not.'" *Id.* (quoting CLJA § 804(c)). As the *Brewer* court stated, the CLJA "establishes new forms of harm that may serve as a claim, renders new classes of evidence admissible by statute, and removes the imposition of punitive damages." *Id.* Accordingly, the "legal standards of an FTCA claim are clearly different from, and stricter than, a CLJA claim." *Id.* And to avoid any doubt as to the difference between the claims, the Navy has established a specific form to present a CLJA claim which is "separate and distinct from the generic FTCA form." *O'Connell v. United States*, No. 7:22-CV-138, 2023 WL 4417299, at * 4, n.6 (E.D.N.C. June 8, 2023), *report and recomm. adopted by* 2023 WL 4408699 (E.D.N.C. July 7, 2023).

[5] CLJA § 804(h) provides that an individual may not bring an CLJA action before complying with 28 U.S.C. § 2675, the administrative presentment provision of the Federal Tort Claims Act ("FTCA"). In turn, 28 U.S.C. § 2675 states that claimants shall not institute an FTCA action unless they have first presented an administrative claim "to the appropriate Federal agency" (for CLJA claims, the Department of the Navy), and the claim has been denied by the agency in writing or constructively denied by the agency's failure to dispose of it within six months after filing. 28 U.S.C. § 2675(a).

[6] The government's time in which to file a petition for rehearing in *Van Emburgh* expired on April 26, 2024.  *See* Fed. R. App. P. 40(a)(1).

daughter had signed the claim submitted on behalf of the estate.  The daughter was named as executor in her mother's will, but had not been formally appointed under state law to serve as an executor.  95 F.4th at 798.  During discovery, the government questioned the daughter's qualification to represent her mother's estate.  The plaintiffs then unsuccessfully asked a state court to appoint the daughter as the estate representative.  Ultimately, the state court appointed the decedent's spouse as estate administrator for purposes of the FTCA action.  *Id.*

After the Navy denied the claim, the spouse brought an action under the FTCA as representative of the estate.  The district court dismissed the action for lack of subject matter jurisdiction on the ground that the plaintiffs had failed to satisfy the FTCA's administrative-exhaustion requirement because neither the daughter nor her spouse had been appointed as estate administrator at the time the plaintiffs submitted their administrative claims.  *Id.*  The Fourth Circuit reversed. The court determined that the only exhaustion-related jurisdictional requirements imposed by § 2675 of the FTCA were those found in its text: (1)  plaintiffs must present their claims to the appropriate federal agency (§ 2675(a)); (2) when presenting their claims, plaintiffs must state the sum they are seeking for their claims (§ 2675(b)); and (3) plaintiffs must wait for the agency to deny their claims or fail to dispose of them within six months after they are filed (§ 2675(a)).  95 F.4th at 801.

The court declined the government's invitation to expand § 2675 beyond its text.  *First*, the court found that the exhaustion requirement in § 2675 did not incorporate state law, as the government argued.  The FTCA provisions referencing the "law of the place" incorporated state law only for purposes of determining the scope of the government's liability and not for purposes of administrative presentment under § 2675.  *Id.*

*Second*, the Fourth Circuit rejected the government's argument that the

Attorney General's FTCA regulations or Navy regulations impose additional jurisdictional requirements. Specifically, the court distinguished the FTCA regulations contained in 28 C.F.R. §§ 14.1-14.11 as relating only to the administrative-settlement procedures of 28 U.S.C. § 2672 and not the mandatory presentment requirements of 28 U.S.C. § 2675. The court explained that its conclusion was in accord with the vast majority of circuit courts: "Recognizing that § 2672 and § 2675 operate separately, nearly every circuit to have addressed this issue has recognized that the regulations enacted pursuant to § 2672 do not impose jurisdictional requirements." *Id.* at 803. The court identified the Eighth Circuit's decision in *Mader v. United States*, 654 F.3d 794 (8th Cir. 2011) (en banc) as the sole outlier.[7]

