UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: CAMP LEJEUNE TOXIC WATER EXPOSURE LITIGATION<br><br>This document relates to:<br><br>ALL CASES | PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER DENYING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN DIGITIZED MUSTER ROLLS |

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Plaintiffs' Leadership Group ("PLG") respectfully submits this Memorandum in Support of its Motion To Reconsider Order Denying Plaintiffs' Motion To Compel Production Of Certain Digitized Muster Rolls.

**Background**

The Plaintiffs' Leadership Group ("PLG") respectfully requests that the Court reconsider its Order [D.E. 157] denying as moot the PLG's Motion To Compel Production Of Certain Digitized Muster Rolls (the "Motion to Compel") [D.E. 141].[1]

Prior to filing the Motion to Compel, the PLG learned that the United States Marine Corps ("USMC") and the United States Department of Veterans Affairs ("VA") partnered on a muster roll digitization project specifically related to Camp Lejeune. The digitization project took place from 2013 to 2015 and involved the digitization of almost 61 million pages of muster rolls generated from 1940 to 2005 and specific to Camp Lejeune (the "Project"). Specifically, the Project involved the (a) digitization of muster rolls (b) specifically related to Camp Lejeune (c)

---

[1] The PLG filed a memorandum in support of the Motion to Compel, to which it attached various exhibits. [D.E. 141].

1

covering the period of 1940 to 2005 (d) spanning 61 million pages of records (e) *that are searchable for individual service members*. [D.E. 141-3 at pp 9-10; D.E. 141-4 at p 13].

The PLG propounded its First Request for Production of Documents (the "First Request") was served on September 28, 2023. [D.E. 81-2], with Request No. 3 seeking documents regarding the Project:

> 3. Please produce the ESI, as defined herein, and data created as a result of the digitizing of the 61 million pages of USMC Camp Lejeune Muster Rolls representing over 5 million unique Service Members who were stationed at Camp Lejeune from the 1950s to 1971 which was performed by the USMC via contract beginning in 2013 and completed by December 2015 based on the 2013, 2014, and 2015 VA/DoD Executive Committee Annual Reports.

[D.E. 81-3, at p 6].[2]

Defendant opposed the Motion to Compel as moot on the basis that Defendant had already committed to producing the existing digitized muster rolls and related database in its possession by the end of March 2024. [D.E. 150]. Defendant further advised that "[c]ontrary to PLG's expectation, the present muster rolls on the NAS are not searchable by name. Moreover, there are no expectations that the current USMC digitization project will produce a database that is searchable by name to readily produce muster roll information (without multiple searches or selections)." [D.E. 150]

Newly discovered evidence indicates that the Project or at least a nearly identical project to digitize personnel records for Camp Lejeune to create a searchable database exists and has not been provided to the PLG.

In an undated presentation on the toxic water at Camp Lejeune, the VA identified the following registry as being currently available:

---

[2] As noted in the Motion to Compel, the PLG withdrew the above-quoted request for electronically stored information—i.e., electronic data that must be searched for and identified. Thus, the PLG only requested the specific digital muster rolls generated during the Project.

2

> Marine Corps Unit Diary Database (MUDD) (1940-2005) - From 2014 to 2015, the Marine Corps scanned ~69 million images of historic Muster Rolls (microfilm and microfiche) that were located at MCB Quantico and the National Archives. The images are in a searchable database by year, description, RUG or SSN, organizational unit, location, MMSB reel number (if applicable); and/or through a Full Text search. A search tool was developed for 1950-1990 to facilitate queries.

A copy of the presentation is attached hereto as Exhibit A.

The MUDD database is exactly what the PLG requested in Request No. 3 and what Defendant said was not expected to exist.

## Statement of Law

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b)." "Compared to post-judgment Rule 59(e) motions, Rule 54(b) gives district courts 'broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light.'" *Best v. Butterball, LLC*, No. 4:22-cv-147, 2024 U.S. Dist. LEXIS 17245, at *2 (E.D.N.C. Jan. 31, 2024) (*quoting Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

Only the following circumstances will support a motion under Rule 54(b): (1) "a subsequent trial produc[ing] substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson*, 856 F.3d at 325. This Court has recognized the following factors that support motions to reconsider based upon new evidence:

> (1) the evidence must be newly discovered; (2) the movant [*4] must have exercised due diligence to discover the new evidence; (3) the evidence is not cumulative or merely impeaching; (4) the evidence is material; and (5) the evidence is likely to produce

> a new outcome if the case were retried, or would require the judgment to be amended.

*Best v. Butterball, LLC*, No. 4:22-cv-147, 2024 U.S. Dist. LEXIS 17245, at *3-4 (E.D.N.C. Jan. 31, 2024) ("District courts within this circuit, including this one, have followed a similar approach and applied this test to motions under Rule 54.").

## **Argument**

The MUDD databases identified in the VA presentation constitutes new evidence that the Project or at least a nearly identical database of searchable, digitized personnel records for Camp Lejeune exists. As noted in the Motion to Compel, the importance of the MUDD database is self-evident.

However, the importance of the MUDD database is even more critical because servicemembers cannot currently obtain military records from the National Archives in connection with their Camp Lejeune claims. In support, the PLG attaches three screenshots of the National Archives' service records request portal as Exhibit B. The first three pages show the process of requesting documents if a servicemember identifies that the request is in connection with the Camp Lejeune Justice Act of 2022. Critically, if a servicemember says his request is in connection with the CLJA, the "Continue" button on page 3 is gray, indicating an inability to proceed with the request process. By contrast, if a servicemember says his request is *not* in connection with the CLJA, the "Continue" button is blue, indicating an ability to proceed with the request. *See* Page 4 of Exhibit B.

Shut out of the National Archives, the MUDD database represents a critical mechanism for servicemembers to obtain records on their military service.

WHEREFORE, the PLG respectfully requests that the Court compel the government to produce a the MUDD database identified in the VA presentation attached hereto as Exhibit A, and for such other and further relief as the Court deems just and proper.

*Signatures on Following Page*

| | |
|---|---|
| Date: May 3, 2024 | Respectfully Submitted |

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted pro hac vice)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted pro hac vice)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ Robin Greenwald
Robin L. Greenwald (admitted pro hac vice)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*

/s/ Zina Bash
Zina Bash (admitted pro hac vice)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs and Government Liaison*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I, J. Edward Bell, III, hereby certify that the foregoing document was electronically filed on the Court's CM/ECF system on this date, and that all counsel of record will be served with notice of the said filing via the CM/ECF system.

This the 3rd day of May, 2024.

/s/ J. Edward Bell, III

J. Edward Bell, III