IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No: 7:23-cv-897 |
| | ) | |
| | ) | UNITED STATES' OPPOSITION TO |
| This Document Relates To: | ) | PLAINTIFFS' MOTION TO |
| ALL CASES | ) | RECONSIDER ORDER DENYING |
| | ) | PLAINTIFFS' MOTION TO COMPEL |
| | ) | PRODUCTION OF CERTAIN |
| | ) | DIGITIZED MUSTER ROLLS |

## INTRODUCTION

Plaintiffs ask this Court to reconsider its Order [D.E. 157] denying as moot the Plaintiffs' Leadership Group's Motion to Compel Production of Certain Digitized Muster Rolls [D.E. 141]. Plaintiffs' current Motion is based entirely on a document they believe demonstrates that these digitized muster rolls exist in a different location or format than the records and accompanying database the United States has already produced. Because Plaintiffs are mistaken in this assumption, the Court should deny Plaintiffs' Motion. The United States has already produced the data and relevant database at issue, and the document Plaintiffs cite does not merit reconsideration of the Court's Order.

## BACKGROUND

Plaintiffs requested digitized muster rolls in their First Set of Requests for Production ("RFP"), specifically Request No. 3. The United States met with Plaintiffs in Quantico, Virginia on January 30, 2024, for an inspection of a Network Attached Storage ("NAS") device in the possession of the United States Marine Corps ("USMC"), which housed the records responsive to this request. The United States conveyed to Plaintiffs that the NAS at Quantico, VA is the only potential location of digitized muster rolls and any associated database from the 2013 to 2015 digitization project. *See* Exhibit 1 (email from United States to Plaintiffs dated March 1, 2024). On March 29, 2024, the United States produced the digitized muster rolls and database stored on the NAS device. *See* Exhibit 2 (letter from the United States to Plaintiffs dated March 29, 2024). The NAS database has been referenced by different names by different people over the years, and this includes the name "Marine Corps Unit Diary Database" ("MUDD"). *See* Exhibit 3 at 2 (Decl. of Scott Williams); Exhibit 4 at 2 (Decl. of Dr. Patricia Hastings).

1

## ARGUMENT

The United States has confirmed that the data and related database produced from the NAS to Plaintiffs represent the only digitized documents and database that currently exist in response to RFP 1, No. 3. Exhibit 3 at 2-3. The only "new evidence" that Plaintiffs have put forward in their current Motion is a PowerPoint produced by the United States through discovery that lists an alternative name for the data and database. As the author of the document and the originator of the alternative name confirm in their respective declarations, this name does not refer to any records or databases that are different than those that have already been produced. There are no other records and there is not another database to produce in response to RFP 1, No. 3 at this time. Plaintiffs' Motion should therefore be denied.

Plaintiffs' prior Motion to Compel was denied as moot because the Court recognized that the United States had already committed to producing any records in its possession that were responsive to RFP 1, No. 3. D.E. 157. Plaintiffs' current Motion asks the Court to reconsider that decision and compel production of "the MUDD database." D.E. 192 at 3. Under Rule 54 of the Federal Rules of Civil Procedure, courts have the discretion to revise interlocutory orders any time before final judgment. *U.S. Tobacco Coop. v. United States*, No. 5:18-cv-473, 2019 WL 8323614, at *1 (E.D.N.C. Nov. 8, 2019). However, motions for such relief are "disfavored and should be granted sparingly." *Id*. Rule 54 contemplates challenges based on (1) an intervening change in controlling law; (2) the discovery of additional evidence not previously available; and (3) the avoidance of a clear error or a manifest injustice, *Id.* Here, Plaintiffs allege only one of Rule 54's elements—that there is "new evidence" of a "database of searchable, digitized personnel records for Camp Lejeune" called "the MUDD database." D.E. 193 at 4. Plaintiffs alleged "new evidence,"

however, is merely a different name for the digitized muster rolls and database already produced by the United States.

I.  **The United States Produced the So-called "MUDD" Database, in its Entirety, to Plaintiffs via the United States Marine Corps' Network Attached Storage Device.**

The MUDD database, highlighted in Plaintiffs' Motion, is the exact same database housed on the NAS device.[1] Exhibit 3 at 2-3. The United States produced this database, in its entirety, to Plaintiffs.

Plaintiffs claim that a PowerPoint referencing the MUDD Database proves that the digitized muster rolls exist in a different form or location from the NAS. The author of that document, Dr. Patricia Hastings, confirms that she never personally accessed the database and that the MUDD acronym was provided to her for a presentation discussing the use and limitations of research registries by Scott Williams, a Program Manager for the USMC Camp Lejeune Program. Exhibit 4 at 2. Mr. Williams' declaration confirms this and asserts that "Dr. Hastings nor any other entity outside the USMC has had direct access to the system." Exhibit 3 at ¶ 8.

