IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:
CAMP LEJEUNE WATER LITIGATION

Case No: 7:23-cv-897

This Document Relates To:
ALL CASES

UNITED STATES' OPPOSITION TO
PLAINTIFFS' LEADERSHIP GROUP'S
MOTION FOR RECONSIDERATION

## I. INTRODUCTION AND BACKGROUND

Plaintiffs have presented no new evidence or any other grounds to justify modifying the Court's March 12, 2024, Order [D.E. 195]. Rather, Plaintiffs' Motion for Reconsideration ("MFR") [D.E. 195] is simply the latest in a series of efforts to ignore the negotiated provisions of the Stipulated Order Establishing Protocol for Document Collection and Production ("ESI Protocol")—a protocol that was agreed to by the parties after "substantive discussions" and entered by the Court to "govern the discovery, collection, and production of documents, including ESI, in this Action." [D.E. 52]. As the Court previously recognized, the ESI Protocol is enforceable and governs the form of production for the Agency for Toxic Substances and Disease Registry's ("ATSDR") water modeling project files. The United States has complied with the ESI Protocol in producing both "exotic" and "non-exotic" records from the water modeling project files.

Although Plaintiffs' original Motion to Compel focused on concerns about the usability of the water modeling project files, the MFR has tellingly abandoned any concerns regarding usability. In fact, Plaintiffs now concede they were able to reassemble a water modeling file using the United States' productions to date. Plaintiffs now complain they are unable to discern the results of their reconstructed water model. But this is a question pertaining to Plaintiffs' experts' work – not whether the files as produced pursuant to the ESI Protocol must be produced on a "mirrored hard drive." As the United States has consistently asserted, producing documents on a "mirrored hard drive" would contravene the ESI Protocol, guarantee disclosure of privileged information, and create organizational and tracking problems with this large set of data. Because Plaintiffs have provided no basis to overturn the Court's order denying the Motion to Compel, Plaintiffs' MFR should be denied.

## II. LAW AND ARGUMENT

Plaintiffs have not presented any "new evidence" that justifies modifying the Court's March 12, 2024, Order ("Order") [D.E. 159]. Instead, following the United States' full compliance with the Order, Plaintiffs make a conclusory claim that their internal understanding of the water modeling project files is imperfect. This is not a presentation of new evidence[1] – it is merely a reflection of the work Plaintiffs and their experts must undertake while analyzing the properly produced water modeling project files. Accordingly, Plaintiffs' Motion should be denied.

### A. Standard

Under Rule 54, courts have the discretion to revise interlocutory orders any time before final judgment. *U.S. Tobacco Coop. v. United States*, No. 5:18-cv-473, 2019 WL 8323614, at *1 (E.D.N.C. Nov. 8, 2019). However, motions for such relief are "disfavored and should be granted sparingly." *Id.* Especially in the context of a motion for reconsideration of an order to compel, this is a "high" standard and requires the moving party to "particularize [the] further discovery sought." *Johnson v. City of Fayetteville*, No. 5:12-cv-456, 2014 WL 3738310, at *4 (E.D.N.C. July 29, 2014) (adopting M & R of Jones, J.). When deciding a motion to reconsider, "the court must also recognize that public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing the questions that have already been decided." *Id.* (cleaned up).

While Rule 54 contemplates challenges based on (1) an intervening change in controlling law; (2) the discovery of additional evidence not previously available; and (3) the avoidance of a clear error or a manifest injustice, *U.S. Tobacco Coop.*, 2019 WL 8323614, at *1, Plaintiffs here

---

[1] Indeed, the only exhibit attached to Plaintiffs' MFR is a PowerPoint that was attached to Plaintiffs' original Motion to Compel. [*Compare* D.E. 195-1 *with* D.E. 143-3]. This PowerPoint included only hypothetical issues Plaintiffs *could* encounter while working with the project files. To date, Plaintiffs have not articulated any specific technical issues regarding the as-produced project files.

2

Case 7:23-cv-00897-RJ    Document 203    Filed 05/10/24    Page 3 of 12

argue exclusively that there is "new evidence" warranting a different outcome. [D.E. 195 at 3]. Reconsideration of a prior order under this analysis is only warranted "when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Johnson*, 2014 WL 3738310, at *4 (internal markings and citations omitted). A "conclusion based upon speculation" does not suffice to demonstrate that reconsideration is warranted. *Boykin Anchor Co., Inc. v. Wong*, No. 5:10-cv-591, 2012 WL 937182, at *3 (E.D.N.C. Mar. 20, 2012) (Jones, J.). In short, a motion for reconsideration "is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." *Id.* at *2 (internal quotations and citations omitted).

