# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No: 7:23-cv-00897 |
| | ) | |
| | ) | UNITED STATES' RESPONSE TO |
| This Document Relates To: | ) | PLAINTIFFS' MOTION FOR |
| ALL CASES[1] | ) | PARTIAL SUMMARY JUDGMENT |

---

[1] Because Plaintiff Leadership Group ("PLG") stylizes its motion as relating to "ALL CASES," the United States does as well. But the summary judgment record, and the relief sought, are particular to four specific cases: *Miller v. United States* (7:24-cv-00348); *Bassano v. United States* (7:24-cv-00349), *Armstrong v. United States* (7:24-cv-00350), and *Key v. United States* (7:24-cv-00382). Thus, the appropriate stylization should include these individual cases and case numbers; the motion should also be filed on the individual dockets. *See* CMO 2, D.E. 29 at 3.

# TABLE OF CONTENTS

Table of Contents................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction........................................................................................................................ 1

Background ......................................................................................................................... 1

Standard of Review ............................................................................................................ 3

Argument ............................................................................................................................ 4

    I.    The Court should grant partial summary judgment in favor of Ms. Bassano, Ms. Armstrong, and the Key Siblings.............................................................................................. 4

        A.    Ms. Bassano, Ms. Armstrong, and the Key Siblings are legal representatives with capacity to sue................................................................................................................... 4

        B.    The Bassano, Armstrong, and Key claims were properly exhausted. ......................... 5

    II.    The Court should deny summary judgment as to Ms. Miller's claim............................. 7

        A.    Ms. Miller is not a legal representative and does not have capacity to sue................. 7

        B.    The Court should reserve judgment on the CLJA's statute of limitations and equitable tolling until those issues are ripe........................................................................................ 11

        C.    Alternatively, the Court may deny the motion as to Ms. Miller without prejudice, pursuant to CMO 2................................................................................................................ 14

Conclusion ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................... 3, 4

*Brown v. Bos. & M.R. Co.*,
186 N.E. 59 (Mass. 1933) ................................................................................ 10

*Burley v. Douglas*,
26 So.3d 1013 (Miss. 2009).......................................................................... 8, 9

*Calderon v. Ashmus*,
523 U.S. 740 (1998)........................................................................................ 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................................... 3

*Chafin v. Chafin*,
568 U.S. 165 (2013)............................................................................. 12, 13, 14

*Davis v. Piper Aircraft Co.*,
615 F.2d 606 (4th Cir. 1980) ........................................................................... 10

*Douse v. United States*,
7:23-cv-01183 (E.D.N.C. Nov. 21, 2023)....................................................... 15

*Flast v. Cohen*,
392 U.S. 83 (1968).......................................................................................... 12

*Gulf, M. & N.R. Co. v. Wood*,
146 So. 298 (Miss. 1933)................................................................................. 10

*In re Capitol Broadcasting Co., Inc.*,
19 F.4th 385 (4th Cir. 2021) ........................................................................... 13

*In re: Camp Lejeune Water Litigation*,
No. 7:23-cv-897, No. 7:23-cv-1367-D, --- F. Supp. 3d ---, 2024 WL 816218 (E.D.N.C. Feb.
27, 2024) ................................................................................................... passim

*Loughrin v. United States*,
573 U.S. 351 (2014)........................................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................... 4

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003)........................................................................................ 12

*Scott v. Harris*,
550 U.S. 372 (2007)........................................................................................... 4

*United States v. Venters*,
15 F. App'x 657 (10th Cir. 2001) .................................................................... 14

*Van Emburgh ex rel. Estate of Van Emburgh v. United States*,
95 F.4th 794 (4th Cir. 2024) ..................................................................... 2, 6, 7

*Whitaker v. Monroe Staffing Servs., LLC*,
42 F.4th 200 (4th Cir. 2022) ..................................................................... 12, 13

**Statutes**

28 U.S.C. § 2675....................................................................................... 2, 6
45 U.S.C. § 51............................................................................................... 10
45 U.S.C. § 59............................................................................................... 10

CLJA, § 804 ............................................................................................................... 1

Miss. Code. Ann. § 11-7-13 (2019) ....................................................................... 8

Case 7:23-cv-00897-RJ   Document 208   Filed 05/22/24   Page 4 of 21

## INTRODUCTION

The Court should grant PLG's motion as it applies to Carol Bassano and Rachael Armstrong, because both Ms. Bassano and Ms. Armstrong filed administrative claims as legal representatives of the individuals whose harms they allege. The Court should also grant PLG's motion as it applies to James Key, II and Patricia Key (the "Key Siblings"), because although the Key Siblings did not file administrative claims as legal representatives, they have since been appointed as legal representatives with regards to the claim they had filed.

