IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br>CAMP LEJEUNE WATER LITIGATION<br><br>This Document Relates To:<br> ALL CASES | Case No: 7:23-cv-897<br><br>MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR PROTECTIVE ORDER TO PREVENT THE DEPOSITION OF DR. CHRISTOPHER PORTIER |

**Introduction**

Plaintiffs' Leadership Group (PLG) has noticed the deposition of Dr. Christopher Portier, the former Director of the Agency for Toxic Substances and Disease Registry (ATSDR), to be taken on May 28, 2024, in the town of Domodossola, Italy at a location "to be determined." Ex. 1. Defendant United States seeks a protective order to prevent the deposition of Dr. Portier because the burden of taking this deposition in Italy far outweighs any benefit to be gained from Dr. Portier's testimony. Depositions are already being scheduled for the two ATSDR scientists with the most firsthand involvement in the ATSDR Camp Lejeune studies. Those depositions have not yet been conducted, so the extent to which Dr. Portier could supply additional relevant information, if any, is unknown. Unlike the witnesses whose depositions are being scheduled, Dr. Portier had little to no firsthand involvement in the studies. The Parties have met and conferred but PLG has refused to withdraw the notice to take Dr. Portier's deposition.

**Factual Background**

On May 10, 2024, PLG noticed the deposition of Dr. Portier in Domodossola, Italy. Ex. 1. The United States subsequently advised PLG of the required considerations pursuant to the

1

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Evidence Convention). Ex. 2. Specifically, counsel for the United States advised that, if Dr. Portier is a U.S. national, and not a dual U.S.-Italian citizen, "Article 15 of the Hague Evidence Convention permits a U.S. diplomatic officer or consular agent to take evidence of U.S. nationals without compulsion in order to aid U.S. proceeding in civil or commercial matters." *Id*. The United States further stated that the Department of Justice attorneys must "obtain an official passport, receive e-country clearance, and comply with applicable visa requirements," before attending a deposition in a foreign country. *Id.* Accordingly, "[g]iven the expense and procedures required for this deposition," counsel for the United States requested that PLG "describe the relevance of Dr. Portier's anticipated testimony." *Id.* PLG responded on May 19, 2024, with PLG's interpretation of applicable international law and their reasoning for why Dr. Portier's testimony is relevant. Ex. 3. The parties met and conferred on May 20, 2024. PLG disagreed that the Hague Evidence Convention requires coordination through the consulate or that Dr. Portier's testimony would be irrelevant to the issues in this case.

## Standard of Review

"Discovery is not limitless." *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005). Federal Rule of Civil Procedure 26(c) authorizes a court to grant, "for good cause," a protective order restricting or prohibiting discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party moving for the protective order "has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden." *Jones v. Campbell Univ., Inc.*, No. 5:20-CV-29-BO, 2020 WL 4451173, at *2 (E.D.N.C. Aug. 3, 2020) (citation omitted).

2

## Argument

**A. The United States Has Standing.**

The United States has standing under Rule 26(c) to seek a protective order to prevent the deposition of non-party Dr. Portier because the United States' own interests would be jeopardized if this deposition were to move forward.

> "A party can, however, move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information."

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 2:04-CV-01199-DAE, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007). Additionally, "[t]o the extent that Defendants would be required to incur third party discovery costs that rise to the level of an undue burden for Defendants, Defendants have standing to quash on those grounds." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426 (M.D. Fla. 2005). Here, the United States' own interests would be jeopardized because Dr. Portier's deposition has little, if any relevance, and PLG has not exhausted less burdensome means of obtaining information that Dr. Portier allegedly possesses. Consequently, because the undue burden and costs associated with Dr. Portier's deposition at this time would outweigh its potential benefits, the Court should enter the proposed Protective Order. These burdens will be explained in the section below.

**B. Federal Rules 26(b) & (c) Permit this Court to Limit Discovery Where the Burden Outweighs its Benefit.**

The United States' motion should be granted because the undeniable burden and expense of proceeding with this deposition in Italy at this time far outweighs any possible benefit. Rule 26(b)(1) defines the scope of discovery and permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "However, simply because 'requested information is

3

discoverable under Rule 26 [(b)] does not mean that discovery must be had.'" *Norton v. Rosier*, No. 7:14-CV-260-FL, 2018 WL 10323049, at *2 (E.D.N.C. Aug. 17, 2018) (quoting *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). Courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C)(i) & (iii) instructs that a court "must limit the frequency or extent of discovery otherwise allowed … if it determines that … the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive … or the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Lastly, Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from … undue burden or expense … ," including by "forbidding the disclosure or discovery." Fed. R. Civ. P. 26 (c)(1)(A).

