IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **JOINT STATUS REPORT** |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to June 4, 2024, 1813 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. Twenty-five cases have been dismissed; twenty-one of those were voluntary dismissals and the four others were pro se cases. The cases are divided as follows: Judge Dever – 456 cases; Judge Myers – 465 cases; Judge Boyle – 437 cases; and Judge Flanagan – 455 cases.

On June 3, 2024, the Parties filed a Joint Motion seeking a CMO to select twenty-five (25) Track 1 bellwether Trial Plaintiffs. This is a significant step forward in this litigation that will maximize efficiency and conservation of resources as we proceed to trial. The PLG and the United States look forward to moving these cases forward.

**(2) An update on the number and status of administrative claims with the Department of Navy**

1

There are approximately 232,892 administrative claims on file with the Department of Navy ("Navy"). The Navy publicly announced the CLJA Claims Management Portal ("portal") on April 10, 2024. The Navy is currently focused on intake and processing of CLJA claims in parallel with final efforts to ingest all remaining existing claims into the portal. Once the final tranche of claims is ingested, the Navy will notify law firms so they can access and review those claims in the portal. The Navy will work with all filers to reconcile the Claims Management Portal to address discrepancies (e.g., incorrect claims data or missing claims). All new incoming claims are received through the claims management portal resulting in a higher level of claim data quality and enhanced communication between filers and the Navy. The Navy continues to review feedback from filers on the filing experience and is working with its contractors to resolve issues and implement enhancements to facilitate the filing process where feasible. Of approximately 551 CLJA claims containing necessary substantiation, the Department of the Navy has identified 131 CLJA claims that may be eligible for settlement.

**(3) An update on stipulations entered into between the Parties since the last status conference**

On April 19, 2024, the Parties filed a joint Stipulation Regarding Production of Plaintiffs' Medical Records and Social Security Records. Further, the PLG proposed a set of stipulations based upon the government's Answer to the Master Complaint on April 4, 2024. The United States has provided an initial response to certain stipulations, and offered additional stipulations for consideration. The parties had a meet and confer on May 24, 2024, wherein they discussed the possibility of negotiating a set of "global" proposed stipulations to be filed in the Master Docket. The parties plan to meet, in person, after the June 12, 2024 status conference in Wilmington to continue substantive negotiations and edits to these global stipulations. The parties intend to comply with the Court's mandate in Case Management Order No. 2 to confer at least on a monthly

basis regarding stipulations. (DE 23 p. 7). The Parties will continue to evaluate and discuss potential stipulations for purposes of promoting the efficiency of discovery and trials in this matter.

**(4) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter, and the PLG is committed to taking all actions necessary to meet the deadlines set forth in the Court's various scheduling orders. Since the most recent Status Conference on May 16, 2024, the PLG has been defending depositions on a near daily basis, scheduling treating physician depositions, and otherwise conducting discovery. The PLG believes that the discovery process is on pace to meet all applicable deadlines. What follows is a brief description of some recent discovery issues.

ATSDR Water Modeling Project Files

On May 3, 2024, the PLG filed a Motion to Reconsider Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Production of the ATSDR's Water Modeling Project File in Native Format. [D.E. 194]. Defendant filed its response. While the Parties have resolved many of the issues, including those related to the "mirror image" concerns, there are still concerns about the production of certain state registries. The PLG and Defendant continue to work to resolve these issues.

Muster Rolls

On March 8, 2024, the Court entered an Order [D.E. 157] denying as moot the PLG's Motion to Compel Production of Certain Digitized Muster Rolls [D.R. 140]. In the said Order, the

Court found that the PLG's motion was moot because the government had committed to producing the digitized muster rolls contained on a Network Attached Storage ("NAS") located at Quantico, VA. The government has completed this production, and the PLG has confirmed that the digitized muster rolls on the NAS were not the same muster rolls requested by the PLG. Additionally, the government recently produced a document (seemingly a PowerPoint presentation) indicating that the requested muster rolls or a nearly identical collection of searchable personnel records for Camp Lejeune exist but have not been produced. Therefore, on May 3, 2024, the PLG filed a Motion to Reconsider Order Denying Plaintiff's Motion to Compel Production of Certain Digitized Muster Rolls. [D.E. 192]. In a responsive filing on May 8, 2024, the government again argued that the PLG has been provided with the requested digitized muster roll. While skeptical, the PLG is evaluating the government's response and additional information regarding potential duplication of the databases. The PLG requests that Defendant produce information regarding any duplicate database and, in the alternative, that Defendant provide access to the databases in question for individuals selected for bellwether discovery pools.

