IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: | ) |
| CAMP LEJEUNE WATER LITIGATION | ) |
| | ) |
| This Pleading Relates to: | ) |
| ALL CASES | ) |

**PLAINTIFFS' LEADERSHIP GROUP'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION IN RESPONSE
TO SEVENTH SET OF REQUEST FOR PRODUCTION**

For the following reasons, the Plaintiffs' Leadership Group ("PLG") respectfully requests that the Court grant the Motion to Compel Document Production in Response to Seventh Set of Request for Production.

**INTRODUCTION**

The PLG is finalizing the depositions of key government personnel involved in various ways with the Camp Lejeune water contamination, including persons involved with studies conducted by the Agency for Toxic Substances and Disease Registry ("ATSDR"), representatives of the U.S. Department of Veterans Affairs ("VA"), and others. Unfortunately, the PLG has encountered a recurring problem during these depositions: namely, these witnesses frequently testify that they possess troves of discoverable documents about Camp Lejeune that have not been produced during discovery. For example, the Chief Consultant with the Health Outcomes Military Exposures division of the VA, Patricia R. Hastings ("Dr. Hastings"), testified on May 14, 2024 that she possessed "documents related to Camp Lejeune . . . on the C drive or hard drive of [her] office computer." [Exhibit 6, Excerpts from Deposition of Hastings 5/14/2024 at p 9:13-9:21 ("Hastings Depo (Second)")].

In an effort to address this recurring issue, the PLG served its Seventh Set of Requests for Production on June 18, 2024. [Exhibit 1, PLG's Seventh Set of Requests for Production ("Seventh RFP")]. The Seventh RFP should have been completely uncontroversial and was practical in nature. That discovery request contained a list of ten key witnesses who the PLG either previously or imminently will depose. The Seventh RFP asked the government to make contact with these ten key witnesses and produce responsive documents in each witness's possession.

Unfortunately, the government objected and has substantially refused to produce documents in response to the Seventh RFP.[1] Meanwhile, the PLG has been taking the depositions of the witnesses listed in the Seventh RFP, and consistently, these deponents testified that they possess documents related to Camp Lejeune. This recurring problem has caused material delays in the completion of discovery and the ability to finalize the depositions of these key witnesses.

## BACKGROUND

**I. The PLG Served the Seventh RFP Because of a Recurring Problem Where Deponents Possessed Discoverable Documents That Had Not Been Produced.**

This recurring problem of deponents possessing responsive discoverable documents dates back to December 5, 2023, when the PLG took the deposition of James D. Baker, Jr. ("Mr. Baker"), who is the Chief Records Officer of the ATSDR. During that deposition, Mr. Baker revealed that he possessed a "folder" that was "entitled Camp Lejeune Military RES." [Exhibit 5, Excerpts from Deposition of Baker at p 34:2-34:5 ("Baker Depo")]. Mr. Baker further testified that the folder was "at [his] building in [his] office." *Id.* at 34:7-34:11. Moreover, Mr. Baker testified that, prior to his

---

[1] As will be discussed in more detail below, the government agreed to produce some documents possessed by these witnesses. However, the government's partial production does not satisfy its duties under the Discovery Rules.

deposition, he notified his superiors that he had located these documents, yet no effort was undertaken prior to his deposition to review and/or produce these documents. *Id.* at 47:2-47:22.

The documents possessed by Mr. Baker were clearly responsive to the PLG's Corrected First Set of Requests for Production. For instance, Individual Request No. 8 sought any "publication, report or study concerning water contamination issues at Camp Lejeune" possessed by the ATSDR. [D.E. 81-3 at p 11].

That problem continued when the PLG took the first deposition of Dr. Hastings on December 6, 2023. During her first deposition, the PLG learned that Dr. Hastings possessed discoverable documents on her work laptop. [Exhibit 9, Excerpts from Deposition of Hastings 12/6/2023 at pp 80:18-81:19 ("Hastings Depo (First)")]. Further, Dr. Hastings testified that she had not been asked by the Department of Justice, the Office of General Counsel, or others to provide information related to Camp Lejeune. *Id.* at 104:2-104:11. During Dr. Hastings' second deposition on May 14, 2024, these problems amazingly persisted. Dr. Hastings testified as follows:

> Q    After your deposition, were you requested or did you make available some documents or your laptop or computer files so that they could be reviewed by someone in case they were relevant?
> [Objection from Defense Counsel]
> A    I did not give my computer to anyone, and my files could be accessed by VA without my knowledge, but I do not know that they were.
> Q    All right. Do you have any documents related to Camp Lejeune in any fashion that are saved on the C drive or the hard drive of your office computer?
> A    Yes.
> . . . .
> A    It's various files, but it's e-mails and then materials that pertain to Camp Lejeune, whether it be the Community Assistance Panel meetings, briefings. Some of the materials that have been done by the National Academy of Sciences, Engineering, and Medicine that I've downloaded. Scientific articles.

