# EXHIBIT 4



May 18, 2024

**VIA EMAIL ONLY**
Adam Bain, Esquire
U. S. Department of Justice
Civil Division, Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, DC 20044

  Re: *In re* Camp Lejeune Water Litigation

Dear Adam:

  At the deposition of Patricia R. Hastings, M.D. ("Dr. Hastings") on May 14, 2024, in the above referenced matter, Dr. Hastings testified to a number of documents that are clearly relevant to this Camp Lejeune Justice Act litigation but have not been produced. This letter addresses these missing documents below.

  On December 6, 2023, Dr. Hastings was previously deposed as the Department of Veterans Affairs ("VA") designee in a 30(b)(6) deposition. In that deposition, Dr. Hastings testified that she "ha[s] files on [her] computer for review . . . [She has] been working with Camp Lejeune for seven years." (12/6/2023 Deposition, 81:1-3). However, in yesterday's deposition of her individually, Dr. Hastings testified that at no point have documents been requested by the Department of Justice or turned over in production to the Plaintiff's Leadership Group ("PLG"). Instead, the witness elaborated that she has a file folder of emails for Camp Lejeune and a file folder of readings for materials pertaining to Camp Lejeune, including but not limited to Community Assistance Panel meetings, briefings, National Academy of Science ("NAS") documents, various science articles, and various research papers.

  Additionally in yesterday's deposition, Dr. Hastings elaborated that she participated in a two-day presentation from June 27-28, 2023, where she presented a PowerPoint entitled "Advisory Committee on Disability Compensation." (5/14/2024 Deposition, Exhibit 1). She testified that she did not attend the full two-day presentation outside of her own presentation portion; nonetheless, the information in her presentation is relevant to this litigation, and by extension, the full two-day presentation agenda and topics are likewise discoverable.

  Next, Dr. Hastings testified that the Health Eligibility Center ("HEC") must review Standard Operating Procedures ("SOPs") every few years or after a major change in policy. To the extent that there have been recent updates to the SOPs, those updates may be relevant but unproduced.

Lastly, Dr. Hastings' review of the SOPs for the 15 specific medical conditions listed prompted her to testify that she helped expand the definition and eligibility of "neurobehavioral effects." In 2014, "neurobehavioral effects" for Parkinson's Disease only extended to veterans, not civilian dependents. She testified that in 2017 NAS found a connection between the water and Parkinson's Disease. Dr. Hastings used that research to change the definition of "neurobehavioral effects" by preparing a memorandum, PowerPoint presentation, and a Camp Lejeune guideline for the Under Secretary of Health. These documents were used in the Under Secretary's consideration to extend Parkinson's Disease eligibility benefits. Such information is highly relevant to the Track 1 injury cases for Parkinson's Disease

It is clear that the above-described documents are relevant to this litigation. It is indisputable that many of these documents are responsive to the PLG's document production requests. For instance, SOPs are clearly responsive to the PLG's Corrected First Set of RFP, No. 11, which was limited in the PLG's letter of November 3, 2023 as follows: "produce all documents and ESI which set forth the guidelines, criteria, standards or processes applied by the United States Department of Veterans Affairs when awarding disability benefits claims related to Camp Lejeune and arising during the period of August 1, 1953 to December 31, 1987." Hence, these responsive records should have been produced long ago.

On May 14, 2024, Department of Justice lawyer Cindy Hurt sent an email indicating that the government contends that the PLG's withdrawal of requests for ESI obviated the need to produce these documents. We disagree. These documents exist, and by her own admission, we know that Dr. Hastings possesses these documents. Hence, there is no need to use search terms or to identify custodians. The PLG has always been clear that its withdrawal of requests for ESI did not apply to specific, ascertainable documents. For instance, on January 8, 2024, the PLG sent a letter stating the following: "all parties agreed that the PLG's request for the files on Exhibit 4 does not constitute a request for Electronically Stored Information because the request is for specific documents or electronic files." *See* page 3.

Nonetheless, it should be unnecessary to litigate whether each of the above-described files were specifically requested in a formal request for production. The documents are clearly relevant and discoverable, the fact discovery deadline has not expired, and we are formally asking that the documents being produced. If necessary, we can issue a formal set of discovery requests, but we hope that is unnecessary under the circumstances. Please let us know if your position is otherwise.

The PLG lays out the above concerns in the hopes that you will produce said documents without the need to involve the court. The PLG would like to resolve these issues so that we may concentrate on getting ready for trial. The PLG requests prompt production within the next 10 days to avoid a Motion to Compel. However, if needed and the issues cannot be resolved, please let us know a convenient time for a call this week to discuss these issues

With kind regards, I remain,

Adam Bain, Esquire
May 18, 2024
Page 3

                          Very truly yours,

                          */s/J. Edward Bell, III*

                          J. Edward Bell, III

JEBIII/djb

cc:     Plaintiffs' Co-Lead Counsel (via email)