IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | Case No: 7:23-cv-897 |
| | ) | |
| | ) | |
| This Document Relates To: | ) | UNITED STATES' OPPOSITION TO |
| ALL CASES | ) | PLAINTIFFS' LEADERSHIP GROUP'S |
| | ) | MOTION TO COMPEL DOCUMENT |
| | ) | PRODUCTION IN RESPONSE TO SEVENTH |
| | ) | REQUEST FOR PRODUCTION |

## I. INTRODUCTION

Under the guise of unfounded accusations that the United States has not adequately searched for responsive information, Plaintiffs' Leadership Group ("PLG") moved to compel—on the eve of the close of fact discovery—production of voluminous, custodian-based electronically stored information ("ESI") that the Parties had previously agreed to forgo in favor of other less burdensome and more relevant sources of information. Because discovery must be both proportional within the meaning of Fed. R. Civ. P. 26(b) and relevant to the narrow issues in this litigation,[1] PLG's Motion to Compel (D.E. 272, 273) ("MTC"), should be denied.

Early in this litigation, the Parties agreed that PLG would not seek custodial ESI because such discovery was not proportional to the needs of this litigation. Specifically, because the volume of such ESI would be so burdensome as to be unmanageable within PLG's desired condensed schedule and because other more convenient sources of more directly relevant information exist, PLG decided to forgo the collection, processing, review, and production of custodial ESI (with limited exceptions for requests seeking specific, discrete files) and withdrew its pending ESI requests.

The United States focused its general discovery efforts accordingly, and as of August 13, 2024, has produced 1,989,940 documents totaling 22,976,992 pages, spanning more than half a dozen federal agencies, and encompassing decades of information.

Despite these fulsome productions, PLG appears to have a case of buyers' remorse, claiming that the United States' productions have left them "disadvantaged." In its Seventh Set of Requests of Production ("RFP 7") (Ex. 1), PLG abandons both its prior agreement to withdraw its requests

---

[1] As this Court recently acknowledged, to recover under the CLJA, each plaintiff "must produce evidence to show that the relationship between [their] exposure to the water at Camp Lejeune and the harm [they allege] is (A) sufficient to conclude that a causal relationship exists; or (B) sufficient to conclude that a causal relationship is at least as likely as not." (June 5, 2024, Order at p. 12, D.E. 227 (quoting CLJA § 804(c)(2)). Thus, exposure, causation, and damages are the only issues for trial.

for ESI and any semblance of proportionality and specificity, instead seeking vast swaths of custodial ESI in addition to the nearly two million documents the United States has already produced. The United States properly objected to these requests and is providing targeted, responsive information as a reasonable middle ground. Not satisfied with the United States' efforts to compromise, PLG filed the instant MTC.

## II. BACKGROUND

In late 2023, the Parties met and conferred multiple times and exchanged potential ESI custodians and search terms. (*See generally* Ex. 2.) Every custodian listed in RFP 7—except Tim Reisch—was identified during this process. (Ex. 2.1 at 1; Ex. 2.2; Ex. 2.3.) The United States assessed the results of the then-agreed-upon search terms applied across the 13 then-agreed-upon custodians and informed PLG that the searches returned more than 1.2 terabytes of data and over 680,000 items. (Ex. 2.4.) PLG responded by filing a motion to compel expedited responses to its first set of discovery requests. (D.E. 64, 65.) After the United States responded to the motion, substantiating its relevancy, proportionality, burden, and overbreadth concerns (*see* D.E. 92, 92-2), but before the Court ruled, PLG decided to withdraw its ESI requests. (Ex. 3.1.)

The Parties then continued to discuss further narrowing the scope of discovery to facilitate PLG's desired expedited litigation timeline, and on January 8, 2024, PLG proposed the following:

> that the government produce the ATSDR's "water modeling" and "health effects" complete project files, and if anything is removed for privilege, we further ask that a detailed privilege log be provided promptly. If the government commits to making such a production within a reasonable period of time, the PLG will agree that the said production satisfies Request No. 8 within the Corrected First Set of Request for Production and Request Nos. 1-7 within the Second Set of Request for Production.

(Ex. 3.3.) The United States agreed to this proposal. Thereafter, PLG informed the Court of the agreement: "Mr. Bell: . . . . I stepped in and said we're gonna withdraw all of our ESI protocol

[sic] with one reservation . . . if we want *a specific file,* we have the right to ask for *that file.*" (D.E. 161, at 39:7-11, emphasis added.)

