IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

| | |
|---|---|
| IN RE: )<br>)<br>CAMP LEJEUNE WATER LITIGATION )<br>)<br>)<br>This Document Relates to: )<br>ALL CASES ) | ORDER |

This matter is before the court on Plaintiffs' Leadership Group's ("PLG" or "Plaintiffs") motion to compel production of documents in response to its Seventh Request for Production ("Seventh Request"). [DE-272]. Defendant opposes the motion. [DE-276]. The motion is ripe and referred to the undersigned for disposition. For the reasons stated below, Plaintiffs' motion is denied.

I. Background

This litigation concerns the more than two thousand individual lawsuits filed under the Camp Lejeune Justice Act ("CLJA") in this district. *See* Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802–04. With the CLJA, Congress created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than 30 days during the period between August 1, 1953, and December 31, 1987. *See id.* § 804(b). To better manage this litigation, the court appointed the PLG, *see* [DE-10], and entered case management orders streamlining pretrial procedures in all CLJA cases. *See, e.g.,* [DE-23]. The court is also phasing this litigation into separate "Tracks." [DE-23] 8. Each Track comprises several different illnesses

and proceeds on its own pretrial timeline. Relevant here, the court entered the parties' stipulated ESI protocol as Case Management Order No. 8 ("ESI Protocol"). [DE-52]. The court also established a discovery dispute protocol. [DE-55].

Plaintiffs served the Seventh Request on June 18, 2024. [DE-273-2] 4. It reads as follows:

> After interviewing the below government employees, please identify and produce all relevant documents (including hard copies), emails, native files, power-points, research materials, spreadsheets, maps, diagrams, working drafts, memorandums, communications, notes and any other file materials contained on any computer storage device these employees saved their working materials or these files, regardless if an office computer or personal laptop/home computer, related to Camp Lejeune Water Contamination issues:
>
> Patricia Hasting
> Frank Bove
> Christopher Rey
> Ron Burke
> Dan Waddill
> Scott Williams
> Chris Rennix
> Tim Reisch
> Jason Sautner
> René Suárez-Soto

*Id.* at 3. Plaintiffs state that the Seventh Request "is not intended to require a 'search' using traditional ESI search terms to locate responsive files and documents." [DE 273-2]. Defendant served its response and objections on July 8, 2024. [DE-273-3]. Track 1 fact discovery, which includes the Seventh Request, closed on August 11, 2024. [DE-250] 3.

The ESI Protocol "govern[s] the discovery, collection, and production of documents, including ESI, in the Action." [DE-52] 3. Section 3(c)(ii)(1), regarding "Custodians" reads: "[t]he Parties shall meet and confer to reach agreement on the names of Custodians subject to searches for ESI." *Id.* at 4. Section 3(c)(ii)(2)(a), regarding "Methods of Collection, Searching, and

2

Review," provides: "[t]he parties shall disclose and meet and confer as necessary regarding search terms." *Id.*

Despite extensive discussion, the parties never reached an agreement on the names of Custodians subject to ESI searches, or potential search terms. *See* [DE-276-2]; [DE-276-3]. In December 2023, Plaintiffs filed a motion to compel documents responsive to their First Set of Requests for Production, *see* [DE-81]; Defendant opposed the motion and filed a cross motion for a protective order. *See* [DE-92]. Defendant argued in part that Plaintiffs' requests failed to comply with the ESI Protocol, as the parties never "negotiate[d]" the contours of custodial ESI search and production. *Id.* at 10. Joshua Wood, Chief of the Office of Litigation Support for Defendant, also represented that it would take 314 working days using search terms to review and produce custodial ESI for 13 custodians. [DE-92-2] ¶ 33.

In January 2024, Plaintiffs agreed to withdraw their requests "to have the government custodians or agencies conduct ESI searches." [DE-276-3] 2. Soon after, the parties asked the court to hold these motions in abeyance pending additional meet and confers to resolve the issues. *See* [DE-107] 2:12–17 ("[W]e would like the Court to hold [these motions] in abeyance at this time."). The parties dispute whether Plaintiffs intended to forego all custodial ESI or would make requests at a later time. In its response to Defendant's cross motion for a protective order, [DE-92], the PLG said it "plan[ned] to withdraw several ESI requests in the First Request, reserving our right to address them at a later time." [DE-273] 10. Later at the March 5, 2024 status conference with the court, Plaintiffs Leadership contextualized the state of custodial ESI as follows:

> When we started out this ESI, there was a huge debacle. Who are the custodians? What are the search terms? And it went on and on .... And finally [Plaintiffs] withdr[ew] [its custodial ESI requests]

3

> with one reservation . . . that if [Plaintiffs] want a specific file, [Plaintiffs] have the right to ask for that file.

