IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **ORDER** |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| Key v. United States, No. 7:24-CV-382 ) | |
| Bassano v. United States, No. 7:24-CV-349 ) | |
| Miller v. United States, No. 7:24-CV-348 ) | |
| Armstrong v. United States, No. 7:24-CV-350 ) | |

On May 1, 2024, James Key, II ("Key"), Carol Bassano ("Bassano"), Eddie Mae Miller ("Miller"), and Rachael Armstrong ("Armstrong") (collectively, "plaintiffs") moved for partial summary judgment [D.E. 184] and filed a memorandum in support [D.E. 185], a statement of material facts [D.E. 186], and an appendix [D.E. 187]. On May 22, 2024, the United States of America ("United States" or "defendant") responded in opposition [D.E. 208] and filed a statement of material facts [D.E. 209] and an appendix [D.E. 210]. On June 5, 2024, plaintiffs replied [D.E. 228]. As explained below, the court grants Key, Bassano, and Armstrong's motion for partial summary judgment and denies without prejudice Miller's motion for partial summary judgment.

I.

In August 2022, Congress enacted and President Biden signed the CLJA. See Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04. On August 10, 2022, the CLJA became effective. Subsection 804(b) states that "[a]n individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp

Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune." CLJA § 804(b).

A "legal representative" is (1) a legal heir; (2) an executor, administrator, or other legal representative; or (3) someone who manages the legal affairs of another because of death. See Representative, Black's Law Dictionary (11th ed. 2019) (defining "legal representative" to include "lawful representative" or "personal representative"). A "legal representative" is not necessarily restricted to the personal representative of one who is deceased but includes all "persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law." Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 597 (1886); see In re Camp Lejeune Water Litig., ___ F. Supp. 3d ___, 2024 WL 816218, at *3 (E.D.N.C. Feb. 27, 2024). The CLJA does not require qualifying "as an ancillary administrator in North Carolina or open[ing] an estate in North Carolina state court in order to have the capacity to sue" under the CLJA. Id. at *9. Moreover, this court held that where a Missouri court appointed the adult daughter of a deceased Marine to serve as personal representative to administer her deceased Marine father's estate, the adult daughter qualified as the deceased Marine's "legal representative" under the CLJA. See id. In so holding, the court "accepted as very probative evidence that a state court of competent jurisdiction . . . appointed [the adult daughter] to serve as the administrator of the decedent." Id. at *6.

"An individual may not bring an action under this section before complying with section 2675 of title 28, United States Code." CLJA § 804(h). Subsection 804(h) requires a CLJA claimant to exhaust administrative remedies under 28 U.S.C. § 2675 before filing an action in the

Eastern District of North Carolina seeking relief under subsection 804(b) of the CLJA. See Brewer v. United States, No. 7:22-CV-150, 2023 WL 1999853, at *4 (E.D.N.C. Feb. 14, 2023) (unpublished); Pugh v. United States, No. 7:22-CV-124, 2023 WL 1081262, at *6 (E.D.N.C. Jan. 27, 2023) (unpublished); Girard v. United States, No. 2:22-CV-22, 2023 WL 115815, at *5 (E.D.N.C. Jan. 5, 2023) (unpublished).[2]

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking

---

[2] 28 U.S.C. § 2675 provides:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.
> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.
> (c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

28 U.S.C. § 2675.

summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for the factfinder to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Under 28 U.S.C. § 2675, administrative exhaustion requires: (1) the plaintiff to present his claim to the appropriate federal agency; (2) when the plaintiff presents his claim to the appropriate federal agency, the plaintiff must state the sum certain he is seeking for his claim; and (3) the plaintiff must wait either for the claim to be "finally denied by the agency" or for the agency to fail "to make final disposition of [the] claim within six months after it is filed." 28 U.S.C. §

4

2675(a), (b); see Est. of Van Emburgh ex. rel. Van Emburgh v. United States, 95 F.4th 795, 801 (4th Cir. 2024).

A.

As for Bassano, Bassano is the executor of her husband's estate in Ocean County, New Jersey and was issued letters testamentary in Onslow County, North Carolina. See PSMF [D.E. 186] ¶¶ 4, 7–12; DSMF [D.E. 209] ¶¶ 4, 7–12. On May 25, 2023, Bassano filed an administrative claim with the Department of the Navy as her husband's legal representative. See PSMF ¶ 14; DSMF ¶ 14. She requested money damages in a sum certain in her claim. See PSMF ¶ 15; DSMF ¶ 15. Her claim has been pending for at least six months without a final disposition. See [D.E. 208] 10. Accordingly, Bassano has exhausted her administrative remedies. See Van Emburgh, 95 F.4th at 801; In re Camp Lejeune Water Litig., ___ F. Supp. 3d ___, 2024 WL 816218, at *3, *6, *9 (E.D.N.C. 2024). On April 12, 2024, Bassano filed her short-form complaint. See [D.E. 1].[1]

