IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | **JOINT STATUS REPORT** |
| | ) | |
| This Document Relates To: | ) | |
| ALL CASES | ) | |
| | ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to December 9, 2024, 2,275 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. Ninety-three (93) cases have been dismissed; eighty-eight (88) of those were voluntary dismissals and the other five (5) others were pro se cases. The cases are divided as follows: Judge Dever – 576 cases; Judge Myers – 559 cases; Judge Boyle – 563 cases; and Judge Flanagan – 577 cases. From February 11, 2023 to December 9 2024,

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are more than 550,000 administrative claims on file with the Department of the Navy ("Navy"). The Navy completed automated ingestion efforts and is currently focused on completing final manual data entry of several thousand CLJA claims received up to August 10,

1

2024. So far, the Navy has identified several thousand duplicate CLJA claims filed since the passage of the statute Navy identified several thousand duplicate CLJA claims filed since the passage of the statute and is focused on reconciling claims records to address situations where multiple claims were filed by or on behalf of a single claimant. The Navy recently announced multiple strategies to accelerate claims review and settlement progress. Since announcing those strategies, the Navy accelerated review of all claims containing some substantiation.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties' Joint Status Report of October 15, 2024 (D.E. 291) set forth competing proposals for the types of proof required to satisfy the PLG's burdens under Phase I (water contamination) and Phase II (general causation). The Parties' respective proposals were consistent in some ways, although the Joint Status Report of October 15, 2024 discussed certain differences.

The Parties are continuing to work to come to an agreement on language related to PLG's burdens under Phase I and Phase II. The Parties are hopeful that they will be able to reach an agreement on this proposed language for Phase I and Phase II soon to submit to the Court.

Further, the Joint Status Report of October 15, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. The cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for purposes of trials.

The Parties await further direction from the Court, if necessary, regarding these tracks.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phase III (specific causation and residual experts).

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties have scheduled a meet a confer on December 16, 2024 regarding stipulations, consistent with CMO-2. The Parties expect that the areas of agreement and dispute will continue to sharpen as expert discovery progresses. Now that both parties have disclosed their Phase I experts, the United States hopes to propose additional stipulations relevant to the Water Contamination Phase. The Parties also continue to determine if there are other topics or subjects that warrant stipulation negotiations.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter, and the PLG is committed to taking all actions necessary to meet the deadlines set forth in the Court's various scheduling orders. The PLG believes that the discovery process is on pace to meet all applicable deadlines. What follows is a brief description of some recent discovery issues.

Expert Examinations

The Parties have a disagreement concerning the meaning of certain terms in the Amended Stipulated Order Regarding Expert Examinations of Plaintiffs (Case Management Order No. 16) (D.E. 300) ("Amended Order"). Specifically, the Parties disagree whether a lawyer with the Department of Justice is entitled to attend medical examinations of Track 1 Trial Plaintiffs conducted by the PLG's medical experts.

In early 2024, the government approached the PLG and requested certain stipulations that would make the scheduling of Independent Medical Examinations ("IME") by defense experts of

3

Track 1 Plaintiffs more efficient. The government was principally concerned about having sufficient time to schedule IMEs because, at that time, there were 100 Track 1 Plaintiffs engaged in active litigation. As a result of these discussions, the Court entered the Stipulated Order Regarding Expert Examinations of Plaintiffs (Case Management Order No. 11) (D.E. 149) ("Original Order") on March 1, 2024.

Of course, the Court eventually reduced the litigation pool from 100 Track 1 Plaintiffs to 25 Track 1 Trial Plaintiffs. Despite this reduction in the pool of plaintiffs, the government again approached PLG with concerns about medical examinations of Track 1 Trial Plaintiffs. The Parties engaged in multiple meet and confers, and as a result of these substantial efforts, the Court entered the Amended Order on November 6, 2024. (D.E. 300).

