

U.S. Department of Justice

Civil Division
Environmental Torts Section

*Washington, DC 20005*

January 30, 2025

Via ECF
The Honorable Robert B. Jones, Jr.
Alton Lennon Federal Building and United States Courthouse
Wilmington, NC

**RE:** *Camp Lejeune Water Litigation* **(7:23-cv-00897) – CMO 16 Examination Duration**

Dear Judge Jones:

  The United States writes to state its position, pursuant to D.E. 55, regarding an unresolved issue concerning the duration of plaintiff examinations. Under CMO 16, PLG has notified the United States of eight examinations of Track 1 Trial Plaintiffs by a life care planning expert, and five examinations by a neurologist (all conducted via Zoom).[1] The parties agree that the United States has a right under CMO 16 to conduct reciprocal examinations of these plaintiffs via Zoom, but disagree about the time the United States' experts should be allowed to conduct these examinations.

  The United States' experts have requested up to four hours to conduct their examinations, consistent with their professional standards and experience. PLG's position is that the United States' experts should be limited to the much shorter times that PLG's own experts reported spending to examine the plaintiffs via Zoom.[2] PLG's restrictions on the United States' experts' examinations contravene CMO 16, lack support in the caselaw, and would unfairly prejudice the United States' ability to prepare its defenses.

---

[1] In addition, PLG gave notice of five "neuropsych" exams on January 21, 2025. (Ex. 1 at 3). On January 22, the United States confirmed in writing its intent to conduct reciprocal neuropsychological examinations, and proposed that "[i]f PLG is willing to provide the raw data for these tests, and if our experts can confirm the proper testing was conducted, this may alleviate the need for the United States to conduct its own testing of the relevant Plaintiffs." (*Id.* at 2). On January 24, PLG rescinded notice of these exams, stating it had "inadvertently disclosed the occurrence of those consulting expert examinations prematurely, and that PLG has not yet become reasonably certain that such consulting expert will be a Testifying Expert on Plaintiff's behalf." (*Id.* at 1). The United States reserves its right to seek the raw data from these exams, and to seek relief for any prejudice resulting from any delayed notice of the "neuropsych" exams.

[2] <u>Life care planning</u>: Mr. Cagiano, 1 hour; Mr. Hill, 1 hour; Ms. Rothchild, 1 hour, 24 minutes; Mr. Peterson, 2 hours, 18 minutes; Mr. Sparks, 1 hour; Mr. Welch, 1 hour; Mr. McElhiney, 2 hours, 36 minutes; Ms. Dyer, no duration indicated. <u>Neurology</u>: Ms. Rothchild, 1 hour, 5 minutes; Mr. Peterson, 40 minutes; Mr. Sparks, 1 hour, 10 minutes; Mr. Welch, 50 minutes; Mr. McElhiney, 35 minutes.

First, paragraph 6 of CMO 16 states the "the duration . . . of one Party's examination of the Plaintiff will not preclude the other Party from seeking adjustments to [the duration, scope, and procedures of an examination] through agreement of the Parties or court order." This provision explicitly reserves the United States' right to request examinations of a different duration than PLG's examinations. In line with that right under CMO 16, the United States requests that the Court permit up to four hours for each life care and neurology plaintiff examination conducted by the United States' experts.

Second, PLG has circumvented the protections built into CMO 16. Paragraph 6 of CMO 16 also requires that the Parties "meet and confer on the duration, scope, and procedures of the Plaintiff's examination," so that "[t]he agreed upon procedures will apply to both the United States' and the PLG's experts." PLG never met and conferred until after its examinations had already taken place, when it asked the United States to confirm that it would only use the same amount of time as PLG's experts, at which time the United States requested a meet and confer. In other words, PLG bypassed the required discussions on duration and now seeks to unilaterally impose limits on the United States' experts.

Third, PLG's limitations on the United States' experts are inequitable. The United States' experts should not be required to compromise their professional standards in their service as witnesses in this significant litigation. Further, PLG's experts can draw upon information provided by PLG attorneys based on communications PLG attorneys have with the Plaintiff. This could allow PLG's expert examination to be significantly shorter. The United States' experts, however, have no access to such information and are limited to the examination itself. *See Young v. CareAlliance Health Servs.*, No. 2:12-2337-RMG-BM, 2013 WL 12162454, at *2 (D.S.C. Feb. 20, 2013) ("The Court . . . declines to place any limitations on the length of this examination at this time. The purpose of Rule 35 is to level the playing field between the parties. . . . A Plaintiff's medical examiner typically has unfettered access to the Plaintiff, . . . while the Defendant must request access through a Rule 35 motion.").

Fourth, federal courts typically give substantial latitude — far more than the United States' request here of up to four hours — to defense experts on the amount of time needed to examine a plaintiff. *See, e.g., Smith v. Bd. of Governors of the Univ. of N. Carolina*, No. 7:08-CV-30D, 2008 WL 4877131, at *3 (E.D.N.C. Nov. 10, 2008) (denying motion to limit duration of defendant's proposed eight-hour psychiatric examination).

The United States' experts will treat plaintiffs with respect and sensitivity and are committed to keeping expert examinations as brief as possible. But the United States must be permitted a reasonable examination time for its experts to provide reliable opinions.

For the foregoing reasons, the United States requests that the Court permit its proposed examination durations, as this request aligns with the text of the CMO and the applicable caselaw.

Sincerely,

Adam Bain
Special Litigation Counsel

*/s/ Joshua G. Carpenito*
Joshua G. Carpenito
Daniel C. Eagles
Trial Attorneys
United States Department of Justice
Civil Division, Environmental Torts