IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | |
| | ) | O R D E R |
| This Document Relates To: | ) | |
| ALL CASES | ) | |
| | ) | |

This matter is before the court on a discovery dispute regarding independent medical examinations of certain Track 1 Trial Plaintiffs. At the court's request, the parties submitted short summaries of the issue [DE-318]; [DE-319].

I.      Background

This dispute concerns the ongoing Camp Lejeune Justice Act ("CLJA") litigation in this district.[1] *See* Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802–04. With the CLJA, Congress created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than 30 days during the period between August 1, 1953, and December 31, 1987. *See id*. § 804(b). To better manage this litigation, the court entered case management orders streamlining pretrial procedures in all CLJA cases. *See, e.g.*, [DE-23]. The court also established a discovery dispute protocol [DE-55].

The court is phasing this litigation into separate "Tracks." [DE-23] 8. Each Track comprises several different illnesses and proceeds on its own pretrial timeline. The court entered an order confirming 25 Track 1 Trial Plaintiffs to proceed on a separate pretrial timeline. [DE-250] 2. Fact discovery for the Track 1 Trial Plaintiffs closed on August 11, 2024. *Id*. at 4. The

---

[1] There are more than 2,300 individual CLJA lawsuits currently pending in this district.

Track 1 Trial Plaintiffs are currently conducting expert discovery. *See* [DE-270]. Relevant here, the court entered the parties' amended stipulated order regarding expert examinations of Plaintiffs as Case Management Order No. 16 ("CMO 16") [DE-300].

CMO 16 was entered to "provide Defendant with sufficient opportunity to request independent medical examinations of those Plaintiffs who undergo a medical examination by a[n] expert retained by the [Plaintiffs' Leadership Group, or "PLG"] for purposes of providing testimony ('Testifying Expert')." [DE-300] 1. The PLG shall inform Defendant promptly once it is "reasonably certain that an expert who will conduct or has conducted a medical examination of a Plaintiff will be a Testifying Expert." *Id*. at 2. Defendant agreed to forego (absent good cause) expert medical examinations of an individual Plaintiff if the PLG also would forego such examinations. *Id*.

CMO 16 at ¶ 6 reads:

> In the event that the PLG provides notice of a mental or physical examination of a Plaintiff by an expert, the Parties will meet and confer on the duration, scope, and procedures of the Plaintiff's examination. The agreed upon procedures will apply to both the United States' and the PLG's experts. In general, the duration, scope, and procedures of one Party's examination of the Plaintiff will not preclude the other Party from seeking adjustments to these terms either through agreement of the Parties or court order.

[DE-300] 2.

The PLG has provided Defendant notice of thirteen completed medical examinations by Testifying Experts (eight by Life Care Planning experts and five by neurologists) (collectively, "IMEs"). [DE-318]; [DE-319]. The PLG also indicated the length of each IME, as the PLG believes that any reciprocal examination conducted by Defendant is limited to the length of the PLG's initial IME. *Id*. Defendant disagrees with the PLG's reading of CMO 16 and, after consulting with its experts, requested up to four hours for reciprocal examinations. *Id*.

2

The court held a discovery conference on January 31, 2025 regarding this dispute. [DE-320].

## II. Discussion

The court has considered the parties' submissions and arguments made at the January 31 conference. The court believes that allowing Defendant's experts a four-hour time limit for reciprocal examinations is consistent with the court's prior orders and balances the PLG's interest in protecting their clients from undue burden with Defendant's interest in preparing its defenses. *See* [DE-116] 3–4 (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630–31 (1962)).

First, notwithstanding the PLG's arguments regarding the parties' intent, nothing in CMO 16 explicitly requires that Defendant's reciprocal examinations "mirror" the length of the PLG's initial examinations. [DE-319] (emphasis original); *see* [DE-300]. Indeed, CMO 16 acknowledges that the parties' respective examinations may be different, specifically, that "the duration, scope, and procedures of one Party's examination of the Plaintiff will not preclude the other Party from seeking adjustments to these terms either through agreement of the Parties or court order."[2] [DE-300] 2.

Second, while the court acknowledges the voluminous discovery provided by the PLG to date on behalf of Track 1 Plaintiffs, opposing experts' equal access to discovery materials does not necessitate those experts conduct similar examinations. By way of illustration, just because a Life Care Planning expert for the PLG took one hour to complete an examination does not mean

---

[2] CMO 16 also requires the parties to "meet and confer on the duration, scope, and procedures of [a] Plaintiff's examination" if "the PLG provides notice of a[n] . . . [expert] examination[.]" [DE-300] 2. Defendant argues that no "meet and confer" occurred for the IMEs. [DE-318] 2. Instead, the PLG conducted them at their own pace and only informed Defendant after the fact. *Id.* The PLG has not specified which of the thirteen examinations were conducted by consulting experts who have since been converted to Testifying Experts, in which cases a pre-examination meet and confer would not be required. [DE-300] 1–2. Absent this information, the court cannot opine as to whether CMO 16 required a prior meet and confer for a given IME.

3

that Defendant's opposing expert could exhaust all issues relevant to Defendant's defense in that same time.

Third, the court is not convinced that a four-hour examination limit imposes undue burden on the individual Plaintiffs. All but three of the IMEs took longer than one hour.[3] The four-hour limit is not a floor but a limit. Defendant has represented that it is "committed to keeping expert examinations as brief as possible." [DE-318] 2. Further, Defendant's examinations will be held via Zoom (or by equivalent remote video), and Plaintiffs may have an attorney and/or family member present. [DE-318] 1; [DE-300] 3. Throughout this litigation, the court has emphasized the importance of conducting representative bellwether trials to better progress global resolution. [DE-116] 4; *see also Raymond v. USA*, No. 23-CV-546, [DE-34] (describing the court's interest in conducting productive bellwether trials). Ensuring the Defendant has a fulsome opportunity to defend each of the Track 1 Trial Plaintiff cases will help maximize the impact of any Track 1 verdicts on global resolution. *Id*.

III.    Conclusion

For the foregoing reasons, the court orders that the Defendant's reciprocal examinations to the IMEs are limited to four hours each.

SO ORDERED. This 3rd day of February, 2025.


Robert B. Jones, Jr.
United States Magistrate Judge

---

[3] Based on the parties' submissions, the average IME lasted 74 minutes. [DE 319] 1.

4