IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | **JOINT STATUS REPORT** |
| | ) | |
| This Document Relates To: | ) | |
| ALL CASES | ) | |
| | ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The Parties also note their understanding that the Court has approved a telephonic status conference for February 27, 2025. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to February 20, 2025, 2,635 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and three (103) cases have been dismissed; ninety-seven (97) of those were voluntary dismissals and the other six (6) others were pro se cases. The cases are divided as follows: Judge Dever – 683 cases; Judge Myers – 610 cases; Judge Boyle – 669 cases; and Judge Flanagan – 673 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 408,000 de-duplicated administrative claims on file with the Department of the Navy ("Navy"). The Navy launched an enhanced Claims Management Portal this week that will improve every filer's ability to effectively manage their CLJA claim

1

online. The Navy is completing final data quality checks in that system this week and will open the new system to the public as soon as possible. As part of that public launch, every draft claim currently contained in the Navy's claims system will be advanced into the review process. As indicated in the last update, approximately 30,000 CLJA claims currently contain at least one supporting document. Of those 30,000 claims, approximately 6,000 allege an injury type that may be settled under the Elective Option framework. The Navy accelerated review of those claims and is working to extend settlement offers to as many claimants as possible as quickly as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties' Joint Status Reports of October 15 and December 10, 2024 (D.E. 291 & 306) set forth competing proposals for the types of proof required to satisfy the PLG's burdens under Phase I (water contamination) and Phase II (general causation). The Parties' respective proposals were consistent in some ways, although the above-referenced Joint Status Reports discussed certain differences.

The Parties had exchanged language related to PLG's burdens under Phase I and Phase II, however, the Parties have not been able to reach agreement on all such issues. The PLG believes that the need to submit the language is no longer necessary given the Parties' expert disclosures; the United States disagrees and believes that having language specifying the nature of proof for Phase I and Phase II would be helpful for the Parties and the Court. The Parties await further direction from the Court on submitting positions on the Phase I and Phase II burdens.

Further, the Joint Status Reports of October 15 and December 10, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. These cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for

purposes of trials. The Parties may make additional proposals for subgroups of other diseases for purposes of trials.

The Parties are actively discussing the nature of the hearing on Phase I issues, which is currently scheduled for March 25, 2025. The Parties anticipate providing the Court with their joint or respective proposals in the near future.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phase III (specific causation and residual experts).

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties discuss their positions on stipulations on a monthly basis. The Parties' next meet and confer regarding stipulations is scheduled for February 26, 2025. The Parties expect that the areas of agreement and dispute will continue to sharpen as expert discovery progresses.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Disclosures</u>

On February 7, 2025, the PLG designated Phase III experts on specific causation, damages and other expert disciplines not covered by previous phases ("Residual Experts"). Pursuant to Case Management Order No. 17 [D.E. 305], the PLG produced the "materials considered files" for Residual Experts on February 14, 2025. At present, the PLG is preparing to disclose rebuttal experts on Phase II (General Causation) on March 15, 2025.

3

Case 7:23-cv-00897-RJ   Document 326   Filed 02/20/25   Page 3 of 17

Below, the government states that there are "deficiencies" with some of the reliance files produced by the PLG. In fact, the government has raised only a few issues with the PLG's production of reliance files, none of the issues are remotely material, and the PLG is endeavoring to work cooperatively to address any legitimate issues. However, many of the "deficiencies" alleged by the government may be baseless. For example, the government has asked the PLG to produce "notes" generated by a psychology expert. However, paragraph 3(b) of Case Management Order No. 17 [D.E. 305] generally exempts a "testifying expert's notes" from production, although there are some exceptions that appear to not apply here. In any event, the PLG has produced hundreds of pages of detailed reports, materials considered lists, and reliance files, and the PLG's experts have articulated the opinions, and the bases for their opinions, in copious detail. Hence, the government's claim that it has been prejudiced is not correct.

Expert Depositions

The Parties have scheduled the Phase I expert witness depositions on water contamination and modeling issues (the "Water Contamination Experts"). Further, the Parties are in the process of scheduling the depositions for Phase II experts on general causation ("General Causation Experts").

