IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **JOINT STATUS REPORT** |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to March 10, 2025, 2,701 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and five (105) cases have been dismissed; ninety-eight (98) of those were voluntary dismissals and the other seven (7) others were pro se cases. The cases are divided as follows: Judge Dever – 690 cases; Judge Myers – 648 cases; Judge Boyle – 676 cases; and Judge Flanagan – 687 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 408,000 de-duplicated administrative claims on file with the Department of the Navy ("Navy"). The Navy recently launched an enhanced Claims Management Portal designed to improve every filer's ability to effectively manage their CLJA claim online. As part of that public launch, every draft claim currently contained in the Navy's claims system was

1

advanced into the review process. As indicated in previous updates, approximately 30,000 CLJA claims currently contain at least one supporting document with approximately 6,000 of those claims alleging an injury type that may be settled under the Elective Option framework. The Navy is accelerating review of those 6,000 claims and is working to extend settlement offers to as many claimants as possible as quickly as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Joint Status Reports of October 15 and December 10, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. These cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for purposes of trials. The Parties may make additional proposals for subgroups of other diseases for purposes of trials.

On March 3, 2025, the Parties filed a Joint Notice Regarding Hearing on March 25, 2025. [D.E. 329]. In the Joint Notice, the Parties proposed mutually agreed upon language concerning the nature of evidence to be presented by experts in the Water Contamination Phase (Phase One) of this litigation. *Id.* ¶ 4. Further, the Parties set forth competing positions concerning whether there should be a live evidentiary hearing during the Water Contamination Phase. *Id.* ¶¶ 6(A)-(B). At the Court's convenience, the Parties will be prepared to answer the Court's questions concerning these issues, including at the next Status Conference on March 17, 2025.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phases II (general causation) and III (specific causation and residual experts).

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties discuss their positions on stipulations on a monthly basis. On February 26, 2025, the Parties held a videoconference concerning potential stipulations on the Water Contamination Phase. As forecasted in prior Joint Status Reports, the Parties have found that the areas of dispute have sharpened as expert discovery progressed.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Disclosures</u>

On February 7, 2025, the PLG designated Phase III experts on specific causation, damages and other expert disciplines not covered by previous phases ("Residual Experts"). Pursuant to Case Management Order No. 17 [D.E. 305], the PLG produced the "materials considered files" for Residual Experts on February 14, 2025. At present, the PLG is preparing to disclose rebuttal experts on Phase II (General Causation) on March 15, 2025.

The government has contacted the PLG with many alleged "deficiencies" concerning the designation of Residual Experts and related "materials considered files." The PLG has promptly responded to and addressed the concerns raised by the government, and the PLG is committed to continuing these efforts to ensure that expert discovery proceeds smoothly and efficiently. The PLG has dedicated tremendous resources to investigating and responding to the government's various alleged "deficiencies." In no event have the "deficiencies" raised by the government been

3

material. Moreover, the alleged "deficiencies" frequently did not even exist. For example, in a letter dated February 27, 2025, the government demanded that the PLG provide certain information about a report authored by a vocational rehabilitation expert. In fact, the information sought by the government had been previously—and timely—disclosed by the PLG on February 14, 2025 as part of the production of "materials considered files." However, it was necessary for PLG lawyers to investigate and respond to the government's stated concerns, and the PLG's response to the government's letter was made promptly on March 6, 2025.

In any event, the PLG has produced hundreds of pages of detailed reports, materials considered lists, and reliance files, and the PLG's experts have articulated the opinions, and the bases for their opinions, in copious detail. While the PLG will continue to respond to issues raised by the government, the PLG contends that the government has suffered no prejudice.

Expert Depositions

The Parties have scheduled the Phase One expert witness depositions on water contamination and modeling issues (the "Water Contamination Experts"). Further, the Parties are in the process of scheduling the depositions for Phase Two experts on general causation ("General Causation Experts").

On March 4, 2025, the Parties held a meet and confer concerning whether historian experts will be deposed during Phase One or Phase Two. The Parties agreed to schedule these historian expert depositions on March 27, 2025 and during the week of March 31, 2025.

