IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | NOTICE |
| ) | |
| This Document Relates to: ) | |
| ALL CASES ) | |

The court noticed a hearing in this matter for March 25, 2025 ("March 25 Hearing") regarding certain pretrial issues pursuant to Fed R. Civ. P. 16(a). To contextualize the progress of this litigation and clarify the structure of the March 25 Hearing, the court hereby enters this Notice.

I. Background of Camp Lejeune Water Litigation

This litigation is not the first time individuals have sought relief for alleged exposure to toxic water at Marine Corps Base Camp Lejeune. Before Congress enacted the CLJA, claimants who were service members or family members filed approximately 4,000 claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, and 17 federal lawsuits. *See In re Camp Lejeune N.C. Water Cont. Litig.*, 263 F. Supp. 3d 1318, 1325 (N.D. Ga. 2016). In these claims and federal lawsuits, the claimants and plaintiffs alleged that they were exposed to toxic chemicals in the water supply while living at Camp Lejeune. *See id*. They also alleged that they suffered illness or death because of the United States' actions and sought relief pursuant to the FTCA. *See id*. The Judicial Panel on Multidistrict Litigation granted MDL status to the 17 federal lawsuits and transferred them to the United States District Court for the Northern District of Georgia. *See id*.; 28 U.S.C. § 1407. On December 5, 2016, that court dismissed plaintiffs' claims and held that: (1) North Carolina's ten-year statute of repose applied to plaintiffs' claims; (2) under North Carolina law, the ten-year limitations period began to run on the date the allegedly contaminated

wells were taken out of use; (3) the *Feres* doctrine[1] barred the claims of service members where the injuries arose out of their military service; (4) the discretionary function exception to liability under the FTCA in 28 U.S.C. § 2680(a) applied; and (5) the United States' sovereign immunity barred plaintiffs' Due Process Clause and Equal Protection Clause claims. *See In re Camp Lejeune N.C. Water Cont. Litig.*, 263 F. Supp. 3d at 1336-60. On May 22, 2019, the United States Court of Appeals for the Eleventh Circuit affirmed. *See In re Camp Lejeune, N.C. Water Cont. Litig.*, 774 F. App'x 564, 566–68 (11th Cir. 2019) (per curiam) (unpublished). On June 1, 2020, the Supreme Court denied certiorari. *See Douse v. United States*, 140 S. Ct. 2824 (2020).

In August 2022, Congress enacted the Camp Lejeune Justice Act of 2022 ("CLJA") as part of the larger Honoring our PACT Act of 2022 ("PACT Act"). *See* Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04. On August 10, 2022, the CLJA became effective. The CLJA provides a cause of action for "individual[s], . . . who resided, worked, or [were] otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States . . . ." *Id*. § 804(b). The United States District Court for the Eastern District of North Carolina is the exclusive jurisdiction and venue for claims brought under § 804(b). *Id*. § 804(d).

The CLJA contains an administrative exhaustion requirement under 28 U.S.C. § 2675 before filing an action under § 804(b). *Id*. § 804(h). Meaning, an individual must first seek relief with the United States Department of Navy ("Navy") before filing a federal lawsuit in this district. *Id*. The Navy initially received more than 550,000 administrative claims. [D.E. 306] 1. However, after careful deduplication, the Navy has reduced this number to approximately 408,000 distinct

---

[1] *See Feres v. United States*, 340 U.S. 135, 146 (1950); *cf. United States v. Brown*, 348 U.S. 110, 112–13 (1954).

administrative claims. *Id*.; [D.E. 326] 1. If the Navy does not provide a final disposition to an individual's claim within six months from the filing date that claim may be deemed denied, satisfying that individual's exhaustion requirement.[2] 28 U.S.C. § 2675(a); CLJA § 804(h).

The Navy has spent considerable time processing these claims. In approximately October 2023, the Navy began working on an automated CLJA claims processing system. [D.E. 136] 52:8–15. In January 2024, the Navy conducted a trial run of the system for an initial batch of 30,000 claims. *Id*. The system is populated first with data from the claimant's initial claim form. Once Navy personnel validate that data, the claimant uploads substantiating records directly into the system. *Id*. at 54:12–22. The Navy then makes a claim determination and, if warranted, forwards a recommendation to the United States Department of Justice. *Id*. at 54:23–55:10. The Navy's claims review process is ongoing. [D.E. 326] 1–2. In late February 2025, the Navy launched an enhanced online Claims Management Portal for individuals to manage their claims. *Id*. at 2. According to the Navy, approximately 30,000 CLJA administrative claims contain at least one substantiating document. *Id*. The Navy recently indicated that some 6,000 of these (at least partially) substantiated claims will undergo accelerated review for commensurate settlement offers. [D.E. 331] 2.

