IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | **JOINT STATUS REPORT** |
| | ) | |
| This Document Relates To: | ) | |
| ALL CASES | ) | |
| | ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to March 31, 2025, 2,770 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and ten (110) cases have been dismissed; one hundred and three (103) of those were voluntary dismissals and the other seven (7) others were pro se cases. The cases are divided as follows: Judge Dever – 711 cases; Judge Myers – 662 cases; Judge Boyle – 680 cases; and Judge Flanagan – 717 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 408,000 de-duplicated administrative claims on file with the Department of the Navy ("Navy"). The Navy's enhanced Claims Management Portal allows filers to effectively manage their CLJA claim online. As indicated in previous updates, approximately 30,000 CLJA claims currently contain at least one supporting document with approximately 6,000

1

of those claims alleging an injury type that may be settled under the Elective Option framework. The Navy continues to accelerate its review of those 6,000 claims and is working to extend settlement offers to as many claimants as possible as quickly as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Joint Status Reports of October 15 and December 10, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. These cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for purposes of trials. The Parties may make additional proposals for subgroups of other diseases for purposes of trials.

On March 3, 2025, the Parties filed a Joint Notice Regarding Hearing on March 25, 2025. [D.E. 329]. In the Joint Notice, the Parties proposed mutually agreed upon language concerning the nature of evidence to be presented by experts in the Water Contamination Phase (Phase One) of this litigation. *Id.* ¶ 4. Further, the Parties set forth competing positions concerning whether there should be a live evidentiary hearing during the Water Contamination Phase. *Id.* ¶¶ 6(A)-(B). At the Court's convenience, the Parties will be prepared to answer the Court's questions concerning these issues.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phases II (general causation) and III (specific causation and residual experts).

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties discuss their positions on stipulations on a monthly basis. As forecasted in prior Joint Status Reports, the Parties have found that the areas of dispute have sharpened as expert discovery progressed.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Disclosures</u>

On February 7, 2025, the PLG designated Phase III experts on specific causation, damages and other expert disciplines not covered by previous phases ("Residual Experts"). Pursuant to Case Management Order No. 17 [D.E. 305], the PLG produced the "materials considered files" for Residual Experts on February 14, 2025.

Further, the PLG disclosed rebuttal experts on Phase II (General Causation) on March 15, 2025.

For all Track 1 health conditions other than Parkinson's disease, the government's deadline to disclose Residual Experts is April 8, 2025, and the PLG's deadline to designate rebuttal experts is May 14, 2025. [D.E. 311]. On March 11, 2025, the Court entered an Order granting the Parties' Joint Motion for Extension of Phase III Deadlines for Track 1 Parkinson's Disease Plaintiffs. [D.E. 332]. Pursuant to that Order, the government will designate its Residual Experts on Parkinson's disease on May 8, 2025, and the PLG will designate its rebuttal Residual Experts on Parkinson's disease on June 13, 2025. *Id.*

Expert Depositions

The Parties have scheduled the Phase I expert witness depositions on water contamination and modeling issues (the "Water Contamination Experts"). Further, the Parties are in the process of scheduling the depositions for Phase II experts on general causation ("General Causation Experts").

The PLG designated Timothy M. Mallon, MD, MPH, MS ("Dr. Mallon") as an expert in the Generation Causation Phase (Phase II). As discussed in a prior Joint Status Report [D.E. 331], the Parties had difficulty in finding a mutually agreeable date for Dr. Mallon's deposition. However, the Parties were able to resolve this dispute, and Dr. Mallon's deposition is set for April 21, 2025.

Independent Medical Examinations ("IME")

Pursuant to Case Management Order No. 16 [D.E. 300], the Parties are in the process of completing defense IMEs of all Track 1 Trial Plaintiffs who were examined by a PLG retained testifying expert. At present, there are defense IMEs scheduled for April 10 and April 24, 2025. In the Joint Status Report of February 20, 2025, the Parties discussed certain disagreements concerning whether one IME had been interrupted. [D.E. 326]. The DOJ has raised no further issues with respect to the conduct of IMEs since that time.

