| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **JOINT STATUS REPORT** |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to April 18, 2025, 2,898 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and twelve cases have been dismissed; 103 of those were voluntary dismissals and the four others were pro se cases. The cases are divided as follows: Judge Dever – 730 cases; Judge Myers – 703 cases; Judge Boyle – 725 cases; and Judge Flanagan – 740 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 410,000 de-duplicated administrative claims on file with the Department of the Navy ("Navy"). The Navy's enhanced Claims Management Portal allows filers to effectively manage their CLJA claim online. Approximately 140,000 CLJA claims currently contain at least one supporting document with approximately 18,000 of those claims *alleging* an

1

injury type that may be settled under the Elective Option framework. The Navy is working to confirm substantiation of those alleged Elective Option injuries and extend settlement offers to as many claimants as possible given workforce shaping impacts.

### (3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial

The Joint Status Reports of October 15 and December 10, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. These cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for purposes of trials. The Parties may make additional proposals for subgroups of other diseases for purposes of trials.

On March 3, 2025, the Parties filed a Joint Notice Regarding Hearing on March 25, 2025. [D.E. 329]. In the Joint Notice, the Parties proposed mutually agreed upon language concerning the nature of evidence to be presented by experts in the Water Contamination Phase (Phase One) of this litigation. *Id.* ¶ 4. Further, the Parties set forth competing positions concerning whether there should be a live evidentiary hearing during the Water Contamination Phase. *Id.* ¶¶ 6(A)-(B). At the Court's convenience, the Parties will be prepared to answer the Court's questions concerning these issues.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phases II (general causation) and III (specific causation and residual experts).

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties discuss their positions on stipulations on a monthly basis. As forecasted in prior Joint Status Reports, the Parties have found that the areas of dispute have sharpened as expert discovery progressed.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Disclosures</u>

For all Track 1 health conditions other than Parkinson's disease, the government's deadline to disclose Residual Experts is April 8, 2025, and the PLG's deadline to designate rebuttal experts is May 14, 2025. [D.E. 311]. On March 11, 2025, the Court entered an Order granting the Parties' Joint Motion for Extension of Phase III Deadlines for Track 1 Parkinson's Disease Plaintiffs. [D.E. 332]. Pursuant to that Order, the government will designate its Residual Experts on Parkinson's disease on May 8, 2025, and the PLG will designate its rebuttal Residual Experts on Parkinson's disease on June 13, 2025. *Id.*

<u>Expert Depositions</u>

The Parties have scheduled the Phase I expert witness depositions on water contamination and modeling issues (the "Water Contamination Experts"). Further, the Parties have scheduled all depositions for Phase II experts on general causation ("General Causation Experts"). The Parties

3

are in the process of obtaining dates for Phase III experts on specific causation ("Specific Causation Experts").

Independent Medical Examinations ("IME")

Pursuant to Case Management Order No. 16 [D.E. 300], the Parties have completed all but one defense IME of all Track 1 Trial Plaintiffs who were examined by a PLG retained testifying expert. The remaining IME is scheduled for April 24, 2025. In the Joint Status Report of February 20, 2025, the Parties discussed certain disagreements concerning whether one IME had been interrupted. [D.E. 326]. The DOJ has raised no further issues with respect to the conduct of IMEs since that time.

The Government's Requests for Supplementations

In the Joint Status Report of March 10, 2025, the PLG discussed in detail the government's requests that the PLG supplement every Track 1 Trial Plaintiff's Discovery Pool Profile Form ("DPPF") to reflect new medical information, such as recent medical treatment or new medical diagnoses. [D.E. 331, at pp 5-7.] In particular, the PLG had concerns about the unduly burdensome and onerous nature of the government's request that the PLG essentially supplement discovery every few weeks. On March 14, 2025, the Parties were able to achieve a resolution to this dispute. According to the Parties' agreement, on April 10, 2025, the PLG provided supplemental information with respect Track 1 Trial Plaintiff medical developments and new providers. The PLG will update this information on July 10, 2025 and every three months thereafter. The PLG also will submit an updated, verified and final DPPF 120 days before trial or fifteen (15) days after a trial date is set, whichever is later. The PLG will then discuss with the United States any requests to re-open Plaintiff depositions on a case-by-case basis with no presumption or agreement that a Plaintiff may be re-deposed.

