# EXHIBIT 3



U.S. Department of Justice

Civil Division, Torts Branch
Environmental Tort Litigation

---

*Haroon Anwar, Trial Attorney*
*Telephone: 202-598-3946*
*Facsimile: (202) 616-4989*
*Email: Haroon.Anwar@usdoj.gov*


**VIA EMAIL**　　　　　　　　　　　　　　　　　　　　　　　　April 21, 2025

Laura J. Baughman
Weitz & Luxenberg
700 Broadway
New York, New York 10003
lbaughman@weitzlux.com

　　　　Re:　　*Camp Lejeune Water Litigation*
　　　　　　　　*Documents related to Drs. Hennet and Spiliotopoulos*

Counsel:

I am writing in response to your April 16, 2025, letter regarding certain materials requested by document subpoenas accompanying the deposition notices directed to the United States' Phase I experts, Drs. Remy Hennet and Alex Spilitopoulous. I am also writing to follow-up about the status of outstanding materials that have yet to be produced from Mr. Maslia and Dr. Konikow.

**SSPA Billing Records Related to CLJA**

The United States disagrees that Plaintiffs are "entitled to billing records that identify the number of hours each testifying expert worked each day and describe the work that was performed, to the extent these records exist." Fed. R. Civ. P. 26(a)(2)(vi) & 26(b)(4)(C)(i) require the production of "a statement of the compensation to be paid for the study and testimony in the case" and communications that "relate to compensation for the expert's study or testimony." District courts within the Fourth Circuit have interpreted these provisions narrowly. *See*, *e.g.*, *Norman v. Leonard's Express, Inc.*, 2023 WL 3244002 at *6 (W.D. Va. May 4, 2023) ("Dispositively, it lists the hourly rates for Dr. Richmond's services. Because Rule 26 requires a statement of the compensation 'to be paid' to an expert—as opposed to the amount 'paid to date'—and the compensation disclosure is necessarily to be made at the time the expert's report is disclosed—as opposed to at the time of trial—the defendants have satisfied Rule 26 by producing to Norman the fee schedule.") (internal citations omitted); *Seaman v. Duke University*, 2018 WL 1441267, at *8 (M.D. N.C. Mar. 21, 2018) ("Here, based on the above authority, the Court finds Plaintiff's first two requests—for the total amount Analysis Group has billed in connection with this case

and a breakdown of the proportion of Analysis Group's bills that are attributed to Dr. Cremieux's work—are sufficiently narrow and consistent with the Rule's intent."); *Océ North America, Inc. v. MCS Services*, 2011 WL 13217472, at *8 (D. Md. Sept. 9, 2011) ("To the extent it has not done so already, Océ should produce for each of its named experts a statement of the total compensation paid for their 'study and testimony in the case.' The court finds, however, that DeFazio has not articulated a compelling need for production of every monthly invoice or other document describing or concerning fees. Disclosure of Océ's experts' total compensation will adequately enable defendants to explore the experts' financial interest in this case on cross-examination.").

Here, the United States has more than complied with Fed. R. Civ. P. 26(a)(2)(vi) & 26(b)(4)(C)(i) and Fourth Circuit case law interpreting these provisions. Specifically, the United States has produced (1) information about the hourly rates of Drs. Hennet and Spilitopoulous and (2) invoices that reflect total compensation paid to S.S. Papadopulos & Associates related to work performed by or at the direction of Drs. Hennet and Spilitopoulous in the CLJA litigation. The produced invoices identify the employee type or title of each SSPA billing professional, including Dr. Hennet as "Senior Principal" and Dr. Spilitopoulous as "Senior Hydrologist." However, to avoid an unnecessary discovery dispute, the United States is working to gather and produce more detailed, timekeeping records related to the invoices already produced.

**SSPA Billing Records Related to Past Camp Lejeune Litigation**

The United States disagrees with Plaintiffs' characterization of the United States' objections to producing "compensation records related to work performed by SSPA for DOJ prior to August 2022." The specific document requests at issue in Plaintiffs' subpoena were overly broad, unduly burdensome, and sought documents and information not proportional to the needs of the case. Specifically, Request No. 6 sought "[a]ll bills, invoices, or other documents relating to payments from the United States or any of its agencies to you, S.S. Papadopulos, or any principals or agents of S.S. Papadopulos relating in any way to Camp Lejeune water contamination, the CLJA litigation, remediation related to Camp Lejeune or any other water quality issues related to Camp Lejeune from 2004 through the present." Request No. 7 sought "[a]ll timekeeping and billing records related to time that you, S.S. Papadopulos, or any principals or agents of S.S. Papadopulos spent working on any projects related to Camp Lejeune and the CLJA litigation from the time you or your employer first were retained, hired or contracted." These Requests sought extensive documentation over a 20-year period dating back to 2005 related to past Camp Lejeune litigation involving distinct and separate issues.

