IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | O R D E R |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

This matter is before the court on Plaintiffs' Leadership Group's ("PLG" or "Plaintiffs") de facto motion to compel a document claimed as privileged pursuant to the clawback provision in Case Management Order No. 5 ("CMO 5") ("Motion").[1] *See* [DE-30]. For the reasons that follow, the Motion is denied.

I. Background

This dispute concerns the ongoing Camp Lejeune Justice Act ("CLJA") litigation in this district.[2] *See* Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802–04. With the CLJA, Congress created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than 30 days during the period between August 1, 1953, and December 31, 1987. *See id*. § 804(b). To better manage this litigation, the court entered case management orders streamlining pretrial procedures in all CLJA cases. *See, e.g.*, [DE-23]. Relevant here, the court

---

[1] The disputed nature of this document has been raised by the parties in multiple status reports and at status conferences. *See, e.g.*, [DE-354] 13–14; [DE-378] 6:20–7:9. Specifically, the PLG has objected to Defendant's clawback of the document under CMO 5. *See id*. Following the status conference on April 29, 2025, the court and parties discussed the issue *in camera*. *See* [DE-378] 8: 19–25. The court has also reviewed the relevant document and considered the related letters submitted to chambers at the court's request. The court will treat the PLG's objection to Defendant's clawback as a de facto motion to compel a document claimed as privileged. *See* Local Civ. Rule 7.1(c). The parties have both had the opportunity to present argument on this issue and it is ripe for disposition.

[2] There are more than 2,900 individual CLJA lawsuits currently pending in this district. *See* [DE-354] 1.

entered CMO 5, which designates a clawback process for privileged materials [DE-30].

The court is phasing this litigation into separate "Tracks." [DE-23] 8. Each Track comprises several different illnesses and proceeds on its own pretrial timeline. The court entered an order confirming 25 Track 1 Trial Plaintiffs to proceed on a separate pretrial timeline. [DE-250] 2. Fact discovery for the Track 1 Trial Plaintiffs closed on August 11, 2024. *Id*. at 4. The court also entered a scheduling order regarding expert discovery and motion practice for three Track 1 issue "Phases": (1) Water Contamination ("Phase 1"); (2) general causation ("Phase 2"); and (3) residual issues, including specific causation and damages ("Phase 3"). *See id*.; [DE-270]; [DE-312]. The Track 1 Trial Plaintiffs are currently conducting expert discovery. *See* [DE-270]. The disclosure deadline for Defendant's Phase 1 experts was December 9, 2024. *See id*.

The present dispute stems from a document used at PLG's deposition of Defendant's expert Dr. Remy Hennet ("Dr. Hennet"). *See* [DE-354] 13. Dr. Hennet was retained by Defendant to evaluate and respond to Plaintiffs' allegations in the Master Complaint [DE-25], Plaintiffs' expert reports regarding Camp Lejeune groundwater contamination, and the Agency for Toxic Substances and Disease Registry's ("ATSDR") historic Camp Lejeune water contamination reports. [DE-349-2] 10.

During Dr. Hennet's deposition on March 20, 2025, PLG attorneys used a series of emails as an exhibit; Defendant asserts these emails are privileged and initiated a clawback pursuant to CMO 5. [DE-354] 13; [DE-30] 2–4. That email chain dated November 2 and 3, 2005 (CLJA_UST02-0000657182–83), contains communications between Dr. Hennet, counsel for Defendant, and several Defendant agency representatives ("Email Chain"). The PLG objects to Defendant's assertion of privilege over the Email Chain. *See* [DE-354] 8.

2

II. Legal Standard

The general rule regarding the scope of discovery is found in Fed. R. Civ. P. 26(b)(l):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

A party asserting privilege has the burden of demonstrating its applicability. *See United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982). The Fourth Circuit has explained the interplay between the work-product and attorney-client privilege as follows:

> While the attorney-client privilege is intended to promote communication between attorney and client by protecting client confidences, the work-product privilege is a broader protection, designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute.

*In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

The attorney-client privilege exists to encourage those in actual or potential legal disputes to be candid with their lawyers who advise them. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). When the privilege applies, it protects confidential communications between lawyer and client from disclosure. *In re Grand Jury*

3

*Subpoena*, 204 F.3d 516, 519–20 (4th Cir. 2000) (quotations omitted). Further, the attorney-client privilege extends not only to documents authored by an attorney but also to information and queries submitted to him by his client. *Upjohn*, 449 U.S. at 390 (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").

Under the work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation . . . ." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (internal citations omitted); *accord In Re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994); *In re Doe*, 662 F.2d 1073, 1077–80 (4th Cir. 1981).

In order to qualify under the work product doctrine, the document must be prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). The fact that litigation is recognized generally as a possibility or that litigation in fact ensues is insufficient to cloak material with work product immunity. *Id*.

III. Discussion

The court determines that the Email Chain is privileged in its entirety. First, part of the Email Chain includes a communication from Defendant's counsel[3] to Defendant agency representatives directing them to gather information in anticipation of litigation. *See Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 143 F.R.D. 611, 620 (E.D.N.C. 1992) (holding communications from client to counsel were privileged, including "communications of technical information").

---

[3] The attorney on the Email Chain continues to serve as Defendant's counsel today.

4

That communication is subject to the attorney-client privilege. *See id.* For similar reasons, the follow-up communication between Defendant agency representatives (cc'ing Defendant's counsel) are privileged. *See id.*; *see also Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) (finding communications including counsel as "copy recipient" and agents "who possessed the information requested by the attorney" were privileged).

Second, the initial message in the Email Chain from Dr. Hennet is subject to the work-product privilege. "A document created by a non-attorney may still be entitled to protection as work product if it was prepared in anticipation of litigation." *In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-13-BR, 2017 WL 2313470, at *3 (E.D.N.C. May 26, 2017) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976)). In his email, Dr. Hennet requests information from Defendant's counsel in anticipation of litigation; Defendant's counsel confirms this in the follow-up communication to Defendant agency representatives. Such communications are subject to the work-product privilege. *See id.* (holding email created for litigation purposes exchanged between consultant retained to work on, "among other things, [the relevant] litigation" and a corporate executive were privileged).

Accordingly, the Email Chain is privileged, was properly clawed back under CMO 5 [DE-30], and cannot be used by the PLG in this litigation.

IV. Conclusion

For the foregoing reasons, the Motion is DENIED.

SO ORDERED. This 8 day of May, 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

5