IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

IN RE:                                          )
                                                )
CAMP LEJEUNE WATER LITIGATION                   )          **JOINT STATUS REPORT**
                                                )
This Document Relates To:                       )
ALL CASES                                       )
                                                )

     The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

### (1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina

     From February 11, 2023 to May 9, 2025, 2,958 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and twelve cases have been dismissed; 103 of those were voluntary dismissals and the four others were pro se cases. The cases are divided as follows: Judge Dever – 754 cases; Judge Myers – 708 cases; Judge Boyle – 739 cases; and Judge Flanagan – 757 cases.

### (2) An update on the number and status of administrative claims with the Department of Navy

     There are approximately 410,000 de-duplicated administrative claims on file with the Department of the Navy ("Navy"). The Navy's enhanced Claims Management Portal allows filers to effectively manage their CLJA claim online. Approximately 137,000 CLJA claims currently contain at least one supporting document with approximately 52,000 of those claims *alleging* an

1

injury type that may be settled under the Elective Option framework. The Navy is working to confirm substantiation of those alleged Elective Option injuries and extend settlement offers to as many claimants as possible given workforce shaping impacts.

### (3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial

The Joint Status Reports of October 15 and December 10, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. These cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for purposes of trials. The Parties may make additional proposals for subgroups of other diseases for purposes of trials.

On March 3, 2025, the Parties filed a Joint Notice Regarding Hearing on March 25, 2025. [D.E. 329]. In the Joint Notice, the Parties proposed mutually agreed upon language concerning the nature of evidence to be presented by experts in the Water Contamination Phase (Phase One) of this litigation. *Id.* ¶ 4. Further, the Parties set forth competing positions concerning whether there should be a live evidentiary hearing during the Water Contamination Phase. *Id.* ¶¶ 6(A)-(B). At the Court's convenience, the Parties will be prepared to answer the Court's questions concerning these issues.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phases II (general causation) and III (specific causation and residual experts).

### (4) An update on stipulations entered into between the Parties since the last status conference

2

The Parties discuss their positions on stipulations on a monthly basis. As forecasted in prior Joint Status Reports, the Parties have found that the areas of dispute have sharpened as expert discovery progressed.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Disclosures</u>

On February 7, 2025, the PLG designated Phase III experts on specific causation, damages and other expert disciplines not covered by previous phases ("Residual Experts"). Pursuant to Case Management Order No. 17 [D.E. 305], the PLG produced the "materials considered files" for Residual Experts on February 14, 2025. Further, the PLG disclosed rebuttal experts on Phase II (General Causation) on March 15, 2025. The PLG's disclosure of rebuttal experts on Phase III ("Residual Experts") is due on May 14, 2025.

For all Track 1 health conditions other than Parkinson's disease, the government designated Residual Experts on April 8, 2025. With exception of Parkinson's disease, the PLG's deadline to designate rebuttal experts is May 14, 2025. [D.E. 311]. On March 11, 2025, the Court entered an Order granting the Parties' Joint Motion for Extension of Phase III Deadlines for Track 1 Parkinson's Disease Plaintiffs. [D.E. 332]. Pursuant to that Order, the government designated its Residual Experts on Parkinson's disease on May 8, 2025, and the PLG will designate its rebuttal Residual Experts on Parkinson's disease on June 13, 2025. *Id.*

3

As discussed in prior Joint Status Reports, Track 1 Trial Plaintiff Frank Mousser ("Mr. Mousser") was diagnosed with a recurrence of his kidney cancer after the PLG disclosed Residual Expert reports on February 7, 2025. [D.E. 354 at p 5]. The PLG supplemented three Residual Expert Reports concerning the reoccurrence of Mr. Mousser's kidney cancer on April 9, 2025. The PLG and the government have agreed that the government can serve responsive supplemental reports on May 23, 2025 (DOJ experts Walter Stadler and Harold Bursztajn) and June 6, 2025 (DOJ experts Michael Shahnasarian, Henry Miller and Tricia Yount).

