IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | UNITED STATES' MEMORANDUM IN OPPOSITION TO PLG'S MOTION TO COMPEL SSPA BILLING RECORDS |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |

## INTRODUCTION

The Plaintiffs' Leadership Group ("PLG") filed a Motion to Compel SSPA Billing Records. Pls.' Mot., D.E. 381 ("Motion"). PLG seeks to compel the production of billing records from one of the United States' experts, S.S. Papadopoulos & Associates ("SSPA"), for work performed for the Department of Justice related to past Camp Lejeune litigation dating back to 2005. PLG filed the Motion despite the United States' repeated representations that, in an attempt to resolve this dispute, it would search for and produce additional compensation information to the extent that such information was reasonably available.

As promised, the United States has now produced all billing records related to past Camp Lejeune litigation that SSPA was able to locate after performing a reasonable search. These records consist of over one hundred pages of billing records dating back to 2005 for Camp Lejeune litigation under the Federal Tort Claims Act ("FTCA"). The United States had also previously produced nearly three hundred pages of detailed and extensive billing records from SSPA that related to SSPA's work performed for the current Camp Lejeune Justice Act litigation.[1]

Nevertheless, PLG has not responded to the United States' request that PLG withdraw its

---

[1] To avoid another unnecessary discovery despite, the United States also agreed to a limited privilege waiver and produced, pursuant to PLG's subpoena for the production of documents, Dr. Spiliotopoulos's notes from the 2005 ATSDR Expert Panel meetings. *See, e.g.,* D.E. 382-8 at 7.

Motion. Compelling the United States' expert to conduct any further searches for decades-old invoices would be unduly burdensome and disproportionate to the purported needs for the requested discovery. Accordingly, the Court should deny PLG's Motion.

## NATURE OF THE CASE

Plaintiffs have filed actions for personal injury and wrongful death related to exposure to contaminated water pursuant to the Camp Lejeune Justice Act of 2022, Pub. L. No. 117–168, § 804, 136 Stat. 1759, 1802–04 (2022).

## STATEMENT OF FACTS

On February 12, 2025, PLG issued a subpoena to the United States' expert geochemist, Dr. Remy Hennet, to testify at deposition and to produce certain documents. PLG's subpoena demanded in pertinent part:

> 5) All bills, invoices, or other documents related to payments from the United States or any of its agencies to you, S.S. Papadopulos, or any principals or agents of S.S. Papadopulos relating in any way to work completed by Remy J.-C. Hennet and Alexandros Spiliotopoulos.
>
> 6) All bills, invoices, or other documents relating to payments from the United States or any of its agencies to you, S.S. Papadopulos, or any principals or agents of S.S. Papadopulos relating in any way to Camp Lejeune water contamination, the CLJA litigation, remediation related to Camp Lejeune or any other water quality issues related to Camp Lejeune from 2004 through the present. FRCP 26(a)(2)(B)(vi) & 26(b)(4)(C)(1).
>
> 7) All timekeeping and billing records related to time that you, S.S. Papadopulos, or any principals or agents of S.S. Papadopulos spent working on any projects related to Camp Lejeune and the CLJA litigation from the time you or your employer first were retained, hired or contracted. FRCP 26(a)(2)(B)(vi) & 26(b)(4)(C)(1).

Pls.' Subpoena, D.E. 382-2.

The United States served its Responses and Objections to PLG's subpoena on March 14, 2025. *See generally* **Exhibit 1**, Responses and Objections. The United States objected to demands numbers five, six, and seven as overly broad, unduly burdensome, and seeking

information neither relevant nor proportional to the needs of the case. *Id.* at 5–6. Subject to, and without waiving those objections, the United States, on the same date, produced invoices reflecting the total amounts paid for work performed by SSPA for the instant litigation. When Dr. Hennet was deposed by PLG on March 20, 2025, a substantial portion of time was dedicated to questions on his prior work for the Department of Justice related to Camp Lejeune. *See* Hennet Dep. Tr., D.E. 382-6, at 14:7–24:12; 38:23–41:25; 66:8–105:16.

