IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **JOINT STATUS REPORT** |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to May 30, 2025, 3,145 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred fourteen cases have been dismissed; 105 of those were voluntary dismissals and the nine others were pro se cases. The cases are divided as follows: Judge Dever – 820 cases; Judge Myers – 741 cases; Judge Boyle – 811 cases; and Judge Flanagan – 773 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 410,000 de-duplicated administrative claims on file with the Department of the Navy ("Navy"). The Navy's enhanced Claims Management Portal allows filers to effectively manage their CLJA claim online. Approximately 144,527 CLJA claims currently contain at least one supporting document with approximately 55,109 of those claims *alleging* an

1

injury type that may be settled under the Elective Option framework. The Navy is working to confirm substantiation of those alleged Elective Option injuries and extend settlement offers to as many claimants as possible given workforce shaping impacts.

> **(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Joint Status Reports of October 15 and December 10, 2024 included a joint proposal that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be tried before the same judge. These cases have now been assigned to Judge Dever. The Parties further proposed that the Track 1 Leukemia and Non-Hodgkin's Lymphoma cases be divided into logical subgroups for purposes of trials. The Parties may make additional proposals for subgroups of other diseases for purposes of trials.

On March 3, 2025, the Parties filed a Joint Notice Regarding Hearing on March 25, 2025. [D.E. 329]. In the Joint Notice, the Parties proposed mutually agreed upon language concerning the nature of evidence to be presented by experts in the Water Contamination Phase (Phase One) of this litigation. *Id.* ¶ 4. Further, the Parties set forth competing positions concerning whether there should be a live evidentiary hearing during the Water Contamination Phase. *Id.* ¶¶ 6(A)-(B). At the Court's convenience, the Parties will be prepared to answer the Court's questions concerning these issues.

To the extent necessary, the Parties will continue discussions concerning the types of proof required to satisfy the PLG's burdens under Phases II (general causation) and III (specific causation and residual experts).

> **(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties discuss their positions on stipulations on a monthly basis. As forecasted in prior Joint Status Reports, the Parties have found that the areas of dispute have sharpened as expert discovery progressed.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Disclosures</u>

On February 7, 2025, the PLG designated Phase III experts on specific causation, damages and other expert disciplines not covered by previous phases ("Residual Experts"). Further, the PLG disclosed rebuttal experts on Phase II (General Causation) on March 15, 2025.

On April 8, 2025, with the exception of Parkinson's disease, the government disclosed its Phase III Residual Experts and produced Phase III expert reports, including reports on specific causation, damages, and offsets. On April 15, 2025, DOJ produced materials considered by its Residual Experts, including substantial new information on alleged offsets which information had been requested during the discovery phase but not previously produced by Defendant. On May 14, 2025, the PLG disclosed rebuttal reports on specific causation. The PLG's deadline for disclosure of rebuttal reports on the issue of offsets has been extended to June 11, 2025 by consent due to the dispute between the parties with respect to DOJ's belated production of information relevant to Plaintiffs' damages and DOJ's alleged offsets. This dispute is set out more particularly below under the Government's Late Production of Offset/Lien Data.

3

On May 8, 2025, the government designated its Residual Experts on Parkinson's disease, and the PLG will designate its rebuttal Residual Experts on Parkinson's disease on June 13, 2025, consistent with the deadlines established by the Court's March 11, 2025 Order. [D.E. 332.] The same dispute regarding Government's Late Production of Offset/Lien Data exists with the Parkinson's diseases cases also.

As discussed in prior Joint Status Reports, Track 1 Trial Plaintiff Frank Mousser ("Mr. Mousser") was diagnosed with a recurrence of his kidney cancer after the PLG disclosed Residual Expert reports on February 7, 2025. [D.E. 354 at p 5]. The PLG supplemented three Residual Expert Reports concerning the reoccurrence of Mr. Mousser's kidney cancer on April 9, 2025. Pursuant to the Parties' agreement, the government served responsive supplemental reports on May 23, 2025 for DOJ experts Walter Stadler and Harold Bursztajn, and the government will serve responsive supplemental reports by DOJ experts Michael Shahnasarian, Henry Miller and Tricia Yount on June 6, 2025.

Expert Depositions

All experts for Phase I ("Water Contamination Experts") have been completed, although pursuant to the Court's Order of May 8, 2025 [D.E. 380], the PLG will take a supplemental deposition of DOJ expert Remy Hennet on June 4, 2025. Furthermore, the government took a supplemental deposition of PLG Water Contamination Expert Morris Maslia on May 29, 2025. The Parties are in the process of completing depositions of Phase II experts on general causation ("General Causation Experts"). Furthermore, the Parties have nearly completed the process of scheduling all depositions of Phase III experts on specific causation and damages ("Residual Experts").

