# EXHIBIT 9

```
            IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF NORTH CAROLINA
                      SOUTHERN DIVISION
                          - - -
    IN RE:                           :
    CAMP LEJEUNE WATER               :
    LITIGATION                       :
                                     : No. 7:23-CV-897
    This Document Relates to:        :
    ALL CASES                        :

                          - - -

                        VOLUME II

                          - - -

       CONTINUED REMOTE VIDEOTAPED DEPOSITION OF

                    ARI KELMAN, PH.D.

                          - - -

                  Tuesday, April 8, 2025

                       12:02 p.m.

                          - - -


    REPORTED BY:  CAROL A. KIRK, RPR/RMR/CSR

                GOLKOW, a Veritext Division
                1650 Market Street, Suite 5150
               Philadelphia, Pennsylvania  19103
                        877.370.3377
                      deps@golkow.com
```

Golkow Technologies,
877-370-3377 · A Veritext Division · www.veritext.com
Case 7:23-cv-00897-RJ Document 398-10 Filed 06/04/25 Page 2 of 18

```
         R E M O T E   A P P E A R A N C E S
                        - - -
 On behalf of the Plaintiffs:
        WALLACE AND GRAHAM, P.A.
        BY:   JOHN HUGHES, ESQUIRE
              jhughes@wallacegraham.com
              MARK DOBY, ESQUIRE
              mdoby@wallacegraham.com
              NOELLE MUSOLINO, ESQUIRE
              nmusolino@wallacegraham.com
        525 North Main Street
        Salisbury, North Carolina  28144
        704-633-5244


 On behalf of the Defendant:
        UNITED STATES DEPARTMENT OF JUSTICE
        ENVIRONMENTAL TORTS LITIGATION
        BY:   CINDY M. HURT, ESQUIRE
              Cindy.M.Hurt@usdoj.com
              HANLEY GIBBONS, ESQUIRE
              Hanley.W.Gibbons@usdoj.com
        1100 L. Street, NW
        Washington, DC  20005
        202-307-5788

 ALSO PRESENT:
        Jerry Ensminger
        Jessica Ans, DOJ
        Brian McGee, Videographer
                        - - -
```

Golkow Technologies,
877-370-3377    A Veritext Division    www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 3 of 18

1                INDEX TO EXAMINATION

2   WITNESS                                                    PAGE

3   ARI KELMAN, PH.D.

4        CROSS-EXAMINATION (CONT'D) BY MR. HUGHES        120

Golkow Technologies,
877-370-3377           A Veritext Division           www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 4 of 18

1  describe as interviews, oral communication that
2  does not meet the same standard as an oral history
3  in their work.
4              And in those instances, they do not
5  have an obligation to record that, to transcribe
6  it, or to archive it.
7              MR. HUGHES:  If we look at page
8        11.  Let's see.  Page 10.  Yeah.
9  BY MR. HUGHES:
10       Q.   At the top of page 10, you see four
11  lines down where it says in part, "Notes may
12  suffice when conducting interviews," right?
13            You agree with that, right, that
14  statement?
15       A.   One moment.  I just want to read it
16  carefully, if that's okay.
17       Q.   Yes, sir.  Take your time.
18       A.   I do agree with the statement, yeah.
19       Q.   Okay.  If we go to page 11, top of
20  the page.  At the top of the page you reference
21  Mr. Ensminger and that Dr. Longley produced notes
22  dated January 2024, but his report was dated
23  December -- I think what you mean there is
24  January -- do you see the reference to January 7,

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 5 of 18

1  2024?
2          A.    I do.
3          Q.    Okay.  Is that an error.
4          A.    I don't believe so, but I don't
5  have --
6          Q.    Okay.  Should the date say 2025 --
7          A.    Oh.
8          Q.    -- instead of 2024?
9          A.    Apologies.  I think you're correct.
10  I think that that should -- I think it was dated
11  January 7, 2025.
12          Q.    Okay.  And so is that an error in
13  your report?
14          A.    It does look like it, yes.
15          Q.    Okay.  Does that error, in your
16  opinion, disqualify you as a historian expert in
17  this case?
18          A.    No.
19          Q.    Okay.  Let me show you -- okay.
20                MR. HUGHES:  Can the court
21          reporter -- can y'all put -- it's
22          number --
23          A.    Can I --
24          Q.    Oh, yeah, go ahead.  Yes, sir, go

