IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) <br> ) <br> CAMP LEJEUNE WATER LITIGATION ) <br> ) <br> This Document Relates To: ) <br> ALL CASES ) | **UNITED STATES' REPLY <br> TO PLG'S MEMORANDUM <br> IN OPPOSITION TO D.E. 361** |

## INTRODUCTION

The Plaintiffs' Leadership Group ("PLG") asks this Court to adopt an illogical interpretation of the Camp Lejeune Justice Act of 2022 ("CLJA") in which the statute's component parts would be odds with one another, without acknowledging that this interpretation contradicts PLG's earlier statement in this litigation that "there is no reason to think . . . one would read 'water' in section 804(c) to include Camp Lejeune water that was *not* supplied by the United States." Pls.' Reply in Supp. of Mot. for Partial Summ. J., D.E. 152, at 6 (emphasis in original). Alternatively, PLG argues that the Court should delay ruling on the United States' Motion even though a ruling would narrow the issues to be determined by this Court, promote judicial economy, and provide the Parties with greater certainty in settlement negotiations. The Court should rule earlier, rather than later, that the CLJA's plain language does not permit claims based on exposure to soil and groundwater vapor intrusion at Camp Lejeune. Evidence and testimony regarding soil and groundwater vapor intrusion and emissions at Camp Lejeune are irrelevant and will not assist the trier of fact in any way. Further, allowing such evidence and testimony would result in undue delay and waste time at trial.

## ARGUMENT

PLG offers statutory interpretation arguments that are illogical, contravene fundamental canons of statutory interpretation, and are at odds with PLG's prior representation regarding the

meaning of the "water at Camp Lejeune" in the CLJA. Neither the plain language of the CLJA nor its legislative history support the conclusion that Congress intended to permit claims based on exposure to soil and groundwater vapor intrusion. Furthermore, PLG provides no sound reason to delay consideration of the United States' Motion.

I. **PLG's Current Statutory Interpretation of the CLJA Is Illogical and Contrary to Canons of Statutory Interpretation.**

PLG concedes that the language of section 804(b) requires a plaintiff to show exposure to "water 'supplied by . . . the United States,'" which "encompasses . . . water that was processed through the base's relevant water treatment plants . . . and distributed and made available to individuals as potable water." Pls.' Opp'n, D.E. 399, at 16 n.6;[1] *see also* Pls.' Reply in Supp. of Mot. for Partial Summ. J., D.E. 152, at 6 ("The same subsection specifies that the 'water' must have been 'supplied by . . . the United States.'"). Despite this concession, PLG argues that section 804(b) of the CLJA relates exclusively to standing—even though that section is titled "IN GENERAL." Rather than accepting the plain language of this section in defining the relevant exposure, PLG argues that the Court should look instead to section 804(c), "BURDENS AND STANDARD OF PROOF." Pls.' Opp'n, D.E. 399, at 5–8. PLG argues that section 804(c)'s use of the phrase "the water at Camp Lejeune" encompasses soil and groundwater vapor intrusion, *id.*, despite PLG's earlier statement that "there is no reason to think . . . one would read 'water' in section 804(c) to include Camp Lejeune water that was not supplied by the United States." Pls.' Reply in Supp. of Mot. for Partial Summ. J., D.E. 152, at 6. The Court should reject PLG's current reading of the CLJA, which is illogical and contrary to canons of statutory interpretation.

---

[1] PLG refers to section 804(b) of the CLJA as "§ 2(a)" and to section 804(c) of the CLJA as "§ 2(b)." For accuracy, and to avoid confusion, the United refers to these sections by their correct section numbers.

### A. PLG's Current Statutory Interpretation of the CLJA Is Illogical.

Under PLG's reading of the CLJA, a plaintiff first must establish standing by showing exposure to "water at Camp Lejeune, North Carolina that was supplied by, or on behalf, of the United States" under section 804(b), but may then prove causation by showing exposure to contamination through soil and groundwater vapor intrusion based on the phrase "the water at Camp Lejeune" in section 804(c). Pls.' Opp'n, D.E. 399, at 5–8. PLG argues that Congress did not include a definition section defining the phrase "the water at Camp Lejeune" in section 804(c) to indicate that it served as shorthand for the phrase "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" in section 804(b). *Id.* at 7. This is an untenable interpretation of the statute that defies a plain reading. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'").

