IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE:  )<br>)<br>CAMP LEJEUNE WATER LITIGATION  )<br>)<br>This Document Relates To:  )<br>)<br>ALL CASES  )<br>) | **UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF DR. RODNEY KYLE LONGLEY** |

**INTRODUCTION**

Plaintiffs' Leadership Group ("PLG") has failed to meet their burden to show, by a preponderance of the evidence, that the testimony of their proposed historian expert, Dr. Rodney Kyle Longley, is reliable and admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. As detailed in the United States' opening brief, Dr. Longley's application of the historian's method is unreliable. *See* U.S. Mem., D.E. 362, at 5-20. Dr. Longley did not survey a full array of sources, account for his own biases, critically evaluate the reliability of his sources, or thoroughly document his sources. Dr. Longley's reports merely recite PLG's narrative, propped up by cherry-picked or mischaracterized sources, leaving this Court to speculate whether his conclusions are supported by anything beyond his own "*ipse dixit*."

PLG attempts to divert the Court's attention by arguing that courts generally accept historians as expert witnesses and Dr. Longley is a well-qualified historian, while downplaying the significant flaws in Dr. Longley's work. Dr. Longley's qualifications cannot compensate for his unreliable application of the standard historian's method. For an expert's opinion to be admissible, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

152 (1999). Dr. Longley acknowledged repeatedly in his reports and deposition testimony that "if [he] had more time or resources" he would have applied the same standards of rigor that he normally applies in his own work, namely, the standards that other historians typically apply. *See, e.g.*, Apr. 3, 2025 Longley Dep. Tr., D.E. 362-5, at 97:24-98:1; 114:13-15 (emphasis added) ("I did sort of *deviate* from the traditional form . . . because *time was running out*.").[1] Dr. Longley's repeated excuses underscore the unreliability of his opinions.

PLG separately posits that the United States' motion to exclude Dr. Longley is "premature" and an improper request for an advisory opinion. This argument is a red herring. Whether Dr. Longley is designated as an affirmative or rebuttal expert does not impact the Court's threshold obligation to assess the reliability of his proposed expert testimony.[2] Similarly, the Court's gatekeeping function is not relaxed because the Court will be the fact-finder. Expert opinion testimony proffered in both bench and jury trials must always satisfy Rule 702 requirements. *Capps v. Newmark S. Region, LLC*, No. 5:18-CV-133-FL, 2020 U.S. Dist. LEXIS 90311, at *15 & n.7 (E.D.N.C. May 22, 2020) (Flanagan, J.) ("Plaintiff's argument that the court may disregard Rule 702 merely because the case proceeds to bench trial as opposed to jury trial is unpersuasive. The court is still obligated to apply the Federal Rules of Evidence.").

PLG failed to satisfy its evidentiary burden under Rule 702, as it failed to prove Dr. Longley

---

[1] *See also* Mar. 17, 2025 Rep. of Dr. Longley, D.E. 362-4, at 2, 29; Longley Dep. Tr., D.E. 362-5, at 54:14-21; 76:2-5; 78:15-79:24; 80:22-81:2; 115:21-116:1; 116:20-25; 122:14-123:2; 123:19-124:5; 319:13-320:7; 320:12-321:10; 331:4-331:14; 335:2-336:5.

[2] The United States disputes that the first report of its historian expert, Dr. Jay L. Brigham, "crossed in the mail" with Dr. Longley's first report. PLG's Mem., D.E. 398, at 6. Rather than disclosing an affirmative report in the Water Contamination Phase ("Phase I"), PLG disclosed Dr. Longley's "first report" in the General Causation Phase ("Phase II") on December 9, 2024. While Dr. Longley's first report is dated December 7, 2024, it was not disclosed to the United States until December 9, 2024 when PLG's Phase II affirmative disclosures were due. The Parties have since agreed that all of the history experts may be considered as part of Phase I regardless of when they were disclosed. However, the United States reserves its rights regarding whether Dr. Longley should be permitted to testify as an "affirmative" expert in Phase I given his first affirmative report was disclosed as a part of Phase II.

will provide reliable expert opinions. Dr. Longley's testimony should be excluded in its entirety.

