IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 7:23-CV-00897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | O R D E R |
| This Document Relates To: ) | |
| ) | |
| ALL CASES ) | |

This matter is before the court on Defendant United States' motion to exclude portions of the Plaintiffs' Leadership Group's ("PLG" or "Plaintiffs") Phase III expert reports on the basis that the reports contain untimely general causation opinions in violation of the court's scheduling orders ("Motion") [DE-409]. Plaintiffs oppose the Motion [DE-437]. For the reasons stated below, the Motion is granted in part.

I.  Background

This motion arises in connection with expert discovery under the Camp Lejeune Justice Act ("CLJA"), Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802–04.  The CLJA authorizes individuals exposed to contaminated water at Marine Corps Base Camp Lejeune between August 1, 1953, and December 31, 1987, to seek appropriate relief.  *Id.* § 804(b).

To promote efficient resolution of this consolidated litigation, the court has entered multiple scheduling orders governing phased expert discovery.  *See* [DE-270]; [DE-312]; [DE-414].  Expert discovery has proceeded in three phases: Phase I (water contamination), Phase II (general causation), and Phase III (specific causation, damages, and residual issues).  *Id.*

Plaintiffs' Phase II expert disclosures were due December 9, 2024.  On February 7, 2025,

the PLG served its Phase III expert reports. Defendant now moves to exclude certain portions of those reports, contending they improperly include new general causation opinions that should have been disclosed in Phase II. *See* [DE-409]. Plaintiffs oppose, arguing the contested content is integral to their specific causation experts' methodology, particularly differential diagnosis,[1] and thus properly included in Phase III. *See* [DE-437].

Defendant argues that the Phase III expert reports contain specific causation opinions that should have been disclosed earlier in discovery. At its core, this is a discovery dispute about whether the challenged opinions fall within the scope of timely disclosed general causation reports, or whether they introduce new expert opinions in violation of the court's scheduling order.

II. Legal Standard

Federal Rule of Civil Procedure 26(a)(2) requires disclosure of expert reports containing "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Rule 26(e) requires timely supplementation where reports are "incomplete or incorrect" in some material respect. Fed. R. Civ. P. 26(e)(2). Where a party violates a court-imposed expert disclosure deadline, sanctions may be imposed under Fed. R. Civ. P. 16(f). *See Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002); *Severn Peanut Co. v. Indus. Fumigant Co.*, No. 2:11-CV-00014-BO, 2014 WL 198217, at *3 (E.D.N.C. Jan. 15, 2014); *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2013 WL 5592808, at *4 (E.D.N.C. Oct. 10, 2013).

The court considers alleged violations of the expert disclosure deadline under the factors

---

[1] Differential diagnosis is defined for physicians as "the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." Stedman's Medical Dictionary 531 (28th ed. 2014); *see also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999) (affirming that a reliable differential diagnosis can serve as a valid method to establish specific causation in toxic tort litigation).

2

articulated in *Akeva*: 1) the explanation for the failure to obey the order; 2) the importance of the expert opinion; 3) the prejudice to the opposing party; 4) the availability of lesser sanctions; 5) the interest in expeditious resolution; 6) docket management; and 7) public policy favoring disposition on the merits. *See Severn Peanut*, 2014 WL 198217, at *3 (citing *Akeva*, 212 F.R.D. at 309).

Courts distinguish between proper supplementation and impermissible bolstering under Rule 26(e). *See id*. Supplementation is appropriate only where the original report was "defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading." *Akeva*, 212 F.R.D. at 310. Attempts to reinforce previously disclosed opinions after receiving rebuttal criticism may constitute improper gamesmanship. *See OmniSource Corp. v. Heat Wave Metal Processing, Inc.*, No. 5:13-CV-772-D, 2015 WL 3452918, at *9 (E.D.N.C. May 29, 2015).

The court retains "wide latitude in imposing sanctions on parties who fail to comply with pretrial orders and procedures." *Cahoon v. Edward Orton, Jr. Ceramic Found.*, No. 2:17-CV-63-D, 2020 WL 918753, at *4 (E.D.N.C. Feb. 24, 2020) (quoting *World Wide Demil, LLC v. Nammo*, 51 F. App'x 403, 407 n.4 (4th Cir. 2002) (per curiam) (unpublished)).

