IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

IN RE: CAMP LEJEUNE WATER LITIGATION )
)
This Document Relates To: ALL CASES. )

**PLAINTIFFS' WRITTEN OBJECTIONS TO MEMORANDUM AND RECOMMENDATION**

On July 15, 2025, Magistrate Judge Jones issued a Memorandum and Recommendation (hereinafter "M&R") suggesting that the Court should grant in part Defendant United States' Motion in Limine to Exclude Vapor Intrusion Evidence and Testimony. See D.E. 361 (motion), 366 (brief). Specifically, the M&R recommends that the Court "GRANT the Motion in part and bar Plaintiffs from introducing any evidence or testimony related to VI for the purpose of meeting the causation burden set out in subsection 804(c)" of the CLJA. D.E. 439, (M&R) at 19. It recommends that the Court "[o]therwise DENY the Motion without prejudice." *Id*. As explained further below, PLG has no objection to the partial denial of the motion. With respect to the partial grant, however, PLG respectfully submits that the M&R misinterprets the CLJA and overlooks other admissible uses of the evidence regarding Vapor Intrusion (hereinafter "VI").

**I. PLG Has No Objection To The M&R's Recommendation Of Partial Denial**

The M&R recommends that the Court should not make "a blanket pretrial ruling against all evidence or testimony related to VI." M&R at 18. As the M&R recognizes, there are "potential avenues where evidence and testimony related to VI may be relevant at trial," *e.g.*, rebutting defense expert critiques of the water modeling, and addressing any scientific issues introduced by the (forthcoming) public health assessment that ATSDR is planning to publish regarding Vapor Intrusion specifically. M&R at 18. Given that "the Court cannot opine on [evidence's]

admissibility before knowing its content," and especially given that this is a "bench trial [whose] format makes the possibility of jury confusion or misunderstanding impossible," the M&R correctly recommends that the Court defer a complete ruling on the MIL here. M&R at 18. Thus, the M&R correctly recommends that the Court "otherwise deny the motion without prejudice." M&R at 19. PLG has no objection to these portions of the M&R appearing on pages 18-19.

## II. PLG Objects To The M&R's Recommendation Of Partial Grant

With respect to the remainder of the M&R, PLG objects. The M&R relies almost entirely on an argument that the government did not raise in its opening brief. Even if the arguments had been properly presented by the government, the M&R relies on inapposite authority in interpreting the CLJA. And statutory-interpretation issues aside, the M&R overlooks other valid uses of the VI evidence.

### a. The M&R Relies Primarily On An Argument That The Government Did Not Raise

The M&R interprets the phrase "the water at Camp Lejeune" to mean "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States." The lynchpin reasoning underlying that decision appears on pages 11-12 of the M&R. As the M&R points out, the statute uses the word "the"—as in "the water at Camp Lejeune." According to the M&R, the use of the word "the" transforms the phrase "the water at Camp Lejeune" into a defined term that must "take[] its meaning from the meaning of [its] antecedent." M&R at 12 (citing *ABS Glob., Inc. v. Cytonome/St, LLC*, 84 F.4th 1034, 1040 (Fed. Cir. 2023)). In support of this argument, the M&R also cites a footnote in a dissent suggesting that "the definite article 'the' particularizes the subject which it precedes. M&R at 11 (citing *Palisades Collections LLC v. Shorts*, 552 F.3d 327 n.1 (4th Cir. 2008) (Niemeyer, J., dissenting).

2

The argument accepted by the M&R here does not appear in the government's motion. It barely appears in the government's reply. In its opening motion, the government did not cite the *ABS* case. Nor did it cite Judge Niemeyer's dissent in *Palisades*. Nor did the government argue that Congress's decision to use the word "the" was meant to create an ersatz definitional term. The government's primary argument was based on the *casus omitted* canon (a canon which is absent from the M&R) and the plain language of the statute. D.E. 366 at 10. Arguments not raised in the opening brief are generally waived. *See Herrera v. Finan*, 709 F. App'x 741, 746 (4th Cir. 2017). The Court should not accept an M&R that is predicated on arguments and case law that were not properly briefed.

The closest the government came to making the argument found in the M&R is a single sentence. Specifically, the government said that "later sections of the CLJA refer back to Section 804(b)'s plain language by referring to 'the water at Camp Lejeune.'" D.E. 366 at 10. The government provided no case law in support of this argument. They certainly did not squarely present the M&R's argument. I.e., the government did not state that, by using the word "the," Congress meant for the Court to go back through the statute in search of a technical *definiens* rather than simply applying the ordinary meaning of the phrase "the water at Camp Lejeune"—a meaning that would unambiguously encompass Vapor Intrusion. At most, the government took a "passing shot at the issue." *United States v. Nutter*, 137 F.4th 224, 229 (4th Cir. 2025). Under Fourth Circuit law, that is not enough to avoid waiver. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (stating that a party also waives an argument "by failing to develop its argument—even if its brief takes a passing shot at the issue" (cleaned up)).

