IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | UNITED STATES' RESPONSE TO |
| CAMP LEJEUNE WATER LITIGATION ) | PLG'S OBJECTIONS TO |
| ) | JULY 15, 2025 MEMORANDUM AND |
| This Document Relates To: ) | RECOMMENDATONS BY JUDGE |
| ALL CASES ) | JONES [D.E. 447] |
| ) | |

Earlier in the Camp Lejeune Justice Act ("CLJA") litigation, the Plaintiffs' Leadership Group ("PLG") asserted that "there is no reason to think . . . one would read 'water' in section 804(c) [of the CLJA] to include Camp Lejeune water that was *not* supplied by the United States." Pls.' Reply in Supp. of Mot. for Partial Summ. J., D.E. 152 at 6 (emphasis within). Now, PLG objects to Judge Jones's July 15, 2025, Memorandum and Recommendations (the "M&R") because the M&R interprets the phrase "the water at Camp Lejeune" in section 804(c) as shorthand for the phase "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" in section 804(b). Pls.' Obj., D.E. 447 at 2. There is nothing erroneous or contrary to law about Judge Jones's interpretation of the CLJA or his recommendation to the Court to grant in part the United States' motion in limine and "bar Plaintiffs from introducing any evidence or testimony related to [vapor intrusion] for the purpose of meeting the causation burden set out in subsection 804(c)." M&R, D.E. 439, at 19. Accordingly, the Court should overrule PLG's objections and accept the recommendations in Judge Jones's M&R.

## LEGAL STANDARD

"Pursuant to Title 28 U.S.C. § 636, Rule 72 of the Federal Rules of Civil Procedure, and this court's local rules, magistrate judges may be authorized to decide certain non-dispositive pretrial matters." *Sauer Inc. v. Lexington Ins. Agency Inc.*, No. 5:13-cv-180-F, 2015 WL

7176348 at *1 (E.D.N.C. Nov. 13, 2015) (Fox, J.). "Upon timely appeal by an objecting party, a district judge must 'modify or set aside any part of the order that is clearly erroneous or contrary to law.'" *Id.* (quoting Fed. R. Civ. P. 72(a)).

## ARGUMENT

I. **The United States Affirmatively Asserted, and Did Not Waive, the Argument that the CLJA's Use of the Phrase "the Water at Camp Lejeune" in Section 804(c) Constitutes Shorthand for the Phrase "Water at Camp Lejeune, North Carolina, that Was Supplied by, or on behalf of, the United States" in Section 804(b).**

As an initial matter, PLG makes a waiver argument, asserting that "[t]he argument accepted by the M&R here does not appear in the government's motion" and that "[i]t barely appears in the government's reply." Pls.' Obj., D.E. 447 at 3. However, the United States did argue in its opening brief that "[l]ater sections of the CLJA refer back to Section 804(b)'s plain language by referring to 'the water at Camp Lejeune.'"[1] U.S. Memo, D.E. 366 at 10. Moreover, it was not until PLG filed their opposition brief that the United States was made aware that PLG had abandoned their prior position that "there is no reason to think . . . one would read 'water' in section 804(c) to include Camp Lejeune water that was *not* supplied by the United States." Pls.' Opp'n, D.E. 399 at *passim* (emphasis within). In reply, the United States directly responded to PLG's new arguments, stating:

> Congress's use of the phrase "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" followed by a materially similar phrase introduced with the definite article "the" all in a single sentence describing the cause of action confirms that the phrase "the water at Camp Lejeune" serves

---

[1] *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017), which PLG cites in support of their assertion that the United States took only a "passing shot" at this argument, is inapposite. Pls.' Obj., D.E. 447, at 3. In *Grayson*, which concerned an appellate proceeding, the Fourth Circuit treated as waived an argument that a party asserted "without argument or explanation" in its opening brief. 856 F.3d at 316. In contrast, the United States cited various subsections of the CLJA, this Court's Specific Causation Order of June 6, 2024, and PLG's briefing in support of its Motion for Summary Judgment on Specific Causation to argue that any reference to "the water at Camp Lejeune" is plainly a reference back to "water . . . supplied by or on behalf of the United States." *See* United States' Supp. Mem., D.E. 366 at 10–11.

as a shorthand for what immediately preceded it. *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (explaining "that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context") (citation modified).

D.E. 420 at 4. Thus, contrary to PLG's assertion that the United States "did not squarely present the M&R's argument" and "provided no case law in support of this argument," the United States not only raised the argument addressed in Judge Jones's M&R but also cited Supreme Court precedent in support.

