IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-00897

| | | |
|---|---|---|
| IN RE: | ) | MEMORANDUM IN SUPPORT OF |
| | ) | UNITED STATES' MOTION FOR |
| **CAMP LEJEUNE WATER LITIGATION** | ) | PARTIAL SUMMARY JUDGMENT ON |
| | ) | CLAIMS ACCRUING AFTER AUGUST |
| **This Document Relates To:** | ) | 10, 2022 |
| *Allan Wayne Howard v. United States*, | ) | |
| 7:23-cv-00490 | | ("ACCRUAL MOTION") |

# TABLE OF CONTENTS

Table of Contents .................................................................................................................... 2
INTRODUCTION ...................................................................................................................... 1
STATEMENT OF FACTS .......................................................................................................... 1
PROCEDURAL HISTORY ........................................................................................................ 2
LEGAL STANDARD ................................................................................................................. 3
ARGUMENT ............................................................................................................................... 3
    I.    The Plain Language of the CLJA Bars All Claims that Accrued after August 10, 2022. ... 4
    II.    A CLJA Claim "Accrues" When There is Both a Known Injury and a Cause of Action. .. 5
    III.    Causally-Distinct Injuries Represent Distinct "Claims" for Purposes of Accrual. .......... 7
    IV.    Under a Separate Disease Rule, Plaintiff's NHL Claim Accrued After August 10, 2022 and is Barred. ....................................................................................................................... 10
CONCLUSION.......................................................................................................................... 11
CERTIFICATE OF SERVICE ................................................................................................... 13

# INTRODUCTION

The Court should grant summary judgment in favor of the United States on Plaintiff Allan Wayne Howard's Non-Hodgkin's Lymphoma claim because that claim accrued after August 10, 2022, and thus is not covered by the Camp Lejeune Justice Act. Congress included an "Applicability" provision in subsection (j)(1) of the Act, stating that the Act only applies "to a claim accruing before [August 10, 2022]." Plaintiff's Non-Hodgkin's Lymphoma claim accrued, at the earliest, in March or April of 2023, when he first complained of symptoms related to that disease. Additionally, Plaintiff does not allege, and no witness in this case will opine, that his Non-Hodgkin's Lymphoma stems from an earlier injury, including Plaintiff's prior kidney cancer. Thus, because Plaintiff's Non-Hodgkin's Lymphoma claim accrued, at the earliest, in March or April of 2023, he cannot bring an action for it under the Camp Lejeune Justice Act.

# STATEMENT OF FACTS

Plaintiff Allan Wayne Howard ("Plaintiff") was stationed at Camp Lejeune between September 1977 and February 1979. During that time, he resided at the Mainside Barracks at Hadnot Point. Nearly thirty years later, in 2008, Plaintiff was diagnosed with kidney cancer, which was treated by nephrectomy (removal of the kidney). Statement of Material Facts ("SOMF") at ¶ 1. After his nephrectomy, Plaintiff's physicians conducted regular imaging tests, which generally showed no evidence of swollen lymph nodes (i.e. "lymphadenopathy") or masses. *See id.* ¶ 2. Although one set of scans in 2016 showed enlarged lymph nodes, subsequent scans indicate the lymphadenopathy subsided. In particular, in August 2020, Plaintiff was hospitalized for an unrelated cycling injury; imaging performed as part of that hospitalization revealed no lymphadenopathy. *Id.* ¶ 3.

In March or April of 2023, Plaintiff began experiencing fatigue and first noticed enlarged lymph nodes. *Id.* ¶ 4. In June 2023, he sought urgent care for complaints of some fatigue, general body aches, and bilateral groin lymphadenopathy. *Id.* ¶ 5. In August 2023, Plaintiff's physicians biopsied a neck lymph node and preliminarily diagnosed Plaintiff with B-cell lymphoma, a type of non-Hodgkin's lymphoma ("NHL"). *Id.* ¶ 6.

