IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:23-CV-897

| | |
|---|---|
| IN RE: | MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO SEAL AND MAINTAIN CONFIDENTIALITY DESIGNATION OF EXHIBIT D TO PLAINTIFFS' MOTION TO EXCLUDE DEFENSE EXPERT DR. JULIE GOODMAN |
| CAMP LEJEUNE WATER LITIGATION | |
| This Document Relates To: | |
| ALL CASES | |

# TABLE OF CONTENTS

Pages

Table of Contents ................................................................................................................... i

Introduction ........................................................................................................................... 1

Background ........................................................................................................................... 3

    I.   The Parties Negotiated and Agreed to the Terms of CMO 15............................................ 3

    II.  Plaintiffs Did Not Challenge the Confidential Status of Dr. Goodman's Individual Invoices Within a Reasonable Time. ................................................................................. 4

    III. The United States Is Not Seeking To Shield Information From The Public Regarding The Total Amount Paid to Gradient Or The Work That Gradient's Employees Performed on the Project. ...................................................................... 5

Legal Standard ...................................................................................................................... 5

Argument .............................................................................................................................. 7

    I.   The Gradient Invoices were Produced in Reliance on the Agreed Terms of CMO 15. ..................................................................................................................... 7

    II.  The Gradient Invoices are Proprietary Business Records that do not Warrant Public Access. .................................................................................................................. 9

    III. There is no Adequate Alternative to Sealing the Gradient Invoices. ............................... 10

Conclusion .......................................................................................................................... 11

Certificate of Service .......................................................................................................... 13

## INTRODUCTION

Nearly two years ago, on October 30, 2023, the Court entered the Parties' Stipulated Protective Order, which recognized the wealth of "sensitive, non-classified confidential information" that would be exchanged during this litigation. *See* Stip. Protective Order ("CMO 6"), D.E. 36, at 1; 2d Am. Stip. Protective Order ("CMO 15"), D.E. 266, at 1.[1] CMO 15 sets forth the Parties' agreed-upon "terms and conditions" governing the disclosure and use of such information, including a "Method for Designating Confidential Information." *See* CMO 15 §§ 1, 3, D.E. 266. Under CMO 15, if either Party disagrees with a confidential designation, challenges "must be made within a reasonable time after production of such information." *Id.* § 4(a). CMO 15 assures that "Confidential Information" would maintain its protected status "[e]ven after the final disposition of this Action . . . unless and until [the] Designating Party agrees otherwise in writing or a court order directs." *Id.* § 8(d).

In accordance with CMO 15, the United States produced as "Confidential" approximately 400 pages of invoices submitted by Gradient, the employer of two of the United States' experts in this case, including Dr. Julie Goodman (the "Gradient Invoices"). Plaintiffs now seek to publicly file the Gradient Invoices as Exhibit D (D.E. 622-5) to their Motion to Exclude Dr. Goodman as an expert in this case (D.E. 621), claiming that documents should not be "shielded from public view when filed with the court." **Exhibit 1**, Sept. 10, 2025 Email from Mike Dowling. As discussed below, the United States respectfully moves this Court to seal and maintain the confidentiality status of the Gradient Invoices.[2] Plaintiffs do not consent to this motion.

---

[1] Case Management Order ("CMO") No. 6 has been amended twice since the Court entered it in October 2023. The Second Amended Stipulated Protective Order ("CMO 15") issued on August 1, 2024 is the current operative protective order.

[2] On September 10, 2025, Plaintiffs filed a Motion to Seal their memorandum and exhibits supporting a motion to exclude United States' expert Dr. Harold J. Bursztajn. *See* D.E. 614. Exhibit

***First***, the United States produced the Gradient Invoices in reliance upon the terms of CMO 15 which, among other things, assured that confidential documents would retain their status "[e]ven after the final disposition of this Action . . . unless and until [the] Designating Party agrees otherwise in writing or a court order directs." CMO 15 § 8(d), D.E. 266. Plaintiffs had a full opportunity to challenge the confidential designation, but declined to do so "within a reasonable time." *Id.* § 4(a). Allowing public access to documents simply by filing them on the Court's docket would essentially give Plaintiffs free rein to "weaponize the public right of access to undermine a protective order to which it agreed." *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, No. MDL No. 2775, 2024 WL 1050925, at *3 (D. Md. Mar. 11, 2024).

