IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | **JOINT STATUS REPORT** |
| | ) | |
| This Document Relates To: | ) | |
| ALL CASES | ) | |
| | ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to October 14, 2025, 3,672 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. 144 cases have been dismissed; 130 of those were voluntary dismissals and the 14 others were pro se cases. The cases are divided as follows: Judge Dever – 921 cases; Judge Myers – 909 cases; Judge Boyle – 907 cases; and Judge Flanagan – 935 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

Of 409,892 de-duplicated claims, approximately 172,241 claims contain at least one supporting document. Approximately 64,847 of those claims allege an injury type that may be considered for settlement under the Elective Option (EO) framework. The time between filing a

1

Case 7:23-cv-00897-RJ    Document 648    Filed 10/14/25    Page 1 of 22

claim and settlement is entirely dependent upon timely receipt of relevant supporting documents. Per the statutory burden of proof, law firms and claimants must provide evidence of a medical diagnosis and presence at Camp Lejeune before a settlement determination can be made. Filers are encouraged to submit substantiating documentation expeditiously so that the Camp Lejeune Claims Unit can confirm substantiation of those alleged EO injuries and the DOJ can approve settlement offers to as many claimants who qualify for the EO as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

Expert Depositions and Motions

All expert witnesses for Phase I (Water Contamination) have been both disclosed and deposed by the Parties, and all deadlines with respect to Phase I motions have expired. The Parties have completed the depositions of all expert witnesses for Phase II (General Causation). All expert

witness depositions for Phase III (Specific Causation and Residual Experts), except those witnesses who fall within the separate track for expert discovery related to damages and offsets, have been completed.

On September 10, 2025, the Parties filed all motions related to Phases II and III, with exception of motions related to damages and offsets. [D.E. 630] The PLG filed a total of nine (9) motions to exclude the government's experts under Fed. R. Evid. 702. The government filed thirty-one (31) motions related to Phases II and III. The deadline to respond to the said Phase II and Phase III motions is November 10, 2025.

Discovery Pertaining to Damages and Offsets

On September 17, 2025, the Court entered an Order amending the deadlines for expert disclosures, depositions and motions related to damages, offset, and other economic experts. [D.E. 630] Consistent with this Order, the United States presented its last witness in support of the data and explanation in support of its alleged offsets on September 18, 2025. Pursuant to the Court's Order, the PLG will designate Phase III economic residual experts on October 29, 2025, the government will designate economic residual experts on December 15, 2025, the PLG will designate rebuttal experts on January 19, 2026, and expert discovery on these experts will close on March 5, 2026. [D.E. 630 at 2] Following expert disclosures, the parties will meet and confer regarding a briefing schedule, if any is necessary. [*Id.*]

Since the last status conference, the parties have continued to try to resolve an issue regarding PLG's request that the government produce available information pertaining to plaintiff payments (including premiums, co-pays, deductibles, co-insurance or other health insurance payments, or other expenses not covered that were billed to the client). Another meet and confer was held on September 30, 2025 and the DOJ subsequently indicated it made further inquiries with

the respective federal agencies. However, the ability of those federal agencies to respond has been affected by the current government shutdown. The parties are therefore unable at this time to ascertain whether resolution can be reached but will continue to work toward that goal.

Preparation for Hearings and Trials on Track 1

Below, the PLG makes certain proposals about hearings and trials on Track 1 litigation. The PLG believes that these proposals will maximize the efficient adjudication of Track 1.

Depositions and briefing on Phase I (Water Contamination) of the Track 1 bellwether cases is complete and all Phase I motions are ripe for determination. [D.E. 414]. Phase I involves issues of critical importance to the Track 1 cases and to the CLJA litigation as a whole. Rulings on the pending Phase I motions are needed to inform the parties, the Court, and counsel as to timing and process for the Track 1 trials and for the structure of Tracks 2 and 3.

