IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | **JOINT STATUS REPORT** |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to November 7, 2025, 3,704 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and forty-six (146) cases have been dismissed; one hundred and thirty-two (132) of those were voluntary dismissals and the fourteen (14) others were pro se cases. The cases are divided as follows: Judge Dever – 930 cases; Judge Myers – 920 cases; Judge Boyle – 908 cases; and Judge Flanagan – 940 cases.

**An update on the number and status of administrative claims with the Department of Navy**

Of 409,889 de-duplicated claims, approximately 177,166 claims contain at least one supporting document. Approximately 65,670 of those claims allege an injury type that may be considered for settlement under the Elective Option (EO) framework. The time between filing a claim and settlement is dependent upon timely receipt of relevant supporting documents. Per the

1

statutory burden of proof, law firms and claimants must provide evidence of a medical diagnosis and presence at Camp Lejeune before a settlement determination can be made. Filers are encouraged to submit substantiating documentation expeditiously so that the Camp Lejeune Claims Unit (CLCU) can confirm substantiation of those alleged EO injuries and the DOJ can approve settlement offers to as many claimants who qualify for the EO as possible.

Claims processing is paused for the duration of the furlough; CLCU cannot accept or process any settlements until appropriations have been passed. Additionally, due to the lapse in appropriations, the Treasury Judgment Fund operations have been suspended, and settlement payments will not be disbursed until the shutdown has ended.

**(2) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(3) An update on stipulations entered into between the Parties since the last status conference**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Depositions and Motions</u>

2

All expert witnesses for Phase I (Water Contamination) have been both disclosed and deposed by the Parties, and all deadlines with respect to Phase I motions have expired. The Parties have completed the depositions of all expert witnesses for Phase II (General Causation). All expert witness depositions for Phase III (Specific Causation and Residual Experts), except those witnesses who fall within the separate track for expert discovery related to damages and offsets, have been completed.

On September 10, 2025, the Parties filed all motions related to Phases II and III, with exception of motions related to damages and offsets. [D.E. 630] The PLG filed a total of nine (9) motions to exclude the government's experts under Fed. R. Evid. 702. The government filed thirty-one (31) motions related to Phases II and III. The deadline to respond to the said Phase II and Phase III motions is November 10, 2025.

<u>Discovery Pertaining to Damages and Offsets</u>

On September 17, 2025, the Court entered an Order amending the deadlines for expert disclosures, depositions and motions related to damages, offset, and other economic experts. [D.E. 630] Consistent with this Order, the United States presented its last witness in support of the data and explanation in support of its alleged offsets on September 18, 2025. Pursuant to the Court's Order, the PLG will designate Phase III economic residual experts on October 29, 2025, the government will designate economic residual experts on December 15, 2025, the PLG will designate rebuttal experts on January 19, 2026, and expert discovery on these experts will close on March 5, 2026. [D.E. 630 at 2] Following expert disclosures, the parties will meet and confer regarding a briefing schedule, if any is necessary. [*Id.*]

Since the last status conference, the parties have continued to try to resolve an issue regarding PLG's request that the government produce available information pertaining to plaintiff

3

payments (including premiums, co-pays, deductibles, co-insurance or other health insurance payments, or other expenses not covered that were billed to the client). However, the ability of relevant federal agencies to respond to inquiries from the United States has been affected by the current government shutdown. The parties are therefore unable at this time to ascertain whether resolution can be reached but will continue to work toward that goal.

Preparation for Hearings and Trials on Track 1

In the Joint Status Report for October 14, 2025, the PLG made certain proposals about hearings and trials on Track 1 litigation that PLG believed would maximize the efficient adjudication of Track 1. The PLG integrates those proposals into this report by reference and continues to believe such proposals would, if implemented, expedite these trials. The need for timely resolution of CLJA claims is critical. The health conditions of the plaintiffs only continue to worsen and hundreds of thousands of claimants are waiting, while their health continues to decline, for claims to be resolved under the CLJA. The determination of the motions that are pending before the Court is a critical aspect of parties' ability to move forward toward trial or other resolution.

