**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**
**NO. 7:23-CV-00897**

**IN RE: CAMP LEJEUNE TOXIC**
**WATER EXPOSURE LITIGATION**

This Pleading Relates to:

*Howard v. United States*,  7:23-cv-00490

**PLAINTIFF ALLAN HOWARD'S**
**RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND BACKGROUND ................................................................. 1

I. Plaintiff Allan Howard ............................................................................... 1

    A. Mr. Howard's exposure to toxic water at Camp Lejeune ..................... 2

    B. Injuries suffered by Mr. Howard as a result of exposure to toxic water at Camp Lejeune ...................................................................................... 2

II. Congress passed the Camp Lejeune Justice Act to create one unified cause of action meant to encompass all injuries, diseases and diagnoses ...................... 3

III. There is no prejudice to Defendant in including NHL in Mr. Howard's Camp Lejeune claim. ................................................................................................... 4

ARGUMENT ....................................................................................................... 5

I. The facts support the denial of Defendant's Motion. .................................... 5

II. Defendant does not develop any argument or cite to any law establishing that an injury does not occur until diagnosis. The law also supports the denial of Defendant's Motion. .......................................................................................... 6

    A. "Claim" means "cause of action." .......................................................... 7

    B. The Forms required to be used in CLJA filings demonstrate that the CLJA created a single cause of action that encompasses all injuries, diseases and diagnoses. ............................................................................... 8

    C. Mr. Howard's CLJA cause of action Arose before August 10, 2022. ................. 10

III. Mr. Howard's NHL is a newly discovered injury, disease and diagnosis that relates back prior to August 10, 2022. .............................................................. 12

    A. Mr. Howard's NHL is a newly discovered injury, disease and diagnosis that relates back prior to the effective date of the CLJA. ..................... 12

        1. CLJA Plaintiffs must follow the administrative processes and procedures of the FTCA. .......................................................... 12

        2. § 804(h) of the CLJA requires compliance with section 2675 of the FTCA. .......................................................................... 13

        3. 28 U.S.C. § 2675(b) includes Mr. Howard's NHL in his Camp Lejeune claim. ............................................................................. 13

        4. Mr. Howard's NHL does not constitute a new cause of action. It is a newly discovered injury, disease and diagnosis that relates back prior to August 10, 2022. ................................................ 16

IV. The Separate Disease Rule does not apply. ................................................ 16

**TABLE OF CONTENTS**
**(continued)**

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Adkins v. United States,*
990 F. Supp. 2d 621 (S.D. W. Va. 2014) ................................................................ 16

*Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Marcas, L.L.C.,*
415 Md. 676, 4 A.3d 946 (2010) ........................................................................... 7

*Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.,*
603 U.S. 799 (2024) ............................................................................................. 7, 8

*Fancher v. United States,*
646 F. Supp. 3d 694 (E.D.N.C. 2022) ........................................................... 11, 12, 13

*Girard v. United States,*
No. 2:22-CV-22-FL, 2023 WL 115815 (E.D.N.C. Jan. 5, 2023) ........................... 13

*Green v. Brennan,*
578 U.S. 547 (2016) ................................................................................................ 8

*McDonough v. Smith,*
139 S. Ct. 2149 (2019) ......................................................................................... 11

*Memmer v. United Wholesale Mortg., LLC,*
135 F.4th 398 (6th Cir. 2025) ............................................................................. 7, 8

*Murphy v. United States,*
833 F. Supp. 1199 (E.D. Va. 1993) ................................................................... 15, 16

*Nelson v. A.W. Chesterton Co.,*
No. 10-00065, 2011 WL 6016986 (E.D. Pa. Oct. 27, 2011) ............................... 17, 18

*Pugh v. United States,*
No. 7:22-CV-124-BO-BM, 2023 WL 1081262 (E.D.N.C. Jan. 27, 2023) ............... 13

*Spivey v. United States,*
912 F.2d 80 (4th Cir. 1990) ............................................................................... 15, 16

*Stahle v. CTS Corp.,*
817 F.3d 96 (4th Cir. 2016) ................................................................................. 12

*Vicor Corp. v. FII USA Inc.,*
132 F.4th 1 (1st Cir. 2025) .................................................................................... 8

*Williams v. Commonwealth*,
  84 Va. App. 99, 912 S.E.2d 462 (2025)......................................................................7

**Statutes**

28 U.S.C. § 2675(b) ..............................................................................................8, 14, 16

Camp Lejeune Justice Act ("CLJA")............................................................... *passim*

CLJA § 804(b) ................................................................................................................18

CLJA § 804(h) ..........................................................................................................13, 14

CLJA § 804(j)(1)......................................................................................................7, 8, 11

Federal Tort Claims Act (FTCA) ................................................................................13

Maryland Local Government Tort Claims Act.........................................................7

N.C. Gen. Stat. § 1-52(16) ...........................................................................................12

Virginia Torts Claims Act............................................................................................7

**Court Rules**

Fed. R. Civ. P. 1 .............................................................................................................8

**Treatises**

Restatement (Third) of Torts § 2 ...............................................................................11

## INTRODUCTION AND BACKGROUND

Defendant's Motion for Partial Summary Judgment (D.E. 605) to exclude NHL from Plaintiff Allan Wayne Howard's Camp Lejeune claim should be denied under the proper interpretation of accrual under the CLJA and prevailing applicable law, which establishes the timeliness of inclusion of both Mr. Howard's diagnosed diseases, kidney cancer and NHL, in his CLJA claim.

