IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: | ) |
| CAMP LEJEUNE WATER LITIGATION | ) |
| | ) |
| This Pleading Relates to: | ) |
| | ) |
| ALL CASES. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF LEADERSHIP GROUP'S MOTION TO STRIKE DR. JULIE GOODMAN'S UNTIMELY AND IMPROPER SUPPLEMENTAL EXPERT REPORTS**

## TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 2 |
| LEGAL STANDARD | 4 |
| ARGUMENT | 5 |
| I. Dr. Goodman's newly-disclosed materials are not supplements under Rule 26(e). | 5 |
|     A. Dr. Goodman's newly-disclosed materials do not correct "typographical or inadvertent errors;" she makes substantive changes to many of her opinions. | 6 |
|     B. Dr. Goodman's newly-disclosed materials are not timely. | 9 |
| II. The remedy for Defendant's failure to make a supplemental disclosure in accordance with Rule 26(e) is exclusion of Dr. Goodman's new materials. | 11 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akeva L.L.C v. Mizuno Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) ...................................................................6, 12, 13, 15

*Beller ex rel. Beller v. United States*,
221 F.R.D. 696 (D.N.M. 2003) ......................................................................................6, 14

*Bresler v. Wilmington Tr. Co.*,
855 F.3d 178 (4th Cir. 2017) ...........................................................................................5

*Carteret Inv. Associates, LLC v. Mt. Hawley Ins. Co.*,
No. 4:21-CV-157-FL, 2023 WL 9034243 (E.D.N.C. Dec. 29, 2023) ....................14

*Collier v. Bradley Univ.*,
113 F. Supp. 2d 1235 (C.D.Ill. 2000) .............................................................................13

*Colony Apartments v. Abacus Project Mgmt., Inc.*,
197 F. App'x 217 (4th Cir. 2006) ...................................................................................14

*EEOC v. Freeman*,
961 F. Supp. 2d 783 (D. Md. 2013), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015) ................................................................. passim

*Gallagher v. S. Source Packaging, LLC*,
568 F. Supp. 2d 624 (E.D.N.C. 2008) (J. Dever) .............................................. passim

*Gestetner Corp. v. Case Equip. Co.*,
107 F.R.D. 138 (D. Me. 1985) ........................................................................................12

*Keener v. United States*,
181 F.R.D. 639 (D.Mont. 1998) .....................................................................................6

*Lightfoot v. Georgia-Pacific Wood Prods, LLC*,
No. 7:16-CV-244, 2018 WL 4517616 (E.D.N.C. Sept. 20, 2018) .................. passim

*Luke v. Family Care & Urgent Med. Clinics*,
323 Fed. Appx. 496 (9th Cir. 2009) ...........................................................................1, 6

*Petersen v. Midgett*,
140 F. Supp. 3d 490 (E.D.N.C. 2015) ...........................................................................6

*Pierce v. N.C. State Bd. of Elections*,
No. 4:23-cv-193, 2024 WL 5170738 (E.D.N.C. Dec. 18, 2024) (J. Dever) .... passim

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
318 F.3d 592 (4th Cir. 2003) .....................................................................................12, 13

*Silicon Knights, Inc. v. Epic Games, Inc.*,
No. 5:07-CV-275-D, 2012 WL 1596722 (E.D.N.C. May 7, 2012) ..........................5

*SMD Software, Inc. v. EMove, Inc.*,
   No. 5:08–CV–403, 2013 WL 5592808 (E.D.N.C. Oct. 10, 2013) ..........................................12

*Southern v. Bishoff*,
   675 Fed.Appx. 239 (4th Cir. 2016)......................................................................................11

*Velasquez v. Salsas & Beer Restaurant, Inc.*,
   No. 5:15-CV-146, 2016 WL 3339488 (E.D.N.C. June 13, 2016) ...........................................12

*Western Plastics, Inc. v. DuBose Strapping, Inc.*,
   334 F. Supp. 3d 744 (E.D.N.C. 2018) ..................................................................................11

*Wilson v. Sundstrand Corp.*,
   No. 1:99-cv-6944, 2003 WL 22012673 (N.D. Ill. Aug. 25, 2003)
   (unpublished) ......................................................................................................................13

**Court Rules**

Federal Rule of Civil Procedure 16(b)(4) ...................................................................................12

Federal Rule of Civil Procedure 26 .........................................................................................2, 4

Federal Rule of Civil Procedure 26(a)(2) .....................................................................................4

Federal Rule of Civil Procedure 26(e)(1) ........................................................................4, 10, 13

Federal Rule of Civil Procedure 37(c)(1) ........................................................................5, 10, 12

Plaintiff Leadership Group ("PLG" or "Plaintiffs") moves to strike the untimely and improper supplemental general causation reports submitted by the United States' ("Defendant") expert Dr. Julie Goodman ("Dr. Goodman"). (D.E. 686-2)-(D.E. 686-11). After the due date for serving expert reports, after the PLG took her deposition, and after the PLG moved to exclude her testimony pursuant to Rule 702, Dr. Goodman submitted approximately 300 changes to her expert submission in direct response to PLG's motion to exclude her as an expert. That is a flagrant violation of the federal rules that warrants the relief sought here – the striking of her revised reports.

