IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | **JOINT STATUS REPORT** |
| | ) | |
| This Document Relates To: | ) | |
| ALL CASES | ) | |
| | ) | |

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to November 25, 2025, 3,709 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and forty-seven (147) cases have been dismissed; one hundred and thirty-three (133) of those were voluntary dismissals and the fourteen (14) others were pro se cases. The cases are divided as follows: Judge Dever – 930 cases; Judge Myers – 930 cases; Judge Boyle – 909 cases; and Judge Flanagan – 940 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

Of 409,889 de-duplicated claims, approximately 177,478 claims contain at least one supporting document. Approximately 65,700 of those claims allege an injury type that may be considered for settlement under the Elective Option (EO) framework. The time between filing a claim and settlement is dependent upon timely receipt of relevant supporting documents. Per the

1

statutory burden of proof, law firms and claimants must provide evidence of a medical diagnosis and presence at Camp Lejeune before a settlement determination can be made. Filers are encouraged to submit substantiating documentation expeditiously so that the Camp Lejeune Claims Unit ("CLCU") can confirm substantiation of those alleged EO injuries and the DOJ can approve settlement offers to as many claimants who qualify for the EO as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(5) A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Depositions and Motions</u>

All expert witnesses for Phase I (Water Contamination) have been both disclosed and deposed by the Parties, and all deadlines with respect to Phase I motions have expired. The Parties have completed the depositions of all expert witnesses for Phase II (General Causation). All expert witness depositions for Phase III (Specific Causation and Residual Experts), except those

witnesses who fall within the separate track for expert discovery related to damages and offsets, have been completed.

On September 10, 2025, the Parties filed all motions related to Phases II and III, with exception of motions related to damages and offsets. [D.E. 630] The PLG filed a total of nine (9) motions to exclude the government's experts under Fed. R. Evid. 702. The government filed thirty-one (31) motions related to Phases II and III. On November 10, 2025, the Parties filed responses to the said motions related to Phases II and III. The deadline for the Parties' to file replies is December 12, 2025.

<u>Discovery Pertaining to Damages and Offsets</u>

On October 29, 2025, in accordance with the Court's September 17, 2025 Order [D.E. 630], the PLG designated its economic residual experts and produced expert reports. The government's economic residual expert designations and reports are due December 15, 2025, and the PLG's rebuttal expert reports and designations are due on January 19, 2026. Expert discovery on these experts will close on March 5, 2026. The parties are to confer thereafter regarding a briefing schedule for motions. [*Id.*]

<u>Dispute Regarding Copays and Other Patient Information</u>

The Parties have been involved in an ongoing dispute regarding PLG's request that Defendant produce available information pertaining to Plaintiff payments, including copays, deductibles, and premiums ("Plaintiff Payment Information"), that are a part of government benefit programs. During fact discovery, on December 22, 2023, Plaintiffs served Defendant with a First Request for Production of Documents which included among other requests RFP No. 6 requesting:

*"all documents pertaining to benefits, awards, or payments related to the alleged injury or injuries including but not limited to VA records, workers' compensation records, Medicare, Medicaid or*

*any other similar benefits."* Plaintiffs intended for this request to include Plaintiff Payment Information since such out-of-pocket costs are part of Plaintiffs' damages.

Defendant did not produce what PLG requested during fact discovery. Instead, Defendant waited until its expert reports were served in April 2025 to produce filtered government benefit payment records to support Defendant's claimed offsets. These filtered payment records did not include any corresponding Plaintiff Payment Information.

The Parties have had ongoing discussions regarding Defendant's late production of factual data in support of its alleged offsets. During those discussions, Defendant agreed to produce unfiltered data from the government agencies who had provided benefits, awards, or payments related to the Plaintiffs' injuries. The PLG requested that this unfiltered data production include Plaintiff Payment Information. Not only had this information already been requested during fact discovery, but the parties had agreed, and the Court allowed, for a limited period of reopened factual discovery with respect to offset information and potentially corresponding damages information. [D.E. 414; D.E. 629] In seeking information pertaining to out-of-pocket payments made by the Plaintiffs for the same benefits, awards, or payments for which Defendant is asserting offsets, the PLG sought damages information corresponding directly with Defendant's offset information, as allowed by the Court.

In response to PLG's demand for Patient Payment Information to be produced with the unfiltered data productions, Defendant asserted that it was more convenient, less burdensome, and less expensive for the PLG to obtain the information from the Plaintiffs. The suggestion that the Plaintiffs would have this information or could even recover it after the passage of many years is abundantly unreasonable. However, the PLG understood the Defendant's response to mean Defendant had asked for Plaintiff Payment Information to be included in the unfiltered productions

4

but had been told by the government agencies that it was too burdensome and too expensive to include. Subsequently, PLG took fact witness depositions of six individuals presented by the Defendant as representatives of these government agencies. As a result of the PLG's questioning at these depositions. PLG discovered that Plaintiff Payment Information had not been requested of any of these government agencies at all.

Copays, deductibles, and premiums are part of the same payments related to the Plaintiffs' injuries as the government reimbursement information the Defendant already produced from these government agencies. The PLG broadly requested benefit/payment information, including Plaintiff Payment Information, during fact discovery and again during the reopened period of offset/damages fact discovery after Defendant belatedly produced filtered data to support its alleged offsets. The PLG has noted to the Defendant that Plaintiffs are not in an equal position to produce this information. These claims go back many years and records that might reflect out-of-pocket plaintiff payments are largely unobtainable at this point except from the government agencies themselves. These government agencies (with which Defendant is claiming work product and attorney-client protection) are the best source of this information and Defendant clearly has access to the information through these agencies, yet it continues to refuse to produce the information because it is supportive of Plaintiff's damages rather than Defendant's offsets. It is unfair and unreasonable for Defendant to ask these governmental agencies to perform queries in support of Defendant's alleged offsets but to omit data, which the PLG specifically requested, pertaining to Plaintiff payments, particularly when those Plaintiff payments relate to the same medical billings for which the Defendant is seeking offsets.

In an attempt to reach resolution on this issue, Defendant recently agreed to go back to the government agencies to ask each of them (a) what Plaintiff payment information exists in their

system; (b) to what extent the data exists; and (c) how difficult it is to obtain. To date, Defendant has represented the following:

- Triwest does not keep Plaintiff payment information.

- Community Care Network ("CCN") does not know where to find Plaintiff payment information even if it exists.

- Centers for Medicare & Medicaid Services ("CMS") does not have access to beneficiary cost-sharing information such as copays, coinsurance, premiums and deductibles.

- The Veterans Health Administration ("VHA") contends that obtaining Plaintiff payment information would take 10-12 hours per individual and Defendant asserts that they would incur additional burden and expense to process and produce these records. As a result, the Defendant's unduly burdensome objection stands.

- The Department of Veteran Affairs ("VA") has not taken copays since 2012 or 2014 pursuant to 38 CFR 17.400.

- TRICARE has provided what it possesses with respect to Plaintiff payment information and Defendant has provided further explanation as to where this information can be found within the spreadsheets already produced.

The PLG is including this information in the present status report to document what has occurred, what has been represented, and to provide an update to the Court.

The PLG has just learned through this status report that the United States is in the process of updating its previously gathered offset information. The PLG is unable to comment on this issue until it receives such information but notes that Defendant continues to devote time and expense to information which supports its offsets but refuses to produce corresponding Patient

6

Payment Information which is needed to support Plaintiffs' damages. The PLG is presently evaluating whether to file a motion concerning this dispute.

<u>Preparation for Hearings and Trials on Track 1</u>

On November 12, 2025, the PLG filed a Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials. [D.E. 721]. That motion is designed, in large part, to maximize the efficient resolution of Track 1 actions. The PLG integrates those proposals into this report by reference and continues to believe such proposals would, if implemented, expedite these trials. The need for timely resolution of CLJA claims is critical. The health conditions of the plaintiffs only continue to worsen and hundreds of thousands of claimants are waiting, while their health continues to decline, for claims to be resolved under the CLJA.

<u>Dr. Julie Goodman</u>

On February 7, 2025, the government submitted five expert reports, one for each Track I disease, on behalf of general causation expert Dr. Julie Goodman ("Dr. Goodman"). Dr. Goodman was deposed on April 29, 2025. On September 10, 2025, the PLG filed a Motion to Exclude Dr. Goodman pursuant to Rule 702. [D.E. 622].

After the due date for serving expert reports, after the PLG took her deposition, and after the PLG moved to exclude her testimony pursuant to Rule 702, Dr. Goodman submitted approximately 300 changes to her expert reports in direct response to the PLG's motion to exclude her as an expert. However, these amendments to her reports violate the Federal Rules of Civil Procedure and are not supplementations as contemplated by Fed. R. Civ. P. 26(e). "Rule 26(e) is not a loophole through which a party ... who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797

(D. Md. 2013), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015).

Therefore, on November 19, 2025, the PLG filed a Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports. [D.E. 724].

Identifiers in Rubris

On December 21, 2023, the Court entered an Order that each plaintiff who has filed a Short Form Complaint is required to provide their date of birth and Social Security Number to the government. In general, this information was previously provided by plaintiffs to Rubris, however, there are some plaintiffs who provided incomplete information. The Parties have communicated about these issues, and the PLG is working diligently to collect the missing information and provide the same to the government.

**United States' Position:**

Fact Depositions

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Expert Depositions

All expert depositions have been completed, with the exception of depositions related to economic damages issues.

United States' Supplemental Offset Data Discovery

On June 25, 2025, the Court entered an Order modifying previous scheduling orders to, in part, allow the Parties to engage in limited fact discovery related to the Parties' offset information and corresponding damages information. [D.E. 414]. Over the past three months, the United States

8

has produced underlying offset information from the VA (including VHA and IVC), TriWest, TRICARE, and the Centers for Medicare & Medicaid Services (CMS). This information is in addition to the previously provided offset information and data produced by the United States in conjunction with its Phase III expert disclosures in April and May 2025. Furthermore, the Parties have taken all depositions of fact witnesses related to the United States' offset data. Given deposition scheduling constraints, including witness and counsel availability, these depositions concluded on September 18, 2025—the date the Court recently ordered that fact discovery limited to the Parties' offset information and potentially corresponding damages information was to be completed. *See* D.E. 630.

On September 30, 2025, the Parties met and conferred on PLG's request for Plaintiff Payment Information, including policy premiums, co-pays, deductibles, coinsurance payments, payments from HSAs/FSAs or similar accounts, HRAs, or any expenses not covered that were billed to Plaintiffs. The United States maintains its position that this information is outside the scope and purpose of the additional damages discovery, and that PLG failed to respond to the United States' objections to producing additional information when PLG requested it on July 3, 2025. To avoid unnecessary discovery disputes, however, the United States has agreed to work with its agencies to determine if they have custody or control of this information, and, if so, how burdensome it would be to collect it. The United States reserves the right to continue its objections to collecting or producing such information depending on the results of these inquiries, or to seek alternative relief such as cost-shifting to PLG.

To date, the United States has provided PLG with updates from each of the requested agencies—VHA, CMS, and DHA/TRICARE. As has been communicated to PLG, the United States was informed by the Department of Veterans Affairs that it would take approximately 10–

9

12 hours to research each veteran's account to determine what, if anything, was billed and collected for the previously identified diagnosis codes and time-period. Such an amount of time places an unreasonable burden on the United States to search for and collect information that is already in the possession, custody, and control of each Track 1 Plaintiff. The United States was informed by CMS that neither it nor its contractors have access to beneficiary cost-sharing payments, including co-pays, co-insurance, premiums, and deductibles. Lastly, the United States was informed by DHA that the TRICARE data previously provided to PLG, including the columns specific to Plaintiff Payment Information, is comprehensive of the information that DHA has for the identified individuals. The United States also provided PLG with additional information regarding the TRICARE columns specific to Plaintiff Payment Information that it was seeking. The United States has completed its part of further inquiry with the respective agencies.

Lastly, the United States is in the process of updating its previously gathered offset information, which is required due to the evolving nature of benefits utilized by and/or provided to the Track 1 Trial Plaintiffs, in conjunction with the United States' obligation to supplement is previously provided discovery. While meeting its obligations, the United States has learned that offset information was inadvertently not obtained for at least one Track 1 Plaintiff and another became enrolled in Medicare after the United States originally gathered the list of Medicare beneficiaries. The United States is in the process of obtaining this data and it will produce it consistent with its ongoing discovery obligations. As has been communicated to PLG and the Court, additional supplementation will eventually be required up to and through the point of any potential trial damages awards, as the amounts of offsets are constantly evolving.

There are no other remaining issues arising out of the limited fact discovery period ordered by the Court on June 25, 2025.

<u>Damages Expert Discovery Disclosures</u>

Under the Court's September 17, 2025 Order requiring the Parties to complete fact discovery related to the Parties' offset information by September 18, 2025, [D.E. 630], PLG disclosed their expert damages reports by October 29, 2025; the United States will disclose its expert reports relating to damages and offsets by no later than 45 days after PLG's initial disclosure; PLG will disclose their rebuttal reports no later than 35 days after the United States' disclosure; and the Parties will complete expert discovery of damages and offsets, life care planning, and home renovation reports within 45 days of PLG's rebuttal disclosures. The United States has received Plaintiffs' expert damages reports and amended damages assessment forms. The United States is reviewing these materials and will contact Plaintiffs' counsel regarding any identified deficiencies, if necessary.

<u>PLG's Motion to Reserve Admissibility Determinations</u>

PLG filed a Motion to Reserve Admissibility Determinations and Expediate Track 1 Bellwether Trials on November 12, 2025. [D.E. 721]. It is the United States' position that resolution of threshold issues and motions is in line with this Court's prior case management orders and will assist with the ultimate global resolution of this litigation and the Navy claims.

In the Court's June 28, 2024, Order, the Court stated that "[b]efore Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp Lejeune and (2) general causation for the Track 1 illnesses." [D.E. 247 at 1]. Resolution of the Phases I and II threshold issues of "toxic chemical exposure from the water at Camp Lejeune" and "general causation for the Track 1 illnesses," along with resolution of *Daubert* motions regarding Phase III specific causation experts and related motions for summary judgment, will likely obviate the need for some of the individual Track 1 trials and assist in global resolution

11

of the entire litigation and Navy claims. For these reasons, the United States would welcome a schedule for resolution of the threshold issues with the goal of conducting any necessary individual Plaintiff trials before the conclusion of 2026. The United States' response to PLG's is due on December 3, 2025. [D.E. 727].

PLG's Motion to Strike Dr. Goodman's Corrected Summary Tables

Julie Goodman, Ph.D., DABT, FACE, ATS, is the United States' general causation expert for each of the five Track 1 illnesses. Appended to each of her five reports were summary tables, which provided information to the Court on the hundreds of studies Dr. Goodman considered in rendering her opinions. PLG pointed out several errors in Dr. Goodman's summary tables at her deposition and in their motion to exclude her under Rule 702, which Dr. Goodman corrected as required by Rule 26(e). The United States offered to make Dr. Goodman available for a deposition to address the corrections, but PLG has not responded to that offer. PLG wrongly contends that her corrections constitute new and untimely opinions and moved to strike the corrections. *See generally* D.E. 724. The United States is preparing its response in opposition to PLG's Motion, which is legally unfounded and seeks the extreme and disproportionate sanction. Dr. Goodman's corrected tables do not constitute new opinions, and striking them is unwarranted under Fed. R. Civ. P. 37 and the *Akeva* factors. The Court granted the United States' unopposed motion for an extension of time and of pages to respond. [D.E. 727.] The United States' response is due on or before December 10, 2025. *Id.*

Final Deadline for Expert Supplementation for Track 1

The United States also plans to raise, and is willing to work with PLG on, a proposal to establish a final deadline for expert report supplementation. The proposal would create a firm supplementation deadline for expert opinions. The opening *Daubert* and summary judgment

motions filed on September 10, 2025, underscore the importance of this proposal, as it will ensure that the Parties' briefing and any evidentiary hearings proceed against a stable record of expert opinions.

<u>Missing Plaintiff Identifiers in Rubris</u>

Pursuant to the Court's December 21, 2023, Order [D.E. 91], each plaintiff who has filed a Short Form Complaint is required to provide their complete date of birth and full Social Security Number to the United States. This information has previously been collected in Rubris, and the United States recently identified over 700 entries where this information appears incomplete or missing. PLG has been notified. The United States has followed up to ask whether PLG plans to reach out to the individuals with missing information so it can be completed. The United States has not yet received any further update.

<u>Proposal for Track 2 Discovery</u>

The United States has conferred with PLG on the most efficient procedure for discovery on Track 2. The United States believes that resolving general causation issues for Track 2 diseases before individual plaintiff discovery would be most efficient. [D.E. 156]. PLG has indicated that it will review the United States' proposal and confer regarding a discovery plan for Track 2. The United States is prepared to do so when the PLG is ready to discuss further.

**(5) Any other issues that the parties wish to raise with the Court:**

In prior Joint Status Reports, the PLG has expressed serious concerns about the amount of time the Elective Option administrative claim process is taking. [D.E. 648 at 11-12; D.E. 662 at 11-12]. In the PLG's experience, this process was apparently slowed considerably by the government shutdown. However, now that the shutdown has concluded, the PLG respectfully

13

requests that the Court invite the Department of Navy to attend the next Status Conference to provide an update and answer questions on this subject.

The United States is open to discussing issues regarding the Elective Option process with the Court through the Department of Justice, but, as the Court has previously recognized in an Order in this litigation, its jurisdiction does not extend to the administrative process. The United States is continuing to work with PLG to facilitate administrative resolution of claims with the Navy through the Elective Option program and has made substantial progress in resolving claims that meet the requirements of the program.

The Parties have agreed to file separate summaries of the motions that are pending before the Court. The Parties' respective summaries appear below:

**The PLG's Summary:**

At present, a number of motions have been filed and are undecided. The full list and organization are set forth below:

I. **Phase I Motions**
   Motions are Applicable to All Illnesses and to Future Tracks

   a. **Water Modeling**

      i. The United States' Motion in Limine to Exclude Plaintiffs' Phase I Expert Testimony in Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual Plaintiffs [D.E. 367]
         1. PLG's Response in Opposition to Motion in Limine to Exclude Plaintiffs' Phase I Expert Testimony in Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual Plaintiffs [D.E. 397]
         2. United States' Reply to PLG's Response in Opposition to Motion in Limine to Exclude Plaintiffs' Phase I Expert Testimony in Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual [D.E. 425]

      ii. PLG's Motion for Leave to File Surreply to Defendant United States Reply in Support of Motion to Exclude PLG's Phase I Expert Testimony in

Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual Plaintiffs [D.E. 428]
1. United States' Response in Opposition to Motion for Leave to File Surreply to Defendant United States Reply in Support of Motion to Exclude PLG's Phase I Expert Testimony in Support of Using ATSDR's Water Models to Determine Exposure Levels for Individual Plaintiffs [D.E. 438]

**b. Other**
   i. The United States' Motion to Exclude the Opinion Testimony of Mr. R. Jeffrey Davis and Dr. Norman L. Jones [D.E. 356]
      1. PLG's Response in Opposition to Motion to Exclude the Opinion Testimony of Mr. R. Jeffrey Davis and Dr. Norman L. Jones [D.E. 395]
      2. United States' Reply to PLG's Response in Opposition to Motion to Exclude the Opinion Testimony of Mr. R. Jeffrey Davis and Dr. Norman L. Jones [D.E. 421]

   ii. The United States' Motion to Exclude Unreliable and Irrelevant Expert Opinions of Mustafa Aral [D.E. 358]
      1. PLG's Response in Opposition to Motion to Exclude Unreliable and Irrelevant Expert Opinions of Mustafa Aral [D.E. 400]
      2. United States' Reply to PLG's Response in Opposition to Motion to Exclude Unreliable and Irrelevant Expert Opinions of Mustafa Aral [D.E. 419]

   iii. The United States' Motion to Exclude the Testimony of Dr. Rodney Kyle Longley [D.E. 360]
      1. PLG's Response in Opposition to Motion to Exclude the Testimony of Dr. Rodney Kyle Longley [D.E. 398]
      2. United States' Reply to PLG's Response in Opposition to Motion to Exclude the Testimony of Dr. Rodney Kyle Longley [D.E. 422]

   iv. Plaintiffs' Motion in Limine to Exclude Certain Opinions of Remy J.-C. Hennet, Ph.D. [D.E. 373]
      1. United States' Response in Opposition to Motion in Limine to Exclude Certain Opinions of Remy J.-C. Hennet, Ph.D. [D.E. 401]
      2. PLG's Reply to United States' Response in Opposition to Motion in Limine to Exclude Certain Opinions of Remy J.-C. Hennet, Ph.D. [D.E. 423]
      3. The United States' Motion to Strike PLG's Late Supplemental *Daubert* Motion, or Alternatively, for Leave to File a Sur-Reply [D.E. 434] [Relates to D.E. 373; D.E. 423]
         a. PLG's Response in Opposition to Motion to Strike PLG's Late Supplemental *Daubert* Motion, or Alternatively, for Leave to File a Sur-Reply [D.E. 443]

15

      v.  Plaintiffs' Motion in Limine to Exclude Certain Opinions of Alexandros Spiliotopoulos, Ph.D. [D.E. 376]
          1.  United States' Response in Opposition to Motion in Limine to Exclude Certain Opinions of Alexandros Spiliotopoulos, Ph.D. [D.E. 396]
          2.  PLG's Reply to United States' Response in Opposition to Motion in Limine to Exclude Certain Opinions of Alexandros Spiliotopoulos, Ph.D. [D.E. 424]

**II.**     **Phases II and III Motions On Application of Statutory Burden of Proof**
Motions are Applicable to All Diseases and to Future Tracks

    a.  United States' Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 539]
      i.  PLG's Response in Opposition to Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Leask Likely As Not" Standard [D.E. 690]

    b.  Plaintiffs' Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 567]
      i.  United States' Response in Opposition to PLG's Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 664]

**III.**     **Phases II and III Expert/Illness Specific Motions**
Motions are Applicable to Specific Illnesses as Categorized Below

    **a.**   **Motions Not Limited to a Particular Illness**

      i.  United States' Motion for Partial Summary Judgment concerning Dichloroethylene (all cases) [D.E. 520]
          1.  PLG's Response in Opposition to Motion for Partial Summary Judgment Concerning Dichloroethylene [D.E.715]

    **b.**   **Motions to Exclude General Causation Experts Who Opined as to Every Track 1 Case**

      i.  Plaintiffs' Motion to Exclude Expert Dr. Michael J. McCabe, Jr. (all cases except Parkinson's) [D.E. 597]
          1.  United States' Response in Opposition to PLG's Motion to Exclude Expert Dr. Michael J. McCabe, Jr. [D.E. 666]

      ii.  Plaintiffs' Motion to Exclude Defense Expert Dr. Julie Goodman (all cases) [D.E. 621]

     1. United States' Response in Opposition to Motion to Exclude Defense Expert Dr. Julie Goodman [D.E.686]

    iii. Plaintiffs' Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 624]
     1. United States' Response in Opposition to Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 670]

**c.**   **Motions with Common Legal Arguments**[1]

    i. United States' "Literature Review Motions" (all cases) [D.E. 584, 574, 541, 559, and part of 543]

    ii. United States' "Differential Etiology Motions" (all cases) [D.E. 586, 569, 557, 530, 533, 537, 553, and part of 543]

    iii. United States' "Threshold Association Motions" (all cases) [D.E. 547, 554, 582, 609]

    iv. United States' Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (bladder cancer and NHL/Leukemia) [D.E. 601]

**d.**   **Bladder Cancer Motions** (Hon. Richard E. Myers II)

    **i.**   **United States' Motions**
     1. Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Threshold Association Motion") [D.E. 582]
       a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Benjamin Hatten, Kathleen Gilbert, and Stephen Culp ("No Predicate Association Motion" Bladder Cancer) [D.E.689]

     2. Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Literature Review Motion") [D.E. 584]

       a. PLG's Response in Opposition to Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts

---

[1] These motions also are listed more specifically under the individual disease categories below but the motions share common legal arguments and, therefore, may need to be decided jointly. The PLG's responses to motions are identified below in the specific disease categories.

Laura Plunkett, Steven Bird, Benjamin Hatten, Kathleen Gilbert, and Stephen Culp ("Literature Review Motion") [D.E. 700]

3. Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts for Performing Improper Differential Etiologies ("Bladder Cancer Differential Etiology Motion") [D.E. 586]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts from Performing Improper Differential Etiologies ("Improper Differential Motion") [D.E. 691]

4. Motion to Exclude Plaintiffs' Psychiatry Expert Dr. Haresh Tharwani [D.E. 594]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiff's Psychiatry Expert Dr. Haresh Tharwani [695]

5. Motion for Summary Judgment for Lack of Admissible Expert Testimony Federal Rule of Civil Procedure 56; L. Civ. R. 56.1(a)(1) [D.E. 590] [predicated upon determinations in D.E. 582, 584, 586]

    a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Admissible Expert Testimony Fed. R. Civ. P. 56; L. Civ R. 56.1(a)(1) [D.E. 678]

6. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

    a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 710]

ii. **Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Defense Expert Dr. Max Kates filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 588]

    a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Max Kates [D.E. 673]

2. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to one kidney plaintiff)

    a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 668]

3. Multi-Illness Motions at D.E. 597, 621, 624.

   a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

e. **Kidney Cancer Motions** (Hon. Terrence W. Boyle)

   i. **United States' Motions**

   1. Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 524]

      a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 674]

   2. Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases ("Kidney Cancer Differential Etiology Motion")[D.E. 569]

      a. PLG's Response in Opposition to Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases [D.E. 697]

   3. Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 571]

      a. PLG's Response in Opposition to Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 671]

   4. Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review Motion") [D.E. 574]

      a. PLG's Response in Opposition to Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review") [D.E. 707]

   5. Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 609]

      a. PLG's Response in Opposition to Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 687]

19

6. Motion for Summary Judgment (Kidney Cancer) [D.E. 611] (predicated upon determinations in D.E. 539, 569, 609)

   a. PLG's Response in Opposition to Motion for Summary Judgment (Kidney Cancer) [D.E. 677]

7. Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 605]

   a. PLG's Response in Opposition to Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 714]

## ii. Plaintiffs' Leadership Group's Motions

1. Motion to Exclude Defense Expert Dr. Walter Stadler [D.E. 599]

   a. United States' Response in Opposition to PLG's Motion to Exclude Expert Dr. Walter Stadler [D.E. 665]

2. Motion to Exclude Defense Expert Dr. Gail H. Vance, M.D. [D.E. 619]

   a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Gail H. Vance, M.D. [D.E. 663]

3. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to two bladder cancer plaintiffs)

   a. PLG's Response in Opposition to 3.  Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 668]

4. Multi-Illness Motions at D.E. 597, 621, 624.

   a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

## f. <u>Parkinson's Disease Motions</u> (Hon. Louise W. Flanagan)

### i. United States' Motions

1. Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman ("Parkinson's Literature Review Motion") [D.E. 541]

   a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird,

Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman [D.E. 694]

2. Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska ("Parkinson's Literature Review and Differential Etiology Motion")[D.E. 543]

    a. PLG's Response in Opposition to Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska [D.E. 688]

3. Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz and Richard Barbano ("Parkinson's PCE Daubert Motion") [D.E. 545]

    a. PLG's Response in Opposition to Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz, and Richard Barbano [D.E. 693]

4. Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa and Richard Barbano ("Parkinson's Threshold Association Motion") [D.E. 547]

    a. PLG's Response in Opposition to Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa, and Richard Barbano [D.E. 682]

5. Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 549] (predicated upon determinations in D.E. 539, 541, 543, 545, 547).

    a. PLG's Response in Opposition to Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 701]

6. Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium [D.E. 525]

      a.   PLG's Response in Opposition to Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium Claim [D.E. 719]

**ii.  Plaintiffs' Leadership Group's Motions**

    1.  Multi-Illness Motions at D.E. 597, 621, 624.

       a.   United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

**g.  <u>Leukemia and Non-Hodgkins Lymphoma Motions</u> (Hon. James C. Dever III)**

    **i.  United States' Motions**

    1.  Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek ("Leukemia Differential Etiology Motion – Gondek") [D.E. 530]

       a.   PLG's Response in Opposition to Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek (Leukemia) [D.E. 683]

    2.  Motion to Exclude the Opinions of Damian Laber, M.D., FACP ("Leukemia Differential Etiology Motion – Laber") [D.E. 533]

       a.   PLG's Response in Opposition to Motion to Exclude the Opinions of Damian Laber, M.D. [D.E. 692]

    3.  Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 537]

       a.   PLG's Response in Opposition to Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 684]

    4.  Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology ("Leukemia Threshold Association Motion")[D.E. 553]

       a.   PLG's Response in Opposition to Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology [D.E. 708]

5. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(c) ("Leukemia/NHL Motion on Disease Synergy") [D.E. 555]

    a. PLG's Response in Opposition to Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rules of Evidence 702(c) [D.E.699]

6. Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Federal Rule of Evidence 702(d) for Failing to Reliably Employ a Differential Etiology ("Leukemia/NHL Differential Etiology Motion") [D.E. 557]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Fed. R. Evid. 702(d) For Failing to Reliably Employ a Differential Etiology [D.E. 696]

7. Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu ("Leukemia/NHL Literature Review Motion") [D.E. 559]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu (Literature Review Motion) [D.E. 703]

8. Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 576] (predicated upon determinations in D.E. 530, 533, 535, 537, 539, 553, 555, 557, 559)

    a. PLG's Response in Opposition to Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 675]

9. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

    a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 710]

**ii. Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Certain Opinions of Dr. Harry P. Erba filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 580]

   a. United States' Response in Opposition to PLG's Motion to Exclude Certain Opinions of Dr. Harry P. Erba [D.E. 667]

2. Multi-Illness Motions at D.E. 597, 621, 624.

   a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

**IV.    Other Pending Motions**

   a. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156]

   b. The PLG's Objection to Memorandum and Recommendations on Vapor Intrusion [D.E. 447]

      i. The United States' Response regarding D.E 447 Objection to Memorandum and Recommendations [D.E. 453]

   c. United States' Motion to Seal [D.E. 668] Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 672]

   d. PLG's Motion to Seal PLG's Memorandum of Law in Opposition to the United States' Motion to Exclude Plaintiffs' Psychology Expert Dr. Roger Moore [D.E. 705]

   e. PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 721]

   f. PLG's Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 724]

The PLG continues to believe the Court has many available mechanisms to resolve these motions efficiently. On November 12, 2025, the PLG set forth such a proposal in a Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials. [D.E. 721].

**United States' Summary:**

As discussed elsewhere, the United States believes that rulings on the threshold scientific issues of the levels of water contamination and general causation will promote further resolution of issues, not only for Track 1, but for future Tracks. The United States has also raised significant

24

issues regarding specific causation and interpretation of the CLJA in its September 10, 2025 filings. Decisions on those issues will also promote global resolution. Only after the Court has ruled on these motions should the Parties proceed to trial of individual cases, if necessary. This is the most efficient path forward because it will likely save court resources for bench trials of individual cases that will be rendered unnecessary. This will be further discussed in the United States' response to PLG's Motion to Reserve Admissibility Determinations and Expediate Track 1 Bellwether Trials, which will be filed on December 3, 2025. Furthermore, the United States disagrees with PLG's prioritization, grouping, and in certain instances, characterizations of the pending motions.

*[Signatures follow on next page]*

DATED this 26th day of November, 2025.

Respectfully submitted,

*/s/ J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

*/s/ Zina Bash*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

25

Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs*
*and Government Liaison*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ *Elizabeth Cabraser*
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ *W. Michael Dowling*
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ *James A. Roberts, III*
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors

/s/ *Adam Bain*
ADAM BAIN
Special Litigation Counsel
Camp Lejeune Justice Act Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

NATHAN J. BU
Trial Attorney

*Counsel for Defendant*
*United States of America*

26

jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*

ND:4912-8896-7804, v. 1