IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE: )<br>)<br>CAMP LEJEUNE WATER LITIGATION )<br>)<br>This Document Relates To: )<br>)<br>*McElhiney v. United States*, 7:23-cv-1368 )<br>*Peterson v. United States*, 7:23-cv-1576 )<br>*Rothchild v. United States*, 7:23-cv-858 )<br>*Sparks v. United States*, 7:23-cv-682 )<br>*Welch v. United States*, 7:23-cv-1503 )<br>)<br>) | UNITED STATES' REPLY IN SUPPORT OF ITS (1) MOTION FOR SUMMARY JUDGMENT, AND IN THE ALTERNATIVE, (2) PARTIAL SUMMARY JUDGMENT ON THE CAUSAL LINK BETWEEN PERCHLOROETHYLENE ("PCE") AND PARKINSON'S DISEASE<br><br>Fed. R. Civ. P. 56 |

## INTRODUCTION

Plaintiffs' attempt to avoid summary judgment by "supplementing" their existing expert reports with new ones is the legal equivalent of attempting to change the rules of chess at checkmate. Plaintiffs had ample opportunity under this Court's Scheduling Orders to find and proffer qualified and reliable expert testimony on the critical issues of general and specific causation. *See, e.g.*, June 25, 2025 Order, D.E. 414. Indeed, Plaintiffs submitted multiple, duplicative expert reports on general and specific causation.[1] Yet, as demonstrated in the United States' Motions, all of Plaintiffs' experts' opinions on the critical issues of general and specific causation are unreliable, unsupported, and unhelpful to the fact finder.[2] Consequently, those

---

[1] The five Track 1 Parkinson's disease ("PD") Plaintiffs disclosed 10 Phase II and Phase III PD experts: (1) Dr. Steven Bird; (2) Dr. Amelia Boehme; (3) Dr. Jason Cannon; (4) Dr. Lucio Costa; (5) Dr. Briana De Miranda; (6) Dr. Michael Freeman; (7) Dr. Gary Miller; (8) Dr. Kristin Andruska; (9) Dr. Richard Barbano; and (10) Dr. Heidi Schwarz (collectively "Plaintiffs' PD experts").

[2] "United States' Motions" refers to U.S. Mot. to Exclude Certain Pls.' Gen. Causation

opinions should be excluded, and the United States is entitled to summary judgment. *See* U.S. Mot. Summ. J., D.E. 549; U.S. Mem. Supp. Summ. J., D.E. 550; *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 645–47 (4th Cir. 2018) (upholding summary judgment where the plaintiffs' causation experts were excluded under Federal Rule of Evidence 702 and no genuine dispute of material fact remained as to the element of causation).[3] In the alternative, as demonstrated in the United States' Motion to Exclude Unreliable Opinions That Perchloroethylene ("PCE") Can Cause Parkinson's Disease, D.E. 545, Plaintiffs' experts' opinions on PCE are unreliable and the United States is entitled to partial summary judgment as to any opinions related to PCE and PD.

Plaintiffs seek to circumvent the United States' Motion for Summary Judgment by requesting another bite at the apple. Specifically, Plaintiffs propose that, even if the Court finds "that *all* expert testimony relating to a particular Plaintiff were inadmissible," the Court should nonetheless order the Parties to meet and confer to "determine whether it is possible to proceed to trial in that case," such as agreeing to Plaintiffs' production of "supplemental" expert reports and depositions. *See* Pls.' Opp'n, D.E. 701, at 2–3. In other words, Plaintiffs seek to scrap and redo more than a year of work performed by the Parties and this Court, with no guarantee that Plaintiffs will ever offer reliable expert testimony establishing general and specific causation in this

---

Experts' Testimony Utilizing "At Least As Likely As Not" Standard, D.E. 539 and all of the United States' related filings attached thereto; U.S. Mot. to Exclude Unreliable PD Literature Reviews, D.E. 541 and all of the United States' related filings attached thereto; U.S. Mot. to Exclude Inadmissible Phase III PD Ops., D.E. 543; U.S Mot. to Exclude Unreliable Ops. That Perchloroethylene ("PCE") Can Cause PD, D.E. 545 and all of the United States' related filings attached thereto; and U.S. Mot. to Exclude Unreliable Exposure. Ops., D.E. 547 and all of the United States' related filings attached thereto.

[3] Alternatively, should the Court grant only the United States' Motion to Exclude Unreliable Exposure Opinions, D.E. 547, it should grant summary judgment to the United States in *McElhiney v. United States* and *Peterson v. United States*.

litigation. Indeed, given that Plaintiffs have submitted several duplicative experts on these issues, it is highly unlikely that they would be able to find an expert to offer a reliable opinion supporting their claims. Plaintiffs have put forward their best expert evidence and cannot expect a do-over merely because their best failed to meet Rule 702's admissibility requirements.

## ARGUMENT

**I. Because Plaintiffs Failed to Disclose Admissible Expert Opinion Testimony on General and Specific Causation, There is No Genuine Dispute of Material Fact and Plaintiffs' Camp Lejeune Justice Act Cases Fail as a Matter of Law.**

Whether exposure to a contaminant, such as PCE, Trichloroethylene ("TCE"), benzene, or vinyl chloride, can cause a given disease in humans, or did in fact cause a specific plaintiff's disease, is unquestionably outside the ken of the layperson. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 478-79 (D.S.C. 2017), *aff'd sub nom., In re Lipitor*, 892 F.3d 624; *see also Nix v. Chemours Co. FC*, Nos. 7:17-CV-189-D, 7:17-CV-197-D, 7:17-CV-201-D, 2023 WL 6471690, at *8 (E.D.N.C. Oct. 4, 2023) ("In toxic tort cases, causation generally will depend on a qualified expert witness establishing both 'general causation and specific causation.'") (quoting *Rhyne v. U.S. Steel Corp.*, 474 F. Supp. 3d 733, 743 (W.D.N.C. 2020)). Expert testimony is required to prove the essential elements of causation in any toxic tort case. Therefore, excluding expert testimony in a toxic tort will prevent the plaintiff from establishing the prima facie elements on an action, and thereby entitle the defendant to summary judgment. *See* Manual for Complex Litigation (Fourth) § 23.354, at 512 (2004); *see also Marsh v. W.R. Grace & Co.*, 80 F. App'x 883, 888–89 (4th Cir. 2003).

All of Plaintiffs' expert testimony on the critical issue of causation with respect to PD is unreliable and inadmissible under Rule 702, as fully outlined in the United States Motions. *See* supra fn. 2. Thus, all general and specific causation opinions of Plaintiffs' Phase II and Phase III

PD experts are inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Because Plaintiffs cannot proffer reliable and admissible expert testimony on general and specific causation, as is required in toxic tort cases, there is no genuine dispute of material fact, and Plaintiffs' claims under the Camp Lejeune Justice Act of 2022 ("CLJA"), Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04 (2022), fail as a matter of law. Therefore, the United States is entitled to summary judgment.

**II.     The Court Should Reject Plaintiffs' Proposal to "Supplement" Their Flawed Expert Reports.**

Courts have historically remarked on the absurdity of supplementation proposals like the one Plaintiffs suggest, noting that "[i]t is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 299 (4th Cir. 2021) (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 455–56 (2000)); *see also Bambarger v. Ameristep, Inc.*, No. 7:12-CV-280, 2013 WL 6222540, at *3 (W.D. Va. Nov. 29, 2013) ("Both fairness and the Federal Rules of Civil Procedure underscore the importance of being able to rely on an expert's report and deposition testimony as his 'best expert evidence.'").

The United States' *Daubert* challenges go to the heart of admissibility under Rule 702, and Plaintiffs' unreliable expert testimony cannot be salvaged with "supplemental" expert reports. "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from *gamesmanship*, and have therefore repeatedly rejected attempts [like that of Plaintiffs here] to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630–31 (E.D.N.C. 2008) (emphasis added) (collecting cases).

Plaintiffs' position is incompatible with other positions they have taken in this litigation. For example, Plaintiffs have recently requested that the Court defer ruling on all *Daubert* motions until trial. *See* D.E. 721. If the Court were to grant that request along with the requested relief in Plaintiffs' Opposition Brief, the Court could exclude certain experts' testimony during trial, and the Parties would then be required to meet and confer on Plaintiffs' proposed new expert reports. This would unquestionably lead to extreme delay and disruption during the trials.

Plaintiffs' proposal is also at odds with their recent treatment of the United States' general causation expert, Dr. Julie Goodman. On the one hand, Plaintiffs seek to exclude the entirety of Dr. Goodman's opinions due to her correction of typographical or inadvertent errors in her appendices, which do not change her opinions or analysis in any way. *See* Pls.' Mot. to Exclude Dr. Goodman, D.E. 621; Pls.' Mot. Strike Dr. Goodman's Suppl. Exp. Reps., D.E. 724. On the other hand, Plaintiffs propose here that they should be allowed to find new experts or have their current experts issue "new and improved" expert reports that will offer brand new opinions, analyses, and more. Pls.' Opp'n, D.E. 701, at 2–3. However, if Plaintiffs have not been able to offer reliable expert opinions from the many duplicative expert reports they have already submitted, it is highly unlikely that they could do so with new experts or new reports.

Moreover, Plaintiffs' proposal, if granted, would give them an unfair advantage of proffering a "new and improved" expert report after having the benefit of reviewing the United States' expert disclosures, as well as considering all of the prior expert depositions and *Daubert* briefings. As one court in the Fourth Circuit recently stated, "[t]he tactic of providing a 'preliminary opinion' only to provide a final opinion after having the benefit of reviewing a defendant's expert disclosures is a cheap tactic, which amounts to nothing more than sandbagging." *Raszkiewicz v. Progressive Max Ins. Co.*, No. 5:21-CV-38, 2023 WL 11113884, at

*2 (N.D. W. Va. May 23, 2023). This Court should not permit Plaintiffs a "do over" for their experts' opinions. Given that their current expert opinions are unreliable and inadmissible, the Court should grant the United States' summary judgment motion.

Plaintiffs' proposal is also extremely inefficient. More than a year ago, this Court entered a Pretrial Scheduling Order that governs, amongst other things, "*Daubert* and dispositive motion briefing in the Track 1 Trial Plaintiff cases." Aug. 7, 2024 Track I Pretrial Sched. Order, D.E. 270. This Court entered that Order based on the joint and individual pretrial scheduling proposals of the Parties. *See* D.E. 254, 261, 262. That Order has been subsequently amended, but at no time did the Court contemplate forgoing *Daubert* and other dispositive motions. *See* Orders Am. Pretrial Deadlines, D.E. 312, 332, 414, 630. Yet, Plaintiffs now request this Court to defer ruling on *Daubert* and other dispositive motions that are ripe for this Court's consideration so that they can submit new and improved expert reports.

Plaintiffs' supplementation proposal comes at the conclusion of a nearly year-long expert discovery period, which has been carefully mediated and managed by this Court through regular status conferences, discovery motions, and rulings. During this time, Plaintiffs filed over 40 duplicative expert reports on general and specific causation across all Track 1 illnesses. Identifying multiple fundamental reliability issues across the reports, the United States filed 20 *Daubert* challenges organized by disease and common methodological flaws, amounting to less than one *Daubert* challenge per case. The United States has also filed other dispositive motions, dealing primarily with issues of statutory interpretation with global implications. Plaintiffs' "supplementation" proposal seeks to turn back the clock on the substantial progress that has already been made in advancing this litigation.

Plaintiffs correctly assert that the purpose of the bellwether process is to test the merits of the Parties' claims and defenses and to promote resolution of the hundreds of thousands of CLJA claims. *See* Pls.' Opp'n, D.E. 701, at 2. Courts, including the Fourth Circuit, have acknowledged the utility of rulings on summary judgment motions in complex litigation. *In re Lipitor*, 892 F.3d at 648. Ruling on an omnibus motion for summary judgment that involves issues common to all cases, such as whether a claim can survive summary judgment without expert testimony on general or specific causation, promotes efficiency. *See id.* Plaintiffs' proposal, however, will do the opposite. It will unnecessarily increase litigation costs and set back progress that has been made toward global resolution.

This Court should proceed with the carefully considered case management plan memorialized in its Pretrial Scheduling Order, which harnesses the elasticity of Rule 16 of the Federal Rules of Civil Procedure, as well as the Court's inherent power to efficiently and effectively manage this litigation. D.E. 414. Accordingly, in the event this Court excludes Plaintiffs' expert opinions on either general or specific causation, it should grant the United States' motion for summary judgment because Plaintiffs' will be left with no admissible evidence on an essential element of their claims.

## CONCLUSION

For all of the reasons stated above and in the United States' opening brief, there is no genuine dispute of a material fact and summary judgment is appropriate as a matter of law.

Dated: December 12, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors

ADAM BAIN
Special Litigation Counsel

ANNA ELLISON
ELIZABETH K. PLATT
JESSICA L. D. ANS
HANLEY W. GIBBONS
JOSEPH B. TURNER
Trial Attorneys

*/s/ Cindy M. Hurt*
CINDY M. HURT
Virginia Bar No.: 86826
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Camp Lejeune Justice Act Section
1100 L Street NW
Washington, DC 20005
202-718-8160
Cindy.M.Hurt@usdoj.gov

Attorney inquiries to DOJ regarding the Camp Lejeune Justice Act:
(202) 353-4426

*Attorneys for Defendant,*
*United States of America*

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 12, 2025, I electronically filed the foregoing using the Court's Case Management/Electronic Case Files system, which will send notice to all counsel of record.

                                          */s/ Cindy M. Hurt*
                                          CINDY M. HURT