IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-cv-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | **UNITED STATES' REPLY TO** |
| This Document Relates To: ) | **PLAINTIFFS' RESPONSE TO D.E. 605** |
| ) | (Fed. R. Civ. P. 56(a); L. Civ. R. 7.1(g)) |
| *Allan Wayne Howard v. United States*, ) | |
| 7:23-cv-00490 ) | |

## INTRODUCTION

The United States and Plaintiff Allan Howard agree that Mr. Howard did not know of his non-Hodgkin's lymphoma ("NHL") prior to August 10, 2022. Pl.'s Opp'n, D.E. 714, at 10 n.2. The plain language of the Camp Lejeune Justice Act of 2022 ("CLJA") makes clear that the CLJA applies only to those claims accruing before August 10, 2022, its date of enactment. Accordingly, there is no material dispute of fact as to whether Plaintiff's NHL claim accrued prior to the enactment of the CLJA. Plaintiff's remaining arguments on the interpretation of the CLJA confuse the issues before the Court and fail to confront the limits on the United States' liability that are manifest in the plain language of the statute. The United States is entitled to summary judgment on Plaintiff's claim for NHL.

## ARGUMENT

"Congress expressly prescribed the reach of the Camp Lejeune Justice Act." *Fancher v. United States*, 646 F. Supp. 3d 694, 699 (E.D.N.C. 2022) (Dever, J.). Congress limited the application of the CLJA and provided statutes of limitations:

> (j) Applicability; Period For Filing.—
> (1) APPLICABILITY.—This section shall apply only to a claim accruing before the date of enactment of this Act.

> (2) STATUTE OF LIMITATIONS.—A claim in an action under this section may not be commenced after the later of—
>> (A) the date that is two years after the date of enactment of this Act; or
>> (B) the date that is 180 days after the date on which the claim is denied under section 2675 of title 28, United States Code.
>
> (3) INAPPLICABILITY OF OTHER LIMITATIONS.—Any applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under this section.

Pub. L. No. 117-168, § 804(j), 136 Stat. 1803–04 (2022). Plaintiff contends that, although he was not diagnosed with NHL or otherwise aware of the disease prior to the date of enactment of the CLJA, he may still recover for NHL under the statute. This is not so. As evidenced by this Court's previous rulings, Plaintiff's NHL claim accrued after the date of enactment of the CLJA, and the United States is therefore entitled to summary judgment because the CLJA does not apply to this claim.

## I. A CLJA Cause of Action Encompasses Distinct Claims for Each Injury, and It Only Applies to Claims Accruing Before August 10, 2022.

The CLJA—and this Court's prior decisions interpreting it—make clear that in the context of the CLJA, a "claim" is a subpart of an action, such that Mr. Howard's NHL claim is distinct claim from his kidney cancer claim. Plaintiff asks this Court to interpret the word "claim" in section 804(j)(1) of the CLJA as being synonymous with the phrase "cause of action." Pl.'s Opp'n, D.E. 714, at 7–8. In doing so, Plaintiff cites various out-of-circuit and state court decisions defining the word "claim" in the context of other statutes. *Id.* But this Court has already recognized that the CLJA distinguishes "cause of action," from "claim" and "claim in an action." In *Fancher*, 646 F. Supp. 3d at 699, the Court explained that CLJA section 804(j)(2) uses the phrase "claim in an action under" the CLJA, "which is different than simply the word 'claim' in section 804(j)(1)." Accordingly, "[t]he phrase 'claim in an action under' the Camp Lejeune Justice Act means *a claim for relief* under the Camp Lejeune Justice Act *in a civil action* . . . ." *Id.* (emphasis added).

The Court's reasoning is sound. As a general rule, courts avoid "'ascribing to one word a meaning so broad' that it assumes the same meaning as another statutory term." *Yselta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (quoting *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575 (1995)). Similarly, the "usual presumption [is] that 'differences in language like this convey differences in meaning." *Id.* (quoting *Henson v. Santander Consumer USA Inc.,* 582 U.S. 79, 86 (2017)). In *Yselta Del Sur Pueblo*, the Supreme Court rejected an interpretation of a statute that would collapse the meanings of "prohibits" and "regulates," where both terms were separately described. Here, the Court should similarly reject Plaintiff's argument that would collapse the meaning of "claim" and "cause of action," where both terms are separately described.

Further, even though Congress used "the claim" and "[a] claim in an action," in CLJA section 804(j)(2) (using "[a] claim in an action" in the introductory section and "the claim" in subsection 804(j)(2)(A)), the canon of presumption of consistent usage compels that "a claim in action" in 804(j)(2) and the word "the claim" in section 804(j)(1) have the same meaning. *See Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2011) ("The normal rule of statutory construction is that identical words used in different parts of the same act are intended to have the same meaning.") (citation modified) (quoting *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990)).

This Court has recently affirmed as much in the analogous context of CLJA sections 804(b) and 804(c). *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2025 WL 2471070 (E.D.N.C. July 15, 2025), *R. & R. adopted*, No. 7:23-CV-897, 2025 WL 3452434 (E.D.N.C. Dec. 1, 2025). There, the Court reasoned that the use of the definite article "the" preceding the phrase "water at Camp Lejeune" "particularizes the subject which it precedes," indicating that Congress intended for "the water at Camp Lejeune" to have the same meaning as "water at Camp Lejeune, North Carolina,

3

supplied by, or on behalf of, the United States." *Id.* at *8. This is no different from "[a] claim in an action" in CLJA section 804(j)(2) and "the claim" in CLJA section 804(j)(2)(A). The definite article preceding "claim" in section 804(j)(2)(A) indicates that Congress intended for it to particularize the subject, imputing the meaning "claim in an action" from section 804(j)(2). Therefore, pursuant to CLJA section 804(j)(1), and notwithstanding the fact that Plaintiff's NHL claim accrued after enactment, it is an injury that makes up part of his action under the CLJA.

The United States and the Plaintiff agree that reading the word "claim" in the CLJA to mean "an injury such as kidney cancer or NHL" "feels familiar colloquially." Pl.'s Opp'n, D.E. 714, at 8. For example, it is common to refer to the Plaintiff's kidney cancer claim or the Plaintiff's NHL claim. This point emphasizes that the United States'—and the *Fancher* Court's—interpretation of the word "claim" in the CLJA is the correct one. "Generally, in examining statutory language, words are given their common usage." *Peck v. United States Dep't of Lab., Admin. Rev. Bd.*, 996 F.3d 224, 230 (4th Cir. 2021), *as amended* (June 21, 2021) (quoting *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994)). The Parties do not dispute that the word "claim" as used in section 804(j)(1) of the CLJA is commonly used to mean "an injury such as kidney cancer or NHL." Pl.'s Opp'n, D.E. 714, at 8. Because the word "claim" is to be given its common usage, Plaintiff's argument fails.

### II. The CLJA Is Not Applicable to Mr. Howard's NHL Claim Because It Accrued after August 10, 2022.

Contrary to Plaintiff's assertion, Pl.'s Opp'n, D.E. 714, at 6–7, the United States cited *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 389 (4th Cir. 2014), for the proposition that, in a personal injury case, a plaintiff's claim accrues when he knows or has reason to know of his injury. *See also Gould v. U.S. Dep't of Health & Hum. Servs.*, 905 F.2d 738, 742 (4th Cir. 1990); *Lee Bey v. Perry*, No. 5:20-CT-3379-D, 2021 WL 7829764, at *2 (E.D.N.C. June 15, 2021).

Plaintiff admits that he did not know or have reason to know of his NHL claim prior to August 10, 2022. Pl.'s Opp'n, D.E. 714, at 10 n.2; *see also* Pl.'s Resp. to United States' Statement of Material Facts, D.E. 716, at ¶ 12 (admitting Mr. Howard did not have reason to know of his NHL prior to March 2023 due to his status as "a layperson"). Accordingly, there is no genuine issue of material fact that Plaintiff's NHL claim accrued after that date.

### III. Plaintiff's Discussion of Whether His NHL Claim "Relates Back" to His Kidney Cancer Claim Is a Straw Man.

Plaintiff next argues that the administrative exhaustion provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(b), is incorporated into the CLJA by reference, and that, pursuant to that provision, he is entitled to "recover for additional damage items discovered after filing an [a]dministrative [t]ort [c]laim." Pl.'s Opp'n, D.E. 714, at 13–14. While the United States agrees that a plaintiff is required to comply with 28 U.S.C. § 2675 prior to instituting an action under the CLJA, this argument is irrelevant to whether Plaintiff's NHL claim accrued prior to the enactment of the CLJA. This argument conflates the presentment requirement expressed in section 804(h) with the applicability limitation expressed in section 804(j)(1) of the CLJA.

The United States does not argue that Plaintiff's NHL claim was not properly exhausted because that claim was not presented on his SF-95; rather the NHL claim is separately time-barred under the applicability limitation in subparagraph 804(j)(1). Accordingly, Plaintiff's reliance on *Spivey v. United States*, 912 F.2d 80 (4th Cir. 1990), and 28 U.S.C. § 2675(b) is misplaced. In *Spivey*, the Fourth Circuit upheld an award of damages in excess of the sum certain presented on the plaintiff's administrative claim form, where such damages became known to the plaintiff after she filed her administrative claim, but before trial. 912 F.2d at 83. Therefore, the issue before the *Spivey* Court was not whether the plaintiff's newly diagnosed injury claim fell outside the application of the statute or whether a newly discovered disease "creates a new and separate cause

of action under the FTCA." Pl.'s Opp'n, D.E. 714, at 16; *see generally Spivey*, 912 F.2d at 83. In fact, *Spivey* did not analyze these questions at all; rather the question was simply whether later damages that were incurred as the result of an injury that was asserted in the original administrative filing could be recovered. *Id*. Therefore, this case is not instructive on the narrow issue before the Court, which is whether there is a genuine dispute of material fact that Plaintiff's NHL injury claim accrued after the CLJA was enacted and therefore the CLJA does not apply to that claim as a matter of law.

IV. **The Plain Language of the CLJA Evinces Congress's Intent to Limit the Cognizable Claims under the Statute, Creating a Temporal Cutoff for the United States' Liability.**

Plaintiff next argues that the separate disease rule is inapplicable to his case because "[t]here is no disease that developed outside the statute of limitations." Pl.'s Opp'n, D.E. 714, at 17. However, Plaintiff's analogy to the "discovery rule" is inapposite, because that rule delays accrual of the statute of limitations, and the United States does not assert a statute of limitations bar. Indeed, CLJA section 804(j)(1), the applicability limitation, is not a statute of limitations, which is separately described in section 804(j)(2). While not a statue of repose, the section 804(j)(1) applicability limitation serves a similar purpose by putting an "outer limit on the right to bring a civil action." *See CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). Further, because the applicability limitation is tied to the statute's enactment in 2022, rather than exposure to contaminated water, which occurred, at the latest, in 1987, the applicability provision is far more generous than the ten-year statute of repose that barred previous FTCA claims—not "stricter" as Plaintiff alleges. *See* Pl.'s Opp'n, D.E. 714, at 12.

Here, through section 804(j)(1), Congress limited the universe of claims covered by the statute. Plaintiff's reading of the statute would lead to an absurd result: any claimant under the CLJA could add claims to his or her CLJA cause of action indefinitely. *See contra Lamie v. United*

*States Tr.*, 540 U.S. 526, 534 (2004) (holding that courts performing statutory interpretation must enforce the plain language of the statute except where the disposition required by the text is absurd); Apr. 5, 2023 Hr'g Tr. at 5:23–10:2 (recognizing the potential for the Camp Lejeune litigation to span decades). In placing a date certain limit on cognizable claims, Congress recognized that opening the CLJA to *future* injuries that accrued after the statute's enactment would significantly complicate both litigation efforts and global resolution, because the universe of claims would be indeterminate.

While Plaintiff does not attempt to square his reading of section 804(j)(1) with its broader impact on litigation and settlement, limiting the CLJA to a defined universe of claims is undeniably important for global resolution. Ignoring how a plain reading of the statute makes sense given the statute's global context, Plaintiff attempts to narrow this question of statutory interpretation to the implications for his case alone, asserting that "Defendant is fully able to defend against Mr. Howard's NHL, as well as kidney cancer, components of his Camp Lejeune claim, on their individual merits." Pl.'s Opp'n, D.E. 714, at 5. But the meaning of section 804(j)(1), and the timing of a claims "accrual," does not turn on the defendant's investigation of a single claim. Rather, the purpose of the CLJA's applicability limitation is that the United States does not need to investigate and defend future injuries on their merits, such as through the detailed expert discovery done for this bellwether case. Nor should the CLJA be read to allow other administrative claimants to add new injuries and diseases after the statute's enactment (thus requiring similar investigation and assessment of those future claims). Accordingly, the plain language of the CLJA is proof that Congress intended to set temporal limits on the United States' liability.

## V. The CLJA Retains the Common Law of "Accrual," including the Separate Disease Rule.

Plaintiff offers no meaningful response to the United States' argument that the separate disease rule applies to the CLJA, just as it applies to other federal causes of action, like the Federal Employees Liability Act and the Jones Act. Nor does he dispute that the separate disease rule has displaced the "one-disease rule" in nearly all jurisdictions. *See* Mem. in Supp. of United States' Mot. for Summ. J., D.E. 606, at 8 (quoting *Goodrich v. John Crane, Inc.*, 4:17-cv-9, 2018 WL 2426273, at *4 (E.D. Va. Jan 18, 2018)).

Rather, Plaintiff argues that the CLJA is an exception from the general rule, because the rule's usual effect is to "preserve, not limit, a plaintiff's right to recover for later-developing diseases." Pl.'s Opp'n, D.E. 714, at 17. This policy consideration must be analyzed in the context of countervailing considerations, such as the need to prevent litigation from continuing indefinitely, *see CTS Corp.*, 573 U.S. at 8–9, and the canon of sovereign immunity. *See In re Camp Lejeune Water Litig.*, 715 F. Supp. 3d 761, 767 (E.D.N.C. 2024), *motion to certify appeal denied,* No. 7:23-CV-897, 2024 WL 2198651 (E.D.N.C. May 13, 2024). In support of this policy argument, Plaintiff cites *Nelson v. A.W. Chesterton Co.*, No. 10-00065, 2011 WL 6016986, at *1 n.1 (E.D. Pa. Oct. 27, 2011). Pl.'s Opp'n, D.E. 714, at 17. However, Plaintiff ignores *Nelson's* broader lesson that the separate disease rule was the common law backdrop when Congress drafted the CLJA, and Congress is presumed to be aware of it. Thus, Congress likely intended a separate disease rule to apply. *In re Camp Lejeune Water Litig.*, 736 F. Supp. 3d 311, 320 (E.D.N.C. 2024) ("*Sorrell* teaches '[a]bsent express language,' 'the elements of a [CLJA] claim are determined by . . . common law.'") (alterations in original) (quoting *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66 (2007)). If Congress intended for a "one disease rule" to apply, it

could have drafted section 804(j) to make that clear. Even though the rule often cuts in favor of plaintiffs, as in *Nelson*, it should also apply with equal force in favor of the United States here.

Congress's choice to incorporate both an applicability limitation in section 804(j)(1) and statutes of limitations in section 804(j)(2) counsels in favor of cutting off liability for separate injuries that fall outside the CLJA's applicability limitation because they accrued after August 10, 2022. Had Congress truly intended, as Plaintiff argues, to allow plaintiffs to recover for any disease alleged to have been caused by exposure to contaminated water at Camp Lejeune between August 1, 1953, and December 31, 1987, no matter how late in time it developed, Congress would not have set outer limits on CLJA claims. Pl.'s Opp'n., D.E. 714, at 16–18. The presence of these provisions evinces Congress's intent to balance opposing policy considerations: narrowly waiving sovereign immunity with respect to some claims, while setting outer limits on which claims are cognizable.

## CONCLUSION

The plain language of the CLJA is clear: the statute does not apply to claims that accrued after August 10, 2022. For the foregoing reasons and the reasons in the Memorandum in Support of United States' Motion for Partial Summary Judgment on Claims Accruing After August 10, 2022, D.E. 606, the United States is entitled to summary judgment on Plaintiff's NHL claim.

9
Case 7:23-cv-00897-RJ    Document 758    Filed 12/12/25    Page 9 of 11

Dated: December 12, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief
Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors
Camp Lejeune Justice Act Section

ADAM BAIN
Special Litigation Counsel

NATHAN J. BU
Trial Attorney

*/s/ Giovanni Antonucci*
GIOVANNI ANTONUCCI
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Camp Lejeune Justice Act Section
1100 L Street NW
Washington, DC 20009
(202) 880-6104
Fax: (202) 616-4473
giovanni.antonucci@usdoj.gov
N.Y. Bar No. 6096671

Attorney inquiries to DOJ regarding
CLJA: (202) 353-4426

*Attorneys for Defendant,*
*United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, I electronically filed the foregoing using the Court's Electronic Case Filing system, which will send notice to all counsel of record.

/s/ Giovanni Antonucci
GIOVANNI ANTONUCCI