IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 7:23-CV-00897

| | |
|---|---|
| IN RE: CAMP LEJEUNE WATER LITIGATION <br><br> This Pleading Relates to: <br><br> ALL CASES. | PLAINTIFFS' LEADERSHIP GROUP'S MOTION TO STRIKE DR. BAILEY'S UNTIMELY GENERAL CAUSATION OPINIONS |

Plaintiffs' Leadership Group (the "PLG" or "Plaintiffs") respectfully moves the Court to strike Defense Expert Dr. Lisa Bailey's untimely general causation opinions pursuant to Federal Rule of Civil Procedure 16(f).

## I. INTRODUCTION & BACKGROUND

Pursuant to the Court's orders, expert discovery in this litigation has proceeded in three phases: Phase I (water contamination), Phase II (general causation), and Phase III (specific causation, damages, and residual issues). Each Phase included deadlines for expert disclosures and expert reports by both parties. [D.E. 444] at 1-2; *see generally* [D.E. 270]; [D.E. 312]; [D.E. 414]. As relevant here, this Court ordered Defendant to "disclose its experts relating to the General Causation Phase" by February 7, 2025. [D.E. 312] at 1, 3. Phase III experts were to be disclosed at later dates. *Id.* In keeping with this schedule, Defendant identified Dr. Lisa Bailey as a Phase III expert for all Track 1 Plaintiffs on April 8, 2025. (JA Ex. 328, D.E. 487-4).

After Phase III expert reports were served, Defendant moved the Court to exclude portions of Plaintiffs' Phase III reports, which Defendant contended included new general causation opinions that should have been disclosed in Phase II. *See* [D.E. 410] at 6-7. In response, Plaintiffs pointed to examples of Defendant's own Phase III reports likewise containing new general causation analysis, including Dr. Bailey. [D.E. 437] at 5-6.

1

On July 22, 2025, the Court entered an Order (the "July 22 Order") partially granting Defendant's motion. *See* [D.E. 444]. The Court concluded that "to the extent Phase III experts offer new, independent general causation analyses, such as fresh literature reviews, novel threshold calculations, or independent application of causation models not previously disclosed, those opinions violate the court's scheduling orders." *Id.* at 5. The Court allowed, however, "Phase III experts to reference Phase II findings," *id.* at 7, because "each phase informs the next" and not so allowing would "frustrate the court's intent" in creating the phased approach. *Id.* at 5. In short, this approach would "keep[] the litigation on its current pretrial track." *Id.* In granting Defendant's motion, the July 22 Order was directed only to Plaintiffs' experts.

On September 2, 2025, Plaintiffs moved to apply the July 22 Order to experts from both parties. [D.E. 515]. Plaintiffs cited the Court's inherent authority as one basis (among others) to apply its July 22 Order equally, because the scheduling orders apply equally to both parties and the July 22 Order was framed in terms of general principles. Plaintiffs thus determined it would be unnecessary to bring a Rule 16(f) sanctions motion since the Court had already established these equally applicable general principles. Before filing their September 2 motion, Plaintiffs conferred with the Defendant about stipulating that no Phase III expert could provide new opinions on general causation, but Defendant did not agree. *See* [D.E. 515] at 3.

On November 10, 2025, the Court denied Plaintiffs' motion as procedurally improper. *See* [D.E. 685]. The Court explained that "the appropriate procedural vehicle [was to] move to exclude portions of Defendant's expert testimony as a sanction under Rules 16(f) or 37." *Id.* at 4.

Plaintiffs thus now bring this motion using the Court's recommended procedure.[1]

---

[1] This Court's scheduling orders set a deadline for *Daubert* and summary judgment motions related to Phase II and III experts, but set no deadline for motions for discovery sanctions under Rules 16 or 37. *See* [D.E. 312] ¶ 12; *see also* [D.E. 332, 414, 456].

2

Case 7:23-cv-00897-RJ    Document 787    Filed 12/15/25    Page 2 of 10

Plaintiffs have narrowed their request to focus the Court's attention on Dr. Bailey only.

## II. LEGAL STANDARD

The Court's "inquiry into whether there have been any violations" of its scheduling orders "is governed by Rule 16(f)." [D.E. 380] at 6; *see* Fed. R. Civ. P. 16(f)(1)(C) (allowing the court to "issue any just orders" if a party "fails to obey a scheduling or other pretrial order"). The Court conducts a "two-part inquiry," first considering whether a party violated the scheduling order, and then determining if any sanction is appropriate. [D.E. 444] at 3. To determine if sanctions are warranted, the Court "considers alleged violations of the expert disclosure deadline under the factors articulated in *Akeva* [*LLC v. Mizuno Corp.*, 212 F.R.D. 306, 209 (M.D.N.C. 2002)]." *Id.* at 2-3. These factors are:

> 1) the explanation for the failure to obey the order; 2) the importance of the expert opinion; 3) the prejudice to the opposing party; 4) the availability of lesser sanctions; 5) the interest in expeditious resolution; 6) docket management; and 7) public policy favoring disposition on the merits.

*Id.* at 3 (citations omitted).

## III. ARGUMENT

The Court should strike the Dr. Bailey's general causation opinions. Because Dr. Bailey was not disclosed as a Phase II expert, these opinions were untimely and violated the scheduling orders. The *Akeva* factors—as applied by this Court in D.E. 444—counsel in favor of excluding the testimony.

### A. Defendant Violated the Court's Scheduling Orders by Offering Dr. Bailey's General Causation Testimony.

This Court previously concluded that while Phase III experts could "rely on general causation evidence to establish that an exposure can cause the disease at issue … that permission does not allow [the Phase III expert] to present new general causation theories, fresh literature reviews, or threshold calculations after the Phase II deadline." [D.E. 444] at 4 (citations omitted).

In other words, "to the extent Phase III experts offer new, independent general causation analyses, such as fresh literature reviews, novel threshold calculations, or independent application of causation models not previously disclosed, those opinions violate the court's scheduling orders." *Id.* at 5. Thus, this Motion "turns on whether references to general causation in [Dr. Bailey's] expert reports are permissible components of specific causation methodology (such as differential diagnosis) or whether they introduce new, independent general causation theories that were not disclosed by the Phase II deadline." *Id.* at 4.

Dr. Bailey's opinions plainly violate this rule because she calculated new "toxicity critera" for the chemicals at issue, thereby conducting new general causation analysis. As a Phase III expert, Dr. Bailey concluded that every Track 1 Plaintiff's disease was not caused by exposure to water at Camp Lejeune. She used the same methodology to reach this conclusion for every Track 1 Plaintiff. Generally speaking, for every Track 1 Plaintiff, Dr. Bailey conducted what she describes as a "risk assessment" in which she compared her calculation of each Plaintiff's exposure to a relevant chemical to "toxicity criteria," which she described as "doses or concentrations at or below which health adverse health effects are not expected." *See, e.g.*, Bailey Rep. (Welch) at 3-4 (JA Ex. 547, D.E. 503); Bailey Rep. (Sparks) at 3-4 (JA Ex. 546, D.E. 503). Dr. Bailey calculated these toxicity criteria herself, and offered them for the first time in her Phase III reports. The "toxicity criteria" that Dr. Bailey used are not Plaintiff-specific, but apply generally to each chemical. For example, Dr. Bailey identified and applied the same toxicity criteria in each of her reports on Parkinson's Disease Track 1 Plaintiffs, apparently copying and pasting much or all of Section 5.2 of each such report. *Compare* Bailey Rep. (Welch) at 26 (JA Ex. 547, D.E. 503) (table of TCE Toxicity Criteria Applied in the Risk Calculations), *with* Bailey Rep. (Sparks) at 24 (JA Ex. 546, D.E. 503) (same table).

4

Dr. Bailey did not rely on one of the Defendant's Phase II experts to identify toxicity criteria. Instead, Dr. Bailey reviewed US EPA and ATSDR assessments of toxicity criteria herself, and then made her own choices and adjustments to derive the toxicity criteria that she would compare to each Plaintiff's exposure levels. *See, e.g.*, Bailey Rep. (Kidd) at 29 (JA Ex. 513, D.E. 500) ("I chose to use the higher end of the range of benzene CSFs and IURs provided by US EPA (2003a) in my risk calculations"); Bailey Rep. (Welch) at 25 (JA Ex. 547, D.E. 503) (adjusting EPA data to derive toxicity criterion she applied to Plaintiffs at Camp Lejeune for fewer than 7 years: "I have removed that UF to adjust the value to reflect a subchronic exposure duration (64 µg/m$^3$ x 3), resulting in subchronic TCE toxicity criterion of 192 µg/m$^3$ (0.036 pa1ts per million [ppm]) that can be applied for subchronic exposure durations (i.e., less than 7 years of exposure per US EPA guidelines) for neurological effects."); Bailey Rep. (Sparks) at 24 (JA Ex. 546, D.E. 503) (same verbatim). When the EPA did not provide data on the "exposure concentration or dose that is predicted to be associated with no (or a very low) [health] response," which "is referred to as the point of departure (POD)," Dr. Bailey estimated that threshold dose herself. *See, e.g.*, Bailey Rep. (Kidd) at 11, App'x E (JA Ex. 513, D.E. 500) (stating: "Because the [EPA] does not present points of departure (PODs) for [TCE] or vinyl chloride . . . , I have estimated the PODs . . . used in the margin of exposure (MoE) calculations"; and then presenting those calculations).

By conducting new "threshold calculations" in Phase III, *see* [D.E. 444] at 4, Dr. Bailey introduced new general causation analysis that should have been disclosed in Phase II. As such, her opinions violate the scheduling orders.

### B. The *Akeva* Factors Weigh in Favor of Excluding Dr. Bailey's General Causation Testimony.

As described by the Court in its July 22 Order, the *Akeva* factors weigh in favor of

excluding Phase III expert testimony that introduces new, independent general causation evidence. [D.E. 444] at 6-8. Dr. Bailey's general causation opinions—and any conclusions that rely upon such opinions—must be stricken.

1. **Defendant Can Offer No Explanation of the Violation**

Defendant can offer no explanation for violating the scheduling orders by offering general causation testimony in Phase III because it moved to exclude the very same testimony. *See* [D.E. 410]. As Defendant stated in its motion to exclude Plaintiffs' expert testimony, the scheduling orders were clear, and both parties were involved in negotiating the schedule. *Id.* at 7. Defendant cited caselaw supporting exclusion of untimely general causation opinions. *Id.* at 7-8. Moreover, Defendant now has the benefit of this Court's July 22 Order, which makes clear that, while relying on Phase II general causation testimony to reach Phase III opinions is appropriate, conducting new Phase II analyses in Phase III is not. There is no basis to treat Defendant's Phase III testimony differently than Plaintiffs'. This factor counsels in favor of excluding Dr. Bailey's general causation testimony.

2. **Because General Causation Was Addressed in Phase II, Dr. Bailey's Improper General Causation Testimony Lacks Importance**

Because Phase II allowed multiple experts to testify as to general causation, there is no need to allow new general causation testimony in Phase III. In its July 22 Order, the Court explained that excluding the "foundational reasoning" of general causation testimony entirely would "render[] specific causation analyses incomplete or unreliable." [D.E. 444] at 6. But this conclusion supported only "permitting experts to reference previously disclosed" general causation testimony. *Id.* at 7. "[A]llowing wholly new general causation analyses could undermine the court's phased discovery process and pretrial schedule." *Id.* "This factor … cautions against new analyses." *Id.*

6

### 3. Plaintiffs Would Be Prejudiced if Dr. Bailey Could Offer Phase II Testimony

Dr. Bailey's Phase III reports offer "novel threshold calculations," which the July 22 Order concluded "violate the court's scheduling orders." [D.E. 444] at 5. As the Court concluded when considering Defendant's motion, "[p]ermitting new Phase II analyses within Phase III reports risks unfair surprise to [the opposing party] and may necessitate additional discovery. This favors limited exclusion." [D.E. 444] at 7. The same is true here—Plaintiffs would be prejudiced if Defendant were allowed to introduce new Phase II analyses in Phase III. Moreover, because Plaintiff's Phase III general causation testimony was excluded by the July 22 Order, it would be doubly prejudicial to allow Defendant to commit the same violation without equivalent sanction. This factor favors exclusion.

### 4. Availability of Lesser Sections

Here, the Court has already considered in its July 22 Order the appropriate sanction for the conduct at issue. The sanction applied to Dr. Bailey should be the same as that applied to Plaintiffs' experts. As this Court held, "limited exclusion suffice[s] to prevent prejudice." [D.E. 444] at 7. The limited sanction of excluding Dr. Bailey's general causation opinions (and conclusions stemming from such opinions) is appropriate here.

### 5. Interest in Expeditious Resolution and Docket Management

Excluding Dr. Bailey's tardy general causation opinions in keeping with the Court's scheduling orders will support speedy resolution and effective docket management. As this Court explained in its July 22 Order, excluding new general causation analyses from Phase III expert reports would promote the advancement of the litigation because "allowing wholly new general causation analyses could undermine the court's phased discovery process and pretrial schedule." [D.E. 444] at 7. In sum:

> The phased expert discovery schedule is designed to efficiently litigate pretrial threshold issues and conduct bellwether mediations and trials to progress towards global settlement. Allowing Phase III experts to reference Phase II findings avoids duplicative discovery; barring new analyses preserves docket control.

*Id.* (internal citations omitted). The "phased expert discovery schedule" applies to both parties, and allowing *either* party to deviate from it by including new Phase II analysis in Phase III reports would interfere with the "efficient[] litigat[ion]" and "progress" envisioned by the Court. *See id.* This "balanced approach" allowing Phase III experts to reference Phase II findings—but not to conduct *new* general causation analyses—will "keep[] the litigation on its current pretrial track." *Id.*

### 6. Public Policy Favors Resolution on the Merits

Finally, ensuring both parties adhere to the scheduling orders will favor resolution on the merits. Allowing Defendant, but not Plaintiffs, to present general causation testimony in Phase III would not support meritorious resolution. Exclusion of each party's untimely opinions preserves the Court's phased discovery structure, which will allow these cases to proceed towards trial and reach resolution.

## IV. CONCLUSION

Accordingly, the PLG moves the Court to strike Dr. Bailey's untimely general causation opinions and any conclusions that rely on such testimony.

*Signatures on following page*

8

Case 7:23-cv-00897-RJ    Document 787    Filed 12/15/25    Page 8 of 10

DATED this 15th day of December, 2025.

/s/    J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com

*Lead Counsel for Plaintiffs*

/s/    W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790) The Dowling Firm PLLC
Post Office Box 27843 Raleigh,
North Carolina 27611 Telephone: (919) 529-3351
mike@dowlingfirm.com

*Co-Lead Counsel for Plaintiffs*

/s/    James A. Roberts, III
James A. Roberts, III
Lewis & Roberts, PLLC
3700 Glenwood Ave., Ste. 410
Raleigh, NC 27612
Telephone: (919) 981-0191
jar@lewis-roberts.com

*Co-Lead Counsel for Plaintiffs*

/s/    Elizabeth J. Cabraser
Elizabeth J. Cabraser (admitted *pro hac vice*) Lieff Cabraser Heimann & Bernstein, LLP 275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ecabraser@lchb.com

*Co-Lead Counsel for Plaintiffs*

/s/    Robin L. Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com

*Co-Lead Counsel for Plaintiffs*

/s/    Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025, I electronically filed the foregoing using the Court's Case Management/Electronic Case Files system, which will send notice to all counsel of record.

/s/ J. Edward Bell, III
J. Edward Bell, III
