IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:23-CV-897

IN RE:

CAMP LEJEUNE WATER LITIGATION

This Document Relates To:

ALL CASES

PRIVACY ACT ORDER
(CASE MANAGEMENT ORDER NO. ___)

The United States, the Plaintiffs' Leadership Group ("PLG"), and the Settlement Masters seek entry of this agreed Privacy Act Order. The Court, having reviewed and considered the request, agrees that the following Privacy Act Order should be entered. This Privacy Act Order is entered to protect the privacy of individuals who have filed claims with the United States pursuant to the Camp Lejeune Justice Act of 2022, Section 804 of the PACT Act, Pub. L. No. 117-168, 136 Stat. 1759 (2022) ("CLJA"), against disclosure of information in records pertaining to them as specified by the provisions of the Privacy Act of 1974, 5 U.S.C. § 552a, and to allow the United States to release such information and records without violating the provisions of the Privacy Act to facilitate the pursuit of a Global Resolution Framework for CLJA claims.

1. **Definitions.** For purposes of this Privacy Act Order, the following definitions apply:

    a. "Administrative Claims Process" means the Department of the Navy's ("DON") administrative process for claims filed under the CLJA.

    b. "Agent" means someone who is authorized to act for or in place of someone else. In the case of the Settlement Masters, agents include, but are not limited to, associated personnel necessary to assist the Settlement Masters in the Questionnaire Process and development of a Global Resolution Framework, such as attorneys,

legal assistants, paralegals, litigation support, information technology personnel, information or records management personnel, and investigative, secretarial, or clerical personnel.

c. "Claimant" means an individual who has either filed a claim with DON or this Court under the CLJA.

d. "Claims Management Portal" means DON's online CLJA claims management system.

e. "Disclose" (or forms thereof) means to distribute, provide, or otherwise make available for access, viewing, or copying. "Disclose" shall include the actual covered Document or item as well as the contents or information contained therein, such that Disclosing a copy, summary, paraphrasing, or characterization would be considered a Disclosure of the Document itself for purposes of this Privacy Act Order.

f. "Document" means the original, each identical copy and each non-identical copy, whether different from the original because of marginal notes or other material inserted therein or attached thereto or otherwise, and drafts and both sides thereof, of any written, printed, recorded, or graphic record however produced or recorded. Documents include Electronically Stored Information ("ESI"), paper documents, imaged hard copy documents, and tangible things.

g. "Global Resolution Framework" means a resolution framework for claims filed under the CLJA. *See* Case Management Order No. 14 [D.E. 251] (9 July 2024).

h. "Non-PLG-represented Respondent-Claimants" and "Non-PLG Respondent-Claimants" mean Respondent-Claimants who are not clients of attorneys serving in or affiliated with the PLG.

i. "Non-PLG Spreadsheet" means the spreadsheet generated from the Claims Management Portal that contains (i) contact information and alleged disease(s) for the Non-PLG-represented and pro-se Respondent-Claimants, and (ii) contact information for the Non-PLG-represented Respondent-Claimants' counsel (if available).

j. "Parties" includes any party to a case filed with this Court under the CLJA.

k. "Plaintiffs' Leadership Group" or "PLG" is used as the term is defined by this Court in Case Management Order No. 1 [D.E. 10] (19 July 2023).

l. "PLG-represented Respondent-Claimants" means Respondent-Claimants who are clients of attorneys serving in or affiliated with the PLG.

m. "PLG Spreadsheet" means the spreadsheet generated from the Claims Management Portal that contains (i) contact information and alleged disease(s) for the PLG-represented Respondent-Claimants, and (ii) contact information for counsel (if available) for the PLG-represented Respondent-Claimants.

n. "Protected Document" means a Document that is either protected by the Privacy Act or that otherwise contains personal information regarding Claimants that the United States deems reasonably relevant and necessary to the Questionnaire Process and development of a Global Resolution Framework. A Document submitted by the Respondent-Claimants as part of the Questionnaire Process and/or produced directly by the Respondent-Claimant to PLG is not considered a

3

Case 7:23-cv-00897-RJ    Document 792-1    Filed 12/23/25    Page 3 of 15

"Protected Document" for purposes of this Privacy Act Order. Examples of "Protected Documents" include, but are not limited to, the PLG Spreadsheet and Non-PLG Spreadsheet, and the data included therein.

o. "Questionnaire Process" means the process wherein 2,500 Respondent-Claimants were randomly selected to complete the Questionnaire that was finalized by the United States, PLG, and Settlement Masters in September 2025. *See* Settlement Master Update [D.E. 647] (8 Oct. 2025); Order [D.E. 652] (23 Oct. 2025).

p. "Questionnaire" means the Questionnaire that the United States, PLG, and the Settlement Masters agreed to be disseminated to 2,500 Respondent-Claimants in September 2025 to obtain information about the larger Claimant population for potential assistance with development of a Global Resolution Framework.

q. "Respondent-Claimants" means the 2,500 randomly chosen Claimants selected to participate in the Questionnaire Process.

r. "Settlement Masters" is used as the term defined by this Court in Case Management Order No. 14 [D.E. 251] (9 July 2024) and are appointed by the Court.

s. "Technology Staffer" means the technology staffer who administers the www.camplejeunecourtinfo.com website, who assisted with setting up the settlementmasters@camplejeunecourtinfo.com email domain to facilitate the Questionnaire Process and communications with Respondent-Claimants and their counsel, and who is also employed by a PLG firm.

2. **Background**

In September 2025, the United States, PLG, and the Settlement Masters finalized a Questionnaire, which was to be completed by 2,500 randomly selected Respondent-Claimants on

the PLG-controlled Rubris database. The Questionnaire seeks information "about the characteristics of the entire [C]laimant population." *See* Settlement Master Update [D.E. 647] (8 Oct. 2025); Order [D.E. 652] (23 Oct. 2025). The Settlement Masters' ability to communicate with Respondent-Claimants about the Questionnaire is relevant and necessary to the completion of the Questionnaire Process.

To facilitate the Questionnaire Process, and as agreed by the PLG, the United States, and the Settlement Masters, the United States gathered the following data related to the 2,500 randomly selected Claimants from the Claims Management Portal: (1) contact information and alleged disease(s) for the Respondent-Claimants, and (2) contact information for the Respondent-Claimants' counsel (if available). This data was compiled in two separate spreadsheets: the PLG Spreadsheet and the Non-PLG Spreadsheet.

On September 5, 2025, the United States (through the Department of Justice ("DOJ")) disclosed the PLG Spreadsheet to PLG and the Settlement Masters. This email transmission contained a Privacy Act Cover Sheet from DON, which stated, *inter alia*, "[t]he enclosed data is limited to claimants represented by the [PLG] who are current claimants in CLJA proceedings. Further disclosure by DOJ to PLG is authorized as they are the duly designated legal representatives of the individuals to whom these records pertain. Further disclosure to the Settlement Masters for CLJA proceedings is also authorized to the extent that DOJ determines such disclosure to be relevant and necessary. No records relating to Non-PLG or pro se claimants are included in this release. . . . All individuals handling this information are required to protect it from unauthorized disclosure."

The United States also disclosed the Non-PLG Spreadsheet only to the Settlement Masters on September 5, 2025 via the Justice Enterprise File Sharing system. This transmission also

5

contained a Privacy Act Cover Sheet from DON, which stated, *inter alia*, "[t]he enclosed data is limited to current claimants in CLJA proceedings who are not represented by the [PLG]. Further disclosure by DOJ to the Settlement Masters for CLJA proceedings is also authorized to the extent that DOJ determines such disclosure to be relevant and necessary. No records relating to PLG-represented claimants are included in this release. . . . All individuals handling this information are required to protect it from unauthorized disclosure."

To facilitate completion of the Questionnaire Process and communicate with Respondent-Claimants and their counsel, following consultation with the Court-appointed Settlement Liaison, the Settlement Masters requested the use of the camplejeunecourtinfo.com website, which provides information to claimants about the status of the Camp Lejeune litigation. Use of the website provided the Settlement Masters with the ability to send and receive emails to large numbers of Respondent-Claimants, including the Non-PLG Respondent-Claimants selected for the Questionnaire from an email domain likely to be recognizable to the majority of Respondent-Claimants. To facilitate this process, the Settlement Masters sent a version of the Non-PLG Spreadsheet to the Technology Staffer to set up an email address for the Settlement Masters' use on camplejeunecourtinfo.com email domain, which is owned by the PLG. The Settlement Masters confirmed the staffer would not review substantive information but would merely provide administrative support as needed. The Settlement Masters directed that the information be used solely for set-up of the email, that no information be shared with any PLG counsel, and that no communications be reviewed by the Technology Staffer or any PLG counsel. The Settlement Masters used this email address to transmit the Questionnaire and otherwise communicate with Non-PLG and pro se Respondent-Claimants. The Technology Staffer has assisted the Settlement Masters in handling administrative issues. The Technology Staffer has confirmed that he deleted

the version of the Non-PLG Spreadsheet he had been previously sent, but the Technology Staffer, because of his administrative role, retained access to the email account and its data. The Settlement Masters wish to continue using the email address to facilitate the Questionnaire Process. The Settlement Masters also wish to continue to request the assistance of the Technology Staffer to assist with administrative issues, if needed.

Also, as part of the Questionnaire Process, the Parties agreed to ensure that pro se Respondent-Claimants would have access to non-legal assistance with respect to completing the Questionnaire. To facilitate this process, the Settlement Masters sent a truncated version of the Non-PLG Spreadsheet with contact information for pro se Respondent-Claimants to the Court-appointed Pro Se Liaison, which is also a PLG firm. The Settlement Masters informed DOJ of this on October 20, 2025, and stated their understanding that the "Pro Se Liaison" had overseen outreach to let pro se Respondent-Claimants know that the Liaison was available to answer certain questions related to the Questionnaire. The Settlement Masters have since requested that the truncated spreadsheet be destroyed, which has been confirmed. The Pro Se Liaison has stated that they had not affirmatively reached out to any pro se Respondent-Claimants. The Pro Se Liaison has also stated that they sent the truncated Non-PLG Spreadsheet to Rubris.

The Settlement Masters have also engaged PLG to set up a voicemailbox for Non-PLG and pro se Respondent-Claimants to call with questions related to the Questionnaire Process.

Finally, on September 24, 2025, the Settlement Masters sent an email to DOJ and PLG that attached the Non-PLG Spreadsheet. DOJ thereafter requested that the Settlement Masters instruct PLG to destroy the disclosed Non-PLG Spreadsheet given the protected nature of the data. The Settlement Masters did so on October 20, 2025.

3. **Scope, Purpose, and Limitations.**

   a. This Privacy Act Order applies to information that is protected by the Privacy Act or that otherwise contains personal information regarding Claimants that the United States deems is relevant and necessary to the Questionnaire Process or the development of a Global Resolution Framework. This Order binds the Settlement Masters, the United States, the PLG, and their respective agents, successors, personal representatives, and assignees.

   b. This Privacy Act Order permits the United States to produce information in records to the Settlement Masters (and their agents) that the United States deems are reasonably relevant and necessary to the Questionnaire Process or the development of a Global Resolution Framework without requiring the United States to pre-screen each document for Privacy Act objections and presenting those objections to this Court for a decision regarding disclosure.

   c. This Privacy Act Order governs the disclosure, use, and handling of all Protected Documents, regardless of the format or medium in which such Protected Document is generated, stored, or maintained.

   d. This Privacy Act Order does not constitute a waiver of the respective rights of the Parties under the Federal Rules of Civil Procedure and Federal Rules of Evidence, nor does it constitute any decision by the Court concerning discovery or the admission of evidence.

   e. Nothing in this Privacy Act Order extends the jurisdiction of this Court to the DON's Administrative Claim Process.

f. The United States, the Settlement Masters, and PLG concur in the request for this Order and shall be bound by the terms of this Privacy Act Order.

g. Nothing in this Privacy Act Order shall apply to the Settlement Masters' Disclosure of Protected Documents to the Magistrate Judge serving as Settlement Liaison when the Settlement Liaison orders such Disclosure as relevant and necessary to the execution of the Questionnaire Process and/or the development of a Global Resolution Framework.

4. **Method for Designating Protected Documents.** Designations of Protected Documents may be made at the time of production. Documents produced in the Questionnaire Process or in the development of a Global Resolution Framework may be designated as Protected Documents. For Protected Documents produced in paper or an electronic form that allows endorsements or similar designation on the image, the designation may appear by inclusion of the marking "CONTAINS INFORMATION SUBJECT TO THE PRIVACY ACT: DO NOT DISCLOSE TO UNAUTHORIZED PERSONS." For electronic information that is provided in native form or on a format that is not amenable to visible endorsement on the image, to the extent technically feasible, the file name(s) should begin with "CONFIDENTIAL" or should be produced with a Privacy Act Cover Sheet indicating that unauthorized disclosure is prohibited. The media on which Protected Documents are provided (*e.g.*, CD, DVD, external hard drive) also should be and remain plainly labeled "CONTAINS INFORMATION SUBJECT TO THE PRIVACY ACT: DO NOT DISCLOSE TO UNAUTHORIZED PERSONS" unless and until the protection of the data within the media is removed. Any copying or transferring of electronic files that are designated Protected Documents must be done in a manner that maintains the protection

for all copies, including, but not limited to, in the filename(s) and the location where the copies are stored and users' have access thereto. The absence of such identification on a Document or media, however, shall not mean that any protected information in the Document or on the media is not subject to the provisions of this Privacy Act Order.

5. **Restrictions on Use and Disclosure of Protected Documents.** Protected Documents disclosed pursuant to this Privacy Act Order shall not be, absent any prior amendment to this Order, used or Disclosed by the individuals defined in Section 6 (Access to Protected Documents) for any purpose other than for the Questionnaire Process and/or development of a Global Resolution Framework.

6. **Access to Protected Documents.** Recipients of Protected Documents pursuant to this Privacy Act Order shall not Disclose or permit Disclosure of such Protected Documents to any other person or entity, except as listed in 6.a through d, and any person to whom Disclosure is made shall be advised of and become subject to the provisions of the Privacy Act Order requiring that the Protected Documents be held without any unauthorized Disclosure. A Privacy Act Order Certification is attached to this Order as Exhibit A and must be completed by any individual who will receive a Disclosure.

    a. The United States may Disclose Protected Documents to the Settlement Masters Christopher Oprison and Thomas Perrelli and any subsequent Settlement Masters appointed by the Court, if the United States deems such Disclosure is relevant and necessary to the execution of the Questionnaire Process and/or the development of a Global Resolution Framework.

    b. The United States and the Settlement Masters may disclose Protected Documents to agents, employees, and contractors of the Settlement Masters (and their

10
Case 7:23-cv-00897-RJ    Document 792-1    Filed 12/23/25    Page 10 of 15

respective employers DLA Piper LLP (US) and Jenner & Block LLP) who have functional responsibility related to the Questionnaire Process and/or development of a Global Resolution Framework.

    c. The Settlement Masters may continue to use settlementmasters@camplejeunecourtinfo.com to communicate with Non-PLG and pro se Respondent-Claimants. Disclosure of Non-PLG Spreadsheet data may be made to the designated Technology Staffer for the limited purpose of maintaining settlementmasters@camplejeunecourtinfo.com, to the extent it is reasonably necessary for the Questionnaire Process and development of a Global Resolution Framework. The Technology Staffer may also assist with administrative issues related to settlementmasters@camplejeunecourtinfo.com but may not review correspondence with Non-PLG or pro se Respondent-Claimants and shall not communicate with Non-PLG or pro se Respondent-Claimants or share any data or other information related to Non-PLG or pro se Respondent-Claimants with PLG.

    d. The Settlement Masters may continue to use the voicemailbox set up to receive questions from Non-PLG and pro se Respondent-Claimants related to the Questionnaire Process. Except for the designated Technology Staffer(s), no member of PLG (or their agents, employees, or contractors) may access any voice messages or data saved or otherwise received via the voicemailbox.

7. **Unauthorized Persons Disposition of Protected Documents.**

    a. If the Parties, Settlement Masters, or others subject to this Order provide one or more Privacy Act Protected Documents to an individual not defined in Section 6 (Access to Protected Documents) following entry of this Order, the recipient shall:

(a) refrain from reading the Documents any more closely than is necessary to ascertain that they are covered by this Privacy Act Order; (b) immediately notify DOJ in writing that it has discovered Documents believed to be protected by this Privacy Act Order; (c) specifically identify the Documents; (d) where possible, return, sequester, or destroy all copies of such Documents, along with any notes, abstracts, or compilations of the content thereof, within fifteen (15) business days of discovery by the recipient; and (e) confirm with DOJ that the return, sequestering, or destruction of all copies of such Documents, along with any notes, abstracts, or compilations of the content thereof has occurred. Where such Documents cannot be destroyed or separated, they shall not be reviewed, disclosed, or otherwise used by the recipient.

b. The Parties believe that the copies of the spreadsheets discussed above have been destroyed. Notwithstanding that belief, PLG members or other individuals who have received unauthorized Disclosures of Protected Documents and/or data must (a) return, sequester, or destroy all copies of such Documents, along with any notes, abstracts, or compilations of the content thereof, within five (5) business days of this Order; and (b) confirm with DOJ that the return, sequestering, or destruction of all copies of such Documents, along with any notes, abstracts, or compilations of the content thereof has occurred. Specifically:

   i. Any PLG member or other individual who received an unauthorized Disclosure of the Non-PLG Spreadsheet must destroy all copies of the Non-PLG Spreadsheet and related data within five (5) business days of this Order and confirm with DOJ that they have done so.

ii. The Technology Staffer who received a copy of the Non-PLG Spreadsheet in relation to the settlementmasters@camplejeunecourtinfo.com email address has confirmed in writing he has destroyed all copies of the Non-PLG Spreadsheet and related data.

iii. Any PLG member who has received email addresses for pro se Respondent-Claimants must destroy that data within five (5) business days of this Order and confirm with DOJ that they have done so.

iv. Any PLG member or Technology Staffer who has received the Non-PLG Spreadsheet, data, or other information from the Settlement Masters' voicemailbox must destroy that data or other information within five (5) business days of this Order and confirm with DOJ that they have done so.

8. **Copies and Summaries.** Authorized recipients of Protected Documents disclosed pursuant to this Privacy Act Order shall not make copies, duplicates, extracts, summaries, or descriptions of the materials or information or any portion thereof, except in connection with the Questionnaire Process or the development of a Global Resolution Framework.

9. **Disposition of Protected Documents After Case.** Within thirty (30) days of the final adjudication, or resolution through settlement of the claims at issue herein, all Protected Documents disclosed pursuant to and protected by this Privacy Act Order, including all copies thereof, shall be returned to DOJ, in care of the Civil Division**,** Torts Branch, Camp Lejeune Justice Act Section. DOJ shall acknowledge receipt of such Protected Documents and material in writing. In the alternative, the Protected Documents, including all copies thereof, shall be destroyed by the Settlement Masters or other authorized users, and the

Settlement Masters or other authorized users shall certify in writing that the Protected Documents and Material have been destroyed.

10. **Duration.** This Privacy Act Order shall continue to be binding throughout and after the conclusion of the case captioned *In re: Camp Lejeune Water Litigation*, Case No. 7:23-CV-897 (E.D.N.C.), or any individual case filed under the Camp Lejeune Justice Act.

SO ORDERED this ____ day of _____, 2025.

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897**

**IN RE:**

**CAMP LEJEUNE WATER LITIGATION**       **PRIVACY ACT ORDER CERTIFICATION**

1. My name is _____

2. I have read the Privacy Act Order that has been entered into this case, and a copy of it has been given to me. I understand the provisions of the Privacy Act Order and agree to comply with and be bound by its provisions. I also consent to the jurisdiction of this Court for purposes of enforcement of this Privacy Act Order.

3. I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____ by _____
                                                                         (Print Name)

Signed_____