IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

IN RE: )
)
CAMP LEJEUNE WATER LITIGATION ) **JOINT STATUS REPORT**
)
This Document Relates To: )
ALL CASES )
)

  The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E. 271) are set forth below.

### (1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina

  From February 11, 2023 to February 6, 2026, 3,716 Camp Lejeune Justice Act ("CLJA") complaints have been filed in this district. One hundred and forty-eight (148) cases have been dismissed; one hundred and thirty-four (134) of those were voluntary dismissals and the fourteen (14) others were pro se cases. The cases are divided as follows: Judge Dever – 931 cases; Judge Myers – 933 cases; Judge Boyle – 911 cases; and Judge Flanagan – 941 cases.

### (2) An update on the number and status of administrative claims with the Department of Navy

  Of 406,862 de-duplicated claims, approximately 190,539 claims contain at least one supporting document. Approximately 13,692 claims contain at least three supporting documents and allege an injury type that may be considered for settlement under the Elective Option (EO) framework. The time between filing a claim and settlement is dependent upon timely receipt of

1

relevant supporting documents. Per the statutory burden of proof, law firms and claimants must provide evidence of a medical diagnosis and presence at Camp Lejeune before a settlement determination can be made. Filers are encouraged to submit substantiating documentation expeditiously so that the Camp Lejeune Claims Unit ("CLCU") can confirm substantiation of those alleged EO injuries and the DOJ can approve settlement offers to as many claimants who qualify for the EO as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(5)    A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Expert Depositions and Motions</u>

All expert witnesses for Phase I (Water Contamination) have been both disclosed and deposed by the Parties, and all deadlines with respect to Phase I motions have expired. The Parties have completed the depositions of all expert witnesses for Phase II (General Causation). All expert

witness depositions for Phase III (Specific Causation and Residual Experts), except those witnesses who fall within the separate track for expert discovery related to damages and offsets, have been completed.

On September 10, 2025, the Parties filed all motions related to Phases II and III, with exception of motions related to damages and offsets. [D.E. 630] The PLG filed a total of nine (9) motions to exclude the government's experts under Fed. R. Evid. 702. The government filed thirty-one (31) motions related to Phases II and III. All responses and replies to the said Phase II and III motions have been filed. With exception of motions related to damages and offsets, briefing on Phase II and III motions has closed.

<u>Discovery Pertaining to Damages and Offsets</u>

On October 29, 2025, in accordance with the Court's September 17, 2025 Order [D.E. 630], the PLG designated its economic residual experts and produced expert reports. The government's economic residual expert designations and reports were served on December 15, 2025 and materials considered were served on December 22, 2025. The PLG's rebuttal expert reports and designations were served on January 20, 2026. Expert discovery on these experts is to close by March 5, 2026 although due to scheduling issues two experts are scheduled for depositions during the following week to be completed by March 13, 2026.

In the Joint Status Report of January 2, 2026, the government stated that it is still "in the process of updating certain previously gathered offset information." [D.E. 797 at 7] The PLG is concerned about the government's apparent failure to comply with the September 18, 2025 deadline for fact discovery on these issues and the potential impact of the government's ongoing supplementation of information on the Plaintiffs' presentation of damages. Additional information pertaining to the government's alleged offsets has been received twice already since fact discovery

closed, on December 5, 2025 and January 7, 2026. The government has stated that it was open to proposals from PLG for final dates for supplementation of damages. The PLG notes that there also is a need for discussion and agreement regarding final dates for supplementation of Defendant's alleged offsets once trial dates are known.

<u>Motions Pertaining to Damages and Offsets</u>

Pursuant to the Court's September 17, 2025 Order [D.E. 630], the Parties are to confer about the need for motions practice related to Daubert motions (expert admissibility motions) and motions for summary judgment on damages and offsets. The Parties have met to discuss this issue and further discussion also occurred at the last status conference of January 9, 2026. As discussed at that status conference, the PLG has now filed a Motion in Limine to Preclude Inappropriate Offset Evidence [D.E. 805] with respect to threshold statutory issues relating to application of the CLJA to damages and offsets. This motion falls outside the briefing schedule to be discussed pursuant to the Order on Daubert and summary judgment motions. A decision on the Plaintiff's Motion in Limine is being sought to reduce the need for further motions practice, argument, and resources with respect to offsets and damages.

Previous Case Management Orders set a deadline for *Daubert* and/or summary judgment motions at approximately 45 days from the close of discovery, with approximately 36 days for responses and about 29 days for replies. Based upon these timelines, the following schedule has been proposed by DOJ for *Daubert* and/or summary judgment motions concerning damages and offsets:

· Initial Motions/Briefs: April 20, 2026,

· Responses: May 26, 2026, and

· Replies: June 24, 2026.

4

After discussing this schedule with the government through a number of meet and confers, the PLG is generally agreeable to the proposed schedule and will be responding to the DOJ's draft motion accordingly. Notwithstanding the foregoing, the PLG reiterates the arguments and positions set forth in Plaintiffs' Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials ("Motion to Expedite") [D.E. 721] and states that trials of Track 1 cases can begin before the commencement of Daubert and summary judgment briefing on damages and offsets and such briefing should not alter or delay the trial schedule proposals set forth in the PLG's Motion to Expedite. The Parties will continue to discuss these issues, and the PLG hopes that the Parties will be able to submit a joint motion shortly proposing a schedule for motions practice on damages and offsets.

<u>Production of Digitized Muster Rolls</u>

On December 2, 2025, the PLG filed a Motion to Compel Production of Digitized Muster Rolls [D.E. 730]. The Parties subsequently engaged in productive discussions about this discovery dispute, and on December 18, 2025, the government filed Joint Motion to Hold in Abeyance the PLG's Motion to Compel Production of Digitized Muster Rolls [D.E. 788]. The Court granted the Motion to Hold in Abeyance on December 19, 2026.

Subsequently, the Parties engaged in further discussions about resolving the PLG's motion to compel, and a core part of those discussions involved the negotiation of a process for the PLG to preliminarily review the digitized muster rolls to determine the utility of the data in the present litigation. To facilitate this process, the Parties filed the Motion for Entry of Third Amended Stipulated Protective Order on January 2, 2026 [D.E. 796], which the Court on January 9, 2026 [D.E. 802].

Immediately after the Court entered the Third Amended Stipulated Protective Order, the

PLG requested that the government provide access to the subject muster roll data on January 9, 2026. The government failed to respond to this request, and therefore the PLG sent a follow-up email requesting such access on January 13, 2026. In response, the government sent an email indicating that it expected to send access credentials during the week of January 13, 2023, and the government further stated its expectation that the PLG would "produc[e] the records to the United States in a manner consistent with the ESI Protocol."

The government' demand to receive these records "consistent with the ESI Protocol" would impose a substantial expense and time-commitment upon the PLG. For this reason, the PLG was clear during the Parties' negotiations of this discovery dispute that, at this initial stage of evaluating the muster roll data, the PLG was not committing to produce the government's own muster roll data back to it in ESI Protocol-compliant format. During the Parties' discussions, the PLG insisted that this initial stage would involve a preliminary review of the muster roll data to determine its utility, if any, and that the Parties would discuss any production back to the government and other disclosure/production issues *after* the PLG had undertaken its preliminary review. In fact, the Parties' *Joint* Motion to Hold Plaintiffs' Motion to Compel in Abeyance made it clear that, at this stage, the PLG was making only a preliminary review to determine if the data should be formally produced as part of the discovery process and that the PLG was undertaking no other commitments to share access to the data. That Joint Motion stated as follows:

> As part of those discussions, the Parties have agreed to an interim framework under which PLG will be permitted limited access to the USMC Digitization Records solely for the purpose of assessing the nature and utility of the data. *During this interim process, PLG has agreed that any access or review will be confined to a PLG-only database environment, and that any records accessed or downloaded will not be disclosed outside that environment. The Parties have further agreed that the records will not be used, disclosed, or relied upon beyond this preliminary review* unless and until the Parties reach agreement on additional Protective Order

provisions governing such use.

[D.E. 788 at 1 (emphasis added)]. As such, the Parties jointly represented to the Court that this interim review would not create any obligations to share the data outside a "PLG-only database environment." The PLG insisted upon this condition due to the complexity and expense of importing, saving, processing and producing data that might not even be usable during this litigation.

The government's insistence that the PLG produce this data back to the government in ESI compliant format – *i.e.*, reproduce data that is already in the government's possession – is inconsistent with the Parties' agreement. If the Parties are unable to reach agreement on this issue, the PLG will need to pursue its Motion to Compel.

PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials ("Motion to Expedite") [D.E. 721]

The PLG filed its Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials ("Motion to Expedite") on November 12, 2025. [D.E. 721] The United States responded on December 3, 2025 [D.E. 733] and Plaintiffs filed their Reply on December 19, 2025. [D.E. 789] The PLG disagrees with the positions and proposals of the Defendant and continues to request that Track 1 bellwether trials be expedited. The PLG refers the Court to the pleadings on file, which are ripe for disposition.

PLG's Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports

On November 19, 2025, the PLG filed its Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 724] on the basis that "supplemental materials" recently provided by this defense expert, which make approximately 300 changes to her expert submission and were provided long after the due date for expert reports, after the PLG took her

deposition, and after the PLG moved to exclude her testimony, are a flagrant violation of the applicable rules and an inappropriate attempt to render new conclusions and analysis. [*See* Plaintiffs' Memorandum in Support at D.E. 725]. The United States responded to this Motion on December 10, 2025 and the PLG filed its Reply on December 30, 2025. The PLG refers the Court to the pleadings on file. On January 12, 2026, the Court scheduled a hearing on this dispute for January 27, 2026 which is now continued until February 13, 2026.

<u>United States' Premature Requests to Establish Pretrial Deadlines</u>

The United States has sent to the PLG two letters dated January 29, 2026 (seeking to set deadlines for "final supplementation of fact discovery and expert opinions") and January 30, 2026 (seeking to establish "pre-trial procedures for a potential Phase I evidentiary hearing") both of which seek to establish pre-trial deadlines and procedures before the PLG's Motion to Expedite Trials is addressed and before any trial dates have been set by the Court. The Court has indicated that it is "aware of the PLG's motion to reserve admissibility determinations and expedite Track 1 bellwether trials [D.E. 721] and Defendant's response [D.E. 733]. When the court resolves that dispute, the court will address the need for further proceedings in Phase 1." *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897-RJ, 2025 WL 3565850, *27 (E.D.N.C. Dec. 12, 2025). Thus, until the Court resolves the Plaintiffs' Motion to Expedite and addresses the need, if any, for further proceedings in Phase I and until the Court sets trial dates, the PLG believes discussions about deadlines for a Phase I hearing or the establishment of pretrial deadlines are premature. The PLG believes this approach is consistent with the Local Rules of Practice as well. *See, e.g.*, L. Civ. R. 16.1 (stating that a final pretrial conference "shall be scheduled in every civil action" and setting deadlines such as those for pretrial disclosures required under Fed R. Civ. P. 26(a)(3) based on the date of the final pretrial conference). Without trial dates, the Parties do not know if trials will

occur in four months, eight months, or longer. Accordingly, the PLG's position is that pretrial deadlines should be based on and relate to an actual trial date.

United States' Requests for Medical Records and Medical Record Deadlines

The government asserts that the PLG has not produced certain medical records, as set out in a January 16, 2026 letter requesting production of certain medical records. These medical records came to the government's attention through a review of Medicare data the government had obtained as a result of its unique and direct access to data and records with respect to medical care provided to the Track 1 Plaintiffs through government programs such as Medicare. Notwithstanding the United States' ability to obtain this information through channels that are not available to the Plaintiffs, the United States continues to assert that it is solely the Plaintiffs' burden to produce medical records and to complain about the PLG's speed in doing so.

In its January 16, 2026 letter, the United States identified providers for eight (8) Track 1 Plaintiffs for which records were allegedly missing. However the United States has not indicated what it has done to ascertain whether the medical records it cites are even related to a Plaintiff's Track 1 illness, an injury or condition stemming from a Track 1 illness, or a significant medical development. Not every medical visit by a Track 1 Plaintiff is relevant to this litigation and the PLG does not know if these allegedly missing medical records are in fact relevant or not but is investigating the issue now that it has learned of these visits.

The PLG wishes to note that it has been and continues to produce relevant medical records on a rolling basis as the PLG becomes aware of pertinent medical treatment and as records are received. Furthermore, every three (3) months the PLG discloses via DPPF updates any new medical conditions or providers related to the Track 1 illness and any significant medical developments of which the Track 1 trial plaintiffs notify the PLG. Thus, any implication that a

9

Plaintiff or the PLG would purposefully withhold relevant medical information is wholly without merit. Further, the PLG is not always immediately knowledgeable about a new medical visit or medical development as soon as it occurs, and the PLG is only able to produce records as the PLG receives them. Thus, there is necessarily some delay between the time of a medical visit and the PLG's ability to produce a medical record for that visit. The PLG is not in control of the length of time it might take for a records request to be fulfilled by the provider but the PLG is doing its best to stay on top of any significant medical developments and to make timely requests for relevant medical records. Toward that end, the PLG has produced thousands of pages of records for these Track 1 trial plaintiffs and continues to produce records on a rolling basis as records are ordered and received.

With respect to the United States' suggestion in that same letter that the parties meet and confer about a final supplementation deadline for all experts, it has been, and remains, the PLG's position that any expert supplementation should be in the normal course and in accordance with the applicable Rules of Civil Procedure, including Fed. R. Civ. P. 26(e). *See, e.g.*, prior Joint Status Reports [D.E. 383, 390, 408, 448]. With respect to the government's proposed deadlines for production of medical records and damages and offset information, it is the PLG's position that the establishment of pretrial deadlines is premature until trial dates are set, as discussed above. Among other reasons, the Track 1 Trial Plaintiffs have serious health conditions that are subject to change and it is to be expected that their conditions may continue to worsen, new diagnoses may arise and medical treatment will be required up through trial.

Further, as set out in the PLG's Memorandum in Support of Motion in Limine to Preclude Inappropriate Offset Evidence [D.E. 806], if the United States would stipulate, or if the Court grants Plaintiff's Motion in Limine on this subject, then requests such as the government's request

in its January 16, 2026 correspondence would be largely unnecessary. Since medical expenses paid by the VA, Medicare, or Medicaid for the Plaintiffs' Track 1 medical care equal the damages incurred by the Track 1 Plaintiffs for that care, the effect of the CLJA Offset Provision is that those damages and the corresponding offsets necessarily zero out. Accordingly, the amounts incurred for that medical care are irrelevant because they offset against the Plaintiffs' damages for that care resulting in a net of zero as far as the Plaintiffs' ultimate total damages. While such medical records are still relevant to prove the extent of the Plaintiffs' injuries and ongoing conditions, the necessity of the government obtaining such information for the purpose of updating offset figures would be eliminated if the effect of the offset provision in the CLJA is acknowledged, as the PLG has requested of the United States for over a year now.

<u>Identifiers in Rubris</u>

On December 21, 2023, the Court entered an Order that each plaintiff who has filed a Short Form Complaint is required to provide their date of birth and Social Security Number to the government. In general, this information was previously provided by plaintiffs to Rubris, however, there are some plaintiffs who provided incomplete information. The Parties have communicated about these issues, and the PLG has made material progress with providing all missing information.

**United States' Position:**

<u>Fact Depositions</u>

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1 Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

11

<u>Expert Depositions</u>

All expert depositions have been completed, with the exception of depositions related to economic damages issues.

<u>United States' Supplemental Offset Data Discovery</u>

On June 25, 2025, the Court entered an Order modifying previous scheduling orders to, in part, allow the Parties to engage in limited fact discovery related to the Parties' offset information and corresponding damages information. [D.E. 414]. Since then, the United States has produced additional offset information from various agencies, including the VA (including VHA and IVC), TriWest, TRICARE, and the Centers for Medicare & Medicaid Services (CMS).

Separately, the United States has recently updated certain previously gathered offset information, including certain TRICARE information that was inadvertently not gathered for a least one Track 1 Trial Plaintiff and three other Track 1 Trial Plaintiffs who enrolled in Medicare after the United States originally gathered the list of Medicare beneficiaries. That updated information has been produced to PLG. As noted in the prior Joint Status Reports [D.E. 728] & [D.E. 797] and at the Status Hearings of December 3, 2025 and January 9, 2026, however, the United States anticipates that it will need to supplement offsets information from each of the various applicable agencies before trial and is open to proposals from PLG for final dates for supplementation of damages and offset information. The United States has sent correspondence to PLG to that effect, which is discussed in further detail below.

<u>Damages Expert Discovery Disclosures</u>

The Court's September 17, 2025, Order, which required the Parties to complete fact discovery related to the Parties' offset information by September 18, 2025, set forth a schedule for disclosure of expert opinions related to damages [D.E. 630]. Pursuant to that Order, PLG disclosed

12

its expert damages reports on October 29, 2025; the United States disclosed its expert reports relating to damages and offsets on December 15, 2025; and PLG disclosed its rebuttal reports relating to damages and offsets on January 20, 2026. Also under that Order, expert discovery on these experts is to close by March 5, 2026. However, due to scheduling issues, the Parties have agreed to schedule two experts for depositions during the following week, so that all expert depositions will be completed by March 13, 2026.

Lastly, consistent with D.E. 630, the United States proposed dates for a briefing schedule "related to experts opining on 'damages and offsets,' 'life care planning,' and 'home renovation.'" Under the proposal, the Parties will have until April 20, 2026, to serve motions to exclude any experts ("*Daubert* motions") and the motions for summary judgment relating to these issues. The Parties will have until May 26, 2026, to file oppositions to the motions and until June 24, 2026, to file replies to the oppositions. On January 6, 2026, the United States sent a proposed joint motion and scheduling order with these dates to PLG. On February 5,2026, PLG responded with proposed edits. As of the date of this filing, the Parties are negotiating the language of the joint motion and proposed scheduling order.

PLG's Motion to Reserve Admissibility Determinations

PLG filed a Motion to Reserve Admissibility Determinations and Expediate Track 1 Bellwether Trials on November 12, 2025. [D.E. 721]. This motion should be denied. Resolution of threshold issues and motions before individual bellwether trials is consistent with this Court's prior case management orders and will assist with the ultimate global resolution of this litigation and the Navy claims.

In its June 28, 2024 Order, the Court stated that, "[b]efore Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp

Lejeune and (2) general causation for the Track 1 illnesses." [D.E. 247 at 1]. Resolution of the Phases I and II threshold issues of "toxic chemical exposure from the water at Camp Lejeune" and "general causation for the Track 1 illnesses," along with resolution of *Daubert* motions regarding Phase III specific causation experts and related motions for summary judgment, may obviate the need for some of the individual Track 1 trials and assist in global resolution of the entire litigation and Navy claims. For these reasons, the United States would welcome a schedule for resolution of the threshold issues with the goal of conducting any necessary individual Plaintiff trials before the conclusion of 2026. The United States filed its response to PLG's motion on December 3, 2025. [D.E. 727]. On December 19, 2025, PLG filed its reply in support of the motion. [D.E. 789]. The motion is fully briefed and ripe for the Court's consideration.

PLG's Motion to Strike Dr. Goodman's Corrected Summary Tables

Julie Goodman, Ph.D., DABT, FACE, ATS, is the United States' general causation expert for each of the five Track 1 illnesses. Appended to each of her five reports were summary tables, which provided information to the Court on the hundreds of studies that Dr. Goodman considered in rendering her opinions. PLG pointed out several errors in Dr. Goodman's summary tables at her deposition and in their motion to exclude her opinions under Rule 702, which Dr. Goodman corrected as required by Rule 26(e). The United States offered to make Dr. Goodman available for a deposition to address the corrections, but PLG has not responded to that offer. PLG wrongly contends that Dr. Goodman's corrections constitute new and untimely opinions and moved to strike the corrections. *See generally* D.E. 724. Dr. Goodman's corrected tables do not constitute new opinions, and striking them is unwarranted under Fed. R. Civ. P. 37 and the *Akeva* factors. The Court granted the United States' unopposed motion for an extension of time and additional pages to respond. [D.E. 727]. The United States' response arguing, among other issues, that PLG's

motion is legally unfounded and seeks the extreme and disproportionate sanction, was filed on December 10, 2025.

On December 22, 2025, PLG filed a motion for leave to file a reply to its Motion to Strike, which the United States opposed. The Court granted PLG's motion on December 23, 2025. PLG filed its reply brief on December 30, 2025. The Court has rescheduled the hearing on this motion to February 13, 2026.

<u>The United States' Request for a Meet and Confer in Preparation for a Phase I Hearing</u>

Based on the Court's December 12, 2025 Order, the United States understands that the Court is still determining whether it will hold a hearing on the Phase I evidentiary issues. As the Court stated in that Order, the Court "as factfinder will soon determine the Models' outer bounds for this litigation" and that "*[a]fter considering evidence presented by the parties at the appropriate time*, there may be Contaminant levels estimated by the Models that are presumptively unreliable, some that are sufficiently reliable, and some in between." *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897-RJ, 2025 WL 3565850, at *27 (E.D.N.C. Dec. 12, 2025) (emphasis added).

In light of the Court's statements, and in an effort to allow all Parties to prepare for a potential Phase I hearing, the United States contacted PLG on January 30, 2026 to request a meet and confer to discuss pre-trial disclosures, motions *in limine*, the joint pre-trial order, and other preparations for trial as contemplated by Local Civil Rules 26(a)(3), 16.1, 39.1, and 52.1. Pursuant to CMO 17, the United States also suggested the Parties meet to discuss the timeline and process for the exchange of demonstrative exhibits to be used to accompany expert testimony. PLG responded that it was not willing to engage in these discussions at this point. The United States reiterates its position that even if a Phase I hearing date has not been set yet, a discussion of these

procedures would be fruitful so that the Parties are ready to proceed efficiently on the Court's preferred timeline.

<u>The United States' Request for Supplementation of Track 1 Plaintiffs' Medical Records</u>

On January 16, 2026, the United States requested that PLG supplement its productions of medical records for certain Track 1 plaintiffs. The United States had identified a number of medical records that had not been produced through a review of medical billing data, which confirmed that certain Track 1 plaintiffs had received medical care on specific dates but for which PLG had not produced corresponding medical records. Almost all of these dates were in 2025. The United States requested that PLG supplement and provide those records as soon as possible so that the United States' experts (in particular, the United States' damages experts) could review the records.

On January 30, 2026, PLG responded. Although PLG raised various issues along the lines described in PLG's section above, PLG confirmed that it had requested or would request the outstanding medical records from the Track 1 plaintiffs and provide them to the United States upon receipt, which is all that the United States had requested. On February 6, 2026, the United States replied to confirm that understanding.

To summarize briefly, there is no doubt that the medical records of the Track 1 plaintiffs are discoverable as they may relate to causation and damages issues. Indeed, PLG has produced many such records, as PLG states. The fact that PLG has supplemented certain medical records on a rolling basis demonstrates that it is not an undue burden for the Track 1 plaintiffs to request their own individual medical records from their third-party providers (or for PLG to ask the third-party providers for their clients' records), and for PLG to produce those records to the United States upon receipt. The United States notes that Medicare does not collect individual medical records in the regular course of business for each claim a medical provider makes under the program; rather,

third-party providers do. Finally, the United States also served Requests for Production under Rule 34 of the Federal Rules of Civil Procedure during fact discovery. It is PLG's ongoing burden to investigate whether the Track 1 plaintiffs may have responsive documents and, if so, to supplement its prior productions as needed.

<u>Final Deadline for Expert and Fact Record Supplementation for Track 1 Plaintiffs</u>

As the United States has raised previously, it is imperative for the Parties to establish a final deadline for fact record and expert report supplementation to ensure all Parties have sufficient time to prepare in advance of trial. The United States believes the Parties should begin outlining this process in the near future. The United States recognizes that the Federal Rules of Civil Procedure and the Local Rules of Practice provide a general outline for pre-trial preparations. However, considering the size and scope of this litigation, the United States believes that it is appropriate to agree to a fulsome schedule of final fact and expert supplementation now so that the Parties can proceed to trial in an orderly and efficient manner. To be clear, this would set a cut-off date for all Parties' fact and expert discovery. Just as Plaintiffs would have an end date for providing updated damages and medical care records, the United States would have an end date for producing offset-related records.

To that end, the United States has requested that the Parties meet to discuss a schedule for completing the production of any additional records that may be considered as part of the fact record for the Track 1 Plaintiffs. The Parties would also be responsible for updating any written discovery, Short Form Complaints, Damages Assessment Forms, and/or DPPFs by an agreed-to time prior to trial. The United States notes that the deadline for *producing* supplemental records would necessarily come at least a month after the date when the Parties make a final records request of the various entities, as it will take government and private entities time to gather and produce

17

records to the Parties, who will then be responsible for producing them within the litigation pursuant to the ESI Protocol.

Specifically, on January 29, 2026, the United States proposed the following schedule to PLG, which would enable the Parties to be fully prepared for trial in the Fall of 2026:

- **February 13, 2026**, the Parties make a final request to health care providers and other organizations with information and records relevant to the claims of the Track 1 Bellwether Plaintiffs. This would include the Bellwether Plaintiffs' records from private healthcare providers and entities with information related to Plaintiffs' damages, as well as offset, benefits, and healthcare information from the Veteran's Benefits Administration and other agencies. This would also be the cut-off date for any information that could be presented at trial and that experts could rely upon for their opinions.

- **April 10, 2026**: The Parties produce materials and information obtained relevant to the Track 1 Bellwether Plaintiffs pursuant to the ESI protocol.

- **April 24, 2026**: The PLG produces final update to the Discovery Plaintiff Profile Forms for Track 1 Bellwether Plaintiffs. The PLG also produces its final Amended Damages Forms, subject to an agreement that PLG will not be seeking any new categories of damages.

- **May 8, 2026:** The PLG and the United States serve final supplemental damages and medical expert opinions and materials considered list to address supplemental materials and information only.

- **May 29, 2026:** The PLG and the United States serve final supplemental rebuttal damages and medical expert opinions and materials considered in response to the respective United States and PLG supplements and materials only.

- **June 17, 2026:** Deadline for supplemental expert depositions, if needed, to address new developments in supplemental opinion disclosures.

- **July 1, 2026**: Deadline for supplementation of all written discovery responses.

As demonstrated in fact and expert discovery to date, the United States believes this litigation requires extensive coordination to ensure that all Parties are proceeding toward trial with the most complete record possible. The United States maintains that the above-outlined schedule will accomplish that goal.

<u>Missing Plaintiff Identifiers in Rubris</u>

Pursuant to the Court's December 21, 2023, Order [D.E. 91], each plaintiff who has filed a Short Form Complaint is required to provide their complete date of birth and full Social Security Number to the United States. This information has previously been collected in Rubris, and the United States identified over 700 entries where this information appears incomplete or missing. PLG was notified. As of January 12, 2026, it is the United States' understanding that 733 out of 793 deficiencies have been resolved in Rubris, with 60 deficiencies remaining.

<u>United States Marine Corps Digitization Project Update</u>

Plaintiffs have sought the production of records that have been scanned through the United States Marine Corps' ("USMC") ongoing efforts to digitize certain microfilm, microfiche, and paper military records (the "Current Digitization Project"). The United States objected on, *inter alia*, burden and relevancy grounds. PLG filed a motion to compel [D.E. 730]. That motion is being held in abeyance while the Parties attempt to find a solution. [D.E. 788]. In an effort to resolve the issue, the United States offered PLG the opportunity to download and review the standard-quality records scanned in the Current Digitization Project, provided that:

- The Court entered an amended Protective Order to cover PLG's possession of the records;
- PLG agreed to keep all of the records it downloaded on a secure database accessible only to PLG;
- PLG covered the cost of downloading the records available through the Current Digitization Project; and
- PLG produced any records it downloads to the United States at its expense, pursuant to the ESI Protocol.

This agreement was first set forth in the United States' December 8, 2025, correspondence to PLG. The agreement was reiterated during the Parties' December 12, 2025, meet and confer—at which the United States again emphasized its concerns regarding the sensitive nature of the personally

19

identifiable information ("PII") contained in the records. The agreement was also memorialized in the United States' submission in the January 2, 2026, Joint Status Report, without objection from PLG. Finally, the United States confirmed the details of the above-stated agreement on the record at the January 9, 2026, status conference, again without objection from PLG. The Court subsequently entered the Third Amended Stipulate Protective Order (D.E. 802) on January 9, 2026. Under this agreement, PLG would be permitted to download records and then produce to the United States the materials it downloaded. This is consistent with prior document reviews PLG has undertaken of the United States' hard copy records, including PLG's hard-copy review in Norfolk and its review of records from the Camp Lejeune cages. That same principle was a core basis for the agreement presented to the Court.

Despite this prior agreement and the United States' repeated representations to the Court (without objection from PLG), PLG has since advised that they will not agree to produce to the United States the records they download from the USMC digitization repository pursuant to the ESI protocol. PLG now contends that their access obligation is limited to a "utility review" and that any production obligations would be addressed only after such review is completed.

The United States objects to this change in position, which departs from the Parties' confirmed agreement and undermines core safeguards associated with tracking, protecting, and handling the sensitive PII contained within the records. Nevertheless, in the interest of compromise, on January 20, 2026, the United States proposed a third compromise, under which PLG may download a subset of the standard-quality records of their choosing for evaluation, while contemporaneously producing that same subset to the United States pursuant to the ESI Protocol. This proposal was intended to reduce burden, allow PLG to assess record utility, and ensure appropriate tracking and protection of the records. The United States also invited PLG to propose

any alternative that preserves contemporaneous production and tracking of downloaded records. On January 28, 2026, PLG rejected this compromise.

On February 6, 2026, the United States proposed a fourth and final compromise, under which the United States will produce the currently scanned "standard-quality" records and produce them to PLG pursuant to the ESI Protocol. The United States will produce these records on a rolling basis, and estimates that it will take approximately twelve weeks to produce the total currently available records. This production would be subject to the United States' objections, as it maintains that these records' utility will be marginal. The United States is willing, however, to undertake this production, which is estimated to cost the United States $150,000, to ensure that PLG can perform its analysis of these records and determine if it will want to retrieve the remaining scanned records from the USMC repository while maintaining critical security protections over these records (many of which contain PII for individuals who were never at Camp Lejeune and have not brought claims under the CLJA). The United States stands firm, however, on its insistence that if PLG seeks any additional records from the scanning project, the costs, retrieval, processing, and production of these records to the United States pursuant to the ESI Protocol will all be borne by PLG.

Proposal for Track 2 Discovery

The United States has conferred with PLG on the most efficient procedure for discovery on Track 2. The United States believes that resolving general causation issues for Track 2 diseases before conducting individual plaintiff discovery would be most efficient. [D.E. 156]. PLG has indicated that it will review the United States' proposal and confer regarding a discovery plan for Track 2. The United States is prepared to discuss this further whenever PLG is ready.

**(5) Any other issues that the parties wish to raise with the Court:**

21

The Parties have agreed to file separate summaries of the motions that are pending before the Court. The Parties' respective summaries appear below:

**The PLG's Summary:**

At present, a number of motions have been filed and are undecided. The full list and organization are set forth below:

I.  **Phases II and III Motions On Application of Statutory Burden of Proof**
    Motions are Applicable to All Diseases and to Future Tracks

    a.  United States' Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 539]

        i.  PLG's Response in Opposition to Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Leask Likely As Not" Standard [D.E. 690]

        ii. United States' Reply to Response to Motion regarding Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 767]

    b.  Plaintiffs' Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 567]
        i.  United States' Response in Opposition to PLG's Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 664]

        ii. PLG's Reply to Response to Motion regarding Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 762]

II. **Phases II and III Expert/Illness Specific Motions**
    Motions are Applicable to Specific Illnesses as Categorized Below

    a.  **Motions Not Limited to a Particular Illness**

        i.  United States' Motion for Partial Summary Judgment concerning Dichloroethylene (all cases) [D.E. 520]

            1.  PLG's Response in Opposition to Motion for Partial Summary Judgment Concerning Dichloroethylene [D.E.715]

2. United States' Reply to Response to Motion regarding Motion for Partial Summary Judgment Concerning Dichloroethylene [D.E. 742]

**b. <u>Motions to Exclude General Causation Experts Who Opined as to Every Track 1 Case</u>**

    i. Plaintiffs' Motion to Exclude Expert Dr. Michael J. McCabe, Jr. (all cases except Parkinson's) [D.E. 597]
        1. United States' Response in Opposition to PLG's Motion to Exclude Expert Dr. Michael J. McCabe, Jr. [D.E. 666]
        2. PLG's Reply to Response to Motion regarding Motion to Exclude Expert Dr. Michael J. McCabe, Jr. [D.E. 784]

    ii. Plaintiffs' Motion to Exclude Defense Expert Dr. Julie Goodman (all cases) [D.E. 621]
        1. United States' Response in Opposition to Motion to Exclude Defense Expert Dr. Julie Goodman [D.E.686]
        2. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Dr. Julie Goodman [D.E.785]

    iii. Plaintiffs' Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 624]
        1. United States' Response in Opposition to Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 670]
        2. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Dr. Lisa Bailey [D.E. 776]

**c. <u>Motions with Common Legal Arguments</u>**[1]

    i. United States' "Literature Review Motions" (all cases) [D.E. 584, 574, 541, 559, and part of 543]

    ii. United States' "Differential Etiology Motions" (all cases) [D.E. 586, 569, 557, 530, 533, 537, 553, and part of 543]

    iii. United States' "Threshold Association Motions" (all cases) [D.E. 547, 554, 582, 609]

    iv. United States' Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (bladder cancer and NHL/Leukemia) [D.E. 601]

**d. <u>Bladder Cancer Motions</u> (Hon. Richard E. Myers II)**

---

[1] These motions also are listed more specifically under the individual disease categories below but the motions share common legal arguments and, therefore, may need to be decided jointly. The PLG's responses to motions are identified below in the specific disease categories.

23

i. **United States' Motions**

1. Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Threshold Association Motion") [D.E. 582]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Benjamin Hatten, Kathleen Gilbert, and Stephen Culp ("No Predicate Association Motion" Bladder Cancer) [D.E.689]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("No Predicate Association Motion" Bladder Cancer) [D.E.752]

2. Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Literature Review Motion") [D.E. 584]

    a. PLG's Response in Opposition to Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Benjamin Hatten, Kathleen Gilbert, and Stephen Culp ("Literature Review Motion") [D.E. 700]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp [D.E. 751]

3. Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts for Performing Improper Differential Etiologies ("Bladder Cancer Differential Etiology Motion") [D.E. 586]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts from Performing Improper Differential Etiologies ("Improper Differential Motion") [D.E. 691]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts for

24

Performing Improper Differential Etiologies ("Improper Differential Motion") [D.E. 755]

4. Motion to Exclude Plaintiffs' Psychiatry Expert Dr. Haresh Tharwani [D.E. 594]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiff's Psychiatry Expert Dr. Haresh Tharwani [695]

5. Motion for Summary Judgment for Lack of Admissible Expert Testimony Federal Rule of Civil Procedure 56; L. Civ. R. 56.1(a)(1) [D.E. 590] [predicated upon determinations in D.E. 582, 584, 586]

    a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Admissible Expert Testimony Fed. R. Civ. P. 56; L. Civ R. 56.1(a)(1) [D.E. 678]

    b. United States' Reply to Response to Motion regarding Motion for Summary Judgment for Lack of Admissible Expert Testimony Federal Rule of Civil Procedure 56; L. Civ. R. 56.1(a)(1) [D.E. 756]

6. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

    a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 710]

    b. United States' Reply in Response to Motion regarding Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation [D.E. 775]

**ii. Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Defense Expert Dr. Max Kates filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 588]

    a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Max Kates [D.E. 673]

    b. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Dr. Max Kates [D.E. 783]

2. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to one kidney plaintiff)

a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 668]

3. Multi-Illness Motions at D.E. 597, 621, 624.

a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

e. **Kidney Cancer Motions** (Hon. Terrence W. Boyle)

i. **United States' Motions**

1. Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 524]

a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 674]

b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 757]

2. Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases ("Kidney Cancer Differential Etiology Motion")[D.E. 569]

a. PLG's Response in Opposition to Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases [D.E. 697]

b. United States' Reply to Response to Motion regarding Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases [D.E. 759]

3. Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 571]

a. PLG's Response in Opposition to Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 671]

4. Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review Motion") [D.E. 574]

      a. PLG's Response in Opposition to Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review") [D.E. 707]

      b. United States' Rely to Response to Motion regarding Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review") [D.E. 768]

5. Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 609]

      a. PLG's Response in Opposition to Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 687]

      b. United States' Reply to Response to Motion regarding Motion Opposition to Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 761]

6. Motion for Summary Judgment (Kidney Cancer) [D.E. 611] (predicated upon determinations in D.E. 539, 569, 609)

      a. PLG's Response in Opposition to Motion for Summary Judgment (Kidney Cancer) [D.E. 677]

      b. United States' Reply to Response to Motion regarding Motion for Summary Judgment (Kidney Cancer) [D.E. 766]

7. Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 605]

      a. PLG's Response in Opposition to Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 714]

      b. United States' Reply to Response to Motion regarding Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 758]

**ii. Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Defense Expert Dr. Walter Stadler [D.E. 599]

a. United States' Response in Opposition to PLG's Motion to Exclude Expert Dr. Walter Stadler [D.E. 665]

b. PLG's Reply to Response to Motion regarding Motion to Exclude Expert Dr. Walter Stadler [D.E. 779]

2. Motion to Exclude Defense Expert Dr. Gail H. Vance, M.D. [D.E. 619]

a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Gail H. Vance, M.D. [D.E. 663]

b. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Gail H. Vance, M.D. [D.E. 778]

3. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to two bladder cancer plaintiffs)

a. PLG's Response in Opposition to 3.  Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 668]

4. Multi-Illness Motions at D.E. 597, 621, 624.

a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

f. **Parkinson's Disease Motions** (Hon. Louise W. Flanagan)

i. **United States' Motions**

1. Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman ("Parkinson's Literature Review Motion") [D.E. 541]

a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman [D.E. 694]

b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman [D.E. 744]

2. Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska ("Parkinson's Literature Review and Differential Etiology Motion")[D.E. 543]

   a. PLG's Response in Opposition to Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska [D.E. 688]

   b. United States' Reply to Response to Motion regarding Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska [D.E. 747]

3. Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz and Richard Barbano ("Parkinson's PCE Daubert Motion") [D.E. 545]

   a. PLG's Response in Opposition to Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz, and Richard Barbano [D.E. 693]

   b. United States' Reply to Response to Motion regarding Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz, and Richard Barbano [D.E. 745]

4. Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa and Richard Barbano ("Parkinson's Threshold Association Motion") [D.E. 547]

   a. PLG's Response in Opposition to Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa, and Richard Barbano [D.E. 682]

   b. United States' Reply to Response to Motion regarding Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa and Richard Barbano [D.E. 746]

5. Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene

29

(PCE) and Parkinson's Disease [D.E. 549] (predicated upon determinations in D.E. 539, 541, 543, 545, 547).

    a. PLG's Response in Opposition to Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 701]

    b. United States' Reply to Response to Motion regarding Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 748]

6. Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium [D.E. 525]

    a. PLG's Response in Opposition to Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium Claim [D.E. 719]

    b. United States Reply to Response to Motion regarding Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium [D.E. 749]

### ii. Plaintiffs' Leadership Group's Motions

1. Multi-Illness Motions at D.E. 597, 621, 624.

    a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

## g. Leukemia and Non-Hodgkins Lymphoma Motions (Hon. James C. Dever III)

### i. United States' Motions

1. Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek ("Leukemia Differential Etiology Motion – Gondek") [D.E. 530]

    a. PLG's Response in Opposition to Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek (Leukemia) [D.E. 683]

30

b. United States' Reply to Response to Motion regarding Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek [D.E. 750]

2. Motion to Exclude the Opinions of Damian Laber, M.D., FACP ("Leukemia Differential Etiology Motion – Laber") [D.E. 533]

    a. PLG's Response in Opposition to Motion to Exclude the Opinions of Damian Laber, M.D. [D.E. 692]

    b. United States' Reply to Response to Motion regarding Motion to Exclude the Opinions of Damian Laber, M.D., FACP [D.E. 743]

3. Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 537]

    a. PLG's Response in Opposition to Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 684]

    b. United States' Reply in Response to Motion regarding Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher (Leukemia) [D.E. 771]

4. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology ("Leukemia Threshold Association Motion")[D.E. 553]

    a. PLG's Response in Opposition to Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology [D.E. 708]

    b. United States' Reply to Response to Motion regarding Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology [D.E. 770]

5. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(c) ("Leukemia/NHL Motion on Disease Synergy") [D.E. 555]

31

a. PLG's Response in Opposition to Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rules of Evidence 702(c) [D.E.699]

b. United States' Reply to Response to Motion regarding Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rules of Evidence 702(c) [D.E.772]

6. Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Federal Rule of Evidence 702(d) for Failing to Reliably Employ a Differential Etiology ("Leukemia/NHL Differential Etiology Motion") [D.E. 557]

a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Fed. R. Evid. 702(d) For Failing to Reliably Employ a Differential Etiology [D.E. 696]

b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Fed. R. Evid. 702(d) For Failing to Reliably Employ a Differential Etiology [D.E. 773]

7. Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu ("Leukemia/NHL Literature Review Motion") [D.E. 559]

a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu (Literature Review Motion) [D.E. 703]

b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu (Literature Review Motion) [D.E. 769]

8. Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 576] (predicated upon determinations in D.E. 530, 533, 535, 537, 539, 553, 555, 557, 559)

a. PLG's Response in Opposition to Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert

32

Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 675]

    b. United States' Reply to Response to Motion regarding Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 760]

9. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

    a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 710]

    b. United States' Reply in Response to Motion regarding Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation [D.E. 775]

  **ii. Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Certain Opinions of Dr. Harry P. Erba filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 580]

    a. United States' Response in Opposition to PLG's Motion to Exclude Certain Opinions of Dr. Harry P. Erba [D.E. 667]

    b. PLG's Reply to Response to Motion regarding Motion to Exclude Certain Opinions of Dr. Harry P. Erba [D.E. 782]

2. Multi-Illness Motions at D.E. 597, 621, 624.

    a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

**h.** <u>**Damages and Offsets**</u>

  **i.** The PLG's Motion in Limine to Preclude Inappropriate Offset Evidence [D.E. 805]

**III. Other Pending Motions**

a. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156]

b. PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 721]

33

      i.  United States' Response in Opposition to PLG's Motion to Expedite Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 733]

     ii.  PLG's Reply to Response to Motion regarding Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 789]

  c.  PLG's Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 724]

      i.  United States' Response in Opposition to Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 740]

     ii.  PLG's Reply to Response to Motion regarding Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 792]

  d.  PLG's Motion to Compel Defendant United States of America to Produce Digitized Muster Rolls [D.E. 730]

  e.  PLG's Motion to Strike Plaintiffs Leadership Group's Motion to Strike Dr. Bailey's Untimely General Causation Opinions [D.E. 787]

      i.  United States' Response in Opposition regarding Motion to Strike Plaintiffs Leadership Group's Motion to Strike Dr. Bailey's Untimely General Causation Opinions [D.E. 790]

     ii.  PLG's Reply in Support of Motion to Strike [D.E. 800]

The PLG continues to believe the Court has many available mechanisms to resolve these motions efficiently. On November 12, 2025, the PLG set forth such a proposal in a Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials. [D.E. 721].

**United States' Summary:**

As discussed elsewhere, the United States believes that rulings on the threshold scientific issues of the levels of water contamination and general causation will promote further resolution of issues, not only for Track 1, but for future Tracks. The United States has also raised significant issues regarding specific causation and interpretation of the CLJA in its September 10, 2025, filings. Decisions on those issues will also promote global resolution. Only after the Court has ruled on these motions should the Parties proceed to trial of individual cases, if necessary. As

34

articulated in the United States' response to PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials that was filed on December 3, 2025, this is the most efficient path forward because it may save court resources for bench trials of individual cases that may be rendered unnecessary. Furthermore, the United States disagrees with PLG's prioritization, grouping, and in certain instances, characterizations of the pending motions.

*[Signatures follow on next page]*

DATED this 6th day of February, 2026.

Respectfully submitted,

<u>*/s/ J. Edward Bell, III*</u>
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

35

/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*


/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Assistant Directors

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Camp Lejeune Justice Act Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail:  adam.bain@usdoj.gov
Telephone: (202) 616-4209

*Counsel for Defendant*
*United States of America*

36

Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*

ND:4907-9284-9805, v. 1