IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

IN RE:                                          )
                                                )
CAMP LEJEUNE WATER LITIGATION                   )          **JOINT STATUS REPORT**
                                                )
This Document Relates To:                       )
ALL CASES                                       )
                                                )

The Plaintiffs' Leadership Group (the "PLG"), together with the Defendant United States
of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint
Status Report. The matters required to be addressed in a Joint Status Report pursuant to Case
Management Order No. 2 ("CMO-2") (D.E. 23) and the Court's Order of August 8, 2024 (D.E.
271) are set forth below.

**(1) An update on the number and status of CLJA actions filed in the Eastern District
of North Carolina**

From February 11, 2023 to February 20, 2026, 3,718 Camp Lejeune Justice Act ("CLJA")
complaints have been filed in this district. 149 cases have been dismissed; 135 of those were
voluntary dismissals and the 14 others were pro se cases. The cases are divided as follows: Judge
Dever – 932 cases; Judge Myers – 933 cases; Judge Boyle – 911 cases; and Judge Flanagan – 942
cases.

**(2) An update on the number and status of administrative claims with the
Department of Navy**

Of 408,860 de-duplicated claims, approximately 175,345 claims contain at least one
supporting document. Approximately 13,006 claims contain at least three supporting documents
and allege an injury type that may be considered for settlement under the Elective Option (EO)
framework. The time between filing a claim and settlement is dependent upon timely receipt of

1

relevant supporting documents. Per the statutory burden of proof, law firms and claimants must provide evidence of a medical diagnosis and presence at Camp Lejeune before a settlement determination can be made. Filers are encouraged to submit substantiating documentation expeditiously so that the Camp Lejeune Claims Unit ("CLCU") can confirm substantiation of those alleged EO injuries and the DOJ can approve settlement offers to as many claimants who qualify for the EO as possible.

**(3) An update regarding agreements reached between the Parties concerning the elements of a CLJA claim and the general framework for trial**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(4) An update on stipulations entered into between the Parties since the last status conference**

The Parties continue to work toward areas in which agreement might be reached, including potential stipulations which would help streamline trials and resolution.

**(5)     A summary of the discovery conducted since the last status conference:**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**The PLG's Position:**

The PLG continues to dedicate significant time and resources to conducting discovery in this matter. Below, the PLG sets forth a description of certain ongoing discovery issues.

<u>Important Update Regarding Track One Trial Plaintiff Edgar Peterson</u>

Edgar Peterson, a Marine veteran stationed at Camp Lejeune as a Judge Advocate General from 1975 to 1977, is a Track One bellwether trial Plaintiff within the Parkinson's disease category. Mr. Peterson was diagnosed with Parkinson's Disease in May 2001 at the age of 54.

Prior to his diagnosis, he had the reputation of being an excellent litigator with over 300 jury trials with the Office of the District Attorney General in Shelby County, Tennessee. Since his Parkinson's Disease diagnosis, he has undergone a Deep Brain Stimulator and has had eight (8) surgeries to replace their batteries. Mr. Peterson uses a motorized wheelchair to move around and utilizes a speech device to communicate. As with all persons afflicted with Parkinson's disease, Mr. Peterson's neurological issues have tragically progressed.

On Friday, February 13, 2026, at the age of 77, Mr. Peterson suffered a massive heart attack and had four stents put in the next morning. He is still in the Intensive Care Unit at Methodist University Hospital in Memphis, Tennessee. The PLG is working with Mr. Peterson and his family to assess the need for depositions or other expedited activities with respect to Mr. Peterson's case.

Throughout the Track 1 trial discovery process, the health of Track 1 trial plaintiffs, like Mr. Peterson, continue to decline. The PLG feels it is important that the Court receive notice of the continual health declination of Plaintiffs as this litigation proceeds. Furthermore, the PLG feels it is important to reiterate that the continued decline of the plaintiffs reinforces the PLG's commitment to pursuing a speedy and effective resolution of this case so that the victims of this tragedy can receive just compensation before the course of events overtakes them.

<u>Expert Depositions and Motions</u>

All expert witnesses for Phase I (Water Contamination) have been both disclosed and deposed by the Parties, and all deadlines with respect to Phase I motions have expired. The Parties have completed the depositions of all expert witnesses for Phase II (General Causation). All expert witness depositions for Phase III (Specific Causation and Residual Experts), except those

witnesses who fall within the separate track for expert discovery related to damages and offsets, have been completed.

On September 10, 2025, the Parties filed all motions related to Phases II and III, with exception of motions related to damages and offsets. [D.E. 630] The PLG filed a total of nine (9) motions to exclude the government's experts under Fed. R. Evid. 702. The government filed thirty-one (31) motions related to Phases II and III. All responses and replies to the said Phase II and III motions have been filed. With exception of motions related to damages and offsets, briefing on Phase II and III motions has closed.

Discovery Pertaining to Damages and Offsets

On October 29, 2025, in accordance with the Court's September 17, 2025 Order [D.E. 630], the PLG designated its economic residual experts and produced expert reports. The government's economic residual expert designations and reports were served on December 15, 2025 and materials considered were served on December 22, 2025. The PLG's rebuttal expert reports and designations were served on January 20, 2026. Expert discovery on these experts is to close by March 5, 2026 although due to scheduling issues two experts are scheduled for depositions during the following week to be completed by March 13, 2026.

In the Joint Status Report of January 2, 2026, the government stated that it is still "in the process of updating certain previously gathered offset information." [D.E. 797 at 7] The PLG is concerned about the government's apparent failure to comply with the September 18, 2025 deadline for fact discovery on these issues and the potential impact of the government's ongoing supplementation of information on the Plaintiffs' presentation of damages. Additional information pertaining to the government's alleged offsets has been received twice already since fact discovery closed, on December 5, 2025 and January 7, 2026. The government has stated that it was open to

proposals from PLG for final dates for supplementation of damages. The PLG notes that there also is a need for discussion and agreement regarding final dates for supplementation of Defendant's alleged offsets once trial dates are known.

Motions Pertaining to Damages and Offsets

Pursuant to the Court's September 17, 2025 Order [D.E. 630], the Parties are to confer about the need for motions practice related to Daubert motions (expert admissibility motions) and motions for summary judgment on damages and offsets. The Parties have met to discuss this issue and further discussion also occurred at the status conference of January 9, 2026. As discussed at that status conference, the PLG has now filed a Motion in Limine to Preclude Inappropriate Offset Evidence [D.E. 805] with respect to threshold statutory issues relating to application of the CLJA to damages and offsets. This motion falls outside the briefing schedule to be discussed pursuant to the Order on Daubert and summary judgment motions. A decision on the Plaintiff's Motion in Limine is being sought to reduce the need for further motions practice, argument, and resources with respect to offsets and damages.

Previous Case Management Orders set a deadline for *Daubert* and/or summary judgment motions at approximately 45 days from the close of discovery, with approximately 36 days for responses and about 29 days for replies. Based upon these timelines, the following schedule has been proposed by DOJ for *Daubert* and/or summary judgment motions concerning damages and offsets:

·   Initial Motions/Briefs: April 20, 2026,

·   Responses: May 26, 2026, and

·   Replies: June 24, 2026.

After discussing this schedule with the government through a number of meet and confers, the PLG is generally agreeable to the proposed schedule. Notwithstanding the foregoing, the PLG reiterates the arguments and positions set forth in Plaintiffs' Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials ("Motion to Expedite") [D.E. 721] and states that trials of Track 1 cases can begin before the commencement of Daubert and summary judgment briefing on damages and offsets and such briefing should not alter or delay the trial schedule proposals set forth in the PLG's Motion to Expedite. The Parties will continue to discuss these issues, and the PLG hopes that the Parties will be able to submit a joint motion shortly proposing a schedule for motions practice on damages and offsets.

<u>Production of Digitized Muster Rolls</u>

On December 2, 2025, the PLG filed a Motion to Compel Production of Digitized Muster Rolls [D.E. 730]. The Parties subsequently engaged in productive discussions about this discovery dispute, and on December 18, 2025, the government filed Joint Motion to Hold in Abeyance the PLG's Motion to Compel Production of Digitized Muster Rolls [D.E. 788]. The Court granted the Motion to Hold in Abeyance on December 19, 2026.

Over the past few weeks, the Parties have made progress in working toward a resolution that would involve the government downloading standard-quality records from the USMC digitization repository to be produced to the PLG for use by the PLG on a PLG-only database. A meet and confer on the current proposal was held on February 24, 2026 and it appears the Parties may have reached an interim resolution subject to confirmation of the proposal in writing. If the Parties are unable to reach agreement on this issue, the PLG will need to pursue its Motion to Compel.

6

<u>PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials ("Motion to Expedite") [D.E. 721]</u>

The PLG filed its Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials ("Motion to Expedite") on November 12, 2025. [D.E. 721] The United States responded on December 3, 2025 [D.E. 733] and Plaintiffs filed their Reply on December 19, 2025. [D.E. 789] As discussed above with respect to Mr. Peterson, the PLG disagrees with the positions and proposals of the Defendant and continues to request that Track 1 bellwether trials be expedited. The PLG refers the Court to the pleadings on file, which are ripe for disposition.

<u>United States' Premature Requests to Establish Pretrial Deadlines</u>

The United States continues to seek to establish pre-trial deadlines and procedures before the PLG's Motion to Expedite Trials is addressed and before any trial dates have been set by the Court. The Court has indicated that it is "aware of the PLG's motion to reserve admissibility determinations and expedite Track 1 bellwether trials [D.E. 721] and Defendant's response [D.E. 733]. When the court resolves that dispute, the court will address the need for further proceedings in Phase 1." *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897-RJ, 2025 WL 3565850, *27 (E.D.N.C. Dec. 12, 2025). Thus, until the Court resolves the Plaintiffs' Motion to Expedite and addresses the need, if any, for further proceedings in Phase I and until the Court sets trial dates, the PLG believes discussions about deadlines for a Phase I hearing or the establishment of pretrial deadlines are premature. The PLG believes this approach is consistent with the Local Rules of Practice as well. *See, e.g.*, L. Civ. R. 16.1 (stating that a final pretrial conference "shall be scheduled in every civil action" and setting deadlines such as those for pretrial disclosures required under Fed R. Civ. P. 26(a)(3) based on the date of the final pretrial conference). Without trial dates, the Parties do not know if trials will occur in four months, eight months, or longer. Accordingly, the PLG's position is that pretrial deadlines should be based on and relate to an actual trial date.

<u>Written Discovery Supplementation</u>

On February 19, 2026, the government served updated supplemental written responses to Plaintiffs' Requests for Production of Documents and requested that Plaintiffs do the same. Plaintiffs are reviewing prior discovery requests and working to respond to the government's correspondence. The PLG notes however that throughout the course of this litigation, medical records have been and continue to be produced by the PLG on a rolling basis as the PLG becomes aware of pertinent medical treatment and as records are received. Furthermore, every three (3) months the PLG discloses via DPPF updates any new medical conditions or providers related to the Plaintiffs' Track 1 illness and any significant medical developments and the PLG has produced thousands of pages of records for these Track 1 trial plaintiffs and continues to produce records on a rolling basis as records are ordered and received.

<u>Identifiers in Rubris</u>

On December 21, 2023, the Court entered an Order that each plaintiff who has filed a Short Form Complaint is required to provide their date of birth and Social Security Number to the government. In general, this information was previously provided by plaintiffs to Rubris, however, there are some plaintiffs who provided incomplete information. The Parties have communicated about these issues, and the PLG has made material progress with providing all missing information. The PLG has identified a discreet list of cases without identifiers and will discuss those instances with the government.

**United States' Position:**

<u>Fact Depositions</u>

The United States confirms that all previously scheduled fact depositions have been taken at this point. The United States recognizes that additional depositions related to certain Track 1

Trial Plaintiffs may be necessary based on changing conditions between now and trial, subject to agreement of the Parties or Order of the Court.

Expert Depositions

All expert depositions have been completed, with the exception of depositions related to economic damages issues.

Damages Expert Discovery Disclosures

The Court's September 17, 2025, Order, which required the Parties to complete fact discovery related to the Parties' offset information by September 18, 2025, set forth a schedule for disclosure of expert opinions related to damages [D.E. 630]. Pursuant to that Order, PLG disclosed its expert damages reports on October 29, 2025; the United States disclosed its expert reports relating to damages and offsets on December 15, 2025; and PLG disclosed its rebuttal reports relating to damages and offsets on January 20, 2026. Also under that Order, expert discovery on these experts is to close by March 5, 2026. However, due to scheduling issues, the Parties have agreed to schedule two experts for depositions during the following week, so that all expert depositions will be completed by March 13, 2026.

Lastly, consistent with D.E. 630, the United States proposed dates for a briefing schedule "related to experts opining on 'damages and offsets,' 'life care planning,' and 'home renovation.'" Under the proposal, the Parties will have until April 20, 2026, to serve motions to exclude any experts ("*Daubert* motions") and the motions for summary judgment relating to these issues. The Parties will have until May 26, 2026, to file oppositions to the motions and until June 24, 2026, to file replies to the oppositions. On January 6, 2026, the United States sent a proposed joint motion and scheduling order with these dates to PLG. On February 5, 2026, PLG responded with proposed edits. The United States sent its latest edits on February 9, 2026.

As of the date of this filing, the Parties are negotiating the language of the joint motion and proposed scheduling order.

<u>PLG's Motion to Reserve Admissibility Determinations</u>

PLG filed a Motion to Reserve Admissibility Determinations and Expediate Track 1 Bellwether Trials on November 12, 2025. [D.E. 721]. This motion should be denied. Resolution of threshold issues and related motions before individual bellwether trials is consistent with this Court's prior case management orders and will assist with the ultimate global resolution of this litigation and the Navy claims.

In its June 28, 2024 Order, the Court stated that, "[b]efore Track 1 trials commence, the court will resolve two threshold issues: (1) toxic chemical exposure from the water at Camp Lejeune and (2) general causation for the Track 1 illnesses." [D.E. 247 at 1]. Resolution of the Phases I and II threshold issues of "toxic chemical exposure from the water at Camp Lejeune" and "general causation for the Track 1 illnesses," along with resolution of *Daubert* motions regarding Phase III specific causation experts and related motions for summary judgment, may obviate the need for some of the individual Track 1 trials and assist in global resolution of the entire litigation and Navy claims. For these reasons, the United States would welcome a schedule for resolution of the threshold issues with the goal of conducting any necessary individual Plaintiff trials before the conclusion of 2026. The United States filed its response to PLG's motion on December 3, 2025. [D.E. 727]. On December 19, 2025, PLG filed its reply in support of the motion. [D.E. 789]. The motion is fully briefed and ripe for the Court's consideration.

<u>The United States' Requests for Pre-Trial Deadlines</u>

Based on the Court's December 12, 2025, Order, the United States understands that in the coming months, a hearing on the Phase I evidentiary issues is likely to take place. The United

States also understands that the Court is still determining whether and how to hold hearings and trials for Phases II and III.

In an effort to allow all Parties time to prepare for future Phase I proceedings before the Court, the United States has sought meet and confers with PLG to discuss pre-trial disclosures, motions *in limine*, the joint pre-trial order, and other preparations for trial. The United States has also sought to set deadlines for Phases II and III by which all Parties' discovery records, discovery responses, and any expert opinions would be supplemented in advance of trial dates.

Setting these deadlines would give the Parties a path forward for how to properly bring all discovery to a close and prepare for trial—and ultimately, for global resolution. For example, as PLG notes above, PLG is still in the process of complying with its obligations under Federal Rules of Civil Procedure 26 and 34 to update Plaintiffs' medical records (an update concerning this matter is below). The United States' Phase III specific causation and damages experts need to review these records to ensure their opinions reflect the most current information. The United States seeks to have a firm deadline as to when these supplementations will end so that the United States' experts can properly incorporate those materials into their opinions as necessary and serve updated Materials Considered Lists and CVs. Similarly, as PLG notes above, the United States recently updated certain responses to PLG's Requests for Production to ensure they capture all previously produced records. PLG reports that they are in the process of doing the same. These and other written discovery responses will likely need to be supplemented again before trial, and the United States believes that all Parties would benefit from having deadlines in place.

To be clear, this would set a cut-off date for all Parties' fact and expert discovery. Just as Plaintiffs would have an end date for providing updated damages and medical care records, the United States would have an end date for producing offset-related records. To that end, the United

11

States has completed its production of offset data at this time. Any additional productions of updated offset data would be made as part of a larger effort to make a final supplementation of the record.

Despite the United States' multiple requests, PLG has responded that it is not willing to engage in these discussions at this point. The United States reiterates its position that even if future hearings and trial dates have not yet been set, pre-trial deadlines can be based on the number of days allotted for completion of each task before the trial, rather than by specific dates. A discussion of these procedures would be fruitful so that the Parties are ready to proceed efficiently on the Court's preferred timeline. In particular, the United States believes that, given the size and scope of this litigation, the Parties will need sufficient time to conduct an orderly completion of all updated record productions and expert and discovery supplementation for Phase II and III trials.

The United States was informed of the unfortunate health development for Plaintiff Peterson and is sympathetic to Mr. Peterson and his family. The United States understands that PLG wants to incorporate this development into the fact record and within expert opinions. This demonstrates why the United States has proposed establishing a clear process for updating previously produced records and reports in the bellwether cases and a deadline beyond which additional developments cannot be addressed in the bellwether trials. As PLG has referenced, Plaintiffs may continue to develop additional health issues and incur additional damages. Similarly, the United States will continue to pay for Plaintiffs' healthcare and thus generate additional offsets. There must be finality to the factual record and expert opinions so that the Parties can properly prepare for trials and move toward global resolution, rather than being required to possibly request additional expert depositions for new opinions on new health outcomes. The United States believes that the time is ripe to have discussions about pre-hearing

12

and trial schedules and procedures.

<u>United States' Request for Supplementation of Individual Medical Records</u>

Related to the above issues, on January 16, 2026, the United States requested that PLG supplement its production of individual medical records for multiple Track 1 bellwether plaintiffs. On January 30, 2026, PLG responded and represented that it either had requested or would request the medical records at issue from the relevant providers. On February 6, 2026, the United States confirmed this understanding. On February 20, 2026, the United States requested an update concerning the status of this supplementation, but has not received any update from PLG to date. The United States believes that it has received some, but not all, of the records requested.

<u>Missing Plaintiff Identifiers in Rubris</u>

Pursuant to the Court's December 21, 2023, Order [D.E. 91], each plaintiff who has filed a Short Form Complaint is required to provide their complete date of birth and full Social Security Number to the United States. This information has previously been collected in Rubris. The United States identified over 700 entries where this information appears incomplete or missing. PLG was notified. The United States understands that PLG is continuing to obtain the remaining missing information.

<u>United States Marine Corps Digitization Project Update</u>

Plaintiffs have sought the production of records that have been scanned through the United States Marine Corps' ("USMC") ongoing efforts to digitize certain microfilm, microfiche, and paper military records (the "Current Digitization Project"). The United States objected on, *inter alia*, burden and relevancy grounds. PLG filed a motion to compel [D.E. 730]. That motion is being held in abeyance while the Parties attempt to find a solution. [D.E. 788].

The United States offered multiple potential solutions, and believes the Parties have

13

reached an agreement on a path forward, which will ultimately cost the United States at least $150,000. On February 24, 2026, the United States proposed the following terms of agreement:

- The USMC has completed the scanning portion of the Current Digitization Project. A certain amount of data remains to be uploaded to the USMC document repository. The Department of Justice ("DOJ") has asked for an update on when USMC expects to complete this uploading process, and for the total size of the standard-quality records that will be produced under this agreement. DOJ will update PLG once it receives this information from USMC.

- Once the uploading process is complete, DOJ will download the standard-quality (110 dpi) records from the digitization project. It is DOJ's understanding that the OCR from the higher-quality (300 dpi) records has been overlayed on the standard-quality records. DOJ will then assess the size and nature of the data and provide an updated projection for the cost and time it will take DOJ to produce these records in compliance with the ESI Protocol.

- These productions will be made pursuant to the Parties' prior agreement wherein, "the Parties agreed to an interim framework under which PLG will be permitted limited access to the USMC Digitization Records solely for the purpose of assessing the nature and utility of the data." [D.E. 796] These productions will be accessible only to appointed members of PLG and PLG committee members who sign Exhibit A to the Third Amended Protective Order [D.E. 802] and return the signed page to DOJ.

- DOJ will produce the records on a rolling basis. Prior to the first production, the Parties will discuss the method of production (namely, whether the productions will be made via hard drive or JEFS).

- Once PLG has reviewed the productions, the Parties will discuss any proposed further use

14

of these records in the context of the litigation and/or administrative process.

<u>Filing Information Regarding Statistics Involving Administrative and Litigation Settlements</u>

Given the public interest in the progress of this litigation, the United States seeks to make a public filing of statistics regarding administrative and litigation settlements reached to date. Some of this information was previously included in the Joint Status Report under the heading of Update of Individual and Global Settlement Efforts. After the appointment of the Special Masters (D.E. 251) and the entry of the Order regarding Disclosure of Confidential Settlement Information (D.E. 263), the Court ordered that the information that was included under the heading of Update of Individual and Global Settlement was "no longer to be included in the parties' Status Reports or discussed at status conferences" (D.E. 271). Subsequently, the Court ordered the United States to serve by e-mail on the Settlement Masters, the Settlement Liaison, and the Plaintiffs' Leadership Group, a notice of "the then current number of administrative claims… that have been settled and the then current number of outstanding offers to settle such claims." (D.E. 290).

However, the Court's Order restricting the discussion of Confidential Settlement Information at status conferences states that the term "Confidential Settlement Information" "does not apply to statistical information on settlements reached by the government and settlement offers made by it on its own initiative without involvement of the Special Masters (*see*, *e.g.*, D.E. 164 § 5 at 4-5)" (D.E. 264). The Order appointing the Settlement Masters also does not protect as "Confidential Settlement Information" the results of settlements reached during the Settlement Master process. (D.E. 251). Further, DOJ policy prohibits maintaining confidentiality of settlements reached in civil cases. 28 C.F.R. Section 50.23. Accordingly, given the great public interest in this litigation, the United States requests permission to make a public filing of statistics regarding administrative and litigation settlements reached to date, and periodically include these

statistics as an exhibit with status reports.

Proposal for Track 2 Discovery

The United States has conferred with PLG on the most efficient procedure for discovery on Track 2. The United States believes that resolving general causation issues for Track 2 diseases before conducting individual plaintiff discovery would be most efficient. [D.E. 156]. PLG has indicated that it will review the United States' proposal and confer regarding a discovery plan for Track 2. The United States is prepared to discuss this further whenever PLG is ready.

**(5) Any other issues that the parties wish to raise with the Court:**

The Parties have agreed to file separate summaries of the motions that are pending before the Court. The Parties' respective summaries appear below:

**The PLG's Summary:**

At present, a number of motions have been filed and are undecided. Not all motions require rulings before the first trials, in the Joint Status Report for October 14, 2025 [D.E. 648] the PLG suggested that rulings on several motions regarding water modeling and the statutory burden of proof were particularly helpful to furthering resolution. Through its Order dated December 12, 2025 [D.E. 777], the court addressed the water modeling motions the PLG identified as critical.[1] The PLG restates its belief that rulings on the two motions below are particularly helpful to furthering resolution:

a. United States' Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 539]

b. Plaintiffs' Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 567]

---

[1] Docket Entries 356, 358, 360, 367, 373, 376, 423, 428, and 443

Notwithstanding the foregoing, the full list and organization of pending motions is set forth below:

I. **Phases II and III Motions On Application of Statutory Burden of Proof**
Motions are Applicable to All Diseases and to Future Tracks

    a. United States' Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 539]

        i. PLG's Response in Opposition to Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least Likely As Not" Standard [D.E. 690]

        ii. United States' Reply to Response to Motion regarding Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least As Likely As Not" Standard [D.E. 767]

    b. Plaintiffs' Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 567]

        i. United States' Response in Opposition to PLG's Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 664]

        ii. PLG's Reply to Response to Motion regarding Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Acts Burden of Proof for Causation [D.E. 762]

II. **Phases II and III Expert/Illness Specific Motions**
Motions are Applicable to Specific Illnesses as Categorized Below

    a. **Motions Not Limited to a Particular Illness**

        i. United States' Motion for Partial Summary Judgment concerning Dichloroethylene (all cases) [D.E. 520]

            1. PLG's Response in Opposition to Motion for Partial Summary Judgment Concerning Dichloroethylene [D.E.715]

            2. United States' Reply to Response to Motion regarding Motion for Partial Summary Judgment Concerning Dichloroethylene [D.E. 742]

    b. **Motions to Exclude General Causation Experts Who Opined as to Every Track 1 Case**

        i. Plaintiffs' Motion to Exclude Expert Dr. Michael J. McCabe, Jr. (all cases except Parkinson's) [D.E. 597]

17

1. United States' Response in Opposition to PLG's Motion to Exclude Expert Dr. Michael J. McCabe, Jr. [D.E. 666]
2. PLG's Reply to Response to Motion regarding Motion to Exclude Expert Dr. Michael J. McCabe, Jr. [D.E. 784]

ii. Plaintiffs' Motion to Exclude Defense Expert Dr. Julie Goodman (all cases) [D.E. 621]
   1. United States' Response in Opposition to Motion to Exclude Defense Expert Dr. Julie Goodman [D.E.686]
   2. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Dr. Julie Goodman [D.E.785]

iii. Plaintiffs' Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 624]
   1. United States' Response in Opposition to Motion to Exclude Defense Expert Dr. Lisa Bailey (all cases) [D.E. 670]
   2. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Dr. Lisa Bailey [D.E. 776]
   3. United States' Notice Regarding February 13, 2026 Hearing [D.E. 815]
   4. PLG's Motion for Leave to File Response to DOJ's Notice Regarding February 13, 2026 Hearing [D.E. 816]

c. **Motions with Common Legal Arguments**[2]

   i. United States' "Literature Review Motions" (all cases) [D.E. 584, 574, 541, 559, and part of 543]

   ii. United States' "Differential Etiology Motions" (all cases) [D.E. 586, 569, 557, 530, 533, 537, 553, and part of 543]

   iii. United States' "Threshold Association Motions" (all cases) [D.E. 547, 554, 582, 609]

   iv. United States' Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (bladder cancer and NHL/Leukemia) [D.E. 601]

d. **Bladder Cancer Motions** (Hon. Richard E. Myers II)

   **i. United States' Motions**
      1. Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and

---

[2] These motions also are listed more specifically under the individual disease categories below but the motions share common legal arguments and, therefore, may need to be decided jointly. The PLG's responses to motions are identified below in the specific disease categories.

Stephen Culp ("Bladder Cancer Threshold Association Motion") [D.E. 582]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Benjamin Hatten, Kathleen Gilbert, and Stephen Culp ("No Predicate Association Motion" Bladder Cancer) [D.E.689]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("No Predicate Association Motion" Bladder Cancer) [D.E.752]

2. Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp ("Bladder Cancer Literature Review Motion") [D.E. 584]

    a. PLG's Response in Opposition to Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Benjamin Hatten, Kathleen Gilbert, and Stephen Culp ("Literature Review Motion") [D.E. 700]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Opinions of Plaintiffs' Phase II Bladder Cancer Experts Laura Plunkett, Steven Bird, Bejamin Hatten, Kathleen Gilbert, and Stephen Culp [D.E. 751]

3. Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts for Performing Improper Differential Etiologies ("Bladder Cancer Differential Etiology Motion") [D.E. 586]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts from Performing Improper Differential Etiologies ("Improper Differential Motion") [D.E. 691]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Phase III Bladder Cancer Experts for Performing Improper Differential Etiologies ("Improper Differential Motion") [D.E. 755]

4. Motion to Exclude Plaintiffs' Psychiatry Expert Dr. Haresh Tharwani [D.E. 594]

19

      a. PLG's Response in Opposition to Motion to Exclude Plaintiff's Psychiatry Expert Dr. Haresh Tharwani [695]

5. Motion for Summary Judgment for Lack of Admissible Expert Testimony Federal Rule of Civil Procedure 56; L. Civ. R. 56.1(a)(1) [D.E. 590] [predicated upon determinations in D.E. 582, 584, 586]

      a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Admissible Expert Testimony Fed. R. Civ. P. 56; L. Civ R. 56.1(a)(1) [D.E. 678]

      b. United States' Reply to Response to Motion regarding Motion for Summary Judgment for Lack of Admissible Expert Testimony Federal Rule of Civil Procedure 56; L. Civ. R. 56.1(a)(1) [D.E. 756]

6. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

      a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 710]

      b. United States' Reply in Response to Motion regarding Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation [D.E. 775]

ii. **Plaintiffs' Leadership Group's Motions**

1. Motion to Exclude Defense Expert Dr. Max Kates filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 588]

      a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Max Kates [D.E. 673]

      b. PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Dr. Max Kates [D.E. 783]

2. Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to one kidney plaintiff)

      a. United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 668]

3. Multi-Illness Motions at D.E. 597, 621, 624.

      a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

20

e. **<u>Kidney Cancer Motions</u>** (Hon. Terrence W. Boyle)

   i. **United States' Motions**

   1. Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 524]

      a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 674]

      b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Expert Dr. Irving Allen's Opinions Regarding Hereditability and Causation [D.E. 757]

   2. Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases ("Kidney Cancer Differential Etiology Motion")[D.E. 569]

      a. PLG's Response in Opposition to Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases [D.E. 697]

      b. United States' Reply to Response to Motion regarding Motion to Exclude Improper Differential Diagnosis Opinions of Plaintiffs' Specific Causation Experts in Kidney Cancer Bellwether Cases [D.E. 759]

   3. Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 571]

      a. PLG's Response in Opposition to Motion to Exclude Plaintiff's Psychology Expert Dr. Roger Moore [D.E. 671]

   4. Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review Motion") [D.E. 574]

      a. PLG's Response in Opposition to Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review") [D.E. 707]

      b. United States' Rely to Response to Motion regarding Motion to Exclude Phase 2 Opinions of Dr. Bird, Dr. Hatten, and Dr. Mallon ("Kidney Cancer Literature Review") [D.E. 768]

5. Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 609]

   a. PLG's Response in Opposition to Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 687]

   b. United States' Reply to Response to Motion regarding Motion Opposition to Motion to Exclude Opinions of Drs. Bird, Freeman, Hatten, and Mallon Related to PCE, Benzene, and Vinyl Chloride ("Kidney Cancer Threshold Association Motion") [D.E. 761]

6. Motion for Summary Judgment (Kidney Cancer) [D.E. 611] (predicated upon determinations in D.E. 539, 569, 609)

   a. PLG's Response in Opposition to Motion for Summary Judgment (Kidney Cancer) [D.E. 677]

   b. United States' Reply to Response to Motion regarding Motion for Summary Judgment (Kidney Cancer) [D.E. 766]

7. Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 605]

   a. PLG's Response in Opposition to Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 714]

   b. United States' Reply to Response to Motion regarding Motion for Partial Summary Judgment on Claims Accruing after August 10, 2022 ("Accrual Motion") [D.E. 758]

ii. **Plaintiffs' Leadership Group's Motions**

   1. Motion to Exclude Defense Expert Dr. Walter Stadler [D.E. 599]

      a. United States' Response in Opposition to PLG's Motion to Exclude Expert Dr. Walter Stadler [D.E. 665]

      b. PLG's Reply to Response to Motion regarding Motion to Exclude Expert Dr. Walter Stadler [D.E. 779]

   2. Motion to Exclude Defense Expert Dr. Gail H. Vance, M.D. [D.E. 619]

22

      a.  United States' Response in Opposition to PLG's Motion to Exclude Defense Expert Gail H. Vance, M.D. [D.E. 663]

      b.  PLG's Reply to Response to Motion regarding Motion to Exclude Defense Expert Gail H. Vance, M.D. [D.E. 778]

3.  Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 612] (also applies to two bladder cancer plaintiffs)

      a.  PLG's Response in Opposition to 3.    Motion to Exclude Defense Expert Dr. Harold J. Bursztajn [D.E. 668]

4.  Multi-Illness Motions at D.E. 597, 621, 624.

      a.  United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

**f.**  <u>**Parkinson's Disease Motions**</u> **(Hon. Louise W. Flanagan)**

    **i.**  **United States' Motions**

1.  Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman ("Parkinson's Literature Review Motion") [D.E. 541]

      a.  PLG's Response in Opposition to Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman [D.E. 694]

      b.  United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Parkinson's Disease Experts Drs. Steven Bird, Jason Cannon, Amelia Boehme, Gary Miller, Briana De Miranda, Lucio Costa, and Michael Freeman [D.E. 744]

2.  Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska ("Parkinson's Literature Review and Differential Etiology Motion")[D.E. 543]

      a.  PLG's Response in Opposition to Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska [D.E. 688]

      b.   United States' Reply to Response to Motion regarding Motion to Exclude the General and Specific Causation Opinions of Drs. Richard Barbano, Heidi Schwarz, and Kristin Andruska [D.E. 747]

3.   Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz and Richard Barbano ("Parkinson's PCE Daubert Motion") [D.E. 545]

      a.   PLG's Response in Opposition to Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz, and Richard Barbano [D.E. 693]

      b.   United States' Reply to Response to Motion regarding Motion to Exclude Certain Opinions of Plaintiffs' Parkinsons Disease Experts Drs. Jason Cannon, Amelia Boehme, Michael Freeman, Lucio Costa, Steven Bird, Briana De Miranda, Gary Miller, Kristin Andruska, Heidi Schwarz, and Richard Barbano [D.E. 745]

4.   Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa and Richard Barbano ("Parkinson's Threshold Association Motion") [D.E. 547]

      a.   PLG's Response in Opposition to Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa, and Richard Barbano [D.E. 682]

      b.   United States' Reply to Response to Motion regarding Motion to Exclude Certain Opinions of Gary Miller, Lucio Costa and Richard Barbano [D.E. 746]

5.   Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 549] (predicated upon determinations in D.E. 539, 541, 543, 545, 547).

      a.   PLG's Response in Opposition to Motion for Summary Judgment, and In the Alternative, Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 701]

      b.   United States' Reply to Response to Motion regarding Motion for Summary Judgment, and In the Alternative,

Partial Summary Judgment on the Causal Link Between Perchloroethylene (PCE) and Parkinson's Disease [D.E. 748]

6. Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium [D.E. 525]

   a. PLG's Response in Opposition to Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium Claim [D.E. 719]

   b. United States Reply to Response to Motion regarding Motion to Dismiss for Failure to State a Claim Regarding Simmone McElhiney's Loss of Consortium Claim or, in the Alternative Motion for Partial Summary Judgment Regarding Simmone McElhiney's Loss of Consortium [D.E. 749]

### ii. Plaintiffs' Leadership Group's Motions

1. Multi-Illness Motions at D.E. 597, 621, 624.

   a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

### g. Leukemia and Non-Hodgkins Lymphoma Motions (Hon. James C. Dever III)

### i. United States' Motions

1. Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek ("Leukemia Differential Etiology Motion – Gondek") [D.E. 530]

   a. PLG's Response in Opposition to Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek (Leukemia) [D.E. 683]

   b. United States' Reply to Response to Motion regarding Motion to Exclude the Specific Causation Opinions of Dr. Lukasz Gondek [D.E. 750]

2. Motion to Exclude the Opinions of Damian Laber, M.D., FACP ("Leukemia Differential Etiology Motion – Laber") [D.E. 533]

   a. PLG's Response in Opposition to Motion to Exclude the Opinions of Damian Laber, M.D. [D.E. 692]

25

b. United States' Reply to Response to Motion regarding Motion to Exclude the Opinions of Damian Laber, M.D., FACP [D.E. 743]

3. Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 537]

    a. PLG's Response in Opposition to Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher ("Leukemia Differential Etiology Motion – Felsher") [D.E. 684]

    b. United States' Reply in Response to Motion regarding Motion to Exclude the Specific Causation Opinions of Dr. Dean Felsher (Leukemia) [D.E. 771]

4. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology ("Leukemia Threshold Association Motion")[D.E. 553]

    a. PLG's Response in Opposition to Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology [D.E. 708]

    b. United States' Reply to Response to Motion regarding Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rule of Evidence 702(b) and (d) for Misapplying the Bradford Hill Methodology [D.E. 770]

5. Motion to Exclude General Causation Opinions of Plaintiffs Leukemia and NHL Experts under Federal Rule of Evidence 702(c) ("Leukemia/NHL Motion on Disease Synergy") [D.E. 555]

    a. PLG's Response in Opposition to Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rules of Evidence 702(c) [D.E.699]

    b. United States' Reply to Response to Motion regarding Motion to Exclude General Causation Opinions of Plaintiffs' Leukemia and NHL Experts Under Federal Rules of Evidence 702(c) [D.E.772]

6. Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Federal Rule of Evidence 702(d) for Failing to

26

Reliably Employ a Differential Etiology ("Leukemia/NHL Differential Etiology Motion") [D.E. 557]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Fed. R. Evid. 702(d) For Failing to Reliably Employ a Differential Etiology [D.E. 696]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Specific Causation Experts in NHL Trial Cases Under Fed. R. Evid. 702(d) For Failing to Reliably Employ a Differential Etiology [D.E. 773]

7. Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu ("Leukemia/NHL Literature Review Motion") [D.E. 559]

    a. PLG's Response in Opposition to Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu (Literature Review Motion) [D.E. 703]

    b. United States' Reply to Response to Motion regarding Motion to Exclude Plaintiffs' Phase II Leukemia and NHL Experts Steven Bird, Lukasz Gondek, Kathleen Gilbert, Timothy Mallon, and Howard Hu (Literature Review Motion) [D.E. 769]

8. Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 576] (predicated upon determinations in D.E. 530, 533, 535, 537, 539, 553, 555, 557, 559)

    a. PLG's Response in Opposition to Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 675]

    b. United States' Reply to Response to Motion regarding Motion for Summary Judgment Based on Plaintiffs Failure to Proffer Expert Testimony Admissible under Daubert (Leukemia and NHL) [D.E. 760]

9. Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 601]

a. PLG's Response in Opposition to Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation (Bladder Cancer and NHL/Leukemia) [D.E. 710]

　　　　　b. United States' Reply in Response to Motion regarding Motion for Summary Judgment for Lack of Expert Testimony on But-For Causation [D.E. 775]

　　ii. **Plaintiffs' Leadership Group's Motions**

　　　　1. Motion to Exclude Certain Opinions of Dr. Harry P. Erba filed by Camp Lejeune Water Litigation, Plaintiff [D.E. 580]

　　　　　a. United States' Response in Opposition to PLG's Motion to Exclude Certain Opinions of Dr. Harry P. Erba [D.E. 667]

　　　　　b. PLG's Reply to Response to Motion regarding Motion to Exclude Certain Opinions of Dr. Harry P. Erba [D.E. 782]

　　　　2. Multi-Illness Motions at D.E. 597, 621, 624.

　　　　　a. United States' Responses in Opposition are listed at D.E. 666, D.E. 686, and D.E. 670, respectively

　h. **Damages and Offsets**

　　i. The PLG's Motion in Limine to Preclude Inappropriate Offset Evidence [D.E. 805]

　　　　1. United States' Response in Opposition to PLG's Motion in Limine to Preclude Inappropriate Offset Evidence [D.E. 813]

**III. Other Pending Motions**

　a. The Parties' respective proposed discovery plans for Track 2 illnesses [D.E. 155 & 156]

　b. PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 721]

　　i. United States' Response in Opposition to PLG's Motion to Expedite Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 733]

　　ii. PLG's Reply to Response to Motion regarding Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials [D.E. 789]

c. PLG's Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 724]

    i. United States' Response in Opposition to Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 740]

    ii. PLG's Reply to Response to Motion regarding Motion to Strike Dr. Julie Goodman's Untimely and Improper Supplemental Expert Reports [D.E. 792]

d. PLG's Motion to Compel Defendant United States of America to Produce Digitized Muster Rolls [D.E. 730]

e. PLG's Motion to Strike Plaintiffs Leadership Group's Motion to Strike Dr. Bailey's Untimely General Causation Opinions [D.E. 787]

    i. United States' Response in Opposition regarding Motion to Strike Plaintiffs Leadership Group's Motion to Strike Dr. Bailey's Untimely General Causation Opinions [D.E. 790]

    ii. PLG's Reply in Support of Motion to Strike [D.E. 800]

The PLG continues to believe the Court has many available mechanisms to resolve these motions efficiently to further the litigation and resolution. On November 12, 2025, the PLG set forth such a proposal in a Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials. [D.E. 721].

**United States' Summary:**

As discussed above, the United States believes that rulings on the threshold scientific issues of the levels of water contamination and general causation will promote further resolution of issues, not only for Track 1, but for future Tracks and global resolution. The United States has also raised significant issues regarding specific causation and interpretation of the CLJA in its September 10, 2025, filings. Decisions on those issues will also promote global resolution. Only after the Court has ruled on these motions should the Parties proceed to trial of individual cases, if necessary. As articulated in the United States' response to PLG's Motion to Reserve Admissibility Determinations and Expedite Track 1 Bellwether Trials that was filed on December 3, 2025, this

is the most efficient path forward because it may save court resources for bench trials of individual cases that may be rendered unnecessary. Furthermore, the United States disagrees with PLG's prioritization, grouping, and in certain instances, characterizations of the pending motions.

*[Signatures follow on next page]*

DATED this 26th day of February, 2026.

Respectfully submitted,

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*


/s/ Robin Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*


/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*


/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*


/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Assistant Directors

/s/ Adam Bain
ADAM BAIN
Special Litigation Counsel
Camp Lejeune Justice Act Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: adam.bain@usdoj.gov
Telephone: (202) 616-4209

*Counsel for Defendant*
*United States of America*

P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

*/s/ Mona Lisa Wallace*
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*