IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| **CAMP LEJEUNE WATER LITIGATION** | ) | Case No. 7:23-cv-897 |
| | ) | |
| | ) | **PLAINTIFF'S REPLY BRIEF IN** |
| **This Document Relates To: ALL CASES** | ) | **SUPPORT OF PLAINTIFFS' MOTION** |
| | ) | ***IN LIMINE* TO PRECLUDE** |
| | ) | **INAPPROPRIATE OFFSET EVIDENCE** |
| | ) | **[D.E. 805]** |
| | ) | |

To effectuate Section 804(e)(2) of the Camp Lejeune Justice Act (the "CLJA's Offset Provision"), Plaintiffs ask this Court to exclude evidence of supposed offsets that would exceed the statute's textual limits and result in unnecessary and wasteful disputes. Specifically, Plaintiffs request that this Court exclude irrelevant evidence of (1) supposed future offsets, (2) supposed offsets that do not counterbalance claimed damages, and (3) evidence of medical expenses paid by the VA, Medicare, and Medicaid unless being offered to resolve a payment source dispute.[1]

In seeking the relief requested, Plaintiffs ask this Court to apply the CLJA according to its text: CLJA awards shall be "offset" by certain government payments "provided" to Plaintiffs. To "offset" is to set off or balance *against* something, and payments "provided" are those that have in fact been provided. Thus, per the ordinary, plain meaning of its text, the CLJA's Offset Provision counterbalances damages for payments that have been provided under the listed government programs. Contrary to Defendant's argument, Plaintiffs do not seek to render the Offset Provision meaningless. Instead, Plaintiffs' Motion is brought in recognition that the Offset Provision's text precludes CLJA Plaintiffs from recovering damages for expenses the government has already paid through VA, Medicare, or Medicaid. That this impact of the Offset Provision is straightforward does not make it meaningless. Rather, it evidences that Congress designed a statute that is easy to administer, logical, and fair, limiting CLJA awards to compensation that the government has *not* yet provided for injuries resulting from Camp Lejeune water exposure.

Defendant rejects the text's straightforward meaning and proposes to rewrite the CLJA. Instead of "offset[s]," Defendant seeks blanket *reductions* of CLJA awards, even for expenses Plaintiffs have not claimed and even for government payments that may never be "provided." The practical impact of Defendant's interpretation is that the Court will be required to conduct two

---

[1] Plaintiffs previously requested exclusion of offsets related to amounts paid by TRICARE. Defendant has now conceded the CLJA does not provide offsets for TRICARE. [D.E. 813 at 25.]

separate evidentiary hearings—first on Plaintiffs' damages and, later, on Defendant's offsets—with Defendant being allowed at the offset phase to present proof of payments, awards and/or benefits provided to the Plaintiffs in connection with healthcare relating to their Camp Lejeune water exposure without such evidence also constituting proof of corresponding damages. This makes no sense from a practical, logical, or legal standpoint. Proof of an offset should be deemed an admission that the Plaintiff has incurred that same amount in damages, thereby reducing the damages to zero and rendering proof of both the damages and the offset irrelevant.

Rather than accept the CLJA's text, Defendant spends pages arguing that past tense actually includes the future. But courts read undefined terms by their ordinary, everyday meaning, and no ordinary person would read "benefit provided" as "a past-participial adjectival phrase that is tenseless." [D.E. 813 at 14.] Defendant also acts as if the CLJA states that any award shall be "reduced" overall by VA, Medicare, or Medicaid payments when instead it specifically says "offset," which means to balance against an equivalent claim. For both arguments, Defendant hangs its hat on the word "any," but that word denotes expansiveness only within the bounds of the CLJA's other textual limits, and does not override "provided" and "offset." Finally, Defendant insists on dragging the parties and Court through useless disputes over how much the Offset Provision's enumerated programs paid for Plaintiffs' past healthcare, even though Plaintiffs concede these damages will be zero under the Offset Provision, rendering the amounts irrelevant.

The consequences of applying Defendant's misinterpretation of the Offset Provision would be profound, and cannot be what Congress intended. Plaintiffs that choose not to claim damages for amounts that are subject to the Offset Provision would effectively have to repay the government twice—first through their own preemptive reduction of the amount of damages being sought, and then by having other damages *not* previously compensated by the government (such as pain and

2

Case 7:23-cv-00897-RJ    Document 819    Filed 03/03/26    Page 3 of 12

suffering) reduced for the Defendant's one-sided "offsets." Plaintiffs who do present evidence of past government-paid medical expenses may also find their pain and suffering award reduced if the amount the Plaintiff is able to prove is less than the offsets proven by the Defendant.[2] If Defendant can also claim speculative future offsets, Plaintiffs will see their recoveries dwindle even more. Altogether, Defendant's countertextual attempts to wipe out any net recovery under the CLJA are contrary to the very purpose of the statute and a hindrance to resolution. Further, under the Defendant's scenario, both the Parties and the Court will be required to litigate unnecessary disputes over the line-by-line value of damages that should result in no net recovery regardless because of the applicable offset. To avoid these consequences and honor the CLJA's text, Plaintiffs respectfully request their Motion be granted.

## ARGUMENT

I. **Evidence of an award, payment, or benefit not "provided" to the Plaintiff as of the date of the Plaintiff's CLJA award is not a permitted "offset" and thus not relevant.**

As Defendant recognizes, the text of the CLJA expressly limits offsets. For example, despite the use of the "expansive" term "any," Defendant concedes that offsets are limited to benefits provided under enumerated programs for illnesses related to Camp Lejeune water exposure (*e.g.*, not TRICARE). [D.E. 813 at 4-6 & n.3.] This shows the word "any" is expansive only *within* the context of the CLJA's limiting language. *See Cawthorn v. Amalfi*, 35 F.4th 245, 258-59 (4th Cir. 2022) (explaining that the district court's focus on the "broad" phrase "all persons whomsoever" was "misplaced" in light of limiting language). Defendant's cited cases reinforce

---

[2] Such differences can occur due to the Defendant's direct access to data obtained from the government payor programs themselves as opposed to the Plaintiff's reliance on the availability of past medical bills. They will also arise if Defendant is allowed to present its offset evidence after a damages award is rendered, in a separate proceeding, and with no evidentiary reciprocity, thereby giving rise to evidence obtained later in time and amounts that are greater than the damages awarded at trial for the very same healthcare.

3

this limiting principle.[3] The word "provided" is one such express textual limitation.

The CLJA's Offset Provision allows for offsets against "the amount of any disability award, payment, or benefit *provided*" under enumerated programs. CLJA § 804(e)(2) (emphasis added). The Offset Provision is limited to benefits "provided" in the past tense. Words should be "interpreted as taking their ordinary, contemporary, common meaning…." *Wisconsin Central Ltd v. United States*, 585 U.S. 274, 284 (2018). As a "straightforward principle of grammar," "[t]he past-tense is 'backward-looking'; it refers to things that have already happened, not those yet to come." *Cawthorn*, 35 F.4th at 258.[4] In the Offset Provision, "provided" modifies the phrase "any award, payment, or benefit" and is a "past participle, *i.e.*, '[a] verb form indicating past or completed action or time that is used as a verbal adjective in phrases such as *baked beans* and *finished work*.'" *See Florida Dep't of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33, 39 (2008) (quoting American Heritage Dictionary 1287 (4th ed. 2000)). Because the CLJA does not define its terms otherwise, the "everyday understanding" and "regular usage" "count for a lot" to understand "what Congress probably meant." *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006). The everyday understanding of a "benefit provided" is one that has actually been provided, not one that might or might not be provided in the future.[5]

---

[3] *See Bernal v. NRA Group, LLC*, 930 F.3d 891, 896 (7th Cir. 2019) ("[A]*bsent limiting language*, 'any' should mean 'any.'") (emphasis added); *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219 (2008) (explaining the word "any" provides no basis for limiting a phrase in the "*absence of restrictive language*") (emphasis added); *Smith v. Berryhill*, 587 U.S. 471, 479 (2019) (relying on *Ali*, 552 U.S. at 219); *Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) (same); *United States v. Ickes*, 393 F.3d 501, 504 (Congress "chose to use the word 'any' no less than five times" immediately preceding the contested term).

[4] Defendant argues *Cawthorn* involved a "unique set of historical circumstances not present here." [D.E. 813 at 13.] However, the Fourth Circuit explained that the use of the past-tense "imposed" was "[t]he most fundamental problem" with the plaintiff's argument there, while "[t]he Act's history and context *further confirm* the point." 35 F.4th at 258-59 (emphasis added).

[5] Defendant argues that Plaintiffs' position on "provided" should likewise limit damages to those already incurred because the CLJA provides relief for harm "caused" in the past tense. [D.E. 813 at 14.] But all damages Plaintiffs seek were "caused" in the past, by exposure to contaminated water between 1953 and 1987. The CLJA allows Plaintiffs to "obtain appropriate relief" for those harms, and the only statutory limitation on such relief is that punitive damages are barred. CLJA §§ 804(b), (g). If Plaintiffs show at trial

4

Defendant's strained argument that a past participle operates without tense goes against ordinary meaning and has been rejected by courts. In *Picadilly*, the Supreme Court found that Florida's interpretation of a "plan confirmed under" Chapter 11, which relied on the premise that "a past participle indicates past or completed action even when it is placed after the noun it modifies," was "clearly the more natural" reading despite the defendant's argument that "the statutory language does not unambiguously impose a temporal requirement." 554 U.S. at 38-41. Similarly, the *Cawthorn* court found it "beside the point" that the word "'imposed' functions as a 'participle'" because "participles are a *form* of verbs—a form that comes in both 'past' and 'present' varieties" and "Congress employed the past-tense version, indicating its intent to lift only those disabilities that had been 'imposed.'" 35 F.4th at 258.

Defendant's citations to cases recognizing that past participles are "routinely used as adjectives to describe the *present state* of a thing" support *Plaintiffs*' position, which would determine offsets by the present state of a Plaintiff's government benefits as of trial. [D.E. 813 at 11 (emphasis added).][6] Defendant cites *Waag v. Permann* (*In re Waag*), 418 B.R. 373, 379 (B.A.P. 9th Cir. 2009), for the notion that "the past participle 'signifies "perfectiveness" or completion, but is not restricted to past time'" (emphasis omitted), but here Defendant seeks offsets that are *not* perfected or completed. As the *Waag* court explained, "[a]s a past participle, 'awarded' … signifies 'completion' or an entry of a restitution or damages award at the time of the determination of nondischargeability." *Id.*; *see also Baker & Taylor v. Griffin*, No. 3:12-CV-00553-MOC, 2015 WL 1307293, at *2 (W.D.N.C. Mar. 23, 2015) (awarding fees "actually incurred" at the time). The *Bernal* court read "costs incurred" to refer to costs on a presently existing invoice, rather than an

---

that "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" includes compensation for future losses, then such compensation is available under the CLJA.

[6] *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 84 (2017) (debt "owed" meant present, not future); *Cela v. Garland*, 75 F.4th 355, 363 (4th Cir. 2023) ("granted asylum" meant present, not future).

5

open-ended reference to costs that may be incurred someday. *See* 930 F.3d at 897 (expressing "no opinion on whether the result would be different if the bill had included purely speculative expenses," because contested sum was "not an estimate" but "the precise amount"). *Bernal* also involved a contract that, read in the plaintiff's view, could violate a consumer statute. *See id.* at 896. No similar risk undermines Plaintiffs' textual argument here. The other cases Defendant cites similarly do not justify departure from the ordinary meaning of "provided."[7]

Defendant's remaining arguments fare no better. *First*, Defendant argues that if Congress intended to limit offsets to the past, it could have written the Offset Provision differently. [D.E. 813 at 8-9.] But Congress specifically chose the word "provided" and omitted language allowing for future benefits, in contrast to its approach in other statutes. *See, e.g.*, 42 U.S.C. § 247d-6d(e)(7)(C) (reducing damages by the "benefit provided *or to be provided in the future*") (emphasis added).[8] *Second*, Subsection 804(e)(2)'s title, "HEALTH AND DISABILITY BENEFITS RELATING TO WATER EXPOSURE," says nothing about offsets at all, much less clarifies how Congress intended them to apply. *Third*, while the Dictionary Act instructs that "words used in the present tense include the future as well as the present," [D.E. 813 at 9], the Dictionary Act is silent as to how to interpret words in the past tense like "provided." *See* 1 U.S.C. § 1. *Fourth*, Defendant argues that Camp Lejeune benefits may continue in the future, [D.E. 813 at 10], but given the speculative nature of any future government programs and benefits, it is logical Congress omitted them from the Offset Provision. *Fifth*, Defendant argues the CLJA has

---

[7] *See In re Taylor*, 388 B.R. 115, 120-121 (Bankr. M.D. Pa. 2008) (narrower reading of section 1328(a)(4) of Bankruptcy Code would produce absurd results); *In re Abbott*, No. 15-06822-5-SWH, 2016 WL 6892456, at *2 (Bankr. E.D.N.C. Nov. 22, 2016) (same); *Kubra v. Edmonds* (*In re Edmonds*), No. 11-01064-8-RDD, 2011 WL 5909420, at *2 (Bankr. E.D.N.C. Aug. 22, 2011) (same); *United States v. Funke*, 846 F.3d 998, 1001 (8th Cir. 2017) (legislative history showed clear congressional intent for future costs).
[8] As explained in Plaintiffs' Motion, this statute and others that permit such aggressive reductions do not refer to such reductions as "offsets." *See* [D.E. 806 at 12 n.7.]

6

no express temporal limitation, but that is doubly wrong. [D.E. 813 at 10.] "Provided" limits offsets to the past, as does "offset" itself, which requires a counterbalance and thus necessarily excludes reductions that balance only against possible benefits that may in fact never be provided at all.

*Finally*, Defendant argues the sovereign immunity canon resolves ambiguity in Defendant's favor. [D.E. 813 at 16.] But the Offset Provision is not ambiguous.[9] Even if it were, Defendant stretches this canon beyond ensuring that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." [D.E. 813 at 16.] Plaintiffs do not seek any implied damages. It is Defendant that seeks some implied right to reduce awards by speculative benefits that have not been and may never be "provided," contrary to the statute's plain meaning. Defendant cites no opinion applying the sovereign immunity canon in similar circumstances.[10]

## II. Evidence of an award, payment, or benefit in a category or amount that would not constitute a double recovery is not relevant, because it is not an "offset."

Contrary to Defendant's assertion that the "PLG does not cite or reference the actual text of Subsection 804(e)(2)," [D.E. 813 at 17], Plaintiffs' argument that the purpose of the Offset Provision is to prevent double recovery is firmly grounded in the central word of the text: "offset." *See* [D.E. 806 at 12-13.] An "offset" is "[s]omething (such as an amount or claim) that balances or compensates for something else." Black's Law Dictionary (11th ed. 2019). Defendant cannot "balance" against damages Plaintiffs have not claimed. Congress did not write that awards shall

---

[9] When the text provides a clear answer, analysis "ends there." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "The plain meaning of legislation should be conclusive," except where a literal application would be clearly contrary to congressional intent. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989). Given the plain text here, the sovereign immunity canon does not come into play.

[10] In the opinions Defendant cites applying this canon previously it was clear Congress had conditioned waiver of sovereign immunity on the issue in dispute. *See* [D.E. 133 at 10] (Congress had "almost always" conditioned immunity waiver on relinquishment of jury trial); [D.E. 439 at 15] (the term "water" restricted "who can file a CLJA claim," among other things); *Lane v. Pena*, 518 U.S. 187, 189 (1996) (addressing whether monetary damages were available at all).

7

be "reduced," it wrote "offset." An offset is not a generalized reduction or penalty; it is a specific counterbalance to specific damages. It serves to preclude a CLJA Plaintiff from recovering from the government a second time through the CLJA what the government has already provided them.

As Plaintiffs' Motion explained, "offset" is a legal term given meaning by caselaw that Congress is presumed to adopt. [D.E. 806 at 12-13.] For example, Plaintiffs cited (and Defendant ignored) the Fourth Circuit's holding that an offset requires a defendant to show that the plaintiff would otherwise receive "double payment" of the same type of compensation. *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 389 (4th Cir. 2010). Many courts have recognized this principle in the FTCA context, where courts limit offsets only to those elements for which government payments, such as veterans' benefits, were intended to compensate. *See* [D.E. 806 at 11] (citing cases); *see also Powers v. United States*, 589 F. Supp. 1084, 1108 (D. Conn. 1984) (explaining that under the FTCA, "**as the plaintiff has included no claim for past medical expenditures, no award has, in fact, been made for them by the Court. As such, there is no award against which a set-off could be taken.**") (emphasis added). Because double recovery is possible only for the amount of damages claimed, evidence of offsets exceeding such amount are likewise irrelevant.[11]

Defendant fails to show Congress departed from this traditional understanding of "offset." *First*, as explained above, the word "any" is expansive only within the bounds of the text's other limits—here, the meaning of "offset." *Second*, Defendant's argument that the Court should not look to FTCA cases' application of offsets contradicts Defendant's prior positions that, besides certain defenses "the CLJA expressly eliminates," "other FTCA provisions will continue to apply." [D.E. 34 at 7-8]; *see also id.* at 9-10 (Defendant arguing that the CLJA "creat[ed] a type of FTCA

---

[11] Defendant also disputes Plaintiffs' characterization of VA benefits, [D.E. 813 at 19-20], but Plaintiffs' reference to VA benefits serves as only one example of how offsets are traditionally applied. The process Defendant describes under 38 C.F.R. § 4.10 is beyond the scope of Plaintiffs' motion.

8

claim," and that it "is particularly unlikely that Congress intended to divorce the CLJA's limited provisions from the more comprehensive FTCA regime"). *Finally*, Defendant ignores that where Congress has intended to depart from the traditional, legal understanding of an offset, it has done so clearly. *See, e.g.*, 38 U.S.C. § 1151(b)(1) (instead of using "offset," stating that "no benefits shall be paid" until the "aggregate amount of benefits" equals the "total amount" won); *see also* [D.E. 806 at 12 n.7] (listing other statutes Defendant ignores).

### III. Offsets for Precluded Damages Are Irrelevant, Except for One Limited Purpose.

Defendant refuses to acknowledge that offsets for past healthcare paid by the VA, Medicare, and Medicaid should be counterbalanced dollar-for-dollar against damages for that same healthcare, even though the parties agree the Offset Provision prevents recovery of such expenses regardless of the amount. Defendant instead insists Plaintiffs first be required to prove medical expenses paid by these programs, and then Defendant separately be allowed to prove its offsets for such expenses. Defendant's bifurcated trial vision is illogical from an evidentiary standpoint, procedurally inefficient, substantively unfair, and imperils resolution. Defendant's process would drag the parties and the Court through *two* rounds of evidentiary disputes over amounts for past healthcare paid by the enumerated programs even though those sums cannot be recovered regardless of the amounts. Defendant does not dispute the burden this adds at trial (and Plaintiffs submit that a quick decision on this motion will also save time in supplemental discovery and further motions practice). Yet Defendant seeks to impose this multi-part process upon each individual trial so Defendant can prove greater amounts in offsets than Plaintiffs prove in damages for the exact same healthcare. But it should make no difference what amount is proven in offsets, because whatever amount the government provided to the Plaintiff for healthcare under the enumerated programs, that amount should prove both Plaintiff's damages for that healthcare and Defendant's equivalent offsets—Plaintiff received the healthcare they received. Yet Defendant

9

effectively seeks to claim such offsets twice—first by claiming offsets even for damages Plaintiffs do not claim and second to reduce Plaintiffs' *other*, *unrelated* damages that are not a double recovery. This illogical, unfair procedure is not permitted by the statutory term "offset."

Plaintiffs' position is not an attempt to shift the burden of proof. Plaintiffs are offering a practical application that fully recognizes the Offset Provision by precluding *both* parties from presenting evidence of medical expenses paid by the enumerated programs. This relief is requested to prevent all involved, including the Court, from expending resources proving amounts that do not increase or decrease the Plaintiff's final award. Plaintiffs still bear the burden of proving their damages, but any damages that will be reduced to zero under the Offset Provision are irrelevant.

Defendant identifies only one purpose for which evidence of VA/Medicare/Medicaid medical expenses should be admissible: if a Plaintiff claims medical expenses were paid by another source, Defendant should be permitted to admit evidence an enumerated government program actually paid those medical expenses for the purpose of offsetting those damages. Plaintiffs agree that in this limited instance, such evidence should be allowed to resolve disputes about whether a medical expense was paid by these programs. Beyond this limited exception, however, the introduction of such evidence serves no purpose, and Defendant does not appear to disagree.

## CONCLUSION

Per the CLJA's text, Plaintiffs respectfully request that this Court grant their motion to exclude irrelevant evidence introduced for the purpose of establishing offsets for potential future benefits, offsets that do not counterbalance an equivalent category or amount of claimed damages, and offsets for past medical expenses enumerated in the Offset Provision, unless introduced for the limited purpose of proving that a past medical expense that a Plaintiff claims was paid by another source was actually paid by the government.

DATED this 3rd day of March, 2026.

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com

*Lead Counsel for Plaintiffs*

/s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser (admitted *pro hac vice*) Lieff Cabraser Heimann & Bernstein, LLP 275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ecabraser@lchb.com

*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790) The Dowling Firm PLLC
Post Office Box 27843
Raleigh, NC 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com

*Co-Lead Counsel for Plaintiffs*

/s/ Robin L. Greenwald
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com

*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III
Lewis & Roberts, PLLC
3700 Glenwood Ave., Ste. 410
Raleigh, NC 27612
Telephone: (919) 981-0191
jar@lewis-roberts.com

*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144
Telephone: 704-633-5244
mwallace@wallacegraham.com

*Co-Lead Counsel for Plaintiffs*