IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | ORDER |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ALL CASES ) | |

This matter is before the court on Plaintiffs' Leadership Group's ("PLG" or "Plaintiffs") motion to strike Dr. Bailey's untimely general causation opinions [DE-787] on the basis that portions of Dr. Bailey's Phase III expert reports contain general causation testimony that was not timely disclosed in Phase II. Defendant responded in opposition, [DE-790], and PLG replied. [DE-800]. For the reasons stated below, the court grants PLG's motion to strike and denies as moot PLG's motion for leave to file a response [DE-816].

I. Background

This motion arises in connection with expert discovery under the Camp Lejeune Justice Act ("CLJA"), Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802–04. The CLJA authorizes individuals exposed to contaminated water at Marine Corps Base Camp Lejeune between August 1, 1953, and December 31, 1987, to seek appropriate relief. *Id.* § 804(b).

To promote efficient resolution of this consolidated litigation, the court entered multiple scheduling orders governing phased expert discovery. *See* [DE-270, DE-312, DE-332, DE-414, DE-630]. Expert discovery has proceeded in three phases: Phase I (water contamination), Phase II (general causation), and Phase III (specific causation, damages, and residual issues). *Id.* In a

general causation analysis, covered by Phase II, "an expert demonstrates that a particular type of harm can be caused by the exposure to a degree of scientific certainty." *In re Camp Lejeune Water Litig.*, 736 F. Supp. 3d 311, 319 (E.D.N.C. 2024). In a specific causation analysis, covered by Phase III, "an expert opines that [a specific] plaintiff['s] exposure was a cause in fact of his or her harm." *Id.* Put another way, general causation addresses "the levels of exposure that are hazardous to human beings generally," whereas specific causation considers the "plaintiff's actual level of exposure." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999).

On July 22, 2025, the court entered an order ("July 22 Order") granting in part Defendant's discovery motion to exclude portions of PLG's Phase III expert reports because the reports contained untimely general causation opinions in violation of the court's scheduling orders. *See In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2025 WL 2054353 (E.D.N.C. July 22, 2025). As the court explained, "[e]ach Phase informs the next—like building blocks in the parties' case in chief. It would frustrate the court's intent to prevent experts in subsequent Phases from referring to work done by prior experts." *Id.* at *3. Therefore, the court concluded that while "Phase III experts may reference general causation evidence, including Phase II opinions and published literature, as part of their specific causation methodology," the parties' "Phase III experts may not introduce new, independent general causation analyses, including but not limited to fresh literature reviews, novel threshold calculations, or any general causation methodologies that were not timely disclosed in Phase II." *Id.* at *4. At the time, the court applied the July 22 Order only to Plaintiffs' Phase III experts. *Id.*[1]

---

[1] The court entered its July 22 Order in response to a motion filed by Defendant in which Defendant moved to "exclude general causation opinions disclosed by Plaintiffs months after the applicable deadline." *See* [DE-409]. Where Defendant sought the overbroad remedy to exclude any part of PLG's Phase III expert reports that mentioned general causation, *see, e.g.*, [DE-410] 2–6, the court granted in part Defendant's motion but did not strike any specific PLG Phase III expert testimony in that order. *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *4.

2

On September 2, 2025, PLG moved to apply the July 22 Order to experts from both parties. [DE-515]. The court denied PLG's motion as procedurally improper on November 10, 2025, explaining that "the appropriate procedural vehicle [was to] move to exclude portions of Defendant's expert testimony as a sanction under Rules 16(f) or 37." [DE-685] 4. On December 15, 2025, PLG filed the instant motion to strike portions of Dr. Bailey's testimony pursuant to Rule 16(f). [DE-787].

Defendant's Phase II expert disclosures were due February 7, 2025. *See* [DE-414] 3. Dr. Bailey's Phase III expert reports indicate they were prepared and consequently disclosed after February 7, 2025. *See, e.g.*, Bailey Rep. (Welch) (Parkinson's Disease) [DE-503-10] 2 (noting a preparation date of May 8, 2025). The court heard oral arguments on PLG's motion at a hearing held February 13, 2026. *See* Feb. 13, 2026, Hr'g Tr. [DE-812]. In response to a question posed by the court at the hearing, Defendant filed a notice on February 19, 2026. *See* [DE-815]. On February 20, 2026, PLG filed a motion for leave to file a response to Defendant's notice. [DE-816].

II.  Legal Standard

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. The rule provides that a party's disclosures regarding an expert witness must include a report, which in turn must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. P. 26(a)(2)(B). The report must indicate "the testimony the witness is expected to give during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. The rules further provide, "[a] party must make these

3

Case 7:23-cv-00897-RJ    Document 821    Filed 03/05/26    Page 3 of 8

disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

"[T]he court's inquiry into whether there have been any violations [of its scheduling orders] is governed by Rule 16(f)." *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2025 WL 1343184, at *3 (E.D.N.C. May 8, 2025); *see* Fed. R. Civ. P. 16(f); *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002). The court incorporates here by reference the court's prior discussion of the seven *Akeva* factors the court considers when determining the appropriate sanction(s) to apply to a party that has violated its scheduling order. *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *2 (citing *Severn Peanut Co., Inc. v. Indus. Fumigant Co.*, No. 2:11-CV-14, 2014 WL 198217, at *3 (E.D.N.C. Jan. 15, 2014)); *Akeva*, 212 F.R.D. at 309.

III. Discussion

PLG moves to strike portions of Dr. Bailey's Phase III expert reports that reference toxicity criteria or points of departure and any conclusions that rely on such testimony, contending these constitute general causation testimony and Dr. Bailey "did not rely on one of the Defendant's Phase II experts to identify toxicity criteria." *See* [DE-787] 4–5. PLG argues Dr. Bailey instead used toxicity criteria data provided by the Environmental Protection Agency ("EPA") and Agency for Toxic Substances and Disease Registry ("ATSDR"), even though this agency-provided data was not included in Defendant's Phase II disclosures. *Id.* at 5. PLG also argues Dr. Bailey provided new, independent general causation testimony in Phase III when she "made her own choices and adjustments [to the EPA and ATSDR data] to derive the toxicity criteria that she would compare to each Plaintiff's exposure levels" and "estimated the [points of departure] herself" when the EPA did not provide that data. *Id.*

In response, Defendant argues Dr. Bailey relied on the timely-disclosed Phase II reports of Dr. Julie Goodman in conducting her toxicity criteria and points of departure analyses. Def.'s

4

Resp. [DE-790] 5. Defendant also argues Dr. Bailey's disputed analyses were plaintiff-specific and therefore constituted specific causation testimony rather than general causation testimony. *Id.* Additionally, Defendant argues Dr. Bailey's analyses were not general causation testimony because "the [points of departure] in the calculations that Dr. Bailey performed are not threshold doses" and therefore the calculations do not "represent[] the level of exposure sufficient to cause a disease." *Id.* at 7.

Whether PLG is entitled to the requested relief is a two-part inquiry. First, the court must determine whether the disputed portions of Dr. Bailey's Phase III expert reports violate the court's pretrial scheduling orders by introducing general causation opinions that were not timely disclosed in Phase II. Second, if so, the court must determine what sanction, if any, is appropriate. *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *2; Fed. R. Civ. P. 16(f); *Akeva*, 212 F.R.D. at 309. Here, the court already applied the *Akeva* factors to determine that the appropriate sanction for such untimely disclosures under Rule 16(f) is to strike the untimely-disclosed expert testimony, and the court incorporates by reference its prior analysis and conclusion. *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *2–4. Accordingly, the court's decision to grant PLG's motion to strike turns on whether toxicity criteria and points of departure are "general causation methodologies that were not timely disclosed in Phase II." *Id.* at 4. Otherwise, the court will only strike disputed Phase III testimony that presents "new, independent general causation analyses" such as "novel threshold calculations." *Id.*

The court first considers whether toxicity criteria and points of departure are general causation methodologies. *Id.* Dr. Bailey describes toxicity criteria as "doses or concentrations at or below which adverse health effects are not expected." *See, e.g.*, Bailey Rep. (Welch) (Parkinson's Disease) [DE-503-10] 11, 18. Dr. Bailey describes points of departure as "the

5

exposure levels at which health effects are predicted to be associated with no (or a very low) response from animal or human studies [which are] used to derive regulatory toxicity criteria." *Id.* at 48. Both concepts plainly speak to "the levels of exposure that are hazardous to human beings generally," and therefore constitute general causation testimony. *See Westberry*, 178 F.3d at 263. Thus, the court must determine whether toxicity criteria and points of departure were "timely disclosed in Phase II." *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *4.

But, as Defendant conceded at the motion hearing held February 13, 2026, "none of the United States Phase II experts disclosed these toxicity criteria." Feb. 13, 2026, Hr'g Tr. [DE-812] 74:3–4. And even though Defendant argues "Dr. Bailey repeatedly testified that she relied on Dr. Goodman's Phase II general causation work," Def.'s Resp. [DE-790] 5 n.3, Dr. Goodman never cited the agency data that Dr. Bailey relied on for her risk assessments—in fact, Dr. Goodman never discussed toxicity criteria or points of departure in her Phase II reports at all. *See, e.g.*, Goodman Rep. (Parkinson's Disease) [DE-467-17]. Thus, the toxicity criteria and points of departure data are "general causation methodologies that were not timely disclosed in Phase II" and must be stricken from Dr. Bailey's Phase III reports. *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *4.

Defendant's argument that Dr. Bailey's disputed analyses were plaintiff-specific and therefore were proper Phase III specific causation analyses misses the point. The problem is not that Dr. Bailey failed to provide plaintiff-specific testimony, the problem is that Dr. Bailey "used the cancer and non-cancer toxicity criteria derived by the [EPA]" and "used the [ATSDR]'s existing toxicity criteria" to provide her plaintiff-specific testimony, even though Defendant's experts did not disclose the EPA and ATSDR toxicity criteria—nor discuss toxicity criteria at all—in their Phase II reports. *See* Def.'s Resp. [DE-790] 6. And as PLG clarified at the February 13,

6

2026 motion hearing, "it's not the comparison that's the problem. It's the source data. The source data should have come from a general causation expert at Phase II." Feb. 13, 2026, Hr'g Tr. [DE-812] 69:14–17. Indeed, PLG does not challenge sections of Dr. Bailey's report "where Dr. Bailey relied on a Phase II expert to provide the underlying source data." *Id.* at 64:11–13.

Defendant also argues the points of departure in Dr. Bailey's calculations are not "threshold doses" and therefore do not constitute general causation testimony because they do not "represent[] the level of exposure sufficient to cause a disease." *See* Def.'s Resp. [DE-790] 7. Rather, Defendant argues, Dr. Bailey's points of departure represent either "the lowest exposure levels at which health effects have been observed" or "exposure levels at which no effects have been observed." *Id.*; *see, e.g.*, Bailey Rep. (Welch) (Parkinson's Disease) [DE-503-10] 11, 18, 48. As explained, these are general causation matters that concern "the levels of exposure that are hazardous to human beings generally" and must have been disclosed by the Phase II deadline. *Westberry*, 178 F.3d at 263; *see In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *4.

The court concludes the portions of Dr. Bailey's Phase III expert reports that use toxicity criteria or points of departure contain "general causation methodologies that were not timely disclosed in Phase II." *See In re Camp Lejeune Water Litig.*, 2025 WL 2054353, at *4. Accordingly, the court need not proceed to the second step of its inquiry to determine whether portions of Dr. Bailey's reports contain "new, independent general causation analyses" such as "novel threshold calculations." *See id.* Applying here the *Akeva* factor analysis previously applied in the court's July 22 Order, the court grants PLG's motion and strikes all reference to toxicity criteria or points of departure (sometimes referred to in Dr. Bailey's reports as "PODs") from Dr. Bailey's reports and any conclusions that rely on such testimony.

IV. Conclusion

The court GRANTS PLG's motion to strike Dr. Bailey's untimely general causation opinions [DE-787]. The court STRIKES from Dr. Bailey's following reports all reference to toxicity criteria and points of departure, including, but not limited to, section 5.2 and the conclusions that rely on such testimony in sections 6.3–6.4, section 7, appendix D, and appendix E: Bailey Reps. (Bladder Cancer) [DE-490-6, DE-490-9, DE-490-10, DE-490-11, DE-490-12]; (Kidney Cancer) [DE-494-6, DE-494-7, DE-494-8, DE-494-9, DE-494-10]; (Leukemia) [DE-497-1, DE-497-2, DE-497-3, DE-497-4, DE-497-5]; (Non-Hodgkin's Lymphoma) [DE-490-8, DE-500-6, DE-500-7, DE-500-8, DE-500-9]; (Parkinson's Disease) [DE-503-6, DE-503-7, DE-503-8, DE-503-9, DE-503-10]. The court DENIES AS MOOT PLG's motion for leave to file a response [DE-816].

SO ORDERED the 5th day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge