IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-CV-897

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAMP LEJEUNE WATER LITIGATION ) | |
| ) | O R D E R |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ALL CASES ) | |

This matter is before the court on the Plaintiffs' Leadership Group's ("PLG" or "Plaintiffs") motion to strike Dr. Julie Goodman's untimely and improper supplemental expert reports [DE-724] on the basis that the supplemental expert disclosures violate the court's pretrial scheduling order. Defendant responded in opposition, [DE-740], and the PLG replied [DE-794]. For the following reasons, the court grants the PLG's motion.

I. Background

This motion arises in connection with expert discovery under the Camp Lejeune Justice Act ("CLJA"), Pub. L. No. 117-168, § 804, 135 Stat. 1759, 1802–04. The CLJA authorizes individuals exposed to contaminated water at Marine Corps Base Camp Lejeune between August 1, 1953, and December 31, 1987, to seek appropriate relief. *Id.* § 804(b).

To promote efficient resolution of this consolidated litigation, the court entered and thereafter revised a pretrial scheduling order governing phased expert discovery. *See* [DE-270; DE-312; DE-332; DE-414; DE-630]. Expert discovery has proceeded in three phases: Phase I (water contamination), Phase II (general causation), and Phase III (specific causation, damages, and residual issues). *Id.* Defendant's Phase II expert disclosures were due February 7, 2025. *See*

[DE-414] 3.

On February 7, 2025, Defendant disclosed five Phase II expert reports authored by Dr. Goodman (collectively, "February Reports"). *See* Goodman Reps. (Bladder Cancer) [DE-463-14]; (Kidney Cancer) [DE-464-15]; (Leukemia) [DE-465-7]; (Non-Hodgkin's Lymphoma) [DE-466-11]; (Parkinson's Disease) [DE-467-17]. Within the February Reports, Dr. Goodman included attachments that offered "summary tables" to summarize epidemiology and animal carcinogenicity studies she considered for each Track 1 illness (collectively, "February Tables"). *See* Goodman Decl. [DE-686-2] ¶ 8 ("In addition to the body of my reports, I also included appendices containing numerous tables that summarized relevant information from the studies, including study quality, study characteristics, and study results."); *see, e.g.*, Goodman Rep. (Bladder Cancer) [DE-463-14] 148–325 (Attachments B–K). Plaintiffs deposed Dr. Goodman on April 29, 2025, and questioned Dr. Goodman about the February Reports and inconsistencies in the February Tables within the February Reports. *See* Goodman Dep. Tr. [DE-471-1] 230:22–259:13. Phase II expert discovery closed May 14, 2025. *See* [DE-414] 3. On June 13, 2025, Dr. Goodman signed an errata sheet to her deposition transcript. *See* [DE-471-2].

On September 10, 2025, Plaintiffs filed a motion to exclude Dr. Goodman's opinions under Federal Rule of Evidence 702 ("Motion to Exclude"). *See* [DE-621]. On November 10, 2025, Defendant filed its response to Plaintiffs' Motion to Exclude. *See* [DE-686]. As part of Defendant's response, Defendant submitted a signed declaration from Dr. Goodman contending to correct errors in her February Tables. *See* Goodman Decl. [DE-686-2] ¶¶ 9, 14. Attached to her declaration were "corrected tables" and exhibits that visually depict the changes made (collectively, "November Tables"). *See* [DE-686-3–686-12]. Together, Dr. Goodman's November Tables made approximately 300 changes to her February Reports. *See* Feb. 13, 2026

2

Hr'g Tr. [DE-812] 47:2–3. Dr. Goodman declared that "[n]one of the typographical or inadvertent errors alter or impact any of my analyses or opinions." *See* Goodman Decl. [DE-686-2] ¶ 10.

On November 19, 2025, Plaintiffs filed a motion to strike Dr. Goodman's November Tables, [DE-724], and filed a memorandum in support [DE-725]. Defendant filed a response in opposition, [DE-740], and Plaintiffs filed a reply [DE-794]. A hearing on Plaintiffs' motion was held on February 13, 2026. *See generally* Feb. 13, 2026 Hr'g Tr. [DE-812]. Plaintiffs' motion is now ripe for decision.

II. Legal Standard

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. The rule provides that a party's disclosures regarding an expert witness must include a report, which in turn must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. P. 26(a)(2)(B). The report must indicate "the testimony the witness is expected to give during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. The rules further provide, "[a] party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Under Rule 26(a)(2)(E), a party must supplement their expert disclosures when required under Rule 26(e). Rule 26(e) requires a party to supplement an expert's disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* at 26(e)(1)(A). Rule 26(e)(2) provides an additional supplementation requirement "[f]or an expert whose report must be disclosed . . . [a]ny additions or changes to [the report] must be disclosed by the party's pretrial disclosures under

3

Rule 26(a)(3) are due." *Id.* at 26(e)(2). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* at 37(c)(1). "[T]he court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." *Id.* at 37(c)(1)(C).

"[T]he court's inquiry into whether there have been any violations [of its pretrial scheduling order] is governed by Rule 16(f)." *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2025 WL 1343184, at *3 (E.D.N.C. May 8, 2025); *see* Fed. R. Civ. P. 16(f); *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002). Under Rule 16(f), if a party fails to obey a pretrial scheduling order, the court may issue "any just orders." *See* Fed. R. Civ. P. 16(f)(1)(C); *Akeva*, 212 F.R.D. at 309.

III. Discussion

Whether Plaintiffs are entitled to the requested relief is a two-part inquiry. First, the court must determine whether Defendant's disclosure of Dr. Goodman's November Tables violates the court's pretrial scheduling order. Second, if so, the court must determine what sanction, if any, is appropriate. *See In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2025 WL 2054353, at *2 (E.D.N.C. July 22, 2025); *Akeva*, 212 F.R.D. at 309; *see also* Fed. R. Civ. P. 37(c)(1) (providing a similar two-part inquiry for the exclusion of evidence not disclosed in accordance with Rule 26(a) or (e) unless the failure was substantially justified or is harmless).

Because Defendant disclosed Dr. Goodman's November Tables after the deadline for Phase II expert disclosures, whether such disclosure violates the court's pretrial scheduling order depends on whether Dr. Goodman's November Tables are proper supplements under Federal Rule

4

of Civil Procedure 26(e).

Plaintiffs argue the November Tables are untimely and improper under Rule 26 and move to strike. In response, Defendant argues Dr. Goodman's November Tables are proper supplements under Rule 26(e), and even if they are not, striking the November Tables is a severe sanction unwarranted by the *Akeva* factors.

A. Dr. Goodman's November Tables Violate the Court's Pretrial Scheduling Order

Plaintiffs argue Dr. Goodman's November Tables are not proper supplements under Rule 26 because they were not timely disclosed as required by Rule 26(e), and even if they were, the November Tables make substantive changes to many of Dr. Goodman's February Reports which exceed the scope of proper supplementation. In response, Defendant argues Dr. Goodman made her changes "after Plaintiffs' counsel pointed out some inconsistencies" and that "minor corrections make up the vast majority of [Dr. Goodman's November Tables]." *See* Def.'s Resp. [DE-740] 3. Defendant also argues the November Tables "are not a change in her opinions because her opinions are contained in her reports, not in the summary tables," *id.* at 7, and that Dr. Goodman's November Tables "did not provide any new analyses or opinions, let alone cite new facts or data." *Id.* at 10. The court agrees with Plaintiffs.

1. Dr. Goodman's November Tables Were Untimely

Rule 26(e) requires a party to supplement an expert's disclosure "*in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added); *see Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (explaining that the supplementation parameters in Rule 26(e) further the purpose of Rule 26(a) "to allow the parties

5

to adequately prepare their cases for trial and to avoid unfair surprise"). Essentially, "Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony *when the party learns of new information.*" *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 595–96 (4th Cir. 2003) (emphasis added).[1]

The deadline for Defendant to disclose Dr. Goodman's Phase II reports was February 7, 2025. *See* [DE-414] 3. Defendant timely disclosed Dr. Goodman's February Reports on February 7, 2025. *See, e.g.*, Goodman Rep. (Bladder Cancer) [DE-463-14] 2. Plaintiffs deposed Dr. Goodman on April 29, 2025, and Plaintiffs questioned Dr. Goodman at that deposition about some apparent inconsistencies in her February Reports. *See* Goodman Dep. Tr. [DE-471-1] 230:22–259:13; Goodman Decl. [DE-686-2] ¶ 9. Phase II expert discovery then closed May 14, 2025. *See* [DE-414] 3. During the approximately two weeks between Dr. Goodman's deposition and the close of Phase II expert discovery, Defendant did not supplement Dr. Goodman's February Reports nor take any other action to let Plaintiffs or the court know such supplements would be forthcoming—despite Defendant's awareness of apparent inconsistencies in the February Reports as highlighted by Plaintiffs at Dr. Goodman's deposition. *See* Pl.'s Mem. [DE-725] 14 ("At no point in these seven months did Defendant supplement Dr. Goodman's reports, or even indicate that there were corrections that needed to be made."); Goodman Dep. Tr. [DE-471-1] 230:22–259:13 (noting five studies about which the February Reports contained apparent inconsistencies).

On June 13, 2025, Dr. Goodman signed an errata sheet to her deposition transcript. *See*

---

[1] Defendant in its response cites to Federal Rule of Civil Procedure 26(e)(2), which provides in relevant part that "[f]or an expert whose report must be disclosed . . . [a]ny additions or changes to [the report] must be disclosed by the party's pretrial disclosures under Rule 26(a)(3) are due." *See* Def.'s Resp. [DE-740] 6. Rule 26(a)(3)(B) provides that "[u]nless the court orders otherwise, these disclosures must be made at least 30 days before trial." The court has not set a deadline for pretrial disclosures in its pretrial scheduling order and Track 1 trial dates have not yet been set. *See* [DE-414] 3; [DE-630] 2. However, the timeliness of a supplemental disclosure is not keyed solely to the deadline for pretrial disclosures, but rather to the overall requirement that supplementation be made "in a timely manner." *See Lightfoot v. Georgia-Pacific Wood Prods., LLC*, No. 7:16-CV-244-FL, 2018 WL 4517616, at *7 (E.D.N.C. Sept. 20, 2018) (Flanagan, J.) (citing *S. States*, 318 F.3d at 596); *see* Fed. R. Civ. P. 1.

6

[DE-471-2]. Defendant still did not take any action to correct inaccuracies in Dr. Goodman's February Reports. When on September 10, 2025, Plaintiffs filed its Motion to Exclude, *see* [DE-621], Defendant still did not disclose Dr. Goodman's November Tables to Plaintiffs. Only on November 10, 2025—over nine months after the deadline for Defendant to disclose Dr. Goodman's Phase II reports had passed and over six months after Defendant was made aware of apparent inaccuracies in Dr. Goodman's February Reports—did Defendant disclose Dr. Goodman's November Tables as exhibits attached to Defendant's response to Plaintiffs' Motion to Exclude. *See* [DE-686-3–686-12]. Defendant therefore violated Rule 26(e)(1)(A) when Defendant failed to supplement or correct Dr. Goodman's February Reports in a timely manner. *See Lightfoot*, 2018 WL 4517616, at *6 (holding plaintiff's filing of declarations directly in response to arguments raised in defendants' motions to exclude was not "in a timely manner" under Rule 26(e)); *Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC*, 365 F. App'x 432, 444 (4th Cir. 2010) (holding that where plaintiff learned of proposed testimony several days before trial but did not make that testimony known to defendant until trial, plaintiff "clearly violated Rule 26(e)" for failure to disclose in a timely manner).

In response, Defendant argues "[a]fter mistakes in her reports were brought to her attention, Dr. Goodman performed a comprehensive quality control review." Def.'s Resp. [DE-740] 1. But Defendant's statement is not entirely correct, because Plaintiffs highlighted inaccuracies in the February Reports at Dr. Goodman's deposition in April, and Defendant did not disclose the November Tables until November. And regardless, while timely disclosure of the November Tables immediately following Dr. Goodman's April deposition would have been better than Defendant's chosen course of action, that still would have violated the court's pretrial scheduling order. A party's expert is obligated to perform "a comprehensive quality control review" *before*

7

the relevant expert disclosure deadline set forth in the court's pretrial scheduling order—not in response to inaccuracies highlighted by the opposing party at a deposition months after that deadline had passed, and certainly not in response to a Rule 702 motion to exclude over nine months after that deadline had passed.

Defendant also argues that "[b]ecause many of these 'mistakes' were 'otherwise made known' to Plaintiffs during Dr. Goodman's deposition, she was not obligated to supplement her reports with regard to those errors." Def.'s Resp. [DE-740] 12 (citing Fed. R. Civ. P. 26(e)). But Dr. Goodman's November Tables—which include approximately 300 changes impacting 75 different studies—are not limited to just those five apparent inconsistencies raised by Plaintiffs at Dr. Goodman's deposition, even though Dr. Goodman testified at her deposition that she did not think there should be many more inconsistencies than those already highlighted by Plaintiffs. *See* Goodman Dep. Tr. [DE-471-1] 259:2–13; Feb. 13, 2026 Hr'g Tr. [DE-812] 47:2–3. And whether Dr. Goodman sufficiently acknowledged that those inconsistencies were indeed mistakes such that the *corrective information* had "otherwise been made known to the other parties during the discovery process or in writing" is hardly an open-and-shut case. *See* Fed. R. Civ. P. 26(e)(1)(A); Goodman Dep. Tr. [DE-471-1] 258:21–259:1 ("I think some of the perceived inconsistencies aren't actually inconsistent. In the case where there actually is a true inconsistency, I believe that is probably the most likely explanation.").

Regardless, the court rejects Defendant's suggestion that Plaintiffs' identification of apparent inconsistencies in Dr. Goodman's February Reports at an April deposition protects Defendant's ability under Rule 26(e) to correct those inconsistencies, and make hundreds of additional changes, in a November disclosure nine months after the relevant discovery deadline passed. The court therefore concludes Defendant violated Rule 26(e)(1)(A) when Defendant failed

8

to supplement or correct Dr. Goodman's Phase II reports in a timely manner.

    2.    Dr. Goodman's November Tables Exceed That Permitted Under Rule 26(e)

In addition, and in the alternative, the court briefly considers whether the substance of Dr. Goodman's November Tables exceeds that which is permitted by Rule 26(e).

"Correcting an inadvertent error or completing a report with information that was not available by the initial disclosure deadline exemplify proper supplemental reports." *Pierce v. N. Carolina State Bd. of Elections*, No. 4:23-CV-193-D, 2024 WL 5170738, at *3 (E.D.N.C. Dec. 18, 2024) (Dever, J.). However, "[c]ourts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (Dever, J.). Rule 26(e) is not a "loophole through which a party . . . who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013) (quotation omitted), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015). Rule 26(e) does not cover an expert's inadequate or incomplete preparation, because "to construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." *Akeva*, 212 F.R.D. at 310.

Plaintiffs argue many of Dr. Goodman's changes do not merely correct typographic errors but involve Dr. Goodman making judgments on studies that amount to changing her opinions. *See* Pl.'s Mem. [DE-725] 10–13. Plaintiffs also argue that Dr. Goodman's revised summary tables serve as "the factual basis for the narrative portions of her report" and that just because changes were limited to the summary tables does not mean Dr. Goodman's changes do not impact her opinions expressed in her reports which are inextricably linked with the summary tables. *See, e.g.,*

9

Pl.'s Reply [DE-794] 5. And Plaintiffs argue that the number of changes in Dr. Goodman's November Tables, when considered in totality, amount to changes that exceed those permitted by Rule 26(e). *See* Pl.'s Mem. [DE-725] 11, 17.

Defendant argues in response that Dr. Goodman's November Tables "did not provide any new analyses or opinions, let alone cite new facts or data." Def.'s Resp. [DE-740] 10. Defendant argues that the opinions expressed in Dr. Goodman's February Reports have not changed, that the only changes were to facts and figures in Dr. Goodman's February Tables, and that Dr. Goodman swore under penalty of perjury that none of the changes in Dr. Goodman's November Tables "alter or impact any of [her] analyses or opinions" and that her "overall conclusions regarding these studies did not change." *Id.* at 2 (quoting Goodman Decl. [DE-686-2] ¶¶ 10, 12). The court agrees with Plaintiffs.

First, Defendant's refrain that the separation between summary table and expert report in Dr. Goodman's February Reports means Dr. Goodman's November Tables were minor technical corrections falls flat when Defendant concedes that "[t]he determination of strengths and weaknesses often involved making judgments on borderline factors across reports for studies." *See* Def.'s Resp. [DE-740] 8. Defendant further concedes that approximately 120 of the changes in Dr. Goodman's November Tables "involve[d] changing a strength to a weakness or a weakness to a strength." Feb. 13, 2026 Hr'g Tr. [DE-812] 45:5–8. Moreover, Defendant acknowledges that the information in Dr. Goodman's November Tables "require detailed investigation into the underlying data or supplemental materials to complete each block." Def.'s Resp. [DE-740] 9. And Defendant quotes Dr. Goodman's acknowledgment that her summary tables reflect her opinions on each study's quality. *Id.* at 2–3 (quoting Goodman Rep. (Bladder Cancer) [DE-463-14] 15). Many of Defendant's "supplementations" therefore exceed that permitted by Rule 26(e), which

10

"does not cover an expert's inadequate or incomplete preparation." *See Akeva*, 212 F.R.D. at 310.

Second, even if Defendant is correct that Dr. Goodman's ultimate opinions have not changed, the changes in Dr. Goodman's November Tables are of an entirely different character than "[c]orrecting an inadvertent error or completing a report with information that was not available by the initial disclosure deadline." *See Pierce*, 2024 WL 5170738, at *3. Not only do the changes in Dr. Goodman's November Tables number approximately 300 and impact 75 different studies, but as Defendant notes, some of these changes do not merely correct typographic errors but actually change Dr. Goodman's assessment of various studies. *See* Def.'s Resp. [DE-740] 8–9 (recounting how Dr. Goodman originally stated a study controlled for race, but later realized "based on her thorough review" that the study did not control for race and that such a correction "required correcting the factor from a strength to a weakness"). In fact, approximately 120 of the changes in Dr. Goodman's November Tables "involve[d] changing a strength to a weakness or a weakness to a strength." *See* Feb. 13, 2026 Hr'g Tr. [DE-812] 45:5–8.

In correcting these 300 instances of inadvertent errors, Defendant does not contend Dr. Goodman was "completing a report with information that was not available by the initial disclosure deadline." *See Pierce*, 2024 WL 5170738, at *3. Rather, these changes—submitted in response to Plaintiffs' Motion to Exclude—treat Rule 26(e) as the "loophole through which a party . . . revise[s] her disclosures in light of her opponent's challenges" that courts routinely reject. *See Freeman*, 961 F. Supp. 2d at 797.

The court therefore concludes Defendant violated Rule 26(e)(1)(A) when Defendant failed to supplement or correct Dr. Goodman's February Reports in a timely manner. In addition, and in the alternative, the changes in Dr. Goodman's November Tables substantively exceed the supplementation permitted by Rule 26(e) and are therefore improper. Accordingly, the court must

11

now determine what sanction, if any, is appropriate.

B. Dr. Goodman's November Tables Warrant Exclusion

Federal Rule of Civil Procedure 37(c)(1) "provides for the exclusion of evidence that is not disclosed in accordance with Fed. R. Civ. P. 26, including supplemental disclosures relating to experts." *S. States*, 318 F.3d at 595. When a party "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts are accorded "broad discretion" in determining whether a party's untimely disclosure of evidence is substantially justified or harmless. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *S. States*, 318 F.3d at 597). To determine whether Dr. Goodman's November Tables were substantially justified or harmless, a court applies the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States*, 318 F.3d at 597. The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (citing *Wilkins*, 751 F.3d at 222).

In addition, when determining sanctions for violations of the pretrial scheduling order, this court has previously considered the factors set out in *Akeva*:

> (1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; (4) the availability of alternative or lesser sanctions; (5) the interest in expeditious resolution of litigation; (6) a court's need to manage its docket; and (7) public policy favoring disposition of cases on the merits.

*Akeva*, 212 F.R.D. at 311; *see In re Camp Lejeune Water Litig.*, 2025 WL 1343184, at *5–7 & n.6.

The court analyzes the present dispute under both tests.

1. Defendant's Explanation for its Failure to Timely Disclose

*Akeva* factor one and *Southern States* factor five inquire into Defendant's explanation for failure to obey the court's pretrial scheduling order and Rule 26(e). Here, Defendant does not make an explanation apparent in its response. As explained, even after Defendant missed its February 7, 2025 disclosure deadline, Defendant still had over six months between when Plaintiffs first made Defendant aware of the inconsistencies in Dr. Goodman's February Reports and when Defendant ultimately disclosed Dr. Goodman's November Tables. Defendant appears to argue in passing that it was not aware of the mistakes in Dr. Goodman's February Reports until the PLG filed its Motion to Exclude. *See* Def.'s Resp. [DE-740] 1 ("After mistakes in her reports were brought to her attention, Dr. Goodman performed a comprehensive quality control review."). But even that argument fails when Plaintiffs made Defendant aware of some apparent inconsistencies in her February Reports at Dr. Goodman's April deposition. *See* Goodman Dep. Tr. [DE-471-1] 230:22–259:13. Regardless, the parties bear the responsibility to provide accurate, complete expert disclosures that comply with the deadlines set forth in the court's pretrial scheduling order—Rule 26(e) is not a loophole and proper supplementation does not cover an expert's inadequate or incomplete preparation. *See Akeva*, 212 F.R.D. at 310. This factor weighs in favor of exclusion.

2. The Importance of Dr. Goodman's November Tables

*Akeva* factor two and *Southern States* factor four instruct the court to weigh the importance of the expert's opinion in determining what sanction to apply. Here, Defendant argues "the importance of Dr. Goodman's testimony cannot be overstated" because Dr. Goodman is "the [Defendant's] general causation expert for all five of the Track 1 illnesses." Def.'s Resp. [DE-740] 12. But Defendant's chief argument throughout its response is that nothing in Dr. Goodman's

13

November Tables alters her opinions or analyses in any way. *See, e.g., id.* at 7 ("But Dr. Goodman's opinions, which are found in the body of her reports, have not changed."), 10 ("Dr. Goodman's corrected tables did not provide any new analyses or opinions, let alone cite new facts or data."), 11 ("Dr. Goodman's analyses have not changed."). And before the court is only the decision whether to strike Dr. Goodman's November Tables, not her timely-disclosed February Reports. Even if the court accepted Defendant's argument that Dr. Goodman's November Tables are uniquely important to this case, the *Southern States* court instructs that "this factor must be viewed from the perspective of both parties," and the fact that an expert's testimony might have been helpful to the non-disclosing party's case "points out why it should have been disclosed [to the other party] in a timely manner." *S. States*, 318 F.3d at 598–99; *see Barnett v. United States*, No. 2:20-CV-02517, 2021 WL 5888542, at *5 (D.S.C. Dec. 13, 2021); *Divens v. Maust Trucking, Inc.*, 2020 WL 6060888, at *4 (W.D. Va. Oct. 14, 2020). This factor favors exclusion.

### 3. The Impact to Plaintiffs

*Akeva* factor three and *Southern States* factor one contemplate the prejudice and surprise to the party against whom the violative evidence might be offered. Defendant argues Plaintiffs "cannot show surprise" because "[a]s Plaintiffs repeatedly acknowledge, they were aware that portions of Dr. Goodman's summary tables contained mistakes." Def.'s Resp. [DE-740] 13. Defendant also asserts without explanation that Plaintiffs' prejudice is minimal. *Id.*

First, Defendant is incorrect to assert Plaintiffs were aware of the contents of Dr. Goodman's November Tables because the changes in the November Tables are not limited to the five studies Plaintiffs raised at her deposition or the four additional studies highlighted in Plaintiffs' Motion to Exclude. *See* Goodman Dep. Tr. [DE-471-1] 230:22–259:13; [DE-622] 25–31 (highlighting, in addition, inconsistencies in Dr. Goodman's February Reports regarding

14

Pukkala *et al.* (2009), Garabrant *et al.* (1988), Dagg *et al.* (1992), and Sinks *et al.* (1992)). Instead, Dr. Goodman's November Tables include changes to approximately 75 studies. *See* Feb. 13, 2026 Hr'g Tr. [DE-812] 44:14–18. Further, Dr. Goodman testified at her deposition that she did not think there would be many additional inconsistencies in her summary tables. *See* Goodman Dep. Tr. [DE-471-1] 259:2–13. And Plaintiffs affirmatively state that "the supplemental materials caught Plaintiffs by complete surprise." Pl.'s Mem. [DE-725] 17.

Second, as previously discussed, Defendant admits that approximately 120 of the changes in Dr. Goodman's November Tables "involved making *judgments* on borderline factors across reports for studies" that "require[d] detailed investigation into the underlying data or supplemental materials to complete each block." *See* Def.'s Resp. [DE-740] 8–9 (emphasis added); Feb. 13, 2026 Hr'g Tr. [DE-812] 45:5–8. Considering Defendant also acknowledges Dr. Goodman's summary tables reflect her opinions of each study's quality, Def.'s Resp. [DE-740] 2–3, it is unclear to the court how Plaintiffs' awareness of inconsistencies in nine studies cited in Dr. Goodman's February Reports would translate to Plaintiffs' awareness of Dr. Goodman's 120 changes to her evaluations of the quality of approximately 75 studies contained in Dr. Goodman's November Tables.

Third, it is to be expected that Plaintiffs are surprised because, as previously discussed, many of the changes in Dr. Goodman's November Tables plainly exceed the limits of Rule 26(e) supplementation. *See, e.g., Akeva*, 212 F.R.D. at 310. And despite having numerous opportunities to do so, Defendant repeatedly failed to timely supplement Dr. Goodman's February Reports— waiting nine months after its Phase II expert disclosure deadline and over six months after the close of Phase II expert discovery to disclose Dr. Goodman's November Tables. Plaintiffs are correct to be surprised by Defendant's untimely disclosure—submitted in response to Plaintiffs'

15

Motion to Exclude—which treats Rule 26(e) as the "loophole through which a party . . . revise[s] her disclosures in light of her opponent's challenges" that courts uniformly reject. *See Freeman*, 961 F. Supp. 2d at 797.

Fourth, contrary to Defendant's assertion that prejudice to Plaintiffs would be minimal, Plaintiffs argue prejudice would follow from permitting Dr. Goodman's November Tables because Plaintiffs would have to re-depose not only Dr. Goodman, but also individuals from Dr. Goodman's company who assisted in writing her reports and Defendant's Phase III experts that relied on Dr. Goodman's February Reports and testified that the February Reports, inclusive of the February Tables, were "more compelling" and "more thorough" than those of Plaintiffs' experts. *See* Pl.'s Mem. [DE-725] 17–18 & n.11; Pl.'s Reply [DE-794] 8–9 (citing Kates Dep. Tr. [DE-507-7] 137:23–138:13). The court also notes that Plaintiffs spent part of their limited deposition time to question Dr. Goodman on apparent inconsistencies in her February Reports and some of their page-limited Motion to Exclude identifying Dr. Goodman's mistakes, which Plaintiffs will not recover unless the court completely overhauls its pretrial scheduling order. It is expected that, were the court to permit Dr. Goodman's November Tables, Plaintiffs would need to amend the reports of rebuttal experts Plaintiffs hired to rebut Dr. Goodman's February Reports. The court also considers that all Track 1 discovery is now closed, *see* [DE-630] 2, so permitting Dr. Goodman's November Tables would require reopening discovery to allow such depositions to take place. This factor favors exclusion.

    4.    The Availability and Impact of Lesser Sanctions

*Akeva* factor four and *Southern States* factor two concern the availability of alternative or lesser sanctions and the ability of the non-disclosing party to cure the surprise. Defendant argues prejudice to Plaintiffs can be mitigated by a supplemental deposition of Dr. Goodman. *See* Def.'s

16

Resp. [DE-740] 13. Defendant's suggestion implicates *Akeva* factors five and six (the interest in expeditious resolution of litigation and a court's need to manage its docket), as well as *Southern States* factor three (the extent to which allowing the evidence would disrupt trial). The court discusses these additional three factors here.

As previously discussed, permitting Dr. Goodman's November Tables cannot be cured by simply permitting Plaintiffs to conduct a supplemental deposition of Dr. Goodman because, as Defendant argues, Dr. Goodman is "*the* [Defendant's] general causation expert for all five of the Track 1 illnesses." *See* Def.'s Resp. [DE-740] 12 (emphasis added). Were the court to permit Dr. Goodman's November Tables, providing any meaningful mitigation of the resulting prejudice caused to Plaintiffs would require the court to not only reopen discovery but to completely overhaul its pretrial scheduling order. The court, exercising its discretion, will not do so. *See Gallagher*, 568 F. Supp. 2d at 632 (granting motion to strike where "[p]laintiffs cannot cure . . . surprise without further delay and further discovery"); *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (noting the duty to supplement "does not permit a party to make an end-run around the normal timetable for conducting discovery"). Permitting Dr. Goodman's November Tables would disrupt the court's phased discovery plan and current trial schedule and would further disrupt trial by creating inconsistencies between Dr. Goodman's November Tables and the remaining evidence which was cultivated throughout Track 1 phased discovery based on Dr. Goodman's February Reports. These five factors favor exclusion.

5. Public Policy Favoring Disposition of Cases on the Merits

*Akeva* factor seven guides the court to weigh the public policy interest that favors disposition of cases on the merits. Defendant argues striking Dr. Goodman's November Tables would "only deprive the Court of the best evidence of the epidemiologic literature applicable to

17

this case." Def.'s Resp. [DE-740] 15. But Defendant's argument again contradicts its thesis that Dr. Goodman's November Tables do not alter any of Dr. Goodman's opinions or analyses contained in her February Reports. *See id.* at 7–11. Simply put, it was Defendant's obligation alone to ensure its expert produced "the best evidence of the epidemiologic literature applicable to this case" in line with the deadlines set forth in the court's pretrial scheduling order. Defendant failed repeatedly to meet its obligation for nine months, and the court will not punish Plaintiffs for Defendant's failure. The preference of public policy toward disposition of cases on the merits does not extend to support litigation gamesmanship that, if accepted, would disincentivize the information-forcing role of discovery by allowing parties to hide the ball and "supplement" expert reports at the last minute. *See Gallagher*, 568 F. Supp. 2d at 631; *Akeva*, 212 F.R.D. at 310. This factor also favors exclusion.

In sum, the court exercises its discretion under Federal Rules of Civil Procedure 37(c)(1) and 16(f)(1)(C) to strike Dr. Goodman's November Tables. In so doing, the court considers each of the *Southern States* factors and concludes that Defendant's disclosure violation was neither substantially justified nor harmless under Rule 37(c)(1). *See Wilkins*, 751 F.3d at 222 (noting the party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless). The court simultaneously considers each of the *Akeva* factors and concludes that exclusion of Dr. Goodman's November Tables is the appropriate sanction to remedy Defendant's violation of the court's pretrial scheduling order. Throughout Track 1 discovery, including during (1) Defendant's disclosure of Dr. Goodman's February Reports in February 2025, (2) Dr. Goodman's deposition in April 2025, (3) the close of Phase II expert discovery in May 2025, (4) Dr. Goodman's signing of an errata sheet to her deposition transcript in June 2025, and (5) the PLG filing its Motion to Exclude Dr. Goodman in September

18

2025, Defendant failed to disclose the changes in Dr. Goodman's November Tables.

Not only were Dr. Goodman's November Tables disclosed to Plaintiffs only after Phase II discovery closed and in response to Plaintiffs' Motion to Exclude, but the belated materials were not based on newly available information, presented changes to Dr. Goodman's judgments and evaluations of the quality of studies that are important to this litigation, and presented a quantity of "typographic corrections" not contemplated by Rule 26(e). Given Track 1 discovery is now closed and the prospective prejudice to Plaintiffs if the November Tables were permitted, the court concludes Defendant's late disclosures are not harmless. Further, Defendant has failed to provide any justification—much less a substantially justified one—for the late disclosures. The court therefore strikes Dr. Goodman's November Tables pursuant to Federal Rules of Civil Procedure 16(f)(1)(C) and 37(c)(1). *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 397–98 (4th Cir. 2014).

IV. Conclusion

The court GRANTS the PLG's motion to strike Dr. Julie Goodman's untimely and improper supplemental expert reports [DE-724]. The court STRIKES Dr. Goodman's supplemental materials attached to Defendant's response in opposition to the PLG's Rule 702 motion to exclude Dr. Goodman: [DE-686-3–686-12].

SO ORDERED the 16th day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

19