# Exhibit 640

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**No. 7:23-cv-897**

| | |
|---|---|
| **IN RE:** | ) |
| | ) |
| **CAMP LEJEUNE WATER LITIGATION** | ) |
| | ) |
| **This Document Relates to:** | ) |
| ***Criswell v. United States,* 7:23-cv-1482** | ) |
| ***Dyer v. United States,* 7:23-cv-357** | ) |
| ***Cagiano v. United States,* 7:23-cv-569** | ) |
| ***Laramore v. United States,* 7:23-cv-594** | ) |
| ***Downs v. United States*, 7:23-cv-1145** | ) |
| ***Fancher v. United States*, 7:23-cv-275** | ) |
| ***Howard v. United States*, 7:23-cv-490** | ) |
| ***Mousser v. United States*, 7:23-cv-667** | ) |
| ***Tukes v. United States*, 7:23-cv-1553** | ) |
| ***Carter v. United States*, 7:23-cv-1565** | ) |
| ***Davis v. United States*, 7:23-cv-43** | ) |
| ***Keller v. United States*, 7:23-cv-1501** | ) |
| ***Kidd v. United States*, 7:23-cv-1489** | ) |
| ***Amsler v. United States*, 7:23-cv-284** | ) |
| ***Hill v. United States*, 7:23-cv-28** | ) |
| ***Connard v. United States*, 7:23-cv-1557** | ) |
| ***Gleesing v. United States*, 7:23-cv-1486** | ) |
| ***Peterson v. United States*, 7:23-cv-1576** | ) |
| ***McElhiney v. United States*, 7:23-cv-1368** | ) |
| ***Rothchild v. United States,* 7:23-cv-858** | ) |
| ***Welch v. United States,* 7:23-cv-1503** | ) |
| ***Sparks v. United States,* 7:23-cv-682** | ) |

**THE UNITED STATES' SECOND DISCLOSURE OF EXPERT TESTIMONY FOR PHASE III PURSUANT TO FED. R. CIV. P. 26(a)(2)[1] AND D.E. 630**

[1] The parties have agreed in principle on a settlement amount in *Vidana v. United States* (7:23-cv-1575), *Fiolek v. United States* (4:23-cv-62), and *Raymond v. United States* (7:23-cv-546). Accordingly, those cases are not included in the United States' disclosures.

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and consistent with the Court's September 17, 2025, Order [D.E. 630], the United States hereby discloses the identity of witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705:

## BLADDER CANCER

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the United States hereby designates the following retained experts who are providing written reports and may be called upon to offer opinion testimony in the Track 1 Trial Cases alleging bladder cancer, including *Criswell*, *Dyer*, *Cagiano*, and *Laramore*:

1. **Tricia M. Yount, CPA, MAFF**
2. **Wang Ji, M.D.**
3. **Gregory Russo, M.H.S.**
4. **Henry Miller, Ph.D.**

On this date, the United States is serving reports for the above listed experts in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Scheduling Orders. The reports are being served upon the Plaintiffs' Leadership Group through the U.S. Department of Justice's Enterprise File Sharing System ("JEFS").

Further, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the United States also discloses the following non-retained expert witnesses in the Track 1 Trial Cases alleging bladder cancer, including *Criswell*, *Dyer*, *Cagiano*, and *Laramore,* who may provide testimony under Federal Rule of Evidence 702, 703, or 705, but are not required to provide a written report. Under Federal Rule of Civil Procedure 26(a)(2)(C), the United States now provides a description of the subject matter on which the witnesses may provide testimony under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness may testify at trial.

**1. Jadine Piper:**

Jadine Piper has served as Acting Assistant Director for Policy at the Department of Veterans Affairs ("VA"), Veterans Benefits Administration ("VBA") since March 10, 2025. She has worked at VBA for over seventeen (17) years in various positions, including Chief of Program Implementation, Management Analyst, Rating Veterans Service Representative, Veterans Service Representative, and Legal Administrative Specialist. Ms. Piper is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 about Veterans' benefits, including opinions regarding the determination of eligibility for Veterans' benefits, the continuation of VBA disability compensation benefits into the future, and whether the scope of benefits will constrict in the future. In particular, Ms. Piper is expected to support her opinions based on the following information:

A. VBA makes disability awards, payments, or benefits to Veterans in the form of disability compensation benefits and pension benefits.

B. Disability compensation benefits are made to Veterans with service-connected conditions. Service-connected conditions are those illnesses or injuries VA has determined were caused or exacerbated by active military service. For some conditions, VA is directed by law or regulation to presume that military service caused the conditions without the need for the Veteran to prove that his or her service caused the condition. Rather, the Veteran only needs to meet designated service requirements for the presumption.

C. Payments of disability compensation benefits are based on the type and severity of the Veteran's disability.

D. The amount of disability compensation benefits is determined by the Veteran's level of disability, or disability rating.

E. Over time, Congress and VBA have expanded benefits to include additional categories of benefits.

**2. Andrew McIlroy:**

Andrew McIlroy has served as the Deputy Assistant Secretary for Budget at the VA since April 2019. Mr. McIlroy also served as the Acting Deputy Assistant Secretary for Management and Deputy Chief Financial Officer for VA between July 2024 and December 2024. He served as Associate Deputy Assistant Secretary for Budget for VA between June 2018 and March 2019. Mr. McIlroy has more than two decades of experience in federal budgeting.

Mr. McIlroy is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the sources of funding of benefits programs administered by VBA. In particular, Mr. McIlroy is expected to support his opinions based on the following information:

A. VA's disability compensation and pension benefits are funded through annual Congressional appropriations.

B. These appropriations are from the general fund, meaning VA benefits are funded through general taxpayer revenues and federal borrowing.

**3. Heather Ford:**

Ms. Ford is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the Veterans Health Administration ("VHA") and Office of Integrated Veterans Care, that it is reasonable to project that VHA will continue to provide healthcare to Veterans in the future, and that the general scope of care and eligibility for care are unlikely to be significantly constricted in the future. In particular, Ms. Ford is expected to support her opinions based on the following information:

A. VHA is an integrated health care system, which provides health care to eligible Veterans and other eligible beneficiaries at over one thousand facilities.

B. The VHA's Office of Integrated Veteran Care ("IVC") is a national program office that administers the Veterans Community Care Program ("VCCP"). The Community Care Network ("CCN") is a mechanism by which some care under VCCP is provided. The VCCP allows eligible Veterans to receive health care from non-VA providers, and such care is paid for by VHA.

C. Veterans who served on active duty at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for enrollment in VHA. Enrolled veterans are eligible for hospital care and medical services under the VHA medical benefits package. Veterans who served at Camp Lejeune during the applicable time period are exempt from any VA copayment requirements for hospital care and medical services provided for fifteen (15) covered illnesses and conditions.

D. Family members of Veterans who resided at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for reimbursement of health care costs related to one or more of fifteen (15) covered illnesses and conditions.

E. VHA's activities are primarily funded through annual Congressional appropriations.

F. These appropriations are from the general fund, meaning care rendered by VHA is primarily funded through general taxpayer revenues and federal borrowing.

G. Since its creation, Congress has historically provided VHA with funding to meet projected demand.

H. Congress has not constricted eligibility for care through VHA since its establishment.

**4. Larry Young:**

Larry Young has over 35 years of experience working in the Medicare program. He currently serves as the Deputy Director and Deputy CFO of the Centers for Medicare & Medicaid Services ("CMS"), Office of Financial Management ("OFM"), a position he has held since the fall of 2023. In his position, Mr. Young is accountable for planning, directing, analyzing, and coordinating CMS's comprehensive financial management functions, including CMS's Budget to Congress. He also helps lead implementation of all CMS financial management systems, debt collection activities, error rate measurement, and other financial management functions. Before joining OFM, Mr. Young was the Director of the Medicare Contractor Management Group in CMS's Center for Medicare. In that role, which he held since November 2014, he provided executive leadership and direction ensuring continuity of operations for overall Medicare Fee-For-Service ("FFS") operations. His primary responsibilities were focused on the procurement, management, coordination, and oversight of 16 Medicare Administrative Contracts ("MACs").

Mr. Young is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the composition of the Medicare program, Medicare's sources of funding, Medicare eligibility, and the scope of Medicare benefits. In particular, Mr. Young is expected to support his opinions based on the following information:

A. Medicare is a federally funded program of health insurance for the aged, the disabled, and persons suffering from end stage renal disease ("ESRD").

B. Medicare Parts A and B (also known as Original Medicare) were established under Title XVIII of the Social Security Act in 1965. Medicare Part A helps pay for inpatient care in hospitals, skilled nursing facilities, hospice, and some outpatient home health care. Medicare Part B helps pay for items and services such as doctors' visits, physical,

occupational, and speech therapy services, home health services, outpatient hospital services, and durable medical equipment, prosthetics, orthotics, and supplies, for those who have voluntarily enrolled.

C. Additionally, Medicare Part D provides subsidized access to prescription drug insurance coverage on a voluntary basis for all enrolled beneficiaries. It also provides premium and cost-sharing subsidies for low-income enrollees. Medicare Part D went into effect on January 1, 2006.

D. To be covered under Original Medicare, an item or service must be eligible for coverage and reasonable and necessary for the diagnosis or treatment of an injury or illness. The item or service must also not be specifically excluded by the Social Security Act.

E. Medicare has two separate trust funds, the Hospital Insurance ("HI") trust fund and the Supplementary Medical Insurance ("SMI") trust fund. The HI fund supports Part A services, while the SMI fund supports Medicare Parts B and D. The HI fund is funded primarily through payroll taxes, but also income taxes, interest earned on trust fund investments, and Medicare Part A premiums collected for those not entitled premium free. The SMI fund is funded through non-payroll tax general revenues (i.e., individual income taxes, corporate taxes, excise taxes, and borrowing), in addition to premiums from individuals enrolled in Parts B and D and other sources, such as interest earned on trust fund investments.

F. Medicare Part A is available to individuals age 65 or older who are citizens or permanent residents of the United States. Part A may be available at no cost or for a premium, depending on an individual's situation. Additionally, an individual is eligible for Part A before age 65 at no cost in certain circumstances, including where the individual has been

entitled to Social Security Disability Insurance ("SSDI") benefits for 24 months. Individuals with a kidney transplant, permanent kidney failure, ESRD that requires a regular course of dialysis, or with ALS may have the 24-month waiting period waived.

G. Medicare Part B is available to individuals who are eligible for Part A at no cost by paying a monthly premium. If an individual is not eligible for Part A at no cost, they can buy Part A if they meet citizenship or residency requirements.

H. Anyone who is entitled to benefits under Part A or enrolled under Part B is eligible for voluntary prescription drug coverage under Medicare Part D.

I. Since its enactment, Medicare has expanded to include additional benefits, such as Part D. Generally speaking, since Mr. Young has been employed at CMS, benefits coverage has expanded and not constricted.

**5. Dr. Richard Ruck:**

Dr. Richard Ruck has served as Chief Medical Officer for the TRICARE Health Plan at the Defense Health Agency since September 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at Evans Army Community Hospital, Ft. Carson, from July 2018 to July 2021, and the Chief Medical Officer for the Colorado Springs Military Medical Market from December 2020 to March 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at US Army Health Clinic, Schofield Barracks from June 2015 to July 2018. He is a Board-Certified Pediatrician and Pediatric Infectious Diseases physician. Dr. Ruck served as an active-duty military physician from 1995 to 2022.

Dr. Ruck is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the history of the TRICARE program, the TRICARE program's sources of funding, that it is reasonable to project that TRICARE will continue to be funded in the future,

and that the scope of benefits is unlikely to be constricted in the future. In addition, Dr. Ruck will offer opinions as to how TRICARE coverage (a) applies to retired military personnel, (b) applies to the spouses and dependents of retired military personnel, and (c) interacts with other insurance coverage, such as Medicare. In particular, Dr. Ruck is expected to support his opinions based on the following information:

A. TRICARE is the uniformed services health care program for active duty service members, active duty family members, National Guard and Reserve members and their family members, retirees and retiree family members, survivors, and certain former spouses worldwide. Active duty service members are automatically enrolled in TRICARE Prime. All other beneficiaries must elect to enroll. TRICARE is not an insurance program, it is a statutory benefit.

B. A servicemember may become eligible for continued TRICARE coverage if he or she retired from active-duty service after twenty (20) years, or if he or she is granted medical retirement from active duty service. A servicemember's spouse and minor dependents become eligible for TRICARE coverage if the sponsoring servicemember retired from active duty service after twenty (20) years, or if the sponsoring servicemember is granted medical retirement from active duty service. The Defense Health Agency does not control TRICARE eligibility, rather, that determination is made by the military services. Eligible beneficiaries must elect to enroll in a TRICARE health plan in order to have TRICARE coverage, except for those entitled to TRICARE for Life, which is automatic upon reaching age 65.

C. TRICARE benefits are always secondary to medical insurance.

D. Absent other medical insurance, TRICARE is the primary payer until an individual reaches the age of 65, when Medicare becomes the primary payer, and TRICARE becomes secondary, supplemental ("gap") insurance.

E. Congress appropriates funds for TRICARE through the annual National Defense Authorization Act. Funding for TRICARE is sourced from general taxpayer revenues and federal borrowing.

F. Since its creation, TRICARE has expanded to include additional premium-based health benefit plans, such as TRICARE Reserve Select, TRICARE Retired Reserve, and TRICARE Young Adult.

G. Congress has not constricted TRICARE or its predecessor program, CHAMPUS, since their establishment.

H. The cost of a TRICARE plan depends on the plan.

I. TRICARE premiums and cost-shares, as well as annual adjustments where applicable, are statutory in nature.

J. Beneficiaries get medical care in three ways: (1) direct care through a military treatment facility; (2) network/participating providers; or (3) non-participating providers.

K. Network/participating providers include a network of providers established by the Managed Care Support contractor who has agreed to accept patients enrolled in TRICARE and has agreed to accept the established reimbursement rates.

**<u>KIDNEY CANCER</u>**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the United States hereby designates the following retained experts who are providing written reports and may be called

upon to offer opinion testimony in the Track 1 Trial Cases alleging kidney cancer, including *Downs*, *Fancher*, *Howard,*[2] *Mousser*, and *Tukes*:

1. **Tricia M. Yount, CPA, MAFF**

2. **Wang Ji, M.D.**

3. **Gregory Russo, M.H.S.**

4. **Henry Miller, Ph.D.**

On this date, the United States is serving reports for the above listed experts in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Scheduling Orders. The reports are being served upon the Plaintiffs' Leadership Group through JEFS.

Further, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the United States also discloses the following non-retained expert witnesses in the Track 1 Trial Cases alleging kidney cancer, including *Downs*, *Fancher*, *Howard*, *Mousser*, and *Tukes*, who may provide testimony under Federal Rule of Evidence 702, 703, or 705, but are not required to provide a written report. Under Federal Rule of Civil Procedure 26(a)(2)(C), the United States now provides a description of the subject matter on which the witnesses may provide testimony under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness may testify at trial.

1. **Jadine Piper:**

Jadine Piper has served as Acting Assistant Director for Policy at the VBA since March 10, 2025. She has worked at VBA for over seventeen (17) years in various positions, including Chief of Program Implementation, Management Analyst, Rating Veterans Service Representative,

[2] Although Mr. Howard was subsequently diagnosed with non-Hodgkin's lymphoma after his kidney cancer diagnosis, the United States is disclosing damages experts in *Howard* only under kidney cancer, for purposes of Track 1 expert disclosures.

Veterans Service Representative, and Legal Administrative Specialist. Ms. Piper is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 about Veterans' benefits, including opinions regarding the determination of eligibility for Veterans' benefits, the continuation of VBA disability compensation benefits into the future, and whether the scope of benefits will constrict in the future. In particular, Ms. Piper is expected to support her opinions based on the following information:

A. VBA makes disability awards, payments, or benefits to Veterans in the form of disability compensation benefits and pension benefits.

B. Disability compensation benefits are made to Veterans with service-connected conditions. Service-connected conditions are those illnesses or injuries VA has determined were caused or exacerbated by active military service. For some conditions, VA is directed by law or regulation to presume that military service caused the conditions without the need for the Veteran to prove that his or her service caused the condition. Rather, the Veteran only needs to meet designated service requirements for the presumption.

C. Payments of disability compensation benefits are based on the type and severity of the Veteran's disability.

D. The amount of disability compensation benefits is determined by the Veteran's level of disability, or disability rating.

E. Over time, Congress and VBA have expanded benefits to include additional categories of benefits.

**2. Andrew McIlroy:**

Andrew McIlroy has served as the Deputy Assistant Secretary for Budget at the VA since April 2019. Mr. McIlroy also served as the Acting Deputy Assistant Secretary for Management

and Deputy Chief Financial Officer for VA between July 2024 and December 2024. He served as Associate Deputy Assistant Secretary for Budget for VA between June 2018 and March 2019. Mr. McIlroy has more than two decades of experience in federal budgeting.

Mr. McIlroy is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the sources of funding of benefits programs administered by VBA. In particular, Mr. McIlroy is expected to support his opinions based on the following information:

A. VA's disability compensation and pension benefits are funded through annual Congressional appropriations.

B. These appropriations are from the general fund, meaning VA benefits are funded through general taxpayer revenues and federal borrowing.

**3. Heather Ford:**

Ms. Ford is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the VHA and Office of Integrated Veterans Care, that it is reasonable to project that VHA will continue to provide healthcare to Veterans in the future, and that the general scope of care and eligibility for care are unlikely to be significantly constricted in the future. In particular, Ms. Ford is expected to support her opinions based on the following information:

A. VHA is an integrated health care system, which provides health care to eligible Veterans and other eligible beneficiaries at over one thousand facilities.

B. The VHA's Office of IVC is a national program office that administers the VCCP. The CCN is a mechanism by which some care under VCCP is provided. The VCCP allows eligible Veterans to receive health care from non-VA providers, and such care is paid for by VHA.

C. Veterans who served on active duty at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for enrollment in VHA. Enrolled veterans are

eligible for hospital care and medical services under the VHA medical benefits package. Veterans who served at Camp Lejeune during the applicable time period are exempt from any VA copayment requirements for hospital care and medical services provided for fifteen (15) covered illnesses and conditions.

D. Family members of Veterans who resided at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for reimbursement of health care costs related to one or more of fifteen (15) covered illnesses and conditions.

E. VHA's activities are primarily funded through annual Congressional appropriations.

F. These appropriations are from the general fund, meaning care rendered by VHA is primarily funded through general taxpayer revenues and federal borrowing.

G. Since its creation, Congress has historically provided VHA with funding to provide necessary health care to meet projected demand.

H. Congress has not constricted eligibility for care through VHA since its establishment.

**4. Larry Young:**

Larry Young has over 35 years of experience working in the Medicare program. He currently serves as the Deputy Director and Deputy CFO of CMS OFM, a position he has held since the fall of 2023. In his position, Mr. Young is accountable for planning, directing, analyzing, and coordinating CMS's comprehensive financial management functions, including CMS's Budget to Congress. He also helps lead implementation of all CMS financial management systems, debt collection activities, error rate measurement, and other financial management functions. Before joining OFM, Mr. Young was the Director of the Medicare Contractor Management Group in CMS's Center for Medicare. In that role, which he held since November 2014, he provided executive leadership and direction ensuring continuity of operations for overall Medicare FFS

operations. His primary responsibilities were focused on the procurement, management, coordination, and oversight of 16 MACs.

Mr. Young is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the composition of the Medicare program, Medicare's sources of funding, Medicare eligibility, and the scope of Medicare benefits. In particular, Mr. Young is expected to support his opinions based on the following information:

A. Medicare is a federally funded program of health insurance for the aged, the disabled, and persons suffering from ESRD.

B. Medicare Parts A and B (also known as Original Medicare) were established under Title XVIII of the Social Security Act in 1965. Medicare Part A helps pay for inpatient care in hospitals, skilled nursing facilities, hospice, and some outpatient home health care. Medicare Part B helps pay for items and services such as doctors' visits, physical, occupational, and speech therapy services, home health services, outpatient hospital services, and durable medical equipment, prosthetics, orthotics, and supplies, for those who have voluntarily enrolled.

C. Additionally, Medicare Part D provides subsidized access to prescription drug insurance coverage on a voluntary basis for all enrolled beneficiaries. It also provides premium and cost-sharing subsidies for low-income enrollees. Medicare Part D went into effect on January 1, 2006.

D. To be covered under Original Medicare, an item or service must be eligible for coverage and reasonable and necessary for the diagnosis or treatment of an injury or illness. The item or service must also not be specifically excluded by the Social Security Act.

E. Medicare has two separate trust funds, the HI trust fund and the SMI trust fund. The HI fund supports Part A services, while the SMI fund supports Medicare Parts B and D. The HI fund is funded primarily through payroll taxes, but also income taxes, interest earned on trust fund investments, and Medicare Part A premiums collected for those not entitled premium free. The SMI fund is funded through non-payroll tax general revenues (i.e., individual income taxes, corporate taxes, excise taxes, and borrowing), in addition to premiums from individuals enrolled in Parts B and D and other sources, such as interest earned on trust fund investments.

F. Medicare Part A is available to individuals age 65 or older who are citizens or permanent residents of the United States. Part A may be available at no cost or for a premium, depending on an individual's situation. Additionally, an individual is eligible for Part A before age 65 at no cost in certain circumstances, including where the individual has been entitled to SSDI benefits for 24 months. Individuals with a kidney transplant, permanent kidney failure, ESRD that requires a regular course of dialysis, or with ALS may have the 24-month waiting period waived.

G. Medicare Part B is available to individuals who are eligible for Part A at no cost by paying a monthly premium. If an individual is not eligible for Part A at no cost, they can buy Part A if they meet citizenship or residency requirements.

H. Anyone who is entitled to benefits under Part A or enrolled under Part B is eligible for voluntary prescription drug coverage under Medicare Part D.

I. Since its enactment, Medicare has expanded to include additional benefits, such as Part D. Generally speaking, since Mr. Young has been employed at CMS, benefits coverage has expanded and not constricted.

**5. Dr. Richard Ruck:**

Dr. Richard Ruck has served as Chief Medical Officer for the TRICARE Health Plan at the Defense Health Agency since September 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at Evans Army Community Hospital, Ft. Carson, from July 2018 to July 2021, and the Chief Medical Officer for the Colorado Springs Military Medical Market from December 2020 to March 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at US Army Health Clinic, Schofield Barracks from June 2015 to July 2018. He is a Board-Certified Pediatrician and Pediatric Infectious Diseases physician. Dr. Ruck served as an active-duty military physician from 1995 to 2022.

Dr. Ruck is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the history of the TRICARE program, the TRICARE program's sources of funding, that it is reasonable to project that TRICARE will continue to be funded in the future, and that the scope of benefits is unlikely to be constricted in the future. In addition, Dr. Ruck will offer opinions as to how TRICARE coverage (a) applies to retired military personnel, (b) applies to the spouses and dependents of retired military personnel, and (c) interacts with other insurance coverage, such as Medicare. In particular, Dr. Ruck is expected to support his opinions based on the following information:

A. TRICARE is the uniformed services health care program for active duty service members, active duty family members, National Guard and Reserve members and their family members, retirees and retiree family members, survivors, and certain former spouses worldwide. Active duty service members are automatically enrolled in TRICARE Prime. All other beneficiaries must elect to enroll. TRICARE is not an insurance program, it is a statutory benefit.

B. A servicemember may become eligible for continued TRICARE coverage if he or she retired from active duty service after twenty (20) years, or if he or she is granted medical retirement from active duty service. A servicemember's spouse and minor dependents become eligible for TRICARE coverage if the sponsoring servicemember retired from active duty service after twenty (20) years, or if the sponsoring servicemember is granted medical retirement from active duty service. The Defense Health Agency does not control TRICARE eligibility, rather, that determination is made by the military services. Eligible beneficiaries must elect to enroll in a TRICARE health plan in order to have TRICARE coverage, except for those entitled to TRICARE for Life, which is automatic upon reaching age 65.

C. TRICARE benefits are always secondary to medical insurance.

D. Absent other medical insurance, TRICARE is the primary payer until an individual reaches the age of 65, when Medicare becomes the primary payer, and TRICARE becomes secondary, supplemental ("gap") insurance.

E. Congress appropriates funds for TRICARE through the annual National Defense Authorization Act. Funding for TRICARE is sourced from general taxpayer revenues and federal borrowing.

F. Since its creation, TRICARE has expanded to include additional premium-based health benefit plans, such as TRICARE Reserve Select, TRICARE Retired Reserve, and TRICARE Young Adult.

G. Congress has not constricted TRICARE or its predecessor program, CHAMPUS, since their establishment.

H. The cost of a TRICARE plan depends on the plan.

I. TRICARE premiums and cost-shares, as well as annual adjustments where applicable, are statutory in nature.

J. Beneficiaries get medical care in three ways: (1) direct care through a military treatment facility; (2) network/participating providers; or (3) non-participating providers.

K. Network/participating providers include a network of providers established by the Managed Care Support contractor who has agreed to accept patients enrolled in TRICARE and has agreed to accept the established reimbursement rates.

## NON-HODGKIN'S LYMPHOMA

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the United States hereby designates the following retained experts who are providing written reports and may be called upon to offer opinion testimony in the Track 1 Trial Cases alleging non-Hodgkin's lymphoma, including *Carter*, *Davis*, *Kidd*, and *Keller*:

1. **Dubravka Tosic, Ph.D.**
2. **Wang Ji, M.D.**
3. **Gregory Russo, M.H.S.**

On this date, the United States is serving reports for the above listed experts in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Scheduling Orders. The reports are being served upon the Plaintiffs' Leadership Group through JEFS.

Further, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the United States also discloses the following non-retained expert witnesses in the Track 1 Trial Cases alleging non-Hodgkin's lymphoma, including *Carter*, *Davis*, *Kidd*, and *Keller*, who may provide testimony under Federal Rule of Evidence 702, 703, or 705, but are not required to provide a written report. Under Federal Rule of Civil Procedure 26(a)(2)(C), the United States now provides a description

of the subject matter on which the witnesses may provide testimony under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness may testify at trial.

**1. Jadine Piper:**

Jadine Piper has served as Acting Assistant Director for Policy at the VBA since March 10, 2025. She has worked at VBA for over seventeen (17) years in various positions, including Chief of Program Implementation, Management Analyst, Rating Veterans Service Representative, Veterans Service Representative, and Legal Administrative Specialist. Ms. Piper is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 about Veterans' benefits, including opinions regarding the determination of eligibility for Veterans' benefits, the continuation of VBA disability compensation benefits into the future, and whether the scope of benefits will constrict in the future. In particular, Ms. Piper is expected to support her opinions based on the following information:

A. VBA makes disability awards, payments, or benefits to Veterans in the form of disability compensation benefits and pension benefits.

B. Disability compensation benefits are made to Veterans with service-connected conditions. Service-connected conditions are those illnesses or injuries VA has determined were caused or exacerbated by active military service. For some conditions, VA is directed by law or regulation to presume that military service caused the conditions without the need for the Veteran to prove that his or her service caused the condition. Rather, the Veteran only needs to meet designated service requirements for the presumption.

C. Payments of disability compensation benefits are based on the type and severity of the Veteran's disability.

D. The amount of disability compensation benefits is determined by the Veteran's level of disability, or disability rating.

E. Over time, Congress and VBA have expanded benefits to include additional categories of benefits.

**2. Andrew McIlroy:**

Andrew McIlroy has served as the Deputy Assistant Secretary for Budget at the VA since April 2019. Mr. McIlroy also served as the Acting Deputy Assistant Secretary for Management and Deputy Chief Financial Officer for VA between July 2024 and December 2024. He served as Associate Deputy Assistant Secretary for Budget for VA between June 2018 and March 2019. Mr. McIlroy has more than two decades of experience in federal budgeting.

Mr. McIlroy is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the sources of funding of benefits programs administered by VBA. In particular, Mr. McIlroy is expected to support his opinions based on the following information:

A. VA's disability compensation and pension benefits are funded through annual Congressional appropriations.

B. These appropriations are from the general fund, meaning VA benefits are funded through general taxpayer revenues and federal borrowing.

**3. Heather Ford:**

Ms. Ford is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the VHA and Office of Integrated Veterans Care, that it is reasonable to project that VHA will continue to provide healthcare to Veterans in the future, and that the general scope of care and eligibility for care are unlikely to be significantly constricted in the future. In particular, Ms. Ford is expected to support her opinions based on the following information:

A. VHA is an integrated health care system, which provides health care to eligible Veterans and other eligible beneficiaries at over one thousand facilities.

B. The VHA's Office of IVC is a national program office that administers the VCCP. The CCN is a mechanism by which some care under VCCP is provided. The VCCP allows eligible Veterans to receive health care from non-VA providers, and such care is paid for by VHA.

C. Veterans who served on active duty at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for enrollment in VHA. Enrolled veterans are eligible for hospital care and medical services under the VHA medical benefits package. Veterans who served at Camp Lejeune during the applicable time period are exempt from any VA copayment requirements for hospital care and medical services provided for fifteen (15) covered illnesses and conditions.

D. Family members of Veterans who resided at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for reimbursement of health care costs related to one or more of fifteen (15) covered illnesses and conditions.

E. VHA's activities are primarily funded through annual Congressional appropriations.

F. These appropriations are from the general fund, meaning care rendered by VHA is primarily funded through general taxpayer revenues and federal borrowing.

G. Since its creation, Congress has historically provided VHA with funding to provide necessary health care to meet projected demand.

H. Congress has not constricted eligibility for care through VHA since its establishment.

**4. Larry Young:**

Larry Young has over 35 years of experience working in the Medicare program. He currently serves as the Deputy Director and Deputy CFO of CMS OFM, a position he has held

since the fall of 2023. In his position, Mr. Young is accountable for planning, directing, analyzing, and coordinating CMS's comprehensive financial management functions, including CMS's Budget to Congress. He also helps lead implementation of all CMS financial management systems, debt collection activities, error rate measurement, and other financial management functions. Before joining OFM, Mr. Young was the Director of the Medicare Contractor Management Group in CMS's Center for Medicare. In that role, which he held since November 2014, he provided executive leadership and direction ensuring continuity of operations for overall Medicare FFS operations. His primary responsibilities were focused on the procurement, management, coordination, and oversight of 16 MACs.

Mr. Young is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the composition of the Medicare program, Medicare's sources of funding, Medicare eligibility, and the scope of Medicare benefits. In particular, Mr. Young is expected to support his opinions based on the following information:

A. Medicare is a federally funded program of health insurance for the aged, the disabled, and persons suffering from ESRD.

B. Medicare Parts A and B (also known as Original Medicare) were established under Title XVIII of the Social Security Act in 1965. Medicare Part A helps pay for inpatient care in hospitals, skilled nursing facilities, hospice, and some outpatient home health care. Medicare Part B helps pay for items and services such as doctors' visits, physical, occupational, and speech therapy services, home health services, outpatient hospital services, and durable medical equipment, prosthetics, orthotics, and supplies, for those who have voluntarily enrolled.

C. Additionally, Medicare Part D provides subsidized access to prescription drug insurance

coverage on a voluntary basis for all enrolled beneficiaries. It also provides premium and cost-sharing subsidies for low-income enrollees. Medicare Part D went into effect on January 1, 2006.

D. To be covered under Original Medicare, an item or service must be eligible for coverage and reasonable and necessary for the diagnosis or treatment of an injury or illness. The item or service must also not be specifically excluded by the Social Security Act.

E. Medicare has two separate trust funds, the HI trust fund and the SMI trust fund. The HI fund supports Part A services, while the SMI fund supports Medicare Parts B and D. The HI fund is funded primarily through payroll taxes, but also income taxes, interest earned on trust fund investments, and Medicare Part A premiums collected for those not entitled premium free. The SMI fund is funded through non-payroll tax general revenues (i.e., individual income taxes, corporate taxes, excise taxes, and borrowing), in addition to premiums from individuals enrolled in Parts B and D and other sources, such as interest earned on trust fund investments.

F. Medicare Part A is available to individuals age 65 or older who are citizens or permanent residents of the United States. Part A may be available at no cost or for a premium, depending on an individual's situation. Additionally, an individual is eligible for Part A before age 65 at no cost in certain circumstances, including where the individual has been entitled to SSDI benefits for 24 months. Individuals with a kidney transplant, permanent kidney failure, ESRD that requires a regular course of dialysis, or with ALS may have the 24-month waiting period waived.

G. Medicare Part B is available to individuals who are eligible for Part A at no cost by paying a monthly premium. If an individual is not eligible for Part A at no cost, they can buy Part A if they meet citizenship or residency requirements.

H. Anyone who is entitled to benefits under Part A or enrolled under Part B is eligible for voluntary prescription drug coverage under Medicare Part D.

I. Since its enactment, Medicare has expanded to include additional benefits, such as Part D. Generally speaking, since Mr. Young has been employed at CMS, benefits coverage has expanded and not constricted.

**5. Dr. Richard Ruck:**

Dr. Richard Ruck has served as Chief Medical Officer for the TRICARE Health Plan at the Defense Health Agency since September 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at Evans Army Community Hospital, Ft. Carson, from July 2018 to July 2021, and the Chief Medical Officer for the Colorado Springs Military Medical Market from December 2020 to March 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at US Army Health Clinic, Schofield Barracks from June 2015 to July 2018. He is a Board-Certified Pediatrician and Pediatric Infectious Diseases physician. Dr. Ruck served as an active-duty military physician from 1995 to 2022.

Dr. Ruck is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the history of the TRICARE program, the TRICARE program's sources of funding, that it is reasonable to project that TRICARE will continue to be funded in the future, and that the scope of benefits is unlikely to be constricted in the future. In addition, Dr. Ruck will offer opinions as to how TRICARE coverage (a) applies to retired military personnel, (b) applies to the spouses and dependents of retired military personnel, and (c) interacts with other insurance

coverage, such as Medicare. In particular, Dr. Ruck is expected to support his opinions based on the following information:

A. TRICARE is the uniformed services health care program for active duty service members, active duty family members, National Guard and Reserve members and their family members, retirees and retiree family members, survivors, and certain former spouses worldwide. Active duty service members are automatically enrolled in TRICARE Prime. All other beneficiaries must elect to enroll. TRICARE is not an insurance program, it is a statutory benefit.

B. A servicemember may become eligible for continued TRICARE coverage if he or she retired from active duty service after twenty (20) years, or if he or she is granted medical retirement from active duty service. A servicemember's spouse and minor dependents become eligible for TRICARE coverage if the sponsoring servicemember retired from active duty service after twenty (20) years, or if the sponsoring servicemember is granted medical retirement from active duty service. The Defense Health Agency does not control TRICARE eligibility, rather, that determination is made by the military services. Eligible beneficiaries must elect to enroll in a TRICARE health plan in order to have TRICARE coverage, except for those entitled to TRICARE for Life, which is automatic upon reaching age 65.

C. TRICARE benefits are always secondary to medical insurance.

D. Absent other medical insurance, TRICARE is the primary payer until an individual reaches the age of 65, when Medicare becomes the primary payer, and TRICARE becomes secondary, supplemental ("gap") insurance.

E. Congress appropriates funds for TRICARE through the annual National Defense Authorization Act. Funding for TRICARE is sourced from general taxpayer revenues and federal borrowing.

F. Since its creation, TRICARE has expanded to include additional premium-based health benefit plans, such as TRICARE Reserve Select, TRICARE Retired Reserve, and TRICARE Young Adult.

G. Congress has not constricted TRICARE or its predecessor program, CHAMPUS, since their establishment.

H. The cost of a TRICARE plan depends on the plan.

I. TRICARE premiums and cost-shares, as well as annual adjustments where applicable, are statutory in nature.

J. Beneficiaries get medical care in three ways: (1) direct care through a military treatment facility; (2) network/participating providers; or (3) non-participating providers.

K. Network/participating providers include a network of providers established by the Managed Care Support contractor who has agreed to accept patients enrolled in TRICARE and has agreed to accept the established reimbursement rates.

## LEUKEMIA

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the United States hereby designates the following retained experts who are providing written reports and may be called upon to offer opinion testimony in the Track 1 Trial Cases alleging leukemia, including *Amsler*, *Hill*, *Connard*, and *Gleesing*:

1. **Dubravka Tosic, Ph.D.**

2. **Wang Ji, M.D.**

**3. Gregory Russo, M.H.S.**

**4. Henry Miller, Ph.D.**

On this date, the United States is serving reports for the above listed experts in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Scheduling Orders. The reports are being served upon the Plaintiffs' Leadership Group through JEFS.

Further, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the United States also discloses the following non-retained expert witnesses in the Track 1 Trial Cases alleging leukemia, including *Amsler*, *Hill*, *Connard*, and *Gleesing*, who may provide testimony under Federal Rule of Evidence 702, 703, or 705, but are not required to provide a written report. Under Federal Rule of Civil Procedure 26(a)(2)(C), the United States now provides a description of the subject matter on which the witnesses may provide testimony under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness may testify at trial.

**1. Jadine Piper:**

Jadine Piper has served as Acting Assistant Director for Policy at the VBA since March 10, 2025. She has worked at VBA for over seventeen (17) years in various positions, including Chief of Program Implementation, Management Analyst, Rating Veterans Service Representative, Veterans Service Representative, and Legal Administrative Specialist. Ms. Piper is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 about Veterans' benefits, including opinions regarding the determination of eligibility for Veterans' benefits, the continuation of VBA disability compensation benefits into the future, and whether the scope of benefits will constrict in the future. In particular, Ms. Piper is expected to support her opinions based on the following information:

A. VBA makes disability awards, payments, or benefits to Veterans in the form of disability compensation benefits and pension benefits.

B. Disability compensation benefits are made to Veterans with service-connected conditions. Service-connected conditions are those illnesses or injuries VA has determined were caused or exacerbated by active military service. For some conditions, VA is directed by law or regulation to presume that military service caused the conditions without the need for the Veteran to prove that his or her service caused the condition. Rather, the Veteran only needs to meet designated service requirements for the presumption.

C. Payments of disability compensation benefits are based on the type and severity of the Veteran's disability.

D. The amount of disability compensation benefits is determined by the Veteran's level of disability, or disability rating.

E. Over time, Congress and VBA have expanded benefits to include additional categories of benefits.

**2. Andrew McIlroy:**

Andrew McIlroy has served as the Deputy Assistant Secretary for Budget at the VA since April 2019. Mr. McIlroy also served as the Acting Deputy Assistant Secretary for Management and Deputy Chief Financial Officer for VA between July 2024 and December 2024. He served as Associate Deputy Assistant Secretary for Budget for VA between June 2018 and March 2019. Mr. McIlroy has more than two decades of experience in federal budgeting.

Mr. McIlroy is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the sources of funding of benefits programs administered by VBA. In particular, Mr. McIlroy is expected to support his opinions based on the following information:

A. VA's disability compensation and pension benefits are funded through annual Congressional appropriations.

B. These appropriations are from the general fund, meaning VA benefits are funded through general taxpayer revenues and federal borrowing.

**3. Heather Ford:**

Ms. Ford is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the VHA and Office of Integrated Veterans Care, that it is reasonable to project that VHA will continue to provide healthcare to Veterans in the future, and that the general scope of care and eligibility for care are unlikely to be significantly constricted in the future. In particular, Ms. Ford is expected to support her opinions based on the following information:

A. VHA is an integrated health care system, which provides health care to eligible Veterans and other eligible beneficiaries at over one thousand facilities.

B. The VHA's Office of IVC is a national program office that administers the VCCP. The CCN is a mechanism by which some care under VCCP is provided. The VCCP allows eligible Veterans to receive health care from non-VA providers, and such care is paid for by VHA.

C. Veterans who served on active duty at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for enrollment in VHA. Enrolled veterans are eligible for hospital care and medical services under the VHA medical benefits package. Veterans who served at Camp Lejeune during the applicable time period are exempt from any VA copayment requirements for hospital care and medical services provided for fifteen (15) covered illnesses and conditions.

D. Family members of Veterans who resided at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for reimbursement of health care costs related to one or more of fifteen (15) covered illnesses and conditions.

E. VHA's activities are primarily funded through annual Congressional appropriations.

F. These appropriations are from the general fund, meaning care rendered by VHA is primarily funded through general taxpayer revenues and federal borrowing.

G. Since its creation, Congress has historically provided VHA with funding to provide necessary health care to meet projected demand

H. Congress has not constricted eligibility for care through VHA since its establishment.

**4. Larry Young:**

Larry Young has over 35 years of experience working in the Medicare program. He currently serves as the Deputy Director and Deputy CFO of CMS OFM, a position he has held since the fall of 2023. In his position, Mr. Young is accountable for planning, directing, analyzing, and coordinating CMS's comprehensive financial management functions, including CMS's Budget to Congress. He also helps lead implementation of all CMS financial management systems, debt collection activities, error rate measurement, and other financial management functions. Before joining OFM, Mr. Young was the Director of the Medicare Contractor Management Group in CMS's Center for Medicare. In that role, which he held since November 2014, he provided executive leadership and direction ensuring continuity of operations for overall Medicare FFS operations. His primary responsibilities were focused on the procurement, management, coordination, and oversight of 16 MACs.

Mr. Young is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the composition of the Medicare program, Medicare's sources of

funding, Medicare eligibility, and the scope of Medicare benefits. In particular, Mr. Young is expected to support his opinions based on the following information:

A. Medicare is a federally funded program of health insurance for the aged, the disabled, and persons suffering from ESRD.

B. Medicare Parts A and B (also known as Original Medicare) were established under Title XVIII of the Social Security Act in 1965. Medicare Part A helps pay for inpatient care in hospitals, skilled nursing facilities, hospice, and some outpatient home health care. Medicare Part B helps pay for items and services such as doctors' visits, physical, occupational, and speech therapy services, home health services, outpatient hospital services, and durable medical equipment, prosthetics, orthotics, and supplies, for those who have voluntarily enrolled.

C. Additionally, Medicare Part D provides subsidized access to prescription drug insurance coverage on a voluntary basis for all enrolled beneficiaries. It also provides premium and cost-sharing subsidies for low-income enrollees. Medicare Part D went into effect on January 1, 2006.

D. To be covered under Original Medicare, an item or service must be eligible for coverage and reasonable and necessary for the diagnosis or treatment of an injury or illness. The item or service must also not be specifically excluded by the Social Security Act.

E. Medicare has two separate trust funds, the HI trust fund and the SMI trust fund. The HI fund supports Part A services, while the SMI fund supports Medicare Parts B and D. The HI fund is funded primarily through payroll taxes, but also income taxes, interest earned on trust fund investments, and Medicare Part A premiums collected for those not entitled premium free. The SMI fund is funded through non-payroll tax general revenues (i.e.,

individual income taxes, corporate taxes, excise taxes, and borrowing), in addition to premiums from individuals enrolled in Parts B and D and other sources, such as interest earned on trust fund investments.

F. Medicare Part A is available to individuals age 65 or older who are citizens or permanent residents of the United States. Part A may be available at no cost or for a premium, depending on an individual's situation. Additionally, an individual is eligible for Part A before age 65 at no cost in certain circumstances, including where the individual has been entitled to SSDI benefits for 24 months. Individuals with a kidney transplant, permanent kidney failure, ESRD that requires a regular course of dialysis, or with ALS may have the 24-month waiting period waived.

G. Medicare Part B is available to individuals who are eligible for Part A at no cost by paying a monthly premium. If an individual is not eligible for Part A at no cost, they can buy Part A if they meet citizenship or residency requirements.

H. Anyone who is entitled to benefits under Part A or enrolled under Part B is eligible for voluntary prescription drug coverage under Medicare Part D.

I. Since its enactment, Medicare has expanded to include additional benefits, such as Part D. Generally speaking, since Mr. Young has been employed at CMS, benefits coverage has expanded and not constricted.

**5. Dr. Richard Ruck:**

Dr. Richard Ruck has served as Chief Medical Officer for the TRICARE Health Plan at the Defense Health Agency since September 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at Evans Army Community Hospital, Ft. Carson, from July 2018 to July 2021, and the Chief Medical Officer for the Colorado Springs Military Medical Market from December

2020 to March 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at US Army Health Clinic, Schofield Barracks from June 2015 to July 2018. He is a Board-Certified Pediatrician and Pediatric Infectious Diseases physician. Dr. Ruck served as an active-duty military physician from 1995 to 2022.

Dr. Ruck is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the history of the TRICARE program, the TRICARE program's sources of funding, that it is reasonable to project that TRICARE will continue to be funded in the future, and that the scope of benefits is unlikely to be constricted in the future. In addition, Dr. Ruck will offer opinions as to how TRICARE coverage (a) applies to retired military personnel, (b) applies to the spouses and dependents of retired military personnel, and (c) interacts with other insurance coverage, such as Medicare. In particular, Dr. Ruck is expected to support his opinions based on the following information:

A. TRICARE is the uniformed services health care program for active duty service members, active duty family members, National Guard and Reserve members and their family members, retirees and retiree family members, survivors, and certain former spouses worldwide. Active duty service members are automatically enrolled in TRICARE Prime. All other beneficiaries must elect to enroll. TRICARE is not an insurance program, it is a statutory benefit.

B. A servicemember may become eligible for continued TRICARE coverage if he or she retired from active duty service after twenty (20) years, or if he or she is granted medical retirement from active duty service. A servicemember's spouse and minor dependents become eligible for TRICARE coverage if the sponsoring servicemember retired from active duty service after twenty (20) years, or if the sponsoring servicemember is granted

medical retirement from active duty service. The Defense Health Agency does not control TRICARE eligibility, rather, that determination is made by the military services. Eligible beneficiaries must elect to enroll in a TRICARE health plan in order to have TRICARE coverage, except for those entitled to TRICARE for Life, which is automatic upon reaching age 65.

C. TRICARE benefits are always secondary to medical insurance.

D. Absent other medical insurance, TRICARE is the primary payer until an individual reaches the age of 65, when Medicare becomes the primary payer, and TRICARE becomes secondary, supplemental ("gap") insurance.

E. Congress appropriates funds for TRICARE through the annual National Defense Authorization Act. Funding for TRICARE is sourced from general taxpayer revenues and federal borrowing.

F. Since its creation, TRICARE has expanded to include additional premium-based health benefit plans, such as TRICARE Reserve Select, TRICARE Retired Reserve, and TRICARE Young Adult.

G. Congress has not constricted TRICARE or its predecessor program, CHAMPUS, since their establishment.

H. The cost of a TRICARE plan depends on the plan.

I. TRICARE premiums and cost-shares, as well as annual adjustments where applicable, are statutory in nature.

J. Beneficiaries get medical care in three ways: (1) direct care through a military treatment facility; (2) network/participating providers; or (3) non-participating providers.

K. Network/participating providers include a network of providers established by the Managed Care Support contractor who has agreed to accept patients enrolled in TRICARE and has agreed to accept the established reimbursement rates.

## PARKINSON'S DISEASE

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the United States hereby designates the following retained experts who are providing written reports and may be called upon to offer opinion testimony in the Track 1 Trial Cases alleging Parkinson's disease, including *McElhiney*, *Peterson*, *Rothchild*, *Sparks*, and *Welch*:

1. **Syed Ashraf Hasan, M.D.**
2. **Andrew Brod, Ph.D.**
3. **Gregory Russo, M.H.S.**
4. **Henry Miller, Ph.D.**

On this date, the United States is serving reports for the above listed experts in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Scheduling Orders. The reports are being served upon the Plaintiffs' Leadership Group through JEFS.

Further, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the United States also discloses the following non-retained expert witnesses in the Track 1 Trial Cases alleging Parkinson's disease, including *McElhiney*, *Peterson*, *Rothchild*, *Sparks*, and *Welch*, who may provide testimony under Federal Rule of Evidence 702, 703, or 705, but are not required to provide a written report. Under Federal Rule of Civil Procedure 26(a)(2)(C), the United States now provides a description of the subject matter on which the witnesses may provide testimony under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witnesses may testify at trial.

**1. Jadine Piper:**

Jadine Piper has served as Acting Assistant Director for Policy at the VBA since March 10, 2025. She has worked at VBA for over seventeen (17) years in various positions, including Chief of Program Implementation, Management Analyst, Rating Veterans Service Representative, Veterans Service Representative, and Legal Administrative Specialist. Ms. Piper is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 about Veterans' benefits, including opinions regarding the determination of eligibility for Veterans' benefits, the continuation of VBA disability compensation benefits into the future, and whether the scope of benefits will constrict in the future. In particular, Ms. Piper is expected to support her opinions based on the following information:

A. VBA makes disability awards, payments, or benefits to Veterans in the form of disability compensation benefits and pension benefits.

B. Disability compensation benefits are made to Veterans with service-connected conditions. Service-connected conditions are those illnesses or injuries VA has determined were caused or exacerbated by active military service. For some conditions, VA is directed by law or regulation to presume that military service caused the conditions without the need for the Veteran to prove that his or her service caused the condition. Rather, the Veteran only needs to meet designated service requirements for the presumption.

C. Payments of disability compensation benefits are based on the type and severity of the Veteran's disability.

D. The amount of disability compensation benefits is determined by the Veteran's level of disability, or disability rating.

E. Over time, Congress and VBA have expanded benefits to include additional categories of benefits.

**2. Andrew McIlroy:**

Andrew McIlroy has served as the Deputy Assistant Secretary for Budget at the VA since April 2019. Mr. McIlroy also served as the Acting Deputy Assistant Secretary for Management and Deputy Chief Financial Officer for VA between July 2024 and December 2024. He served as Associate Deputy Assistant Secretary for Budget for VA between June 2018 and March 2019. Mr. McIlroy has more than two decades of experience in federal budgeting.

Mr. McIlroy is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the sources of funding of benefits programs administered by VBA. In particular, Mr. McIlroy is expected to support his opinions based on the following information:

A. VA's disability compensation and pension benefits are funded through annual Congressional appropriations.

B. These appropriations are from the general fund, meaning VA benefits are funded through general taxpayer revenues and federal borrowing.

**3. Heather Ford:**

Ms. Ford is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the VHA and Office of Integrated Veterans Care, that it is reasonable to project that VHA will continue to provide healthcare to Veterans in the future, and that the general scope of care and eligibility for care are unlikely to be significantly constricted in the future. In particular, Ms. Ford is expected to support her opinions based on the following information:

A. VHA is an integrated health care system, which provides health care to eligible Veterans and other eligible beneficiaries at over one thousand facilities.

B. The VHA's Office of IVC is a national program office that administers the VCCP. The CCN is a mechanism by which some care under VCCP is provided. The VCCP allows eligible Veterans to receive health care from non-VA providers, and such care is paid for by VHA.

C. Veterans who served on active duty at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for enrollment in VHA. Enrolled veterans are eligible for hospital care and medical services under the VHA medical benefits package. Veterans who served at Camp Lejeune during the applicable time period are exempt from any VA copayment requirements for hospital care and medical services provided for fifteen (15) covered illnesses and conditions.

D. Family members of Veterans who resided at Camp Lejeune for 30 days or more between August 1, 1953 and December 31, 1987 are eligible for reimbursement of health care costs related to one or more of fifteen (15) covered illnesses and conditions.

E. VHA's activities are primarily funded through annual Congressional appropriations.

F. These appropriations are from the general fund, meaning care rendered by VHA is primarily funded through general taxpayer revenues and federal borrowing.

G. Since its creation, Congress has historically provided VHA with funding to provide necessary health care to meet projected demand

H. Congress has not constricted eligibility for care through VHA since its establishment.

**4. Larry Young:**

Larry Young has over 35 years of experience working in the Medicare program. He currently serves as the Deputy Director and Deputy CFO of CMS OFM, a position he has held since the fall of 2023. In his position, Mr. Young is accountable for planning, directing, analyzing, and coordinating CMS's comprehensive financial management functions, including CMS's

Budget to Congress. He also helps lead implementation of all CMS financial management systems, debt collection activities, error rate measurement, and other financial management functions. Before joining OFM, Mr. Young was the Director of the Medicare Contractor Management Group in CMS's Center for Medicare. In that role, which he held since November 2014, he provided executive leadership and direction ensuring continuity of operations for overall Medicare FFS operations. His primary responsibilities were focused on the procurement, management, coordination, and oversight of 16 MACs.

Mr. Young is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the composition of the Medicare program, Medicare's sources of funding, Medicare eligibility, and the scope of Medicare benefits. In particular, Mr. Young is expected to support his opinions based on the following information:

A. Medicare is a federally funded program of health insurance for the aged, the disabled, and persons suffering from ESRD.

B. Medicare Parts A and B (also known as Original Medicare) were established under Title XVIII of the Social Security Act in 1965. Medicare Part A helps pay for inpatient care in hospitals, skilled nursing facilities, hospice, and some outpatient home health care. Medicare Part B helps pay for items and services such as doctors' visits, physical, occupational, and speech therapy services, home health services, outpatient hospital services, and durable medical equipment, prosthetics, orthotics, and supplies, for those who have voluntarily enrolled.

C. Additionally, Medicare Part D provides subsidized access to prescription drug insurance coverage on a voluntary basis for all enrolled beneficiaries. It also provides premium and cost-sharing subsidies for low-income enrollees. Medicare Part D went into effect on

January 1, 2006.

D. To be covered under Original Medicare, an item or service must be eligible for coverage and reasonable and necessary for the diagnosis or treatment of an injury or illness. The item or service must also not be specifically excluded by the Social Security Act.

E. Medicare has two separate trust funds, the HI trust fund and the SMI trust fund. The HI fund supports Part A services, while the SMI fund supports Medicare Parts B and D. The HI fund is funded primarily through payroll taxes, but also income taxes, interest earned on trust fund investments, and Medicare Part A premiums collected for those not entitled premium free. The SMI fund is funded through non-payroll tax general revenues (i.e., individual income taxes, corporate taxes, excise taxes, and borrowing), in addition to premiums from individuals enrolled in Parts B and D and other sources, such as interest earned on trust fund investments.

F. Medicare Part A is available to individuals age 65 or older who are citizens or permanent residents of the United States. Part A may be available at no cost or for a premium, depending on an individual's situation. Additionally, an individual is eligible for Part A before age 65 at no cost in certain circumstances, including where the individual has been entitled to SSDI benefits for 24 months. Individuals with a kidney transplant, permanent kidney failure, ESRD that requires a regular course of dialysis, or with ALS may have the 24-month waiting period waived.

G. Medicare Part B is available to individuals who are eligible for Part A at no cost by paying a monthly premium. If an individual is not eligible for Part A at no cost, they can buy Part A if they meet citizenship or residency requirements.

H. Anyone who is entitled to benefits under Part A or enrolled under Part B is eligible for voluntary prescription drug coverage under Medicare Part D.

I. Since its enactment, Medicare has expanded to include additional benefits, such as Part D. Generally speaking, since Mr. Young has been employed at CMS, benefits coverage has expanded and not constricted.

**5. Dr. Richard Ruck:**

Dr. Richard Ruck has served as Chief Medical Officer for the TRICARE Health Plan at the Defense Health Agency since September 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at Evans Army Community Hospital, Ft. Carson, from July 2018 to July 2021, and the Chief Medical Officer for the Colorado Springs Military Medical Market from December 2020 to March 2022. Dr. Ruck served as the Deputy Commander for Clinical Services at US Army Health Clinic, Schofield Barracks from June 2015 to July 2018. He is a Board-Certified Pediatrician and Pediatric Infectious Diseases physician. Dr. Ruck served as an active-duty military physician from 1995 to 2022.

Dr. Ruck is expected to offer testimony under Federal Rule of Evidence 702, 703, or 705 to include opinions about the history of the TRICARE program, the TRICARE program's sources of funding, that it is reasonable to project that TRICARE will continue to be funded in the future, and that the scope of benefits is unlikely to be constricted in the future. In addition, Dr. Ruck will offer opinions as to how TRICARE coverage (a) applies to retired military personnel, (b) applies to the spouses and dependents of retired military personnel, and (c) interacts with other insurance coverage, such as Medicare. In particular, Dr. Ruck is expected to support his opinions based on the following information:

A. TRICARE is the uniformed services health care program for active duty service members, active duty family members, National Guard and Reserve members and their family members, retirees and retiree family members, survivors, and certain former spouses worldwide. Active duty service members are automatically enrolled in TRICARE Prime. All other beneficiaries must elect to enroll. TRICARE is not an insurance program, it is a statutory benefit.

B. A servicemember may become eligible for continued TRICARE coverage if he or she retired from active duty service after twenty (20) years, or if he or she is granted medical retirement from active duty service. A servicemember's spouse and minor dependents become eligible for TRICARE coverage if the sponsoring servicemember retired from active duty service after twenty (20) years, or if the sponsoring servicemember is granted medical retirement from active duty service. The Defense Health Agency does not control TRICARE eligibility, rather, that determination is made by the military services. Eligible beneficiaries must elect to enroll in a TRICARE health plan in order to have TRICARE coverage, except for those entitled to TRICARE for Life, which is automatic upon reaching age 65.

C. TRICARE benefits are always secondary to medical insurance.

D. Absent other medical insurance, TRICARE is the primary payer until an individual reaches the age of 65, when Medicare becomes the primary payer, and TRICARE becomes secondary, supplemental ("gap") insurance.

E. Congress appropriates funds for TRICARE through the annual National Defense Authorization Act. Funding for TRICARE is sourced from general taxpayer revenues and federal borrowing.

F. Since its creation, TRICARE has expanded to include additional premium-based health benefit plans, such as TRICARE Reserve Select, TRICARE Retired Reserve, and TRICARE Young Adult.

G. Congress has not constricted TRICARE or its predecessor program, CHAMPUS, since their establishment.

H. The cost of a TRICARE plan depends on the plan.

I. TRICARE premiums and cost-shares, as well as annual adjustments where applicable, are statutory in nature.

J. Beneficiaries get medical care in three ways: (1) direct care through a military treatment facility; (2) network/participating providers; or (3) non-participating providers.

K. Network/participating providers include a network of providers established by the Managed Care Support contractor who has agreed to accept patients enrolled in TRICARE and has agreed to accept the established reimbursement rates.

Dated: December 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief
Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Acting Assistant Directors

*<u>/s/ Adam Bain</u>*
ADAM BAIN
Special Litigation Counsel
IN Bar No. 11134-49
States Department of Justice
Civil Division, Torts Branch
1100 L Street, NW
Washington, DC 20005
(202) 598-0930
adam.bain@usdoj.gov

*Attorneys for Defendant,*
*United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, a copy of the foregoing was served on the following persons via email:

J. Edward Bell, III
jeb@belllegalgroup.com

Mike Dowling
mike@dowlingfirm.com

Whitney Wallace-Williams
wwallace@wallacegraham.com

Jenna Butler
jfb@wrdandsmith.com

Leslie Lamacchia
llamacchia@belllegalgroup.com

Devin Bolton
dbolton@weitzlux.com

Diana Gjonaj
djonaj@weitzlux.com

*/s/ Adam Bain*
ADAM BAIN