IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP LEJEUNE WATER LITIGATION | ) | |
| | ) | **ORDER** |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| ALL CASES | ) | |

On January 27, 2026, the Plaintiffs' Leadership Group ("PLG" or "plaintiffs") moved in limine to preclude certain offset evidence [D.E. 805] and filed a memorandum in support [D.E. 806]. On February 17, 2026, the United States of America ("defendant") responded in opposition [D.E. 813]. On March 3, 2026, the PLG replied [D.E. 819]. As explained below, Chief Judge Myers, Judge Boyle, and Judge Dever grant in part the PLG's motion. Judge Flanagan will separately resolve these issues in her cases.

I.

In August 2022, Congress enacted and President Biden signed the Camp Lejeune Justice Act of 2022 ("CLJA"). See Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04. On August 10, 2022, the CLJA became effective. The CLJA reads in relevant part:

> (e) EXCLUSIVE REMEDY.—
>
> (1) IN GENERAL.— An individual, or legal representative of an individual, who brings an action under this section for a harm described in subsection (b), including a latent disease, may not thereafter bring a tort action against the United States for such harm pursuant to any other law.
>
> (2) HEALTH AND DISABILITY BENEFITS RELATING TO WATER EXPOSURE.—Any award made to an individual, or legal representative of an individual, under this section shall be offset by the amount of any disability award, payment, or benefit provided to

the individual, or legal representative—

    (A) under—

        (i) any program under the laws administered by the Secretary of Veterans Affairs;

        (ii) the Medicare program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.); or

        (iii) the Medicaid program under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.); and

    (B) in connection with health care or a disability relating to exposure to the water at Camp Lejeune.

CLJA § 804(e).

The parties dispute the meaning of several words and phrases in subsection 804(e)(2) about offsets and which offset evidence is relevant under the Federal Rules of Evidence. To interpret the CLJA, the court will "examine the ordinary meaning of the CLJA's statutory text," "interpret specific provisions of the CLJA within their broader statutory context," and "apply certain canons of construction." In re Camp Lejeune Water Litig., 715 F. Supp. 3d 761, 766 (E.D.N.C. 2024) (collecting cases), mandamus denied sub nom. In re McBrine, No. 24-1542, 2024 WL 5237643 (4th Cir. Aug. 23, 2024) (mem.), cert. denied, 145 S. Ct. 2682 (2025). "In interpreting the plain language of a statute, terms are given their 'ordinary, contemporary, common meaning, absent an indication Congress intended [them] to bear some different import.'" In re Camp Lejeune Water Litig., 736 F. Supp. 3d 311, 318 (E.D.N.C. 2024) (quoting N.C. ex rel. Cooper v. Tenn. Valley Auth., 515 F.3d 344, 351 (4th Cir. 2008)). "[U]nless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." Id. (citation omitted); see Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002); In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004). Moreover, the court will "not pause to consider whether a statute differently

conceived and framed would yield results more consonant" with its own notions of fairness or justice—"[w]e take the statute as we find it." <u>Anderson v. Wilson,</u> 289 U.S. 20, 27 (1933).

II.

A motion in limine to exclude evidence allows the court to "avoid injecting into trial matters which are irrelevant, inadmissible, or unfairly prejudicial." <u>United States v. Jones,</u> No. 5:15-CR-324, 2016 WL 5818534, at *1 (E.D.N.C. Oct. 4, 2016) (unpublished) (cleaned up). But the court should grant the motion "only when the evidence is clearly inadmissible on all potential grounds." <u>Silicon Knights, Inc. v. Epic Games, Inc.,</u> No. 5:07-CV-275, 2011 WL 5439156, at *1 (E.D.N.C. Nov. 8, 2011) (unpublished) (citations omitted). "[A] court is almost always better situated during the actual trial to assess the value and utility of evidence." <u>Id.</u> (citation omitted).

Federal Rule of Evidence 401 governs the relevance of evidence. <u>See</u> Fed. R. Evid. 401. Under Rule 401, evidence is relevant only when "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." <u>Id.</u> Irrelevant evidence is inadmissible. <u>See</u> Fed. R. Evid. 402. "Relevance is typically a low bar to the admissibility of evidence, even though other Federal Rules of Evidence may otherwise limit such admissibility." <u>Jones v. Ford Motor Co.,</u> 204 F. App'x 280, 283 (4th Cir. 2006) (unpublished). One such rule otherwise limiting the admissibility of relevant evidence is Rule 403, which allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; <u>see</u> <u>United States v. Williams,</u> 445 F.3d 724, 730 (4th Cir. 2006). Application of Rule 403 presupposes that the subject evidence is relevant. <u>See</u> <u>id.</u> The task is to "balanc[e] the probative value of and need for the evidence against the harm likely to result from its

3

admission." Fed. R. Evid. 403 advisory committee's note. At bottom, admissibility is within the district court's discretion, made "broad[er]" when balancing under Rule 403. <u>United States v. Sanders</u>, 107 F.4th 234, 255 (4th Cir. 2024), <u>cert. denied</u>, 145 S. Ct. 1434 (2025); <u>see</u> <u>Gibbons v. Gibbs</u>, 167 F.4th 131, 141 (4th Cir. 2026); <u>United States v. Udeozor</u>, 515 F.3d 260, 264–65 (4th Cir. 2008); <u>United States v. Melton</u>, 970 F.2d 1328, 1336 (4th Cir. 1992); <u>United States v. Simpson</u>, 910 F.2d 154, 157 (4th Cir. 1990).

The PLG asks the court to exclude offset evidence of (1) future sums, (2) sums from sources not identified in subsection 804(e)(2) of the CLJA, (3) sums above or not categorically equivalent to claimed damages, and (4) past medical expenses paid by statutorily-identified programs. <u>See</u> [D.E. 805] 1–2. The PLG argues that such evidence is barred by subsection 804(e)(2), irrelevant under Rule 401, or outweighed under Rule 403. <u>See</u> [D.E. 806] 10–23; CLJA § 804(e)(2); Fed. R. Evid. 401, 403. Defendant does not contest excluding offset evidence of sums from sources not identified in subsection 804(e)(2),[1] but argues the other sum categories are relevant and statutorily allowed. <u>See</u> [D.E. 813] 8–32. The court proceeds through each disputed category.

A.

The PLG moves to exclude offset "evidence of any award, payment, or benefit that has not already been provided to the [p]laintiff at the time an award [of damages] is made." [D.E. 805] 1. The PLG argues that the CLJA allows offsets only for "the amount of any disability award,

---

[1] The plain text of subsection 804(e)(2) limits offsets, in relevant part, to sums provided "under[] (i) any program under the laws administered by the Secretary of Veterans Affairs; (ii) the Medicare program under title XVIII of the Social Security Act . . . ; or (iii) the Medicaid program under title XIX of the Social Security Act." CLJA § 804(e)(2). The PLG moves in part to exclude offset evidence of sums from other sources like TRICARE, which defendant joins as "merit[ed]." [D.E. 813] 11; <u>see</u> <u>id.</u> at 8, 12 & n.3. The court agrees as to sums from sources not identified in subsection 804(e)(2) of the CLJA and will follow the "plain and unambiguous" text. <u>Barnhart</u>, 534 U.S. at 450.

4

payment, or benefit provided" to plaintiffs under certain government programs, and that "provided" is a past-tense verb that necessarily only looks backward. [D.E. 806] 11 (citation omitted). Thus, the PLG argues that any future sum cannot be an offset under the CLJA. See id. at 12–13. Alternatively, the PLG argues that "offsets based on speculative future benefits are imprecise and unjust," and that the court should exclude associated evidence as irrelevant and prejudicial under Rules 401, 402, and 403. Id. at 13; see id. at 14.

"[W]e start where we always do: with the text of the statute." Van Buren v. United States, 593 U.S. 374, 381 (2021). Subsection 804(e)(2) provides that damages awarded under the CLJA "shall be offset by the amount of any disability award, payment, or benefit provided to the individual, or legal representative—(A) under [the designated programs]; and (B) in connection with health care or a disability relating to exposure to the water at Camp Lejeune." CLJA § 804(e)(2).

The language beginning with "provided" is a past-participial adjectival phrase modifying the preceding noun phrase "disability award, payment, or benefit." And it presents ambiguity. Past participles (like "provided") are "an uncommonly flexible [linguistic] device." Bernal v. NRA Grp., LLC, 930 F.3d 891, 895 (7th Cir. 2019). They "can either refer to a completed event or describe the present state of the nouns they modify, depending on context." United States v. Hendrickson, 949 F.3d 95, 98 (3d Cir. 2020) (cleaned up). But when used in an adjectival phrase "to describe the present state of a noun, the past participle gives no indication of the relative timing of events." EB5 Holdings Inc. v. Edlow, 166 F.4th 1106, 1111 (D.C. Cir. 2026) (cleaned up) (analyzing "designated"); see Henson v. Santander Consumer USA Inc., 582 U.S. 79, 84 (2017) (analyzing "owed"); Regions Hosp. v. Shalala, 522 U.S. 448, 458 (1998) (analyzing "recognized as reasonable"); Bello v. Gacki, 94 F.4th 1067, 1072 (D.C. Cir. 2024) (analyzing "designated");

5

Cela v. Garland, 75 F.4th 355, 365 n.11 (4th Cir. 2023) (analyzing "granted"); Gentiva Health Servs., Inc. v. Becerra, 31 F.4th 766, 775–76 (D.C. Cir. 2022) (analyzing "amount of payment made"); Hendrickson, 949 F.3d at 98 (analyzing "used"); Bernal, 930 F.3d at 895 (analyzing "incurred"); United States v. Funke, 846 F.3d 998, 1001 (8th Cir. 2017) (same); County of Los Angeles v. Shalala, 192 F.3d 1005, 1013 (9th Cir. 1999) (analyzing "payments made"); U.S. Dep't of the Treasury v. FLRA, 960 F.2d 1068, 1072 (D.C. Cir. 1992) (analyzing "adversely affected").

In other words, "provided" is a past participle in "an adjectival phrase, not a verbial phrase indicating the past tense, and hence allows alternative temporal readings." FLRA, 960 F.2d at 1072. Nor does the adjacent text convert "provided" into a temporal limitation. Clause (A)'s "under [the designated programs]" language identifies the source of a qualifying award, payment, or benefit. Clause (B)'s "in connection with [Camp Lejeune water exposure]" language identifies the required subject-matter connection. These clauses speak to source and subject matter—not timing. See CLJA § 804(e)(2)(A)–(B); Ardestani v. INS, 502 U.S. 129, 135 (1991); Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs., 143 F.4th 1331, 1339 (11th Cir. 2025). The PLG's past-tense authorities do not alter this conclusion. Rather, they address finite verbs or statutory phrasing that more directly fixes the time of the relevant act. See [D.E. 806] 11–12 (citing G.T. v. Bd. of Educ. of the Cnty. of Kanawha, 117 F.4th 193, 213 (4th Cir. 2024) (Wynn, J., concurring in part and dissenting in part); id. at 207 & n.9 (majority opinion); United States v. Drake, 64 F.4th 220, 227 (4th Cir. 2023); and Cawthorn v. Amalfi, 35 F.4th 245, 258 (4th Cir. 2022)). Subsection 804(e)(2) uses "provided" differently.

The surrounding statutory text reinforces a tenseless reading. The CLJA states that the court "shall" offset "any" damages award with "any" qualifying disability award, payment, or benefit. CLJA § 804(e)(2). "Shall" is mandatory. "Any" is expansive. See Babb v. Wilkie, 589

6

U.S. 399, 405 n.2 (2020) ("We have repeatedly explained that the word 'any' has an expansive meaning." (cleaned up)); Smith v. Berryhill, 587 U.S. 471, 479 (2019) ("Congress'[s] use of the word 'any' suggests an intent to use that term expansively." (cleaned up)); Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 219 (2008) ("[R]ead naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (cleaned up)); Bernal, 930 F.3d at 893 ("As the Supreme Court recently reiterated, the word 'any' signifies breadth."); United States v. Ickes, 393 F.3d 501, 504 (4th Cir. 2005) (explaining that the "word 'any' is a term of great breadth" (citation omitted)); United States v. Maxwell, 285 F.3d 336, 341 (4th Cir. 2002). "[A]bsent limiting language, 'any' should mean 'any'" and include future awards, payments, or benefits. Bernal, 930 F.3d at 896. Subsection 804(e)(2) contains offset source and subject-matter limits. It does not contain the temporal limit that the PLG asks the court to impose.

Allowing evidence of future qualifying offsets also does not render "provided" superfluous. Subsection 804(e)(2) identifies allowable offsets as "any disability award, payment, or benefit provided to the individual, or legal representative" both "under [the designated programs]" and "in connection with [exposure at Camp Lejeune]." CLJA § 804(e)(2). Thus, the "provided" adjectival phrase defines the class of qualifying awards, payments, or benefits. See, e.g., Bernal, 930 F.3d at 896 (noting the phrase "incurred by us in attempting to collect" is not a costs temporal limit but explains "what the costs are for and who is paying them").

The statutory context points the same way. Subsection 804(e)(1) makes CLJA damages the exclusive tort remedy. See CLJA § 804(e)(1). But Congress did not preclude a claimant's continued receipt of future Camp Lejeune-related sums through the U.S. Department of Veterans Affairs ("VA"), Medicare, or Medicaid. See id. Indeed, many claimants have received, are receiving, or will continue to receive federal medical care and disability awards. See [D.E. 813]

7

22 n.6. Thus, the PLG's proposed temporal cutoff would sometimes permit the very double recovery that offset provisions are often designed to prevent. Cf. Carbon Fuel Co. v. Off. of Workers' Comp. Programs, U.S. Dep't of Lab., 20 F.3d 120, 122 (4th Cir. 1994) (holding that an offset provision "reduce[d] federal benefits by the amount of any state award . . . to avoid the duplication of [state] benefits by [federal] benefits" (cleaned up)); Cuthbert v. Sec'y, Dep't of Health & Hum. Servs., 784 F.2d 1157, 1160 (4th Cir. 1985) (per curiam) ("By enactment of the windfall offset provision, the Congress demonstrated its intention to prevent fortuitous double recoveries."). The court sees no textual basis to deduct a qualifying sum provided one day before final judgment but categorically ignore a qualifying sum reasonably certain to issue one day after final judgment.

Alternatively, if any ambiguity remains over the temporal scope of subsection 804(e)(2), the provision is a condition on defendant's waiver of sovereign immunity and must be construed in favor of defendant. "The sovereign immunity clear statement canon provides that if a defendant enjoys sovereign immunity (as the United States does), abrogation requires an unequivocal declaration from Congress." In re Camp Lejeune Water Litig., 715 F. Supp. 3d at 766 (citation omitted); see Welch v. United States, 409 F.3d 646, 650–51 (4th Cir. 2005) ("All waivers of sovereign immunity must be strictly construed in favor of the sovereign." (cleaned up)). "A corollary to the sovereign immunity clear statement canon is that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." In re Camp Lejeune Water Litig., 715 F. Supp. 3d at 766–67 (cleaned up) (collecting cases). Subsection 804(e)(2) defines a limitation on defendant's monetary exposure under the CLJA. See id.; see Lane v. Pena, 518 U.S. 187, 192 (1996) ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must

8

extend unambiguously to such monetary claims."). Thus, any residual ambiguity does not justify narrowing subsection 804(e)(2) against defendant.

Having decided that the term "provided" does not convert subsection 804(e)(2) into a backward-looking provision, the PLG asks that the court still exclude as irrelevant and prejudicial any offset evidence supporting inherently "speculative future benefits" because such offsets would be "imprecise and unjust." [D.E. 806] 13. The court rejects this characterization of what its ruling allows. The court decides only that subsection 804(e)(2) does not categorically bar evidence of future qualifying awards, payments, or benefits. Defendant still must show that any proposed future offset is sufficiently certain and calculable. Defendant acknowledges as much. See [D.E. 813] 22 ("At trial, [defendant] will have to prove that future offsets are reasonably probable and not speculative (as well as the amount of those offsets) . . . ."). Moreover, courts routinely assess future sums when calculating offsets and preventing double recovery. See, e.g., Reilly v. United States, 863 F.2d 149, 163 (1st Cir. 1998); Steckler v. United States, 549 F.2d 1372, 1375–78 (10th Cir. 1977); United States v. Brooks, 176 F.2d 482, 484 (4th Cir. 1949); Harris-Reese v. United States, 615 F. Supp. 3d 336, 377 (D. Md. 2022); Lawson v. United States, No. 3-CV-884, 2007 WL 9782519, at *3 (D. Md. Mar. 30, 2007) (unpublished); Burke v. United States, 605 F. Supp. 981, 992–93 (D. Md. 1985); O'Keefe v. United States, 490 F. Supp. 79, 81–84 (W.D. Okla. 1980); cf. Brooks v. United States, 337 U.S. 49, 53 (1949); United States v. Price, 288 F.2d 448, 449 (4th Cir. 1961). Thus, the court declines to exclude all evidence of future offsets at this stage. Such evidence is not categorically irrelevant under Rule 401 or categorically inadmissible under Rule 403, and the court will be "better situated during the actual trial[s] to assess [its] value and utility." Silicon Knights, Inc., 2011 WL 5439156, at *1.

9

**B.**

As for categorical equivalence, the PLG moves to exclude offset "evidence supporting an offset to be applied against anything other than the equivalent category of claimed damages, or in an amount beyond the amount of equivalent claimed damages." [D.E. 805] 2. The PLG argues, for example, that "disability benefits should not be offset against damages for pain and suffering." Id. In support, the PLG argues offsets exist to prevent double recovery, and that no such risk exists where a plaintiff seeks a different or lower amount of damages than any prior sum received. See [D.E. 806] 15–19. Thus, the PLG asks the court to exclude evidence supporting a non-equivalent or excess offset as irrelevant. See id.

Subsection 804(e)(2) provides that "[a]ny award made to an individual, or legal representative of an individual, under this section shall be offset by the amount of any disability award, payment, or benefit" which satisfies the provision's source and subject-matter requirements. CLJA § 804(e)(2). Thus, the "plain and unambiguous" text requires the court to offset "[a]ny" CLJA award by the amount of "any" qualifying sum. Barnhart, 534 U.S. at 450. As discussed, "any" is an expansive term. See, e.g., Smith, 587 U.S. at 479; Maxwell, 285 F.3d at 341 ("'[A]ny' means 'all.'"). And "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) (citation omitted); see In re Camp Lejeune Water Litig., 736 F. Supp. 3d at 318.

The CLJA does not say that offsets apply only against an equivalent category of damages.[2] Nor does it say that a qualifying disability award, payment, or benefit may offset a CLJA award

---

[2] To the extent the PLG relies on the court's observation that "VA benefits and potential tort damages differ in kind, not degree," In re Camp Lejeune Water Litig., 736 F. Supp. 3d at 327, that statement addressed the CLJA's causation language in subsections 804(b) and (c), not the

10

only up to the amount a plaintiff claims in a corresponding damages category. Instead, Congress chose award-level language: "[a]ny award" under the CLJA "shall be offset by the amount of any" qualifying award, payment, or benefit. CLJA § 804(e)(2). The court will not replace that language with a category-by-category offset scheme. Moreover, the term "offset" itself does not import such a scheme. Contra Pl.'s Mem. [D.E. 806] 17–18.[3] Whatever background meaning "offset" may carry, it does not override the plain text. Congress specified here both the base against which the offset applies ("[a]ny award" under the CLJA) and the amount to be deducted ("the amount of any" qualifying disability, payment, or benefit). CLJA § 804(e)(2). That enacted language controls.

The PLG also argues the court should follow cases deciding offsets under the Federal Tort Claims Act ("FTCA"). See [D.E. 806] 16–18. But those cases do not overcome the CLJA's text. The FTCA does not contain an offset provision equivalent to subsection 804(e)(2), and several of the PLG's cited cases reason from the absence of statutory offset language. See [D.E. 813] 26 & n.7. In the CLJA, however, Congress enacted an express and comprehensive offset provision. Thus, whatever force FTCA offset practice may have in the absence of statutory direction, the

---

offset language in subsection 804(e)(2). See [D.E. 806] 8, 16–17. Thus, it does not supply a categorical-equivalence requirement otherwise absent from subsection 804(e)(2).

[3] The PLG argues that in Sloas v. CSX Transp., Inc., 616 F.3d 380, 389 (4th Cir. 2010), the court categorically "h[eld] that an offset requires a defendant to show that the plaintiff would otherwise receive 'double payment' of the same type of compensation." [D.E. 819] 9. Sloas concerned an appeal of a district court's decision to not offset a damages award after a general verdict under the Federal Employers' Liability Act, and reasoned that, "On the facts in this case, it is not reasonable for us to assume the jury accorded [plaintiff] the full measure of his requested award for past lost wages. [Defendant], therefore, cannot meet its burden of demonstrating that the denial of an offset would provide [plaintiff] with double payment for his past lost wages." Sloas, 616 F.3d at 389 (cleaned up). The court is not persuaded that this dictum imports a categorical-equivalence requirement into the CLJA's plain text. Notably, the Supreme Court "has long stressed that the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." Brown v. Davenport, 596 U.S. 118, 141 (2022) (cleaned up).

11

court must follow the CLJA as enacted. See, e.g., In re Camp Lejeune Water Litig., 736 F. Supp. 3d at 318.

The court also will not narrow subsection 804(e)(2) based on the general purpose of offsets. Even if offsets ordinarily serve to prevent double recovery, the "question . . . is not what Congress 'would have wanted' but what Congress enacted." Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992). Congress created a new cause of action in the CLJA, but that cause of action is not boundless and does not make every plaintiff-favorable limitation part of the statute. In subsection 804(e)(2), Congress chose to limit recovery through an express offset provision tied to "[a]ny award" and "any" qualifying disability award, payment, or benefit. CLJA § 804(e)(2). The text controls, and the court will not impose an extratextual categorical-equivalence requirement or require defendant to "prove[]" a separate "risk of double recovery" before offering otherwise qualifying offset evidence. Pl.'s Mem. [D.E. 806] 18. Furthermore, because subsection 804(e)(2) does not contain a categorical-equivalence requirement, the court denies PLG's motion to exclude as irrelevant evidence supporting an offset that fails to satisfy such a requirement.

C.

As for medical expenses, the PLG moves to exclude offset "evidence of a [p]laintiff's past medical expenses that were paid by the government programs" in subsection 804(e)(2)(A). [D.E. 805] 2. The PLG argues that "[s]uch damages and corresponding offsets will always match and zero out," and thus "[b]ecause any recovery for past medical expenses . . . will be offset in full, the exact amount of such past medical expenses is irrelevant, and any disputes about such amounts will waste the time and resources of the parties and the [c]ourt." Id.; see [D.E. 806] 20–21.

Although sharing a desire to streamline this litigation, the court declines the PLG's invitation to assume away issues of proof. At this stage, the court will not assume that claimed

12

damages and corresponding past medical expenses offsets for care paid by the VA, Medicare, or Medicaid and related to Camp Lejeune water exposure will necessarily "match and zero out." [D.E. 805] 2. Damages and offsets are distinct matters of proof. Plaintiffs bear the burden of proving their damages. Defendant bears the burden of proving any statutory offset. The possibility that the same medical expenses might be relevant to both inquiries does not relieve either side of its burden or make associated evidence categorically irrelevant or a waste of resources.

The PLG's request is also premature. The parties do not agree about which medical expenses: (1) plaintiffs may claim, (2) the government provided under a listed program, (3) relate to Camp Lejeune water exposure, or (4) otherwise qualify under subsection 804(e)(2). See, e.g., [D.E. 813] 31. Evidence about these expenses may help resolve these disputes. Thus, the court will not categorically exclude evidence that might bear on the existence, amount, source, or qualification of past medical expenses, because such evidence is not plainly irrelevant under Rule 401 or inadmissible under Rule 403. The court will resolve specific objections as raised at trial.

## III.

In sum, Chief Judge Myers, Judge Boyle, and Judge Dever GRANT IN PART plaintiffs' motion in limine [D.E. 805] to the extent it seeks to exclude offset evidence of awards, payments, or benefits from sources not listed in subsection 804(e)(2), and otherwise DENY the motion. Subsection 804(e)(2) contains source and subject-matter limits, and Chief Judge Myers, Judge Boyle, and Judge Dever will enforce those limits. But they will not impose additional temporal, categorical-equivalence, or proof-collapsing limits Congress did not enact. Judge Flanagan will separately resolve these issues in her cases.

13

SO ORDERED. This 5 day of June, 2026.

RICHARD E. MYERS II
Chief United States District Judge

TERRENCE W. BOYLE
United States District Judge

JAMES C. DEVER III
United States District Judge

14