IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | | |
|---|---|---|
| IN RE: | ) | **REPLY IN SUPPORT OF** |
| CAMP LEJEUNE WATER LITIGATION | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **PARTIAL SUMMARY JUDGMENT** |
| This Document Relates to: | ) | **REGARDING FUTURE OFFSETS** |
| | ) | **[D.E. 860]** |
| ALL CASES | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.     Defendant attacks a legal standard Plaintiffs do not advocate; the governing standard is whether future offsets are sufficiently certain and calculable. ........................ 2

     A.     Plaintiffs do not assert that future benefits must be "absolutely certain." ............. 2

     B.     Courts applying similar legal standards routinely decline to offset the kind of speculative future benefits sought by Defendant. ............................................... 3

     C.     Claims for future damages are distinct from claims for offsets based on anticipated future benefits. ....................................................................................... 5

II.     There is no genuine dispute of material fact that Defendant's asserted offsets are not sufficiently certain and calculable. ................................................................................ 6

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brown v. United States*,
No. 3:17-CV-551, 2020 WL 6811121 (S.D. Miss. May 13, 2020) ...........................................2

*Feindt v. United States*,
No. 22-cv-00397, 2025 WL 1348465 (D. Haw. May 7, 2025)....................................................6

*Harris-Reese v. United States*,
615 F. Supp. 3d 336 (D. Md. 2022) ...........................................................................................6

*Laskowski v. U.S. Dep't of Veterans Affs.*,
918 F. Supp. 2d 301 (M.D. Pa. 2013) ................................................................................4, 5, 9

*Lawson v. United States*,
454 F. Supp. 2d 373 (D. Md. 2006) ...........................................................................................5

*Poirier v. United States*,
745 F. Supp. 23 (D. Me. 1990) ..............................................................................................4, 9

*Simms v. United States*,
No. 3:11-0932, 2017 WL 3317417 (S.D.W.V. Aug. 3, 2017)......................................3, 4, 8, 9

*United States v. Brooks*,
176 F.2d 482 (4th Cir. 1949) .....................................................................................................4

## **INTRODUCTION**

The Camp Lejeune Justice Act was enacted to provide just compensation to those harmed by the toxic water at Camp Lejeune. Defendant seeks to eliminate the relief awarded, in whole or in part, based on amounts that may (or may not) be paid by government programs in the future.[1] Plaintiffs' memorandum in support of their motion for partial summary judgment regarding future offsets ("Mem.") asks the Court to resolve a straightforward legal question on a materially undisputed factual record: whether Defendant's speculative future offsets are sufficiently certain and calculable to support reducing the awards Plaintiffs may receive.

Defendant's Opposition ("Opp.") does not genuinely dispute the factual premises of Plaintiffs' motion. It instead challenges a legal standard Plaintiffs did not propose and asserts that the existence of some evidence that the Medicare Program, the Medicaid Program, the Veterans Benefits Administration ("VBA"), and the Veterans Health Administration ("VHA") may continue in some form creates triable issues of fact. Defendant's attempt to manufacture a factual dispute on an invented legal standard to defeat summary judgment fails. As explained in Section I below, the legal standard is straightforward: Defendant must prove that its claimed offsets are sufficiently certain and calculable. And as explained in Section II below, the undisputed factual record—drawn overwhelmingly from the testimony of Defendant's own experts—establishes that Defendant cannot meet that standard as a matter of law. Accordingly, and as detailed below, Plaintiffs' motion should be granted.[2]

---

[1] For example, Defendant seeks in excess of $1,444,000.00 in offsets as to Kidney plaintiff Mousser. Of this amount, $1,135,640 is for alleged future disability payments and medical care. Claimed future offsets also exceed $1,000,000 for Parkinsons plaintiffs McElhiney, Peterson, and Sparks. Recovery of such substantial offsets could nullify any award under the CLJA entirely.

[2] Streamlining these issues now serves the legitimate interests of the parties and the Court, especially in facilitating global resolution. To the extent that evidence of claimed future offsets is deemed admissible at trial, Plaintiffs intend, and reserve all rights, to claim equivalent damages at trial.

**ARGUMENT**

**I.**     <u>Defendant attacks a legal standard Plaintiffs do not advocate; the governing standard is whether future offsets are sufficiently certain and calculable.</u>

Defendant's brief mischaracterizes Plaintiffs' legal position, asserting that Plaintiffs wrongfully demand that Defendant prove the "absolute certainty" or "guarantee" of any future offsets. Opp. at 14-22. Consistent with this Court's order and the case law, Plaintiffs' motion instead argues that Defendant must show that its proposed future offsets are sufficiently certain and calculable. D.E. 885 at 9 ("Order"). This is the appropriate legal standard, and Defendant does not meet it.

    **A.**     **Plaintiffs do not assert that future benefits must be "absolutely certain."**

Plaintiffs consistently invoke the well-established legal standard that future benefits are impermissible when they are too speculative. Defendant mischaracterizes Plaintiffs' position as demanding an impossible-to-meet standard of demonstrating that future benefits are "a guarantee" or "absolutely certain." Opp. at 14. But Plaintiffs frame their argument around whether benefits are "too uncertain to support an offset as a matter of law." Mem. at 2.

Contrary to Defendant's repeated assertions, Plaintiffs' motion does not hinge on the words "absolute certainty" or "guarantee." Opp. at 13-14. Plaintiffs used the word "guarantee" primarily in quotations from case law or from depositions of Defendant's own witnesses discussing the uncertainty of future benefits, and <u>not</u> to establish "guarantee" as an affirmative legal standard. *See, e.g.*, Mem. at 7-8 (quoting *Brown v. United States*, No. 3:17-CV-551, 2020 WL 6811121, at *11 (S.D. Miss. May 13, 2020)) ("there is no guarantee that the program will continue to exist, or that it will continue to exist in its current form, for the remainder of [the plaintiff's] life expectancy."); *see also* Mem. at 8, 9, 13, 14, 18, 20, 21.

More importantly, the very authorities Defendant faults Plaintiffs for quoting expressly

2

apply the correct legal standard. *See id*. at 8 (quoting *Simms v. United States*, No. 3:11-0932, 2017 WL 3317417, at *5 (S.D.W.V. Aug. 3, 2017) ("These concerns may not come to fruition, but the current political climate at least suggests that these benefits cannot be guaranteed *to a reasonable degree of certainty* in the future.") (emphasis added). Both Plaintiffs and the cases on which they rely apply the settled standard requiring sufficient or reasonable certainty.

Outside of quotations, any other uses of "guarantee" allude to the uncontroverted fact that the future benefits Defendant bases its claimed offsets on may not be available. Defendant's quip that "it is possible that an asteroid could hit the United States, thus causing societal collapse and ending future benefits," Opp. at 16, is a non-response that ignores Plaintiffs' record-based testimony from Defendant's own experts. To bring this back to earth, Plaintiffs do not argue that the theoretical possibility of change defeats any offset; Plaintiffs argue that this record shows indisputably that the asserted future benefits are "speculative and insufficiently reliable." Mem. at 17. An asteroid probably will not hit the Earth, but cuts or changes to Medicare funding, eligibility, or benefit levels, by contrast, are real contingencies acknowledged by Defendant's own witnesses and reflected in the authorities Plaintiffs cite.

B. **Courts applying similar legal standards routinely decline to offset the kind of speculative future benefits sought by Defendant.**

Contrary to Defendant's claims, Plaintiffs and the cases they cite support the Court's standard requiring Defendant to show that any future offset is "sufficiently certain and calculable." D.E. 885 at 9. In fact, the cited cases frequently acknowledged that future benefits could continue or even could be calculated. But courts still declined to grant future offsets because the requisite degree of certainty was not met on the record before them.

Courts routinely refuse offsets for future government benefits that are not sufficiently certain. *See, e.g.*, *Simms*, 2017 WL 3317417, at *5 ("the current political climate at least suggests

3

that these benefits cannot be guaranteed to a reasonable degree of certainty in the future");
*Laskowski v. U.S. Dep't of Veterans Affs.*, 918 F. Supp. 2d 301, 329 (M.D. Pa. 2013) ("we agree with the plaintiff that a setoff for non-guaranteed future monthly disability benefits is inappropriate"); *Poirier v. United States*, 745 F. Supp. 23, 33 (D. Me. 1990) ("the court is hesitant to reduce plaintiffs' award in this case by any future benefits from the VA in light of the uncertainty of those benefits."). None of these courts required proof that future benefits would certainly terminate. Rather, each concluded that documented uncertainties - including Congress's ability to amend benefit programs, funding concerns, eligibility determinations, provider availability, and the plaintiff's freedom to seek private care meant future benefits were not sufficiently certain to justify an offset.

Defendant's cited cases do not dispute that courts can reject offsets that are insufficiently certain and calculable. Defendant cites *United States v. Brooks*, 176 F.2d 482, 484 (4th Cir. 1949), as supposedly rejecting Plaintiffs' "core argument." Opp. at 16-17. *Brooks*, however, allows a court to use "its best judgment after all the facts and circumstances of the case have been taken into consideration." 176 F.2d at 484. Indeed, in *Simms*, Defendant attempted the same argument about *Brooks*, and the Court found that the "facts and circumstances of this case, combined with the hostile political climate surrounding the future of Medicaid … weighs in favor of finding uncertainty with the future of guaranteed benefits." *Simms*, 2017 WL 3317417, at *5. Thus, while *Brooks* rejects an absolute certainty standard, it does not require courts to allow speculative future offsets. It instead requires an examination of the record before the Court. Here, the undisputed record demonstrates that Defendant cannot establish its proposed future offsets with sufficient certainty.

**C.** **Claims for future damages are distinct from claims for offsets based on anticipated future benefits.**

Damages and offsets are both forward-looking, but a plaintiff's entitlement to future damages and a defendant's entitlement to an offset for anticipated future benefits are analytically distinct. Although Defendant claims "the fundamental legal principles of damages" justify its offsets (Opp. at 20), courts routinely find that future damages and future offsets are governed by different standards and different burdens.

Future damages apply a "reasonable certainty" standard, which requires plaintiffs to prove only that the injury will continue into the future and that certain care will be reasonably necessary. As explained in *Laskowski*, "a plaintiff must prove damages to a 'reasonable certainty,'" but "[o]nce a plaintiff has established damages to a reasonable certainty, if the defendant seeks to then lower the amount of damages it must produce evidence to demonstrate the proper reduction." 918 F. Supp. 2d at 329. This asymmetry is a deliberate policy choice: "the risk of uncertainty should be placed on the wrongdoer, rather than the innocent party." *Id.* Therefore, "expected future benefits" may be offset, but "uncertain future benefits" may not be. *Id.* at 330. Like in *Laskowski*, "[i]t is the future, uncertain, possible but not guaranteed, benefits that are at issue here" and an offset "would not be making plaintiff whole." *Id.*

Because it is the defendant's burden to prove offsets, a future offset claim premised on speculative benefits fails even where the plaintiff's parallel future damages claim succeeds. This means that courts routinely award substantial future damages while simultaneously refusing to grant the government an offset for anticipated future benefits. *See, e.g.*, *id.* at 333 (awarding the plaintiff $2,144,803 in future loss of earnings and $700,000 in future non-economic damages, but denying an offset for non-guaranteed future monthly disability benefits); *Lawson v. United States*, 454 F. Supp. 2d 373, 410 (D. Md. 2006) (awarding future medical care at $3,724,423, but

declining to award offsets for speculative future benefits); *Feindt v. United States*, No. 22-cv-00397, 2025 WL 1348465, at \*1 (D. Haw. May 7, 2025) (awarding special damages for future medical expenses to certain plaintiffs while declining to award offsets). Even where courts granted limited future offsets, they separated the reasonably certain portion of the benefit from the speculative portion—underscoring that the offset analysis is distinct from, and more demanding on the defendant than, the damages analysis for the plaintiff. *See, e.g.*, *Harris-Reese v. United States*, 615 F. Supp. 3d 336, 377–78 (D. Md. 2022) (awarding $11,626,161 in future medical expenses while only offsetting benefits through the end of the service member's known enlistment period, and expressly declining to offset benefits expected thereafter).

## II. <u>There is no genuine dispute of material fact that Defendant's asserted offsets are not sufficiently certain and calculable.</u>

To prove that its claimed offsets are sufficiently certain, Defendant must show it is sufficiently certain that (1) the programs providing the benefits will continue to exist in their current form; (2) that Plaintiffs will continue to receive and have access to the same benefits as they receive now under those programs; and (3) that Plaintiffs will continue to receive benefits in the projected amount. The undisputed testimony of Defendant's own experts establishes that Defendant cannot prove the foregoing with sufficient certainty.

At most, Defendant's evidence shows that certain government programs are likely to continue in some form. It does not establish reasonable certainty that *these Plaintiffs* will receive the same benefits, in the same amounts, over the projected time period. The only experts who quantified future offsets are economists who have no specialized knowledge of the programs they opine about and did not analyze plaintiff-specific issues. Defendant's healthcare-cost expert, Dr. Henry Miller, offered no opinion on whether current reimbursement rates would remain applicable throughout Plaintiffs' projected lifetimes, whether Plaintiffs would remain eligible for

6

the programs, which program would ultimately pay, or whether Defendant's economists accurately projected future offsets. Like Dr. Miller, VBA expert, Jadine Piper, described the VBA's general policies, but did not opine that any particular Track 1 Plaintiff would retain their current disability rating, or receive disability benefits in the projected amounts throughout the relevant period. While Defendant's experts describe how these programs generally operate, none supplied the plaintiff-specific facts necessary to support Defendant's claimed future offsets.

Defendant repeatedly asserts that summary judgment is inappropriate because genuine disputes of fact exist. Opp. at 22-30. But Defendant conflates the question of whether a program might continue to exist in some form with the question of whether future benefits to specific Plaintiffs are sufficiently certain and calculable to justify a particular offset. Demonstrating that Medicare, the VBA, or VHA is likely to continue existing is not the same as demonstrating that Plaintiffs are sufficiently likely to receive the same benefits, from the same programs, in the projected amounts, for the remainder of the relevant period.

Defendant emphasizes that its agency experts expressed general confidence in the continued existence of Medicare and benefits under the VA. For example, Defendant highlights Mr. Young's testimony that "it's very reasonable to expect that the [Medicare] program is going to continue into the future," and Ms. Ford's opinion that "VHA will continue to provide healthcare to Veterans in the future." Opp. at 6-7; Resp. SOMF ¶¶ 11, 46-47. That evidence, however, addresses only whether the programs are likely to continue, not whether Defendant can establish that *these Plaintiffs* are reasonably likely to receive the future benefits and projected amounts reflected in its economists' offset calculations. General expectations that programs will "continue" in some form are not the same as evidence that specific benefits are reasonably likely to be paid to specific Plaintiffs in specific amounts sufficient to justify a precise claimed offset.

7

**Future Medicare Expenses to Plaintiffs**. First, as to Medicare, Defendant does not dispute that the Hospital Insurance trust fund is "facing several headwinds and challenges in terms of its being able to continue to be financially solvent" and could be "depleted by 2033." SUMF ¶ 150; Resp. SOMF ¶ 150. Dr. Miller agreed that "the funding issue affecting Medicare is a concern in the short term…meaning within the life expectancy of the plaintiffs in this litigation," and that if assets are depleted, it is possible that "the full schedule of benefits would not be able to be paid under the program." SUMF ¶¶ 286, 160.

None of Defendant's witnesses offer a plaintiff-specific opinion regarding those future Medicare benefits. Defendant emphasizes Dr. Miller's testimony that "it is likely that the Medicare program will continue to operate at least similarly to what it does now." Resp. SOMF ¶¶ 102; 280. Defendant also notes that Mr. Young testified "it's very reasonable to expect that the [Medicare] program is going to continue into the future," and there are "different things" Congress "could elect to do" to maintain the Medicare Trust's financial viability. Opp. at 6 (quoting SUMF ¶¶ 46-47, 152, 154). Even assuming these statements provide sufficient certainty that the Medicare program will continue to exist in some form, they do not indicate whether Medicare is sufficiently likely to continue to provide the same benefits in the same amounts to these Plaintiffs. Where, as here, "there is a real concern that the extent of [Medicare] coverage will shrink in the future…these benefits cannot be guaranteed to a reasonable degree of certainty in the future." *Simms*, 2017 WL 3317417, at *6.

**Future VBA Disability Benefits to Plaintiffs**. Future VBA disability benefits are likewise insufficiently certain. Defendant notes Ms. Piper's testimony that "[i]f a veteran is…55 years or older, *unless they have a condition in which the medical evidence shows that it's temporary in nature*, we would not request a routine future examination to look at the current

state given the veteran's age." SOMF ¶ 89 (emphasis added). Ms. Piper further testified that

"'it's highly unlikely [that disability ratings for a veteran age 55 or older] would change[,]' *barring a note in a ratings decision concerning needing a future reevaluation*." *Id.* (alterations in original, emphasis added). In response to the very next question, asking how she "would know if a veteran is required to be reevaluated," Ms. Piper explained that for a condition such as "active cancer," the VA will "automatically schedule some type of routine future examination." SUMF ¶ 224. This criteria for reevaluation is directly relevant to several of the Track 1 Plaintiffs.[3]

Furthermore, Defendant's argument that disability ratings are "unlikely" to change for veterans over age 55 ignores the undisputed evidence that rating changes can and do occur for other reasons—including the critical determination of how long the veteran may live, as well as dependency status changes, such as a spouse passing away. See SUMF ¶¶ 58, 60; Resp. SOMF ¶¶ 58, 60. For these reasons, courts have found that future VA benefits are not sufficiently certain to support an offset. *See, e.g., Poirier*, 745 F. Supp. at 33 (VA benefits uncertain because "the Veterans Administration has the right to adjust its determinations as to the percentage of benefits [plaintiff] is entitled to…at anytime"); *Laskowski*, 918 F. Supp. 2d at 330 (allowing a set-off for non-guaranteed VA benefits "would not be making plaintiff whole").

Defendant's own methodology demonstrates that future VHA benefits cannot be calculated with sufficient certainty. A veteran who receives treatment at a VA facility "does not receive a bill and no money changes hands." SOMF ¶ 103. Because Defendant has no cost data from VA facilities to use in a calculation of future care and thus could not determine what the

---

[3] Indeed, with respect to Plaintiff Cagiano, who was already over 55 when he received his initial rating for prostate cancer, Defendant notes that "Plaintiff Cagiano's prostate cancer disability rating recently decreased." Opp. at 28 n.14. Rather than acknowledge the uncertainty this introduces, Defendant proposes that its "experts can simply supplement their opinions if needed" prior to trial. *Id.* The possibility of a supplement prior to trial does not alleviate the uncertainty future reevaluations have on the appropriateness of Defendant's claimed offsets, particularly given that such reevaluations may occur *after* trial. *See* Mem. at 3.

Government will actually pay, Defendant used proxy CCN reimbursement rates. *See* Opp. at 10. Dr. Miller admitted that "what the government will pay in the future for care that occurs in a VA facility…'could be higher or lower than the CCN rate, but we don't have the ability to determine that.'" SUMF ¶ 357. Defendant responds only that using the CCN rates is "conservative" because the "actual costs in VA hospitals are most often higher than the CCN rates." SOMF ¶ 357. But whether the CCN rate understates or overstates actual VA costs is beside the point. Defendant also does not dispute Mr. Clarke's testimony that the VA's cost accounting system is "variable" by facility, staffing, provider credentials, workload, and timing. SUMF ¶¶ 350-353; Resp. SOMF ¶¶ 350-353. Thus, the same oncology visit could produce a different cost assignment depending on how busy the department was that month or whether the department is run by a "nurse practitioner" or "a hematologist." SUMF ¶ 353; Resp. SOMF ¶ 353.

Finally, Defendant does not dispute that Dr. Miller gave no instruction as to the interplay between VHA, Medicare, and TRICARE for future medical services, SUMF ¶ 255; Resp. SOMF ¶ 255, and that if a veteran has coverage through "Medicare and VHA and TRICARE, the decision on who to bill for the services is really the provider's decision." SUMF ¶ 256; Resp. SOMF ¶ 256. This is especially important given that offsets are not available for care provided under TRICARE. D.E. 885 at 4, n.1. Thus, the same offsets that Defendant claims based on benefits it contends Medicare or VHA will provide would be improper if the benefits are actually provided under TRICARE—a decision that Defendant admits is incapable of any level of certainty since it is ultimately up to the provider at the time of service.

## CONCLUSION

The Court should grant Plaintiffs' motion for partial summary judgment.

10

Dated July 1, 2026.

| | |
|---|---|
| /s/    *J. Edward Bell, III* | /s/    *Elizabeth J. Cabraser* |
| J. Edward Bell, III (admitted *pro hac vice*) | Elizabeth J. Cabraser (admitted *pro hac vice*) |
| Bell Legal Group, LLC | Lieff Cabraser Heimann & Bernstein, LLP |
| 219 Ridge St. | 275 Battery Street, 29th Floor |
| Georgetown, SC 29440 | San Francisco, CA 94111 |
| Telephone: (843) 546-2408 | Telephone: (415) 956-1000 |
| jeb@belllegalgroup.com | ecabraser@lchb.com |
| | |
| *Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |
| | |
| /s/    *W. Michael Dowling* | /s/    *Robin L. Greenwald* |
| W. Michael Dowling (NC Bar No. 42790) | Robin L. Greenwald (admitted *pro hac vice*) |
| The Dowling Firm PLLC | Weitz & Luxenberg, P.C. |
| Post Office Box 27843 | 700 Broadway |
| Raleigh, NC 27611 | New York, NY 10003 |
| Telephone: (919) 529-3351 | Telephone: 212-558-5802 |
| mike@dowlingfirm.com | rgreenwald@weitzlux.com |
| | |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |
| /s/    *James A. Roberts, III* | /s/    *Mona Lisa Wallace* |
| James A. Roberts, III | Mona Lisa Wallace (N.C. Bar No.: 009021) |
| Lewis & Roberts, PLLC | Wallace & Graham, P.A. |
| 3700 Glenwood Ave., Ste. 410 | 525 North Main Street |
| Raleigh, NC 27612 | Salisbury, NC 28144 |
| Telephone: (919) 981-0191 | Tel: 704-633-5244 |
| jar@lewis-roberts.com | mwallace@wallacegraham.com |
| | |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |