# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### NO. 7:23-CV-897

IN RE:

CAMP LEJEUNE WATER LITIGATION

This Document Relates To:

ALL CASES

UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE DAMAGES OPINIONS OF MR. PETER RYBOLT

## INTRODUCTION

Mr. Peter Rybolt is a forensic economist who improperly offers non-economic and legal opinions about Veterans Benefits Administration ("VBA") regulations and policies without supporting methodology or qualifications for doing so. In an effort to defend such opinions, Plaintiffs' Leadership Group ("PLG") inserts the word "economic" over 100 times in its Opposition to the United States' motion to exclude his opinions. *See* D.E. 882. This word choice cannot cure Mr. Rybolt's improper opinions and his lack of qualifications for offering them.

Mr. Rybolt draws an arbitrary distinction between "lost earnings" and "lost earning capacity" and concludes the "Plaintiffs sought damages for lost earnings, but not lost earning capacity, while Defendant's experts calculated offsets for, as a matter of economics, lost earning capacity." *Id.* at 1. Mr. Rybolt further opines that VBA Bellwether Plaintiffs[1] would be undercompensated if VBA disability benefits were used to offset lost earnings. *Id.* First, his

---

[1] Mr. Rybolt defines the "VBA Bellwether Plaintiffs" as including Mr. Mark Antony Cagiano, Mr. Jefferson Michael Criswell, Mr. Cometto Davis, Mr. David Bester Downs, Mr. David William Fancher, Mr. Joseph Mark Gleesing, Mr. Bruce W. Hill, Mr. Allan Wayne Howard, Mr. Scott Richard Keller, Mr. Jimmy Carroll Laramore, Mr. Gary Layne McElhiney Sr., Mr. Frank Wayne Mousser, Mr. Edgar Allen Peterson, and Mr. Richard Sparks. Rybolt Rep. at 4–5, n.4 (JA Ex. 766, 840-30).

distinction between "lost earnings" and "lost earning capacity" is irrelevant as inherently part of PLG's categorical approach that was rejected by this Court in its June 5, 2026[2] Order on offsets. *Compare* PLG's Memorandum Supporting Motion in Limine on Offsets D.E. 806 at 10 ("[C]ourts apply offsets only to and against the equivalent category of claimed damages . . . . Thus, VA disability benefits provided to Plaintiffs may offset only damages for lost earning capacity, and not other damages categories . . . .") *with* Order D.E. 885 at 10-11 ("The CLJA does not say that offsets apply only against an equivalent category of damages. . . . The court will not replace that language with a category-by-category offset scheme."). Second, PLG claims that "Plaintiffs did not calculate compensation for lost earning capacity," *see* D.E. 882 at 1, but PLG's chief economist, Mr. Chad Staller, calculated lost earning capacity for numerous Plaintiffs. Third, Mr. Rybolt makes an improper legal conclusion by interpreting case law, federal statutes, and regulations to opine that VBA disability benefits are only meant to compensate lost earning capacity. Mr. Rybolt lacks the qualifications to render such an opinion. Mr. Rybolt also speculates that VBA benefits are subject to potential change in the future and therefore the United States' experts' future benefit calculations are flawed. *Id*. at 1. Mr. Rybolt possesses no specialized knowledge or experience nor offers any supporting methodology for his analysis, and what remains is speculation. Mr. Rybolt's opinions should be excluded in their entirety under Federal Rule of Evidence 702.

## I.     Mr. Rybolt Is Not Qualified to Provide Expert Testimony in this Case.

PLG argues that Mr. Rybolt is qualified to offer economic damages analysis. The United States does not dispute his forensic economic experiences that include economic consulting for

---

[2] Judge Louise Flanagan did not join the Order of Chief Judge Richard Myers, Judge Terrence Boyle, and Judge James Dever and will instead separately resolve those issues in her cases.

litigation, including general commercial litigation and intellectual property litigation. Nor does the United States dispute that he may be qualified to opine on certain economic principals such as "lost earnings" or "lost earning capacity." But Mr. Rybolt is not confining himself to areas of his expertise. Instead, Mr. Rybolt is offering opinions on: (1) the legal distinction between "lost earnings" and "lost earning capacity" even though he has no legal education or experience; and (2) speculative future events, such as disability rating fluctuations and limitations in VA staffing, even though he has no prior training or expertise in these areas.

With respect to Mr. Rybolt's distinction between "lost earnings" and "lost earning capacity," what is central to his rebuttal opinions is not any "economic" analysis but rather his own interpretation of what VBA disability payments are meant to compensate using his legal interpretation. Rybolt Rep. at 8-15 (JA Ex. 766, D.E. 840-30). The "large body of economic literature" repeatedly referenced in PLG's Opposition Motion cites basic principles that do not support Mr. Rybolt making the legal distinction between "lost earnings" and "lost earning capacity" as part of an economic analysis. *See*, *e.g.*, *Id*. at 9 n.17 (the principle that the purpose of an offset is to avoid double-recovery); *Id*. at 11 n.27 (differences between lost earnings and lost earning capacity*); Id.* at 12 n.29 (purpose of damages analysis).

II.     **Limiting Offsets of VBA Payments to Claims of Lost Earning Capacity Has Been Rejected by the Court, Contradicts PLG's Own Economist's Opinions, and Requires an Improper Legal Interpretation.**

Mr. Rybolt's ultimate opinion is that "[n]one of the VBA Bellwether Plaintiffs' expert reports assert damages for lost earning capacity, thus the use of a benefit intended to compensate Plaintiffs for a loss of earning capacity as an offset is inapt." *Id.* at 4. There are multiple flaws in Mr. Rybolt's opinion.

A.     **<u>Mr. Rybolt's Categorical Equivalence Interpretation of Offsets Has Been Rejected by this Court.</u>**

PLG correctly states that the Court always "remains the final arbiter of what constitutes the governing law." D.E. 882 at 13 (citing *HBC Ventures, LLC v. Holt MD Consulting, Inc.*, Nos. 5:06-CV-190-F, 5:07-CV-342-F, 2012 WL 4483625, at \*9 (E.D.N.C. Sept. 27, 2012)). The Court determined the legal scope of the CLJA's offset provision here, making Mr. Rybolt's distinction between "lost earnings" and "lost earning capacity" irrelevant to the determination of any Plaintiff's damages. The Court expressly denied PLG's request to implement "an extratextual categorical-equivalence requirement or require defendant to prove a separate risk of double recovery before offering otherwise qualifying offset evidence." D.E. 885 at 12. The United States may offer qualifying offset evidence without showing that the offset is applicable categorically to the damages that a Plaintiff is claiming. Thus, whether a Plaintiff is seeking damages for "lost earnings" or "lost earning capacity" is irrelevant to whether the United States can take an offset for VBA disability benefits related to a Camp Lejeune injury. The Court's decision precludes Mr. Rybolt's categorical approach to damages and offsets. Without this categorical approach, Mr. Rybolt's theory, which rejects the use of VBA benefits compensation for certain offsets lacks relevance, much less merit. Despite PLG's best efforts to have Mr. Rybolt rehash legal arguments nearly identical to PLG's legal filings, Mr. Rybolt's legal interpretation and approach to offsets must be excluded based on the Court's ruling.

**B. <u>Mr. Rybolt's Claim that None of the VBA Bellwether Plaintiffs' Expert Reports Assert Damages Claims for Lost Earning Capacity Contradicts PLG's Economist.</u>**

Mr. Rybolt's opinion contradicts PLG's economist, Mr. Chad Staller, who calculated lost earning capacity on behalf of ten of the fourteen VBA Bellwether Plaintiffs. *See e.g.*, Staller Rep. (Amsler) at 3-4 (JA Ex. 736 D.E. 839-34). Mr. Staller confirmed these calculations as a form of damages at his deposition. Staller Dep. Tr. at 228:2-7 (JA Ex. 786 D.E. 841-17).

Mr. Staller's references to "lost earning capacity" to make his damages calculations are not inexact uses of the term, as Mr. Rybolt claims, but rather show that he was using lost earnings as a primary measure of lost earning capacity. S*ee* D.E. 859 Exhibit A (". . . . Often, the most reliable evidence [for earning capacity] will be past earnings, which is also the most common basis for estimating expected earnings."). PLG asks the Court to ignore Mr. Staller's statements and testimony that he is estimating "lost earning capacity" and to trust their interpretation that he was just calculating "lost earnings" instead. PLG and Mr. Rybolt may frame these damages as something other than lost earning capacity to fit their offset theory, but that does not change the damages he clearly calculated.

### C. Mr. Rybolt's Opinion that Offsets of Future VBA Payments Are Limited to Claims of Lost Earning Capacity Damages Constitutes an Improper Legal Opinion.

In order to challenge the United States' experts' calculations of VBA disability payments for offsets, Mr. Rybolt opined that "VBA disability benefits are intended to compensate the beneficiary for a loss of earning capacity, not lost earnings." Rybolt Rep. at 10. While PLG discusses in depth distinctions between "lost earnings" and "loss of earning capacity," PLG ignores how Mr. Rybolt defines lost earning capacity. While lost earning capacity is a general economic concept, whether VBA benefits compensation matches that economic concept is distinctly developed through a series of legal and policy decisions. *See e.g.,* 38 U.S.C. § 1155; 38 C.F.R. § 4.2; 38 C.F.R. § 4.10. Mr. Rybolt interprets VBA disability payments as a calculation of an individual's lost earning capacity, which is an inadmissible legal conclusion based entirely on his interpretation of federal statutes and regulations regarding VBA disability benefits. *See e.g.,* Rybolt Rep. at 10; Rybolt Dep. Tr. at 128:15–129:4; 130:9–21; 138:9–24 (JA Ex. 792, D.E. 841-23). PLG is correct that Mr. Rybolt does not offer instruction on how to interpret the law. He

simply misinterprets the law and calls it an "economic" interpretation.

**III. Mr. Rybolt's Opinions Regarding the United States' Experts' Economic Methodology Have No Basis in Fact and Mr. Rybolt Lacks Specialized Knowledge on the Matter.**

        **A.** <u>**Mr. Rybolt Speculates that VBA Bellwether Plaintiffs' Disability Ratings Will Change.**</u>

Mr. Rybolt mischaracterizes the United States' experts' opinions, claiming that the United States' experts conclude that the VBA Bellwether Plaintiffs' disability ratings will never change. This is a straw man since the United States' experts never claimed that Plaintiffs' disability ratings could never change. It is Mr. Rybolt who is offering opinions without methodological foundations, summarily opining that the ratings have changed and thus will continue to change. Rybolt Dep. Tr. at 194:10-195:15.

The United States' experts need not guarantee that benefits will never change to prove an offset. What is required from the United States' experts is to make reasonable assumptions about the continuation of future benefits based on existing data. Despite Mr. Rybolt's opinions that hypothetical uncertainties defeat offsets for future benefits, this is not the standard as presented in the Court's Offset Order. *See* D.E. 885 at 9 ("Defendant still must show that any proposed future offset is *sufficiently* certain and calculable.") (emphasis added); *see also* Restatement (Second) of Torts §§ 912, 910 cmt. a (1979) ("The principal condition imposed on . . . damages for prospective harm is the requirement of reasonable certainty of proof."). The United States' experts met this standard by considering the likelihood of future disability benefits and calculating the present value of those benefits using present rates, accounting for cost-of-living adjustments, and discounting to present value. Mr. Rybolt's positing of uncertainties regarding future benefits without a methodological foundation does not produce admissible opinions.

PLG mischaracterizes Mr. Rybolt's opinion as being "based on extensive review and

discussion of Plaintiffs actual past data." D.E. 882 at 19. However, Mr. Rybolt simply reviewed past disability ratings for the VBA Bellwether Plaintiffs, noted that some of them had changes made to their past ratings, and concluded that changes could happen in the future. Rybolt Dep. Tr. at 162:25-163:13; 180:11-181:4 (did not review individual Plaintiff records). He offered no methodology or qualifications for reaching these opinions. An opinion of how benefits will likely change in the future requires evidentiary support rather than Mr. Rybolt's speculation.

In opining on the potential instability of VBA benefits, Mr. Rybolt has not attempted any statistical analysis of the VBA Bellwether Plaintiffs to determine the likelihood of changes to their payments. After reviewing the data on all 14 VBA Bellwether Plaintiffs, Mr. Rybolt provides only two examples where service-connection fell from 100 percent. Rybolt Rep. at 16. For those two Plaintiffs, Mr. Rybolt fails to provide any reasoning for the reduction in the ratings, e.g., whether the change was temporary or due to a medical improvement. *Id.*, *see also* Rybolt Dep Tr. at 199:6-16. Mr. Rybolt did not provide *any* opinions for the VBA Bellwether Plaintiffs with unchanged ratings. Further, Mr. Rybolt did not apply the multitude of regulations and policy decisions that protect from fluctuations in veterans' benefits and make the United States' calculations reasonable. D.E. 859 at 19-20.

PLG cites three cases to argue that a rebuttal expert need only show that another expert made unreasonable assumptions, and an affirmative opinion is not required, but each case is distinguishable. D.E. 882 at 18. In *Funderburk v. South Carolina Elec. & Gas Co.*, 395 F. Supp. 3d. 695 (D.S.C. 2019), the expert examined detailed estimates and opined regarding an appropriate economic methodology; Mr. Rybolt does not offer an alternative methodology for determining the reasonable certainty of future benefits. In *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691 (S.D.W. Va. 2014), the rebuttal expert relied on several scientific studies from relevant fields, unlike Mr.

Rybolt, and provided citations to demonstrate how other experts improperly favored certain specific data to reach their opinions. Finally, in *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505 (D. Md. 2012), the general qualifications of the damages expert in the relevant fields were not in dispute; here, Mr. Rybolt's qualifications for his opinions are in dispute. The fact that Mr. Rybolt's opinions are "rebuttal" does not exempt them from meeting the basic criteria of Rule 702 to be admitted. *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716 (D.S.C. 2019) (rebuttal experts are subject to *Daubert* scrutiny) (collecting cases). Because Mr. Rybolt's opinions lack a reliable methodological foundation and sufficient facts and data to support them, they are inadmissible.

**B. Mr. Rybolt's Criticism of Defendant's Use of Life Expectancy Tables Lacks Support.**

Mr. Rybolt's critiques of the United States' experts' use of life expectancy tables were unreasonable, lack support, and are inadmissible. Without identifying a methodology for when life expectancy tables are appropriate, Mr. Rybolt's opinions are inadmissible *ipse dixit*. Most tellingly, there is no explanation why it is permissible for PLG's experts to use life expectancy tables when calculating future damages, but the United States' economists cannot use the same tables when calculating future offsets. Without any citation or other foundation, Mr. Rybolt claimed that it was common in personal injury matters to base life expectancy on the opinion of a medical expert, rather than to rely on life expectancy tables. D.E. 882 at 23. However, use of life expectancy tables is standard methodology to calculate future damages in personal injury cases, as PLG's chief economist testified, and he, in fact, applied the tables in calculations in his reports. Staller Dep. Tr. at 107:10–108:15.

To circumvent Mr. Staller's reports and testimony, PLG weakly argues that Mr. Staller did not use statistical life expectancies for *all* Bellwether Plaintiffs. In fact, Mr. Staller used a reduced

life expectancy based on a medical condition for only three of the remaining twenty-two Plaintiffs. *See* Staller Rep. (Hill) at 3 (JA Ex. 741, D.E. 840-5); Staller Rep. (Mousser) at 3 (JA Ex. 745, D.E. 840-9); Staller Rep. (Tukes) at 2 (JA Ex. 749, D.E. 840-13). The United States' experts used the same reduced life expectancy estimates for those Plaintiffs, *see* Tosic Rep. (Hill) at 14 (JA Ex. 707, D.E. 839-5); Yount Rep. (Mousser) at 2 (JA Ex. 726, D.E. 839-24); Yount Rep. (Tukes) at 4 (JA Ex. 727, D.E. 839-25). Additionally, Mr. Rybolt inexplicably critiques the United States' experts for use of life expectancy tables when PLG's expert economist used them for 19 of 22 Plaintiffs. Mr. Rybolt decided that use of a standard forensic economic tool was improper in this case—an opinion with no support, citation, or explanation. It should be excluded.

C. **Mr. Rybolt's Discussion of Military Retirement and VBA Compensation Lacks an Economic Basis and Specialized Knowledge.**

While acknowledging that Mr. Rybolt is not an expert on VBA benefit programs in their argument that the burden is on the United States to show how military retirement programs apply when calculating VBA benefits*, see* D.E. 882 at 25, PLG contends that Mr. Rybolt may still offer expert opinions on these topics.

PLG again confuses the purpose of its own expert. The United States presents forensic economists who calculated the present value of future disability benefits, using present rates, accounting for cost-of-living adjustments, and discounting to present value. Mr. Rybolt is a rebuttal expert who does not rebut those calculations—rather, he opines on how veterans' benefits are speculative because some veterans may be unable to receive both military retirement benefits and VBA compensation. He does so without any knowledge of how military retirement benefit programs interact with veterans' benefits. *See e.g.*, Rybolt Dep. Tr. at 211:24-212:14 (did not review publicly-available agency guidelines); 217:7–15; 218:18–219:7; 221:16–222:4 (unfamiliarity with the combat-related special compensation program or the concurrent receipt

disability program).  The United States accepts its burden to support the calculation of offsets. But Mr. Rybolt fails to provide any economic methodology, facts, data, or specialized knowledge to support his critique. Rybolt Dep. Tr. at 210:9-15 (did not review the relevant records to determine which VBA Bellwether Plaintiffs should be adjusted related to military retirement). Therefore, his unsupported opinion should be excluded.

**D. <u>Mr. Rybolt's Proposed Uncertainties Related to Future Benefits Are Inadmissible Speculation.</u>**

Finally, Mr. Rybolt provides a grab bag of "additional uncertainties" regarding future benefits including: the continuation of VA policies; advances in medical technology and treatments; future federal government appropriations; and future VBA staffing trends. Rybolt Rep. at 22-23. Mr. Rybolt claims that it is unreasonable for the United States' experts to assume that changes will not occur without addressing the uncertainties he posits. Yet Mr. Rybolt himself had no basis or knowledge to estimate the probability that any of the uncertainties that he posited will occur. Rybolt Dep. Tr. at 239:24-240:9. As with his other opinions, Mr. Rybolt fails to provide any reliable methodological foundation, data, or specialized knowledge to support his critiques.

PLG cites two cases to support Mr. Rybolt's opinions, but both are inapplicable. D.E. 882 at 30. In *MyGallons LLC v. U.S. Bancorp*, 521 F. App'x 297 (4th Cir. 2013), a marketing expert improperly testified about sales forecasting by comparing a startup company to established companies and failing to consider resources, financing, experience, or the likelihood of falling gas prices. In *Perry v. Scruggs*, 17 F. App'x 81 (4th Cir. 2001), expert testimony was inadmissible in a breach of contract case because the expert estimated lost royalties by improperly relying on hearsay, violating a state business rule that prohibits measuring anticipated profits from an unestablished business, and making speculative estimates. The experts in those cases forecasted profits of unestablished businesses, using unsubstantiated methodology and inapplicable

comparisons. The federal government is not a startup business. The government's methodology rests on reasonable certainty of future conditions determined through application of existing data. Mr. Rybolt's hypothetical uncertainties are speculative and inadmissible.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court exclude Mr. Rybolt's opinions from trial.

Dated: July 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief, Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Assistant Directors

ADAM BAIN
Chief Litigation Counsel

MICHAEL CROMWELL
Senior Trial Counsel


*/s/ William V. Klotzbucher*
WILLIAM V. KLOTZBUCHER
D.C. Bar No. 1644141
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Camp Lejeune Justice Act Section
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 532-5193
William.v.klotzbucher@usdoj.gov

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

*Attorneys for Defendant,*
*United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2026, I electronically filed the foregoing using the Court's

Electronic Case Filing system, which will send notice to all counsel of record.


*/s/ William V. Klotzbucher*
WILLIAM V. KLOTZBUCHER