**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**NO. 7:23-CV-897**

| | |
|---|---|
| **IN RE:** | **UNITED STATES' MOTION** |
| | **FOR LEAVE TO FILE A** |
| **CAMP LEJEUNE WATER LITIGATION** | **RESPONSE TO PLAINTIFFS'** |
| | **LEADERSHIP GROUP'S NOTICE OF** |
| **This Document Relates To:** | **PROPOSED ORDER RE: ORDER 886 AND** |
| | **ACCOMPANYING EXHIBITS (D.E. 891;** |
| **ALL CASES** | **891-1; 891-2)** |

Defendant United States of America respectfully files this Motion for Leave to File a Response to Plaintiffs' Leadership Group's Notice of Proposed Order Re: Order 886 and Accompanying Exhibits (D.E. 891; 891-1; 891-2) ("Instant Motion").

1) On June 5, 2026, the Court denied without prejudice the United States' Motion to Exclude Certain Plaintiffs' General Causation Experts' Testimony Utilizing the "At Least as Likely as Not" Standard. D.E. 886 ("Court's Order"). The Court's Order stated, "The parties shall file within 21 days a joint proposed order that identifies expert opinions to which this order applies." *Id.* at 1.[1]

2) Despite the Parties' efforts, Plaintiffs' Leadership Group ("PLG") and the United States could not reach an agreement regarding the substance and form of the filing the Parties would submit. Accordingly, the Parties resolved to file separate pleadings.

3) On June 26, 2026, in accordance with the Court's Order, the United States filed its Notice and Proposed Order for the Court's consideration. D.E. 890; 890-1 (collectively, "the United States' Submission"). The United States stated in its Notice that, at the time of filing, it

---

[1] Judge Flanagan will resolve these issues separately in her cases. *See* D.E. 886 at 1. Thus, the Instant Motion does not address the expert opinions offered in the Parkinson's disease bellwethers.

remained unclear whether PLG intended to submit a responsive filing and what that filing may contain. *Id.* at 3 n.2.

4) Thereafter, PLG filed its Notice, Proposed Order, and Exhibit B, a 28-page brief responding to the United States' Proposed Order. D.E. 891; 891-1; 891-2 (collectively, "PLG's Submission"). Exhibit B contained new, substantive arguments, including, as PLG explained, four enumerated arguments urging the Court to find that their experts did not "reduce[] their methodological rigor as a result of the [Camp Lejeune Justice Act's] standard of proof." D.E. 891 at 2–3.

5) PLG's Exhibit B attempts to re-litigate an issue that PLG briefed twice before the Court. First, PLG filed its motion and related briefing arguing that the United States' general and specific causation experts should be excluded for refusing to alter their methodology to incorporate the "at least as likely as not" burden of proof in their analyses. *See* D.E. 567; 568; 762. In addition, PLG filed a brief responding to the United States' motion to exclude the opinions of PLG's experts who modified their methodologies based on the "at least as likely as not" burden of proof. *See* D.E. 690. Further, PLG's expansive and argumentative Exhibit B is beyond what the Court's Order requested: it requested the Parties submit a "joint proposed order that identifies expert opinions to which [the] order applies." D.E. 886.

6) On June 30, 2026, the United States emailed PLG and stated that it was intending to file the Instant Motion. The United States asked PLG to state whether it objected to the United States filing the Instant Motion, or whether PLG would like to discuss the matter further. On July 1, 2026, PLG responded to say that it did not consent to the filing of the Instant Motion, and did not seek a further meet and confer. *See* **Exhibit A**.

7) If the Court grants the United States' Instant Motion, the United States will file its brief in response to PLG's Submission within fourteen (14) days of the Court's order.

8) The United States' proposed briefing will respond to the new, substantive arguments raised in PLG's Submission and will address PLG's flawed arguments regarding its experts[2] as well as PLG's misinterpretation of the Court's Order. The United States will specifically address the following:

    a. PLG's experts wrote in their reports and admitted during depositions that they modified their methodologies in reviewing epidemiological studies and conducting Bradford Hill analyses to track the Camp Lejeune Justice Act's ("CLJA") "at least as likely as not" standard.

    b. PLG's experts relaxed their review of epidemiological studies in their Bradford Hill methodology by using an odds ratio of 1.1, without respect to statistical significance, to identify the epidemiological results that supported their causation opinions. As Dr. Steven Bird stated in his general causation reports, under his methodology for this litigation, the Bradford Hill factor of Strength of Association is demonstrated by an odds ratio of 1.1 "given the lower standard at issue, as described earlier, of 'as likely than not' or 'equipoise.'" Bird GC Rep. (KC) at 46 (JA Ex. 83, D.E. 464-4); *see also* Bird GC Rep. (L-NHL) at 53

---

[2] "PLG's experts" refers to the experts the United States is seeking to exclude through its Proposed Order. D.E. 890; 890-1. This includes all general causation opinions by Dr. Steven Bird regarding bladder cancer, kidney cancer, non-Hodgkin lymphoma ("NHL"), and leukemia; all general causation opinions by Dr. Stephen Culp regarding bladder cancer; all general causation opinions by Dr. Benjamin Hatten regarding bladder cancer and kidney cancer; all general causation opinions by Dr. Michael Freeman regarding kidney cancer; all general causation opinions by Dr. Timothy Mallon regarding kidney cancer, NHL, and leukemia; and all general causation opinions by Dr. Lukasz Gondek regarding leukemia and NHL.

(JA Ex. 103, D.E. 465-8); Bird GC Rep. (BC) at 45 (JA Ex. 67, D.E. 463-6). Additionally, PLG's experts' citations to the CLJA or the Agency for Toxic Substances and Disease Registry's ("ATSDR") *Assessment of the Evidence*[3] methodology to support this deviation in reviewing the epidemiological studies for their Bradford Hill analyses demonstrate that their methodology was relaxed to track a litigation-specific standard rather than the standards in their fields. D.E. 886 at 16.

c. The Court's Order held that "[b]y incorporating the CLJA's burden-of-proof standard into their methodology, rather than just their ultimate conclusion, an expert assumes the role of the factfinder and ignores Rule 702's requirement that expert testimony must be the product of reliable principles and the expert's opinion must reflect a reliable-application of the principles and methods to the facts of the case." D.E. 886 at 16–17. PLG's arguments contradict this clear holding. Instead of accurately reporting PLG's experts' methodologies in reviewing epidemiological studies and applying the Bradford Hill analyses, PLG focused on the mere inclusion of key words, such as "literature search" or "Bradford Hill," in an expert's report to summarily state that the expert's methodology was reliable and valid under Rule 702. *See generally* D.E. 891-2 at 8; 17–18. The experts' statements describing their methodology and the application of that methodology throughout their reports and in their deposition are what should be considered. It is these statements, as included in the United

---

[3] Assessment of the Evidence for the Drinking Water Contaminants at Camp Lejeune and Specific Cancers and Other Diseases (JA Ex. 182, D.E. 472-3).

States' Submission, that identify the opinions to which the Court's Order applies. In a response brief, the United States would describe in detail how each expert relaxed his or her review of the epidemiological studies and the Bradford Hill analysis based on the CLJA's "as likely as not" standard.[4]

d. ATSDR incorporated a modified methodology across all degrees of confidence, including "sufficient" evidence of causation and "equipoise and above" evidence of causation, in the conclusions for the *Assessment of the Evidence* to meet the document's purpose of making policy-based decisions for veteran's benefit presumptions. In the context of litigation, such modified methodology would fail under Rule 702. As the Court explained, "an expert may not cure their methodological deficiency simply by stating that they hold their opinion 'to a reasonable degree of scientific certainty.'" D.E. 886 at 17. It follows that an expert cannot incorporate ATSDR's modified methodology and attempt to cure his or her methodological deficiency by selecting a particular framing of the ultimate conclusion. As such, PLG's reliance on ATSDR's *Assessment of the Evidence* as proof of sound methodology is incorrect.[5]

e. PLG selectively misquotes and ignores portions of the Court's Order. *Compare* D.E. 886 at 16 (citing *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs.*

---

[4] The United States notes that many of PLG's experts, including those not referenced in the United States' Proposed Order (D.E. 890-1), are subject to other pending *Daubert* motions due to the experts' additional methodological deficiencies. *See, e.g.,* D.E. 553; 555; 559; 582; 584.

[5] PLG previously and unsuccessfully raised this argument in responding to the United States' motion to exclude the opinions of PLG's experts who modified their methodologies based on the "at least as likely as not" burden of proof. *See* D.E. 690 at 8 ("Surely Rule 702 does not require exclusion of a scientist for using the same level of certainty employed by the Defendant's own scientists in evaluating the exact same literature at issue here, especially when the standard under the statute is exactly the same.").

*& Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 925 (D.S.C. 2016)) ("[W]here an expert uses the Bradford Hill method to discern a causal relationship, failure to find a statistically significant association before proceeding is fatal to the opinion's admissibility."), *with* D.E. 891-2 ("In any event, statistical significance 'goes to weight and not admissibility' and is no Bradford Hill prerequisite, as the Fourth Circuit confirmed in *In re Lipitor*, and the dispute is reserved for trial."); *compare* D.E. 886 at 11 (quoting *Smith v. Wyeth-Ayerst Lab'ys Co.*, 278 F. Supp. 2d 684, 691 n.8 (W.D.NC. 2003)) ("Thus, association findings are 'considered "statistically significant" only when the odds ratio is expressed with a **95% confidence interval** (consistently) and when **that interval** does not include an odds ratio of 1.0 or below.'") (emphasis added) *with* D.E. 891-2 at 4 n.14 (quoting D.E. 886 at 11) ("Defendant also ignores that Order 886 recognized that results can be significantly significant so long as they do not have odds ratios 'of 1.0 or below'" without reference to the confidence interval).

f. PLG's newly submitted arguments contradict its previous statements in its Motion to Exclude Expert Opinions that Fail to Apply the Camp Lejeune Justice Act's Burden of Proof for Causation. D.E. 568. There, PLG argued that the CLJA "sets a qualitatively different, 'reduced' evidence threshold for CLJA claims." *Id.* at 3. Changing course, PLG now argues that *none* of its experts lowered their methodology to reach general causation opinions despite the fact that the experts' reports are replete with citations to the CLJA and the "at least as likely as not" burden of proof. PLG's new argument flies in the face of its

6

own prior motion, briefing, and its strategic choice for all of its experts to cite to and presumably utilize the CLJA's reduced burden of proof in evaluating epidemiological studies and conducting the Bradford Hill analysis.

Accordingly, if the Court would like additional briefing on this topic, the United States asks that the Court grant this Motion and allow the United States to file a Response to PLG's Submission within fourteen (14) days of this order.

7

Dated: July 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

BRIDGET BAILEY LIPSCOMB
Chief
Camp Lejeune Justice Act Section

HAROON ANWAR
SARA J. MIRSKY
Assistant Directors

ADAM BAIN
Chief Litigation Counsel

DAVID R. ORTIZ
Trial Attorney

*/ s/ Elizabeth K. Platt*
ELIZABETH K. PLATT
DC Bar No. 1672052
Senior Trial Counsel
United States Department of Justice
Civil Division, Torts Branch
Camp Lejeune Justice Act Section
1100 L Street, NW
Washington, DC 20005
(202) 305-5871
Elizabeth.k.platt@usdoj.gov

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

*Attorneys for Defendant,*
*United States of America*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2026, I electronically filed the foregoing using the Court's

Electronic Case Filing system, which will send notice to all counsel of record.


*/s/ Elizbeth K. Platt*
ELIZABETH K. PLATT

9