IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| IN RE:<br><br>CAMP LEJEUNE WATER LITIGATION<br><br>This Document Relates to:<br>Charles Metcalfe, No. 7:24-cv-00976<br>Larry Abrams, No. 7:24-cv-00982<br>Tony Griffin, No. 7:24-cv-00973<br>Estate of Mark Kopp, No. 7:24-cv-00969<br>Estate of Timothy Coon, No. 7:24-cv-00978<br>Steven Janovitch, No. 7:24-cv-00919 | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR HEARING REGARDING THE DEPARTMENT OF JUSTICE'S ADMINISTRATION OF ELECTIVE OPTION DETERMINATIONS** |

Plaintiffs Charles Metcalfe, Larry Abrams, Tony Griffin, the Estate of Mark Kopp, the Estate of Timothy Coon, and Steven Janovitch (collectively, "Movants"), by and through the undersigned counsel, respectfully submit this Memorandum of Law pursuant to Local Civil Rules 7.1(e) and 7.2 in support of their Motion for Hearing Regarding the Department of Justice's Administration of Elective Option Determinations (the "Motion").

## INTRODUCTION

On September 6, 2023, the Department of Justice and the Department of the Navy announced the CLJA Elective Option ("EO"). The Elective Option settlement program provides fixed payments to claimants with one of nine qualifying diseases. The amount of the payment varies based on the disease and the time the claimant was on Marine Corps Base Camp Lejeune. Each of the Movants filed administrative claims with the Department of the Navy and subsequently filed complaints before this Court in the above-captioned actions.

The Department of Justice subsequently made the Elective Option program available to individuals who had filed before this Court and, by letter dated May 11, 2026, identified each of the Movants as potentially eligible. On August 28, 2026, the Department of Justice advised

undersigned counsel that Movants Metcalfe, Abrams, and Griffin qualified for Elective Option settlement offers of $150,000 each, and the Estate of Mark Kopp for an offer of $250,000, reflecting a determination that each of these Movants was on base for between 30 and 364 days. However, as made clear in their Records of Service, each of these four Movants was on base for more than one year and thus was entitled to the $300,000 settlement offer, or $400,000 in the case of the Estate of Mark Kopp.

On September 1, 2026, undersigned counsel forwarded the Records of Service for these four Movants to the Department of Justice and asked it to correct the exposure determination and extend the offers its published grid provides for more than one year on base. The Department of Justice declined to do so in each case and gave no reason. Based on past practice and its own published guidance documents, that refusal was incorrect. The Records of Service, which the Department of Justice accepts for purposes of proving time on base, clearly show that each of these claimants was on base for more than one year and thus that the awards should be $300,000 each, or $400,000 for the Estate of Mark Kopp.

The other two Movants, the Estate of Timothy Coon and Steven Janovitch, were deemed ineligible for the Elective Option settlement program. No explanation was given for the Department of Justice's determination of ineligibility other than "evidence insufficiency." This lack of explanation is problematic because undersigned counsel submitted the type of documentation that previously qualified for Elective Option settlements.

Counsel's letters of September 1, 2026 asked the Department to correct the exposure band on the strength of the enclosed records and extend the offer its grid prescribes. In response, the Department withdrew no offer and extended no new one; it simply declined to look at the records. Movants ask that the Department apply its own guidelines and extend the offers those guidelines

prescribe, and they ask the Court to convene a hearing into the Department of Justice's administration of the Elective Option program as it relates to the Movants.

## STATEMENT OF FACTS

### ***I. The certified Records of Service and the offers DOJ extended.***

Four of the six Movants hold Tier 1 qualifying injuries and received offers priced in the lowest exposure band the grid contains. In each case the certified Records of Service that the National Personnel Records Center produced establish an exposure within the one-to-five-year band, and in each case the ATSDR/DMDC dataset already in DOJ's possession points the same way.[1]

For each of these four claimants the National Personnel Records Center production enclosed with counsel's letters of September 1, 2026 contains the claimant's Chronological Record of Service and DD Form 214, which together document the assignment entry by entry. The gross period of assignment to Camp Lejeune within the covered period for each of the four Movants is as follows:

| Plaintiff | Case No. | Qualifying injury | Days on base |
|---|---|---|---|
| Charles Metcalfe | 7:24-cv-00976 | Bladder cancer (Tier 1) | Approx. 510 |
| Larry Abrams | 7:24-cv-00982 | Kidney cancer (Tier 1) | Approx. 1,156 |
| Tony Griffin | 7:24-cv-00973 | Kidney cancer (Tier 1) | Approx. 641 |
| Estate of Mark Kopp | 7:24-cv-00969 | Kidney cancer (Tier 1), death | Approx. 737 |

[1] Movants file as Exhibits D through G the electronic correspondence between counsel and the Department of Justice. They have not filed the letters and claim packages that correspondence transmitted, namely the Department's letters of May 11, 2026 and August 28, 2026, the individual Elective Option offer letters and claim packages enclosed with the latter, counsel's letters of September 1, 2026 and their enclosures, and the correspondence in the *Estate of Richard Salata* matter described below; nor have they filed the ATSDR/DMDC and National Personnel Records Center records on which the exposure figures set out below are based. Those materials may be considered settlement communications, may include records that are subject to the Protective Order entered in this Litigation, and contain individual claimants' medical and service records. The undersigned will produce complete copies of any or all of these records (which are already in the United States' possession) to the Court upon request or for in camera review.

Because the grid is fixed, the exposure band determines the entire valuation. A single miscoded band is the difference between $150,000 and $300,000 and, for the Estate of Mark Kopp, between $250,000 and $400,000. The aggregate shortfall across these four cases is $600,000.

### *II. The standards the government published and the Court's expectation.*

The Department of the Navy and DOJ adopted the EO on September 6, 2023, and published a guidance document explaining it, together with a set of frequently asked questions last updated January 21, 2025. Public Guidance on Elective Option for Camp Lejeune Justice Act Claims (Sept. 6, 2023, updated Sept. 15, 2023) ("Public Guidance") (Ex. A); Frequently Asked Questions on Elective Option for Camp Lejeune Justice Act Claims (updated Jan. 21, 2025) ("FAQ") (Ex. B).

Three features of the published process bear on what follows. First, the government bears the initial investigative burden and is directed to use the records it already holds: "[t]he Department of the Navy shall first internally investigate perfected claims before requesting substantiation from claimants," the government may obtain "documentation supporting proof of harm and proof of exposure from other government agencies," and "[i]f eligibility for the EO can be established from government records, then further substantiation is unnecessary." *Id.* at 6. Second, review is expressly iterative, because the government "may repeat its internal investigations . . . and substantiation requests . . . as appropriate." *Id.* Third, the FAQ confirms that an offer based on an incorrect length of residence, the ground at issue here, is an error the program corrects:

> A claimant who believes his or her EO offer is based on incorrect information, such as an incorrect length of residence or employment at Camp Lejeune, may request reconsideration. Consistent with Navy regulations, a request for reconsideration must (1) be made, in writing, within 60 days of the original EO offer; and (2) include any supplemental substantiating evidence or information.. . . . A claimant shall have 60 days to accept or decline the new offer, which may be the same, more, or less than the original offer.

FAQ No. 13. The FAQ thus treats an incorrect length of residence as a correctable error rather than a final determination. Accordingly, Movants ask instead that DOJ extend the offer its grid already prescribes for the exposure its own records establish. *See* Part IV, *infra*. The single circumstance in which the FAQ permits a claimant's submission to be disregarded is a request that "reasonably appears to have been presented solely for the purpose of extending the time to accept an EO offer," and even then the FAQ provides that "[t]he claimant or the claimant's authorized representative will be notified promptly." *Id.*

Claims already in litigation are resolved on a parallel track that DOJ administers. As plaintiffs' counsel advised the Court on June 22, 2026, "under the original Elective Option program, once you filed the complaint in court past a certain date, you are out. Now Mr. Woodward issued an order that said, okay, they are back in." Tr. of June 22, 2026 Status Conf. 10:6–9 (Ex. C). DOJ screened each of the six Movants under that process and issued a determination as to each.

### ***III. The submission process and the August 28, 2026 determinations.***

By letter dated May 11, 2026, DOJ identified those of the undersigned's clients, including each of the six Movants, whom it considered potentially eligible for the EO and requested substantiating documentation. Counsel provided it. DOJ gave the firm access to a Box folder it maintained for that purpose, referred to in the correspondence as the "EO JEFS Folder," and counsel uploaded an Elective Option package for each of the six Movants to that folder between May 15 and June 1, 2026, confirming each upload by electronic mail to CLJA.EO@usdoj.gov. Ex. D.

Despite corresponding over various other matters over the past three months, DOJ never advised counsel that any Movant's Elective Option documentation was deficient, never requested a further document, never identified any Movant it regarded as ineligible, and never advised

counsel that a further "August 26, 2026" deadline was running.[2] Counsel first learned that any package had been found wanting on August 28, 2026, when DOJ transmitted its determinations for all six Movants by letter of that date, under cover of an electronic message sent at 1:10 p.m. Ex. E. That transmittal contained two kinds of determination. For four Movants, Metcalfe, Abrams, Griffin, and the Estate of Mark Kopp, DOJ enclosed individual offer letters extending EO offers priced in the 30-to-364-day exposure band: $150,000 each for Metcalfe, Abrams, and Griffin, and $250,000 for the Estate of Mark Kopp. For the remaining two Movants, the Estate of Timothy Coon and Steven Janovitch, DOJ's letter of August 28, 2026 reported a finding of ineligibility. The claimants found ineligible, among them Movants Coon and Janovitch, are identified in that letter by name and case number and nothing further. In follow up correspondence on August 31, counsel for the DOJ simply provide "Evidence Sufficiency Issue" and "Evidence Sufficiency" for its justification in deeming Coon and Janovitch ineligible for EO.

The four individual offer letters share a common form. Each provides: "Please respond in writing to clja.eo@usdoj.gov within 30 days to accept or decline this offer. If we do not hear from you within 30 days from the date of this letter, this offer is considered declined and another EO offer will not be made." Thirty days from August 28, 2026 is September 27, 2026. Each letter lists as an enclosure a document identified as "Public Guidance on Elective Option for Camp Lejeune

---

[2] The DOJ's initial May 11, 2026 communication referenced a "60-day deadline" for providing substantiating documents to the DOJ (i.e., July 10, 2026). The Department of Navy also recently updated its website to provide an "August 26, 2026" deadline for uploading documents to the JAG's *online claims portal*. *See* https://www.navy.mil/Camp-Lejeune-Justice-Act-Claims/More-about-the-Elective-Option/ (Last Accessed September 8, 2026). However, to the undersigned's knowledge, nothing has been updated with respect to the formal EO guidance documents or FAQ that implements either deadline for submitting documents. Furthermore, these six cases are in litigation—meaning the JAG's claim portal is inaccessible and there is nothing to upload. Finally, neither deadline negates the government's obligation to first internally investigate the claims for EO eligibility, including by obtaining records already in the possession of the government (e.g., all of the records subsequently submitted after August 26th by the undersigned), as expressly stated in its formal guidance documents. It was not until *after* both deadlines passed that the DOJ took the position it would not review military records already in its possession or reconsider its erroneous determinations.

Justice Act Claims (amended)." The documents DOJ actually transmitted under that description were two files, titled "01 Public Guidance on Elective Option for CLJA Claims_2024.01.16 update.pdf" and "02 Public Guidance on Elective Option FAQ_2025.01.21 update.pdf." Ex. E at 1; Ex. F at 2. They are the Public Guidance and the FAQ that Movants cite throughout this Memorandum, word for word. Exs. A, B. There is no other subsequent version. Each provides sixty days rather than thirty, neither provides for automatic declination, and the FAQ confirms that an offer based on an incorrect length of residence is an error the program corrects, which is the correction counsel's letters of September 1, 2026 requested.

### *IV. Counsel's letters of September 1, 2026 and the findings of ineligibility.*

On September 1, 2026, counsel sent DOJ a letter for each Movant containing supporting records. For Metcalfe, Abrams, and Griffin and the Estate of Mark Kopp, the letters enclosed the certified Records of Service described in Part I above and asked DOJ to correct the exposure band and extend the offer the grid provides for a one-to-five-year exposure. In other words, the letters simply ask that the DOJ extend the offers pursuant to its own guidelines prescribed for the exposure its own records establish. For the two Movants found ineligible, to whom no offer was extended, the letters asked DOJ to reevaluate the eligibility determination and enclosed the following:

- *Estate of Timothy Coon*, No. 7:24-cv-00978 (deemed ineligible for EO by DOJ for purported "Evidence Sufficiency Issue"). A certified Michigan death certificate identifies metastatic bladder cancer as the underlying cause of death, and the Department of Veterans Affairs has already adjudicated the same injury and the same exposure in Mr. Coon's favor, granting service connection for bladder cancer at 100 percent on a presumptive basis predicated on Camp Lejeune service. On exposure, the government's own dataset and the certified National Personnel Records Center production agree. The ATSDR/DMDC records reflect 821 days at Camp Lejeune, from April 1, 1985 through June 30, 1987. His Chronological Record of Service shows that he joined the Ordnance Maintenance Company, 2d Maintenance Battalion, 2d FSSG at Camp Lejeune on June 19, 1985 and remained until August 18, 1987, a period of 791 days, every one of them within the covered period. His Individual Deployment Record is blank, which is affirmative evidence

that he was not deployed, assigned temporary duty, or otherwise absent during that period. Either source places him in the one-to-five-year band.

- *Steven Janovitch*, No. 7:24-cv-00919 (deemed ineligible for EO by DOJ for purported "Evidence Sufficiency"). Permanent Change of Station orders dated January 8, 1975, issued by the Commanding General, Marine Corps Base, Camp Lejeune, record that Corporal Janovitch reported to Marine Corps Service Support Schools at Camp Lejeune on August 21, 1974 for the Basic Automotive Mechanic's Course, that government quarters and messing facilities were available while he was a member of that command, and that he stood detached effective January 16, 1975, a period of approximately 148 days. His DD Form 214 was enclosed as well. The absence of an ATSDR/DMDC match is explained by the dataset itself, which begins in 1975; nearly all of his tour fell in 1974. Bladder cancer is documented in VA medical records by cystourethroscopy on June 4, 2008 with an impression of carcinoma of the bladder, transurethral resection on June 10, 2008, and radical cystectomy on August 25, 2008.

Neither request rests on the ATSDR/DMDC dataset alone. Each is supported by the claimant's own official service records, of the same character the government accepted five weeks earlier in the *Estate of Richard Salata* ("Salata"), described next.

### *V. The relief the same agencies granted five weeks earlier.*

The relief Movants sought from DOJ was not novel. Five weeks before the determinations at issue, the same firm obtained that relief, on the same issue, from the Department of the Navy and DOJ acting together. On June 10, 2026, the Camp Lejeune Claims Unit of the Office of the Judge Advocate General extended an EO settlement offer in the matter of *Salata* (Claim No. CLC-000358587), advising that "[t]he claimant has 60 days to accept the settlement offer." Counsel requested reconsideration on July 1, 2026, on the ground that there was "documentation showing more than 1 year of time on base at Camp Lejeune." On July 6, 2026, an attorney advisor in the Claims Unit wrote that she had "updated the claim with the information I found," had discussed the matter with the assigned attorney, and that "the claim will be sent over to DOJ for their review as a reconsideration." The claim was transmitted to DOJ on July 10, 2026, and on July 23, 2026,

thirteen days later, DOJ "returned the approval." On August 14, 2026, the Claims Unit confirmed that the new offer would carry "60 days to decide to accept/reject." *See supra* note 1.

*Salata* arose on the administrative track before the Navy rather than in litigation, and Movants do not overstate the comparison. The distinction cannot bear the weight DOJ would need it to carry, however, because DOJ undertook to administer the litigation track "consistent with the EO" and "using a similar process as the Department of the Navy," FAQ No. 3, and because it was DOJ rather than the Navy that conducted the *Salata* review and returned the approval. What *Salata* establishes is that service records showing more than one year on base were, five weeks earlier, treated by both agencies as a sufficient basis to revisit an offer and to increase it.

***VI. DOJ's refusal to correct its erroneous findings.***

On September 2, 2026, one business day after receiving the letters and their enclosures from undersigned counsel, DOJ responded in a single paragraph. It confirmed receipt, restated that "the United States will not consider additional documentation or re-evaluate any of the cases reviewed for EO eligibility," and closed: "All offers made to your firm on August 28, 2026, and other EO determinations for your clients, are final and the United States is not considering any adjustments or additional offers, with the exception of the Glen Ripley case." Ex. G at 2–3.

No part of that response addressed any exposure figure. It did not identify the dates DOJ had used for any claimant, and it did not explain how a certified 510-day record of assignment, or a 457-day entry in DOJ's own dataset, supports a 30-to-364-day band. Counsel asked DOJ to revisit its position that afternoon. Ex. G at 1–2. At 7:03 a.m. the following morning, September 3, 2026, DOJ replied that "[t]he United States is not reconsidering the offers made on August 28, 2026, or decisions regarding ineligibility of any cases (with the exception of Glen Ripley)," that "[a]dditionally, the United States is not considering additional materials submitted after the

deadline," and that its determinations "were made in accordance with the requirements of the EO program, which were communicated through the EO public guidance documents, the instructions for submitting substantiating packets, and prior correspondence regarding the United States' EO review." *Id.* at 1. That message identified no exposure date and no record source for any claimant, and it did not identify the deadline to which it referred.

## ARGUMENT & CITATION OF AUTHORITY

### *I. The United States did not follow the procedures it published and due process does not permit an agency to administer its own framework that way.*

Nothing obligated the United States to create the Elective Option. It elected to do so, at this Court's urging, and it defined the terms of the program in documents it published and continues to publish. Having made that election, the government became bound to administer the framework according to its own terms. That principle is settled, and it is settled in this Circuit.

Movants identify four departures, each established by the government's own writings.

1. **The determinations disregard the records the framework directs the government to use, and depart from the practice these agencies followed five weeks earlier.** The Public Guidance directs the government to develop the exposure record from its own holdings and provides that "[i]f eligibility for the EO can be established from government records, then further substantiation is unnecessary." Public Guidance at 6. For each of the four underpriced claimants the certified Records of Service establish an exposure in the one-to-five-year band, and the government's own dataset agrees. In *Salata*, five weeks before these determinations issued, the same two agencies treated records of exactly that character as a sufficient basis to revisit an offer and to increase it, and returned the approval in thirteen days. Movants are aware of no amendment to the published rules between July and August 2026; the Department's public page for these claims, last updated August 11, 2026, seventeen days before the determinations issued, continues to direct the reader to the same two documents by the same two dates. Ex. H. A program the government committed to administer so that "[c]laimants with similar exposures and injuries . . . will receive similar settlement offers," Public Guidance at 3, cannot accommodate an unannounced change in the weight given to certified service records. Movants respectfully submit that the variance from prior practice, and the reasons for it, are matters the Court is entitled to hear from the United States.

2. **DOJ refused categorically to correct any error.** FAQ No. 13 confirms that an offer "based on incorrect information, such as an incorrect length of residence or employment at Camp Lejeune," precisely the error presented here, is one the program will correct upon a written submission made within sixty days. The guidance separately provides that the government "may repeat its internal investigations . . . and substantiation requests . . . as appropriate." Public Guidance at 6. DOJ announced that it would do neither, in the same letter that first disclosed the determinations and before any claimant could identify an error. It has never suggested that counsel's letters were presented "solely for the purpose of extending the time to accept," the one circumstance in which the FAQ permits a submission to be disregarded, and it gave none of the prompt notice the FAQ requires in that circumstance. Nine weeks before these determinations issued, counsel advised the Court that "the DOJ's office seems to be pretty capable of reaching out to us when they want substantiating information for purposes of evaluating an EO." Tr. of June 22, 2026 Status Conf. 10:14–17 (Ex. C). DOJ solicited documentation on a deadline, received it, and then declined to receive documentation directed at the results.

3. **The acceptance period was cut in half.** The guidance provides that "[a] claimant shall have 60 days to accept or decline an offer under the EO," Public Guidance at 6, and the FAQ provides that DOJ-EO offers "shall expire after 60 days," FAQ No. 3. The Navy applied sixty days in *Salata* and confirmed in writing that a corrected offer would carry a further sixty. The August 28 offer letters provide thirty.

4. **The terms DOJ imposed are contradicted by the documents DOJ itself enclosed.** This is not a case in which the government applied one version of a framework while the claimant invoked another. The enclosure the offer letters describe as the "amended" Public Guidance is the Public Guidance and FAQ on which Movants rely, transmitted by DOJ with the very letters at issue and identical to the published versions word for word. Ex. E at 1; Ex. F at 2; Exs. A, B. Movants are aware of no version of the guidance, published or transmitted, that supplies a thirty-day period or automatic declination. An agency may not deny a benefit on the basis of criteria it has not disclosed, *cf. Morton*, 415 U.S. at 235, and it may not impose terms that the guidance it places in the claimant's hands contradicts.

The Fourth Circuit stated the rule in terms that apply directly to this Department: "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1969). The court traced that doctrine to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), where "[t]he failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due

process." *Heffner*, 420 F.2d at 812. The Circuit has since described the doctrine in the same terms: "when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid." *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008), *quoted in Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025). The Supreme Court has put it the same way: "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures," and this is so "even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

*Heffner* answers in advance the objection that the government was free to design the EO as it wished. Addressing procedures the Internal Revenue Service had adopted voluntarily, the Fourth Circuit held that "[i]t is of no significance that the procedures or instructions which the IRS has established are more generous than the Constitution requires," and quoted the Supreme Court's holding that although the Secretary "was not obligated to impose upon himself these more rigorous substantive and procedural standards, . . . having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them." *Id.* at 812 (quoting *Service v. Dulles*, 354 U.S. 363, 388 (1957)). The same is true of the Elective Option. The government was free not to create it, and it remains free to amend or withdraw it prospectively. What it may not do is publish the framework, invite claimants to rely on it, and then decline to apply it in individual cases without explanation or application of its procedures.[3]

[3] The doctrine has two limits, and neither applies here. It does not reach internal policies "not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025) (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)), and it requires a showing of substantial prejudice. *See id.*; *United States v. Morgan*, 193 F.3d 252, 267 (4th Cir. 1999). The Public Guidance and FAQ are published documents, not internal memoranda, and their evident purpose is to confer procedural benefits on individual claimants, including a written right to correct an offer "based on incorrect information, such as an incorrect length of residence," FAQ No. 13, in an area where the government's settlement discretion would otherwise be unfettered. The prejudice is concrete and permanent. Four Movants stand to receive half of what the grid provides and two stand to receive nothing; the offer letters state that upon non-response "another EO offer will not be made," and the guidance bars a subsequent offer once suit is filed. Public Guidance at

### *II. In the alternative, the process afforded was inadequate under the Mathews framework.*

Movants advance the foregoing principally as a failure to adhere to published procedure. To the extent the Court prefers to analyze the question as one of procedural due process under the Fifth Amendment, the analysis reaches the same place. A protected property interest requires "a legitimate claim of entitlement" rather than "a unilateral expectation," and such interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source . . . that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Movants do not contend that the EO creates an entitlement to be offered a settlement. Their contention is narrower: once the government determined that a claimant is eligible and fixed his injury tier and exposure duration and extended an offer, the plaintiff has secured a benefit of defined dimensions.

The adequacy of the process afforded turns on "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Each factor favors Movants. The private interest is $150,000 for each of the four claimants whose offers are underpriced, and the whole of the benefit for the two found ineligible; two of the six Movants are estates. The value of an additional safeguard is easily measured, because the safeguard Movants seek is the one the government itself published and then withheld. As to the government's interest, DOJ has asserted no burden of any kind, and its own public statements would foreclose the claim, having announced 649 approvals in three weeks and

---

6–7. For these Movants the Elective Option is a single, non-renewable opportunity, and the thirty-day term extinguishes it on September 27, 2026.

a commitment to "continue to approve settlements on a weekly basis." Press Release No. 26-231 (Mar. 10, 2026) (Ex. I).

## **CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court grant the Motion; set this matter for hearing at the Court's earliest convenience or refer it to the Settlement Masters with a direction to report to the Court; order the United States to state in writing, for each of the six Movants, the determinations the Public Guidance requires and the record sources on which they rest; toll the deadline to accept or decline the offers extended to Metcalfe, Abrams, and Griffin and to the Estate of Mark Kopp, pending the United States' compliance; and grant such further relief as the Court deems just.

Respectfully submitted, this the 10th day of September, 2026.

/s/ *James Z. Foster*
James Z. Foster
NC Bar No. 60197
FOSTER LAW LLC
1201 West Peachtree Street, NW, Suite 2300
Atlanta, GA 30309
Telephone: (404) 800-0050
Facsimile: (404) 493-2322
James@Foster-Law.com

*Counsel for Plaintiffs Metcalfe, Abrams, Griffin, Kopp, Coon, and Janovitch*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of September, 2026, I electronically filed the foregoing Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including Lead Counsel, Co-Lead Counsel, and Liaison Counsel for the Plaintiffs' Leadership Group and counsel for the United States.

/s/ *James Z. Foster*
James Z. Foster
NC Bar No. 60197

*Counsel for Plaintiffs Metcalfe, Abrams, Griffin, Kopp, Coon, and Janovitch*