# EXHIBIT 1

# D.E. [855]
# APRIL 20, 2026
# STATUS CONFERENCE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

---

IN RE: Case Number 7:23-CV-897

CAMP LEJEUNE WATER LITIGATION

---

APRIL 20, 2026
STATUS CONFERENCE
BEFORE THE HONORABLE ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On Behalf of the Plaintiffs:

J. Edward Bell, III, Esquire
Jenna Butler, Esquire
William Michael Dowling, Esquire
Jim Roberts, Esquire
Mona Lisa Wallace, Esquire
Robin Greenwald, Esquire (Via Telephone)

On Behalf of the Defendant:

J. Adam Bain, Esquire
Joshua Carpenito, Esquire
David Ortiz, Esquire
Sara Mirsky, Esquire
Stanley E. Woodward, Jr., Esquire
Jonathan Guynn, Esquire

Bobbie J. Shanfelder, RDR, CRR
Official Court Reporter
Bobbie_Shanfelder@nced.uscourts.gov

and PLG's review of the materials and assessment of their utility, the parties will discuss any potential use of these records within or outside of litigation. But the United States does not agree to any such use at this time. So we are all in agreement on the next steps for the Muster Rolls.

THE COURT: End of April is when they will be uploaded?

MS. MIRSKY: That's correct.

THE COURT: You said there was a time. There was a deadline you set after that?

MS. MIRSKY: I am hoping that the productions will begin approximately three weeks after that and the productions will be completed within five weeks.

THE COURT: So --

MS. MIRSKY: Mid to late June would be my hope, and we will, of course, provide any updates if there is an issue along the way.

THE COURT: And the Muster Rolls, the relevance of the Muster Rolls is? Fill in the blank.

MS. WALLACE: Your Honor, they do provide information.

THE COURT: Who was where and when?

MS. WALLACE: Not for everyone but yes, sir, generally. We were not -- we requested to be allowed to look at a sample of what they are producing before we agreed and

# AUGUST 24, 2026
# LETTER FROM PLG

BELL LEGAL GROUP

August 24, 2026

Dear Counsel:

Please accept this as a detailed follow-up on the issue that was discussed in the Status Conference and in chambers regarding PLG's request that the DOJ consent to the use of the Marine Core Documents Project (hereinafter MCDP) for both litigation purposes and for the administrative process, including EOs and prospective global resolution. The DOJ requested that PLG provide more information as to what documents we have found to exist, the process by which we recommend these documents be assessed and used, and examples supporting our description of why and how these documents are necessary for litigation and administration. Please see the information that is provided below.

**Marine Core Documents Project (MCDP)**

In our review of the documents provided to date for the MCDP, we have concluded that the total files represented on the five drives amount to 3,313,211 files which have a total page count of 99,758,108 pages. These documents can be broadly divided into three groups:

1. Muster Roll & Unit Diaries;
2. Bi-weekly, monthly, quarterly USMC Marine Locator Reports; and
3. Other Document Types.

**Muster Roll & Unit Diaries**

Due to the fact that the MCDP is not a database but rather a document collection, it is not possible to provide an exact file/page count of the Muster Roll & Unit Diaries. The best estimate is provided by taking a close look at what is known as the Muster Roll Index. The Muster Roll Index is a listing of all Units for each year broken out by reel number for the years 1953 to 1977. There are a total of 46,843 Unit Diary and Muster Roll listings/reels in the Index. There is an average of 267 reels per year and each Muster Roll - Unit Diary is typically hundreds of pages long with multiple names per page. We estimate there are more than 409,000,000 data points in this portion of the MCDP.

**Bi-weekly, monthly, quarterly USMC Marine Locator Reports**

BELL LEGAL GROUP 219 NORTH RIDGE STREET GEORGETOWN, SC 29440
office 843.546.2408 fax 843.546.9604 www.BellLegalGroup.com

Besides the expected Quarterly/Monthly Muster Rolls - Unit Diaries the following document types have been found:

a. United States Marine Corps Locator in Alphabetical Sequence;
b. Consolidated Marine Corps Transaction Register - Reporting Unit Sequence;
c. US Marine Corps Field Research Locator Social Security Sequence;
d. Historical Transaction Register – Quarterly;
e. Historical Transaction Register Monthly;
f. Accessions to the Retired-Reserve Personnel;
g. Monthly Locator of Retired - Reserve Officers;
h. Monthly Locator of Retired - Reserve Personnel;
i. Monthly Locator of Retired Marine Corps Enlisted;
j. Monthly Locator of Retired Marine Corps General Officers;
k. Reserve Alpha Locator Report;
l. Reserve Alpha Locator;
m. Retired and Fleet Marine Corps Reserve Personnel Summary;
n. SSN TTD Listing; and
o. US Marine Corps Reserve Enlisted Locator.

This list is not meant to represent every type of document present in the MCDP, but based on our review to date, the list above appears to represent the majority of the documents found on the hard drives in addition to the Muster Rolls and Unit Diaries.

After reviewing the data included in each of the document types listed above, it was found that five of the document types provided data relevant to the issue at hand – establishing a Marine's presence at Camp Lejune between August 1953 and December 1987. The five document types are as follows:

1. United States Marine Corps Locator in Alphabetical Sequence;
2. Consolidated Marine Corps Transaction Register - Reporting Unit Sequence;
3. US Marine Corps Field Research Locator Social Security Sequence;
4. Historical Transaction Register – Quarterly; and
5. Historical Transaction Register Monthly.

Each of these documents/document types is searchable by SSN and will provide a date and the RUC/UIC code at the time of the report. The exception to this is the Consolidated Marine Corps Transaction Register - Reporting Unit Sequence which can provide multiple data points per SSN search.

To provide an idea of the amount of data points represented by these documents, the following table has been generated. The average page count per document type varies as does the number of Marines listed per page, but to give an idea of the number of potential data points these documents provide, a random document of each type was used to estimate the total data points.

| Document Type | Total Docs | Pages per Doc | Marines per Page | Data Points |
|---|---|---|---|---|
| United States Marine Corps Locator in Alphabetical Sequence | 31,484 | 250 | 90 | 708,390,000 |
| Consolidated Marine Corps Transaction Register - Reporting Unit Sequence | 49,157 | 270 | 50 | 663,619,500 |
| US Marine Corps Field Research Locator Social Security Sequence | 49,729 | 184 | 45 | 411,756,120 |

**Other Document Types**

In addition to document types already discussed, the MCDP has additional document types including:

1. Official Military Personnel Files (OMPF) (Tens of thousands; many of which have the Record of Service and/or the Chronological Record);
2. Awards (240,807 files, 171 gig);
3. Reserve & Retirement Reports.

**PLG Technical Group Work to Date with MCDP**

These documents took longer to be produced than DOJ had originally predicted. Since receiving the first hard drive, the PLG's Technical Group has been developing tools and software to allow documents on the five hard drives to be searched based on name, SSN and Service Number. The Technical Group has automated several processes and is continuing to position itself to be able to handle bulk search requests for these documents. Much of this work can be demonstrated upon request. One of the key areas that has already been addressed is the issue of privacy. The search results return the document source file name and the bates numbers for each page referenced per document. For each source document where there are one or more hits, our Technical Group has created an auto redaction feature that removes all other individuals' data from each page.

**Where and how to use the Marine Core Documents Project Document Collection**

Simply put, there is no other comparable data source available that offers what the MCDP does. It is important to remember that this was a USMC project that was contracted outside of the Camp Lejeune litigation, which took years and cost millions of dollars. The resulting document collection represents the entire USMC not just Camp Lejeune. With the appropriate user interface, which the PLG's Technical Group has already started developing, there are over one billion datapoints accessible.

While it has been recognized that the Record of Service and/or the Chronological Record are significant single documents that often represent a Marine's stay at Camp Lejeune, it has also been found that there is a dire need for alternative data sources including the MCDP.

Because of the variety of document types included in the MCDP, the typical search results produce hits in more than one document type. The advantage of this feature is that these reports have different run dates or the client-specific date varies from one document type to another. This information combined with the hits in the Unit Diaries and Muster Rolls creates a varying data set that is not limited to a once-a-month or once-a-quarter snapshot which occurs

when using only the Muster Rolls. While these records will not provide a daily analysis of where the Marine servicemember was and what he or she did, it will fill in gaps to create a much more meaningful and detailed picture.

**Missing Record of Service and Chronological Record**

It is not possible to quantify the frequency of the Official Military Personnel Files (OMPF) not including either the Record of Service or the Chronological Record, but law firms and stakeholders involved in this litigation have experienced this situation where information is missing. Here is a sample email to the PLG Technical Group:

- "Do you mind searching for another service member? His name was Douglas Dewain Bristol. Unfortunately, we've only received 19 pages from the National Archives, and we were not provided with his record of service/chronological record. Camp Lejeune is only documented on his DD214, and it shows that he was discharged from there on January 26, 1973. We're especially curious to know whether he spent any time at Camp Lejeune during his reserve time."

This client's information was entered as a search in the MCDP and the bulk result was 53 non-duplicative documents, one of which was the missing Record of Service for this very client. Even without the Record of Service, the other 51 documents that were surfaced provided multiple data points that largely mirrored the missing data from the Record of Service.

**Record of Service and Chronological Record are Completely Illegible**

All people involved in decoding the Record of Service have been faced with receiving a document that cannot be read similar to the one shown below.



In these cases, there has to be an alternative available and now there is – the MCDP.

**Record of Service and Chronological Record are Partially Readable**

Another example of a situation where the access to the MCDP assists is where only part of the Record of Service can be decoded, as in the example below:



Veronica Taylor 10-26-81 5

9-29-79

RECORD OF SERVICE

| ORGANIZATION | DATE | REASON | PRIMARY DUTY | PROFICIENCY |
|---|---|---|---|---|
| [illegible] | [illegible] | Jd | Recruit | |
| | 731210 | Tr | Recruit | 4.2 4.0 |
| [illegible] | 740104 | JD | STUDENT | |
| | 740[illegible]4 | TR | STUDENT | 4.3 4.3 |
| CorrServCo, H&S Bn, MCB, CamLej | 740216 | Jd | CorrMan | |
| | 7407[illegible] | SEMI-ANN | CORR MAN | 4.2 4.5 4.5 |
| [illegible]ServCo, H&S Bn, MCB, Camp Lejeune, NC 28542 | 740805 | To Sk | Patient | |
| [illegible]ServCo, H&S Bn, MCB, Camp Lejeune, NC 28542 | 740913 | To Du | CORR MAN | |
| | [illegible] | | | 4.0 4.0 4.0 |
| | 750224 | ChngPri Du | PostalClerk | |
| | [illegible] | | | 4.7 4.6 4.8 |

**Record of Service and Chronological Record Critical Entries are not readable**

The example below shows where there are blank or unreadable lines near the Camp Lejeune specific entries that could affect the total time on base.

**RECORD OF SERVICE**

| ORGANIZATION | DATE | REASON | PRIMARY DUTY | CONDUCT | PROFICIENCY | SIGNATURE OF MARKING OFFICER |
|---|---|---|---|---|---|---|
| USMC RS Richmond, Va | 29Jan57 | Enl/Tr | | | | Capt USMC |
| RctRTrngBn MCRDep Parris Island SC | JAN 30 1957 | Jd. | Under Recruit Instruction | | | By D |
| 1stRTBn, MCRDep, PISC | 7May57 | Tr | UnderRecTrng | 4.0 | 3.2 | By CWO |
| Q Co 3rdBn 1stInfTrng Regt MCB, CLNC | 8 APR 1957 | JD | Under Instr, Ind Cmbt Trng | | | By Di |
| Q Co 3rdBn 1stInfTrng Regt MCB, CLNC | 14 JUN 1957 | TR | Under Instr Inf Cmbt Trng | 4.1 | 4.0 | 1st Lt |
| [illegible] | 15Jun57 | Jd | BARman | | | By Di |
| A Co, 2dBn 6thMar 2dMarDivFMF | 31 JUL 1957 | Semi-an | Barman | 4.1 | 4.1 | Co |
| CoE 2ndBn 6thMar 2ndMarDiv FMF CLNC | 31Sept57 | Ch Pri du | Messmen | | | By di |
| CoE 2ndBn 6thMar 2ndMarDiv FMF CLNC | 30Oct57 | Ch Pri du | Barman | | | By d |
| [illegible] | 27 [illegible] | TR | | 4.0 | 4.0 | |
| Co A 2dReconBn 2dMarDiv FMF CLNC | 28 JAN 1958 | Joined | Machine Gunner | | | CAPT |
| Co"A",2dReconBn,2d MarDiv, FMF, CLNC | 14Feb58 | Tran | MachineGunner | 4.0 | 2.9 | Capt |
| ACo, 1stBn, 6thMar 2dMarDivFMF, CLNC | 15Feb58 | Jd | Ammo Carrier LMG | | | By Dir |
| A Co, 1st Bn, 6th Mar 2nd MarDiv, FMF | 28Mar58 | Ch Pri Du | Messman | | | By D |
| A Co, 1st Bn, 6th Marines 2nd MarDiv, FMF, CLNC | 28Apr58 | Ch Pri DU | Ammo Carrier LMG | | | By Di |
| A Co 1st Bn [illegible] 2nd MarDiv, FMF, CLNC | 31Jul58 | Semi-An | Ammo Carrier LMG | 4.1 | 3.6 | CO |
| "A"Co,1stBn,6thMar 2dMarDiv,FMF,CLNC | 16Sep58 | Tr | Ammo Carrier LMG | 4.0 | 4.1 | CO |

The PLG Technical Group's Record of Service decoding software flags each entry that does not translate as requiring human review. They are in process of having these flags used to offer a functionality where if they could impact the time at Camp Lejeune, the system will automatically run an MCDP search in an attempt to fill these voids with data points.

## EO Settlement Matrix

The EO settlement matrix provides for three exposure periods that consecutively represent significant increases in payout amounts. The first period is 30 days. If the claimant's time at Camp Lejeune is not of at least 30 days, then the claimant is not eligible for an EO payment. The next key exposure time period is 364 to 365 days. Here, one day represents a $150,000 increase, or decrease, in payout. The final exposure time period takes place at five years. Again, if someone ends up at five years minus one day, then he or she is not eligible for the next $150,000 increase in payout. These three periods -- of 30 days, 364/365 days, and 1824/1825 days respectively -- represent where having as accurate a picture of the claimant's exposure is critical to the process to help determine the amount of the EO compensation. The MCDP is necessary for stakeholders where claimant time on base falls close to one of these three

points because the data assists in accounting for all legitimate Camp Lejeune time when reviewing the claimant's records.

| **Exposure Period** | **Tier 1 Injury** | **Tier 2 Injury** |
|---|---|---|
| 30 days to 364 days | $150,000 | $100,000 |
| 1 year to 5 years | $300,000 | $250,000 |
| More than 5 years | $450,000 | $400,000 |

Obviously, the data from the MCDP becomes relevant when assessing days of exposure, for example in fact situations in which the Marine recalls the exposure period existed, but there is difficulty in accessing full documentation to confirm the full exposure period.

**Surrogate for Record of Service and Chronological Record**

The PLG Technical Group have compared the results of the MCDP search results to the Bellwether plaintiffs' exposure results used by the experts in this case. The comparisons were very positive. If the claimant's total time falls into the middle of the one-to-five-year cutoff points, then the MCDP results could be used as a surrogate for the Record of Service or Chronological Record.

**Fraud Check**

The DOJ has indicated during settlement negotiations that it is concerned with claims that may have been fraudulently made, a concern that PLG shares. Use of the MCDP data will alleviate the concerns of fraud for not only the parties but also the Court as well.

With over a billion datapoints representing the entire USMC, it is highly likely that a Marine would have positive search results when entered into the MCDP. The MCDP can be important data to be used to verify time and presence on base and to further corroborate the accuracy of declarations or affidavits to establish time and presence on base.

A recent request to the PLG Technical Group involved a situation where a client's military file did not indicate time at Camp Lejeune; a DD214 said that he had four weeks of combat engineer schooling but did not indicate where; the claimant insisted that he had been at Camp Lejeune after boot camp; his dates at Camp Lejeune were estimated at 5/12/69-7/30/69. A search was performed on the MCDP and there was one result that corroborated the client's claim.




Page 30 of 45 CLJA_USMC_DIGITIZED_0040429808

**Conclusion**

We estimate that the Record of Service defects, missing and illegible records, and other missing data affects a significant number of the records. As illustrated above, the MCDP represents a unique data set that can serve multiple purposes in the Camp Lejeune claimant evaluation process and there is no other comparable data set available to supplement and/or serve as an alternative to the Record of Service or Chronological Record documents. The MCDP is a very effective tool to assist in resolving many of the remaining 5,000 deficient EOs that still exist and could be an integral part of a prospective settlement matrix.

Based on all of the above, we are requesting that the DOJ agree to allow these records to be used for both litigation and administrative purposes. We look forward to further discussing the terms of a Protective Order to address the use of this data and to satisfy DOJ concerns of confidentiality.

We would like to quickly be in a position to share that we have this data with other law firms who have filed Camp Lejeune claims, particularly those who are trying to get their clients' claims substantiated under the EO process.

Please advise if the DOJ is willing to agree to this request for MCDP access to alleviate the need to file a Motion with the Court. We continue to believe that a meet-and-confer call would be helpful. We are also willing to have our technical experts to join the call to answer any other questions that you may have.

With kindest regards, I am

Yours very truly,

*s/J. Edward Bell, III*

J. Edward Bell, III

JEBIII/djb

cc: Plaintiffs' Co-Lead Counsel

# SEPTEMBER 3, 2026 LETTER FROM DOJ

**U.S. Department of Justice**
Civil Division, Torts Branch
Camp Lejeune Justice Act Section

*Sara J. Mirsky*
*Email: sara.j.mirsky@usdoj.gov*

**VIA EMAIL** September 3, 2026

Lead Counsel for Plaintiffs
& Co-Lead Counsel for Plaintiffs

**Re:** ***Camp Lejeune Water Litigation – Response Regarding PLG's MCDP Proposal***

Counsel,

We are in receipt of your August 24, 2026 letter. We are still reviewing its contents, but are responding now with some initial questions and comments.

***First***, please confirm that no information from the "MCDP" records has been shared with anyone who did not sign the certification pursuant to the Third Amended Protective Order. There are several references to unnamed individuals asking questions about specific claimants, with screenshots purportedly from MCDP records included thereafter. It is unclear whether the individuals sending these questions are those who signed the certifications, and/or whether the resulting screenshots or related documents were sent to those individuals. Please clarify this issue and confirm that no one other than those who signed the certifications has access to the MCDP records.

To ensure adherence to the Third Amended Protective Order, please also confirm whether access to MCDP records is memorialized or otherwise logged and whether any derivative materials (*e.g.*, screenshots, extracted text, or summary tables) have been shared outside the certification list.

***Second***, please provide specifics on the work that Bill Williams and the "PLG Technical Group" have done thus far and intend to do in order to search through the records. For example, there are references to the Technical Group having "automated several processes" and working to "handle bulk search requests." (Aug. 24, 2026 Ltr. at 3). There is also a reference to the search results returning a document's "source file name and the bates number." *Id.* The Technical Group has also "created an auto redaction feature that removes all other individuals' data from each page." *Id.* There is also reference to a "user interface, which the PLG's Technical Group has already started developing . . . ." *Id.* The letter also references "[t]he PLG's Technical Group's Record of Service decoding software, [which] flags each entry that does not translate as requiring human review." (*Id.* at 7).

Please also confirm whether your searches rely on the OCR text that the United States produced with the MCDP records, whether extracted text/metadata are stored separately from the original images, and how those materials are linked to Bates ranges. In addition, please indicate whether your system can produce basic provenance summaries and whether query results are deterministic so our technical teams can prepare for a focused follow-up session. Because each of these features affects how the underlying MCDP data is processed and transformed before

search results are produced, a brief explanation of these workflows will help ensure that any subsequent technical review focuses on the correct components and does not require repeated rounds of clarification.

As previously stated, the United States requires information in writing regarding any programs, software, or other data manipulation that the PLG Technical Group is performing. A preview of any system or process over Zoom will not be sufficient, as multiple stakeholders' technical teams will need to review how the data is being used before granting any authorization to use the MCDP records in the litigation and/or administrative claims process. In addition, please clarify whether any of these processes or systems are utilizing Artificial Intelligence ("AI"). This is particularly important to know given the vast amount of personally identifiable information ("PII") included in the MCDP records—especially for those who were not at Camp Lejeune or do not have a claim or lawsuit under the Camp Lejeune Justice Act. If AI is being used, please clarify which platform is being used and the protections in place to ensure that the data being uploaded is being maintained in a "closed universe."

***Third***, please provide details regarding the proposed product resulting from PLG's use of the MCDP records. Will there be a request process in place for claimants or litigants to gain access to their records? If so, what would that look like? During our discussion following the August 17, 2026, Status Conference, PLG indicated that there may be a paragraph generated for each claimant or litigant with relevant information and corresponding Bates pages. Is that still the intent? Would that paragraph include any PII? Or is it PLG's intent to produce the relevant pages resulting from the "auto redaction feature" to requesting claimants/litigants? Relatedly, what is PLG's proposal for how this information will be eventually transmitted to the United States for review?

Because your letter references both a developing user interface and the ability to conduct bulk searches within the MCDP, please clarify whether these tools will be used to generate or deliver the resulting product. For example, will these tools be used to assemble claimant-specific summaries or exporting the relevant redacted pages? Please also confirm whether PLG can also provide a brief lineage note and minimal validation artifact (such as a simple manifest or hash list) to support a focused technical follow-up and allow DOJ to reproduce the basic search path.

***Fourth***, please provide additional details as to how any PII within the MCDP records will be secured if the data is available to other parties, and how PLG will protect against violations of the Privacy Act. In this regard, please offer specific proposals regarding revisions of the existing Protective Order, or a new Protective Order to safeguard this information.

Without requesting detailed metrics at this stage, please also confirm whether and how the automated redaction feature is tested for accuracy (*e.g.*, false-negative/false-positive checks across document types), and whether human review guidelines exist with a mechanism to ensure consistent reviewer decisions. A brief description of these routine quality check practices will help us prepare for any subsequent technical discussions.

***Fifth***, please confirm whether PLG intends to require claimants or litigants who may seek to access the MCDP records to consent to joining PLG's Common Benefit Fund ("CBF"). In addition, because PLG's letter suggests that searches, redaction processes, and exposure summaries may rely on tools or data structures developed by the PLG Technical Group itself,

please clarify whether any such CBF requirement would apply not only to claimant-facing outputs, but also to technical materials that DOJ may need to review—such as basic provenance notes, validation artifacts, or other minimal information necessary to understand how the MCDP data is being processed and linked to source records. We raise this point only at a high level now, but it will be important to ensure that any future technical exchange does not become contingent on financial or cost-sharing conditions tied to PLG's common-benefit work.

These issues and potentially others need to be assessed by the Department of Justice, the Department of Navy ("Navy"), and the United States Marine Corps ("USMC"). We have engaged with Navy and USMC counsel, and they are currently reviewing PLG's August 24, 2026, letter. If they have additional questions or concerns, we will communicate them promptly to PLG.

Overall, the United States has not yet made a determination as to whether it will consent to the MCDP records being used in the wider litigation and/or the administrative claims process, and reserves all rights accordingly. While the United States is not responding to every point in PLG's August 24, 2026 letter, we reiterate that PLG has had access to hundreds of thousands of pages of muster rolls for years, and could have accessed the records at issue in hardcopy format as well.

Moving forward, once we have answers and clarifications regarding the above and can assess the responses, we would be happy to set up a further discussion. We agree that having representatives with technical knowledge available will be helpful to ensure a productive discussion.

Best Regards,

*/s/ Sara J. Mirsky*

Sara J. Mirsky
Assistant Director
U.S. Department of Justice
Civil Division, Torts Branch

# SEPTEMBER 16, 2026
# EMAIL FROM PLG

**From:** Mona Wallace <mwallace@wallacegraham.com>
**Sent:** Wednesday, September 16, 2026 4:19 PM
**To:** Mirsky, Sara J. (CIV) <sara.j.mirsky@usdoj.gov>; Lipscomb, Bridget (CIV) <Bridget.Lipscomb@usdoj.gov>; Bain, Adam (CIV) <Adam.Bain@usdoj.gov>; Adams, Jennifer E (CIV) <Jennifer.E.Adams@usdoj.gov>; Carpenito, Joshua G. (CIV) <Joshua.G.Carpenito@usdoj.gov>
**Cc:** Linda Wike <LWike@wallacegraham.com>; Eric Flynn <eflynn@belllegalgroup.com>; CL | CO-LEAD & LIAISON COUNSEL <co-lead.liaison.counsel@belllegalgroup.com>; John Hughes <JHughes@wallacegraham.com>
**Subject:** CLJA -- Lejeune Muster Roll/MCDP documents

Sara:

Thank you for your September 3, 2026 letter. In our August 24 letter, PLG described the MCDP records, their relevance to establishing a veteran's circumstances, and the process we intended to use to search them. We also asked DOJ to permit all claimants to use this government data for litigation and administrative purposes. Your response did not address that request. We ask again that DOJ approve the protected use of the records.

For background, the muster rolls, unit diaries, and other produced documents provide complementary evidence of a veteran's relevant facts and circumstances during their service. Using all available data improves the accuracy of individual claim review, helps prevent fraud, and supplements records that are unavailable or incomplete for many claimants seeking EO offers. This information can also make global resolution easier to achieve. Accordingly, it is important that the DOJ promptly allow PLG use of the materials.

DOJ's initial concern was confidentiality. However, PLG has not shared the MCDP records or data with anyone who has not signed the Third Amended Protective Order, and neither search results nor search details have been distributed. Our process complies with the Protective Order and there should be no basis for a confidentiality concern.

We object to having to exhaustively detail the work product regarding our consultants and PLG Technical Group simply in order to be able to use the documents. However, we are nonetheless providing the additional information below regarding the other topics raised by DOJ in an effort to address any concerns:

**Data security and access.** The data from the five original DOJ hard drives has been copied to two 12-TB external work drives so all records can be searched together. The original drives are kept in a safe. The work drives remain with a PLG Technical Group member or in the safe and are used virtually every day; PLG has not maintained a separate access log. Indexes and SQL databases remain on the work drives, and no subsets are stored on any other computer or portable drive. Each database record links to the DOJ source file name, Bates number, and page number.

**Search methodology and validation.** The user interface is offline software available only to the PLG Technical Group; no public access has been provided or is planned. PLG is not using broad text searching but rather SQL databases built from the text layer of DOJ's original PDFs.

The search tool uses SSN, service number, and standardized name. A complete nine-digit SSN produces a confirmed exact match. When source data contains an incomplete SSN, the tool may

also return records matched by service number or name; these are ranked as possible supporting evidence, not verified SSN matches. Each result identifies or links to the source PDF, file path, Bates number, page, dates, and RUC for verification. Testing to date shows deterministic query results across document types.

**Automation bulk searches and AI.** The references in our August 24 letter to automation and bulk searches describe software that replaces manual searches and can process either one client or multiple clients from standardized data while producing client-specific outputs. The automatic-redaction feature remains in development and may not be deployed. Although AI assisted in building the standalone MCDP tools, those tools do not rely on AI when they operate. PLG uses AI separately in the Record of Service decoding process, only after the person's name and SSN or service number are redacted, to OCR the text and produce a summary table. All AI work uses ChatGPT Business and is not used for machine learning.

**Claimant access and output.** PLG currently recommends maintaining tight control of the data and serving as the interface, with other parties receiving only client-specific search results. No broader access has been discussed. The final output format and request process remain open for discussion. We believe the source file name, Bates number, and page number provide sufficient lineage for DOJ and Navy to verify each result.

**Technical follow-up and costs.** We understand that neither DOJ nor Navy has developed a comparable system. Once DOJ agrees that the information may be used, PLG will make its consultant available to explain how the data is processed and linked to source records and to address remaining technical questions. PLG is also willing to discuss how the development, use, and sharing costs should be allocated.

We trust that the information about addresses DOJ's concerns. We ask again that DOJ please advise whether DOJ will agree to PLG's request to allow protected use of these records in litigation and administrative proceedings. We believe that PLG has provided more than adequate information to address any concerns of DOJ and to facilitate allowing the documents to be used.

In the last Joint Status Report dated September 14, 2026, PLG described that we would send this letter by today and propose a meet-and-confer with the DOJ for the week of September 21st. Accordingly, we request that DOJ please advise by the close of business Friday whether DOJ will agree to the use of the documents. If DOJ still believes there are meet-and-confer items, please advise us by that time and provide your availability for a Zoom next week. If the parties cannot resolve the issue, then the PLG will have no option but to file a motion with the Court.

**Mona Lisa Wallace, Esq. | Partner**
**Wallace & Graham, PA**
525 N. Main Street
Salisbury, NC 28144
704-633-5244 | (800) 849-5291
Fax: 704-633-9434
wallacegraham.com

# SEPTEMBER 29, 2026
# LETTER FROM DOJ

**U.S. Department of Justice**
Civil Division, Torts Branch

*Jennifer E. Adams, Trial Attorney*
*Email: Jennifer.E.Adams@usdoj.gov*

**<u>VIA EMAIL</u>**
Lead Counsel for Plaintiffs
& Co-Lead Counsel for Plaintiffs

September 29, 2026

**Re:** ***Camp Lejeune Water Litigation – Proposed 4th Amended Protective Order***

Dear Counsel:

We write to provide our comments regarding your proposed Fourth Amended Stipulated Protective Order, which you sent to us on September 24, 2026. As we stated in our September 25, 2026, meet-and-confer, with an appropriate Protective Order, the relevant stakeholders are willing to permit use in the litigation of what you define as the "Marine Corps Project Data" (MCPD). However, at this time, they are not willing to broaden that permission beyond the litigation. Therefore, we cannot accept your proposed language in Paragraph 5(f) referring to the "administrative claim process."

We also propose that the definition of MCPD (Paragraph 1(b)(13)) be revised to reflect the Bates numbers, rather than the general description you have proposed.

Before submitting our proposed language for the protective order, we have some clarifying questions regarding your other proposed changes:

1. What is the purpose of the proposed language regarding DMDC/USMC Camp Lejeune Family Housing Card Database data, Paragraph 5(e)(ii)-(iv)? Our current discussion is regarding MCPD, not the housing data that has already been negotiated and utilized for quite some time.

2. Regarding MCPD, specifically Paragraph 5(f)(i)(5):

   a. Who is the PLG Designee, and what is the PLG Designee's platform? These terms are not defined in your proposal.

   b. What do you mean by "in a format provided by PLG's Designee"?

   c. Unlike Rubris, we do not have access to the "PLG Designee's platform." How are you requiring and tracking users' certification that they meet the requirements of the protective order?

3. Regarding Paragraph 5(f)(iii), what is the significance of including "any person with prior authorized access" to the MCPD data? Also, we presume that the reference to the "Camp Lejeune Family Housing Card Database data" is an extraneous carryover from the previous DMDC paragraph. Please confirm if this is not the case, and explain why this reference is necessary here.

4. What is the purpose of providing access to "Qualified Persons, as defined in Section 5(c)" in Paragraph 5(f)(iv)? This appears to broaden access to individuals who would not be subject to the MCPD-specific requirements in Paragraph 5(f)(i).

Once we receive your answers to our questions, or a new proposed order that addresses such questions, we will provide our proposed language for the 4th Amended Protective Order.

Sincerely,

*/s/ Jennifer E. Adams*
Jennifer E. Adams
Trial Attorney
U.S. Department of Justice
Camp Lejeune Justice Act Section

# OCTOBER 12, 2026
# EMAIL FROM PLG

**From:** Mona Wallace
**Sent:** Monday, October 12, 2026 1:05 PM
**To:** Adams, Jennifer E (CIV) <jennifer.e.adams@usdoj.gov>; Mirsky, Sara J. (CIV) <sara.j.mirsky@usdoj.gov>; Carpenito, Joshua G. (CIV) <joshua.g.carpenito@usdoj.gov>; Bain, Adam (CIV) <adam.bain@usdoj.gov>; Lipscomb, Bridget (CIV) <bridget.lipscomb@usdoj.gov>
**Cc:** CL | CO-LEAD & LIAISON COUNSEL <co-lead.liaison.counsel@belllegalgroup.com>
**Subject:** MCPD documents and Protective Order

**Requesting Quick Turnaround Response:**

Dear Jennifer:

Thank you for your letter dated September 29, 2026. We appreciate the fact that US DOJ states that with an appropriate Protective Order, DOJ is willing to permit use in the litigation of the MCPD data. We are disheartened that DOJ states that it is not willing to broaden that permission to allow its use for resolution efforts, and ask DOJ to reconsider.

As you are aware, the status of this issue was addressed on Friday, before Judge Jones, and we are under a very quick deadline to file our Motion if we cannot quickly agree. **Please respond to this email by the end of the day.** If you believe a call would be helpful, we are available all afternoon at your convenience.

With regard to the remainder of your letter, we have the following comments:

1. As to bates numbers, our understanding is that the appropriate bates number identifiers for the relevant data would be: CLJA_USMC_DIGITIZED_0000000001 to 0101112262. We ask that DOJ please confirm this is an accurate and adequate description of the data in question.

2. With regard to your numbered question (1) and DMDC/USMC housing card documents, we have edited the language at Paragraph 5(e)(ii) to (iv) to be the same as what is in the currently operative third protective order. See draft of the fourth protective order, attached.

3. With regard to your question (2)(a), the PLG Designee will appoint appropriate designees which may include the Settlement Administrators, Settlement Masters, Rubris and/or others as additional designees if reasonably necessary. We will confirm the appropriate Protective Order has been executed.

4. With regard to your question (2)(b), the formatting that the PLG Designee chooses to use will be dependent on what information the Designee is being requested to provide.

5. With regard to your question (2)(c), PLG along with the Designee will use proper systems to ensure that users' certifications are required and tracked, again like Rubris. There have been no issues with the similar process used by Rubris to date.

6. With regard to your question (3), we are unwilling to remove the language in paragraph 5(f)(iii). The Court clearly has jurisdiction over the settlement and resolution process. The Court has a vested interest in resolution and has issued several Orders addressing resolution none of which DOJ has objected to as outside its jurisdiction. Furthermore, as to the EO, it is the DOJ who has routinely reported to the Court on the status of the EO process, and who has complained that over 90% of those who may qualify, have been unable to substantiate their claims. Obviously, the DOJ has information that these claimants do not have and it is disingenuous as best to complain that the claimants are not substantiating their claims, while simultaneously denying them access to the data that would allow them to do so.

7. With regard to your question (4), we had carried-over the "qualified person" language so it was being used in connection with the MCPD data similarly to the provisions regarding the housing cards at paragraph 5(e).

Finally, please know that the PLG is committed in good faith to seeking a global resolution of all claims. In settlement negotiations and for the purpose of gaining a better understanding of the number of potential participants of the settlement, their locations, and times on base, this data allows PLG to develop meaningful information that will reasonably expedite a global resolution.

We anticipate filing our Motion tomorrow as directed and anxiously await your prompt response today to this letter and the proposed Protective Order.

**Mona Lisa Wallace, Esq. | Partner**
**Wallace & Graham, PA**
525 N. Main Street
Salisbury, NC 28144
704-633-5244 | (800) 849-5291
Fax: 704-633-9434
wallacegraham.com