IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-897

| | |
|---|---|
| **IN RE:** | ) |
| | ) |
| **CAMP LEJEUNE WATER LITIGATION** | ) |
| | ) |
| **This Document Relates to: ALL CASES** | ) |

# PLAINTIFFS' LEADERSHIP GROUP'S BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT UNITED STATES OF AMERICA TO ALLOW REASONABLE USE OF "MARINE CORPS DATA PROJECT" DOCUMENTS

The Plaintiffs' Leadership Group (the "PLG"), pursuant to Fed. R. Civ. P. 26 and 37, and LR 7.1, hereby respectfully file PLG's brief in support of PLG's renewed Motion to Compel requesting that the Court order Defendant United States of America ("Defendant") to allow appropriate use of Marine Corps Data Project ("MCDP") data under the terms of a proposed Fourth Amended Protective Order. In support, PLG further shows as follows:

I. Preliminary Statement

The Marine Corps Data Project documents have been an issue in this litigation for years. They shouldn't be. They are often the best evidence for Marine claimants who were at Camp Lejeune as teenagers or in their early 20s and do not recall specifics about their time and location on base. These documents establish that information for these claimants. The government should not limit or hamper claimants' use of this database to establish their claim. Nowhere is this more important than in the resolution process where both sides have an interest in ensuring that those who were exposed to the chemicals in the Camp Lejeune water and have a compensable disease can establish their right to compensation. That is all PLG seeks in this motion: the right to use the database, for Camp Lejeune claimants

only, to work towards a fair and speedy resolution. It is confusing, at best, why the government resists this request, one that has the guardrails of a carefully worded protective order that ensures confidentiality of the data and limited for use in litigation, which encompasses resolution. The PLG's ability to use, and share with the DOJ, the data derived from the MCDP in confidential settlement discussions should materially advance and accelerate progress toward a global resolution. This is a pressing matter under this Court's orders regarding such discussions and will be protected under the terms of the accompanying (Proposed) Protective Order and F.R.E. 408.

## II. Factual Background and Meet and Confer Process

This Motion concerns Marine Corps Data Project ("MCDP") data. This data includes muster rolls; unit diaries; a United States Marine Corps Locator in Alphabetical Sequence; a Consolidated Marine Corps Transaction Register – Reporting Unit Sequence; a US Marine Corp Field Research Locator -- Social Security Sequence; a Historical Transaction Register – Quarterly; a Historical Transaction Register – Monthly; and other associated documents/data. The bates number identifiers for the relevant data are: CLJA_USMC_DIGITIZED_0000000001 to 0101112262.

Over a decade ago, the National Archives and Records Administration (NARA), a government agency tasked with maintaining archived government records, began a project of digitizing records related to Camp Lejeune and other military bases. The PLG requested this information in discovery in this litigation, specifically in Request for Production No. 3 ("Request 3"). [D.E. 81-3 at 10].

On December 21, 2023, Defendants filed a Motion for a Protective Order arguing the alleged over-broadness of the electronic information that Plaintiffs requested, that Defendants

offered for Plaintiffs to inspect hard copies of muster rolls, and that the government was working on getting digitized versions to Plaintiffs on a rolling basis.

After failed negotiations to receive the digitized information, the PLG on February 20, 2024, filed a Motion to Compel the production of the documents requested in Request No. 3. [D.E. 140].

On March 8, 2024, the Court denied as moot the Plaintiffs' motion to compel in light of the Defendants agreement in a sworn declaration to produce "all of the data and the associated database... from the NAS that was responsive to Plaintiffs' counsel's request." [D.E. 157 at 5].

On May 3, 2024, Plaintiffs filed a Motion to Reconsider, noting that while Defendants told the Court that "the present muster rolls on the NAS are not searchable by name. . . . there are no expectations that the current USMC digitization project will produce a database that is searchable by name to produce muster roll information (without multiple searches or selections.)" The PLG explained that contrary to the DOJ's position, newly discovered evidence showed that there was in fact a project to digitize personnel records for Camp Lejeune to create a searchable database. [D.E. 192 at 2 (quoting D.E. 150)]. This project is known as the Marine Corps Unit Diary Database (MUDD) and are the documents the PLG had requested in Request No. 3. In other words, the PLG believed that the data was capable of being word searched, contrary to DOJ's position, and subsequently undertook that process.

On December 18, 2025, the parties finally entered a Joint Motion to Hold Plaintiffs' Motion to Compel in Abeyance while the Parties continued to confer in good faith regarding a potential resolution. This Joint Resolution included that there would be a two-step approach to amending the existing Protective Order to allow for the disclosure and ultimate use of the documents. Moreover, it required that the parties provide a status update to the Court at the next status

conference scheduled for January 9, 2026. [D.E. 788]. To facilitate this process, the Parties filed the Motion for Entry of Third Amended Stipulated Protective Order on January 2, 2026 [D.E. 796; D.E. 804].

At the January 9, 2026, status conference, the DOJ acknowledged that PLG had agreed to carry the cost and pay for any of the downloading of these records, that the PLG had agreed to produce records downloaded at no cost to the DOJ, and, finally, that the purpose of the initial review was to determine if and how the PLG would need to use these records for the benefit of claimants. [D.E. 107 Transcript dated Jan 9. 2026] (See Exhibit 1 to Motion to Compel). The PLG complied with that agreement but has yet has been unable to use the produced documents for litigation (and of course necessarily resolution) purposes without an agreed upon protective order – the very reason they were requested in the first place -- despite the significant costs and efforts involved in procuring the data in a searchable form, a process which the DOJ had chosen not to undertake.

Similarly, as set forth in the February 26, 2026, Joint Status Report and subsequent Status Reports, and as discussed at the status conferences, the Parties agreed that "Once PLG has reviewed the productions, the Parties will discuss any proposed further use of these records in the context of the litigation and/or administrative process." [D.E. 817 at 14-15; D.E. 851 at 12]. In the April 20, 2026, status conference, Sara Mirsky made the statement that, "Following the completion of the productions and PLG's review of the materials and assessment of their utility, the parties will discuss any potential use of these records within or outside of litigation." [D.E. 855 at 13].

In the August 10, 2028, Joint Status Report, the PLG disclosed that it is "discussing the use of the digitized muster rolls as part of case resolution processes with the United States. Such

resolution processes include the Elective Option program and/or the global resolution discussions." [D.E. 909 at 5]; September 14, 2026, Joint Status Report (noting that "[t]he PLG has further assured the DOJ that the use and sharing of this data will comply with the protective order and address any DOJ confidentiality concerns.") [D.E. 916 at 7].

In a letter to DOJ from the PLG on August 24, 2026, in compliance with the DOJ requests, PLG described the information that can be generated from the documents the DOJ produced, the documents' relevance to the litigation, and the process, among other things, that PLG's technical experts and designees would use to search them for resolution purposes (See Exhibit 1 to Motion to Compel). PLG also requested that DOJ consent to PLG's use of the documents for both litigation/resolution and administrative purposes.[1]

In this regard, since their production and to date, DOJ has insisted that PLG not share these documents with anyone until there is either a court ruling or an agreement among the parties on the purposes for which the documents will be accessed and used; the PLG reluctantly complied even with that request, despite it being the PLG's work product.

On September 3, the DOJ asked additional questions inquiring even more specifics on the work product of the PLG team, including the specifics on the work that PLG's technical group had done to search the records and further detailed inquiries regarding the program software and internal and documentation processes (See Exhibit 1 to Motion to Compel). The PLG, once again, responded to the DOJ issues.

The September 14, 2026, Joint Status Report confirmed that PLG had finally received and reviewed the documents produced. [D.E. 916]. These included five hard drives composing

[1] It is also manifestly unfair for the Navy to deny EO claims stating that claimants lack adequate data to substantiate their EO claims, while at the same time, the Defendant refuses to allow PLG and claimants' lawyers to use the data to substantiate their claims.

3,313,211 files which have a total count of 99,758,108 pages. The Joint Status Report went on to explain that:

> "The PLG's review of these documents reflected that they can be divided into three groups: Muster Roll & Unit Diaries, Bi-weekly, monthly, and quarterly USMC Marine Locator Reports; and Other Document Types. As a result of their review, the PLG has determined that these documents are extremely useful, reasonably accessible, and helpful for the documentation of the veterans' time and location on base. Accordingly, the PLG has requested that DOJ agree to allow all claimants to have access to this government data for both litigation and administration purposes. The PLG has further assured the DOJ that the use and sharing of this data will comply with the protective order and address any DOJ confidentiality concerns."

[D.E. 916 at 7].

The DOJ's position, as set out in the September 14, 2026, Joint Status Report, is that it has continued to request information from the PLG regarding the tools and processes developed by PLG's Technical Group to explain how the data is being processed, as well as their other issues, and that DOJ:

> "has refrained from making any decision regarding use of the digitized files until it receives the requested information from PLG. The United States also maintains that this Court does not have jurisdiction over the administrative claims process, including decisions regarding what records the United States determines may be used in substantiating administrative claims. This has been reiterated multiple times, including in the Stipulated Third Amended Protective Order, which governs these digitized files. The Protective Order states that '[n]othing in this Protective Order expands the Eastern District of North Carolina's jurisdiction over the Department of the Navy's Camp Lejeune Justice Act administrative claim process ('Administrative Claim Process'), including, but not limited to the EO process for the Navy's Camp Lejeune Justice Act Administrative Claims.'"

[D.E. 916 at 15 (quoting D.E. 802 ¶ 2(l), at 8)].

On September 16, PLG responded to those questions, provided details about data security and access as well as search methodology, and again requested that the DOJ advise if it will consent to the use of the documents for both administrative and litigation purposes (See Exhibit 1 to Motion to Compel). Further, PLG requested a meet-and-confer.

On September 21, after the parties' status conference, PLG discussed these issues further with DOJ, and PLG agreed to prepare and send to DOJ a proposed Protective Order to provide additional answers to questions the DOJ raised and to ensure the confidentiality of the data.

On September 24, PLG sent to DOJ its proposed Fourth Amended Protective Order for DOJ's review, a copy is attached hereto.

On September 25, the parties conferred with members of DOJ to answer any questions regarding the documents. The DOJ advised PLG that:

i. DOJ outright opposes any use of this data for EO purposes.

ii. DOJ at this time will not consent to PLG's use of this data for global resolution purposes. (DOJ incorrectly contends there is no global resolution at this time, and that should there be, PLG can renew its request at that time).

iii. DOJ does agree to allow PLG to use this data for litigation, provided the parties can agree on appropriate confidentiality terms and on other issues.

Finally, on September 29, the DOJ responded to PLG's proposed Fourth Amended Protective Order with even more questions to which the PLG responded.

On Friday, October 9, the parties addressed the outstanding issues at the status conference before Judge Jones who advised the PLG to file its Motion to Compel if an impasse had been reached.

On Monday, October 12, the PLG sent email correspondence providing further information in response to DOJ's inquiries and attaching a revised proposed Fourth Amended Protective Order, again requesting the use of these documents for litigation/resolution purposes (See Exhibit 1 to Motion to Compel).

Finally, on October 13, 2026, the parties had a final meet-and-confer with regard to the above-noted issues but were still unable to resolve this dispute.

## III. <u>Argument</u>

While DOJ has provided the requested MCDP data to PLG for limited purposes of reviewing the data so as to assess it, that cannot be the sole purpose of production. Not only did the PLG work diligently, and at great costs and efforts, to make the valuable data usable, it did so for the benefit of claimants to determine whether the information would provide evidence of claimants' time and location on base. It does, it is relevant to this litigation, and the DOJ's baseless efforts to effectively prevent its use for any purpose must be rejected.

This information is important to the PLG for several reasons, including the ability to use the MCDP data to provide factual details in support of the Plaintiffs' claims. It is information that is uniquely in the possession of the United States, and it has no basis to prevent its use by Plaintiffs injured by its conduct. In addition, PLG needs to use the MCDP data to engage in a more important litigation purpose – one which the Court has ordered it to do – to assess and evaluate the facts in pursuit of global resolution efforts. [D.E. 10]. These documents are critical to that effort.

The DOJ's contention that this Court lacks jurisdiction logically fails. Among other things, the Court gave to the PLG the authority -- and the duty -- to "[e]xplore, develop, and pursue all settlement options." [D.E. 10 Order at 3]. The Court also charged the PLG with the duty to "[m]ake strategic decisions with regard to the Litigation and resolution process." [D.E. 10 Order at 4]. In addition, the Court charged the PLG with the duty to "engage in any negotiations efficiently and effectively." [*Id.*, p. 4].

In its Order dated July 9, 2024, the Court appointed Mr. Perrelli and Mr. Oprison to be Settlement Masters in connection with this matter. [D.E. 251]. In accordance with that Order, "[p]ursuant to Fed. R. Civ. P. 53(a)(l)(A), the Settlement Masters (which term includes Mr. Perrelli and Mr. Oprison individually and collectively) shall assist with facilitating discussions directly

related to the Parties' establishing a settlement structure for Camp Lejeune Justice Act ('CLJA') cases." [ D.E. 251 Order at 2]. "Specifically, the Settlement Masters shall work with each other and the Settlement Liaison as a team in developing and executing a common, unified approach to global settlement of this litigation, including keeping the Settlement Liaison apprised of the status of settlement proceedings." [*Id.*]

Effectuating both the PLG's and the Settlement Masters' Court-ordered duties militates in favor of allowing use of the relevant documents and data as contemplated by the PLG's proposed Fourth Amended Protective Order. The PLG cannot carry out its Court-ordered duties unless it has the authority to have use of these documents, subject to the protective order which addresses the only legitimate DOJ concern.

The parties have regularly updated the Court about the status of the administrative claims before the Department of Navy in their periodic status reports. See, e.g., Joint Status Report dated August 1, 2025. [D.E. 449 at 1-2]. The parties have also regularly advised on progress with the Special Masters and global resolution efforts. Using these documents as requested by the PLG is necessary for the PLG and the Special Masters in carrying out their duties for resolution purposes to this Court.

As illustrated in the preceding chronology, the parties have engaged in meet-and-confer efforts with regard to seeking an amicable resolution by which PLG could make reasonable use of the MCDP data under the terms of an appropriate amended Protective Order. Nevertheless, to date, the parties have been unable to reach an agreement allowing the use of the data herein.

There is no good faith basis for Defendant to oppose the PLG's ability to use the MCDP data for purposes of assessing the facts for individual named Plaintiff claims, as well as for the purposes of global resolution efforts generally.

PLG has proposed a stringent and narrow Protective Order that provides total confidentiality of documents with access only by the PLG and designees, each with specified access after execution and confirmation of compliance with the terms of the Protective Order. Moreover, Plaintiffs' counsel and designees will only access and review the documents for Camp Lejeune claimants with pending claims. Other data will not be reviewed or considered.

In summary, the PLG has provided more than ample information to the DOJ about the use of the data and has assured the DOJ that it will maintain stringent privacy protections to ensure there is no inappropriate usage of the data. The terms of the protective order can ensure proper safeguards for the use of the data. PLG respectfully attaches as **Exhibit 1** a proposed Fourth Amended Protective Order. The PLG respectfully submits that the instant motion should be granted.

## IV. Conclusion

Wherefore, PLG respectfully moves the Court to grant its Motion to Compel and order that PLG shall have the ability to use the MCDP data as described in an amended Protective Order to be entered by the Court and to enter an appropriate Protective Order as contemplated by all parties.

Dated: October 13, 2026.

/s/ J. Edward Bell, III
J. Edward Bell, III (admitted *pro hac vice)*
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser (admitted *pro hac vice)*
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ Robin L. Greenwald
Robin L. Greenwald (admitted *pro hac vice)*
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P.O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
mwallace@wallacegraham.com
*Co-Lead Counsel for Plaintiffs*