# Exhibit 2

**U.S. Department of Justice**
Civil Division, Torts Branch
Camp Lejeune Justice Act Section

Sara J. Mirsky, Acting Assistant Director
Telephone: 202.451.7726
Email: Sara.J.Mirsky@usdoj.gov

**VIA EMAIL** November 7, 2025

Ed Bell
jeb@belllegalgroup.com

**Re:** ***In re Camp Lejeune Water Litig.*, 7:23-cv-00897 (E.D.N.C.) – United States Marine Corps Records Digitization Project**

Dear Ed,

I write regarding the United States Marine Corps' ("USMC") ongoing efforts to digitize certain microfilm, microfiche, and paper military records (the "Current Digitization Project"). As you know, the United States remains committed to providing updates on the digitization of historical military records that are responsive to Plaintiffs' First Set of Requests for Production, Request Number 3 (RFP 1, No. 3), including muster rolls.

## Background

In the United States' Second Supplemental Responses to RFP 1, No. 3, the United States noted that it had produced certain muster roll documents from the National Archives and Record Administration ("NARA") totaling approximately 2 TB of native records on March 29, 2024. The United States also produced the documents bearing Bates stamp CLJA_MUSTERROLLS01-0000000001-0000676209 from the USMC's 2013-2015 record digitization effort. The United States further stated in that response that:

> [H]ard copy muster rolls [are] available for inspection in Alexandria, Virginia, as offered to Plaintiffs by letter on November 4, 2023 and multiple times thereafter. The United States further reiterates that documents responsive to this request are being scanned as a part of a larger, ongoing digitization project with the United States Marine Corps.

The United States is not aware of Plaintiffs ever confirming that they would inspect the hardcopy documents in Alexandria prior to or following this response.

In the United States' Opposition to Plaintiffs' Motion to Reconsider the Order Denying Plaintiffs' Motion to Compel Production of Certain Digitized Muster Rolls, the United States reiterated that: 1) it does not believe it possesses any documents responsive to RFP 1, No. 3 beyond those previously produced or identified to Plaintiffs, 2) the USMC is continuing a separate digitization project unrelated to the Camp Lejeune Justice Act, 3) it would continue to provide updates on the ongoing digitization effort, and 4) it would make information available to Plaintiffs upon project completion. D.E. 199 at 4-5.

## Ongoing USMC Record Digitization Effort

The USMC's Current Digitization Project remains ongoing. The United States can report the following:

The Current Digitization Project includes, but is not limited to, unit diaries, muster rolls, and individual service records ***service-wide***, meaning most of the records are likely not specific to Camp Lejeune.

The USMC's contractor, Iron Mountain, is currently scanning physical records and converting them to PDFs, which are saved to an Amazon Web Services ("AWS") Simple Storage Service data lake within an AWS GovCloud workspace. The digitized records are currently sorted into two overarching categories: "bulk records," which consist of unit diaries, muster rolls, and other organizational records; and "personnel records," which include individual service member records and other individualized records. The records that have been digitized thus far are not organized or searchable in any functional format based on content. This is because, as is further explained below, the "bulk record" PDF file names relate to the date of multiple muster roll/unit diaries' date of entry, and because there is currently no ability to search across multiple PDFs' Optical Character Recognition ("OCR") at once.

Iron Mountain has scanned approximately 13.7 TB of records out of an estimated 30 TB. Each individual PDF undergoes OCR as it is created to make it searchable. However, there is no way to simultaneously search across multiple PDFs at present. Instead, each PDF must be individually opened to be searched. Of the 13.7 TB of records, USMC estimates that a substantial amount of the records are "bulk records" that would include muster rolls. Each file is saved with many muster rolls from across the Marine Corps based on their date of entry, and each PDF is named with the date of entry. From a functionality perspective, to search for all of the muster rolls for one plaintiff, one would need to open the PDF(s) for each day of an individual's presence at Camp Lejeune, and either try to search through the PDF's OCR (which may be limited based on the age of the record), or scroll through visually to find the plaintiff's name. Each PDF could contain muster rolls from many locations besides Camp Lejeune. The current estimated date of completion for scanning the remaining records is January 31, 2026.

The USMC plans to begin development of a database that will enable some degree of cataloguing of the PDFs, metadata review, and search functionality of the record data from across the PDFs once all of the records are successfully digitized. There is currently no estimated completion date for the database with search functionality of data across PDFs.

Within this context, it is the United States' position that the burden of producing the scanned PDFs in their entirety, which would have marginal utility given the limited ability to search them, is not proportional to the needs of the case under FRCP 26(b)(1). The burden and expense of the proposed discovery greatly outweighs its likely benefit. Fact discovery on the Track 1 bellwether plaintiffs is closed, and the United States is not aware of any issues related to pending record retrieval requests related to the Track 1 bellwether plaintiffs. Track 2 fact discovery has not yet begun, and even when it does, muster rolls are available from prior United States' productions and through requests made to NARA. Producing terabytes of scanned PDFs from the Current Digitization Project data—much of which is unrelated to Camp Lejeune

entirely and/or is otherwise available to Plaintiffs—is beyond the United States' discovery obligations for this litigation.

In addition, while some of the records being digitized in this project may be responsive to Plaintiffs' RFP 1, No. 3, the present lack of organization or cataloguing of the digitized records would make it nearly impossible to separate relevant records from irrelevant records that contain personal information for individuals who were never at Camp Lejeune.

The United States will continue to keep PLG updated on the status of the digitization effort, particularly with respect to the development of a database with search functionality.

Additionally, burden and expense notwithstanding, the United States has endeavored to identify proposals for producing a limited subset of the digitized records in PDF format that are likely to contain documents responsive to RFP 1, No. 3. In particular, the United States is still working to obtain an estimate on the time and expense that would be required to produce the "bulk files" that are being scanned. Because of the nature and size of the requested data, and the disproportionate burden its production would put on the United States, any such production would be subject to a fee-shifting arrangement by which Plaintiffs would pay for (i) the transfer of the data from the USMC to DOJ, and (ii) the processing and production of the data from DOJ to Plaintiffs. Based on preliminary estimates, however, this could cost over a million dollars and take many months to complete. The United States is working diligently to obtain an update on an estimate for the production of these records, but these efforts are somewhat constrained given the current lapse in appropriations. We will reach out with further details as soon as possible.

Respectfully,

*/s/ Sara J. Mirsky*
Sara J. Mirsky
Acting Assistant Director
U.S. Department of Justice
Camp Lejeune Justice Act Section