# Exhibit 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **CAMP LEJEUNE WATER LITIGATION,** | ) | |
| | ) | **DOCKET NOS.** |
| **PlaintiffS,** | ) | **723-cv-00667-BO-RN** |
| | ) | **723-cv-275-BO-BM** |
| **vs.** | ) | **723-cv-1145-BO-BM** |
| | ) | **723-cv-1553-BO-BM** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**TRANSCRIPT OF PRE-TRIAL CONFERENCE**
**BEFORE THE HONORABLE JUDGE TERRENCE W. BOYLE**
**WEDNESDAY, SEPTEMBER 9, 2026; 2:00 PM**
**RALEIGH, NORTH CAROLINA**

**FOR THE PLAINTIFF:**
Dowling PLLC
By: William Michael Dowling, Esq.
P.O. Box 27843
Raleigh, SC 27611

**FOR THE PLAINTIFF:**
Lewis & Roberts, PLLC
By: James Roberts, III, Esq.
3700 Glenwood Avenue
Suite 410
Raleigh, NC 27612

**FOR THE PLAINTIFF:**
Bell Law Firm
By: J. Edward Bell, III, Esq.
P.O. Box 2590
Georgetown, SC 29442

**FOR THE DEFENDANT:**
DOJ-Civ
By: John A. Bain, Esq.
Sharon Sprayregen, Esq.
Carson Garand, Esq.
Elizabeth Platt, Esq.
Eric Marquina, Esq.
Haroon Anwar, Esq.
1100 L Street, NW
Washington, DC 20005


eScribers
www.escribers.net | 800-257-0885

**FOR THE DEFENDANT:**
DOJ-Civ
By: Joshua G. Carpenito, Esq.
310 New Bern Avenue
Suite 302
Raleigh, NC 27601

Audio Operator: CLERK'S OFFICE PERSONNEL

eScribers, LLC
7227 N. 16th Street
Suite 207
Phoenix, AZ 85020
800-257-0885
www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.


eScribers www.escribers.net | 800-257-0885

P R O C E E D I N G S

THE CLERK: The District of North Carolina is now in session. The Honorable Judge Terrence W. Boyle presiding. Please be seated and come to order.

THE COURT: We don't have a recording stenographer here, but it's being taped, so you can pay attention to it. Thank you for being here. I'm not sure why there are so many people, but we are all welcome. And I started off with a really nasty day. I was driving here early and got on the bridge in Williamston, and a tractor trailer went into the side of the road, and they blocked everybody on it for about three or four hours, so welcome to my world.

So some of the things of interest, in random order. I don't have any agenda about this, other than to start processing some of these Camp Lejeune cases. I'm not getting any younger, and I'm not getting any smarter, and I might as well do them while I can. It's been three, or three-and-a-half, or four years since the Act, and doesn't seem to be making any progress. We've made a strenuous effort on the Court to act in concert, to act together.

As I said, I think, a minute ago, I haven't asked any of my colleagues to excuse me and let me do this, but my candid intent is to go ahead and have a pre-trial here today. And in October, start setting my four cases for Nonjury trial in Elizabeth City. And I feel perfectly capable of resolving


eScribers
www.escribers.net | 800-257-0885

each case. I don't know the facts specifically, or the injury in each case, but I don't think it's going to be too difficult to do.

The cases are all about causation. Did you get in the door; yes or no? If you didn't, well, it's over. And if you did, what are your damages? And all of this, period, isa 30 -- how many years ago? Forty years ago. So the window is for -- exposure is fifty-seven to eighty-seven, right? And now we're in 2026. I mean, I don't know how many people are still young who were exposed in that thirty period -- thirty-year period, but -- so I see this as like a -- I see the whole process as, like, a big settlement conference.

If you sit down, and you have your side and the other side, and if you make it past go, then it's just a question of how much. And it's not a punitive thing, it's an actual thing. So I was thinking on the way up here, if somebody had, what is it, kidney cancer -- somebody had kidney cancer, and they got it thirty-five -- no. Actually, forty-five years ago, and they're still alive, well, how do you look at that? How do you how do you fashion relief for that, if there's culpability?

Do you give them 50 dollars a day? Give them 25 dollars a day? You give them $100 a day? I don't know. But those are all considerations. I mean, what would it be worth


eScribers
www.escribers.net | 800-257-0885

to take on kidney cancer without being at fault in any way, and to endure with it for forty years, and still be alive?

I mean, all the ones that didn't make it, who were dead, that cuts off their damage. I mean, it's a multifaceted problem, but I don't know that I'm any less able to reach a decision than any of the other judges, or a jury, for that matter, but I'll certainly give it my try.

Let's see. Mr. Bell, you're here with Mr. Dowling?

MR. BELL: Yes, Your Honor.

THE COURT: And what is this styled as? A pre-pre-trial conference?

MR. BELL: I guess it's Judge Boyle's conference.

THE COURT: Yeah. Well, I've told you all that is on my mind. There may be some other things on my mind about it. I'm glad to share with you my thoughts. You wouldn't get that from a jury. So what do you want to say? I mean, I'm looking at the middle of October for this case to go to trial in Elizabeth City.

MR. BELL: We can --

THE COURT: So unless you do something to back away from that --

MR. BELL: No, sir.

THE COURT: -- that's what we're here for today. That's going to happen.

MR. BELL: We'll be --



www.escribers.net | 800-257-0885

THE COURT: I'll show up. If you don't show up, that's fine, but I'll show up.

MR. BELL: We'll be there, Your Honor. We think it's a little more simple than the Government thinks it is. We think it's different. We think that, at least the Bell (indiscernible) clients all have gotten through the door. And so we think the case can be done very quickly, each one.

THE COURT: Yeah. I agree with that.

MR. BAIN: Well, Your Honor, I think we disagree with the plaintiffs on that point. As you said, the threshold question is whether they can make it past go, causation. That's a key question in this case, and it involves scientific evidence, and experts to explain to you whether or not the chemicals at Camp Lejeune can cause kidney cancer.

Now, there have been studies done -- many studies done regarding the people at Camp Lejeune, and their rates of kidney cancer are really no different than the general population. So the question then is, how are plaintiffs going to show that these individuals got kidney cancer because they were at Camp LeJeune, and not just because of the kidney cancer rate that all of us experience? So that's going to be a key question for this case. And only after we answer that question do we get to the damages issue, as you mentioned.

We have filed many motions on the experts about the standards of scientific evidence that are necessary to meet


eScribers
www.escribers.net | 800-257-0885

what the Court requires to prove causation. Your Honor, along with Judge Dever and Judge Myers, issued a very important order in this case on the standards that need to be used by the experts to reach their decision on causation, and essentially rule that the standard that the plaintiffs' experts were using did not meet what is required under rule 702.

The Court did not go to the next step and say which experts are excluded. But that's really, I think, an important step that should be resolved before we start trying these cases. The Court has done step one. Step two, whether plaintiffs' experts can survive, which we think they can't, based on the admissions in their reports and depositions, is important to whether we have any trials in this case at all.

THE COURT: If we have any trials at all?

MR. BAIN: Yes, because they will not have admissible expert evidence that there's a link between the chemicals in the water at Camp Lejeune and the diseases that the plaintiffs suffered. As I mentioned, the epidemiology doesn't support it. The Camp Lejeune population has been studied, and the rates of kidney cancer are really no different than the general population.

THE COURT: Okay. If we schedule a case, will you come?

MR. BAIN: Yes, I will definitely be there, Your



escribers
www.escribers.net | 800-257-0885

Honor.

THE COURT: Okay.

MR. BAIN: And also, I would mention, the Court has set a schedule to try to get these cases resolved, up until October 30th, and we're working towards that. And so we would suggest that the case perhaps be set for trial right after that time, like November 2nd, or something like that. Of course, we'll do whatever Your Honor orders us to do. We'll be there in Elizabeth City, or wherever you want us to come, but --

THE COURT: Well, we're going to do them in Elizabeth City, because that's my chambers --

MR. BAIN: Yes.

THE COURT: -- and that's where my courthouse is. And I'm not going to be poaching on somebody else here in Raleigh. And so how long do you think these cases are going to take?

MR. BAIN: Well, as I mentioned, if you allow their experts to testify -- this is a toxic tort case, which involves a number of experts to discuss whether these chemicals can cause the diseases. We think in a case like this, if you just try one case at a time, it could take a week for each side to try their case, we believe. Having --

THE COURT: Two weeks?

MR. BAIN: One week for each. Yeah, two weeks for


eScribers
www.escribers.net | 800-257-0885

the trial.

THE COURT: Two weeks?

MR. BAIN: Yes.

THE COURT: So how many cases do you think I've tried over the years?

MR. BAIN: I'm sure you've tried a lot of cases, and --

THE COURT: Like how many?

MR. BAIN: Wow. That would be hard.

THE COURT: I'll put you on the spot.

MR. BAIN: Maybe --

THE COURT: I'll put you on the spot.

MR. BAIN: -- 3,000.

THE COURT: How many?

MR. BAIN: 3,000.

THE COURT: No, that's way too high.

MR. BAIN: Okay. 1,000, or 500.

THE COURT: Tops 1,000. But from that, down to 500, probably.

MR. BAIN: Yeah.

THE COURT: I tried thirty-five jury cases my first year. It didn't hold up that long, but we're not trying -- I mean, I'll get up and leave if you have a two-week trial.

MR. BAIN: I appreciate that Your Judge -- or Your Honor, but we just believe that the complex science in this



escribers
www.escribers.net | 800-257-0885

case merits this. I've tried toxic tort cases my entire career, and I've tried several cases, one plaintiff cases, that have lasted two to three weeks. And I appreciate that you like to accelerate things, and we will try to do that.

THE COURT: Yeah. I mean, forty years ago we had asbestos trials. I tried three of them. I don't know that -- other than Judge Dupree, who's around here somewhere, I don't know whether any other judges tried asbestos trials. But first one lasted a week or two, got a hung jury. Second one lasted a week or two, and got a no verdict, a defense verdict. Third one, I had the lawyers -- and it's -- Rice's is firm. It was the black firm. You're familiar with Sol Blatt, right?

MR. BELL: Motley Rice out of Charleston.

THE COURT: Huh?

MR. BELL: That's the Blatt firm, which is now the Motley Rice firm.

THE COURT: Yeah. The Blatt firm had all the asbestos cases. And so in the last one, I said, we're not going to hear from all the experts. I'll give you fifteen minutes on the plaintiff's side to summarize it to the jury, and ten minutes to rebut it on the defendant's side. So we tried the case in a week. They gave the plaintiff $2.5 million, and we never tried another one. They all went home.

I don't know if that has any bearing, whether that's interesting, or it's historical, but that's the way it goes.


eScribers
www.escribers.net | 800-257-0885

Colloquy

That's sort of your model. The expert witness gets dragged down here and put up on the stand. And I'm going to say to him, tell me what you know, or something like that, and not pay any attention to what you ask him.

MR. BAIN: Yes, I understand, Your Honor, we'll try to make it --

THE COURT: I'm not bragging. I'm just giving you a roadmap of --

MR. BAIN: Appreciate that.

THE COURT: It's going to be reality, unless you can figure out how to get a different judge.

MR. DOWLING: Your Honor, may I speak?

THE COURT: Yeah.

MR. DOWLING: We're confident that the trials, both sides, can be done in two to three days. And we think it's a classic battle of the experts. We have a plan to move rapidly where we will present --

THE COURT: Well, if you cross -- I mean, what's the standard? Is it more likely so than not, or equipoise?

MR. DOWLING: Equipoise.

THE COURT: Okay. So if you have an expert that says it's unlikely that the plaintiff would have gotten kidney cancer at the age of whatever, as part of just normal practice, then you should be home.

MR. BELL: Yes.


eScribers
www.escribers.net | 800-257-0885

MR. DOWLING: Yes, Your Honor. And it's our intention to be extremely focused and concise in our directs, and extremely focused and concise in our crosses. I think the only scenario in which you'd see a two-week trial is if there's cumulative, duplicative evidence, where multiple witnesses are just piling on and bolstering other witnesses, and you're going down hairsplitting points.

It's to the defendant's benefit to make this appear way more complicated than it is. It's a simple statute; Judge Dever said that in April of 2023. He said don't waste time in discovery on collateral issues, and we shouldn't waste time at the trial on collateral issues, or cumulative issues.

THE COURT: And this whole thing is a dress rehearsal. Because whoever didn't get a good outcome is going to go to the Fourth Circuit, and they're going to take the case over, and they're going to do whatever they do. And we'll come back a year or two from now, and start all over again. So there's really no value in postponing things, from my perspective. The value is in going ahead and getting some meat on the bone, and seeing what happens.

MR. BAIN: We have no interest in postponing things. We want these cases to be tried. We've been asking for trials for years. We do want a --

THE COURT: Well, it's preposterous, that's the word I'm looking for, that we could try them all.


eScribers
www.escribers.net | 800-257-0885

MR. BAIN: No.

THE COURT: What are there? There are 4,000, 3,500, something like that, in our court, and then there's another 400,000 in the Navy?

MR. BAIN: That's why it's important, we believe, that these trials be based on a fulsome record, because they will have precedents for other cases. So it strikes me as odd that the plaintiffs say that they need two to three days for trial. If you look at the witness list, and the exhibit list they submitted with a pre-trial order that they filed last night, they have dozens and dozens of witnesses, and hundreds and hundreds of exhibits. So I'm not saying that we're going to take a month --

THE COURT: Well, you know what that's going to lead to? A mistrial. Even with a judge, you can have a mistrial.

MR. BAIN: Uh-huh.

THE COURT: And the judge gets up and leaves, and you're left with half a case.

MR. BAIN: Yeah. We don't want that. We would like a --

THE COURT: Well, that's what's going to happen if this becomes a marathon instead of a sprint.

MR. BAIN: Uh-huh.

THE COURT: This is a 50-yard dash, not 100 yard dash, and it's sure not a marathon.


eScribers
www.escribers.net | 800-257-0885

MR. DOWLING: Your Honor, we got your notice on August 24th about this hearing, and the anticipation of the trial date. And we set to work on these pre-trial orders, naturally, because we didn't want the defense to claim they were surprised down the line. We were over expansive in this pre-trial order. If you set these cases for trial in October, undoubtedly, we will narrow and streamline the witnesses, the exhibits, and we'd be happy to file an amended pre-trial order at that time.

We were trying to work in good faith, though, to let the Government know what the potential universe of witnesses and documents was. But it is not our intention to introduce every single exhibit on that list. It is not our intention to call -- far from it, Your Honor. We intend to present a very concise case, because it's a simple statute.

THE COURT: I mean, once the party -- plaintiff crosses the starting line, and gets into the game, and has a claim, then it's just a settlement issue. It's, how much is the claim worth? Is a judge going to give somebody $1 million dollars, $2 million; or is a judge going to give somebody $50,000? There's a lot of difference between 2 million and 50,000, and so that's where the smart money is.

MR. BAIN: But I just want to emphasize, again, I think a lot of the question is whether they get in the gate -- whether they get past go, as you mentioned. Because that's



www.escribers.net | 800-257-0885

the scientific issue, and that's a hotly disputed issue between the parties here.

THE COURT: What about the other diseases? And then, they're not directly my responsibility, but what about the other diseases; do they all have the same universal application? Like, lung cancer, and blood ,cancer and all that -- are you going to say, well, everybody gets it, so it's not extraordinary?

MR. BAIN: No. No, that's not the case. In fact, in our resolution meetings that we're having with them, we're talking about diseases which we're willing to compensate. As Your Honor knows, we have had this elective option program, which has compensated a numerous (indiscernible).

THE COURT: How many people have paid out -- gotten paid out in this?

MR. BAIN: Thousands of people have been paid. We have offered over $1 billion in payments in that program.

THE COURT: How many cases have gone away?

MR. BAIN: How many cases have been dismissed, or just gone away?

THE COURT: They're just with -- they settle them. How many cases have they settled?

MR. BAIN: Thousands. Maybe 3 to 4,000 cases have been settled.

THE COURT: Okay.


escribers
www.escribers.net | 800-257-0885

MR. BAIN: Now, I also want to say that you shouldn't look at the 400,000 cases of the Navy, and say, oh, those are all valid cases that are someday going to be in this court. Because as the plaintiffs' counsel has admitted before, approximately seventy percent of those cases have no merit, at least, and that's what plaintiff's counsel is saying.

Once the Navy starts denying those claims, ninety percent of those claims are going to go away. And so we're dealing with a smaller universe of claims. We're trying to work with the plaintiffs to look at those diseases which might be related to the chemicals, and offer fair compensation for those. We've offered, as I mentioned, $1 billion of settlement to people, already. So we're making progress, but we just need, I think --

THE COURT: And claimants -- or people who have filed, are dying, too, because there were more of them four years ago. Didn't the Act become effective in 2022?

MR. BAIN: That's right, Your Honor.

THE COURT: So it's four years this September, October?

MR. BAIN: Yes.

THE COURT: I don't know.

MR. BAIN: It's been four years since the statute was passed.

THE COURT: Yeah.


eScribers
www.escribers.net | 800-257-0885

MR. BAIN: And that's why we have the elective option program.

THE COURT: So how many people who are -- have transitioned from being a party plaintiff to being an estate?

MR. BAIN: Quite a number, just because of the age of the population that was there.

THE COURT: Sure. I mean, the window is fifty-seven to eighty-seven. So you had to be an adult -- well, not necessarily. You didn't have to be an adult. But you had to have some relationship with Camp Lejeune during that thirty-year period.

MR. BAIN: Right. That's true. And just by the nature of this statute, and when it was enacted, and the period it covers, it is an aging population, and that's why they have a number of diseases that all of us who get older get. And naturally, in the population, people get this -- these diseases, so it's natural. But we're just saying that this should be decided by the science. What is actually related to the exposure at Camp Lejeune? And then, as you said in the question, if there are some that are related, then the question is, what is the amount of damages?

THE COURT: Okay. What's left to be done?

MR. BELL: Just pick a trial date, Your Honor.

THE COURT: What's that?

MR. BELL: We need a trial date.


eScribers
www.escribers.net | 800-257-0885

THE COURT: Trial date, yeah. And you said November 2nd or 3rd?

MR. BAIN: November 2nd would give us time to get to the end of what the Court has ordered with respect to negotiating a resolution of cases. The other thing I -- if I may, Your Honor, one other thing --

THE COURT: Yeah.

MR. BAIN: -- I would raise is that it might be more efficient to try all four of these cases together, since a number of the witnesses are for all --

THE COURT: Okay.

MR. BAIN: -- four of the cases. That would be more efficient. So we would suggest that there,, perhaps be just one trial for the four cases together. I think that would be more efficient.

THE COURT: Well, you don't have to worry about a jury, so we're not picking a jury.

MR. BAIN: Right.

THE COURT: It's not a question of having four different juries. It would be -- okay. That makes sense.

MR. BAIN: So that's one thing that we would suggest. And November 2nd as the trial date would be the other thing.

MR. BELL: Judge, we would urge the Court to stay in October. We're ready to go. We've already talked to our experts, make sure they were available for the month of


eScribers
www.escribers.net | 800-257-0885

October. We've done a lot of work now, that we are ready to go. I can't get into our settlement negotiations because they are clearly confidential. The way things are going, Judge, I wouldn't give a lot of hope for anything to happen, and that extra month is not going to help us a bit.

MR. DOWLING: Judge, on the point of consolidation, I would just -- we'll obviously do whatever the Court orders. It may become a little confusing, because some of these experts are going to be specific to each of these plaintiffs and their particular risk factors. The damages are going to be specific and discrete. In my opinion, if you try the first one, the second, third, and fourth will accelerate in time, just because we will become more efficient over time. But we are prepared to do whatever the Court orders as it relates to consolidation.

THE COURT: Okay. You can have a seat. So who are the lawyers in the other cases? They need to be heard, too.

MR. BELL: Mr. Roberts is here for the Fancher case, Your Honor.

THE COURT: Well, let's take a break, and we'll hear from -- I'll hear from the other lawyers. They're scheduled for 3 o'clock, but they're also scheduled for tomorrow, right?

MR. BAIN: Yes, sir.

MR. BELL: Yes, sir.

MR. DOWLING: That's two other cases. But I think



www.escribers.net | 800-257-0885

those --

MR. BELL: I mean, we could do all four today, if you'd like, Your Honor, but it would be (indiscernible).

THE COURT: Well, it make sense. You don't want to come back.

MR. BELL: We're glad to come back.

MR. BAIN: We're prepared to do all four today, if you (indiscernible).

THE COURT: Okay. Why don't I take a recess and give you a chance to talk, and we'll come back and --

MR. BAIN: Thank you, Your Honor.

THE COURT: -- see where we go.

THE CLERK: All rise. Court will take a brief

(Recess from 2:26 p.m., until 2:40 p.m.)

THE CLERK: -- W. Boyle presiding. Please be seated and come to order.

THE COURT: Are the lawyers here in the Fancher case?

MR. BELL: Yes, Your Honor.

THE COURT: That's you?

MR. BELL: And Mr. Roberts.

THE COURT: Okay.

MR. ROBERTS: Yes, sir.

THE COURT: And the Mousser case?

MR. BELL: that's Mr. Dowling, Mousser.

THE COURT: Okay.


eScribers
www.escribers.net | 800-257-0885

Colloquy

MR. BELL: We also have the attorneys here for Downs, Your Honor, for tomorrow.

THE COURT: Okay.

MR. BELL: And I can stand in for Mr. Ellis, who is on the Tukes case.

THE COURT: All right.

MR. BELL: If it suits you, obviously.

THE COURT: Yeah. I think I'm going to set the first case, the Mousser case, for November the 9th. And then, the second case, which is -- what's the next case? Mousser?

MR. BELL: Fancher.

THE COURT: Fancher. I'll set that for the 16th of November. And I don't think I'll hear the cases together, because it's going to be too much traffic, and too much confusion. And really, you only need one to go up, so it doesn't make a lot of difference. It would be more complicated, I think, trying to juggle four different sets of witnesses in one case.

MR. BAIN: Can I make a point, Your Honor?

THE COURT: Yeah.

MR. BAIN: So the two other cases that you didn't mention, Tukes and Downs, both present very central issues to this litigation, which is, we don't think either of them were even exposed to contaminants at Camp Lejeune. An important issue is going to be when you were at Camp Lejeune, and where


escribers
www.escribers.net | 800-257-0885

you were located at Camp Lejeune. So for example, Ms. Tukes was there after the contaminated wells had been shut down, and so we don't think that she was exposed to contaminants at all. So that's an important issue that will have precedence for the other cases.

Mr. Downs was there in the 1960s. Our experts say that the contaminants had not even arrived at the wells by the time he was at Camp Lejeune. So I just want to point out those two cases, Downs and Tukes, present important issues for this entire litigation as to when people had to be at Camp Lejeune to actually be exposed to the chemical.

THE COURT: Did you file summary judgment motions?

MR. BAIN: We have not filed a summary judgment motion because they dispute it.

THE COURT: Uh-huh. Well, if -- okay.

MR. BELL: But it is an important issue, we think, as far as timing, when people were at Camp Lejeune, and where they were at Camp Lejeune. And those two cases -- we would ask that one of those two cases be -- if you're only going to set two cases, be one of the cases that is set for trial.

THE COURT: All right. I'll take that under advisement.

MR. BELL: Judge, it only makes sense for Mousser and Fancher be tried back to back, because they do have almost identical experts.


eScribers
www.escribers.net | 800-257-0885

THE COURT: Okay.

MR. BELL: Judge, I don't want to sit here and argue a summary judgment motion, but I can't help but just say we wouldn't be here if it was as the Court -- as the Government says.

THE COURT: Uh-huh. Well, do you have anything else you want to --

MR. DOWLING: Your Honor, would you like us to submit findings and facts, and conclusions of law before these trial dates; or do you want us to submit them afterwards?

THE COURT: I think before.

MR. DOWLING: To comply with the local Rule?

THE COURT: Yeah.

MR. DOWLING: Yes, Your Honor.

THE COURT: Mr. Roberts, do you have anything you want to add?

MR. ROBERTS: No, sir, Your Honor. We appreciate your time this afternoon. As Mr. Dowling said, we are of the firm belief we can try these cases in two to three days. There's multiple experts on both sides, but we're going to make an effort to pare it down, put an expert on general causation, specific causation, and move the cases forward.

MR. BAIN: And again, I'd make the same point that I made earlier, Your Honor. I think having a complete record for these cases is the most likely to assist in the resolution



eScribers
www.escribers.net | 800-257-0885

Colloquy

of the entire litigation. So I would hope that we would have the opportunity to present our complete defense to you in the time that we have.

THE COURT: Yeah, there are a lot of moving parts to the whole package, if that makes sense. And if we can get them all together, and have it as one decision, and have it as something that the court on review -- the appellate court can take up, that would be a positive outcome, anyway. I don't have any other business if you don't.

MR. BELL: Your Honor, would you like to have the schedule hearing tomorrow? Or would you --

THE COURT: No, I think we've pretty much covered everything from --

MR. BELL: The only thing we would need after that, Your Honor, is the trial date.

THE COURT: Is what?

MR. BELL: The trial dates for those other two cases.

THE COURT: Yeah.

MR. BELL: I don't know what the dates are for Thanksgiving, but sometime between end of November, first of December 1st, we'd like to get them all -- the other two tried as well.

THE COURT: That might be a squeeze with Thanksgiving. That week is dead, usually.

MR. BELL: Yes, sir.


eScribers
www.escribers.net | 800-257-0885

Colloquy

THE COURT: So we'll see.

MR. BELL: Yes, Your Honor.

THE COURT: Okay. Well, thank you all very much for coming in.

MR. BAIN: Thank you, Your Honor.

MR. DOWLING: Thank you, Your Honor.

THE CLERK: All rise. The Court is now in recess.

(Court is adjourned)

* * * * *


eScribers
www.escribers.net | 800-257-0885

CERTIFICATE OF TRANSCRIBER

I, Nicole Ferguson, court-approved transcriber, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 10th day of September, 2026.

/s/ 

NICOLE FERGUSON, CDLT-149

COURT-APPROVED TRANSCRIBER



www.escribers.net | 800-257-0885