In concluding that § 2675 is the "sole source of jurisdictional requirements for the FTCA's administrative exhaustion requirement," the Fourth Circuit distinguished language in *Ahmed v. United States*, 30 F.3d 514 (4th Cir. 1994). In *Ahmed*, the court "briefly mentioned" a requirement from 28 C.F.R. § 14.2 "that an individual submitting an administrative claim under the FTCA must include documentation that they are the legal representative of the claimant." 95 F.4th at 804-805.[8] *Van Emburgh* explained that this statement was dictum and, in any event, did not mean that 28 C.F.R. § 14.2's requirement to present evidence of legal authority was a *jurisdictional* element of § 2675. 95 F.4th at 805. Rather, under a "more exacting review" of this issue, the court "agree[d] with the substantial majority of other circuits that the FTCA's implementing regulations do not impose

---

[7] The government has pointed to *Mader* as the basis for its position on the CLJA.

[8] 28 C.F.R. § 14.2(a) provides that a claim "shall be deemed to have been presented" to the federal agency when the agency receives "written notification of an incident, accompanied by a claim for money damages in a sum certain" and, if filed on behalf of a claimant, evidence of the authority to present the claim as the claimant's legal representative.

jurisdictional requirements related to administrative exhaustion beyond those specified in 28 U.S.C. § 2675." *Id.*

Accordingly, the Fourth Circuit held that the district court had subject matter jurisdiction over the claims brought by the estate and five of the six individual plaintiffs because they satisfied the "bare minimum jurisdictional requirements" of § 2675: the plaintiffs had "submitted their claims to the agency, included a specific valuation of their claims, and waited until after their claims were denied before filing suit." *Id.* at 806.[9]

The Fourth Circuit's holding that Section 2675 has only three jurisdictional requirements applies to the CLJA, which mandates compliance with Section 2675. Plaintiffs here have properly presented their administrative claims to the Navy, thereby exhausting their administrative remedies, because they have indisputably satisfied these three requirements. As set forth in the accompanying Statement of undisputed Facts and attested in the accompanying Affidavits and Declarations of Plaintiffs and their attorneys who filed their claims, each of the Plaintiffs presented their administrative claims to the Navy, included a specific dollar amount for their claims, and waited six months to file their CLJA actions on behalf of their respective relatives.

For example, the Key Siblings complied with those three exclusive requirements when they filed their CLJA claim, even though at that time, due to the dual tragedy of both parents' Camp Lejeune exposure-related deaths, they had not yet been appointed as estate administrators.

Plaintiffs Armstrong, Bassano, and Miller are differently situated. For the reasons set forth in the following sections, the PLG submits that each did in fact

---

[9] The sixth plaintiff filed her individual administrative claim without providing the jurisdictional element of a claim valuation; thus, the court affirmed the district court's dismissal of her claim for lack of subject matter jurisdiction. *Id.* at *9.

qualify as a legal representative of their respective decedents' estates at the time they filed their administrative claims. But if this Court were to reject the PLG's position on those issues, those plaintiffs would be in the same position as the Key Siblings—*i.e.*, having filed administrative claims without first qualifying as legal representatives. Under those circumstances, the PLG requests that the Court hold that Plaintiffs Bassano, Armstrong, and Miller nonetheless have properly presented their pre-suit claims to the Navy and exhausted their administrative remedies, because qualification as a legal representative at the time of filing is *not* required under *Van Emburgh*.

In passing the CLJA and granting victims of Camp Lejeune's water contamination the right to seek compensation 35 years after the last well was taken out of use, Congress clearly did not intend for the Navy or the Department of Justice to force victims' families to navigate costly, burdensome, and time-consuming administrative roadblocks just to file their pre-suit administrative claims. The PLG respectfully requests that this Court make clear that no such roadblocks exist. Because there are no disputed issues of material fact as to Plaintiffs' proper presentation of their claims to the Navy, Plaintiffs are entitled to summary judgment on that issue.

## II. Plaintiffs Bassano and Armstrong qualify as legal representatives through their appointment by the Onslow County Clerk of Superior Court.

This Court should hold that a CLJA plaintiff appointed as a legal representative by the Onslow County Clerk of Superior Court qualifies as a "legal representative" within the meaning of the CLJA. As explained above, Plaintiffs Bassano and Armstrong sought appointment as their respective deceased husbands' personal representatives under procedures the Onslow County Clerk of Superior Court has employed for CLJA claims. For Plaintiff Bassano, whose deceased husband's estate in New Jersey had long been closed, the Onslow County Clerk

issued letters testamentary under the Onslow County Estate Procedure after receiving Bassano's application and proof of her New Jersey appointment. *See* Decl. of Paula Yost ¶¶ 6-8. For Plaintiff Armstrong, who never needed to open an estate for her husband in New York, the Onslow County Clerk issued letters of administration under the Onslow County No Estate Procedure upon receiving Armstrong's application and affidavit from her North Carolina probate attorney, Paula Yost, that no estate had been opened for her husband. *Id.* ¶¶ 11-15.

Mikki W. White, the Administrative Assistant Onslow County Clerk of Court who works on estate filings, confirms that the Clerk's office has opened or re-opened 2,579 CLJA-related estate proceedings in 2023 and 1,102 such proceedings through March 2024. *See* Decl. of Mikki W. White ¶¶ 7-11. Ms. White also represented that the influx of CLJA-related applications has placed a burden on the limited staff in the Clerk's office and resulted in a backlog of some 250 additional CLJA cases. *Id.* ¶ 10. This burden would be ameliorated if the various other options presented by this motion could be utilized as well.

Many claimants have used and presumably will continue to use these Onslow County Procedures—either the Onslow County Estate Procedure or the Onslow County No Estate Procedure—to qualify as legal representatives for their non-North Carolina decedents. Accordingly, it is important for claimants to have this Court's ruling, consistent with and extending the rationale and spirit of *Merritt*, that these Onslow County Procedures are valid means to qualify as a CLJA legal representative, and that the other options deserved in this motion are as well.

**Onslow County Estate Procedure.** A plaintiff who, like Ms. Bassano, was appointed a legal representative under the Onslow County Estate Procedure qualifies as a "legal representative" for purpose of the CLJA consistent with this Court's decision in *Merritt*.

In *Merritt*, the Court determined that Ms. Merritt qualified as her father's

legal representative under the CLJA because (1) she was "the only person who claims to be [her father's] 'legal representative' under the CLJA"; (2) a Missouri state court had appointed her personal representative of her father; and (3) the government had failed to provide any contrary evidence. *Merritt*, 2024 WL 816218, at *2.

Here, a New Jersey State Court appointed Ms. Bassano to serve as her husband's executor after his death. Under *Merritt*, that appointment constitutes "very probative" evidence that she qualifies as a legal representative. *See Merritt*, *id*. at *6. As additional evidence, Onslow County also appointed Ms. Bassano as an ancillary executor based on her prior appointment in New Jersey. This procedure is consistent with this Court's definition of "legal representative" in *Merritt*. In discussions with the PLG, the government has presented no contrary argument, but has refused to say whether it accepts the Onslow County Estate Procedure as valid evidence of legal-representative status.

The Onslow County Estate Procedure also fully complies with North Carolina law. N.C. Gen. Stat. § 28A-26-3(a) provides that a domiciliary personal representative of a nonresident decedent "may be granted ancillary letters" in North Carolina "upon the filing of a certified or exemplified copy of letters of appointment" with the North Carolina clerk of superior court with venue under N.C. Gen. Stat. § 28A-3-1. Venue is proper in Onslow County under § 28A-3-1(2), which provides that, for a non-resident decedent, the venue for the administration of her estate is "any county wherein the decedent left any property or assets or into which any property or assets belonging to this estate may have come." N.C. Gen. Stat. § 28A-3-1(2). That subsection applies to CLJA actions because under North Carolina law, the right to institute a wrongful death claim is an asset of the decedent. *See In re Edmundson*, 273 N.C. 92, 159 S.E.2d 509 (1968) ("The potential right of an administrator of Sandra's estate against the Casualty Company is a chose in action,

an intangible asset"); *Janeau v. Pitman Mfg. Co., Inc.*, No. C-C-90-194-V, 1991 WL 538679, at *7 (W.D.N.C. Oct. 25, 1991) (holding that the decedent's "North Carolina-based assets" included the "statutory right to a death by wrongful act cause of action predicated upon allegedly tortious conduct in North Carolina"). Such a claim constitutes an asset where the tortfeasor resides or "may be found." *In re Scarborough*, 261 N.C. 565, 568, 135 S.E.2d 529, 531 (1964). Thus, Onslow County, where Camp Lejeune is located and the government "may be found," is a proper venue as the situs of Ms. Bassano's intangible asset, her death claim on behalf of her husband.

Accordingly, the Court should recognize the Onslow County Estate Procedure as a valid method for Ms. Bassano and all other claimants who have used or plan to use this process to qualify as CLJA legal representative. It provides an appropriate and legally valid application of *Merritt*'s holding that will in many cases be quicker, more efficient, and less costly than re-opening an estate in the decedent's home state. *See* Schulte Decl. ¶¶ 5,7 (providing numerous examples nationwide of the costs and delays involved in so doing).

**Onslow County No Estate Procedure.** The Onslow County No Estate Procedure that Ms. Armstrong used also satisfies the requirements of the CLJA and Rule 17(b)(3) as construed in *Merritt*. Under that procedure, the Onslow County Clerk issued letters of administration to Ms. Armstrong for the purpose of pursuing a CLJA action. As a result, Ms. Armstrong "is the only person who claims to be" her husband's legal representative, and her appointment by a court of North Carolina court is sufficient evidence supporting that claim, particularly given that the government has presented the PLG with no contrary evidence. *Merritt*, at 5.

The fact that Ms. Armstrong never needed to open a New York estate, and therefore never did, does not disqualify her from serving as her husband's legal representative under the CLJA, because she has been appointed by a North

Carolina court that had the power to make such an appointment. Armstrong Decl. ¶ 5. Under *Merritt*, Ms. Armstrong's authority to serve as CLJA legal representative in this federal district is derived from the Supremacy Clause and the CLJA, not the law of the decedent's home state. *Merritt,* 2024 WL 816218, at *6.

The Onslow County No Estate Procedure also fully complies with North Carolina law. N.C. Gen. Stat. § 28A-26-3(b) permits a North Carolina superior court clerk to issue ancillary letters to "any person who could apply for issue of letters had the decedent been a resident of [North Carolina]" if "the applicant [for a non-North Carolina decedent] and the clerk of superior court have no knowledge of the existence of a domiciliary personal representative." The Onslow Clerk complies with the first part of this provision by requiring applicants to submit an AOC form E-201 (for letters testamentary) or E-202 (for letters of administration). These are the standard forms used for North Carolina decedents and require the applicant to establish that she is qualified to apply as executor or administrator under North Carolina law. *See* Yost Decl. Ex. B, E; White Decl. ¶ 4.

The Onslow County Clerk complies with the second part of § 28A-26-3(b) (no knowledge of a domiciliary personal representative) by requiring an affidavit from the applicant or her attorney attesting that no foreign estate can be located for the decedent. The AOC E-201 and E-202 forms also require the applicant, if seeking to open an ancillary estate where no domiciliary personal representative has been found, to attest that "no other proceeding for probate or for administration is pending in any jurisdiction." *Id.*)

After the Onslow County Clerk confirms (through the affidavit and the affirmation contained within the AOC form) that there is no known foreign estate and that the applicant could apply for issue of letters if the decedent had died in North Carolina (through completion of the AOC form), the Clerk issues letters testamentary or of administration. This procedure is consistent not only with

§ 28A-26-3(b), but also with the discretion the General Assembly affords clerks of court in appointing personal representatives. *See* N.C. Gen. Stat. § 28A-4-1(b) (giving the clerk of court discretion to alter the order of qualified persons for letters of administration if the clerk "determines that the best interests of the estate otherwise require" and discretion to determine who "is most likely to administer the estate advantageously" when applicants are "equally entitled" to be appointed).

Accordingly, the Court should hold that the Onslow County No Estate Procedure as a proper method for Ms. Armstrong and all other claimants who have used or plan to use this process to qualify as CLJA legal representative. Again, it serves as a valid and relatively efficient application of *Merritt*.

### III. Plaintiff Eddie Mae Miller qualifies as her husband's legal representative because she has the state-law right to assert a wrongful death action on his behalf.

Finally, this Court should hold that a plaintiff qualifies as a legal representative under the CLJA where she has a state law right to assert a death claim individually and on behalf of all beneficiaries without opening an estate.

As explained above, Plaintiff Eddie Mae Miller, a Mississippi resident, filed a CLJA action without appointment by a Mississippi court as the representative of her husband's estate because she has a statutory right to bring a wrongful-death action on his behalf without such an appointment. Mississippi Code Ann. § 11-7-13 provides that a wrongful death action may be brought by the personal representative of the deceased or by one or more wrongful death beneficiary (identified as "widow, husband, child, father, mother, sister or brother of the deceased") for the benefit of all entitled to recover. The Millers resided in Mississippi, where Mr. Miller, a Camp Lejeune veteran, died at age 67 from Parkinsons's disease. *See* affidavit of Eddie Mae Miller. The Supreme Court of Mississippi has interpreted that statute as creating an "independent cause of action" available only to "those individuals listed" in the statute. *Pannell v. Guess*,

Case 7:23-cv-00897-RJ   Document 185   Filed 05/01/24   Page 24 of 33

671 So.2d 1310, 1313 (Miss. 1996). Ms. Miller, as Mr. Miller's widow, is a qualifying individual under the Mississippi statute.

*See* Miss. Code Ann. § 11-7-13 (permitting wrongful death beneficiaries to assert a claim for damages "whether an estate has been opened or not"); *Gagliardi v. Lakeland Surgical Clinic, PLLC*, 2020 WL 5775154, at *4 (S.D. Miss. Sept. 28, 2020) (recognizing that the decedent's father was not required to open an estate for his daughter to bring a wrongful death action under § 11-7-13 individually and on behalf of his daughter's wrongful death beneficiaries).[10] Accordingly, as James's widow, Ms. Miller is a legal representative under § 11-7-13 to assert a wrongful death action, individually and on behalf of her husband's beneficiaries, without opening a domiciliary estate in Mississippi.

Under *Merritt*, Ms. Miller's qualification under Mississippi statute also qualifies her to serve as her deceased husband's legal representative under the CLJA. A plaintiff authorized by their home state's statute to sue to recover for injuries to a decedent easily falls within the plain meaning of "legal representative," and, like the plaintiff in *Merritt*, Ms. Miller is the only person who claims to represent her husband.

Other aspects of *Merritt*'s analysis support the view that Ms. Miller is a proper legal representative. In particular, this Court analyzed cases applying the Federal Employers' Liability Act (FELA), and those decisions serve as a helpful analogy here as well. As this Court recognized, FELA restricts the individual authorized to sue on behalf of a decedent to a "personal representative" as a means of identifying a "'responsible person, officially designated as such by the local authorities, who [is] to be presumed to be well informed concerning the decedent's statutory beneficiaries.'" *Id.* (quoting *Gulf, M. & N.R. Co. v. Wood*, 146 So. 298, 300

---

[10] Louisiana and California also permit family members to assert wrongful death claims without first opening an estate. *See* Schulte Decl. ¶¶ 5(h), 6.

(Miss. 1933)).

The CLJA's purpose of designating a "legal representative" the authority to sue is a common-sense one, consistent with that of Mississippi's statute: to identify those recognized as next of kin, entitled to recover under applicable state law.

Ms. Miller satisfies that criterion. The State of Mississippi designates her in § 11-7-13 as one of a limited number of beneficiaries entitled to assert a wrongful death action on behalf of all his beneficiaries. The conclusion of the FELA decisions relied on by this Court in *Merritt*—that as long as the plaintiff is designated as a personal representative in one state, she may seek relief under FELA in a different state without further legal procedures—applies here as well. As the Court noted, this determination "make[s] sense because the 'personal representative' in such a FELA action does not appear for the benefit of the decedent's estate. Rather, the 'personal representative' appears as a statutory trustee under the FELA." *Id.* Thus, the fact that Mississippi law does not require Ms. Miller to open an estate to be entitled to sue under § 11-7-13 does not compromise her capacity to serve as CLJA legal representative.

Accordingly, under *Merritt*, Ms. Miller qualifies to serve as her husband's CLJA legal representative by virtue of her designation under Miss. Stat. Ann. § 11-7-13 to bring a wrongful death action on his behalf. This method of qualification is not only valid but also essential to those like Ms. Miller who do not have the financial resources to open an estate or pay probate attorneys and fees and who live in one of the three states that allow this procedure.[11] Although the government may

---

[11] The Onslow County Procedures present viable options for many CLJA applicants. But the PLG urges this Court to approve of a qualification method similar to that used by Ms. Miller for those who, based on burdensome state law requirements, find it extremely difficult or impossible to open a domiciliary estate. *See* Schulte Decl. ¶¶ 5,7 as examples of such difficulties. Three states, Mississippi, California, and Louisiana, presently allow this. *Id.* at ¶ G. In these hardship cases, the PLG suggests that the Court allow "legal representative" to be defined by virtue of the

protest that allowing a representative plaintiff to file a CLJA action without opening any type of estate is unmanageable, the Navy is already, in practice, allowing surviving next of kin to access a deceased veteran's records without a showing of an estate having been opened, so any practical problems are unlikely to be significant. *See* accompanying Decl. of Mona Lisa Wallace ¶¶ 3-4.

## IV. The Government's Litigating Positions Have Made These "Legal Representative" Issues More Pressing

Resolving the foregoing issues as soon as possible is critical because the government has taken extreme (and disputed) litigating positions with respect to the CLJA. In particular, the government contends that the CLJA's statute of limitations, Section 804(j)(2), bars any plaintiff who does not file an administrative claim by August 10, 2024, from pursuing CLJA relief. If the government prevails on any of the issues presented above, this Court would have the power to clarify that the government's position on the statute of limitations is incorrect and thereby avoid the widespread concern and confusion that might otherwise arise as potentially thousands of plaintiffs scramble to perfect their claims by August 10.

The text of the CLJA has two features pertinent to this analysis. *First*, Section 804(j)(2) provides that "a claim in an action under" the CLJA—which "means a [CLJA] claim … in a ***civil action*** filed in the United States District Court for the Eastern District of North Carolina," not an administrative claim filed with the Navy—"may not be commenced after the later of: (A) "the date that is two years after the date of enactment of [the CLJA]," *i.e.*, August 10, 2024; or (B) the date that is 180 days after the date on which the claim is denied" by the Navy under § 2675. *Fancher v. United States*, 646 F. Supp. 3d 694, 700 (E.D.N.C. 2022) (emphasis added); *see id.* ("The phrase 'claim in an action under' the Camp Lejeune Justice

applicant's legal right to assert a state law wrongful death claim on behalf of the deceased CLJA claimant.

Act is different than simply the word 'claim' in section 804(j)(1)."). *Second*, Section 804(j)(3) provides that "[a]ny applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under this section."

The upshot of those provisions is that the CLJA provides two deadlines for filings claims in this Court but does not provide—and in fact precludes—any deadline by which a plaintiff must file an administrative claim to the Navy. That omission is conspicuous because it contrasts with the FTCA, which plainly provides that plaintiffs are required to file an administrative claim within two years of the claim's accrual. 28 U.S.C. § 2401(b). Thus, CLJA plaintiffs may file administrative claims to the Navy at any time, even after August 10, 2024, and then they can file an action in this Court within six months of the Navy's denial of the claim.

That is the only sensible reading of Section 804(j)(2). The government's contrary position presumably relies on Section 804(j)(2)(A)'s two-year deadline for filing an action. But that section refers to a CLJA action filed in court, not an administrative claim, as this Court held in *Fancher*, 646 F. Supp. 3d at 700. And Congress likely included that provision to create breathing room for the initial cohort of plaintiffs who filed administrative claims immediately upon the CLJA's enactment. It allowed them to "proceed through the administrative process and adequately prepare for litigation" rather than rush into litigation within potentially just months of the CLJA's passage. *Brewer v. United States*, No. 7:22-CV-00150-M-BM, 2023 WL 1999853, at *3 (E.D.N.C. Feb. 14, 2023). Moreover, the CLJA's unlimited window to file administrative claims accounts for the fact that many of the harms that resulted from exposure to water at Camp Lejeune are latent: Injuries incurred long ago may not manifest or be diagnosed for decades to come, especially for those who were children when they resided at Camp Lejeune.

Alternatively, even if the Court ultimately were to hold that the CLJA bars administrative claims filed after August 10, 2024, the Court should clarify either

that (i) any claimant's amendment of his or her claim relating to qualification as a legal representative would relate back to the time of the original administrative filing, or (ii) the statute of limitations would be equitably tolled.

   *First*, in the FTCA context, numerous federal courts, including this one, have held that where the plaintiffs did not qualify as legal representatives until after the FTCA statute of limitations had run, their actions were not barred because the plaintiffs' amendment of their complaints to reflect their proper qualification related back to the time of their administrative filing. *See Washington v. Dep't of the Navy*, 446 F. Supp. 3d 20, 25 (E.D.N.C. 2020) (holding that the plaintiff's official appointment as his son's personal representative, which occurred more than six months after the FTCA denied his administrative claim, related back to the filing of his claim, consistent with North Carolina law);[12] *Dawson ex rel. Estate of Dawson v. United States*, 333 F. Supp. 2d 488, 493 (D.S.C. 2004) (finding that the plaintiff, who was not her father's personal representative when she filed her FTCA action and had not yet reopened her father's estate at the time of the court's decision, could amend her complaint after she was reappointed as personal representative to assert her legal right to bring the action under South Carolina's relation back doctrine); *Wozniak v. United States*, 701 F. Supp. 259, 261 (D. Mass. 1988) (finding that the plaintiff's appointment as administratrix of her husband's estate, completed outside the FTCA statute of limitations, related back to her filing of the administrative claim); *McDavid v. United States*, 292 F. Supp. 2d 871, 876-77 (S.D.W. Va. 2003) (applying West Virginia's relation back doctrine to hold that the plaintiff's appointment as administratrix for her husband's FTCA death claim,

---

[12] *See, e.g., Burcl v. North Carolina Baptist Hosp., Inc.*, 306 N.C. 214, 227, 293 S.E.2d 85, 93 (1982) (following federal court decisions permitting a plaintiff in a wrongful death action, who had not duly qualified as the decedent's personal representative until after the statute of limitations had run, to "show by a new pleading the due qualification and have the pleading relate back to the action's commencement").

completed after the limitations period expired, related back to the filing of her administrative claim).

In a variety of contexts, courts have determined that an FTCA action was not untimely because the plaintiff's administrative filing gave the government sufficient notice of the claim, even if the plaintiff was not appointed as an estate representative until after the limitations period expired. *See Knapp v. United States*, 844 F.2d 376, 379 (6th Cir. 1988) (finding that the plaintiff's right to sue under the FTCA was not affected by her failure to file a corrected FTCA claim form with letters of her authority to represent the estate until after the two-year statute of limitations had expired; her claim gave the government sufficient detail to enable it to investigate); *Ford v. United States*, 640 F. Supp. 2d 1065, 1071-72 (E.D. Ark. 2009) (denying the government's motion to dismiss where the plaintiff sufficiently presented her administrative claim by putting the agency on notice of her husband's death and the claim amount, even though she was not appointed the administrator of her husband's estate until after the FTCA statute of limitations expired); *Crain v. United States*, No. 3-02-CV-1022, 2003 WL 23194355, at *4 (N.D. Tex. Sept. 11, 2003) (holding that the plaintiff had standing to maintain her FTCA action where she timely submitted an administrative claim describing the nature of her father's wrongful death and demanding a certain damages figure but was not appointed administrator until after the FTCA lawsuit was filed).

These FTCA cases, including this Court's *Washington* decision, offer the Court a clear legal path to permit a CLJA claimant or plaintiff to correct any deficiency in her legal-representative status without running afoul of the purported August 10, 2024, filing deadline. Given that the CLJA is a broader statute than the FTCA, it should not be interpreted to be more restrictive or draconian, especially given its statutory purpose to bring long-delayed justice to veterans and their families. As in *Washington* and *Dawson*, any amendment of a CLJA action to add

or correct legal representative qualification relates back to the date of the administrative filing of the original CLJA claim.

*Second,* in the alternative, the doctrine of equitable tolling should apply to Section 804(j)(2). Equitable tolling is a "discretionary doctrine that turns on the facts and circumstances of a particular case." *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (quotation omitted). It applies when a litigant establishes that he has "been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quotation omitted). The doctrine should be invoked when gross injustice would result from enforcing the limitation period against a party. *Id.*

Here, equitable tolling should apply if this Court determines that August 10, 2024, operates as a time bar for those representative claimants who have not properly qualified as legal representatives by that date. As set forth above, the process of obtaining legal representative status for deceased CLJA claimants is more often than not confusing, time-consuming, and complex. And because the CLJA does not define "legal representative," claimants and their attorneys are unsure of how this Court will interpret the term or what actions they must take, if any, to qualify. The family members seeking to assert the rights of their relatives who died after enduring devastating illnesses caused by the government's misconduct are often elderly, with limited income and resources. Given those extraordinary circumstances, "gross injustice" would result if they were time barred from asserting those claims, despite their best efforts under difficult circumstances to comply with the law.

With the CLJA, Congress opened a door to recovery for these families, after application of state law had unjustly foreclosed it. Justice long delayed has now been revived. The imposition of logistical complications and financial burdens should not again foreclose it. Accordingly, if this Court finds that August 10, 2024,

operates as a statute of limitations, it should be equitably tolled in light of the diligent efforts by the claimants to qualify as legal representatives and the significant injustice that would occur if their claims were barred.

## CONCLUSION

This Court's *Merritt* decision applied Fourth Circuit law and common sense to bring proportionality of time, cost, and effort to a recurring CLJA legal representative issue. The PLG respectfully requests that this Court apply the same legal principles, sensibility, and equity to grant Plaintiffs' motion for partial summary judgment to resolve the foregoing, related issues for the guidance and benefit of thousands of similarly situated claimants.

This the 1st day of May, 2024.

<div style="display:flex">

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge Street
Georgetown, SC 29440
*Lead Counsel for Plaintiffs*

*/s/ Elizabeth Cabraser*
Elizabeth Cabraser
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
*Co-Lead Counsel*

*/s/ Robin Greenwald*
Robin Greenwald
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
*Co-Lead Counsel*

*/s/ Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Suite 500
Austin, TX 78701
*Co-Lead Counsel and Government Liaison*

*/s/ Mike Dowling*
Mike Dowling
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, NC 27611
*Co-Lead Counsel*

*/s/ Jim Roberts*
Jim Roberts
Lewis & Roberts, PLLC
Post Office Box 17529
Raleigh, NC 27619-7529
*Co-Lead Counsel*

</div>

<u>*/s/ Mona Wallace*</u>
Mona Wallace
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC  28144
*Co-Lead Counsel*