Mr. Williams further states that he personally came up with the phrase "Marine Corps Unit Diary Database," or "MUDD," to describe the contents of the system of digitized Marine Corps unit diary and muster roll records located at Marine Corps Base Quantico, Virginia. *Id.* at ¶ 6. Mr. Williams explains that these digitized muster rolls and the unit diary information were referenced by different names by different people over the years. The system has been referenced as the "SAN" (Storage Area Network) likely based on the system's IT configuration. *Id.* at ¶ 5. The system has been referred to as the "NAS" and also referenced by the name of the proprietary

---

[1] Pursuant to the Scott Williams Declaration, the USMC has confirmed that the "NAS" database that Plaintiffs currently possess is the same as the "MUDD" database that Plaintiffs are requesting here. Exhibit 3 at 2-3. Further information regarding the VA presentation referencing the "MUDD" database can be found in the Dr. Patricia Hastings Declaration. Exhibit 4 at 2.

software used to access the digitized information, "PaperVision." *Id.* According to Mr. Williams, his use of the acronym "MUDD" better described the records contained within the system than the system that housed the records. Mr. Williams' declaration reaffirms that "the 2013-2015 Marine Corps muster roll and unit diary digitization effort that resulted in the system, the Marine Corps muster roll digitization effort mentioned in the 2014 and 2015 Department of Veteran Affairs/Department of Defense Joint Executive Committee Annual Report, and the MUDD mentioned in the VA Advisory Committee on Disability Compensation PowerPoint presentation are in fact the same effort and/or product." *Id.* at ¶ 9. The MUDD database is not a separate database from what has already been produced to Plaintiffs. *Id.* There is only one version of this database that has ever existed, and Plaintiffs are in possession of it.

This Court has already recognized that "[w]hile the materials on the NAS may not include all of what Plaintiffs seek, 'Rule 34 only requires a party to produce documents and information already in existence.'" D.E. 157 at 5 (quoting *Frasier Healthcare Consulting, Inc. v. Grant Mem'l Hosp. Reg'l Healthcare Ctr.*, No. 2:12-CV-87, 2014 WL 12701042, at *4 (N.D.W. Va. Jan 9, 2014)). Moreover, "[a] party cannot be compelled to create, or cause to be prepared, new documents solely for their production." *Causey v. Williams,* No. 4:22-cv-1475, 2023 WL 4851196, at *2 (D.S.C. July 28, 2023) (quoting 7 James Wm. Moore, et al. Moore's Federal Practices § 30.12[2] (3d ed. 2014)).

In addition, the United States has reiterated to Plaintiffs that the USMC is continuing its work on a muster roll digitization project, unrelated to the Camp Lejeune Justice ACT ("CLJA"). The United States has provided Plaintiffs with updates on this project and has agreed to make this information available to Plaintiffs upon the project's completion. As it currently stands, however, there is no separate muster roll database that the United States is withholding from production.

4

Aside from the production of the NAS, the United States is in possession of no known additional documents that are responsive to RFP 1, No. 3. Accordingly, Plaintiffs' Motion for Reconsideration should be denied.

## II. Even Though There Is a More Efficient Process for Plaintiffs to Obtain Records from NARA Through DOJ, Plaintiffs Are Not Precluded from Obtaining Records From NARA.

Plaintiffs state that "the importance of the MUDD database is even more critical because service members cannot currently obtain military records from the National Archives [and Records Administration ('NARA')] in connection with their Camp Lejeune claims." D.E. 193 at 4. While understandable, this characterization of the current NARA record request process is incorrect. Regardless of whether a request is connected to the CLJA, a veteran or next-of-kin of a deceased veteran may still use NARA's website to order a copy of their military records. *See* D.E. 193-2. On NARA's website, when "Yes" is selected in response to "[d]oes your request pertain to the Camp Lejeune Justice Act of 2022 or the PACT Act?," the screen will display the following text:

> Supporting documents are not needed to submit an initial claim under the Camp Lejeune Justice Act of 2022. The Navy Judge Advocate General may request records for claimants at a later date, but not as a part of the initial claim filing…**If you wish to proceed with submitting a request, please scroll back up and change your answer to the previous question to "No."**

*See* D.E. 193-2 at 1-2 (emphasis added). Thus, the NARA website give individuals permission to change their response to "No" when requesting records related to the CLJA in order for the NARA system to process the CLJA records request.

Additionally, the DOJ spent several months in advance of the start of fact discovery coordinating with multiple agencies to streamline the request, digitization, and production of agency records, including military records stored at NARA by the service branches. *See* Exhibit 5 (letter from the United States to Plaintiffs dated November 20, 2024). As of May 8, 2024, the

United States has produced approximately 31,103 pages of records stored at NARA in response to Plaintiff's First Request for Production, Request No. 19.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Reconsider Order Denying Plaintiffs' Motion to Compel Production of Certain Digitized Muster Rolls should be denied.

Dated: May 8, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

SARA MIRSKY
PATRICK RYAN
CINDY HURT
Trial Attorneys

*/s/ Joseph B. Turner*
JOSEPH B. TURNER
DC Bar No. 1766124
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: Joseph.B.Turner@usdoj.gov
Telephone: (202) 436-6895

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

6

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 8, 2024, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

                                                */s/ Joseph B. Turner*
                                                JOSEPH B. TURNER

7

Case 7:23-cv-00897-RJ   Document 199   Filed 05/08/24   Page 8 of 8