### B. The United States Fully Complied With the Court's Order.

In the Order, the Court found that, pursuant to the ESI Protocol, the United States was entitled to produce "non-exotic" files following standard processing and privilege review. [D.E. 159 at 8]. The Order further provided that the United States was required to produce "exotic" water modeling project files natively, consistent with its stated commitment to do so "pursuant to the Protocol." [*Id.* at 3; 8-9]. The United States has complied with both aspects of the Order. On March 27, 2024, the United States completed its ESI Protocol-compliant production of the water modeling files, with the exception of documents under review for potential privilege assertions. (*See* Mar. 27, 2024, letter from S. Mirsky, attached as Exhibit 1). And on April 11, 2024, the United States produced 83,673 files in native format, accompanied by a detailed spreadsheet generated from the metadata of these files that correlated each native document to its processed, ESI Protocol-compliant counterpart. (*See* Apr. 11, 2024, letter from S. Mirsky, attached as Exhibit 2; *see also* excerpts[2] from Water Modeling Cross Reference spreadsheet, attached as Exhibit 3).

---

[2] This cross-referencing spreadsheet contains 83,673 entries and is unwieldy when converted to PDF. Exhibit 3 is a representative sample (covering the beginning and ending rows) of the contents of the file.

Plaintiffs themselves acknowledge that the United States' native production enabled them to "build" a water model. [D.E. 195 at 4]. As a result, Plaintiffs have seemingly dropped their previous argument that the United States' form of production would hinder their ability to reconstruct a water model. In their current Motion, Plaintiffs' only complaint is that they cannot confirm from the data whether the model Plaintiffs have constructed is "*the*" water model ATSDR relied upon. *Id.* But a "reconsideration motion" does not afford a party the opportunity "to present a better or more compelling argument that the party could have presented in the original briefs." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp.2d 617, 619 (M.D.N.C. 2005). The project files are responsive to a compromise the Parties reached to resolve some of Plaintiffs' broad Requests for Production. Namely, the United States agreed to Plaintiffs' proposal that certain Requests for Production would be satisfied if the United States produced "ATSDR's 'water modeling' . . . complete project files." [Mot. to Compel Ex. 3, D.E. 143-4, at 7]. Pending finalization of the ongoing privilege review of the standard documents, the United States has produced *exactly* what Plaintiffs requested—*all* of the water modeling project files—in the format compliant with the ESI Protocol and the Court's Order. There is simply nothing more to produce.

Moreover, the United States has consistently represented that the operative modeling files were contained on CDs that accompanied ATSDR's final report; these files were produced months ago. [*See, e.g.,* D.E. 122, 22:23-23:25]. Plaintiffs also do not explain why they believe that a "mirror copy" of the entirety of the project files, including privileged documents, is the only way to analyze the water model they have constructed, nor do they explain why they believe that their questions about the data cannot be answered via expert review or deposition testimony.[3] This

---

[3] Plaintiffs suggest that the Parties are not "playing with the same deck of cards, or model in this case . . . ." [D.E. 195 at 5]. As the United States has stated before, the United States' experts received the water modeling project files exactly as they were produced to Plaintiffs in this case. The United States' experts do not have an upper hand because of any separate method of production of these files.

conclusory speculation does not justify revisiting the Order. *See Boykin*, 2012 WL 937182, at *3 (a "conclusion based upon speculation" does not warrant reconsideration).

On several occasions, the United States has invited Plaintiffs to meet and confer regarding any specific, technical issues they have encountered with the water modeling project files. (*See, e.g.,* Feb. 2, 2024, email from S. Mirsky to E. Bell, attached as Exhibit 4; *see also* Ex. 2). To date, Plaintiffs have identified no such issues, nor have they sought a meet and confer on this matter.

Finally, while Plaintiffs speculate that a mirrored copy of the project files would be "easier" to navigate or understand, "the Rules do not require a party to produce ESI in the form most helpful to the opposing party." *Jordan v. United Health Grp.*, No. 15-CV-00442, 2017 WL 11563206, at *1 (W.D.N.Y. Aug. 25, 2017) (cleaned up); *see also N. Crossarm Co. v. Chem. Specialties, Inc.*, No. 03-C-415-C, 2004 WL 635606, at *1 (W.D. Wis. Mar. 3, 2004) ("But regardless of the direction in which the dispute runs, neither the letter nor the spirit of Rule 34 mandates that a party is entitled to production in its preferred format."). Rather, the Rules "protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party," while recognizing that "[s]ome electronically stored information may be ordinarily maintained in a form that is not reasonably usable by any party." Fed. R. Civ. P. 34, advisory committee's note to 2006 amendment. Because some kinds of data are simply more difficult to process, produce, and review, it is axiomatic that "discovery need not be perfect, only reasonable." *D.R. Distribs. v. 21 Century Smoking, Inc.*, 616 F. Supp.3d 769, 776 n.4 (N.D. Ill. 2022); *see also* Fed. R. Civ. P. 34, advisory committee's note to 2006 amendment ("it has become increasingly difficult to say that all forms of electronically stored information, many dynamic in nature, fit within the traditional concept of a 'document.'"). In short, simply because complex, technical, and voluminous data is challenging

to analyze does not make the production format unreasonable. And here, it does not warrant reconsideration of the Order.

The exotic files inherent in water modeling, compounded by the large overall volume and interspersed "standard" documents—including e-mails, PDFs, and Word documents—means there is not necessarily a "perfect" way to produce the project files. The United States' productions here are more than reasonable because they comply with the ESI Protocol and the Court's Order.

### C. No New Facts or Changed Circumstances Make the ESI Protocol Unenforceable.

As the United States previously noted, stipulated ESI Protocols like the one entered in this case can only be modified upon a showing of good cause. *See., e.g., In re: Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 8:19-md-2879, 2021 WL 7083238, at *4 (D. Md. Jan. 22, 2021) (Grimm, J.). Further, the Court ruled that production of "all Exotic Modeling Files natively in accordance with the relevant Production Specifications" was entirely "consistent with the text of the ESI Protocol Production Specifications and the complementary requirements of Rule 34 . . . ." [D.E. 159 at 8]. Plaintiffs have not introduced any new evidence warranting reconsideration of this conclusion.

There is nothing in the ESI Protocol that requires the full reproduction of data in multiple formats. [*See, e.g.*, D.E. 52 at ¶ 15; D.E. 159 at 6]. The United States already exceeded the requirements of the ESI Protocol by providing Plaintiffs with file tree reports that demonstrated the structure and contents of the project files and inviting them to identify key folders for native production—an invitation to which Plaintiffs have never responded. (*See, e.g.,* Ex. 2; Ex. 4).

Moreover, under Rule 34(b)(2)(E)(iii), a party is not required to produce the same information more than once or in more than one format. Here, the United States initially produced the project files in compliance with the ESI Protocol. This production included a load file

6

containing searchable metadata fields for all files, image files for standard data types, and native files for exotic file types. [*See* D.E. 151-5; 151-6, 151-7, 151-8]. The United States then identified 83,763 exotic files within that production and produced them again in native, unprocessed format. (Ex. 2). This production was accompanied by a comprehensive spreadsheet[4] detailing each document's file path, its source folder, its corresponding document ID within the ESI Protocol-compliant production, the ESI Protocol-compliant load file filepath, the file extension, and the filename to facilitate the identification and location of the produced native files. (Ex. 3). Despite the United States' invitation to participate in this initial identification process—and later, to identify any files Plaintiffs believed the United States may have overlooked (Ex. 2)—Plaintiffs have not identified any specific or additional exotic files requiring a full native production, and instead continue to insist solely on a "mirrored copy" of these tens of thousands of files. Importantly, as this Court noted in the Order, the project files contain a significant number of standard files for which there is no need for a native production. [D.E. 195 at 8].

The requested mirrored copy amounts to a second form of production for all standard data—which Plaintiffs have raised no objections to receiving in processed form—and an extraordinary *third* form of production for the exotic data. The United States has been unable to locate any authority granting such an unprecedented request, but Courts around the country have emphasized that the plain language of Rule 34(b)(2)(E)(iii) requires only one form of production: either "the form in which [the ESI] is ordinarily maintained *or* in a reasonably usable form or forms. The Rule clearly requires one or the other, *but not both*." *Ak. River Power Auth. v. Babcock & Wilcox Power Generation Grp.,* No. 14-cv-638, 2015 WL 2128312 (D. Colo. May 5, 2015)

---

[4] This spreadsheet is quite similar to the "solutions" Plaintiffs themselves proposed in response to the United States' concerns about organization and tracking at various points during this dispute. (*See, e.g.,* Ex. 4).

(first emphasis in in original).[5] There is simply no new evidence and no authority suggesting that reconsideration—in the form of compelling multiple forms of the same data—is warranted here.

### D. Plaintiffs Fail to Provide Compelling Reasons to Require Production of a Mirrored Copy of the Hard Drive.

The United States made clear in the initial briefing on the Motion to Compel that a mirrored, fully native production of the full project files runs afoul of standard e-discovery industry best-practices and risks confusion and chaos in light of the huge volume of differing formats of data. *See, e.g., U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 244 (S.D. Cal. 2015) (citing The Sedona Conference Principles); *see also* Resp. in Opp. [D.E. 151] at 9-10. Plaintiffs do not appear to dispute these contentions in the MFR. The production of almost 84,000 files natively already introduces a significant level of difficulty in tracking produced data and ensuring its integrity throughout this litigation. *Id.; accord Burd v. Ford Motor Co.,* No. 3:13-cv-20976, 2015 WL 3705679, at *1 (S.D.W.V. June 12, 2015) (declining to order production of source code in an editable format, because permitting changes to the code "would make the resulting code unrepresentative of the code" at issue in the litigation). Ordering a mirrored hard drive will create significantly more difficulty in tracking produced data because it will introduce tens of thousands of additional native files, including standard files such as e-mails, PDFs, and Word documents, into the litigation with limited ability to trace their origin and authenticity.

---

[5] *See, also, e.g., Aguilar v. Imm. & Customs Enf't Dviv. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 362 (S.D.N.Y. 2008); *Yeti Coolers, LLC v. Mercatalyst, Inc.*, No. 1:22-cv-1337, 2023 WL 5336955, at *3 (W.D. Tex. Aug. 17, 2023) (declining to compel re-production of native files previously produced as PDFs); *Jordan v. United Health Grp.*, No. 15-cv-442, 2017 WL 11563206, at *1 (W.D.N.Y. Aug. 25, 2017) (declining to order a third form of production after a spreadsheet was produced in both native and printed form); *Pastin v. Allstate Ins. Co.*, No. 2:17-cv-1503, 2018 WL 10229727, at *2 (W.D. Penn. Sept. 18, 2018) (declining to order native production that would "be duplicative of what has already been produced in PDF format, solely to satisfy Plaintiffs' paranoia"); *Vox Marketing Grp. v. Prodigy Promos L.C.*, No. 2:18-cv-632, 2019 WL 6173776, at *2 (D. Utah, Nov. 20, 2019) ("Requiring the Vox Parties to make a second form of production of the same information would violate Rule 34(b)(2)(E)(iii) . . . .").

In addition, and as Plaintiffs acknowledge, the United States has "concerns about privileged materials being contained in the 'mirror image.'" [D.E. 195 at 5]. The project files are not merely a collection of technical files compiled for the purpose of running a water model. To be clear, all technical, or "exotic" files, have already been produced natively to Plaintiffs as described above. (*See* Ex. 2). During the privilege review of the water modeling project files that the Department of Justice ("DOJ") is conducting, reviewers have identified documents transmitted between DOJ and ATSDR within this litigation amongst the non-exotic water modeling project files. These findings underscore that a "mirror image" production would guarantee the production of privileged information.

Plaintiffs have not articulated any reason why they are entitled to a "mirror image" of the entirety of the water modeling files. The inclusion of privileged materials from this litigation within such a "mirror image" drive is one more reason why the Order should stand as is.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration should be denied.

(signatures on following page)

Dated: May 10, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

LEAH M. WOLFE
Senior Litigation Counsel, E-Discovery


     */s/ Sara J. Mirsky*
SARA J. MIRSKY
NY Bar No. 5147590
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: sara.j.mirsky@usdoj.gov
Telephone: (202) 616-8362

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2024, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

              */s/ Sara J. Mirsky*
              SARA J. MIRSKY