The Court should deny, however, PLG's motion as it applies to Eddie Mae Miller, because Mississippi's wrongful death statute is not sufficient to qualify her as a "legal representative" with capacity to sue under the Camp Lejeune Justice Act ("CLJA"). Unlike the other plaintiffs, no state court of competent jurisdiction has authorized Ms. Miller to manage the legal affairs of a decedent's estate. Further, although PLG requests a determination related to the statute of limitations and equitable tolling, those questions are not yet ripe.

## BACKGROUND

The CLJA requires that claimants "comply[] with section 2675 of title 28, United States Code," the administrative exhaustion statute found in the Federal Tort Claims Act ("FTCA"). CLJA, § 804(h). To date, more than 227,000 administrative claims have been filed with the Department of the Navy under the CLJA. By comparison, the Navy's Tort Claims Unit typically processes around 2,000 administrative claims under the FTCA per year. The Navy has tried to work cooperatively with plaintiffs' attorneys, including members of PLG, to develop new solutions that balance the need to ingest an unprecedented volume of administrative claims with both legal and practical safeguards to ensure that those claims are what they purport to be.

One such solution, which was used by the Plaintiffs at issue here, was to allow claims to be "bulk filed" as a comma-separated value ("CSV") file, similar to a spreadsheet. Although

administrative tort claims are typically filed individually, using a standardized PDF or paper form (i.e., an "SF-95"), the Navy allowed CLJA claimants' attorneys to instead submit several claims at once through a CSV file. The CSV file included fields for similar basic information, such as the claimant's name, the alleged exposure period, and the types of injuries being asserted. For CLJA claims filed by legal representatives, the CSV included fields for the agent's name and "agent capacity," such as "administrator" or "legal guardian." To utilize this CSV process, the Navy required that claimants' attorneys also provide a cover letter certifying the authorizations to file such claims. In other words, claimants' attorneys were not required to submit proof of authorization with a claim, but were asked to at least identify the representative, describe the type of authorization being asserted, and also certify that such authorization *could* be proven. Further, nothing in this CSV process precluded a claimant from instead filing an individual SF-95.

Over the past three months, three major developments have affected the filing of representative claims. ***First***, on February 27, 2024, this Court issued its decision that an executor or administrator appointed by a non-North Carolina court may act as a CLJA "legal representative" without having also been appointed an ancillary administrator by a North Carolina court. *See In re: Camp Lejeune Water Litigation*, No. 7:23-cv-897, No. 7:23-cv-1367-D, --- F. Supp. 3d ---, 2024 WL 816218 (E.D.N.C. Feb. 27, 2024) (hereinafter "*Merritt*"). ***Second***, on March 12, 2024, the Fourth Circuit published its opinion in *Van Emburgh ex rel. Estate of Van Emburgh v. United States*, 95 F.4th 794 (4th Cir. 2024). In that opinion, the Fourth Circuit held that 28 U.S.C. § 2675—the administrative exhaustion provision at issue here—requires only three elements: (1) that the claim be "presented" to "the appropriate federal agency"; (2) that the claim state a sum certain damages demand; and (3) that the claim either be finally denied or deemed denied at the claimant's option after six months. 95 F.4th at 801. In so holding, the Fourth Circuit distinguished

prior precedent that had implied that additional, regulatory requirements were jurisdictional. *See id.* at 804 (discussing *Ahmed v. United States*, 30 F.3d 514 (4th Cir. 1994), and *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275 (4th Cir. 2000)). ***Third***, on April 9, 2024, the Navy announced its launch of the Camp Lejeune Justice Act Claims Management Portal ("Claims Portal") to further simplify and streamline the process for claims filed under the CLJA.

As part of its Claims Portal rollout, the Navy has continued to work with PLG attorneys to address potential issues and answer questions about the filing process. Relevant to PLG's motion, the Navy explained that in order to "*adjudicate* a claim, the filer must submit sufficient evidence to enable the Department of the Navy to investigate the factual basis for the claim," including the claimant's name, their alleged injury, a sum certain, and their signature. D.E. 187-31 at 3 (April 11, 2024 email from Danielle Bianchi to Whitney Wallace Williams) (emphasis added). In addition, claims submitted through the Claims Portal on behalf of someone else—including estate claims—"must identify the . . . [f]ull name of the party filing on the injured party's behalf" and "must include a statement *explaining the legal basis* upon which the filer is entitled to make a claim for damages on behalf of the injured party." *Id.* (emphasis in original). The requirements for the Claims Portal are thus consistent with the requirements for CSV filers—for a claim to be reviewed through this process, the claimant must explain the nature of his or her representation, but does not need to submit proof of such representation with the initial filing.

## STANDARD OF REVIEW

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248-49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

<u>**ARGUMENT**</u>

The United States agrees that Ms. Bassano, Ms. Armstrong, and the Key Siblings qualify as legal representatives and have exhausted their claims. The United States disagrees, however, that a Mississippi wrongful death statute may be used to qualify Ms. Miller as a legal representative. Further, although PLG asks this Court to address the statute of limitations and equitable tolling, those issues are not yet ripe before the Court. The statute of limitations is not even arguably implicated for any plaintiff at this time, and accordingly, PLG improperly seeks an advisory opinion. The Court may revisit the issue after August 10, 2024 upon a more complete record and when a ruling would have a legal effect on a plaintiff's action.

**I.  The Court should grant partial summary judgment in favor of Ms. Bassano, Ms. Armstrong, and the Key Siblings.**

    *A.  Ms. Bassano, Ms. Armstrong, and the Key Siblings are legal representatives with capacity to sue.*

The CLJA generally allows an "individual . . . or the legal representative of such an individual" to bring an action in this Court. Although the CLJA does not define who is a "legal representative," this Court held that a plaintiff appointed by a non-North Carolina court qualifies as a "legal representative" with capacity to sue, even without opening an ancillary estate in North

Carolina state court. *Merritt*, 2024 WL 816218, *9. The Court's reasoning did not turn on which state court appointed the legal representative, or what process that state court adopted. Rather, the Court looked only to "the Missouri court's appointment of Merritt as Colonel Marsden's personal representative and the plain meaning of 'legal representative'[.]" *Id.* at *2.

Ms. Bassano, Ms. Armstrong, and the Key Siblings have each been appointed as personal representatives by the Onslow County Clerk of Superior Court. That the Onslow County Clerk applied different processes is immaterial, in the same way that a personal representative appointed through a will might rely on a different process than a personal representative appointed without a will. *See Merritt*, 2024 WL 816218, at *9 (acknowledging that an "executor" named in a will and an "administrator" not named in a will are both "personal representatives") (quoting *Personal Representative*, Black's Law Dictionary (11th ed. 2019)).

In addition, having been appointed by a state court of competent jurisdiction, Ms. Bassano, Ms. Armstrong, and the Key Siblings each have capacity to sue. As this Court explained in *Merritt*, Rule 17(b)(3) and North Carolina law govern a representative's capacity to sue. *Id.* at *4 (citing *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 129 (3d Cir. 2002)). In determining capacity to sue under Rule 17(b)(3) and North Carolina law, this Court "accept[ed] as very probative evidence that a state court of competent jurisdiction . . . has appointed a person to serve as the administrator for the decedent." *Id.* at *6. Again, the different processes available through the Onslow County Clerk do not alter the conclusion. Consistent with the facts and holding in *Merritt*, each of the court-appointed plaintiffs is a legal representative with capacity to sue.

### B. The Bassano, Armstrong, and Key claims were properly exhausted.

In addition to being legal representatives with capacity to sue, Ms. Bassano, Ms. Armstrong, and the Key Siblings each exhausted their administrative claims. The CLJA says that "[a]n individual may not bring an action under this section before complying with [28 U.S.C.

2675].” Section 2675(a) states “[a]n action shall not be instituted upon a claim against the United States for money damages for . . . personal injury or death . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [the claim is finally denied or deemed denied].” Section 2675(b) also bars any action “for any sum in excess of the amount of the claim presented to the federal agency [except in certain circumstances].” Thus, Section 2675 contains three elements: (1) a plaintiff “must present their claim to the appropriate federal agency”; (2) the plaintiff “must state the sum they are seeking for their claim”; and (3) the plaintiff “must wait either for the claim to be ‘finally denied by the agency’” or for the claim to be deemed denied at the election of the plaintiff. *Estate of Van Emburgh by and through Van Emburgh v. United States*, 95 F.4th 795, 801 (4th Cir. 2024).

Ms. Bassano, Ms. Armstrong, and the Key Siblings, through their attorneys, each submitted administrative claims to the Navy that identified both the underlying claimant and the legal representative. Each administrative claim also stated a sum certain. And each administrative claim had been pending for at least six months when the lawsuit was initiated. Thus, § 2675 was satisfied in each case.

Under *Van Emburgh*, the administrative claim statute, § 2675, did not require that the Key Siblings qualify as legal representatives at the time when they filed their claim. In *Van Emburgh*, the administrative claims were submitted by the decedent’s daughter, who had not yet qualified as the estate representative. 95 F.4th at 798. The eventual plaintiff (the decedent’s spouse) was only appointed after the administrative claims were filed. *Id.* at 799. The Fourth Circuit rejected the government’s argument, based on regulations governing the filing of administrative claims, that the fact that the claims were originally filed by someone not appointed as a representative was a jurisdictional deficiency; the panel instead held that “Section 2675 does not empower the Attorney

General or the Navy to adopt jurisdiction-defining requirements via regulation." *Id.* at 802. Thus, the plaintiffs "did not need to satisfy the requirements set forth therein before filing suit in order for federal courts to have jurisdiction to review their claims." *Id.* at 805.

So too here. Similar to *Van Emburgh*, the administrative claim was submitted by the Key Siblings, who had not yet qualified as estate representatives. The Key Siblings were only appointed after the administrative claim was filed. And although Navy regulations require that the Key Siblings qualify as estate representatives before filing their administrative claims, under *Van Emburgh*, the Key Siblings "d[o] not need to satisfy the requirements set forth therein before filing suit in order for federal courts to have jurisdiction to review their claims." *Id.* at 805. As the United States has explained, *see* PLG Mem. at 7, n.3, the Fourth Circuit's decision speaks for itself.[2]

## II. The Court should deny summary judgment as to Ms. Miller's claim.

### A. Ms. Miller is not a legal representative and does not have capacity to sue.

Whereas Ms. Bassano, Ms. Armstrong, and the Key Siblings have each been appointed personal representatives by a state court, Ms. Miller has not. PLG nonetheless asserts that Ms. Miller qualifies as a legal representative because "she has a state law right to assert a [wrongful] death claim individually and on behalf of all beneficiaries without opening an estate." PLG Mem. at 24. The United States disagrees.

As a preliminary matter, the issue is not whether Ms. Miller is "authorized by [her] home state's statute to sue to recover for injuries to a decedent." PLG Mem. at 25. It is whether she is authorized *by the CLJA* to sue for such injuries as a "legal representative" of the decedent. And

---

[2] *Van Emburgh* distinguishes "the mandatory presentment requirement of Section 2675(a) with the settlement procedures of Section 2672." 95 F.4th at 803 (quoting *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987)). Thus, *Van Emburgh* does not preclude the Navy from requiring information or evidence related to estate appointment when determining how to investigate and resolve claims submitted through its Claims Portal.

there is no indication that the CLJA relies upon Mississippi's wrongful death statute. *See Merritt*, at \*9 ("West Virginia's wrongful death statute does not apply in this case."). Thus, the Mississippi statute that Ms. Miller relies upon offers little insight.

Similarly, there is no indication that the Mississippi wrongful death statute is intended to empower Ms. Miller to pursue any action other than the one provided for by that statute. *See Burley v. Douglas*, 26 So.3d 1013, 1016 (Miss. 2009) ("The [Mississippi wrongful-death] Statute creates a new and independent cause of action in favor of those named in the statute."). Ms. Miller's ability to pursue a particular state cause of action does not make her a "legal representative" under the CLJA. As this Court explained in *Merritt*, a legal representative is a person who "with respect to [a decedent's] property, stand[s] in his place and represents his interests, whether transferred to them by his act or by operation of law." 2024 WL 816218, at \*2 (quoting *Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 597 (1886)). Although the Mississippi statute may allow Ms. Miller to stand in her husband's place for the narrow and specific purpose of bringing a Mississippi wrongful death action, the state statute does not make her a "legal representative" generally, such that it transfers to her an interest in a CLJA action.

A closer examination of the Mississippi wrongful death statute further illustrates that it does not, in and of itself, qualify Ms. Miller as a legal representative. The Mississippi statute allows an action for wrongful death to "be brought in the name of the personal representative of the deceased person . . . for the benefit of all persons entitled under law to recover, *or* by the widow for the death of her husband . . . *or* all parties interested may join in the suit." Miss. Code. Ann. § 11-7-13 (2019) (emphases added). Under Mississippi law, a "personal representative" is one "who manages the legal affairs of another because of incapacity or death," such as an executor or administrator of the estate. *Burley*, 26 So.3d at 1018. Thus, by using the disjunctive "or," the

Mississippi statute clearly distinguishes a "personal representative," who manages the legal affairs of the estate, from a widow like Ms. Miller, who has a narrower interest. *See Loughrin v. United States*, 573 U.S. 351, 357 (2014) ("As we have recognized, that term's ["or's"] 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings.'") (quoting *United States v. Woods*, 571 U.S. 31, 45-46 (2013)).

PLG's application of Mississippi's wrongful death statute to the CLJA is also unworkable. The statute Ms. Miller relies upon also allows a wrongful death action to be brought by "all interested parties." Miss. Code. Ann. § 11-7-13 (2019). Under Mississippi law, anyone who "qualifies as an heir of the deceased also qualifies as an interested party under the wrongful-death statute." *Burley*, 26 So.3d at 1021. Thus, transplanting the Mississippi wrongful death statute into the CLJA would mean that any and every "heir" could assert a CLJA claim for the same decedent. Mississippi law has already created tension among potentially duplicative claims. PLG elsewhere describes a situation where a Mississippi decedent's son is seeking appointment, over the objection of the decedent's widow and despite not being identified as the executor in the decedent's will. *See* D.E. 187-2 at ¶ 5.h (Shulte Decl.). PLG's flexible definition of "legal representative" would lead to duplicative and conflicting claims.

Even if the Mississippi statute qualified Ms. Miller as a legal representative without an estate appointment, Ms. Miller would still lack capacity to sue under Rule 17(b)(3). As this Court explained in *Merritt,* the two inquiries are distinct: "[I]t is possible to be the real party in interest . . . and yet lack capacity to sue [under Rule 17(b)]." 2024 WL 816218, at *4 (quoting Wright & Miller, § 1542, at 469) (alteration in original). Further, Rule 17(b)(3) requires application of North Carolina law—not Mississippi law. *Id.* at *4. And although the Supreme Court of North Carolina might permit a non-resident "legal representative" to litigate without ancillary administration, the

Supreme Court of North Carolina presumably would not adopt Mississippi's wrongful death statute, particularly when North Carolina's own wrongful death statute requires that the action be brought by the "personal representative or collector of the decedent." *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 610 (4th Cir. 1980) (quoting N.C. Gen. State. § 28A-18-2). Ms. Miller is neither the "personal representative," nor is she the "collector of the decedent." Thus, she has no capacity to sue on behalf of James Miller's estate under North Carolina law.

PLG's reference to the Federal Employers' Liability Act ("FELA") does not support its position. As an initial matter, even assuming that the quoted rationale for FELA's personal representative requirement applied to the CLJA, nothing about that rationale suggests that the narrow grant of a right to pursue a wrongful death action under Mississippi law is sufficient to render Ms. Miller a general "legal representative" of the decedent for CLJA purposes. Furthermore, FELA raises distinct issues from the CLJA. An authorized personal representative under FELA "has been actually and legally designated as the statutory trustee . . . by a lawful appointment." *Gulf, M. & N.R. Co. v. Wood*, 146 So. 298, 300 (Miss. 1933); *see also* 45 U.S.C. § 51 (enumerating beneficiaries); 45 U.S.C. § 59 (survival right of action of person injured). Accordingly, some courts have held that FELA allows a plaintiff to avoid certain state law requirements (like ancillary administration) before representing an estate in a FELA action. *See, e.g.*, *Wood*, 146 So. at 300; *but see Brown v. Bos. & M.R. Co.*, 186 N.E. 59, 60-61 (Mass. 1933). The CLJA, by comparison, does not identify any statutory trustee; nor does it describe for whose benefit the "legal representative" acts, except for the "individual." Thus, even if the North Carolina Supreme Court might look past North Carolina law in determining capacity to bring a FELA action, there is no indication that the North Carolina Supreme Court would apply Mississippi law in determining capacity to bring a CLJA action. *See Merritt*, 2024 WL 816218, at *6 ("[T]he

Supreme Court of North Carolina would recognize the effect of the Supremacy Clause and acknowledge that the CLJA is the law in North Carolina.").

The United States appreciates that additional costs may be associated with opening estates. *See* PLG Mem. at 26 ("This method of qualification is not only valid but also essential to those like Ms. Miller who do not have the financial resources to open an estate or pay probate attorneys and fees[.]"). But avoiding those costs is not a basis for circumventing the requirement that a claim be brought by the decedent's "legal representative." A legal representative is one who stands in the place of another, such as the personal representative of a decedent's estate. Although Mississippi law may allow Ms. Miller to pursue a state statutory wrongful death claim, the CLJA requires that she seek appointment to pursue a CLJA claim on behalf of James Miller.

### B. The Court should reserve judgment on the CLJA's statute of limitations and equitable tolling until those issues are ripe.

PLG's request for a decision on the proper statute of limitations under the CLJA is premature. There is no dispute that, at a minimum, plaintiffs have until August 10, 2024 to submit an administrative claim to the Navy.[3] That date has not yet passed, and PLG cannot contend that any plaintiff has filed an administrative claim that is even arguably untimely. PLG nonetheless

---

[3] Indeed, although PLG asserts in its brief that its interpretation of the statute of limitations is "the only sensible reading of Section 804(j)(2)," PLG Mem. at 28, multiple firms within PLG have adopted the United States' position in their public messaging to potential claimants. *See, e.g.*, Bu Decl., Ex. A (Lieff Cabraser website stating "the government has made it possible to seek compensation if you file a claim with the Navy by August 9, 2024"); Bu Decl., Ex. B (Ward & Smith website describing "the impending deadline for all claims in this litigation to be filed in August"); Bu Decl., Ex. C (Motley Rice website stating "[t]he Camp Lejeune deadline is August 9, 2024"). And numerous other firms associated with PLG have relied on the United States' position to encourage potential claimants to "consult with an attorney immediately." Bu Decl., Ex. D (James Scott Farrin website); *see also* Bu Decl., Ex. E (Mandell Boisclair & Mandell website stating "You Have Limited Time to Act" and "those affected by water contamination at Camp Lejeune have only two years from when the statute was enacted to file a lawsuit"); Bu Decl., Ex. F (Pangia Law Group website stating "[t]he time to file claims under the Camp Lejeune Justice Act is limited; it will expire on August 9, 2024. So, it's essential to act quickly.").

seeks a ruling that there is no deadline whatsoever for plaintiffs to file an administrative claim or that plaintiffs are entitled to equitable tolling on the supposition that a hypothetical plaintiff might miss that deadline at some point in the future. It would be improper to address those abstract legal issues based on a theoretical set of facts that has not come to pass.

"Article III requires 'a genuine, live dispute between adverse parties, thereby preventing federal courts from issuing advisory opinions.'" *Merritt*, 2024 WL 816218, at *3 (quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020)). "When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III." *Flast v. Cohen*, 392 U.S. 83, 96 (1968). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)) (alteration in original).

Also flowing from Article III, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). "The doctrine of ripeness arises from the case or controversy requirement of Article III." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) (citing *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013)). "A case is not ripe for judicial

determination 'if the plaintiff has not yet suffered injury and any future impact remains wholly speculative.'" *Id.* (quoting *Doe v. Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013)).

A ruling on the statute of limitations here would not affect "the rights of litigants in the case," and would thus be an impermissible advisory opinion. *Chafin*, 568 U.S. at 172. Regardless of when the statute of limitations expires, Ms. Miller cannot pursue her CLJA claim because she is not a legal representative with capacity to sue. A ruling on the appropriate statute of limitations would not cure this deficiency because the statute of limitations is not the bar to her claim.

Moreover, the statute of limitations issue is not yet ripe because it would only resolve future (uncertain) disputes that arise after August 10, 2024. Rather than resolve a "case or controversy," PLG asks the Court "to clarify that the government's position on the statute of limitations is incorrect and thereby avoid the widespread concern and confusion that might otherwise arise as potentially thousands of plaintiffs scramble to perfect their claims by August 10." PLG Mem. at 27. The Court lacks jurisdiction to issue an advance ruling to "determine a collateral legal issue governing certain aspects of [claimants'] pending or future suits." *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (holding that Article III barred habeas petitioner's declaratory judgment suit to determine applicable statute of limitations); *see also In re Capitol Broadcasting Co., Inc.*, 19 F.4th 385, 394 (4th Cir. 2021) ("[A]s the Media Entities framed their interest during oral argument, they want the Court to use its supervisory powers to establish a clear process for district courts to follow in the future to not have this happen again. Such broad guidance is precisely the sort of advisory opinion on abstract propositions of law that the Court lacks jurisdiction to provide.") (internal quotations and citations omitted).

For similar reasons, Ms. Miller's requests for clarification of relation-back and equitable tolling are also not ripe. Because Ms. Miller has not been appointed an estate representative, there

is nothing to which to "relate-back." Similarly, because the statute of limitations has not yet elapsed, there is nothing to "equitably toll." PLG identifies no live facts or circumstances for the Court to apply. PLG's request for a determination of relation-back or equitable tolling would depend entirely on "a hypothetical state of facts," making any opinion advisory. *Chafin*, 568 U.S. at 172. Indeed, PLG acknowledges that "[e]quitable tolling is a 'discretionary doctrine that turns on the facts and circumstances of a particular case.'" PLG Mem. at 31 (quoting *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021)). Without the appropriate record, such as whether "extraordinary circumstances" prevented the timely filing of the claim, a ruling on equitable tolling would be advisory. *See United States v. Venters*, 15 F. App'x 657, 660 (10th Cir. 2001) (concluding, in habeas context, that equitable tolling could not be determined until after filing of an untimely claim, at which point "the record will be sufficient to determine whether the requisite 'extraordinary circumstances' are present to the magnitude necessary to merit equitable tolling"); *see also Merritt*, 2024 WL 816218, at *3 ("Article III requires 'a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions.'") (quoting *Carney*, 592 U.S. at 58); October 30, 2023 Hr'g Tr. at 58:5-8 (Chief Judge Myers explaining "the nature of this litigation is such that having particularized facts with a live issue that we can then rule on will give you your best opportunity to get answers.").

### C. Alternatively, the Court may deny the motion as to Ms. Miller without prejudice, pursuant to CMO 2.

CMO 2 ordered that "all CLJA actions on individual dockets are stayed pending selection of Plaintiffs for discovery and trial and further orders of this Court." D.E. 23 at 4. This stay was intended to allow the Parties to focus their resources on a pool of 100 "Track 1 Discovery Pool Plaintiffs" to work up for potential bellwether trials, rather than litigate every case. Ms. Miller is not a Track 1 Discovery Pool Plaintiff (in fact, her complaint was filed only a few weeks before

PLG's motion). Thus, Ms. Miller's individual action, *Miller v. United States*, 7:24-cv-00348, is stayed. *See, e.g.*, *Douse v. United States*, 7:23-cv-01183 (E.D.N.C. Nov. 21, 2023) (text order denying motion for partial summary judgment without prejudice "pursuant to the Case Management Order No. 2").[4]

<u>**CONCLUSION**</u>

The United States, through the Navy and the Department of Justice, is working to process and resolve an unprecedented volume of hundreds of thousands of CLJA claims. The United States understands that different claimants may satisfy those requirements in different ways, depending on their varying circumstances. Thus, the United States does not oppose PLG's motion as to the plaintiffs who sought and received court appointment—Ms. Bassano, Ms. Armstrong, and the Key Siblings. The United States opposes, however, PLG's motion as to Ms. Miller, because she relies solely on an inapplicable state statute.

The thrust of PLG's motion raises complaints and issues regarding the statute of limitations and equitable tolling, but those issues are not presently before the Court. The Court should grant PLG's motion as to Ms. Bassano, Ms. Armstrong, and the Key Siblings, deny PLG's motion as to Ms. Miller, and do no more.

---

[4] The United States consents to a lift of the stay as to *Bassano v. United States* (7:24-cv-00349), *Armstrong v. United States* (7:24-cv-00350), and *Key v. United States* (7:24-cv-00382).

Respectfully submitted on May 22, 2024.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

ADAM BAIN
Special Litigation Counsel, Torts Branch
Environmental Torts Litigation Section

*/s/ Nathan J. Bu*
NATHAN J. BU
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
U.S. Department of Justice
P. O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: nathan.j.bu@usdoj.gov
Telephone: (202) 705-5938
Fax: (202) 616-4989

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2024, a copy of the foregoing document was filed via the

Court's ECF system and served on counsel of record through the ECF system.

/s/ Nathan J. Bu
NATHAN J. BU