Any possible benefit to PLG from deposing Dr. Portier as a fact witness at this time is outweighed by the undue burden and expense placed on the United States in preparing for and traveling to defend Dr. Portier's deposition. This Rule 30(b)(1) deposition sought by PLG would require the United States to incur significant travel and lodging expenses. Additionally, any attorney from the Department of Justice traveling to Italy to participate in this deposition would require an official passport, e-country clearance, and any applicable visa. Further, special clearance will likely be required for video equipment. *See* U.S. Dep't of State, Italy Judicial Assistance Information, Taking Depositions of Willing Witness, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Italy.html (last visited May 20, 2024) ("If counsel intends to utilize videotape

4

equipment for the purpose of recording the deposition, please note that special customs clearances must be obtained from appropriate Italian customs authorities before such equipment can be taken into Italy."). PLG has suggested that the United States could attend the deposition remotely, while PLG attended in Italy, thus minimizing the burden and costs to the United States. But Dr. Portier is a former high-ranking government employee who PLG has signaled will testify adverse to the United States' interests in this litigation; if PLG were to proceed with this deposition in person, the United States would have a right, and strong interest, in being present in-person for this deposition.

In addition to the burden and expense, before the depositions of the two key scientists involved in the ATSDR's Camp Lejeune studies have occurred, it is unclear what, if any, relevant information Dr. Portier will have to add. As the former Director of ATSDR, Dr. Portier had little firsthand involvement in the ATSDR Camp Lejeune studies, and the parties are already planning the depositions of the two ATSDR scientists with the most firsthand involvement, Dr. Frank Bove and Morris Maslia. *See, e.g.*, *Camp Lejeune: Contamination and Compensation, Looking Back, Moving Forward: Before the Subcomm. on Investigations and Oversight of the H. Comm. On Science and Technology,* 111th Congr. 77-78 (2010) ("Dr. Portier is new to this task, but Mr. Bove has worked on Camp Lejeune analysis for many years.") https://www.congress.gov/event/111th-congress/house-event/LC7000/text?q=%7B%22search%22%3A%22Portier%22%7D&s=1&r=11 (last visited May 23, 2024). PLG claims that Dr. Portier's relevance is demonstrated by a letter to the Navy and U.S. Marine Corps signed by Dr. Portier that was critical in certain respects of the National Resource Council's report "Contaminated Water Supplies at Camp Lejeune—Assessing Potential Health Effects." Ex. 4. But until the ATSDR scientists are deposed regarding their

5

involvement in drafting the letter, the extent to which statements in the letter are based on the opinions of these scientists, as opposed to Dr. Portier's own opinions based on his personal review of the work, is unclear.[1] Without additional information, it appears that Dr. Portier's testimony would likely be of limited relevance and duplicative of other testimony. Moreover, PLG already has access to Dr. Portier's sworn testimony before Congress regarding Camp Lejeune and the subject letter. *See, e.g.*, *Camp Lejeune: Contamination and Compensation, Looking Back, Moving Forward: Before the Subcomm. on Investigations and Oversight of the H. Comm. On Science and Technology,* 111th Congr. 77-78 (2010) (statement of Chris Portier, Director, ATSDR). Consequently, Dr. Portier's unclear benefit as a fact witness at this time does not justify PLG taking an in-person deposition in Domodossola, Italy.

**C.     Plaintiffs' Obligation to Comply with Italian Law Adds to the Burden and Expense of the Deposition of Dr. Portier.**

Lastly, because the proposed deposition is noticed to take place in Italy, PLG must comply with Italian law. Italy and the United States are both parties to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S No. 7444 (Hague Evidence Convention), which provides mechanisms for obtaining evidence in a manner consistent with Italian law.[2] As explained below, if PLG does not receive prior permission from the competent authority of the Italian state, the Hague Evidence Convention requires that the deposition of Dr. Portier, as a U.S. national, be taken pursuant to

---

[1] If it becomes clear after the depositions of Dr. Bove and Morris Maslia that Dr. Portier is the only person with relevant firsthand knowledge, the parties may agree that his deposition is justified.

[2] The purpose of the Hague Evidence Convention is "to establish a system for obtaining evidence located abroad that would be tolerable to the state executing the request and would produce evidence utilizable in the requesting state." *Société Nationelle Industrielle Aerospatiale v. U.S. Dist. Ct. for the S.D. Iowa*, 482 U.S. 522, 530-31 (1987) (internal quotation marks omitted).

6

consular deposition procedures. PLG counsel have indicated that they do not intend to proceed with a consular deposition, and that Dr. Portier has been deposed in other cases in Italy without following the consular depositions procedure. However, attorneys for the Department of Justice cannot participate in a deposition unless the Italian law and U.S. foreign affairs procedures are followed, and Italian sovereignty is respected. This adds to the burden and expense of the deposition. Pending the Court's ruling on the present motion, the United States reserves the right to challenge the deposition, should PLG fail to comply with Italian law.

PLG's authority to take evidence from Dr. Portier does not extend beyond the territorial boundaries of the United States. Under customary international law, "a state may not exercise jurisdiction to enforce in the territory of another state without the consent of the other state." Restatement (Fourth) Foreign Relations Law of the United States § 432 (Am. Law Inst. 2018). *See also id.* Reporters' Note 1 ("Enforcement jurisdiction includes . . . the performance of coercive governmental functions. Examples include . . . taking depositions and witness statements, [and] executing an order for the production of documents . . . ").

Chapter II of the Hague Evidence Convention (Chapter II), inclusive of Articles 15 through 22, provides a framework for interested parties to obtain evidence through lawful means in another country, such as Italy, without a formal Letter of Request seeking the assistance of a foreign authority to obtain evidence on its behalf.

Articles 15 and 16 of the Hague Evidence Convention contemplate the taking of "evidence without compulsion" by a "diplomatic officer or consular agent" (also called a "Consul") in the area in which the Consul exercises functions. Hague Evidence Convention, arts. 15-16. Pursuant to Article 15, the Consul may take such evidence from a national of the state the Consul represents without obtaining specific permission from the state of execution unless the

7

executing state declares that prior permission is required. *Id*. art. 15. In other words, "Article 15 permits a Consular Officer of the United States to take the voluntary testimony of a U.S. citizen in Italy" without the prior permission of the Italian state. *See* U.S. Dep't of State, Italy Judicial Assistance Information, Taking Depositions of Willing Witness, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Italy.html (last visited May 20, 2024).[3] Alternatively, Article 17 allows "a person duly appointed as a commissioner for the purpose" (or "Commissioner") to take evidence from a person of any nationality in the territory of a member state. *Id.* art. 17. However, prior permission from the state of execution, here Italy, is required before a Commissioner can take the evidence.

PLG has stated that it intends to move forward with the deposition of Dr. Portier under Article 15 of the Hague Evidence Convention. Ex. 3. However, during the meet and confer PLG stated that it did not intend to arrange to take the deposition through the U.S. consulate. If PLG proceeds in this manner it is not complying with Article 15, which expressly permits that evidence may be taken by a "diplomatic officer or consular agent" of a member state from a national of that same state. Hague Evidence Convention, art. 15. Proceeding with this deposition taken by any person other than a diplomatic officer or consular agent would not be pursuant to Article 15 and would be impermissible under the Hague Evidence Convention, unless PLG first obtained authorization from an appropriate Italian court, consistent with Italy's declarations to the Hague Evidence Convention. *See* Hague Conference on Private International Law,

---

[3] In contrast, pursuant to Article 16, the state of execution must give either general or specific permission before the Consul takes evidence from a national of any other state. Hague Evidence Convention, art. 16. PLG has represented that Dr. Portier is an American citizen. Thus, Article 16 is not applicable to this matter, but is briefly mentioned for context.

8

Declaration/Reservation/Notification, Italy (Hague Evidence Convention),

https://www.hcch.net/en/instruments/conventions/status-

table/notifications/?csid=504&disp=resdn (last visited May 20, 2024).[4]

**Conclusion**

Based on the foregoing, the United States requests that this Court enter a protective order to prevent the deposition of Dr. Christopher Portier in Domodossola, Italy.

Dated: May 23, 2024

---

[4] Internal law would also dictate whether permission from a competent Italian authority is required before proceeding with an Article 15 deposition through remote means. According to Italy's 2022 video-link questionnaire response on the Hague Conference on Private International Law website (available only in French), depositions may be taken by video-link under Chapter II, but permission *is required* when seeking to depose a U.S. citizen by video through a U.S. Consul. *See* Profil d'État, Italie, Obtention De Preuves par Liaison Vidéo en Vertu de La Convention Du 18 Mars 1970 Sur L'obtention Des Preuves À L'étranger En Matière Civile Ou Commerciale, Partie VI(c) (Jan. 2, 2022), https://assets.hcch.net/docs/d5cead86-20f5-425f-a685-6df5b3b93b46.pdf ("L'autorisation est nécéssaire pour les actes d'instruction qui concernent les citoyens de l'Etat de residénce (art. 15). Elle est requise à l'Autoritè [sic] centrale.") (rough translation: Authorization is necessary for the taking of evidence from citizens of the state of residence (Article 15). Authorization is solicited from the Central Authority.).

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2024, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

*/s/ Joshua Carpenito*
Joshua Carpenito