<u>Subpoena of the National Academy of Sciences</u>

The National Academy of Sciences ("NAS") is a private, nonprofit institution established for purposes of providing expert advice to the nation on scientific issues. The National Research Council ("NRC") is a research committee of the NAS. The Navy sponsored a study by the NRC concerning associations between adverse health effects and the contaminated water at Camp Lejeune (the "NRC 2009 Report"). The PLG has issued and properly served a Subpoena upon the NAS requiring production of the NRC 2009 Report and related documents. As a basis for withholding document, the NAS has cited to certain dubious privileges that have never been recognized by this Court. The PLG has filed a motion to compel compliance with the referenced

Subpoena of the NAS and a motion to transfer the matter to the Eastern District of North Carolina. The NAS has opposed the Motion to Compel and the PLG has filed a reply in support of its Motion to Compel.

Claims Management Portal

During the Status Conference on April 26, 2024, the PLG discussed with the Court certain difficulties with the government's new "Claims Management Portal" for CLJA administrative claims (the "Claims Portal"). The Parties are engaged in discussions to improve the Claims Portal process.

Access to Housing Records

The Parties remain engaged on discussions to address access to Camp Lejeune "Occupant Housing Records and resolve the issues raised in the May 9, 2024 status report without the need for motions practice.

Pretrial Conference on Discovery

On March 7, 2024, the PLG filed a Notice of Filing of the PLG's Proposed Track 2 Scheduling Order (the "Notice"). [D.E. 155]. In that Notice, the PLG requested a Fed. R. Civ. P. 16 pretrial conference for purposes of discussing procedures that would significantly reduce the scope and expense of discovery and trials and thereby speed up this litigation and promote a global resolution.

The PLG has dedicated substantial time and resources to the discovery process, including both paper discovery and depositions. The PLG believes that discovery is progressing at a reasonable pace and that the Parties will be able to meet all deadlines set forth in Case Management Order No. 2.

Portier Deposition

The PLG has noticed the deposition of Dr. Christopher Portier, the former Director of the Agency for Toxic Substances and Disease Registry (ATSDR), to be taken in the town of Domodossola, Italy. The United States filed a motion for a protective order to prevent this deposition. The PLG has responded to the United States' Motion.

Dr. Portier was the Director of the ATSDR while the agency performed water modeling and health studies for Camp Lejeune, and he oversaw and was involved in that work; his testimony is front and center to this litigation.

Of critical importance is a letter Dr. Portier issued in October 2010 that defended the ATSDR's health studies in the face of a critical report by a private entity, the National Academy of Sciences' (NAS) National Research Council (NRC). Indeed, Dr. Portier's letter corrected some of the NRC's errors in its own report. Defendant's attempts to cloud the importance of Dr. Portier's testimony by referencing Morris Maslia and Frank Bove as more convenient sources of information about the same material are unavailing. Dr. Portier, not Mr. Maslia or Dr. Bove, signed the letter responding to the NRC report and, as director of the ATSDR, he is uniquely situated to provide testimony on the matter.

Finally, the PLG intends to comply with all applicable law in conducting Dr. Portier's deposition, and it so informed the government during the meet and confer. Indeed, the PLG has made clear to the government that (1) the Portier deposition will comply with all laws, or it won't be conducted, and (2) the PLG will take the burden upon itself to ensure that all Italian laws are satisfied.

Self-evidently, Dr. Portier is an important witness – his testimony may go to the heart of the government's main defense and his deposition should proceed.

**United States' Position:**

The United States continues to provide rolling productions of documents in response to Plaintiffs' discovery requests, and is producing documents to Plaintiffs on a daily basis. To date, in response to these discovery requests, the United States has produced almost 1.2 million files, totaling almost 17.5 million pages of records. The United States is working diligently to produce all responsive, non-privileged documents prior to the close of fact discovery.

ATSDR Water Modeling Project Files

The United States has completed its production of nearly all of the ATSDR water modeling project files, including the native production of the exotic modeling files in compliance with the Court's March 12, 2024, Order [D.E. 159]. The United States is finishing its review of potentially privileged documents (all of which are "non-exotic") from the water modeling project files and is completing its rolling productions of the documents that are determined to be not privileged.

The United States responded to Plaintiffs' Motion to Reconsider Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Production of the ATSDR's Water Modeling Project File in Native Format [D.E. 194] on May 10, 2024 [D.E. 203]. Following these submissions and a meet and confer between the Parties, Plaintiffs agreed to withdraw their Motion. To date, the motion has not been withdrawn, but the United States believes all issues related to the water modeling files have been addressed.

ATSDR Health Effects Studies Project Files

The United States is working with ATSDR to produce documents from the Health Effects Studies Project Files. The United States is producing documents that are neither privileged nor contractually or statutorily protected on a rolling basis.

Muster Rolls

On May 8, 2024, the United States filed its Opposition to Plaintiffs' Motion for Reconsideration of the Court's Order Denying Plaintiffs' Motion to Compel Production of Muster Rolls. [D.E. 199]. Plaintiffs have asked the Court to hold their Motion in abeyance at this time.

The United States asserts again that it has already produced the only known existing version of the records and associated database resulting from the 2013-15 scanning project, which was located on a Network Attached Storage ("NAS"). As such, the United States continues to maintain that it has no further documents to produce with respect to the First Set of Plaintiffs' Request for Production, Request No. 3. The United States also notes that Plaintiffs have pursued this line of inquiry at the recent depositions of several witnesses, but no testimony to date supports Plaintiffs' continued belief that the United States has failed to provide all known records and associated database from the 2013-15 scanning project.

The United States is in receipt of Plaintiffs' May 24, 2024 Requests for Production related to the Muster Rolls and will respond to them by June 24, 2024. The United States objects to any request for supplementation or production that PLG has made in this Status Report and, moreover, does not understand PLG's references above to a "duplicative database" or the "databases in question."

Depositions

As of June 5, 2024, the United States has requested dates for 100 depositions of Track 1 Discovery Plaintiffs, scheduled and has taken all 100 of those depositions. The United States has also requested 348 fact witness and treating physician depositions, has taken 192 of those depositions, and has scheduled future deposition dates for 34 of those requests.

Subpoena of the National Academy of Sciences

The United States understands that on May 8, 2024, the National Academy of Sciences ("NAS") filed in the United States District Court for the District of Columbia a motion to quash or modify PLG's subpoena, or in the alternative for a protective order. The United States also understands that additional motion practice has taken place regarding this subpoena. The United States has not coordinated with the NAS counsel with respect to the NAS's responses to PLG's discovery requests, other than to request copies of documents produced.

Access to Defense Manpower Data Center Data

Plaintiffs reference a collection of Camp Lejeune "Occupant Housing Records," in their section of this report. . The United States believes that for purposes of this discussion, Plaintiffs are actually referring to data from the Defense Manpower Data Center ("DMDC"). As the United States has noted previously, this dataset was produced as confidential under the Protective Order in place in this litigation. This dataset was produced to be used for purposes of this litigation only. To the extent Plaintiffs' counsel, or claimants' counsel in the administrative process, are currently using the DMDC data outside of this litigation, the United States asserts that this is a potential violation of the Protective Order. In addition, the United States has concerns about the reliability of the DMDC data for purposes of substantiating administrative claimants' claims.

In an effort to assist Plaintiffs' and claimants' counsel, the United States has worked with the DMDC and other government agencies to confirm that the DMDC data can be used by claimants' counsel so long as the Protective Order is amended to protect the data in question. The United States submitted a proposed revision of the Protective Order to Plaintiffs and is awaiting their response and further comments.

Pretrial Conference

On May 8, 2024, the United States filed its response to PLG's proposed topics for a Rule 16 conference, explaining why it would be premature to resolve many of the issues at this time, as well as inconsistent with the procedures established in Case Management Order 2. The United States submits that more appropriate times for a Rule 16 conferences are (1) after the completion of fact discovery and (2) after the completion of expert discovery.

Defendant's Economic Damages Discovery Requests

Between May 11 and May 14, 2024, the United States served the same 22 Requests for Admission in each of the Track 1 cases, along with a corresponding interrogatory and document request asking each Track 1 Plaintiff to (i) identify which categories of economic damages they planned to seek or not seek, (ii) identify the dollar amount sought for each category of economic damages, and (iii) produce all documents supporting the claimed economic damages. On May 21, 2024, in response to these requests, PLG served its "Track 1 Discovery Pool Plaintiffs' Omnibus Responses to Defendant's Requests for Admissions, Interrogatories and Requests for Production Concerning Economic Damages," objecting to and/or denying each individual discovery request. On May 24, 2024, the United States sent correspondence to PLG, identifying the deficiencies in PLG's omnibus objections and responses. On May 30, 2024, PLG responded to the United States' May 24 letter. On May 30, 2024, the Parties met and conferred regarding the United States' economic damages discovery requests. During the meet and confer, PLG agreed that the Plaintiffs should identify the categories of economic damages sought but proposed providing this information after the Parties had made selections of Track 1 Plaintiffs for trial. Additionally, PLG did not agree to provide the dollar amounts sought in each category, nor did it agree to produce the supporting documents. At this time, the United States has agreed to hold in abeyance its

requests for PLG's substantive responses until a decision is made regarding the selection of Track 1 Plaintiffs for trial.

<u>The United States' Motion for a Protective Order Regarding Plaintiffs' Noticed Deposition of Dr. Christopher Portier</u>

PLG noticed the deposition of Dr. Christopher Portier to be taken on May 28th, 2024, in Domodossola, Italy. The United States filed a motion for a protective order to prevent this deposition because (1) the burden associated with taking Dr. Portier's deposition as a fact witness in Italy for potentially duplicative testimony outweighs any benefit from its taking; (2) it is unclear what, if any, relevant information Dr. Portier will be able to provide and the discovery may be obtained from another source that is more convenient, namely, the depositions of Dr. Frank Bove and Morris Maslia; and (3) there was no evidence that Plaintiffs' noticed deposition of Dr. Portier complied with relevant international law.

<u>Consent Motion to Compel Deposition Testimony of Plaintiff Andrew Przenkop</u>

On May 23, 2024, the United States filed a Consent Motion to Compel Deposition Testimony of Plaintiff Andrew Przenkop [D.E. 214]. As discussed during the May 16, 2024 status conference, the United States is seeking an Order compelling Plaintiff Andrew Przenkop to testify regarding the reason he left his position with the Polk County Sheriff's Office. Plaintiffs consented to the filing of this Motion.

**(5) Update on individual and global settlement efforts:**

The Parties' respective perspectives on the resolution process, including both individual and global, appear below.

**The PLG's Position:**

Many of the PLG's concerns regarding the settlement process noted in the May 9, 2024 status report remain. The PLG is hopeful that the appointment of a settlement master will help the Parties make progress towards resolution and push this matter forward.

**United States' Position:**

The United States continues to make progress in settling cases where the Agency for Toxic Substances Disease Registry has identified evidence that diseases may be related to chemicals in the Camp Lejeune water. As of June 4, 2024, the Torts Branch has determined that seventy-two (72) cases in litigation meet the Elective Option ("EO") criteria through documentary verification. The case breakdown by injury includes: 19 Bladder Cancer, 20 Kidney Cancer, 13 non-Hodgkin's Lymphoma, 6 Kidney Disease, 4 Parkinson's Disease, 8 Leukemia and 2 Multiple Myeloma. Thirty-one (31) offers have been accepted by plaintiffs on 11 cases of Bladder Cancer (five offers of $150,000; five offers of $300,000; one offer of $450,000), 5 cases of Kidney Disease (End Stage Renal Disease) (two offers of $100,000; three offers of $250,000), 7 cases of Kidney Cancer (two offers of $150,000; five offers of $300,000), 4 cases of non-Hodgkin's Lymphoma (two offers of $150,000; two offers of $300,000), 1 case of Multiple Myeloma ($250,000), 2 cases of Parkinson's Disease ($400,000; $100,000) and 1 case of Leukemia ($300,000). Nine (9) offers were rejected by plaintiffs, including 4 cases of Bladder Cancer, 2 cases of Kidney Cancer, 1 case of Multiple Myeloma, 1 case of Kidney Disease, and 1 case of Parkinson's Disease. Twenty (20) offers have expired, including 7 cases of Kidney Cancer, 7 cases of non-Hodgkin's Lymphoma, 2 cases of Bladder Cancer, 3 cases of Leukemia and one case of Parkinson's Disease. The other twelve (12) settlement offers are pending.

Further, the DOJ has approved offers for ninety-three (93) claimants in reliance on information provided by the Navy. Thirty-three (33) settlement offers have been accepted. Three

(3) offers have been rejected. Twenty-three (23) offers have expired, and thirty-four (34) offers are pending.

Payments have been sent for thirty-three (33) accepted settlements offers made by the Navy and twenty-five (25) accepted settlement offers from DOJ, totaling $14,400,000. Sixteen cases of Bladder Cancer resulted in total payments of $4,050,000. Eight cases of Leukemia resulted in total payments of $2,100,000. Eight cases of non-Hodgkin's Lymphoma resulted in total payments of $1,950,000. Five cases of Parkinson's Disease resulted total payments of $1,100,000. Fourteen cases of Kidney Cancer resulted total payments of $3,900,000. Six cases of Kidney Disease resulted in total payments of $1,050,000. One case of Multiple Myeloma resulted in a payment of $250,000.

The United States is also hopeful that the appointment of a settlement master will help the Parties make progress towards resolution and push this matter forward.

**(6) Any other issues that the parties wish to raise with the Court:**

The following motions are presently pending before the Court:

    (a)    Joint Motion for Entry of Case Management Order Track 1 Trial Plaintiff Selection Protocol [D.E. 219];

    (b)    the PLG's request for a Rule 16 conference [D.E. 155];

    (c)    the PLG's motions to expedite trials in three separate CLJA actions;[1]

    (d)    the Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156];

---

[1] *McElhiney v. United States*, Docket No. 7:23-cv-1368; *Peterson v. United States*, Docket No. 7:23-cv-1576; *Dunning v. United States*, Docket No. 7:23-cv-1364.

(e) the United States' Motion to Amend Track 1 Order to Prioritize Trials of Track 1 Single Disease Plaintiffs [D.E. 167];

(f) the United States' Motion for Reconsideration of Case Management Order No. 10 Regarding Opt-Out Provision [D.E. 169];

(g) the PLG's Motion for Partial Summary Judgment on CLJA Legal Representative Procedure [D.E. 184];

(h) the PLG's Motion for Reconsideration of the Court's Order Denying Motion to Compel Production of Certain Digitized Muster Rolls [D.E. 192]; and

(i) Motion for Reconsideration Regarding Order on Motion to Compel Production of the ATSDR Water Modeling Project File [D.E. 194].

(j) Motion for a Protective Order to Prevent the Deposition of Dr. Portier [D.E. 211].

(k) Consent Motion to Compel the Deposition of Andrew Przenkop [D.E. 214].

*[Signatures follow on next page]*

DATED this 5th day of June, 2024.

Respectfully submitted,

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

*/s/ Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

*/s/ Adam Bain*
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

15

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*