Hastings Depo (Second) at pp 9:2-10:8.

Hence, Dr. Hastings—a key witness in this proceeding—testified on December 6, 2023 that she possessed discoverable documents, and yet the government had seemingly made no effort to retrieve these discoverable documents from Dr. Hastings prior to her second deposition on May 14, 2024. Obviously concerned, the PLG was forced to spend expend considerable time preparing and sending a detailed deficiency letter to the government on May 18, 2024 about this situation with Dr. Hastings. [Exhibit 4, Letter of May 18, 2024 ("Hastings Letter")]. The government eventually produced certain discoverable documents identified specifically by Dr. Hastings, but the government still has not produced all discoverable documents in Dr. Hastings' possession. Moreover, it should not be necessary for the PLG to expend such extensive resources to obtain Dr. Hastings' discoverable documents.

These issues recurred when the PLG deposed Jennifer McDonald ("Ms. McDonald") on June 4, 2024. Ms. McDonald was a NAVFAC contracting officer involved with the muster roll digitization project. During her deposition, Ms. McDonald testified that her work laptop may contain "a request for proposal, funding information, contractor's proposal, business determination documentation as far as evaluating the proposal, . . . the contract award documents[,] [and] [m]aybe some miscellaneous correspondence with respect to awarding the task order." [Exhibit 7, Excerpts from Deposition of McDonald at p 22:14-22:24 ("McDonald Depo")]. These documents were not previously produced in discovery.

## II. The PLG Served the Seventh RFP.

In an effort to avoid the delays encountered during the depositions of Mr. Baker, Dr. Hastings, and Ms. McDonald, the PLG served the Seventh RFP on June 18, 2024. The Seventh RFP consisted of one individual request for production:

> 1. After interviewing the below government employees, please identify and produce all relevant documents (including hard copies), emails,

4

> native files, power-points, research materials, spreadsheets, maps, diagrams, working drafts, memorandums, communications, notes and any other file materials contained on any computer storage device these employees saved their working materials or these files, regardless if an office computer or personal laptop/home computer, related to Camp Lejeune Water Contamination issues:
> Patricia Hasting[s]
> Frank Bove
> Christopher Re[h]
> Ron Burke
> Dan Waddill
> Scott Williams
> Chris Rennix
> Tim Reisch
> Sason Sautner
> René Suárez-Soto

Seventh RFP at p 2.

The number of government employees or representatives possessing discoverable knowledge about the water contamination at Camp Lejeune is extensive. The PLG dedicated significant attention to narrowing down the list within the Seventh RFP to merely ten witnesses.[2] In its effort to keep the list relatively short, the PLG named only certain key witnesses with material and important involvement in the issues in this action. The witnesses included within the Seventh RFP are as follows: (1) Patricia Hastings, D.O., Chief Consultant, Health Outcomes Military Exposures with the VA; (2) Frank Bove, Senior Epidemiologist with ATSDR; (3) Christopher Reh, Associate Director of ATSDR; (4) Ron Burke, VA Deputy Under Secretary for Policy and Oversight; (5) Dan Waddill, Ph.D., NAVFAC Branch Head; (6) Scott Williams, environmental

---

[2] In addition to the Seventh RFP, the PLG included similar production requests in Notices of Deposition to several of these ten witnesses. Moreover, the PLG served document production requests in Notices of Deposition to three additional witnesses, namely (1) James Hatcher, (2) Tim Mallon, and (3) Justin Ramsey. *E.g.*, [Exhibit 3, Letter of July 19, 2024 at p 1]. The government served an objection to these deposition notices that adopted essentially the same position as the government's Response to Seventh RFP. *Id.* at 1-2. The government seemingly refused to produce any documents in the possession of James Hatcher, Tim Mallon and Justin Ramsey.

5

facilities employee for Headquarters Marine Corps at Camp Lejeune; (7) Chris Rennix, Navy Environmental Health Center; (8) Tim Reisch, retired project manager for NAVFAC; (9) Jason Sautner, ATSDR Scientist; and (10) René Suárez-Soto, ATSDR Scientist. All of these individuals were deeply involved with either the government's study of the environmental disaster at Camp Lejeune, as well as compilation and storage of critical documents (such as muster rolls, NRC files and water modeling files) related to the presence of Marines at Camp Lejeune. The PLG is in the process of taking the depositions of all of these ten key witnesses.

The PLG anticipated that the government would object that this request would require purportedly time-consuming searches for electronically stored information ("ESI"). Therefore, the PLG included a clarification in the Seventh RFP that the "request is not intended to require a 'search' using traditional ESI search terms to locate responsive files and document." Seventh RFP at p 1 n.2.

Based on the PLG's experience with Mr. Baker, Dr. Hastings, and Ms. McDonald, the PLG intended the Seventh RFP to be both a narrowly tailored and practical solution to the recurring problem of discoverable documents being uncovered during depositions. The PLG believed that, if these discoverable documents were produced prior to depositions, then all parties would benefit from efficiencies during depositions and the avoidance of wasteful letter-writing campaigns and motions practice concerning the production of discoverable documents.

### III. The Government's Objections to the Seventh RFP

On July 8, 2024, the government served its Responses and Objections to Plaintiffs' Seventh Request for Production of Documents. [Exhibit 2 ("Response to Seventh RFP")]. The objections within the government's Response to Seventh RFP generally lacked merit. For instance, the

6

government objected that several words or phrases were "vague and ambiguous," such as "maps," "memorandums," and "power-points." *Id.* at 3. These words are not "vague and ambiguous."

The parties held multiple meet and confers concerning the Response to Seventh RFP. The government has agreed to produce the responsive hardcopy documents within the possession of these ten witnesses. Further, the government has agreed to produce certain non-privileged emails sent or received by Frank Bove and Christopher Rennix, as well as certain ESI possessed by Christopher Rennix. Finally, the government has produced certain documents specifically identified during Dr. Hastings' depositions but, upon information and belief, has not produced all discoverable documents in Dr. Hastings' possession. Response to Seventh RFP at pp 6-7; *see also* [Exhibit 3, Letter of July 19, 2024 at p 2]. Otherwise, the government has refused to produce documents or files responsive to the Seventh RFP.

Hence, the government has seemingly declined to produce any materials whatsoever in the possession of Christopher Reh, Ron Burke, Tim Reisch, Jason Sautner and René Suárez-Soto. Response to Seventh RFP at pp 6-7. In addition, the government has seemingly declined to produce all non-privileged electronic files possessed by Frank Bove, Dan Waddill, Scott Williams, and Chris Rennix. *Id.*

### IV. Deponents Continue to Testify That They Possess Discoverable Documents That Have Not Been Produced.

The government's refusal to produce all documents responsive to the PLG's Seventh RFP has caused further problems during recent depositions. For example, Timothy Reisch ("Mr. Reisch"), retired NAVFAC Project Manager, was deposed on June 28, 2024. During his deposition, Mr. Reisch testified that he maintained files on his work laptop related to his involvement with the muster roll digitization project regarding Camp Lejeune. [Exhibit 8, Excerpts from Deposition of Reisch at p 40:11-40:22 ("Reisch Depo")]. As illustrated by prior motions

7

practice, these muster roll documents are potentially very important to the PLG's efforts to identify when and where claimants were located at Camp Lejeune. *E.g.*, [D.E. 140-141]. However, the government has declined to produce these documents identified during the deposition of Mr. Reisch.

As another example, NAVFAC employee Dr. Dan Waddill (Navy lead reviewer of ATSDR water modeling) testified on August 6, 2024, that he too had documents related to Camp Lejeune on his government laptop and that no one had ever asked him for a copy, although he had advised the Department of Justice of the existence of the documents. [Exhibit 10, Excerpts from Deposition of Waddill at pp 20:12-23:17 ("Waddill Depo")].[3]

## ARGUMENT

**I.  The Seventh RFP Seeks Clearly Discoverable Documents.**

Respectfully, the government should be compelled to produce all non-privileged documents responsive to the Seventh RFP. As explained above, the Seventh RFP is designed to address a very real and recurring problem of deponents appearing at depositions and testifying that they possess unproduced discoverable documents. By way of example, the PLG uncovered during a deposition that Mr. Baker possessed unproduced documents concerning the ATSDR's work on Camp Lejeune possessed. Baker Depo at p 34:7-34:11. As another example, the PLG learned during another deposition that Mr. Reisch's work laptop contained unproduced documents concerning the muster roll digitization project. Reisch Depo at p 40:11-40:22. This recurring problem would be eliminated if the government fully responded to the Seventh RFP. Instead, the

---

[3] Pursuant to the Stipulated Protective Order, all deposition transcripts are automatically designated as confidential for thirty (30) days. [D.E. 36 at ¶ 3(e)]. There is no confidential information in Dr. Waddill's transcript, however, pursuant to the Stipulated Protective Order, Dr. Waddill's transcript is not publicly filed. Instead, that transcript will be provided to the Court for *in camera* review.

PLG has been forced by the government to take depositions without possessing all discoverable materials, and therefore, the PLG's examinations of these ten witnesses have not addressed any issues arising out of whatever discoverable materials have been withheld. This puts the PLG at a grave and unfair disadvantage.

The Seventh RFP is limited to only ten witnesses, and those witnesses are among the most crucial witnesses in this action. By way of example, the Seventh RFP seeks documents from Frank Bove, who was the Senior Epidemiologist with the ATSDR during its study of the water at Camp Lejeune and health effects caused by that water. Seventh RFP at p 2. Hence, the Seventh RFP is clearly "proportional to the needs of the case" as contemplated by Fed. R. Civ. P. 26(b)(1).

## II. The Government's Objections Lack Merit.

The government's Response to Seventh RFP asserted a panoply of objections. Response to Seventh RFP at pp 3-6. However, these objections lack merit. Some of the government's more prominent objections are addressed below:

*Vague and Ambiguous*. The government asserted that the PLG's Seventh RFP was vague and ambiguous. Response to Seventh RFP at p 3. This objection is simply inaccurate and should be disregarded. For instance, the government objected that the following terms were somehow vague and ambiguous: "power-points," "maps," "diagrams," "memorandums," and "notes." These terms have obvious and clear meanings. In any event, during the parties' meet and confers concerning the Seventh RFP, the government has not requested definitions of these terms.

*Deadline for Fact Discovery*. The government bemoaned that the Seventh RFP was too late in the discovery process to justify a full response. Response to Seventh RFP at p 3. This objection should be rejected. The fact discovery deadline is presently August 12, 2024. The Seventh RFP was served on June 18, 2024—well before the deadline for fact discovery. There is

9

no local rule or Court order providing that the Seventh RFP was untimely. Instead, the government has unilaterally and artificially dictated when it will continue to entertain further discovery requests. The Seventh RFP was timely and should receive a full response from the government.

*Breadth*. The government asserted that the Seventh RFP is overly broad. Response to Seventh RFP at p 3. Again, this objection should be rejected. The PLG limited its request to ten key witnesses who have been or imminently will be deposed. As part of its deposition preparation process, the government could conveniently interview each witness about the existence of discoverable documents.

*ESI Objections*. The government objected that the Seventh RFP would require broad searches for ESI. Response to Seventh RFP at pp 3-5. To the contrary, the Seventh RFP explicitly stated as follows: "Plaintiffs' request is not intended to require a 'search' using traditional ESI search terms to locate responsive files and document." Seventh RFP at p 1 n.2. Further, the government incorrectly claimed that the PLG previously agreed to withdraw all ESI requests. Response to Seventh RFP at p 4. To the contrary, the PLG withdrew previous requests for ESI but **explicitly** reserved the right to propound subsequent requests for ESI. [D.E. 98 at p 10 ("First, the PLG plans to withdraw several ESI requests in the First Request, **reserving our right to address them at a later time**." (emphasis added))]. In any event, the Seventh RFP does not seek ESI, as described above.

## **CONCLUSION**

The PLG respectfully requests that the Court enter an order compelling the government to produce all non-privileged documents responsive to the Seventh RFP, provide a log of all responsive documents withheld on the basis of privilege, and grant such other relief as appears just and proper.

DATED this 8th day of August, 2024.

/s/  J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com

*Lead Counsel for Plaintiffs*

/s/  Elizabeth J. Cabraser
Elizabeth J. Cabraser (admitted *pro hac vice*)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ecabraser@lchb.com

*Co-Lead Counsel for Plaintiffs*

/s/  Robin L. Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com

*Co-Lead Counsel for Plaintiffs*

/s/  Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel for Plaintiffs*

/s/  Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Suite 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com

*Co-Lead Counsel for Plaintiffs and Government Liaison Counsel*

/s/  W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com

*Co-Lead Counsel for Plaintiffs*

/s/  James A. Roberts, III
James A. Roberts, III
Lewis & Roberts, PLLC
3700 Glenwood Ave., Ste. 410
Raleigh, NC 27612
Telephone: (919) 981-0191
jar@lewis-roberts.com

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, J. Edward Bell, III, hereby certify that the foregoing document was electronically filed on the Court's CM/ECF system on this date, and that all counsel of record will be served with notice of the said filing via the CM/ECF system.

This the 8th day of August, 2024.

                                       */s/ J. Edward Bell, III*
                                       J. Edward Bell, III

12

Case 7:23-cv-00897-RJ   Document 273   Filed 08/08/24   Page 12 of 12