Proceeding under PLG's proposal, the United States undertook significant efforts to complete production of these voluminous sets of data while continuing to produce other non-custodial hard copy information and ESI, as well as plaintiff-specific records in response to PLG's other RFPs. (*See generally* Exs. 4, 5.) Over the course of the last year, the United States has produced almost 23 million pages of records. The United States has also produced dozens of specifically identified, discrete files in accordance with the Parties' agreement. (*See generally* Ex. 6.)

Despite these massive productions, PLG has repeatedly attempted to ignore or expand the Parties' agreement as to the nature and scope of discovery. (*See generally* Ex. 7.) In May 2024,[2] PLG began sending informal requests for custodial ESI in contravention of the prior agreement. (Ex. 7.2.) The United States responded promptly, and, among other objections, noted that PLG had agreed to forgo broad custodial ESI and that the informal request demonstrably did not seek "discrete" or "specific" files. (Ex. 7.4.)

In late May, PLG served RFP 6, formally requesting custodial ESI, albeit identifying a different set of proposed custodians than the earlier, informal May request. (Ex. 8.1.) The United States sought clarification on the material inconsistencies between the custodial ESI requested in the informal May request and RFP 6. (Ex. 8.2.) On June 18, PLG responded by serving RFP 7, seeking very broad custodial data for ten custodians. (Ex. 1.) The United States responded to RFP

---

[2] PLG omits much of this earlier history of the Parties' discussions in the MTC, demonstrating that PLG could and should have raised this issue with the Court much earlier. *See, e.g., Jonathan R. v. Justice*, 2024 WL 3401735, at *4 (S.D. W. Va. July 12, 2024) (finding motion to compel untimely where the producing party made clear its position that it would not respond further to certain requests, "[t]hey could and should have filed a motion [to compel] at that point." Even after advising the responding party—three months later—that a motion to compel would be filed, no motion was forthcoming for yet another month. The Court noted that the requesting party could have "obtained a stipulation as they attempted to resolve the issue with Defendants or they could have filed the motion to compel within 30 days, but they did neither.").

7 on July 8, objecting to the requests for ESI on relevancy, proportionality, and burden grounds, as well as noting that such requests were contrary to the Parties' agreement. (Ex. 9.)

During the July 16 status conference, the United States confirmed that it maintained its objections to RFP 7. (D.E. 258, at 11:6 – 14:6.) PLG stated that a motion to compel would be forthcoming. (*Id.* at 14:10 - 15:14.) In follow-up correspondence on July 18, the United States again stood on its objections and confirmed its position once more at the August 6 status conference. (Ex. 11.) PLG did not file their MTC until August 8—three days before the close of fact discovery.

## III. LAW AND ARGUMENT

### A. Standard of Review

PLG does not articulate the standard it asks the Court to apply to the MTC.[3] Under Federal Rule 37(a)(1), district courts have broad discretion in deciding whether to grant or deny a motion to compel, *see Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995), which is, at bottom, a challenge to the sufficiency of the producing party's productions and objections in light of the nature of the propounded requests. As the Party resisting the production of additional discovery, the United States bears the burden of making "a particularized showing" as to why further discovery should not be granted. *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).

The United States can meet this burden by showing "(1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought is of such marginal

---

[3] Indeed, PLG's entire Motion to Compel is devoid of any legal citation whatsoever, save a conclusory reference to Fed. R. Civ. P.'s proportionality requirement. This failure to cite authority is an independent reason to summarily deny the MTC. *See United States v. $121,675.00 in United States Currency*, 2024 WL 577510, at *4 (E.D.N.C. Jan. 3, 2024), (Jones, M.J.*), Mem. & Rec. adopted in pertinent part by* -- F. Supp. 3d --, 2024 WL 1283811, at *1 (Myers, C.J.) (Mar. 26, 2024) ("[I]t is not the obligation of a district court to research and construct the legal arguments available to the parties. To the contrary, perfunctory and undeveloped arguments, *and arguments that are unsupported by pertinent authority*, are deemed waived.") (collecting cases; internal markings and quotations omitted; emphasis added).

4

relevance that the potential harm would outweigh the ordinary presumption of broad discovery." *Maggie's Auto Sales & Servs., LLC v. State Farm Fire & Cas. Co., Inc.*, 2024 WL 1908148, at *3 (D.S.C. May 1, 2024) (cleaned up). The burden to resist additional discovery is also satisfied if the requested discovery would be outside the scope of discovery under Rule 26(b), including where the requests are disproportionate or unduly burdensome. *See, e.g., McCormick v. Graham*, 2024 WL 1548632, at *2 (E.D.N.C. Mar. 5, 2024) (denying motion to compel that sought "records that either are nonexistent, not relevant . . . , or otherwise not proportional to the needs of the case.") (cleaned up; collecting cases) (Myers, C.J.).

### B. RFP 7 is a Belated Attempt to Sidestep the Parties' Much Earlier Agreement to Conduct Focused, Expedient Discovery by Avoiding the Burden and Expense of Custodial ESI Discovery.

The United States has consistently taken the position that RFP 7 is facially overbroad and has asked PLG to make reasonable attempts to narrow its demands. (*See generally* Exs. 9, 10.) Nonetheless, the United States' Response to RFP 7 outlined certain sets of ESI and hardcopy documents that the United States agreed to produce in the spirit of compromise. (Ex. 9, pp. 6-7.) The United States has, in fact, made (or is currently making) those productions:

| Document Category[4] | Pages Produced as of August 14, 2024[5] |
|---|---|
| Discrete documents identified by Dr. Hastings | **200** (Ex. 6.1) |
| Dr. Bove custodial emails | **162,451** (Ex. 6.9) |
| Dr. Bove hard copy materials[6] | **8,209** (Ex. 6.4) |
| Dr. Rennix custodial emails and ESI | **44,658** (Ex. 6.5) |
| Scott Williams hard copy documents | **TBD** (Made available for inspection/scanning)[7] |
| Dan Waddill hard copy documents | **1,011** (Ex. 6.3) |

---

[4] These categories do *not* include the thousands of other produced documents that mention or pertain to the RFP custodians.
[5] The United States informed PLG that it would continue to produce certain documents in response to previously served requests after the close of discovery. (Ex. 11.) PLG did not object.
[6] The United States agreed to produce this custodial data even though it is likely largely duplicative of the previously-produced ATSDR project files on which Dr. Bove worked at ATSDR.
[7] Due to quality issues with the original scans, PLG plans to re-scan these documents. (Ex. 12.)

PLG further claims that RFP 7 "does not seek ESI" and "is not intended to require a 'search' using traditional ESI search terms to locate responsive files and documents." (D.E. 273 at p. 6.) But regardless of PLG's characterization of the request, RFP 7 improperly attempts to require the United States to conduct custodial interviews about ESI and plainly seeks ESI under any number of definitions, such as those in the Federal Rules,[8] the ESI Protocol in this case,[9] RFP 7 itself,[10] the Sedona Conference's Glossary,[11] and even Black's Law Dictionary.[12]

PLG also overstates the testimony of several witnesses to suggest that the United States has not conducted an adequate search for responsive information because it did not conduct custodial interviews. (*Id.* at pp. 2-4.) Leaving aside that PLG naturally has very little insight into the United States' internal discovery processes,[13] this argument completely ignores that the United States was reasonably operating in reliance on the agreement that custodial ESI was not subject to discovery. In light of that agreement, custodial interviews of the ten RFP 7 custodians were plainly not pertinent and would only have diverted resources from more fruitful discovery efforts.

Finally, while PLG may believe that identification of ESI using search terms is not required for counsel to meet its Rule 26(g) obligations, courts routinely disagree that the cavalier approach advocated by PLG—indiscriminately copying and producing a custodian's self-selected files—appropriately discharges a party's or an attorney's discovery obligations. *See, e.g., Huggins v. N.C.*

---

[8] ESI includes "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A).

[9] "ESI shall carry its broadest possible meaning consistent with Fed. R. Civ. P. 34(a)(1)(A) . . . [and] includes relevant, proportional, evidentiary metadata." (D.E. 52, CMO 8, ¶ 1(d).)

[10] The RFP seeks, *inter alia*, "files and documents, including emails saved as .pdf and other file formats in their working files." (Ex. 1 at n. 2.)

[11] ESI is any "information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper). The Sedona Conference Glossary: eDiscovery & Digital Info. Mgmt., 5th Ed. (2020).

[12] ESI is "[d]ata created, manipulated, communicated, stored, and best used in digital form using computers." ELECTRONICALLY STORED INFORMATION, Black's Law Dictionary (12th Ed. 2024).

[13] PLG does not acknowledge evidence demonstrating that the United States has, in fact, contacted and questioned custodians about their ESI. (Ex. 6.6, excerpted privilege log entries related to "CLJA litigation custodian questionnaires.")

*Dep't of Admin.,* 2012 WL 5303702, at *3 (E.D.N.C. Oct. 25, 2012). The United States would obviously be required to search and review ESI sources to ensure that the production is responsive, does not improperly disclose privileged and confidential information, and encompasses "*all*" hard copy and ESI "contained on *any* computer storage device . . ." (Ex. 1 at p. 2). RFP 7 requires precisely the sort of resource-intensive search and review that the Parties intended to avoid by agreeing to forgo discovery of custodial ESI.

### C. Even if the Parties Had Not Agreed to a Narrow Scope of Discovery, RFP 7 is Disproportionate to the Needs of the Case.

PLG makes the conclusory statement that RFP 7 is proportional without grappling in any meaningful way with Rule 26's proportionality factors. But "a party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." *Conservation Law Found., Inc., v. Shell Oil Co.,* 2023 WL 5434760 (D. Conn. Aug. 22, 2023) (cleaned up). Rather than offering such an explanation, PLG instead relies on unsupported assertions that the requested custodial ESI is "discoverable," "key," and "crucial."

Proportionality requires more. A party asserting that proportionality permits the requested discovery must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under the proportionality analysis, no one factor is necessarily dispositive[14] and the balancing of the factors

---

[14] Because proportionality is a factor-based analysis, the United States focuses on the final two factors, which are most relevant to the instant dispute. However, the other factors do not weigh in favor of proportionality. While the federal government may have significant resources, "[c]onsideration of the parties' resources does not . . . justify unlimited discovery request addressed to a wealthy party . . ." Fed. R. Civ. P. 26, 2015 Committee Notes; *see also Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 1813395, at *9 (D. Kan. Apr. 9, 2020) ("If [resource] factors were determinative, they would eradicate proportionality considerations in every case against high-profile litigation targets with substantial resources."). The United States also understands that numerous federal agencies are in possession of a significant

"requires a common sense and experiential assessment." *Kinon Surface Design v. Hyatt Int'l Corp.*, 2022 WL 787956, at *3 (N.D. Ill. Mar. 15, 2022).

### 1. RFP Plainly Seeks Overbroad Custodial ESI.

The sheer overbreadth of RFP 7 counsels against granting the MTC because "overly broad" discovery requests are "insufficient for a motion to compel." *Myers v. Mercedes-Benz US, LLC*, 2024 WL 3738228, at * 6 (E.D. Va. May 15, 2024) (declining to compel response to requests for "all" documents that "in any way related" to subject of litigation, due to both the "extraordinarily broad" nature of the requests and the requesting party's "conclusory statements about the alleged admissibility of evidence that could arise from their" requests).

RFP 7—with its demand for "all relevant documents" of numerous kinds, from ten custodians across several federal agencies, and extending beyond government files to "personal laptop[s]" and "home computer[s]"—is exactly the type of overbroad request that the 2015 proportionality amendments to the Federal Rules of Civil Procedure foreclosed. Indeed, courts routinely prevent blanket discovery requests that seek "all" documents as facially disproportionate. *City of Chicago v. DoorDash*, 2023 WL 5431401 (N.D. Ill. Aug. 23, 2023). This Court should do the same here.

### 2. Responding to RFP 7 Would Impose an Undue Burden on the United States.

Collecting, processing, reviewing, and producing the requested custodial ESI—especially at this late stage in discovery—imposes a disproportionate burden upon the United States. *See, e.g., United States v. Duke Energy Corp.*, 24 F.R.D. 392, 393 (M.D.N.C. 2003) (noting that "the expense of requiring" even *one* federal agency "to search all of its files for particular documents is

---

amount of information about Camp Lejeune simply because of the lengthy time period implicated by the CLJA. But possessing asymmetric information does not automatically entitle a party with less potentially discoverable information to sweeping discovery from the party with more information. Finally, while this litigation is indisputably important and implicates the potential for monetary awards, these two factors alone cannot tip the scale from "disproportionate" to "proportionate." *See, e.g., Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) ("No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis.").

enormous."). The volumes of data implicated in RFP 7 are large; the shift from the 13 custodians the United States proposed in December to the 10 custodians PLG now seeks does not materially decrease the volume of ESI at issue. Moreover, the vast amounts of information already produced in this litigation further weigh against compelling more productions because any additional information is likely to be largely duplicative of information already produced. *See* n. 6, *supra*.

The estimates the United States provided in December 2023 are illustrative. PLG's requested custodial data is still likely to exceed 500 GB and consist of well over 500,000 items; estimates for collection, review, and production of this data show that completing this discovery would require approximately 300 additional working days at a cost to the United States of more than $2,000,000. (D.E. No. 92-2 at pp. 6-9.) These estimates remain wholly unrebutted by PLG as to any element of the proportionality analysis.

### 3. RFP 7 Seeks Information That is Not Relevant—Let Alone Important—to Exposure, Causation, or Damages.

Relevancy within the meaning of Fed. R. Civ. P. 26 is construed broadly. *See, e.g., Artis v. Murphy-Brown LLC,* 2018 WL 3352639 (E.D.N.C. July 9, 2018). However, the mere fact that information is generally "related to Camp Lejeune" (D.E. 273 at p. 2), does not make that information relevant to a claim under the CLJA. Rather, given the elements of the CLJA, only information related to exposure, causation, or damages is relevant. In other words, *information must be related to the "relationship between exposure to the water at Camp Lejeune and the harm" alleged in order to be discoverable*. (D.E. 227 at p. 12) (quoting CLJA § 804(c)(2)). While the MTC is replete with unsupported assertions that custodial ESI is "discoverable," "key," and "crucial," PLG does not explain why custodial ESI from these 10 custodians is relevant to these three elements of a CLJA case, much less why such ESI is likely to contain relevant, non-duplicative information that is important to resolving disputes about exposure, causation, or damages. *Kinon*, 2022 WL 787956, at *2.

Moreover, proportionality and relevancy go hand-in-hand: the more relevant the requested information is, the more likely it is to be proportionate to the needs of the case, even if obtaining the evidence is burdensome. *Watt v. AvalonBay Communities, Inc.*, 2023 WL 5179634 (E.D.N.Y. Aug. 11, 2023). Clearly, the inverse is also true—marginally relevant information is less likely to be proportionate even where the burden is slight. PLG has not attempted to connect the information sought in RFP 7 to the issues it must prove in this litigation. Given the substantiated burden the United States would incur to collect, process, review, and produce the requested information, this failure to demonstrate any relevancy is fatal to the MTC.

### D.  In the Alternative, the MTC Should be Denied Under Fed. R. Civ. P. 26(c).

Discovery requests are bounded not only by the proportionality considerations discussed above, but also must not cross the line from fact-finding to "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005). Under Rule 26(b)(2)(C), a court *must*, in fact, limit discovery that is "unreasonably cumulative," "outside the scope of discovery," or which the requesting party has already "had ample opportunity to obtain" in the litigation, even without a motion for a protective order. *See Page v. Bragg Communities, LLC*, 2023 WL 5418716, at *2 (E.D.N.C. Aug. 22, 2023) (Jones, J.).

 PLG is seeking vast amounts of data with marginal, if any, relevance to the narrow exposure, causation, and damages issues in dispute in this litigation and despite having already received nearly *two million documents during discovery*. By definition under Fed. R. Civ. P. 26(b), irrelevant and disproportionate information is outside the scope of permissible discovery, and is barred by Rule 26(c)(2)(C).

### IV.  CONCLUSION

For all these reasons, PLG's Motion to Compel should be denied.

Dated: August 15, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Special Litigation Counsel

SARA MIRSKY
Trial Attorney


s/ Leah M. Wolfe
LEAH M. WOLFE
OH Bar No. 0093299
Senior Litigation Counsel, E-Discovery
Civil Division
United States Department of Justice
1100 L Street, 8th Floor
Washington, D.C. 20005
E-mail: leah.wolfe@usdoj.gov
Telephone: (202) 598.0839

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

                                                      s/Leah M. Wolfe
                                                      LEAH M. WOLFE