[DE-161] 39:3–14. The court withdrew the motions, [DE-81]; [DE-92], based on the parties' representations at the June 12, 2024, status conference that they had resolved the underlying discovery issues. *See* [DE-236]. After receiving input from the parties regarding Track 1 pretrial scheduling, *see* [DE-248], the court set the deadline for Track 1 fact discovery as August 11, 2024. [DE-250] 2.

II.  Standard of Review

The general rule regarding the scope of discovery is found in Fed. R. Civ. P. 26(b)(l):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Prasad v. Nallapati*, 597 F. Supp. 3d 842, 846 (E.D.N.C. 2022) (first quoting *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); then citing *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978))). Nevertheless, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Walls v. Ford Motor Co.*, No. 1:20CV98, 2021

4

WL 1723154, at *4 (M.D.N.C. Apr. 30, 2021) (citations omitted).

"Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Simply because "requested information is discoverable under Rule 26 does not mean that discovery must be had." *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). District courts must limit "'the frequency or extent of discovery otherwise allowed' if . . . '(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" *Page v. Bragg Communities, LLC*, No. 5:20-CV-336-D, 2023 WL 5418716, at *2 (E.D.N.C. Aug. 22, 2023) (quoting Fed. R. Civ. P. 26(b)(2)(C)). Additionally, Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting Fed. R. Civ. P. 26(c)(1)).

Defendant has the burden of showing why discovery responsive to the Seventh Request should not be had. *See Mainstreet Collection, Inc.*, 270 F.R.D. at 241.

III. Discussion

A. The Seventh Request is overbroad and otherwise outside the scope of Rule 26(b)(1)

Plaintiffs' Seventh Request for "all documents" located on "any storage device" related to "Camp Lejeune Water Contamination Issues" for the ten listed individuals is facially overbroad. *See Moore v. DAN Holdings, Inc.*, No. 1:12-CV-503, 2013 WL 1833557, at *11 (M.D.N.C. Apr. 30, 2013) (noting the "obvious overbreadth" of a request for "all communications created, sent or

5

received by [Defendant] Ziefle, [three other employees of the corporate Defendants], the Board of Directors [of the corporate Defendants] and/or any other [of] Defendants'] manager[s] concerning Plaintiff"); *Wells v. Liddy*, 186 F.3d 505, 518 (4th Cir. 1999) (upholding denial of motion to compel "because the initial document request was overly broad and not narrowly tailored"); *N. Carolina Right to Life, Inc. v. Leake*, No. 5:99-CV-798-BO, 2000 WL 36741022, at *6 (E.D.N.C. Sept. 11, 2000) (denying motion to compel in part due to "overbroad" requests); *Caton v. Green Tree Servs., LLC*, No. CIV.A. 3:06-CV-75, 2007 WL 2220281, at *8 (N.D.W. Va. Aug. 2, 2007), *aff'd*, No. CIV.A. 3:06-CV-75, 2007 WL 2570372 (N.D.W. Va. Sept. 4, 2007) (denying motion to compel response to "facially overly broad" document requests). Plaintiffs represent that the Seventh Request is in response to recurring issues at depositions. [DE-273] 2. Specifically, "the PLG has been taking the depositions of the witnesses listed in the Seventh [Request], and consistently, these deponents testified that they possess documents related to Camp Lejeune." *Id.* However, "documents related to Camp Lejeune" "may include documents or communications that have no bearing whatsoever on the issues in this case."[1] *Id.*; *Nallapaty v. Nallapati*, No. 5:20-CV-470-BO, 2022 WL 1508885, at *5 (E.D.N.C. May 12, 2022) (quashing a subpoena in part for overbreadth).

As the parties agree, a successful CLJA claimant must show that: (1) they were present on base for not less than 30 days; (2) they suffered harm; and (3) their harm was caused by exposure to the water at Camp Lejeune. [DE-277] 2. And as the court has explained, "individuals pursuing actions under the [CLJA] bear the burden of demonstrating their harm was caused by exposure, necessitating they establish both general and specific causation." [DE-227] 1 (Order Denying

---

[1] Similarly, Plaintiffs' reference at the August 27, 2024 status conference to alleged "Camp Lejeune" folders on Christopher Rennix's work and personal computers is unconvincing. [DE-279] 26:10–20. Moreover, Defendant is apparently in the process of producing documents from Mr. Rennix. *Id.* at 28:1–8.

6

Case 7:23-cv-00897-RJ    Document 280    Filed 08/30/24    Page 6 of 9

Motion for Partial Summary Judgment on Causation). Restated, "[i]ndividual exposure is essential to the CLJA's causation requirement." *Id.* at 8. To demonstrate "exposure," Plaintiffs must establish where the toxic water was present on base, at what levels of toxicity, and at what times. See [DE-207] (9:8–11 ("[T]his case is about water[.]")).[2] The court acknowledges Plaintiffs' concern with statements made by various deponents regarding allegedly unproduced computer files, but the Seventh Request overcompensates. *See Nallapaty*, 2022 WL 1508885, at *5 (quashing requests "lack[ing] any subject matter restriction [as] not appropriately limited to documents relevant to the claims and defenses in the case"). Plaintiffs' request for "all documents" related to "Camp Lejeune Water Contamination Issues" goes well beyond the pertinent causation and damages inquiry. *Cf. Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *10 (D. Md. Feb. 21, 2017) (finding requests overbroad which "[sought] information regarding all asbestos-related warnings, cautions or labels provided with any asbestos products whatsoever, and [were] not limited to the [issues] in [that] litigation"); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) ("[W]e agree with the district court that [the request for] . . . 'all documents . . . that refer to, mention or relate in any way to [the] [p]laintiff . . .' is overly broad . . . .").

    B.    The Seventh Request is a de facto request for custodial ESI

Though not necessary to the court's ruling, the Seventh Request also amounts to a request for custodial ESI and a departure from the parties' apparent course of dealing to date. The ESI Protocol states that "'ESI' shall carry its broadest possible meaning consistent with Fed. R. Civ. P. 34(a)(1)(A)." [DE-52] 1. Plaintiffs do not dispute that the Seventh Request contemplates ESI

---

[2] The court has also stressed that "[o]nce somebody gets over general and specific causation, they can present their experts if the Government contests it, the person can talk about their injury; but as [the Court] read[s] the elements of this statute and this claim, none of it has anything to do with what the Navy knew or didn't know." [DE-81-14] 20:7-11.

7

but specify that "Plaintiffs' request is not intended to require a 'search' using traditional ESI search terms to locate responsive files and documents." [DE-273-2] n2. Moreover, "this is not a request to do some elaborate search of custodian data, but rather, talk to these people and get their documents and files as requested therein." *Id.*

But the Seventh Request asks for "all documents . . . contained on any computer storage device . . . related to Camp Lejeune Water Contamination issues." *Id.* at 3. Despite Plaintiffs commentary to the contrary, compliance would require Defendant to conduct relevance and privilege review of each individual's "computer storage files" to find responsive, nonprivileged ESI. *Id.*; *see* Fed. R. Civ. P. 26(g). In other words, conduct custodial ESI searches using search terms. *See* [DE-52] 4; *see also* [DE-276] 7. And custodial ESI requires negotiation and agreement from the parties on custodians and search terms. [DE-52] 3–4 (Section 3(c)). The parties have been unable to agree to either. *See* [DE-276-2]; [DE-276-3].

Indeed, because of this impasse the parties agreed to a compromise. If the government produced the ATSDR's complete "water modeling" and "health effects" project files, Plaintiffs would withdraw the remainder of their requests and could identify additional "specific file(s)" they wanted produced. [DE-276] 9. Plaintiffs have apparently done so successfully on numerous occasions. For example, Plaintiffs state that after several meet and confers regarding documents referenced at depositions, "[t]he government [ ] agreed to produce the responsive hardcopy documents within the possession of these ten witnesses[,] . . . certain non-privileged emails sent or received by Frank Bove and Christopher Rennix[,] [and] certain documents specifically identified during Dr. Hastings' depositions . . . ." [DE-273] 7; *see also* [DE-276] 6 (chart by defendant listing discovery produced from the ten individuals).

The parties' disagreements are not limited to the content or structure of custodial ESI.

8

Defendant has represented that conducting custodial ESI for as few as thirteen custodians would require 314 working days at a cost of $2,519,302.14. [DE-92-2] ¶¶ 23, 33. Defendant states it could not have agreed to the "PLG's desired expedited litigation timeline" had Plaintiffs pressed ahead with custodial ESI requests. [DE-276] 3. Without parsing the merits of Defendant's assertions, granting the Seventh Request almost three weeks past the close of fact discovery would require significantly reworking the current pretrial schedule. The court believes the burden in doing so outweighs the likely benefits to Plaintiffs. *See Nallapaty*, 2022 WL 1508885, at *5 (citing *DeFreitas v. Tillinghast*, No. 2:12-CV-00235-JLR, 2013 WL 209277, at *3 (W.D. Wash. Jan. 17, 2013) (finding requests were "not reasonably targeted or specific, . . . overbroad on their face[,] and that [Defendant's] burden of producing many years' worth of all communications . . . outweighs the likely benefits to [Plaintiff], and the great cost required to produce all such communications will harm [Defendant]"); *see also Page*, 2023 WL 5418716 at *2 (District courts must limit "'the frequency or extent of discovery otherwise allowed' if . . . 'the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.'") (quoting Fed. R. Civ. P. 26(b)(2)(C)).

IV. Conclusion

For the foregoing reasons, Plaintiffs' motion to compel, [DE-272], is denied.

So ordered, the 30th day of August, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge

9

Case 7:23-cv-00897-RJ   Document 280   Filed 08/30/24   Page 9 of 9