As for Armstrong, on October 7, 2022, the Onslow County Clerk in North Carolina issued letters of administration to Armstrong to pursue a CLJA action. See PSMF ¶ 30; DSMF ¶ 30. On November 14, 2022, Armstrong filed an administrative claim with the Department of the Navy as her husband's legal representative. See PSMF ¶ 32; DSMF] ¶ 32. She requested money damages in a sum certain in her claim. See PSMF ¶ 33; DSMF ¶ 33. Her claim has been pending for at least six months without a final disposition. See [D.E. 208] 10. Accordingly, Armstrong has exhausted her administrative remedies. See Van Emburgh, 95 F.4th at 801; In re Camp Lejeune Water Litig., 2024 WL 816218, at *3, *6, *9. On April 12, 2024, Armstrong filed her short-form complaint. See [D.E. 1].[2]

---

[1] This citation is to individual case number 7:24-CV-349.
[2] This citation is to individual case number 7:24-CV-350.

As for Key, on April 18, 2024, James Key, II and Patricia Key were appointed in Durham County, North Carolina as co-executors of their mother's estate. See PSMF ¶ 41; DSMF ¶ 41. On August 10, 2022, they filed an administrative claim with the Department of the Navy as their mother's legal representative. See PSMF ¶ 38; DSMF ¶ 38. They requested money damages in a sum certain in their claim. See PSMF ¶ 39; DSMF ¶ 39. Their claim has been pending for at least six months without a final disposition. See [D.E. 208] 10. Accordingly, the Keys exhausted their administrative remedies. See Van Emburgh, 95 F.4th at 801; In re Camp Lejeune Water Litig., 2024 WL 816218, at *3, *6, *9. On April 30, 2024, the Keys filed their short-form complaint. See [D.E. 1].³

B.

As for Miller, she is the widow of James Earl Miller. See PSMF ¶ 15; DSMF ¶ 15. James Earl Miller served in the United States Marine Corps at Camp Lejeune from November 4, 1974, to June 30, 1975, and from January 1, 1976, to March 31, 1976. See PSMF ¶ 17; DSMF ¶ 17. On March 3, 2015, James Earl Miller died. See PSMF ¶ 18; DSMF ¶ 18. When he died, James Earl Miller was a Mississippi resident. See PSMF ¶ 19; DSMF ¶ 19. Miller did not open an estate for her deceased husband in Mississippi or any other state. See PSMF ¶ 21; DSMF ¶ 21.

On October 5, 2022, Miller filed an administrative claim under the CLJA with the Department of the Navy as her deceased husband's legal representative. See PSMF ¶ 22; DSMF ¶ 22. Miller's claim includes a request for money damages in sum certain. See PSMF ¶ 23; DSMF ¶ 23.

Miller argues that she has a statutory right to bring a wrongful death action under Mississippi law and thereby qualifies as a "legal representative" under section 804(b) of the CLJA.

---

³ This citation is to individual case number 7:24-CV-382.

See [D.E. 185] 18–19, 24–26; CLJA § 804(b). The United States responds that the Mississippi wrongful death statute does not make Miller a legal representative under the CLJA. See [D.E. 208] 11. The United States also argues that no state court of competent jurisdiction has appointed Miller to serve as the administrator for her deceased husband. See id. at 9. According to the United States, Miller has not proven that she is a legal representative under the CLJA or proven that she has the capacity to sue. See id. at 11–14.

Miller's action is stayed "pending selection of Plaintiffs for discovery and trial and further orders of this Court." [D.E. 23] 4. The stay permits the parties to focus on the pool of 100 "Track 1 Discovery Pools Plaintiffs," and Miller is not a Track 1 Discovery Pool Plaintiff. Thus, the court need not resolve this dispute at this time and denies without prejudice Miller's motion for partial summary judgment.

C.

Plaintiffs ask this court to issue an advisory opinion on what constitutes a legal representative for all claimants under the CLJA. See [D.E. 185] 1, 27–32; [D.E. 228] 2–3. Article III requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." Carney v. Adams, 592 U.S. 53, 58 (2020); see Flast v. Cohen, 392 U.S. 83, 96–97 (1968). A live controversy does not exist, and the court declines to issue the requested advisory opinion.

Alternatively, plaintiffs ask the court to equitably toll the CLJA's statute of limitations for all claimants under the CLJA. See [D.E. 185] 31. Defendant does not contend that plaintiffs' claims are time barred, and plaintiffs do not either. Accordingly, a live controversy does not exist, and the court declines plaintiffs' request.

7

## III.

In sum, the court GRANTS plaintiffs Key, Bassano, and Armstrong's motions for partial summary judgment and DENIES WITHOUT PREJUDICE plaintiff Miller's motion for partial summary judgment [D.E. 184].

SO ORDERED. This 10 day of September, 2024.

RICHARD E. MYERS II
Chief United States District Judge

TERRENCE W. BOYLE
United States District Judge

LOUISE W. FLANAGAN
United States District Judge

JAMES C. DEVER III
United States District Judge