The Amended Order contained numerous material benefits that a defendant, such as the government in the present action, would not typically enjoy in a civil action. For example, Fed. R. Civ. P. 35(1)(2) requires a defendant seeking a IME to file a "motion for good cause and on notice to all parties and the person to be examination," specifying "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Conversely, the Amended Order entitles the government with an automatic right to conduct an IME where the PLG's testifying expert performed a medical examination of a Track 1 Trial Plaintiff. *See* paras. 5 & 6. Hence, the PLG surrendered its right to litigate the necessity and scope of medical examinations by defense experts. The concession with made solely in an effort to avoid motions practice and thereby achieve litigation efficiency.

On November 13, 2024, and pursuant to the Amended Order, the PLG provided the government with notice of 6 examinations conducted by a Life Care Planner expert. On November 22, 2024, the government responded to this notice and, among other things, stated the following:

4

"Moving forward, we ask that PLG comply with CMO 16's [*i.e.*, the Amended Order's] requirement to allow both parties to have an attorney present at these examinations." The government's stated position was inconsistent with the PLG's understanding of the terms of the Amended Order. In an effort at transparency, the PLG requested a meet and confer on November 26, 2024, and the PLG forthrightly informed the government that the PLG's understanding of the Amended Order is that the government does not have a right to attend medical examinations of Track 1 Trial Plaintiffs by PLG testifying experts. Not only would this allow the government to ascertain the identity of the PLG's experts in advance of disclosure dates, but it would allow the government to improperly insert itself in the middle of the PLG's work product and attorney-client communications.

The government's position is inconsistent with the language and structure of the Amended Order. The most relevant term of the Amended Order states as follows: "Each party may have one attorney or non-attorney (i.e., paralegal) present at the examination." *See* para. 10. In the context of the Amended Order, it is clear that this term refers to "the examination" by a <u>defense expert</u>. For instance, paragraph 7 uses the word "examination" to refer to the examination of a defense expert. *See* para. 7 ("Defense counsel shall provide individual plaintiff counsel and Co-Lead Counsel with the name, qualifications, and curriculum vitae of the examiner for each plaintiff at least five (5) days before each scheduled examination."). Similarly, paragraph 11 uses the word "examination" to refer to the examination of a defense expert. *See* para. 11 ("Nothing in this agreement precludes Plaintiff's counsel from exercising the right to terminate the examination and seek a protective order pursuant to the Federal Rules of Civil Procedure, if appropriate."). In short, the Amended Order is designed to address the examinations by defense experts, and thus, it is expected that references to the word "examination" in the Amended Order refer to examinations

by defense experts. See also para. 2 ("This Stipulated Order is intended to provide Defendant with sufficient opportunity to request independent medical examinations of [Plaintiffs]."

The intent behind the Amended Order supports the PLG's position. As set forth in Paragraph 15, the Order applies to physical or mental examinations pursuant to Rule 35. Rule 35 allows a party to request an examination of another party. It does not allow a party to request that it be allowed to sit in on an examination of a party by that party's own experts. For these reasons and others, the government's request that a Department of Justice lawyer be present for medical examinations by PLG experts is inconsistent with the Amended Order and should not be allowed.

**United States' Position:**

General Discovery

The United States has completed substantially all of its general discovery responses. The United States will continue to produce any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies on a rolling basis.

The United States confirms that all scheduled fact depositions have been taken at this point. The United States recognizes additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Independent Medical Examinations

Since the entry of CMO 16, which the Parties negotiated and agreed to prior to its submission to the Court, the Parties have been working to schedule independent medical examinations ("IMEs") of specific Plaintiffs pursuant to CMO 16. D.E. 300. On November 22, 2024, after receiving notice from PLG that several plaintiffs had already undergone examinations by PLG's life care planning expert, the United States reminded PLG of CMO 16's requirement for

both parties to have an attorney present during these exams. *See* para. 10. In response, PLG acknowledged the CMO's attorney presence requirement, stating that "[a]ll of the below Plaintiff's interviews were done before CMO 16 was entered," thus recognizing the applicability of the CMO's attorney presence provision to both parties' exams but noting that prior interviews took place before its enforcement. Additionally, PLG disclosed that another exam was scheduled to occur five days later, on November 27, 2024. The United States responded promptly that Friday evening, requesting the Zoom information for this upcoming exam, and making it clear that an attorney from the United States would be in attendance. The PLG provided the Zoom link to this exam, in accordance with CMO 16. All of these actions demonstrate the Parties' mutual understanding that counsel for the United States would be present at PLG's examinations. However, the night before the exam, the United States was notified that the examination had been abruptly canceled without further explanation.

PLG requested a meet and confer and informed the United States of their new interpretation of CMO 16. It appears now that the Parties disagree over the interpretation of CMO 16, including paragraph 10 which governs attorney presence. The United States maintains that the CMO 16's clear language applies to both Parties equally and that paragraph 10 permits attorneys from both sides to be present during each party's exams. PLG's position is now apparently that paragraph 10 applies only to the United States' exams, barring DOJ attorneys from attending PLG's exams while allowing PLG attorneys to attend DOJ's exams. The United States disagrees with this inequitable interpretation, which is a direct contradiction to the negotiated terms the Parties previously agreed to.

Paragraph 10 states that "[e]ach party may have one attorney or non-attorney (i.e. paralegal) present at the examination. . . ." *See* para. 10. While other paragraphs in CMO 16 specify

the party to which they apply (*compare* para. 5 and 7 with para. 10), paragraph 10 does not specify a party and, thus, applies to both PLG and the United States equally. Notably, paragraph 6 further outlines PLG's obligation to include the United States in establishing a reciprocal process for both Parties' examinations. *See* para. 6 ("In the event that the PLG provides notice of a mental or physical examination of a Plaintiff by an expert, the Parties will meet and confer on the duration, scope, and procedures of the Plaintiff's examination. The agreed upon procedures will apply to both the United States' and the PLG's experts."). Reading CMO 16 in its entirety demonstrates that PLG's interpretation of paragraph 10 is illogical.

Recognizing that the United States would typically not have the opportunity to attend PLG's exams, but for the jointly negotiated and agreed-to CMO 16, the United States acknowledged, based on the caselaw provided to PLG, that PLG would similarly not have the right to attend the United States' exams. *See Smith v. Bd. of Governors of the Univ. of N. Carolina*, No. 7:08-CV-30D, 2008 WL 4877131, at *4 (E.D.N.C Nov. 10, 2008) (denying a motion for protective order seeking presence of plaintiff's counsel at a Rule 35 examination.). Indeed, the Court in *Smith* noted "[t]he weight of federal authority . . . favors the exclusion of the plaintiff's attorney from a Rule 35 examination absent a compelling reason." *Id*. (quoting *Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C.1998)). Paragraph 10 represents both Parties giving up the right to exclude the opposing side's attorneys from their respective exams. However, in the interest of compromise, on December 3, 2024, the United States proposed that DOJ attorneys would forgo attending PLG's exams if PLG attorneys likewise abstain from attending DOJ's exams. On December 5, 2024, PLG rejected this proposal and would not agree to abstain from attending the United States' IMEs, arguing that it does not comport with "standard practice." In response, the United States provided PLG with caselaw that demonstrates PLG's interpretation of standard IME practices is incorrect

and requested PLG provide caselaw in support of their position. On December 9, 2024, PLG reiterated their interpretation of CMO 16, asked the United States to reconsider its position, and stated their intention to move forward with examinations despite the present disagreement. On December 10, 2024, the United States again requested PLG to provide caselaw supporting its position and offered a second compromise: DOJ attorneys would not be present at PLG's exams and neither attorneys from the DOJ nor PLG would be present at the DOJ's exams. The United States believes both compromises offered should alleviate PLG's concerns about attorney interference during IMEs while preserving the negotiated, Court-entered CMO 16. The United States is awaiting PLG's response to its latest proposal and remains hopeful that a resolution will be reached soon.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a. The PLG's request for a Rule 16 conference (D.E. 155), and

b. The Parties' respective proposed discovery plans for Track 2 illnesses (D.E. 155 & 156).

*[Signatures follow on next page]*

DATED this 10th day of December, 2024.

Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*


/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs
and Government Liaison*


/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*


/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

10

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*