Several General Causation Experts authored one or more general causation reports that covered multiple Track 1 diseases/cancers. For example, PLG expert Benjamin Hatten, MD, MPH authored separate general causation reports on kidney cancer and bladder cancer. Moreover, several General Causation Experts also authored separate reports on both general causation and specific causation. Therefore, the Parties have held discussions concerning the number and duration of expert depositions. Pursuant to Case Management Order No. 17 [D.E. 305], the PLG contends that each General Causation Expert should be limited to one deposition that will typically

4

be limited to seven (7) hours. The Parties have agreed that this limitation will likely apply in most instances, although the Parties also agreed that any Party can make a special request to extend the duration of a deposition, in which event the Parties will hold a meet-and-confer to discuss the request. Further, the Parties have agreed that any expert who has prepared both a general causation and specific causation report will be deposed separately in each phase, and the Phase III deposition will be limited to the expert's specific causation opinions only.

The Government's Requests to Reopen Depositions

The government has requested that it be permitted to re-take the depositions of David Downs ("Mr. Downs"), Ernest Hunt ("Mr. Hunt") and Mark Cagiano ("Mr. Cagiano").

Mr. Downs is a Track 1 Trial Plaintiff under the kidney cancer category, and he was previously subject to a discovery deposition and then a subsequent *de bene esse* deposition. Unfortunately, Mr. Downs was recently diagnosed with metastatic cancer as a result of his original kidney cancer diagnosis. As a result of this metastatic cancer diagnosis, the government has requested that it be permitted to depose Mr. Downs yet again. To be specific, the government seeks to depose Mr. Downs for purposes of exploring the recent metastatic cancer diagnosis, the related surgery, and the impact of this recent diagnosis on Mr. Downs and his future damages. In response, the PLG has volunteered that the government conduct a deposition by written questions pursuant to Rule 31 of the Federal Rules of Civil Procedure, which deposition would be solely related to Mr. Downs' metastatic cancer.

The PLG contends that a third deposition of Mr. Downs is unnecessary, unreasonable and not required by the Federal Rules of Civil Procedure. This third deposition would be burdensome given Mr. Downs' health and age (Mr. Downs is 90-years-old). Further, Mr. Downs' metastatic cancer is a progression of his original kidney cancer diagnosis, but is not a category of cancer. The

5

present litigation frequently involves plaintiffs who are presently and actively battling cancers or other health conditions caused by the water at Camp Lejeune, and it would be unduly burdensome to require each plaintiff to undergo additional depositions every time their health situation changes. In the PLG's experience, it is uncommon and certainly not the standard practice in personal injury cases to subject the plaintiff to another deposition because he or she has developed an expected worsening of illnesses. Moreover, the government's purported need for additional information can be addressed with a deposition by written questions. Under the circumstances, another deposition of Mr. Downs – which would be his *third* deposition in this action – would be unduly burdensome, unnecessary, and should not be allowed.

      Mr. Cagiano is a Track 1 Trial Plaintiff under the bladder cancer category. Mr. Hunt was among the 100 Discovery Pool Plaintiffs, but he is not a Track 1 Trial Plaintiff. Both Mr. Cagiano and Mr. Hunt were previously deposed by the government. On December 9, 2024, the government designated Alexandros Spiliotopoulos, PhD ("Dr. Spiliotopoulos") as a Water Contamination Expert. Dr. Spiliotopoulos' report made certain inaccurate statements about how water buffalos were filled at Camp Lejeune. Therefore, on January 13, 2024, the PLG's rebuttal experts relied upon Affidavits by Mr. Cagiano and Mr. Hunt concerning the true manner in which water buffalos were filled at Camp Lejeune. The government has requested new depositions of Mr. Cagiano and Mr. Hunt based on these Affidavits. The PLG contends that such depositions are not required under the Federal Rules of Civil Procedure. The government previously conducted deposition examinations of both Mr. Cagiano and Mr. Hunt concerning the filling of water buffalos. The government's failure to elicit all pertinent information during the first depositions, and the PLG's presentation of Affidavits providing details the DOJ could have obtained but did not, should not entitle the government to another round of depositions. As a measure of good faith, however, the

PLG preliminarily reached agreement with DOJ that Mr. Hunt and Mr. Cagiano could be deposed for no longer than 90 minutes solely on the subject of their water buffalo Affidavits. Now DOJ seeks to schedule these depositions with urgency in the next 2-3 weeks. The PLG has asked DOJ to agree that neither Mr. Hunt nor Mr. Cagiano will be asked to sit for another deposition if they are deposed on the water buffalo issue now. The DOJ has not agreed to this and the PLG is concerned that the Hunt and Cagiano depositions will serve as the basis for further requests from the DOJ to reopen plaintiff depositions, as has now occurred with Mr. Downs.

Given the DOJ's now repeated requests to reopen plaintiff depositions, and their refusal to agree that Mr. Hunt and Mr. Cagiano will not be re-deposed again, the PLG forecasts that requests to reopen plaintiff depositions will continue with the passage of time and that plaintiffs may be asked to be re-deposed on more than one occasion. For example, if Mr. Cagiano is re-deposed now on his statements about water buffaloes and next month he were to be diagnosed with metastatic cancer like Mr. Downs, then is the DOJ going to ask to re-depose Mr. Cagiano again? Based on the DOJ's request with respect to Mr. Downs, it appears that is likely. The PLG therefore seeks to limit the reopening of plaintiff depositions to only those rare limited occurrences, if any, in which it is appropriate and to limit the DOJ's opportunity to reopen plaintiff depositions, if at all, to one time before trial. The standard rule in litigation is that a party is deposed only once. That rule should be the norm and if a plaintiff is to be re-deposed, whether by agreement or by court order, then the reopened deposition should be narrowly defined as to scope, limited in time, and occur only once. The burden of repeated depositions on these plaintiffs, who are already battling serious health issues, is too onerous and the continuous reopening of depositions is not contemplated by the rules of discovery.

### The Government's Requests for Supplementations

In a January 16, 2025 letter, the United States requested that PLG provide updated Discovery Pool Profile Forms ("DPPF") pursuant to PLG's ongoing discovery disclosure obligations under Federal Rule of Civil Procedure 26(e) and the Court's Order Regarding DPPFs [Dkt. 62]. PLG responded on January 31 that PLG's ongoing production of medical records satisfied its obligations under Rule 26. The Parties met and conferred on this issue on February 19, 2025, and are continuing to work toward a resolution of the issue.

### National Academy of Sciences

On November 12, 2024, the PLG took the deposition of Susan Martel ("Ms. Martel"), who was the Project Director for the National Academy of Science's ("NAS") report on the water contamination at Camp Lejeune. The NAS recently designated certain portions of Ms. Martel's deposition as confidential. The PLG contends that no aspect of Ms. Martel's deposition transcript is in fact privileged or confidential. However, the NAS, the government, and the PLG have held discussions about how to cooperatively resolve this dispute without involvement of the Court.

### Independent Medical Examinations ("IME")

To date, the PLG has provided the government with notice of seven (7) life care planner examinations as required by Case Management Order No. 16 [D.E. 300], and as of the date of the next Status Conference hearing, the government's own experts will have completed seven (7) counter examinations. One additional DOJ life care plan examination has yet to be scheduled (Laramore), along with one DOJ vocational rehabilitation examination (Mousser). Additionally, the Parties have scheduled three (3) counter psychiatric examinations to be conducted by the government's own experts.

Below, the government raises a concern that a PLG attorney objected to certain questions posed by a defense life-care planning expert during a recent IME. In fact, the objection was made after the IME had concluded. The PLG lawyer allowed the plaintiff to answer all questions posed during the IME, and the IME was never interrupted. Instead, after the IME had concluded, the PLG lawyer correctly expressed concerns that several questions were outside the scope of the defense life-care planner's expertise. To be specific, the defense life-care planner conducted an in-depth inquiry into the mental health diagnoses of the subject plaintiff, such as depression, anxiety, and PTSD. Further, the defense expert asked questions specifically related to an evaluation of cognitive and emotional functioning of the plaintiff. These inquiries require clinical expertise that a life-care planner does not possess. Further, this particular plaintiff has made no claims related to these mental health issues and therefore these questions are wholly unrelated to the particular action.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

<u>Fact Depositions</u>

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court. There are three pending plaintiff depositions that the United States would like to bring to the Court's attention.

<u>Depositions of Mark Cagiano and Ernest Hunt</u>

The United States seeks to re-open the depositions of plaintiffs Ernest Hunt (*Hunt v. United States*, 7:23-cv-00452), who is not a Track 1 bellwether plaintiff, and Mark Cagiano (*Cagiano v. United States*, 7:23-cv-00569), who is a Track 1 bellwether bladder cancer plaintiff. The United States first deposed Mr. Hunt on February 5, 2024, and Mr. Cagiano on February 8, 2024.

The United States seeks leave to depose Mr. Hunt and Mr. Cagiano on the limited topic of their knowledge of the use of water buffaloes at Camp Lejeune. Mr. Hunt and Mr. Cagiano both signed affidavits on January 14, 2025, alleging detailed knowledge of the historical use of water buffaloes at Camp Lejeune, including model numbers. Several of PLG's Phase I experts relied on these affidavits in their rebuttal reports, and the affidavits contain information that is new or inconsistent with prior deposition testimony.

The United States' request to re-open Mr. Hunt's and Mr. Cagiano's depositions during Phase I expert discovery is the result of PLG's failure to timely supplement their responses to interrogatories. *See* Fed. R. Civ. P. 26(e)(1)(A). The United States served a set of contention interrogatories on December 5, 2023, that asked PLG to identify individuals with knowledge of their claims related to water buffaloes. On January 4, 2024, PLG responded to these interrogatories but did not identify Mr. Hunt or Mr. Cagiano as individuals with information about PLG's water buffalo claims. The United States was therefore unaware that PLG was relying on Mr. Hunt and Mr. Cagiano to support their claims related to water buffaloes until it received PLG's Phase I rebuttal reports more than a year later, on January 14, 2025. On February 17, 2025, PLG finally supplemented its responses to the United States' contention interrogatories to identify Mr. Hunt and Mr. Cagiano as individuals with information about water buffalo claims.

The timing of the United States' request to re-open Mr. Hunt's and Mr. Cagiano's depositions is also the result of PLG's failure to timely supplement their responses to

10

interrogatories. Mr. Hunt's and Mr. Cagiano's recently disclosed knowledge of the model numbers of water buffaloes at Camp Lejeune is relevant to Phase I experts. The United States therefore raised the issue of Mr. Hunt's and Mr. Cagiano's depositions on January 31, 2025, shortly after receiving their affidavits, and more than six weeks before the close of Phase I expert discovery. PLG agreed to make Mr. Hunt and Mr. Cagiano available for up to 90 minutes each for depositions conducted remotely by the United States. However, when the Parties met and conferred virtually on February 19, 2025, PLG refused to agree to the depositions during Phase I expert discovery unless the United States agreed to forego any future deposition of Mr. Hunt and Mr. Cagiano, regardless of future developments in their cases. Because the issue of Mr. Hunt's and Mr. Cagiano's knowledge of water buffaloes is important to Phase I expert discovery and independent of unknown future developments, the United States did not agree. The Parties have been unable to resolve their dispute.

Deposition in *Downs v. United States* (7:23-cv-01145)

The United States seeks to re-open plaintiff David Downs's deposition (*Downs v. United States*, 7:23-cv-01145), a Track 1 bellwether kidney cancer plaintiff. The United States first deposed Mr. Downs on May 7, 2024. At PLG's request, Mr. Downs's trial testimony was preserved by a *de bene esse* deposition on May 8, 2024.

The United States seeks leave to depose Mr. Downs regarding a newly-developed cancer, surgery, and recovery. When he was deposed in May 2024, Mr. Downs had no existing signs of cancer. Subsequent medical records, however, indicate that Mr. Downs was diagnosed with a small bowel cancer, metastatic from his kidney cancer, around August 2024. Mr. Downs's medical records further indicate that the small bowel cancer was resected shortly after its detection and Mr. Downs is now under surveillance.

11

Mr. Downs's metastasis, surgery, and recovery could not be explored when the United States first deposed Mr. Downs, because the small bowel cancer had not been diagnosed. Additionally, the small bowel cancer is central to Mr. Downs's case because an entirely new injury is now being alleged. The United States appreciates the burdens imposed by a deposition by oral examination, and has therefore agreed to conduct the deposition remotely, with additional time and scope limitations. PLG proposes that the United States instead depose Mr. Downs by written questions. This alternative would prejudice the United States's ability to prepare for trial, to the extent Mr. Downs may testify at trial about these topics. PLG has not represented that Mr. Downs's health would preclude him from offering live testimony at trial.

The United States first raised the issue of Mr. Downs's deposition on January 24, 2025. The Parties met and conferred virtually on February 7, 2025, and again on February 19, 2025. The Parties have been unable to resolve their dispute.

<u>Expert Discovery Disclosures</u>

The United States made its Phase II expert disclosures on February 7, 2025. PLG's Phase III expert disclosures were also made on February 7, 2025. The United States is reviewing these reports as quickly as possible to confirm whether they comply with Federal Rule of Civil Procedure 26 requirements, and whether there are any deficiencies with the documents produced in conjunction with the reports. The United States has sent several letters to PLG with respect to deficiencies identified to date. The United States will work with the PLG on any issues that arise.

<u>Request for Expert Extension in Parkinson's Disease Cases</u>

The United States made PLG and the Court aware at the January 13, 2025 Status Conference that its Parkinson's Disease expert had an unexpected medical event. *See* ECF No. 315 at 3:15-19. As a result, the United States' expert is no longer available and the United States had

12

Case 7:23-cv-00897-RJ    Document 326    Filed 02/20/25    Page 12 of 17

to unexpectedly retain new experts to opine on the medical conditions of the five Parkinson's Disease Plaintiffs. Due to the constrained timeline, the United States raised that it may request a short extension to provide its newly retained experts sufficient time to review Plaintiffs' medical records and perform independent medical examinations. Mr. Bell on behalf of PLG responded with PLG's willingness to work with the United States stating, "We have a couple of issues that have come up, Your Honor. I don't think it's anything that we need the Court for because we can probably agree, but we have -- Mr. Bain has an expert who recently had a stroke; unexpected, of course. We'll work with them on working through that." *See* ECF No. 315 at 3:17-24..

On February 19, 2025, Mr. Bain e-mailed Mr. Bell asking if PLG would be amenable to extending the expert discovery deadlines for 30 days for just the Parkinson's Disease Plaintiffs given the unexpected and extenuating circumstances. Mr. Bell responded that PLG is considering this extension. The United States is hopeful that the Parties will be able to reach an agreement given the extenuating circumstances surrounding its expert's health. However, if an agreement cannot be reached, the United States may be required to raise the issue with the Court.

Expert Depositions

The Parties have met and conferred on the dates for Phase I expert depositions. Dates have been confirmed for essentially all expert depositions. The United States anticipates that the depositions will move forward without any issues.

The Parties are currently working to schedule the Phase II expert depositions prior to the close of expert discovery. The Parties are working collaboratively to try to accommodate the attorneys' and experts' schedules.

Independent Medical Examinations

The United States continues to coordinate with PLG regarding IMEs. As previously reported to the Court, PLG noticed additional examinations – one psychological, one vocational rehabilitation, and two psychiatric – on their residual expert disclosure deadline, February 7. Many of these examinations have since been scheduled, and the parties are actively working to finalize the remaining examinations.

To date, PLG has noticed eight life care exams, five neurological examinations, two psychiatric examinations, one psychological examination, and one vocational rehabilitation examination. The United States has confirmed its intention to conduct examinations in those cases.

Additionally, the United States has learned that at least one attorney for PLG objected to certain questions posed by the United States' life care expert as being outside the scope of the IME, but ultimately permitted the plaintiff to respond. The attorney noted, however, that PLG may instruct Plaintiffs not to answer similar questions in future IMEs. The United States disagrees with PLG's characterization of the questions as being "outside the scope," and in line with its prior reservation of rights during the last status hearing, brings this issue to the Court's attention. During the last status hearing, PLG confirmed its understanding that PLG attorneys would not interfere during these examinations. Despite this, the United States has now encountered apparent interference and requested confirmation from PLG via email on February 19 that no other attorneys will interfere in a manner inconsistent with paragraph 10 of CMO 16. PLG's first response to our e-mail is their IME section of this Joint Status Report, and we are seeking further clarification from our expert.

Finally, the United States has identified deficiencies related to the production of documents for PLG's psychological and psychiatric expert reports that may prejudice the United States's

ability to conduct its psychiatric examinations. The United States has alerted PLG to these issues, and reserves its right to reschedule its psychiatric IMEs if these documents are not produced at least a week prior to a scheduled IME.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a.  The PLG's request for a Rule 16 conference [D.E. 155], and

b.  The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156].

*[Signatures follow on next page]*

DATED this 20th day of February, 2025.

Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Unit
Environmental Torts Litigation Section

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*