The PLG designated Timothy M. Mallon, MD, MPH, MS ("Dr. Mallon") as an expert in the Generation Causation Phase (Phase Two). Unfortunately, the Parties have struggled to set Dr. Mallon's deposition. The PLG has proposed several dates within the first two (2) weeks of April 2025, and the PLG has requested the government's availability throughout March and April 2025

for the deposition of Dr. Mallon. Unfortunately, the government has indicated that it is not available during the months of March or April for this deposition. Also, scheduling Dr. Mallon's deposition in May 2025 is not feasible due to his commitments and the schedules of the PLG attorneys. The PLG has been flexible, offering dates in April 2025 for nearly all our Phase Two experts. However, the DOJ's requests have resulted in most depositions being pushed to May 2025. With 11 of the 19 Phase Two depositions already scheduled within a 15-day period at the end of the discovery period, the PLG simply cannot accommodate Dr. Mallon's deposition in May 2025, and we will continue working to attempt to set Dr. Mallon's deposition in either March or April 2025.

Independent Medical Examinations ("IME")

Pursuant to Case Management Order No. 16 [D.E. 300], the Parties are in the process of scheduling defense IMEs of all Track 1 Trial Plaintiffs who were examined by a PLG retained testifying expert. At present, the government has completed ten (10) IMEs of Trial Plaintiffs, and there are four (4) additional IMEs that have been scheduled. In the Joint Status Report of February 20, 2025, the Parties discussed certain disagreements concerning whether one IME had been interrupted. [D.E. 326]. The DOJ has raised no further issues with respect to the conduct of IMEs since that time.

During the Status Conference of February 27, 2025, the government raised certain concerns that a PLG psychology expert had not produced raw testing data for a Track 1 Trial Plaintiff, as well as certain notes. The government indicated that it may be necessary to delay a defense IME as a result of this dispute. The Parties were able to resolve this disagreement.

The Government's Requests for Supplementations

5

The government previously requested that the PLG supplement every Track 1 Trial Plaintiff's Discovery Pool Profile Form ("DPPF") to reflect new medical information, such as recent medical treatment or new medical diagnoses. The PLG recognizes that discovery supplementations pursuant to the applicable Rules of Civil Procedure are sometimes appropriate after the discovery deadline. *See* Fed. R. Civ. P. 26(e)(1) (providing that supplementations are required where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or "as ordered by the court"). However, the PLG has concerns about the unduly burdensome and onerous nature of the government's request that the PLG essentially supplement discovery every few weeks. In particular, it would take a substantial amount of time and resources to update and verify twenty-five DPPFs to reflect the details of each Trial Plaintiff if supplementation is to be required as frequently as DOJ suggests. Moreover, the PLG is providing updated medical records for the Trial Plaintiffs to the DOJ as soon as they are received by the PLG and the government is already in possession of much of the requested medical information in the form of medical records, specific causation reports, deposition transcripts, and otherwise. Therefore, the government's request for repeated regular supplementations of DPPFs is unduly burdensome, unreasonable, and would create extensive unnecessary work.

The Parties have exchanged several proposals designed to address the government's concerns. On February 28, 2025, the PLG proposed that it would provide updated medical information on Track 1 Trial Plaintiffs by April 1, 2025, and then every three (3) months thereafter, and the PLG further proposed that it would provide an updated DPPF for each Trial Plaintiff within 120 days before trial or 20 days after a trial date is set, whichever is later. This compromise reasonably balances the government's need for supplemental information against the extensive

6

burden of providing the government with regular medical updates on each Trial Plaintiff. Unfortunately, on March 5, 2025, the government rejected this reasonable proposal and demanded, among other things, that the PLG provide updated medical information *every month*. The PLG contends that the government's demands for monthly discovery supplementations are unreasonable, unduly burdensome and furthermore are not required by Rule 26(e)(1), which simply requires supplementations in a "timely manner."

As part of these discussions concerning supplementations, the Parties discussed the government's requests to reopen Trial Plaintiff depositions. On March 5, 2025, the Parties agreed to discuss the issue of re-opening Trial Plaintiff depositions upon receipt of updated DPPF forms. During the Joint Status Report of February 20, 2025 [D.E. 326], the Parties discussed the government's request to re-open the deposition of Trial Plaintiff David Downs. The PLG believes that, pursuant to the Parties' discussions, the re-opening of David Downs' deposition will be addressed at a later time within the context of a timeframe for DOJ's requests to open any other Trial Plaintiff depositions.

The PLG remains committed to discussing these supplementation issues with the government, however, it would be exceptionally burdensome to agree to the government's demands for monthly discovery updates, especially since Rule 26(e)(1) contains no such deadline.

<u>Depositions of Ernest Hunt and Mark Cagiano</u>

In the Joint Status Report of February 20, 2025 [D.E. 326], the Parties discussed the government's request to re-depose Ernest Hunt ("Mr. Hunt") and Mark Cagiano ("Mr. Cagiano"). Those depositions are scheduled for March 11, 2025.

<u>National Academy of Sciences</u>

7

On November 12, 2024, the PLG took the deposition of Susan Martel ("Ms. Martel"), who was the Project Director for the National Academy of Science's ("NAS") report on the water contamination at Camp Lejeune. The NAS recently designated certain portions of Ms. Martel's deposition as confidential. The PLG contends that no aspect of Ms. Martel's deposition transcript is in fact privileged or confidential. However, the NAS, the government, and the PLG have held discussions about how to cooperatively resolve this dispute without involvement of the Court and have agreed to defer these issues until the time arises for the use of the deposition, if at all.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Depositions of Mark Cagiano and Ernest Hunt

As previously reported, the United States sought to re-open the depositions of Ernest Hunt (*Hunt v. United States*, 7:23-cv-00452), who is not a Track 1 Trial Plaintiff, and Mark Cagiano (*Cagiano v. United States*, 7:23-cv-00569), who is a Track 1 Trial Bladder Cancer Plaintiff. The United States first deposed Mr. Hunt on February 5, 2024, and Mr. Cagiano on February 8, 2024. The United States will be deposing Mr. Hunt and Mr. Cagiano on the limited topic of their knowledge of the use of water buffaloes at Camp Lejeune on March 11, 2025.

Deposition of David Downs

The United States agrees that the re-opening of David Downs' deposition may be addressed at a later time, within the context of a timeframe for DOJ's requests to open any other Trial Plaintiff depositions.

Recent Developments in Track 1 Trial Plaintiffs' Cases

As the Parties continue to work through the litigation, several of the Track 1 Trial Plaintiffs have experienced changes to their health that may impact their claims. The United States is cognizant of reserving the Parties' and the Plaintiffs' resources, but the United States must also be able to conduct discovery on any claims Plaintiffs may pursue. The United States has been largely responsible for obtaining, processing, and producing many of the relevant medical records at issue in this litigation. Without proper and timely notice of changing medical conditions and claims Plaintiffs intend to pursue regarding those condictions, the United States will be unable to obtain relevant records and conduct appropriate discovery. The United States' experts also need up-to-date information regarding the Plaintiffs in order to offer opinions covering a Plaintiff's condition and claims.

In light of this, the United States has been asking PLG since January to fulfill its obligations under Rule 26 *and* under this Court's Order regarding supplementation of the Discovery Pool Profile Forms [Dkt. 62]. Under the DPPF Order, "Track 1 Discovery Plaintiffs are ***obligated to supplement or amend the DPPF in a timely manner if he or she learns that in some material respect the DPPF response is incomplete*** or incorrect. *See* Fed. R. Civ. P. 26(e)." [Dkt. 62 at ¶8]

(emphasis added). This unambiguously requires PLG to regularly supplement the DPPF in a timely manner independent of any Rule 26 obligations.[1]

The Parties met and conferred on this issue on February 19, 2025. PLG expressed concerns regarding regularly updating a verified DPPF; to accommodate those concerns the United States proposed as an alternative that PLG regularly provide to DOJ an informal spreadsheet with updated medical information (including whether a provider was covered by TRICARE) so that DOJ could move forward with requesting relevant records and ensure that its experts were fully informed of Plaintiffs' current condition and claims. In essence, the United States offered PLG an opportunity for relief from the Court-mandated DPPF supplementation. In the United States' initial proposal, PLG would be required to provide updated information every two weeks, and a formal DPPF supplementation would be due either 120 days before trial or ten days after trial is set. The United States also offered to postpone reopening Plaintiff depositions until after the DPPF was properly supplemented. Based on this proposal, the United States agreed to postpone reopening Mr. Downs's deposition.

On February 28, 2025, PLG rejected the proposal, save for the postponement of reopening of plaintiff depositions. Instead, PLG proposed that a spreadsheet of new information be updated every three months and that they not be required to supplement the DPPFs until twenty days after a trial date was set. The Parties are continuing to discuss this proposal, but the United States stated in a March 5, 2025 email that if the Parties could not come to an agreement on these points soon,

---

[1] The United States maintains that PLG must also comply with its Rule 26 obligations. The United States has raised questions about whether under Rule 26 PLG's mere production of medical records, without any specific notice of a new provider or condition, satisfies these obligations. *See, e.g., Ali v. Worldwide Lang. Res., LLC*, 686 F.Supp.3d 430, 444-45 (E.D.N.C. 2023) (Dever, J.) (granting motion to strike a declaration, even though the contents of the declaration were within a document production, when a party failed to properly disclose the declarant under Rule 26). The United States is reserving its rights on this issue, but it is not presently before the Court.

it would be prepared to request leave from the Court to file a Motion to Compel seeking compliance with the DPPF Order.

Update to Plaintiff Mousser's Medical Condition

On February 28, 2025, the United States's Life Care Planner, Dr. Michael Shahnasarian, conducted an Independent Medical Examination ("IME") of Mr. Mousser. During this IME, Mr. Mousser stated that he was diagnosed with bladder cancer 15 days earlier and that his bladder was then removed by a VA urologist. At the IME, Mr. Mousser stated his belief that his kidney cancer is the cause of his bladder cancer. PLG had not alerted the United States to this development, and thus, the United States first became aware of this new condition on February 28, 2025. The United States thereafter requested records related to this development from the Veterans Health Administration. The United States received records in response to this request on March 5, 2025. In an effort to be transparent and efficient, the United States produced native copies of these records to PLG on March 6, 2025.

Mr. Mousser's bladder cancer is not addressed in any PLG's Phase III specific causation or damages reports. It is unclear how this new information affects PLG's claims in the *Mousser* case, and whether the United States' experts need to be prepared to address this new development. The Parties have exchanged correspondence on this issue, and the United States learned that PLG requested Mr. Mousser's updated medical records in mid-February 2025—before the United States independently learned of Mr. Mousser's new bladder cancer through his IME. PLG indicated that it has not yet received a response from the provider, but that the records produced by the United States are apparently the same as those PLG had requested from the provider in mid-February.

PLG is still examining what, if any, impact Mr. Mousser's new diagnosis will have on the opinions disclosed in this case. The United States is proceeding with Mr. Mousser's psychiatric

IME on March 10, 2025, but has reserved its right to seek an additional discovery if PLG discloses supplemental psychiatric opinions. The United States also is reserving its right to further supplement its expert opinions should PLG seek to incorporate Mr. Mousser's bladder cancer into his Track 1 claim.

Expert Discovery Disclosures

The United States made its Phase II expert disclosures on February 7, 2025. PLG's Phase III expert disclosures were also made on February 7, 2025. The United States has raised several issues with PLG regarding its compliance Federal Rule of Civil Procedure 26 requirements, along with any potential deficiencies with the documents produced in conjunction with the reports. The United States has sent several letters to PLG with respect to deficiencies identified to date.

The United States disagrees with PLG's characterization that "[i]n no event have the 'deficiencies' raised by the government been material." As just one example, the United States noted that there had been no reliance materials provided for PLG's exposure expert. PLG responded by confirming that the reliance materials for this expert had not been uploaded for transmission, and PLG subsequently provided certain reliance materials for this expert. The United States will continue to work with PLG on any issues that arise.

The United States is continuing to work with PLG on the following live discovery issues:
- PLG's Phase III Exposure Expert's Reliance Materials: PLG has failed to produce sufficient reliance materials as required under Rule 26 for Dr. Kelly Reynolds, PLG's Phase III exposure expert. PLG did not include any indication of what formulas, calculations, or models Dr. Reynolds used; only a table of results was produced. Therefore, they have not provided any bases for her final opinions. The Parties met and conferred on February 28, 2025, and at that time, PLG agreed to

12

produce the materials. Contrary to this agreement, PLG informed the United States on March 8, 2025 that it will not produce these materials. The United States is reviewing PLG's response and will respond further after conducting its analysis of the issue.

- PLG's Phase III Damages Experts' Notes from Discussions with Providers: Under the same March 8, 2025 email, PLG asserted that it will not be providing any further materials considered by the damages experts. The United States is reviewing PLG's response and will respond further after conducting its analysis of this issue.

- PLG's Phase III Disclosures of Non-Retained Experts: On February 21, 2025, the United States wrote to PLG regarding certain deficiencies in its Phase III disclosures of non-retained expert witnesses. PLG responded with an amended disclosure on March 7, 2025. The United States believes that there are still deficiencies to be addressed, and will be seeking a meet and confer with PLG on this issue later this week.

- Parties Request for Expert Extension in Track 1 Parkinson's Disease Plaintiffs: The Parties reached an agreement to seek an extension of the expert discovery disclosure and deposition deadlines for the Track 1 Parkinson's Disease Plaintiffs. The Parties filed a joint request for this extension on March 7, 2025. Under this joint request, the United States's Phase III expert reports for Parkinson's Disease Plaintiffs would be due on May 8, 2025. PLG's rebuttal would be due on June 13, 2025. The Parties would work to schedule all depositions as soon as is practicable. The close of expert discovery for the Parkinson's Disease Plaintiffs would be August 12, 2025. Briefing deadlines would not be affected by the extension.

13

Expert Depositions

The Parties have met and conferred on the dates for Phase I expert depositions. Dates have been confirmed for all expert depositions, which includes all of the Parties' historian experts. The majority of the depositions have been completed, and the United States anticipates that the remaining depositions will move forward without any issues.

The Parties are currently working to schedule the Phase II expert depositions of twenty Phase II experts prior to the close of expert discovery. The Parties are working collaboratively to try to accommodate the attorneys' and experts' schedules, and almost all depositions have been scheduled.

However, the parties are having difficulty scheduling Dr. Mallon's deposition, as PLG has offered a date in the first two weeks in April, and the United States is offering almost any date from May 1- June 6. On February 14 (before many of PLG's 15 experts' depositions had been scheduled for the last two weeks in April and early May), the United States proposed that Dr. Mallon's deposition take place during the week of May 6. On a March 6 call, due to the continued scheduling difficulties, the United States proposed that Dr. Mallon's deposition occur outside the discovery period in May. On March 7, when PLG did not accept that proposal, the United States responded by offering to take the deposition on a date between May 1 and June 6. On March 10, PLG responded that scheduling the deposition after May 14 is not preferable because their focus will shift to the Phase III experts. The United States will work with Dr. Mallon and PLG to accommodate almost any date within the five-week period of May 1 to June 6.

Independent Medical Examinations

The United States continues to coordinate with PLG regarding IMEs. The United States's life care planning and vocational rehabilitation expert has completed all of his exams. Of the three

scheduled psychiatric examinations, one has been completed, one is taking place on March 10, 2025, and the final exam is set for March 13, 2025. As noted above, the United States is reserving the right to seek an additional psychiatric IME for Mr. Mousser should his claim be amended to include his recent bladder cancer diagnosis. Additionally, neurology examinations for the Parkinson's disease Plaintiffs have begun to be scheduled and are expected to commence in the coming weeks.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a. The PLG's request for a Rule 16 conference [D.E. 155], and

b. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156].

DATED this 10th day of March, 2025.

Respectfully submitted,

| | |
|---|---|
| /s/ J. Edward Bell, III<br>J. Edward Bell, III (admitted *pro hac vice*)<br>Bell Legal Group, LLC<br>219 Ridge St.<br>Georgetown, SC 29440<br>Telephone: (843) 546-2408<br>jeb@belllegalgroup.com<br>*Lead Counsel for Plaintiffs*<br><br>/s/ Zina Bash<br>Zina Bash (admitted *pro hac vice*)<br>Keller Postman LLC<br>111 Congress Avenue, Ste. 500<br>Austin, TX 78701<br>Telephone: 956-345-9462<br>zina.bash@kellerpostman.com<br>*Co-Lead Counsel for Plaintiffs*<br>*and Government Liaison* | BRETT A. SHUMATE<br>Principal Deputy Assistant Attorney General<br>Civil Division<br><br>J. PATRICK GLYNN<br>Director, Torts Branch<br>Environmental Torts Litigation Section<br><br>BRIDGET BAILEY LIPSCOMB<br>Chief, Camp Lejeune Unit<br>Environmental Torts Litigation Section<br><br>/s/ Adam Bain<br>ADAM BAIN<br>Special Litigation Counsel<br>Environmental Torts Litigation Section<br>U.S. Department of Justice<br>P.O. Box 340, Ben Franklin Station<br>Washington, D.C. 20044<br>E-mail: adam.bain@usdoj.gov |

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiff*

Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*