Plaintiffs have collectively filed more than 2,701 civil actions in this district seeking relief under subsection 804(b). CLJA § 804(b); [D.E. 31] 1.[3] When Congress enacted the CLJA, the Congressional Budget Office estimated the costs of settlement payouts and legal expenses to be $6.1 billion. *See* Congressional Budget Office, *Estimated Budgetary Effects of Rules Committee*

---

[2] As a practical matter, this meant the court did not receive many CLJA cases until February 2023—six months after the CLJA became law. Defendant represented at a status conference on April 5, 2023, that the Navy had not resolved any of the pending CLJA administrative claims to date. [D.E. 81-14] 10:10–11:10.

[3] Of these 2,701 CLJA civil actions, 105 have been dismissed. [D.E. 331] 1. The parties have regularly updated the court on the number of CLJA cases pending in this district. *See, e.g.*, *id*.

3

*Print 117-33 for H.R. 3967, Honoring our Pact Act of 2021* (Feb. 18, 2022). Collectively, Navy administrative claims concerning Camp Lejeune water demand trillions of dollars in damages. [D.E. 34] 15; [D.E. 326] 1.

II. Adjudication of CLJA Litigation

Congress enacted the CLJA knowing that this court has four United States District Judges who would be responsible for all CLJA civil actions. CLJA § 804(b), (d). Congress did not dictate any case-management structure in the CLJA. [D.E. 22] 2. This court acknowledged from the outset that expeditious resolution of cases is necessary to achieve global resolution, otherwise the court and parties face a litigation time horizon rivaling the life of the Roman Empire. [D.E. 81-14] 9:8–17. The court is acutely aware of the need for timely resolution given the large and aging claimant population.

In general, the court has structured proceedings to efficiently litigate pretrial threshold issues and conduct bellwether trials to help the parties value cases on a global settlement scale. *See* [D.E. 23] 11; *see also* [D.E. 81-14] 10:16–24. The court anticipates holding the first bellwether trials in early 2026.

A. Pretrial Litigation Generally

The court possesses inherent powers "to manage its own affairs and achieve the orderly and expeditious disposition of cases" as well as those powers in Federal Rules of Civil Procedure 1, 16(c)(2)(L), and 42(a)(3).[4] *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962). With these

---

[4] Rule 1 states that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 16(c)(2)(L) authorizes the court to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). As the Committee Note states, Rule 16(c)(2) authorizes courts to use "special pretrial procedures to expedite the adjudication of potentially difficult or protracted cases . . . . No particular techniques have been described; the Committee felt that experience and flexibility are the keys to efficient management of complex cases." Advisory

4

Case 7:23-cv-00897-RJ    Document 333    Filed 03/12/25    Page 4 of 9

powers and responsibilities in mind, the court solicited submissions regarding the structure of a Plaintiffs' Leadership Group ("PLG") as well as the creation of certain master pleadings and consolidated pretrial procedures. [D.E. 1]. The court appointed members to the PLG in July 2023.[5] [D.E. 10]. The court has also entered 17 case management orders (applying to all CLJA cases) on the Master Docket "In re Camp Lejeune Water Litigation" (No. 7:23-CV-897), inspired in part by the procedures recommended for multidistrict litigation in the *Manual for Complex Litigation Fourth*.[6] *See* [D.E. 23] 1–2; *see also* [D.E. 10]; [D.E. 28]; [D.E. 29]; [D.E. 30]; [D.E. 36]; [D.E. 46]; [D.E. 52]; [D.E. 144]; [D.E. 146]; [D.E. 149]; [D.E. 232]; [D.E. 245]; [D.E. 251]; [D.E. 266]; [D.E. 300]; [D.E. 305]. Each individual Plaintiff's action maintains its own docket and remains assigned to a single judge of this district. Each judge retains the inherent power to manage such actions, subject to determinations made on the Master Docket. *Id*. at 3.

Upon relevant motions by the parties, the court has issued several rulings on CLJA statutory interpretation affecting all present and future litigants. *See In re Camp Lejeune Water Litig.*, 715 F. Supp. 3d 761 (E.D.N.C. 2024) (per curiam), *motion to certify appeal denied*, No. 7:23-CV-897, 2024 WL 2198651 (E.D.N.C. May 13, 2024) (striking Plaintiffs' jury trial demands); *In re Camp Lejeune Water Litig.*, 736 F. Supp. 3d 311 (E.D.N.C. 2024) (per curiam) (finding that the CLJA requires claimants to show causation); *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2024 WL 4142748, at *4 (E.D.N.C. Sept. 10, 2024) (per curiam) (considering legal representative and statute of limitation issues).

The court has designated two magistrate judges to oversee distinct phases of the CLJA

---

Committee's 1983 Notes to Fed. R. Civ. P. 16(c). Federal Rule of Civil Procedure 42(a)(3) states that "[i]f actions before the court involve a common question of law or fact," the court "may . . . issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(3).

[5] The members of PLG were reappointed for an additional one-year term on July 23, 2024. [D.E. 260].

[6] The Master Docket currently has nearly 400 counsel of record.

litigation. The court appointed Magistrate Judge Jones to oversee CLJA discovery and the Master Docket. *See* [D.E. 7]; [D.E. 38] 3:7–18. Magistrate Judge Jones has held regular status conferences with the parties approximately every two weeks since November 21, 2023. [D.E. 23] 4; [D.E. 54]. At these conferences, the parties apprise the court of progress on discovery and flag any potential disputes; the court permits the parties to brief the issues if necessary. [D.E. 55]. Pretrial discovery has been extensive, and the parties have overall worked well together. Even so, the court has resolved numerous discovery issues, some spanning multiple other federal districts. *See, e.g.*, *In re: Subpoena to National Academy of Sciences* (No. 7:24-MC-5-RJ).

To facilitate progress on global settlement, on July 9, 2024, the court appointed two Settlement Masters[7] pursuant to Fed. R. Civ. P. 16(a)(5); 16(c)(2)(H); and 53. [D.E. 251]. The court designated Magistrate Judge Gates as Settlement Liaison to work with the Settlement Masters. *Id.*; Fed. R. Civ. P. 16(a)(5); 16(c)(2)(H). The Settlement Masters have been working diligently with Magistrate Judge Gates and the parties to develop a matrix to define awards based on a set of factors. To inform the matrix, the parties continue to work with the Special Masters and Magistrate Judge Gates to develop a questionnaire for a subset of claimants and expect agreement shortly. The Settlement Masters also expect to begin bellwether mediations in the summer of 2025 to inform the matrix. The court's goal is for the Special Masters, Magistrate Judge Gates, and the parties to be in a position to synthesize information so that the parties can agree upon a global (or at least broad) matrix-style settlement and settlement process this year.

B.     "Track" Structure

As part of streamlining pretrial procedures the court is phasing this litigation into separate "Tracks." [D.E. 23] 8. Each Track comprises several different illnesses and proceeds on its own

---

[7] Specifically, Christopher G. Oprison of DLA Piper and Thomas J. Perrelli of Jenner & Block, LLP. [D.E. 251].

pretrial timeline. The court established the Track 1 Illnesses in CMO 2, specifically (1) bladder cancer, (2) kidney cancer, (3) leukemia, (4) Parkinson's disease, and (5) non-Hodgkin's lymphoma. The court also set Track 2, which includes Plaintiffs alleging (1) prostate cancer; (2) kidney disease; (3) lung cancer; (4) liver cancer; or (5) breast cancer. [D.E. 144] 1.

This Track approach comports with the Federal Rules of Civil Procedure and the court's inherent powers. *See, e.g.*, *Link*, 370 U.S. at 630–31; Fed. R. Civ. P. 1, 16(c)(2)(L), 42(a)(3). After consulting with the parties, the court chose diseases for Tracks 1 and 2 that would most significantly impact global resolution. *See, e.g.*, [D.E. 17]; [D.E. 56]; [D.E. 57].

The court entered an order confirming 25 Track 1 Trial Plaintiffs to proceed to trial. [D.E. 250] 2. The court also entered a scheduling order regarding expert discovery and motion practice for three Track 1 issue "Phases": (1) "Water Contamination" ("Phase 1"); (2) general causation ("Phase 2"); and (3) residual issues, including specific causation and damages ("Phase 3"). *See id.*; [D.E. 270]; [D.E. 312]. The Track 1 Trial Plaintiffs are currently conducting expert discovery. *See* [D.E. 312]. Based on the existing pretrial schedule, the court estimates resolving these three Track 1 Phases by the end of 2025 and holding Track 1 Trial Plaintiff bench trials beginning in 2026. *Id.*

III. March 25 Hearing

The court solicited the parties' input on the scope and structure of the en banc March 25 Hearing, which the parties submitted on March 3, 2025. [D.E. 329]. Under Rule 16(a), in any action, the court may order the attorneys "to appear for one or more pretrial conferences for such purposes as":

(1) expediting disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because

of lack of management;

 (3) discouraging wasteful pretrial activities;

 (4) improving the quality of the trial through more thorough preparation; and

 (5) facilitating settlement.

Fed. R. Civ. P. 16(a). In addition, the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Pursuant to Rules 1 and 16, the court hereby orders that the March 25 Hearing will proceed as follows:

 A. The parties will each provide a statement on the status of Track 1 Phase 1 issues of no longer than 20 minutes;

 B. No expert or fact witnesses will be presented;

 C. The parties may, with court approval, use limited demonstrative exhibits. The parties shall file these proposed demonstratives to the Master Docket by no later than March 18, 2025;

 D. The parties shall be prepared to answer questions from the court on the following:

  a. Follow-up on the parties' Phase 1 statements;

  b. Phases 2 and 3, including the status of scope of proof language;

  c. Status of fact stipulations;

  d. Litigable issues preventing global resolution; and

  e. Status of settlements,

SO ORDERED. This 12th day of March, 2025.

_____
RICHARD E. MYERS II
Chief United States District Judge

_____
TERRENCE W. BOYLE
United States District Judge

_____
LOUISE W. FLANAGAN
United States District Judge

_____
JAMES C. DEVER III
United States District Judge