The Government's Requests for Supplementations

In the Joint Status Report of March 10, 2025, the PLG discussed in detail the government's requests that the PLG supplement every Track 1 Trial Plaintiff's Discovery Pool Profile Form ("DPPF") to reflect new medical information, such as recent medical treatment or new medical diagnoses. [D.E. 331, at pp 5-7.] In particular, the PLG had concerns about the unduly burdensome and onerous nature of the government's request that the PLG essentially supplement discovery

every few weeks. On March 14, 2025, the Parties were able to achieve a resolution to this dispute. According to the Parties' agreement, the PLG will provide certain supplementations every three (3) months, beginning on April 10, 2025. The PLG also will submit an updated, verified and final DPPF 120 days before trial or fifteen (15) days after a trial date is set, whichever is later. The PLG will then discuss with the United States any requests to re-open Plaintiff depositions on a case-by-case basis with no presumption or agreement that a Plaintiff may be re-deposed.

### Frank Mousser's New Cancer Diagnosis

Plaintiff Frank Mousser ("Mr. Mousser") is a Track 1 Trial Plaintiff within the kidney cancer group. Following the PLG's disclosure of Residual Expert reports on February 7, 2025, Mr. Mousser was diagnosed with cancer in his bladder on or about February 10, 2025. The PLG received the medical records concerning this diagnosis on March 6, 2025, and the PLG immediately began evaluating whether this new diagnosis necessitates the supplementation of Residual Expert reports on behalf of Mr. Mousser. On March 28, 2025, the PLG notified the government that it will be supplementing at least two (2) Residual Expert reports exclusively concerning Mr. Mousser's recent cancer diagnosis. In response, the government expressed understandable concerns about its upcoming deadline of April 8, 2025, to designate Residual Experts. The PLG recognizes the government's comments and intends to work cooperatively to ensure a solution that is fair to all Parties.

The PLG has dedicated substantial time and resources to quickly and thoroughly evaluate the implications of this new diagnosis and its impact upon Residual Experts offering opinions concerning Mr. Mousser, and the PLG will continue to provide the government and the Court with prompt updates about these matters.

### Kelly Reynolds's Reliance Materials

On February 7, 2025, the PLG designated expert Kelly Reynolds ("Dr. Reynolds") concerning the exposure profiles of each Track 1 Trial Plaintiff. On February 20 and 27, 2025, the government sent letters to the PLG requesting certain underlying data and calculations related to Dr. Reynolds' report. On March 14, 2025, the Parties held a meet and confer about this matter. The PLG denies that the information requested by the government is discoverable. However, in an effort at compromise, the PLG agreed to produce some additional information. As of March 28, 2025, the information sought by the government has been produced, and the PLG's understanding is that this dispute has been resolved.

Disclosure of Non-Retained Expert Witnesses

As required by Fed. R. Civ. P. 26(a)(2)(C), the PLG's Residual Experts on February 7, 2025, included detailed designations of certain non-retained experts (typically treating physicians) who might be called upon to offer opinion testimony at trial. The government requested that the PLG provide additional information on these designations of non-retained expert witnesses. Hence, on March 7, 2025, the PLG served an Amended Disclosure of Phase III Expert Witnesses that provided further clarity on the subject matters upon which these non-retained expert witnesses may be called upon to testify. In response, the government requested yet further information. The government's repetitious requests for information about the anticipated testimony of non-retained experts is not consistent with Rule 26(a)(2)(C). However, in an effort to avoid involving the Court in a discovery dispute, the PLG participated in a meet and confer with the government on both March 17 and March 26, 2025. Pursuant to those meetings, the PLG will provide a Second Amended Disclosure on March 31, 2025, which the PLG believes will resolve this dispute.

Site Visit Performed by the Government's Expert

On February 25 and 28, 2025, the government disclosed new materials concerning two of its Water Contamination Experts, namely Alexandros Spiliotopoulos ("Dr. Spiliotopoulos") and Remy Hennet ("Dr. Hennet"). The new materials were disclosed by the government apparently because, after the deadline for disclosure of Water Contamination Experts expired, Dr. Hennet conducted a site inspection of Camp Lejeune, took photographs, and ran experiments. During his deposition on March 20, 2025, Dr. Hennet confirmed that he conducted a site visit of Camp Lejeune in February 2025. Dr. Hennet further testified that, during the site visit, he interviewed numerous personnel who work at the Hadnot Point Water Treatment Plant ("HP WTP"); reviewed data on monitors at the plant regarding various water levels and other data points; directed the taking of approximately 100 photographs of the site; directed, watched, and timed the filling of a water buffalo; and took or directed the taking of numerous measurements of various parts of the HP WTP and other facilities.

Dr. Hennet's site visit, and all facts, data, impressions and opinions resulting from the same are in violation of the Federal Rules of Civil Procedure and this Court's orders. The visit occurred two months after Dr. Hennet's report was served, one month after the PLG's Water Contamination Expert rebuttal reports were served, and six months after fact discovery concluded. However, in an effort to resolve this dispute, the PLG offered to waive the above objections if the PLG's Water Contamination Rebuttal Expert, namely David Sabatini, is permitted to tour the site and provided the same access that was allowed to Dr. Hennet. The DOJ declined this proposal; instead, DOJ demanded that it be allowed to take depositions of two entirely new witnesses with expert knowledge (one of whom is a PLG consulting expert and the other is an author of the NRC report). These new witnesses (which were known to the DOJ during fact discovery) have no knowledge

7

related to the issues addressed in Dr. Hennet's out-of-time site visit. In essence, the DOJ is asking for yet more late discovery in order for PLG to be put on equal footing regarding Dr. Hennet's new facts, data, observations and opinions from the February 2025 site visit.

Lack of WiFi During Depositions as U.S. Attorney Offices

Two of the government's expert witnesses, namely Jay Brigham and Arri Kelman, were scheduled to be deposed at separate U.S. Attorney Offices. Shortly before these depositions were to take place, the government notified the PLG that WiFi would not be available for all participants, including the Court Reporter and the Videographer. As a result, it was necessary for the PLG to scramble at the last minute to find alternative locations for these depositions. On March 31, 2025, the PLG sent the government an email inquiring about the availability of WiFi at future depositions.

PLG's Use of a Privileged Document During Dr. Hennet's Deposition:

The PLG takes any suggestion of improper use of privileged documents seriously and is focused on ensuring appropriate discovery under the Federal Rules and CMOs to advance the determination and resolution of this litigation on its merits. The PLG is undertaking a review of the alleged instance and will be prepared to advise the Court at the upcoming status hearing.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

<u>Recent Developments in Track 1 Trial Plaintiffs' Cases</u>

As part of the Parties' prior agreement regarding the supplementation of the Discovery Pool Profile Form, beginning April 10, 2025, PLG will update a spreadsheet to reflect any new medical conditions and providers relevant to a Track 1 Trial Plaintiff's allegations. PLG will be responsible for updating this spreadsheet every three months moving forward. This spreadsheet update is in addition to PLG's ongoing responsibility of obtaining and producing medical records as soon as they receive them.

<u>Update to Plaintiff Mousser's Medical Condition</u>

During a February 28, 2025 IME of kidney cancer Plaintiff Mr. Frank Mousser, the United States learned that Mr. Mousser had been recently diagnosed with bladder cancer. Recognizing the potential impact on Phase III expert reports, the United States first raised this issue with PLG on March 6, 2025, and produced relevant medical records shortly thereafter. The Parties corresponded multiple times between March 7 and March 10 as the United States sought clarification on PLG's intended course of action, but no clear response was provided.

During the March 17, 2025 status hearing, the United States raised this issue with the Court. PLG indicated at that time that they were scheduled to discuss the matter later that day to gather more information. The United States followed up again on March 18, reiterating the need for clarity on PLG's approach.

On March 28, 2025, PLG responded, stating that they would be supplementing "a few

specific causation reports on the subject of Mr. Mousser's recent cancer diagnosis." In response, the United States informed PLG that its expert reports, due April 8 2025, will be limited to Mr. Mousser's original cancer diagnosis and responses to PLG's Phase III disclosures from February 7, 2025.

After PLG supplements its reports regarding the new cancer diagnosis, the United States' experts will require additional time to review the new opinions and provide any necessary supplemental responses, which will necessarily occur after the April 8, 2025 deadline.

### Future Expert Supplementations

In light of the above, the United States intends to propose a schedule under which the Parties may make any necessary future Phase III-related expert disclosure supplementations, including a deadline after which no further expert supplementation will be allowed. While the United States appreciates the Track 1 Trial Plaintiffs' evolving conditions, the United States is also cognizant of the need to establish a deadline for the opinions to be offered in litigation. *See, e.g.,* D.E. 343 at 47:25-48:2. The United States intends to reach out to PLG with a proposal on this matter shortly.

### Expert Discovery Disclosures

PLG's Phase III expert disclosures were made on February 7, 2025. The United States raised several issues with PLG regarding its compliance Federal Rule of Civil Procedure 26 requirements, along with any potential deficiencies with the documents produced in conjunction with the reports. The United States has sent several letters to PLG with respect to deficiencies identified to date, including the following:

- <u>PLG's Phase III Exposure Expert's Reliance Materials</u>: On February 20, 2025, the United States informed PLG that it had failed to produce sufficient supporting

calculations for its exposure expert, Dr. Reynolds. The United States reiterated its position on February 25, March 12, March 18, and March 21, and met and conferred with Plaintiffs on February 28 and March 14. On March 25, 2025 Plaintiffs produced limited calculations that Dr. Reynolds ran for 20 Plaintiffs. Upon further request, PLG produced the calculations for the remaining five Plaintiffs on March 28, 2025. The United States' experts are determining whether the calculations provide enough information to sufficiently analyze how Dr. Reynolds reached her Plaintiff-specific conclusions and whether they will need to supplement their Phase III reports after April 8 due to the belated disclosures.

- <u>PLG's Phase III Disclosures of Non-Retained Experts</u>: On February 21, 2025, the United States wrote to PLG regarding certain deficiencies in its Phase III disclosures of non-retained expert witnesses. PLG responded with an amended disclosure on March 7, 2025. The United States believes the amended disclosures contain additional deficiencies, and subsequently met and conferred with PLG. PLG is scheduled to serve another set of amended disclosures on March 31, 2025.

- <u>PLG's Request for Site Visit:</u> On March 21, 2025, PLG made a belated request to the United States to allow its Phase I expert David Sabatini to take a site visit to Camp Lejeune and to interview water treatment plant workers at Camp Lejeune. PLG claims that this request is warranted or justified based on facts and data discovered during the March 20, 2025, deposition of the United States' expert, Remy Hennet and based on Dr. Hennet's site visit to Camp Lejeune in February 2025. The United States disagrees. PLG could have requested this site visit and depositions of Camp Lejeune workers at any point during fact discovery or even in

11

the early stages of Phase 1 expert discovery. Instead, PLG waited until after the close of Phase 1 expert discovery to make this request.

The United States first disclosed an expert report from its Phase I expert Dr. Remy Hennet on December 9, 2024. Dr. Hennet's report addressed losses of the volatile organic compounds at issue in this litigation that occurred during treatment and storage of water in the water treatment plants at Hadnot Point and Tarawa Terrace which were not accounted for in the ATSDR's models. Dr. Hennet had visited Camp Lejeune prior to issuing his December 9, 2024, report.

On January 14, 2025, PLG disclosed a rebuttal expert report from Dr. David Sabatini. Dr. Sabatini, who did not ask to visit Camp Lejeune after receiving Dr. Hennet's report, opined that losses were lower than Dr. Hennet calculated by incorrectly representing that the storage facilities at the water treatment plants were closed off from the atmosphere and that the distance water fell in the effluent pipe of spiractors, which soften water, was one foot instead of two feet.

After receiving Dr. Sabatini's report, Dr. Hennet returned to Camp Lejeune on February 11, 2025, to determine if representations that Dr. Sabatini had made for the first time in a rebuttal report were accurate with respect to Camp Lejeune. During the site visit Dr. Hennet documented venting at the Hadnot Point Water Treatment Plant storage reservoirs and measured the spiractor effluent pipe fall height at a Hadnot Point spiractor. Dr. Hennet also observed the filling of a water buffalo in response to one of Dr. Sabatini's opinions.

On February 25, 2025, more than three weeks before Dr. Hennet's scheduled deposition, the United States supplemented Dr. Hennet's report by producing his

12

notes, photographs, and videos taken during his February 11, 2025, site visit. During Dr. Hennet's March 20, 2025, deposition, PLG extensively questioned Dr. Hennet about his February 2025, site visit. Dr. Hennet explained that his February site visit served to confirm his opinions, and he was not offering new ones.

PLG claims that Dr. Hennet's supplementation is late and violates Federal Rule 26. However, given the incorrect representations made for the first time in Dr. Sabatini's report, Dr. Hennet's disclosure of the correct information about the Camp Lejeune water supply based on his visit is "substantially justified." Moreover because PLG's had a subsequent opportunity to question Dr. Hennet extensively about the visit, PLG has not been prejudiced and Dr. Hennet's late disclosure is "harmless." See Fed. R. Civ. P. 37(c).

Additionally, PLG has repeatedly supplemented its expert reports and reliance materials during expert discovery. For example, for PLG's Phase I experts Norman Jones and Jeffrey Davis, PLG produced a supplemental report for Mr. Davis and Dr. Jones, titled an "addendum" after the United States had deposed both Mr. Davis and Dr. Jones on February 13 and 14, respectively. PLG also produced multiple spreadsheets related to analysis that should have been on Mr. Davis and Dr. Jones' reliance list after the United States deposed Mr. Davis and a mere 12 hours before the United States deposed Dr. Jones. Likewise, PLG's Phase I expert Morris Maslia disclosed during his March 13, 2025, deposition supplemental opinions about additional calculations he had performed after his rebuttal report had been disclosed but prior to his deposition. In Phase II, PLG has disclosed late supplemental reports for Steven Bird, Jason Cannon, and Howard Hu.

The simple reality is that PLG could have made its current request during fact discovery but chose not to. PLG could have made this request after Dr. Hennet first disclosed his expert report on December 9, 2024, but chose not to. PLG could have made its current request immediately after Dr. Hennet supplemented his expert report on February 25, 2025, but chose not to. Instead, PLG waited until March 21, 2025, after the close of Phase 1 expert discovery and the day after Dr. Hennet's deposition to make the request for a site visit. The United States respectfully submits that PLG's request is untimely.

The United States offered a compromise of allowing PLG's expert to take a site visit at Camp Lejeune in exchange for allowing the United States some limited additional discovery for Phase I, but PLG would not agree.

The United States is prepared to serve its Phase III expert disclosures on April 8, 2025.

Phase I Expert Depositions

Dates have been confirmed for all Phase I expert depositions, which includes all of the Parties' historian experts. The majority of the depositions have been completed. There are a few outstanding issues relating to the Phase I expert depositions that the Parties are currently addressing:

- PLG's Use of a Privileged Document During Dr. Hennet's Deposition: On March 20, 2025, PLG used a plainly privileged document as an exhibit during the deposition of the United States' Phase I expert, Dr. Remy Hennet. PLG did not affirmatively disclose, before the deposition, that they possessed this document. The United States objected and asserted privilege at the deposition before formally clawing back the document on March 27, 2025. The United States raises this issue

14

to alert the Court to PLG's repeated pattern of using privileged documents without following the procedures of CMO No. 5. (*See* D.E. 30, ¶¶ 3, 6-8; *see also* Tr. (Apr. 26, 2024), D.E. 182, at 23:23-24:5 (reminding PLG that "**even at the hint** of a privilege[d] document being inadvertently produced . . . the response . . . is to get the Court's [at]tention for a ruling on whether it's protected or not . . . ." (emphasis added)). The United States reserves its right to seek relief should this issue arise again in the future.

- <u>Deposition of Dr. Sabatini</u>: [INSERT]
- <u>The United States' Objections to PLG's Subpoenas of Phase I Experts</u>: [INSERT]
- <u>Clement/Faye</u>: [INSERT IF INCLUDING]

<u>Phase II Expert Depositions</u>

The Parties have scheduled all Phase II expert witness depositions, with the exception of one PLG rebuttal expert witness that the Parties anticipate will be scheduled soon. The United States has begun serving deposition notices and subpoenas for production of records on PLG's Phase II Experts. PLG has responded with broad, boilerplate objections to three of the four requests for production of records, without indicating whether any records are being withheld. The Parties plan to meet and confer on April 1, 2025, to discuss and potentially resolve any disputes.

<u>Independent Medical Examinations</u>

All of the United States' life care, vocational rehabilitation, and psychiatric examinations are now complete. With respect to the neurology examinations, the United States has conducted three of the five examinations, with the remaining two examinations scheduled.

Additionally, the Parties have agreed that if PLG conducts another IME in the Mousser case due to his recent cancer diagnosis, the United States will have the right to conduct its own IME in that case under CMO 16.

<u>WiFi During Depositions at U.S. Attorney's Offices</u>

The United States disagrees with PLG's representations about expert depositions at U.S. Attorney's Offices. While the United States initially notified PLG that public WiFi may not be available at the U.S. Attorney's office for the historian depositions, the United States arranged for guest WiFi that the PLG and court reporter may use. Also, as was the case during fact discovery, the Parties may request that the court reporter bring a hot spot in case any WiFi issues develop for those wishing to connect to the internet during the deposition. This occurred several times during fact discovery without issue. The United States is willing to work with PLG to ensure connectivity for the Parties during any upcoming depositions.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a. The PLG's request for a Rule 16 conference [D.E. 155], and

b. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156].

*[Signatures follow on next page]*

DATED this 31st day of March, 2025.

Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Unit
Environmental Torts Litigation Section

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*