### Frank Mousser's New Cancer Diagnosis

Plaintiff Frank Mousser ("Mr. Mousser") is a Track 1 Trial Plaintiff within the kidney cancer group. Following the PLG's disclosure of Residual Expert reports on February 7, 2025, Mr. Mousser was diagnosed with cancer in his bladder on or about February 10, 2025. The PLG received the medical records concerning this diagnosis on March 6, 2025, and the PLG immediately began evaluating whether this new diagnosis necessitates the supplementation of Residual Expert reports on behalf of Mr. Mousser. On March 28, 2025, the PLG notified the government that it will be supplementing at least two (2) Residual Expert reports exclusively concerning Mr. Mousser's recent cancer diagnosis. In response, the government expressed understandable concerns about its upcoming deadline of April 8, 2025 to designate Residual Experts. The PLG produced 3 supplemental expert reports on April 9, 2025.

### Future Expert Supplementations

On April 11, 2025, the United States proposed amendments to the Court's schedule to address supplemental expert opinions and impose a deadline after which new medical developments or diagnoses could not be presented at trial. The PLG has rejected such proposal and strongly disagrees that any limitations should be imposed with respect to ongoing medical treatment and new developments/diagnoses. Given the Track 1 Trial Plaintiffs' serious health issues, it is to be expected that their conditions will continue to worsen, new diagnoses may arise, and medical treatment will be required up through trial. Such issues can be addressed through the normal course and in accordance with applicable procedures.

### DOJ Expert Discovery Disclosures

PLG has met and conferred with DOJ and been unable to resolve certain disagreements regarding the production of documents in response to subpoenas served with depositions notices

5

of DOJ experts Drs. Hennet and Spiliotopoulos, both of whom are employed by S. S. Papadopulos & Associates, Inc. ("SSPA").

First, the compensation records produced for both experts are inadequate. DOJ produced SSPA billing records for services rendered from Aug. 2022 through Jan. 2025 that contain limited information – namely, the number of hours per month billed for general types of employees (as opposed to individuals). The pdf file name of this production was "1817 invoices through 013125 *without backup*.pdf". PLJ has requested and believes it is entitled to the "backup", including more detailed billing records (i.e., time records) that identify the person doing the work; the task being done; and the number of hours worked per task or per day. *See, e.g.*, *Noveletsky v. Metropolitan Life Ins. Co.*, No. 2:12-cv-21-NT, 2012 WL 11802597 (D. Me Oct. 19, 2012) (expert time records are discoverable). Dr. Spiliotopoulos testified that such records do in fact exist. Spiliotopoulos Deposition at 137-38. The cases cited by DOJ are inapposite – they address the compensation information that is required to be provided in an expert's report, but nothing in the Federal Rules limits discovery to that minimum requirement. Here, unlike the cases cited by DOJ, PLG served a subpoena requesting additional records, which are discoverable. Moreover, the *Seaman* case – cited by DOJ – held that compensation records that breakdown the hours attributable to specific experts were required to be produced. *Seaman v. Duke University*, 2018 WL 1441267, at *8 (M.D.N.C. Mar. 21, 2018). DOJ has not produced such records here; however, PLG has.

Second, DOJ has refused to produce compensation records related to work performed by SSPA for DOJ prior to Aug. 2022 related to Camp Lejeune. Dr. Hennet testified that he has performed such work since at least 2005. Hennet Deposition at 25-26, 93. These bills and time records are discoverable. *See, e.g.*, *Burris v. Ethicon, Inc.*, No. 2:14-CV-24320, 2019 WL 13195497, at *1 (S.D.W.Va. Nov. 7, 2019) ("an expert's financial gain from testifying in a

6

particular type of case, or on behalf of a specific law firm or party, is relevant to credibility and is appropriate subject matter for impeachment."). Again, DOJ relies on the minimum requirement in the Federal Rules, but the subpoena properly requested more.

Third, PLG seeks production of Dr. Spiliotopoulos's notes, memoranda and any related documents regarding his attendance at the 2005 ATSDR Expert Panel meeting. DOJ alleges that these documents are protected work product; however, Dr. Spiliotopoulos attended this meeting as an "observer"; he had not been retained as an expert at that time; he was not aware of the identify of his client (if any) when he attended this meeting; and to this day he does not know if he attended that meeting for a reason related to litigation. Spiliotopoulos Deposition at 115; 118-21; 123-25. In addition, DOJ has not identified the specific litigation matter that Dr. Spiliotopoulos was allegedly working on that provides the claimed work product protection. *See In re Application of Republic of Ecuador*, 280 FRD 506, 512-15 (N.D. Ca. 2012) (work product does not extend to expert or expert employee's notes, memoranda or "development of the opinions to be expressed outside of draft reports").

Fourth, Dr. Spiliotopoulos's interview notes and summaries should be produced. On page 1 of his report, Dr. Spiliotopoulos states that he reviewed interview summaries as part of his expert work on this case. In deposition, he indicated that these documents were prepared in connection with his visit to Camp Lejeune and interview of employees at the base. Spiliotopoulos Deposition at 110-12; 128. These documents fall within 3(b) of CMO 17. DOJ claims that Dr. Spiliotopoulos does not have such interview summaries, but this conflicts with both his report and his sworn deposition testimony.

PLG Expert Discovery Disclosures

The United States continues to note alleged issues with respect to the PLG's expert disclosures and production of reliance materials. The PLG has timely addressed all alleged deficiencies raised by the United States, and the PLG denies the United States has suffered any prejudice or harm. Given that most issues are resolved, the PLG does not feel it is appropriate to provide further detail herein. However, if the Court has any concerns about the issues raised by the United States, the PLG is glad to provide further detail, including those details omitted by the United States, to correct any misperceptions or concerns the Court may have with respect to such issues.

CMO No. 5 Clawback & Objection Procedure concerning alleged Privileged Document

As the Parties informed the Court at the last status conference, there is one document produced to the PLG that the United States has provided notice of clawback, for which the Plaintiffs have objected. The PLG asserts that the document in question is plainly not privileged. The parties have conducted multiple meet and confers, as well as attempted resolution, but to no avail and the Parties need to seek Court resolution. The Parties would like to be heard either in person or by submissions regarding this document and will bring the at issue document to the next hearing and be prepared to submit it to the Court in camera.

Concerns Regarding Deposition Noticing

The PLG notes concerns with the DOJ's deposition noticing protocols. For example, pursuant to Case Management Order 3 the party noticing a deposition is obligated to coordinate the presence of a transcription service and, if applicable, remote access. Instances have arisen where such operations have not been timely effectuated leading to technical and logistical issues. The matters, while concerning, do not yet rise to the level of a formal motion but nevertheless, the

PLG shares the Court's desire to efficiently manage the discovery process on a schedule and would like to note the issue.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Recent Developments in Track 1 Trial Plaintiffs' Cases

As put on the record at the March 17, 2025, Status Conference the Parties agreed that PLG would supplement the Discovery Pool Profile Forms and separately update a spreadsheet to reflect any new medical conditions or providers relevant to a Track 1 Trial Plaintiffs' allegations. PLG provided its first spreadsheet update on April 10, 2025. The United States has reached out to PLG to confirm certain information and obligations raised by PLG's update, including whether and when PLG would produce records from new providers who were not previously disclosed. In addition, PLG remains responsible for obtaining and producing medical records for any Track 1 Trial Plaintiff as soon as they receive them.

Update to Plaintiff Mousser's Medical Condition

On April 10, 2025, approximately six weeks after the United States learned of a recent bladder cancer diagnosis in a Track 1 Kidney Cancer Trial Plaintiff, PLG served supplemental

9

specific causation reports from three experts and asserted that 30 days would be a reasonable time for the United States to respond with supplemental reports of its own. The United States is communicating with its experts regarding the new reports and plans to reach out to PLG shortly regarding the amount of time necessary to adequately respond.

Future Expert Supplementations

In the last Status Conference, the United States raised its intention to propose a deadline for final expert report supplementation. On April 16, 2025, the Parties conferred on this issue. During that call, the United States proposed establishing a final supplementation deadline for expert causation opinions; that deadline would not affect the overall discovery schedule. PLG indicated that setting a final deadline for expert supplementation may be beneficial, but that establishing such a date at this time is premature. The parties will continue to discuss this matter.

Expert Discovery Disclosures

PLG's Phase III expert disclosures were made on February 7, 2025. The United States raised several issues with PLG regarding its compliance with Federal Rule of Civil Procedure 26 requirements, along with any potential deficiencies with the documents produced in conjunction with the reports. The Parties continue to work together to resolve these issues.

On April 8, 2025, the United States served all of its Phase III expert disclosures, with the exception of disclosures for the Parkinson's Disease cases. Phase III expert disclosures for Parkinson's Disease cases will be served on May 8, 2025. On April 15, 2025, the United States served its materials considered lists for all Phase III expert disclosures, with the exception of the Parkinson's Disease cases.

- PLG's Late Supplementation of Materials Considered

On April 11, 2025, the United States notified PLG that it had received amended "materials considered" lists for two experts within days of their depositions. For one expert, the amount of materials added to the list was substantial, and the amended list was provided just two days before his deposition. For the other expert, the new materials included academic articles for three expert reports and the citations were provided on the eve of the deposition. The United States proceeded with the depositions, but reserved the right to keep the depositions open. These late disclosures upset the carefully considered disclosure schedule in the Court's Case Management Order, which builds in sufficient time for counsel to evaluate an expert's materials considered prior to the deposition. The Parties have communicated regarding the issue. If this recurs the United States reserves the right to seek appropriate relief, including rescheduling of depositions and amendment of the Cases Management Order.

- PLG's Overbroad Discovery Requests of United States' Experts

The United States takes issue PLG's complaints about the United States' responses to PLG's document requests from Dr. Remy Hennet and Dr. Alex Spiliotopoulos. *First,* United States disagrees that Plaintiffs are "entitled to billing records that identify the number of hours each testifying expert worked each day and describe the work that was performed, to the extent these records exist." Fed. R. Civ. P. 26(a)(2)(B)(vi) & 26(b)(4)(C)(i) require the production of "a statement of the compensation to be paid for the study and testimony in the case," and communications that "relate to compensation for the expert's study or testimony." District courts within the Fourth Circuit have interpreted these provisions narrowly. *See*, *e.g.*, *Norman v. Leonard's Express, Inc.*, 2023 WL 3244002 at *6 (W.D. Va. May 4, 2023); *Seaman v. Duke University*, 2018 WL 1441267, at *8 (M.D. N.C. Mar. 21, 2018)

11

*Second* The United States disagrees with Plaintiffs' characterization of the United States' objections to producing "compensation records related to work performed by SSPA for DOJ prior to August 2022." The specific document requests at issue in Plaintiffs' subpoena were overly broad, unduly burdensome, and sought documents and information not proportional to the needs of the case. For example, Request No. 6 sought "[a]ll bills, invoices, or other documents relating to payments from the United States or any of its agencies to you, S.S. Papadopulos, or any principals or agents of S.S. Papadopulos relating in any way to Camp Lejeune water contamination, the CLJA litigation, remediation related to Camp Lejeune or any other water quality issues related to Camp Lejeune from 2004 through the present." Additionally, Federal Rule 26(a)(2)(B)(vi) requires a retained testifying expert to disclose "a statement of the compensation to be paid for the study and testimony *in the case*," and district courts within the Fourth Circuit have interpreted this phrase narrowly. Nevertheless, to avoid an unnecessary discovery dispute, the United States is working to determine if and to what extent information or documents still exist related to SSPA's work for DOJ in past Camp Lejeune litigation.

*Third,* the United States disagrees that Dr. Spiliotopoulos's notes, memoranda, and any related documents regarding his attendance at the 2005 ATSDR Expert Panel meeting are not protected work product and must be produced. The work product doctrine protects "(1) documents or tangible things; (2) prepared in anticipation of litigation or trial; and (3) by or for the party or the party's representative." *U.S. v. Bertie Ambulance Service, Inc.*, 2015 WL 3932167, at (E.D. N.C. Jun. 15, 2015) (Jones, J.); *see also* Fed R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or trial by or for another party or its representative… ."). To overcome the work product protection, the discovering party must show that it "has substantial need for the materials to prepare its case and

12

cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

With respect to PLG's fourth point, the United States can confirm that Dr. Spiliotopoulos searched his records and that he does not have any "interview notes" or "summaries from his site-visit to Camp Lejeune. Finally, the parties are continuing to meet and confer regarding these matters.

Phase I Expert Depositions

All Phase I expert depositions have been taken. There are a few outstanding issues relating to the Phase I expert depositions that the Parties are currently addressing:

- PLG's Use of a Privileged Document During Dr. Hennet's Deposition:

On March 20, 2025, PLG used a plainly privileged document as an exhibit during the deposition of the United States' Phase I expert, Dr. Remy Hennet. PLG did not affirmatively disclose, before the deposition, that they possessed this document. On March 27, 2025, the United States objected and asserted privilege at the deposition before formally clawing back the document. On April 2, 2025, the Parties conferred, and subsequently, the United States provided legal authority supporting its position that the document is privileged along with a privilege log concerning the document. At the April 7, 2025, Status Conference, the United States raised this issue given PLG's suggestion that it would submit the document for *in camera* review. However, PLG did not do so. As a result, the United States sent another letter requesting that PLG submit the document for *in camera* review by April 15, and advised that, absent submission, the United States would assume the document had been destroyed and that PLG had abandoned its position. On April 15, 2025, PLG responded by letter stating that it disagreed with the United States' position. Subsequently, the United States reiterated that PLG should submit the document for *in*

13

*camera* review and seek the Court's guidance on how it would prefer to address the issue. PLG has confirmed that it will not use the document for any purpose absent further Order of the Court. (*See* CMO No. 5, D.E. 30, ¶ 8.)

- <u>Site Visit of the United States' Expert Geochemist</u>

PLG moved to exclude all evidence related to a February 2025 site visit by the United States' expert geochemist, Dr. Remy Hennet. (D.E. 348). PLG did not request a site visit for its expert, Dr. David Sabatini, who testified during his deposition that he did not need to perform a site visit because he already had all the information he needed to perform his calculations. The United States opposed PLG's motion on April 17, 2025. (D.E. 352). The motion is therefore ripe for decision and the United States will be prepared to address the issue at the Status Conference if necessary.

<u>Phase II Expert Depositions</u>

The Parties have scheduled all Phase II expert witness depositions.

<u>Independent Medical Examinations</u>

All of the United States' life care, vocational rehabilitation, and psychiatric examinations are now complete, with the exception of the recent psychiatric IME conducted in the Mousser case in connection with PLG's supplemental expert opinions The United States' expert is currently evaluating whether an additional IME will be necessary. The parties previously agreed, pursuant to CMO 16, if PLG were to conduct an additional IME in the Mousser case, the United States would have the right to conduct its own additional IME if needed. With respect to the neurology examinations, the United States has conducted four of the five examinations, with the remaining examination scheduled for April 24, 2025.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156], and

b. The PLG's Motion For An Order Excluding Evidence Related to Dr. Remy Hennet's February 2025 Site Visit [D.E. 348]. The PLG respectfully requests oral argument on the motion.

*[Signatures follow on next page]*

DATED this 21st day of April, 2025.

Respectfully submitted,

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

*/s/ Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Unit
Environmental Torts Litigation Section

*/s/ Adam Bain*
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

16

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*