Fed. R. Civ. P. 26(a)(2)(B)(vi) requires a retained testifying expert to disclose "a statement of the compensation to be paid for the study and testimony *in the case*," and district courts within the Fourth Circuit have interpreted this provision narrowly. Plaintiffs cite *Burris v. Ethicon, Inc.*, 2019 WL 13185497 (S.D. W.V. Nov. 7, 2019). In that case, the district court required production of "*basic documentation* reflecting the expert's income from acting as an expert witness [in prior related litigation]." *Id*. at *1 (emphasis added). Likewise, in *Bilenky v. Ryobi Ltd.*, the district court limited production of past expert compensation "to Mr. Nielsen's expert-

related income earned on behalf of Husqvarna *during the last three years*." 2014 WL 12591078, at *4 (E.D. Va. Oct. 22, 2014) (emphasis added). To avoid an unnecessary discovery dispute, the United States is working to determine if and to what extent compensation information or documents still exist related to SSPA's work for DOJ in past Camp Lejeune litigation. The United States will supplement its production with "basic" compensation information or documents related to SSPA's work for DOJ in past Camp Lejeune litigation to the extent it exists.

## 2005 ATSDR Expert Panel Notes

The United States disagrees that "Dr. Spiliotopoulos's notes, memoranda and any related documents regarding his attendance at the 2005 ATSDR Expert Panel meeting are not protected work product and must be produced." The work product doctrine protects "(1) documents or tangible things; (2) prepared in anticipation of litigation or trial; and (3) by or for the party or the party's representative." *U.S. v. Bertie Ambulance Service, Inc.*, 2015 WL 3932167, at *3 (E.D. N.C. June 15, 2015) (Jones, J.); *see also* Fed R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or trial by or for another party or its representative… ."). Fed. R, Civ. P. 26(b)(4)(B) extends the work product doctrine to draft reports of retained experts. To overcome the work product protection, the discovering party must show that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

As you know, Dr. Spiliotopoulos testified that "In 2005 Gordon Bennet and Remy Hennet asked me to attend the meeting…and provide them with information about that." Spiliotopoulos Dep., 115:18-21. Furthermore, Dr. Hennet testified that "In 2005 I was involved in work for the Department of Justice on issues at Camp LeJeune that it had nothing to do with this case. It was a different case or different cases. And that's what I recall." Hennet Dep., 29:17-21. Contrary to Plaintiffs' assertion that "Dr. Spiliotopoulos had not been retained as an expert at that time…," Drs. Spiliotopoulos' and Hennet's testimony in this case make clear that Dr. Spiliotopoulos was working with, and under the direction of, the United States' retained experts at that time in anticipation of litigation. The United States has identified multiple prior cases in which Dr. Hennet went on to submit declarations or expert reports. Accordingly, the United States maintains that any notes taken by Dr. Spiliotopoulos in attending the 2005 ATSDR Expert Panel are protected by the work product doctrine. *Deangelis v. Corzine*, 2016 WL 93862 at *4 (S.D. N.Y. Jan. 15, 2016) ("The CFTC's arguments as to why these documents are not drafts are unconvincing. First, its claim that 'notes, summaries, memoranda, and other materials created by an expert or the expert's assistants in connection with drafting a[n] expert report' cannot be considered 'drafts' proves too much."). Plaintiffs have failed to articulate a substantial need for these notes in light of the millions of pages of documents produced and dozens of depositions taken in the litigation.

**CLJA Site-Visit Notes from Dr. Spiliotopoulos**

The United States confirms that Dr. Spiliotopoulos searched his records and that he does not have any "interview notes" or "summaries" from his site-visit to Camp Lejeune.

**Morris Maslia's Supplemental Calculations & Notes**

During Mr. Maslia's March 14, 2025, deposition, he testified that he had performed additional calculations at some point after Dr. Konikow's rebuttal report was disclosed. Maslia Dep. (3/14/25), 38:2-42:1; 52:20-54:15. Mr. Maslia specifically testified to creating notes reflecting these calculations related to the geometric bias of ATSDR's water model for Tarawa Terrace. *Id*. The United States requested production of these notes at Mr. Maslia's deposition, but they have yet to be produced. The United States again requests production of these notes.

**Leonard Konikow's Invoices**

During Dr. Konikow's February 25, 2025, deposition, he testified that he had not yet submitted his invoice for January 2025. Konikow Dep., 66:22-67:15. The United States requested that when the invoice was completed and issued to Plaintiffs' counsel, a copy of the invoice be produced. *Id*. This invoice has yet to be produced. The United States again requests production of this invoice and any additional invoices issued since Dr. Konikow's deposition.

Very Truly Yours,

*/s/ Haroon Anwar*

Haroon Anwar
Trial Attorney
U.S. Department of Justice
Environmental Tort Litigation

cc: Plaintiffs' Leadership Group