Expert Depositions

The Parties are in the process of completing depositions of Phase II experts on general causation ("General Causation Experts"). Furthermore, the Parties are in the process of scheduling depositions of Phase III experts on specific causation and damages ("Residual Experts").

Independent Medical Examinations ("IME")

Pursuant to Case Management Order No. 16 [D.E. 300], the Parties have completed all IMEs of Track 1 Trial Plaintiffs.

Future Expert Supplementations

On April 11, 2025, the United States proposed amendments to the Court's schedule to address supplemental expert opinions and impose a deadline after which new medical developments or diagnoses could not be presented at trial. The PLG has rejected such proposal and strongly disagrees that any limitations should be imposed with respect to ongoing medical treatment and new developments/diagnoses. Given the Track 1 Trial Plaintiffs' serious health issues, it is to be expected that their conditions will continue to worsen, new diagnoses may arise, and medical treatment will be required up through trial. Such issues can be addressed through the normal course and in accordance with applicable procedures.

4

<u>DOJ Expert Discovery Disclosures</u>

In the Joint Status Report of April 21, 2025, the PLG discussed the following deficiencies with the government's document production in response to Subpoenas to DOJ experts Drs. Hennet and Spiliotopoulos, who are both employed by S. S. Papadopulos & Associates, Inc. ("SSPA"): (1) failure to produced detailed billing records from SSPA for services rendered from August 2022 through January 2025, (2) failure to produce Dr. Spiliotopoulos's notes, memoranda and any related documents regarding his attendance at the 2005 ATSDR Expert Panel meeting, (3) failure to produce Dr. Spiliotopoulos's interview notes and summaries, and (4) failure to produce compensation records related to work performed by SSPA for DOJ prior to August 2022 related to Campe Lejeune. [D.E. 354 at pp 5-7]. The government subsequently produced the detailed billing records from August 2022 to January; produced notes by Dr. Spiliotopoulos related to the 2005 ATSDR Expert Panel meeting; and confirmed that Dr. Spiliotopoulos did not possess any interview notes and summaries.

However, the government has failed to produce compensation records related to work performed by SSPA for DOJ prior to August 2022 related to Camp Lejeune. On May 12, 2025, the PLG filed a Motion to Compel with respect to these compensation records. [D.E. 381, 382].

<u>The Government's Late Production of Offset/Lian Data</u>

On April 8, 2025, DOJ produced the reports of multiple damages experts for the Track 1 Trial Plaintiffs other than those with Parkinson's disease. This included the reports of Dr. Henry Miller, Dr. Dubravka Tosic and Tricia Yount who opined on certain alleged offsets as a result of disability benefits and other compensation theories. Beginning on April 15, 2025, as part of its production of materials considered documents for those experts, the government first produced certain Veterans Benefits Administration ("VBA") disability compensation records, TriCare

payment records, and Medicare payment records (collectively, "Purported Offset Data") related to multiple Track 1 Trial Plaintiffs. As part of the government's offset defense, DOJ expert Andrew Brod also issued a damages report on Parkinson's disease on May 8, 2025 that relied upon the Purported Offset Data. On May 9, 2025, the government indicated that it intends to supplement the reports of DOJ Residual Experts Tricia Yount and Dubravka Tosic to reflect the new Purported Offset Data.

The government's belated and untimely production of the Purported Offset Data is highly prejudicial. On December 22, 2023, the PLG served its First Set of Requests for Production to Defendant United States of America Concerning Track 1 Discovery Pool Plaintiffs (the "First Track 1 RPDs"). Request Number 6 within the First Track 1 RPDs requested that the government produce all documents "pertaining to benefits, awards, or payments related to the alleged injury or injuries" suffered by the Track 1 Discovery Pool Plaintiffs. The First Track 1 RPDs included several specific examples of the types of responsive documents sought by Request Number 6, including "Veterans Administration records . . . connected to a service-connected disability rating and any benefits or payments related to any such alleged injury or injuries." The government responded to the First Track 1 RPDs on January 22, 2024, and in that response, the government stated that documents responsive to Request Number 6 "by the end of fact discovery."

Fact discovery related to Track 1 Trial Plaintiffs closed on August 11, 2024. [D.E. 250]. Therefore, all documents responsive to Request Number 6, including the Purported Offset Data, were required by be produced by August 11, 2024. Yet, the government failed to produce the Purported Offset Data until April 15, 2025. The PLG served multiple Residual Expert reports on damages on February 7, 2025. The PLG relied upon the government's productions (or lack thereof) in response to Request Number 6 in preparing its Residual Expert reports on damages.

The Parties are presently conferring about the DOJ's late document production and the resulting prejudice to the PLG. However, the PLG remains concerned about the government's failure to timely produce these documents, and the PLG reserves the right to file a motion to exclude the information or request other appropriate relief[1].

<u>DOJ Expert Peter Shields' Use of a Laptop</u>

On May 6, 2025, the government informed the PLG that DOJ's expert Peter Shields ("Dr. Shields") would be bringing his laptop to his deposition set for May 12, 2025.



The PLG opposed the use of the laptop and requested that the DOJ seek Court guidance. During a telephonic conference on Friday May 9, 2025, the Court directed that Dr. Shields could use a "clean" laptop during his deposition on Monday May 12, 2025, because the laptop would contain only his report, with hyperlinks to the citations therein, and the PLG's expert reports, and the materials were, therefore, analogous to his notes. The DOJ indicated during this telephonic conference with the Court that the "clean" laptop was already loaded and the contents would be transmitted to PLG counsel in advance so they would have an exact duplicate copy of everything that was loaded onto the laptop prior to the deposition.

---

[1] The PLG also notes that the CLJA is clear that any purported offsets only apply if an award has been made. The determination of alleged offsets is therefore a post-award procedure.

However, the files on Dr. Shields' laptop were not actually produced by the government after the conference on Friday May 9, 2025. Instead, the files were produced by the government at 9:35 pm EST on Saturday evening May 10, 2025 after PLG counsel emailed the DOJ earlier that day inquiring about the production of the files.



At 10:24 pm EST on Sunday May 11, 2025, the government sent a new link to the documents on Dr. Shields' computer, admitting that some of the hyperlinks embedded within the prior link to Dr. Shields' files were broken and the report failed to include a link to the 2017 Public Health Assessment.



8

After receiving this email, Plaintiff's counsel inquired as to which hyperlinks were broken and the government's attorney responded that she did not know.



Counsel for the PLG attempted to access the footnoted hyperlinks in the new materials produced late Sunday evening but the footnoted hyperlinks in the DOJ's expert report were not operable. On Monday May 12, 2025, at 7:11 am EST, the government also produced Dr. Bird's supplemental report, which "was inadvertently left off both the laptop and what we uploaded to JEFS."



Notably, Dr. Shields' deposition was scheduled for 9:00 am EST on Monday morning. When the PLG informed the government that morning that it could not access the links in Dr. Shields' report that had been received late the prior evening, the DOJ asserted that PLG counsel should have let the government know earlier, notwithstanding that it was DOJ's responsibility to

timely produce an exact copy of what was on Dr. Shields' computer to PLG with working hyperlinks in advance of the deposition. It was very clear to the PLG based on the parties' communications that the DOJ failed to check the materials provided Saturday evening and late Sunday evening for functionality of the hyperlinks. The deposition proceeded on Monday, May 12, 2025, without PLG counsel ever receiving a working copy of what Dr. Shields had access to on his computer during his deposition. Furthermore, Dr. Shields testified during his deposition that it was a DOJ-provided laptop that he received on Sunday afternoon from the DOJ and was not his own laptop, as previously represented in the email sent by the DOJ on May 6, 2025.

The government's late production of Dr. Shields' files and notes has resulted in undue burden, prejudice and delays. The report provided to the PLG late in the evening on Sunday May 11 did not have functional hyperlinks, and therefore, the PLG lawyer taking the deposition of Dr. Shields was unable to meaningfully review and prepare an examination on the materials contained on the laptop that had been provided to Dr. Shields by the government. The PLG is continuing to evaluate this situation, and is reserving their right to request appropriate relief, including additional examination time for Dr. Shields due to the prejudice the situation with Dr. Shields' use of a computer has caused. To date, the PLG still does not have a working copy of what was on Dr. Shields' laptop during his deposition although the DOJ now has indicated it intends to overnight a flash drive. The deposition has been held open to allow PLG to assess the need for further time to question Dr. Shields about the materials on his computer that the PLG was not able to access; to question Dr. Shields about the original contract that he signed with the DOJ which had been requested but DOJ failed to produce; and to question Dr. Shields about notes which also had been requested but also were not produced.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Recent Developments in Track 1 Trial Plaintiffs' Cases

The Parties previously agreed that PLG would supplement the Discovery Pool Profile Forms closer to trial. PLG agreed to update a spreadsheet to reflect any new medical conditions or providers relevant to a Track 1 Trial Plaintiffs' allegations on a quarterly basis. PLG provided its first spreadsheet update on April 10, 2025. The United States reached out to PLG to confirm certain information and obligations raised by PLG's update. PLG provided an amended spreadsheet on April 23, 2025. In addition to the spreadsheet updates, PLG remains responsible for obtaining and producing medical records for any Track 1 Trial Plaintiff as soon as they receive them. As of May 14, 2025, PLG has not produced certain additional medical records indicated as outstanding on their April 23, 2025 spreadsheet.

Update to Plaintiff Mousser's Medical Condition

On April 10, 2025, PLG served supplemental Phase III reports from three experts related to Mr. Mousser. The Parties agreed that the United States will serve supplemental reports by its specific causation and psychiatric experts by May 23, 2025, and supplemental reports by its

11

damages experts (if appropriate) by June 6, 2025. The United States's psychiatric expert performed a supplemental Independent Medical Examination of Mr. Mousser on May 6, 2025.

Future Expert Supplementations

In the last Status Conference, the United States discussed the proposal it raised with PLG regarding a deadline for final expert report supplementation. The United States' proposal would establish a final supplementation deadline for expert causation opinions; that deadline would not affect the overall discovery schedule and would not preclude the introduction of additional information through fact witnesses at trial. PLG has indicated that setting a final deadline for expert supplementation may be beneficial, but that establishing such a date at this time is premature. The Parties will continue to discuss this matter.

Expert Discovery Disclosures

PLG's Phase III expert disclosures were made on February 7, 2025. The United States raised several issues with PLG regarding its compliance with Federal Rule of Civil Procedure 26 requirements, along with any potential deficiencies with the documents produced in conjunction with the reports. The Parties continue to work together to resolve these issues.

On April 8, 2025, the United States served all of its Phase III expert disclosures, with the exception of disclosures for the Parkinson's disease cases. On April 15, 2025, the United States served its materials considered lists for all Phase III expert disclosures, with the exception of the Parkinson's disease cases. The United States served its Phase III expert disclosures for Parkinson's disease cases on May 8, 2025. Materials considered lists for the United States' Parkinson's disease experts will be served on May 15, 2025.

PLG's Phase III rebuttal expert disclosures are due on May 14, 2025, with the exception of rebuttal disclosures for the Parkinson's disease cases. PLG's Parkinson's disease rebuttal disclosures are due on June 13, 2025.

PLG's Late Supplementation of Materials Considered

The United States previously raised the issue of PLG supplementing its experts' materials considered lists on the eve of certain depositions – and in at least one case, after a deposition ended. These late disclosures upset the carefully considered disclosure schedule in the Court's Case Management Order, which builds in sufficient time for counsel to evaluate an expert's materials considered prior to the deposition.

At the last status conference, PLG represented that it was only making minor additions of very recent studies. However, PLG's practice of late supplements has continued, and not only for recent studies. For example, on the evening of May 12, 2025, PLG supplemented a materials considered list for a deposition set for May 14, 2025 with a 2009 study that the United States was only able to locate in French. Similarly, on the afternoon of April 29, 2025, PLG supplemented a materials considered list for a deposition on April 30, 2025, with studies from 2010 and 2023. The United States has continued to proceed with the depositions as planned, but reserves the right to seek appropriate relief, including keeping depositions open for future questioning, rescheduling of depositions, and amendment of the Cases Management Order.

PLG's Discovery Requests of United States' Phase I Experts

As discussed at the May 28, 2025 Status Conference, the United States asserts that the notes, memoranda, and any related documents regarding United States expert Dr. Alex Spiliotopoulos's attendance at the 2005 ATSDR Expert Panel meeting are protected work product and objected to their production. Subject to these objections, the United States produced the notes

13

in Dr. Spiliotopoulos's possession on May 9, 2025. This week, the United States will also be producing the pre-2022 SSPA billing records for Camp Lejeune-related matters that SSPA could reasonably locate.

PLG filed a Motion to Compel on SPPA's pre-2022 billing records on May 12, 2025. The United States believes SSPA has more than adequately complied with the requests in PLG's subpoena. The United States is working on its response to the Motion, which is due on May 19, 2025.

<u>United States' Supplemental VBA Data</u>

On April 8, 2025, the United States produced reports for its damages experts for the Track 1 Trial Plaintiffs other than those reports related to Parkinson's disease. This included the expert reports of (1) Dr. Dubravka Tosic, who is addressing damages issues for the NHL and Leukemia Track 1 Trial Plaintiffs; (2) Tricia Yount, who is addressing damages issues for the Kidney Cancer and Bladder Cancer Track 1 Trial Plaintiffs; and (3) Dr. Henry Miller, who is assessing certain aspects of future offsets for all relevant Track 1 Trial Plaintiffs. On May 8, 2025, the United States produced reports for its damages experts for the Track 1 Trial Plaintiffs related to Parkinson's disease. This included the expert reports of Dr. Andrew Brod, who is addressing damages issues for Parkinson's disease Track 1 Trial Plaintiffs, and, again, Dr. Henry Miller, who is assessing certain aspects of future offsets for all relevant Track 1 Trial Plaintiffs.

Pursuant to Section 804(e)(2) of Honoring Our PACT Act (Public Law 117-168), "[a]ny award made to an individual, or legal representative of an individual, under this section ***shall be offset*** by the amount of any disability award, payment, or benefit provided to the individual, or legal representative—(A) under—(i) any program under the laws administered by the Secretary of Veterans Affairs; (ii) the Medicare program under title XVIII of the Social Security Act (42 U.S.C.

1395 et seq.); or (iii) the Medicaid program under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.); and (B) in connection with health care or a disability relating to exposure to the water at Camp Lejeune." (emphasis added).

As part of their expert opinions, Dr. Dubravka Tosic, Tricia Yount, and Dr. Andrew Brod were asked to and did provide expert opinions related to the awards, payments, and/or benefits each Track 1 Trial Plaintiff received, to the extent applicable, associated with government-provided/covered health care or a disability relating to a Track 1 disease allegedly relating to exposure to the water at Camp Lejeune. On April 15, 2025, the United States produced specific agency-created documents summarizing costs and amounts associated with government-provided/covered health care or a disability relating to a Track 1 disease allegedly relating to exposure to the water at Camp Lejeune. These agency-created documents include (1) an Excel Sheet and Word document detailing the Veterans Benefits Administration's (VBA) disability compensation awards and disability ratings for the Track 1 Trial Plaintiffs (and accompanying explanatory memorandum); (2) an Excel Sheet detailing Veterans' Health Administration's (VHA) health care costs associated with the Track 1 Trial Plaintiff's claimed illness(es) alleged to be related to exposure to the water at Camp Lejeune (and accompanying explanatory memorandum); (3) an Excel Sheet detailing VHA's Community Care Network (CCN) claims data associated with the Track 1 Trial Plaintiff's claimed illness(es) alleged to be related to exposure to the water at Camp Lejeune (and accompanying explanatory memorandum); (4) an Excel Sheet detailing VHA's CCN, as administered by TriWest, claims data associated with the Track 1 Trial Plaintiff's claimed illness(es) alleged to be related to exposure to the water at Camp Lejeune (and accompanying explanatory memorandum); (5) an Excel Sheet detailing the Defense Health Agency's TRICARE claims data associated with the Track 1 Trial Plaintiff's claimed illness(es)

15

alleged to be related to exposure to the water at Camp Lejeune (and accompanying explanatory memorandum); and (6) multiple PDFs detailing the Centers for Medicare and Medicaid Services' (CMS) cost and payment data associated with the Track 1 Trial Plaintiff's claimed illness(es) alleged to be related to exposure to the water at Camp Lejeune (and accompanying explanatory memorandum) (collectively, referred to as "Expert Offset Data").

On May 9, 2025, the United States notified PLG that the VBA had provided a supplemental data set and memorandum reflecting veterans disability benefits received by Track 1 Trial Plaintiffs, and the supplemental data set and memorandum was produced to PLG. The United States further notified PLG that based on this supplemental data, the United States anticipated it would need to supplement the VBA benefit offset calculations in several of the cases where the United States' damages experts Dr. Dubravka Tosic and Tricia Yount had submitted damages reports on April 8, 2025 (Dr. Andrew Brod's May 8, 2025 reports had already incorporated the supplemental VBA data and memorandum), and that the United States anticipated producing these supplemental calculations to PLG no later than Wednesday, May 21, 2025. Because these supplemental calculations would be served after PLG's Phase III rebuttal disclosure deadline of Wednesday, May 14, the United States offered PLG an additional two weeks, until Wednesday, May 28, to submit its rebuttal reports, if any, to Dr. Dubravka Tosic's and Tricia Yount's reports.

On Tuesday, May 13, 2025, PLG responded to the United States' May 9 notification, asserting that the entire production of the Expert Offset Data relied upon by the United States' damages experts was untimely and should have been produced in response to PLG's First Set of Requests for Production to Defendant United States of America Concerning Track 1 Discovery Pool Plaintiffs (the "First Track 1 RFPs"). The United States strongly disagrees.

Request No. 6 of the First Track 1 RFPs, the RFP PLG relies upon, is an improperly broad

catch-all request that requested the following:

> To the extent not previously produced in response to Plaintiffs' prior requests for production served herein, please produce all documents in Defendant's possession, custody, or control pertaining to benefits, awards, or payments related to the alleged injury or injuries, with regard to the applicable Track 1 Discovery Pool Plaintiff or Decedent, including but not limited to:
> a. Veterans Administration records pertaining to the Plaintiff or Plaintiff's decedent, including any documents connected to a service-connected disability rating and any benefits or payments related to any such alleged injury or injuries.
> b. Records of workers' compensation, unemployment insurance, disability awards, payments, benefits, welfare and other assistance from any governmental agency, public or private sector employer or union reflecting the employment or earnings of the Plaintiff or Plaintiff's decedent.
> c. Records of any other disability award, Medicare or Medicaid payment, or other benefits provided to the Plaintiff and/or decedent and/or his/her legal representative.

In response to Request No. 6, the United States objected, in part, because the Request sought

"**information prepared in anticipation of litigation or trial** and is therefore **protected by the**

**attorney work product doctrine**. . . . Finally, [the Request] seeks **premature expert discovery**

and does not adhere to the timeline imposed in the Court's Case Management Order No. 2 (Doc.

23)." (emphases added). The United States further stated that "[s]ubject to these objections, the

United States will produce a**ny responsive documents it receives from the VA, NARA, and**

**Plaintiffs' private healthcare providers, including military and medical records**. . . . Provided

timely production of the personally identifiable information and signed releases, the United States

will produce responsive documents on a rolling basis and by the end of fact discovery." (emphasis

added).

To the extent that PLG is suggesting that the United States "failed to produce" documents

responsive to this Request, the United States has produced numerous VHA medical records, VBA

disability awards and ratings records, private healthcare records, as well as military records, that are in its possession, custody, or control for the Track 1 Trial Plaintiffs. To the extent that PLG is suggesting the United States "failed to produce" the Expert Offset Data, the United States objected to producing Expert Offset Data because each of the documents in the Expert Offset Data were specifically created at the direction of the Department of Justice and in preparation for expert discovery in these CLJA cases. In short, the Expert Offset Data was not discoverable until as early as April 8, 2025 when the United States' Phase III expert reports were due.

The United States is willing to meet and confer with PLG regarding these issues and it is, as it has already offered, willing to provide PLG additional time for its rebuttal expert reports to address the supplemental VBA data.

<u>Phase I Motions</u>

On April 29, 2025, the Parties filed their respective opening briefs in Phase I. The Parties' opposition briefs are due on June 4, 2025.

<u>Phase I Expert Depositions</u>

All Phase I expert depositions have been taken. Pursuant to the Court's May 9, 2025 Order, the Parties have agreed that Dr. Remy Hennet's supplemental deposition will take place on June 4, 2025. The Parties have also agreed that Plaintiffs' Phase I expert Mr. Morris Maslia will sit for a supplemental deposition related to PLG's late disclosure of a supplemental report on April 24, 2025.

<u>Phase II Expert Depositions</u>

The Parties have scheduled all Phase II expert witness depositions.

Dr. Shields' Use of a Laptop

As represented at the Friday, May 9, 2025, hearing, the laptop Dr. Shields used at his May 12, 2025, deposition contained (i) a version of Dr. Shields' February 7, 2025 Report with hyperlinks to the cited sources; (ii) most of the sources in the report (which the hyperlinked report linked to); (iii) the PDF version of Dr. Shields' report (without hyperlinks), which had been served on February 7, 2025; (iv) a Microsoft Word version of Dr. Shields' report; and (v) PLG's own expert's reports. The laptop did not include any new information; the only "new" document was the hyperlinked version of Dr. Shields' report that was served on February 7, 2025.

The United States provided these documents, including the hyperlinked version of Dr. Shields' report, to PLG via the Justice Enterprise File Sharing System (JEFS) on the evening of Saturday, May 10, 2025. On the evening of Sunday, May 11, 2025, upon receiving a version of the hyperlinked report that had corrected a few of the over 1,700 hyperlinks, counsel for the United States sent it to PLG.[2]

The first communication that the United States received from PLG noting that they had trouble accessing articles via the hyperlinks was received on Monday morning, May 12, 2025, at 8:06 a.m., less than one hour before the deposition's 9:00 a.m. start time. The 8:06 a.m. email stated, "Last night, I was unable to get any of the hyperlinks to work in the report you uploaded around 10:30 pm."

At the deposition, PLG stated on the record that they were unable to access the articles via the hyperlinks. Also at the deposition, PLG attorneys inspected the laptop Dr. Shields used to see

---

[2] Dr. Bird's supplemental report, which was added to the laptop and provided to PLG Monday morning, is simply one of PLG's many expert reports served in Phase II.

how the hyperlinks worked and to verify that the laptop contained only the documents that the United States previously represented it contained.

On Tuesday May 13, 2025, the day after the deposition, PLG informed the United States that they were still unable to access the hyperlinks. In response, the United States offered to send via Federal Express a CD or flash drive with all of the documents that were on the laptop that Dr. Shields used at his deposition. PLG accepted this offer. The United States has since copied the contents of the laptop to a CD, and that CD has been served via Federal Express today, May 14, 2025.

PLG is not entitled to additional time to question Dr. Shields about the documents on the laptop given that no new information was on the laptop. Notwithstanding, the United States provided the report on Saturday evening, and provided the version with the few corrected links as soon as it received that version on Sunday evening.

Dr. Shields' Original Contract: In response to PLG's Request for Production No. 3 -- "All consulting contracts or retention letters between you and any person or entity on behalf of the Defendant United States concerning your involvement in the Camp Lejeune water contamination litigation." (PLG's April 7, 2025, Subpoena to Dr. Peter Shields.) -- the United States timely produced Dr. Shields' original and amended contracts on May 5, 2025. Dr. Shields identified both for PLG at deposition. The original was unsigned, the amended was signed. Now, PLG is demanding a signed version of the original contract and augmenting their original demand. They also identify no undue burden, delay, or prejudice from receiving the unsigned original contract and the signed amended contract. Notwithstanding the above, the United States will search for the signed version of the original contract and produce it if it can be found.

Dr. Shields' Notes: At deposition, PLG demanded notes that Dr. Shields took after his February 7, 2025, report was served. Previously, PLG's Request for Production No. 14 sought "[a]ll notes … you have created in connection with the Camp Lejeune water contamination litigation …." (PLG's April 7, 2025, Subpoena to Dr. Peter Shields.) The United States objected to both requests under Case Management Order (CMO) 17, ¶ 3. D.E. 305.

CMO 17, Paragraph 3 guards "[a]ny retained, testifying expert's notes, unless the notes constitute (i) the only record of a fact or data considered or an assumption relied upon by the expert in formulating an opinion in this case …." Here, PLG makes no argument that Dr. Shields' notes are the only record of a fact or data considered or an assumption he relied upon in forming his opinions.

Further, PLG's position in a February 27, 2025, email from Matthew D. Quinn undermines their demand. There, PLG stated, "the generally applicable rule under CMO 17 is that a retained testifying expert's notes are not discoverable." The email continues that subsection (i)'s exception requires a "case-by-case, fact-specific analysis" and is a "narrow exception[] to the general rule that notes are not discoverable." PLG has provided no such analysis nor demonstrated CMO 17's exceptions apply here.

PLG has shown no need for additional time to depose Dr. Shields. They have Dr. Shields' original contract, and CMO 17 and PLG's prior position on CMO 17 guard Dr. Shields' post-report notes from production.

Phase III Expert Depositions

The Parties have begun scheduling the Phase III expert depositions and are working collaboratively to schedule the remaining depositions.

<u>Independent Medical Examinations</u>

All of the United States' life care, vocational rehabilitation, and psychiatric examinations are now complete.

<u>PLG's Use of a Privileged Document During Dr. Hennet's Deposition</u>

Following the April 28, 2025 Status Conference, the Court heard argument in chambers regarding document CLJA_UST02-0000657182-83. Subsequently, at the Court's instruction, the Parties submitted summary position statements. On May 8, 2025, the Court issued its Order (DE 379), finding that the document is privileged, was properly clawed back pursuant to CMO No. 5, and may not be used by PLG in the litigation.

In accordance with that Order, the United States sent an email to the PLG on May 12, requesting confirmation that the PLG had destroyed the document and also destroyed the confidential, separate portion of Dr. Hennet's deposition transcript that references the document. The email further advised PLG that, to the extent it is aware of any other documents that could be considered privileged or protected under the Court's recent ruling, those documents must be disclosed under CMO No. 5.

As of today, the United States has not received any response from PLG.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a. the Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156]; and

b. the PLG's Motion to Compel production of compensation records related to work performed by SSPA for DOJ prior to August 2022 related to Camp Lejeune [D.E. 381, 382].

22

DATED this 14th day of May, 2025.

Respectfully submitted,

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

*/s/ Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

*/s/ Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Unit
Environmental Torts Litigation Section

*/s/ Adam Bain*
ADAM BAIN
Special Litigation Counsel
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR
DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of*
*America*

<u>*/s/ W. Michael Dowling*</u>
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

<u>*/s/ James A. Roberts, III*</u>
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

<u>*/s/ Mona Lisa Wallace*</u>
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*