On March 24, 2025, PLG raised an issue with the United States' production in response to its subpoena, alleging it was deficient. On March 28, 2025, the Parties met and conferred on the issue. PLG demanded billing and timekeeping records for all work performed by SSPA related to Camp Lejeune dating back to 2005.[2]

Although the United States maintains its objections to PLG's attempts to reach back to the FTCA litigation, to avoid bringing an unnecessary discovery dispute to the Court, the United States agreed to request that SSPA search for responsive records and supplement its production. *See, e.g.,* Apr. 21, 2025 Joint Status Report, D.E. 354, at 12 ("Nevertheless, to avoid an unnecessary discovery dispute, the United States is working to determine if and to what extent information or documents still exist related to SSPA's work for DOJ in past Camp Lejeune litigation."); Apr. 28, 2025 Email from DOJ to PLG, D.E. 382-11, at 1 ("We're also working to identify and gather available compensation information related to past Camp Lejeune litigation and will supplement our production once we have it."); Apr. 29, 2025 Email from DOJ to PLG,

---

[2] PLG also demanded production of timekeeping records with work descriptions for all work performed by SSPA related to the CLJA litigation. Even though the Federal Rules of Civil Procedure only require disclosure of a "statement of compensation to be paid" and communications related to "compensation for the expert's study or testimony," the United States produced these detailed and extensive timekeeping records to avoid a discovery dispute. *See* Fed. R. Civ. P. 26(a)(2)(B)(vi) & 26(b)(4)(C)(1).

D.E. 382-13, at 4 ("The United States intends to produce basic information related to the FTCA litigation to the extent it's available . . . .").

Despite the United States' representations that it was searching for and would produce additional compensation information to the extent the information was still available, PLG filed the current Motion on May 12, 2025. On May 15, 2025, the United States produced all billing records related to past Camp Lejeune litigation that SSPA was able to locate after performing a reasonable search. **Exhibit 2**, May 15, 2025 Letter from DOJ to PLG. SSPA began maintaining searchable, electronic billing records in 2012. **Exhibit 3**, May 19, 2025 Decl. of Susan Murray-Wood. The United States has produced all billing records related to Camp Lejeune that SSPA could locate through a search of its electronic billing software, as well as available billing records that SSPA could locate that dated prior to 2012. This included some billing records for SSPA's Camp Lejeune work going back to 2005. Any further search of SSPA's records would require SSPA to comb through over a decade of individual time sheets to see if any include work on a Camp Lejeune-related case. *Id.* These time sheets would need to be redacted to remove non-Camp Lejeune related information. *Id.* SSPA estimates this would take sixty to eighty hours and cost $13,000. *Id.*

In light of its May 15, 2025 production of available billing records, on both May 15, 2025 and May 16, 2025, the United States requested that PLG withdraw its Motion. *See, e.g.,* Ex. 2, May 15, 2025 Letter from DOJ to PLG; **Exhibit 4**, May 16, 2025 Email from DOJ to PLG. To date, PLG has not responded to the United States' request.

## LEGAL STANDARD

District Courts have "substantial discretion" in deciding whether to deny or grant a motion to compel discovery. *In re: Camp Lejeune Water Litigation*, No. 7:23-CV-897, 2025 WL

1341890, at *2 (E.D.N.C. May 8, 2025), D.E. 379. As the party opposing new discovery, the United States "bears the burden of establishing the legitimacy of its objections." *Martin v. Bimbo Foods Bakeries Distrib., LLC*, 313 F.R.D. 1, 5 (E.D.N.C. 2016).

Discovery is limited by Fed. R. Civ. P. 26(b)(1) in two fundamental ways: the discovery sought must be (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). The proportionality inquiry considers the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## ARGUMENT

The United States has produced all of SSPA's Camp Lejeune-related billing records that could be located in a reasonable search. This includes all post-2012 billing records related to Camp Lejeune kept in SSPA's electronic software, as well as any available billing records that SSPA could locate prior to 2012. Some of these billing records reflect SSPA's work in 2005 and indicate that SSPA was working for DOJ at that time. Requiring SSPA to comb through over a decade of individual time sheets for work on various different cases to determine whether any additional Camp Lejeune-related billing records exist is not proportional to the needs of the case, and the burden and expense of requiring SSPA to look for additional billing records far exceeds the benefit considering the extensive information that PLG has already received from the United States and SSPA about SSPA's pre-CLJA work.

Throughout the course of this discovery dispute, PLG has insisted that it needs these billing records to prove that Dr. Hennet was working for the DOJ in 2005. *See* Apr. 28, 2025 Hr'g Tr., D.E. 382-12, at 13:25–15:13. The United States attempted to resolve this issue without motion practice by offering to stipulate to the fact that "Dr. Remy Hennet was retained as an expert by the Department of Justice in Camp Lejeune-related litigation by no later than February 2005." May 1, 2025 Email from DOJ to PLG, D.E. 382-13, at 2. To date, counsel for PLG has not responded to this offer. Instead, it appears that PLG has now changed its position by arguing that it needs the billing records to "evaluate what SSPA did at Camp Lejeune during the time frame that PLG's expert, Morris Maslia, was evaluating the water contamination for the ATSDR." Pls.' Mem., D.E. 382, at 6.

However, PLG already has extensive information about "what SSPA did at Camp Lejeune" prior to the passage of the CLJA. In support of its Motion, PLG attached as exhibits two documents (D.E. 382-4 and D.E. 382-5) produced by the United States as part of its extensive production of documents during fact discovery. These documents describe SSPA's activities at the time. Based on these two documents, PLG argued that SSPA's historic work at Camp Lejeune included "selecting the wells, directing which wells be drilled, and taking samples at particular wells during the time frame that the ATSDR was conducting its modeling work; mapping water level gradients and groundwater flow direction around Camp Lejeune; and remediating water supply wells with contaminants." Pls.' Mem., D.E. 382, at 6. It is unclear how additional records would help PLG evaluate "what SSPA did at Camp Lejeune," and what relevance this point has to any issues in the instant case. PLG also claims to need complete billing records to understand Dr. Hennet's opinions in a prior Camp Lejeune FTCA case, despite receiving Dr. Hennet's expert report from that case as part of the United States' document

productions in the instant case. Pls.' Mem., D.E. 382, at 7. Furthermore, PLG already deposed Dr. Hennet on his prior work for the Department of Justice and may question him on this work again at his upcoming Supplemental Deposition. *See In re: Camp Lejeune Water Litigation*, No. 7:23-CV-897, 2025 WL 1343184, at *7 (E.D.N.C. May 8, 2025), D.E. 380 at 11 (granting PLG "an additional four hours of time to depose Dr. Hennet"). More granular records are neither relevant nor justified for any causation or damages arguments that are central to this litigation. And, any marginal relevance to bias, beyond the information PLG already has, is disproportionate.

In support of its Motion, PLG cites two cases: *Noveletsky v. Metropolitan Life Insurance Co.*, No. 2:12-cv-21-NT, 2012 WL 11802597, at *2 (D. Me. Oct. 19, 2012), and *Burris v. Ethicon, Inc.*, No. 2:14-CV-24320, 2019 WL 13195497, at *1 (S.D.W. Va. Nov. 7, 2019). *See* Pls.' Mem., D.E. 382, at 4. Neither case supports requiring the United States and SSPA to continue searching for additional billing records decades into the past, especially considering the extensive information already provided to PLG. For example, the court in *Noveletsky* explicitly declined to hold that expert time and billing records are always discoverable. 2012 WL 11802597, at *4. Moreover, in *Burris*, the Southern District of West Virginia granted a motion to compel production of billing records for only the five preceding years. *See* 2019 WL 13195497, at *1. Here, the United States has already produced all billing records related to past Camp Lejeune litigation that SSPA was able to locate after performing a reasonable search. These records consist of over one hundred pages dating back nearly *twenty years* to 2005.

The instant case is more analogous to *Seaman v. Duke University*, No. 1:15CV462, 2018 WL 1441267 (M.D.N.C. Mar. 21, 2018). In *Seaman*, the defendant argued that an expert was obligated to disclose more than just the statement of compensation that Rule 26(a)(2)(B)(vi)

requires. The defendant filed a motion to compel (1) the total amount billed by the opposing expert in the case, (2) a breakdown of the proportion of the expert's firm's bills that are attributed to that expert's work, and (3) the total income earned by the expert for the last three years. *Id.* at *7.

The District Court for the Middle District of North Carolina acknowledged that "while there may be cases in which an expert's gross income, and the specific amounts thereof earned by providing services as an expert witness, may be discoverable, this should not be ordered routinely, without a showing . . . why less intrusive financial information would not suffice." *Id.* at *8 (internal citation and quotation omitted). The court in *Seaman* granted the motion to compel with respect to the total amount billed in connection with the pending case and the proportion of the bills that were attributed to the expert's work, but denied the motion to compel with respect to the disclosure of the expert's total personal income from his expert work for the past three years as not sufficiently narrow. *Id.*

PLG's demand that SSPA further search for billing records dating back twenty years and stretching across multiple different causes of action is even more overbroad and disproportionate than in *Seaman*. PLG seeks even more intrusive financial information from Dr. Hennet without any showing that the records already provided are insufficient. *See Seaman*, 2018 WL 1441267, at *8. Indeed, PLG cannot claim that such a production is warranted. The United States has produced extensive billing records for the work performed by SSPA in the instant case, compensation information dating back to 2005, and voluminous productions of emails between Dr. Hennet and Marine Corps Base personnel. PLG also questioned Dr. Hennet on his prior involvement with Camp Lejeune-related litigation extensively at his deposition. The United

States has gone above and beyond its obligations in complying with PLG's overbroad, unduly burdensome, and disproportionate discovery requests.

## CONCLUSION

For the foregoing reasons, the Court should deny PLG's Motion to Compel SSPA Billing Records.

*[Signature page to follow.]*

Dated: May 19, 2025                              Respectfully submitted,

                                                 YAAKOV ROTH
                                                 Acting Assistant Attorney General
                                                 Civil Division

                                                 JONATHAN GUYNN
                                                 Deputy Assistant Attorney General
                                                 Torts Branch

                                                 J. PATRICK GLYNN
                                                 Director
                                                 Environmental Torts Litigation Section

                                                 BRIDGET BAILEY LIPSCOMB
                                                 Chief, Camp Lejeune Unit

                                                 ADAM BAIN
                                                 Special Litigation Counsel

                                                 HAROON ANWAR
                                                 ALANNA R. HORAN
                                                 SARA J. MIRSKY
                                                 ALLISON M. O'LEARY
                                                 KAILEY SILVERSTEIN
                                                 Trial Attorneys

                                                  /s/ Giovanni Antonucci
                                                 GIOVANNI ANTONUCCI
                                                 Trial Attorney
                                                 United States Department of Justice
                                                 Civil Division, Torts Branch
                                                 Environmental Torts Litigation
                                                 1100 L Street, NW
                                                 Washington, DC 20005
                                                 (202) 616-8364
                                                 Fax (202) 616-4473
                                                 giovanni.antonucci@usdoj.gov
                                                 N.Y. Bar No. 6096671

                                                 Attorney inquiries to DOJ regarding the
                                                 Camp Lejeune Justice Act:
                                                 (202) 353-4426

                                                 *Attorneys for Defendant,*
                                                 *United States of America*

## CERTIFICATE OF SERVICE

  I hereby certify that on May 19, 2025 I electronically filed the foregoing using the Court's Case Management/Electronic Case Files system, which will send notice to all counsel of record.

                */s/ Giovanni Antonucci*
                GIOVANNI ANTONUCCI