4

Recent Medical Developments in Track 1 Trial Plaintiffs' Cases

The United States notes below what it contends are "ongoing issues regarding PLG's efforts to obtain and produce updated medical records on a timely basis." PLG denies there is any issue to be raised here with the Court. As has been previously reported, the PLG has been and continues to timely request updated medical records for the Track 1 Plaintiffs. However, the PLG can only produce what it receives. There is one case for which additional medical records were requested but have not yet been received (*Welch v. United States*, a Parkinson's disease case). As relayed to the government on June 2, 2025, the PLG is checking weekly with the medical provider whose records remain outstanding. In spite of the PLG's diligence, the records have not yet been provided to the PLG so the records cannot be provided to the Defendant. Thus, neither Plaintiff's counsel nor Defendant's counsel have these records, which will be provided as soon as they are received.

Future Expert Supplementations

On April 11, 2025, the United States proposed amendments to the Court's schedule to address supplemental expert opinions and impose a deadline after which new medical developments or diagnoses could not be presented at trial. The PLG has rejected such proposal and strongly disagrees that any limitations should be imposed with respect to ongoing medical treatment and new developments/diagnoses. Given the Track 1 Trial Plaintiffs' serious health issues, it is to be expected that their conditions will continue to worsen, new diagnoses may arise, and medical treatment will be required up through trial. Such issues can be addressed through the normal course and in accordance with applicable procedures.

5

DOJ Expert Discovery Disclosures

In the Joint Status Report of April 21, 2025, the PLG discussed deficiencies with the government's document production in response to Subpoenas to DOJ experts Drs. Hennet and Spiliotopoulos, who are both employed by S. S. Papadopulos & Associates, Inc. ("SSPA"). Most of those issues have been resolved with the exception of the issues addressed in the PLG's pending Motion to Compel. [D.E. 381, 382]. As reported at the last status conference, Dr. Hennet is sitting for additional deposition testimony on June 4, 2025. After that deposition, the PLG should be able to report back to the Court on the status of the pending motion.

The Government's Late Production of Offset/Lien Data

On April 8, 2025, DOJ produced the reports of multiple damages experts for the Track 1 Trial Plaintiffs other than those with Parkinson's disease. This included the reports of Dr. Henry Miller, Dr. Dubravka Tosic and Tricia Yount who opined in their damages reports on certain alleged offsets as a result of disability benefits and other compensation theories. Beginning on April 15, 2025, as part of its production of materials considered documents for those damages experts, the government first produced certain Veterans Benefits Administration ("VBA") disability compensation records, TriCare payment records, and Medicare payment records (collectively, "Purported Offset Data") related to multiple Track 1 Trial Plaintiffs. This production includes agency-created spreadsheets that are relied upon by the government's experts. As part of the government's offset defense, DOJ expert Andrew Brod also issued a damages report on Parkinson's disease on May 8, 2025 that relied upon the Purported Offset Data. On May 9, 2025, the government indicated that it intended to supplement the reports of DOJ Residual Experts Tricia Yount and Dubravka Tosic to reflect the new Purported Offset Data. Those reports were produced on May 21, 2025, when the Defendant served "supplemental" damages expert reports containing

6

new information and reliance materials related to the Plaintiffs' damages and DOJ-claimed offsets. These reports, containing new alleged offset information, were produced subsequent to the expert report deadlines and it is the PLG's position they are not permissible "supplements."

By way of example, DOJ Residual Expert Tricia Yount's reliance materials in support of her initial report on Track 1 Trial Plaintiff David Fancher reflected that there were $0 in VBA offset benefits. Yet, Ms. Yount's supplemental report from May 21, 2025 reflected $347,489 in offset benefits. Similarly, Ms. Yount's supplemental report on Plaintiff Edward Raymond increased offset benefits from $465,519 (initial report) to $526,966. Most egregiously, DOJ Residual Expert Dubravka Tosic's initial report on Plaintiff Cometto Davis reflected no VBA benefits, yet Ms. Tosic's supplemental damages report on Plaintiff Cometto Davis alleged $377,590 in proposed offsets. The government's belated and untimely production of the Purported Offset Data and its belated disclosure of "supplemental" damages reports containing new information and additional reliance materials in addition to asserting VBA benefits which were not previously asserted is highly prejudicial.

On December 22, 2023, the PLG served its First Set of Requests for Production to Defendant United States of America Concerning Track 1 Discovery Pool Plaintiffs (the "First Track 1 RPDs") which included requests for the following:

> RFP No. 2: any documents concerning any allegation in the Plaintiffs' short form complaint for **any defense** Defendant will use during the trial of Plaintiff's individual action.
>
> RFP No. 5: all documents referring or relating to any claim of subrogation or lien by any third party on **any expenses paid on behalf of Plaintiff** as the result of injuries, physical symptoms, or damages alleged in the Short Form Complaint.
>
> RFP No. 6: **all documents pertaining to benefits, awards, or payments related to the alleged injury or injuries including but not limited to** VA records, workers' compensation records, Medicare, Medicaid or any other similar benefits.

7

On December 22, 2023, Plaintiffs also served Defendant with a First Set of Interrogatories requesting:

Interrog. No. 1: the identity of persons known to Defendant to be witnesses concerning the facts of the case;

Interrog. No. 2: the name and address of each individual likely to have discoverable information – along with the subject of that information.

On January 22, 2024, Defendant indicated in its discovery responses that it would produce responsive documents on a rolling basis by the end of fact discovery. However, Defendant failed to timely disclose information during the discovery process including, but not limited to, governmental disability and medical payments and cost data for the Track 1 Plaintiffs which Defendant now belatedly seeks to present as expert reliance materials in support of alleged damage offsets. Defendant failed to produce this very pertinent and requested disability and medical payment, cost and billing information with respect to VHA, CCN, TriWest, TRICARE, Medicare, and Medicaid, as well as comprehensive information regarding VBA payments.

Fact discovery related to Track 1 Trial Plaintiffs closed on August 11, 2024. [D.E. 250]. Therefore, all documents responsive to Plaintiff's discovery requests, including the Purported Offset Data, were required by be produced by August 11, 2024. Yet, the government failed to produce the Purported Offset Data until April 15, 2025, and this data is continuing to be produced. The PLG served multiple Residual Expert reports on damages on February 7, 2025. The PLG relied upon the government's productions (or lack thereof) in preparing its Residual Expert reports on damages. It is apparent from Defendant's expert reliance materials that Defendant has had access to the information requested by the Plaintiffs in discovery through various governmental means and agencies throughout the entirety of the discovery process but failed to produce the requested materials and information in a timely manner and to the prejudice of the Plaintiffs and

8

their experts, now claiming the information is "work product" when it is factual data that is being relied upon by Defendant's experts and not material prepared by Defendant's attorneys or Defendant's experts.

The Parties engaged in a meet and confer on these issues on May 22, 2025, after the last court status conference. No issues were resolved at that conference. The PLG followed up with a letter, at the DOJ's request, on May 23, 2025. The DOJ just responded to the PLG's letter on Friday, May 30, 2025 and as of the filing of this status report the parties have not resolved their differences. The rebuttal deadline for Plaintiffs' experts to respond to the DOJ's offset information was extended to June 11, 2025 to allow further time for the parties to confer. It is the PLG's position this extension is insufficient. The PLG remains concerned about the government's failure to timely produce this information, the substantial prejudice this late production imposes on the Plaintiffs and the other unresolved issues associated with the DOJ's offset production and positions. The PLG continues to reserve the right to file a motion to exclude the information or request other appropriate relief if the parties are unable to resolve these issues[1].

DOJ Expert Peter Shields

In the last status conference of May 21, 2025, the parties informed the Court of various issues arising with respect to the deposition of DOJ's expert Peter Shields ("Dr. Shields"), including issues with respect to the laptop he insisted on using at his deposition and other materials which had been requested of Dr. Shields but either not produced or only recently produced, including his notes and invoices. On May 29, 2025, the PLG requested that Dr. Shields be deposed in person for one additional hour so he could be questioned about these materials. The parties have reached an agreement that Dr. Shields will be deposed remotely on June 6, 2025 for one hour

---

[1] The PLG also notes that the CLJA is clear that any purported offsets only apply if an award has been made. The determination of alleged offsets is therefore a post-award procedure.

on topics limited to questions about his notes and certain materials Dr. Shields testified may exist but now appear not to exist.

<u>Dispute Regarding Payment for Deposition Time Spent Under Oath</u>

The Parties have encountered certain disagreements about the compensation of experts for time spent at depositions. The Court's Order of January 2, 2025, paragraph 15, provides that "Each party will pay for the time that any opposing Party's expert spends under oath in deposition…" [D.E. 312] While reserving their disparate positions, the Parties have reached an agreement starting with Phase II depositions that the party noticing an opposing party's expert for deposition will pay for the opposing expert's time beginning when the opposing expert witness is sworn-in until the end of questioning, including reasonable re-direct questioning by the counsel who retained the expert.  Should further issues arise with respect to this subject, the Parties will bring those issues to the Court's attention.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

<u>Fact Depositions</u>

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

<u>Recent Developments in Track 1 Trial Plaintiffs' Cases</u>

The United States would like to alert the Court to ongoing issues regarding PLG's efforts

to obtain and produce updated medical records on a timely basis. As the Court knows, PLG agreed to provide quarterly updates via spreadsheet to the Discovery Plaintiff Pool Forms. PLG also agreed to produce medical records as soon as they received them.

PLG's last such spreadsheet was sent on April 23, 2025. PLG flagged that there were three cases in which PLG expected to produce additional medical records. Of those, one case (*Welch v. United States*, a Parkinson's disease case) remains outstanding. The forecasted production will consist of medical records from Mr. Welch's new neurologist and go back, apparently, to sometime in 2024. Given that Phase III depositions are scheduled and ongoing, it is prejudicial that such records have not been produced yet. The United States inquired about the status of this forecasted production on June 2, 2025, but was not given an estimated production date. The United States reserves all rights as to any prejudice caused by this delayed production.

Future Expert Supplementations

In prior Status Conferences, the United States discussed the proposal it raised with PLG regarding a deadline for final expert report supplementation. The United States' proposal would establish a final supplementation deadline for expert causation opinions; that deadline would not affect the overall discovery schedule and would not preclude the introduction of additional information through fact witnesses at trial. PLG has indicated that setting a final deadline for expert supplementation may be beneficial, but that establishing such a date at this time is premature. The Parties will continue to discuss this matter.

Expert Discovery Disclosures

PLG's Phase III expert disclosures were made on February 7, 2025. On April 8, 2025, the United States served all of its Phase III expert disclosures, with the exception of disclosures for the Parkinson's disease cases. On April 15, 2025, the United States served its materials considered

lists for all Phase III expert disclosures, with the exception of the Parkinson's disease cases. The United States served its Phase III expert disclosures for Parkinson's disease cases on May 8, 2025. Materials considered lists for the United States' Parkinson's disease experts were served on May 15, 2025. PLG's Phase III rebuttal expert disclosures were served on May 14, 2025, with the exception of rebuttal disclosures for the Parkinson's disease cases. PLG's Parkinson's disease rebuttal disclosures are due on June 13, 2025.

The United States is evaluating whether PLG's Phase III expert disclosures contain expert opinions that should have been disclosed in Phase II, and may seek a conference with PLG regarding this issue before bringing it to the Court.

PLG's Discovery Requests of United States' Phase I Experts

As discussed at the May 21, 2025 Status Conference, the United States asserts that the notes, memoranda, and any related documents regarding United States expert Dr. Alex Spiliotopoulos's attendance at the 2005 ATSDR Expert Panel meeting are protected work product and objected to their production. Subject to these objections, the United States produced the notes in Dr. Spiliotopoulos's possession on May 9, 2025. As promised, the United States also produced pre-2022 SSPA billing records for Camp Lejeune-related matters that SSPA could reasonably locate on May 15, 2025.

PLG filed a Motion to Compel SPPA's pre-2022 billing records on May 12, 2025. The United States believes that SSPA has more than adequately complied with the requests in PLG's subpoena. The United States requested that PLG withdraw its Motion in light of the United States' productions, and sent an email to that effect on May 15, 2025. PLG never responded, and accordingly, the United States filed its Opposition to the Motion on May 19, 2025.

At the May 21, 2025 Status Conference, the Court asked whether the Motion was mooted

by the United States' productions. PLG asked the Court to hold ruling on the Motion until after PLG conducts the supplemental deposition of Dr. Remy Hennet on June 4, 2025. The United States maintains that it has fulfilled its obligations with respect to the subject subpoena and that the Motion should be denied.

Phase I Motions

On April 29, 2025, the Parties filed their respective opening briefs in Phase I. The Parties' opposition briefs are due on June 4, 2025.

Phase I Expert Depositions

All Phase I expert depositions have been taken. Pursuant to the Court's May 9, 2025 Order, the Parties have agreed that Dr. Remy Hennet's supplemental deposition will take place on June 4, 2025. The Parties also agreed that Plaintiffs' Phase I expert Mr. Morris Maslia will sit for a supplemental deposition related to PLG's late disclosure of a supplemental report on April 24, 2025. Mr. Maslia's deposition was completed on May 29, 2025.

Phase II Expert Depositions

The Parties have scheduled all Phase II expert witness depositions. Almost all Phase II expert depositions have now been completed. As referenced in PLG's update above, the Parties disagree regarding the meaning of "under oath" in the relevant CMO, and the effect of prior payments to experts by the Parties in Phase I. The United States reserves its rights regarding this dispute. Subject to this reservation, the United States agrees that, beginning in Phase II, each side will pay for the opposing expert's time from the time the expert is sworn-in until the end of questioning on that day. This will include reasonable re-direct questioning by the counsel who retained the expert.

PLG's Request to Continue Dr. Shields's Deposition

Following the deposition of the United States Phase II expert Dr. Peter Shields, PLG requested one page of notes Dr. Shields generated after writing his report. The United States objected to the production of these notes, as they are protected under CMO 17 and constitute attorney-work product. Subject to these objections, and in order to avoid a dispute involving the Court, the United States produced the one page of notes from Dr. Shields. PLG also requested additional invoices and a signed contract between Dr. Shields and the United States that PLG believed existed. The United States confirmed that these records do not exist.

PLG is now requesting that it be permitted to take another hour of deposition testimony of Dr. Shields to cover the contents of the one page of notes, along with potential questions about the invoice and contract—which the United States has already confirmed do not exist. Although the United States disagrees that such a deposition is warranted or appropriate, the United States has agreed to a remote, one-hour deposition on these topics on June 6, 2025.

Phase III Expert Depositions

The Parties have been working collaboratively to schedule the Phase III expert depositions. Almost all of the depositions have been set.

Update to Plaintiff Mousser's Medical Condition

On April 10, 2025, PLG served supplemental Phase III reports from three experts related to Mr. Mousser. The United States served supplemental reports by its specific causation and psychiatric experts on May 23, 2025, and will serve supplemental reports by its damages experts (if appropriate) by June 6, 2025.

United States' Supplemental VBA Data

The United States disputes PLG's characterization regarding alleged prejudice related to the United States' timely production of certain expert reliance materials related to benefit offsets.

14

The United States reiterates that PLG was repeatedly put on notice of the United States' intent to pursue offsets as mandated by the plain text of the Camp Lejeune Justice Act of 2022. The United States has produced over 250,000 records totaling almost 1.2 million pages in response to the individual Plaintiffs' RFPs, which—as detailed in the United States' responses to the relevant RFPs—included VBA, VHA, and NARA records. PLG failed to timely object to the United States' discovery responses as not including certain benefit-related documentation, to the extent that PLG believed any such responses were deficient.

PLG's allegation that the United States has had access to its expert reliance materials related to offsets "throughout the entirety of the discovery process" is incorrect. The United States reiterates its prior representations to this Court that the materials in question were prepared at the direction of the Department of Justice by various agencies for use in expert discovery in this litigation. PLG's assertions ignore the Court's Case Management Orders, which set out the timing of disclosure of expert opinions and materials considered. Indeed, the United States objected to the RFPs PLG cites above because they sought premature expert discovery. The United States notes that the supplemental VBA data it provided to PLG only impacted the United States' experts' analyses of three Plaintiffs' offset amounts. The United States provided the supplemental information shortly after the VA provided the data, which the VA was unable to provide earlier due to resource limitations. These adjustments did not impact the majority of the already-submitted expert reports. And as was noted during the May 21, 2025 Status Hearing, the amount of damages at issue is likely to continue to evolve prior to trial.

Following a meet and confer on May 29, 2025, PLG asked the United States to agree to modify the Case Management Orders governing this case, creating a separate discovery and expert

schedule with respect to the issues of damages and offsets. The United States believes such a modification would only further delay resolution of the pending cases.

PLG also requested that the United States stipulate to a number of legal issues not presently ripe for determination. While the United States certainly appreciates the need to narrow the issues of this litigation, it is of the position that these novel issues of law are improper for stipulation by the Parties. For example, PLG proposed a stipulation that "future medical expenses are not subject to offset." The United States disagrees with this assertion. The United States further believes it is a question of statutory interpretation on which the Parties disagree, and requires judicial resolution at the proper time.[2]

In order to alleviate any alleged prejudice, the United States informed PLG that it would produce any underlying data—to the extent they exist—that support the offset opinions disclosed in the course of expert discovery. PLG requested to extend the deadline for their Residual Expert Phase rebuttal reports by thirty days. In response, the United States offered a 60-day extension for PLG to submit rebuttal expert opinions related to offsets, and to allow for the production of underlying data related to offsets (with the potential for reasonably requested depositions). The United States has not received a response from PLG on this offer.

<u>PLG's Use of a Privileged Document During Dr. Hennet's Deposition</u>

Following the April 28, 2025 Status Conference, the Court heard argument in chambers regarding document CLJA_UST02-0000657182-83. Subsequently, at the Court's instruction, the Parties submitted summary position statements. On May 8, 2025, the Court issued its Order (DE 379), finding that the document is privileged, was properly clawed back pursuant to CMO No. 5, and may not be used by PLG in the litigation.

---

[2] The United States also disagrees with PLG's assertion in footnote 1 that "[t]he determination of alleged offsets is . . . a post-award procedure." This is also a legal determination that should be addressed by the Court at a later time.

In accordance with that Order, the United States sent an email to the PLG on May 12, 2025, requesting confirmation that the PLG had destroyed the document and also destroyed the separate portion of Dr. Hennet's deposition transcript that references the privileged document, which was already designated as confidential during the deposition. The email further advised PLG that, to the extent it is aware of any other documents that could be considered privileged or protected under the Court's recent ruling, those documents must be disclosed under CMO No. 5.

The United States followed up on this issue with PLG on June 2, 2025, but has not yet received a response.

**(6) Any other issues that the parties wish to raise with the Court:**

At present, the following motions are pending before the Court:

a. the Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156]; and

b. the PLG's Motion to Compel production of compensation records related to work performed by SSPA for DOJ prior to August 2022 related to Camp Lejeune [D.E. 381, 382].

*[Signatures follow on next page]*

DATED this 2nd day of June, 2025.

Respectfully submitted,

| | |
|---|---|
| */s/ J. Edward Bell, III* <br> J. Edward Bell, III (admitted *pro hac vice*) <br> Bell Legal Group, LLC <br> 219 Ridge St. <br> Georgetown, SC 29440 <br> Telephone: (843) 546-2408 <br> jeb@belllegalgroup.com <br> *Lead Counsel for Plaintiffs* | BRETT A. SHUMATE <br> Principal Deputy Assistant Attorney General <br> Civil Division <br><br> J. PATRICK GLYNN <br> Director, Torts Branch <br> Environmental Torts Litigation Section <br><br> BRIDGET BAILEY LIPSCOMB <br> Chief, Camp Lejeune Unit <br> Environmental Torts Litigation Section |
| */s/ Zina Bash* <br> Zina Bash (admitted *pro hac vice*) <br> Keller Postman LLC <br> 111 Congress Avenue, Ste. 500 <br> Austin, TX 78701 <br> Telephone: 956-345-9462 <br> zina.bash@kellerpostman.com <br> *Co-Lead Counsel for Plaintiffs and Government Liaison* | */s/ Adam Bain* <br> ADAM BAIN <br> Special Litigation Counsel <br> Environmental Torts Litigation Section <br> U.S. Department of Justice <br> P.O. Box 340, Ben Franklin Station <br> Washington, D.C. 20044 <br> E-mail: adam.bain@usdoj.gov <br> Telephone: (202) 616-4209 |
| /s/ Robin Greenwald <br> Robin L. Greenwald (admitted *pro hac vice*) <br> Weitz & Luxenberg, P.C. <br> 700 Broadway <br> New York, NY 10003 <br> Telephone: 212-558-5802 <br> rgreenwald@weitzlux.com <br> *Co-Lead Counsel for Plaintiffs* | LACRESHA A. JOHNSON <br> HAROON ANWAR <br> DANIEL C. EAGLES <br> NATHAN J. BU <br> Trial Attorneys, Torts Branch <br> Environmental Torts Litigation Section <br> *Counsel for Defendant United States of America* |
| */s/ Elizabeth Cabraser* <br> Elizabeth Cabraser (admitted *pro hac vice*) <br> LIEFF CABRASER HEIMANN & <br> BERNSTEIN, LLP <br> 275 Battery Street, Suite 2900 <br> San Francisco, CA 94111 <br> Phone (415) 956-1000 <br> ecabraser@lchb.com <br> *Co-Lead Counsel for Plaintiffs* | |

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*