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 6 of 18

1        MS. HURT: Objection to form.
2    A.   I believe that they were.
3    Q.   Okay. Are you aware that
4  Dr. Longley provided an errata sheet for his first
5  report at his deposition on April 3rd?
6    A.   I was not aware of that.
7    Q.   Okay. Are you aware that under the
8  federal rules, a party has a duty to supplement a
9  report or correct a report when they learn that in
10  some material respect, the disclosure is
11  incomplete or incorrect?
12        MS. HURT: Objection to form and
13     foundation.
14    A.   I was not aware of that.
15    Q.   Okay. Do you believe that if an
16  expert during the process of a case learns they
17  had a mistake and corrects it, do you believe that
18  should disqualify the expert?
19        MS. HURT: Objection to form and
20     foundation.
21    A.   It would depend on the kind of
22  mistake that they had made, I would say.
23    Q.   Okay. All right. You wrote a book
24  called A River and Its City, correct?

Golkow Technologies,
877-370-3377    A Veritext Division    www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 7 of 18

1  A. Yes.
2  Q. And that book was published in 2006?
3  A. I thought it was published --
4  I thought it was published in 2003.
5  Q. It could be. I'm reading from the
6  University of California Press.
7  Was it published, to your
8  recollection, in the early 2000s?
9  A. It was. I think you're probably
10 looking at the paperback edition. There was a new
11 paperback edition.
12 Q. You know what? You must be right,
13 because there's some book reviews from 2004.
14 Have you read any book reviews of
15 your book, A River and Its City?
16 A. I have never read a single review of
17 my work.
18 Q. Okay. Do you know who Gay Gomez is?
19 A. I do not.
20 Q. Okay. You don't know of a Gay Gomez
21 who is an assistant professor at McNeese State
22 University?
23 A. I've never heard of that person.
24 Q. Okay. Are you aware that there's a

Golkow Technologies,
877-370-3377     A Veritext Division     www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 8 of 18

1   journal called Louisiana History, the Journal of
2   the Louisiana Historical Association?
3           A.    Yes.
4           Q.    Okay.  It sounds like you weren't
5   aware, but were you aware before now that
6   Professor Gomez published a book review of your
7   book, A River and Its City, in the Louisiana
8   History, Journal of the Louisiana Historical
9   Association in its issue which was Summer 2004
10  Volume 45, Number 3, Page 359?
11                Were you aware of that before now?
12          A.    I was not.
13          Q.    Okay.  And in Professor Gomez's
14  review, she says that there was "an error needs
15  correction," and she cited the following
16  inaccuracy.  She said that your book said there
17  were three steamboat accidents that were described
18  as occurring in a little over -- a little more
19  than a month.  But, in fact, the accidents spanned
20  from November 1849 to December 1850.
21                Are you aware of that?
22          A.    No.
23          Q.    Okay.  Do you recall whether your
24  book, A River and Its City, referenced various

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 9 of 18

1  steamboat accidents?
2       A.   It did.
3       Q.   Okay.  And does the time range of
4  November 1849 to December 1850 sound accurate in
5  terms of when those accidents were?
6       A.   You're going to have to forgive me.
7  It was a long time ago, and I cited many more
8  steamboat accidents than just that.  So the
9  particulars of this case -- sorry.  When I say
10 "this case," of the instance that you're
11 describing, I just don't know.
12      Q.   Okay.  And so you don't recall
13 whether you characterized those three accidents as
14 occurring in a little more than a month?
15      A.   No.  But if I'm understanding you
16 correctly, it sounds like what -- sorry.  Is it
17 Professor Gomez?  Is that right?
18      Q.   Yeah.
19      A.   It sounds like what they found is --
20 again, if I'm understanding you correctly, it
21 sounds like if what they found is that I wrote
22 that something happened between November and
23 December, and I got the dates wrong, and,
24 actually, instead of it being in a little over a

Golkow Technologies,
877-370-3377          A Veritext Division          www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 10 of 18

1  month, it was a little over a year and a month.
2          Q.    Yeah.
3          A.    Is that correct?  That instead of --
4  it was from November of 1849 to December of 1850,
5  not December of 1849?
6                Am I understanding you?
7          Q.    Yes, sir.
8          A.    Okay.
9          Q.    Here's what she said, and I've given
10 people the cite.  I'm not going to make it an
11 exhibit, but I've give the cite so people know
12 what it is.
13               She said, "Finally, an error needs
14 correction:  Three steamboat accidents - dated
15 November 15, 1849, December 14, 1850, and
16 December 17, 1850 - are described as occurring 'in
17 just a little more than month.'"  That's what she
18 said.
19               Does that ring any bell to you in
20 terms of that part of your book?
21         A.    No.  But I take her at her word at
22 that time.
23         Q.    Okay.  And if that's correct, would
24 you believe that disqualifies you from being an

Golkow Technologies,
877-370-3377         A Veritext Division         www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 11 of 18

1  historian expert on methodological grounds or
2  reliability grounds?
3              MS. HURT:  Objection to form and
4        foundation.
5        A.   No.  At the risk of defending
6  myself, what I would say is that that error sounds
7  a little bit like the one that you discovered in
8  my expert report.
9              It's the sort of thing that a
10 critical reader looking at what I've written could
11 suss informations out relatively easily where
12 I had gone awry.
13             So there's no effort to mislead the
14 reader.  This is a simple error, and the sort of
15 thing that does every now and again regrettably
16 crop up in my work.
17       Q.   I understand.
18             The same review said "I also saw it
19 but did not find a detailed list of maps and other
20 illustrations that appear in the work.  While
21 captions and a seemingly incomplete map section in
22 the work cited provides some information,
23 including dates and repositories, perhaps the next
24 edition of the book could include a listing that

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 12 of 18

1  Can you go to page 41.  One second.
2  THE WITNESS:  Thank you for
3  increasing the size.
4  MR. HUGHES:  Okay.  Can you go
5  forward to page 51.  I'm sorry.  It's
6  not 41.  It's 51.
7  Okay.  Let's see.  Yeah.
8  BY MR. HUGHES:
9      Q.   So this is an order the Court
10 entered in the Ideker case.  And you can see
11 halfway down the page where it says, "The
12 government presented as its first witness
13 Dr. Ari Kelman, an environmental historian."
14 Do you see that?
15     A.   I do.
16     Q.   Okay.  And the next sentence says,
17 "Dr. Kelman testified that properties next to the
18 Missouri River have always been subject to
19 extensive flooding," right?
20     A.   It does say that.
21     Q.   Okay.  Have you seen this order
22 before?
23     A.   I don't recall.
24     Q.   Okay.  If you look at the bottom

Golkow Technologies,
877-370-3377    A Veritext Division    www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 13 of 18

1  sentence on the screen, it says, "Dr. Kelman's
2  opinions were based solely on the review of
3  documents concerning historical flood events
4  identified in public records; he did not consult
5  the plaintiffs regarding their experience of
6  flooding on the representative tracks before or
7  after the MRRP."
8              Do you see that language?
9        A.   I do.
10       Q.   Okay.  Is that true?  Did you review
11 any information from the plaintiffs in that case,
12 to your recollection?
13       A.   Hold on.
14            No, I don't think that's entirely
15 accurate.  I did look at depositions of the
16 plaintiffs.
17            MR. HUGHES:  Okay.  Let me go down
18       a little further and see if it flushes
19       it out.
20            If you can go down to the
21       paragraph that says "However."
22            Keep going down a little bit.
23       Let's find it.  One sec.
24            Okay.  Yeah, go to page 64,

Golkow Technologies,
877-370-3377          A Veritext Division          www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 14 of 18

1          page 63, 64.  Sorry.
2                Okay.  Yeah.
3     BY MR. HUGHES:
4          Q.   All right.  So if you look at the
5     top of page 64, it says, "However, as stated
6     above, the Court gives Dr. Kelman's testimony
7     little weight.  Dr. Kelman conducted no interviews
8     with the representative plaintiffs regarding their
9     expectations or what information they had
10    available when forming their expectations despite
11    acknowledging that such information is relevant to
12    its opinions," and cites to a transcript.
13               Do you see that?
14         A.   I do.
15         Q.   And then it says, "On
16    cross-examination, Dr. Kelman admitted that the
17    representative plaintiffs' personal observations
18    for the period of time they lived on the river and
19    how that was managed are relevant and important
20    considerations."
21               Do you see that?
22         A.   I do.
23         Q.   Okay.  Does that summary by the
24    Court match your recollection of the case?

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 15 of 18

1     A.    It matches my recollection of what's
2  being described here.
3     Q.    Can you elaborate on your answer.
4     A.    Well, the case is broader than just
5  this.  It appears to me that -- I'm going to read
6  this again.
7           "As stated above" -- yeah, I did not
8  do any interviews with the representative
9  plaintiffs.  That is accurate.  I had their
10 depositions, which I consulted to have a sense of
11 their expectations.
12          I did believe that their
13 expectations were relevant, and I believe that
14 their personal observations for the period of time
15 they lived on the river was also relevant.
16    Q.    Okay.  Do you know if you did a
17 written report in that case?
18    A.    I did.
19    Q.    Do you have it?
20    A.    Not at hand, no.
21    Q.    Is it something you could dig up
22 easily, or no?
23    A.    I expect I could find it given a few
24 minutes.

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ   Document 398-10   Filed 06/04/25   Page 16 of 18

1      Q.   Okay.  With regard to Dr. Brigham,
2  let me -- I'm going to summarize something and ask
3  you if you've heard of it before.
4           Dr. Brigham gave testimony in a case
5  called the Raytheon case involving Herington
6  H-e-r-i-n-g-t-o-n Army Air Force Base.
7           In that case, he did an expert
8  report that was filed at Docket Number 284-1 in
9  which he referred to inspections of bombers that
10 occurred every 6,000 miles and every 1,000 miles.
11          When he was deposed, he was asked
12 about it, and he said -- and this was in his
13 deposition excerpts filed at Document 284-2.  He
14 was asked whether his statements on 1,000-mile
15 inspections and 6,000-mile inspections were in
16 error.  And his answer was, "I may be in error
17 there."
18          And he went on to explain that
19 1,000-mile inspections appeared to be related to
20 automobiles, not to bombers.
21          Here's my question:  Were you aware
22 before now that in a prior case, Dr. Brigham had
23 said in a deposition that he may have been in
24 error in his written expert report?

Golkow Technologies,
877-370-3377                A Veritext Division              www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 17 of 18

1     MS. HURT: Objection to form.
2     A.    No, I was not aware of that.
3     MR. HUGHES: Okay. Those are all
4     the questions I have.
5     MS. HURT: I'd like to note on the
6     record that our prior agreement that no
7     new exhibits would be entered into
8     today's deposition, while that was not
9     the case and that didn't happen,
10    Mr. Hughes discussed several documents
11    without providing the documents to the
12    witness.
13    And so I think that kind of
14    violates the spirit of our agreement, if
15    not the word. So I just want to put
16    that on the record.
17    MR. HUGHES: Well, I guess I'll
18    put on the record that we were planning
19    to depose him last time on some of the
20    book reviews, and I did go pull other
21    book reviews, and so I understand what
22    you're saying.
23    However, I think it's fair game to
24    ask him about errors that are in public

Golkow Technologies,
877-370-3377                A Veritext Division                www.veritext.com
Case 7:23-cv-00897-RJ    Document 398-10    Filed 06/04/25    Page 18 of 18