PLG has already conceded that a plaintiff must prove exposure to water supplied by the United States. Pls.' Reply in Supp. of Mot. for Partial Summ. J., D.E. 152, at 6. Indeed, section 804(b) references both "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" and "the water at Camp Lejeune" *within the very same sentence* with the shorthand term appearing only after Congress used the longer, more detailed description:

> (b) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise **exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States** may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to **the water at Camp Lejeune**.

CLJA § 804(b) (emphasis added). Congress's use of the phrase "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" followed by a materially similar phrase introduced with the definite article "the" all in a single sentence describing the cause of action confirms that the phrase "the water at Camp Lejeune" serves as a shorthand for what immediately preceded it. *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (explaining "that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context") (citation modified). That the phrase "water at Camp Lejeune" would have one meaning in section 804(b) and another meaning in section 804(c) is illogical and contrary to the canon of statutory interpretation that identical words and phrases in the same statute typically have the same meaning. *See Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) ("After all, 'identical words and phrases within the same statute should normally be given the same meaning.'").

### B. PLG's Current Statutory Interpretation of the CLJA Misapplies Select Canons of Statutory Interpretation While Ignoring Others.

PLG further argues that "'the water at Camp Lejeune' is a general term," which "is broader than the phrase 'water at Camp Lejeune that was supplied by, or on behalf of, the United States.'" Pls.' Opp'n, D.E. 399, at 18. However, as explained above, statutory text and structure demonstrate that "the water at Camp Lejeune" is a convenient way to refer back to "water at Camp Lejeune that was supplied by, or on behalf of, the United States." Indeed, PLG never explain why Congress would have defined the universe of individuals who can bring a CLJA action as those who were exposed to "water at Camp Lejeune that was supplied by, or on behalf of, the United States" but then allowed those same litigants to sue about water at Camp Lejeune that was *not* supplied by, or on behalf of, the United States.

Next, PLG invokes the general-terms canon, which "dictates that without some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope and are not to be arbitrarily limited." *Billard v. Charlotte Cath. High Sch.*, No. 3:17-CV-00011, 2021 WL 4037431, at *20 (W.D.N.C. Sept. 3, 2021), *rev'd and remanded on other grounds*, 101 F.4th 316 (4th Cir. 2024) (citation modified). Here, however, there is an "indication to the contrary," namely the Congressional limitation of the action to "water supplied by, or on behalf of, the United States." Nevertheless, PLG argues that the Court should interpret "the water at Camp Lejeune" as a general term encompassing "all of the water at Camp Lejeune," including contaminant gas vapor emanating through soil from untreated, underground stores of water. Pls.' Opp'n, D.E. 399, at 18.

PLG's argument is not supported by the authority it cites. In *Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016), the Ninth Circuit acknowledged that "[w]hen a statute does not define a term, we generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used." *Id.* at 556 (quoting *United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010)) (internal quotation marks omitted). Only after determining that the term in question, "land claims," was "broad and general" in ordinary usage did the Ninth Circuit impute a broad and general meaning to the term. *Id.* at 577. Here, the ordinary, contemporary, and common meaning of the term "the water at Camp Lejeune" is neither broad nor general, and the term is previously referenced as the "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States." CLJA § 804(b). PLG has already conceded as much. Pls.' Reply in Supp. of Mot. for Partial Summ. J., D.E. 152, at 6. Moreover, PLG admits that the legislative history of the CLJA reveals that "the legislators spoke about drinking water and tap water . . . ." Pls. Mem., D.E. 399, at 21. PLG's current broad,

5

illogical interpretation of the CLJA not only contradicts their prior statement, but it also contradicts this Court's prior statements about the nature of this case. *See* Order of June 28, 2024, D.E. 247, at 2 ("First, Plaintiffs must establish the alleged chemicals in the water at Camp Lejeune from 1953 to 1987. *See* CLJA § 804(b). For example, what were the levels of benzene, TCE, PCE, and vinyl chloride present at the Hadnot Point, Holcomb Boulevard, and Tarawa Terrace *water distribution systems* in 1977?" (emphasis added)).

PLG also points to the "presumption of common usage" canon as discussed in Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012). Pls.' Opp'n, D.E. 399, at 18. To apply this canon, PLG asserts that "the water at Camp Lejeune" as used in CLJA section 804(c) is materially different from "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" in section 804(b), and it should be given a common broad meaning in CLJA section 804(c). *Id.* PLG's attempt to analogize the CLJA to Scalia & Garner's example of "land" and "real estate" is inapposite. *Id.*

As PLG notes, Scalia and Garner gave the example that, "if a contract 'says land in one place and real estate later, the second provision presumably includes improvements as well as raw land.'" *Id.* (quoting Scalia & Garner, *supra*, at 170). Scalia and Garner draw a distinction between two materially different terms, "land" and "real estate." These terms can bear different common meanings based on their context. In this case, however, "water at Camp Lejeune" is used in multiple places in the CLJA with the same particular meaning related to the particular context of the statute, all intended to permit personal injury claims stemming only from exposure to water supplied by the United States through water supply systems at Camp Lejeune that may have been contaminated between 1953 and 1987. As Scalia and Garner acknowledge, the "often disregarded . . . [common usage] canon is particularly defeasible by context." Scalia & Garner,

*supra*, at 171. Accordingly, the common usage canon cannot apply to the CLJA to supply a broad meaning to the "water at Camp Lejeune" which would encompass soil and groundwater vapor intrusion. For these reasons, the Court should reject PLG's statutory interpretation arguments and grant the United States' Motion.

II. **The United States' Motion is Timely, and the Request for a Pretrial Ruling on Vapor Intrusion is in the Interest of Narrowing the Issues and Preserving Judicial Economy.**

PLG alternatively argues that the United States' Motion should be denied on procedural grounds. These arguments also fail. First, PLG argues that the United States has not identified the specific evidence on vapor intrusion that it seeks to exclude. Pls.' Opp'n, D.E. 399, at 8. However, PLG later acknowledges that its Phase I experts "have commented in their reports on vapor intrusion," as specified in the United States' Memorandum in Support of its Motion. *Id.* at 12; *see also* United States' Mem., D.E. 366, at 6–7. PLG also acknowledges that the United States attached as exhibits to its Motion excerpts from PLG's expert reports, which include the expert testimony on vapor intrusion that the United States seeks to exclude. Pls.' Mot., D.E. 399, at 8 (quoting Maslia Rep't Excerpts, D.E. 366-1, Aral Rep't Excerpts, D.E. 366-2, Gilbert Rep't Excerpts, D.E. 366-3, and Bird Rep't Excerpts, D.E. 366-4). PLG's assertion that the United States has moved to exclude hypothetical evidence of vapor intrusion is therefore unsupported. *Id.*

PLG also argues that the United States' Motion "is premature given the developing factual record." *Id.* at 9. This argument ignores that fact discovery in this case closed on August 15, 2024, and that expert discovery for the Water Contamination Phase closed on March 15, 2025. Order of Jan. 2, 2025, D.E. 312; *see also* Joint Notice Regarding Hr'g on Mar. 25, 2025, D.E. 329 ("In Phase 1, the Court will be presented with evidence pertaining to the concentration levels for the chemicals in drinking (finished) water at Camp Lejeune from 1953 to 1987."). In

7

support of this assertion, PLG offers a hypothetical plaintiff who would be precluded from offering evidence that he "worked at the water treatment plants and was exposed to the raw water as it was being processed" were the United States' Motion to be granted. *Id*. Such a hypothetical plaintiff is not known to exist among the Track 1 Trial Plaintiffs, and the United States contests that such a hypothetical exposure would constitute exposure to contamination through vapor intrusion. What is known is that several of PLG's experts have referenced soil and groundwater vapor intrusion in their reports and can be expected to offer testimony on that route of exposure at trial. If such a hypothetical plaintiff ever appears, the Court can determine at that time whether the plaintiff was exposed to water "supplied by, or on behalf of" the United States. Critically, notwithstanding the references to vapor intrusion in PLG's Phase 1 expert reports, PLG has not offered any evidence of vapor intrusion in its Phase III specific causation expert reports.

PLG also cites to various cases where courts have deferred ruling on motions in limine before trial. Pls.' Opp'n, D.E. 399, at 10. The United States asserts, however, that to narrow the issues and preserve judicial economy, this issue can and should be resolved before trial. Whether the CLJA permits claims based on exposure to soil and groundwater vapor intrusion is a question of statutory interpretation that does not depend on the presentation of evidence. None of those cases cited by PLG involve deferring a request from a party for the court to limit the scope of relevant evidence and testimony based on interpretation of a novel statute. *See, e.g., Nickerson v. State Farm Mut. Auto. Ins. Co.*, No. 5:10-CV-105, 2011 WL 5192317, at *1 (N.D.W. Va. Oct. 31, 2011); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-CV-248, 2011 WL 7036048, at *2 (E.D. Va. July 5, 2011); *Humbert v. O'Malley*, No. WDQ-11-0440, 2015 WL 1569182, at *4 (D. Md. Apr. 6, 2015).

PLG's argument that the United States has not shown that evidence and testimony regarding vapor intrusion would be clearly inadmissible for any purpose is similarly unavailing. Pls.' Opp'n, D.E. 399, at 10. Evidence and testimony to support claims of exposure that are precluded by the terms of a statute are irrelevant for any purpose. *See Maine v. Becerra*, No. 23-1521, 2024 WL 3949261, at *3 (4th Cir. Aug. 27, 2024) (holding that evidence of claims other than those at issue is irrelevant). PLG conflates groundwater and soil vapor intrusion with other routes of exposure of contaminants from water supplied by the United States, such as inhalation of steam from finished water delivered to a barracks, which the United States is not challenging. *Id.* at 11.

Finally, PLG asks the Court to delay reaching the merits of the United States' Motion because these cases will be tried to the bench. Pls.' Opp'n, D.E. 399, at 14–16. While it is true that the Fourth Circuit has held that, in bench trials, evidence should not be excluded on the ground that it is unfairly prejudicial, *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994), the United States is not relying on the prejudicial nature of the evidence under Federal Rule of Evidence 403. Rather, the United States is challenging the admission of evidence and testimony of groundwater and soil vapor under Federal Rules of Evidence 401 and 402 because the CLJA does not permit claims based on exposure to groundwater and soil vapor intrusion at Camp Lejeune, making such evidence irrelevant and unhelpful to the trier to the fact. United States' Mem., D.E. 366, at 18–20. And even if marginally relevant, the probative value of such evidence is substantially outweighed by the risks of undue delay and wasting time. Fed. R. Evid. 403. This Motion helps streamline the case "by allowing a court to avoid lengthy argument at, or interruption of, the trial," with irrelevant evidence. *See Brasko v. First Nat'l Bank of Pa.*, 700 F. Supp. 3d 354, 364 (D. Md. 2023) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court should grant United States' Motion and exclude evidence and expert testimony regarding soil or groundwater vapor intrusion and emissions at Camp Lejeune.

Dated: July 3, 2025                              Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

J. PATRICK GLYNN
Director
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Chief
Camp Lejeune Unit

ADAM BAIN
Special Litigation Counsel

HAROON ANWAR
Acting Assistant Director

ALANNA R. HORAN
ALLISON M. O'LEARY
KAILEY SILVERSTEIN
Trial Attorneys

 /s/ Giovanni Antonucci
GIOVANNI ANTONUCCI
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation
1100 L Street NW
Washington, DC 20005
(202) 616-8364
Fax (202) 616-4473
giovanni.antonucci@usdoj.gov
N.Y. Bar No. 6096671

*Attorneys for Defendant,*
*United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically filed the foregoing using the Court's Case Management/Electronic Case Files system, which will send notice to all counsel of record.

*/s/ Giovanni Antonucci*
GIOVANNI ANTONUCCI