## ARGUMENT

**I.    <u>Dr. Longley Did Not Reliably Apply the Methods Used by Historians.</u>**

PLG's claim that the Court's gatekeeping obligation is diminished when dealing with "soft sciences" is incorrect. *See* PLG's Opp'n, D.E. 398, at 16. "While the relevant factors for determining reliability will vary from expertise to expertise. . . [Rule 702] rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science." Fed. R. Evid. 702 Advisory Committee's note to 2000 amendment (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997)). As detailed below and in the United States' opening brief, Dr. Longley did not meet this reliability standard, and his testimony should be excluded in its entirety under *Daubert* and Rule 702. *See* U.S. Mem., D.E. 362, at 5-20.

    **A.  Dr. Longley's Lack of Sufficient Time and Resources Does Not Excuse His Failure to Employ the Proper Level of Intellectual Rigor Required of a Historian.**

Dr. Longley repeatedly acknowledged in his reports and deposition testimony that "if [he] had more time or resources," he would have applied the same standards of rigor that he normally applies in his own work.[3] For an expert's opinion to be admissible, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire*, 526 U.S. at 152. Instead, Dr. Longley testified that "had [he] had time… and [was] giving [his reports] to the *American Historical Review* for publication," he would have applied his methods more thoroughly. Longley Dep. Tr., D.E. 362-5, at 80:22-81:2; *see also id. at* 335:2-336:5 (testifying that he could have "employ[ed] more rigorous methodology had [he] had more time"). The inadequate time allotted for Dr. Longley's work caused him to take short

---

[3] *See* Mar. 17, 2025 Rep. of Dr. Longley, D.E. 362-4, at 2, 29; Longley Dep. Tr., D.E. 362-5, at 54:14-21; 76:2-5; 78:15-79:24; 80:22-81:2; 97:10-98:11; 114:5-15; 115:21-116:1; 116:20-25; 122:14-123:2; 123:19-124:5; 319:13-320:7; 320:12-321:10; 331:4-331:14; 335:2-336:5.

3

cuts that resulted in his failure to follow the standard historian's methodology. Lack of time or resources, however, is not a valid excuse for failing to follow a proper methodology. *See Tovey v. Nike, Inc.*, No. 1:12-CV-0448, 2014 U.S. Dist. LEXIS 93905, at *17 (N.D. Ohio Apr. 2, 2014).

Dr. Longley failed to follow the standard practices for oral histories outlined in Donald Ritchie's treatise on oral history. *See* Donald A. Ritchie, *Doing Oral History* (3d ed. 2014), D.E. 362-13, at 1, 103-105 (discussing the methodological requirement that oral histories be recorded, transcribed, and archived). Dr. Longley testified that due to insufficient time he "deviated" from the historian's "traditional setup" when conducing "oral histories" of the plaintiffs. Longley Dep. Tr., D.E. 362-5, at 97:10-98:16; 309:12-310:2. Instead of using the "traditional setup," Dr. Longley engaged in informal conversations with plaintiffs and, failed to transcribe or otherwise adequately document their statements, which are standard practices recognized in the field.[4] Longley Dep. Tr., D.E. 362-5, at 97:10-98:16; 309:12-310:2.

Without any critical analysis, Dr. Longley "simply asked the [plaintiff] questions and put information [from plaintiffs] directly into his report." Jan. 21, 2025 Letter from PLG, D.E. 362-21. This type of information is the primary support for many of Dr. Longley's statements regarding Camp Lejeune history. For example, in Section VI of his December 7, 2024 report, Dr. Longley relies primarily on plaintiffs' statements to support his assertions regarding the amounts of water Marines living in barracks used for personal hygiene, cleaning their weapons and the barracks, and doing laundry. D.E. 362-2, at 17-20.

Dr. Longley's unquestioning use of the plaintiffs' verbal and written statements cloaks

---

[4]*See* Jan. 21, 2025 Letter from PLG, D.E. 362-21, ("Dr. Longley spoke with [plaintiff] and wrote the information directly into his report."); Longley Dep. Tr., D.E. 362-5, at 155:7-11 (admitting that he did not "consult with any other individuals to corroborate the assertions in [the] oral histories," because he "[d]idn't have time to do so"); *id.* at 125:24-25; 83:20-23 (admitting that, although he understood that the plaintiffs he interviewed would be biased, he did not "address the potential biases anywhere in [his] report.")

those statements with the authority of expert analysis, but "[w]hen an expert's proffered opinion merely parrots information provided to [him] by a party, that opinion is generally excluded." *Brightview Grp., LP v. Teeters*, No. SAG-19-2774, 2021 U.S. Dist. LEXIS 28015, at *21 (D. Md. Feb. 8, 2021) (quoting *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-CV-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131, at *4 (S.D. Ind. Sept. 29, 2009)).

When questioned further about putting plaintiffs' statements directly into his reports, Dr. Longley stated that "[he] didn't see it [as] a methodological shortcut. [He] saw it as one where [he] was going to put [plaintiffs' statement] down. [He] had hoped to go back and corroborate it. [But he] didn't have time to do so because [he] ran up against a deadline." Longley Dep. Tr., D.E. 362-5, at 320:12-19. This last sentence is a direct admission that Dr. Longley was not "as careful as he would be in his regular professional work outside his paid litigation consulting." Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments (*quoting Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997)).

### B. Dr. Longley's Failure to Account for His Own Biases, Disregard for Inconsistent Facts, and Reliance on Cherry-Picked Sources Make His Opinions Unreliable.

Dr. Longley was unaware of his own biases and blurred the line between his opinion and the inputs from his clients. Contrary to PLG's argument, the issue is not that Dr. Longley is biased per se, but rather that he failed to maintain a critical awareness of his own biases—a practice that is fundamental to the historical method. *Burton*, 2018 U.S. Dist. LEXIS 139727, at *19-20.

Guarding against one's own biases is standard historian methodology. Dr. Longley clearly failed to do this. For example, Dr. Longley used "we" and "our" when referring to his opinions, despite testifying in his deposition that he had no assistance in preparing his report. *Compare* Longley Dep. Tr., D.E. 362-5, 362-5 at 320:9 ("What you see [in my reports] is *one person's* work.") (emphasis added); *with* Mar. 17, 2025 Rep. of Dr. Longley, D.E. 362-4, at 6 ("*we* do not

deny that Marines could take leave or go off-base to places such as Jacksonville, NC") (emphasis added); *see also id.* at 22 ("Dr. Brigham fails to provide much detail for countering *our* points about the centrality of Hadnot Point") (emphasis added). Other examples of Dr. Longley's failure to guard against his bias include his reliance on cherry-picked sources and his omission of facts inconsistent with PLG's position. *See* U.S. Mem., D.E. 362, 6-9 (citing examples of each).

PLG resorts to a straw-man argument in its response, claiming it is unreasonable for the United States to expect Dr. Longley "to include *all* facts on a topic as broad and variegated as the history of Camp Lejeune and its water use over decades of time." PLG's Opp'n, D.E. 398, at 16 (emphasis in original). The United States never made this argument. Rather, the United States faults Dr. Longley for selectively quoting sources and omitting known facts that contradict his conclusions, which are practices anathema to the standard historical methodology. U.S. Mem., D.E. 362, at 6-9; *see also Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 858-59 (E.D.N.C. 2015) (when there is evidence "tending to refute the expert's theory and the expert does not acknowledge or account for that evidence, the expert's opinion is unreliable.").

### C. Dr. Longley's Failure to Thoroughly Document His Sources Makes His Opinions Unreliable.

Thorough documentation is a key element of the historian's method as it allows other historians to assess, verify, and replicate the work. *See Burton*, 2018 U.S. Dist. LEXIS 139727, at *19; *see also* Am. Historical Ass'n, Statement on Standards on Prof'l Conduct, D.E. 362-18, at 3. Dr. Longley, however, omitted citations for many of his assertions, making it difficult, if not impossible, for another historian to verify his assertions.

Contrary to PLG's argument, the problem is not the total number of citations in Dr. Longley's reports, or the fact that some of Dr. Longley's statements can be verified through his citations. Rather, contrary to the historian's standard methodology, many of Dr. Longley's

assertions lack citations. Moreover, contrary to PLG's claim, Dr. Longley's uncited claims are not confined to obvious, undisputed statements. *See, e.g.,* Dec. 7, 2024 Rep. of Dr. Longley, D.E. 362-2, at 13, 16 ("*a small number* of Marines…lived in off-base housing" and "Marines their family members, and others were present and consuming water at Hadnot Point, *regardless of whether or not they had their homes or barracks there*") (emphasis added).

The lack of citations for Dr. Longley's assertions leaves numerous steps omitted in the chain of inferences between the data Dr. Longley cites and the opinions he draws. As a result, ultimately his opinions rest on nothing more than Dr. Longley's "say so." *See Eshelman v. Puma Biotech., Inc.*, No. 7:16-CV-18-D, 2019 U.S. Dist. LEXIS 37517, at *17-18 (E.D.N.C. Mar. 8, 2019) (Dever, J.) (granting motion in part because the expert's opinion was connected to the data by only the say so of the expert). Without thorough documentation, the Court cannot determine whether Dr. Longley's assertions are properly supported or are inadmissible *ipse dixit*. *See Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997).

PLG mischaracterizes the United States' expert historian's deposition testimony by suggesting that he endorsed the accuracy of Dr. Longley's reports aside from some "*de minimus* errors." PLG's Mem., D.E. 398, at 20-21. Rather, the United States' expert, Dr. Brigham, testified only that he was unaware of any other "Nixon-level" errors, referring to Dr. Longley's mistaken claim that President Nixon visited Camp Lejeune. Brigham Dep. Tr., Exhibit 1, at 176:21-23. As Dr. Brigham pointed out, and Dr. Longley had to concede, President Nixon never visited Camp Lejeune and the photograph Dr. Longley included in his report was of Camp Pendleton, an entirely different base on the opposite side of the United States. Feb. 7, 2025 Rep. of Dr. Brigham, D.E. 398-5, at 15; Longley Dep. Tr., D.E. 362-5, at 327:12-16. This type of mistake is particularly concerning given Dr. Longley's prior role as director of a presidential library. *See* Longley

Curriculum Vitae, D.E. 398-11, at 2.

While Dr. Brigham did not identify any other errors of the magnitude of Dr. Longley's incorrect claim that a photograph depicts President Nixon's visit, it does not follow that Dr. Brigham found the rest of Dr. Longley's report to be sufficiently researched or cited. To the contrary, Dr. Brigham noted that Dr. Longley misrepresented an image as "Marines" filling a "water buffalo at Hadnot Point," which was actually a photograph of New Jersey National Guardsmen filling a water buffalo in 2012. Dr. Brigham also identified that Dr. Longley incorrectly captioned a photograph of the Holcomb Boulevard Water Treatment Plant as from the 1960s, despite this building not being fully constructed until 1972. Feb. 7, 2025 Rep. of Dr. Brigham, D.E. 398-5, at 19, 39. And Dr. Brigham's report included an entire section detailing Dr, Longley's failure to apply the historian's methodology properly. *Id*. at 6-19.

In short, the problem is not the factual errors in isolation, but Dr. Longley's broader failure to reliably apply the historian's method with the same rigor that he and other historians apply in their field. Dr. Longley's reports reflect a pattern of unsupported assertions, careless errors, selective use of evidence, and lack of critical evaluation. These are hallmarks of an unreliable methodology under Rule 702, and Dr. Longley's testimony should be excluded in its entirety.

## II.     Dr. Longley's Testimony is Unreliable to the Point of Requiring Exclusion

PLG argues that the flaws in Dr. Longley's application of the standard historian's method affects only the weight of his testimony, not its admissibility. However, Dr. Longley's flaws concern the reliability of his opinion testimony, not just the credibility of his work. The Fourth Circuit held that "reliability and relevancy, which are preconditions to the admissibility of expert testimony," are "entirely distinct" from credibility alone, and a "thorough and extensive [cross] examination does not ensure the reliability or relevance of an expert's testimony." *Sardis v.*

*Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021) (citation omitted) (cleaned up). As the Advisory Committee clarified, questions about the sufficiency of the basis for an expert's opinion and application of the expert's methodology are questions of admissibility, not weight. FED. R. EVID. 702 Advisory Committee's note to 2023 amendments. Furthermore, the Fourth Circuit is clear that a result-driven analysis, or cherry-picking, is a "quintessential example" of an expert applying even a valid methodology in an unreliable manner, which is a matter of admissibility. *See In re Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 634 (4th Cir. 2018); *EEOC v. Freeman*, 778 F.3d 463, 468-69 (4th Cir. 2015) (Agee, J., concurring) (collecting cases and noting that "courts have consistently excluded expert testimony that 'cherry-picks' relevant data").

### III.  The United States' Motion to Exclude Dr. Longley is Timely.

PLG incorrectly contends that the United States' Motion to Exclude Dr. Longley is premature because it is not yet known exactly which issues will be presented at trial or even if Dr. Brigham will present testimony at trial at all. PLG further argues that because it has designated Dr. Longley as a rebuttal expert, any motion regarding the admissibility of his opinions should be put off until closer to trial. This argument lacks merit.

First, litigants are not required to wait until trial to challenge expert testimony simply because the precise contours of the opposing party's case are unknown. Accepting PLG's position would effectively bar pretrial motions practice based on Rule 702, and this Court's Case Management Orders clearly contemplate pretrial motions to challenge inadmissible expert opinions testimony. *See, e.g.*, Jan. 2, 2025 Scheduling Order, D.E. 312 ¶ 12; June 25, 2025 Order Amending Pretrial Deadlines, D.E. 414. Furthermore, the Court's "gatekeeping obligation" requires it apply Rule 702 to all experts, including rebuttal experts. *United States v. Ferncreek Cardiology, P.A.*, No. 5:17-CV-616-FL , 2025 U.S. Dist. LEXIS 51656, at *14 (E.D.N.C. Mar. 20,

2025) (Flanagan, J.) (Rule 702 requires a "basic gatekeeping obligation" to "ensure that any and all scientific testimony is not only relevant, but reliable") (quoting *Kumho Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 592-93); *see also Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716-17 (D.S.C. 2019) (collecting cases) ("[A] rebuttal expert is still subject to the scrutiny of *Daubert* and must offer both relevant and reliable opinions.").

Second, there is no such thing as a "premature" *Daubert* motion, because *Daubert* motions may be filed at any time prior to the Court's scheduling deadline. *See* D.E. 312 ¶ 12; D.E. 414; *see also United States ex rel. Fitzer v. Allergan, Inc.*, No. 1:17-cv-00668-SAG, 2024 U.S. Dist. LEXIS 54573, at *2 n.2 (D. Md. Mar. 27, 2024). PLG relies on *CNY Fair Housing, Inc. v. Wellclover Holdings LLC*, No. 5:21-cv-361, 2024 U.S. Dist. LEXIS 83382 (N.D.N.Y. May 8, 2024), to support its argument that the United States' motion is premature, but that decision is inapposite. In that case, experts had not yet been deposed and discovery was still ongoing. *Id.* at *3-4. Here, by contrast, the factual record is complete and both phases of expert discovery in which Dr. Longley entered reports are closed (Phase I and Phase II). This is precisely the stage that courts are expected to resolve questions of expert admissibility under Rule 702. Ruling on admissibility before trial ensures that unreliable expert testimony does not shape the factual record or needlessly complicate the trial. Thus, the United States' motion is timely, and Dr. Longley's testimony should be excluded in its entirety under Rule 702 as Dr. Longley failed to apply the same level of rigor to the facts in this case as he and other historians apply.

## CONCLUSION

For the foregoing reasons, PLG failed to meet their burden under Rule 702 and Dr. Longley's testimony should be excluded in its entirety.

Dated: July 3, 2025                                          Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General,
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

J. PATRICK GLYNN
Director
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Unit

SARA MIRSKY
Acting Assistant Director

ADAM BAIN
Special Litigation Counsel

HANLEY GIBBONS
SHARON SPRAYREGEN
Trial Attorneys

*/s/ Cindy M. Hurt*
CINDY M. HURT
Virginia Bar No. 86826
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation
1100 L Street, NW
Washington, DC 20005
(202) 307-5788
Cindy.M.Hurt@usdoj.gov

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

*Attorneys for Defendant,*
*United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically filed the foregoing using the Court's Electronic Case Filing system, which will send notice to all counsel of record.

<u>/s/ Cindy M. Hurt</u>
CINDY M. HURT