III. Discussion

Whether Defendant is entitled to the requested relief is a two-part inquiry. First, the court must determine whether the PLG's Phase III expert reports violate the court's pretrial scheduling orders by introducing untimely general causation opinions. Second, if so, the court must determine what, if any, sanction is appropriate. Fed. R. Civ. P. 16(f); *see Akeva*, 212 F.R.D. at 309; *Goodwin v. Cockrell*, No. 4:13-CV-199-F, 2015 WL 575861, at *2 (E.D.N.C. Feb. 11, 2015); *SMD Software*, 2013 WL 5592808 at *4.

A. Violation of the Scheduling Orders

Defendant argues that Plaintiffs' Phase III expert reports contain untimely new general

causation analyses, including literature reviews and toxicity threshold calculations, which should have been disclosed during Phase II. *See* [DE-409] 6–7.

Plaintiffs assert that the general causation references in the Phase III reports are not offered as new opinions but are incorporated as part of the experts' specific causation methodology to support the conclusion that exposure could have caused the alleged conditions and therefore does not violate the court's scheduling orders. *See* [DE-437] 4–6.

The Motion turns on whether references to general causation in the Phase III expert reports are permissible components of specific causation methodology (such as differential diagnosis) or whether they introduce new, independent general causation theories that were not disclosed by the Phase II deadline (December 9, 2024). *See* [DE-312]; Fed. R. Civ. P. 26(a)(2); Fed. R. Civ. P. 26(e); *see also Severn Peanut Co.*, 2014 WL 198217, at *2 (citing *Akeva*, 212 F.R.D. at 310).

Courts recognize that specific causation experts may rely on general causation evidence to establish that an exposure can cause the disease at issue. *See, e.g., Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999); *Ortho-Clinical Diagnostics, Inc. v. Abbott Labs*, 440 F. Supp. 2d 465, 477 (D.N.J. 2006). However, that permission does not allow Plaintiffs to present new general causation theories, fresh literature reviews, or threshold calculations after the Phase II deadline. *See Severn Peanut*, 2014 WL 198217, at *2–3; *OmniSource Corp.*, 2015 WL 3452918, at *9.

The court finds that certain limited references to general causation within the PLG's Phase III reports are permissible and do not violate the court's phased scheduling orders. These references are, for example, incorporated as part of the experts' differential diagnosis and are offered to support the inclusion, or "ruling in," of Camp Lejeune contaminants among the potential causes considered for the individual plaintiffs' conditions.

4

Case 7:23-cv-00897-RJ   Document 444   Filed 07/22/25   Page 4 of 8

Defendant's own expert reports illustrate this point. For instance, in his Phase III specific causation report for Plaintiff Matthew Connard, Defendant's expert Dr. Harry Paul Erba relies on the prior opinions of Defendant's Phase II leukemia expert to opine on Mr. Connard's specific leukemia diagnosis. *See* [DE-437-2] 3 ("The details of the high-quality Chinese workers study and the Pliofilm study discussed in Dr. Goodman's report are critical to understand in relation to Mr. Connard's [acute myeloid leukemia]."). Dr. Erba is simply referring to the prior, timely opinions offered by a Phase II expert and related literature—not offering his own fresh opinions on, for example, the levels of TCE and PCE present at the Hadnot Point water distribution systems in 1977 (Phase I) or what exposure to benzene is sufficient to cause leukemia (Phase II). *See id*.

Similarly, Plaintiffs' offered expert, Dr. Matthew Cooper, authored a supplemental Phase III report for Plaintiff Frank Mousser in which Dr. Cooper bases his conclusions regarding the cause of Mr. Mousser's kidney cancer in part on the previously disclosed opinions of two Phase II kidney cancer experts. *See* [DE-410-22] 4–7 ("The [referenced] reports were based on sound scientific principles . . . I am relying on them, in part, for the analysis in this case."). Such reference is permitted and properly included in a Phase III report.

However, to the extent Phase III experts offer new, independent general causation analyses, such as fresh literature reviews, novel threshold calculations, or independent application of causation models not previously disclosed, those opinions violate the court's scheduling orders. *See* [DE-414].

This ruling is consistent with the court's decision to proceed in certain pretrial issue Phases. *See* [DE-247]. Each Phase informs the next—like building blocks in the parties' cases in chief. It would frustrate the court's intent to prevent experts in subsequent Phases from referring to work

5

done by prior experts. Such references are not untimely, so long as they are not accompanied by novel opinions that should have been disclosed in a previous Phase.[2]

B. Application of *Akeva* Factors

Having found a partial violation, the court must determine the appropriate sanction under Rule 16(f), guided by the factors set out in *Akeva*, 212 F.R.D. at 309, and *Severn Peanut*, 2014 WL 198217, at *3.

1. Explanation for the Alleged Violation

Plaintiffs contend that the general causation discussions in certain Phase III reports are necessary to support their specific causation methodology. *See* [DE-437] at 5–6. While that rationale explains some limited references, Plaintiffs have not shown good cause for introducing entirely new analyses. This factor is neutral.

2. Importance of the Expert Opinion

Toxic exposure torts generally proceed in two steps—an expert demonstrates that a particular harm can be caused by the exposure to a degree of scientific certainty (general causation) and an expert opines that this plaintiff's exposure was a cause in fact of his or her harm (specific causation). *See In re Camp Lejeune Water Litig.*, 736 F. Supp. 3d 311, 317, 319 (E.D.N.C. 2024) (per curiam) (citing *Nix v. Chemours Co. FC*, No. 7:17-CV-189, 2023 WL 6471690, at *8 (E.D.N.C. Oct. 4, 2023)). Still, whether an environmental exposure can cause a given disease in the abstract directly informs whether it caused that disease in a particular individual. *See Dunn v. Sandoz Pharms. Corp.*, 275 F. Supp. 2d 672, 676 (M.D.N.C. 2003). Excluding such foundational reasoning risks rendering specific causation analyses incomplete or unreliable. This supports

---

[2] Of course, previously disclosed opinions and literature must be admissible to warrant proper reference. The court will not allow the parties to circumvent the rules of evidence by incorporating inadmissible expert evidence from previous Phases into later reports.

6

permitting experts to reference previously disclosed and otherwise admissible/not excluded Phase II opinions or literature. However, allowing wholly new general causation analyses could undermine the court's phased discovery process and pretrial schedule. *See* [DE-414]. This factor favors Plaintiffs as to references to existing opinions but cautions against new analyses.

3. Prejudice to Defendant

The court finds little prejudice if Phase III experts only reference Phase II general causation findings or established literature. Defendant's own experts do likewise. *See* [DE-437]16 (citing Dr. Bailey's report). Permitting new Phase II analyses within Phase III reports risks unfair surprise to Defendant and may necessitate additional discovery. This favors limited exclusion.

4. Availability of Lesser Sanctions

Targeted cross-examination, *Daubert* motions, and limited exclusion suffice to prevent prejudice. *See SMD Software*, 2013 WL 5592808, at *9. This factor favors Plaintiffs.

5-6. Interest in Expeditious Resolution and Docket Management

The phased expert discovery schedule is designed to efficiently litigate pretrial threshold issues and conduct bellwether mediations and trials to progress towards global settlement. *See, e.g.*, [DE-270]; [DE-414]. Allowing Phase III experts to reference Phase II findings avoids duplicative discovery; barring new analyses preserves docket control. *See Akeva*, 212 F.R.D. at 310 ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control[.]"). This balanced approach keeps the litigation on its current pretrial track. These factors favor Plaintiffs.

7. Public Policy Favors Resolution on the Merits

Allowing Phase III experts to explain why they "ruled in" contaminants without introducing new general causation theories promotes adjudication on the merits, rather than

7

exclusion based on procedural grounds. *Barnhill v. Accordius Health*, 2023 WL 7634449, at *7 (M.D.N.C. Nov. 14, 2023) (noting that public policy favors disposition of cases on the merits rather than exclusion based on technical missteps). This factor weighs against broad exclusion and favors Plaintiffs.

IV. Conclusion

For the foregoing reasons, the court grants the Motion in part and orders the following:

A. Plaintiffs' Phase III experts may reference general causation evidence, including Phase II opinions and published literature, as part of their specific causation methodology (e.g., differential diagnosis).

B. Plaintiffs' Phase III experts may not introduce new, independent general causation analyses, including but not limited to fresh literature reviews, novel threshold calculations, or any general causation methodologies that were not timely disclosed in Phase II.

SO ORDERED, this 22nd day of July, 2025.

Robert B. Jones
United States Magistrate Judge