### b. The M&R Misinterprets The CLJA

Even if the government had adequately raised the argument accepted by the M&R—and the government did not—the argument would still not be correct. As the M&R recognizes, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." M&R at 11 (quoting *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004)). The M&R also acknowledges that "the same term should be given the same meaning wherever it appears in the statute." M&R at 14. The corollary of this rule is that "a material *variation* in terms suggests a *variation* in meaning." *United States v. Jones*, 60 F.4th 230, 235 (4th Cir. 2023) (GVRed on other grounds, 144 S.Ct. 1091) (italics added); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) (same); *United States v. Hernandez-Barajas*, 71 F.4th 1104, n. 2 (8th Cir. 2023) (same).

The M&R's reasoning leads to a straightforward violation of the ordinary-meaning rules and the interpretive canons. As for ordinary meaning, there is no question that the phrase "the water at Camp Lejeune"—standing alone—would include VI, since the parties agree that Vapor Intrusion is in fact "water at Camp Lejeune." As for the canons, if the CLJA had used the phrase "water at Camp Lejeune that was supplied by, or on behalf of, the United States" consistently throughout the statute, then *that term* would "be given the same meaning wherever it appears in the statute." M&R at 14. But in certain parts of the statute, Congress chose to use a "material variation" of that term—namely "the water at Camp Lejeune." That "suggests a variation in meaning" that the M&R does not provide. The M&R instead provides exactly the same meaning.

To get around this straightforward result, the M&R holds that the phrase "the water at Camp Lejeune" "is simply a shorthand" for water supplied by the United States. M&R at 14. But there are recognized ways for Congress to deploy shorthands of this kind—at least when Congress

4

actually wishes to do so. A statute can contain a defined term. That is, if Congress had wished to employ a shorthand, it could have included a definitions section defining the term "the water at Camp Lejeune" to mean "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States." If Congress had an aversion to definitions for this statute, it could have employed a hereinafter provision. That is, after saying the phrase "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States," Congress simply could have said "(hereinafter 'the water at Camp Lejeune')" and unambiguously created a shorthand phrase. And failing that, Congress could have employed the word "such," which accomplishes an obvious cross-reference. There are more examples as well—"herein," "see supra," idiosyncratic capitalization suggesting defined terms, and a cross-reference to a different section of the code.

Each of these drafting options are well known to Congress. Each of them would have indeed made clear that "the water at Camp Lejeune" was being used as a shorthand. But none of them are present here. That means the usual rules apply: Language is given its ordinary meaning, and materially different terms in the statute must be given materially different meanings. The M&R does not follow these usual rules.

In support of its contention that Congress meant the phrase "the water at Camp Lejeune" as a shorthand, the M&R cites two cases. One is a footnote in a dissent. The other is an out-of-circuit precedent having nothing to do with statutory interpretation. It is instead a case involving claim constructions in patents. Neither case suggests that Congress was intending to use the phrase "the water at Camp Lejeune" as a shorthand here.

As for the dissent footnote, *see Palisades*, 552 F.3d at 339 n. 1, "[a] dissenting opinion is not binding precedent and cannot be treated as controlling law." *Marks v. United States*, 430 U.S. 188, 193 n. 3 (1977). And in any event, what Judge Niemeyer actually says is that when

5

the word "the" is used instead of the words "a" or "an," then it is being used as "a word of limitation." Grammatically, there would have been no way for Congress to say "a water at Camp Lejeune" or "an water at Camp Lejeune." And there is nothing unnatural about reading the phrase "the water at Camp Lejeune" in its ordinary sense. As even Judge Niemeyer says, the word "the" simply "particularizes the subject," which the statute accomplishes here by specifying that the relevant water must be "the water <u>at Camp Lejeune</u>" rather than water at some other location.

As for the out-of-circuit case, *see ABS*, 84 F.4th at 1040, that is not a statutory-interpretation case. It is a case about claim construction in patent cases, an area of law with its own set of idiosyncratic rules. *See generally Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Indeed, the *ABS* opinion specifically acknowledges that it is based upon "familiar aspects of *claim-construction* analysis." 84 F.4th at 1040 (emphasis added). Whatever might be said of presuming that the word "the" "refers back to earlier language as an antecedent" when doing a *Markman* claim construction in a patent case, it says nothing about whether a Court should read in an unstated definitional term when interpreting a statute passed by Congress. It should not do so. Congress knows well the proper ways to define terms and use shorthand. It did not do so here, requiring the Court to give the phrase "the water at Camp Lejeune" its ordinary meaning.

### c. The M&R Overlooks Other Admissible Uses Of VI Evidence

The M&R also overlooks the fact that an MIL should be granted only when the evidence is inadmissible for *any* purpose, and here there are multiple admissible uses of VI evidence. Although the Track One Plaintiffs do not intend to introduce evidence that they were exposed to vapor intrusion separate from the finished water in order to prove individual exposure causative of injury, it remains the case that, depending on the facts and circumstances developing at trial,

6

Case 7:23-cv-00897-RJ    Document 447    Filed 07/29/25    Page 6 of 8

information on vapor emissions or exposure may be relevant and useful for the Court in its capacity as the trier of fact.

For example, the mechanism by which molecules of chemical contaminants such as PCE, TCE and Benzene may be released via finished water vapor is similar to the mechanism by which those chemical molecules can also be released via vapor intrusion into buildings. It is proper for experts to comment on the vapor intrusion topic as part of their overall testimony regarding the contaminant properties. Accordingly, vapor intrusion is one part of the overall science and study of these chemicals and may be properly discussed, *e.g.*, by Plaintiffs' experts in connection with general background and science as to these chemicals. Experts should not be prohibited from testifying about vapor intrusion to the extent the topic is relevant and useful as part of their overall testimony on the ATSDR issues. Accordingly, the government fails to show that vapor intrusion evidence would be clearly inadmissible at trial. *See Davis v. Spicer*, No. 21-874-SRF (D. Del. Feb. 17, 2023), slip op. at 1 ("Evidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on all potential grounds.") (citing cases).

## CONCLUSION

To the extent that the M&R denies the proposed Motion in Limine, the Court should accept the M&R and deny the Motion in Limine. To the extent that the M&R grants the proposed Motion in Limine, the Court should overrule the M&R and deny the Motion in Limine.

*[Signature page to follow.]*

DATED this 29th day of July 2025.

| | |
|---|---|
| /s/   J. Edward Bell, III <br> J. Edward Bell, III (admitted *pro hac vice*) <br> Bell Legal Group, LLC <br> 219 Ridge St. <br> Georgetown, SC 29440 <br> Telephone: (843) 546-2408 <br> jeb@belllegalgroup.com <br><br> *Lead Counsel for Plaintiffs* | /s/   Zina Bash <br> Zina Bash (admitted *pro hac vice*) <br> Keller Postman LLC <br> 111 Congress Avenue, Suite 500 <br> Austin, TX 78701 <br> Telephone: 956-345-9462 <br> zina.bash@kellerpostman.com <br><br> *Co-Lead Counsel for Plaintiffs and Government Liaison Counsel* |
| /s/   Elizabeth J. Cabraser <br> Elizabeth J. Cabraser (admitted *pro hac vice*) <br> Lieff Cabraser Heimann & Bernstein, LLP <br> 275 Battery Street, 29th Floor <br> San Francisco, CA 94111 <br> Telephone: (415) 956-1000 <br> *ecabraser@lchb.com* <br><br> *Co-Lead Counsel for Plaintiffs* | /s/   W. Michael Dowling <br> W. Michael Dowling (NC Bar No. 42790) <br> The Dowling Firm PLLC <br> Post Office Box 27843 <br> Raleigh, North Carolina 27611 <br> Telephone: (919) 529-3351 <br> mike@dowlingfirm.com <br><br> *Co-Lead Counsel for Plaintiffs* |
| /s/   Robin L. Greenwald <br> Robin L. Greenwald (admitted *pro hac vice*) <br> Weitz & Luxenberg, P.C. <br> 700 Broadway <br> New York, NY 10003 <br> Telephone: 212-558-5802 <br> rgreenwald@weitzlux.com <br><br> *Co-Lead Counsel for Plaintiffs* | /s/   James A. Roberts, III <br> James A. Roberts, III <br> Lewis & Roberts, PLLC <br> 3700 Glenwood Ave., Ste. 410 <br> Raleigh, NC 27612 <br> Telephone: (919) 981-0191 <br> jar@lewis-roberts.com <br><br> *Co-Lead Counsel for Plaintiffs* |
| /s/   Mona Lisa Wallace <br> Mona Lisa Wallace (N.C. Bar No.: 009021) <br> Wallace & Graham, P.A. <br> 525 North Main Street <br> Salisbury, North Carolina 28144 <br> Tel: 704-633-5244 <br> mwallace@wallacegraham.com <br><br> *Co-Lead Counsel for Plaintiffs* | |