Even if the United States had failed to raise the argument in its opening brief, this would not constitute waiver of the argument. Pls' Obj., D.E. 447 at 3. Critically, "when interpreting a statute, courts must 'first and foremost strive to implement congressional intent by examining the plain language of the statute.'" *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (citation omitted). Thus, PLG's assertion that "[t]he Court should not accept an M&R that is predicated on arguments and case law that were not properly briefed" is misplaced. Pls.' Obj., D.E. 447 at 3. PLG's argument is based on *Herrera v. Finan*, 709 F. App'x 741, 746 (4th Cir. 2017), and *Grayson O Co.*, 856 F.3d at 316. Neither case is instructive. These two cases interpret Federal Rule of Appellate Procedure 28 and pertain to appellate practice. *See Herrera*, 709 F. App'x at 746; *Grayson O Co.*, 856 F.3d at 316. In the context of Federal Rule of Civil Procedure 72, which governs the instant dispute, "the reviewing district court is entitled to affirm on *any* ground appearing in the record, including theories not relied upon or rejected by the magistrate judge." *Hesed El v. Bryson*, No. 1:21-CV-00305-MR-WCM, 2024 WL 3240666, at *3 (W.D.N.C. June 27, 2024) (internal quotation omitted) (emphasis added).

**II.    Judge Jones Correctly Interpreted the CLJA's Use of the Phrase "the Water at Camp Lejeune" in Section 804(c) as Shorthand for the Phrase "Water at Camp Lejeune, North Carolina, that Was Supplied by, or on behalf of, the United States" in Section 804(b).**

Section 804(b) references both "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" and "the water at Camp Lejeune" *within the very same sentence* with the shorthand term appearing only after Congress used the longer, more detailed description. CLJA § 804(b); *see also* U.S. Reply, D.E. 420 at 3. Interpreting the CLJA's use of the phrase "water at Camp Lejeune" in sections 804(b) and (c) to have different meanings is illogical and contrary to the canon of statutory interpretation that identical words and phrases in the same statute typically have the same meaning.[2] *See Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) ("After all, 'identical words and phrases within the same statute should normally be given the same meaning.'").

Nevertheless, abandoning their earlier interpretation of the CLJA, PLG now argues that the CLJA's use of the phase "the water at Camp Lejeune" in section 804(c) is a "material variation" or materially different from the CLJA's use of the phrase "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States" in section 804(b). Pls.' Obj., D.E. 447 at 4. However, none of the cases that PLG cites support deviating from the canon of statutory interpretation that identical words and phrases in the same statute typically have the same meaning. *See*, *e.g.*, *United States v. Jones*, 60 F.4th 230, 235 (4th Cir. 2023) (distinguishing a statute's use of the terms "and" versus "or" as a material variation); *Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) (distinguishing a statute's use of the terms

---

[2] PLG fails to explain why Congress would have defined the universe of individuals who can bring a CLJA action in section 804(b) as those who were exposed to "water at Camp Lejeune that was supplied by, or on behalf of, the United States" but then allow those same litigants to sue about water at Camp Lejeune that was *not* supplied by, or on behalf of, the United States.

"employee" versus "applicant for employment" as a material variation); *United States v. Hernandez-Barajas*, 71 F.4th 1104 n. 2 (8th Cir. 2023) (distinguishing the Sentencing Guidelines' use of the terms "defendant" versus "a person for whose conduct the defendant is accountable" as a material variation).

PLG takes issue with the case law upon which Judge Jones relied for the well-established rule of law that "the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an'." Pls.' Obj., D.E. 447 at 4-6; M&R, D.E. 439 at 11. Specifically, PLG questions Judge Jones's reliance on *Palisades Collections LLC v. Shorts*, 552 F.3d 327 n.1 (4th Cir. 2008) and *ABS Glob., Inc. v. Cytonome/St, LLC*, 84 F.4th 1034, 1040 (Fed. Cir. 2023). PLG dismisses *Palisades* because the rule is cited in a footnote in the dissenting opinion, and PLG dismisses *ABS* as "a case about claim construction in patent cases." Pls.' Obj., D.E. 447 at 4–6. However, PLG's attempt to dismiss these cases disregards the fact that the rule upon which Judge Jones relied is well-settled under both Supreme Court and Fourth Circuit precedent. *See Nielsen*, 586 U.S. at 408 (explaining "that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context.") (citation modified); *United States v. Blankenship*, 846 F.3d 663, 678 (4th Cir. 2017) ("In construing a statute, the definite article 'the' particularizes the subject which it precedes and is a word of limitation.") (citation omitted); *Panduit Corp. v. Corning Inc.*, No. 5:18-cv-229-FL, 2021 WL 5412273 at *3 (E.D.N.C. Sept. 27, 2021) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it proceeds. It is a word of limitation as opposed to the indefinite or generalized force of 'a' or 'an.'") (Flanagan, J.) (citation omitted).

Moreover, PLG's speculation about other ways in which Congress could have drafted the CLJA is irrelevant. "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Dynatemp Int'l, Inc. v. R421A, LLC*, 560 F. Supp. 3d 969 (E.D.N.C. 2021) (Flanagan, J.) (quoting *Dodd v. United States*, 545 U.S. 353, 359 (2005)).

**III.  Judge Jones Correctly Determined that "Excluding Irrelevant VI Evidence from an Individual Plaintiff's Causation Analysis Now as Opposed to Later Will Save Time and Narrow the Issues for Trial."**

The CLJA's plain language only permits claims based on exposure to "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States." CLJA § 804(b). By definition, vapors or emissions emanating from groundwater through soil at Camp Lejeune do not originate from "water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States." Because the CLJA does not permit vapor intrusion claims, evidence regarding vapor intrusion and emissions at Camp Lejeune is irrelevant to an individual plaintiff's causation analysis for any purpose under the CLJA. *See Maine v. Becerra*, No. 23-1521, 2024 WL 3949261, at *3 (4th Cir. Aug. 27, 2024) (holding that evidence of claims other than those at issue is irrelevant). Indeed, PLG effectively concedes as much. Pls.' Obj., D.E. 447 at 6 ("Track One Plaintiffs do not intend to introduce evidence that they were exposed to vapor intrusion separate from the finished water in order to produce individual exposure causative of injury. . . .").

Nevertheless, PLG maintains that "information on vapor emissions or exposure may be relevant and useful for the Court in its capacity as the trier of fact." Pls.' Obj., D.E. 447 at 6–7. PLG also alleges that "there are multiple admissible uses of VI evidence," including to show that "the mechanism by which molecules of chemical contaminants such as PCE, TCE, and Benzene

may be released via finished water vapor is similar to the mechanism by which those chemical molecules can also be released via vapor intrusion into buildings" and to demonstrate "the overall science and study of these chemicals." *Id*. However, PLG fails to explain why or how these proposed uses make vapor intrusion evidence admissible or relevant for the purpose of an individual plaintiff's exposure for determining causation.

To the extent PLG seeks to introduce evidence regarding "the mechanism by which molecules of chemical contaminants such as PCE, TCE, and Benzene may be released" and "the overall science and study of these chemicals," Judge Jones's M&R already permits PLG to do so in the context of their presentation on the finished drinking water at Camp Lejeune that was supplied by, or on behalf of, the United States.[3] Allowing the presentation of irrelevant evidence on vapors and emissions migrating through groundwater and soil in chemical gas form at Camp Lejeune for an individual plaintiff's causation analysis would create undue delay and waste the Court's time. On the other hand, accepting the recommendations in Judge Jones's M&R would narrow the issues to be determined by this Court and promote judicial economy.

## CONCLUSION

For the foregoing reasons, the Court should overrule PLG's objections and accept the recommendations in Judge Jones's M&R.

---

[3] As the United States noted in its opening brief, the ordinary meaning of "water" refers to H2O's liquid state, whereas the ordinary meaning of "vapor" refers to the gaseous state of a chemical or compound in the air. U.S. Memo, D.E. 366 at 10 n.1. The United States is not challenging the presentation of evidence or testimony regarding exposure to water vapors from activities like showering or cooking involving finished, drinking water at Camp Lejeune that was supplied by, or on behalf of, the United States. However, contrary to PLG's assertion that "the parties agree that Vapor Intrusion is in fact 'water at Camp Lejeune,'" the United States disputes that gas vapors emanating from groundwater, through the soil into buildings or the environment, constitute water, much less water supplied by, or on behalf of, the United States. Pls.' Obj., D.E. 447 at 4.

Dated: August 11, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief
Camp Lejeune Unit

ADAM BAIN
Special Litigation Counsel

GIOVANNI ANTONUCCI
ALLISON M. O'LEARY
ALANNA R. HORAN
KAILEY SILVERSTEIN
Trial Attorneys

 /s/ Haroon Anwar
HAROON ANWAR
Acting Assistant Director
United States Department of Justice
Civil Division, Torts Branch
Camp Lejeune Unit
1100 L Street, NW
Washington, DC 20005
(202) 616-8364
Fax (202) 616-4473
haroon.anwar@usdoj.gov

*Attorneys for Defendant,*
*United States of America*

# CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, I electronically filed the foregoing using the Court's Case Management/Electronic Case Files system, which will send notice to all counsel of record.

*/s/ Haroon Anwar*
HAROON ANWAR