Plaintiff's Phase 3 expert, Dr. Richard Hoppe, opined that "[t]he *only* known or potential cause of the NHL here was the exposure to the water at Camp Lejeune." *Id.* ¶ 8 (quoting Hoppe Rep. (Howard) at 11 (JA Ex. 389, D.E. 491-13) (emphasis added)); *see also* Hoppe Depo. Tr. at 192:10-13 (JA 590, D.E. 507-11) (affirming that "the only causal explanation [Dr. Hoppe] identif[ies] for Mr. Howard's NHL is the water at Camp Lejeune"). Dr. Hoppe did not offer opinions connecting Plaintiff's NHL to any earlier injury, including his earlier kidney cancer. Although Dr. Hoppe noted evidence of lymphadenopathy in 2016, he ultimately opined that this prior lymphadenopathy was "*not* related to lymphoma." SOMF ¶ 9 (quoting Hoppe Depo. Tr. at 187:3-6 (JA 590, D.E. 507-11) (emphasis added)). Moreover, there is no other contemporaneous testing showing that Plaintiff's 2016 lymphadenopathy was related to NHL. SOMF ¶ 10 (quoting Hoppe Depo. Tr. at 187:7-15 (JA 590, D.E. 507-11)).

**PROCEDURAL HISTORY**

On March 27, 2023, Plaintiff filed a complaint in this Court. D.E. 1.[1] His complaint alleged that he had "accrued multiple serious life-threatening illnesses on a date before the enactment of the Act," but did not identify what those illnesses were. *Id.* at ¶ 25. On May 21, 2024, Plaintiff amended his Short Form Complaint to include a claim for NHL. D.E. 14 at ¶ 19. Plaintiff alleged a "2023" date of onset for his NHL. *Id.* On July 9, 2024, Plaintiff was selected as a Track 1 Trial

---

[1] Unless otherwise indicated, docket entry references are to *Howard v. United States*, 7:23-cv-00490 (E.D.N.C.).

Plaintiff in the Kidney Cancer track. 7:23-cv-00897, D.E. 250 at 2. The Parties conducted expert discovery, which is now closed except as to damages and offsets.

## LEGAL STANDARD

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ARGUMENT

The Camp Lejeune Justice Act of 2022 ("CLJA") states in pertinent part that it "shall apply only to a claim accruing before [August 10, 2022]." Pub. L. No. 117–168, § 804(j), 136 Stat. 1759, 1802–04 (2022). Generally, a claim "accrues" at the first time the injury is known. Further, discrete injuries that are not causally related accrue at different times. Accordingly, to bring a claim for any discrete injury under the CLJA, that injury must have been known prior to August 10, 2022, at which point the claim for that injury accrued. Any injury occurring after that date, and that

cannot be causally related to an earlier, actionable injury, is barred by the plain language of the statute.

I. **The Plain Language of the CLJA Bars All Claims that Accrued after August 10, 2022.**

Determining when a claim "accrues" under the CLJA "requires the court to examine the ordinary meaning of the CLJA's statutory text, to interpret specific provisions of the CLJA within the broader statutory context, and to apply certain canons of construction, which are presumptions about how courts ordinarily read statutes." *See In re Camp Lejeune Water Litig.*, 715 F. Supp. 3d 761, 766 (E.D.N.C. 2024) (per curiam), *mot. to certify appeal den.*, No. 7:23-CV-897, 2024 WL 2198651 (E.D.N.C. May 13, 2024); *see also United States Dep't of Lab. v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004) ("When interpreting a statute, 'we start with the plain language.'") (citing *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)). Where the language of a statute is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie*, 540 U.S. at 534 (internal citation omitted). Courts give words their ordinary meaning and consider their context when interpreting statutes. *N.C. Growers Ass'n*, 377 F.3d at 350; *see also In re Camp Lejeune Water Litig.,* 736 F. Supp. 3d 311, 318 (E.D.N.C. 2024). "The [statutory construction] inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal, Co.*, 534 U.S. 438, 450 (2002) (internal quotation omitted); *In re Camp Lejeune Water Litig.,* 736 F. Supp. 3d at 318 (quoting In re Sunterra Corp., 261 F.3d 257, 265 (4th Cir. 2004)).

Here, the relevant statutory text is found in the CLJA's "Applicability" provision, which states: "This section shall apply only to a claim accruing before the date of enactment of this Act." CLJA, § 804(j)(1). By its terms, the CLJA does not extend to claims that came into existence after the statute was enacted on August 10, 2022. Indeed, the Court has already observed, on multiple occasions, that "the Camp Lejeune Justice Act applies to those damaged by exposure to the water

at Camp Lejeune before August 10, 2022 (i.e., the date when the Camp Lejeune Justice Act became law)." *Fancher v. United States*, 646 F. Supp. 3d 694, 698 (E.D.N.C. 2022) (Dever, J.); *see also Pugh v. United States*, No. 7:22-CV-124-BO-BM, 2023 WL 1081262, at *5 (E.D.N.C. Jan. 27, 2023) (Boyle, J.) ("The CLJA applies 'only to a claim accruing before the date of enactment of [the CLJA].'").

The CLJA's applicability provision is also consistent with the statute's larger framework. That cutoff reflects Congress's balance of providing a cause of action for individuals to seek recovery for injuries sustained by exposure to the water at Camp Lejeune between 1953 and 1987 without creating indefinite liability for future injuries that occur remote in time to the exposure. The CLJA is best understood as reviving already-accrued claims that, before the statute's enactment, had been defeated by a separate, state statute of repose or other limits on liability. *See, e.g.*, CLJA § 804(j)(2)-(3). Allowing endless litigation over any injury arising in the future would undermine the efficiency achieved by having all the cases filed in one district court, *see* § CLJA 804(d), and would hamper the possibility of global resolution if the government never has certainty about the full universe of claims, *cf.* CLJA § 804(h) (requiring claimants to administratively exhaust their claims). It is hard to understand the applicability provision as serving any purpose other than limiting future claims.

## II. A CLJA Claim "Accrues" When There is Both a Known Injury and a Cause of Action.

"Federal law determines when a claim accrues." *Gould v. U.S. Dep't of Health & Hum. Servs.*, 905 F.2d 738, 742 (4th Cir. 1990); *see also McDonough v. Smith*, 588 U.S. 109, 115 (2019) (the time at which a claim under a federal cause of action accrues "is a question of federal law"). Under federal law, a claim accrues only when a plaintiff has "a complete and present cause of action," meaning the plaintiff "can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388

(2007) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). A cause of action is complete and present when "all its elements exist." *Brunson v. Stein*, 116 F.4th 301, 306 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1169 (2025).

For tort claims in particular, federal courts "often decide[] accrual questions by referring to the common-law principles governing analogous torts." *McDonough*, 588 U.S. at 116. And the "standard rule" for tort claims is "a plaintiff's cause of action accrues . . . when the plaintiff knows or has reason to know of his injury." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014); *see also Fancher*, 646 F. Supp. 3d at 700 ("Generally, a claim 'accrues' when a person is injured."). For example, "the general rule under the [Federal Tort Claims] Act has been that a tort claim accrues at the time of the plaintiff's injury." *United States v. Kubrick*, 444 U.S. 111, 120 (1979). "[W]ithout injury, a cause of action does not exist and therefore cannot accrue." *Mayor of Baltimore v. Actelion Pharmas. Ltd.*, 995 F.3d 123, 129 (4th Cir. 2021) (addressing federal antitrust claims).

As applied here, the undisputed facts show that Plaintiff's NHL claim accrued after the relevant August 10, 2022 date under any measure. Plaintiff's NHL was not diagnosed until August 30, 2023, *see* SOMF ¶ 6, and he would not have known he had an NHL injury prior to that time. Even if accrual could be keyed to the first NHL-related *symptom*, rather than its diagnosis, Plaintiff's NHL claim would not have accrued until at least March or April 2023, when he first complained of fatigue and adenopathy related to his NHL diagnosis. *See* SOMF ¶ 4. Plaintiff would have had no reason to know that he was injured before that time, nor would he have had any reason to inquire into the nature of his injury. Without knowledge of such an injury, Plaintiff lacked a "complete and present cause of action," and his NHL claim could not have "accrued." *Wallace*, 549 U.S. at 388. In other contexts, the Supreme Court has similarly recognized that a

claim generally does not "accrue" unless and until there is an injury giving rise to that claim. For example, under the Administrative Procedure Act, a cause of action is not "complete and present," and therefore does not "accrue," until there is both a final agency action *and* an injury related to that action. *See Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 809 (2024). Where Congress specifically departed from this traditional rule, instead allowing a claim to accrue at a time other than the plaintiff's injury, it has said so expressly. *Id.* at 812 (discussing Emergency Price Control Act of 1942 and Administrative Orders Review Act (Hobbs Act)). Here, Congress gave no indication that a CLJA claim should accrue differently than other tort claims; thus, Plaintiff's NHL claim accrued when that injury was known.

### III. Causally-Distinct Injuries Represent Distinct "Claims" for Purposes of Accrual.

Plaintiff's NHL claim also did not accrue with his earlier kidney cancer injury. Applying "common-law principles governing analogous torts," *McDonough*, 588 U.S. at 116, federal courts have recognized a "separate disease rule," under which claims for different injuries accrue at different times. Addressing claims under the Federal Employees Liability Act, the Supreme Court observed that the "separate disease rule" provides that claims accrue "separately for each [exposure]-related disease." *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135, 152 (2003). For example, the rule allows a person exposed to asbestos to bring one claim for non-cancerous asbestosis when the asbestosis develops, and "a second action [for cancer] if cancer develops." *Id.* at 153. Under the separate disease rule, courts treat claims related to different diseases as "separate and distinct where their biological manifestations are different and where the presence of one is not necessarily a predicate for the other's development." *Braune v. Abbott Labs.*, 895 F. Supp. 530, 555-56 (E.D.N.Y. 1995) (Weinstein, J.) (applying New York's two-injury rule in toxic tort litigation involving diethylstilbestrol (DES)).

Following *Norfolk & Western Railway*, federal courts have applied the separate disease rule (or "two-disease rule") in other federal tort contexts. *See, e.g.*, *Badamo v. Chevron U.S.A. Inc.*, 602 F. Supp. 3d 646, 659 (S.D.N.Y. 2022) (applying separate disease rule to distinguish accrual of pulmonary disease and lung cancer in Jones Act action); *Goodrich v. John Crane, Inc.*, 4:17-cv-9, 2018 WL 2426273, at *4 (E.D. Va. Jan. 18, 2018) ("[A] seaman may bring suit for a nonmalignant asbestos-related disease without triggering the applicable statute of limitations for any subsequent malignant asbestos-related diseases that may develop."); *Hedden v. CBS Corp.*, No. 1:13-cv-01986-TWP-TAB, 2015 WL 5775570, at *9 (S.D. Ind. Sept. 30, 2015) ("[T]he proper rule to apply under federal maritime law is the two-disease rule."); *Nelson v. A.W. Chesteron Co.*, No. 2:10-cv-69365, 2011 WL 6016896, at *1 n. 1 (E.D. Pa. Oct. 27, 2011) ("After a careful review of all the growing trend among the States to apply the two-disease rule, as well as the state and federal court decisions that have applied the two-disease rule to federal causes of action in the asbestos context, and in light of the policies served by adopting the two-disease rule, the Court concludes that the two-disease rule is the better rule. Accordingly, the Court will adopt the two-disease rule as the applicable rule under maritime law.").

To the extent state law guides the interpretation of the CLJA, "[t]he [separate disease] rule has [also] been adopted by a majority of [state] jurisdictions." *Norfolk & Western Railway*, 538 U.S. at 174 (Kennedy, J., concurring); *see also Goodrich*, 2018 WL 2426273, at *2 (observing that the traditional "one-disease, or single-action rule, is nearly extinct"). The separate disease rule is also consistent with accrual of federal claims outside of the personal injury context. For example, for federal antitrust claims, courts have consistently recognized "that a new cause of action accrues to purchasers upon each overpriced sale of the drug." *Actelion Pharmas.*, 995 F.3d at 132 (collecting cases); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir.

1979) ("[E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act.").

The separate disease rule is also more consistent with the CLJA's text than treating all injuries as a single claim, because the CLJA contemplates multiple "claims" comprising a single "action." Specifically, the CLJA's applicability provision is followed by a statute of limitations applying to "[a] claim in an action." CLJA § 804(j)(2). By referring to "claim" and "action" separately and by describing a claim as being "in" an action, Congress indicated that it did not intend to limit each action to a single claim. And because an action may entail more than one claim, it follows that each claim must satisfy the CLJA's applicability provision, which applies to "a *claim* accruing before the date of enactment of this Act." CLJA § 804(j)(1) (emphasis added). Thus, here, Plaintiff has a single "action" (the instant lawsuit) which comprises two "claims" (one for kidney cancer, and a second for NHL).

Finally, to the extent the statute's text and structure are ambiguous, the sovereign immunity canon weighs in favor of applying a separate disease rule. The sovereign immunity canon is not merely a tool to resolve statutory ambiguity—it embodies a clear-statement rule that "define[s] that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). "A corollary to the sovereign immunity clear statement canon is that 'limitations upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" *In re Camp Lejeune Water Litig.*, 715 F. Supp. 3d at 766-67 (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

In light of Congress's apparent concerns about requiring the United States to face litigation over, and liability for, future injuries that were not known when the statute was enacted, the CLJA cannot be read to waive sovereign immunity as to such injuries. Expanding the universe of CLJA

claims to include unknown, future claims would extend the litigation and substantially complicate global settlement. *See generally,* Thomas E. Willging, Federal Judicial Center, *Mass Torts Problems & Proposals: Appendix C* (1999) at 18-19 (discussing problems in resolving latent diseases and future claimants in mass torts). This litigation already encompasses over 3,500 plaintiffs and over 400,000 administrative claimants; there is little reason to think that Congress intended those individuals to continue adding claims indefinitely.

### IV. Under a Separate Disease Rule, Plaintiff's NHL Claim Accrued After August 10, 2022 and is Barred.

Under the separate disease rule, Plaintiff's NHL claim accrued separately from his kidney cancer claim. There is no dispute that the "biological manifestations" of those diseases "are different" and that "the presence of one is not necessarily a predicate for the other's development." *Braune*, 895 F. Supp. at 555-56.

Plaintiff's evidence, including his own expert's opinions, only describe his NHL as a "second, distinct [Camp Lejeune]-related condition." *Hedden*, 2015 WL 5775570, at *9. His expert, Dr. Hoppe, opines that "[t]he only known or potential cause of the NHL here was the exposure to the water at Camp Lejeune." Hoppe Rep. (Howard) at 11 (JA Ex. 389, D.E. 491-13). Dr. Hoppe does not connect Plaintiff's NHL to his kidney cancer or an earlier injury, such that the two cancers may be treated as one and the same. Nor does any other expert. Plaintiff's two diseases are clearly distinguishable. They are similar to a Jones Act plaintiff's claim for asbestosis, and that plaintiff's second, later-accruing claim for mesothelioma. *Cf. Hedden*, 2015 WL 5775570 at *10. Each disease, where they are separate and distinct, accrues when they are known. And because Plaintiff's NHL was not known until *after* August 10, 2022, his claim for NHL is outside the CLJA's applicability.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court grant the United States' Motion for Summary Judgment on Plaintiff's NHL claim.

*[Signature page to follow.]*

Dated: September 10, 2025					Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief
Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors
Camp Lejeune Justice Act Section

ADAM BAIN
Special Litigation Counsel

GIOVANNI ANTONUCCI
Trial Attorney
Camp Lejeune Justice Act Section

<u>/s/ Nathan J. Bu</u>
NATHAN J. BU
NY Bar. 5702766
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
1100 L Street NW
Washington, DC 20005
(202) 705-5938
Nathan.j.bu@usdoj.gov

Attorney inquiries to DOJ regarding the
Camp Lejeune Justice Act:
(202) 353-4426

*Attorneys for Defendant,*
*United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025 I electronically filed the foregoing using the Court's Case Management/Electronic Case Files system, which will send notice to all counsel of record.

 /s/ Nathan J. Bu
Nathan J. Bu