***Second***, assuming, *arguendo*, that the Gradient Invoices are "judicial records" subject to a presumed public right of access, they are proprietary business documents that do not warrant access to the public under either the common law or the First Amendment. As discussed in greater detail below, the Gradient Invoices contain "confidential, proprietary, commercial, or financial data," *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004), "which is of utmost importance to [Gradient] but not generally available to the public or bearing importance to any public matters," *Lord Corp. v. S&B Tech. Prods.*, No. 5:09-CV-205-D, 2012 WL 4056755, at *1 (E.D.N.C. Sep. 14, 2012) (Gates, J.). Thus, any presumed right of public access is outweighed by the interest in protecting confidential, proprietary business information.

---

A to that motion is Dr. Bursztajn's invoices, which Plaintiffs claim does not "merit[] sealing on its own, but regardless seek to file the entire Memorandum and its attachments, including Exhibit A, under seal given the sensitive personal medical information in the Memorandum and other exhibits." *Id.* at 1-2. To the extent the Court interprets Plaintiffs' statement as a challenge to the provisional sealing of Exhibit A, the United States respectfully requests that the Court apply its arguments in the instant motion regarding Dr. Goodman's invoices to Dr. Bursztajn's invoices, as well.

***Finally***, while narrow redactions of Plaintiffs' references to the Gradient Invoices in the brief supporting their motion would be an adequate alternative to wholesale sealing of the brief, there is no such alternative to sealing the Gradient Invoices filed separately as Exhibit D (D.E. 622-5). As discussed more fully below, the confidential and proprietary information contained in the Gradient Invoices, including bank and vendor account information, employee billing rates, and information regarding Gradient's business practices of delegating tasks to its employees, appears on nearly every page of the 409-page Exhibit D, such that redacting it would essentially render the Gradient Invoices unusable. *See Abbella Grp. Healthtech, LLC v. Qualivis*, LLC, No. 1:24-cv-00331-JMC, 2025 WL 1756800, at *1 (D. Md. June 25, 2025) ("Redacting portions of the exhibits will not be sufficient because 'sensitive information pervades in these documents' and there is thus no less restrictive alternative to sealing." (quoting *Maxtena, Inc. v. Marks*, No. DKC 11-0945, 2013 WL 12328065, at *3 (D. Md. Mar. 29, 2013)).

Accordingly, pursuant to CMO 15 and Local Civil Rule 79.2, the United States respectfully requests that this Court seal and maintain the Parties' agreed confidentiality designation on the Gradient Invoices.

## BACKGROUND

### I. The Parties Negotiated and Agreed to the Terms of CMO 15.

Well before expert discovery began in this litigation, the Parties negotiated and agreed to the terms of a comprehensive protective order governing the disclosure and use of documents that "contain sensitive, non-classified confidential information." CMO 6, D.E. 36, at 1; CMO 15, D.E. 266, at 1. Such "Confidential Information" includes, *inter alia*, information that "[i]s not in the public domain" and "is a trade secret or other confidential research, development, or commercial information as such terms are used in Federal Rule of Civil Procedure 26(c)(1)(G)." CMO 15 § 1(b), D.E. 266. CMO 15 applies "whether the Documents are produced by a Party or . . . a 'non-

3

party.'" *Id.* § 2(a). All challenges to confidentiality designations "must be made within a reasonable time after production," and must provide "written notice of each [challenged] designation," as well as "the basis of each challenge." *Id.* § 4(a). "Confidential Information" does not lose its protected status simply because a party files it with the Court. *See id.* § 6. Rather, the confidentiality designation persists, "[e]ven after the final disposition of this Action . . . unless and until [the] Designating Party agrees otherwise in writing or a court order directs." *Id.* § 8(d).

## II. Plaintiffs Did Not Challenge the Confidential Status of Dr. Goodman's Individual Invoices Within a Reasonable Time.

The United States produced the Gradient Invoices from Dr. Goodman to Plaintiffs on April 23, 2025. Plaintiffs did not challenge, or even question, the United States' confidentiality designation until September 9, 2025, when they requested "the government's asserted basis for designating expert invoices confidential." Ex. 1 at 3. Upon receipt of the United States' explanation, *id.* at 2, which pointed to Section 1(b)(i)(1) of CMO 15, Plaintiffs assumed a new position, stating that "whether the documents are confidential pursuant to the protective order and whether they should be shielded from public view when filed with the court are two separate issues." *Id.* at 1. Plaintiffs' current position is that, "under the common law right of access and the First Amendment guarantee to judicial records," "non-privileged judicial records and information about how much the DOJ has paid its testifying experts is [not] something that can legally be shielded from public access." *Id.* However, as demonstrated below, the United States is not seeking to shield from the public the amounts it has paid to Gradient for its services, but rather seeks to protect the confidential commercial information of Gradient, such as bank and vendor account information, employee billing rates, and hours worked and billed by specific employees.

4

### III. The United States Is Not Seeking To Shield Information From The Public Regarding The Total Amount Paid to Gradient Or The Work That Gradient's Employees Performed on the Project.

On April 29, 2025, Plaintiffs deposed Dr. Goodman, and the transcript of her testimony is publicly available as part of the Parties' Joint Appendix. *See* Goodman Dep. Tr. (JA Ex. 172, D.E. 471-1). The Gradient Invoices were introduced as a "Confidential" exhibit to the deposition. *See id.* at 7:1-2 (indicating "EXHIBIT 6," "Gradient Invoices"). Plaintiffs' counsel questioned Dr. Goodman extensively about the total amount Gradient billed the United States through March 9, 2025, as well as the number of Gradient employees working on the project, the number of hours billed by various employees, and various tasks delegated to those employees. *See, e.g., id.* at 115:2-15; 155:11-159:1; 405:7-11. The United States does not seek the sealing or redacting of this already-public information.

However, the United States does seek to seal or redact information on two pages of Plaintiffs' 40-page brief supporting their motion to exclude Dr. Goodman, referring to several specific line items from the Gradient Invoices, including billing rates, hours billed for individual line items, and total hours billed by specific Gradient employees. *See* Pls.' Mem. at 18-19, D.E. 622. The information on those two pages was not specifically discussed at Dr. Goodman's deposition. In their Requested Relief section, Plaintiffs also name two Gradient employees as witnesses that Plaintiffs alternatively seek to depose if the Court declines to exclude the challenged expert testimony. *Id.* at 39-40. The United States seeks to redact this information in Plaintiffs' brief (D.E. 622) and seal the Gradient Invoices attached as Exhibit D to their motion (D.E. 622-5).

### LEGAL STANDARD

Although there is a presumed right of the public to access judicial records and documents, where litigants have "gained the information they wish to disseminate only by virtue of the trial court's discovery processes," there is "no First Amendment right of access to information made

available only for purposes of trying [their] suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) (citing *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965)). Rather, "'the First Amendment guarantee of access has been extended only to particular judicial records and documents[,]' such as those filed in connection with a motion for summary judgment." *inVentiv Health Consulting, Inc. v. French*, No. 5:18-CV-295-D, 2020 WL 728148, at *9 (E.D.N.C. Feb. 12, 2020) (Jones, J.) (quoting *Stone v. Univ. of Md.*, 855 F.2d 178, 180 (4th Cir. 1988)).[3]

"The presumption of access under the common law is not absolute, and its scope is a matter left to the discretion of the district court." *French*, 2020 WL 728148, at *10 (citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)). "'[T]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *In re Novo Nordisk A/S*, No. 7:25-MC-1-M-BM, 2025 WL 1448204, at *9 (E.D.N.C. May 20, 2025) (Meyers, J.) (quoting *Wash. Post*, 386 F.3d at 575).

"In the Fourth Circuit, a trial court may exercise its discretion to seal documents where competing interests outweigh the public's right of access." *United States v. Blancher*, No. 5:03-cr-00007-MOC, 2024 WL 3504568, at *1 (W.D.N.C. July 22, 2024) (citing *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had

---

[3] "The Fourth Circuit has determined that the more rigorous First Amendment standard should apply to documents filed in connection with a summary judgment motion in a civil case '[b]ecause summary judgment adjudicates substantive rights and serves as a substitute for a trial,' which is generally open to the public." *Nallapati v. Justh Holdings, LLC*, 637 F. Supp. 3d 357, 362 (E.D.N.C. 2022) (Jones, J.) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252-53 (4th Cir. 1988)).

6

access to the information contained in the records.'" *French*, 2020 WL 728148, at *10 (quoting *Wash. Post*, 386 F.3d at 575).

## ARGUMENT

Pursuant to CMO 15 and Local Civil Rule 79.2, the United States submits the following justification for its request to seal and maintain the confidential designation of the Gradient Invoices (D.E. 622-5).

### I. The Gradient Invoices were Produced in Reliance on the Agreed Terms of CMO 15.

"This court has previously sealed documents, which were the subject of confidentiality agreements" and "protective order[s]." *In re Novo Nordisk A/S*, 2025 WL 1448204, at *9. "Although not dispositive, this factor does speak to the purported nature of the documents, which contain sensitive business information not available to the general public." *French*, 2020 WL 728148, at *10. "Although the presumption is in favor of public access to documents, courts in this circuit have repeatedly recognized that it is inappropriate for a party to weaponize the public right of access to undermine a protective order to which it agreed." *In re Smith & Nephew*, 2024 WL 1050925, at *3 (citing cases).

As one court recently explained, "[i]n complex cases . . . , a protective order is often 'essential to the efficient functioning of the discovery process,'" *Id.* (quoting *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 333 (M.D.N.C. 1999)), "and the confidentiality it affords benefits all parties by facilitating 'a more open discovery' from a party producing sensitive materials," *id.* (quoting *Pittston*, 368 F.3d at 406). Accordingly, "after reaping the benefits of expansive discovery thanks to the Protective Order . . . ," a party "may not repudiate that agreement by contending that the confidentiality it affords should be overcome by the public's interest in access." *Id.* at *4 (citing *Myles v. Rent-A-Center, Inc.*, No. 15-cv-300-JKB, 2016 WL 3077399, at *3 (D. Md. June 1, 2016) (collecting cases)).

7

The Gradient Invoices "consist of materials considered confidential by the filing parties, subject to a protective order of the court." *French*, 2020 WL 728148, at *10. The Parties negotiated and agreed upon the terms of a comprehensive protective order to protect documents like the Gradient Invoices, and the United States relied on the agreed terms of that order, including the assurance that "Confidential Information" would maintain its protected status "[e]ven after the final disposition of this Action . . . unless and until [the] Designating Party agrees otherwise in writing or a court order directs." CMO 15 § 8(d), D.E. 266.

Plaintiffs did not challenge the confidentiality designation of the Gradient Invoices "within a reasonable time after production," *id.* § 4(a), nor do they appear to do so now, *see* Ex. 1 (stating that "whether the documents are confidential pursuant to the protective order and whether they should be shielded from public view when filed with the court are two separate issues"). Their only justification for now seeking public access to Gradient's confidential business information appears to be that, because the Gradient Invoices were "filed with the court," the public has a right to access the information. *Id*. Plaintiffs should not be permitted to "weaponize the public right of access to undermine [the] protective order to which it agreed." *In re Smith & Nephew*, 2024 WL 1050925, at *3; *see id.* at *4 (placing the burden on the party seeking to unseal documents to "show[] a change in circumstances sufficient to warrant a reconsideration of the seal," but holding that, by merely "pointing only to the public's ever-present right of access, the Plaintiffs have failed to meet that burden"). As the Supreme Court has observed, even the First Amendment does not give litigants "an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Rhinehart*, 467 U.S. at 31; *see also In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296 (unpublished table decision), Nos. 94-2254 & 94-2341, 1995 WL 541623, at *4 (4th Cir. 1995) ("Neither the Supreme Court nor this Court has ever held that the mere filing of a document

8

Case 7:23-cv-00897-RJ    Document 637    Filed 09/22/25    Page 10 of 15

triggers the First Amendment guarantee of access."). Accordingly, this factor weighs in favor of sealing the Gradient Invoices and maintaining their confidentiality designation.

## II. The Gradient Invoices are Proprietary Business Records that do not Warrant Public Access.

"The need to keep proprietary business information confidential has frequently been found sufficient to outweigh the public's interest in access to judicial documents." *360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. 5:14-CV-00310-F, 2016 WL 3030166, at *7 (E.D.N.C. May 25, 2016) (citing *Morris v. Cumberland Cty. Hosp. Sys., Inc.*, No. 5:12-CV-629-F, 2013 WL 6116861, at *3 (E.D.N.C. Nov. 13, 2013)). "Further, individuals' privacy interests in their own personal financial information have been found sufficiently compelling to overcome the First Amendment presumption of access." *Id.* (citing *Wolfe v. Green*, No. Civ. A. 2:08-01023, 2010 WL 5175165, at *3 (S.D. W. Va. Dec. 15, 2010)).[4]

The Gradient Invoices "contain sensitive business information not available to the general public," *French*, 2020 WL 728148, at *10, including the names of Gradient employees, their

---

[4] The United States does not concede that the Gradient Invoices are "judicial documents" subject to the public's right to access. "For a document to be subject to the public's right of access pursuant to either the common law or the First Amendment, it must be a 'judicial record.'" *In re Smith & Nephew*, 2024 WL 1050925, at *5 (quoting *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)). As this Court has observed, "the mere filing of a document with a court does not render the document judicial." *Alston v. OM of Raleigh, Inc.*, No. 5:22-CV-00257-D, 2023 WL 5498044, at *2 (E.D.N.C. Aug. 24, 2023) (Numbers, J.) (citation omitted).

"Judicial records are documents filed with the court that 'play a role in the adjudicative process, or adjudicate substantive rights.'" *In re Smith & Nephew*, 2024 WL 1050925, at *5; *see also In re Application*, 707 F.3d at 291 ("The item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). It is unlikely that the granular information contained in the Gradient Invoices will play any "role in the adjudicative process," prove at all "useful in the judicial process," *id.*, or "enhance the public's understanding" of the issues raised in Plaintiffs' Motion to Exclude Dr. Goodman, *French*, 2020 WL 728148, at *10.

position titles, billing rates, and tasks completed during their employment. They also contain Gradient's financial information (e.g., project account numbers, tax identification numbers, bank routing and account numbers), vendor information (including names, bank routing and account numbers, and amounts paid), and proprietary business information, such as Gradient's billing rates for various employee levels and how Gradient delegates tasks among its employees. As stated above, Plaintiffs' argument regarding the Gradient Invoices centers around the total amount paid by the United States and the number of employees who performed tasks under Dr. Goodman's guidance. The granular information included in the Gradient Invoices is neither necessary nor especially informative to the public's understanding of the issues in this matter, but is "of utmost importance to [Gradient] [and] not generally available to the public or bearing importance to any public matters." *Lord Corp.*, 2012 WL 4056755, at *1. Thus, any presumed right of public access is outweighed by the interest in keeping business records confidential, as the Parties previously agreed.

### III. There is no Adequate Alternative to Sealing the Gradient Invoices.

Prior to filing their Motion to Exclude Dr. Goodman, Plaintiffs did not confer with the United States "to determine whether materials may be filed with appropriate redactions so as to avoid wholesale sealing where possible," as required by CMO 15. *See* CMO 15 § 6(a), D.E. 266. Had they done so, the United States would have agreed to narrow redactions of their brief specifically referencing the confidential information contained in the Gradient Invoices that has not been made publicly available. Regarding the Gradient Invoices themselves, however, "[r]edacting portions of the exhibits will not be sufficient because 'sensitive information pervades in these documents' and there is thus no less restrictive alternative to sealing." *Abbella Grp. Healthtech*, 2025 WL 1756800, at *1 (citation omitted). As discussed above, nearly every page of the Gradient Invoices includes confidential business information regarding Gradient's employees,

vendors, bank accounts, organizational structure, and business practices. Thus, the United States respectfully submits that sealing the Gradient Invoices is the most appropriate and efficient method for protecting Gradient's confidential business information. *See Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 WL 901958, at *2 (E.D.N.C. Mar. 15, 2011) (Gates, J.) (finding sealing appropriate where "the documents (or portions of documents) in question contain information protected as trade secrets and other confidential business information not generally available to the public" and "the parties have redacted their filings in an attempt to keep only limited categories of documents from public viewing").

## CONCLUSION

For the reasons discussed above, the Court should seal and maintain the confidentiality designation of the Gradient Invoices. These documents "contain sensitive business information not available to the general public, including the identities" of Gradient's employees and vendors, as well as a wealth of confidential information protected under the Parties' agreed CMO 15. *French*, 2020 WL 728148, at *10. "[A]fter reaping the benefits of expansive discovery thanks to [CMO 15] . . . ," Plaintiffs should not be permitted to "repudiate that agreement by contending that the confidentiality it affords should be overcome by the public's interest in access." *In re Smith & Nephew*, 2024 WL 1050925, at *4. Accordingly, the United States respectfully requests that the Court seal the Gradient Invoices attached to Plaintiffs' motion as Exhibit D (D.E. 622-5), permit narrow redactions of Plaintiffs' brief discussing information contained in the Gradient Invoices that has not previously been made public (D.E. 622), and maintain the Confidentiality designation of the Gradient Invoices as agreed by the Parties under CMO 15.

Dated: September 22, 2025          Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General,
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General,
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

ADAM BAIN
Special Litigation Counsel

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors

JENNIFER E. ADAMS
ELIZABETH K. PLATT
Trial Attorneys

<u>*/s/ Jennifer E. Adams*</u>
JENNIFER E. ADAMS
Virginia Bar No. 80149
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Camp Lejeune Justice Act Section
1100 L Street, NW
Washington, DC 20005
(202) 702-4998
jennifer.e.adams@usdoj.gov

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

*Counsel for Defendant,*
*United States of America*

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I electronically filed the foregoing using the Court's Electronic Case Filing system, which will send notice to all counsel of record.

*/s/ Jennifer E. Adams*
JENNIFER E. ADAMS

13