In a prior Joint Status Report, the Parties discussed the possibility of an evidentiary hearing on Phase I. [D.E. 277 at 4]. Since that time, the Parties have conducted substantial litigation concerning all water contamination issues. For instance, on August 24, 2025, the Parties filed a Phase I Joint Appendix that included the expert reports and depositions of all Phase I expert witnesses. Moreover, as set forth in Section (6) of this Joint Status Report, the Parties filed eight Phase I motions, and briefing on Phase I has now closed. Also, the Court heard oral arguments about water contamination issues on March 25, 2025.

As a result of these efforts, the PLG believes that all water contamination issues relevant to Phase I have been thoroughly litigated and distilled to the eight Phase I motions. Given the thorough motions practice and other submissions to the Court, the PLG respectfully suggests that Phase I motions can and should be decided without further hearing. The PLG further notes that Phase I issues are generally common to all Camp Lejeune litigants, including subsequent Tracks.

Consequently, prompt resolution of Phase I issues will promote further efforts toward resolution in addition to judicial economy and efficiency.

Track 1 Phase II and Phase III motions (other than motions related to damages and offsets) have been filed and briefing is underway. Such motions are scheduled to be ready for determination by December 12, 2025, when all reply briefs are due. [D.E. 414)]. Under the current scheduling order [D.E. 414 as amended by D.E. 630], the only portion of the Track 1 cases that will not be finalized by the end of this year is the economic residual expert phase of discovery, which is scheduled for expert close by March 5, 2026. [D.E. 630]. Since the economic residual phase need not be completed before Phase I, II and III motions are decided, the Track 1 bellwether cases are positioned to be ready for trial in the late Spring or early Summer of 2026.

The Court previously assigned each Track 1 disease type to a specific judge as follows: (1) Chief Judge Myers – bladder cancer; (2) Judge Boyle – kidney cancer; (3) Judge Dever – leukemia and non-Hodgkin's lymphoma; and (4) Judge Flanagan – Parkinson's disease. The PLG respectfully proposes that Phase II (General Causation) and Phase III (Specific Causation and Residual) motions would be most efficiently decided by the judge assigned to the disease type at issue in each respective motion. Where a judge believes that a hearing, including an evidentiary hearing, is appropriate on any Phase II or III motion, the judge could exercise his or her discretion to notice such a hearing or to reserve further determination on such motion until trial. After completion of this process, the PLG respectfully proposes that the Court set trials for the Track 1 Trial Plaintiffs.

As noted in the PLG's Response to the United States' Motion to Stay (DE 642), the need for timely resolution of CLJA claims is critical. The health conditions of the plaintiffs only continue to worsen and hundreds of thousands of claimants are waiting, while their health

continues to decline, for claims to be resolved under the CLJA. The determination of the motions that are pending before the Court is a critical aspect of parties' ability to move forward toward trial or other resolution.

Disclosure of Phase III Expert Dr. Howard Hu

The PLG disagrees with the DOJ's below characterization of Dr. Hu's Rule 26(e) letter as a supplemental report, particularly since it offers no new opinions and was sent in response to a request from the DOJ. The Parties are scheduled to meet and confer on the issue and the PLG is hopeful a resolution can be reached.

**United States' Position:**

The United States has completed substantially all of its general discovery responses. The United States will continue to produce on a rolling basis any Track 1 Trial Plaintiff-related documents that are received from third parties or supplemented by government agencies.

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Recent Developments in Track 1 Trial Plaintiffs' Cases

PLG previously agreed to provide quarterly updates via spreadsheet to the Discovery Plaintiff Pool Forms. PLG also agreed to produce medical records as soon as they received them. PLG's most-recent spreadsheet was produced on October 10, 2025. The United States is reviewing the spreadsheet and will work with PLG on any issues that may arise. PLG has indicated it would be producing medical records for certain Track 1 Trial Plaintiffs included on the spreadsheet, and

the United States is tracking the production of said documents.

Expert Depositions

All expert depositions have been completed, with the exception of depositions related to economic damages issues.

United States' Supplemental Offset Data Discovery

On June 25, 2025, the Court entered an Order modifying previous scheduling orders to, in part, allow the Parties to engage in limited fact discovery related to the Parties' offset information and corresponding damages information. [D.E. 414]. Over the past three months, the United States has produced underlying offset information from the VA (including VHA and IVC), TriWest, TRICARE, and the Centers for Medicare & Medicaid Services (CMS). This information is in addition to the previously provided offset information and data produced by the United States in conjunction with its Phase III expert disclosures in April and May 2025. Furthermore, the Parties have taken all depositions of fact witnesses related to the United States' offset data. Given deposition scheduling constraints, including witness and counsel availability, these depositions concluded on September 18, 2025—the date the Court recently ordered fact discovery limited to the Parties' offset information and potentially corresponding damages information was to be completed, *see* D.E. 630.

On September 30, 2025, the Parties met and conferred on PLG's request for Plaintiff payment information, including policy premiums, co-pays, deductibles, coinsurance payments, payments from HSAs/FSAs or similar accounts, HRAs, or any expenses not covered that were billed to Plaintiffs. The United States maintains its position that this information is outside the scope and purpose of the additional damages discovery, and that PLG failed to respond to the United States' objections to producing additional information when PLG requested it on July 3,

7

2025. To avoid unnecessary discovery disputes, however, the United States has agreed to work with its agencies to determine if they have custody or control of this information, and if so, how burdensome it would be to collect it. The United States reserves the right to continue its objections to collecting or producing such information depending on the results of these inquiries, or to seek alternative relief such as cost-shifting to PLG. The United States is taking steps to continue this effort despite the government shutdown caused by the lapse in appropriations and has agreed to provide PLG with updates on a rolling basis.

There are no other remaining issues arising out of the limited fact discovery period ordered by the Court on June 25, 2025.

Damages Expert Discovery Disclosures

Under the Court's September 17, 2025 Order requiring the Parties to complete fact discovery related to the Parties' offset information by September 18, 2025, [D.E. 630], PLG is currently scheduled to disclose their expert damages reports by October 29, 2025; the United States will disclose its expert reports relating to damages and offsets by no later than 45 days after PLG's initial disclosure; PLG will disclose their rebuttal reports no later than 35 days after the United States' disclosure; and the Parties will complete expert discovery of damages and offsets, life care planning, and home renovation reports within 45 days of PLG's rebuttal disclosures.

Late Disclosure of New Opinion from Phase III Expert Dr. Howard Hu

On September 18, 2025, PLG's expert Dr. Howard Hu impermissibly submitted a supplemental specific causation report. This supplemental report is not a correction of previously disclosed information, but rather it contained novel calculations and opinions that contradicted Dr. Hu's opinions as laid out in his Phase III expert report. The United States has requested that PLG withdraw this untimely opinion. The Parties will be conducting a meet and confer on this matter

8

on October 15, 2025.

<u>Resolution of Threshold Issues and Motions</u>

Resolution of threshold issues and motions will assist with the ultimate global resolution of this litigation and the Navy claims. In the Court's June 28, 2024, Order, the Court stated that "[b]efore Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp Lejeune and (2) general causation for the Track 1 illnesses." [D.E. 247 at 1].

Phase I of expert discovery addressed the first threshold issue regarding "toxic chemical exposure from the water at Camp Lejeune." The briefing of *Daubert* motions for Phase I has been completed. The United States agrees with PLG that Phase I involves issues of critical importance for the CLJA litigation as a whole and will impact future tracks of the litigation. For that reason, if the pending *Daubert* motions fail to resolve this threshold issue, the United States proposes that the Court hold an evidentiary hearing to determine the historic levels of and timeframes for contamination in the water at Camp Lejeune. The *Daubert* motions currently before the Court address only the evidentiary admissibility of certain expert opinions; they do not address which opinions correctly establish the historic exposure timeframes and levels at different areas of Camp Lejeune. If any of PLG's Phase I expert opinions survive the pending *Daubert* motions, the Court will need to decide historic exposures for certain areas of the base over certain time periods. This will require an evidentiary hearing, with the issue to be decided by the Court as a whole.

Phase II and Phase III *Daubert* motions and summary judgment motions were filed on September 10, 2025. Responses to those motions are due on November 10, 2025, and replies are due on December 12, 2025. Resolution of the issues raised by those motions will help narrow the issues for this litigation, including, potentially, for future Tracks.

9

Resolution of the Phase II *Daubert* motions on the Parties' Phase II experts, however, may not necessarily resolve the threshold issues of "general causation for the Track 1 diseases." If any of PLG's Phase II expert opinions survive the Phase II *Daubert* motions, the Court will need to decide whether the chemicals at the levels in the Camp Lejeune water can cause any of the Track 1 diseases alleged. This will require an evidentiary hearing. The United States agrees with PLG that the relevant Phase II *Daubert* motions, as well as the ultimate Phase II general causation issues, can be decided by the individual judge to whom cases concerning a particular Track 1 disease has been assigned.[1] But, to make such a determination as a threshold issue, as the Court has already indicated it would do, any general causation issues should not be reserved for a trial involving individual Plaintiffs.

Resolution of the Phases I and II threshold issues of "toxic chemical exposure from the water at Camp Lejeune" and "general causation for Track 1 disease," along with resolution of *Daubert* motions regarding Phase III specific causation experts and related motions for summary judgment, will likely obviate the need for some or all of the individual Track 1 trials and assist in global resolution of the entire litigation and Navy claims. For these reasons, the United States would welcome a schedule for resolution of the threshold issues with the goal of conducting any necessary individual Plaintiff trials before the conclusion of 2026.

Final Deadline for Expert Supplementation for Track 1

The United States also plans to raise, and is willing to work with PLG on, a proposal to establish a final deadline for expert report supplementation. The proposal would create a firm supplementation deadline for expert opinions. The opening *Daubert* and summary judgment

---

[1] Additionally, in the interest of efficiency, there are certain motions that address issues that cut across multiple Track 1 illnesses, such as the Parties' motions related to the "at least as likely as not" standard. Such motions should be decided by all four judges.

10

motions filed on September 10, 2025, underscore the importance of this proposal, as it will ensure that the Parties' briefing and any evidentiary hearings proceed against a stable record of expert opinions.

Proposal for Track 2 Discovery

The United States has conferred with PLG on the most efficient procedure for discovery on Track 2. The United States believes that resolving general causation issues for Track 2 diseases before individual plaintiff discovery would be most efficient. [D.E. 156]. PLG has indicated that it will review the United States' proposal and confer regarding a discovery plan for Track 2. The United States is prepared to do so when the PLG is ready to discuss further.

**(6) Any other issues that the parties wish to raise with the Court:**

The PLG would like to raise the following two issues with the Court, which are identified as (a) and (b) below:

(a) Department of Navy's Administration of Claims Falling Within the Elective Option

The PLG is concerned by the amount of time the Elective Option administrative claim process is taking. The PLG is informed and believes that the Elective Option process has been impacted by the current shutdown of the federal government. The PLG respectfully requests that the Court invite the Department of Navy to attend the next Status Conference to provide an update and answer questions on this subject.

The United States is open to discussing issues regarding the Elective Option process with the Court through the Department of Justice, but, as the Court has previously recognized in an Order in this litigation, its jurisdiction does not extend to the administrative process. The United States is continuing to work with PLG to facilitate administrative resolution of claims with the

11

Navy through the Elective Option program and has made substantial progress in resolving claims that meet the requirements of the program.

(b) Disease Analysis Information

Over 400,000 administrative claims were filed pursuant to the CLJA. These administrative claims identify hundreds of various cancers, illnesses or other diseases as injuries that are allegedly compensable under the CLJA. Pursuant to the Court's Order entered on July 19, 2023 [D.E. 10], the PLG has undertaken to conduct extensive and reasonable scientific inquiries, studies, or other research necessary to propose which of these various cancers, illnesses or other diseases should be allocated the PLG's finite common benefit resources. At the Court's convenience, the PLG is prepared to discuss with the Court the appropriate procedure to identify and designate these illnesses, to inform claimants and counsel of such decisions, and to address judicial economy going forward.

The United States is interested in reviewing PLG's analysis and responding to it. Currently the United States believes the Court's present Track litigation approach, coupled with global resolution discussions with the Court-appointed Settlement Masters, are the best methods to resolve this litigation and the Navy claims.

The Parties have agreed to file separate summaries of the motions that are pending before the Court. The Parties' respective summaries appear below:

**The PLG's Summary:**

At present, the following motions have been filed and are undecided. The PLG believes the Court has many available mechanisms to resolve these motions efficiently. The Court could choose one disease to proceed to trial first and prioritize resolving motions relating to that disease first, which would significantly advance resolution of motions related to many other diseases. For

12

example, resolving the United States' *Daubert* motions in kidney cancer cases regarding literature reviews [D.E. 574], Bradford Hill [D.E. 609], and differential etiology [D.E. 569], would significantly inform if not resolve equivalent motions the United States filed for other diseases [D.E. 541, 543, 559, 584 on literature reviews; D.E. 547, 554, 582 on Bradford Hill; and D.E. 530, 533, 537, 543, 553, 557, 586 on differential etiology]. Additionally, the Court might reserve judgment on many of the *Daubert* motions until after hearing from experts directly at select bench trials, given the Court's role as the factfinder in these trials and its ability to serve as its own gatekeeper and exclude testimony from its consideration at any time. The PLG strongly supports the Court taking the fastest path toward trial for at least one disease group, and does not believe all pending motions require resolution before such trials.

Although not all motions require rulings before the first trials, the PLG suggests that rulings on the pending motions regarding water modeling and the statutory burden of proof (marked with *** below) are particularly likely to promote further discussion regarding resolution, will inform further proceedings in Track 1, and will allow the parties to move forward more intelligently and efficiently with Tracks 2 and 3.

I. **Phase I Motions**
    All Briefing Is Complete and Motions are Ready for Determination
    Motions are Applicable to All Illnesses and to Future Tracks

    a. **Water Modeling ***

        i. The United States' Motion in Limine to Exclude Plaintiffs' Phase I Expert Testimony in Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual Plaintiffs [D.E. 367]

        ii. PLG's Motion for Leave to File Surreply to Defendant United States Reply in Support of Motion to Exclude PLG's Phase I Expert Testimony in Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual Plaintiffs [D.E. 428]

13

       **b. Other**
   
         i. The United States' Motion to Exclude the Opinion Testimony of Mr. R. Jeffrey Davis and Dr. Norman L. Jones [D.E. 356]

        ii. The United States' Motion to Exclude Unreliable and Irrelevant Expert Opinions of Mustafa Aral [D.E. 358]

       iii. The United States' Motion to Exclude the Testimony of Dr. Rodney Kyle Longley [D.E. 360]

       iv. Plaintiffs' Motion in Limine to Exclude Certain Opinions of Remy J.-C. Hennet, Ph.D. [D.E. 373]
           1. The United States' Motion to Strike PLG's Late Supplemental *Daubert* Motion, or Alternatively, for Leave to File a Sur-Reply [D.E. 434] [Relates to D.E. 373; D.E. 423]

        v. Plaintiffs' Motion in Limine to Exclude Certain Opinions of Alexandros Spiliotopoulos, Ph.D. [D.E. 376]

**II.**    <u>**Phases II and III Motions On Application of Statutory Burden of Proof**</u> \*\*\*
       Briefing Is In Process and Will Be Complete by December 12, 2025
       Motions are Applicable to All Diseases and to Future Tracks

      a. United States' Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 539]

      b. Plaintiffs' Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 567]

\*\*\* The Plaintiffs' Leadership Group suggests that rulings on the motions noted above are particularly likely to promote further discussion regarding resolution and that rulings on these motions also are necessary to inform further proceedings in Track 1 and before the parties move forward with Tracks 2 or 3.

**III.**    <u>**Phases II and III Expert/Illness Specific Motions**</u>
       Briefing Is In Process and Will Be Complete by December 12, 2025
       Motions are Applicable to Specific Illnesses as Categorized Below

14

a. **Motions Not Limited to a Particular Illness**

    i. Plaintiffs' Motion to Apply the Court's July 22, 2025 Order to All Experts [D.E. 515]; United States' Response in Opposition to Plaintiffs' Motion to Apply the Court's July 22, 2025 Order to All Experts [D.E. 627]

    ii. United States' Motion for Partial Summary Judgment concerning Dichloroethylene (all cases) [D.E. 520]

b. **Motions to Exclude General Causation Experts Who Opined as to Every Track 1 Case**

    i. Plaintiffs' Motion to Exclude Expert Dr. Michael J. McCabe, Jr. (all cases except Parkinson's) [D.E. 597]

    ii. Plaintiffs' Motion to Exclude Defense Expert Dr. Julie Goodman (all cases) [D.E. 621]

    iii. Plaintiffs' Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 624]

c. **Motions with Common Legal Arguments**[2]

    i. United States' "Literature Review Motions" (all cases) [D.E. 584, 574, 541, 559, and part of 543]

    ii. United States' "Differential Etiology Motions" (all cases) [D.E. 586, 569, 557, 530, 533, 537, 553, and part of 543]

    iii. United States' "Threshold Association Motions" (all cases) [D.E. 547, 554, 582, 609]

    iv. United States' Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (bladder cancer and NHL/Leukemia) [D.E. 601]

d. **Bladder Cancer Motions (Hon. Richard E. Myers II)**

    **i. United States' Motions**
        1. Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Threshold Association Motion") [D.E. 582]

---

[2] These motions also are listed more specifically under the individual disease categories below but the motions share common legal arguments and, therefore, may need to be decided jointly.

2. Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Literature Review Motion") [D.E. 584]

3. Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts for Performing Improper Differential Etiologies ("Bladder Cancer Differential Etiology Motion") [D.E. 586]

4. Motion to Exclude Plaintiffs' Psychiatry Expert Dr. Haresh Tharwani [D.E. 594]

5. Motion for Summary Judgment for Lack of Admissible Expert Testimony Federal Rule of Civil Procedure 56; L. Civ. R. 56.1(a)(1) [D.E. 590] [predicated upon determinations in D.E. 582, 584, 586]

6. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

**ii. Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Defense Expert Dr. Max Kates filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 588]

2. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to one kidney plaintiff)

3. Multi-Illness Motions at D.E. 597, 621, 624.

**e. <u>Kidney Cancer Motions</u> (Hon. Terrence W. Boyle)**

**i. United States' Motions**

1. Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 524]

2. Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases ("Kidney Cancer Differential Etiology Motion")[D.E. 569]

3. Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 571]

4. Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review Motion") [D.E. 574]

5. Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 609]

6. Motion for Summary Judgment (Kidney Cancer) [D.E. 611] (predicated upon determinations in D.E. 539, 569, 609)

7. Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 605]

**ii. Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Defense Expert Dr. Walter Stadler [D.E. 599]

2. Motion to Exclude Defense Expert Dr. Gail H. Vance, M.D. [D.E. 619]

3. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to two bladder cancer plaintiffs)

4. Multi-Illness Motions at D.E. 597, 621, 624.


**f. <u>Parkinson's Disease Motions</u> (Hon. Louise W. Flanagan)**

**i. United States' Motions**

1. Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman ("Parkinson's Literature Review Motion") [D.E. 541]

2. Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska ("Parkinson's Literature Review and Differential Etiology Motion")[D.E. 543]

3. Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz and Richard Barbano ("Parkinson's PCE Daubert Motion") [D.E. 545]

4. Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa and Richard Barbano ("Parkinson's Threshold Association Motion") [D.E. 547]

5. Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 549] (predicated upon determinations in D.E. 539, 541, 543, 545, 547).

6. Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium [D.E. 525]

### ii. Plaintiffs' Leadership Group's Motions

1. Multi-Illness Motions at D.E. 597, 621, 624.

### g. Leukemia and Non-Hodgkins Lymphoma Motions (Hon. James C. Dever III)

### i. United States' Motions

1. Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek ("Leukemia Differential Etiology Motion – Gondek") [D.E. 530]

2. Motion to Exclude the Opinions of Damian Laber, M.D., FACP ("Leukemia Differential Etiology Motion – Laber") [D.E. 533]

3. Motion to Exclude the Expert Opinions of Paul J. Michaels, M.D. [D.E. 535] (this motion is moot)

4. Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 537]

5. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology ("Leukemia Threshold Association Motion")[D.E. 553]

6. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(c) ("Leukemia/NHL Motion on Disease Synergy") [D.E. 555]

7. Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Federal Rule of Evidence 702(d) for Failing to Reliably Employ a Differential Etiology ("Leukemia/NHL Differential Etiology Motion") [D.E. 557]

8. Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon,

and Howard Hu ("Leukemia/NHL Literature Review Motion") [D.E. 559]

9. Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 576] (predicated upon determinations in D.E. 530, 533, 535, 537, 539, 553, 555, 557, 559)

10. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

11. Motion for Partial Summary Judgment Concerning Multiple Myeloma [D.E. 561]

ii. **Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Certain Opinions of Dr. Harry P. Erba filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 580]

2. Multi-Illness Motions at D.E. 597, 621, 624.

IV. **Other Pending Motions**

a. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156]

b. The PLG's Objection to Memorandum and Recommendations on Vapor Intrusion [D.E. 447]

   i. The United States' Response regarding D.E 447 Objection to Memorandum and Recommendations [D.E. 453]

c. Consent Motion to Amend Case Management Order No. 15 (Second Amended Stipulated Protective Order) [D.E. 632]

d. The PLG's Motion to Seal [D.E. 633]

e. The United States' Motion to Seal [D.E. 636]

**United States' Summary:**

As discussed earlier, the United States agrees that rulings on the threshold scientific issues of the levels of water contamination and general causation will promote further resolution of issues, not only for Track 1, but for future Tracks. The United States has also raised significant

19

issues regarding specific causation and interpretation of the CLJA in its September 10, 2025 filings.  Decisions on those issues will also promote global resolution. Only after the Court has ruled on these motions should the Parties proceed to trial of individual cases, if necessary.  This is the most efficient path forward because it will likely save court resources for bench trials of individual cases that will be rendered unnecessary.  This is also in line with the Court's June 28, 2024, Order, which stated that "[b]efore Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp Lejeune and (2) general causation for the Track 1 illnesses." [D.E. 247 at 1].

The United States disagrees with PLG's proposal that the Court resolve *Daubert* motions and motions for summary judgment related to one Track 1 disease first, and that the decisions on that disease will necessarily inform or resolve motions pending for other Track 1 diseases.  Each disease is unique and involves different scientific issues addressed by different experts.  While some general issues may apply to multiple diseases, the relevant scientific literature, disease mechanisms, and most importantly, expert witness opinions, are overwhelmingly different from disease to disease. It is true that many of PLG's experts gave overlapping and repetitive opinions, and where possible, the United States has already streamlined its *Daubert* motions and motions for summary judgment to jointly address such duplicative expert opinions on individual diseases. Overall, each disease's *Daubert* motions and motions for summary judgment should be handled by the appropriately assigned judges before any Track 1 individual Plaintiff trials commence. Finally, the United States disagrees with PLG's prioritization, grouping, and in certain instances, characterizations of the pending motions.

*[Signatures follow on next page]*

DATED this 14th day of October, 2025.

Respectfully submitted,

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

*/s/ Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

*/s/ Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors

*/s/ Adam Bain*
ADAM BAIN
Special Litigation Counsel
Camp Lejeune Justice Act Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

NATHAN J. BU
Trial Attorney

*Counsel for Defendant*
*United States of America*

*/s/ W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*