**United States' Position:**

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Expert Depositions

All expert depositions have been completed, with the exception of depositions related to economic damages issues.

United States' Supplemental Offset Data Discovery

On June 25, 2025, the Court entered an Order modifying previous scheduling orders to, in part, allow the Parties to engage in limited fact discovery related to the Parties' offset information and corresponding damages information. [D.E. 414]. Over the past three months, the United States has produced underlying offset information from the VA (including VHA and IVC), TriWest, TRICARE, and the Centers for Medicare & Medicaid Services (CMS). This information is in addition to the previously provided offset information and data produced by the United States in conjunction with its Phase III expert disclosures in April and May 2025. Furthermore, the Parties have taken all depositions of fact witnesses related to the United States' offset data. Given deposition scheduling constraints, including witness and counsel availability, these depositions concluded on September 18, 2025—the date the Court recently ordered fact discovery limited to the Parties' offset information and potentially corresponding damages information was to be completed. *See* D.E. 630.

On September 30, 2025, the Parties met and conferred on PLG's request for Plaintiff payment information, including policy premiums, co-pays, deductibles, coinsurance payments, payments from HSAs/FSAs or similar accounts, HRAs, or any expenses not covered that were billed to Plaintiffs. The United States maintains its position that this information is outside the scope and purpose of the additional damages discovery, and that PLG failed to respond to the United States' objections to producing additional information when PLG requested it on July 3, 2025. To avoid unnecessary discovery disputes, however, the United States has agreed to work

with its agencies to determine if they have custody or control of this information, and if so, how burdensome it would be to collect it. The United States reserves the right to continue its objections to collecting or producing such information depending on the results of these inquiries, or to seek alternative relief such as cost-shifting to PLG. The United States is taking steps to continue this effort despite the government shutdown caused by the lapse in appropriations and has agreed to provide PLG with updates on a rolling basis. For instance, this past week, the United States was informed by the Department of Veterans Affairs that it would take approximately 10–12 hours to research each veteran's account to determine what, if anything, was billed and collected for the previously identified diagnosis codes and time-period. Such an amount of time places an unreasonable burden on the United States to search for and collect information that is already in the possession, custody, and control of each Track 1 Plaintiff. The United States is still awaiting substantive responses from the CMS and DHA.

There are no other remaining issues arising out of the limited fact discovery period ordered by the Court on June 25, 2025.

Damages Expert Discovery Disclosures

Under the Court's September 17, 2025 Order requiring the Parties to complete fact discovery related to the Parties' offset information by September 18, 2025, [D.E. 630], PLG disclosed their expert damages reports by October 29, 2025; the United States will disclose its expert reports relating to damages and offsets by no later than 45 days after PLG's initial disclosure; PLG will disclose their rebuttal reports no later than 35 days after the United States' disclosure; and the Parties will complete expert discovery of damages and offsets, life care planning, and home renovation reports within 45 days of PLG's rebuttal disclosures. The United States has received Plaintiffs' expert damages reports and amended damages assessment forms.

The United States is reviewing these materials and will contact Plaintiffs' counsel regarding any identified deficiencies if necessary.

United States Marine Corps Digitization Project Update

Plaintiffs recently sought an update on the United States Marine Corps' ("USMC") ongoing efforts to digitize certain microfilm, microfiche, and paper military records (the "Current Digitization Project"). In the United States' Second Supplemental Responses to Plaintiffs' First Set of Requests for Production, Request No. 3, the United States noted that it had produced certain muster roll documents from the National Archives and Record Administration totaling approximately 2 TB of native records on March 29, 2024. The United States also produced documents bearing Bates stamp CLJA_MUSTERROLLS01-0000000001-0000676209 from the USMC's 2013-2015 record digitization effort. The United States further stated in that response that "hard copy muster rolls [are] available for inspection in Alexandria, Virginia, as offered to Plaintiffs by letter on November 4, 2023 and multiple times thereafter. The United States further reiterates that documents responsive to this request are being scanned as a part of a larger, ongoing digitization project with the United States Marine Corps."

The Current Digitization Project includes, but is not limited to, unit diaries, muster rolls, and individual service records *service-wide*, meaning most of the records are likely not specific to Camp Lejeune. USMC is currently scanning physical records and converting them to PDFs and sorting them into two overarching categories: "bulk records," which consist of unit diaries, muster rolls, and other organizational records; and "personnel records," which include individual service member records and other individualized records.

USMC has scanned approximately 13.7 TB of records out of an estimated 30 TB. Each individual PDF undergoes Optical Character Recognition as it is created. Of the 13.7 TB of records

scanned thus far, USMC estimates that a substantial amount of the records are "bulk records" that would include muster rolls. Each file is saved with many muster rolls from across the Marine Corps based on their date of entry, and each PDF is named with the date of entry. The current estimated date of completion for scanning the remaining records is January 31, 2026.

It is the United States' position that the burden of producing the scanned PDFs in their entirety, which would have marginal utility given the limited ability to search them, is not proportional to the needs of the case under FRCP 26(b)(1). The burden and expense of the proposed discovery greatly outweighs its likely benefit. Producing terabytes of scanned PDFs from the Current Digitization Project data—much of which is unrelated to Camp Lejeune entirely and/or is otherwise available to Plaintiffs—is beyond the United States' discovery obligations for this litigation.

The burden and expense notwithstanding, the United States has endeavored to identify proposals for producing a limited subset of the digitized records in PDF format that are likely to contain documents responsive to RFP 1, No. 3. In particular, the United States is working to obtain an estimate on the time and expense that would be required to produce the "bulk files" that are being scanned. Because of the nature and size of the requested data, and the disproportionate burden its production would put on the United States, any such production would be subject to a fee-shifting arrangement by which Plaintiffs would pay for (i) the transfer of the data from the USMC to DOJ, and (ii) the processing and production of the data from DOJ to Plaintiffs. Based on preliminary estimates, however, this could cost over a million dollars and take many months to complete.

Missing Plaintiff Identifiers in Rubris

Pursuant to the Court's December 21, 2023, Order [D.E. 91], each plaintiff who has filed a Short Form Complaint is required to provide their complete date of birth and full Social Security Number to the United States. This information has previously been collected in Rubris, and the United States recently identified over 700 entries where this information appears incomplete or missing. PLG has been notified, and the Parties are working together to ensure plaintiffs' compliance with the Court's Order.

Resolution of Threshold Issues and Motions

Resolution of threshold issues and motions will assist with the ultimate global resolution of this litigation and the Navy claims. In the Court's June 28, 2024, Order, the Court stated that "[b]efore Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp Lejeune and (2) general causation for the Track 1 illnesses." [D.E. 247 at 1].

Phase I of expert discovery addressed the first threshold issue regarding "toxic chemical exposure from the water at Camp Lejeune." The briefing of *Daubert* motions for Phase I has been completed. The United States agrees with PLG that Phase I involves issues of critical importance for the CLJA litigation as a whole and will impact future tracks of the litigation. For that reason, if the pending *Daubert* motions fail to resolve this threshold issue, the United States proposes that the Court hold an evidentiary hearing to determine the historic levels of and timeframes for contamination in the water at Camp Lejeune. The *Daubert* motions currently before the Court address only the evidentiary admissibility of certain expert opinions; they do not address which opinions correctly establish the historic exposure timeframes and levels at different areas of Camp Lejeune. If any of PLG's Phase I expert opinions survive the pending *Daubert* motions, the Court

9

will need to decide historic exposures for certain areas of the base over certain time periods. This will require an evidentiary hearing, with the issue to be decided by the Court as a whole.

Phase II and Phase III *Daubert* motions and summary judgment motions were filed on September 10, 2025. Responses to those motions are due on November 10, 2025, and replies are due on December 12, 2025. Resolution of the issues raised by those motions will help narrow the issues for this litigation, including, potentially, for future Tracks.

Resolution of the Phase II *Daubert* motions on the Parties' Phase II experts, however, may not necessarily resolve the threshold issues of "general causation for the Track 1 diseases." If any of PLG's Phase II expert opinions survive the Phase II *Daubert* motions, the Court will need to decide whether the chemicals at the levels in the Camp Lejeune water can cause any of the Track 1 diseases alleged. This will require an evidentiary hearing. The United States agrees with PLG that the relevant Phase II *Daubert* motions, as well as the ultimate Phase II general causation issues, can be decided by the individual judge to whom cases concerning a particular Track 1 disease has been assigned. But, to make such a determination as a threshold issue, as the Court has already indicated it would do, any general causation issues should not be reserved for a trial involving individual Plaintiffs.

Resolution of the Phases I and II threshold issues of "toxic chemical exposure from the water at Camp Lejeune" and "general causation for Track 1 disease," along with resolution of *Daubert* motions regarding Phase III specific causation experts and related motions for summary judgment, will likely obviate the need for some of the individual Track 1 trials and assist in global resolution of the entire litigation and Navy claims. For these reasons, the United States would welcome a schedule for resolution of the threshold issues with the goal of conducting any necessary individual Plaintiff trials before the conclusion of 2026.

Final Deadline for Expert Supplementation for Track 1

The United States also plans to raise, and is willing to work with PLG on, a proposal to establish a final deadline for expert report supplementation. The proposal would create a firm supplementation deadline for expert opinions. The opening *Daubert* and summary judgment motions filed on September 10, 2025, underscore the importance of this proposal, as it will ensure that the Parties' briefing and any evidentiary hearings proceed against a stable record of expert opinions.

Proposal for Track 2 Discovery

The United States has conferred with PLG on the most efficient procedure for discovery on Track 2. The United States believes that resolving general causation issues for Track 2 diseases before individual plaintiff discovery would be most efficient. [D.E. 156]. PLG has indicated that it will review the United States' proposal and confer regarding a discovery plan for Track 2. The United States is prepared to do so when the PLG is ready to discuss further.

**(4) Any other issues that the parties wish to raise with the Court:**

The PLG would like to raise the following two issues with the Court, which are identified as (a) and (b) below:

(a) Department of Navy's Administration of Claims Falling Within the Elective Option

The PLG is concerned by the amount of time the Elective Option administrative claim process is taking. The PLG is informed and believes that the Elective Option process has been impacted by the current shutdown of the federal government. The PLG respectfully requests that the Court invite the Department of Navy to attend the next Status Conference to provide an update and answer questions on this subject.

The United States is open to discussing issues regarding the Elective Option process with the Court through the Department of Justice, but, as the Court has previously recognized in an Order in this litigation, its jurisdiction does not extend to the administrative process. The United States is continuing to work with PLG to facilitate administrative resolution of claims with the Navy through the Elective Option program and has made substantial progress in resolving claims that meet the requirements of the program.

(b) Disease Analysis Information

Over 400,000 administrative claims were filed pursuant to the CLJA. These administrative claims identify hundreds of various cancers, illnesses or other diseases as injuries that are allegedly compensable under the CLJA. Pursuant to the Court's Order entered on July 19, 2023 [D.E. 10], the PLG has undertaken to conduct extensive and reasonable scientific inquiries, studies, or other research necessary to propose which of these various cancers, illnesses or other diseases should be allocated the PLG's finite common benefit resources. At the Court's convenience, the PLG is prepared to discuss with the Court the appropriate procedure to identify and designate these illnesses, to inform claimants and counsel of such decisions, and to address judicial economy going forward.

The United States is interested in reviewing PLG's analysis and responding to it. Currently the United States believes the Court's present Track litigation approach, coupled with global resolution discussions with the Court-appointed Settlement Masters, are the best methods to resolve this litigation and the Navy claims.

The Parties have agreed to file separate summaries of the motions that are pending before the Court. The Parties' respective summaries appear below:

**The PLG's Summary:**

At present, a number of motions have been filed and are undecided. The full list and organization are set forth in the Joint Status Report of October 14, 2025. The PLG continues to believe the Court has many available mechanisms to resolve these motions efficiently. The Court could choose one disease to proceed to trial first and prioritize resolving motions relating to that disease first, which would significantly advance resolution of motions related to many other diseases. For example, resolving the United States' *Daubert* motions in kidney cancer cases regarding literature reviews [D.E. 574], Bradford Hill [D.E. 609], and differential etiology [D.E. 569], would significantly inform if not resolve equivalent motions the United States filed for other diseases [D.E. 541, 543, 559, 584 on literature reviews; D.E. 547, 554, 582 on Bradford Hill; and D.E. 530, 533, 537, 543, 553, 557, 586 on differential etiology]. Additionally, the Court might reserve judgment on many of the *Daubert* motions until after hearing from experts directly at select bench trials, given the Court's role as the factfinder in these trials and its ability to serve as its own gatekeeper and exclude testimony from its consideration at any time. The PLG strongly supports the Court taking the fastest path toward trial for at least one disease group, and does not believe all pending motions require resolution before such trials.

Additionally, the PLG has held a meet and confer with the United States to discuss if the United States would oppose the Court reserving determination on all motions related to expert admissibility and provisionally admitting all testimony, in order to reach trial sooner. The United States has expressed its opposition to this proposal for the reasons outlines below.

**United States' Summary:**

The United States suggests that ruling on the scientific issues of the levels of water contamination, general and specific causation, and the CLJA statutory issues raised in the United

13

States' filings of September 10, 2025, will promote further resolution of issues, not only for Track 1, but for all future Tracks.

The United States opposes Plaintiffs' proposal to defer resolution of *Daubert* motions, other expert admissibility issues, and summary judgment motions until trial. The Court has already recognized that "before Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp Lejeune and (2) general causation for the Track 1 illnesses." *See* D.E. 247 at 1. That orderly, phased structure was intentional. As the Court recently emphasized, "[e]ach Phase informs the next—like building blocks in the parties' cases in chief." (D.E. 444 at 5). Deferring *Daubert* rulings until trial would be inconsistent with this directive and would undermine the efficient resolution of these threshold scientific issues. Rulings on the pending *Daubert* and summary judgment motions will clarify which expert opinions are admissible and what scientific issues remain in dispute, thereby narrowing the need for individual trials altogether. Proceeding to trial without those rulings would risk inefficient, piecemeal litigation and could require the Court to revisit expert admissibility issues mid-trial.

Consistent with the Court's prior Orders, the United States maintains that resolving these threshold issues before any trials begin will streamline proceedings and may eliminate the need for many trials, thus promoting, rather than delaying, global resolution. The Court has indicated that it will make certain evidentiary determinations, such as those concerning the water modeling evidence, prior to any trials so that those rulings remain consistent across all disease groups.

The United States also disagrees with Plaintiffs' proposal to prioritize kidney cancer as the first disease group for trial. Each Track 1 disease presents distinct scientific issues, methodologies, expert opinions, and evidentiary records. While certain experts may overlap across disease groups, their opinions and the relevant scientific literature differ significantly. Accordingly, motions

14

concerning one disease cannot be presumed to resolve or meaningfully advance motions in others. Consistent with the Court's prior Orders, the United States respectfully submits that the Court should first resolve the threshold issues of water contamination and general causation, including resolution of Phase I and Phase II *Daubert* motions, followed by resolution of pending Phase III *Daubert* and summary judgment motions for all track 1 diseases, before proceeding to any individual trials.

*[Signatures follow on next page]*

DATED this 7th day of November, 2025.

Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Zina Bash
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Camp Lejeune Justice Act Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

NATHAN J. BU
Trial Attorney

*Counsel for Defendant*
*United States of America*

Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

*/s/ James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*


ND:4932-8318-2195, v. 1