## I.   Plaintiff Allan Howard

Plaintiff Allan Wayne Howard has dedicated his career to public service. He enlisted in the U.S. Marine Corps on May 31, 1977 at the age of 17. After completing basic training in August of 1977, he was stationed at Camp Lejeune. He spent 449 days at Camp Lejeune between September 4, 1977 and February 8, 1979. *See* Reynolds Rep. at App'x 10 (JA 569, D.E. 506-2). Mr. Howard remained in the Marine Corps until May of 1981.

Mr. Howard was first assigned to a Marine infantry unit at Camp Lejeune. He was promoted to Private First Class in 1977, Lance Corporal in 1978 and Corporal in 1980. He held this rank to the end of his military career.

Mr. Howard became a police officer in the city of Dayton, Ohio in 1982. He worked for the Dayton Police Department for twenty-six years. He started as a patrolman, was promoted to Sergeant and ultimately became the Supervisor of the Patrol Division. He also served as an instructor at the Police Training Academy and as a Police Fleet Manager. Before his retirement in 2008, Mr. Howard was the Supervisor of Investigations in the Internal Affairs Bureau. After his retirement from the Dayton police force, Mr. Howard worked as a Courtroom Security Officer for the U.S. Marshal Service from 2009 to 2016 at the Federal District and Bankruptcy Courts for the Southern District of Ohio. Mr. Howard ended his professional career as a Security Officer at Sinclair College.

It was during a physical examination required for employment with the United States Marshal Service in early September of 2008 that the first signs and symptoms of cancer were detected. Ex. A (Plaintiff Allan Howard Dep. Tr.) at 55:12-56:1.

### A.      Mr. Howard's exposure to toxic water at Camp Lejeune

Mr. Howard lived at the Hadnot Point barracks while he was at Camp Lejeune. He ingested a significant amount of water daily, due to the physically demanding nature of his work and training. Mr. Howard consumed increased amounts of water on days during which he had physical training and/or during the summer months. For example, Mr. Howard estimated that in the month of July, he would drink six to seven canteens of water per day. Ex. A (Howard Dep. Tr.) at 34:8-14. While out in the field, Mr. Howard would drink water from the water buffaloes. *Id.* at 32:4-6. He testified that water from the water buffaloes had a particularly strong taste to it. *Id.* at 50:20-24.

Mr. Howard also had other exposure to the toxic water. He showered daily. *Id.* at 24:3-6. On the approximately twenty days a month that he would have physical training in the field, he would shower a second time. *Id.* at 24:7-20. He showered in a community bathroom where shower heads were continuously running and water vapor built up without ventilation. *Id.* at 23:25-24:2.

He also completed assigned chores that involved the use of toxic water, including participating in a weekly deep cleaning of the barracks, known as "field day." *Id.* at 47:15-19.

### B.      Injuries suffered by Mr. Howard as a result of exposure to toxic water at Camp Lejeune

Mr. Howard was diagnosed with renal cell carcinoma (kidney cancer) on December 3, 2008. He was 49 years old. Ex. B (00490_HOWARD_0000001627-1628 Surgical Pathology Report). He required a right radical nephrectomy. Plaintiff's experts, uro-oncologic surgeons Dr. Joseph Del Pizzo of Weill Cornell Medicine, Dr. Armine Smith of Johns Hopkins University

School of Medicine, and David Josephson of Tower Urology at Cedars Sinai have each testified to a reasonable degree of medical certainty that it is more likely than not that Mr. Howard's kidney cancer was caused by exposure to the toxic water at Camp Lejeune. Del Pizzo Dep. Tr. at 49:22-50:2 (JA Ex. 589, D.E. 507-10); Smith Rep. (Howard) at 15 (JA Ex. 411, D.E. 493-2); Josephson Rep. (Howard) at 13 (JA Ex. 393, D.E. 492-2).

As he testified at his 2024 deposition, in spring of 2023, Mr. Howard noticed an onset of significant fatigue. This is a symptom of NHL. Mr. Howard was eventually formally diagnosed with NHL by biopsy on August 30, 2023. Dr. Hoppe stated in his expert report, and has testified at his deposition, that to a reasonable degree of medical certainty it is more likely than not that the NHL was caused by the toxic water at Camp Lejeune. *See* Hoppe Dep. Tr. At 191:13-192:13; 201:3-202:2 (JA Ex. 590, D.E. 507-11); Hoppe Rep. (Howard) at 12 (JA Ex. 389, D.E. 491-13).

Both Mr. Howard's kidney cancer and the NHL were caused by the toxins in the contaminated water at Camp Lejeune. They constitute injuries that resulted from the same exposure to the same volatile organic compounds at Camp Lejeune, during the same timeframe, and each has manifested timely for inclusion in Mr. Howard's CLJA claim.

## II. Congress passed the Camp Lejeune Justice Act to create one unified cause of action meant to encompass all injuries, diseases and diagnoses

The Camp Lejeune Justice Act ("CLJA") created a new cause of action that became effective on August 10, 2022. It provides a legal pathway to justice for veterans, their families, civilian employees and others who were injured by toxins in the water at Camp Lejeune.

Important provisions in the CLJA demonstrate a clear Congressional intent to provide full and fair compensation for the harmful results that occurred due to the presence of toxic volatile organic compounds in the water at Camp Lejeune. Just a few examples of this Congressional intent are:

1.   There is no requirement for Plaintiffs to prove negligence;

2.   There is a lessened burden of proof;

3.   The CLJA provides for a single comprehensive cause of action that is meant to encompass all injuries, diseases and diagnoses suffered by each Plaintiff; and

4.   The CLJA requires compliance with the administrative procedures and processes of section 2675 of the Federal Tort Claims Act ("FTCA"), which permits a relation back of "newly discovered" injuries.

The CLJA was intended to help those eligible individuals who could prove they were harmed by the contaminated water at Camp Lejeune.

## III.   There is no prejudice to Defendant in including NHL in Mr. Howard's Camp Lejeune claim.

Defendant had an opportunity to depose Mr. Howard and his doctor, Dr. Hoppe, and it chose not to ask in depth follow-up questions about Mr. Howard's symptoms and when exactly they began. Defendant was timely notified of Mr. Howard's NHL diagnosis. Plaintiff produced 1887 pages of medical records on January 10, 2024, including records that reference Mr. Howard's NHL diagnosis.[1] *See* Ex. J (Cover Letter accompanying production of documents attached hereto). When Mr. Howard was deposed on February 16, 2024, Defendant was aware of the NHL and questioned Mr. Howard about it. Defense counsel was also aware of Mr. Howard's NHL diagnosis before the depositions of the fact witnesses that were deposed in Mr. Howard's case. Elizabeth Howard, Mr. Howard's daughter, was deposed on May 7, 2024. James Pickenbrook, Mr. Howard's long-time friend, was deposed on the same date. Moreover, Mr. Howard timely filed a Second

---

[1] The records included but were not limited to the results of a lymph node biopsy performed on August 30, 2023 which revealed NHL (*see* Ex. K (00490_HOWARD_0000000285-288)) and a PET scan from September 25, 2023 identifying areas of diffuse large B cell lymphoma (*see* Ex. L (00490_HOWARD_0000000255-259)).

Amended Short Form Complaint that identified the NHL injury, disease and diagnosis on May 21, 2024. Ex. H, Short Form Complaint, at 3.

Mr. Howard disclosed his NHL expert witness, Dr. Richard Hoppe, on February 7, 2025. Dr. Hoppe's report provided a very clear and precise specific causation opinion that Mr. Howard's NHL was caused by exposure to the contaminated water at Camp Lejeune. The report authored by Dr. Hoppe detailing his opinions concerning NHL states that:

> It is my opinion that it is more likely than not that Mr. Howard's non-Hodgkin lymphoma (NHL), diffuse large B-cell lymphoma (DLBCL), was caused by his exposure to the contaminated water at Camp Lejeune."

Hoppe Rep. (Howard) at 2 (JA Ex. 389, D.E. 491-13).

Defense counsel deposed Dr. Hoppe twice. These depositions occurred months after Defendant received Dr. Hoppe's expert report. The first deposition, which took place on June 9, 2025, began at 8:48 a.m. and concluded at 4:51 p.m. The second deposition, which took place on September 2, 2025, began at 9:01 a.m. and concluded at 11:01 a.m. The deposition transcripts span 320 pages of testimony. Therefore, there is no prejudice to Defendant as they have adequate notice and sufficient opportunity to depose both Mr. Howard and Dr. Hoppe regarding Mr. Howard's lymph node and fatigue symptoms, and his NHL diagnosis. Defendant is fully able to defend against Mr. Howard's NHL, as well as kidney cancer, components of his Camp Lejeune claim, on their individual merits.

## ARGUMENT

## I.    The facts support the denial of Defendant's Motion.

It is an undisputed fact that Mr. Howard timely filed his CLJA claim. This claim asserted kidney cancer. Defendant argues that Mr. Howard's NHL claim accrued after August 10, 2022, and is thus not covered by the CJLA, because Mr. Howard did not report any symptoms related to the disease until March or April of 2023. (D.E. 606) at 1. However, Mr. Howard's timely-filed

claim asserting kidney cancer enabled him to add diseases, as these became clearly symptomatic

and diagnosed, which occurred in 2023 and 2024.

> As Mr. Howard testified at his deposition,

> Q: Did you have other health complaints other than the enlarged lymph nodes before the diagnosis?

> A: I was tired. That's what – that's what drove me to it. You know, I was just – March, April of last year, I was getting, you know, tuned up for the season of my bike and – bicycle. And I just wasn't – I didn't have the snap that I normally have. I wasn't as fast as I normally was. And when I was riding with the younger guys that I normally ride with on, you know, a couple of times a week, I wasn't stepping on them like I normally do.

> Q: Do you know when you first noticed the enlarged lymph nodes?

> A: Probably pretty shortly after that March – maybe March, April, somewhere in there, and I finally got to the doctor in May, because I thought, you know, it's just inflammation.

Howard Deposition at 97:5-25. Defendant did ask if there were any other symptoms from Mr.

Howard's NHL (*Id.* at 98:2-5), but Defendant did not follow up on the reported symptoms' timing.

## II. **Defendant does not develop any argument or cite to any law establishing that an injury does not occur until diagnosis. The law also supports the denial of Defendant's Motion.**

Defendant is wrong on the law that would apply to Mr. Howard's claim. CLJA § 804(j)(1)

states: "This section shall apply only to a claim accruing before the date of enactment of this Act."

The CLJA became law on August 10, 2022. By its enactment, Congress created a new federal

statutory cause of action to allow for a full and fair recovery for injuries suffered due to exposure

to toxic water at Camp Lejeune. The CLJA created one cause of action for all injuries, diseases

and diagnoses sustained by each Plaintiff, and nothing in the CLJA requires separate tort claims

or separate lawsuits for each injury, disease or diagnosis arising from Camp Lejeune exposure.

Defendant claims that § 804(j)(1) bars Mr. Howard from seeking relief for his NHL because it was not formally diagnosed before August 10, 2022, the effective date of the CLJA. This argument is without merit for the reasons stated below.

## A. "Claim" means "cause of action."

"Claim" as the term is used in 804(j)(1) means cause of action or Tort Claim. *See Williams v. Commonwealth,* 84 Va. App. 99, 117, 912 S.E.2d 462, 471 (2025) (finding that "claim" as used in the Virginia Torts Claims Act is defined as "operative facts giving rise to a right," or "synonymous with cause of action."). As stated in *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Marcas, L.L.C.,* 415 Md. 676, 689, 4 A.3d 946, 953 (2010*)*:

> "Claim is synonymous with 'cause of action,' which is defined as a set of facts sufficient to justify a court in rendering judgment in favor of the plaintiff." (internal citations omitted) (interpreting "claim" as used in the Maryland Local Government Tort Claims Act).

As the Sixth Circuit noted in *Memmer v. United Wholesale Mortg., LLC*:

> **In the context of accrual, "claim" bears only the last meaning: cause of action.** *Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.*, 603 U.S. 799, 810 (2024). A claim accrues "when the plaintiff has a 'complete and present cause of action'— i.e., when she has the right to 'file suit and obtain relief.'" *Id.* at 809 (quoting *Green v. Brennan*, 578 U.S. 547, 554 (2016)).

135 F.4th 398, 408 (6th Cir. 2025) (emphasis added, parallel citations omitted); *see also Vicor Corp. v. FII USA Inc.,* 132 F.4th 1, 6 (1st Cir. 2025) (interpreting a provision of 28 U.S.C. §1659 and citing Black's Law Dictionary's definition of "claim") ("We agree with Vicor that 'claim' means 'cause of action.'").

That "claim" means "cause of action" is further supported by § 804(j)(2), the limitation section. In subparagraph (b) of that section, the word "claim" is used synonymously to a cause of action. It refers to a claim being denied under section 2675:

> "(B) the date that is 180 days after the date on which the claim is denied under section 2675 of title 28, United States Code."

Clearly, this is a reference to the tort claim/cause of action being denied, not an injury being denied.

Defendant argues that the language "a claim in an action" that is found in 804(j)(2) means that an injury such as kidney cancer or NHL is a "claim." (D.E. 606) at 9. While this may feel familiar colloquially, it is not accurate as to the language and meaning of the CLJA, as the above references to the judicial interpretation of "claim" in other Claims Act contexts demonstrates. Defendant's argument depends upon a selectively chosen, imprecise, and colloquial use of the words "claim" and "action." This interpretation runs contrary to the pursuit of a just result as is set forth in Rule 1 of the Federal Rules of Civil Procedure ("These rules… should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.") (emphasis added). Moreover, the CLJA provides one unified cause of action for each Plaintiff under the CLJA. Within that one overall tort claim, multiple items of injury, disease and diagnoses can and do exist. In an effort to limit Mr. Howard's recovery, Defendant seeks to equate a claim to an injury. Such an argument is unsupported.

**B.** **The Forms required to be used in CLJA filings demonstrate that the CLJA created a single cause of action that encompasses all injuries, diseases and diagnoses.**

Multiple forms related to the CLJA distinguish between claim and injury, contrary to Defendant's argument that they are one and the same.

Form 95 is the form that the Department of the Navy has required to be filed to initiate CLJA administrative claims. Form 95 is also the method by which a tort claim is submitted under the FTCA. A blank Form 95 is attached for reference as Ex. C. Box #10 in Form 95 is titled "Personal Injury/Wrongful Death." This section clearly differentiates an injury from a claim, and includes multiple injuries within a claim. Form 95 requires a Plaintiff to: "State the nature and extent of **each injury** or cause of death, **which forms the basis of the claim**." *(Emphasis added).* This makes it clear that a "claim" is not defined as an "injury." A separate, discrete administrative

tort claim is not required for each and every newly discovered injury, disease or diagnosis. Injuries serve as part of the basis of a Claim, not as the Claim itself. Moreover, Form 95's Box #8, which is titled, "<u>Basis of Claim</u>" requires the claimant to state the:

> A.     "Known facts and circumstances attending the damage, injury or death";
>
> B.     "persons and property involved";
>
> C.     "The place of occurrence"; and
>
> D.     "The cause thereof."

This provides further evidence that injuries, diseases and diagnoses are part of a Claim, not the Tort Claim itself.

The Discovery Pool Profile Forms ("DPPF") that are required of certain CLJA Plaintiffs with cases filed in Court further support this point. A blank DPPF is attached hereto as Ex. D. The language of the DPPF form supports that each Plaintiff has one cause of action meant to encompass all injuries, diseases and diagnoses. The DPPF directs a Plaintiff to state: "What **diseases or injuries** does the claimant assert are related to exposure to water at Camp Lejeune? (choose all that apply)" DPPF at 7 (Ex. D) (emphasis added). A Plaintiff must also complete a series of questions for each "injury" asserted under the cause of action. *Id.* The DPPF filed on behalf of Mr. Howard identified each of the injuries that he asserts under his CLJA cause of action including kidney cancer and NHL. The DPPF filed on behalf of Mr. Howard is attached as Ex. E.

Moreover, the Complaint filed by Mr. Howard for his CLJA cause of action sets forth one overall cause of action and clearly states that Plaintiff's damages include multiple illnesses, not just one. Ex. F (Complaint dated March 27, 2023 attached hereto). The Complaint alleges the following: "A causal relationship exists between each of the Plaintiff's <u>illnesses</u> and the contaminants Plaintiff was exposed to in the Camp Lejeune water supply." *Id.* at ¶ 26. (emphasis added). Thus, it is also clear from Mr. Howard's Complaint that his cause of action seeks justice

for each of his multiple injuries, diseases and diagnoses.[2] Plaintiffs in the Camp Lejeune water litigation are not required to file a separate Complaint in Court for each injury, disease or diagnosis.

Lastly, the language of Case Management Order ("CMO") No. 2 [D.E. 23] issued by this Court on September 26, 2023 supports that CLJA Plaintiffs have one cause of action that is meant to encompass all injuries, diseases and diagnoses. Section VI of CMO No. 2 mandates the use of Short Form Complaints. CMO No. 2 requires that each Plaintiff file one Short Form Complaint for all injuries suffered from the same exposure. The Short Form Complaint directs a Plaintiff to: "Identify the illnesses or conditions the Plaintiff suffered as a result of exposure to contaminated water at Camp Lejeune." *See* [D.E. 23] (CMO No. 2) at 16 (page 3 of the Short Form Complaint). There is no requirement that a discrete and separate Short Form Complaint be filed for each and every injury, disease or diagnosis in CMO No. 2 or in the Short Form Complaint template. Instead, one cause of action exists for all damages. The Short Form Complaint can be amended as newly discovered injuries are identified. But no discrete and separate Short Form Complaints are required to be filed.[3]

### C. Mr. Howard's CLJA cause of action Arose before August 10, 2022.

A cause of action accrues when:

1. A legally recognized cause of action exists;

---

[2] On August 10, 2022, the CLJA was enacted and the CLJA cause of action was created. Prior to the enactment of the CLJA, a factual foundation existed to serve as an initial basis for Mr. Howard to file an administrative claim, because he was exposed to the Camp Lejeune water and had been injured as a result. At that time, he knew of his kidney cancer diagnosis, but did not yet know of his NHL—even though, as explained below, he already experienced symptoms of NHL. Mr. Howard filed his CLJA administrative claim on the very day the CLJA was enacted. His administrative claim was timely filed on August 10, 2022. Mr. Howard's Administrative Claim Form is attached as Ex. I.

[3] Mr. Howard filed his Short Form Complaint on November 6, 2023, which is attached at Ex. G. On May 21, 2024, Mr. Howard filed an amended Short Form Complaint after he was diagnosed with NHL which is attached hereto as Ex. H. The amendment added his newly discovered NHL injury to his pre-existing cause of action. *Id.* at 3.

2.      A sufficient initial proof of liability exists;

3.      A sufficient initial proof of injury exists; and

4.      A sufficient causal connection exists between the wrongdoing and the injury.

*See generally* Restatement (Third) of Torts § 2.

Under section 804(j)(1), every CLJA tort claim accrued on August 10, 2022, the date the cause of action was created. *See Fancher v. United States*, 646 F. Supp. 3d 694, 700 (E.D.N.C. 2022) ("…the Camp Lejeune Justice Act applies to those damaged by exposure to the water at Camp Lejeune before August 10, 2022 (i.e., the date when the Camp Lejeune Justice Act became law)."). What section 804(j)(1) requires is that sufficient initial evidence of 2–4 above existed prior to that effective date. In the normal course, a legal claim accrues when "a person is injured." *See McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019); *Fancher*, 646 F. Supp. 3d at 700. If a cause of action has multiple elements, the statute of limitations accrues when the final element occurs. By stating that accrual generally occurs when a person is injured, *Fancher* does not equate a claim to an injury. Instead, the Court in *Fancher* very reasonably recognized that the other elements of a cause of action leading to an injury almost always occur before an injury, making the injury typically the final element of a cause of action. *Id*.

Moreover, Section 804(j)(1) does not provide a limitation period. It requires that the factual underpinning that serves as the initial basis to be able to file an Administrative Tort Claim with the Navy had to arise before the cause of action was created on August 10, 2022. It describes what facts had to exist before the enactment of the CLJA. In *Stahle v. CTS Corp.*, 817 F.3d 96 (4th Cir. 2016), the Fourth Circuit held that North Carolina General Statute Section 1-52(16)'s ten-year statute of repose does not apply to disease-related claims because, according to the court, a disease is not a "latent injury." *Id*. at 99. The district court dismissed the plaintiff's complaint saying the

statute of repose in Section 1-52(16) barred the action and the Fourth Circuit reversed. *Id.* The court read a latent injury requirement into the statute even though it did not mention the word injury, finding that § 1-52(16) "appears to apply to that set of personal injuries for which 'bodily harm to the claimant … becomes apparent' at some point in time after the injury, N.C. Gen. Stat. § 1-52(16); that is, it applies to latent injuries." *Id.* at 104. The CLJA abrogated the North Carolina statute of repose. It would be both illogical and unfair to think that the CLJA would then be stricter on accrual than the statute of repose it eliminated as an unfair barrier to justice.

There is no dispute that Mr. Howard's CLJA cause of action arose before August 10, 2022, at least as to his kidney cancer. This satisfies the statutory requirement to bring his claim, and, as previously discussed, the statute puts no limit on other injuries related to a claim that accrued by that date.

## III. Mr. Howard's NHL is a newly discovered injury, disease and diagnosis that relates back prior to August 10, 2022.

### A. Mr. Howard's NHL is a newly discovered injury, disease and diagnosis that relates back prior to the effective date of the CLJA.

Mr. Howard's NHL relates back to the factual foundation for his CLJA Claim that existed before August 10, 2022, under the administrative processes and procedures of the FTCA.

#### 1. CLJA Plaintiffs must follow the administrative processes and procedures of the FTCA.

Decisions from three judges of this Court have clearly recognized that section 2675 of the FTCA applies to Administrative Tort Claims filed under the CLJA[4].

In *Pugh v. United States*, No. 7:22-CV-124-BO-BM, 2023 WL 1081262, at *4 (E.D.N.C. Jan. 27, 2023), Judge Boyle stated that "[b]efore a plaintiff may bring an action under the CLJA, he or she must first comply with the Federal Tort Claims Act (FTCA)."

---

[4] While the three decisions cited refer to § 2675(a), it is reasonable to conclude that § 2675(b) applies as well.

In *Fancher*, 646 F. Supp. 3d at 698, Judge Dever expressly noted that plaintiffs are required to comply with the administrative requirements of section 2675 of the FTCA before bringing a Tort Claim under the CLJA:

> Congress provided that "[a]n individual may not bring an action under this section [i.e., the Camp Lejeune Justice Act] before complying with section 2675 of title 28, United States Code." *Id.,* § 804(h).

In *Girard v. United States*, No. 2:22-CV-22-FL, 2023 WL 115815, at *2 (E.D.N.C. Jan. 5, 2023), Judge Flanagan similarly stated that all plaintiffs in the Camp Lejeune litigation are required to follow section 2675 of the FTCA:

> The CLJA requires exhaustion of administrative remedies prior to filing such an action under the CLJA, through the following provision: "DISPOSITION BY FEDERAL AGENCY REQUIRED. – An individual may not bring an action under this section before complying with section 2675 of title 28, United States Code." CLJA, § 804(h) (hereinafter the "exhaustion provision").

Section 2675 applies to all Administrative Tort Claims and subsequent lawsuits filed under the CLJA.

### 2. § 804(h) of the CLJA requires compliance with section 2675 of the FTCA.

Section 804(h) of the CLJA states:

"An individual may not bring an action under this section before complying with section 2675 of title 28, United States Code."

The CLJA requires that section 2675 be followed.

### 3. 28 U.S.C. § 2675(b) includes Mr. Howard's NHL in his Camp Lejeune claim.

Section 2675(b) expressly states that:

"Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." (emphasis added.)

Under section 2675, evidence of an additional injury, disease or diagnosis that was reasonably newly discovered after the filing of an Administrative Tort Claim can be integrated into that existing Administrative Claim.

There was no reasonable way Mr. Howard could have discovered his NHL prior to the filing of his Administrative Tort Claim. Mr. Howard knew, of course, about his kidney cancer but had absolutely no information or idea, before or on August 10, 2022 that he also had NHL. There is no evidence of any kind that establishes a medical link between kidney cancer and NHL, though both are linked to Camp Lejeune exposure. As soon as Mr. Howard experienced swollen lymph nodes in March/April of 2023, he diligently sought medical advice. Defendant admits in its "Statements of Facts", paragraph numbers 2 (a-f), 3, 4, 5, 9, and 10 that Mr. Howard's swollen lymph nodes caused by his NHL did not develop until March/April 2023. NHL is timely included in Mr. Howard's CLJA claim under the law regarding relation back of injuries, diseases and diagnoses.

In determining when a Plaintiff is entitled to recover for additional damage items discovered after filing an Administrative Tort Claim, the Fourth Circuit "has adopted the approach more favorable to the injured party." *Murphy v. United States*, 833 F. Supp. 1199, 1203–04 (E.D. Va. 1993).

In *Spivey v. United States*, the seminal Fourth Circuit case on this issue, the plaintiff was injured in a motor vehicle crash. 912 F.2d 80, 82 (4th Cir. 1990). The negligent driver was a government employee. *Id.* The plaintiff and her husband filed an amended Administrative Tort Claim pursuant to the FTCA in January of 1987. *Id.* at 83. The claim form filed reflected the injuries that the plaintiffs were aware of at that time and sought $594,124.25 in damages. *Id.* After exhausting the administrative requirements, the plaintiffs filed a lawsuit. *Id.*

In or around August of 1987 after the lawsuit was filed, Mrs. Spivey began to develop signs and symptoms of a new injury, Tardive Dyskinesia. *Id.* at 86. This resulted as a side effect of the medication that Mrs. Spivey took to treat her injuries from the accident. *Id.* At trial, the plaintiffs presented damage evidence related to Tardive Dyskinesia.

The *Spivey* Court determined that plaintiffs had proven their damages in excess of the amount originally sought. United States District Court Judge Denson had found that the diagnosis of Tardive Dyskinesia and the prognosis associated with it constituted "newly discovered" evidence under section 2675(b) because the diagnosis could not have been discovered prior to January 1987 when the Administrative Tort Claim was filed. *Id.* As newly discovered evidence, a higher damage award was warranted.

The Fourth Circuit affirmed, explaining:

> The uncontroverted evidence in the record does support the court's finding that Mrs. Spivey's development of tardive dyskinesia could not have been discovered prior to the filing of the administrative claim. The amended claim was filed in January 1987. Medical records show that Mrs. Spivey did not develop symptoms of tardive dyskinesia until August 1987. Tardive dyskinesia is a known possible side effect of the medications which Mrs. Spivey began taking in the fall of 1985. However, prior to August 1987, Mrs. Spivey exhibited no symptoms of that side effect. Therefore, we affirm the court's finding that the occurrence of this side effect, after the administrative claim was submitted, was "newly discovered" evidence within the meaning of § 2675(b).

*Id.* at 85–86.

Other courts within the Fourth Circuit have permitted evidence of newly discovered damages at trial. In *Murphy*, the Court held that the damage award was not limited to the amount claimed on the administrative claim form because the "Plaintiff and her health care providers were unaware of the true nature and extent of her cognitive deficits, seizure-like disorder and functional disabilities at the time the administrative claim was filed." 833 F. Supp. at 1204.

Similarly, in West Virginia, the Court held in *Adkins v. United States* that an infant's diagnosis of "global developmental delay" warranted an increase from $6,300,000 (damages sought in administrative form) to $21,927,334 (damages awarded) because although it was known at infant's birth that severe and permanent developmental disabilities were a possibility, it was not until after Administrative Claim was filed that doctors established concretely that the infant would have such significant, permanent disabilities. 990 F. Supp. 2d 621 (S.D. W. Va. 2014).

An additional damage item such as Mr. Howard's NHL does not create a new and separate cause of action. It serves as an additional basis for his already filed Administrative Tort Claim.

### 4. Mr. Howard's NHL does not constitute a new cause of action. It is a newly discovered injury, disease and diagnosis that relates back prior to August 10, 2022.

A newly discovered injury, disease or diagnosis does not create a new and separate cause of action under the FTCA. *See Spivey,* 912 F.2d at 82; *Murphy*, 833 F. Supp. at 1204; *Adkins*, 990 F. Supp. 2d at 621. Under the CLJA, newly discovered injuries, diseases and diagnoses relate back to the factual underpinnings that served as the initial basis for the Administrative Tort Claim that Mr. Howard filed.

Mr. Howard was diagnosed with NHL in August of 2023. The exposure that caused this injury occurred at Camp Lejeune. The injury that caused the NHL occurred before August 10, 2022. Mr. Howard could not reasonably have discovered that he had NHL prior to filing his Administrative Tort Claim. The NHL injury disease and diagnosis was newly discovered evidence under section 2675. It relates back to the initial factual basis of his Administrative Tort Claim.

## IV. The Separate Disease Rule does not apply.

Defendant erroneously argues that the "separate disease rule" bars Mr. Howard's cause of action as it applies to his NHL injury. *See* (D.E. 606) at 10. The "separate disease rule" applies when a plaintiff has already filed one lawsuit after developing a disease and a second disease from

the same exposure develops outside of the statute of limitations. The separate disease rule allows for a second lawsuit to be filed to recover for the second disease. *See Nelson v. A.W. Chesterton Co.*, No. 10-00065, 2011 WL 6016986, at *1 n.1 (E.D. Pa. Oct. 27, 2011).

This is a completely different setting. Mr. Howard has filed a single lawsuit under the CLJA within the statute of limitations. There is no second lawsuit. There is no disease that developed outside of the statute of limitations. There is no dispute that Mr. Howard's Administrative Tort Claim and lawsuit were timely filed. Mr. Howard is not seeking to utilize the separate disease rule to extend the statute of limitations set forth in the CLJA.

The issue here does not involve when a lawsuit can be brought, i.e., it is not about when the statute of limitations begins to run. That is the purview of section 804(j)(2) of the CLJA. The issue here is what facts had to arise before the right to sue was created pursuant to section 804(j)(1).

Defendant's reliance on the "separate disease rule" is misguided for a number of reasons. First, the separate disease rule only applies to postpone the running of a statute of limitations. By raising the "separate disease rule," Defendant seeks to portray section 804(j)(1) as having the same effect as a statute of limitations provision. This is an inaccurate interpretation. Second, legal doctrines such as the separate disease rule are intended to *preserve*, not limit, a plaintiff's right to recover for later-developing diseases. The rule's aim is to help injured plaintiffs by extending the time within which they can file suit as a matter of statutory law and public policy. *Nelson*, 2011 WL 6016986, at *1 n.1. The separate disease rule exists to avoid barring recovery for later-developing damages. It would be contrary to the policy behind the separate disease rule to allow it to be used to restrict the scope of recovery where a cause of action has been timely filed.

The separate disease rule respects the reality that not all injuries can be known or appreciated at the time of filing an initial cause of action and multiple injuries can be caused by the same exposure.

In permitting recovery for "harm that was caused by exposure to the water at Camp Lejeune," Congress intended for service men and women and their families to recover for the harm they have suffered that is related to timely filed Causes of Action. *See* CLJA § 804(b). Just as the separate disease rule permits recovery for different diseases caused by the same exposure, so does the CLJA.

## **<u>CONCLUSION</u>**

For all of the reasons set forth in this memorandum, Plaintiff respectfully urges this Honorable Court to deny Defendant's Motion for Partial Summary Judgment (D.E. 605).

Dated: November 10, 2025.

|  |  |
|---|---|
| */s/   J. Edward Bell, III* | */s/   Zina Bash* |
| J. Edward Bell, III (admitted *pro hac vice*) | Zina Bash (admitted *pro hac vice*) |
| Bell Legal Group, LLC | Keller Postman LLC |
| 219 Ridge St. | 111 Congress Avenue, Suite 500 |
| Georgetown, SC 29440 | Austin, TX 78701 |
| Telephone: (843) 546-2408 | Telephone: 956-345-9462 |
| jeb@belllegalgroup.com | zina.bash@kellerpostman.com |
|  |  |
| *Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs and Government Liaison Counsel* |
|  |  |
| */s/   Elizabeth J. Cabraser* | */s/   W. Michael Dowling* |

Elizabeth J. Cabraser (admitted *pro hac vice*)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
*ecabraser@lchb.com*

*Co-Lead Counsel for Plaintiffs*

/s/   Robin L. Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com

*Co-Lead Counsel for Plaintiffs*

/s/   Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel for Plaintiffs*

W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com

*Co-Lead Counsel for Plaintiffs*

/s/   James A. Roberts, III
James A. Roberts, III
Lewis & Roberts, PLLC
3700 Glenwood Ave., Ste. 410
Raleigh, NC 27612
Telephone: (919) 981-0191
jar@lewis-roberts.com

*Co-Lead Counsel for Plaintiffs*