## INTRODUCTION

"[E]xpert disclosures are fixed targets, and not ones movable at will." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015). "Rule 26(e) is not a loophole through which a party ... who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed.'" *Id*. (quoting *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009)). But Defendant did just that last week in response to Plaintiffs' motion to exclude Dr. Goodman pursuant to Rule 702 and *Daubert*. (D.E. 621). Dr. Goodman altered the charts that contain the data supporting her reports. The alterations relate to facts in the most important epidemiology studies in this case. Over approximately a thousand pages, Dr. Goodman made **three hundred edits to the analysis of seventy-five individual epidemiology studies**. *See generally* (D.E. 686-2)-(D.E. 686-11). Many are substantive. For example, there were over **one hundred instances** where Dr. Goodman entirely changed her opinion about a fact relating to the quality of a particular study from a "strength" to a "weakness" or vice versa. *See* Ex. A at 1-97 (Dr. Goodman's Diametrically Different Changes In Her Proposed Revisions, attached hereto). This supplementation contravenes this Court's scheduling orders and Federal Rule of Civil Procedure 26.

## BACKGROUND

To promote efficient resolution of this consolidated litigation, the Court entered multiple scheduling orders governing phased expert discovery.[1] *See* (D.E. 270); (D.E. 312); (D.E. 414). Expert discovery has proceeded in three phases: Phase I (water contamination), Phase II (general causation), and Phase III (specific causation, damages, and residual issues). *Id*. Defendant disclosed Dr. Goodman as its general causation expert for all five Track I diseases.

On February 7, 2025, pursuant to the Court's scheduling orders, Dr. Goodman submitted five expert reports, one for each Track I disease.[2] Attached to Dr. Goodman's reports are lengthy appendices wherein Dr. Goodman's staff (and purportedly Dr. Goodman) analyzed the "quality [and] characteristics" of studies and evaluated what Dr. Goodman opined were the "study results." (D.E. 686-2 ¶ 8).

On April 29, 2025, Plaintiffs deposed Dr. Goodman. *See generally* Goodman Dep. Tr. (JA Ex. 172, D.E. 471-1). Expert discovery for Phase II experts, including Dr. Goodman, closed on May 14, 2025. (D.E. 312). On June 13, 2025, Dr. Goodman signed an Errata sheet; she did not change any of the errors at issue in this motion and in Dr. Goodman's now-altered charts. Goodman Dep. Err. (JA Ex. 173, D.E. 471-2).

On June 25, 2025, the Court entered a scheduling order setting additional deadlines: the Parties' opening briefs for Phases II and III were due on September 10, 2025, opposition briefs were due on November 10, 2025, and reply briefs are due on December 12, 2025. (D.E. 414).

Pursuant to the schedule, Plaintiffs moved to exclude Dr. Goodman on September 10, 2025 on a number of grounds—including that her testimony was unreliable because her reports were

---
[1] The court entered the initial Pretrial Scheduling Order on August 7, 2024. (DE-270).
[2] Goodman Rep. (Bladder) (JA Ex. 75, D.E. 463-14); Goodman Rep. (Kidney) (JA Ex. 94, D.E. 464-15); Goodman Rep. (Leukemia) (JA Ex. 102, D.E. 465-7); Goodman Rep. (NHL) (JA Ex. 117, D.E. 466-11); Goodman Rep. (PD) (JA Ex. 134, D.E. 467-17).

self-contradictory. (D.E. 622) at 17-27. For example, in her kidney cancer charts Dr. Goodman stated that it was a "STRENGTH" of Bove (2024b) that the authors considered "negative control diseases" to account for smoking history. Goodman Rep. (Kidney) at C-32 (JA Ex. 94, D.E. 464-15). By contrast, in her bladder cancer and leukemia charts, she stated a "WEAKNESS" of the ***very same study*** was that the authors "[d]id not control for or consider smoking[.]" Goodman Rep. (Bladder) at C-41 (JA Ex. 75, D.E. 463-14); Goodman Rep. (Leukemia) at C-40 (JA Ex. 102, D.E. 465-7). In other words, these are completely different interpretations of the same fact in the same study. At her deposition, Dr. Goodman could not explain the inconsistencies between her charts. Goodman Dep. Tr. at 258:2-13 (JA Ex. 172, D.E. 471-1).

In moving to exclude her, PLG pointed out that one obvious reason for these inconsistencies was Dr. Goodman's admission that her staff (in this case approximately ***sixty*** employees) were the ones who wrote the majority of her reports. (D.E. 622) at 17-27. For example, another epidemiologist also employed by Dr. Goodman's company, Gradient, billed approximately twenty-three hundred (2,300) hours on this case. (D.E. 622) at 18. As PLG noted, if multiple people actually authored the multiple reports, as Dr. Goodman admitted, it is not surprising there are inconsistencies. This evidences the flawed methodology and unreliability of Dr. Goodman's opinions that warrant her exclusion as an expert.

On November 10, 2025, Defendant filed its opposition to PLG's motion, attaching to it the new and revised reports for all five Track I diseases. (D.E. 686-2-686-11). These revised reports consist of re-worked analyses of the same studies disclosed in Dr. Goodman's original reports. (D.E. 686-2-686-11). Defendant framed this new disclosure as a "supplementation." (D.E. 686-2)-(D.E. 686-11). Dr. Goodman did not sign the altered appendices, but instead attached them to a signed Declaration, dated November 10, 2025. The Declaration filed by Dr. Goodman evidences

-3-

her bias and the unreliability of her opinions. Dr. Goodman stated under oath that the reason for her need to supplement was because she and her team had made "typographical or inadvertent errors." (D.E. 626-2 at ¶ 10.). A cursory review of the hundreds of revisions show that her changes are not typographical or inadvertent errors.[3] Dr. Goodman went on to state, under oath, that these errors do not "impact any of [her] analyses or opinion" *Id*. That statement, likewise, is not true.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 ("Rule 26") governs general discovery and disclosures, including expert witnesses and their reports. Rule 26(a)(2) requires disclosure of expert reports containing "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Rule 26(e) requires supplementation "in a timely manner" when a "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. Proc. 26(e)(1)(A); *see also Pierce v. N.C. State Bd. of Elections*, No. 4:23-cv-193, 2024 WL 5170738, at *3 (E.D.N.C. Dec. 18, 2024) (J. Dever) ("Rule 26(e) requires a supplemental report when a party 'learns that in some material respect the disclosure or response is incomplete or incorrect.'"). "Rule 26(e) does not, however, create a 'right to produce information in a belated fashion.'" *Pierce*, 2024 WL 5170738, at *3 (quoting *Freeman*, 961 F. Supp. at 797).

---

[3] Dr. Goodman's statements that these are typographical errors are further belied by the fact that she and her company, Gradient, billed over 4.3 million dollars for the drafting of the original five reports. Approximately sixty Gradient employees spent over 12,000 hours reviewing and preparing the original reports. It is simply not believable that there would be *hundreds* of "typographical" or "inadvertent" errors missed by that many people. The only logical explanation is that Plaintiffs were correct: the reports are inconsistent because they were written, not by Dr. Goodman, but by many different members of her junior staff. Dr. Goodman's attempt to cover this fact up by belatedly "supplementing" her charts should not be accepted by this Court.

Rule 37 governs the failure to make proper disclosures. Courts have broad discretion to determine the propriety of supplemental materials and fashion a remedy for violating Rule 26. *See Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *2 (E.D.N.C. May 7, 2012); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

## ARGUMENT

Dr. Goodman's alteration of her charts does not qualify as true supplementation under Rule 26(e) both because the materials provide new conclusions and analysis and because they are untimely. For both of these reasons, the new reports should be stricken.

**I. Dr. Goodman's newly-disclosed materials are not supplements under Rule 26(e).**

"Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (J. Dever). The acceptance of a supplemental report that does not amount to "true supplementation" under Rule 26(e) would "promote gamesmanship and delay." *Id.*; *see also Pierce*, 2024 WL 5170738, at *3 (finding an expert report was not a true supplementation when it contained new expert opinions in response to the opposing parties' criticisms of the expert's original opinions). Moreover, Rule 26(e) is not a "loophole through which a party ... who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Freeman*, 961 F. Supp. 2d at 797 (quoting *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed.Appx. 496, 500 (9th Cir. 2009)).

Courts repeatedly reject supplementation of expert reports with untimely "new and improved" expert reports. *See e.g.*, *Petersen v. Midgett*, 140 F. Supp. 3d 490, 502 (E.D.N.C. 2015); *Gallagher*, 586 F. Supp. 2d at 631; *Pierce*, 2024 WL 5170738, at *3; *Beller ex rel. Beller v. United States,* 221 F.R.D. 696, 701 (D.N.M. 2003) ("To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given."). Dr. Goodman's newly-disclosed opinions are not proper supplementation under Rule 26(e) and should be stricken.

### A. Dr. Goodman's newly-disclosed materials do not correct "typographical or inadvertent errors;" she makes substantive changes to many of her opinions.

"Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States,* 181 F.R.D. 639, 640 (D.Mont. 1998); *see also Pierce* 2024 WL 5170738, at *3. "It does not cover failures of omission because the expert did an inadequate or incomplete preparation." *Akeva L.L.C v. Mizuno Corp.,* 212 F.R.D. 306, 310 (M.D.N.C. 2002).

In opposing PLG's motion to exclude Dr. Goodman, Defendant claims that any errors in Dr. Goodman's appendices were "inadvertent" and constituted "typographical" errors. (D.E 686) at 19. This is not accurate. A comparison between Dr. Goodman's initial report and the new materials reveals that the alterations are mostly substantive and address the exact deficiencies and errors that PLG identified in its motion to strike her initial reports.[4]

---

[4] In contrast, Defendant's other experts Dr. Lisa Bailey and Dr. Michael McCabe timely submitted actual supplemental reports long before the deadline for filing *Daubert* motions. These supplemental reports corrected inadvertent typographical errors. Dr. Bailey corrected ten numerical errors in a table for a single plaintiff's report. Ex. B at 1 (Errata – Expert Rep. of Bailey, attached hereto). Dr. McCabe made a few corrections to typos in each of his reports with four such corrections in his bladder cancer report, seven in his kidney cancer report, and six in his NHL/Leukemia report. McCabe Rep. Err. at 1-2 (JA Ex. 176, D.E. 471-5) (i.e., changing "TCE" to "benzene" or "bladder" to "kidney").

-6-
3365295.5
Case 7:23-cv-00897-RJ    Document 725    Filed 11/19/25    Page 10 of 20

Dr. Goodman made approximately **three hundred substantive edits** to her analysis of **seventy-five individual studies**. *See* (D.E. 686-3)–(D.E. 686-11); *See also generally* Ex. A. The most egregious substantive alterations are outlined in Plaintiffs' Exhibit A. For example, in analyzing Bove 2014b, *Mortality study of civilian employees exposed to contaminated drinking water at USMC Base Camp Lejeune: a retrospective cohort study*, a study that assessed actual Camp Lejeune exposures and disease risk, Dr. Goodman's new materials changed critical facts in terms of the reliability of this study.

| Bove et al. (2014a) | Civilian employees at CL and CP | T | P | B | V | Strengths<br>• Appropriate comparison groups<br>• ≤ 2% loss to follow-up<br>Weaknesses<br>• Most of the cohort was < 65 yrs old by end of follow-up (> 70% CL, > 60% CP) | Strengths<br>• No missing data<br>• Direct chemical exposure measurement (measured in groundwater)<br>• Internal analyses considered duration of employment and average exposure<br>Weaknesses<br>• Indirect chemical exposure measurement – based on employment at CL (external analyses) or modeling of groundwater contamination (internal analyses)<br>• External analyses did not consider duration of employment and average exposure | Strengths<br>• Deaths identified from SSA, a commercial tracing service, and NDI; cause of death determined from NDI Plus<br>• No missing data<br>Weaknesses<br>• Assessed mortality only | Strengths<br>• Controlled for: age, and sex in US comparison and sex and occupation in CP and internal comparisons<br>• Considered smoking using negative control diseases<br>• Considered but did not control for: age in CP and internal comparisons because adjusted vs. unadjusted results differed by < 10%<br>• Collected occupation data quarterly during employment<br>Weaknesses<br>• Did not consider or control for: genetic factors or family history of PD or, alcohol intake, smoking in any analyses, or other potential occupational exposures in US comparison<br>• Unclear whether occupation was analyzed in a time-varying manner, other Covariates only | Strengths<br>• Employment histories collected separately from outcome data<br>• Appropriate consideration of latency<br>Weaknesses<br>• No major weaknesses |

Dr. Goodman changed two key facts regarding the reliability of the study from the "Weaknesses" category to the "Strengths" category.[5] *See* Ex. A at 95 & (D.E. 686-12) (Parkinson's Rep. Changes) at C-1. These two changes, from "Weaknesses" to "Strengths," are particularly important because Dr. Goodman entirely discounts the epidemiology studies from Camp Lejeune

---

[5] Dr. Goodman erroneously mixed up the titles of certain studies. Therefore, when Dr. Goodman refers to the Bove (2014a) civilian mortality study in her Parkinson's report, she is actually referring to the Bove (2014b) civilian mortality study. There are other similar errors in her titles of the Camp Lejeune studies throughout her reports.

-7-

as a result of her conclusion that the studies are unreliable. *See* Goodman Rep. (Bladder) at 51 (JA Ex. 75, D.E. 463-14); Goodman Rep. (Kidney) at 50 (JA Ex. 94, D.E. 464-15); Goodman Rep. (Leukemia) at 55 (JA Ex. 102, D.E. 465-7); Goodman Rep. (NHL) at 49 (JA Ex. 117, D.E. 466-11); Goodman Rep. (PD) at 45 (JA Ex. 134, D.E. 467-17). This type of change is widespread. *See e.g.*, Exhibit A at 42 & (D.E. 686-6) (Kidney Cancer Rep. Changes) at C-31; Exhibit A at 20 & (D.E. 686-4) (Bladder Cancer Rep. Changes) at C-48; Ex. A at 54 & (D.E. 686-8) (Leukemia Rep. Changes) at C-22; and Ex. A at 74 & (D.E. 686-10) (NHL Rep. Changes) at C-8.

Such changes are substantive, as they reverse Dr. Goodman's assessments of the strength of a study – specifically, as to the quality of the most important studies in this case. Dr. Goodman herself stated in her original reports that she "evaluated the quality of the epidemiology and animal carcinogenicity studies to determine how valid and reliable the results of individual studies are for addressing causation." Goodman Rep. (Kidney) at 15 (JA Ex. 94, D.E. 464-15). In other words, the quality of the epidemiology determined whether Dr. Goodman found a particular study valid and reliable. To change aspects of a study from weak to strong (or vice versa), therefore, is a new and changed opinion of the same evidence.

Moreover, Dr. Goodman testified that the charts served as the foundation for the content of her reports. Goodman Dep. Tr. at 212:24-214:15 (JA Ex. 172, D.E. 471-1). A comparison of Dr. Goodman's charts to the body of her reports reveals this to be true: strengths and weaknesses in Dr. Goodman's charts are incorporated directly into the body of her reports. *See, e.g.*, Goodman Rep. (PD) at 34-35, C-1 (JA Ex. 134, D.E. 467-17); Goodman Rep. (Kidney) at 85, C-28 (JA Ex. 94, D.E. 464-15); Goodman Rep. (Bladder) at 74, C-50 (JA Ex. 75, D.E. 463-14); Goodman Rep. (NHL) at 79, C-16 (JA Ex. 117, D.E. 466-11).

Significantly, Dr. Goodman decided not to make the same changes to her underlying reports as she made to her charts.[6] Therefore, if the new materials are allowed, the parties would be left with a situation where Dr. Goodman's ***own reports are internally inconsistent with her altered charts***.[7] Dr. Goodman's alterations create a new irreconcilable inconsistency within her expert opinions. Defendant boldly labels these significant substantive changes as "typographical" errors and "characterizes the new report as a supplementation" in an attempt to sneak in a "new and improved" expert report under Rule 26(e). *Gallagher*, 568 F. Supp. 2d at 631. Such an attempt should be rejected.

### B. Dr. Goodman's newly-disclosed materials are not timely.

Dr. Goodman's newly-disclosed materials should also be excluded because they are not timely. Rule 26(e) requires that a party supplement or correct its expert report in a "timely manner" if it learns that the disclosure is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

---

[6] Dr. Goodman relies on numerous research assistants to inform her on the studies and then bases her opinion on their review. *See* Goodman Dep. Tr. at 212:24-214:15 (JA Ex. 172, D.E. 471-1) (testifying that she had "junior staff review the studies and fill in information about the studies in tables on both the quality study characteristics and results, and these were then checked."). This methodology is clearly flawed and cannot possibly comply with *Daubert*, as Dr. Goodman did not do her own work and did not adequately check the work that others did. The unreliability of such a methodology is highlighted in this motion to strike as evidence by significant changes Dr. Goodman needed to make to her expert report, far beyond typos.

[7] For example, Dr. Goodman attempts to eliminate in her Leukemia charts a "Strength" that Aschengrau (1993) used "Direct chemical exposure measurement (i.e., modeled contaminated drinking water wells)." (D.E. 686-8) (Leukemia Rep. Changes) at C-47. However, in the body of her Leukemia report, she still states "Only ***one study*** that was conducted in Massachusetts had direct chemical measurements. Aschengrau et al. (1993) modeled participants' PCE exposure based on an algorithm of PCE leaching from vinyl-lined cement pipes into water and their residence on streets with vinyl-lined asbestos cement pipes." Goodman Rep. (Leukemia) at 68 (JA Ex. 102, D.E. 465-7) (emphasis added). There are many more examples of these inconsistencies that would be pervasive throughout Dr. Goodman's own reports and charts if these supplementations were allowed by the court.

Dr. Goodman's supplemental materials were hardly made in a "timely manner"— Dr. Goodman submitted her reports on February 7, 2025, she was deposed on April 29, 2025, expert discovery closed on May 14, 2025, and opening briefs for Phase II and III were due on September 10, 2025. *See generally* (D.E. 270); (D.E. 312); (D.E. 414). At no point in these seven months did Defendant supplement Dr. Goodman's reports, or even indicate that there were corrections that needed to be made.

Indeed, even after Plaintiffs cross-examined Dr. Goodman at her deposition in April of 2025 about several errors in her report, she did not supplement her report.[8] Goodman Dep. Tr. at 230:22-258:13 (JA Ex. 172, D.E. 471-1). Moreover, on June 13, 2025, Dr. Goodman signed an Errata sheet and did not change her substantive testimony relating to these inconsistencies, nor did she supplement her reports and charts at that time. Instead, Defendant waited until after Plaintiffs moved to exclude Dr. Goodman's opinions to address deficiencies in Dr. Goodman's reports, which includes substantive charts, for the sole purpose of addressing the issues Plaintiffs' raised in their motion.[9] This can only be seen as a "poorly disguised attempt[] to counter [Plaintiffs'] arguments with new expert analyses"; and such submissions are "clearly not proper supplementation, but instead fall into that category of counterarguments strictly prohibited by

---

[8] Specifically, Dr. Goodman was questioned about several inconsistencies in her charts. (D.E. 622) at 19-27; Goodman Dep. Tr. at 230:22-258:13 (JA Ex. 172, D.E. 471-1). In short, Dr. Goodman's charts were contradictory. A chart for one Track I disease had opposite conclusions about the quality of the same fact relating to the same epidemiological study as compared to a second Track I disease chart. For example, in her kidney cancer charts Dr. Goodman stated that it was a "STRENGTH" of Bove (2024b) that the authors considered "negative control diseases" to account for smoking history. Goodman Rep. (Kidney) at C-32 (JA Ex. 94, D.E. 464-15). By contrast, in her bladder cancer and leukemia charts, she stated a "WEAKNESS" of the ***very same study*** was that the authors "Did not control for or consider smoking[.]" Goodman Rep. (Bladder) at C-41 (JA Ex. 75, D.E. 463-14); Goodman Rep. (Leukemia) at C-40 (JA Ex. 102, D.E. 465-7). Significantly, Dr. Goodman could not explain the inconsistencies between her charts. Goodman Dep. Tr. at 258:2-13 (JA Ex. 172, D.E. 471-1).

[9] Defendant admits as much, stating in its opposition that "after considering the minor errors identified by Plaintiffs, Dr. Goodman performed a ***comprehensive review*** of the tables in all five reports." (D.E. 686) at 19.

federal courts." *Freeman*, 961 F. Supp. 2d at 797. *See also Pierce*, 2024 WL 5170738, at *3-4; *Lightfoot v. Georgia-Pacific Wood Prods, LLC*, No. 7:16-CV-244, 2018 WL 4517616, at *6-8 (E.D.N.C. Sept. 20, 2018); *Gallagher*, 568 F. Supp. 2d at 630-32; *Western Plastics, Inc. v. DuBose Strapping, Inc.*, 334 F. Supp. 3d 744, 754-55 (E.D.N.C. 2018); *Southern v. Bishoff*, 675 Fed.Appx. 239, 249 (4th Cir. 2016). Accordingly, Dr. Goodman's supplementation should be stricken.

II. **The remedy for Defendant's failure to make a supplemental disclosure in accordance with Rule 26(e) is exclusion of Dr. Goodman's new materials.**

Under Rule 37(c)(1), "[i]f a supplemental disclosure is not made in accordance with Rule 26(e), the remedy is to exclude the improper disclosure from trial 'unless the failure was substantially justified or is harmless.'" *Lightfoot*, 2018 WL 451616, at *6; *see also Pierce*, 2024 WL 5170738, at *4; *Gallagher*, 568 F. Supp. 2d at 630-32; Fed. R. Civ. P. 37(c)(1) ("[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). In assessing whether the nondisclosure was "substantially justified or harmless" courts in this Circuit consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Moreover, courts should only deviate from a scheduling order's clear deadlines upon a showing of good cause. Fed. R. Civ. P. 16(b)(4); *Velasquez v. Salsas & Beer Restaurant, Inc.*, No. 5:15-CV-146, 2016 WL 3339488, at *2 (E.D.N.C. June 13, 2016) ("A trial court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'") (quoting *Gestetner Corp. v. Case Equip. Co.*, 107 F.R.D. 138, 141 (D. Me. 1985)).

"If the court finds such a violation without good cause, it has 'broad discretion in employing sanctions.'" *SMD Software, Inc. v. EMove, Inc.,* No. 5:08–CV–403, 2013 WL 5592808, at *12 (E.D.N.C. Oct. 10, 2013) (quoting *Akeva,* 212 F.R.D. at 311). Relevant considerations include "(1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; and (4) the availability of alternative or lesser sanctions .... ( [5] ) the interest in expeditious resolution of litigation; ( [6] ) a court's need to manage its docket; and ( [7] ) public policy favoring disposition of cases on the merits." *Akeva,* 212 F.R.D. at 311. Defendant made no attempt to justify or explain any of these factors.

*First*, Defendant did not explain why it failed to disclose the evidence in a timely manner or why Dr. Goodman's initial report was incomplete or incorrect as to these substantive changes. *See* Fed. R. Civ. P. 26(e)(1)(A). Instead, as previously outlined, Defendant supplemented Dr. Goodman's report in response to Plaintiffs' motion to exclude the same testimony. Courts routinely find this type of supplementation inappropriate and untimely. *Lightfoot*, 2018 WL 4517616 at *6-8 (finding that supplemental expert reports filed in response to arguments raised by *Daubert* motions were "not timely supplemental disclosures" and ordering sanctions under Rule 37(c)(1)); *Gallagher*, 568 F. Supp. 2d at 630-31 ("Here, [Defendant] did not file the new [expert] report to correct an inadvertent error or omission. It filed the new [expert] report in order to address the numerous problems in the expert report that plaintiffs discussed in moving for summary judgment."). Moreover, while supplemental reports may sometimes be necessary and proper when new information is obtained, Defendant did not identify any new information that serves as the basis for its supplementation, because there is none. *See, e.g., S. States Rack & Fixture, Inc.*, 318 F.3d at 595-96 ("Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information."); *Freeman,* 961 F. Supp. 2d at 797; *Wilson*

*v. Sundstrand Corp.*, No. 1:99-cv-6944, 2003 WL 22012673, at *7-8 (N.D. Ill. Aug. 25, 2003) (unpublished); *Collier v. Bradley Univ.*, 113 F. Supp. 2d 1235, 1242 (C.D.Ill. 2000).

*Second*, the supplemental materials caught Plaintiffs by complete surprise. "[Rule 26(e)] does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report ..." *Beller ex rel. Beller*, 221 F.R.D. at 701 (quotation omitted). Plaintiffs had "no reason to expect" that Dr. Goodman would make any changes, never mind hundreds of substantive changes, to her charts. *See Pierce*, 2024 WL 5170738, at *4. To the contrary, Dr. Goodman testified at her deposition that she did not think there would be many additional inconsistencies in her charts. Goodman Dep. Tr. 258:2-13 (JA Ex. 172, D.E. 471-1).

*Third*, if Dr. Goodman's revised charts were allowed to stand, Plaintiffs would need to conduct significant, additional discovery that would delay this case far into the future. *See e.g., Gallagher*, 568 F. Supp. 2d at 632 (granting motion to strike where "[p]laintiffs cannot cure ... surprise [caused by the untimely expert report] without further delay and further discovery"); *Carteret Inv. Associates, LLC v. Mt. Hawley Ins. Co.*, No. 4:21-CV-157-FL, 2023 WL 9034243, at *5 (E.D.N.C. Dec. 29, 2023) (quoting *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 233 (4th Cir. 2006)) (noting that the duty to supplement "does not permit a party to make an end-run around the normal timetable for conducting discovery."). What's more, Plaintiffs cannot respond to Dr. Goodman's supplemental expert charts under the current scheduling orders. The deadline for Plaintiffs' rebuttal reports was March 15, 2025, and Plaintiffs have already deposed Dr. Goodman. Given that there are now almost three hundred changes, many about important studies,[10] Plaintiffs would need to re-depose Dr. Goodman, individuals from Dr.

---

[10] *See, e.g.*, (D.E. 686-4) (Bladder Cancer Rep. Changes) at C-2 (changing "No major weaknesses" to "Unknown number of exclusions"); (D.E. 686-6) (Kidney Cancer Rep. Changes) at C-5 (changing "No consideration of latency" to "No major weaknesses"); (D.E. 686-8) (Leukemia Rep. Changes) at C-16

-13-
3365295.5
Case 7:23-cv-00897-RJ    Document 725    Filed 11/19/25    Page 17 of 20

Goodman's company who assisted in writing her reports, and expert witnesses who relied on Dr. Goodman.[11]

*Fourth*, it is not possible now to address the new internal inconsistencies created by Dr. Goodman's altered charts. As previously addressed, Dr. Goodman's charts are now directly contradictory to her own reports. *See* Section I(A), *supra*.

*Lastly*, allowing Dr. Goodman's improper and untimely supplementation would disrupt the current trial schedule and work against the expeditious resolution of this litigation. *See Akeva*, 212 F.R.D. at 310 ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation."). The extensive additional discovery that would be required to cure these alterations, as previously mentioned, would cause significant further delay. Moreover, if the supplemental materials are allowed, a whole new host of issues would arise because Dr.

---

(changing "Indirect chemical exposure measurement" to "Direct chemical exposure measurement"); (D.E. 686-10) (NHL Rep. Changes) at C-5 (changing "Unknown number of exclusions to "No major weaknesses"); (D.E. 686-12) (Parkinson's Rep. Changes) at C-1 (changing "Did not consider or control for . . . smoking" to "Considered smoking using negative control diseases").

[11] Plaintiffs would also need to depose select individuals who helped prepare and write Dr. Goodman's charts. *See* (D.E. 622); *see also* Goodman Dep. Tr. at 212:24-214:15 (JA Ex. 172, D.E. 471-1) (testifying that she had "junior staff review the studies and fill in information about the studies in tables on both the quality study characteristics and results, and these were then checked"). This would need to be done relating to both Dr. Goodman's original and supplemental charts. Plaintiffs are therefore unable to "cure th[is] surprise without further delay and further discovery[.]" *Gallagher*, 568 F. Supp. 2d at 632. Plaintiffs also would additionally need to re-depose each expert who purportedly relied upon Dr. Goodman's expert reports, namely specific causation experts from each Track I disease who are relying on Dr. Goodman's reports. *See, e.g.*, Stadler Dep. Tr. at 41:6-10, 90:7-91:3, 148:5-13 (JA Ex. 600, D.E. 508-9); Erba Dep. Tr. at 55:15-56:22; 85:20-88:6 (JA Ex. 608, D.E. 509-6); Ambinder SC (Carter) at 4, 8 (JA Ex. 515, D.E. 501-1); Ambinder Rep. (Davis) at 4, 8, 9-10 (JA Ex. 516, D.E. 501-2); Ambinder Rep. (Howard) at 4, 8, 10 (JA Ex. 517, D.E. 501-3); Ambinder Rep. (Keller) at 4, 8, 10, 16 (JA Ex. 518, D.E. 501-4); Ambinder Rep. (Kidd) at 4, 8, 10, 13 (JA Ex. 519, D.E. 501-5); Ambinder Rep. (Vidana) at 4, 8, 10, 13 (JA Ex. 520, D.E. 501-6). For example, Dr. Kates, a Defense specific causation expert, opines about bladder cancer, and he testified that he relied on Dr. Goodman's bladder cancer report to exclude the Camp Lejeune water as a risk factor for the Plaintiffs' bladder cancers because he believed the report was "more compelling" and "more thorough" than Plaintiffs' experts' reports. Kates Dep. Tr. at 138:5-25 (JA Ex. 586, D.E. 507-7).

Goodman's expert reports would then be contradictory to and inconsistent with the altered charts. *See supra* n. 7 at 10. While the court in *Lightfoot* did allow for discovery to be re-opened on a limited basis in lieu of striking the supplemental reports, such an option is not available here. 2018 WL 4517616 at *8-9. The court in *Lightfoot* found that there would be no disruption of the trial schedule by allowing the defendant to re-depose plaintiff's experts and amend or supplement their own expert reports. *Id*. By contrast, there are *hundreds of thousands* of plaintiffs in this case, twenty-two Bellwether plaintiffs still with pending claims, numerous other experts who rely on Dr. Goodman's opinions, and dispositive motions have already been filed. Accordingly, Dr. Goodman's new materials should be stricken.

## **CONCLUSION**

For the foregoing reasons, this Court should reject Defendant's attempt to cure the defects in Dr. Goodman's report under the guise of supplementation under Rule 26(e) and strike the same under Rule 37(c)(1).

Dated: November 18, 2025.

| | |
|---|---|
| */s/   J. Edward Bell, III* | */s/   Elizabeth J. Cabraser* |
| J. Edward Bell, III (admitted *pro hac vice*) | Elizabeth J. Cabraser (admitted *pro hac vice*) Lieff Cabraser Heimann & Bernstein, LLP 275 Battery Street, 29th Floor |
| Bell Legal Group, LLC | |
| 219 Ridge St. | |
| Georgetown, SC 29440 | San Francisco, CA 94111 |
| Telephone: (843) 546-2408 | Telephone: (415) 956-1000 |
| jeb@belllegalgroup.com | ecabraser@lchb.com |
| *Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |
| */s/   W. Michael Dowling* | */s/      Robin L. Greenwald* |
| W. Michael Dowling (NC Bar No. 42790) The Dowling Firm PLLC | Robin L. Greenwald (admitted *pro hac vice*) |
| | Weitz & Luxenberg, P.C. |
| Post Office Box 27843 Raleigh, | 700 Broadway |
| North Carolina 27611 Telephone: | New York, NY 10003 |
| (919) 529-3351 | Telephone: 212-558-5802 |
| mike@dowlingfirm.com | rgreenwald@weitzlux.com |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |
| */s/     James A. Roberts, III* | */s/    Mona Lisa Wallace* |
| James A. Roberts, III | Mona Lisa Wallace (N.C. Bar No.: 009021) |
| Lewis & Roberts, PLLC | Wallace & Graham, P.A. |
| 3700 Glenwood Ave., Ste. 410 | 525 North Main Street |
| Raleigh, NC 27612 | Salisbury, North Carolina |
| Telephone: (919) 981-0191 | 28144 Tel: 704-633-5244 |
| jar@lewis-roberts.com | mwallace@wallacegraham.com |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |